# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : |  |

## MOTION OF M&G POLYMERS USA, LLC FOR APPROVAL OF AGREED INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY AND (IV) SCHEDULING A FINAL HEARING

M & G Polymers USA, LLC ("M&G Polymers"), one of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), moves the Court (this "Motion"), pursuant to

sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

Rule 4001-2 of Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of the agreed

interim order, in substantially the form attached as Exhibit A (the "Interim Order"):

(i) authorizing M&G Polymers to use cash collateral (as such term is defined in section 363(a) of

the Bankruptcy Code) ("Cash Collateral") of Comerica Bank ("Comerica"); (ii) providing

adequate protection to prepetition secured lenders Comerica and Banco Inbursa, S.A., Institución

de Banca Múltiple, Grupo Financiero Inbursa ("Inbursa") to the extent set forth in the Interim

Order; (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy

---

[1]      The Debtors are the following twelve entities (the last four digits of their respective taxpayer
identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236),
M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195),
Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G
USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American
Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240,
Houston, Texas 77067.

Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and provisions of the Interim Order; and (iv) scheduling a final hearing (the "Final Hearing") to consider the entry of an order granting the relief requested in this Motion on a final basis and approving the form of notice with respect to the Final Hearing.  In support of this Motion, M&G Polymers respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A.      **General Background**

2.      On October 24, 2017 (the "Polymers Petition Date"), M&G Polymers filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors, together with the non-Debtor direct and indirect subsidiaries of M&G Chemicals S.A. (collectively, the "Company"), are one of the largest producers of polyethylene terephthalate ("PET") resin for packaging applications in the world.  PET is a plastic polymer produced principally from purified terephthalic acid ("PTA") and monoethylene glycol, and is used to manufacture plastic bottles and other packaging for the beverage, food and personal care industries.  The Company's customers are major plastic packaging companies, including Amcor Limited, Coca-Cola Cross Enterprise Procurement Group, Graham Packaging

Company LP and the Pepsi-Cola Company. In addition, through Chemtex, its engineering division, the Company provides technological development, research and engineering services for the construction of plants for the polyester, renewables and liquefied natural gas industries.

4.       Prior to the Polymers Petition Date, the Company employed over 950 people (including over 300 individuals employed by the Debtors) in 14 locations in six countries around the world. The Company's three manufacturing facilities are located in Brazil, Mexico and Apple Grove, West Virginia (the "Apple Grove Plant"). Its corporate headquarters is located in Luxembourg and the overall management of the Company is conducted by senior executives and corporate personnel located in Luxembourg, Italy and Houston, Texas.

5.       In April 2013, the Company began construction of a vertically integrated PTA/PET plant in Corpus Christi, Texas (the "Corpus Christi Plant"). When completed, the Corpus Christi Plant is expected to be the largest vertically integrated single line PTA/PET producer in the world and the largest PTA plant in the Americas.

6.       Construction of the Corpus Christi Plant was originally scheduled to be completed by the end of 2015, and the facility was expected to be fully operational in January 2016. As the project progressed, however, the Company was repeatedly required to adjust the planned schedule to account for (a) changes to the overall approach to construction of the plant due to design and technical problems, (b) delays due to the weather, (c) subcontractors failing to meet deadlines and cost projections, (d) engineering audits and (e) delays in equipment delivery. As a result, the Corpus Christi Plant remains less than 85% complete.

7.       Although the Company's revenue was down to $1.6 billion in 2016—from $1.9 billion in 2015—the Company was able to maintain steady margins and cash flow generation. However, due to the delays and cost overruns at the Corpus Christi Plant, the

Company has experienced a dramatic increase in its net indebtedness.  Over the past three years, the Company has incurred nearly $1 billion in funded debt obligations to finance continued construction of the Corpus Christi Plant and to account for shortfalls in revenue that was expected to be generated by the Corpus Christi Plant.

8.      These debt obligations, along with certain market forces, placed severe liquidity constraints on the Company and, prior to the Petition Date, the Debtors were forced to halt production at the Apple Grove Plant—owned by M&G Polymers—and scale back further development of the Corpus Christi Plant.

9.      When it became apparent that the Company could no longer operate without further funding, which was unavailable outside of chapter 11, the Debtors commenced these Cases to access $100 million in debtor in possession financing (the "DIP Financing") and conduct a sale process for the Corpus Christi Plant and certain other U.S. assets.  Additional information regarding the Debtors, the proposed DIP Financing and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3), filed on October 31, 2017 (the "First Day Declaration"), which is incorporated herein by reference, and the Debtors' motion for authorization to obtain debtor-in-possession financing (Docket No. 14), filed on October 31, 2017 (the "DIP Motion").

### B.      Comerica's Cash Collateral and Related Prepetition Obligations

10.     As described more fully in the First Day Declaration, and as set forth in the Declaration of Dennis Stogsdill in support of this Motion, attached hereto as Exhibit B (the "Stogsdill Declaration"), pursuant to a prepetition credit agreement dated as of December 21, 2015 with Comerica as lender (as amended, modified and supplemented from time to time, the "Prepetition Credit Agreement" and, together with all related security and other

documents, guaranties and agreements, the "Prepetition Credit Documents"), M&G Polymers is

the borrower under a $50 million revolving credit facility provided by Comerica (the "Comerica

Loan") that is secured by, among other things, certain accounts receivable of M&G Polymers,

including certain payments made by customers of the Apple Grove Plant.  Prior to the Polymers'

Petition Date, these customer payments generally were deposited into a bank account held by

M&G Polymers at Comerica (the "Polymers Comerica Account"), which functioned as a

collection account for customers of the Apple Grove Plant to remit payment, as more fully

described in the Debtors' motion for approval of the continued use of their cash management

system (Docket No. 7), filed on October 31, 2017.

11.     As a result of a default by M&G Polymers under the Prepetition Credit

Agreement, the Polymers Comerica Account was frozen and, on October 20, 2017, Comerica

filed a complaint with the United States District Court for the Eastern District of Michigan

seeking the appointment of a receiver to take control of the collateral securing the Comerica

Loan, which Comerica asserted included funds in the Polymers Comerica Account and a separate

bank account of M&G Polymers with the Ohio Valley Bank (the "OVB Account"), which

functions as both a depository and disbursement account.  The Debtors were not able to resolve

this dispute and, as a result, M&G Polymers commenced its chapter 11 case on the Polymers

Petition Date.

12.     As of the Polymers Petition Date, the aggregate outstanding amount owed by

M&G Polymers under the Prepetition Credit Documents was not less than $48,670,983,

consisting of loans in the outstanding principal amount of $48,534,679 and accrued interest in

the amount of $136,304 (together with (a) any interest, fees, costs and other charges or amounts

paid, incurred or accrued prior to the Polymers Petition Date in accordance with the Prepetition

Credit Documents, (b) all "Indebtedness" as described in the Prepetition Credit Agreement and

(c) to the extent allowable, all interest, fees, costs and other charges which may be allowed under

section 506(b) of the Bankruptcy Code, the "Prepetition Obligations").

13.    As more fully set forth in the Prepetition Credit Documents, prior to the Polymers

Petition Date, M&G Polymers granted first-priority security interests in and liens on the

Collateral (as defined in the Prepetition Credit Documents), including all of M&G Polymers'

inventory, accounts and accounts receivable, deposit accounts, and all proceeds of the foregoing

(collectively, the "Prepetition Collateral") to Comerica (collectively, the "Prepetition Liens") to

secure repayment of the Prepetition Obligations.  M&G Polymers acknowledges, and the Interim

Order stipulates, among other things, that:  (a) other than certain cash and cash equivalents

totaling approximately $1.25 million with respect to which M&G Polymers' analysis regarding

the source of funds remains ongoing (the "Disputed Collateral"), all of M&G Polymers' cash,

including the cash in all of its deposit accounts, wherever located, whether as original collateral or

proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of

Comerica; (b) M&G Polymers is in default under each of the Prepetition Credit Documents; and

(c) as of the Polymers Petition Date, other than prepetition permitted liens, if any, provided for

under the Prepetition Credit Documents, there were no security interests or liens on the

Prepetition Collateral other than the Prepetition Liens.

14.    In addition, M&G Polymers is party to a certain prepetition guaranty, dated as of

March 21, 2013, for the benefit of Inbursa (the "Inbursa Guaranty"), secured by a mortgage (as

modified, amended or restated, the "Pre-Petition First Lien Guaranty Mortgage" and together

with the Inbursa Guaranty, the "Inbursa Guaranty Documents"), effective as of March 21, 2013,

by which M&G Polymers granted to Inbursa first priority liens on and security interests in

certain "Collateral" (as defined in the Pre-Petition First Lien Guaranty Mortgage, and for

purposes of this Motion and the Interim Order, the "Inbursa Collateral" and such security in the Inbursa Collateral, the "Inbursa Guaranty Liens"), which collateral includes the property, plant and equipment of M&G Polymers.

15.     As of the Polymers Petition Date, the aggregate outstanding amount owed by M&G Polymers under the Inbursa Guaranty was not less than $436,000,000 in outstanding principal amount (together with any interest, fees, costs and other charges or amounts paid, incurred, or accrued prior to the Polymers Petition Date in accordance with the Inbursa Guaranty Documents, and further including all other obligations guaranteed by the Inbursa Guaranty Documents, and, to the extent allowable, all interest, fees, costs and other charges which may be allowed under Section 506(b) of the Bankruptcy Code, the "Inbursa Prepetition Obligations").

## REQUEST TO USE CASH COLLATERAL

16.     M&G Polymers requests the entry of an order, in substantially the form of the Interim Order:  (a) authorizing M&G Polymers' use of Cash Collateral; (b) providing adequate protection to Comerica and Inbursa to the extent set forth in the Interim Order; (c) vacating and modifying the Automatic Stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order; and (d) scheduling, and approving the form of notice with respect to, the Final Hearing.  Following extensive arm's-length negotiations, the parties have reached an agreement with respect to M&G Polymers' use of Cash Collateral and the additional relief requested herein, on the terms and conditions specified in the Interim Order.

### A.     M&G Polymers' Immediate Need to Use Cash Collateral

17.     As set forth in the Stogsdill Declaration, M&G Polymers cannot meet its ongoing obligations without its continued use of Cash Collateral, as contemplated in the Interim Order. As described in greater detail in the DIP Motion, although the proposed DIP Financing provides for necessary post-petition funding for certain of the Debtors, it provides no funding for

M&G Polymers.  Meanwhile, M&G Polymers has ongoing obligations under state and federal

law to conduct environmental monitoring at the Apple Grove Plant—including the ongoing

monitoring and maintenance of a wastewater treatment facility—and M&G Polymers requires

the use of Cash Collateral to prepare the Apple Grove Plant for a potentially extended idling,

including by taking affirmative steps to remain in compliance with applicable environmental

laws and regulations.

18.     As of this date, M&G Polymers has ceased all production, is no longer producing

inventory or generating accounts or accounts receivable (except to the extent existing inventory

is being sold), and has no expectation of recommencing production in the near term.  Without the

generation of any new revenue, and given its inability to access the proposed DIP Financing,

M&G Polymers has an immediate and critical need for the use of Cash Collateral to

(a) safeguard the public, (b) continue to provide employment and benefits to certain of its

employees and (c) avoid irreparable harm to its estate and creditors.

19.     In addition, M&G Polymers intends to use the time it has access to Cash

Collateral to seek an alternative to liquidation, *i.e.*, a resolution that does not result in the

conversion to a case under chapter 7 of the Bankruptcy Code.  Access to the Cash Collateral will

also enable M&G Polymers to retain a maximum of 37 employees to provide services relating to,

among other things, the liquidation of Comerica's collateral, and the mothballing and

environmental compliance of, the Apple Grove Plant.

20.     For all of the foregoing reasons, M&G Polymers' continued use of Cash Collateral

is necessary to preserve the value of its estate and maximize its value for the benefit of all

stakeholders.  Under the Interim Order, M&G Polymers' use of Cash Collateral is subject to

certain limitations, including that M&G Polymers may only use Cash Collateral up to the

maximum amounts, at the times and exclusively for the purposes set forth in the nine-week

budget attached as Exhibit A to the proposed Interim Order (the "Budget").

### B.    Summary of Principal Terms of the Interim Order

21.    The principal terms of the proposed Interim Order are as follows:[2]

| REQUIRED DISCLOSURE | SUMMARY OF MATERIAL TERMS |
|---|---|
| **Entities with an Interest in Cash Collateral** *Interim Order, ¶ F* | Comerica Bank, as lender under the Prepetition Credit Agreement. |
| **Purposes for the Use of Cash Collateral** *Interim Order, ¶ G* | To avoid immediate and irreparable harm to M&G Polymer's estate and maximize its value for the benefit of all stakeholders.  To provide access to funds necessary for M&G Polymers to perform its environmental monitoring and maintenance obligations with respect to the Apple Grove Plant, and thus protect public health and safety. |
| **Term** *Interim Order, ¶¶ 3, 14* | Subject to the terms and conditions of the Interim Order, and limited to the maximum amounts, at the times and for the purposes set forth in the Budget, the Debtor is authorized to use Cash Collateral until the earlier of (a) December 29, 2017, and (b) the day following written notice from Comerica of the occurrence of a Termination Event (as defined in paragraph 14 of the Interim Order). |
| **Adequate Protection Liens** *Interim Order, ¶ 4* | Comerica is granted as adequate protection for the use of its Cash Collateral (each, a "Comerica Adequate Protection Lien"):  (x) the prior and senior security interest in and lien on any proceeds from or of any sale or other disposition of the Debtor's property, plant and equipment located in Apple Grove, West Virginia ("Apple Grove Facility"), to which Inbursa, as existing first-lien secured lender on certain of the Debtor's property as set forth in the Inbursa Guaranty Documents, consents solely to the extent that the amount of such Adequate Protection Lien does not exceed the lesser of (i) $9.6 million or (ii) the actual amount of Cash Collateral used by the Debtor; and (y) a security interest in and lien on all of the Debtor's and the estate's interest in any and all property, whether real (other than the Apple Grove Facility), personal, tangible or intangible, whether presently existing or hereafter acquired or created, in each case, subject and junior to any properly perfected, non-avoidable, first-priority, security interests or other liens existing on the Petition Date in such property (each of (x) and (y), "Post-Petition Collateral"). |
| | Inbursa is granted as adequate protection for any diminution in value of the Inbursa Guaranty Liens, a security interest in and lien on the Postpetition Collateral identified in paragraph 4(b)(i) of the Interim Order, which is junior and subordinate to the security interests and liens of Comerica in the Post-Petition Collateral described in paragraph 4(b)(i) (the "Inbursa Adequate Protection Lien" and together with the Comerica Adequate Protection Lien, the "Adequate Protection Liens"). The Inbursa Adequate Protection Lien excludes the Pre-Petition Collateral, including any Accounts and Accounts Receivable of the Debtor, the Inventory of the Debtor, the OVB Account and any other deposit account of the Debtor, and the proceeds of any of the foregoing. |
| | The Adequate Protection Liens are and shall be valid, binding, enforceable and |

---

[2]    This summary is qualified in its entirety by the provisions of the Interim Order.

| REQUIRED DISCLOSURE | SUMMARY OF MATERIAL TERMS |
|---|---|
| | fully perfected as of the date of the Interim Order. |
| | The Adequate Protection Liens shall not be made junior to, subject to or *pari passu* with any lien or security interest granted in the Case at any time or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case (a "Successor Case"). The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or any Successor Case. The Adequate Protection Liens are granted to the extent of any Diminution in Value of Comerica's interest in the Prepetition Collateral and Inbursa's Interest in the Inbursa Collateral. |
| | No security interests or other liens, including any security interests or other liens of the DIP Lender, DIP Agent or DIP Secured Parties (each as defined in the Interim the DIP Order [Doc. No. [   ]), and regardless of priority, shall be granted to any third party in, on or against any Prepetition Collateral, including the proceeds thereof, any Accounts and Accounts Receivable of the Debtor, the Inventory of the Debtor, the OVB Account and any other deposit account of the Debtor, or the Inbursa Collateral. |
| **Adequate Protection Superpriority Claim** *Interim Order,* ¶ 5 | As further adequate protection of the interests of Comerica with respect to the Prepetition Obligations and Inbursa with respect to the Inbursa Prepetition Obligations, Comerica and Inbursa are hereby granted allowed administrative claims against the Debtor's estate under Section 503(b) of the Bankruptcy Code with superpriority pursuant to Section 507(b) of the Bankruptcy Code ("Adequate Protection Superpriority Claims") to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of Comerica's interests in the Prepetition Collateral or Inbursa's interests in the Inbursa Collateral. |
| | The Adequate Protection Superpriority Claims shall have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code. The Adequate Protection Superpriority Claims of Comerica shall be senior in priority to the Adequate Protection Superpriority Claims of Inbursa. The Adequate Protection Superpriority Claims shall be payable and have recourse to the proceeds of any claims or causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including, without limitation, Chapter 5 and Section 724(a) of the Bankruptcy Code. |
| **Adequate Protection Payments** *Interim Order,* ¶¶ 4(a), 7 | Comerica shall receive payment of the Prepetition Obligations from the proceeds of the Prepetition Collateral and Post-Petition Collateral as set forth in paragraph 7 of the Interim Order (collectively, the "Adequate Protection Payments"). |
| | All proceeds of Accounts and Accounts Receivable of Debtor and the sales and other dispositions of Inventory of Debtor, upon receipt by Debtor, shall be delivered to Comerica in the form received, and deposited into a segregated cash collateral account (account ending in *452) maintained by, and under the exclusive control of, Comerica. Comerica shall have the right to and may apply such proceeds to the Prepetition Obligations upon receipt and without further Court Order. |
| | Upon entry of the Final Order, all cash on deposit in the OVB Account (other than the Disputed Collateral and an amount of cash sufficient to fund (i) 110% of the Budget attributable to the line items comprising Total Non-Labor and Professional |

| REQUIRED DISCLOSURE | SUMMARY OF MATERIAL TERMS |
|---|---|
| | Fees in the Budget less the amount that has been actually funded therefor and (ii) 115% of the Budget attributable to the line items comprising Total Labor Cost in the Budget less the amount that has been actually funded therefor), shall be delivered to Comerica in the form received, and deposited into a segregated cash collateral account (account ending in *452) maintained by, and under the exclusive control of, Comerica.  Upon the expiration of the Challenge Period, Comerica shall have the right to and may apply to the Prepetition Obligations any cash in the segregated cash collateral account that is not the subject of a Challenge without further Court Order.  If a Challenge is made during the Challenge Period, then, upon the resolution of the Challenge, Comerica shall have the right to apply to the Prepetition Obligations any cash in the segregated cash collateral account that is subject to such Challenge in accordance with the resolution of the Challenge at the time of such resolution.<br><br>Upon entry of the Final Order, Comerica shall have the right to and may apply all cash of the Debtor in any deposit account maintained by Comerica in the name of the Debtor to the Prepetition Obligations without further Court Order. |
| **Stipulations**<br>*Interim Order, ¶ F* | Paragraph F of the Interim Order contains certain acknowledgements and stipulations by M&G Polymers concerning, among other things, the amount due and owing under the Prepetition Credit Documents, the validity and perfection of Comerica's and Inbursa's prepetition liens on M&G Polymers' assets and M&G Polymers' cash constituting Cash Collateral. |
| **Budgets and Reporting**<br>*Interim Order, ¶¶ G(iii), 11* | As a condition to the authorization to use Cash Collateral, Comerica requires, and the Debtor has agreed, that Cash Collateral may be used in the maximum amounts, at the times and exclusively for the purposes set forth in the budget (a copy of which is attached as Exhibit A to the proposed Interim Order), as the same may be modified from time to time with the prior written consent of Comerica (the "Budget").<br><br>The Debtor shall furnish to Comerica such financial and other information as Comerica shall reasonably request.  Debtor shall furnish to Comerica each of the following financial reports:<br><br>A daily detailed report of actual receipts and disbursements and associated daily balances of cash, accounts receivable and inventory.  On a weekly basis, the Debtor will conduct a reconciliation of the prior week's activity and provide an adjusted report of actual receipts, disbursements and ending balances of cash, accounts receivable and inventory.<br><br>No later than the close of business each Tuesday, beginning on Tuesday, November 7, 2017 (for the week ending November 3), a weekly report for the prior week, detailed by line item, of the cumulative variances in actual receipts and disbursements compared to the projected receipts and disbursements in the Budget.<br><br>No later than the close of business each Tuesday, beginning on Tuesday, November 7, 2017 (for the week ending November 3), a detailed accounts receivable aged trial balance and a detailed perpetual inventory listing as of the end of the prior week.<br><br>No later than each Tuesday, for the period from the Petition Date through the end of the prior week, beginning on Tuesday, November 7, 2017 (through the week ending November 3), a comparison of the (x) actual and budgeted disbursements for line items comprising "Total Labor" in the Budget ("Total Labor Variance") and (y) actual and budgeted disbursements for the sum of the line items comprising "Total Non-Labor Cost" in the Budget ("Total Non-Labor Variance"). |

| REQUIRED DISCLOSURE | SUMMARY OF MATERIAL TERMS |
|---|---|
| | No later than each Tuesday, for the period from the Petition Date through the end of the prior week, beginning on Tuesday, November 14, 2017 (through the week ending November 10), a comparison of the actual cumulative receipts and budgeted cumulative receipts in the Budget ("Receipts Variance"). |
| | Any financial information and pleadings filed with the Court shall be served upon Comerica and its counsel simultaneously with the filing of such information or pleading with the Court. |
| | On or before noon on each Friday, all other financial information and reports prepared by the Debtor in the ordinary course of its business, including any financial information required by the Court or by any applicable operating guidelines and/or reporting requirements of the U.S. Trustee. |
| **Remedies** *Interim Order*, ¶ 15(a) | Immediately upon the occurrence and during the continuance of a Termination Event, (i) Comerica may terminate the Debtor's authority to use Cash Collateral by providing written notice as set forth in paragraph 15(b) of the Interim Order (such notice, a "Termination Notice") and (ii) at Comerica's option, any right or ability of the Debtor to use any Cash Collateral (other than as expressly set forth in the Interim Order during the Remedies Notice Period may be terminated, reduced or restricted by Comerica. Following the Termination Notice, subject to the Remedies Notice Period, Comerica may exercise all rights and remedies available to it under the Prepetition Credit Documents or applicable law against the Prepetition Collateral and the Post-Petition Collateral. Without limiting the foregoing, Comerica may (i) enter onto the premises of the Debtor in connection with an orderly liquidation of such collateral; (ii) exercise any rights and remedies provided to Comerica under the Prepetition Credit Documents, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to the Interim Order and the Final Order; (iii) direct the Debtor's banks to immediately remit all proceeds contained in any and all deposit accounts to Comerica; and (iv) direct the Debtor's account debtors to pay their Accounts and Accounts Receivable directly to Comerica. |
| **Early Termination Carve-Out** *Interim Order*, ¶ 15(c) | In the event a Termination Date occurs prior to December 29, 2017 (an "Early Termination Event"), the Debtor shall be entitled to use Cash Collateral provided in the Budget for the following purposes only (the sum of (i) through (v) below, the "Early Termination Carve-Out"): <ul><li>Compensation and benefits for the 16 retained employees (to the extent employed at the time of the Early Termination Event) for a period of 10 days after the Termination Date to secure the Apple Grove Facility.</li><li>The retained employees, including the 16 referenced above, will receive, to the extent still providing services on the Termination Date, severance comprised of 10 days compensation and benefits, reimbursable business expenses and the cash value of any accrued, but unused, vacation through December 29, 2017.</li><li>All amounts owing on account of benefits incurred by, or owing to any employees, through the Termination Date, that would have been payable under the Budget, but for the Early Termination Event.</li><li>All accrued and unpaid professional fee claims for services rendered which are directly attributable to this Debtor after the date of the entry of this Interim Order and prior to the Termination Date up to the difference between $850,000 and the amount paid to such professionals during that period.</li></ul> |

| REQUIRED DISCLOSURE | SUMMARY OF MATERIAL TERMS |
|---|---|
| | • 10 days' worth of environmental compliance and safety materials necessary to secure Apple Grove after the Termination Date, as negotiated by the Debtor and Comerica in good faith.<br><br>Notwithstanding anything in the Interim Order or any Prepetition Credit Documents to the contrary, following the occurrence of an Early Termination Event the rights and claims of Comerica and Inbursa, including the Prepetition Liens and the Inbursa Guaranty Liens, shall be subject and subordinate in all respects to the payment of the Early Termination Carve-Out. For the avoidance of doubt, nothing in this paragraph is intended to constitute, nor shall be construed as, consent to the allowance of any fees, costs or expenses by any professional retained in this Case, and shall not affect the rights of the Debtor, Comerica, Inbursa, or any other lender or party in interest to object to such fees, costs or expenses. |
| **Reservation of Certain Third Party Rights and Challenge Period**<br>*Interim Order,* ¶ 17(a)-(b) | The stipulations, findings, and representations contained in the Interim Order with respect to Comerica and the Prepetition Obligations, and Inbursa and the Inbursa Prepetition Obligations, shall be binding upon the Debtor, all parties-in-interest, any creditor, any trustee appointed in this case, any Statutory Committee and any other person (each, other than the Debtor, a "Challenge Party"), unless and solely to the extent that (i) the Debtor or, subject to clause (b) below, a Challenge Party initiates an action or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. For purposes of this paragraph: (a) "Challenge" means any claim or cause of action against Comerica or Inbursa, in each case, on behalf of the Debtor, its estate or the Debtor's creditors and interest holders or any other person, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the security interests and liens of Comerica or Inbursa; (ii) the validity, allowability, priority, or amount of any of the Prepetition Obligations or Inbursa Prepetition Obligations; (iii) the secured status of any of the Prepetition Obligations or Inbursa Prepetition Obligations; or (iv) any liability of Comerica with respect to anything arising from any of the respective Prepetition Credit Documents or any liability of Inbursa with respect to anything arising from any of the respective Inbursa Guaranty Documents; and (b) "Challenge Period" means (i) with respect to any person or any party-in-interest other than the Statutory Committee, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of this Interim Order and (ii) with respect to the Statutory Committee, the period from the date such Statutory Committee is formed until the date that is sixty (60) calendar days thereafter; provided, that, the Challenge Period shall be tolled, solely as to (i) any Challenge identified in a motion filed by the Statutory Committee with this Court within the initial 60-day challenge period seeking standing to commence a Challenge, until such time as (and to the extent that) such standing motion is granted or denied by this Court; or (ii) any Challenge as to which the Debtor was provided notice in accordance with paragraph 17(b) herein until such time as the Court enters an order with respect to any motion under Bankruptcy Rule 9019.<br><br>During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge which is derivative of the Debtor's rights, it must notify the Debtor and Comerica during the Challenge Period of its demand that the Debtor initiate an action or adversary proceeding relating thereto, and from the date that the Debtor and Comerica or Inbursa, as applicable, are so notified, the Debtor shall have five (5) days to notify the Challenge Party of whether the Debtor intends to |

| REQUIRED DISCLOSURE | SUMMARY OF MATERIAL TERMS |
|---|---|
| | initiate such action (or a settlement in lieu of an adversary proceeding, provided that the Challenge Period shall be tolled upon notice by the Debtor of its intention to settle such Challenge until entry of a court order approving or denying Debtor's authority to enter into such settlement) and ten (10) days to initiate such action.  If the Debtor notifies such Challenge Party that the Debtor does not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to seek standing to initiate an action or adversary proceeding.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  The Debtor, if timely notified of a potential Challenge and if such Challenge is commenced in a timely manner as set forth herein, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of this Court. |
| Releases<br>*Interim Order*, ¶ 17(c) | Upon the expiration of the Challenge Period without the filing of a Challenge ("Challenge Period Termination Date"): (A) any and all such Challenges and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case and any third party), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to Comerica's or Inbursa's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate and all creditors, equity interest holders, any person and other parties in interest in this Case and any Successor Case; and (C) any and all claims or causes of action against Comerica relating in any way to the Debtor or the Prepetition Credit Documents or Inbursa and the Inbursa Guaranty Documents shall be forever waived and released by the Debtor's estates, all creditors, equity interest holders, other parties and other parties in interest in this Case and any Successor Case. |

## LEGAL BASIS FOR RELIEF REQUESTED

22.    M&G Polymers submits that the relief requested herein is appropriate under the circumstances and in the best interests of the M&G Polymers and its estate.  Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  With respect to proceeds of the Prepetition Collateral, Comerica is the only entity that possesses an interest in the Cash Collateral, and Comerica consents to its use in accordance with the Interim Order.

23.    M&G Polymers further submits that the adequate protection provided to Comerica and Inbursa under the Interim Order is appropriate and sufficient.  Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property ... proposed to be used, sold, or leased, by the trustee, the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to:  (a) a lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) "additional or replacement lien[s]" to the extent that the use of cash collateral will cause a "decrease in the value of such entity's interest in such property;" and (c) "granting such other relief ... as will result in the realization by [the] entity of the indubitable equivalent of such entity's interest in the property."  11 U.S.C. § 361; see also Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.").

24.    The principal purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such interest. See Swedeland, 16 F.3d at 564 ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (quoting MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396 (10th Cir. 1987)); Del. Tr. Co. v. Wilmington Tr., N.A. (In re Energy Future Holdings Corp.), 546 B.R. 566, 581 (Bankr. D. Del. 2016) ("The purpose of adequate protection 'is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor.'") (quoting In re Satcon Tech. Corp., No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012)).

25.    As more fully detailed in the Interim Order, as adequate protection for M&G

Polymers' use of Comerica's Cash Collateral, M&G Polymers will be providing the following to

Comerica and Inbursa, as applicable:

(a) (i) to Comerica, the prior and senior security interest in and lien on any

proceeds from any sale or other disposition of M&G Polymers' property, plant and equipment

located at the Apple Grove Plant site, to which Inbursa consents to the extent that the amount of

such adequate protection lien does not exceed the lesser of (A) $9.6 million or (B) the actual amount

of Cash Collateral used by M&G Polymers; and (ii) a security interest in and lien on all of M&G

Polymers' and its estate's interest in any and all property, whether real (other than the Apple Grove

Plant), personal, tangible or intangible, whether presently existing or hereafter acquired or created, in

each case, subject and junior to any properly perfected, non-avoidable, first-priority, security

interests or other liens existing on the Polymers Petition Date in such property ((i) and (ii) together,

the "Comerica Adequate Protection Lien");

(b) to Inbursa, for any diminution in value of the Inbursa Guaranty Liens, a security

interest in and lien on the Postpetition Collateral identified in subparagraph (a) of this paragraph 27,

which is junior and subordinate to the security interests and liens of Comerica in the Post-Petition

Collateral described in subparagraph (a) (the "Inbursa Adequate Protection Lien" and, together with

the Comerica Adequate Protection Lien, the "Adequate Protection Liens").  The Inbursa Adequate

Protection Lien excludes the Pre-Petition Collateral, including any Accounts and Accounts

Receivable of the M&G Polymers, its Inventory, the OVB Account and any other deposit account of

M&G Polymers, and the proceeds of any of the foregoing;

(c) to Comerica and Inbursa, allowed administrative claims against M&G Polymers'

estate under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(b) of

the Bankruptcy Code, to the extent that the Adequate Protection Liens do not adequately protect

against any diminution in value of Comerica's or Inbursa's interests, as applicable, in the Prepetition Collateral (the "Adequate Protection Superpriority Claims"); and

(d)  to Comerica, payment of the Prepetition Obligations from the proceeds of the Prepetition Collateral and the collateral subject to the Comerica Adequate Protection Lien, on the terms and conditions set forth in the Interim Order (the "Adequate Protection Payments").

26.    The terms and conditions on which M&G Polymers may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Interim Order is entered, M&G Polymers will have working capital to fulfill its near term critical environmental maintenance and monitoring obligations at the Apple Grove Plant, continue its efforts to mothball the Apple Grove Plant and provide some time for M&G Polymers to seek an alternative to liquidation.  At the same time, Comerica and Inbursa will be adequately protected in a manner that they have agreed to in exchange for consenting to M&G Polymers' use of Comerica's Cash Collateral.  Therefore, M&G Polymers respectfully submits that the proposed Interim Order adequately protects Comerica and Inbursa, is in the best interests of M&G Polymers, its estate, its creditors and all parties in interest, and should be authorized by the Court.

**Request for Modification of the Automatic Stay**

27.    The proposed Interim Order contemplates the modification of the Automatic Stay to the extent necessary to implement the provisions of the Interim Order, thereby permitting M&G Polymers to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and to make the Adequate Protection Payments.  Accordingly, M&G Polymers respectfully requests that this Court authorize the modification of the Automatic Stay in accordance with the terms set forth in the Interim Order.

## Requirements Under Local Rule 4001-2(a)

28.    Local Rule 4001-2 requires that cash collateral motions (a) recite whether the proposed form of order contains any of several types of provision, (b) identify the location of the provision in the proposed form of order and (c) justify the inclusion of the provision.  M&G Polymers identifies and discusses the following provisions of the Interim Order in accordance with Local Rule 4001-2 in the context and circumstances of these cases.

29.    <u>Cross-Collateralization</u>.  Local Rule 4001-2(a)(i)(A) requires disclosure of:

> [p]rovisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (*i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law).

Del. Bankr. L.R. 4001-2(a)(i)(A).  No provision of the Interim Order grants cross-collateralization protection of the type contemplated by Local Rule 4001-2(a)(i)(A).

30.    <u>Stipulation and Challenge Provisions</u>.  Local Rule 4001-2(a)(i)(B) requires disclosure of:

> [p]rovisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters.

Del. Bankr. L.R. 4001-2(a)(i)(B).

31.    Pursuant to the Interim Order, M&G Polymers and Comerica stipulate as follows:

> (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (but only to the extent any such permitted liens exist and were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens on the Petition Date, the "<u>Prepetition Permitted Liens</u>"); (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable

obligations of the Debtor and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against Comerica or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents.

Interim Order, at ¶ F(iv).  Similarly, M&G Polymers and Inbursa stipulate as follows:

(a) the Inbursa Guaranty Liens on the Inbursa Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) the Inbursa Guaranty Liens have priority over any and all other liens, if any, on the Inbursa Collateral, subject only to certain other liens otherwise, if any, permitted by the Pre-Petition First Lien Guaranty Mortgage (but only to the extent any such permitted liens exist and were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Inbursa Guaranty Liens on the Petition Date, the "Inbursa Prepetition Permitted Liens"); (c) the Inbursa Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Inbursa Guaranty Liens or the Inbursa Prepetition Obligations exist, and no portion of the Inbursa Guaranty Liens or the Inbursa Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against Inbursa or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Inbursa Guaranty.

Interim Order, at ¶ F(vi).

32.     The Interim Order provides a mechanism, however, for parties in interest to initiate a "Challenge" with respect to "(i) the validity, extent, priority, or perfection of the security interests and liens of Comerica or Inbursa; (ii) the validity, allowability, priority, or

amount of any of the Prepetition Obligations or Inbursa Prepetition Obligations; (iii) the secured

status of any of the Prepetition Obligations or Inbursa Prepetition Obligations; or (iv) any

liability of Comerica with respect to anything arising from any of the respective Prepetition

Credit Documents or any liability of Inbursa with respect to anything arising from any of the

respective Inbursa Guaranty Documents." Interim Order, at ¶ 17(a). Under paragraph 17 of the

Interim Order, any person other than a statutory committee may initiate a Challenge within 75

days after the entry of the Interim Order, and the deadline applicable to any Statutory Committee

is 60 days after the appointment of such committee. See id. M&G Polymers therefore submits

that the challenge provisions of the Interim Order substantially comply with Local

Rule 4001-2(a)(i)(B) and are appropriate in the circumstances.

      33.    <u>Section 506(c) Waiver and "Equities of the Case" Exception</u>. Local

Rule 4001-2(a)(i)(C) requires disclosure of "[p]rovisions that seek to waive, without notice,

whatever rights the estate may have under 11 U.S.C. § 506(c)." Del. Bankr.

L.R. 4001-2(a)(i)(C). In addition, pursuant to Local Rule 4001-2(a)(i)(H), a movant must

describe provisions of the proposed debtor-in-possession facility that "seek to affect the Court's

power to consider the equities of the case under [section 552(b)(1) of the Bankruptcy Code]".

Del. Bankr. L.R. 4001-2(a)(i)(H).

      34.    Paragraph I of the Interim Order contains the following provision:

> In light of Comerica's agreement to consent to the use of Cash Collateral in
> accordance with the Budget and Inbursa's agreement in paragraph 4(b)(i),
> effective upon entry of the Final Order, the Debtor hereby waives and Comerica
> and Inbursa are each deemed to have received a waiver of (a) the provisions of
> Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims
> under Section 552(b) of the Bankruptcy Code.

Interim Order, at ¶ I.

35.    As is customary for agreed cash collateral orders, Comerica and Inbursa required the section 506(c) waiver contained in paragraph I of the Interim Order as a condition to agreeing to M&G Polymers' use of Cash Collateral.  Thus, the 506(c) Waiver represents an integral, negotiated term of the proposed Interim Order, without which M&G Polymers would have been unable to negotiate the use of Cash Collateral.  Similarly, provisions such as the "equities of the case" claim exception are common in cash collateral orders and, in this case, such provision forms an integral component of the bargain achieved between Comerica, Inbursa and M&G Polymers with respect to the use of Cash Collateral.  M&G Polymers, therefore, submits that it is reasonable, and would be in the best interests of M&G Polymers' estate, for the Court to (a) approve the section 506(c) waiver and (b) agree to limit its power under the "equities of the case" exception to section 552(b)(1) of the Bankruptcy Code.

36.    <u>Liens on Avoidance Actions</u>.  Local Rule 4001-2(a)(i)(D) requires disclosure of "[p]rovisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549."  Del. Bankr. L.R. 4001-2(a)(i)(D).  The Interim Order does not contain provisions that immediately grant any creditor liens on M&G Polymers' claims and causes of action under the foregoing provisions.

37.    <u>Roll-up</u>.  Pursuant to Local Rule 4001-2(a)(i)(E), a movant must disclose "[p]rovisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b)."  Del. Bankr. L.R. 4001-2(a)(i)(E).  The Interim Order contains no such provision.

38.    <u>Creditors' Committee Professionals</u>.  Pursuant to Local Rule 4001-2(a)(i)(F), a movant must describe "[p]rovisions that provide disparate treatment for the professionals

retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out." Del. Bankr. L.R. 4001-2(a)(i)(F).  M&G Polymers submits that this requirement is not applicable under the circumstances, because the funding component of the Budget with respect to M&G Polymers' professionals is debtor-specific, *i.e.*, it does not implicate the Debtors generally and relates solely to M&G Polymers and the liquidation of its lenders' collateral.

39.     <u>Priming Liens</u>.  Pursuant to Local Rule 4001-2(a)(i)(G), a movant must describe "[p]rovisions that prime any secured lien without the consent of that lienor." Del. Bankr. L.R. 4001-2(a)(i)(G).  The Interim Order does not implicate Local Rule 4001-2(a)(i)(G) because no nonconsensual priming will occur thereunder.

### Request for Waiver of Stay

40.     By this Motion, M&G Polymers seeks a waiver of any stay of the effectiveness of the Interim Order.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the immediate use of Cash Collateral is essential to prevent potentially irreparable damage to the M&G Polymers' estate.  Accordingly, M&G Polymers submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

### Request for Interim and Final Hearings

41.     Pursuant to Bankruptcy Rule 4001(b), M&G Polymers requests that the Court conduct an interim hearing and authorize M&G Polymers to use, on an interim basis, Cash Collateral in accordance with the Budget and the terms and provisions of the Interim Order in order to: (a) maintain and protect its property; (b) pursue a value maximizing transaction for all stakeholders, including Comerica and Inbursa; and (c) avoid immediate and irreparable harm to M&G Polymers'

estate and all parties in interest. If M&G Polymers is unable to obtain immediate use of Cash Collateral, it would likely be unable to comply with its environmental obligations with respect to the Apple Grove Plant, and could be forced to convert its chapter 11 case to a chapter 7 case, which would cause irreparable harm to M&G Polymers' estate and its creditors, including Comerica and Inbursa.

42.    Pursuant to Bankruptcy Rule 4001(b)(2), M&G Polymers requests that the Court set a date for the Final Hearing that is as soon as practicable and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## Consent to Jurisdiction

43.    Pursuant to Local Rule 9013-1(f), M&G Polymers consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

44.    Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (c) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (d) Magnate S.à r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP (Attn: Lisa M. Schweitzer); (g) Miller, Canfield, Paddock and Stone, PLC (Attn: Jonathan S. Green, Esq.) and Connolly Gallagher (Attn: Karen Bifferato, Esq.), attorneys for Comerica; (h) counsel for any statutory committee appointed in these chapter 11 cases; and (i) those parties, if any, who have

filed a notice of appearance and request for service of pleadings in this Case pursuant to

Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of

the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in

respect to this Motion as required by Local Rule 9013-1(m).  M&G Polymers submits that no

other or further notice need be provided.

## No Prior Request

45.     No prior request for the relief sought herein has been made to this Court or any

other court.

NAI-1503157325v8
DOCS_DE:215926.1 54032/001

WHEREFORE, the M&G Polymers respectfully requests that the Court enter the

proposed Interim Order and grant such other and further relief as may be appropriate.

Dated: November 1, 2017                    PACHULSKI STANG ZIEHL & JONES LLP

                                           ___/s/ James E. O'Neill_____
                                           Laura Davis Jones (DE Bar No. 2436)
                                           James E. O'Neill (DE Bar No. 4042)
                                           Joseph M. Mulvihill (DE Bar No. 6061)
                                           919 N. Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, DE 19899-8705 (Courier 19801)
                                           Telephone:    (302) 652-4100
                                           Facsimile:    (302) 652-4400
                                           Email:        ljones@pszjlaw.com
                                                         joneill@pszjlaw.com
                                                         jmulvihill@pszjlaw.com

                                           and

                                           JONES DAY
                                           Scott J. Greenberg
                                           Stacey L. Corr-Irvine
                                           250 Vesey Street
                                           New York, NY 10281
                                           Telephone:    (212) 326-3939
                                           Facsimile:    (212) 755-7306
                                           Email:        sgreenberg@jonesday.com
                                                         scorrirvine@jonesday.com

                                           and

                                           Carl E. Black
                                           901 Lakeside Avenue
                                           Cleveland, Ohio 44114
                                           Telephone:    (216) 586-7035
                                           Facsimile:    (216) 579-0212
                                           Email:        ceblack@jonesday.com

                                           Proposed Co-Counsel for the Debtors and
                                           Debtors in Possession