# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
|  | : |  |
| Debtors. | : | (Joint Administration) |
|  | : |  |
|  | : | Re: Docket No. 53 |

## INTERIM ORDER PURSUANT TO 11 U.S.C §§ 105, 361, 362, 363 AND 507 (1) AUTHORIZING USE OF CASH COLLATERAL (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING

Upon the motion, dated November 1, 2017 ("<u>Motion</u>") of M & G Polymers USA, LLC, as a debtor and debtor in possession ("<u>Debtor</u>") in the above captioned Chapter 11 case ("<u>Case</u>"), pursuant to Sections 105, 361, 362, 363, and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 *et seq.,* as amended, the "<u>Bankruptcy Code</u>"), Rule 4001 of the Federal Rules of Bankruptcy Procedures ("<u>Bankruptcy Rules</u>") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("<u>Local Rules</u>"), *inter alia*:

(i) authorizing the Debtor's use of Cash Collateral (as such term is defined in Section 363(a) of the Bankruptcy Code) of Comerica Bank ("<u>Comerica</u>") pursuant to Bankruptcy Code Section 361 and 363, Bankruptcy Rules 4001(b) and 6004, and Local Rule 4001-2;

(ii) providing adequate protection to Comerica Bank and Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa to the extent set forth in this Interim Order;

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

30126453.17\018095-00603

(iii) vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

(iv) scheduling a final hearing ("Final Hearing") to consider entry of an order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the exhibits attached to the Motion, the Declaration of Dennis Stogsdill, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the Motion ("Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b) and (d), 9014, and Local Bankruptcy Rule 4001-2; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, and is essential for the preservation, maintenance and maximization of the value of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE

30126453.17\018095-00603

REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A. <u>Petition Date</u>. On October 24, 2017 ("<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware ("<u>Court</u>").

B. <u>Debtor in Possession</u>. The Debtor is continuing in the management and operation of its business and property as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Interim Order are Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-2.

D. <u>Committee Formation</u>. As of the date of this Interim Order, the Office of the United States Trustee ("<u>U.S. Trustee</u>") has not yet appointed any official committee in the Case pursuant to Section 1102 of the Bankruptcy Code (a "<u>Statutory Committee</u>").

E. <u>Notice</u>. Proper, timely, adequate and sufficient notice under the particular circumstances of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

---

[2] The findings and conclusions set forth in this Interim Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

- 3 -

F.    Debtor's Stipulations.  Without prejudice to the rights of parties-in-interest as set forth in paragraph 17 below, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows (paragraphs F(i) through F(ix) below are referred to in this Interim Order, collectively, as the "Debtor's Stipulations"):

i.    *Prepetition Credit Documents.*  As of the Petition Date, the Debtor had outstanding secured debt owing to Comerica pursuant to a Credit Agreement dated as of December 21, 2015 (as amended, modified and supplemented from time to time, the "Prepetition Credit Agreement" and together with all related security and other documents, guaranties and agreements, the "Prepetition Credit Documents").

ii.    *Inbursa Guaranty.*  As of the Petition Date, the Debtor had outstanding first-lien debt owing pursuant to that certain Guaranty dated as of March 21, 2013 by Debtor for the benefit of the Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa (including any successors and assigns, "Inbursa" and such guaranty, the "Inbursa Guaranty"), secured by a *Credit Line Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing* (as at any time modified, amended or restated, the "Pre-Petition First Lien Guaranty Mortgage" and together with the Inbursa Guaranty, the "Inbursa Guaranty Documents")[3] executed as of March 15, 2013 and effective as of March 21, 2013,

---

[3]    The Pre-Petition First Lien Guaranty Mortgage was subsequently amended to increase the maximum amount secured by the mortgage in order to reflect the revised loan amount under the underlying loan agreements pursuant to that certain Amendment to the Pre-Petition First Lien Mortgage dated as of September 2, 2016 and that certain Second Amendment to the Pre-Petition First Lien Mortgage dated as of June 29, 2017

- 4 -

and recorded in the Office of the Clerk of the County Commission of Mason County, West Virginia in Trust Deed Book 394, at Page 556, by M&G Polymers, as grantor, for the benefit of the Inbursa, M&G Polymers granted to Inbursa first priority liens on and security interests in the Collateral (as defined in the Pre-Petition First Lien Guaranty Mortgage, and for purposes of this order, the "Inbursa Collateral" and such security in the Inbursa Collateral, the "Inbursa Guaranty Liens").

       iii.    *Prepetition Obligations.* As of the Petition Date, the aggregate outstanding amount owed by the Debtor under the Prepetition Credit Documents was not less than $48,670,982.92, consisting of loans in the outstanding principal amount of $48,534,678.94 and accrued interest in the amount of $136,303.98 (the "Loans" and together with any interest, fees, costs and other charges or amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, and further including all "Indebtedness" as described in the Prepetition Credit Agreement, and, to the extent allowable, all interest, fees, costs and other charges which may be allowed under Section 506(b) of the Bankruptcy Code, the "Prepetition Obligations"). As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted first-priority security interests in and liens on the Collateral (as defined in the Prepetition Credit Documents) including, without limitation, all Inventory, Accounts and Accounts Receivable, deposit accounts, and all proceeds of the foregoing (collectively, the "Prepetition Collateral") to

Comerica (collectively, the "Prepetition Liens") to secure repayment of the Prepetition Obligations.

        iv.     *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* The Debtor and Comerica acknowledge and agree that: (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (but only to the extent any such permitted liens exist and were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens on the Petition Date, the "Prepetition Permitted Liens"); (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the

- 6 -

Bankruptcy Code, against Comerica or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents.

v. *Inbursa Prepetition Obligations.* As of the Petition Date, the aggregate outstanding amount owed by the Debtor under the Inbursa Guaranty was not less than $436,000,000 in outstanding principal amount (together with any interest, fees, costs and other charges or amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Inbursa Guaranty Documents, and further including all other obligations guaranteed by the Inbursa Guaranty Documents, and, to the extent allowable, all interest, fees, costs and other charges which may be allowed under Section 506(b) of the Bankruptcy Code, the "Inbursa Prepetition Obligations"). As more fully set forth in the Inbursa Guaranty Documents, prior to the Petition Date, the Debtor granted the Inbursa Guaranty Liens in the Inbursa Collateral to secure repayment of the Inbursa Prepetition Obligations.

vi. *Validity, Perfection and Priority of Inbursa Guaranty and Inbursa Prepetition Obligations.* The Debtor and Inbursa acknowledge and agree that: (a) the Inbursa Guaranty Liens on the Inbursa Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) the Inbursa Guaranty Liens have priority over any and all other liens, if any, on the Inbursa Collateral, subject only to certain other liens otherwise, if any, permitted by the Pre-Petition First Lien Guaranty Mortgage (but only to the extent any such permitted liens exist and were valid, binding, enforceable, properly perfected, non-avoidable and

- 7 -

senior in priority to the Inbursa Guaranty Liens on the Petition Date, the "Inbursa Prepetition Permitted Liens"); (c) the Inbursa Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Inbursa Guaranty Liens or the Inbursa Prepetition Obligations exist, and no portion of the Inbursa Guaranty Liens or the Inbursa Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against Inbursa or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Inbursa Guaranty.

vii.    *Cash Collateral.* Other than with respect to the Disputed Collateral ($1.25 million), the Debtor acknowledges and stipulates that all of the Debtor's cash, including the cash in all of its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of Comerica.

viii. *Default by the Debtor.* The Debtor acknowledges and stipulates that the Debtor is in default under each of the Prepetition Credit Documents.

ix. *No Other Liens.* As of the Petition Date, other than the Prepetition Permitted Liens, if any, there were no security interests or liens on the Prepetition Collateral other than the Prepetition Liens.

G. <u>Findings Regarding the Use of Cash Collateral.</u>

i. *Request for Use of Cash Collateral.* The Debtor seeks authority to use Cash Collateral on the terms described herein, in the amounts, at the times and for the purposes described in the attached Budget (as defined herein). At the Final Hearing, the Debtor will seek final approval of the proposed use of Cash Collateral pursuant to a proposed final order ("<u>Final Order</u>"), which shall be in form and substance acceptable to Comerica. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

ii. *Need for Use of Cash Collateral.* The Debtor has ceased all production, is no longer producing Inventory or generating Accounts and Accounts Receivable (except to the extent existing Inventory is being sold and invoiced), and has no intention of recommencing production. Nonetheless, in order to maximize the value of its existing Inventory and Accounts and Accounts Receivable, to protect other property and assets of its estate from loss or deterioration, and to remain in compliance with applicable environmental laws at its facility in Apple Grove, West Virginia, including the ongoing monitoring and maintenance of a waste water treatment facility, the Debtor has an immediate and

- 9 -

critical need for the use of Cash Collateral. The ability of the Debtor to pay certain of its employees to protect and maximize the value of its assets requires the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtor, its estate and its creditors.

              iii.      *Use of Cash Collateral.* As a condition to the authorization to use Cash Collateral, Comerica requires, and the Debtor has agreed, that Cash Collateral may be used in the maximum amounts, at the times and exclusively for the purposes set forth in the budget (a copy of which is attached as Exhibit A), as the same may be modified from time to time with the prior written consent of Comerica ("Budget").

H.     Adequate Protection. Comerica is entitled to receive adequate protection on account of its interest in the Prepetition Collateral pursuant to Sections 361, 362, and 363 of the Bankruptcy Code to the extent of any diminution in the value of its interest in the Prepetition Collateral (including Cash Collateral) as it existed on the Petition Date, the Debtor's use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, to the extent of any such diminution in value, the "Diminution in Value"). Because the Debtor is no longer operating, there is no replacement Inventory or Accounts or Accounts Receivable being created (except to the extent existing Inventory is being sold and invoiced) to replace the Inventory being sold and the Accounts and Accounts Receivable being collected and Cash Collateral that will be used by the Debtor pursuant to the Budget. As partial adequate protection, Comerica shall receive (i) the Adequate Protection Liens (as defined herein) and the Adequate Protection Superpriority Claim (as defined herein), (ii) payment of the Prepetition Obligations

from the proceeds of Prepetition Collateral and Post-Petition Collateral, and (iii) Adequate Protection Payments (as defined herein).

I.      Sections 506(c) and 552(b). In light of Comerica's agreement to consent to the use of Cash Collateral in accordance with the Budget and Inbursa's agreement in paragraph 4(b)(i), effective upon entry of the Final Order, the Debtor hereby waives and Comerica and Inbursa are each deemed to have received a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

J.      Good Faith. The terms of the Cash Collateral arrangement described in this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Entry of this Interim Order is in the best interests of the Debtor, its estate, and its creditors. The terms concerning the Debtor's use of Cash Collateral, as provided in this Interim Order, were negotiated in good faith and at arms' length between the Debtor, Comerica and Inbursa, and Comerica's and Inbursa's claims, superpriority claims, replacement liens and other protections granted pursuant to this Interim Order will have the protections provided in Section 363(m) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

K.      Notice. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the

Debtors' estates; (c) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP; and (g) those parties, if any, who have filed a notice of appearance and request for service of pleadings in this Case pursuant to Bankruptcy Rule 2002. The Debtor has made reasonable efforts to afford the best notice possible under the particular circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required except as set forth in paragraph 31 hereof.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     <u>Use of Cash Collateral Approved</u>.  The use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order and the Budget. The maximum amount of Cash Collateral that the Debtor may use prior to the Final Hearing is $6.0 million.

2.     <u>Objections Overruled</u>.  All objections to the Motion, to the extent not withdrawn or resolved, are hereby overruled.

3.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, and limited to the maximum amounts, at the times and for the purposes set forth

- 12 -

in the Budget, the Debtor is authorized to use Cash Collateral until the earlier of (a) December 29, 2017, and (b) the day following written notice from Comerica of the occurrence of a Termination Event (as defined in paragraph 14) (each of (a) and (b), a "Termination Date"). All Cash Collateral authorized to be used in this Interim Order shall come from the deposit account maintained at Ohio Valley Bank (account ending in *761) ("OVB Account"). The OVB Account shall be administratively frozen and no cash now or hereafter on deposit in the OVB Account may be withdrawn, transferred, disbursed or otherwise used for any purpose, including Intercompany Transactions (as defined in the Cash Management Order [Doc. No. 68]), except for (x) amounts necessary to fund the Budget in the amounts, at the times and for the purposes described in the Budget and (y) other amounts in excess of the Budget to which Comerica may consent in writing in its sole discretion.

      4.     <u>Adequate Protection Payments and Adequate Protection Liens</u>.

      (a)    *Adequate Protection Payments*.  Comerica shall receive payment of the Prepetition Obligations from the proceeds of the Prepetition Collateral and Post-Petition Collateral as set forth in paragraph 7 below (collectively, the "Adequate Protection Payments").

      (b)    *Adequate Protection Liens*.

      (i)    Comerica is hereby granted as adequate protection for the use of its Cash Collateral (each, a "Comerica Adequate Protection Lien"): (x) the prior and senior security interest in and lien on any proceeds from or of any sale or other disposition of the Debtor's property, plant and equipment located in Apple Grove, West Virginia ("Apple Grove Facility"), to which Inbursa, as existing first-lien secured lender on certain of the Debtor's property as set

- 13 -

30126453.17\018095-00603

forth in the Inbursa Guaranty Documents, consents solely to the extent that the amount of such Adequate Protection Lien does not exceed the lesser of (i) $9.6 million or (ii) the actual amount of Cash Collateral used by the Debtor; and (y) a security interest in and lien on all of the Debtor's and the estate's interest in any and all property, whether real (other than the Apple Grove Facility), personal, tangible or intangible, whether presently existing or hereafter acquired or created, in each case, subject and junior to any properly perfected, non-avoidable, first-priority, security interests or other liens existing on the Petition Date in such property (each of (x) and (y), "Post-Petition Collateral").

(ii)     Inbursa is hereby granted as adequate protection for any diminution in value of the Inbursa Guaranty Liens, a security interest in and lien on the Postpetition Collateral identified in paragraph 4(b)(i) above, which is junior and subordinate to the security interests and liens of Comerica in the Post-Petition Collateral described in paragraph 4(b)(i) (the "Inbursa Adequate Protection Lien" and together with the Comerica Adequate Protection Lien, the "Adequate Protection Liens"). The Inbursa Adequate Protection Lien excludes the Pre-Petition Collateral, including any Accounts and Accounts Receivable of the Debtor, the Inventory of the Debtor, the OVB Account and any other

- 14 -

deposit account of the Debtor, and the proceeds of any of the foregoing.

(iii)    The Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected as of the date of this Interim Order.

(c)    *Treatment of Adequate Protection Liens.* The Adequate Protection Liens shall not be made junior to, subject to or *pari passu* with any lien or security interest granted in the Case at any time or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case (a "Successor Case"). The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or any Successor Case. The Adequate Protection Liens are granted to the extent of any Diminution in Value of Comerica's interest in the Prepetition Collateral and Inbursa's Interest in the Inbursa Collateral.

(d)    No security interests or other liens, including any security interests or other liens of the DIP Lender, DIP Agent or DIP Secured Parties (each as defined in the Interim DIP Order [Doc. No. 62]), and regardless of priority, shall be granted to any third party in, on or against any Prepetition Collateral, including the proceeds thereof, any Accounts and Accounts Receivable of the Debtor, the Inventory of the Debtor, the OVB Account and any other deposit account of the Debtor, or the Inbursa Collateral.

5.    Adequate Protection Superpriority Claim.

(a)    *Superpriority Claims of Comerica and Inbursa.* As further adequate protection of the interests of Comerica with respect to the Prepetition Obligations and Inbursa with respect to the Inbursa Prepetition Obligations, Comerica and Inbursa are hereby granted

- 15 -

allowed administrative claims against the Debtor's estate under Section 503(b) of the Bankruptcy Code with superpriority pursuant to Section 507(b) of the Bankruptcy Code ("Adequate Protection Superpriority Claims") to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of Comerica's interests in the Prepetition Collateral or Inbursa's interests in the Inbursa Collateral.

(b)     *Priority of Adequate Protection Superpriority Claim.* The Adequate Protection Superpriority Claims shall have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code. The Adequate Protection Superpriority Claims of Comerica shall be senior in priority to the Adequate Protection Superpriority Claims of Inbursa. Upon entry of a Final Order, the Adequate Protection Superpriority Claims shall be payable and have recourse to the proceeds of any claims or causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including, without limitation, Chapter 5 and Section 724(a) of the Bankruptcy Code.

6.     Budget Maintenance.   The Budget and any modification to, or amendment or update of, the Budget (a "Budget Modification") shall be in form and substance acceptable to Comerica and approved by Comerica in writing in its sole discretion. A Budget Modification shall not require further Court authorization or approval.

7.     Application of Proceeds of Collateral to Prepetition Obligations.

(a)     All proceeds of Accounts and Accounts Receivable of Debtor and the sales and other dispositions of Inventory of Debtor, upon receipt by Debtor, shall be delivered to Comerica in the form received, and deposited into a segregated cash collateral account (account ending in *452) maintained by, and under the exclusive control of, Comerica.   Upon the

30126453.17\018095-00603

expiration of the Challenge Period, Comerica shall have the right to and may apply to the Prepetition Obligations any cash in the segregated cash collateral account that is not the subject of a Challenge without further Court Order. If a Challenge is made during the Challenge Period, then, upon the resolution of the Challenge, Comerica shall have the right to apply to the Prepetition Obligations any cash in the segregated cash collateral account that is subject to such Challenge in accordance with the resolution of the Challenge at the time of such resolution. The mere depositing of cash into the segregated cash collateral account (account ending in *452) shall not, in and of itself, prejudice the rights of any party to assert a superior interest in such cash.

(b)     Upon entry of the Final Order, all cash on deposit in the OVB Account (other than the Disputed Collateral and an amount of cash sufficient to fund (i) 110% of the Budget attributable to the line items comprising Total Non-Labor and Professional Fees in the Budget less the amount that has been actually funded therefor and (ii) 115% of the Budget attributable to the line items comprising Total Labor Cost in the Budget less the amount that has been actually funded therefor), shall be delivered to Comerica in the form received, and deposited into a segregated cash collateral account (account ending in *452) maintained by, and under the exclusive control of, Comerica. Upon the expiration of the Challenge Period, Comerica shall have the right to and may apply to the Prepetition Obligations any cash in the segregated cash collateral account that is not the subject of a Challenge without further Court Order. If a Challenge is made during the Challenge Period, then, upon the resolution of the Challenge, Comerica shall have the right to apply to the Prepetition Obligations any cash in the segregated cash collateral account that is subject to such Challenge in accordance with the resolution of the Challenge at the time of such resolution.

(c)     Upon entry of the Final Order, Comerica shall have the right to and may apply all cash of the Debtor in any deposit account maintained by Comerica in the name of the Debtor to the Prepetition Obligations without further Court Order.

8.     <u>Modification of Automatic Stay</u>. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtor to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claim, make the Adequate Protection Payments, and apply proceeds in accordance with paragraph 7 above.

9.     <u>Automatic Perfection of Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of possession or any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle Comerica or Inbursa to the priorities granted herein.

10.     <u>Access to Books and Records and Premises</u>. As additional adequate protection of Comerica's security interests in the Cash Collateral, the Debtor and its retained professionals shall cooperate with and allow and provide Comerica, its field auditors, collateral examiners, and financial advisors, including AlixPartners LLP, with reasonable access to the premises, officers, employees, auditors, appraisers, financial advisors, and the books and records of the Debtor, upon reasonable advance notice in order to conduct appraisals, analyses, and audits of the Prepetition Collateral, the Post-Petition Collateral, and the Debtor's financial affairs, and the

- 18 -

Debtor and its retained professionals shall otherwise reasonably cooperate in providing any other financial information reasonably requested by Comerica or AlixPartners LLP.

11. _Financial Information and Reporting Requests_. The Debtor shall furnish to Comerica such financial and other information as Comerica shall reasonably request. Debtor shall furnish to Comerica each of the following financial reports:

A daily detailed report of actual receipts and disbursements and associated daily balances of cash, accounts receivable and inventory. On a weekly basis, the Debtor will conduct a reconciliation of the prior week's activity and provide an adjusted report of actual receipts, disbursements and ending balances of cash, accounts receivable and inventory.

(a) No later than the close of business each Tuesday, beginning on Tuesday, November 7, 2017 (for the week ending November 3), a weekly report for the prior week, detailed by line item, of the cumulative variances in actual receipts and disbursements compared to the projected receipts and disbursements in the Budget;

(b) No later than the close of business each Tuesday, beginning on Tuesday, November 7, 2017 (for the week ending November 3), a detailed accounts receivable aged trial balance and a detailed perpetual inventory listing as of the end of the prior week;

(c) No later than each Tuesday, for the period from the Petition Date through the end of the prior week, beginning on Tuesday, November 7, 2017 (through the week ending November 3), a comparison of the (x) actual and budgeted disbursements for line items comprising "Total Labor" in the Budget ("Total Labor Variance") and (y) actual and budgeted disbursements for the sum of the line items comprising "Total Non-Labor Cost" in the Budget ("Total Non-Labor Variance").

- 19 -

(d)     No later than each Tuesday, for the period from the Petition Date through the end of the prior week, beginning on Tuesday, November 14, 2017 (through the week ending November 10), a comparison of the actual cumulative receipts and budgeted cumulative receipts in the Budget ("Receipts Variance").

(e)     Any financial information and pleadings filed with the Court shall be served upon Comerica and its counsel simultaneously with the filing of such information or pleading with the Court; and

(f)     On or before noon on each Friday, all other financial information and reports prepared by the Debtor in the ordinary course of its business, including any financial information required by the Court or by any applicable operating guidelines and/or reporting requirements of the U.S. Trustee.

12.     <u>Disposition of Collateral; Rights of Comerica</u>. Without Comerica's prior written consent and, where appropriate, authorization by the Court, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of all or any portion of the Inventory or other Prepetition Collateral or the Post-Petition Collateral other than the collection of Accounts and Accounts Receivable for cash in the ordinary course of business; provided, however, that Debtor shall not discount, compromise or forgive any Accounts or Accounts Receivable without Comerica's prior written consent.  Nothing provided herein shall limit the rights of Comerica to object to any proposed disposition of the Prepetition Collateral or the Post-Petition Collateral.

13.     <u>Termination Date</u>.  On the Termination Date, all authority to use Cash Collateral shall cease and Comerica may exercise any rights and remedies provided to Comerica under the Prepetition Credit Documents or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and the Final Order.

- 20 -

14. <u>Termination Event</u>. The occurrence of any of the following (unless waived by Comerica in writing in its sole discretion) shall constitute a "Termination Event" under this Interim Order:

(a) The failure to provide Comerica with any of the financial information or reports required in paragraph 11 of this Interim Order or the Final Order by the date and time required, after written notice of such failure and failure of the Debtors to provide such information within two (2) business days.

(b) If the Total Labor Variance exceeds a negative variance of actual to budgeted by more than 15% in any weekly report.

(c) If the Total Non-Labor Variance exceeds a negative variance of actual to budgeted by more than 10% in any weekly report.

(d) If the Receipts Variance exceeds a negative variance of actual to budgeted of more than 10% in any weekly report.

(e) the Debtor shall, without Comerica's prior written consent, file a motion with the Court seeking authority to liquidate any of Prepetition Collateral or Post-Petition Collateral or to discount, compromise or forgive any Accounts or Accounts Receivable unless the transactions that are the subject of the motions will result in immediate payment in full in cash of the Prepetition Obligations;

(f) other than in connection with the payment in full in cash of the Prepetition Obligations, the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtor in the Case: (A) to obtain financing under Section 364(c) or (d) of the Bankruptcy Code secured by security interests in, or liens on, the Prepetition Collateral or, except with respect to

- 21 -

the DIP Lender, the Post-Petition Collateral; (B) except as provided in this Interim Order or in the Final Order, as the case may be, to use Cash Collateral under Section 363(c) of the Bankruptcy Code without the prior written consent of Comerica; or (C) any other action or actions materially adverse to Comerica or its rights and remedies hereunder or its interest in any Prepetition Collateral or Post-Petition Collateral;

(g)     the entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Prepetition Credit Documents or this Interim Order, the Final Order, or the Debtor's "first-day" cash management order without the prior written consent of Comerica; or the filing of a motion for reconsideration with respect to this Interim Order or the Final Order; or this Interim Order, the Final Order, or such cash management order shall otherwise not be in full force and effect;

(h)     the Final Order is not entered prior to the expiration of this Interim Order, and in any event within thirty-five (35) days after the Petition Date;

(i)     except as set forth in the "first day" motions to the extent permitted under the Budget, the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim from the OVB Account or the Disputed Collateral without Comerica's prior written consent;

(j)     upon entry of the Final Order, the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against Comerica or Inbursa or any of the Prepetition Collateral or Post-Petition Collateral or Inbursa Collateral, as applicable;

(k)     the appointment of an interim or permanent trustee in the Case or the appointment of an examiner in the Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtor; or the sale without Comerica's

consent of any of the Debtor's assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Case, or otherwise that does not provide for payment in full in cash of the Prepetition Obligations;

(l)     the dismissal of the Case, or the conversion of the Case from Chapter 11 to Chapter 7 of the Bankruptcy Code, or the Debtor shall file a motion or other pleading seeking the dismissal of the Case under Section 1112 of the Bankruptcy Code or otherwise;

(m)     the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on any Prepetition Collateral or Post-Petition Collateral having a value of $10,000 or more;

(n)     the commencement of a suit or action against Comerica by or on behalf of the Debtor or its estate;

(o)     the entry of an order in the Case avoiding or permitting recovery of any portion of the payments made on account of the Prepetition Obligations;

(p)     the failure of the Debtor to perform any of its obligations under this Interim Order, the Final Order or the "first-day" cash management order, or any of its material obligations under any other order of the Court;

(q)     the making of any representation or warranty by the Debtor under this Interim Order, or any pleading, certificate, report or financial statement delivered to Comerica in this Case which proves to have been false or misleading in any material respect as of the time then made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

- 23 -

(r)     any misrepresentation of a material fact made after the Petition Date by the Debtor to Comerica about the financial condition of the Debtor, the nature, extent, location or quality of any Prepetition Collateral or Post-Petition Collateral, or the disposition or use of any Prepetition Collateral or Post-Petition Collateral, including Cash Collateral;

(s)     the entry of an order by the Court (without the prior written consent of Comerica) granting reconsideration of this Interim Order; or

(s)     the commencement of a Challenge during the Challenge Period by any Challenge Party.

15.     <u>Rights and Remedies Following Termination Event</u>.

(a)     *Termination.* Immediately upon the occurrence and during the continuance of a Termination Event, (i) Comerica may terminate the Debtor's authority to use Cash Collateral by providing written notice as set forth in paragraph 15(b) (such notice, a "<u>Termination Notice</u>") and (ii) at Comerica's option, any right or ability of the Debtor to use any Cash Collateral (other than as expressly set forth in this Interim Order during the Remedies Notice Period (as defined below)) may be terminated, reduced or restricted by Comerica. Following the Termination Notice, subject to the Remedies Notice Period, Comerica may exercise all rights and remedies available to it under the Prepetition Credit Documents or applicable law against the Prepetition Collateral and the Post-Petition Collateral. Without limiting the foregoing, Comerica may (i) enter onto the premises of the Debtor in connection with an orderly liquidation of such collateral; (ii) exercise any rights and remedies provided to Comerica under the Prepetition Credit Documents, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and the Final Order; (iii) direct the Debtor's banks to immediately

- 24 -

remit all proceeds contained in any and all deposit accounts to Comerica; and (iv) direct the Debtor's account debtors to pay their Accounts and Accounts Receivable directly to Comerica.

(b) *Notice of Termination.* Any Termination Notice shall be given by email or facsimile to counsel to the Debtor, counsel to Inbursa, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "Termination Notice Date"). The use of Cash Collateral shall automatically cease on the Termination Notice Date. Any automatic stay otherwise applicable to Comerica is hereby modified so that five (5) business days after the Termination Notice Date ("Remedies Notice Period"), Comerica shall be entitled to exercise all rights and remedies against the Prepetition Collateral and Post-Petition Collateral in accordance with the Prepetition Credit Documents and this Interim Order and shall be permitted to satisfy the Adequate Protection Superpriority Claim and the Adequate Protection Liens. During the Remedies Notice Period, the Debtor shall be entitled to seek an emergency hearing with the Court. Unless the Court determines during the Remedies Notice Period that a Termination Event has not occurred, the automatic stay with respect to Comerica shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and Comerica shall be permitted to exercise all remedies set forth herein, in the Prepetition Credit Documents, and as otherwise available at law against Prepetition Collateral and Post-Petition Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Prepetition Collateral and Post-Petition Collateral, or any other rights and remedies granted to Comerica with respect thereto pursuant to the Prepetition Credit Documents or this Interim Order.

(c)   *Termination Date Prior to December 29, 2017.*  In the event a Termination Date occurs prior to December 29, 2017 (an "Early Termination Event"), the Debtor shall be entitled to use Cash Collateral provided in the Budget for the following purposes only (the sum of (i) through (v) below, the "Early Termination Carve-Out"):

    (i)   Compensation and benefits for the 16 retained employees (to the extent employed at the time of the Early Termination Event) for a period of 10 days after the Termination Date to secure the Apple Grove Facility.

    (ii)   The retained employees, including the 16 referenced above, will receive, to the extent still providing services on the Termination Date, severance comprised of 10 days compensation and benefits, reimbursable business expenses and the cash value of any accrued, but unused, vacation through December 29, 2017.

    (iii)   All amounts owing on account of benefits incurred by, or owing to any employees, through the Termination Date, that would have been payable under the Budget, but for the Early Termination Event.

    (iv)   All accrued and unpaid professional fee claims for services rendered which are directly attributable to this Debtor after the date of the entry of this Interim Order and prior to the Termination Date up to the difference between $850,000 and the amount paid to such professionals during that period.

    (v)   10 days' worth of environmental compliance and safety materials necessary to secure Apple Grove after the Termination Date, as negotiated by the Debtor and Comerica in good faith.

    (vi)   all statutory fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a).

Notwithstanding anything in this Interim Order or any Prepetition Credit Document to the contrary, following the occurrence of an Early Termination Event the rights and claims of Comerica and Inbursa, including the Prepetition Liens and the Inbursa Guaranty Liens, shall be subject and subordinate in all respects to the payment of the Early Termination Carve-Out. For the avoidance of doubt, nothing in this paragraph 15(c) is intended to constitute, nor shall be

- 26 -

construed as, consent to the allowance of any fees, costs or expenses by any professional retained in this Case, and shall not affect the rights of the Debtor, Comerica, Inbursa, or any other lender or party in interest to object to such fees, costs or expenses.

16. <u>Prohibited Use of Cash Collateral</u>. The Cash Collateral may not be used (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of Comerica or its rights and remedies under the Prepetition Credit Documents, or adverse to or against the interests of Inbursa or its rights and remedies under the Inbursa Guaranty Documents, this Interim Order or the Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Obligations, Prepetition Collateral, Inbursa Prepetition Obligations or Inbursa Collateral, (iii) for monetary, injunctive or other affirmative relief against Comerica or its collateral or Inbursa or its collateral, (iv) preventing, hindering or otherwise delaying the exercise by Comerica or Inbursa of any rights and remedies under this Interim Order or the Final Order, the Prepetition Credit Documents or the Inbursa Guaranty Documents (as applicable), or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by Comerica with respect to its Adequate Protection Liens, or (vi) to pursue litigation against Comerica or Inbursa; (b) to make any distribution under a plan of reorganization in the Case; (c) to make any payment in settlement of any claim, action or proceeding, before any

- 27 -

court, arbitrator or other governmental body to the extent not expressly consented to by Comerica in writing; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor; (e) objecting to, contesting, or interfering with, in any way, Comerica's enforcement or realization upon any of the Prepetition Collateral or Post-Petition Collateral or Inbursa's enforcement or realization upon any of the Inbursa Collateral once a Termination Event has occurred, except as provided for in this Interim Order or Final Order; (f) using or seeking to use Cash Collateral while the Prepetition Obligations remain outstanding in a manner inconsistent with the Budget without Comerica's prior written consent; (g) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Post-Petition Collateral without Comerica's prior written consent; (h) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of Comerica or Inbursa; (i) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against Comerica or Inbursa; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations, the Prepetition Liens, the Inbursa Guaranty Documents or the Inbursa Guaranty Liens or any other rights or interests of Comerica or Inbursa.

17. <u>Reservation of Certain Third Party Rights and Bar of Challenges to Claims</u>.

(a)     The stipulations, findings, and representations contained in this Interim Order with respect to Comerica and the Prepetition Obligations, and Inbursa and the Inbursa Prepetition Obligations, shall be binding upon the Debtor, all parties-in-interest, any creditor, any trustee appointed in this case, any Statutory Committee and any other person (each, other than the Debtor, a "<u>Challenge Party</u>"), unless and solely to the extent that a Challenge Party initiates

- 28 -

an action or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. For purposes of this paragraph 17: (a) "Challenge" means any claim or cause of action against Comerica or Inbursa, in each case, on behalf of the Debtor, its estate or the Debtor's creditors and interest holders or any other person, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the security interests and liens of Comerica or Inbursa; (ii) the validity, allowability, priority, or amount of any of the Prepetition Obligations or Inbursa Prepetition Obligations; (iii) the secured status of any of the Prepetition Obligations or Inbursa Prepetition Obligations; or (iv) any liability of Comerica with respect to anything arising from any of the respective Prepetition Credit Documents or any liability of Inbursa with respect to anything arising from any of the respective Inbursa Guaranty Documents; and (b) "Challenge Period" means (i) with respect to any person or any party-in-interest other than the Statutory Committee, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of this Interim Order and (ii) with respect to the Statutory Committee, the period from the date such Statutory Committee is formed until the date that is sixty (60) calendar days thereafter.

(b)     Upon the expiration of the Challenge Period without the filing of a Challenge ("Challenge Period Termination Date"): (A) any and all such Challenges and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case and any third party), shall be deemed to be forever waived, released and barred, (B) all matters not

subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to Comerica's or Inbursa's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate and all creditors, equity interest holders, any person and other parties in interest in this Case and any Successor Case; and (C) any and all claims or causes of action against Comerica relating in any way to the Debtor or the Prepetition Credit Documents or Inbursa and the Inbursa Guaranty Documents shall be forever waived and released by the Debtor's estates, all creditors, equity interest holders, other parties and other parties in interest in this Case and any Successor Case.

(c)     If there is a final order entered in this Case which provides that Comerica does not have a properly perfected, non-avoidable, first-priority, security interest or other lien on the OVB Account and the cash on deposit therein, in whole or in part ("<u>Unencumbered Funds</u>"), then the Cash Collateral used by the Debtor prior to the entry of such final order shall be treated as having first come from the Unencumbered Funds and not the funds subject to a properly perfected, non-avoidable, first-priority, security interest or other lien in favor of Comerica.

18.     <u>Inbursa Reservation of Rights</u>.     Nothing herein shall prejudice the rights of Inbursa, on account of the Inbursa Guaranty, the Pre-Petition First Lien Guaranty Mortgage, the Inbursa Guaranty Liens and the Inbursa Prepetition Obligations and any such related interests, to contest any further requests to prime Inbursa's interest in, or otherwise alter or adjust, any proceeds generated from the Inbursa Collateral under the Inbursa Guaranty.

19.     <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity security holder, or any direct, indirect, or incidental beneficiary.

20.     Section 506(c) Claims. Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against (i) Comerica, the Prepetition Collateral, or the Post-Petition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of Comerica, and no such consent shall be implied from any other action, inaction, or acquiescence on the part of Comerica, its agents or professionals; or (ii) Inbursa or the Inbursa Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of Inbursa, and no such consent shall be implied from any other action, inaction, or acquiescence on the part of Inbursa, its agents or professionals.

21.     No Marshaling/Applications of Proceeds. Upon entry of the Final Order, Comerica shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Pre-Petition Collateral or Post-Petition Collateral.

22.     Section 552(b). Upon entry of the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Comerica with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral.

23.     No Further Right to Use Cash Collateral. Upon entry of the Final Order, the Debtor irrevocably waives the right to move the Court or otherwise seek permission to use Cash Collateral (other than the Cash Collateral (a) authorized and permitted in the Budget and (b) additional Cash Collateral with the prior written consent of Comerica to be exercised in its sole discretion), at any time prior to, on or after the Termination Date.

24.     Rights Preserved. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) Comerica's or Inbursa's right to seek any other or supplemental relief in respect of

- 31 -

the Debtor; (b) any of the rights of Comerica or Inbursa under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, or (ii) request dismissal of the Case or any Successor Case, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of Comerica or Inbursa are preserved.

25.    No Waiver by Failure to Seek Relief. The failure of Comerica or Inbursa to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Final Order, the Prepetition Credit Documents or Inbursa Guaranty Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of Comerica or Inbursa, as applicable.

26.    Binding Effect of Interim Order. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, Comerica and Inbursa, all other creditors of the Debtor, any Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or any Successor Case.

27.    No Modification of Interim Order. The Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of Comerica and, to the extent it affects Inbursa, Inbursa (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or

unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the Adequate Protection Superpriority Claim; (b) without the prior written consent of Comerica, any order allowing use of Cash Collateral other than this Interim Order and the Final Order; and (c) without the prior written consent of Comerica, any lien on any of the Prepetition Collateral or Post-Petition Collateral with priority equal or superior to the Adequate Protection Liens. The Debtor irrevocably waives any right to seek any material amendment, modification, or extension of this Interim Order without the prior written consent of Comerica and, to the extent it affects Inbursa, Inbursa, and no such consent shall be implied by any other action, inaction or acquiescence of Comerica, its agents or professionals or Inbursa, its agents or professionals.

28.     Interim Order Controls. In the event of any inconsistency between the terms and conditions of the Prepetition Credit Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

29.     Survival. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization or liquidation in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Case or any Successor Case, provided however that the various superpriority claims or other administrative expenses shall survive only to the extent permitted by applicable law. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to Comerica pursuant to this Interim Order or the

- 33 -

Prepetition Credit Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Interim Order until all Prepetition Obligations have been paid in full.

30. <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order is scheduled for December 1, 2017 at 10 a.m. (Eastern Time) before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Courtroom #1, Wilmington, Delaware.

31. <u>Notice of Final Hearing</u>. On or before November 3, 2017, the Debtor shall serve, by United States mail, first-class postage prepaid, a copy of the Motion and this Interim Order upon: (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (c) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP (Atten: Lisa M. Schweitzer) ; (g) Miller, Canfield, Paddock and Stone, PLC (Attn: Jonathan S. Green, Esq.) and Connolly Gallagher (Attn: Karen Bifferato, Esq.), attorneys for Comerica; (h) counsel for any Statutory Committee, and (i) those parties, if any, who have filed a notice of appearance and request for service of pleadings in this Case pursuant to Bankruptcy Rule 2002.

- 34 -

32.   Objection Deadline. Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and personally served upon: (a) Jones Day (Attn: Carl Black, Esq.), counsel for the Debtor; (b) the Office of the United States Trustee for the District of Delaware; (c) counsel to any Statutory Committee; (d) Miller, Canfield, Paddock and Stone, PLC (Attn: Jonathan S. Green, Esq.) and Connolly Gallagher (Attn: Karen Bifferato, Esq.), attorneys for Comerica; so that such objections are filed with the Court and received by said parties on or before 4:00 p.m. (Eastern Time) on November 22, 2017 with respect to entry of the Final Order.

33.   Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

34.   Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated:  November 2 , 2017
        Wilmington, Delaware

BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

30126453.17\018095-00603