# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THEM TO EMPLOY AND RETAIN ROTHSCHILD INC. AND ROTHSCHILD S.P.A. AS FINANCIAL ADVISORS AND INVESTMENT BANKERS TO THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT LETTER, (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby apply to the Court (this "Application"), pursuant to sections 327(a) and 328(a) of title 11

of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2(h) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form

attached as Exhibit A (the "Proposed Order") (i) authorizing them to employ and retain

Rothschild Inc. and Rothschild S.p.A. (collectively, "Rothschild") as their financial advisors and

investment bankers *nunc pro tunc* to the Petition Date (as defined below) in accordance with the

terms and conditions set forth in that certain engagement letter between M&G Chemicals S.A.

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

("M&G Holdings") and Rothschild, dated as of September 1, 2017 (the "Engagement Letter"),[2] (ii) approving the terms of the Engagement Letter, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth therein, (iii) waiving certain information requirements of Local Rule 2016-2 and (iv) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Neil A. Augustine in Support of Debtors' Application for Entry of an Order (I) Authorizing Them to Employ and Retain Rothschild Inc. and Rothschild S.p.A. as Financial Advisors and Investment Bankers to the Debtors Effective* Nunc Pro Tunc *to the Petition Date, (II) Approving the Terms of the Engagement Letter, (III) Waiving Certain Time-Keeping Requirements and (IV) Granting Related Relief* attached hereto as Exhibit B (the "Augustine Declaration"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The

---

[2]      A copy of the Engagement Letter is attached as Exhibit 1 to the Proposed Order.

Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On November 13, 2017, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

4.      Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

## ROTHSCHILD'S QUALIFICATIONS

5.      The Debtors seek to retain Rothschild as their financial advisor and investment banker because, among other things, Rothschild has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors in chapter 11 cases and other restructurings.  Rothschild has a substantial understanding of the Debtors' businesses from having advised M&G Holdings on financing and capital raising efforts pursuant to a June 2016 engagement letter (the "Prepetition Engagement Letter").[3]  In addition, Rothschild S.p.A. has a long-term relationship with the Debtors and the non-Debtor direct and indirect subsidiaries of M&G Holdings (the "Company") dating back almost a decade and periodically has been engaged to assist the Company in other financing and capital raising efforts.

6.      Rothschild is a member of one of the world's leading independent investment banking groups, with more than fifty offices in more than forty countries.  Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital

---

[3]      The Prepetition Engagement Letter is attached hereto as Exhibit C.

raises and other investment banking services, and particular experience in providing high-quality advice to financially troubled companies. Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes and secured creditors in a variety of industries. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operational restructurings. Moreover, Rothschild Inc. is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

7. Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Rothschild's business reorganization professionals have served as financial and strategic advisors in numerous cases, including, among others: *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del. Sept. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. May 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 17, 2015); *In re Allen Sys. Grp., Inc.*, No. 15-10332 (KJC) (Bankr. D. Del. Mar. 19, 2015); *In re GT Advanced Techs., Inc.*, No. 14-11916 (HJB) (Bankr. D. N.H. Oct. 30, 2014); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 22, 2014); *In re Autoseis, Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex. Apr. 25, 2014); *In re Metro Affiliates, Inc.*, No. 13-13591 (SHL) (Bankr. S.D.N.Y. Dec. 4, 2013); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013); *In re LCI*

*Holding Co., Inc.*, No. 12-13319 (KG) (Bankr. D. Del. Jan. 10, 2013); *In re First Place Fin. Corp.*, Case No. 12-12961 (Bankr. D. Del. Dec. 12, 2012); *In re Allied Systems Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. Oct. 16, 2012); *In re Arcapita Bank B.S.C.(c)*, Case No. 12-11076 (SHL) (Bankr. S.D.N.Y. July 9, 2012); *In re Glob. Aviation Holdings Inc.*, Case No. 12-40783 (CEC) (Bankr. E.D.N.Y. Mar. 22, 2012); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 2, 2012); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Mar. 9, 2012); *In re Coach Am Group Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. Jan. 27, 2012); *In re Nassau Broad. Partner*s, L.P., Case No. 11-12934 (KG) (Bankr. D. Del. Nov. 21, 2011); *In re Inner City Media Corp.*, Case No. 11-13967 (SCC) (Bankr. S.D.N.Y. Nov. 18, 2011); *In re Neb. Book Co., Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. Aug. 10, 2011); *In re DSI Holdings, Inc.*, Case No. 11-11941 (KJC) (Bankr. D. Del. July 19, 2011); *In re Sbarro, Inc.*, Case No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 4, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011); *In re Blockbuster Inc.*, Case No. 10-14997 (0042RL) (Bankr. S.D.N.Y. Nov. 2, 2010); *In re Neenah Enterprises Inc.*, Case No. 10-10360 (MFW) (Bankr. D. Del. Mar. 8, 2010); *In re Penton Business Media Holdings, Inc.*, Case No. 10-10689 (AJG) (Bankr. S.D.N.Y. Mar. 5, 2010); *In re Affiliated Media Inc.*, Case No. 10-10202 (KJC) (Bankr. D. Del. Mar. 3, 2010); *In re Trident Res. Corp.*, Case No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010); *In re FairPoint Commc'ns, Inc.*, Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010).[4]  The Debtors believe that

---

[4]     Because of their voluminous nature, the orders cited in this Application are not attached to the Application.  Copies of these orders, however, are available upon request to the Debtors' proposed chapter 11 counsel.

Rothschild has the requisite qualifications and experience to serve as their financial advisor and investment banker.

8.      Moreover, Rothschild has familiarity with the Debtors' operations and capital structure through its prepetition services to the Debtors.  In providing these prepetition services, Rothschild's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' operations, debt structure, creditors, businesses and operations and related matters, including (a) working cooperatively with the Debtors' other professionals to explore various strategic and financial restructuring alternatives, (b) reviewing the Debtors' historical financial and operating metrics, (c) reviewing the Debtors' debt and capital structure, (d) actively engaging in negotiations with key financial creditors to evaluate alternative financing options, including debtor-in-possession financing and (e) discussing potential financing options with third-party financing sources.  In addition to the foregoing, Rothschild has worked closely with the professional advisors of other major stakeholders that will be involved in these Cases.  Accordingly, Rothschild has developed significant relevant experience and expertise regarding the Debtors' businesses that (i) make Rothschild a natural selection to serve as the Debtors' financial advisor and investment banker and (ii) will assist Rothschild in providing effective and efficient services in these Cases.

9.      Should the Court approve the Debtors' retention of Rothschild as financial advisor and investment banker, Rothschild will continue, without interruption, to perform services for the Debtors as described herein.  On the other hand, if the Debtors were required to retain a replacement financial advisor/investment bank other than Rothschild in connection with these Cases, the Debtors, their estates and all parties in interest would be unduly prejudiced by the time

and expenses necessary to familiarize another professional with the intricacies of the Debtors and their business operations.

## ROTHSCHILD'S SERVICES

10.     Subject to the approval of the Court, the contemplated terms and conditions of Rothschild's engagement in these Cases are set forth in the Engagement Letter. These terms were negotiated at arm's length among the Debtors and Rothschild and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. In consideration for the compensation contemplated in the Engagement Letter, Rothschild has provided and has agreed to provide the following services (the "Services") in these Cases:[5]

(a)     identifying and/or initiating potential Transactions (as defined in the Engagement Letter);

(b)     reviewing and analyzing the Debtors' assets and the operating and financial strategies of the Debtors;

(c)     reviewing and analyzing the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical company and industry trends;

(d)     evaluating the Debtors' debt capacity in light of their projected cash flows and assisting in the determination of an appropriate capital structure for the Debtors;

(e)     assisting the Debtors and their other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)     determining a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

(g)     advising the Debtors on the risks and benefits of considering any potential Transaction with respect to the Debtors' intermediate and long-term

---

[5]     The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent that there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall govern and control. Capitalized terms used in describing the terms of the Engagement Letter, but not otherwise defined herein, shall have the meanings given to such terms in the Engagement Letter.

business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

(h)     reviewing and analyzing any proposals the Debtors receive from third parties in connection with a Transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)     assisting or participating in negotiations with parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with any potential Transaction;

(j)     assisting the Debtors in identifying, approaching and negotiating with financing sources for any proposed New Capital Raise (as defined in the Engagement Letter);

(k)     in connection with a Company M&A Transaction (as defined in the Engagement Letter), and as requested by the Debtors:

    (i)     assisting the Debtors in identifying possible counterparties for a potential Company M&A Transaction;

    (ii)     assisting the Debtors in the development and implementation of a marketing plan and assisting the Debtors in their preparation of an information memorandum describing the Debtors for use with potential counterparties to a Company M&A Transaction;

    (iii)     assisting the Debtors in their assessment of the financial aspects of a Company M&A Transaction;

    (iv)     assisting the Debtors in structuring a Company M&A Transaction;

    (v)     participating on the Debtors' behalf in negotiations concerning the financial aspects of a Company M&A Transaction;

(l)     advising the Debtors with respect to, and attending, meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(m)     if requested by the Debtors, participating in hearings before the Court and providing relevant testimony with respect to the matters described in the Engagement Letter and issues arising in connection with any proposed Plan (as defined in the Engagement Letter); and

(n)     subject to court approval, rendering such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Debtors.

11.     To the extent that the Debtors request Rothschild to perform additional services

not contemplated by the Engagement Letter, such services and the fees for such services will be

mutually agreed upon by Rothschild and the Debtors, in writing, in advance and subject to Court approval.

12.    The Services being provided to the Debtors are necessary to assist the Debtors in determining the most optimal and value-maximizing strategy in these Cases.  The resources, capabilities and experience of Rothschild in advising the Debtors are important to the Debtors' chapter 11 efforts.  A highly qualified financial advisor and investment banker, such as Rothschild, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

## PROFESSIONAL COMPENSATION

13.    In consideration of the Services, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay Rothschild the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"), which is summarized below:

(a)    an upfront fee in an amount equal to $250,000;

(b)    commencing as of the date of the Engagement Letter, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month, payable by the Debtors in advance on the first day of each month;[6]

(c)    a "Completion Fee" of $5.0 million, payable upon the closing of (i) a Company Restructuring Transaction (as defined in the Engagement Letter) or (ii) a Company Credit Bid Transaction (as defined in the Engagement Letter);

(d)    upon the closing of a Company M&A Transaction (other than a Company Credit Bid Transaction), a "Company M&A Transaction Fee" equal to the greater of (i) the Completion Fee and (ii) a fee calculated pursuant to

---

[6]    Notwithstanding any earlier termination of the Engagement Letter, a minimum of $800,000 in monthly fees shall be payable to Rothschild under the Engagement Letter.

Exhibit B of the Engagement Letter, including by reference to the following table:

| Aggregate Consideration (Dollars in Millions) | Company M&A Transaction Fee Percentage[7] |
|---|---|
| $250.0 | 2.00% |
| $500.0 | 1.60% |
| $750.0 | 1.40% |
| $1,000.0 | 1.30% |
| $2,000.0 | 1.20% |

(e)     a "New Capital Fee" equal to 1.00% of the face amount of any debtor-in-possession financing raised, payable upon the earlier of (i) the closing of the transaction by which the new capital is committed and (ii) the receipt by the Debtors of any new capital.[8]  The New Capital Fee shall be reduced (the "New Capital Fee Reduction") by 50% solely with respect to any portion of new capital raised from Grupo Financiero Inbursa, DAK Americas (or any subsidiary of Alfa S.A.B. de C.V.), TPG, Och-Ziff or any of their respective affiliates.

(f)     Rothschild has agreed to credit against any Completion Fee or Company M&A Transaction Fee, without duplication, (i) 50% of Monthly Fees paid in excess of $1,200,000 (the "Monthly Fee Credit"), and (ii) 50% of the New Capital Fees paid (the "New Capital Fee Credit").[9]

(g)     Further, the Debtors agreed to reimburse certain of Rothschild's expenses, including, among other things, reasonable expenses incurred in connection with Rothschild's performance of its engagement under the Engagement Letter and the enforcement of the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of

---

[7]     Percentages rounded to two decimal places.  The applicable Company M&A Transaction Fee percentage for Aggregate Consideration value amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in this table.  For Aggregate Consideration value amounts which fall below or above the amounts listed above, the applicable Company M&A Transaction Fee percentage shall be agreed upon by Rothschild and the Debtors in good faith consistent with this table and subject to Court approval.

[8]     The term "raised" includes the amount committed or otherwise made available to the Debtors, regardless of whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Debtors.

[9]     The New Capital Fee Credit shall not apply to any New Capital Fees subject to the New Capital Fee Reduction.  Further, the sum of all such credits shall not exceed the amount of the Completion Fee or Company M&A Transaction Fee, as applicable, to which such credits relate.  Finally, no Monthly Fee shall be credited more than once.

Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Court).

14.     The Debtors ultimately agreed to the Fee and Expense Structure because it is reasonable and appropriate in light of market conditions and because the Debtors require the services that Rothschild has agreed to provide under the Engagement Letter.  The Fee and Expense Structure also reflects the scope and difficulty of the comprehensive mandate that Rothschild has undertaken and expects to undertake in connection with these Cases and accounts for the potential for an unfavorable outcome as a result of factors outside of Rothschild's control.

15.     The Debtors and Rothschild believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Rothschild for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed monthly fee and a contingency amount, tied to the consummation and closing of the transactions and services contemplated by the Debtors and Rothschild in the Engagement Letter.

16.     The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Rothschild's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these Cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Rothschild and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.

17.     The Debtors compared Rothschild's proposed fees with the range of investment banking fees in other complex chapter 11 cases.  The Debtors found Rothschild's Fee and

Expense Structure to be within the range of other comparable engagements, and is thus reasonable and market-based.

18.     The Debtors and Rothschild negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with Rothschild's services, which Rothschild renders not in parts, but as a whole.  It would be contrary to the intention of Rothschild and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of the Services.  Instead, the Debtors and Rothschild intend that the Services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

19.     The Fee and Expense Structure was also agreed upon in anticipation that a substantial commitment of professional time and effort would be required of Rothschild and its professionals in connection with this assignment and in light of the fact that (a) such commitment may foreclose other opportunities for Rothschild and (b) the actual time and commitment required of Rothschild and its professionals to perform its services may vary substantially from week to week and month to month during the pendency of these Cases, creating "peak load" issues for Rothschild.

20.     As described above, Rothschild undertook extensive efforts on behalf of the Debtors prior to the Petition Date in connection with exploring financing and other strategic alternatives and will continue providing such services as are requested by the Debtors pursuant to the Engagement Letter.

21.     Rothschild's strategic and financial expertise, as well as its significant capital-markets knowledge, financial skills, restructuring capabilities and mergers and acquisitions expertise were important factors in determining the Fee and Expense Structure.  Further, the

ultimate benefit to the Debtors cannot be measured by reference to the mere number of hours to be expended by Rothschild's professionals in the performance of the Services. The Debtors submit that Rothschild has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date and that Rothschild is well-qualified and uniquely positioned to perform these services and assist the Debtors in these Cases. The Debtors also believe that Rothschild will assist them in achieving a successful outcome with respect to these Cases, for the benefit of all stakeholders.

22. Finally, as set forth in the Augustine Declaration, neither Rothschild Inc. nor Rothschild S.p.A. has shared or agreed to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## INDEMNIFICATION

23. The Indemnification Provisions were negotiated by the Debtors and Rothschild at arm's length and in good faith. The Debtors have agreed to indemnify Rothschild from and against certain losses arising out of their engagement by the Debtors in connection with these Cases, other than claims resulting from the gross negligence, willful misconduct or fraud of Rothschild, pursuant to the indemnification provisions set forth in Section 7 of, and Exhibit A to, the Engagement Letter (the "Indemnification Provisions").

24. The Debtors submit that the Indemnification Provisions are standard and customary for financial advisory and investment banking engagements, both in and out of court, and that the Indemnification Provisions, as modified by the Proposed Order, are fair and reasonable, considering Rothschild's qualifications and the expectations of other financial advisors and investment banking firms in connection with engagements of this scope and size. The terms of the Indemnification Provisions, as modified in the Proposed Order, are similar to indemnification terms that have been previously approved by the Court and other bankruptcy

courts in other large chapter 11 cases.  *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

## NO DUPLICATION OF SERVICES

25.     In addition to this Application, the Debtors have applied, or anticipate that they will apply, to the Court to retain, among others, (a) Jones Day, as chapter 11 and restructuring counsel, (b) Pachulski Stang Ziehl & Jones, as Delaware counsel, (c) Alvarez & Marsal North America LLC, to provide a Chief Restructuring Officer ("CRO") and support personnel for the CRO and (d) Prime Clerk LLC, as claims and administrative agent.  The Debtors are mindful of the need to avoid duplication of services and the Debtors understand that Rothschild will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.  The Debtors believe that Rothschild's Services will not duplicate the efforts of the other professionals retained by the Debtors in these Cases.

## RECORD-KEEPING REQUIREMENTS

26.     It is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).  Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors request pursuant to Local Rule 2016-2(h) that Rothschild be excused from compliance with the requirements under Local Rule 2016-2(d).  Instead, Rothschild proposes to maintain records of services rendered for the Debtors, including summary

descriptions of those services, the approximate time expended in providing those services (in half-hour (.5) increments) and the identity of the individuals who provided those services. Rothschild will include such records in its fee applications.

27.     Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

28.     Bankruptcy courts in this and other jurisdictions have approved similar waivers to the one requested in this Application. *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

## DISINTERESTEDNESS

29.     To the best of the Debtors' knowledge, information and belief as of the date hereof, Rothschild (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as required under section 327(a) of the Bankruptcy Code and, as set forth in further detail in the Augustine Declaration, (b) does not hold or represent an interest materially adverse to Debtors' estates and (c) has no connection to the Debtors, their creditors, shareholders or other parties in interest, except as disclosed in the Augustine Declaration and Schedule 2 attached thereto.

30.     Rothschild was retained under the Prepetition Engagement Letter to advise M&G Holdings in raising financing to fund cost overruns relating to the completion of the Company's PTA/PET plant in Corpus Christi, Texas. The Prepetition Engagement Letter did not

contemplate a restructuring pursuant to insolvency proceedings such as these Cases.  Once it became clear that such a restructuring was a probable scenario for the Debtors, M&G Holdings and Rothschild undertook to replace the Prepetition Engagement Letter with separate engagement letters for each of the Company's principal operating groups in the United States, Mexico and Brazil to reflect the particular services required in financially distressed situations in each region.  M&G Holdings and Rothschild have agreed that the Prepetition Engagement Letter shall be deemed terminated as of the filing of this Application, and the Engagement Letter replaces the Prepetition Engagement Letter with respect to the Debtors and the United States operations.  Rothschild anticipates being re-engaged by the Debtors' non-Debtor Mexican and Brazilian affiliates (respectively, "M&G Mexico" and "M&G Brazil") pursuant to separate engagement letters that are currently being negotiated (the "International Engagement Letters") to render services relating to regional restructurings, potentially including M&A and capital raising efforts.[10]

31.     For purposes of efficiency and continuity, the Rothschild Inc. and Rothschild S.p.A. teams providing services to M&G Holdings globally under the Prepetition Engagement Letter will remain in place in connection with services to be provided to the Debtors under the Engagement Letter and to M&G Mexico and M&G Brazil under the International Engagement Letters.

32.     Given that a potential sale of the Debtors' assets could draw interested bidders from around the globe, during the course of these Cases, Rothschild may periodically discuss

---

[10]     As further described in the Augustine Declaration, Rothschild may consult with its local Mexican and Brazilian affiliates on an as needed basis in connection with the International Engagement Letters.

publicly available information with certain professionals employed at the Affiliated Entities (as defined in the Augustine Declaration) to leverage regional relationships and contact potential buyers. Similarly, in connection with Rothschild's engagements by M&G Mexico and M&G Brazil under the International Engagement Letters, Rothschild may periodically discuss publicly available information regarding the Debtors with its Mexican affiliate, Rothschild (Mexico) SA de CV, and its Brazilian affiliate, N M Rothschild & Sons (Brasil), to facilitate possible sales of the Company's Mexican and Brazilian assets. Rothschild will not communicate any non-public information without the consent of the Debtors. In any case, only Rothschild shall be entitled to any fees paid by the Debtors in connection with the Engagement Letter.

33. Rothschild S.p.A. has a long-term relationship with the Company that substantially predates the Prepetition Engagement Letter, and since at least 2008, it periodically has been engaged to assist the Company in other financing and capital raising efforts (the "Historical Engagements"). All related engagement letters have been terminated as of the Petition Date.

34. As set forth in further detail in the Augustine Declaration, Rothschild has certain connections with creditors, equity security holders and other parties in interest in these Cases. All of these matters, however, are unrelated to these Cases, except with respect to the Prepetition Engagement Letter, the International Engagement Letters and the Historical Engagements. The Debtors and Rothschild do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Cases.

35. The Debtors' knowledge, information and belief regarding Rothschild's disinterestedness as set forth in this Application are based on, and made in reliance upon, the

Augustine Declaration.  To the extent that Rothschild discovers any additional facts bearing in a material respect on its disinterestedness during the period of Rothschild's retention in connection with these Cases, Rothschild will supplement the Augustine Declaration, as required by Bankruptcy Rule 2014(a).

### **PAYMENTS TO ROTHSCHILD PRIOR TO THE PETITION DATE**

36.     In connection with their prepetition engagement, certain of the Debtors were required to pay Rothschild certain monthly fees.  During the 90 days immediately preceding the Petition Date, Rothschild received the following payments in connection with its engagement under the Engagement Letter[11]:  (a) fee payments totaling $650,000, which includes the upfront fee described above; and (b) expense-reimbursement payments totaling $56,114.27 (including $25,000 paid on account of anticipated expenses, it being understood that, if actual expenses are determined to be lower than $25,000, any excess amount shall be credited against future fees and expenses payable under the Engagement Letter).  Other than as set forth herein, Rothschild did not receive any payments from any of the Debtors during the 90 days immediately preceding the Petition Date.

37.     Within one year prior to the Petition Date, the Company paid Rothschild $1,775,000 in fees and $63,061.17 in expense reimbursements for services rendered in connection with the Prepetition Engagement Letter, the Engagement Letter and the Historical Engagements (including the expense-reimbursement reserve described in the immediately preceding paragraph).

---

[11]     Rothschild received no payments from the Debtors under the Prepetition Engagement Letter within the 90 days prior to the Petition Date.

38.     As of the Petition Date, the Debtors did not owe Rothschild any fees or expenses incurred prior to the Petition Date that will not be waived upon entry of the Proposed Order (including unreimbursed expenses in excess of amounts paid to Rothschild prepetition).

## RELIEF REQUESTED

39.     The Debtors request entry of an order, substantially in the form of the Proposed Order, (i) authorizing them to employ and retain Rothschild as their financial advisor and investment banker *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in the Engagement Letter, (ii) approving the terms of the Engagement Letter, including the Fee and Expense Structure and the Indemnification Provisions, (iii) waiving certain information requirements of Local Rule 2016-2 and (iv) granting related relief.

## BASIS FOR RELIEF

**A.    The Debtors Should Be Permitted to Employ and Retain Rothschild on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code**

40.     The Debtors seek approval of Rothschild's retention and compensation structure pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the [Debtors], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out [their] duties under this title.

11 U.S.C. § 327(a).

41.     Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by

a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

42. Section 328(a) of the Bankruptcy Code provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment banking firms, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

43. As discussed above and as set forth in the Augustine Declaration, Rothschild satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Additionally, given the numerous issues that Rothschild may be required to address in the performance of the services for the Debtors pursuant to the Engagement Letter, Rothschild's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Rothschild's services for engagements of this nature, the Debtors believe that the terms

and conditions of the Engagement letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

44.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in this and other districts in other large chapter 11 cases.  *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc*., No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016); *In re Alpha Natural Res., Inc.*, No. 15- 33896 (KRH) (Bankr. E.D. Va. Sept. 17, 2015); *In re Allen Sys. Grp., Inc.*, No. 15-10332 (KJC) (Bankr. D. Del. Mar. 19, 2015); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 22, 2014); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013); *In re LCI Holding Co., Inc.*, No. 12-13319 (KG) (Bankr. D. Del. Jan. 10, 2013).

**B.     *Nunc Pro Tunc* Relief is Warranted**

45.     The Debtors believe that the employment of Rothschild effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of these Cases so that Rothschild may be compensated for its services prior to entry of an order approving Rothschild's retention.  Further, the Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment because Rothschild has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

46.     Courts in this and other Districts routinely approve *nunc pro tunc* employment similar to that requested herein.  *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re*

*Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

**C.      The Retention of Rothschild Is Critical to the Debtors' Chapter 11 Efforts.**

47.      The Debtors submit that the retention of Rothschild is in the best interest of all parties in interest in these Cases.  Rothschild is a preeminent financial advisory and investment banking firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of a uniquely qualified financial advisory and investment banking advisor and would be disadvantageous to the Debtors and all parties in interest.  The Debtors remain in need of financial advisory and investment banking services to perform analysis, engage the marketplace and negotiate the terms of one or more potential transactions in an effort to pursue the most value-maximizing strategy in these Cases.  Absent Rothschild's retention, the Debtors would be required to engage a new financial advisor and investment banker who would lack Rothschild's thorough understanding of the Debtors' businesses, capital structure and the capital-raising initiatives that have been attempted over the course of the last several months.  A newly retained financial advisory and investment banking advisor would require time and resources to get up to speed, which would imperil the Debtors' ability to efficiently determine and execute the appropriate strategy in these Cases and create attendant administrative costs for the Debtors' estates.  Moreover, comparable financial advisors and investment bankers that the Debtors would require in these Cases would likely charge an equal or greater amount of fees.  Based on services performed to date, Rothschild has been integral to preparing the Debtors for these Cases.  Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Rothschild in these Cases on the terms described herein and in the Engagement Letter.

## NOTICE

48.    Notice of this Application shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

49.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed

Order and grant such other and further relief as may be appropriate.

Respectfully submitted,

Dated:  November 16, 2017

/s/ Dennis Stogsdill
Dennis Stogsdill
Chief Restructuring Officer