# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 17-12307 (BLS) |
| M & G USA CORPORATION, et al.,[1] | (Jointly Administered) |
| Debtors. | Hearing Date: December 11, 2017 at 1:00 p.m. |
| | Objection Date: December 4, 2017 at 4:00 p.m. |

## MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR APPOINTMENT OF AN OFFICIAL COMMITTEE OF CONSTRUCTION LIENHOLDERS

Certain construction lien[2] claimants (collectively, the "Construction Lienholder Group"),[3] by and through their undersigned counsel, move this Court for entry of an order appointing an Official Committee of Construction Lienholders in the above-captioned cases and directing the Office of the United States Trustee to appoint such Official Committee of Construction Lienholders under 11 U.S.C. § 1102(a)(2) (the "Motion"),[4] and in support of the Motion, the Construction Lienholder Group respectfully submits the following:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals, S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The term "construction lien" is intended to encompass all mechanic's, contractors' or materialman's liens arising under and pursuant to Texas property law.

[3] The members of the Construction Lienholder Group are (i) Apache Industrial, Services, Inc., (ii) Axis Industrial Services, LLC, (iii) Bay Ltd, (iv) Dawkins On-Site Concrete, LLC, (v) Fagioli, Inc., (vi) Garrett Mechanical, Inc. (vii) TCI Business Capital as assignee of Integrity Mechanical Specialists, (viii) Lexicon, Inc., (ix) MEITEC, Inc., (x) Mirage Industrial Group, LLC, (xi) MMR Constructors, Inc., (xii) Repcon, Inc., (xiii) SimplexGrinnell, LP, (xiv) TNT Crane & Rigging Inc., (xv) WFS Construction Company LLC, (xvi) Wholesale Electric Supply of Houston, Inc.

[4] Prior to the filing of this Motion, the Construction Lienholder Group conferred with the United States Trustee as to the status of whether it intends to appoint an official committee of construction lienholders. The Construction Lienholder Group understands that the United States Trustee is still deliberating. The Construction Lienholder Group notified the United States Trustee that it would be filing this motion because there are important issues that will need to be addressed immediately. Notwithstanding this filing, the Construction Lienholder Group is hopeful that the relief sought herein becomes moot.

9853464/1

## Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(a)(2)(A). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein is section 1102(a)(2) of Title 11 of Chapter 11 of the United States Code (the "Bankruptcy Code").

## Background

3. According to the Debtors, in April 2013, the Debtors began construction on a plant in Corpus Christi, Texas (the "Corpus Christi Plant") owned by M & G Resins USA, LLC, one of the above-captioned debtors. Upon information and belief, construction of the Corpus Christi Plant was expected to be completed in December 2015, however the construction ceased prior to October 24, 2017 at only 85% complete. The construction of the Corpus Christi Plant currently remains less than 85% complete. The claims and liens of all of the members of the Construction Lienholder Group arose from the construction of the Corpus Christi Plant.

4. On October 24, 2017, M & G Polymers USA, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 30, 2017 (the "Petition Date"), M&G USA Corporation, et al. (the "Debtors") commenced these chapter 11 cases before this Court (together with the chapter 11 case of M & G Polymers, the "Cases").

5. On October 31, 2017, the Debtors filed the Declaration of Dennis Stogsdill in Support of First Day Pleadings [Docket No. 3] (the "Stogsdill Declaration"). The Stogsdill Declaration represents that there are at least $196 million of construction liens against the Corpus Christi Plant. Stogsdill Declaration, ¶ 10. The members of the Construction Lienholder Group hold more than $162 million of construction liens against the Corpus Christi Plant.

6. On October 31, 2017, the Debtors filed a Motion to Approve Postpetition Financing (the "DIP Motion") [Docket No. 14]. On November 1, 2017, the Debtors filed a Motion to Approve the Use of Cash Collateral (the "Cash Collateral Motion" and together with the DIP Motion, the "Financing Motions") [Docket No 53]. By and through the Financing Motions, the Debtors seek, among other things, authority to borrow and use in excess of $100 million. The Financing Motions are scheduled to be considered by the Court on December 11, 2017.

7. On November 13, 2017, the Office of the United States Trustee appointed the official committee of unsecured creditors (the "Unsecured Creditors Committee") to represent the interests of unsecured creditors. No holders of a construction lien serves - or were invited to serve - as a member of the Unsecured Creditors Committee.

8. On November 16, 2017, the Debtors filed a Motion to Approve Bidding Procedures for the Sale of Certain of the Debtors' Assets [Docket No. 173] (the "Bidding Procedures Motion"). The Corpus Christi Plant, upon which the construction lienholders each have a security interest, is among the assets to be sold pursuant to the Bidding Procedure Motion.

9. On November 20, 2017, the Debtors filed a Motion for Entry of an Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief [Docket No. 214] (the "Lien Identification Motion"). The Lien Identification Motion would, among other things, require that known and unknown construction lienholders file with the Bankruptcy Court a form that would include more information than is required in a proof of claim. Further, the construction lienholders would still be obligated to perfect their security interests by filing in Texas. The Bidding Procedures Motion and the Lien Identification Motion are scheduled to be considered by the Court on December 11, 2017.

## REQUESTED RELIEF

10. The Construction Lienholder Group seeks the entry of an order for the appointment of an Official Committee of Construction Lienholders and directing the Office of the United States Trustee to appoint an Official Committee of Construction Lienholders pursuant to 11 U.S.C. § 1102(a)(2).

## BASIS FOR RELIEF REQUESTED

11. Section § 1102(a)(2) provides "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee."

12. Although the Bankruptcy Code does not define the term "adequate representation," this Court has discretion to appoint an additional committee based upon the facts and circumstances of the case. See, e.g., In re Spansion, Inc., 421 B.R. 151, 156 (Bankr. D. Del. 2009). The Bankruptcy Code provides "no framework …for this Court to determine adequate representation," and decisions whether to appoint an additional creditors' committee is determined on a case-by-case basis. In re Enron Corp., 279 B.R. 671, 684-85 (Bankr. S.D.N.Y. 2002).

13. Courts rely upon two components when determining whether to order the appointment of a committee. See, e.g., Enron, 279 B.R. at 685. First, courts examine "whether the appointment of an additional committee is necessary to assure the movants are adequately represented." Id. If the answer the first question is yes, then the court decides, "whether it should exercise its discretion and order the appointment." Id. (citing In re Dow Corning Corp., 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996), rev'd on other grounds, 212 B.R. 258 (E.D. Mich.

4

1997); In re Wang Labs., Inc., 149 B.R. 1, 2 (Bankr. D. Mass. 1992)); In re Pilgrim's Pride Corp., 407 B.R. 211 (Bankr. N.D. Tex. 2009) (equity committee appointed where the court found that neither management nor an ad hoc committee could adequately represent shareholder interests). Among the factors considered by courts in determining whether to exercise its discretion are whether the moving party has an economic interest on account of which it will receive a distribution under the case, the time of the application; the potential for added complexity, and the presence of other avenues for creditor participation, and the cost associated with the appointment. See, e.g., Enron, 279 B.R. at 685; Spansion, Inc., 421 B.R. at 156.

14. The construction lienholders are aware that movants seeking the appointment of a second official committee bear a heavy burden of persuasion. Based upon decisions like this Court's in the case of In re Semcrude LP, Case No. 08-11525 (BLS), Order dated Oct. 15, 2008 [Docket No. 1774], and the facts of these cases, including the significant economic interests of construction lienholders, the number of construction lienholders with smaller claims, and the lack of any other party to represent their interests, the Construction Lienholder Group respectfully submits that it has satisfied its burden, and appointing a second committee is warranted and appropriate.

### A. The Construction Lienholders Have an Actual Economic Interest in These Cases

15. Courts have refused to appoint a committee where the moving party does not have an economic interest likely to receive a distribution in accordance with the absolute priority rule. See, e.g., Spansion, 4421 B.R. 156-57. That is not an issue here.

16. As stated in the Stogsdill Declaration, there are at least $196 million of construction liens against the Corpus Christi Plant. Stogsdill Declaration, ¶ 10. The members of the Construction Lienholder Group collectively hold more than $162 million of construction

5

liens against the Corpus Christi Plant, and they believe that the total number of construction liens will significantly exceed $200 million. Further, the DIP Motion contemplates distribution of construction claims, even going so far as to include the construction claimants' liens as "Prior Senior Claims" which are listed as the third category for distribution in the waterfall under the milestones. See DIP Motion, p. 33. Accordingly, the construction lienholders have a real economic interest that requires adequate representation.

### B. The Construction Lienholders Interests Are Not Currently Adequately Represented

17. As noted above, the United States Trustee has already appointed the Unsecured Creditors Committee in these cases, however the Unsecured Creditors Committee cannot adequately represent the interests of the construction lienholders in this case, which are significantly and substantively different.

18. This case is analogous to this Court's decision to appoint a second committee in Semcrude. In Semcrude, after the United States Trustee had appointed an official committee of unsecured creditors, a number of oil and gas producers filed a motion for the appointment of a second official committee. The debtors, the unsecured creditors committee, the secured lenders, and the United States Trustee all objected to the petitioning creditors' motion. This Court overruled the objections and granted the oil and gas producers' motion for appointment. Many of the same facts and issues from Semcrude are present in this case.

19. Like Semcrude, the lienholders seeking appointment have significant and discrete interests that are not adequately represented by the Unsecured Creditors Committee. Accordingly, the Unsecured Creditors Committee cannot represent their interests, and as this Court discussed in Semcrude, there is no option to expand the Unsecured Creditors Committee to include construction lienholders. See In re Semcrude, LP, Tr. pp. 140 (Bankr. D. Del. Oct. 3,

9853464/1

2008). A copy of the Semcrude transcript, which is docketed at 1897, is attached hereto as Exhibit "A."

20. Nor are the interests of construction lienholders adequately represented by the Construction Lienholder Group. Like the large oil and gas producers in Semcrude, the largest construction lienholders have agreed to come together as a group to share the burden of representation to protect their individual interest, however the Construction Lienholder Group does not have any duty to represent the numerous construction lienholders whose claims are so small that they are not economically incentivized to retain their own counsel. To deny construction lienholders the appointment of a committee based upon the larger creditors forming an informal group would unduly and improperly penalize the larger creditors for being vigilant through participation in the cases, and leave the multitude of smaller creditors without anyone to look out for their interests.[5] Further, without an official committee, each lien claimant may be required to appear in these cases notwithstanding the relatively small amounts of their claims.

21. Pending before the Court are the Financing Motions and Bidding Procedures Motion, all of which have issues that will substantively affect the rights of construction lienholders. Absent the appointment of an official committee, there is no party responsible for advocating on behalf of the interests of the construction lienholders by negotiating with the Debtors, the Debtors' lenders, the Unsecured Creditors Committee, and other parties in interest with respect to those motions.

22. Also before the Court is the Debtors' Lien Identification Motion, which will have significant impact on all construction lienholders, by requiring, among other things, that lienholders perfect their security interests in Texas and file a claim in the Delaware Bankruptcy

---

[5] The Construction Lienholder Group anticipates that there will be more than 300 individual construction lienholders.

7

Court which provides significantly more information than is required by the Federal Bankruptcy Rules or applicable Texas law. Absent the appointment of an official committee to represent the construction lienholders' interests, there is no other party in these cases who can or will negotiate more reasonable relief on the construction lienholders' behalf, including ensuring adequate notice for construction lienholders and protecting their due process rights.

23. There is no disparate treatment among the construction lienholders. As this Court stated in Semcrude: "As a practical matter, almost any committee appointed involves conflicting or at least inconsistent interests among its constituents and the committee's professionals must manage that." Semcrude. Tr., pp. 141-42. Notwithstanding the internal inconsistencies among the oil and gas producers in Semcrude, the Court still directed the appointment of a second official committee.

24. The issue of conflicts among potential committee members is even less applicable in the M&G cases than it was in Semcrude since, as a matter of applicable non-bankruptcy (i.e., Texas) law, there is common priority for all of the construction lien claims of contractors, mechanics, and materialmen, so all construction claimants will receive a pro rata distribution, without distinction based upon the timing of filing.[6] See Texas Property Code §§ 53.121 et seq. There is also no distinction among those creditors that perfected their security interest prior to the petition date and those that did not because, under Texas law, all construction lien claims relate back to the commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located (See Texas Property Code §§ 53.123 and 53.124). Even unknown claims can still be on an equal footing as known claimants when

---

[6] The fact that some contractors, mechanics and materialmen may not file claims does not undercut the argument that there is a need for an official committee of construction lienholders. Whether a contractor, mechanic, or materialman is secured is determined by a timely filing. In the absence of a filing, that party is not secured, and its interests will be represented by the Unsecured Creditors' Committee. Either way, there is no overlap of representations in this case among the two committees.

asserting lien rights, as Section 546(b) of the Bankruptcy Code permits the construction lienholders to still perfect their liens.

25. Nor will the creation of a second official committee be an undue burden. As stated by this Court in Semcrude: "there is no question . . . or guarantee that the appointment of a producers' committee will limit the amount of litigation in these cases or will otherwise curtail the actions of individual producers. But, experience suggests that that may occur here and thus holds out the prospect that the debtors and other parties will benefit from having a single voice within whom to negotiate on at least some important issues." Semcrude, Tr., Oct. 3, 2008, p. 143.

26. Unlike the Semcrude case, the M&G cases are still relatively new. Accordingly, the construction lienholders have not yet extensively participated in these cases, however as evidenced by the Debtors' Financing Motions, Bidding Procedure Motion, and Lien Identification Motion, it is already clear that, absent the appointment of an official committee, individual construction claimants may each be required to file motions and objections throughout this case in order to protect their interests, thereby wasting estate and judicial resources. An official committee charged with the fiduciary duty of representing the construction claimants' interests will give those parties a single voice to negotiate on important issues.

    C.    **Time is of the Essence for Appointment**

27. While the Construction Lienholders Group would prefer that the official committee be appointed by the United States Trustee, the members understand and appreciate that the United States Trustee's decision whether to appoint a committee is the product of deliberation. Unfortunately, there is no such time to wait in these cases. Already pending before

this Court are the Financing Motions[7] and the Bidding Procedures Motion that will irrevocably shape the direction of these cases, and all of those will directly affect the construction lienholders' rights. More importantly, however, and as noted above, there are immediate issues affecting the construction lienholders, including the Lien Identification Motion, that will have significant repercussions on the substantive and due process rights of those smaller creditors who have not, and will not, get notice of the relief sought by the Lien Identification Motion until after it is granted.

28. The Construction Lienholder Group respectfully submits that, based upon the foregoing, formation of an official committee of construction lienholders pursuant to 11 U.S.C. § 1102(a)(2) is necessary to adequately represent the interests of construction lienholders.

WHEREFORE, the Construction Lienholder Group respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit "B:" (i) appointing an Official Committee of Construction Lienholders; (ii) directing the Office of the United States Trustee to appoint members to the Official Committee of Construction Lienholders; and (iii) granting to the

---

[7] The Construction Lienholder Group is also aware that the Financing Motions also address issues of budgeting for the estates. While the Group of Construction Lienholders does not anticipate fees nearly as high as the other estate professionals, the Construction Lienholder Group is concerned that any delay in the appointment of an official committee would prejudice construction lienholders' efforts as the Debtors and the DIP Lender to argue that such appointment would render the estates to be out of compliance with the Court-approved budget.

Construction Lienholder Group such other and further relief as is just and proper.

Dated: November 22, 2017

**MORRIS JAMES LLP**

/s/ Jeffrey R. Waxman

Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brenna A. Dolphin (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bdolphin@morrisjames.com

*Counsel to the Construction Lienholder Group*