**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| M & G USA CORPORATION, *et al.*, | ) | Case No. 17-12307 (BLS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | Objection deadline: November 30, 2017[2] |
| | ) | Related Docket No. 14 and 173 |

**LIMITED OBJECTION OF MACQUARIE INVESTMENTS US INC.
TO (I) FINAL APPROVAL OF DEBTOR IN POSSESSION
FINANCING AND (II) APPROVAL OF SALE PROCEDURES**

Macquarie Investments US Inc. ("Macquarie"), by and through its undersigned counsel, submits this limited objection (the "Limited Objection") to (i) final approval of the *Motion For Entry Of Interim And Final Orders To (1) Authorize Certain Debtors In Possession To Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363 And 364; (2) Grant Liens And Superpriority Administrative Expense Claims To DIP Lender Pursuant To 11 U.S.C. §§ 364 And 507; (3) Provide Adequate Protection To The Pre-Petition First Lien Lender And The Pre-Petition Second Lien Secured Party; (4) Modify Automatic Stay Pursuant To 11 U.S.C. §§ 361, 362, 363, 364 And 507; (5) Schedule Final Hearing Pursuant To Bankruptcy Rules 4001(B) And (C) And Local Rule 4001-2; And (6) Grant Related Relief* [Docket No. 14] (the "DIP Motion") and (ii) the *Motion Of The Debtors For Entry Of Orders (I)(A) Approving Bidding Procedures For The Sale Of Certain Of The Debtors' Assets, (B) Authorizing The Debtors To Enter Into One*

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.ã r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.ã r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The deadline for Macquarie to object to final approval of the DIP Motion was extended by agreement to November 30, 2017.

1

*Or More Stalking Horse Purchase Agreements And To Provide Bid Protections Thereunder, (C) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof, (D) Approving Assumption And Assignment Procedures And (E) Schedule A Sale Hearing And Approving The Form And Manner Of Notice Thereof; (II)(A) Approving The Sale Of Certain Of The Debtors' Assets Free And Clear Of Liens, Claims, Interests And Encumbrances And (B) Approving The Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (III) Granting Related Relief* [Docket No. 173] (the "Sale Procedures Motion") filed by the above-captioned debtors (collectively, the "Debtors"). In support of its Limited Objection, Macquarie respectfully states as follows.

## PRELIMINARY STATEMENT

Although it is the first lien lender of a Debtor in these proceedings, Macquarie is not among the select few with whom the Debtors planned their bankruptcy filings in advance, negotiated the DIP Financing Facility or discussed the Debtors' strategy for these Chapter 11 cases. The Debtors further refrained from meaningfully engaging or communicating any desire for DIP financing with Macquarie. Absent a constructive dialogue, Macquarie largely is forced to glean what it can from the Debtors' submissions, which indicate that the Debtors have committed themselves to selling substantially all of their assets (including Macquarie's collateral, which includes the assets owned by M&G Waters USA, Inc. ("M&G Waters"), which is referred to in the Sale Procedures Motion as the "Desalination Assets"). Then, from the sale proceeds, the Debtors, the DIP Agent, the Pre-Petition First Lien Lender and Pre-Petition Second Lien Secured Party apparently have agreed among themselves (and ***without Macquarie's involvement or consent***) to, *first*, pay a portion of the administrative expenses incurred in these Chapter 11 cases and, *second*, distribute the remaining proceeds to the Pre-Petition First Lien

Lender and the Pre-Petition Second Lien Secured Party in total disregard of Macquarie's prevailing right to payment in full from the proceeds of its collateral as a holder of a Senior Prior Lien. The Sale Procedures also marginalize Macquarie's involvement in the Debtors' sale process and prejudice Macquarie's credit bid rights as the holder of a first priority lien in all of M&G Waters' assets. To be clear, Macquarie does not object to the Debtors pursuing a sale process to maximize the value of their assets as long as that process recognizes and protects Macquarie's rights. The Debtors' sale process, as set forth in the Sale Procedures Motion and Final DIP Order, appears to fail to do so in several regards.

## BACKGROUND

1. Macquarie serves as administrative and collateral agent for the lenders that are party to that certain Credit Agreement, dated as of November 9, 2016 (the "Credit Agreement"), providing a $55.5 million senior secured credit facility (the "Macquarie Credit Facility") to debtor M&G Waters. M&G Waters was formed to purchase, install and operate certain desalination equipment and boilers (the "Desalination Assets") in Corpus Christi, Texas. (DIP Motion ¶ 26). The purpose of the Macquarie Credit Facility was to finance the purchase, installation, and operation of the Desalination Assets. (*Id.*). Although the Resins Plant in Corpus Christi has been left uncompleted and subject to construction liens, the M&G Waters project was substantially complete well before the filing of these Chapter 11 cases. M&G Waters' obligations under the Macquarie Credit Facility are secured by a first lien on all of M&G Waters' assets and M&G USA's 100% equity interest in M&G Waters (the "Macquarie Collateral"). (*Id.*).

2. By letter dated October 19, 2017, Macquarie provided M&G Waters notice of (i) the occurrence and continuation of an Event of Default under the terms of the Credit Agreement,

(ii) Macquarie's acceleration of all principal, interest and other amounts due and reservation of other remedies and (iii) the application and accrual of default interest.

3. On October 24, 2017, (the "Polymers Petition Date"), Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Chapter 11 Cases").

4. The Macquarie Credit Facility was intended to finance solely the Desalination Assets at the Debtors' Corpus Christi Plant. However, following the Petition Date, Macquarie has learned that the Debtors diverted a portion of the proceeds of that loan facility to affiliates in violation of the Credit Agreement. *See e.g.,* D.I. 143-1; Ex B. (referring to an intercompany loan between M&G USA Corp., as Borrower, and M&G Waters USA LLC, as Lender, in the amount of $4.783 million). Absent that improper intercompany transfer and the subsidizing of its affiliates, M&G Waters would have no need for additional financing. Moreover, Macquarie believes it is M&G Waters' sole outstanding creditor. While M&G Waters is owed money by other Debtors, the DIP Motion seeks to saddle M&G Waters with the additional obligations of an Obligor and Guarantor of the proposed DIP Facility without reasonable benefit and safeguards to M&G Waters or Macquarie. (DIP Motion ¶ 55). As such, M&G Waters would grant a security interest in all of its rights, title, and interests in its Property, which security interests and liens would have priority over all other liens *except* Senior Prior Liens. (*Id.*). Macquarie's liens and security interests are Senior Prior Liens.

5. On November 1, 2017, the Court convened a first day hearing during which the Court elicited Debtors' counsel's confirmation (with which DIP Lenders' counsel agreed) that

4

there is "no non-consensual priming going under this DIP." (Nov. 1, 2017 Hr'g Tr. at 60-61 (attached hereto as **Exhibit A**)). Following the conclusion of the hearing, the Court entered an order approving the DIP Motion on an interim basis. (Interim DIP Financing Order [Docket No. 62]).

6. On November 16, 2017, the Debtors filed the Sale Procedures Motion, which seeks Court approval of extensive procedures governing the Debtors' efforts to sell substantially all of their assets (the "Sale Procedures").

7. On November 18, 2017, the Debtors filed their proposed order approving the DIP Motion on a final basis [Docket No. 198] (the "Final DIP Order"). The Final DIP Order contains certain "363 Sale Procedures" that must be read in conjunction with the Sale Procedures. A hearing to consider approval of the Final DIP Order and the Sale Procedures is scheduled to be held on December 11, 2017.

**LIMITED OBJECTIONS**

**A. Macquarie's rights as the Senior Prior Lienholder in M&G Waters' Assets must be protected.**

8. At least on its face, the Final DIP Order continues to honor Macquarie's Senior Prior Lien in the Macquarie Collateral (Final DIP Order ¶3(b)). However, it appears that the Debtors, the DIP Agent, the DIP Lender, the Pre-Petition First Lien Lender, the Pre-Petition Second Lien Secured Party have agreed among themselves – *and without consulting Macquarie* – to prime and surcharge Macquarie's Senior Prior Lien pursuant to the sale proceeds distribution scheme proposed as part of the 363 Sale Procedures. (Final DIP Order ¶B(vii)).

9. The 363 Sale Procedures apply to the sale of any "CC Assets", which are loosely defined to include "all assets of the Guarantors (as defined in the DIP Term Sheet) that have been or may be useful to the current or future construction, business operations or uses of M&G

5

Resins' assets…" (D.I. 30 ¶28). Macquarie's Collateral, *i.e.*, the Desalination Assets, are expressly identified among the assets subject to the Debtors' sale process. (Sale Motion ¶12).

10. By their terms, the 363 Sale Procedures dictate the distribution of sale proceeds of the CC Assets in violation of the Bankruptcy Code and the rights of secured parties. For example, in a non-credit bid scenario, the 363 Sale Procedures require the payment of professional fees and certain Pre-Petition First Lien Obligations and Pre-Petition Second Lien Obligations ahead of the payment of Senior Prior Liens, such as those held by Macquarie. (Final DIP Order ¶¶B(vii) and 13). The Debtors' agreement to pay administrative expenses of their estates from the proceeds of Macquarie's Collateral without Macquarie's consent is the equivalent of a surcharge pursuant to 11 U.S.C. §506(c) without requisite due process. *In re Chicago Lutheran Hospital Assoc.*, 89 B.R. 719 (Bankr.N.D. Ill. 1988) ("The entity seeking to recover costs under 11 U.S.C. § 506(c) bears the burden of proving that the exception is applicable."). The apparent agreement among the Debtors, DIP Agent, DIP Lender, Pre-Petition First Lien Lender and Pre-Petition Second Lien Secured Party to surcharge Macquarie is even more galling in that those same non-debtors stand to obtain a waiver of the Debtors' 506(c) surcharge rights under the Final DIP Order. (Final DIP Order ¶11).

11. Moreover, the payment of obligations junior in priority to Macquarie's Senior Prior Lien (such as the Pre-Petition First Lien Obligations and Pre-Petition Second Lien Obligations) from any proceeds of the Macquarie Collateral prior to the repayment in full of all obligations owing to Macquarie effectively primes Macquarie's Senior Prior Lien. Macquarie objects to these contradictory provisions within the proposed relief and object to any priming of its liens and security interests in any form.

12. The Debtors' poet-petition financing and sale process must respect and protect Macquarie's rights as a holder of a Senior Prior Lien in the Macquarie Collateral. The Final DIP Order, the Sale Procedures and any order approving the sale of Macquarie's Collateral must require that all proceeds from the sale of Macquarie's Collateral be segregated and distributed directly to Macquarie.

B. **Macquarie Should Be Deemed a "Qualified Bidder" and Included as a "Consultation Party" Concerning M&G Waters' Assets.**

13. As the holder of a valid, perfected, first-priority lien on all of M&G Waters' assets, Macquarie's rights to credit bid in accordance with section 363(k) of the Bankruptcy Code must be safeguarded. The Debtors seemingly acknowledge so by designating Macquarie as a "Specified Lender." (*See* Sale ProceduresVI.A.5.) However, just as they treat the DIP Lender and the Pre-Petition First Lien Lender (*see* Sale Procedures, III.A.), to the extent Macquarie seeks to credit bid, the Debtors should treat Macquarie as a "Qualified Bidder" entitled to participate in the sale process without Macquarie having to first submit a Proposal. Macquarie, and the extent of its claim, are well known to the Debtors and no purpose is served by imposing upon Macquarie terms more onerous than first lien lenders of other Debtors or additional steps to exercise its credit bid right.

14. Also, Macquarie should receive copies of all Final Bids that relate or cover in any way the assets of M&G Waters. The Debtors propose to provide copies of all Final Bids to the Consultation Parties. The DIP Agent, the DIP Lender and the Pre-Petition First Lien Lender are among the Consultation Parties that will promptly receive copies of all Final Bids. (Sale Procedures, V.). The Debtors fail to articulate any justification for providing the DIP Agent, the DIP Lender and the Pre-Petition First Lien Lender with copies of the Final Bids, yet withhold the same from Macquarie. Notably, Macquarie is a "pre-petition first lien lender" but the Debtors

7

define "Pre-Petition First Lien Lender" as only the lender to M&G Resins USA, LLC, a different debtor.

15. Moreover, Macquarie should not be required to submit a deposit or a written commitment to fund the "Cash Amount" in order to exercise its right to credit bid. In order to be deemed a Qualified Bidder and participate in the Auction, the Sale Procedures require a bidder to submit a Good Faith Deposit (the greater of $10 million or 10% of the proposed Purchase Price) and a written commitment to fund into an escrow account cash in an amount sufficient to satisfy the estimated Sale Professional Fees, the amount of which is currently undisclosed. (*See* Sale Procedures VI.A.5.-6.)[3] Subject only to section 363(k) of the Bankruptcy Code, Macquarie has an unqualified right to credit bid all amounts due under the Macquarie Credit Facility. To the extent it seeks only to exercise its credit bid right, Macquarie's participation in the sale process should not be conditioned upon provision of a deposit or any additional financial commitment.

16. The Sale Procedures, to the extent applicable to Macquarie in this instance, also improperly require that in the event of a credit bid by the DIP Lender and the Pre-Petition First Lien Lender, any competing Successful Bid must be in dollar equivalent amount of at least such credit bid, plus the Sale Professional Fees Amounts and the Sale Excess Fees Amounts. (Sale Procedures VI.A.5.). The DIP Loan and the administrative expenses incurred in connection with the Debtors' sale process are junior in priority to Macquarie's liens and, therefore, Macquarie should not be required to satisfy such amounts in order for the Debtors to consider its bid, if any.[4]

---

[3] The Sale Procedures appear to provide the Debtors with discretion to reduce the Cash Amount, however, that decision is entirely permissive and does not include the Good Faith Deposit. (Sale Procedures VI.A.5.)

[4] To the extent the Credit Bid Overbid Requirements are not intended to apply with respect to a credit bid by Macquarie, Macquarie asks that the Sale Procedures be revised to clearly say so.

17. Moreover, the Debtors fail to articulate any deadline or mechanism by which they propose to allocate such Sale Professional Fees or Sale Excess Fees as among the Debtors. Bidders must be informed of the hurdle they must overcome to participate in the process.

### C. No DIP Liens or Adequate Protection Liens Should Attach to Proceeds of the Macquarie Credit Facility.

18. Macquarie's rights to the proceeds of its Credit Facility must be preserved. To the extent that M&G Waters' upstreaming and side-streaming of proceeds from the Macquarie Credit Facility to Borrower's affiliates provides the basis for an avoidable transfer pursuant to Chapter 5 of the Bankruptcy Code or claims otherwise, Macquarie asserts that its rights constitute Senior Prior Liens superior to any other creditor in the proceeds of such an action. Such transfers appear in clear violation of the Macquarie Credit Facility. The Final DIP Order, therefore, should be revised to expressly carve out such action and the proceeds of such action from the liens and claims granted to the DIP Lender, the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party.[5]

### D. Macquarie Must be Protected and Given Notice in the Event the DIP Lender Seeks to Exercise Remedies Involving Macquarie's Collateral.

19. Macquarie also objects to paragraph 18 of the Final DIP Order, which *permits* but does *not* require the DIP Lender to provide any notice whatsoever to the Court or parties in interest (other than the Debtors, the Creditors' Committee and the U.S. Trustee) before exercising remedies. Macquarie submits that in the event the DIP Lender intends to exercise its remedies as against any of the Macquarie Collateral, that the DIP Lender be required to give

---

[5] The Debtors have not sought, nor received, Court approval for the use of any cash that constitutes Macquarie's Collateral. (DIP Motion ¶113). And to be clear, Macquarie objects to the use of its cash collateral without its consent. In addition, Macquarie reserves the right to demand that the Debtors provide adequate protection for any reason whatsoever including, without limitation, in the event that (i) the Court approves the Debtors' use of proceeds of the Macquarie Collateral over Macquarie's objection or (ii) the Debtors seek Court approval for the use of Macquarie's cash collateral. *See* 11 U.S.C. § 361.

9

Macquarie at least 10 business days advance written notice. In addition, such relief appears principally contradictory to the Debtors' oral warranties of the absence of any non-consensual priming, and Macquarie's interests should be adequately protected throughout the course of these proceedings.

20. Finally, Macquarie expects the professionals of the M&G Waters estate to exercise duties to the M&G Waters estate, including vigorously marketing assets for sale for this Debtor separately, and fulsome and transparent efforts.

## **RESERVATION OF RIGHTS**

Macquarie reserves all of its rights, claims, defenses and objections, including the right to incorporate other objections, or supplement or amend this Limited Objection in any fashion.

## **CONCLUSION**

For the foregoing reasons, Macquarie respectfully requests that the Court deny final approval of the DIP Motion and approval of the Bidding Procedures unless the proposed final DIP Order and Bidding Procedures Order are revised to resolve the concerns raised in this Limited Objection.

Dated: November 30, 2017                    **ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor, Esq. (#4008)
Stacy L. Newman, Esq. (#5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
Email: gtaylor@ashbygeddes.com
Email: snewman@ashbygeddes.com

-and-

**SIDLEY AUSTIN LLP**
Duston K. McFaul, Esq.
1000 Louisiana Street
Suite 6000
Houston, TX 77002
Telephone: (713) 495-4516
Facsimile: (713) 495-7799
Email: dmcfaul@sidley.com

-and-

**SIDLEY AUSTIN LLP**
David E. Kronenberg, Esq.
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202-736-8043
Facsimile: 202-736-8711
Email: dkronenberg@sidley.com

*Counsel to Macquarie Investments US Inc.*