# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| M & G USA CORPORATION, *et al.*,[1] | ) Case No. 17-12307 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:** |
| | ) December 11, 2017 at 1:00 p.m. |
| | ) |
| | ) **Objection Deadline:** |
| | ) December 4, 2017 at 4:00 p.m. |
| | ) |
| | ) Re: Docket No. 246 |

## UNITED STATES TRUSTEE'S RESPONSE
## TO MOTION TO APPOINT AN OFFICIAL COMMITTEE OF
## CONSTRUCTION LIENHOLDERS [D.I. 246]

Andrew R. Vara, Acting United States Trustee for Region 3 (the "U.S. Trustee"), hereby responds to the Construction Lienholder Group's motion to appoint an official committee of construction lienholders as follows:

### I.   Introduction

Fifteen claimants who assert construction and other similar liens against the M & G Debtors request that this Court direct the U.S. Trustee to appoint an official committee to represent them. But these creditors are secured by collateral, have formed an informal committee, hired counsel, and have actively engaged in these cases. Before filing their motion, these claimants submitted a letter to the U.S. Trustee requesting that the U.S. Trustee appoint a

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.a.r.l. (1270), M&G Chemicals, S.A. (1022), M&G Capital S.a.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas, 77067.

1

committee of construction lienholders in these bankruptcy cases under 11 U.S.C. § 1102(a)(1). The M & G Debtors, the Official Committee of Unsecured Creditors, and DAK Americas, LLC, all responded to the requests. The U.S. Trustee reviewed the requests, the responses, and the facts in these cases. After consideration of all of the facts and circumstances of which the U.S. Trustee was aware at the time, the U.S. Trustee determined to exercise his discretion under § 1102(a)(1) by not appointing a lienholders' committee. The Construction Lienholders' Group then filed their motion. It asks the Court to order the appointment of an official lienholders' committee pursuant to the Court's own authority under § 1102(a)(2). The U.S. Trustee respectfully submits that the record established by the movants before the Court thus far fails to demonstrate grounds for such a committee appointment.

**II.     Factual Background**

1.     On October 24, 2017, M & G Polymers USA, LLC ("M & G Polymers") filed a voluntary chapter 11 bankruptcy case, docketed as case number 17-12268. On October 30, an additional 11 affiliates of M & G Polymers filed voluntary chapter 11 petitions. The debtors' cases are being jointly administered under one of the later-filed cases, that of M & G USA Corporation (collectively with M & G Polymers USA and the additional 11 debtors the "M & G Debtors").

2.     The M & G Debtors are ultimately owned by an Italian corporation, with intermediate Luxembourg holding companies providing executive and back office services for the M & G Debtors as well as non-debtor affiliates and subsidiaries. The M & G Debtors manufacture PET for packaging. In 2013, the M & G Debtors, believing that they could achieve economies of scale, embarked on the construction of a vertically integrated PET plant in Corpus Christie, Texas through the M & G Resins entity. The Corpus Christie plant is approximately

85% complete, and the M & G Debtors estimate that it will cost another $500 million to complete (it is already almost a billion dollars over budget).

3. The Construction Lienholder Group is a group of 15 creditors asserting construction lien claims against the M & G Resins and M & G Waters entities and the Corpus Christie plant. Collectively, the Construction Lienholder Group asserts approximately $161 million in total lien claims. Other M & G Debtors and non-debtor affiliates own other plants and property, and non-construction liens of other creditors may encumber the Corpus Christie plant as well as certain other assets of the various M & G Debtors.

4. The Construction Lienholder Group estimates that there are at least 122 lien claimants that may hold as much as $400 million in total lien claims against the Corpus Christie plant. They assert that these claims may be automatically perfected under Texas law, and may prime the M & G Debtors' first lien lender.

5. On November 7, 2017, a number of construction lien claimants, acting through counsel, sent a letter to the U.S. Trustee requesting the appointment of an official lienholders' committee. On November 16 and 22, 2017, the Construction Lienholder Group (including some of the original requesters) sent a follow-up request for a lienholders' committee. On November 17, 2017, the M & G Debtors and DAK Americas, LLC, provided responses to the requests, and on November 22, 2017, the Official Committee of Unsecured Creditors also provided a response.

6. On November 22, 2017, the Construction Lienholder Group filed its motion requesting that the Court direct the U.S. Trustee to appoint a lienholders' committee. On November 28, 2017, the U.S. Trustee determined not to exercise his discretion to appoint a committee under Section 1102(a)(1), but the Motion seeking an appointment order from the Court remains pending.

### III. Legal Argument

7. The Bankruptcy Court has independent authority to direct the U.S. Trustee to appoint a committee under 11 U.S.C. § 1102(a)(2) "if necessary to assure adequate representation" of creditors or equity security holders. The majority of cases on the issue concern requests for official committees of equity security holders. In ruling on those requests, courts typically consider: (1) whether the debtor's shares are widely held and publicly traded; (2) the size and complexity of the chapter 11 case; (3) the delay and additional cost that would result if the Court appoints the requested committee; (4) the likelihood that the debtors are insolvent; (5) the timing of the request compared to the status of the chapter 11 case; and (6) other factors relative to the adequate representation issue.[2] No one factor is dispositive, and the court is free to weight each factor according to the circumstances of the particular case under consideration.[3]

8. Courts considering additional committees in general (rather than specific equity committee requests) tend to focus on whether the additional special interest committee will have a negative impact on the efficiency of the case (through excessive or prolonged litigation or similar circumstances)[4], or will lead to increased costs and decreased accountability and delineation of responsibility.[5] Courts have denied requests for additional committees based in large part upon their concern for escalating administrative costs.[6] But if there are such significant

---

[2] *Matter of Kalvar Microfilm, Inc.,* 195 B.R. 599, 600 (Bankr. D. Del. 1996).

[3] *Id* at 600-01.

[4] *See In re Baldwin-United Corp.*, 45 B.R. 375, 376 (Bankr. S.D. Ohio 1983).

[5] *See In re Saxon Indus., Inc.*, 39 B.R. 945, 947 (Bankr. S.D.N.Y. 1984).

[6] *In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989).

conflicts among creditors that they would impair an official committee's ability to function, a separate committee may be appropriate.[7]

9. Courts have also found that the question of adequate representation is a threshold inquiry. "The statute clearly requires an initial determination of whether a party is adequately represented."[8] The moving party "bears the burden of proving that the Official Committee does not provide them with adequate representation."[9]

10. Here, after considering the requests, the responses, the facts in the record, and the circumstances of these cases, the U.S. Trustee exercised his discretion and did not appoint an official lienholders' committee. The Construction Lienholder Group's motion asks the Court to appoint an official lienholders' committee under § 1102(a)(2). The latter statutory provision does not act as a review mechanism for the U.S. Trustee's decision. Rather, it enables the Court to perform its own review of the facts and circumstances, including information that may be presented at an evidentiary hearing, in making its own determination regarding the appointment of an additional committee.

11. The Construction Lienholder Group's motion alleges that an official committee of construction lienholders is appropriate because these lienholders are not adequately represented. The lienholders believe a committee is appropriate because: (1) construction lienholders have an actual economic interest in the outcome of the M & G Debtors' cases, (2) the ad hoc Construction Lienholder Group is working only for itself, and has no duty or obligation to represent the larger, general group of construction lien claimants, and those claimants are thus

---

[7] *In re McLean Indus., Inc.*, 70 B.R. at 861; *see also In re Johns-Manville Corp.*, 38 B.R. 331 (Bankr. S.D.N.Y. 1983).

[8] *Mirant Americas Energy Marketing, LP*, *v. The Official Comm. Of Unsecured Creditors of Enron Corp.*, 2003 WL 22327118, * 3 (S.D.N.Y. Oct. 10, 2003).

[9] *In re Garden Ridge Corp.*, 2005 WL 523129, *3 (Bankr. D. Del. Mar. 2, 2005).

5

not adequately represented, (3) the M & G Debtors' proposed course of action in these cases imposes disproportionately high burdens on construction lienholders and violates the due process rights of small lien creditors, and (4) a lienholders' committee would not impose an undue burden on the M & G Debtors' estates. These statements are arguments, not facts. They do not prove lack of adequate representation.

12. The Construction Lienholder Group is adequately represented. Fifteen lienholders have organized into an *ad hoc* committee. Although the Motion claims that the Construction Lienholder Group is acting only in the interests of its members, any benefit it secures its lienholder members (extended deadlines, reduced information barriers, or concessions) will benefit the lienholders as a group. Adequate representation does not require perfect alignment or lock-step agreement. The lienholder group is adequately represented. They do not need a separate committee. Because the Construction Lienholder Group cannot meet this threshold showing, the Court should deny the Motion on this basis alone.

13. Although the Court's inquiry could stop there, the Court may continue and consider whether the Construction Lienholder Group has met its burden of showing that an additional committee is necessary. It has not. The Construction Lienholder Group's motion does not provide sufficient evidence to enable the Court to make a necessity finding. There is already a functioning and active *ad hoc* committee. Each of its members, and other joining lienholders, assert that they are not only secured, but have first priority liens in collateral ahead of all of the M & G Debtors' other secured creditors. These lienholders' collateral provides protection and representation. These lienholders do not also need a separate committee and estate-paid professionals.

14. The Group also does not provide sufficient evidence to show that construction lienholders would not have conflicts amongst themselves as to the liened property (whether related to perfection, perfection timing, collateral, or the like). Although the motion generally cites Texas lien law, it does not provide sufficient detail or evidence to demonstrate that the construction lienholders lack conflicts within the group. Further information and proofs may need to be presented at an evidentiary hearing.

15. Unless the Construction Lienholder Group makes a stronger showing than is in the Motion, the Court should not appoint an official lienholders' committee.

16. The Construction Lienholder Group's motion is set to be heard on December 11, 2017. While the U.S. Trustee had determined not to appoint a lienholders' committee on the record before him, parties may set forth additional facts and circumstances at that hearing or otherwise in support of the motion. The U.S. Trustee reserves the right to set forth a further response or position based on any such additional submissions made at or before the hearing.

**IV. Conclusion**

The U.S. Trustee objects to the Motion, but leaves the Construction Lienholder Group and other interested parties to their proofs and evidence either in support of or in opposition to the motion at a hearing on the matter, and reserves the right to comment further at such time.

**Andrew R. Vara,**
**Acting United States Trustee, Region Three**

Dated: December 1, 2017     **BY:**     /s/ Hannah Mufson McCollum
                                        Hannah Mufson McCollum, Esq.
                                        Trial Attorney
                                        J. Caleb Boggs Federal Building
                                        844 King Street, Suite 2207, Lockbox 35
                                        Wilmington, DE 19801
                                        (302) 573-6491
                                        (302) 573-6497 (Fax)