# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,<br><br>                   Debtors. | ) Chapter 11<br>)<br>) Case No. 17-12307 (BLS)<br>)<br>) (Jointly Administered)<br>)<br>) Hearing Date: Dec. 11, 2017 at 1:00 pm<br>  Obj. Deadline: Dec. 4, 2017 at 4:00 pm<br>  Re: Docket No. 246 |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR APPOINTMENT OF AN OFFICIAL COMMITTEE OF CONSTRUCTION LIENHOLDERS

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of M& G USA Corporation and its affiliated debtors (collectively, the "Debtors") hereby submits this objection (this "Objection") to the Motion of the Construction Lienholder Group (the "Lienholders Group") for Appointment of an Official Committee of Construction Lienholders (the "Motion")[1] [Docket No. 246], and in support thereof, respectfully states as follows:

### INTRODUCTION

1. The Lienholder Group's request to appoint an official committee of lienholders is nothing more than a request of a group of allegedly secured creditors seeking to have their fees in these cases paid on a current basis—without providing any concomitant benefit to the estates — rather than having to wait until consummation of a plan of reorganization like other secured creditors and satisfaction of relevant Bankruptcy Code requirements. Moreover, the Motion was filed on shortened notice, violating the notice requirements of the Local Rules, and notwithstanding a pending request to the U.S. Trustee for the formation of an official committee

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

– a request which was later denied. As such, the Motion should not be heard at the December 11 hearing. To the extent the Court determines to hear the Motion, the request should be denied.

2.   In the Motion, the Lienholder Group themselves acknowledge the extraordinary nature and heavy burden of persuasion necessary for the appointment of an additional statutory committee. In claiming they have met that burden, they fail to point out that the very nature of the underlying claims the Lienholder Group asserts, however, preclude the appointment of such a committee in this instance. Specifically, no determination has yet been made as to whether the individual holders of the various mechanic's, materialmen's or other types of statutory liens hold secured and/or unsecured claims. It is for precisely this reason that the Debtors recently filed their Procedures Motion (as defined below), which aims to expedite the process by which purported lienholders may assert their right to a lien and will enable the Debtors to ascertain the entire universe of statutory liens being asserted against them. The Procedures (as defined below) to be established will allow lienholders to assert their individual facts and to take legal positions that may contradict with those of other alleged claimants – something that would, as a fiduciary, be prohibited by an official committee of lienholders, making any such committee unworkable and erasing any benefit that it might have brought to lienholders.

3.   To the extent lienholders, through the Procedures Motion or otherwise, are determined to hold valid secured claims, there is no basis for the appointment of a committee of secured lienholders to represent such interests – they will be entitled to payment to the extent provided for under the Bankruptcy Code. On the other hand, to the extent they are determined to possess unsecured claims, the Lienholders Group has provided no evidence as to why the Creditors' Committee is not able to fully represent their rights and interests in these cases. Statutory lienholders should not be permitted a committee solely to litigate their own specific

and limited set of issues when the Procedures Motion already establishes a method by which they may have their liens recognized, and, to the extent they hold unsecured claims, an official committee of unsecured creditors is already fully functioning to represent their interests.

4. While the Lienholders Group relies heavily on the decision appointing an official committee of oil and gas producers in *Semcrude*, that case presented significantly different facts from those before this Court. As this Court knows, *Semcrude* involved thousands of claimants across a number of states, many of whom were actively appearing before this Court, involving numerous open questions of state law being litigated before the Court. Absent an additional committee in *Semcrude*, the debtors and the Court would have had an unwieldy process to manage. Here, the number of claimants is significantly smaller, they all hold claims against the same construction project (the Debtors' Corpus Christi project) in one state (Texas) and the only issue is whether the parties have properly established and perfected a lien pursuant to the applicable Texas state law. Given that the situation is significantly different from *Semcrude*, the expenses of any such lienholders' committee far outweigh any utility or other benefits that would accrue to the holders of statutory claims or to the Debtors' estates. Moreover, the lienholders have already demonstrated that they are capable of having adequate representation in these cases, by virtue of their formation of an *ad hoc* group to file the Motion, as well as to object to the relief the Debtors' have requested to extend their time to file their schedule of liabilities and statement of financial affairs [Docket No. 257]. There is simply no basis to establish a separate official committee to represent the interests of statutory lienholders, and the Lienholder Group has failed to provide any justification for their request. The Motion should be denied.

## BACKGROUND

5. On October 24, 2017, M & G Polymers USA, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 30, 2017 (the "Petition Date"), M&G USA Corporation, *et al.* (collectively, the "Debtors") commenced these chapter 11 cases.

6. The U.S. Trustee for the District of Delaware (the "U.S. Trustee") appointed the Creditors' Committee on November 13, 2017 [Docket No. 146].

7. On November 14, 2017, the Creditors' Committee was forwarded by the U.S. Trustee a November 7, 2017 letter of T. Josh Judd, Esq. of the Andrews Myers firm as counsel to a number of construction lien claimants (the "Nov. 7 Letter").[2] The Nov. 7 Letter was supplemented by a letter, dated November 16, 2017, from Jeffrey R. Waxman, Esq., of Morris James LLP (the "Nov. 16 Letter," and together with Nov. 7 Letter, the "Letters").[3] Pursuant to the Nov. 16 Letter, Mr. Waxman asserted that he represented sixteen (16) material and mechanic lien creditors holding mechanic's lien claims of over $162.9 million against the Debtors, and requested, among other things, the appointment of an official mechanic's and materialmen's lien committee to represent the claims of his clients as well all other holders of mechanic's and materialman's liens.

8. On November 20, 2017, the Debtors filed their *Motion for Entry of an Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief* (the "Procedures Motion") [Docket 214] seeking to establish procedures (the "Procedures") to determine the validity and status of statutory lienholders. The Procedures Motion is scheduled to be heard by the Court on December 11, 2017.

---

[2] The Nov. 7 Letter is attached hereto as Exhibit A.
[3] The Nov. 16 Letter is attached hereto as Exhibit B. The Motion was also filed by Mr. Waxman. Certain other lienholders made similar requests to the U.S. Trustee.

9. By letter dated November 22, 2017, the Creditors' Committee communicated to the U.S. Trustee that it opposed the formation of an additional official committee, and the bases for such opposition.[4]

10. Rather than waiting for a determination by the U.S. Trustee as to whether an official committee should be formed and openly violating widely accepted professional norms, the Lienholder Group filed their Motion on November 22, 2017. As the Motion was filed on November 22, 2017 and the Objection Deadline was noticed as December 4, 2017 and the hearing as December 11, 2017, the proposed time frame violates Rule 9006-1 of the Local Rules, as the Local Rules require notice for objections to be no earlier than 14 days after the motion is filed and notice of hearings to be no earlier than 21 days.

11. On November 28, 2017, the U.S. Trustee determined not to exercise its discretion to appoint a committee under section 1102(a)(1), but the Motion remains pending.

12. Subsequently, the U.S. Trustee filed an objection to the Motion on December 1, 2017 [Docket No. 321], in which the U.S. Trustee reiterated its opposition to the formation of a second official committee.

## ARGUMENT

### I. The Relief Being Sought Is Extraordinary

13. As the Court is aware, 11 U.S.C. § 1102(a)(2) governs the appointment of additional official committees, and provides:

> [o]n request of a party in interest, the court *may* order the appointment of additional committees of creditors or of equity security holders *if necessary to assure adequate representation* of creditors or of equity security holders. The United States trustee shall appoint any such committee.

11 U.S.C. § 1102(a)(2) (emphasis added).

---

[4] A copy of the Creditors' Committee response is attached hereto as Exhibit C.

5

14. The appointment of an additional committee is an extraordinary remedy. *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). Further, "[t]he party seeking the appointment of an additional committee bears the burden of proving it is not adequately represented." *In re Winn-Dixie Stores, Inc.*, 326 B.R. at 858. Courts generally have been reluctant to appoint additional committees, even when the creditor constituents have diverse and sometimes conflicting interests. *In re Pub. Serv. Co. of N.H.*, 89 B.R. 1014, 1020 (*citing In re Johns-Manville Corp.*, 68 B.R. 155 (S.D.N.Y. 1986)). The appointment of official committees of secured creditors is even more unusual because "it is rare indeed, if not non-existent, that the interest[s] of secured creditors are identical." *Matter of Wekiva Dev. Corp.*, 22 B.R. 301, 302 (Bankr. M.D. Fla. 1982).

15. For the reasons set forth below, the Creditors' Committee respectfully asserts that the Lienholder Group has failed to satisfy the burden required for the appointment of an additional committee and requests that the Motion be denied.

A. **The Relief Sought By the Motion Is Premature.**

16. The goal of the Procedures Motion is to establish a means by which holders of statutory claims may on an expedited basis identify and establish their right to payment. At this point, however, the type of claims held by the members of the Lienholder Group and other purported holders of statutory liens have not been fully determined. It may be possible that such claims are secured or unsecured.

17. To the extent that the claims are found to be secured, the rights and collateral of each party will be unique, determined by applicable Texas law, including when the goods or services were provided, when they filed their liens, and facts giving rise to each party's alleged

6

secured claim. Consequently, the treatment of each party under the Bankruptcy Code must be uniquely determined. It is for this very reason – that such claims may be secured – that statutory lienholders were not invited to be members of the Creditors' Committee. At this time, however, the Creditors' Committee has been provided with no evidence of actual liens or other factors establishing secured status for these parties. As such, the Creditors' Committee asserts the right to dispute any parties' assertion that it is a secured creditor or, to the extent it is secured, to dispute the extent and priority of its lien. Moreover, there has been no valuation established in these cases, and any lienholder seeking the appointment of an official committee should be put in the same position as a party seeking the establishment of an equity committee to prove that they are entitled to value under a plan of reorganization. Because the Lienholders Group has failed to provide any evidence of value being attributable to their alleged claims, the Motion should be denied on this basis as well.

18. In the few instances where courts have taken the extraordinary step of appointing an official committee of secured claimants, there were rare and unusual circumstances that are not present in these cases. For example, in *In re Diversified Capital Corp.*, 89 B.R. 826 (Bankr. C.D. Cal. 1988), certain secured creditors moved for an order directing the appointment of an official committee in the wake of allegations by the debtor that it was defrauded in connection with a proposed postpetition sale of its real property under a confirmed plan of reorganization. *See id.* at 827-28. As part of the sale, the debtor was supposed to receive cash and debentures in return, which it never received. *See id.* In granting the request to appoint an official committee of *secured* creditors, the court pointed to the purchaser's "trickery" and the debtor's failure to take prompt action to set aside the transaction. *See id.* at 831. No allegations have currently been

7

raised by any party in interest that post-petition the Debtors have failed to act in accordance with their obligations under the Bankruptcy Code and in the interest of their creditors.

19. Moreover, in *Semcrude*, this Court was faced with claims from potentially over 3,400 oil and gas producers, including royalty and other interest owners, in Texas, Oklahoma, Kansas and New Mexico (as well as potentially other states).[5] There was active litigation on "threshold questions of law germane to the statutory lien and statutory trust claims"[6] requiring discovery and expert testimony, and numerous parties were actively appearing before the Court. In finding that the underlying facts permitted the appointment of a second official committee, the Court stated "I agree with the U.S. Trustee that it is a *very, very rare case* that would support such an appointment. And I actually find that the facts necessary for such an appointment are essentially extraordinary and I find that this case presents those circumstances."[7]

20. In the current case before this Court, the number of claimants is significantly smaller, all of the claims relate to a single project – the Debtors' Corpus Christi plant – and there is only one set of state laws at issue. The Lienholders Group makes it clear that the issues presented are significantly less complicated than in *Semcrude* by alleging that, unlike in *Semcrude*, the "there is common priority for all of the construction lien claims" and there is "no distinction among those creditors that perfected their security interest prior to the petition date and those that did not…." *See* Motion at 8.

---

[5] *In re Semcrude, L.P., et al.*, Case No. 08-11525 (BLS), Transcript of Hearing on October 3, 2008 ("Tr."), at 67:6-11. The Tr. was attached to the Motion.
[6] Tr. at 18:17-20.
[7] Tr. at 141:17-22 (emphasis added).

### B. To the Extent that the Claimants Hold Unsecured Claims, They Are Already Adequately Represented.

21. If the Court subsequently determines that the claims are not entitled to secured status, such claims will be deemed unsecured claims, and it is unclear why the interest of those unsecured claimants will not be directly aligned with the interest of the other general unsecured creditors. In that instance, those parties will share a common interest with all of the other unsecured creditors – maximizing the value of the Debtors' estate.

22. "[A] strong indicator of whether a committee is able to adequately represent its constituents is its ability to function." *Enron*, 279 B.R. at 686. The Creditors' Committee asserts that the Debtors' unsecured creditors are already adequately represented – the Creditors' Committee is functioning properly and there are no conflicts. *See In re Dana Corp.*, 344 B.R. 35, 39 (Bankr. S.D.N.Y. 2006) (finding that the presence of potential conflict was not enough to warrant appointing an additional committee where existing committee was functioning). Further, the Creditors' Committee asserts that the addition of another committee would only increase the complexity of the negotiations in these cases. There has not been presented any evidence that the Creditors' Committee is antagonistic to the lienholders claimants outside of the normal push and pull of creditors holding claims at different stratum of the Debtors' capital structure.

23. The Lienholders Group fails almost entirely to give any basis for why, to the extent they are unsecured parties, they would not be adequately represented, other than that their claims are "significantly and substantively different" (Motion at 6) and the lienholders have "significant and discrete issues" (*id.*). Complexity alone, however, does not necessarily warrant the appointment of an additional committee. *Enron*, 279 B.R. at 688. Rather, where a case is large and/or complex, the appointment of an additional committee often only proves to be a

9

hindrance that "intensif[ies] conflict and lead[s] to further complication." *Id.* The Creditors' Committee agrees that these cases are complex, but does not believe the appointment of an additional committee will serve to reduce these complexities – rather, adding another committee whose fees and expenses are paid by the estates will only serve to exacerbate the conflicts already present in these cases.

24. Moreover, by their participation in this case to date, the Lienholders Group has already demonstrated their ability to represent their own rights to the extent necessary. They have filed an objection to the Debtors' motion seeking an extension of the time to file their statements and schedules (as mentioned above) as well as a joinder to the Creditors' Committee's motion seeking an extension of time to respond to the DIP motion, cash collateral motion and bidding procedures [Docket No. 200]. Moreover, as they assert themselves, the Lienholders Group is comprised of the vast majority of alleged lienholders (an alleged $162 million in claims out of an alleged $196 million in potential aggregate claims).

25. Rather than assert any rationale why they would not already be adequately represented if they are found to be unsecured creditors, the Lienholders Group relies almost entirely on this Court's decision in *Semcrude* to justify the need for an additional official committee. Such reliance, as noted above, is improper.

26. As a result, because the various lienholders are already represented, the Creditors' Committee is fully functioning to preserve the rights of all unsecured creditors, and the facts now before this Court do not rise to the same extraordinary level as they did in *Semcrude*, there exists no need for the appointment of another official committee.

### C. Lienholder Committee Could Not Better Adequately Represent the Interests of All of Its Constituents.

27. The determination of whether the constituents of any lienholders committee possess valid, perfected and unavoidable pre-petition statutory liens, or whether they hold secured or unsecured claims, is a highly fact specific determination involving the application of Texas state law. There will inevitably be different consequences for different claimants based on the specific facts of their individual claim and their ability to establish compliance with the requirements of the applicable Texas state statute. For example, the parties will have divergent interests depending on when they filed their lien, and when their services or goods were provided. As noted in the Nov. 16 Letter, it may also depend on whether the goods provided have been utilized or are removable at the Corpus Christi plant. The fact that each clamant will assert individual rights that are unique to such claimant will render it impossible for any such committee to represent such parties without significant internal conflict. *ABF Capital Mgmt v. Kidder Peabody & Co. (In re Granite Partners)*, 210 B.R. 508, 516 (Bankr. S.D.N.Y. 1997) ("[c]ommittee and it members owe a fiduciary duty to the class of creditors that the committee represents (*i.e.*, its constituents). [citations omitted] They do not, however, owe a fiduciary duty to any particular claimant ... or any other party, including the estate"). As the Lienholders Committee itself mentions in its Motion, if it were was appointed as an official committee, it would have a fiduciary duty to represent the interests of the entire class of claimants, not individual creditors. This simply cannot be done in these cases, as taking one position on any issue may create conflicts with other members of the class. Other than the fact that Texas state law will apply to all alleged lienholders, the Lienholder Group gives no explanation as to why their desired second committee would be able to adequately represent their parochial interests of its members without conflict. As fiduciaries, they will be restricted from taking positions that

11

may compromise the claims of their constituents. Further, courts are remiss to appoint committees to fund litigation for the benefit of one group of creditors. *In re Residential Capital, LLC*, 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) (refusing to appoint additional committee where proposed committee would "solely serve to advance individual borrower's claims").

28. Because an additional committee could not represent all lienholders without conflict, and would only be focused on litigating the narrow claims of its constituents, the request for an additional official committee should be denied.

### D. A Lienholders Committee Will Result in Additional and Unneeded Expense.

29. The appointment of a proposed lienholders committee would also substantially increase the estates' expenses with little, if no, benefit to other stakeholders. "Upon creation of the [additional] committee, it would be entitled to counsel, and counsel could legitimately consume large amounts of time in reviewing past actions by all parties, conferring with parties in the future, and considering all alternatives, all of which would be paid by debtor's funds, whether or not such effort constituted a substantial contribution to the case." *In re Sharon Steel Corp.*, 100 B.R. 767, 782 (Bankr. W.D. Pa. 1989) (denying motion to appoint additional committee where the movant asserted no facts showing the existing committee had not reached a consensus on all important issues before it or shown the existing committee was impaired from functioning). Courts are unwilling to appoint such additional committees where it would force a debtor to fund the litigation that is in the interest of only creditors of such additional committees. Moreover, any investigation that the Lienholder Group may take would likely be entirely duplicative of the actions of the Creditors' Committee in these cases. Any cost of an official lienholder committee would, therefore, ultimately be borne entirely by unsecured creditors.

30. Fundamentally, the Motion is an attempt by a group of self-declared secured creditors to have the Debtors' estates finance issues that relate solely to their individual claims. The Debtors' estates should not be burdened with the added expenses of an additional committee (and its professionals), which will have as its sole mandate establishment of the individual conflicting claims of its constituents. *See Enron*, 279 B.R. at 692 ("The Court does not believe the estate should fund a distinct group of creditors to litigate an issue that would appear to be in their interest alone and provide no benefit to the estate."); *cf. Winn-Dixie Stores*, 326 B.R. at 858 ("A rule of decision based purely on whether separate classes of creditors have differing interests would lead to the unnecessary proliferation of committees at an astronomical cost to the bankruptcy estates."). This is not an appropriate role for an official committee.

### E. The Lienholders Group Will Suffer No Injury if an Additional Committee is Not Appointed.

31. Lastly, to the extent the Court determines not to appoint the proposed official lienholders' committee, the Lienholders Group will still be entitled to, among other things, form an unofficial committee (as it has done), participate in these cases pursuant to section 1109(b) of the Bankruptcy Code, and seek, if appropriate, reimbursement of their expenses in accordance with section 503(b) of the Bankruptcy Code.[8] Moreover, to the extent it is determined that they hold secured claims, they will be entitled to seek reimbursement of their fees and expenses

---

[8] Pursuant to section 503(b)(3), a creditor is entitled to an administrative claim for expenses incurred in making a substantial contribution to a chapter 11 bankruptcy case. 11 U.S.C. § 503(b)(3). Section 503(b)(3) provides, in relevant part:

The actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of the subsection, incurred by --

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

11 U.S.C. § 503(b)(3)

pursuant to section 506(c) of the Bankruptcy Code. Thus, the Lienholders Group is already provided with ample means of participating in these cases to protect their individual rights and will not be negatively prejudiced if an additional committee is not appointed to serve their specific interests.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

The factors courts consider when determining whether to appoint an additional committee all weigh significantly against the Court exercising its discretion in these bankruptcy cases to appoint an additional official committee. For the foregoing reasons, the Creditors' Committee respectfully requests that the Court deny the Motion and grant the Creditors' Committee such other and further relief as is just and proper.

Dated: December 4, 2017
       Wilmington, DE

**COLE SCHOTZ P.C.**

By: /s/ David R. Hurst
J. Kate Stickles (No. 2917)
David R. Hurst (No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
kstickles@coleschotz.com
dhurst@coleschotz.com

- and -

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
Dennis F. Dunne
Abhilash M. Raval
Lauren C. Doyle
28 Liberty Street
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
ddunne@milbank.com
araval@milbank.com
ldoyle@milbank.com

*Proposed Counsel to Official Committee of Unsecured Creditors of M & G USA Corporation, et al.*