# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| | (Jointly Administered) |
| Debtors. | D.I. 214 |

## OBJECTION OF THE CONSTRUCTION LIENHOLDER GROUP TO THE DEBTORS' MOTION TO ESTABLISH LIEN IDENTIFICATION PROCEDURES

Certain construction lien[2] claimants (collectively, the "Construction Lienholder Group"),[3] by and through their undersigned counsel, object to the motion of the above-captioned debtors (the "Debtors") for entry of an order (i) establishing lien identification procedures and (ii) granting related relief [Docket No. 214] (the "Lienholder Bar Date Motion"), and in support of its objection, the Construction Lienholder Group states as follows:

### Introduction

The Lienholder Bar Date Motion is a "gotcha!" motion. The Motion creates an unprecedented gauntlet for contractors, mechanics and materialmen, imposing obligations upon them that exceed the requirements imposed by the Bankruptcy Code, Rules and applicable law. If

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals, S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The term "construction lien" is intended to encompass all mechanic's, contractors' or materialman's liens arising under and pursuant to Texas property law.

[3] The members of the Construction Lienholder Group are (i) Apache Industrial, Services, Inc., (ii) Axis Industrial Services, LLC, (iii) Bay Ltd, (iv) Dawkins On-Site Concrete, LLC, (v) Fagioli, Inc., (vi) Garrett Mechanical, Inc. (vii) TCI Business Capital as assignee of Integrity Mechanical Specialists, (viii) Lexicon, Inc., (ix) MEITEC, Inc., (x) Mirage Industrial Group, LLC, (xi) MMR Constructors, Inc., (xii) Repcon, Inc., (xiii) SimplexGrinnell, LP, (xiv) TNT Crane & Rigging Inc., (xv) WFS Construction Company LLC, (xvi) Wholesale Electric Supply of Houston, Inc.

granted, the Lienholder Bar Date Motion would turn bankruptcy law and procedure on its head, and give credence to a Motion for which the sole purpose is to disallow otherwise valid secured claims of construction lienholders. At the same time, the Motion completely absolves the Debtors of their own procedural responsibilities of timely filing schedules and statements and filing adversary proceedings to avoid liens. In support of the Motion, the Debtors claim to need information that, in reality, they already have.

First, the predicate for the motion is simply incorrect. In the Lienholder Bar Date Motion, the Debtors state that they need the information, to "(a) provide the Debtors with time to evaluate the number, amount and priority of Liens being asserted against the Corpus Christi Plant, which will assist in the evaluation of qualifying bids and (b) assist potential bidders — including any credit bidding parties—in formulating a qualifying preliminary indication of interest ahead of the Proposal Deadline, and ultimately, a qualifying bid ahead of the Final Bid Deadline."

The Debtors already have significant information about the construction liens at the Corpus Christi Plant. First, a significant number of lienholders, including all or substantially all of the members of the Construction Lienholder Group have already perfected their interests in accordance with Texas law. The Debtors should have received or been served with a copy of all of the notices and affidavits of construction liens and, to the extent that they were not (or if those affidavits were misplaced), and all are publicly available online. Further, the Debtors are subject to at least one pending lawsuit (stayed by the bankruptcy) for which there was a formal negotiation meeting and mediation, and for which the parties were scheduled to go to arbitration. Were that not enough, the Debtors have already done significant analysis as to construction liens on the Corpus Christi Plant. Accordingly, the Debtors don't need the relief sought by the Lienholder Bar Date Motion.

Second, the law is clear that secured creditors cannot be required file proofs of claims. Even if they could be required to file proofs of claims, and even if the Debtors could show that the information requested is needed, the Debtors are not seeking to have construction lienholders file proofs of claim. Instead, the Debtors have created a contrived and improper process and form that requires that construction lienholders provide information – including legal analysis as to the bases of their claims – that significantly exceeds what is required from creditors filing proofs of claim.

Further, the relief sought by the Lienholder Bar Date Motion seeks to improperly disallow valid construction liens, by imposing the most draconian sanction possible: completely stripping parties of those liens. If the motion were granted, such sanction would be required even before the construction lienholders have to file their notices and affidavits in accordance with state law, and without the Debtors needing to commence adversary proceedings, as required under the Bankruptcy Code, Federal Bankruptcy Rules, and applicable case law.

The Court should also deny the motion as premature. This Court has extended the deadline for the Debtors to file schedules until January 22, 2018. Accordingly, not only would the Lienholder Bar Date Motion require that construction lienholders be required to file claims before the deadline for them to perfect their claims under Texas state law, but also before the Debtors are required to file their schedules and statements of financial affairs.

## Jurisdiction

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(a)(2)(A). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

9862235/1

## Background

2.      According to the Debtors, in April 2013, the Debtors began construction on a plant in Corpus Christi, Texas (the "Corpus Christi Plant") owned by M & G Resins USA, LLC, one of the above-captioned debtors ("M&G Resins"). Upon information and belief, construction of the Corpus Christi Plant was expected to be completed in December 2015, however the construction ceased prior to October 24, 2017 at only 85% complete. The claims and liens of all of the members of the Construction Lienholder Group arose from the construction of the Corpus Christi Plant.

3.      On October 24, 2017, M & G Polymers USA, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 30, 2017 (the "Petition Date"), M&G USA Corporation, *et al.* (the "Debtors") commenced these chapter 11 cases before this Court (together with the chapter 11 case of M & G Polymers, the "Cases").

4.      On October 31, 2017, the Debtors filed the Declaration of Dennis Stogsdill in Support of First Day Pleadings [Docket No. 3] (the "Stogsdill Declaration"). The Stogsdill Declaration represents that there are at least $196 million of construction liens against the Corpus Christi Plant. Stogsdill Declaration, ¶ 10. The members of the Construction Lienholder Group hold more than $162 million of construction liens against the Corpus Christi Plant.

5.      On November 13, 2017, the Office of the United States Trustee appointed the official committee of unsecured creditors (the "Unsecured Creditors Committee") to represent the interests of unsecured creditors. No holders of a construction lien serve - or were invited to serve - as a member of the Unsecured Creditors Committee. Accordingly, there is no party in these cases

to represent the interests of the hundreds of holders of construction liens whose interests are too small to economically justify hiring counsel to represent their individual pecuniary interests.[4]

### A. The Debtors Financing and Bid Procedures Motions

6. On October 31, 2017, the Debtors filed a Motion to Approve Postpetition Financing (the "DIP Motion") [Docket No. 14]. On November 1, 2017, M & G Polymers USA, LLC filed a Motion to Approve the Use of Cash Collateral (the "Cash Collateral Motion" and together with the DIP Motion, the "Financing Motions") [Docket No 53]. By and through the Financing Motions, the Debtors seek, among other things, authority to borrow and use in excess of $100 million.

7. On November 16, 2017, the Debtors filed a Motion to Approve Bidding Procedures for the Sale of Certain of the Debtors' Assets [Docket No. 173] (the "Bidding Procedures Motion"). The Corpus Christi Plant, upon which the construction lienholders each have a security interest, is among the assets to be sold pursuant to the Bidding Procedure Motion.

8. By the Bidding Procedures, the Debtors seek, among other things, to set the following deadlines: (i) January 16, 2018 at 5:00 p.m. for prospective interested parties to submit proposals with indications of interest; (ii) February 23, 2018 for parties to submit bids; and (iii) February 28, 2018 for an auction, if necessary. The Debtors have also requested a hearing date of March 6, 2017 to consider approval of a sale transaction to the highest and best bidder.

9. The Financing Motions and the Bidding Procedures Motion are all scheduled to be considered by the Court on December 11, 2017.

---

[4] On November 22, 2017, the Construction Lienholder Group filed a motion for the appointment of an official committee of construction lienholders [Docket No. 246].

5

9862235/1

### B. Debtors' Motion to Extend Deadline to File Schedules

10. On November 10, 2017, the Debtors filed a Motion to Extend Deadline to File Schedules or Provide Required Information, through which they sought to, among other things, extend the period to file their schedules and statements of financial affairs [Docket No. 137] (the "Motion to Extend"). By and through the Motion to Extend, the Debtors respectfully requested that the Court extend the 30 day period by an additional 60 days, making the Schedules and Statements due 90 days after the Polymers Petition Date (i.e., January 22, 2018), without prejudice to the Debtors' right to seek further extensions.

11. On November 27, 2017, the Construction Lienholder Group filed a limited objection to the Motion to Extend, seeking to have it heard in conjunction with the Construction Lienholder Bar Date Motion [Docket No. 257]. At the hearing on December 1, 2017, the Court overruled the Construction Lienholder's limited objection, and granted the Motion to Extend [Docket No. 319].

### C. The Construction Lienholder Bar Date Motion

12. While the Debtors have captioned the motion as seeking the establishment of "lien identification procedures," it is really a bar date motion singling out contractors, mechanics and materialmen. See Lien Identification Motion, ¶ 11 ("The Debtors propose that each Lienholder, including those Lienholders listed on the List of Known and Potential Lienholders, must submit the Statement of Lien Form including the information set forth above on or before January 15, 2017 [sic] (the 'Lienholder Bar Date'), which is within 35 days after the proposed date for entry of an Order approving this Motion").

13. In the Lienholder Bar Date Motion, the Debtors state that they need the information, to "(a) provide the Debtors with time to evaluate the number, amount and priority of Liens being

9862235/1

asserted against the Corpus Christi Plant, which will assist in the evaluation of qualifying bids and (b) assist potential bidders — including any credit bidding parties—in formulating a qualifying preliminary indication of interest ahead of the Proposal Deadline, and ultimately, a qualifying bid ahead of the Final Bid Deadline." Lien Identification Motion, ¶ 8.

14. Accordingly, the Debtors' seek to require that all parties asserting mechanics' or materialmen's liens on the Corpus Christi Plant file a Statement of Lien Form that includes all of the following information:

(a) the identity of Lienholder;
(b) the asserted amount of the Lien net of any amounts received to date by the Lienholder in respect of such Lien claim;
(c) the date on which the Lienholder asserts its Lien arose and the last date on which the Lienholder provided labor or materials to the Debtors;
(d) the basis for the Lien claim and copies of all documents upon which such Lien claim is based, including contracts, change orders, invoices, A/R statements, credit memorandums and other explanatory information; provided that if such documents are too voluminous, the Lienholder may submit a summary of such documents; and provided further that, in the event the claimant provides a summary, the Debtors reserve the right to request further information from such Lienholder;
(e) if a Lienholder contends that it has priority, the Statement of Lien Form must also describe all fact and legal authorities upon which the Lienholder contends that it is entitled to such priority, including the date it is alleged services were first provided and to which the Lien relates back under applicable law;
(f) whether the Lien was acquired by assignment or subrogation;
(g) whether prior notice of the Lien has been submitted;
(h) whether any causes of action have been filed or any other efforts have been made to collect on the amounts allegedly due;
(i) a list of, and copies of, all notices to the owner or original contractor of unpaid balances, including all notices required for derivative claimants under sections 53.056, 53.057 and 53.058 of the Texas Property Code;
(j) whether the Lienholder owes any balances to subcontractors who performed services or supplied materials at the Corpus Christi Plant;
(k) if the Lienholder is claiming a lien under the Texas Constitution, the basis for such claim;
(l) if the Lienholder is claiming a statutory lien as an original contractor under the Texas Property Code, the basis for such claim;
(m) the calculation of the proportion of the sum of the work performed under the contract to the total amount of the contract; and
(n) if the Lienholder is claiming a lien for retainage, the amount specified to be retained in any contract or amendments, including copies of such documents.

7

See Lienholder Bar Date Motion, ¶ 9.

15. The timely submission of a Statement of Lien Form will not relieve any party from any obligation it has (a) under section 546(b)(2) of the Bankruptcy Code to file a notice of perfection of Lien and/or (b) under applicable state law or any other applicable law to perfect its interest in property. See Lienholder Bar Date Motion, ¶ 10. Further, the motion would also apply to even those construction lienholders who have already perfected their claims, either prepetition or after the Petition Date, and have provided the operative documents to the Debtors. Finally, "[A]ny Lienholder that fails to timely submit a Statement of Lien Form in accordance with the Lien Identification Procedures will have: (a) the claim on which its purported Lien is based disallowed pursuant to section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c); (b) its Lien valued at $0 pursuant to section 506(a)(1) of the Bankruptcy Code and Bankruptcy Rule 3012; and (c) its Lien subordinated to all allowed secured claims pursuant to section 510(c) of the Bankruptcy Code." See Lienholder Bar Date Motion, ¶ 13.

## BASIS FOR DENIAL OF THE LIEN IDENTIFICATION MOTION

16. First, there is no basis to require that any secured creditor file a proof of claim. Second, by the Lienholder Bar Date Motion, the Debtors seek to require lienholders to provide unduly onerous and unnecessary information that significantly exceeds the requirements for creditors filing proofs of claim, including requiring that the lienholders provide legal analysis of their claims. Third, the Debtors already have all or substantially all of the information that they say that they require. Fourth, the Debtors are seeking to strip construction lienholders with otherwise valid liens before they have to file their notices and affidavits under Texas law, and without needing to commence adversary proceedings as required by the Bankruptcy Code and Federal Bankruptcy Rules. Finally, the relief sought by the motion is premature as Debtors seek

9862235/1

to require that construction lienholders file claims in the Bankruptcy Court before the deadline for them to perfect their claims under Texas state law, and before the Debtors are required to file their schedules and statements of financial affairs.

### A. Construction Lienholders Are Not Required to File Proofs of Claim

17. Section 501(a) of the Bankruptcy Code provides that any creditor <u>may</u> file a proof of claim, while Federal Rule of Bankruptcy Procedure 3002(a) requires only <u>unsecured</u> creditors to file a proof of claim for the claim to be allowed. 11 U.S.C. § 501(a); Fed. R. Bankr. P. 3002(a).[5] Section 506(d) provides that a lien securing a claim is void if the claim is not an allowed secured claim, *unless* the claim "is not an allowed secured claim due only to the failure ... to file a proof of such claim...." 11 U.S.C. § 506(d).

18. Thus, courts routinely hold that secured creditors are not required to file a proof of claim solely to preserve their liens, and they may, instead, elect to have their liens pass through a bankruptcy case unaffected. <u>See, e.g., In re Mansaray-Ruffin</u>, 530 F.3d 230, 235–36 (3d Cir. 2008); <u>In re Matteson</u>, 535 B.R. 156, 163 (B.A.P. 6th Cir. 2015); <u>State Bank of Florence v. Miller (In re Miller)</u>, 513 Fed.Appx. 566, 570 (6th Cir. 2013) ("Ordinarily, a secured creditor like the Bank is 'not required to file a proof of claim to maintain its interest in the collateral to which its security interest attaches.'"); <u>Hamlett v. Amsouth Bank (In re Hamlett )</u>, 322 F.3d 342, 349 (4th Cir.2003) (bank's lien was not subject to avoidance simply because its claim was disallowed on the ground that the proof of claim was filed after the claim bar date); <u>Universal Am. Mortg. Co. v. Bateman (In re Bateman)</u>, 331 F.3d 821, 827 (11th Cir. 2003) (holding that secured creditors are

---

[5] Effective December 1, 2017, the Supreme Court enacted new Bankruptcy Rules, including a change to Rule 3002(a), which provides as follows "Necessity for filing. A **secured creditor,** unsecured creditor, or equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005. **A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim."** (Emphasis added). The new rules do not relate back to cases filed before December 1, 2017.

not required to file proof of claims to maintain their interests); In re Muma Servs., Inc., 322 B.R. 541, 551 (Bankr. D. Del. 2005) ("A secured claimant is not required to file a proof of claim in a bankruptcy case because, unless the lien is avoided, it passes through bankruptcy unaffected."). In the Third Circuit, it is clear that the procedural means for extinguishing a lien is by pursuing litigation in the bankruptcy court (an adversary proceeding) directly against the lienholder. In re Mansaray-Ruffin, 530 F.3d at 236-37.

19. Not being required to file a proof of claim means that a secured creditor that did not file a proof of claim has not forfeited its remedies against the liened property. As the United States Supreme Court held: "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another— namely, an action against the debtor *in rem*." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991). See also In re Kressler, 40 Fed. Appx. 712, 714 (3d Cir. 2002) ("in bankruptcy ... a lien is a property interest – an *in rem* claim rather than an *in personam* claim"). Thus, the failure by a secured creditor to file a proof of claim "affects its right to receive payment under a chapter 13 plan." In re Matteson, 535 B.R. 156, 163 (B.A.P. 6th Cir. 2015), (citing In re Arnold, 2007 WL 634242, at *4 (Bankr. E.D.Va. Feb. 26, 2007) ("Although a secured creditor is not required to file a proof of claim in order to preserve its lien, [Bankruptcy] Rule 3002(c) does not exclude secured creditors from the need to file a proof of claim prior to the bar date in order to receive a distribution under the plan.")).

20. The Bankruptcy Rules do not state a specific consequence for a secured creditor's failure to file a proof of claim, and it is generally said that, after the bankruptcy, they may look to their collateral for satisfaction of the secured claim. See, e.g., In re Baldridge, 232 B.R. 394, 396 (Bankr.N.D.Ind.1999) (citing In re Tarnow, 749 F.2d 464 (7th Cir.1984)). "[A]lthough liens

9862235/1

generally pass through a bankruptcy unaffected—allowing a secured creditor to forgo filing a proof of claim—a secured creditor that desires to be paid through a plan must file an allowed proof of claim to be provided for under the plan." In re Shank, 569 B.R. 238, 248 (Bankr. S.D. Tex. 2017) (citing Johnson v. Home State Bank, 501 U.S. at 84). Even where a secured creditor's filed claim has been disallowed on timeliness grounds, it has been held that the underlying lien was not extinguished, and consequently the secured creditor still had standing to object to confirmation of the debtor's plan. In re Kressler, 40 Fed. Appx. at 713 ("a lien 'passes through' a bankruptcy proceeding, even where a particular claim may be disallowed on, e.g., timeliness grounds").

21. In the sale context, secured creditors' rights extend to the sale proceeds, with or without a filed proof of claim. The Delaware Bankruptcy Court allowed a creditor's maritime tort claim against the sale proceeds of the debtor's ship, the M/V Carolina, for the reason that "a maritime tort claim is a secured claim. A secured claimant is not required to file a proof of claim in a bankruptcy case because, unless the lien is avoided, it passes through bankruptcy unaffected." In re Muma Servs., Inc., 322 B.R. 541, 551 (Bankr. D. Del. 2005). See also Woodard v. City of Philadelphia, 558 B.R. 711, 720–21 & n.7 (E.D. Pa. 2016) (citing Esposito v. Title Ins. Co. of PA (In re Fernwood Markets), 76 B.R. 501, 503, 503-04 (Bankr. E.D. Pa. 1987)) (the failure of a secured creditor to file a timely proof of claim did not prevent a lien from passing unaffected through the bankruptcy and attaching as a valid lien against the proceeds from the sale of debtor's realty).

22. Accordingly, it would be inconsistent with the Bankruptcy Code for this Court to order and direct the lienholders, such as the construction lienholders with a security interest in the

11

Corpus Christi Plant, to file proofs of claim. If construction lienholders elect not to file proofs of claim, their liens may still attach to the sale proceeds.[6]

23. The Construction Lienholders Group anticipates that the Debtors will attempt to argue that this is not a bar date motion, and the Debtors are not seeking to require that certain secured creditors be required to file proofs of claim, contrary to established bankruptcy law. Rather, the Debtors are only seeking lien identification procedures. The Construction Lienholders Group respectfully requests that the Court recognize this for the sophistry that it is. In the Motion, the Debtors define January 15, 2018 as the "Lienholder Bar Date." Also, where a construction lienholder does not file a completed Statement of Lien Form that includes all of the required information, the lienholder's claim will be "disallowed pursuant to section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c). See Construction Bar Date Motion ¶ 13. Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c) both address disallowance of a claim for failure to timely file such claim. Finally, the Proposed Order equates the Statement of Lien Form with a proof of claim: "A timely filed Statement of Lien Form shall be deemed to and shall constitute a timely filed proof of claim for that Lienholder." See Proposed Order ¶ 11.

### B. The Debtors Either Have or Can Get All of the Information They Are Seeking to Require from Construction Lienholders

24. The Debtors' purported basis for the motion is that they need the information from construction lienholders so that the Debtors can evaluate the number, amount and priority of Liens being asserted against the Corpus Christi Plant, which will assist in the evaluation of qualifying

---

[6] There may also be an issue, whether as a matter of procedural due process or under the Supreme Court's ruling in *Stern v. Marshall*, 564 U.S. 462 (2011), and its progeny, whether this Court has the authority to enter a final sale order, with respect to lienholders who have only been placed on notice by publication) and do not appear or participate at the hearing or in the case. There is no justification for the debtors relying on publication notice as to lienholders, all of whom should be known or discoverable by the debtor. That is not an issue that needs to be addressed in the context of the Debtor's Lienholder Bar Date Motion, but may become an issue raised subsequently by construction lienholders who have not received actual notice and are not participating this case.

bids and to assist potential bidders - including any credit bidding parties - in formulating a qualifying preliminary indication of interest ahead of the Proposal Deadline, and ultimately, a qualifying bid ahead of the Final Bid Deadline. This completely ignores the fact that the Debtors already have significant information about the construction liens at the Corpus Christi Plant.

25. First, a significant number of lienholders, including all or substantially all of the members of the Construction Lienholder Group have already perfected their interest in accordance with Texas law. Attached hereto as Exhibit "A" is a copy of a search of lien search results for "M&G" in Nueces County.[7] In accordance with Texas law, the Debtors should have received or been served with a copy of all of the notices and affidavits of construction liens, and to the extent that they were not (or if those notices were misplaced). All are publicly available online. Under Texas law, claimants asserting a mechanics liens must file an affidavit with sufficient information to determine the amount and validity of the lien. See Tex. Property Code § 53.054 (requiring, among other things, (i) a signed and sworn statement of the name and address of the claimant, (ii) the reputed owner and description of the property charged with the lien, (iii) the amount of the claim; and (iv) a general statement of the kind of work done and materials furnished by the claimant and, for a claimant other than an original contractor, a statement of each month in which the work was done and materials furnished for which payment is requested). Accordingly, the Debtors could simply review the underlying affidavits and determine the amounts of the construction claims.

26. Other construction lienholders have provided even more information to the Debtors. Solely by way of example, one member of the Construction Lienholder Group, WFS

---

[7] Because the underlying documents are voluminous, the filed affidavits are not attached hereto, but the Construction Lienholder Group may introduce the filed affidavits at the hearing to consider the Lienholder Bar Date Motion. Copies of each of the filed affidavits are available upon request.

Construction Company, LLC ("WFS"), has asserted a total claim of $24,402,693.00 arising from two contracts to perform work at the Corpus Christi Plant. Prior to the Petition Date, WFS perfected its liens by filing affidavits with the county clerk of Nueces County in accordance with Section 53.052 of Texas Property Code. WFS and "Chemtex International Inc.," one of the Debtors, met for a "formal negotiation" meeting between executives in Houston, Texas on November 11, 2016 pursuant to the parties' agreements. Prior to that formal negotiation, the parties exchanged contention letters pertaining to WFS's claims (including statements regarding the bases of WFS's claim, and Chemtex's claimed defenses to WFS's claim). The formal negotiation meeting was not successful, and WFS filed a lawsuit to enforce its mechanic's liens in Nueces County on January 3, 2017. WFS' lawsuit was stayed because of the arbitration provision in the parties' agreements. Prior to and during mediation on March 29, 2017 in Houston, WSF provided the Debtors with significant and substantive information regarding its claims. Ultimately, the mediation was unsuccessful, and the Debtors and WFS were scheduled to go to arbitration on May 15, 2018. In anticipation of arbitration, the parties were reviewing even more internal documents pertaining to the dispute between Debtors and WFS, preparing those documents for production. The parties were scheduled to formally exchange documents no later than November 4, 2017, however the arbitration was stayed by the filing of these bankruptcy cases. Even without the information to be exchanged through discovery, based solely upon the public filings, the formal negotiation and mediation process, and the arbitration process, the Debtors have more information than they reasonably need in order to be able to determine the amount of WFS' claim.

27. Notwithstanding that some construction lienholders previously filed and served upon the Debtors affidavits detailing their claims, the Debtors would still require that those same construction lienholders – including WFS - submit a Statement of Lien Form.

28. Were that not enough to evidence that there is no real need for the proposed process, the Debtors have already done significant analysis as to construction liens on the Corpus Christi Plant, and they can provide that analysis and the underlying documentation to potential bidders. Accordingly, there is no need for the relief that is being sought.

C. **The Debtors Seek to Impose a New, Unapproved Form for Proofs of Claim.**

29. What makes the Debtors request even more outrageous is the cumulative request for information that the Debtors are seeking to impose upon lienholders. Even though (or possibly, because) secured creditors are not required to file proofs of claims, the Debtors have created a contrived form by and through which construction lienholders must provide information – including but not limited to legal analysis as to the basis of their claims – that significantly exceeds what is required by creditors filing proofs of claim. Bankruptcy Rule 3001, titled "Proof of Claim," provides in relevant part: "A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form."[8] The Local Bankruptcy Rules do not provide any basis for this Court to opt out of the official form.[9] See Local B.R. 3001-1.

---

[8] In fact the Bankruptcy Court's website provides that "Official Bankruptcy Forms Official forms are approved by the Judicial Conference of the United States and are mandatory. They must be used to file a bankruptcy petition and take certain other actions in a bankruptcy case, such as filing a Proof of Claim or applying to pay a filing fee in installments." See http://www.deb.uscourts.gov/content/forms (visited December 2, 2017).

[9] Notably there is no local form for proofs of claim. See http://www.deb.uscourts.gov/content/local-forms (visited December 2, 2017), and the website of the United States Courts states that Form B 410 is Official Bankruptcy Form that was approved by the Judicial Conference and "must be used under Bankruptcy Rule 9009." See http://www.uscourts.gov/forms/bankruptcy-forms/proof-claim-0 (visited December 2, 2017).

15

9862235/1

30. In the event that any party does not fill out the form, including providing to the Debtors all of the information that exceeds what is required in the official proof of claim form, its claim presumably will be denied in full. See Proposed Order ("For the avoidance of doubt, every Lienholder shall be required to submit all the information required by the Lien Identification Procedures, whether by relying upon previous submissions (as such submissions may be supplemented) or filing a Statement of Lien Form, and nothing contained in this Order shall alleviate or excuse any Lienholder from satisfying its obligation to provide the information requested in the Statement of Lien Form in connection with determining whether each Lienholder has a valid Lien under applicable state law.")

31. Even if a construction lienholder fills out the entire form, that still may not be the end of the inquiry. See Lienholder Bar Date Motion, ¶ 13 ("In addition, the Debtors reserve the right to request additional information and all materials necessary to analyze a Lien from a Lienholder that submits a Statement of Lien Form, within a reasonable time after such form is submitted.")

### D. By the Lienholder Bar Date Motion, the Debtors Seek to Strip Valid Construction Liens Without Commencing Adversary Proceedings

32. Under Texas law, there are two bases for construction liens. The first is statutory, pursuant to Texas Property Code §§ 53.001, et seq.[10] The second basis for a construction lien arise under the Texas Constitution, which grants to "mechanics, artisans, and materialmen of every class a lien on the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor, and requires that the Legislature provide by law for the speedy and efficient enforcement of such liens." Tex. Const. Art. XVI, § 37. Constitutional liens

---

[10] Tex. Prop. Code § 53.121 defines a "mechanic's liens", such as such term applies to the liens of subcontractors, laborers and materialman.

9862235/1

are self-executing and arise independently and apart from any legislative act. Even if a contractor did not properly perfect a statutory lien pursuant to Chapter 53 of the Texas Property Code, they have a valid, self-executing constitutional lien for the full amount of their respective claims. See, generally, Strang v. Pray, 35 S.W. 1054 (1896).[11] Accordingly, all of the parties that provided work on or delivered goods to the Corpus Christi Plant have a lien under Texas law.

33. By and through the Lienholder Bar Date Motion, the Debtors seek to disallow those valid construction liens by imposing the harshest possible sanction: completely stripping parties of those liens. See Lienholder Bar Date Motion, ¶ 13 ("The Debtors request that any Lienholder that fails to timely submit a Statement of Lien Form in accordance with the Lien Identification Procedures will have: (a) the claim on which its purported Lien is based disallowed pursuant to section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c); (b) its Lien valued at $0 pursuant to section 506(a)(1) of the Bankruptcy Code and Bankruptcy Rule 3012; and (c) its Lien subordinated to all allowed secured claims pursuant to section 510(c) of the Bankruptcy Code.")

34. The Bankruptcy Code and Rules are clear: a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), must be done by adversary proceeding. See Fed. Bankr. R. 7001(2). Similarly, an action for subordination under Section 510(c) of the Bankruptcy Code must be done by adversary proceeding. See Fed. Bankr. R. 7001(8).

---

[11] Strang is the leading case construing Art. 16, Sect. 37 of the Texas Constitution, which holds that the statutory requirements to perfect a lien do not affect a contractor's right to the enforcement of its self-executing lien. Strang was followed by Farmers' & Mechanics' Nat. Bank v. Taylor, 40 S.W.876, 879-80 (Tex. Civ. App. 1897), aff'd, 40 S.W. 966 (Tex. 1897), which held that it is only necessary to secure the lien as against subsequent purchasers and lien holders, who become so in good faith without notice of such claim and lien. The court goes on to state that there are no conditions upon which the lien should arise or take effect, and further states that no record within four months, or any other time, is required to give rise to the lien. The Legislature is commanded simply to provide by a statute for the "speedy and efficient enforcement" of such lien (i.e., the foreclosure on such lien). Strang and Taylor are still the law in Texas and are frequently cited to demonstrate the self-executing feature of the lien provided by the Texas constitution. See, e.g., First Nat. Bank in Dallas v. Whirlpool Corp., 517 S.W.2d 262 (Tex. 1974) and Hayek v. Westner Steel Co., 478 S.W.2d 786 (Tex. 1972).

35. Accordingly, if the Debtors wish to challenge the validity, priority or extent of one of the construction lienholders' claims, they must do so by commencing an adversary proceeding, including preparing and filing a complaint and providing actual service, rather than through notice by publication.

36. What makes this Motion all that more egregious is that the Debtors are seeking to disallow valid liens of those parties (like all of the members of the Construction Lienholder Group) who have already filed affidavits in accordance with Texas law and provided copies of such affidavits to the Debtors, and where the Debtors have already analyzed the underlying claims.

E. **The Proposed Bar Date is Premature**

37. The Construction Lienholder Group believes that any and every one of the arguments above are a basis for denying the relief sought by the Lienholder Bar Date Motion. But even if the Debtors were to somehow prove to this Court that they do need the information requested, and that the Court should approve the Debtors' proposed procedure that deviates from well-established bankruptcy law and procedures, the request is premature given that the Debtors have not yet filed their schedules and statements of financial affairs.

38. Having received an extension to file their schedules and statements of financial affairs until January 22, 2018 (without prejudice to further extensions), the Debtors seek to have this Court set a bar date that would arise before the deadline by which the Debtors would be required to file their schedules and statements. Ultimately, even if this Court were to grant to the Debtors relief from the requirements of Local Rule 2002-1(e) by setting the lienholder bar date requested by the Debtors, such relief may be ineffective.

39. While this Court has the ability to fix a bar date, the Federal Rules expressly provide that a creditors may be permitted to file proofs of claim after the bar date if the claim is not included

18
9862235/1

in the Debtors' schedules as undisputed, noncontingent, and unliquidated. Specifically, Rule 3003 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, as follows:

> *(b)(1) Schedule of Liabilities*. The schedule of liabilities filed pursuant to §521(l) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule.
>
> \* \* \* \* \* \* \* \* \* \*
>
> (c)(2) *Who Must File*. Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."
>
> \* \* \* \* \* \* \* \* \* \*
>
> (3) *Time for Filing*. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

40. Accordingly, even if this Court granted both the Motion to Extend and the Lienholder Bar Date Motion, which together, set a bar date before the deadline for the Debtors to file their schedules, construction lien creditors would still have the absolute right to file a proof of claim asserting their security interest after the Debtors filed their schedules.

## RESERVATION OF RIGHTS

41. The Construction Lienholder Group expressly reserves the right to supplement this objection at any time at or prior to the hearing to consider the Lienholder Identification Motion, and to introduce evidence at the hearing to consider the Lienholder Identification Motion.

WHEREFORE, the Construction Lienholder Group respectfully requests that this Court enter an order, denying the Lienholder Identification Motion; and (iii) granting to the Construction

9862235/1

Lienholder Group such other and further relief as is just and proper.

Dated: December 4, 2017            **MORRIS JAMES LLP**

/s/ Jeffrey R. Waxman
_____
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brenna A. Dolphin (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bdolphin@morrisjames.com

*Counsel to the Construction Lienholder Group*