# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered)<br>Re: Docket No. 246 |

### DAK AMERICAS LLC'S OBJECTION TO MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR APPOINTMENT OF AN OFFICIAL COMMITTEE OF CONSTRUCTION LIENHOLDERS

DAK Americas LLC ("**DAK Americas**"), by and through its undersigned counsel, hereby submits this objection to the *Motion of the Construction Lienholder Group for Appointment of an Official Committee of Construction Lienholders* (Docket No. 246) (the "**Motion**"),[2] and respectfully states as follows:

### Preliminary Statement

1. The Construction Lienholder Group, an *ad hoc* group of construction claimants purportedly holding over $160 million of secured liens against the Debtors' Corpus Christ Plant,[3] seeks appointment of an additional official committee of creditors (an "**Official**

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion.

[3] According to the Declaration of Dennis of Dennis Stogstill in Support of the First-Day Pleadings (Docket No. 3), the Debtors represent that there are at least $196 million of construction liens against the Corpus Christi plant. *See* Declaration at ¶10. Thus, it is possible the Construction Lienholder Group represents the overwhelming majority of such claimants.

**Construction Lienholders' Committee**"), "an extraordinary remedy that courts are reluctant to grant" unless the movant proves that an additional official committee is "'absolutely required,' 'essential' or 'indispensable.'" *In re Residential Capital, LLC*, 480 B.R. 550, 558 (Bankr. S.D.N.Y. 2012). The Construction Lienholder Group fails to satisfy this high burden.[4]

        2.      The Motion should be denied for several reasons. First, construction lienholders are already adequately represented by the Construction Lienholder Group and the Official Committee of Unsecured Creditors appointed in these cases. Both of these groups have been active participants from the outset of these chapter 11 cases. Indeed, the Construction Lienholder Group's objections and arguments before the Court to date prove they are organized, represented by counsel, and more than capable of participating without formation of an additional official committee. The Construction Lienholder Group's desire for the Debtors' estates to pay for their fees and expenses is simply not a sufficient basis for the extraordinary relief requested in the Motion.

        3.      Second, unlike general unsecured creditors, constructions lienholders are afforded statutory protections for secured creditors under the Bankruptcy Code. Construction lienholders, like any other party in interest, can evaluate their positions, pursue their interests, and be heard — including, but not limited to, on any issues relating to the proposed bidding procedures and sale of the Debtors' Corpus Christi assets, the application of proceeds of any such sale, and, at the appropriate time, any proposed chapter 11 plan. Third, appointment of an

---

[4] The Office of the U.S. Trustee for the District of Delaware also received a formal request for appointment of an Official Construction Lienholders' Committee, which was subsequently supported by the Construction Lienholder Group. On November 28, 2017, the U.S. Trustee declined to appoint an Official Construction Lienholders' Committee.

Official Construction Lienholders' Committee would result in significant costs to the Debtors' estates, without any material benefit. Therefore, the Motion should be denied.

### Objection

4. The appointment of an additional official committee is extraordinary relief and should be the rare exception in chapter 11 reorganizations. Generally, such committees are considered unnecessary and superfluous. *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009) ("The court's appointment of an additional committee is considered 'extraordinary relief' and should be 'the rare exception.'" (quoting *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *Exide Techs. v. State of Wisconsin Invest. Bd.,* No. 02-11125-KJC, 2002 WL 32332000, at *1 (D. Del. Dec. 23, 2002); *In re Garden Ridge Corp.,* 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) ("Many courts are reluctant to appoint an additional committee of creditors because it is an extraordinary remedy."); *see also In re Cumberland Farms, Inc.*, 142 B.R. 593, 595 (Bankr. D. Mass. 1992) (denying a lenders' committee that was appointed by the UST a request to retain counsel for various reasons, including their services would be entirely duplicative of the debtor and UCC ("First, the employment would bring no benefit to the bankruptcy estate because neither the Lenders Committee nor the Firm would perform any function essential to the reorganization which is not performed by the Unsecured Committee")).

5. Bankruptcy Code section 1102(a)(2) provides that the court may order the appointment of additional committees of creditors "if necessary to assure adequate representation of creditors…" 11 U.S.C. § 1102(a)(2). In considering the meaning of "adequate representation" under section 1102(a)(2), courts have assessed numerous factors including the nature of the case, the tasks that the proposed additional committee is to perform, the ability to participate in the case without an official committee and the standing and desires of the various constituencies.

*See In re Northwestern Corp.,* 2004 WL 1077913, *2 (Bankr. D. Del. May 13, 2004); *In re Enron Corp.,* 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). The adequacy of representation is a fact-intensive inquiry. *Exide Techs. v. State of Wisconsin Invest. Bd.*, 2002 WL 32332000 at *1.

6. The Motion fails to provide any material facts to justify appointment of an official committee pursuant to section 1102(a)(2) of the Bankruptcy Code.

**A.     Construction Lienholders Are Already Adequately Represented.**

7. The appointment of an additional committee should be ordered if "necessary to assure adequate representation" of the creditors. 11 U.S.C. § 1102(a)(2). "[A] strong indicator of whether a committee is able to adequately represent its constituents is its ability to function." *Enron*, 279 B.R. at 686. From the outset of these cases, the Construction Lienholder Group retained nationally-recognized counsel and has been actively involved in numerous aspects of these cases, including with respect to the Financing Motions, Bidding Procedures Motion and the Lien Identification Motion, and there is no indication this ad hoc group will not continue actively participating. *See* Motion, ¶ 21; *see also Limited Objection of the Construction Lienholder Group to the Debtors' Motion for Entry of an Order Extending the Time to File (I) Schedules of Assets and Liabilities and Statements of Financial Affairs and (II) Rule 2015.3 Report* (Docket No. 257). The Construction Lienholder Group has also served DAK Americas with discovery requests in connection with the DIP Motion.

8. Such active participation from an ad hoc group proves that a creditor group can adequately represent themselves regarding the issues relevant to their "stake" in the chapter 11 cases without the formation of an official committee and, as such, no "other factors" need to be considered. *See, e.g.*, *In re Pliant Corp.*, No. 09-10443 (MFW) (Bankr. D. Del.), Hr'g Tr. 37:20–42:2, Mar. 20, 2009 (denying motion to appoint additional creditors' committee

4

because *ad hoc* committee had represented itself at the interim hearing with attorneys present, had conducted discovery and filed pleadings in the case, indicating that the *ad hoc* committee was adequately represented without the need for an official committee).

9. Secured creditors who hold valid mechanic and materialman's lien claims are also afforded statutory protections under the Bankruptcy Code. For example, section 362(b)(3) permits a creditor "… to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b) [of the Bankruptcy Code] … " 11 U.S.C. § 362(b)(3).

10. Importantly, the Debtors' debtor-in-possession financing would not prime valid mechanic and materialman's liens. Thus, to the extent that a claimant has a valid and perfected construction lien, the claims will receive the treatment established for them under the Bankruptcy Code, even in connection with the sale of the Debtors' assets to a third-party.

11. Moreover, even if it is determined that a construction claimant does not hold a valid and enforceable secured claim, the interests of such claimants are adequately represented by the Official Committee of Unsecured Creditors. Thus, construction claimants are adequately represented, regardless of whether they are ultimately classified as secured or unsecured.

**B.  Construction Lienholder Claimants Would Not be Harmed if an Official Committee Were Not Formed.**

12. The Construction Lienholder Group argues that they do not have a duty to represent the smaller interest holders and that such holders would be unduly penalized if an official committee were not formed. *See* Motion, ¶ 20. However, the Construction Lienholder Group represents a significant amount of the total potential construction lienholders claims and

the Motion provides no facts to justify their assertions that smaller construction claimants would be "unduly penalized" if an official committee were not formed.

13. Furthermore, the Construction Lienholder Group has not described any of the functions that it envisions an official committee engaging in that the Construction Lienholder Group is not already actively involved in. All of the claims and interests of the Construction lienholders, both large and small will be addressed based on the individual claimant's specific circumstances, which is not something a Construction Lienholders' Committee would be able to participate in. Finally, each individual construction lien claimant is able to submit the information and documentation about its claim in the same manner as other creditors in the case and will be granted either secured or unsecured status depending on the validity of the claim.

C. **The Appointment of a Construction Lienholders' Committee is an Unnecessary Burden on the Estate and Will Increase Administrative Expenses.**

14. The appointment of a proposed Construction Lienholders' Committee will only add an unnecessary burden on the Debtors' estates. The Debtors have provided for a process to establish such claims in the Lien Identification Motion. And, if the lienholders have valid and unavoidable secured claims, they will be entitled to significant protections under the Bankruptcy Code, whether in a sale or under a plan. The estate should not be burdened with the added expenses of an additional committee and its professionals where the committee would provide no benefit to the estate. *See, e.g.*, *Enron*, 279 B.R. at 692 ("The Court does not believe the estate should fund a distinct group of creditors to litigate an issue that would appear to be in their interest alone and provide no benefit to the estate"). The Construction Lienholder Group argues that the appointment of an official committee would limit the amount of litigation and, therefore, reduce costs. *See* Motion, ¶ 25. It is, however, unclear what litigation would be curtailed in these cases. The interests and liens of the construction lienholders are protected by

6

law and the Construction Lienholder Group is already actively involved in these cases. Moreover, contrary to the Construction Lienholder Group's claims, the facts are not comparable to *In re SemCrude*, where complex multi-state oil and gas issues predominated, as opposed to mechanic and materialmen's liens under Texas law. The Debtors have also filed the Lienholder Motion at the outset of these cases to being the process of determining the actual amount of such claims. Each lienholder is able to submit a claim through the chapter 11 process. Additionally, it is very likely that the efforts of the Construction Lienholders' Committee would be largely duplicative of the efforts performed by the Official Committee of Unsecured Creditors and would be an unjustified use of limited estate resources.

## **Conclusion**

15. For the reasons set forth herein, the Construction Lienholder Group has not met its burden of demonstrating that the appointment of a Construction Lienholder Committee is necessary to assure adequate representation. Accordingly, DAK Americas respectfully requests that the Court deny the relief requested in the Motion.

Dated: December 4, 2017
       Wilmington, Delaware

      */s/ Curtis S. Miller*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
1201 North Market Street, 16th Floor
Wilmington, DE 19899
Telephone: (302) 658-9200
Facsimile: (302) 425-4673

and-

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez
Christopher M. Lopez
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

*Counsel for DAK Americas LLC*