# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| M & G USA CORPORATION, *et al.*,[1] | ) Case No. 17-12307 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:** |
| | ) **December 11, 2017 at 1:00 p.m.** |
| | ) |
| | ) **Objection Deadline:** |
| | ) **December 4, 2017 at 4:00 p.m.** |
| | ) (Extended for the U.S. Trustee to |
| | ) December 5, 2017 at 4:00 p.m.) |
| | |
| | Re: Docket No. 173 |

## UNITED STATES TRUSTEE'S OBJECTION TO THE
## DEBTORS' SALE AND BID PROCEDURES MOTION (DOCKET NO. 173)

Andrew R. Vara, Acting United States Trustee for Region 3 (the "U.S. Trustee"), hereby objects to the Debtors' motion to establish lien identification procedures as follows:

**I.  Introduction**

The M & G Debtors' sale and bid procedures motion sets up an unworkable sale timeline, allows modification of the procedures (including increasing the deposit requirements) without notice to anyone, implicates pre-approval of bid protections without a stalking horse bidder, exempts credit bidders from allocating their purchase price among the purchased assets, makes it impossible to calculate actual overbid requirements, and may allow automatic approval of credit

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.a.r.l. (1270), M&G Chemicals, S.A. (1022), M&G Capital S.a.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas, 77067.

bidding (and thus certain underlying liens – but not others) during the challenge period. Procedures that encourage competitive bidding are, in theory, designed to maximize the value of an estate's assets. The M & G Debtors' proposed procedures appear to chill, rather than encourage, competitive bidding. Unless the M & G Debtors correct their proposed procedures to remove relief that is harmful, rather than helpful, to the estates, the Court should not grant the motion.

## II.     Factual Background

1. On October 24, 2017, M & G Polymers USA, LLC ("M & G Polymers") filed a voluntary chapter 11 bankruptcy case, docketed as case number 17-12268. On October 30, an additional 11 affiliates of M & G Polymers filed voluntary chapter 11 petitions. The debtors' cases are being jointly administered under one of the later-filed cases, that of M & G USA Corporation (collectively with M & G Polymers USA and the additional 11 debtors the "M & G Debtors").

2. The M & G Debtors are ultimately owned by an Italian corporation, with intermediate Luxembourg holding companies providing executive and back office services for the M & G Debtors as well as non-debtor affiliates and subsidiaries. The M & G Debtors manufacture PET for packaging. In 2013, the M & G Debtors, believing that they could achieve economies of scale, embarked on the construction of a vertically integrated PET plant in Corpus Christie, Texas through the M & G Resins entity. The Corpus Christie plant is approximately 85% complete, and the M & G Debtors estimate that it will cost another $500 million to complete (it is already almost a billion dollars over budget).

3. On November 13, 2017, the U.S. Trustee appointed an official committee of unsecured creditors.

4. An ad hoc group of construction lienholders (the "Construction Lienholder Group") has filed a motion requesting that the Court also order the appointment of an official committee of construction lienholders. The Construction Lienholder Group itself asserts approximately $161 million in total lien claims against the Corpus Christie plant, and estimates that there are at least 122 lien claimants who may hold as much as $400 million in total lien claims against the Corpus Christie plant. They assert that these claims may be automatically perfected under Texas law, and may prime the M & G Debtors' first lien lender.

5. On October 31, 2017, the M & G Debtors filed a motion requesting authority to borrow up to $100 million in post-petition financing from an affiliate of their pre-petition first lien lender (the "DIP Motion"). On November 1, 2017, the M & G Debtors filed a motion to use the cash collateral of Comerica Bank (the "Cash Collateral Motion"). On November 1, after a hearing, the Court entered interim orders granting the relief requested in the DIP Motion and the Cash Collateral Motion. Both the interim DIP financing order and the interim cash collateral order give any official committee 60 days from formation, and any other party in interest 75 days from the bankruptcy filing, to investigate the M & G Debtors' secured lenders, their secured claims, and their actions with respect to their loans. Thus, the secured lenders' claims will not be fully valid until January 13, 2018 (75 days from the date the Debtors filed bankruptcy) and any credit bid they make could also be challenged until then. If, in the interim, a party files a challenge, the M & G Debtors' bidding procedures still permits a credit bid of the challenged debt.

6. On November 16, 2017, the M & G Debtors filed their sale and bidding procedures motion (the "Motion"). The Motion requests authority for the Debtors to: (1) sell all of their assets, either as a going concern or in various lots (either of physical assets or of groups

of intangibles, like leases or intellectual property rights), (2) designate a stalking horse, in the event one comes forward, (3) set the rules for the auction and sale process (who can bid, what the bid requirements are, who can evaluate submitted bids, what will happen if greater or fewer bids are submitted), (4) set the rules for assuming leases and contracts and assigning them to a buyer, (5) use the form asset purchase agreement and require bidders to mark it to show their proposed revisions, and (6) set a timeline for the process, including a sale hearing.

7. The Motion proposes the following sale timeline (other relevant case dates are in brackets):

| Date | Event |
|---|---|
| December 11, 2017 | Entry of bid procedures order |
| December 18, 2017 | Filing of assumption/assignment notice |
| (as late as) January 1, 2018 | Deadline for filing cure objections |
| [January 15, 2018] | [Deadline for lien claimants to file lien claims] |
| January 16, 2018 | Preliminary bid deadline |
| [January 18, 2018] | [Continued 341] |
| [January 22, 2018] | [Deadline to file schedules and statements of financial affairs] |
| February 23, 2018 | Final bid deadline |
| February 26, 2018 | Deadline to file sale objections |
| February 28, 2018 | Auction |
| March 2, 2018 | Deadline to notify counterparties of auction results/adequate assurance counterparty |
| March 2, 2018 | Deadline to file adequate assurance objections |
| March 5, 2018 | Deadline to file replies to sale objections |
| March 6, 2018 | Sale hearing |

8. Potential bidders also face the specter of bid protections, which can be approved on 10 days' notice, and must determine how to calculate bids and overbids in the vacuum created by the lack of a concrete stalking horse bid. Based on these logistical issues, as well as the unworkable timeline, the U.S. Trustee brings this objection.

4

### III. Law and Argument

#### A. The sale timeline is internally unworkable.

9. The M & G Debtors propose that preliminary bids be due before they are required to file their schedules or be examined by creditors at a section 341 meeting. They propose truncated deadlines for notice to contract and lease counterparties, and a sale objection deadline before the auction. Also, although the challenge period expires (at the latest) on January 15, if a party files a challenge, the bidding procedures permit a lender to credit bid a lien under challenge.

10. The U.S. Trustee has proposed the following two timelines to the M & G Debtors. The first assumes that the sale hearing is immutable; the second, that the schedule deadline is the inflexible date:

#1:

| Date | Event |
|---|---|
| December 11, 2017 | Entry of bid procedures order |
| December 18, 2017 | Filing of assumption/assignment notice |
| January 3, 2018 | Deadline for filing cure objections |
| January 12, 2017 | Deadline to file schedules and statements of financial affairs |
| January 18, 2018 | Continued 341 |
| January 24, 2018 | Deadline for lien claimants to file lien claims |
| January 26, 2018 | Preliminary bid deadline |
| February 19, 2018 | Final bid deadline |
| February 21, 2018 | Qualified bidder notification/notification of adequate assurance counterparty |
| February 23, 2017 | Auction |
| February 26, 2018 | Notice of proposed assumed contracts |
| March 1, 2018 | Deadline to file any sale objection |
| March 5, 2018 | Deadline to file replies to sale objections |
| March 6, 2018 | Sale hearing |

#2:

| Date | Event |
| --- | --- |
| December 11, 2017 | Entry of bid procedures order |
| December 18, 2017 | Filing of assumption/assignment notice |
| January 3, 2018 | Deadline for filing cure objections |
| January 22, 2018 | Deadline to file schedules and statements of financial affairs |
| January 26, 2018 | Continued 341 |
| February 2, 2018 | Deadline for lien claimants to file lien claims |
| February 9, 2018 | Preliminary bid deadline |
| March 5, 2018 | Final bid deadline |
| March 7, 2018 | Qualified bidder notification/notification of adequate assurance counterparty |
| March 9, 2018 | Auction |
| March 12, 2018 | Notice of proposed assumed contracts |
| March 15, 2018 | Deadline to file any sale objection |
| March 15, 2018 | Deadline to file replies to sale objections |
| March 20, 2018 | Sale hearing |

11. The above proposals are just that: proposals. But unless the M & G Debtors modify their proposed timeline in some way to (1) allow creditors time to review schedules and appear and ask questions at a section 341 meeting, (2) provide more notice to contract counterparties regarding adequate assurance, and (3) move the sale objection deadline until after the auction, the bidding procedures are unreasonable and should not be approved.

**B. Without a stalking horse, bid protections provide no benefit to the estate.**

12. Although the M & G Debtors do not (yet) request approval for a breakup fee or expense reimbursement, the Motion leaves the question open. But the bid procedures reference potential bid protections when discussing overbid calculations. First, the Debtors have no bidder to act as a stalking horse. Thus, there can be no benefit to even mention bid protections now, when they will only confuse bidders, not increase interest. Second, bid protections like break-up fees may be awarded only after the Court determines that they are an actual and necessary cost of

preserving the estate.[2] In order to make that determination, the Court needs evidence. None is present. The M & G Debtors must present evidence that awarding a breakup fee and expense reimbursement provides a benefit to their estates. Any bidding procedures order must make clear that bid protections now, to be given to an unknown party and depending on a calculation involving an unknown purchase price, are not approved.

  **C.** **Unilateral modification of the bid procedures without notice is not appropriate.**

13. As drafted, the Motion permits the M & G Debtors to modify the bidding procedures without need for further court approval. It is important that the M & G Debtors have flexibility, but that flexibility cannot be unlimited. Of particular concern is the provision that allows the M & G Debtors to require an increased deposit from a party – this could act as an invisible deterrent to bidders and be used as a weapon to suppress interest. If the M & G Debtors want to modify the bidding procedures in any material fashion, they must provide notice.

  **D.** **The bidding procedures also contain other problematic provisions.**

14. The bidding procedures contain a number of other problematic provisions, as follows:

  a. The bidding procedures allow credit bidding by the secured lender creditors, but any other secured creditor must first get a court order allowing its lien. This provision disadvantages mechanics' and materialmen's lienholders, and is improper.

  b. Several provisions limit what this Court can consider at a disputed hearing. This is not appropriate.

  c. Credit bidders are not required to allocate their purchase price. Again, this acts to disadvantage the mechanics' and materialmen's lien claimants, who require that the assets on which they have liens be valued.

---

[2] *See Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.),* 181 F.3d 527, 535 (3d Cir. 1999) (" . . . the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate").

d.  The procedures contain very few actual dates, requiring parties to perform calculations to determine many deadlines. This is confusing. The procedures should contain actual dates.

e.  The overbid requirements are similarly opaque – it is unclear how much is required. The procedures should contain actual numbers.

f.  Referring to the terms of the DIP motion and order implies that the sale procedures they contain have been approved, when they have not. It also forces parties to search through another, very lengthy document, to find relevant definitions.

g.  The procedures require excessive information from proposed purchasers, multiple sets of financial documents, proof of financing, detailed ownership information, information about prior transactions, and intimate that competitors can be excluded from the process without notice. These procedures and requirements are unreasonable.

15. Without substantial change, clarification, and revision, the proposed procedures will harm, rather than help, the M & G Debtors' sale process. They should not be approved as proposed.

**E.  Conclusion**

The Motion requests that this Court approve a timeline that chills rather than fans interest; the promise of bid protections that serve only to confuse, not reward, potential purchasers; and procedures that are too complicated and request too much from bidders. This is unreasonable. It should not be approved. The Motion as proposed should be denied.

**Andrew R. Vara,**
**Acting United States Trustee, Region Three**

Dated: December 5, 2017  **BY:**  /s/ Hannah Mufson McCollum
Hannah Mufson McCollum, Esq.
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)