IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>D.I. 173 |

**LIMITED OBJECTION OF THE CONSTRUCTION LIENHOLDER GROUP TO THE MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE PURCHASE AGREEMENTS AND TO PROVIDE BID PROTECTIONS THEREUNDER, (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Certain construction lien[2] claimants (collectively, the "Construction Lienholder Group"),[3] by and through their undersigned counsel, file this limited objection to the motion of the above-captioned debtors (the "Debtors") for Entry of Orders (I)(A) Approving Bidding Procedures for

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals, S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.
[2] The term "construction lien" is intended to encompass all mechanic's, contractors' or materialman's liens arising under and pursuant to Texas property law.
[3] The members of the Construction Lienholder Group are (i) Apache Industrial, Services, Inc., (ii) Axis Industrial Services, LLC, (iii) Bay Ltd, (iv) Dawkins On-Site Concrete, LLC, (v) Fagioli, Inc., (vi) Garrett Mechanical, Inc. (vii) TCI Business Capital as assignee of Integrity Mechanical Specialists, (viii) Lexicon, Inc., (ix) MEITEC, Inc., (x) Mirage Industrial Group, LLC, (xi) MMR Constructors, Inc., (xii) Repcon, Inc., (xiii) SimplexGrinnell, LP, (xiv) TNT Crane & Rigging Inc., (xv) WFS Construction Company LLC, (xvi) Wholesale Electric Supply of Houston, Inc.

9871106/1

the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [Docket No. 173] (the "Sale Motion"), and in support of its limited objection, the Construction Lienholder Group states as follows:

## Introduction

The Debtors have proposed a sale process through which they will attempt to sell six assets, including the Corpus Christi Plant, either individually or collectively. Subject to the Construction Lienholder Group's objection to the Finance Motions which is being filed contemporaneously herewith, and preserving all rights to object to the sale of the Corpus Christi Plant, the Construction Lienholder Group has very limited objections to the proposed sale procedures sought by the Debtors.

Specifically, the Construction Lienholder Group does not seek to extend or otherwise alter the Debtors' proposed schedule, which they believe provides interested parties an opportunity to conduct necessary due diligence. The Construction Lienholder Group does not oppose the Debtors exercising their business judgment with respect to the various procedures for the submission of proposals and bids by interested parties, or giving the Debtors significant flexibility at the auction, if one is necessary. Nor does the Construction Lienholder Group seek to prohibit the Debtors from seeking Court approval of a stalking horse bidder, by which they might seek to provide the stalking

2

horse with reasonable bid protections, including a break-up fee. The Construction Lienholder Group does not even seek to stop the Debtors from accepting credit bids.

The Construction Lienholder Group's objections are that any bid, including any credit bid for the Corpus Christi Plant must require that the bidder agree to sequester the indubitable equivalent of the total amount of all asserted construction liens, including for reasonable interest, costs and attorney's fees, pending a judicial determination by this Court of the priority of the liens and provide that any distribution from the proceeds of the sale be paid to construction lienholders after the judicial determination.

Additionally, the Construction Lienholder Group seeks to be a Consultation Party solely to the extent that the sale addresses issues affecting the Corpus Christi Plant, including any allocation of purchase price where a bidder seeks to bid on multiple assets that include the Corpus Christi Plant. Where the Debtors are addressing issues that do not affect the sale or value of the Corpus Christi Plant, the Construction Lienholder Group has no interest in being consulted.

## Background

1. According to the Debtors, in April 2013, the Debtors began construction on a plant in Corpus Christi, Texas (the "Corpus Christi Plant")[4] owned by M & G Resins USA, LLC, one of the above-captioned debtors. Upon information and belief, construction of the Corpus Christi Plant initially was expected to be completed in December 2015, however the construction ceased prior to October 24, 2017 at only 85% complete. The claims and liens of all of the members of the Construction Lienholder Group arose from the construction of the Corpus Christi Plant.

---

[4] As part of the DIP Motion and the Sale Motion, the Debtors use the terms "CC Property" and "CC Assets." The use of the term "Corpus Christi Plant" is intended to include all of the Corpus Christi Plant upon which the construction lienholders have a security interest.

**Prepetition Security Interests in the Corpus Christi Plant**

2. Prior to October 24, 2017, there were more than $1.086 billion of claims secured by the Corpus Christi Plant.

3. On March 21, 2013, Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financier ("Inbursa") entered into a loan agreement in the amount of $250 million with M&G Resins (the "Inbursa Loan Agreement"), and Deed of Trust, Assignment of Rents, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing was recorded on March 22, 2013 (the "Inbursa Deed of Trust"). Pursuant to the Inbursa Loan Agreement, Inbursa began provided advances to M&G Resins for the Corpus Christi Plant. The Debtor alleges that, in April 2013, the Company began construction on the Corpus Christi Plant. See Stogsdill Declaration, ¶ 9. On or about September 2, 2016, pursuant to the Second Amendment to the Inbursa Loan Agreement, Inbursa arranged to make a second advance totaling $140 million. On or about May 4, 2017, Inbursa arranged to make a third advance to the Debtors totaling $40 million.

4. On May 20, 2015, the Debtors and DAK Americas LLC ("DAK") entered into a capacity reservation agreement (the "Capacity Reserve Agreement"). By and through the Capacity Reserve Agreement, DAK agreed to provide unsecured funding to the Debtors in the form of upfront money for the purpose of purchasing future product. Ninteeen months later, on December 27, 2016, DAK recorded a Subordinated Deed of Trust, Assignment of Rents, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing, which purported to secure the Debtors' obligations arising under the Capacity Reserve Agreement with the Corpus Christi Plant.

5. On September 12, 2017, the Debtors and DAK entered into a first amendment to the Amended and Restated Subordination Agreement in favor of Inbursa, and on September 13,

2017, Inbursa made an additional $6 million advance to the Debtors related to these bankruptcy filings. Accordingly, the Debtors asserted that, on the Petition Date, DAK was owed $435 million and Inbursa was owed $436 million.

6. Prior to October 24, 2017, a significant number of contractors, materialmen, and mechanics had filed construction liens[5] on the Corpus Christi Plant, including security interests in "removables" under Texas law. The Debtors have estimated that the contractors' liens total in excess of $196 million. See Declaration of Dennis Stogsdill in Support of First Day Pleadings, ¶ 10 [Docket No. 3] (the "Stogsdill Declaration"). The 16 members of the Construction Lienholder Group, by themselves, hold more than $162 million of construction liens against the Corpus Christi Plant. In addition to the claims of the members of the Construction Lienholder Group, a Notice of Perfection of Mechanics Lien was filed by Sinopec Engineering Group America, LLC alleging an additional construction lien on the Corpus Christi Plant, of approximately $52 million. Accordingly, the known claims for construction liens on the Corpus Christi Plant already exceed $215 million. This does not include legal fees, expenses and interest allowed under applicable non-bankruptcy law; nor do they include the claims of other contractors, materialmen, and mechanics who have asserted construction liens on the Corpus Christi Plant, some of which have been filed notices of perfection of liens in the Bankruptcy Cases.

7. Taken together, the total amount of construction liens on the Corpus Christi Plant may ultimately exceed $250 million.

---

[5] The term "construction lien" is intended to encompass all mechanics', contractors', or materialmen's liens arising under and pursuant to Texas property law.

## The Debtors' Bankruptcy Filings

8. On October 24, 2017, M & G Polymers USA, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 30, 2017 (the "Petition Date"), M&G USA Corporation, *et al.* (the "Debtors") commenced these chapter 11 cases before this Court (together with the chapter 11 case of M & G Polymers, the "Cases").

9. On November 13, 2017, the United States Trustee appointed the Unsecured Creditors Committee. No construction lienholders serve – or were invited to serve – as members of the Unsecured Creditors Committee. A motion by Construction Lienholder Group requesting the appointment of an official committee of construction lienholders, is scheduled to be heard contemporaneously with the filing of this Motion.

## The Debtors Financing Motions

10. On October 31, 2017, the Debtors filed a Motion to Approve Postpetition Financing (the "DIP Motion") [Docket No. 14]. On November 1, 2017, M&G Polymers, one of the Debtors, filed a Motion to Approve the Use of Cash Collateral (the "Cash Collateral Motion" and together with the DIP Motion, the "Financing Motions") [Docket No 53]. By and through the Financing Motions, the Debtors seek, among other things, authority to borrow and use in excess of $100 million. Significantly, the DIP Motion states that the postpetition security interest to be received on account of the postpetition loan will not prime the contractors' liens.

11. Substantially contemporaneously with the limited objection to the Sale motion, the Construction Lienholder Group is filing an objection to the DIP Motions (the "DIP Motion Objection"). The Postpetition Financing Objection is expressly incorporated as if fully set forth herein, and nothing herein is intended to waive any objections that the Construction Lienholder Group has asserted in the DIP Motion Objection.

6

## The Sale Motion and Proposed Bid Procedures

12. On November 16, 2017, the Debtors filed the Sale Motion. The Construction Lienholder Group agrees with the Debtors that there is a need for a prompt but thorough sale of the Debtors' assets that will maximize the value of the estates for all creditors. The Construction Lienholder Group agrees with the overwhelming majority of the relief sought by the Sale Motion, however and subject to those objections asserted in the DIP Motion Objection, the Construction Lienholder Group has some limited objections to the bidding procedures requested by the Sale Motion.

## LIMITED OBJECTION TO PROPOSED BID PROCEDURES

**A. All Bids, including Credit Bids, Should Require Sequestration of the Indubitable Equivalent of the Construction Liens, Including Legal Fees, Expenses and Interest, Pending a Judicial Determination of Lien Priority.**

13. Under applicable nonbankruptcy (i.e., Texas) law, the priority of construction liens is set forth in Section 53.123 of Texas Property Code, titled "Priority of Mechanic's Lien[6] Over Other Liens," which provides:

> (a) Except as provided by this section, a mechanic's lien attaches to the house, building, improvements, or railroad property in preference to any prior lien, encumbrance, or mortgage on the land on which it is located, and the person enforcing the lien may have the house, building, improvement, or any piece of the railroad property sold separately.
> (b) The mechanic's lien does not affect any lien, encumbrance, or mortgage on the land or improvement at the time of the inception of the mechanic's lien, and the holder of the lien, encumbrance, or mortgage need not be made a party to a suit to foreclose the mechanic's lien.

Each of the mechanics' liens are deemed to run from the commencement of construction of improvement or delivery of materials to the land on which the improvements are to be located and

---

[6] The term "Mechanic's lien" is a generic term that is defined to incorporate all of the liens of mechanics, contractors, and materialmen in Section 53 of the Texas Property Code See Tex. Prop. Code § 53.001(5).

on which the materials are to be used. See Tex. Prop. Code § 53.124; see also First Federal Sav. & Loan Ass'n of Beaumont v. Stewart Title Co., 732 S.W.2d 98, 111-112 (Tex.App.—Beaumont 1987, writ denied) (quoting McConnell v. Mortgage Investment Co. of El Paso, 292 S.W.2d 636, 638 (Tex.Civ.App.—El Paso 1955). This is also known as the "first spade rule."

14. Section 53.122(a) of the Texas Property Code, titled "Equality of Mechanic's Liens," provides as follows:

> (a) Except as provided by Subchapter E and Section 53.124(e), perfected mechanic's liens are on equal footing without reference to the date of filing the affidavit claiming the lien.
> (b) If the proceeds of a foreclosure sale of property are insufficient to discharge all mechanic's liens against the property, the proceeds shall be paid pro rata on the perfected mechanic's liens on which suit is brought.
> (c) This chapter does not affect the contract between the owner and the original contractor as to the amount, manner, or time of payment of the contract price.

15. As noted above, the Debtors have acknowledged that there may be at least $196 million of construction lienholder on the Corpus Christi Plant. The members of the Construction Lienholder Group believe that is a significant understatement. The sixteen members of the Construction Lienholder Group, by themselves, hold claims totaling more than $162,910,612, plus legal fees, expenses, and interest, secured by the Corpus Christi Plant. Sinopec Engineering Group America, LLC has filed a notice of perfection liens under Section 546(b) of the Bankruptcy Code in the amount of $52,377,568.70, exclusive of accruing interest and other charges [Docket No. 192]. The Construction Lienholder Group is also aware that there are other contractors, mechanics and materialmen, or their respective assignees, who are also asserting construction liens. Accordingly, the Construction Lienholder Group anticipates that, not including legal fees, expenses, and interest, there may be more than $250 million of construction liens on the Corpus Christi Plant.

16. To date, there has not been any judicial determination as to the relative priority of the security interests in the Corpus Christi Plant. Accordingly, it would be prejudicial to the interests of the construction lienholders if any bidder, including parties making credit bids, did not sequester the indubitable equivalent of all construction liens, including for reasonable interest, costs and attorneys' fees, pending a judicial determination as to the priority, validity and allowance of the liens on the Corpus Christi Plant, including but not limited to the construction liens.

B. **The Construction Lienholders Should be a Consultation Party.**

17. The Construction Lienholders Group[7] should be a Consultation Party, to the extent that the sale affects their rights.[8] As noted above, there are likely between $200-$250 million of secured construction liens in the Corpus Christi Plant. Accordingly, the construction lienholders have a significant interest in the sale process of the Corpus Christi Plant.

18. The sale of the Corpus Christi Plant is the means by which the lienholders should be paid. While the sale process remains subject to the Debtors' business judgment, subject to this Court's approval, it is appropriate that the Debtors at least consult with those parties who have such a large vested interest in the primary asset to be sold.

## RESERVATION OF RIGHTS

19. The Construction Lienholder Group expressly reserves its right to supplement this objection at any time at or prior to the hearing to consider the proposed bid procedures and to introduce evidence at the hearing in support of its objection to the Sale Motion.

---

[7] There is a pending motion by the Construction Lienholders Group to appoint an official committee of construction lienholders, which is scheduled to be heard on December 11. In the event that the Court grants the motion, the official committee of construction lienholders should be a Consultation Party to the extent sought herein.

[8] To be clear, the Construction Lienholders Group does not seek to be consulted with respect to other assets to be sold, except as it relates to the Corpus Christi Plant (e.g., issues of allocation among the pools of assets to be sold).

WHEREFORE, for foregoing reasons, the Construction Lienholder Group respectfully requests that the Court (i) deny the Sale Motion (or condition approval on modifications consistent with this Objection); and (ii) grant to the Construction Lienholder Group such other and further relief as is just and proper.

Dated: December 6, 2017

**MORRIS JAMES LLP**

_/s/ Jeffrey R. Waxman_
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brenna A. Dolphin (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bdolphin@morrisjames.com

*Counsel to the Construction Lienholder Group*