# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Ref: Docket No. 214 |

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS AND JOINDERS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING LIEN IDENTIFICATION PROCEDURES AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby reply (this "Reply") to the objections (Docket Nos. 322, 326 and 341) (collectively, the "Objections")[2] and the joinders (Docket Nos. 345, 346, 347, 349, 356 and 359) (collectively, the "Joinders")[3] filed to the Debtors' *Motion for Entry of an Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief* (the "Lien Identification Motion").[4] In support of this Reply, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The Objections were filed by (a) the Office of the United States Trustee (the "U.S. Trustee") (Docket No. 322) (the "UST Objection"), (b) Service Steel Warehouse Co LP ("Service Steel") (Docket No. 326) (the "Service Steel Objection") and (c) certain construction lien claimants (the "Construction Lienholder Group" and together with the U.S. Trustee and Service Steel, the "Objectors") (Docket No. 341) (the "Construction Lienholder Objection").

[3] The Joinders were filed by (a) Atlantic Doors and Hardware, Inc. (Docket No. 345), (b) Sunbelt Rentals (Docket No. 346), (c) Sinopec Engineering Group America, LLC and Sinopec Engineering (Group) Co., Ltd. (Docket No. 347), (d) M.I. HVAC and Plumbing, LLC d/b/a Mechanical Innovation, G.P. Transport, Inc. and Duct-Mex HVAC (Docket No. 349), (e) AC Plastiques USA, LLC (Docket No. 356) and (f) Flour Enterprises, Inc. (Docket No. 359).

[4] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lien Identification Motion.

NAI-1503238453v3

**PRELIMINARY STATEMENT**

1. The sale of the Corpus Christi Plant—the Debtors' single most valuable asset—is the centerpiece of these Cases. The implementation of procedures which will allow the Debtors to determine the validity, amount and number of *all* Liens that may be asserted against the Corpus Christi Plant is essential to this sale process and the overall maximization of value. An inability to inform potential bidders about the total universe of Liens asserted against the Corpus Christi Plant will chill bidding to the detriment of all creditors, including the Lienholders.

2. The purpose of the Lien Identification Motion is to facilitate the gathering of information critical to the sale process and not, as asserted in the Objections, to "disallow otherwise valid secured claims of construction lienholders" (Construction Lienholder Obj., Intro) or "impose 'death penalty' sanctions" (Service Steel Obj., Intro) on Lienholders that fail to comply with the procedures set forth in the Lien Identification Motion. Contrary to the assertions in the Objections, the Debtors simply do not have (and by operation of applicable Texas state law, will not have) all of the information required to determine the complete universe of Liens that could be asserted against the Corpus Christi Plant.

3. The Debtors acknowledge that a substantial portion of Lienholders purport to have perfected their interests in the Debtors' property. However, these are not the Lienholders that the Debtors are attempting to uncover by implementation of the Lien Identification Procedures. The Debtors are primarily concerned about those Lienholders that have not yet asserted Liens and, for a variety of reasons (including that certain parties did not contract directly with the Debtors) provided services at the Corpus Christi Plant of which the Debtors are unaware. Under applicable Texas law, there is no deadline by which a potential Lienholder must assert a constitutional lien. Therefore, the suggestion that a review of Nueces County records on February 15, 2018 will yield a complete picture of all Liens that can or will be filed against the

Corpus Christi Plant is simply untrue. As a result, a process must be imposed to determine the existence, amount, validity and priority of any such Liens for the benefit of all parties and there must be consequences for failing to abide by that process.

4. Were this Court simply to impose a deadline to file a Statement of Lien Form without consequences for failing to comply with such deadline, in many instances, as yet unknown Lienholders would be free to assert their Liens until immediately prior to the closing of the sale of the Corpus Christi Plant. Not only will this possibility chill bidding, but if such a Lien were to be asserted in a substantial amount, it could render the entire sale process moot. Potential purchasers must know exactly what they are buying and the Debtors must have certainty regarding their ability to satisfy all valid and perfected Liens against their property.

5. The Debtors are cognizant of the objections raised by the U.S. Trustee and other Objectors with respect to timing considerations and the potential that certain of the information required in the Lien Identification Procedures may be burdensome to Lienholders. In a good faith effort to address these concerns, the Debtors will be filing Schedule D for Debtors M & G Resins USA, LLC and M&G Waters USA, LLC (collectively, the "Schedules") prior to the December 11 hearing on the Lien Identification Motion. Additionally, the Debtors have already begun discussions with counsel to the Objectors to potentially modify the information to be provided by Lienholders in connection with the Lien Identification Procedures so as to lessen any potential burden on them. These discussions remain ongoing.

6. The Debtors will continue to work with the Objectors to address their concerns to the extent possible. However, it is essential that a process that fully and finally determines the universe of Liens against the Corpus Christi Plant be imposed. The Debtors' resources are scarce and their DIP Facility expires in March. Given these circumstances, the Debtors must do

everything that they can to ensure maximization of the value of the Corpus Christi Plant by running the most efficient and expeditious sale process possible. The Lien Identification Procedures are a critical element of that process. For these reasons, the Objections and Joinders, to the extent not already resolved prior to the hearing, should be overruled and the relief requested in the Lien Identification Motion granted.

## REPLY

**A. The Lien Identification Procedures Are Critical to the Proposed Bidding Procedures**

7. The crux of certain of the Objections, particularly the Construction Lienholder Objection, is that the Debtors already have all of the information they need. *See* Construction Lienholder Obj., ¶ 24 ("the Debtors already have significant information about the construction liens at the Corpus Christi Plant."). The Construction Lienholder Group also place heavy emphasis on the fact that substantially all of its members have perfected their interests in accordance with applicable Texas law and asserts that the Debtors have all the information necessary to determine the entire universe of Liens that may be asserted against the Corpus Christi Plant, including through prepetition litigation with certain of their contractors. *Id.* at Intro. Similarly, Service Steel argues that the Lien Identification Procedures are unnecessary because "the Texas Property Code already provides a notice mechanism sufficient for the Debtor[s] to identify all second tier and lower lien claimants" and that "[i]f the Debtor[s] simply waited until February 15, 2018" it would know the entire universe of Lienholders. Service Steel Obj, ¶¶ 2;4. However, these assertions are untrue.

8.      It is simply not correct that the Debtors already have the information requested in the Lien Identification Procedures.[5] While a portion of the Lienholders have perfected their interests in accordance with the Texas Property Code, the possibility remains that certain Lienholders—who could assert invalid and overstated claims—may continue to assert new Liens on the Corpus Christi Plant. As described in the Lien Identification Motion, section 37 of the Texas State Constitution provides that "mechanics, artisans and material men . . . shall have a lien upon the buildings and articles made or repaired by them . . ." TEX. CONST. ART. XVI, § 37. However, these constitutional liens are "self-executing" and they do not need to be recorded in the real property records. *See*, *e.g.*, *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 240 (Tex. 2002) ("for constitutional liens that are self-executing, there are no technical requirements"); *Apex Fin Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex. App. 1999) ("a constitutional lien can exist even if the lien-holder fails to comply with the legislative requirements for statutory liens.") (citing *Hayek v. W. Steel Co.*, 478 S.W.2d 786, 790 (Tex. 1972)); *Irving Lumber Co. v. Alltex Mortg. Co.*, 446 S.W.2d 64, 72 (Tex. App. 1969) ("[i]t is true that a mechanic's and materialman's constitutional lien is self-executing as between the contractor and the owner and is enforceable against the owner without being filed for record.").

9.      To the extent that these Lienholders exist (and the Debtors have reason to believe that they do based on the prepetition assertions of certain other Lienholders), these potential Lienholders may come forward to assert Liens at any time and any such Liens would be extinguished only upon the transfer of the Corpus Christi Plant to a purchaser that does not have notice of such Liens. *See Irving Lumber Co.*, 446 S.W.2d at 72 ("even a constitutional lien will not be enforced against an innocent purchaser or mortgagee who has neither actual nor

---

[5] In addition, the Debtors note that while the schedule of statutory (not constitutional) Liens perfected against the Debtors' property may be publicly available online (*see* Construction Group Obj., ¶ 25), the notices and affidavits that accompany the Liens and provide the support for such Liens are not.

constructive notice of the constitutional lien" at the time of the sale); *see also In re Ernest & Assocs., Inc.*, 59 B.R. 495, 497–98 (Bankr. W.D. Tex. 1985) (noting that constitutional liens cannot be asserted against a bona fide purchaser for value without notice but that "[t]he timely filing of the statutory lien affidavit . . . constitutes constructive notice, thus defeating a bona fide purchaser claim."). Thus, without the relief requested in the Lien Identification Motion, there is a risk that the Debtors could spend the next several months pursuing a sale process, at great cost and expense, that could fall apart on the eve of closing when a previously unknown Lienholder emerges to assert an otherwise unaccounted for significant Lien on the Corpus Christi Plant. This scenario is unworkable and untenable.

10. There is also no certainty that, absent the relief requested in the Lien Identification Motion, all statutory Liens will be known as of February 15, 2018. As noted in the Service Steel Objection, section 53.052 of the Texas Property Code requires that an affidavit claiming a Lien must be filed in the relevant real property records no later than the 15th day of the 4th calendar month after the day on which the indebtedness giving rise to the lien accrues. TEX. PROP. CODE § 53.052. However, Section 53.053 of the Texas Property Code goes on to state that indebtedness accrues to a Lienholder that contracted directly with the Debtors on the last day of the month in which the original contract has been completed, finally settled, or abandoned, or a notice of completion has been filed. *Id.* at § 53.053. The statute also provides that indebtedness accrues for Lienholders that are not in contractual privity with the Debtors on the last day of the last month in which labor was performed or material furnished at the property. *Id.*

11. In the months leading up to the Petition Date, the path forward for the Corpus Christi Plant was uncertain. It was unclear in that period whether the cessation of work by

various contractors would be temporary or permanent.  Certain of the contractors working at the Corpus Christi Plant may have viewed the cessation of their work to be temporary.[6]  Even now, the Debtors continue to have a limited number of employees and third parties performing certain functions on site at the Corpus Christi Plant in order to preserve the value of the plant through the sale process.  Therefore, it is possible that a potential Lienholder could take the position that the time period within which it has to file its Lien will not have run by February 15, 2018– or even started to run at that time.  Accordingly, there is the potential for unknown Lienholders to assert statutory Liens well into the future.

12. The timeline requested by the Debtors' proposed bidding procedures—formulated in conjunction with the milestones established in the DIP Facility—simply do not afford the Debtors an indeterminate amount of time to crystalize the number and amount of Liens being asserted against the Corpus Christi Plant.  As set forth in the Lien Identification Motion, the Debtors' proposed bidding procedures contemplate that the Proposal Deadline (the date by which parties must submit preliminary indications of interest) will be January 16, 2018 and that the Final Bid Deadline will be February 23, 2018.  To the extent that a party with a right to credit bid elects to credit bid its secured claim, it must include in its bid "a written commitment to fund into an escrow account . . . an amount of cash . . . sufficient to satisfy . . . any obligations secured by liens on [the Corpus Christi Plant] that are senior to the obligations" of such credit bidder.  *See* Sale Motion, ¶ 12.  Save for an all-cash bid, the Debtors need these procedures to cultivate the highest and best bids for the Corpus Christi Plant.

13. Even if it were true that February 15, 2018 is the last date by which a Lienholder could assert a Lien on the Corpus Christi Plant (which it is not), due to the schedule imposed by

---

[6] The Debtors take no position on any such assertions in this Reply and nothing herein shall be construed as an admission or concession on this point.

the milestones in the Debtors' DIP Facility, the Debtors require certainty regarding the amount of Liens on the Corpus Christi Plant to ensure any credit bid contains a cash component sufficient to pay senior ranking Liens.  The Construction Lienholder Group and Steel Service seemingly ignore the fact that the Lien Identification Procedures are designed to protect the interests of valid Lienholders.  Rather than opposing these procedures, Lienholders—particularly those that already hold valid and perfected Liens—should be incentivized to provide the information requested by the Debtors as a means to ensure sufficient funds are available to satisfy their claims (to the extent valid).

### B. The Lien Identification Procedures Should Be Approved

14. As noted above, the Debtors are amenable to making reasonable modifications to the information requested in the Lien Identification Procedures in order to balance the needs of the Debtors to access the information necessary to evaluate the validity of asserted Liens with the desire to limit the burden that any such requirements would place on Lienholders.  The Debtors are discussing these issues with the Objectors and will continue to do so in a good faith effort to reach a resolution before the December 11 hearing.  Specifically, the Debtors have reached out to counsel to the Construction Lienholder Group and Service Steel to request a list of those aspects of the Lien Identification Procedures that they believe will be burdensome to their clients in an effort to address the concerns raised by their Objections.  These efforts remain ongoing as of the date hereof.

15. Further, the Debtors will be filing the Schedules prior to the December 11 hearing on the Lien Identification Motion.  To the extent the Lien Identification Procedures constitute a bar date, the filing of these Schedules will address the concerns raised by the U.S. Trustee and the Construction Lienholder Group that it is inappropriate to establish a bar date prior to the filing of schedules.  *See*, *e.g.*, UST Obj., ¶ 10; Construction Lienholder Obj., ¶ 38.  Moreover,

the filing of the Schedules prior to the December 11 hearing will provide parties with ample time prior to the proposed January 15 deadline for filing the Statement of Lien Form to review the Debtors' assertions regarding Lien amounts reflected therein and take any necessary or appropriate steps to protect their interests.

16. While the U.S. Trustee (*see* UST Obj. ¶ 9), the Construction Lienholder Group (*see* Construction Lienholder Obj., ¶ 33) and Service Steel (*see* Service Steel Obj., ¶ 12) each argues that it is improper for the Debtors to seek the disallowance of, and/or avoid perfected Liens for failure to file the Statement of Lien Form by the Lienholder Bar Date, it essential that there be consequences for failing to comply with the Lien Identification Procedures for them to have meaning. *See* UST Obj., ¶ 9.[7] As noted above, the Debtors are primarily concerned with unknown Lienholders who have yet to perfect their purported Liens and may be able to assert such Liens under applicable state law up to immediately prior to the closing of any sale of the Corpus Christi Plant. *See In re Ernest & Assocs., Inc.*, 59 B.R. 495, 497–98 (Bankr. W.D. Tex. 1985) (noting that constitutional liens cannot be asserted against a bona fide purchaser for value without notice but that "[t]he timely filing of the statutory lien affidavit . . . constitutes constructive notice, thus defeating a bona fide purchaser claim."). While the consequences for failing to file a Statement of Lien Form may appear severe, the Debtors require a mechanism by which to compel as of yet unknown Lienholders to assert their purported Liens. Mandating consequences for the failure to timely file a Statement of Lien Form is judicious and sensible. Establishing procedures and deadlines without consequence is ineffective and a waste of limited estate resources.

---

[7] The U.S. Trustee further asserts that the consequences of failing to timely file a claim is that such claims are not treated as claims under Bankruptcy Rule 3003(c)(2) for purposes of voting and distribution. *See* UST Obj., ¶ 9.

17. Although the Debtors are sympathetic to the U.S. Trustee's concerns regarding the imposition of a Lienholder Bar Date over the holidays (*see* UST Obj., ¶ 11), the proposed sale timeline, which is dictated by the milestones established in the DIP Facility, leaves little flexibility for extensions. The Debtors do not have continuing operations from which they can generate cash, have little existing unencumbered cash and are party to a DIP Facility that expires in March. There is simply no room to delay the sale process further to allow Lienholders additional time to file the Statement of Lien Form.

18. Additionally, there is nothing in the Local Rules or Bankruptcy Rules that suggests that bar dates should be extended if the compliance period falls over a holiday. Indeed, Bankruptcy Rule 3003(c)(3) provides that the "Court shall fix . . . the time within which proofs of claim or interest may be filed," a point that the U.S. Trustee readily acknowledges. *See* UST Obj., ¶ 7. The Debtors submit that 35 days provides parties with a meaningful compliance period and does not run afoul of the applicable Bankruptcy Rules and/or Local Rules.

19. Finally, the Debtors disagree that they must submit to a "meaningful section 341 meeting" prior to the establishment of the Lienholder Bar Date. *See id.* at ¶ 10.[8] The Local Rules require that the section 341 meeting be held prior to the establishment of a bar date where the debtor seeks to establish a bar date *without a notice and a hearing*. *See* Del. L. R. 2002-1(e). Assuming that the Lienholder Identification Procedures impose a bar date, the Debtors are not seeking to set a bar date without notice and a hearing. The Debtors submit that the appropriate time for a more fulsome 341 meeting is after all of the Debtors have filed *all* of their schedules (not just Schedule D) when more information will be available to all creditors.

---

[8] In addition, to the extent that the U.S. Trustee is arguing that there is a risk that the Debtors will not give notice to all lien claimants, the U.S. Trustee's arguments are misplaced. The Debtors are proposing to notice the Lien Identification Procedures on, among others, the List of Known Lienholders and the relevant portion of the creditor matrix and through publication, leaving little risk that unknown potential Lienholders will not receive notice of the Lien Identification Procedures.

* * *

20. The Lien Identification Procedures are essential to crystallizing the amount of Liens that must be accounted and reserved for in the sale process. If a presently unknown Lienholder were to assert a substantial Lien on the Corpus Christi Plant on the eve of closing of a sale, the entire sale process could be jeopardized, which would have dramatic impacts on the Debtors' access to DIP funds and, in turn, their ability to continue these Cases.

21. Contrary to assertions in the Objections, the purpose of the Lien Identification Procedures is not to impose an undue burden on Lienholders, but to ensure that the sale process is conducted in a way that addresses their interest in the Corpus Christi Plant and preserves the Debtors' ability to administer these Cases. The Debtors remain committed to working with the Objectors to modify the Lien Identification Procedures to address their concerns while preserving the Debtors' need for certainty regarding the total Lien pool.

## CONCLUSION

22. For the reasons set forth herein, Debtors respectfully request that the Court overrule the Objections and the Joinders and grant the relief requested in the Lien Identification Motion.

Dated: December 6, 2017

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession