# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*, | Case No. 17-12307 (BLS) |
| Debtors.[1] | Jointly Administered |
| | Re: Docket No. 53, 91, 398, 431, 445 |

## FINAL ORDER PURSUANT TO 11 U.S.C §§ 105, 361, 362, 363 AND 507 (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY AND (4) GRANTING RELATED RELIEF

This matter is before the Court on the motion, dated November 1, 2017 (the "Motion")[2] of M & G Polymers USA, LLC, as a debtor and debtor in possession ("M&G Polymers" or the "Debtor") in the above-captioned Chapter 11 case (the "Case" and, collectively with the jointly administered cases of the Debtor's affiliates, the "Chapter 11 Cases"), requesting entry of an interim order (Docket No. 91) (the "Interim Order") and a final order (the "Final Order") pursuant to Sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (11 U.S.C. §§ *et seq.*, as amended, the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*:

(i) authorizing the Debtor's use of Cash Collateral (as such term is defined in Section 363(a) of the Bankruptcy Code) of Comerica Bank ("Comerica"), on a final basis,

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

pursuant Sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 6004, and Local Rule 4001-2;

(ii) providing adequate protection to Comerica and Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa to the extent set forth in this Final Order;

(iii) vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

(iv) granting related relief.

The Court having held an interim hearing (the "Interim Hearing") on November 1, 2017, and entered the Interim Order that, among other things, scheduled a final hearing (the "Final Hearing") to consider entry of this Final Order and granting the relief sought in the Motion on a final basis; and the Court having considered the Motion, the exhibits thereto, including the Declaration of Dennis Stogsdill attached to the Motion as Exhibit B, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing and Final Hearing; and notice of the Interim Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 4001(b) and (d), 9014, and Local Bankruptcy Rule 4001-2; and all objections, including (as it pertains to the Motion) the objections of the Official Committee of Unsecured Creditors (Docket No. 398) and the United States Trustee (Docket No. 405), to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested in the Motion on a final basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, and is essential for the preservation, maintenance, and maximization of the value of the Debtor's

business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTOR, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A.    Petition Date.  On October 24, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    Debtor in Possession.  The Debtor is continuing in the management and operation of its business and property as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested or appointed in the Chapter 11 Cases.

C.    Jurisdiction and Venue.  This Court has jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The principal bases for the relief sought in the Motion and granted in this Final Order are Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-2.

---

[3]    The findings and conclusions set forth in this Final Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

D.    Committee Formation.  On November 13, 2017, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code (Docket No. 146) (the "Creditors' Committee").

E.    Notice.  Proper, timely, adequate and sufficient notice under the particular circumstances of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Interim Order, and no other or further notice of the Motion with respect to the relief requested and granted at the Interim Hearing or the Final Hearing, or the entry of this Final Order, shall be required.

F.    Debtor's Stipulations.  Without prejudice to the rights of parties-in-interest as set forth in paragraph 19 below, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows (paragraphs F(i) through F(ix) below are referred to in this Final Order, collectively, as the "Debtor's Stipulations"):

  i.    *Prepetition Credit Documents.*  As of the Petition Date, the Debtor had outstanding secured debt owing to Comerica pursuant to a Credit Agreement dated as of December 21, 2015 (as amended, modified and supplemented from time to time, the "Prepetition Credit Agreement" and together with all related security and other documents, guaranties and agreements, the "Prepetition Credit Documents").

  ii.    *Inbursa Guaranty.*  As of the Petition Date, the Debtor had outstanding first-lien debt owing pursuant to that certain Guaranty dated as of March 21, 2013 by Debtor for the benefit of the Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa (including any successors and

assigns, "Inbursa" and such guaranty, the "Inbursa Guaranty"), secured by a *Credit Line Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing* (as at any time modified, amended or restated, the "Pre-Petition First Lien Guaranty Mortgage" and, together with the Inbursa Guaranty, the "Inbursa Guaranty Documents")[4] executed as of March 15, 2013 and effective as of March 21, 2013, and recorded in the Office of the Clerk of the County Commission of Mason County, West Virginia in Trust Deed Book 394, at Page 556, by M&G Polymers, as grantor, for the benefit of the Inbursa, M&G Polymers granted to Inbursa first priority liens on and security interests in the Collateral (as defined in the Pre-Petition First Lien Guaranty Mortgage, and for purposes of this Final Order, the "Inbursa Collateral" and such security in the Inbursa Collateral, the "Inbursa Guaranty Liens").

iii. *Prepetition Obligations.* As of the Petition Date, the aggregate outstanding amount owed by the Debtor under the Prepetition Credit Documents was not less than $48,670,982.92, consisting of loans in the outstanding principal amount of $48,534,678.94 and accrued interest in the amount of $136,303.98 (the "Loans" and together with any interest, fees, costs and other charges or amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, and further including all

---

[4]     The Pre-Petition First Lien Guaranty Mortgage was subsequently amended to increase the maximum amount secured by the mortgage in order to reflect the revised loan amount under the underlying loan agreements pursuant to that certain Amendment to the Pre-Petition First Lien Mortgage dated as of September 2, 2016 and that certain Second Amendment to the Pre-Petition First Lien Mortgage dated as of June 29, 2017.

"Indebtedness" as described in the Prepetition Credit Agreement, and, to the extent allowable, all interest, fees, costs and other charges which may be allowed under Section 506(b) of the Bankruptcy Code, the "Prepetition Obligations"). As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted first-priority security interests in and liens on the Collateral (as defined in the Prepetition Credit Documents) including, without limitation, all Inventory, Accounts and Accounts Receivable, deposit accounts, and all proceeds of the foregoing (collectively, the "Prepetition Collateral") to Comerica (collectively, the "Prepetition Liens") to secure repayment of the Prepetition Obligations.

        iv.      *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* The Debtor and Comerica acknowledge and agree that: (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (but only to the extent any such permitted liens exist and were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens on the Petition Date, the "Prepetition Permitted Liens"); (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the

Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against Comerica or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents.

v. *Inbursa Prepetition Obligations.* As of the Petition Date, the aggregate outstanding amount owed by the Debtor under the Inbursa Guaranty was not less than $436,000,000 in outstanding principal amount (together with any interest, fees, costs and other charges or amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Inbursa Guaranty Documents, and further including all other obligations guaranteed by the Inbursa Guaranty Documents, and, to the extent allowable, all interest, fees, costs and other charges which may be allowed under Section 506(b) of the Bankruptcy Code, the "Inbursa Prepetition Obligations"). As more fully set forth in the Inbursa Guaranty Documents, prior to the Petition Date, the Debtor granted the Inbursa Guaranty Liens in the Inbursa Collateral to secure repayment of the Inbursa Prepetition Obligations.

vi.     *Validity, Perfection and Priority of Inbursa Guaranty and Inbursa Prepetition Obligations.* The Debtor and Inbursa acknowledge and agree that: (a) the Inbursa Guaranty Liens on the Inbursa Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) the Inbursa Guaranty Liens have priority over any and all other liens, if any, on the Inbursa Collateral, subject only to certain other liens otherwise, if any, permitted by the Pre-Petition First Lien Guaranty Mortgage (but only to the extent any such permitted liens exist and were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Inbursa Guaranty Liens on the Petition Date, the "Inbursa Prepetition Permitted Liens"); (c) the Inbursa Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor and constitute "allowed claims" within the meaning of Section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Inbursa Guaranty Liens or the Inbursa Prepetition Obligations exist, and no portion of the Inbursa Guaranty Liens or the Inbursa Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against Inbursa or any of its affiliates, agents, attorneys,

advisors, professionals, officers, directors or employees arising out of, based upon or related to the Inbursa Guaranty.

vii.    *Cash Collateral.* The Debtor acknowledges and stipulates that all of the Debtor's cash, including the cash in all of its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of Comerica; *provided, however*, that (a) the Debtor's three certificates of deposit located at Ohio Valley Bank (collectively, the "OVB CDs") will be liquidated as soon as possible, (b) the proceeds of such liquidation (the "CD Proceeds") will be deposited into the Comerica Collateral Account, and (c) the Disputed Collateral (in the total amount of $1,152,000), which includes the OVB CDs and, upon liquidation of the OVB CDs, the CD Proceeds, will remain subject to a Challenge by a Challenge Party during the Challenge Period (as such terms are defined in paragraph 19 below).

viii.    *Default by the Debtor.* The Debtor acknowledges and stipulates that the Debtor is in default under each of the Prepetition Credit Documents.

ix.    *No Other Liens.* As of the Petition Date, other than the Prepetition Permitted Liens, if any, there were no security interests or liens on the Prepetition Collateral other than the Prepetition Liens.

G.    Findings Regarding the Use of Cash Collateral.

i.    *Request for Use of Cash Collateral.* The Debtor seeks authority to use Cash Collateral on the terms described herein, in the amounts, at

the times and for the purposes described in the attached Amended Budget or the Extended Budget (as such terms are defined herein), as applicable.

ii. *Need for Use of Cash Collateral.* The Debtor has ceased all production, is no longer producing Inventory or generating Accounts and Accounts Receivable (except to the extent existing Inventory is being sold and invoiced), and has no intention of recommencing production. Nonetheless, in order to maximize the value of its existing Inventory and Accounts and Accounts Receivable, to protect other property and assets of its estate from loss or deterioration, and to remain in compliance with applicable environmental laws at its facility in Apple Grove, West Virginia, including the ongoing monitoring and maintenance of a waste water treatment facility, the Debtor has an immediate and critical need for the use of Cash Collateral. The ability of the Debtor to pay certain of its employees to protect and maximize the value of its assets requires the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtor, its estate and its creditors.

iii. *Use of Cash Collateral.* As a condition to the authorization to use Cash Collateral, Comerica requires, and the Debtor has agreed, that Cash Collateral may be used in the maximum amounts, at the times and exclusively for the purposes set forth in the amended budget (a copy of which is attached as Exhibit A) (as the same may be modified from time to time with the prior written consent of Comerica (the "Amended Budget") or the extended budget (a copy of which is attached as Exhibit B) (as the same may be modified from time to time

with the prior written consent of Comerica, the "Extended Budget"), as applicable.

H.   Adequate Protection.   Comerica is entitled to receive adequate protection on account of its interest in the Prepetition Collateral pursuant to Sections 361, 362, and 363 of the Bankruptcy Code to the extent of any diminution in the value of its interest in the Prepetition Collateral (including Cash Collateral) as it existed on the Petition Date, the Debtor's use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, to the extent of any such diminution in value, the "Diminution in Value"). Because the Debtor is no longer operating, there is no replacement Inventory or Accounts or Accounts Receivable being created (except to the extent existing Inventory is being sold and invoiced) to replace the Inventory being sold and the Accounts and Accounts Receivable being collected and Cash Collateral that will be used by the Debtor pursuant to the Amended Budget or the Extended Budget, as applicable. As partial adequate protection, upon entry of the Interim Order Comerica was granted and entitled to receive and shall continue to be granted and entitled to receive pursuant to this Final Order (i) the Adequate Protection Liens (as defined herein) and the Adequate Protection Superpriority Claim (as defined herein), (ii) payment of the Prepetition Obligations from the proceeds of Prepetition Collateral and Post-Petition Collateral, and (iii) Adequate Protection Payments (as defined herein).

I.   Sections 506(c) and 552(b).   In light of Comerica's agreement to consent to the use of Cash Collateral in accordance with the Amended Budget or the Extended Budget, as applicable, and Inbursa's agreement in paragraph 5(b)(i), effective upon entry of this Final Order, the Debtor hereby waives and Comerica and Inbursa are each deemed to have received a

waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

J.    Good Faith.    The terms of the Cash Collateral arrangement described in this Final Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Entry of this Final Order is in the best interests of the Debtor, its estate, and its creditors. The terms concerning the Debtor's use of Cash Collateral, as provided in this Final Order, were negotiated in good faith and at arms' length among the Debtor, Comerica and Inbursa, and Comerica's and Inbursa's claims, superpriority claims, replacement liens and other protections granted pursuant to the Interim Order and this Final Order will have the protections provided in Section 363(m) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

K.    Notice.    Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (a) the U.S. Trustee; (b) the Creditors' Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP and Cole Schotz P.C.; (c) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (d) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (e) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (f) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (g) Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP; and (h) those parties, if any, who have filed a

notice of appearance and request for service of pleadings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtor has made reasonable efforts to afford the best notice possible under the particular circumstances and such notice is good and sufficient to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      <u>Use of Cash Collateral Approved</u>. The use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in this Final Order and the Amended Budget or the Extended Budget, as applicable.

2.      <u>Objections Overruled</u>. All objections to the Motion, to the extent not withdrawn or resolved, are hereby overruled.

3.      <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, and limited to the maximum amounts, at the times and for the purposes set forth in the Amended Budget or the Extended Budget, as applicable, the Debtor is authorized to use Cash Collateral:

(a)  if the Creditors' Committee files and serves a "Challenge" as defined in paragraph 19 below (any such Challenge, a "<u>Committee Challenge</u>"), on or before December 20, 2017 (the "<u>Committee Challenge Deadline</u>"), then until the earlier of (i) December 29, 2017 and (ii) the day following written notice from Comerica of the occurrence of a Termination Event (as defined in paragraph 15) (each of (i) and (ii) in the foregoing clause, a "<u>Challenge Termination Date</u>"); or

(b) if no Committee Challenge is filed and served by the Committee Challenge Deadline, then until the earlier of (i) January 31, 2018, and (ii) the day following written notice from Comerica of the occurrence of a Termination Event (each of (i) and (ii) in the foregoing clause, a "Non-Challenge Termination Date," and any Challenge Termination Date or Non-Challenge Termination Date, as applicable, a "Termination Date").

4.    Comerica Collateral Account and Cash Collateral Disbursement Account.

(a)    Notwithstanding anything in the Interim Order, the Interim Cash Management Order (Docket No. 68), the Second Interim Cash Management Order (Docket No. 310), or any final cash management order to the contrary, upon entry of this Final Order, the Debtor is authorized and directed to transfer any and all cash currently on deposit in its account (ending in *761) maintained at Ohio Valley Bank (the "OVB Account") into a newly-established, segregated cash collateral account (account ending in *237) maintained by, and under the exclusive control of, Comerica (the "Comerica Collateral Account"). The mere depositing of cash into the Comerica Collateral Account shall not, in and of itself, prejudice the rights of any party to assert a superior interest in such cash.

(b)    Any subsequent deposits into the OVB Account shall be immediately transferred (and, in any event, by the close of the next business day) into the Comerica Collection Account (as defined in paragraph 8(a) below).

(c)    Comerica is hereby authorized to establish a cash collateral disbursement account (account ending in *229) or to use an existing deposit account (account ending in *390) as a cash collateral disbursement account (each, a "Cash Collateral Disbursement Account") and to transfer, from time to time, cash from the Comerica Collateral Account into the Cash Collateral Disbursement Account for use in funding the Amended Budget or the Extended

Budget, as applicable. Comerica shall fund the Cash Collateral Disbursement Account in an aggregate amount not to exceed (i) 100% of the Amended Budget attributable to the line item comprising Total Costs in the Amended Budget *plus* 10% of such amount (the "Amended Budget Variance Amount"), *less* (ii) the amount of the Amended Budget that has been actually paid since the entry of the Interim Order and prior to the time of the transfer, *less* (iii) once funded, the amount of the Carve-Out Reserves described in paragraph 17. If a Committee Challenge is not filed and served prior to the expiration of the Committee Challenge Deadline, then, notwithstanding the foregoing sentence, upon the expiration of the Committee Challenge Deadline, Comerica shall fund the Cash Collateral Disbursement Account in an aggregate amount not to exceed (i) 100% of the Extended Budget attributable to the line item comprising Total Costs in the Extended Budget *plus* 10% of such amount (the "Extended Budget Variance Amount," and each of the Amended Budget Variance Amount and the Extended Budget Variance Amount, as applicable, a "Budget Variance Amount"), *less* (ii) the amount of the Extended Budget that has been actually paid since the entry of the Interim Order and prior to the time of the transfer, *less* (iii) once funded, the amount of the Carve-Out Reserves described in paragraph 17.

(d) Upon entry of this Final Order, all Cash Collateral used by the Debtor to fund the Amended Budget or the Extended Budget, as applicable, shall come from the Cash Collateral Disbursement Account only and shall not come from the OVB Account, the Comerica Collection Account, the Comerica Collateral Account (except to the extent it has been first transferred into the Cash Collateral Disbursement Account) or any other deposit account. Comerica shall retain its security interest in and lien on all cash in the Cash Collateral Disbursement Account until such cash is withdrawn from the Cash Collateral Disbursement Account to fund the items in the

Amended Budget or the Extended Budget, as applicable. The OVB Account, the Comerica Collateral Account and the Comerica Collection Account shall be administratively frozen and no cash now or hereafter on deposit in the OVB Account, the Comerica Collateral Account, the Comerica Collection Account or the Cash Collateral Disbursement Account may be withdrawn, transferred, disbursed or otherwise used for any purpose, including Intercompany Transactions (as defined in the cash management motion (Docket No. 7)), except for (i) amounts expressly authorized to be transferred or otherwise paid by this Final Order, including under paragraphs 4 and 8 of this Final Order, (ii) amounts necessary to fund the Amended Budget or the Extended Budget, as applicable, in the amounts, at the times and for the purposes described therein, including the Carve-Out Reserves, and (iii) other amounts in excess of the Amended Budget or the Extended Budget, as applicable, to which Comerica may consent in writing in its sole discretion.

5. <u>Adequate Protection Payments and Adequate Protection Liens.</u>

(a) *Adequate Protection Payments.* Comerica shall receive payment of the Prepetition Obligations from the proceeds of the Prepetition Collateral and Post-Petition Collateral as set forth in paragraphs 4 and 8 (collectively, the "<u>Adequate Protection Payments</u>").

(b) *Adequate Protection Liens.*

(i) Comerica was granted under the Interim Order, and is hereby granted on a final basis, as adequate protection for the use of its Cash Collateral (each, a "<u>Comerica Adequate Protection Lien</u>"): (x) the prior and senior security interest in and lien on any proceeds from or of any sale or other disposition of the Debtor's property, plant and equipment located in Apple Grove, West

Virginia (the "Apple Grove Facility"), to which Inbursa, as existing first-lien secured lender on certain of the Debtor's property as set forth in the Inbursa Guaranty Documents, consents solely to the extent that the amount of such Adequate Protection Lien does not exceed the lesser of (i) $9.6 million or (ii) the actual amount of Cash Collateral used by the Debtor; and (y) a security interest in and lien on all of the Debtor's and the estate's interest in any and all property, whether real (other than the Apple Grove Facility), personal, tangible or intangible, whether presently existing or hereafter acquired or created, in each case, subject and junior to any properly perfected, non-avoidable, first-priority, security interests or other liens existing on the Petition Date in such property (each of (x) and (y), "Post-Petition Collateral").

(ii)     Inbursa was granted under the Interim Order, and is hereby granted on a final basis, as adequate protection for any diminution in value of the Inbursa Guaranty Liens, a security interest in and lien on the Postpetition Collateral identified in paragraph 5(b)(i) above, which is junior and subordinate to the security interests and liens of Comerica in the Post-Petition Collateral described in paragraph 5(b)(i) (the "Inbursa Adequate Protection Lien" and together with the Comerica Adequate Protection Lien, the "Adequate Protection Liens"). The Inbursa Adequate Protection Lien excludes the Pre-Petition Collateral, including any Accounts and Accounts

Receivable of the Debtor, the Inventory of the Debtor, the OVB Account, the Comerica Collateral Account, the Comerica Collection Account, the Cash Collateral Disbursement Account, and any other deposit account of the Debtor, and the proceeds of any of the foregoing.

(iii) The Adequate Protection Liens are and shall continue to be valid, binding, enforceable and fully perfected as of the date of the Interim Order.

(c) *Treatment of Adequate Protection Liens*. The Adequate Protection Liens shall not be made junior to, subject to or *pari passu* with any lien or security interest granted in the Case at any time or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case (a "Successor Case"). The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or any Successor Case. The Adequate Protection Liens are granted to the extent of any Diminution in Value of Comerica's interest in the Prepetition Collateral and Inbursa's Interest in the Inbursa Collateral.

(d) No security interests or other liens, including any security interests or other liens of the DIP Lender, DIP Agent or DIP Secured Parties (each as defined in the Interim DIP Order (Docket No. 62) or Final DIP Order (Docket No. (479)), and regardless of priority, shall be granted to any third party in, on or against any Prepetition Collateral, including the proceeds thereof, any Accounts and Accounts Receivable of the Debtor, the Inventory of the Debtor, the OVB Account, the Comerica Collateral Account, the Comerica Collection Account,

the Cash Collateral Disbursement Account, and any other deposit account of the Debtor, or the Inbursa Collateral. However, nothing in this Final Order affects any setoff or recoupment rights, if any, held by any third party.

      6.    <u>Adequate Protection Superpriority Claim</u>.

      (a)    *Superpriority Claims of Comerica and Inbursa*. As further adequate protection of the interests of Comerica with respect to the Prepetition Obligations and Inbursa with respect to the Inbursa Prepetition Obligations, Comerica and Inbursa were granted under the Interim Order, and are hereby granted in this Final Order on a final basis, allowed administrative claims against the Debtor's estate under Section 503(b) of the Bankruptcy Code with superpriority pursuant to Section 507(b) of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claims</u>") to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of Comerica's interests in the Prepetition Collateral or Inbursa's interests in the Inbursa Collateral.

      (b)    *Priority of Adequate Protection Superpriority Claim*. The Adequate Protection Superpriority Claims shall have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code. The Adequate Protection Superpriority Claims of Comerica shall be senior in priority to the Adequate Protection Superpriority Claims of Inbursa. Upon entry of this Final Order, the Adequate Protection Superpriority Claims of Inbursa shall be payable and have recourse to the proceeds of any claims or causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtor pursuant to any applicable Section of the Bankruptcy Code, including, without limitation, Chapter 5 and Section 724(a) of the Bankruptcy Code.

7. <u>Budget Maintenance</u>. The Amended Budget, the Extended Budget, and any modification to, or amendment or update of, the Amended Budget or the Extended Budget (a "<u>Budget Modification</u>") shall be in form and substance acceptable to Comerica and approved by Comerica in writing in its sole discretion (and the Creditors' Committee shall receive notice of such Budget Modification); *provided, however,* that the components of the Amended Budget or the Extended Budget, as applicable, concerning Prepetition Healthcare Claims (as defined below) may be modified only with the prior written consent of the Creditors' Committee. A Budget Modification shall not require further Court authorization or approval.

8. <u>Application of Proceeds of Collateral to Prepetition Obligations</u>.

(a) All proceeds of Accounts and Accounts Receivable of the Debtor and the sales and other dispositions of Inventory of the Debtor, upon receipt by the Debtor at any time after entry of the Interim Order (other than amounts on deposit in the Comerica Collateral Account), including amounts subject to paragraph 4(b) of this Final Order, shall be delivered to Comerica in the form received, and deposited into a segregated cash collateral account (account ending in *452) maintained by, and under the exclusive control of, Comerica (the "<u>Comerica Collection Account</u>"). The mere depositing of cash into the Comerica Collection Account shall not, in and of itself, prejudice the rights of any party to assert a superior interest in such cash.

(b) Upon the expiration of the Challenge Period, and subject to the funding obligations in paragraph 4, Comerica shall have the right to and may apply to the Prepetition Obligations any cash now or hereafter on deposit in the Comerica Collection Account and any cash now or hereafter on deposit in the Comerica Collateral Account, in each case, that is not the subject of a Challenge, without further Court Order. If a Challenge is made during the Challenge Period, then, upon the resolution of the Challenge, Comerica shall have the right to apply to the

Prepetition Obligations any cash in the Comerica Collection Account and any cash in the Comerica Collateral Account, in each case, that is subject to such Challenge in accordance with the resolution of the Challenge at the time of such resolution.

(c)     Notwithstanding anything to the contrary in this Final Order, Comerica shall not have the right to apply to the Prepetition Obligations any cash in the Comerica Collection Account or the Comerica Collateral Account except in accordance with this paragraph 8.

9.     <u>Modification of Automatic Stay</u>. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to permit the Debtor to continue the grant under this Final Order made under the Interim Order of the Adequate Protection Liens and the Adequate Protection Superpriority Claims, make the Adequate Protection Payments, and apply proceeds in accordance with paragraphs 4 and 8 above.

10.     <u>Automatic Perfection of Adequate Protection Liens</u>. The Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted therein and herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of possession or any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle Comerica or Inbursa to the priorities granted therein and herein.

11.     <u>Access to Books and Records and Premises</u>.  As additional adequate protection of Comerica's security interests in the Cash Collateral, the Debtor and its retained professionals shall cooperate with and allow and provide Comerica, its field auditors, collateral examiners, and financial advisors, including AlixPartners LLP, with reasonable access to the premises, officers, employees, auditors, appraisers, financial advisors, and the books and records of the Debtor, upon reasonable advance notice in order to conduct appraisals, analyses, and audits of the Prepetition Collateral, the Post-Petition Collateral, and the Debtor's financial affairs, and the Debtor and its retained professionals shall otherwise reasonably cooperate in providing any other financial information reasonably requested by Comerica or AlixPartners LLP.

12.     <u>Financial Information and Reporting Requests</u>.  The Debtor shall furnish to Comerica such financial and other information as Comerica shall reasonably request.  The Debtor shall furnish to Comerica each of the following financial reports:

(a)     A daily detailed report of actual receipts and disbursements and associated daily balances of cash, accounts receivable and inventory.  On a weekly basis, the Debtor will conduct a reconciliation of the prior week's activity and provide an adjusted report of actual receipts, disbursements and ending balances of cash, accounts receivable and inventory;

(b)     No later than the close of business each Wednesday, a weekly report for the prior week, detailed by line item, of the cumulative variances in actual receipts and disbursements compared to the projected receipts and disbursements in the Amended Budget or the Extended Budget, as applicable;

(c)     No later than the close of business each Wednesday, a detailed accounts receivable aged trial balance and a detailed perpetual inventory listing as of the end of the prior week;

(d)     No later than the close of business each Wednesday, for the period from the Petition Date through the end of the prior week, a comparison of the actual and budgeted disbursements for line items comprising "Total Costs" in the Amended Budget or the Extended Budget, as applicable (the "Total Costs Variance");

(e)     No later than the close of business each Wednesday, for the period from the Petition Date through the end of the prior week, a comparison of the actual cumulative receipts and budgeted cumulative receipts in the Amended Budget or the Extended Budget, as applicable (the "Receipts Variance");

(f)     Any financial information and pleadings filed with the Court shall be served upon Comerica and its counsel simultaneously with the filing of such information or pleading with the Court; and

(g)     On or before noon on each Friday, all other financial information and reports prepared by the Debtor in the ordinary course of its business, including any financial information required by the Court or by any applicable operating guidelines and/or reporting requirements of the U.S. Trustee.

13.     Disposition of Collateral; Rights of Comerica. Without Comerica's prior written consent and, where appropriate, authorization by the Court, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of all or any portion of the Inventory or other Prepetition Collateral or the Post-Petition Collateral other than the collection of Accounts and Accounts Receivable for cash in the ordinary course of business; provided, however, that Debtor shall not discount, compromise or forgive any Accounts or Accounts Receivable without Comerica's prior written consent. Nothing provided herein shall limit the rights of Comerica to object to any proposed disposition of the Prepetition Collateral or the Post-Petition Collateral.

14.     Termination Date.  On the Termination Date, except with respect to funds in the Carve-Out Reserves as defined and established in paragraph 17 below, all authority to use Cash Collateral shall cease and, subject to paragraph 8(b) above, Comerica may exercise any rights and remedies provided to Comerica under the Prepetition Credit Documents or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Final Order.

15.     Termination Event.  The occurrence of any of the following (unless waived by Comerica in writing in its sole discretion) shall constitute a "Termination Event" under this Final Order:

(a)     The failure to provide Comerica with any of the financial information or reports required in paragraph 12 of this Final Order by the date and time required, after written notice of such failure and failure of the Debtors to provide such information within two (2) business days;

(b)     If the Total Costs Variance exceeds a negative variance of actual to budgeted by more than 10% in any weekly report;

(c)     If the Receipts Variance exceeds a negative variance of actual to budgeted of more than 10% in any weekly report;

(d)     the Debtor shall, without Comerica's prior written consent, file a motion with the Court seeking authority to liquidate any of Prepetition Collateral or Post-Petition Collateral or to discount, compromise or forgive any Accounts or Accounts Receivable unless the transactions that are the subject of the motions will result in immediate payment in full in cash of the Prepetition Obligations;

(e)     other than in connection with the payment in full in cash of the Prepetition Obligations, the bringing of a motion, taking of any action or the filing of any plan of

reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtor in the Case: (A) to obtain financing under Section 364(c) or (d) of the Bankruptcy Code secured by security interests in, or liens on, the Prepetition Collateral or, except with respect to the DIP Lender, the Post-Petition Collateral; (B) except as provided in this Final Order, to use Cash Collateral under Section 363(c) of the Bankruptcy Code without the prior written consent of Comerica; or (C) any other action or actions materially adverse to Comerica or its rights and remedies hereunder or its interest in any Prepetition Collateral or Post-Petition Collateral;

(f)     the entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Prepetition Credit Documents or this Final Order, or the Debtor's cash management orders without the prior written consent of Comerica; or the filing of a motion for reconsideration with respect to this Final Order; or this Final Order, or any cash management order shall otherwise not be in full force and effect;

(g)     the filing by any of the Debtors of any motion or other paper seeking to authorize or grant, or the entry of any order authorizing or granting, (x) any superpriority administrative expense claims against the Debtor that would have priority over the Adequate Protection Superpriority Claims or (y) any liens on any claims or causes of action of the Debtor (including, solely with respect to Inbursa, on any avoidance action or the proceeds thereof) that would have priority over the Adequate Protection Liens;

(h)     except as set forth in the "first day" motions to the extent permitted under the Amended Budget or the Extended Budget, as applicable, the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim from the OVB Account, the Comerica Collection Account, the Comerica Collateral Account, or the Cash Collateral Disbursement Account, or the Disputed Collateral, without Comerica's prior written consent;

(i)     upon entry of this Final Order, the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against Comerica or Inbursa or any of the Prepetition Collateral or Post-Petition Collateral or Inbursa Collateral, as applicable;

(j)     the appointment of an interim or permanent trustee in the Case or the appointment of an examiner in the Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtor; or the sale without Comerica's consent of any of the Debtor's assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Case, or otherwise that does not provide for payment in full in cash of the Prepetition Obligations;

(k)     the dismissal of the Case, or the conversion of the Case from Chapter 11 to Chapter 7 of the Bankruptcy Code, or the Debtor shall file a motion or other pleading seeking the dismissal of the Case under Section 1112 of the Bankruptcy Code or otherwise;

(l)     the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on any Prepetition Collateral or Post-Petition Collateral having a value of $100,000 or more;

(m)     the commencement of a suit or action against Comerica by or on behalf of the Debtor or its estate;

(n)     the entry of an order in this Case avoiding or permitting recovery of any portion of the payments made on account of the Prepetition Obligations;

(o)     the failure of the Debtor to perform any of its obligations under the Interim Order, this Final Order or any cash management order, or any of its material obligations under any other order of the Court;

(p)     the making of any representation or warranty by the Debtor under this Final Order, or any pleading, certificate, report or financial statement delivered to Comerica in the Case which proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

(q)     any misrepresentation of a material fact made after the Petition Date by the Debtor to Comerica about the financial condition of the Debtor, the nature, extent, location or quality of any Prepetition Collateral or Post-Petition Collateral, or the disposition or use of any Prepetition Collateral or Post-Petition Collateral, including Cash Collateral;

(r)     the entry of an order by the Court (without the prior written consent of Comerica) granting reconsideration of this Final Order; or

(s)     the commencement of a Challenge during the Challenge Period by the Creditors' Committee.

16.     <u>Rights and Remedies Following Termination Event</u>.

(a)     *Termination.*  Immediately upon the occurrence and during the continuance of a Termination Event, (i) Comerica may terminate the Debtor's authority to use Cash Collateral by providing written notice as set forth in paragraph 16(b) (such notice, a "<u>Termination Notice</u>") and (ii) at Comerica's option, any right or ability of the Debtor to use any Cash Collateral (other than as expressly set forth in this Final Order during the Remedies Notice Period (as defined below)) may be terminated, reduced or restricted by Comerica.  Following the Termination Notice, subject to the Remedies Notice Period, Comerica may exercise all rights and remedies available to it under the Prepetition Credit Documents or applicable law against the Prepetition Collateral and the Post-Petition Collateral.  Without limiting the foregoing, Comerica may

(i) enter onto the premises of the Debtor in connection with an orderly liquidation of such collateral; (ii) exercise any rights and remedies provided to Comerica under the Prepetition Credit Documents, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Final Order; (iii) direct the Debtor's banks to immediately remit all proceeds contained in any and all deposit accounts to the Comerica Collection Account; and (iv) direct the Debtor's account debtors to pay their Accounts and Accounts Receivable directly to the Comerica Collection Account. The exercise of rights and remedies following the Remedies Notice Period (as defined in paragraph 16(b) below) shall be subject to paragraph 8(b) above.

(b)      *Notice of Termination.* Any Termination Notice shall be given by email or facsimile to counsel to the Debtor, counsel to Inbursa, counsel to the Creditors' Committee and any other statutory committee that may be appointed in the Chapter 11 Cases (any "Statutory Committee"), and the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "Termination Notice Date"). The use of Cash Collateral shall automatically cease on the Termination Notice Date. Any automatic stay otherwise applicable to Comerica is hereby modified so that seven (7) business days after the Termination Notice Date (the "Remedies Notice Period"), Comerica shall be entitled to exercise all rights and remedies against the Prepetition Collateral and Post-Petition Collateral in accordance with the Prepetition Credit Documents and this Final Order and shall be permitted to satisfy the Adequate Protection Superpriority Claim and the Adequate Protection Liens. During the Remedies Notice Period, the Debtor and the Creditors' Committee each shall be entitled to seek an emergency hearing with the Court. Unless the Court determines during the Remedies Notice Period that a Termination Event has not occurred, the automatic stay with respect to Comerica shall automatically be

terminated at the end of the Remedies Notice Period without further notice or order and Comerica shall be permitted to exercise all remedies set forth herein, in the Prepetition Credit Documents, and as otherwise available at law against Prepetition Collateral and Post-Petition Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Prepetition Collateral and Post-Petition Collateral, or any other rights and remedies granted to Comerica with respect thereto pursuant to the Prepetition Credit Documents or this Final Order.

17. <u>Carve-Out and Reserves</u>.

(a) *Carve-Out*. Notwithstanding anything to the contrary herein, regardless of whether a Termination Date occurs on December 29, 2017 or January 31, 2018 pursuant to paragraph 3(a) above (each, as applicable, a "<u>Scheduled Termination Date</u>"), or occurs prior to the applicable Scheduled Termination Date (an "<u>Early Termination Event</u>"), following either a Scheduled Termination Date or an Early Termination Event, as applicable, the Debtor shall be entitled to use the amount of Cash Collateral (less the corresponding amount of Cash Collateral actually used or otherwise disbursed prior to the Scheduled Termination Date or an Early Termination Event, as applicable, for the respective Carve-Out category) solely to the extent provided in the Amended Budget or the Extended Budget, as applicable, including the applicable Budget Variance Amount, for the following purposes only and without duplication (the sum of (i) through (viii) below, the "<u>Carve-Out</u>"):

        (i)    Compensation and benefits for the 16 retained employees (to the extent employed at the time of an Early Termination Event) for a period of 10 days after the Early Termination Event to secure the Apple Grove Facility, including wages such employees have accrued at the time of the Early Termination Event;

(ii)    The retained employees, including the 16 referenced above, will receive, if an Early Termination Event shall occur and only to the extent such retained employees are still providing services at the time of an Early Termination Event, severance comprised of 10 days compensation and benefits, and reimbursable business expenses;

(iii)   Amounts set forth in the Amended Budget or Extended Budget, as applicable, for healthcare benefits for the retained employees incurred through the Termination Date;

(iv)    (A) Unpaid compensation and reimbursable business expenses anticipated to be paid to the retained employees for the period from the Petition Date through the applicable Scheduled Termination Date (the "Retained Employee Compensation"), (B) amounts owing on account of benefits, other than healthcare benefits (which are addressed in clause (iii) above), incurred by, or owing to, non-union retained employees through the applicable Scheduled Termination Date (the "Other Retained Employee Benefits"), (C) amounts owing on account of benefits incurred by, or owing to, retirees of the Debtor through the applicable Scheduled Termination Date (the "Retiree Benefits"), (D) amounts owing on account of benefits incurred by, or owing to, union employees of the Debtor from the Petition Date through the applicable Scheduled Termination Date (the "Union Employee Benefits"), (E) $250,000 ($750,000 under the Extended Budget) for prepetition healthcare claims of union employees of the Debtor and terminated salaried employees of the Debtor (the "Prepetition Healthcare Claims") and (F) costs for administration of health care claims as set forth in the Amended Budget or the Extended Budget, as applicable; *provided that*, should an Early Termination Event occur, the Retained Employee Compensation, Other Retained Employee Benefits, Retiree Benefits, and Union Employee Benefits payable from the applicable Carve-Out Reserves, in each case, shall be limited to amounts incurred or accrued, as applicable, as of the date of such Early Termination Event;

(v)     The cash value of any accrued, but unused, vacation through the applicable Scheduled Termination Date for the retained employees;

(vi)    Accrued and unpaid professional fee claims for services rendered which are directly attributable to this Debtor for the period beginning on the Petition Date and ending on the Termination Date, up to the difference between $1,400,000 ($1,950,000 under the Extended Budget) and the amount paid to such professionals during that period (the "Professional Compensation");

(vii)   10 days' worth of environmental compliance and safety materials necessary to secure Apple Grove after the Termination Date, as negotiated by the Debtor and Comerica in good faith; and

(viii)  all statutory fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C. §1930(a).

(b)     *Creation and Funding of Carve-Out Reserves.*  Upon the transfer of funds from the OVB Account to the Comerica Collateral Account pursuant to paragraph 4(a) above, Comerica shall establish separate cash collateral accounts for each of (i) through (viii) in paragraph 17(a) above and an account for the applicable Budget Variance Amount, (collectively, the "Carve-Out Reserves"), including separate Carve-Out Reserves for each of the Retained Employee Compensation, the Other Retained Employee Benefits, the Retiree Benefits, the Union Employee Benefits, and the Prepetition Healthcare Claims.  Upon entry of this Final Order and Comerica's receipt of the funds in the OVB Account pursuant to paragraph 4(a), Comerica shall transfer funds from the Comerica Collateral Account in accordance with the Amended Budget (less the amount of Cash Collateral actually used or otherwise disbursed in connection with the applicable category in the Amended Budget prior to establishing the applicable Carve-Out Reserve) and an amount to fund the Amended Budget Variance Amount, into each of the respective Carve-Out Reserves sufficient to fully fund each Carve-Out Reserve; *provided that*, if no Committee Challenge is filed and served by the expiration of the Committee Challenge Deadline, then, upon the expiration of the Committee Challenge Deadline, Comerica shall transfer such additional funds from the Comerica Collateral Account into the Carve-Out Reserves as necessary to fully fund the respective Carve-Out Reserves in accordance with the Extended Budget.  Once funded in accordance with this paragraph 17(b), (x) each Carve-Out Reserve may be used to pay those obligations for which the Carve-Out Reserve was established (and the Carve-Out Reserve established for the Budget Variance Amount may be used for any

line item variance) and (y) the Carve-Out Reserves shall be in full and complete satisfaction of any obligation Comerica may have under this paragraph 17(b) and the amount of the Amended Budget or the Extended Budget, as applicable, so funded. Notwithstanding anything in this Final Order or any Prepetition Credit Document to the contrary, following the occurrence of a Scheduled Termination or an Early Termination Event, the rights and claims of Comerica and Inbursa, including the Prepetition Liens and the Inbursa Guaranty Liens, shall be subject and subordinate in all respects to the payment of the Carve-Out from the Carve-Out Reserves.

    (c)    *Post-Termination Payments from the Carve-Out Reserves.*

    (i)    Should an Early Termination Event occur and the actual Total Collections equal or exceed the "Total Collections" line item in the Amended Budget or the Extended Budget, as applicable, on a cumulative basis, as determined at the time of the Early Termination Event, then the full amount of Retained Employee Compensation, Other Retained Employee Benefits, Retiree Benefits, and Union Employee Benefits, in each case, held in the applicable Carve-Out Reserve shall be payable to the extent such funds would have been payable under the Amended Budget or the Extended Budget, as applicable, but for the Early Termination Event.

    (ii)    In the case of healthcare benefits, the applicable Carve-Out Reserves shall remain available to pay healthcare claims incurred prior to the Termination Date that are submitted for payment within 6 months after such Termination Date.

    (iii)    Any portion of the applicable Budget Variance Amount in the Carve-Out Reserve established for the Budget Variance Amount (the "Budget Variance Reserve") that is unused or unallocated as of the Termination Date (any such amount, the "Unused Budget Variance Amount") shall be aggregated and may be used by the Debtor for any purpose, except for purposes prohibited under paragraph 18 below; *provided that*, if no Committee Challenge is filed and served by the expiration of the Committee Challenge Deadline, then, upon the expiration of the Committee Challenge Deadline, $500,000 shall be reallocated from the Budget Variance Reserve to the Carve-Out Reserve established to fund Prepetition Healthcare Claims.

(iv)    To the extent that, pursuant to Sections 503(c) or 507(a) of the Bankruptcy Code or otherwise, the Debtor is prohibited by order of the Court or otherwise applicable law from paying any portion of accrued but unused vacation compensation or any severance compensation that is included in the Amended Budget or the Extended Budget, as applicable, and applicable Carve-Out Reserves, (w) such funds shall be returned from the applicable Carve-Out Reserves to the Comerica Collateral Account, (x) Comerica shall fund such portion of accrued but unused vacation compensation directly from the Comerica Collateral Account, (y) Comerica shall not seek reimbursement from the Debtor's estate for such funds, and (z) the Amended Budget or the Extended Budget, as applicable, shall be reduced accordingly.

(v)     Any funds remaining in the Carve-Out Reserves (including any Unused Budget Variance Amount) after payment in full of the obligations for which each respective Carve-Out Reserve was established shall be returned to the Debtor promptly, and the Debtor shall be entitled to use such returned funds for any purpose, except for purposes prohibited under paragraph 18 below; *provided, however*, that any amounts remaining in any health care Carve-Out Reserve on the date that is six months after the termination date will be returned to the Debtors.

18.     <u>Prohibited Use of Cash Collateral</u>.  The Cash Collateral may not be used (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of Comerica or its rights and remedies under the Prepetition Credit Documents, or adverse to or against the interests of Inbursa or its rights and remedies under the Inbursa Guaranty Documents or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor, the Creditors' Committee, or any other Statutory Committee, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Obligations, Prepetition Collateral, Inbursa Prepetition Obligations or Inbursa

Collateral, (iii) for monetary, injunctive or other affirmative relief against Comerica or its collateral or Inbursa or its collateral, (iv) preventing, hindering or otherwise delaying the exercise by Comerica or Inbursa of any rights and remedies under this Final Order, the Prepetition Credit Documents or the Inbursa Guaranty Documents (as applicable), or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by Comerica with respect to its Adequate Protection Liens, or (vi) to pursue litigation against Comerica or Inbursa; (b) to make any distribution under a plan of reorganization in the Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body to the extent not expressly consented to by Comerica in writing; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor; (e) objecting to, contesting, or interfering with, in any way, Comerica's enforcement or realization upon any of the Prepetition Collateral or Post-Petition Collateral or Inbursa's enforcement or realization upon any of the Inbursa Collateral once a Termination Event has occurred, except as provided for in this Final Order; (f) using or seeking to use Cash Collateral while the Prepetition Obligations remain outstanding in a manner inconsistent with the Amended Budget or the Extended Budget, as applicable, without Comerica's prior written consent; (g) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Post-Petition Collateral without Comerica's prior written consent; (h) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of Comerica or Inbursa; (i) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against Comerica or Inbursa; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or

enforceability of any of the Prepetition Obligations, the Prepetition Liens, the Inbursa Guaranty Documents or the Inbursa Guaranty Liens or any other rights or interests of Comerica or Inbursa; provided, that the Creditors' Committee may be reimbursed for up to $50,000 for fees and expenses incurred in connection with the investigation of, but not the commencement or pursuit of litigation in furtherance of any Challenge.

19.   Reservation of Certain Third Party Rights and Bar of Challenges to Claims.

(a)   The stipulations, findings, and representations contained in this Final Order with respect to Comerica and the Prepetition Obligations, and Inbursa and the Inbursa Prepetition Obligations, shall be binding upon the Debtor, all parties-in-interest, any creditor, any trustee appointed in the Case, the Creditors' Committee, any other Statutory Committee and any other person (each, other than the Debtor, a "Challenge Party"), unless and solely to the extent that a Challenge Party initiates an action or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  For purposes of this paragraph 19: (a) "Challenge" means any claim or cause of action against Comerica or Inbursa, in each case, on behalf of the Debtor, its estate or the Debtor's creditors and interest holders or any other person, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the security interests and liens of Comerica or Inbursa; (ii) the validity, allowability, priority, or amount of any of the Prepetition Obligations or Inbursa Prepetition Obligations; (iii) the secured status of any of the Prepetition Obligations or Inbursa Prepetition Obligations; or (iv) any liability of Comerica with respect to anything arising from any of the respective Prepetition Credit Documents or any liability of Inbursa with respect to anything arising from any of the

respective Inbursa Guaranty Documents; and (b) "Challenge Period" means with respect to any person or any party-in-interest, including the Creditors' Committee and any other Statutory Committee that may be appointed, the period from the Petition Date until January 16, 2018; provided, however, that with respect to Comerica, the Challenge Period for the Creditors' Committee will be the period from the Petition Date until the Committee Challenge Deadline.

(b) Upon the expiration of the Challenge Period without the filing of a Challenge ("Challenge Period Termination Date"): (A) any and all such Challenges and objections by any party (including, without limitation, the Creditors' Committee or any other Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case and any third party), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to Comerica's or Inbursa's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate and all creditors, equity interest holders, any person and other parties in interest in this Case and any Successor Case; and (C) any and all claims or causes of action against Comerica relating in any way to the Debtor or the Prepetition Credit Documents or Inbursa and the Inbursa Guaranty Documents shall be forever waived and released by the Debtor's estates, all creditors, equity interest holders, other parties and other parties in interest in this Case and any Successor Case. Notwithstanding the foregoing, to the extent the Creditors' Committee files a timely motion or adversary complaint against Inbursa in accordance with the challenge provisions of the Final DIP Order with respect to the allowed amount of the Pre-Petition First Lien Obligations (as defined in the Final DIP Order), and the

Creditors' Committee obtains an order reducing the allowed dollar amount of the Pre-Petition First Lien Obligations (as defined in the Final DIP Order) in such challenge, the Creditors' Committee shall have the right to seek, on notice and motion in the M&G Polymers case (which notice and motion may be contained in the same motion or adversary complaint bringing a challenge in accordance with the challenge provisions of the Final DIP Order), to have the amount of the claim against M&G Polymers based on the Inbursa Guaranty reduced to the same extent.

(c)     If there is a final order entered in this Case which provides that Comerica does not have a properly perfected, non-avoidable, first-priority, security interest or other lien on the OVB Account, the Comerica Collection Account, the Comerica Collateral Account, or the Cash Collateral Disbursement Account, as applicable, and the cash on deposit therein, in whole or in part ("Unencumbered Funds"), then the Cash Collateral used by the Debtor prior to the entry of such final order shall be treated as having first come from the Unencumbered Funds and not the funds subject to a properly perfected, non-avoidable, first-priority, security interest or other lien in favor of Comerica.

20.    Inbursa Reservation of Rights.  Nothing herein shall prejudice the rights of Inbursa, on account of the Inbursa Guaranty, the Pre-Petition First Lien Guaranty Mortgage, the Inbursa Guaranty Liens and the Inbursa Prepetition Obligations and any such related interests, to contest any further requests to prime Inbursa's interest in, or otherwise alter or adjust, any proceeds generated from the Inbursa Collateral under the Inbursa Guaranty.

21.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity security holder, or any direct, indirect, or incidental beneficiary.

22.     <u>Section 506(c) Claims</u>.  Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against (i) Comerica, the Prepetition Collateral, or the Post-Petition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of Comerica, and no such consent shall be implied from any other action, inaction, or acquiescence on the part of Comerica, its agents or professionals; or (ii) Inbursa or the Inbursa Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of Inbursa, and no such consent shall be implied from any other action, inaction, or acquiescence on the part of Inbursa, its agents or professionals.

23.     <u>No Marshaling/Applications of Proceeds</u>.  Upon entry of this Final Order, Comerica shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Post-Petition Collateral.

24.     <u>Section 552(b)</u>.  Upon entry of this Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Comerica with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral.

25.     <u>No Further Right to Use Cash Collateral</u>.  Upon entry of this Final Order, the Debtor irrevocably waives the right to move the Court or otherwise seek permission to use Cash Collateral (other than the Cash Collateral (a) authorized and permitted in the Amended Budget or the Extended Budget, as applicable, and (b) additional Cash Collateral with the prior written consent of Comerica to be exercised in its sole discretion), at any time prior to, on or after the Termination Date.

26.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) Comerica's or Inbursa's right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of Comerica or Inbursa under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, or (ii) request dismissal of the Case or any Successor Case, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers. Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of Comerica or Inbursa are preserved.

27. <u>No Waiver by Failure to Seek Relief.</u> The failure of Comerica or Inbursa to seek relief or otherwise exercise its rights and remedies under this Final Order, the Prepetition Credit Documents or Inbursa Guaranty Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of Comerica or Inbursa, as applicable.

28. <u>Binding Effect of Final Order.</u> Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, Comerica and Inbursa, all other creditors of the Debtor, the Creditors' Committee, any other Statutory Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or any Successor Case.

29. <u>No Modification of Final Order.</u> The Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of Comerica and, to the extent it affects Inbursa, Inbursa (i) any modification, stay, vacatur or

amendment of this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the Adequate Protection Superpriority Claim; (b) without the prior written consent of Comerica, any order allowing use of Cash Collateral other than pursuant to this Final Order; and (c) without the prior written consent of Comerica, any lien on any of the Prepetition Collateral or Post-Petition Collateral with priority equal or superior to the Adequate Protection Liens. The Debtor irrevocably waives any right to seek any amendment, modification, or extension of this Final Order without the prior written consent of Comerica and, to the extent it affects Inbursa, Inbursa, and no such consent shall be implied by any other action, inaction or acquiescence of Comerica, its agents or professionals or Inbursa, its agents or professionals.

30. <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of the Prepetition Credit Documents or this Final Order, the provisions of this Final Order shall govern and control.

31. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization or liquidation in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Case or any Successor Case; *provided, however*, that the various superpriority claims or other administrative expenses shall survive only to the extent permitted by applicable law. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to Comerica pursuant to this Final Order or the

Prepetition Credit Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Final Order until all Prepetition Obligations have been paid in cash and in full. Notwithstanding anything else in the Interim Order or this Final Order, in the event that the Prepetition Obligations (including, for the avoidance of doubt, all post-petition interest, fees, costs and other charges which may be allowed under Section 506(b) of the Bankruptcy Code) are fully and indefeasibly paid and satisfied in cash and in full and the Challenge Period has expired without Challenge or any Challenge that has been filed during the Challenge Period has been resolved and given effect, the Interim Order and this Final Order, solely as such orders pertain to Comerica, shall no longer apply to Comerica on a prospective basis, and Comerica shall promptly return to the Debtor any funds of the Debtor held by Comerica in the Comerica Collateral Account and the Comerica Collection Account in excess of the amount required to satisfy the Prepetition Obligations in cash and in full.

32. <u>Effect of this Final Order</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

33. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: Dec 14, 2017
Wilmington, Delaware

BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY
JUDGE