## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 17-12307 (BLS) |
| M & G USA CORPORATION, *et al.*,[1] | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : | **Re: Docket No. 173** |

## ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE PURCHASE AGREEMENTS AND TO PROVIDE BID PROTECTIONS THEREUNDER, (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (II) GRANTING RELATED RELIEF

This Court having considered the *Motion of the Debtors for Entry of Orders*

*(I)(A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets,*

*(B) Authorizing the Debtors to Enter into One or More the Stalking Horse Purchase Agreements*

*and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form*

*and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and*

*(E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof;*

*(II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims,*

*Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory*

*Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 173]

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.àr.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.àr.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

(the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (the "Debtors"), the Declaration of Dennis Stogsdill in Support of First Day Pleadings, the Declarations of Neil Augustine in support of the Motion, the Declaration of Dennis Stogsdill in support of the Motion and the statements of counsel and the evidence adduced with respect to the Motion at a hearing before this Court (the "Bidding Procedures Hearing") to consider a portion of the relief requested in the Motion; and after due deliberation, this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justification for the relief approved herein and that such relief is necessary to prevent immediate and irreparable harm to the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief requested in the Motion are (i) sections 105(a), 363 and 365 of the title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"); and (iii) Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

---

[2]      Capitalized terms not specifically defined herein have the meaning assigned to them in the Motion or the Bidding Procedures.

[3]      The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

D.      Notice of the Motion and the Bidding Procedures Hearing was sufficient under the circumstances and no other or further notice need be provided.

E.      The Bidding Procedures attached hereto as Exhibit 1 (the "Bidding Procedures") are fair, reasonable and appropriate, and are designed to maximize the value of the proceeds of a sale (each, a "Sale") of some or all of the Debtors' assets (the "Assets"), including the Apple Grove Assets (as defined in the Bidding Procedures), to one or more purchasers (each such sale, a "Sale Transaction") following one or more auctions (each, an "Auction").

F.      The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

G.      The procedures set forth in ¶¶ 29-40 below relating to the Debtors' assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures") are fair, reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code.

H.      The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bidding Procedures, (ii) the Sale Notice attached hereto as Exhibit 3 (the "Sale Notice"), (iii) the Assumption and Assignment Notice attached hereto as Exhibit 2 and (iv) the Assumption and Assignment Procedures.

I.      The Bidding Procedures were proposed and negotiated in good faith and at arm's-length, and are reasonably designed to promote participation and active bidding and to ensure that the highest or otherwise best value is generated for the Assets.

J.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and Assumption and Assignment Procedures. A reasonable opportunity to

object and be heard regarding the relief requested in the Motion has been afforded to parties in interest.

K.  The Sale Notice, Publication Notice (as defined below), Assumption and Assignment Notice and Proposed Assumed Contracts Notice (as defined below) are all appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auctions, the Sale Hearings (as defined below), the Bidding Procedures, the Assumption and Assignment Procedures, the Debtors' proposed good faith calculation of cure amounts (the "Cure Costs") due under any executory contract or unexpired lease (the "Contracts") to be assumed and assigned in connection with a Sale Transaction, the Proposed Assumed Contracts (as defined below) and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Sales, the Auctions or the assumption and assignment of Contracts in connection therewith shall be required.

L.  The Debtors have demonstrated compelling and sound business justifications for authorization to seek Court approval, on an expedited basis, of one or more agreements with a stalking horse bidder (each, a "Stalking Horse Bidder" and each such agreement, a "Stalking Horse Agreement"), including the provision of Bid Protections (as defined below) therein (which will remain subject to Court approval), on the timeframe and terms set forth in this Order and the Bidding Procedures.

M.  Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases (these "Cases").

3.      All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits with prejudice.

**A.      The Bidding Procedures**

4.      The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED and fully incorporated into this Order. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.      The tables below set forth the critical dates and deadlines in (a) the Sale process for all Assets excluding the Apple Grove Assets and (b) the Sale process for the Apple Grove Assets.

### Sale Timeline (Excluding Apple Grove Assets)

| | |
|---|---|
| **December 11, 2017 at 1:00 p.m. (prevailing Eastern Time)** | Hearing to consider entry of the Bidding Procedures Order |
| **December 21, 2017 (prevailing Eastern Time)** | Deadline for Debtors to file Assumption and Assignment Notice |
| **January 3, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline to file Cure Objections |
| **January 16, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Proposal Deadline |

| | |
|---|---|
| **March 6, 2018, at 5:00 p.m. (prevailing Eastern Time)[4]** | Final Bid Deadline |
| **March 7, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline for objections to the applicable Sale Transaction(s) other than Cure Objections and Adequate Assurance Objections |
| **March 8, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Auction, to be held at the offices of Jones Day, 250 Vesey Street, New York, New York 10281 |
| **March 12, 2018, at noon (prevailing Eastern Time)** | Deadline to file Adequate Assurance Objections |
| **March 13, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline to file the replies in connection with the applicable Sale Transaction(s) |
| **March 14, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Proposed hearing to approve proposed Sale Transaction(s) |

### Sale Timeline for Apple Grove Assets

| | |
|---|---|
| **December 11, 2017 at 1:00 p.m. (prevailing Eastern Time)** | Hearing to consider entry of the Bidding Procedures Order |
| **December 21, 2017 (prevailing Eastern Time)** | Deadline for Debtors to file Assumption and Assignment Notice |
| **January 3, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline to file Cure Objections with respect to Contracts held by M&G Polymers |
| **January 22, 2018, at 5:00 p.m. (prevailing Eastern Time)[5]** | Bid Deadline for Apple Grove Assets |
| **January 24, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline for objections to the applicable Sale Transaction(s) for the Apple Grove Assets other than Cure Objections and Adequate Assurance Objections |
| **January 29, 2018, 10:00 a.m. (prevailing Eastern Time).** | Auction for Apple Grove Assets, to be held at the offices of Jones Day, 250 Vesey Street, New York, New York 10281 |
| **January 31, 2018, at noon (prevailing Eastern Time)** | Deadline to file Adequate Assurance Objections with respect to Contracts held by M&G Polymers |

---

[4]    Subject to Debtors' limited extension right set forth in Section V of the Bidding Procedures.

[5]    Subject to Debtors' limited extension right set forth in Section V of the Bidding Procedures.

| January 31, 2018, at 5:00 p.m. (prevailing Eastern Time) | Deadline to file the replies in connection with the applicable Sale Transaction(s) for the Apple Grove Assets |
|---|---|
| February 1, 2018, at 10:00 a.m. (prevailing Eastern Time) | Proposed hearing to approve proposed Sale Transaction(s) for the Apple Grove Assets |

6.     The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Assets and the Auctions.

7.     The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bidding Procedures):

a.     **Proposal Deadline:** the deadline by which any prospective interested parties will be requested to submit preliminary indications of interest (each, a "Proposal" and, the date by which Proposals must be submitted, the "Proposal Deadline") **with respect to the Sale of the Assets other than the Apple Grove Assets (but including any Residual Apple Grove Assets (as defined below)) is January 16, 2018 at 5:00 p.m. (prevailing Eastern Time);**

b.     **Final Bid Deadlines:** the deadlines by which any Prospective Bidder that intends to participate in the applicable Auction for any of the Assets must submit its final, binding bid (a "Final Bid") so that it is <u>actually received</u> by the parties specified in the Bidding Procedures are as follows:

    i.     **January 22, 2018 at 5:00 p.m. (prevailing Eastern Time) with respect to any of the Apple Grove Assets; or**

    ii.     **March 6, 2018 at 5:00 p.m. (prevailing Eastern Time) with respect to any other Assets (and any Apple Grove Assets not sold in an earlier Auction and otherwise available to be sold (the "Residual Apple Grove Assets")) (as applicable, the "Final Bid Deadline"),**

    <u>provided</u> that the Debtors shall have the discretion to extend in writing the Final Bid Deadline for any Prospective Bidder so long as such extended deadline does not exceed the applicable milestone for such deadline under the DIP Loan Documents (as defined in the DIP Orders);

c.     **Notification of Status as Qualified Bidder:** Prior to the applicable Auction, the Debtors must notify applicable bidders of their status as Qualified Bidders; and

**d.**   **Auction:** the Auctions, if any are needed, will be held at the offices of Jones Day, 250 Vesey Street, New York, New York 10281 at the following dates and times, or at such other time and location as designated by the Debtors, <u>provided</u> that, if the Debtors reschedule such Auction, notice of the rescheduled Auction shall be filed with the Court and served on the Sale Notice Parties:

    **i.**   **January 29, 2018 at 10:00 a.m. (prevailing Eastern Time) for an Auction on the Apple Grove Assets;** and

    **ii.**   **March 8, 2018 at 10:00 a.m. (prevailing Eastern Time) for an Auction on all other Assets (and any Residual Apple Grove Assets).**

8.   Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the applicable Auction, subject to the Bidding Procedures. As described in the Bidding Procedures, if the Debtors receive no more than one Qualified Bid (including any Stalking Horse Bid(s) or Credit Bid by the DIP Agent, the DIP Lender and/or the Pre-Petition First Lien Lender (which Credit Bid shall have complied with the Credit Bid Requirements)) with respect to any of the Assets, the Debtors may determine, in their discretion and in consultation with the Consultation Parties,[6] or upon further order of the Court, not to hold an Auction for such Assets and instead declare such Qualified Bid as the Successful Bid on such Assets and request at the applicable Sale Hearing that the Court approve the applicable Asset Purchase Agreement with the applicable Successful Bidder (including any Stalking Horse Agreement(s) with the applicable Stalking Horse Bidder(s)).

---

[6]   The "<u>Consultation Parties</u>" are (a) the DIP Agent and its counsel Thompson & Knight LLP, (b) the DIP Lender and the Pre-Petition First Lien Lender and their counsel Cleary Gottlieb Steen & Hamilton LLP and Young Conaway Stargatt & Taylor, LLP, (c) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C., (d) with respect to an Apple Grove Bid (as defined in the Bidding Procedures), (i) the United Steelworkers and its counsel Cohen, Weiss and Simon LLP and The Law Office of Susan E. Kaufman, LLC and (ii) Comerica Bank and its counsel Miller Canfield, (e) with respect to matters related to the Corpus Christi Plant at the Auction, the Construction Lienholder Group and its counsel Morris James LLP and (f) Macquarie with respect to any bid involving any assets of or equity in M&G Waters, and its counsel Ashby & Geddes.

9.     The Pre-Petition First Lien Lender, the DIP Agent, the DIP Lender and Macquarie

Investments US Inc. ("Macquarie") are entitled to Credit Bid any and/or all amounts owed to

them in their capacity as Pre-Petition First Lien Lender, DIP Agent, DIP Lender or first lien

lender under its secured credit facility with M&G Waters USA, LLC ("M&G Waters"),

respectively, on any Assets to which the Pre-Petition First Lien Lender, the DIP Agent, DIP

Lender and/or the Macquarie, as applicable have a lien.

10.     Any Credit Bid by the DIP Agent, the DIP Lender, the Pre-Petition First Lien

Lender or Macquarie (which Credit Bid shall have complied with the Credit Bid Requirements)

shall not require payment of any Pre-Petition Second Lien Obligations.

11.     In the event that the DIP Agent, the DIP Lender or the Pre-Petition First Lien

Lender submits a Credit Bid comprised of any of their DIP Obligations or the Pre-Petition First

Lien Obligations (which Credit Bid shall have complied with the Credit Bid Requirements),

respectively, on any Assets securing such respective obligations and without limiting any other

requirements for approval of any other bid as a higher or better offer or a Successful Bid

(including without limitation the satisfaction of the Senior Secured Obligations (as defined in the

DIP Orders)), any further bid for the purchase of some or all of the Assets and any Sale of such

Assets to a Successful Bidder (other than the DIP Lender or the Pre-Petition First Lien Lender)

that is approved by the Court must provide for, at the closing of such Sale Transaction,

indefeasible cash payments of the DIP Obligations and the Pre-Petition First Lien Obligations to

the DIP Lender and Pre-Petition First Lien Lender, respectively, in at least the dollar amount

equivalent of the Credit Bid submitted by the DIP Agent, the DIP Lender and the Pre-Petition

First Lien Lender (as applicable), plus the Sale Professional Fees Amounts and the Sale Excess

Fee Amounts (each, as defined in the final order approving the DIP Motion (the "Final DIP

Order")) in order for the Successful Bid of such Successful Bidder to be considered as a potentially higher or better bid and/or to be approved by the Court as a Successful Bid, unless otherwise agreed to by the DIP Agent, the DIP Lender and/or the Pre-Petition First Lien Lender (as applicable). For the avoidance of doubt, and without limiting any other requirements for approval of any such bid as a higher or better offer or a Successful Bid, the foregoing requirements in this paragraph shall not preclude Macquarie from submitting a Credit Bid on the M&G Waters Assets (as defined in the Bidding Procedures).

12.    Without limiting any other requirements for approval of such bid as a higher or better bid or a Successful Bid (including without limitation the satisfaction of the Senior Secured Obligations), any bid by the Pre-Petition Second Lien Secured Party for the CC Assets (as defined in the DIP Orders), by Credit Bid or otherwise, shall provide that at the closing of the Sale Transaction the DIP Obligations and the Pre-Petition First Lien Obligations are indefeasibly paid in full in cash to the DIP Lender and the Pre-Petition First Lien Lender, respectively (unless otherwise agreed to by the DIP Agent, the DIP Lender and/or the Pre-Petition First Lien Lender (as applicable)), and cash in an amount equal to the Sale Professional Fees Amounts and the Sale Excess Fee Amounts, as authorized pursuant to the Final DIP Order, shall be transferred into an escrow account not subject to the control of the DIP Agent, the DIP Lender, the Pre-Petition First Lien Lender, the Pre-Petition Second Lien Secured Party or any party that purports to have a validly, perfected security interest in any of the Debtors' deposit accounts or cash.

13.    If an Auction for a particular Asset(s) is conducted, (a) each Qualified Bidder participating in the Auction for such Asset(s) shall be required to confirm that it has not engaged in any collusion with respect to the bidding process for or the Sale of such Asset(s); (b) each Qualified Bidder participating in the applicable Auction shall be required to confirm that its

Qualified Bid for such Asset(s) is a good faith, *bona fide* offer and that it intends to consummate the proposed Sale Transaction for such Asset(s) if selected as the Successful Bidder; and (c) such Auction shall be conducted openly and shall be transcribed or videotaped.

**B.     Stalking Horse Agreements and Bid Protections**

14.     The Debtors are authorized, as they may deem necessary and appropriate in the prudent exercise of their business judgment, in consultation with the Committee, or upon further order of the Court, to enter into any Stalking Horse Agreement(s) in connection with the proposed sale of any Assets and to provide Bid Protections to any Stalking Horse Bidder therein; provided that the Debtors shall file a motion (each, a "Stalking Horse Motion") seeking approval of any such Stalking Horse Agreement, including any Bid Protections provided contained therein. Subject to the Court's determination, but no earlier than ten days after filing a Stalking Horse Motion and no later than the applicable Sale Hearing, the Debtors are authorized, in consultation with the Committee, to seek approval from the Court, on an expedited basis if necessary, of such Stalking Horse Agreement(s) and any Bid Protections contained therein, in accordance with Rule 6004-1 of the Local Rules.

15.     The DIP Agent, the DIP Lender, the Pre-Petition First Lien Lender, and the Pre-Petition Second Lien Secured Party (or their respective affiliates) shall not be entitled to any Bid Protections; provided, however, that the foregoing shall not limit any right or entitlement of the DIP Agent, DIP Lender, Pre-Petition First Lien Lender or the Pre-Petition Second Lien Secured Party under their respective agreements and the Final DIP Order to payment of any fees and expenses incurred in connection with any Credit Bid or related to any Sale Transaction.

**C.     Sale Notice**

16.     The form of Sale Notice attached hereto as Exhibit 3 is approved and fully incorporated into this Order. The failure to specifically include a reference to any particular

provision of the Bidding Procedures in the Sale Notice shall not diminish or impair the effectiveness of such provision.

17.     Within three days after entry of this Order, the Debtors shall serve the Sale Notice on (a) the Consultation Parties; (b) any counsel to a Stalking Horse Bidder; (c) DAK Americas, LLC; (d) Macquarie Investments US Inc.; (e) all persons and entities known by the Debtors to have expressed an interest to the Debtors in a Sale Transaction involving any of the Assets during the past 12 months, including any person or entity that has submitted a Proposal or a bid for any of the Assets, as applicable; (f) all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance on or against any of the Assets; (g) all Counterparties to the Contracts that may be assumed and assigned in connection with a Sale Transaction; (h) any governmental authority known to have a claim against the Debtors in these Cases; (i) the United States Attorney General; (j) the Antitrust Division of the United States Department of Justice; (k) the United States Attorney for the District of Delaware; (l) the Office of the Attorney General in each state in which the Debtors operate; (m) the Federal Trade Commission; (n) the office of the United States Trustee for the District of Delaware; (o) counsel for any official committee appointed in these Cases, including the Committee; (p) the Internal Revenue Service; (q) the United States Securities and Exchange Commission; (r) the Debtors' consolidated creditor matrix; (s) all parties who have filed a notice of appearance and request for service of papers in these Cases pursuant to Bankruptcy Rule 2002; (t) all other persons and entities as directed by the Court; and (u) with respect to any Qualified Bid that includes the Apple Grove Plant, the United Steelworkers (collectively, the "Notice Parties").

18.     As soon as reasonably practicable, but in no event later than three days after the entry of this Order, the Debtors will also post the Sale Notice and this Order on the website

maintained by the Debtors' claim and noticing agent, Prime Clerk, LLC, located at

http://cases.primeclerk.com/mgusa (the "Prime Clerk Website").

19.     Not later than five days after entry of this Order, the Debtors shall cause the

information contained in the Sale Notice to be published once in the *Wall Street Journal*, *Plastics*

*News* and/or *Corpus Christi Caller-Times* (the "Publication Notice"); provided that, with respect

to *Plastics News*, the Publication Notice shall be published no later than in its third publication

following the entry of this Order.

**D.     Auction**

20.     If the Debtors receive more than one Qualified Bid for the same Assets, the

Debtors shall conduct an Auction.  The applicable Auction, if required, will be conducted at the

offices of Jones Day, 250 Vesey Street, New York, New York 10281 on the following dates (as

applicable, the "Auction Date") and times, or at such other time and location as designated by the

Debtors, in consultation with the Committee:

    a.     **January 29, 2018 at 10:00 a.m. (prevailing Eastern Time) for the**
           **Apple Grove Assets**; and

    b.     **March 8, 2018 at 10:00 a.m. (prevailing Eastern Time) for any other**
           **Assets (and any Residual Apple Grove Assets)**; provided that the
           Auction for such Assets (including any Residual Apple Grove Assets)
           shall not be rescheduled for a date that is beyond the outside date or
           milestone for such Auction set forth in the DIP Loan Documents (as
           defined in the DIP Orders).

If the Debtors receive no more than one Qualified Bid (including any Stalking Horse Bid(s))

with respect to any of the Assets, the Debtors may determine, in their discretion, in consultation

with the Committee or upon further order of the Court, not to hold the Auction for such Assets

and instead declare such Qualified Bid as the Successful Bid on such Assets and request at the

applicable Sale Hearing that the Court approve the applicable Asset Purchase Agreement with

the applicable Successful Bidder (including any Stalking Horse Agreement(s) with the applicable Stalking Horse Bidder(s)).

21. The Good Faith Deposits (for purposes of this paragraph, as increased by the Incremental Deposit Amount, if applicable) of all Prospective Bidders shall be held in escrow by the Debtors in a non-interest-bearing escrow or trust account and shall not become property of the Debtors' estates. The Good Faith Deposits of all Prospective Bidders shall be retained by the Debtors, notwithstanding Court approval of Sale Transactions for the applicable Assets, until no later than five business days after the conclusion of the applicable Auction, except for the Good Faith Deposits of Successful Bidders and Backup Bidders. The Debtors shall retain the Good Faith Deposits of Backup Bidders until the earlier of (a) three business days after the closing of the applicable Sale Transaction with the Successful Bidder for the applicable Assets and (b) 75 days after the date of the applicable Sale Hearing.

**E.      Objections to Sale Transaction**

22. Objections to any Sale Transaction (each, a "Sale Objection"), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder, as applicable, and entry of any Sale Order must (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules and all orders of the Court; and (c) be filed with the Court and served on: (i) the Debtors, M&G USA Corporation, 450 Gears Road, Suite 240, Houston, Texas 77067 (Attn: Dennis Stogsdill); (ii) counsel for the Debtors, (1) Jones Day, 250 Vesey Street, New York, NY 100281 (Attn: Scott J. Greenberg, Esq., Michael J. Cohen, Esq. and Stacey L. Corr-Irvine, Esq.) and 901 Lakeside Avenue, Cleveland, OH 44114 (Attn: Carl E. Black, Esq.) and (2) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-

8705 (Attn: Laura Davis Jones, Esq., James E. O'Neill, Esq., and Joseph M. Mulvihill, Esq.); (iii) counsel for the Committee (1) Milbank, Tweed, Hadley & McCoy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Dennis F. Dunne, Esq., Abhilash M. Raval, Esq. and Lauren C. Doyle, Esq.) and (2) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (Attn: J. Kate Stickles, Esq. and David R. Hurst, Esq.); (iv) counsel for Trimont Real Estate Advisors, LLC, Thompson & Knight LLP, 900 Third Avenue, 20th floor, New York, NY 10122 (Attn: Michael V. Blumenthal, Esq.); (v) counsel for Control Empresarial de Capitales, S.A. De C.V. and Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa, (1) Cleary Gottlieb Steen & Hamilton LLP, 1 Liberty Plaza, New York, NY 10006 (Attn: Lisa M. Schweitzer, Esq.) and (2) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Esq.); (vi) counsel to DAK Americas LLC, (1) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Alfredo R. Perez, Esq.) and (2) Morris, Nichols, Arsht and Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19899 (Attn: Curtis S. Miller, Esq.); (vii) counsel (if applicable) of any Stalking Horse Bidder(s); (viii) counsel (if applicable) of any applicable Successful Bidder(s); (ix) counsel (if applicable) of any Backup Bidder(s); and (x) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Hannah McCollum, Esq.) (collectively, the "Objection Recipients") by:

a.   **January 24, 2018 at 5:00 p.m. (prevailing Eastern Time) with respect to the Sale of any of the Apple Grove Assets;** and

b.   **March 7, 2018 at 5:00 p.m. (prevailing Eastern Time) with respect to the Sale of any other Assets (and any Residual Apple Grove Assets)** (as applicable, the "Sale Objection Deadline").

23.   The hearings to approve the Sales and any Successful Bid(s) therefor (each, a "Sale Hearing") shall take place on:

a. **February 1, 2018 at 10:00 a.m. (prevailing Eastern Time) with respect to the Sale of any of the Apple Grove Assets**; and

b. **March 14, 2018 at 10:00 a.m. (prevailing Eastern Time) with respect to the Sale of any other Assets (and any Residual Apple Grove Assets).**

24. Parties will be permitted to reply to Sale Objections by no later than:

a. **January 31, 2018 at 5:00 p.m. (prevailing Eastern Time) with respect to Sale Objections to the Sale of any of the Apple Grove Assets**; and

b. **March 13, 2018 at 5:00 p.m. (prevailing Eastern Time) with respect to Sale Objections to the Sale of any other Assets (and any Residual Apple Grove Assets).**

25. Parties will be permitted to reply to Adequate Assurance Objections (defined below) in writing prior to the applicable Sale Hearing and/or respond orally at the applicable Sale Hearing.

26. If any party fails to timely file with the Court and serve on the Objection Recipients a Sale Objection, such party shall be barred from asserting, at the applicable Sale Hearing or thereafter, any objection (other than a Cure Objection or an Adequate Assurance Objection) to the relief requested in the Motion, or to the consummation and performance of the applicable Sale Transaction(s), including the transfer of the applicable Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for purposes of section 363(f) of the Bankruptcy Code.

27. If a Successful Bidder fails to consummate the proposed Sale Transaction, a hearing to authorize the assumption and assignment of Contracts to the applicable Backup Bidder will, in consultation with the Committee, be held before the Court on no less than five business days' notice, with objections due at least one day prior to such hearing, unless otherwise ordered by the Court.

28. Notwithstanding the foregoing or anything herein to the contrary, and as set forth below, the deadline to file a Cure Objection or an Adequate Assurance Objection (each as defined below) in connection with a proposed Sale Transaction to a Successful Bidder or to the Backup Bidder shall be as set forth below.

F.   **Assumption and Assignment Procedures**

29. The Assumption and Assignment Notice attached hereto as <u>Exhibit 2</u> is approved and fully incorporated into this Order. The failure to specifically include a reference to any particular provision of the Bidding Procedures in the Assumption and Assignment Notice shall not diminish or impair the effectiveness of such provision.

30. No later than December 21, 2017, the Debtors shall file with this Court, serve on the Notice Parties, including each Counterparty (as defined below) to a Contract that may be assumed, and cause to be published on the Prime Clerk Website, the Assumption and Assignment Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, which shall (a) identify the Contracts; (b) list the Debtors' good faith calculation of Cure Costs with respect to each Contract; (c) state that assumption or assignment of a Contract is not guaranteed and is subject to Court approval; and (d) conspicuously disclose the deadlines to file objections to the assumption and assignment of the Debtors' Proposed Assumed Contracts (as defined below).

31. In the event that the Debtors identify any non-Debtor counterparties (each, a "<u>Counterparty</u>") that were not served with the Assumption and Assignment Notice, the Debtors may subsequently serve such Counterparty with an Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Counterparty; provided, however, that the deadline to file a Cure Objection (as defined below) with respect to such Counterparty shall be **5:00 p.m. (prevailing Eastern Time) on the date that is seven days following service of the supplemental Assumption and Assignment Notice); <u>provided</u> that the Debtors will make a**

good faith effort to obtain email addresses or, to the extent email addresses are not available, fax numbers for all Counterparties to Proposed Assumed Contracts and serve the Proposed Assumed Contracts Notice by email (or fax) on such parties.

32.     Within 24 hours of the receipt of adequate assurance information from any Qualified Bidder (including a Qualified Bidder whose Final Bid includes a Credit Bid), but in no event later than 24 hours after the applicable Final Bid Deadline, the Debtors shall serve, by email to the extent email addresses are available to the Debtors and otherwise by overnight mail, such adequate assurance information received from such Qualified Bidder as more fully set forth in Section VI.A.8 of the Bidding Procedures to any Counterparty (and their counsel, if identified as a notice party in the applicable Contract or as identified in any notice of appearance filed in these Cases) whose Contract may be assumed pursuant to such Qualified Bidder's proposed transaction, including the legal name of the proposed assignee, the proposed assignee's financial ability to perform under the Contracts and a contact person with the proposed assignee that Counterparties may contact if they wish to obtain further information regarding such Qualified Bidder.

33.     As soon as reasonably practicable after the conclusion of the applicable Auction, but no later than **January 30, 2018 with respect to the Apple Grove Assets** and **March 9, 2018 with respect to all other Assets (and any Residual Apple Grove Assets)**, the Debtors shall file with this Court, serve on the Notice Parties (including each applicable Counterparty and their counsel, if identified as a notice party in the applicable Contract or as identified in any notice of appearance filed in these Cases), by email, to the extent they have consented to email service and email addresses are available to the Debtors, or otherwise via overnight mail, and cause to be published on the Prime Clerk Website a list of the Contracts that the Debtors will seek to assume

and assign pursuant to a Stalking Horse Agreement, if any, or one or more Asset Purchase Agreements submitted by a Successful Bidder (as applicable) (each, a "Proposed Assumed Contracts Notice" and, each Contract used therein, a "Proposed Assumed Contract").

34.     Any Counterparty that wishes to object to the proposed assumption and assignment of the applicable Contract, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding monetary defaults then existing under such contract (each, a "Cure Objection"), shall file with this Court and serve on the Objection Recipients its Cure Objection, which must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof, by no later than **January 3, 2018 at 5:00 p.m. (prevailing Eastern Time)**.

35.     The Debtors, in consultation with the Committee, and a Counterparty that has filed a Cure Objection shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the applicable Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objections at a hearing scheduled pursuant to the following paragraph. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolved Cure Objection occurs prior to or after the closing of the applicable Sale Transaction, the Debtors may determine that any Proposed Assumed Contract subject to such resolved Cure Objection will no longer be assumed and assigned pursuant to the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction). All other objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to, and under a Contract, if it is ultimately designated a Proposed Assumed Contract, will be heard at the applicable Sale Hearing.

36.     If a timely filed Cure Objection cannot otherwise be resolved by the parties, such objection may be heard by the Court at the applicable Sale Hearing or subsequent to the applicable Sale Hearing (an "Adjourned Cure Objection"); provided that the determination of whether a Cure Objection may be heard at such Sale Hearing is in the discretion of the Debtors, in consultation with the Committee, and approval of the Court.  An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction(s); provided that the applicable Sale Transaction provides for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required to cure the asserted monetary default under the applicable Proposed Assumed Contract (or as otherwise may be provided under the applicable Sale Transaction agreement or as so ordered by the Court).  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Proposed Assumed Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Successful Bidder, as of the closing date of the applicable Sale Transaction(s).

37.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the applicable Cure Costs set forth in the Assumption and Assignment Notice and, unless the Court orders otherwise, forever shall be barred from asserting any objection with regard to such Cure Costs or any other claims related to the applicable Proposed Assumed Contract against the Debtors or any Successful Bidder(s) or their respective property (unless the Counterparty has filed a timely Adequate Assurance Objection with respect to the Proposed Assumed Contract).  Unless the Court orders otherwise, the Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults

under Proposed Assumed Contracts under section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in any Proposed Assumed Contract, or any other document.

38.     Any Counterparty to a Proposed Assumed Contract that wishes to object to the proposed assumption and assignment of a Proposed Assumed Contract, the subject of which objection is a Successful Bidder's proposed form of adequate assurance of future performance with respect to such Contract (each, an "Adequate Assurance Objection"), shall file with this Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof, by no later than:

    a.     **January 31, 2018 at noon (prevailing Eastern Time) with respect to the Sale of any Apple Grove Assets; and**

    b.     **March 12, 2018 at noon (prevailing Eastern Time) with respect to the Sale of any other Assets (and any Residual Apple Grove Assets).**

39.     The Debtors and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance of the applicable Successful Bidder shall be determined by the Court at the applicable Sale Hearing.

40.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the applicable Proposed Assumed Contract and adequate assurance of future performance in connection therewith to the applicable Successful Bidder and, unless the Court orders otherwise, forever shall be barred from asserting any

objection with regard to such assumption and assignment (unless the Counterparty has filed a timely Cure Objection with respect to the Proposed Assumed Contract) or adequate assurance of future performance in connection therewith or any other claims related to such Proposed Assumed Contract against the Debtors or any Successful Bidder(s) or their respective property. The applicable Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.

**G.    Related Relief**

41.    All persons and entities that participate in the bidding process or an Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of any of the applicable Assets, the applicable Auction and any Sale Transaction.

42.    In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

43.    Any Stalking Horse Bidder has standing to enforce the terms of this Order.

44.    For the avoidance of doubt, nothing in the Bidding Procedures or this Order waives, modifies, limits or otherwise amends the terms of the DIP Orders and the DIP Loan Documents (as defined in the DIP Orders) or any of the rights of the DIP Lender, DIP Agent and the Pre-Petition First Lien Lender or any of the obligations of the Debtors or other parties thereunder, including without limitation the right to repayment of the DIP Obligations upon the maturity of the DIP Facility (each as defined in the DIP Orders).

45.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

46.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

47.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

48.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated:   Dec 14, 2017
         Wilmington, Delaware

HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE