# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## ESTABLISHING LIENHOLDER CLAIM SETTLEMENT PROCEDURES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached as Exhibit A (the "Proposed Order"), establishing global procedures (the "Lienholder Claim Settlement Procedures") for the reconciliation and settlement of claims held by various holders of mechanics' and materialmen's liens asserted against the Corpus Christi Plant (as defined below) and the real property on which it is situated (such holders, collectively, the "Lienholders" and such claims and any proofs of claim filed in connection therewith, the "Lienholder Claims"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

NAI-1503288799v8

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. General Background

2. On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B. The Lienholder Claim Settlement Procedures

4. By this Motion, the Debtors seek to establish efficient and cost-effective procedures for resolving certain of the Lienholder Claims that will streamline the settlement approval process in these Cases, minimize costs incurred by the Debtors' estates in connection with obtaining approval of beneficial settlement agreements and reduce the Court's administrative burden, while preserving the rights of the Debtors' key creditor constituencies and

the Office of the United States Trustee (the "U.S. Trustee") to participate in the settlement approval process, as appropriate.

5. As set forth in the First Day Declaration, in April 2013, the Debtors began construction on a vertically integrated PTA/PET plant in Corpus Christi, Texas (the "Corpus Christi Plant"). Certain contractors, subcontractors and other third parties provided services, materials or labor in connection with the construction of the Corpus Christi Plant. As a result of disputes with such parties and the Debtors' financial condition leading up to the Petition Date, numerous parties have asserted claims against the Debtors for allegedly unpaid labor or materials, including by filing Lienholder Claims in the land records of Nueces County, Texas, the county in which the Corpus Christi Plant is located. Although some Lienholders have yet to assert Lienholder Claims (or record their lien in the Nueces County land records), many Lienholders have filed a notice of perfection of lien pursuant to section 546 of the Bankruptcy Code on the docket in these Cases, while it is anticipated that others will submit statement of lien forms in accordance with the Court's *Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief* (Docket No. 457) (the "Lien Identification Order").

6. While the Debtors are still in the process of evaluating the Lienholder Claims asserted by all known Lienholders,[2] the Debtors believe that many of these claims are (a) overstated and subject to ongoing disputes and/or (b) duplicative, with multiple contractors and subcontractors asserting claims on account of the same, allegedly unpaid labor or materials. In order to avoid piecemeal litigation to resolve the disputed Lienholder Claims and the resulting

---

[2] The Lien Identification Order established February 15, 2018 as the date by which Lienholders—to the extent that they have not already recorded their interests in the Nueces County land records or filed a notice of perfection of lien on the docket in these Cases in accordance with section 546 of the Bankruptcy Code—are required to submit a statement of lien form.

NAI-1503288799v8

demands on the Debtors' employees and professionals, the Debtors seek authorization to implement the following Lienholder Claim Settlement Procedures:

    (a)    At any time, the Debtors are authorized, but not required, to negotiate, with any Lienholder and to seek an agreement (each such agreement, a "Settlement Agreement") with a Lienholder to resolve its Lienholder Claim, to the extent disputed, in accordance with these Lienholder Claim Settlement Procedures. To the extent that multiple claims are asserted by a particular Lienholder against the Debtors, any reference to a Lienholder Claim herein shall be a reference to all claims asserted by that particular Lienholder against the Debtors, and the asserted amount of such Lienholder Claim shall be the aggregate asserted amount for all such claims asserted by the Lienholders against the Debtors. The following procedures shall apply to the Debtors' entry into any Settlement Agreement:

        (i)    Tier I Lienholder Settlements. If the Debtors and a Lienholder are able to agree (1) to the disallowance of any Lienholder Claim or (2) on the validity and/or amount of any Lienholder Claim in the amount of $250,000 or less (but in no case more than the asserted amount of the Lienholder Claim) in full satisfaction of all claims of the Lienholder, then the Debtors and the Lienholder may agree to any such settlement in writing, following consultation with the Committee, the Pre-Petition First Lien Lender and the DIP Lender (each as defined in the DIP Orders[3]), without further order of the Court and without further notice to any party; *provided* that any Settlement Agreement that (1) contemplates a release of claims against a creditor or third party and (2) otherwise satisfies the requirements of this paragraph 6(a)(i) shall be subject to the procedures that apply to Tier II Lienholder Settlements. Any Tier I Lienholder Settlements shall be binding upon the Debtors and their estates without further order of the

---

[3]    "DIP Orders" means, collectively, (i) the *Interim Order Granting Debtors' Motion to (1) Authorize Certain Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (2) Granting Liens and Superpriority Administrative Expense Claim to DIP Lender Pursuant to 11 U.S.C. §§ 364 and 507; (3) Provide Adequate Protection to the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party; (4) Modify the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507; (5) Schedule Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2; and (6) Granting Related Relief* (Docket No. 62) and (ii) the *Final Order Granting Debtors' Motion to (1) Authorize Certain Debtors In Possession To Obtain Post Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (2) Grant Liens and Superpriority Administrative Expense Claims to DIP Lender Pursuant To 11 U.S.C. §§ 364 and 507; (3) Provide Adequate Protection to the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party; (4) Modify Automatic Stay Pursuant To 11 U.S.C. §§ 361, 362, 363, 364 and 507; and (5) Granting Related Relief* (Docket No. 479).

Court or notice to any party, *provided* that the Debtors shall deliver (which delivery may be via electronic mail) a copy of any final Settlement Agreement to counsel for the Committee, counsel to the Pre-Petition First Lien Lender and the DIP Lender and the U.S. Trustee within 2 business days of entry into such Settlement Agreement.

(ii) Tier II Lienholder Settlements. If the Debtors and a Lienholder are able to agree on the validity and/or amount of a Lienholder Claim in an amount between $250,000 to $3,000,000 (but in no case more than the asserted amount of the Lienholder Claim, including any Settlement Agreement that contemplates a release of claims against a creditor or third party and that otherwise complies with this paragraph 6(a)(ii)), the Debtors shall prepare a notice of settlement (the "Settlement Notice"), which Settlement Notice shall redact the settlement amount and any confidential, privileged or proprietary information, file it with the Court, and serve such Settlement Notice on (1) the U.S. Trustee; (2) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Practice and Procedure for the Bankruptcy Court for the District of Delaware (the "Local Rules") or order of the Court; (3) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP; (4) Trimont Real Estate Advisors, LLC and its counsel, Thompson & Knight LLP, (5) the Pre-Petition First Lien Lender and the DIP Lender and their counsel, Cleary Gottlieb Steen & Hamilton LLP (Attn: Lisa M. Schweitzer) and Young Conaway Stargatt & Taylor, LLP (Attn: Pauline K. Morgan); (6) Macquarie Investments US Inc. and its counsel, Sidley Austin LLP and Ashby & Geddes, P.A., (7) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C.; and (8) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (the "Notice Parties"); *provided, however*, that the Debtors shall deliver an unredacted version of the Settlement Notice to counsel to the Pre-Petition First Lien Lender, counsel to the DIP Lender, counsel to the Committee and the U.S. Trustee; *provided, further*, that the Debtors shall obtain the prior written consent of the Committee, the Pre-Petition First Lien Lender and the DIP Lender to the terms of such Settlement Agreement prior to entry into a Settlement Agreement or the filing of a Settlement Notice.

-5-

1. The Notice Parties shall have 7 calendar days from the date of service and filing of the Settlement Notice (the "Objection Deadline") to file with the Court an objection thereto (each, a "Settlement Objection"). Settlement Objections must be served so as to be received by (A) the Debtors, 450 Gears Road, Suite 240, Houston, Texas 77067 (Attn: Dennis Stogsdill), (B) the Debtors' counsel (i) Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Scott J. Greenberg, Esq., Michael J. Cohen, Esq. and Stacey L. Corr-Irvine, Esq.) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Fl., P.O. Box. 8705 (Attn: Laura Davis Jones, Esq., James E. O'Neill, Esq. and Joseph M. Mulvihill, Esq.), (C) the settling Lienholder and (D) the non-objecting Notice Parties, on or before the Objection Deadline.

2. If no Settlement Objection with respect to a Settlement Notice is timely filed and served, the subject Lienholder Claim shall be deemed resolved in accordance with the Settlement Notice without further order of the Court. If a Settlement Objection is timely filed and served, subject to the prior written consent of the Committee, the Pre-Petition First Lien Lender and the DIP Lender to the terms of the Settlement Stipulation (as defined below), the Debtors, the Lienholder and the objecting party may negotiate a consensual resolution of such objection to be incorporated in a stipulation filed with the Court (the "Settlement Stipulation"). Upon the filing of a Settlement Stipulation, the applicable Lienholder Claim shall be resolved in accordance with the terms of the Settlement Stipulation without further order of the Court.

3. If no consensual resolution of the Settlement Objection is reached within 7 calendar days after the date of the Settlement Objection—unless such period is extended, after consultation with the DIP Lender and the Pre-Petition First Lien Lender, by mutual agreement of the Debtors and the party filing the Settlement Objection—the Debtors shall thereafter file a motion on no less than 14 calendar days' notice for the Court to resolve the Settlement Objection, which motion shall be set for hearing.

NAI-1503288799v8

4. In the event that (A) all or a portion of such Lienholder Claim is disputed and no consensual resolution is reached between the Debtors and the Lienholder or (B) a Settlement Notice is filed by the Debtors, but a Settlement Objection is filed and remains unresolved, then after a motion is filed for the Court to resolve the dispute, but before a hearing on the motion takes place, the Debtors, the Lienholder and, to the extent applicable, the party or parties asserting the Settlement Objection, shall participate in Court-ordered mediation pursuant to Local Rule 9019-5. To the extent that they are not objecting parties, the Committee, the Pre-Petition First Lien Lender and the DIP Lender may participate in such mediation. If a settlement is reached at mediation among all the parties participating in the mediation, a party designated by the appointed mediator shall submit a fully executed stipulation and proposed order to the Court within 2 business days after the end of mediation. The Court may, at its discretion, either withdraw the matter from mediation if no resolution has been reached within 10 calendar days of the scheduled hearing date or reschedule the hearing as the Court deems appropriate.

(iii) Tier III Lienholder Settlements.

1. As soon as reasonably practicable after commencing discussions with a Lienholder regarding the settlement of a Lienholder Claim in an amount greater than $3,000,000, the Debtors will consult with the DIP Lender and the Pre-Petition First Lien Lender, including providing the DIP Lender and the Pre-Petition First Lien Lender with information regarding the nature, amount, validity and asserted priority of such Lienholder Claim and any proposed resolution of such Lienholder Claim. Prior to entry into any such Settlement Agreement, the Debtors shall make reasonable efforts to obtain the prior written consent of the DIP Lender and the Pre-Petition First Lien Lender.

2. If the Debtors and a Lienholder are able to agree on the validity and/or amount of the Lienholder Claim in an amount greater than $3,000,000, the Debtors may file a motion to approve such settlement (a "Settlement Motion") under Bankruptcy Rule 9019 and any other applicable provisions of the Bankruptcy Code or the Bankruptcy Rules. For the avoidance of doubt, all

-7-

rights of the DIP Lender and the Pre-Petition First Lien Lender are reserved with respect to any Settlement Agreement for which their prior written consent was not obtained. For the further avoidance of doubt, the Debtors may, in their discretion, seek approval of any settlement that falls within the parameters of the Tier I Lienholder Settlements or the Tier II Lienholder Settlements pursuant to a Settlement Motion.

(b) The Debtors are authorized, but not directed, to enter into and consummate any Settlement Agreement pursuant to which (i) settlement consideration is to be provided by a non-debtor third party and/or (ii) the Debtors agree to release claims against creditors or third parties, *provided* that the Debtors (i) otherwise comply with these Lienholder Claim Procedures and (ii) consult with any third party providing such settlement consideration in advance of entering into any such settlement. For the avoidance of doubt, the Debtors cannot compel a non-debtor third party to pay any such settlement consideration without its prior consent.

(c) Any Settlement Agreement shall grant the applicable Lienholder an allowed claim against only one Debtor, unless the Court orders otherwise or consented to by the Committee, the Pre-Petition First Lien Lender and the DIP Lender. Regardless of the dollar amount of the settlement, no Settlement Agreement will fix or determine the relative priorities of liens securing a Lienholder Claim and the liens securing the Pre-Petition Obligations or the DIP Obligations (each as defined in the DIP Orders) unless the Debtors and the applicable Lienholder have obtained the prior written consent of the Pre-Petition First Lien Lender and the DIP Lender, respectively.

(d) The Debtors are authorized, with the prior written consent of the Pre-Petition First Lien Lender, the DIP Lender and the Committee, to enter into and consummate any Settlement Agreement pursuant to which the Debtors, the Committee, the DIP Lender and Pre-Petition First Lien Lender and the applicable Lienholder agree on an amount to be reserved from the proceeds of the sale of the Corpus Christi Plant solely on account of such Lienholder's Lienholder Claim (the "Reserved Amount"), without settling the amount and/or validity of such Lienholder Claim; *provided* that such Lienholder Claim cannot be allowed in an amount greater than such Reserved Amount and the Lienholder agrees that it has no further additional claims against the Debtors, the Pre-Petition First Lien Lender, the DIP Lender or any buyer of any of the Debtors' assets apart from such Reserved Amount. Such agreed Reserved Amount shall be the amount required to be escrowed on account of such Lienholder Claim in connection with the Senior Secured Obligations set forth in clause (3) of the definition of "Cash Amount" in Section VI.A.5 of the Bidding Procedures approved by the Court's *Order (I)(A) Approving Bidding*

> *Procedures for the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* (Docket No. 490).

    (e)    Settlement Agreements shall require the applicable Lienholder party thereto to file in the land records of Nueces County, Texas (i) upon the effective date of such Settlement Agreement, a lien release or similar document limiting such Lienholder's lien against the Debtors' assets to the Lienholder Claim amount agreed to under such Settlement Agreement (the "Settled Lienholder Claim Amount") and (ii) upon the distribution by the Debtors (or such other mechanism agreed upon or authorized by order of the Court) of the applicable net proceeds from the sale of the Corpus Christi Plant to such Lienholder of the Settled Lienholder Claim Amount that is payable from such distribution, a final lien release providing that the Lienholder's Lienholder Claim has been fully and finally satisfied and that no lien remains in respect thereof on the Debtors' property. Upon (i) entry into any Tier I Lienholder Settlement, (ii) the expiration of the applicable Objection Deadline without a Settlement Objection to a Tier II Lienholder Settlement (or final resolution of a Tier II Lienholder Settlement to which a timely objection is filed) or (iii) approval by final order of the Court of a Tier III Lienholder Settlement, the Debtors shall notify their authorized claims, noticing and balloting agent, Prime Clerk LLC, of the relevant Settlement Agreement, and Prime Clerk LLC shall be directed to adjust any Lienholder Claim on the claims register in accordance with the applicable Settlement Agreement. For the avoidance of doubt, the Debtors are not authorized to enter into any settlement that would violate or be inconsistent with the DIP Orders or the DIP Loan Agreement (as defined in the DIP Orders).

## RELIEF REQUESTED

7.    The Debtors request entry of an order, in substantially the form of the Proposed Order, establishing the Lienholder Claim Settlement Procedures.

## BASIS FOR RELIEF

8.    Approving and establishing the Lienholder Claim Settlement Procedures is well within this Court's authority. Bankruptcy Rule 9019(b) permits a court, after a hearing on such notice as the court may direct, to "fix a class or classes of controversies and authorize the trustee

NAI-1503288799v8

to compromise or settle controversies within such class or classes without further hearing or notice." Fed. R. Bankr. P. 9019(b). Pursuant to Bankruptcy Rules 2002(a)(3) and 9006(c), the Court may, for cause, adjust the notice requirements with respect to settlements. Bankruptcy Rule 2002(a)(3) provides that 21 days' notice is required for "the hearing on approval of the compromise or settlement of a controversy other than approval of an agreement pursuant to Rule 4001(d), *unless the court for cause shown directs that notice not be set.*" Fed. R. Bankr. P. 2002(a)(3) (emphasis added). Bankruptcy Rule 9006(c) provides that, with certain exceptions, "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). In addition, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

9. Moreover, in the bankruptcy context, compromises are favored "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

10. In light of the foregoing, the proposed Lienholder Claim Settlement Procedures are fair and equitable, and in the best interests of the Debtors, their estates and all parties in interest in these Cases. Approval of the Lienholder Claim Settlement Procedures will maximize

the value of the Debtors' estates for the benefit of all stakeholders by streamlining the settlement approval process and enabling the Debtors to enter into beneficial settlements in a timely manner – and, critically, before the auction for the sale of the Corpus Christi Plant and the closing of such sale – while limiting unnecessary expenses that otherwise would be incurred by the Debtors' estates. Considerations of judicial economy also weigh in favor of approval of the Lienholder Claim Settlement Procedures, as such procedures will relieve the Court of the administrative burden associated with the filing and adjudication of numerous discrete motions by the Debtors for approval of consensual resolutions of various disputed Lienholder Claims.

11. When implementing the Lienholder Claim Settlement Procedures, the Debtors will exercise their sound business judgment in negotiating Settlement Agreements that are both (a) fair and equitable and (b) in the best interest of the Debtors' estates, while taking into consideration the factors applied by Courts in this District when reviewing proposed settlements under Bankruptcy Rule 9019. Moreover, the notice and opportunity to object to be provided with respect to Tier II Lienholder Settlements and Tier III Lienholder Settlements (the latter of which will require the Debtors to file a motion seeking approval of such settlement) will also ensure that the Debtors do not improvidently settle Lienholder Claims asserted against their estates, and that parties in interest receive due process that is adequately and appropriately tailored to the relative magnitude of each potential Settlement Agreement. For the reasons set forth herein, the Debtors respectfully request that the Court approve the Lienholder Claim Settlement Procedures.

## NOTICE

12. Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local

governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; and (h) all known Lienholders. The Debtors submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

13. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: December 28, 2017

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Joseph M. Mulvihill

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession

NAI-1503288799v8