# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>Jointly Administered<br><br>**Related to Docket Nos. 173, 490, and 537** |

## SINOPEC'S CURE OBJECTION

Sinopec Engineering Group America, LLC ("**SEGA**") and Sinopec Engineering (Group) Co., Ltd. ("**SEG**" and with SEGA, "**Sinopec**"), by and through their undersigned counsel, hereby file this Objection to the proposed assumption, assignment, and sale of a contract listed on the Debtors' *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [D.I. 537], the subject of which objection is the Debtors' proposed cure costs to cure any outstanding monetary defaults existing under Sinopec's Contracts (the "**Cure Objection**"). In support of its Cure Objection, Sinopec states as follows:

## PRELIMINARY STATEMENT

Sinopec Engineering Group (Company Ltd.) and Sinopec Engineering Group America L.L.C., as assignee, have entered into contracts (collectively the "**Contracts**") related to the construction of a chemical plant by M&G Resins USA LLC ("**M&G Resins**") in Corpus Christi,

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

Texas (the "**Jumbo Plant**"). The Contracts form an integrated contract based on four groups of contracts under which Sinopec imported materials into the United States for use in the construction of the Jumbo Plant. The integrated Contracts consist generally of the following grouping of documents:[2]

(1) Agreement for Supply of Engineering, Procurement, and Construction for Facilities for the Manufacture of Terephthalic Acid and Polyethylene Terephthalate Bottle Grade Chip by and between M&G Resins USA LLC and SEG, dated January 11, 2013 (as assigned or amended, the "**EPC Agreement**");

(2) Umbrella Agreement by and between M&G Finanziaria S.R.L. and SEG, dated January 11, 2013 and as Amended and Restated as of June 17, 2013 (as further amended, restated, or clarified, the "**Umbrella Agreement**");

(3) Onshore Supply Agreement by and between SEGA and Chemtex, dated June 17, 2013 (as amended the "**Onshore Supply Agreement**"), which Onshore Supply Agreement was supplemented by an agreement between SEGA and Debtor Mossi & Ghisolfi Logistics & Engineering Co. ("**M&G Logistics**"), dated June 17, 2013; and

(4) Offshore Supply by and between SEGA and M&G Finanziaria S.R.L. ("**MGF**"), dated June 17, 2013 (as amended, assigned, or supplemented, the "**Offshore Supply Agreement**").

The counterparty under the EPC Agreement is M&G Resins, a debtor in these cases. The EPC Agreement was assigned to SEGA after which SEGA entered into first-tier sub-contracts with debtor-affiliates. The Offshore Supply Agreement provided for procurement of material from countries outside of the United States and from the Peoples Republic of China for a total amount of $378.5 million. The Onshore Supply Agreement was with Debtors Chemtex International Inc. ("**Chemtex**") and M&G Logistics and covered onshore transportation, onshore design, onshore procurement, all onshore construction works, and provided overall project management services on the site of the Jumbo Project. Below the debtor-affiliated first-tier subcontractors (*i.e.,* MGF, Chemtex, and M&G Logistics), there are several additional levels of

---

[2] This listing of Contracts is descriptive in nature and is intended to include all relevant contracts including ancillary agreements and side letters arising under the Contracts. Sinopec reserves all its rights with respect to the Contracts and does not waive any right by not specifically listing any document.

subcontractors, the performance of which was not reported or disclosed to SEGA or managed by SEGA, but were contracted with and managed by the Debtors or their affiliates.

The counterparty under the Umbrella Agreement is MGF. Debtors Chemtex and M&G Logistics executed the Umbrella Agreement to agree to and be bound by the provisions of the Umbrella Agreement. Under the Umbrella Agreement contractual risks associated with the debtor-affiliated subcontracts is placed on MGF. As an example, in a January 19, 2016 Side Letter, MGF stated that it would "continue to abide by, and be responsible for, all liabilities of SEG and SEGA under the EPC Agreement and the subcontracts with MGF, Chemtex, and M&G Logistics, to the extent specified in the Umbrella Agreement . . .."

Under the Bankruptcy Code, a debtor must deal with an executory contract to be assumed as a whole, with all burdens, rather than assuming only the beneficial aspects and rejecting the burdensome ones. Consequently, a debtor is not able to "cherry pick" desirable contracts among a series of agreements when those executory contracts are construed as a single integrated agreement. In those instances, the debtor must assume or reject all of the contracts that comprise the integrated agreement.

The Debtors here have identified only the EPC Agreement as a contract they intend to assume and assign but have not identified the other Contracts to be assumed and assigned. By this Objection, Sinopec submits that the Contracts form an integrated contract as a matter of fact. As such, the EPC Agreement alone cannot be assumed by the Debtors, and the Debtors must either reject all of the agreements with Sinopec or assume all of them, including the Umbrella Agreement, prior to assigning them to any buyer.

The Debtors have listed cure amount of $0 even though Sinopec has filed a $52 million notice of lien claim. Attached to this Objection is the Notice of Lien Claim that Sinopec filed in

these cases, which sets for the factual basis for a portion of the cure amounts asserted by Sinopec in these cases. Under the Bankruptcy Code, if the Debtors elect to assume all of the Contracts, then they must pay Sinopec all cure amounts due in full and in cash.

## BACKGROUND

1.  Sinopec is party to the Contracts described above, which Sinopec asserts consist of integrated agreements that form a single contract. Under the Contracts and prior to the commencement of these cases, SEG provided offshore procurement, mainly providing goods from outside the USA, including from the People's Republic of China, and subcontracted to certain Debtors and affiliated parties, offshore procurement, onshore construction, transportation and design work, and overall project management services at the Jumbo Plant. The Umbrella Agreement provided that MGF is responsible for (a) all engineering, procurement, and construction risk and (b) all prime contract risk under the Contracts, including all subcontracts with MGF's affiliates, including certain of the Debtors. In essence, under the integrated Contracts, Sinopec was not the general contractor, but was a material provider, including specially fabricated material specific to the Jumbo Plant.

2.  On October 24 and 31, 2017, the Debtors filed these bankruptcy cases. On November 16, 2017, the Debtors filed the Sale Motion,[3] which included Bidding Procedures for the Sale of the Debtors' assets and for assumption and rejection of executory contracts as part of the proposed sale.

---

[3] *See Motion For Sale of Property Free and Clear of Liens under Section 363(f)(FEE) Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 173]

3. On November 17, 2017, Sinopec filed a *Notice of Perfection of Mechanic's Liens under 11 U.S.C. § 546(b)(2) of Sinopec Engineering Group America, LLC* [D.I. 192] ("**Sinopec Lien Notice**"). This Notice provide notice of two unpaid claims Sinopec has under the Contracts for claims for the performance of labor and furnished materials used to improve the Jumbo Plant totaling $52,377,568.72, consisting of (i) a $49,813,112.20 claim and (ii) a $2,564,456.52 claim. As part of these lien claims, Sinopec seeks all amounts to which it is entitled, including attorneys' fees, costs, interest and all other amounts.

4. The Court approved the Bidding Procedures by entry of an order on December 14, 2017.[4] The Bidding Procedures Order required the Debtors to file, no later than December 21, 2017, an "Assumption and Assignment Notice," which the Debtors filed on that date.[5]

5. In the Assumption and Assignment Notice, the Debtors listed the EPC Contract with SEGA[6] as a contract to be assumed and assigned with a total cure amount of $0.

---

[4] *Order (I) (A) Approving Bidding Procedures For The Sale Of Certain Of The Debtors' Assets, (B) Authorizing The Debtors To Enter Into One Or More Stalking Horse Purchase Agreements And to Provide Bid Protections Thereunder, (C) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof, (D) Approving Assumption And Assignment Procedures And (E) Scheduling A Sale Hearing And Approving The Form And Manner Of Notice Thereof And (II) Granting Related Relief* [D.I. 490].

[5] *See Notice of Possible Assumption and Assignment of Certain Executory Contracxts and Unexpired Leases in Connection with Sale* [D.I. 537].

[6] The Debtors listed the following contracts with SEGA that it may assume: EPC with SEGA for Project Jumbo, Assignment, and Acceptance Agreement of the EPC Contract, Amendment No. 1 to the EPC Contract, Amendment No. 2 of the EPC Contract, Amendment No. 3 of the EPC Contract, Right of Trade Zone Use, and Refund Bond. This is an insufficient description of contracts the Debtors intend to assume as the "Refund Bond" is a term in one of the Contracts and not a separate bond (and if it were, it is likely not executory). Sinopec reserves its right to oppose the assumption of any contract intended by the Debtors to be assumed by these insufficient descriptions.

**RESPONSE AND RESERVATION OF RIGHTS**

A. **The Debtors may not assume the EPC Contract alone, <u>but must either assume or reject all of the Contracts.</u>**

6. Bankruptcy Courts recognize that a debtor must assume or reject an entire contract and cannot cherry-pick the provisions it does not like. *See, e.g., In re G-I Holding, Inc.*, 568 B.R. 731, (D. N.J. 2017); *In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 278 (Bankr. S.D.N.Y. 2013). And, an executory contract must be assumed or rejected in totality and may not be bifurcated into parts with some rejected and some accepted. *Cf. In re Abitibibowater Inc.*, 418 B.R. 815, 822-23 (Bankr. D. Del. 2009) (citations omitted); *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006) *aff'd* 2008 WL 52255516 (D. Del. 2008); *vac'd and remanded* 607 F.3d 957 (3d Cir. 2010).

7. A corollary concept is that when multiple contracts are integrated into a single contract, all of the multiple contracts must be assumed or rejected under section 365. *See In re Buffets Holdings, Inc.*, 387 B.R. 115 (Bankr. D. Del. 2008). When the law governing the contracts permits multiple contracts to be integrated as a single contact, Delaware bankruptcy courts are obligated to only permit assumption or rejection of ***all*** of the contracts and may not allow for some to be rejected because they are unfavorable while others are assumed because they are favorable. *See In re Physiotherapy Holdings, Inc.*, 538 B.R. 225 (D. Del. 2015).

8. Courts generally look to the law governing the contracts to determine whether contracts in question are integrated or divisible and separate. *Id*. The Contracts here are all governed by Singaporean law.[7] However, the Contracts indicate integration as the Umbrella

---

[7] In accordance with Federal Rule of Civil Procedure 44.1, made applicable to these cases by Federal Rule of Bankruptcy Procedure 9017, to the extent the issue of integration of the Contracts involves the Court's determination of Singaporean law, Sinopec hereby gives notice of its intent to raise such issue at any evidentiary hearing on such matter and reserves its rights to submit materials on Singaporean law at any hearing on this Cure Objection.

Agreement itself indicates the integrated nature of the Contracts as it makes reference to them all as the "Project Agreements" or the "Governing Agreements" and reflects that the payment of all obligations under all the Contracts is the unified "Contract Price." Additionally, it was the intent of the parties, as reflected in the Umbrella Agreement, that the Contracts function as an integrated contact to provide for the delivery of material and for the Debtors to obtain certain export finance credit. Additionally, any dispute arising under any one of the Contracts is subject to a common Dispute Resolution provision in paragraph 16 of the Umbrella Agreement.[8]

**B.      The Cure Amount is greater than set forth by the Debtors.**

9.      As noted, the Debtors listed the cure obligation to Sinopec as $0 notwithstanding the Sinopec Lien Notice setting out over $52.3 million that is due and owing to Sinopec by the Debtor under the Contracts. Sinopec asserts that the cure amount should be $56 million plus interest and attorneys' fees payable under applicable Texas law in amounts continuing to accrue but that must be paid as part of any cure obligation. *See* TEX. PROP. CODE § 53.156; TEX. CIV. PRAC. & REM. CODE § 33.001; *In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2004) (including attorneys' fees in cure costs); *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 609 (permitting payment of interest).

10.     As indicated in the Umbrella Agreement, the price to M&G Resin must pay Sinopec under the Contracts is $1,150,000,0000, of this amount, $350 million is payable to Sinopec as set forth in the Umbrella Agreement and the remaining EPC Contract value is payable to MGF, M&G Logistics, Chemtex, and other debtor affiliates. To date SEGA has been paid $1,094,000,000 and $56,000,000 remains due (which is an amount in addition to the $52.3 million set forth in the Sinopec Lien Notice). Additionally, under the Umbrella Agreement, the

---
[8]      Sinopec reserves all rights under applicable dispute resolutions provisions in the Contracts, including, but not limited to, any right to have any disputes with the Debtors resolved through an ICC arbitration in Singapore.

"Contract Price" includes all customs duties as well as other relevant taxes and duties, including income taxes, properly payable by SEGA in the USA, which amounts are currently estimated at $14,299.961.49 (which amount is included in the total asserted in the Sinopec Lien Notice). Sinopec intends to assert all rights for payment to which it is entitled under the Contracts and nothing herein is intended to waive any right of payment owing to Sinopec.

**C.     Reservation of Rights**

11.     In addition to the issues raised herein, Sinopec reserves its right to object to the Sale Motion, including, but not limited to, for any reason set forth herein or to require adequate assurance of future performance by any proposed buyer. Sinopec also reserves the right to supplement this response and to join in any other filings, and to present supplemental and further arguments at any hearing on Sale Motion.

Dated: January 3, 2018

Respectfully submitted,

By*:*     */s/ R. Craig Martin*
R. Craig Martin (DE 5032)
**DLA Piper LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone:  (302) 468-5700
Facsimile:   (302) 394-2341
Email:  craig.martin@dlapiper.com

*Attorneys for Sinopec Engineering Group America, LLC, and Sinopec Engineering (Group) Co., Ltd.*