**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17- 12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

**DEBTORS' MOTION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE DEBTORS TO**
**(I) REJECT HOUSTON OFFICE LEASE, (II) SELL CERTAIN**
**PERSONAL PROPERTY AT THE PREMISES OF *DE MINIMIS* VALUE AND**
**(III) ABANDON ANY PERSONAL PROPERTY THAT REMAINS AT THE PREMISES**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

move the Court (the "Motion"), pursuant to sections 105, 363, 365 and 554 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the

form attached as Exhibit A (the "Proposed Order"), authorizing the Debtors to (i) reject the

M&G Polymers Office Lease (as defined below) effective as of February 1, 2018 (the "Surrender

Date"), (ii) sell certain personal property of *de minimis* value (the "De Minimis Assets") located

at the Premises (as defined below) free and clear of all Liens (as defined below) and

(iii) abandon any De Minimis Assets that remain unsold and left at the Premises as of the

Surrender Date.  In support of this Motion, the Debtors respectfully state as follows:

---

[1]   The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

**JURISDICTION AND VENUE**

1.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

A.       **General Background**

2.       On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.       An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146).  Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration") filed on October 31, 2017 and incorporated herein by reference.

B.       **The M&G Polymers Office Lease**

4.       Debtor M&G Polymers USA, LLC ("M&G Polymers") is the tenant, and Paragon Operating Associates, LP is the landlord (the "Landlord") under that certain office lease dated June 29, 2001 (as amended, the "M&G Polymers Office Lease") pertaining to the premises

located at 450 Gears Road, Houston, Texas 77067 (the "Premises").[2]  Subsequent to entering

into the initial lease for the Premises, M&G Polymers and the Landlord executed three

amendments to the M&G Polymers Office Lease, with the most recent amendment having been

executed on January 7, 2012 (the "Third Amendment").  The Third Amendment extended the

lease term through July 31, 2018 and increased the rent to a current monthly rate of $10,108.71.

5.       As set forth in the First Day Declaration, the Debtors have filed these chapter 11

cases to conduct a sale of their U.S. assets.  As part of the contemplated sale, the Debtors have

begun reviewing, among other things, their unexpired non-residential leases and executory

contracts in an effort to identify those leases that are no longer needed for ongoing operations.  In

connection with such review, the Debtors have identified the M&G Polymers Office Lease for

rejection.

6.       As of the filing of this Motion, the Debtors have notified the Landlord of the

Debtors' intent to surrender the Premises as of the Surrender Date.  Accordingly, continued

payment of obligations owing under the M&G Polymers Office Lease beyond the Surrender

Date represents an unnecessary expense for the Debtors' estates and it is in the best interests of

the Debtors, their creditors and these estates that the Debtors avoid the costs and monthly

expenses associated therewith.  Rejection of the M&G Polymers Office Lease will maximize the

value of the estates by decreasing the Debtors' monthly expenses for a location that is not

necessary to the Debtors' continuing operations and will not be utilized as part of the Debtors'

efforts to sell their U.S. assets.

---

[2]       The original landlord under the M&G Polymers Office Lease was Transwestern CG Partners I,
L.P., which sold and assigned its interest in the M&G Polymers Office Lease to Landlord.

NAI-1503325875v1

**C.      Sale of the De Minimis Assets**

7.      The De Minimis Assets are currently being used and stored at the Premises and consist primarily of office furniture and telecom equipment owned by M&G Polymers and laptops owned by Debtor M&G Resins USA, LLC ("M&G Resins").[3]  Because the Debtors have determined to reject the M&G Polymers Office Lease, they no longer require the De Minimis Assets for ongoing operations or as part of their larger sale process.

8.      The Debtors understand that their non-Debtor affiliate, M&G Polimeros Mexico S.A., de C.V. ("Polimeros Mexico" or the "Purchaser") has entered into negotiations with the Landlord regarding the Premises and intends to occupy the Premises as of the Surrender Date.  In connection with its occupation of the Premises, Polimeros Mexico expressed an interest in purchasing certain of the De Minimis Assets from the Debtors for a purchase price of $39,014.75 (the "Purchase Price").

9.      The terms of the sale were negotiated at arms-length and reflect fair market value. Prior to the filing of this Motion, the Debtors sought quotes regarding the fair market value of the De Minimis Assets from liquidators with expertise in reselling office furniture and IT equipment and the Purchase Price exceeds the quotes that were received.  The Debtors are continuing to solicit bids from liquidators and intend to continue marketing the De Minimis Assets during the pendency of this Motion.  To the extent the Debtors receive a higher or better offer for the De Minimis Assets, the Debtors reserve the right to pursue a sale with an alternative buyer.

10.      Subject to entry of the Proposed Order, the Debtors propose to sell the De Minimis Assets (the "Sale") free and clear of all mortgages, liens, claims, interests and encumbrances (collectively, the "Liens").  The Debtors believe that the sale of the De Minimis

---

[3]      The laptops included in the De Minimis Assets were in storage at the Premises and largely unused by the Debtors or their employees.  These laptops, therefore, do not contain any personally identifiable or sensitive business information.

-4-

Assets will generate value for their estates from property that the Debtors would otherwise be

forced to abandon and, therefore, these De Minimis Asset sales are in the best interests of the

estates and their creditors.

## RELIEF REQUESTED

11.      The Debtors seek the entry of an order, in substantially the form of the Proposed

Order, authorizing them to (a) reject the M&G Polymers Office Lease effective as of the

Surrender Date, (b) sell the De Minimis Assets free and clear of all Liens and (c) abandon any

De Minimis Assets that remain unsold and left at the Premises as of the Surrender Date.

## BASIS FOR RELIEF

### A.      Rejection of the M&G Polymers Office Lease Is a Sound Exercise of the Debtors' Business Judgment

12.      Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the

court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a); *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*,

209 F.3d 291, 298 (3d Cir. 2000) (section 365 of the Bankruptcy Code "allows a trustee to

relieve the bankruptcy estate of burdensome agreements which have not been completely

performed").

13.      Courts routinely approve motions to reject unexpired leases upon a showing that

the debtor's decision to take such action will benefit the debtor's estate and is an exercise of

sound business judgment.  *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d

490, 492 (3d Cir. 1998); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *In re Armstrong World

Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the

business judgment of the debtor to determine whether the rejection of an . . . unexpired lease by

the debtor is appropriate under section 365(a) of the Bankruptcy Code.").

-5-

14.     Courts generally will not second-guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease, unless the decision is the product of bad faith, whim or caprice.  *See In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (applying a business judgment standard, absent a showing of bad faith, whim, or caprice)*; In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (same); *see also Summit Land Co. v. Allen* (*In re Summit Land. Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").  The standard merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Cor. (In re Sharon Steel Corp.),* 872 F.2d 36, 40 (3d Cir. 1989).

15.     The Debtors have determined that the M&G Polymers Office Lease is not necessary to the Debtors' continued operations or their contemplated sale process.  Requiring the Debtors to continue fulfilling their obligations under the M&G Polymers Office Lease after the Surrender Date would cause the Debtors to incur unnecessary administrative expenses at a time when they should be focused on maximizing the value of their assets.  Accordingly, the Debtors have determined, in the sound exercise of their reasoned business judgment, that the M&G Polymers Office Lease should be rejected effective as of the Surrender Date.

**B.     The Sale Is Reasonable and Appropriate**

1.     <u>The Proposed Sale of the De Minimis Assets Is Authorized by Section 363(b) of the Bankruptcy Code</u>

16.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not

specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See*, *e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980, at \*29 (Bankr. D. Del. Apr. 2, 2001).

17.     As noted above, the De Minimis Assets are currently used or stored at the Premises.  Because the Debtors are seeking to reject and surrender the M&G Polymers Office Lease as of the Surrender Date, the De Minimis Assets will no longer be necessary to the Debtors' ongoing operations.  By selling the De Minimis Assets now, rather than as part of their larger sale efforts, the Debtors will defray any storage, operational, carrying and other costs associated with moving or retaining the De Minimis Assets after the Surrender Date.  Further, the proceeds of the Sale will inure to the benefit of the Debtors' estates.  Accordingly, the Debtors believe that the expeditious sale of the De Minimis Assets is a reasonable exercise of their business judgment.

2.     <u>The Sale of the De Minimis Assets Free and Clear of all Liens Is Authorized by Section 363(f) of the Bankruptcy Code</u>

18.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

19.      The Debtors believe the Purchase Price exceeds the fair market value of the De Minimis Assets and propose that any party with a Lien on the De Minimis Assets shall have a corresponding security interest in the proceeds of the Sale.  Additionally, the Debtors believe that the only parties with Liens on the De Minimis Assets are (a) Control Empresarial de Capitales, S.A. De C.V. (the "DIP Lender"), (b) Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa ("Inbursa"), (c) DAK Americas, LLC ("DAK") and (d) Comerica Bank ("Comerica").   The DIP Lender, Inbursa and DAK have consented to the Sale of the De Minimis Assets free and clear of their Liens and the Debtors are working to obtain the consent of Comerica.  The Debtors intend to serve this Motion on all of their lenders and any other party known to the Debtors that could potentially assert a Lien on the De Minimis Assets. To the extent that any other party may assert a Lien on any De Minimis Asset, the Debtors propose that the absence of any objection to the entry of the order approving this Motion be deemed "consent" to any sales or transfers of the De Minimis Assets authorized pursuant to the Proposed Order within the meaning of section 363(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the Bankruptcy Code will be satisfied for any proposed sale or transfer of the De Minimis Assets free and clear of the Liens.

C.      **Abandoning any Remaining De Minimis Asset at the Premises Is Reasonable and Appropriate**

20.      In the event that there are unsold or transferred De Minimis Assets left at the Premises as of the Surrender Date, the Debtors request authority to abandon such assets as is, where is, and in accordance with section 554(a) of the Bankruptcy Code.  Section 554(a) provides that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).

21.     As of the Surrender Date, the Debtors will have (a) sold the De Minimis Assets or (b) removed any De Minimis Asset that justified the expense of moving it to another location. The Debtors believe that the costs associated with liquidating any De Minimis Asset that remains unsold and left at the Premises as of the Surrender Date, if any, will likely approach or exceed the value of such assets.  Accordingly, the Debtors believe that such assets are of inconsequential value to the Debtors' estates and should be abandoned as of the Surrender Date.

**D.     Claims Bar Date**

22.     The Landlord may seek to assert a rejection damage claim under section 502 of the Bankruptcy Code or other claims in connection with the rejection of the M&G Polymers Office Lease and must do so in accordance with any claims bar date set by the Court.  The Debtors will give notice of such bar date to the Landlord, in accordance with any orders of this Court.  Nothing in this Motion shall be deemed or construed to: (a) constitute an admission as to the validity or priority of any claim against the Debtors; and/or (b) constitute a waiver of the Debtors' rights to dispute any claim.

## WAIVER OF BANKRUPTCY RULE 6004(h)

23.     To successfully implement the sale of the De Minimis Assets, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).  Such a waiver will ensure that the Debtors are able to finalize any sale of De Minimis Assets contemporaneously with the Surrender Date.

## NOTICE

24.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware or order of the Court;

(d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its

counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple,

Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton

LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of

noticing;  (h) the Landlord; and (i) any known holder of a Lien.  The Debtors submit that no

other or further notice need be provided.

## NO PRIOR REQUEST

25.     No prior request for the relief sought herein has been made to this Court or any

other court.

NAI-1503325875v1

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order

and grant such other and further relief as may be appropriate.

Dated: January 11, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*_____
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:          ljones@pszjlaw.com
                    joneill@pszjlaw.com
                    jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306
Email:          sgreenberg@jonesday.com
                    scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:    (216) 586-7035
Facsimile:    (216) 579-0212
Email:          ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in
Possession

-11-