# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| M & G USA CORPORATION, *et al.*, | ) | Case No. 17-12307 (BLS) |
| | ) | |
| | ) | Hearing Date: 1/18/18 at 10:00 a.m. (ET) |
| | ) | Obj. Deadline: 1/10/18 at 4:00 p.m. (ET) |
| Debtor. | ) | |
| | ) | Re: Dkt No. 549 and 645 |

## REPLY IN SUPPORT OF WFS CONSTRUCTION SERVICES, LLC'S MOTION FOR MODIFICATION OF THE AUTOMATIC STAY

WFS Construction Services, LLC ("WFS"),[1] the holder of four (4) duly recorded mechanics' liens in the asserted aggregate amount of $24,402,693.09, hereby submits its Reply to the Debtors' Objection (the "Objection") to WFS's *Motion for Modification of the Automatic Stay to Permit a Pending Arbitration Proceeding to Continue to determine the Validity and Amount of WFS's Liens*, and respectfully states as follows:

### I. INTRODUCTION

The Debtors do not claim that the binding arbitration proceeding already pending in Houston before a panel of seasoned arbitrators with collectively over 100 years in Texas lien law is the wrong dispute resolution means to resolve with finality the amount or validity of WFS Liens. After all, the Debtors pre-petition contractually agreed to arbitrate all disputes and jointly picked the panel of arbitrators. Debtors, instead suggest WFS enter into non-binding mediation.

Respectfully, the Court should direct arbitration. Debtors and WFS already have tried to mediate their dispute and the Debtors freely acknowledge those efforts failed. The parties need to resolve their dispute as they contractually agreed to pre-petition; before a specialized tribunal with

---

[1] WFS does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

{00022140. }

rules governing discovery and the presentation of evidence and the authority of experienced arbiters to enter a binding award. The parties are free to settle at any time during the arbitration and the risk and uncertainty of an adverse ruling, not present in mediation, increases the likelihood of settlement.

Modifying the stay to allow WFS's claims to resume in arbitration will, in no manner, interfere with the principal goal of this Bankruptcy: the marketing and sale of the Corpus Christi plant. Debtors' Objection provides insufficient reason to justify denying WFS's Motion, all as set forth below.

## II. ARGUMENT

### A. DEBTORS HAVE FAILED TO SATISFY THEIR BURDEN TO SHOW GRANTING WFS' MOTION AT THIS TIME "WOULD SERIOUSLY JEOPARDIZE THE OBJECTIVES OF THE BANKRUPTCY CODE."

In its Motion, WFS set forth the applicable test for this Court when deciding if it should modify the automatic stay to allow a pending arbitration to proceed for a pre-petition claim based on Texas state mechanic's lien law. (Motion at pp. 6-7.) As stated in the Motion, applicable precedent states that when deciding if a disputed claim should be allowed to proceed in arbitration or by the bankruptcy court, this Court should yield to agreed-upon arbitration unless doing so "would seriously jeopardize the objectives of the [Bankruptcy] Code." *In re American Classic Voyages Co.*, 298 B.R. 222, 226 (D. Del. 2003) (quoting, with substitution, *Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155-1157 (3d Cir. 1989)); *see also Mintze v. Amer. Gen. Fin. Serv., Inc.*, 434 F.3d 222, 231 (3d Cir. 2006) (in deciding whether a case should proceed in arbitration or bankruptcy stating the focus is on "whether there is an inherent conflict between arbitration and the Bankruptcy Code"); *In re Northwestern Corp.*, 319 B.R. 68, 75-76 (D. Del. 2005).

Debtors, relying primarily on bankruptcy cases outside the Third Circuit (Objection ¶ 31), argue this Court should not apply the above-referenced test (referred to herein as the "*Hays* test") and should instead apply a traditional "balancing of the harms" factor test as articulated in *Izzarelli v. Rexene Products Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) in deciding whether to lift the stay. (*See* Objection ¶¶ 32-34.) Debtors imply the *Hays* test is only applicable when there is a motion to compel arbitration (in response to an adversary proceeding), and should not be applied when a creditor is seeking leave from the automatic stay to proceed with arbitration. (Objection, ¶¶ 30-34.) Debtors, however, offer no reasoning for why the *Hays* test should only be applied when evaluating if arbitration should be compelled in response to an adversary proceeding (and should not be applied when considering whether the automatic stay should be lifted to allow an agreed-upon arbitration to proceed).

In any event, as Debtors concede, in *American Classic* and *In re Northwestern Corp.* (both cases from this District), the *Hays* test was set forth as the applicable test, and both cases involved requests to lift the automatic stay to permit an arbitration to proceed to decide pre-petition contract claims (like WFS' claims). Consistent with these cases from this District, other Courts have held traditional "balancing test" factors are not even to be applied to motions like WFS's Motion which seeks stay relief to compel arbitration. *See, e.g., Cardali v. Gentile (In re Cardali),* 2010 WL

4791801, * 4-5 (Bankr. S.D.N..Y. Nov. 18, 2010); *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'Ship),* 277 B.R. 181, 204 (Bankr. S.D.N.Y. 2002).[2]

Undoubtedly, Debtors ask this Court to apply a more traditional factor test (and not the *Hays'* test) to shift the burden to WFS. Under the *Hays'* test, above, because of the strong Federal policy favoring arbitration, Debtors (not WFS) have the burden to show enforcing the arbitration clause, and allowing the arbitration to proceed, would jeopardize the objectives of the Bankruptcy Code. *In re Weinstock*, No. 96-31147DWS, Adv. No. 99-0056, 1999 WL 342764, *6 (Bankr. E.D. Pa. 1999) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987))

Debtors have not sustained the applicable burden under the *Hays* test.

The Debtors, in their Objection, do not directly make any arguments regarding how allowing the WFS Lien Action to proceed "seriously jeopardizes" the objectives of the Bankruptcy Code. Debtors, however, do argue they are entitled, under the Code, to a "breathing spell" and argue allowing the WFS Lien Action to proceed interferes with their breathing spell. (*See* Objection, ¶ 5.) Debtors - presumably referring to their Motion for Entry of an Order Establishing Lienholder Claim Settlement Procedures, Doc. No. 568 (Debtors' "Settlement Procedures") - claim they have "recently proposed procedures designed to facilitate the efficient and cost-effective settlement of lienholder claims." (Objection, ¶ 3.)[3] Debtors argue their proposed

---

[2] Debtors, on this point, also cite to two decisions from this Court. Debtors misleadingly claim "in the arbitration context" both these decisions "simply appl[ied] this jurisdiction's 'balance of harms' test . . .." (Objection ¶ 33.) But in neither did the Court find that an arbitration provision actually applied to the parties' dispute. *See In re Nortel Networks Corp.*, 445 B.R. 370, 375 (Bankr. D. Del. 2011) (holding the dispute was "outside the arbitration provision of the ASA"); *In re Abeinsa Holding, Inc.*, No. 16-10790, 2016 WL 5867039 (Bankr. D. Del. Oct. 6, 2016) (creditor sought to lift stay to pursue *litigation* against subsidiary; parent guaranty included an arbitration provision, but no claim was yet made on the guaranty). If a dispute is not within the scope of a valid arbitration provision, the *Hays'* analysis (from this Circuit) is inapplicable and a more traditional factor test should be applied. When a dispute is in the scope of an arbitration provision, however, as established in the authority cited above, this Court must consider the strong Federal policy in favor of arbitration and, as set forth in *Hays*, yield to arbitration unless Debtors show serious frustration of the purposes of the Bankruptcy Code.

[3] Debtors assert their proposed procedures "are designed to bring lienholders, including WFS, to the negotiating table in the near term." (Objection, ¶ 6.) Debtors claim WFS is taking a contrasting approach, asking for a "more protracted,

procedures will allow Debtors to focus on providing clarity regarding lien amounts (through settlement) which, according to Debtors, will "facilitate a more effective and successful sale process." (Objection, ¶ 3.) Debtors posit that lifting the automatic stay at this time would "rob the Debtors of the opportunity to settle lienholder claims such as WFS' in the near term" (Objection, ¶ 5), implying that an Order lifting the stay (because it will thwart opportunities for settlement with lien claimants) will interrupt the sale process.

Debtors' statements are inaccurate and misleading, and Debtors fail to show that allowing the WFS Lien Action (arbitration) to proceed would, in fact, frustrate any purpose of the Bankruptcy Code, all as set forth below.

> **1.    Debtors have not proposed any procedures to expedite resolution of liens like the WFS Liens or for the more efficient resolution of lien claims.**

First, it is inaccurate to state Debtors have proposed any procedures that are designed to expedite settlement with lien claimants. Debtors have proposed procedures to expedite court approval of settlements, but, for claims like WFS's Liens, Debtors have not proposed any procedures to help facilitate the settlements themselves. (*See generally* Debtors' Settlement Procedures Motion, Doc. No. 568.)[4]

---

adversarial and costly process (i.e. arbitration) to resolve WFS's claims . . .." (Objection, ¶ 3.) As set forth herein, Debtors Procedures do not propose any particular process to reach resolution of WFS's Liens. That being stated, even if Debtors proposed specific non-binding resolution procedures like informal discussions or mediation for WFS's claims, it is inaccurate to claim that Debtors' procedures would be faster and more efficient at resolving claims. Arbitration, as WFS seeks (and as Debtors have agreed upon), is binding, resulting in final resolution WFS's claims. Non-binding means of resolution (like mediation) offer no guaranty of resolution, and thus, pursuing those means as a precondition to resuming any arbitration could simply result in a more protracted process – not more efficient resolution as Debtors claim. As stated, WFS and Debtors have already tried non-binding dispute resolution to no avail. There is no information suggesting the parties will be more successful in resolving their claims through non-binding means now.

[4] Debtors' Settlement Procedures do include a forced mediation procedure for other lien claimants with claims between $250,000 and $3,000,000. (Settlement Procedures at p.7 at (a)(ii)4.) But the Procedures provide no timeline for the occurrence of any such mediations; because of the lack of the timeline and because of the forced nature of the

WFS and Debtors have already attempted informal resolution of WFS's significant lien claim to no avail. As Debtors concede, WFS and Debtors' informal negotiations and mediation pertaining to the WFS Liens were not successful. (Declaration of Melinda Riseden, ECF Doc. 645-1 ("Riseden Decl."), ¶ 10.) Since the unsuccessful mediation, no settlement offers have been presented by Debtors. Forcing WFS to once more to participate in a non-binding process without rules governing discovery and presentation of testimony is not the solution. Of course, WFS is willing to pursue settlement discussions in the context of arbitration. But if the parties do not settle along the way, at least they will have something to show for their efforts: a binding decision by their chosen arbitrators.

In Mrs. Riseden's Declaration, she states "before WFS filed the Motion, the Debtors reached out to WFS concerning settlement discussions . . .." (Riseden Decl., ¶ 15.) Notably absent from Mrs. Riseden's Declaration, however, is any statement that any substantive settlement conversations occurred when Debtors "reached out" or any statements regarding any conversations occurring since that time (which would show Debtors were at least trying to resolve claims like WFS's claims). In fact, the "reaching out" consisted of a single phone call to identify the correct attorney with whom to have settlement conversations in the future. In that call Debtors' counsel conveyed no settlement offer nor did it provide any concrete timeline for settlement efforts. The phone call occurred on December 22, 2017, more than three (3) weeks ago. Debtors ask this Court for "breathing" room to resolve lien claims, but provide no evidence showing they have taken any legitimate steps in the short term to resolve any lien claims to add the clarity regarding lien amounts, which Debtors claim will help with the sale of Debtors' assets.

---

mediation, it remains to be seen whether Debtors' Procedures, in this regard, will possibly help in bringing about timely resolution of lien claims even for those other lien claimants.

## 2. The WFS Lien Action will not interfere with the sale process.

In any event, even if Debtors had proposed concrete procedures for expeditiously resolving the lien claims, or were otherwise actively pursuing settlement of any lien claims, it is not accurate to argue (implicitly or otherwise) that proceeding with the WFS Lien Action at this time will interfere with the sale process (thus, arguably frustrating the purpose of the Bankruptcy Code). Debtors are selling their assets, they are not reorganizing. Debtors have hired separate professionals to assist in the sale, and separate counsel to assist in resolving the lien claims. Allowing the WFS Lien Action to proceed at this time, while requiring separate dedicated lien counsel's attention, will not impact the sale being handled by separate designated professionals.

More importantly, an immediate lift of the stay by this Court would not result in immediate heavy litigation activity in the WFS Lien Action in the short term which would distract any sale or settlement activity. Debtors' filing of this Case completely derailed any hopes that WFS would have its claims heard in May, 2018, as originally scheduled with the AAA. If the stay is now lifted, WFS and Debtors' counsel will, as an initial matter, need to conference with arbitrators Javore, Yungblut and Gooch to determine their availability for hearing. While WFS will ask for a prompt hearing, it is unlikely that any hearing will be able to be scheduled until late Summer, 2018 (or after). The parties will then set discovery and other deadlines (*e.g.* for exchange of exhibits) off of the new hearing date. Significant litigation activity will not occur in advance of the March 8, 2018 auction date (now less than two months away). Debtors will not be "robbed" of their ability to focus on the sale or negotiation of any lien claims in the "near term." (*See* Objection, ¶ 5.)

Importantly, even if the WFS Lien Action could somehow interfere with settlement efforts in the near term, Debtors wholly fail to explain how interfering with those settlement efforts would

actually affect the sale process. (*See* Objection, ¶ 3) Settling liens like the WFS Liens will only affect what portion of the sales proceeds should be disbursed to WFS and other creditors. It does not affect the value of the Corpus Christi Plant nor the price that a third party is willing to pay for the Plant. Debtors' arguments that granting WFS's Motion could somehow affect the intended "breathing spell" and the sale of its assets are wholly without merit.

B.   **EVEN APPLYING FACTOR TESTS PERTAINING TO WHETHER "CAUSE" EXISTS TO LIFT THE AUTOMATIC STAY, THIS COURT SHOULD GRANT THE MOTION.**

As set forth above and in the Motion, the focus of the Court's inquiry, for WFS's Motion, is whether lifting the stay to allow the arbitration to proceed seriously jeopardizes the objectives of the Bankruptcy Code. Factors (like those discussed in *Rexene* and *Sonnax*) are not the focus. That being said, as WFS set forth in its Motion, even if the Court applies applicable factor tests in assessing whether to lift the automatic stay, the Court should conclude that "cause" exists to allow the WFS Lien Action to proceed.

In its Motion, Debtor chastises WFS for not framing its Motion around the three more general *Rexene* factors, but instead discussing the more elaborate *Sonnax* factors. (*See* Objection at 10.) Notably, the Third Circuit has cited, *with approval*, a case applying the 12 *Sonnax* factors when evaluating if "cause" exists to lift the automatic stay. *Baldino v. Wilson*, 116 F.3d 87, (3d Cir. 1997) (decided after *Rexene*, not applying the *Rexene* factors, but stating its approach is "consistent" with *Metz v. Poughkeepsie Sav. Bank (In re Metz)*, 165 B.R. 769, 711 (Bankr. E.D. N.Y. 1994), where *Sonnax* factors were applied). The Third Circuit has not, to date, apparently adopted the *Rexene* factor test.

In any event, Debtors' criticism is largely academic. The *Rexene* and *Sonnax* factors include similar considerations, and neither purport to be an exhaustive list of factors this Court can

consider when determining if the "totality of the circumstances" justifies lifting the stay to allow claim resolution to proceed in a different forum. Both the *Rexene* and *Sonnax* factors focus on the relative hardship and prejudice to the parties. The *Rexene* factors expressly includes whether the creditor has "a probability of prevailing on the merits" as a relevant factor. *Izzarelli v. Rexene Prods. Corp.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Courts discussing that factor, however, have held the creditor need only show a "slight" chance of success for this factor to weigh in the creditor's favor. *American Airlines, Inc. v. Continental Airlines, Inc.*, 152 B.R. 420, 425 (D. Del. 1993); *see also Rexene Products*, 141 B.R. at 578.

As shown, below, the *Rexene* factors, like the *Sonnax* factors (discussed in WFS's Motion) support a finding that "cause" exists to lift the automatic stay.

1. **Debtors would not be prejudiced by this Court granting WFS's Motion (1st *Rexene* Factor).**

Debtors argue granting WFS's Motion will prejudice Debtors because "resuming the Arbitration now (as opposed to enabling WFS and the Debtor Defendants to resolve their dispute via Debtors' purported Settlement Procedures) would significantly delay the resolution of WFS's breach of contract claims . . .." (Objection, ¶ 12.) Again, <u>there are no means to accomplish settlement of lien claims like WFS's Liens established by the Debtors' purported Settlement Procedures</u>. There is absolutely no timeline for resolution or promise of resolution by any date certain. And again, even if Debtors proposed the use of informal settlement meetings or mediations for claims like WFS's Liens, those non-binding means will not shorten resolution of WFS's Liens if, as has already occurred, the parties are unable to reach a settlement through their discussions.

It is disingenuous to suggest that mandating use of Debtors proposed "Procedures," alone, which include no timeline for resolution of liens like WFS's Liens, will be more expeditious than the immediate resumption of a formal arbitration, administered by the AAA, resulting in a final hearing according to AAA rules (even if that hearing occurs later in 2018), and a binding award. Again, if this Court grants WFS's Motion, it does not foreclose Debtors from actually engaging WFS in other resolution discussions (as is often done during litigation or arbitration) if Debtors are, as they state, concerned about the timing of resolution.

Debtors also claim prejudice because of the possibility that other lien claimants will, like WFS, seek leave from the stay to pursue their claims in arbitration. (Objection, ¶ 24.) Debtors argue such a floodgate of claims would greatly prejudice Debtors "at a critical time in their efforts to effect a successful sale process . . .." (Objection, ¶ 25.) WFS will not speculate as to what other creditors may do relating to their claims. As discussed *supra*, however, allowing the WFS Lien Action to proceed (and other lien actions for that matter) will not interfere with the sale process, especially considering that the sale is now less than two (2) months away. Again, by the time any stay is lifted there would be insufficient time for significant litigation activity to occur before the March 8, 2018 auction which activity could even possibly interfere with any sale process. Further, as stated, Debtors have independent counsel (not apparently involved in the sale process) retained to assist in resolving lien claims so it remains to be seen how any litigation or arbitration regarding lien claims would adversely affect the sale process.

2. **The relative hardships of the parties (2nd *Rexene* Factor).**

While Debtors will suffer little prejudice if this Court lifts the stay, WFS will suffer significant hardship if the stay continues, which hardship considerably outweighs any prejudice to Debtors. As all set forth in WFS's verified lien statements (*see* Motion at Exhs. C, D, E, and F),

WFS's last work on the Corpus Christi Plant was in September, 2016. WFS lien claims seek to recover the significant labor and material costs WFS incurred in providing civil concrete work and structural steel erection, much of which could have been avoided had WFS's work not been delayed and interfered with by Debtors. WFS expended significant funds on the Corpus Christi Plant without reimbursement from Debtors, which expenditure devastated WFS's business. Years later, WFS has still not been paid Millions for its work.

As of March (or shortly thereafter), the sale will be consummated, leaving the various creditors to argue about proper disbursement of the proceeds, with no possibility of interference with the primary objective of this bankruptcy – the sale of Debtors' assets. As stated, Debtors have proposed no timeline for resolving legitimate lien claims like WFS's Liens nor shown any serious interest in pursuing settlement of WFS's Liens at this time. Even if it were true that Debtors were going to be actively seeking settlements with other lien claimants (through forced mediation or other dispute resolution), WFS has made no agreement to have its disputes resolved by any means other than arbitration, and it is inequitable to suggest that resolution of WFS' Liens should be stayed indefinitely while other contractors' claims are resolved. If the Court allows the stay of WFS's Lien Action to continue much longer, then additional months will pass without giving WFS an opportunity to even secure a hearing date with the three construction arbitrators jointly selected to resolve the WFS Liens. Denying the Motion will, because of practical scheduling considerations, likely push resolution of the WFS Liens into 2019, years after WFS completed its work on Debtors' plant.

As there is no hardship to Debtors, the significant hardship to WFS set forth, above, is sufficient to show "cause" to lift the stay, even if this Court was to apply a *Rexene* factor test.

3. **Whether WFS has shown a probability of success on the merits (3d *Rexene* Factor).**

As to the third *Rexene* factor, again, WFS (even if a *Rexene* factor test was determinative) need only show "a slight probability of success on the merits" for the third factor to weigh in its favor. *In re Continental Airlines*, 152 B.R. at 425; *see also Rexene Products*, 141 B.R. at 578.

Debtors misleadingly claim that WFS filed no evidence supporting the validity of its Lien claims with its Motion. (Objection, ¶ 27.) In fact, WFS filed all four of its Liens as exhibits to its Motion. The Liens are affidavits, duly sworn to in accordance with Texas law. All set forth the amounts owed WFS by Debtors for the significant labor, material, and other work costs that WFS incurred in connection with its work at the Corpus Christi Plant. The WFS Liens are affirmative statements, under oath, that the amounts set forth in the liens are due WFS and are "just and correct and all just and lawful offsets, payments and credits known to the Affiant have been allowed." The Liens certainly provide sufficient evidence to show WFS has a "slight" probability of success, especially in the absence of any evidence showing a strong defense to WFS's claims.

In that regard, to date, Debtors have provided WFS with absolutely no evidence that they have *any* meritorious defenses to WFS's claims.[5] In their Objection, Debtors do not provide competent evidence supporting any defense, but instead submit the statement of one of Debtors' attorneys (who lacks sufficient personal knowledge to support defenses by Debtors, including the purported lack of contemporaneous documentation regarding extra charges). (Objection, ¶¶ 27 & 13.) Importantly, however, even Mrs. Riseden does not posit that WFS has no (or even a low) chance of succeeding on the merits. To the contrary, Mrs. Riseden (on Debtors' behalf) essentially

---

[5] Debtors make the nonsensical statement in their Objection that "issues of privilege and confidentiality" prevent them from providing any more information regarding purported defenses to WFS's claims. (Objection, ¶ 28.) This has been consistent with Debtors behavior to date, advancing no defenses with any merit, yet refusing payment of WFS's legitimate claims.

concedes WFS's claim for *$5,112,840.10* for contractual retainage and undisputed invoices because no defense to that claim amount is advanced in her Declaration.

Significant documentation regarding WFS's entitlement to payment was informally produced to Debtors' counsel before WFS and Debtors attempted to mediate WFS's claims. In addition, Debtors have access to their own witnesses and documents. Notwithstanding their possession of significant information regarding WFS's claims and work, Debtors (through Mrs. Riseden) advance a single purported defense to a portion of WFS's claim. Mrs. Riseden states Debtors believe WFS cannot recover for $19,289,852.99 in labor, material, and other charges incurred because, according to Mrs. Riseden (or information provided by Debtors (it is unclear)), "there do not appear to be any contemporary requests for price adjustment" for these significant extra costs WFS incurred which they claim "creates a contractual hurdle." (Riseden Decl., ¶ 9.) Mrs. Riseden makes this statement regarding the claimed lack of documentation while conceding that, to proceed with arbitration, Debtors need to further investigate WFS' claims, including reviewing the substantial project files that exist. (Riseden Decl., ¶ 13.)

Suffice it to say that, when this case proceeds, WFS will be able to present the arbitrators with substantial documentation showing Debtors' awareness that WFS was incurring extra costs, that the costs were being caused by Debtors, and that WFS was going to seek compensation for any costs incurred above unit prices because of Debtors' delays and work interferences. But even if WFS did not have such documentation, this defense by Debtors, is not a valid legal "hurdle" to WFS's claims. Under applicable Texas law, an owner or owner's agent like Debtors relinquish their contractual procedural rights concerning change orders and claims for additional costs when

they have breached the contracts, like Debtors did here.[6] *Shintech Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144, 151 (Tex. App. (Houston) 1985). In Texas, owners remain responsible for the value of work provided even without contemporaneous notice of request for extra payment (even if purportedly required in the contract), especially when, like occurred on this Project, the value of the work increased significantly because of poor owner management and other causes completely within the owners' control. *Id.*

"Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where […] the decision-making process should be relegated to bodies other than [the bankruptcy] court." *In re Fonseca v. Philadelphia Housing Authority*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990). Here, Debtors <u>who have only advanced one purported defense</u> to WFS's substantial claims (and whose defense is without merit under Texas law) have asserted no "strong defense."

4.  **Replies to Debtors' arguments that the *Sonnax* factors weigh in favor of enforcing the automatic stay.**

Debtors, in their Objection, also claim the *Sonnax* factors weigh in favor of enforcing the automatic stay. (Objection, ¶ 29.) Debtors are incorrect, however, as set forth in the Motion, and as set forth below. This Reply will address the *Sonnax* factors in the same order addressed by Debtors.

---

[6] Debtors early and often, breached the parties' contracts by failing to provide complete drawings in a timely fashion, by failing to pay WFS timely, and by interfering with WFS's work (through other contractors or otherwise). In Texas, the failure of an owner to provide correct or adequate plans and specifications constitutes a breach of the contract (when the contractor has not waived claims relating to problems with the plans). *See City of Baytown v. Bayshore Constructors, Inc.*, 615 S.W.2d 792, 793 (Tex. App. (Houston) 1980); *see also Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 723 (5th Cir. 2005). In addition, it is a breach of the contract when an owner interferes with a contractor's ability to perform its work (which would include scheduling other contractors' work to occur in the same location). *See Case Corp. v. Hi-Class Business Systems of America*, 184 S.W.3d 760, 770 (Tex. App. (Dallas) 2005) ("A duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract. If applicable, this implied duty requires that a party to a contract may not hinder, prevent, or interfere with another party's ability to perform its duties under the contract.")

- *The interests of judicial economy and the expeditious and economical resolution of litigation.*

    Debtors claim this factor weighs in favor of the stay because Debtors want to pursue their purported Settlement Procedures, which Debtors claim will avoid litigation expenses and more efficiently resolve claims. As set forth, above, however, Debtors' Procedures do not provide any binding mechanism to actually get lienholders like WFS and Debtors to reach a settlement, or any firm timeline for any resolution of any lien claims, and WFS and Debtors have already tried to resolve their claims (unsuccessfully) through informal negotiations and mediation. Thus the interests of judicial economy would be advanced by this Court lifting the stay and permitting the WFS Lien Action to proceed to a definitive AAA arbitration where firm deadlines would be established and a timeline set for resolving the WFS Liens.

- *Whether the parties are ready for trial in the other proceeding.*

    Debtors claim this factor weighs in their favor, downplaying the progression of the WFS Lien Action. While, admittedly, additional work needs to be done prior to any arbitration hearing, it is incorrect to claim the arbitration is only in its "initial stages." (Riseden Decl., ¶ 12.) The arbitration was filed on April 13, 2017. Over 6 months had passed since the filing when the automatic stay was imposed (with only just over 7 months remaining until the May, 2018, hearing). In the time after WFS filed its demand, much internal work was performed by WFS reviewing documents for production and assembling evidence. In addition, as stated in the Motion (and not contested by Debtors), the parties were days away from a production deadline, and jointly spent time selecting a panel and coming to procedural agreements to streamline the arbitration process. One of the procedural agreements was to limit the deposition time for each side to 30 hours of total time (so there was not going to be significant depositions following document productions contrary to Debtors' implication). Because of the more advanced state of the pending WFS Lien Action, WFS believes this factor weighs in favor of lifting the automatic stay.

- *Lack of any connection with or interference with the bankruptcy case.*

    This factor weighs in favor of lifting the automatic stay. Debtors have wholly failed to explain how proceeding with the WFS Lien Action at this time will interfere with the sale of its assets, scheduled to occur less than two months from now.

- *Impact of the stay on the parties and the balance of the harms.*

    As set forth above, and contrary to Debtor's suggestions, this factor weighs in favor of lifting the automatic stay.

- *Whether litigation in another forum would prejudice the interests of other creditors.*

Debtors argue the interests of other creditors would be better protected if WFS's claims were decided in this Court. Again, as set forth in the Motion, the need to protect other creditors' objections to WFS's claims simply because WFS is seeking to encumber debtor property is insufficient to override the strong Federal policy favoring arbitration of claims. *See In re The Consolidated FGH Liquidating Trust*, 419 B.R. at 649 (lifting stay in favor of arbitration and finding that "payment of [claimant's] claim is not considered by the Court, in and of itself, as prejudicial to other creditors, even though it may reduce a potential distribution to them.")

- *Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action.*

    Debtors argue this factor weighs against WFS's Motion, but, in Debtors' argument, Debtors focus entirely on this Court's ability to decide WFS's Lien claim. WFS does not dispute the ability of this Court. The focus of the factor, however, is whether a separate dedicated tribunal with specialized experience has been established. Debtors cannot contest that such a separate panel exists for the WFS Lien Action. Nor can Debtors' claim that panel lacks sufficient experience as it was selected jointly by agreement among Debtors and WFS.

- *Whether relief would result in a partial or complete resolution of the issues.*

    As set forth in WFS's Motion (Motion at 9.), this factor ("factor (a)") weighs in favor of lifting the automatic stay.

### III. CONCLUSION

Notwithstanding any of the statements in Debtors' Objection, "cause" exists to lift the stay and allow the WFS Lien Action to proceed *at this time*, especially considering the strong Federal policy in favor of arbitration. Debtors filed this case in October, 2017, and have received a "breathing spell." Debtors, not WFS, have the burden to show that allowing the WFS Lien Action to proceed would seriously impact the objectives of the Bankruptcy Code. Debtors have failed to provide any evidence supporting any such claim. Under the applicable test set forth by the Third Circuit in *Hays*, this Court should yield to arbitration, and grant WFS's Motion. Debtors have failed to satisfy their burden to show allowing the arbitration to proceed will run afoul of the Bankruptcy Code.

**WHEREFORE**, WFS requests the entry of an Order (1) modifying the automatic stay of Section 362(a) for cause shown; (2) authorizing WFS to proceed with the WFS Lien Action; (3) waiving the 14 day stay of Fed. R. Bankr. P. 4001 and all other applicable stays; and (4) granting such other and further relief the Court deems just and proper. Alternatively, if Debtors file any objection to WFS's Liens, WFS asks for an Order abstaining from hearing said objections, and instead deferring to the arbitrators in Texas.

Dated: January 15, 2018.

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

By: *Frederick B. Rosner*
Frederick B. Rosner (#3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: 302-777-1111
rosner@teamrosner.com

-and-

LEWIS RICE LLC
Joseph J. Trad, #32540
Jeremy P. Brummond #50940
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7600
Facsimile: (314) 612-7635
jtrad@lewisrice.com
jbrummond@lewisrice.com

*Counsel for WFS Construction Services, LLC*