# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| | (Jointly Administered) |
| Debtors. | **Objection Date: TBD**<br>**Hearing Date: TBD** |

## MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR ENTRY OF AN ORDER (I) GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE, SETTLE AND RECOVER CERTAIN CAUSES OF ACTION AGAINST DAK AMERICAS LLC ON BEHALF OF DEBTORS' ESTATES TO CHALLENGE AND RECHARACTERIZE ALLEGED LIENS AND RELATED PAYMENTS AND (II) TO EXTEND TIME TO TAKE SUCH ACTION PURSUANT LOCAL BANKRUPTCY RULE 9006-2

Certain construction lien[2] claimants (collectively, the "Construction Lienholder Group"),[3] by and through their undersigned counsel, hereby file this Motion (the "Standing Motion") for entry of an order, to the extent necessary, granting them leave, standing and authority to commence, prosecute, settle and recover certain causes of action against DAK Americas LLC on behalf of the above-captioned debtors' (the

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals, S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The term "construction lien" is intended to encompass all mechanic's, contractors' or materialman's liens arising under and pursuant to Texas property law.

[3] The members of the Construction Lienholder Group are (i) Apache Industrial, Services, Inc., (ii) Arc Energy Services, Inc., (iii) Axis Industrial Services, LLC, (iv) Bay Ltd, (v) CCC group, Inc., (vi) Dawkins On-Site Concrete, LLC, (vii) Fagioli, Inc., (viii) Garrett Mechanical, Inc. (ix) TCI Business Capital as assignee of Integrity Mechanical Specialists, (x) Lexicon, Inc., (xi) Lion Point Capital, (xii) MEITEC, Inc., (xiii) Mirage Industrial Group, LLC, (xiv) MMR Constructors, Inc., (xv) Montcalm USA, Inc. (xvi) N&A Project Management USA, Inc., (xvii) Repcon, Inc., (xviii) SimplexGrinnell, LP, (xix) Sunbelt Rentals, Inc., (xx) TNT Crane & Rigging Inc., (xxi) WFS Construction Company LLC, and (xxii) Wholesale Electric Supply of Houston, Inc.

"Debtors") estates in order to challenge and recharacterize alleged liens and related payments and to extend time to take such action pursuant to Local Rule 9006-2.

The purpose of the Standing Motion is to permit the Construction Lienholders Group to avoid certain liens alleged to be held by DAK Americas LLC together with any of its successors and assigns (collectively, "DAK"), and to recharacterize any payments relating thereto as improper payments on a pre-petition unsecured debt (together, the "Lien Challenge"). In support of the Standing Motion, the Construction Lienholder Group respectfully states as follows:

**Introduction**

1. On or about May 20, 2015, DAK entered into a capacity reservation agreement (the "Capacity Reserve Agreement") with certain Debtors to provide the Debtors with financing in connection with the Debtors' efforts to build a vertically integrated PTA/PET plant in Corpus Christi, Texas (the "Corpus Christi Plant"). Approximately, nineteen months later, the Debtors still had not completed construction of the Corpus Christi Plant and the Debtors had not repaid DAK on account of the funds advanced under the Capacity Reserve Agreement.

2. On December 23, 2016, the Debtors executed and allowed DAK to file a Subordinated Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing (the "DAK Deed of Trust"),[4] which purports to grant to DAK a valid, perfected and enforceable junior lien against certain assets of debtor, as grantor, M & G Resins USA, LLC ("M & G Resins"). The DAK Deed of Trust was recorded with the County Clerk of Nueces County, Texas

---

[4] The DAK Deed of Trust is referred to as the "Pre-Petition Second Lien Mortgage" in the Final DIP Order.

2

9958916/3

on December 27, 2016 to secure certain Debtors' obligations arising under the pre-existing Capacity Reservation Agreement.

3.  Notwithstanding that DAK provided financing to the Debtors on an unsecured basis more than a year and a half prior to the DAK Deed of Trust, as part of their agreement for postpetition financing, the Debtors have stipulated that DAK has a valid, perfected, enforceable and unavoidable junior lien against certain assets of the Debtors. Accordingly, the Debtors have thereby waived their right to bring any action against DAK for the avoidance of the perfection of its security interest in the Debtors' assets.

4.  There is no dispute that valid, perfected and unavoidable mechanics' or materialmen's liens are senior to DAK's interest as alleged Pre-Petition Second Lien Secured Party (a defined term under the debtor-in-possession loan agreement, Docket No. 479, Annex A). Nor is anything in this Motion or the underlying complaint intended to address the issues of relative priority of liens among DAK, the construction lienholders or any other party.

5.  The Construction Lienholder Group expects that the Unsecured Creditors Committee will bring an action to avoid DAK's liens. The Construction Lienholder Group is filing this motion within the challenge period provided by the Final DIP Order, to (i) extend the deadline to bring a Lien Challenge seven business days after the Unsecured Creditors Committee's Challenge Deadline, and (ii) authorize the Construction Lienholder Group to bring and prosecute an action to avoid DAK's liens on the Corpus Christi Plant based upon a fraudulent conveyance in the event that the Unsecured Creditors Committee does not bring such an action.

**Jurisdiction**

6. This Court has jurisdiction to consider the Standing Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Standing Motion is a core proceeding under 28 U.S.C. § 157(b), and particularly 28 U.S.C. § 157(b)(2)(K).

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 1109(b) of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") governing contested matters. The motion to extend the Challenge Deadline is made pursuant to Bankruptcy Rule 9006 and Local Rule 9006-2.

**Background**

8. According to the Debtors, in April 2013, the Debtors began construction the Corpus Christi Plant owned by debtor M & G Resins. <u>See</u> Declaration of Dennis Stogsdill in Support of First Day Pleading, Docket No. 3, ¶ 9. Upon information and belief, construction of the Corpus Christi Plant initially was expected to be completed in December 2015, however the construction ceased prior to October 24, 2017 at only 85% complete.

**Prepetition Security Interests in the Corpus Christi Plant**

9. To date, more than $250 million of construction liens have been asserted against the Corpus Christi Plant, of which more than $191 million are claims asserted by members of the Construction Lienholder Group.

10. On March 21, 2013, Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financier ("<u>Inbursa</u>") entered into a loan agreement in the amount of $250 million with M & G Resins (the "<u>Inbursa Loan Agreement</u>"), and Deed of Trust, Assignment of

4

Rents, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing was recorded on March 22, 2013 (the "Inbursa Deed of Trust"). Pursuant to the Inbursa Loan Agreement, Inbursa provided an advance of $250 million to M&G Resins for the construction of the Corpus Christi Plant. On or about September 2, 2016, pursuant to the Second Amendment to the Inbursa Loan Agreement, Inbursa arranged to make a second advance totaling $140 million. On or about May 4, 2017, Inbursa arranged to make a third advance to the Debtors totaling $40 million.

11. On May 20, 2015, DAK entered into the Capacity Reservation Agreement with debtors M & G USA Corporation and M & G Resins. By and through the Capacity Reserve Agreement, DAK agreed to provide unsecured funding to the Debtors in the form of upfront money in the amount of $350 million divided in installments to be paid upon fulfillment of certain milestones, for the purpose of purchasing future product. A true and correct copy of the 5/20/15 Corpus Christi Capacity Reservation Agreement is attached hereto as Exhibit A.[5]

12. On November 10, 2015, the parties entered into a First Amendment to the Corpus Christi Capacity Reservation Agreement, which provided for non-monetary amendments of the Capacity Reservation Agreement. A true and correct copy of the 11/10/15 First Amendment to the Corpus Christi Capacity Reservation Agreement is attached hereto as Exhibit B.

13. On December 7, 2015, the parties entered into a Second Amendment to the Corpus Christi Capacity Reservation Agreement which, among other things, increased the amount of the reservation for DAK and in exchange for the increases, DAK

---

[5] The Exhibits attached hereto are subject to a motion to seal, which is being filed contemporaneously herewith.

agreed to provide an additional $85 million in upfront unsecured money, so that the "Upfront Amount" was increased to a sum equal to $435 million. A true and correct copy of the Second Amendment to the Corpus Christi Capacity Reservation Agreement is attached hereto as Exhibit C.

14. On December 23, 2016, the parties entered into a Third Amendment to the Corpus Christi Capacity Reservation Agreement, which states among other things, that the Upfront Amount did not increase, but in the corresponding letter agreement, dated May 27, 2016, states that the parties failed to meet the requisite milestones. A true and correct copy of the Third Amendment to the Corpus Christi Capacity Reservation Agreement is attached hereto as Exhibit D.

15. On December 27, 2016 – more than *nineteen months* after providing the initial $350 million in unsecured debt under the Capacity Reserve Agreement and more than *twelve months* after providing another $85 million in unsecured debt, the DAK Deed of Trust was recorded with the Clerk's Office of Nueces County, Texas, which purported to secure the obligations arising under the Capacity Reserve Agreement with including the Corpus Christi Plant against assets of M & G Resins. A true and correct copy of the DAK Deed of Trust is attached hereto as Exhibit E.

16. There has been no judicial determination as to the relative priority of the secured claims of Inbursa, DAK, and the construction lienholders and nothing in this motion is intended to determine the issue of relative priority.

### The Debtors' Bankruptcy Filings

17. On October 24, 2017, M & G Polymers USA, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 30, 2017 (the

"Petition Date"), the other Debtors commenced these chapter 11 cases (together with the chapter 11 case of M & G Polymers, the "Cases").

18. On November 13, 2017, the United States Trustee appointed the official committee of unsecured creditors (the "Unsecured Creditors Committee"). No construction lienholders serve – or were invited to serve – as members of the Unsecured Creditors Committee.

### The Debtors' Financing and Bid Procedures Motions

19. On October 31, 2017, the Debtors filed a Motion to Approve Postpetition Financing [Docket No. 14] (the "DIP Motion"). By and through the DIP Motion, the Debtors sought, among other things, authority to borrow and use in excess of $100 million, which included a $6 million roll up of a September 2017 advance payment, and payment of certain fees and expenses including DAK's fees as purported Pre-Petition Second Lien Secured Party.

20. Among other things, by the DIP Motion, DAK required the Debtors to stipulate to the legal, valid, perfected, binding, and enforceable obligations of DAK's liens. The Debtors were also prohibited from bringing a Challenge to DAK's alleged security interest.

21. On December 6, 2017, the Construction Lienholder Group filed an objection to the DIP Motion [Docket No. 380]. Following hearings on December 11 and 12, 2017 (the "December Hearing"), the Debtors and Construction Lienholder Group were able to resolve a significant number of issues raised by the Construction Lienholder Group in connection with the DIP Motion. Significantly, following the December Hearing, the Court entered its final Order on the DIP Motion (the "Final DIP Order") [Docket No. 479], which included language that:

> Nothing in the DIP Loan Documents or the DIP Financing Orders (as defined in the DIP Loan Agreement) shall: (a) prejudice the rights of any party in interest to challenge the validity, priority, perfection, extent or amount of any lien or security interest that, if found to be valid, enforceable, non-revocable and perfected, would constitute a Senior Prior Lien; or (b) preclude the holders of obligations that they assert are secured by a Senior Prior Lien from making any arguments in favor of the validity, enforceability or non-avoidability of such lien.

See Final DIP Order, pg. 37, n. 14; see also, Final DIP Order pg. 5, n. 5 (stating that nothing in the Final Order is intended to determine the relative priorities of the Corpus Christi liens). Accordingly, there is no deadline for an action to commence a determination as to the relative priority of the liens of the Construction Lienholders and parties claiming a lien in the same assets.

22. The Final DIP Order further provides that:

> Each Debtor acknowledges and stipulates that the liens and claims, which claims are secured, arising in connection with the Pre-Petition Second Lien Obligations are due and owing to the Pre-Petition Second Lien Secured Party, without any defense, offset, recoupment or counterclaim of any kind; the Pre-Petition Second Lien Obligations constitute the legal, valid, perfected, binding, and enforceable obligations of each Pre-Petition Second Lien Obligor as and to the extent provided in the Pre-Petition Second Lien Documents, enforceable in accordance with the terms of the Pre-Petition Second Lien Documents; and none of the Pre-Petition Second Lien Obligations or any payments made to the Pre-Petition Second Lien Secured Party or applied to the obligations owing under any Pre-Petition Second Lien Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or other claim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, other than pursuant to the Amended & Restated Subordination Agreement, and each Debtor further acknowledges and stipulates that no claim or cause of action exists under or related to the Pre-Petition Second Lien Documents against the Pre-Petition Second Lien Secured Party or its respective officers, directors, employees, agents, attorneys, representatives, subsidiaries, affiliates or shareholders (in each case, in their respective capacities as such).

Final DIP Order at ¶B(vi). Accordingly, by its stipulation, the Debtors cannot bring an action to avoid the liens of DAK.

8

23. The Final DIP Order also sets out two different Challenge Deadlines (as that term is defined therein). The first, for a party with standing other than the Unsecured Creditors Committee is January 16, 2018. The second deadline, for the Unsecured Creditors Committee is February 1, 2018.

24. Given that the Debtors have waived any right to challenge the liens in question, the Construction Lienholder Group submits that it would be futile to ask the Debtors to bring the Lien Challenge prior to seeking this Court's approval of standing. Counsel for the Construction Lienholder Group has attempted to confer with counsel to DAK regarding the challenge of DAK's alleged liens but has received no meaningful response. Prior to the hearing on this motion, the Construction Lienholder Group would welcome a conference with DAK, the Debtors, Inbursa, and the Committee and would ask for their comments on the issues raised in an attempt to bring the matters raised herein to resolution, particularly before any asset sale so that there are clear lines relating to important issues, including credit bidding on assets, including the Corpus Christi Plant.

25. DAK maintains that it has a valid and perfected second secured lien in the Collateral set forth in the DAK Deed of Trust, which includes the Corpus Christi Plant. There is little doubt that the Corpus Christi Plant is the Debtors most valuable asset and will be subject to an upcoming sale.

26. On November 16, 2017, the Debtors filed a motion for entry of orders (i)(a) approving bidding procedures for the sale of certain of the debtors' assets, (b) authorizing the debtors to enter into one or more stalking horse purchase agreements and to provide bid protections thereunder, (c) scheduling an auction and approving the form and manner of notice thereof, (d) approving assumption and assignment procedures and (e) scheduling a sale hearing and approving the form and manner of notice thereof; (ii)(a)

9

approving the sale of certain of the debtors' assets free and clear of liens, claims, interests and encumbrances and (b) approving the assumption and assignment of executory contracts and unexpired leases; and (iii) granting related relief [Docket No. 173] (the "<u>Bid Procedures Motion</u>"). On December 6, 2017, the Construction Lienholder Group filed an objection to the Bid Procedures Motion [Docket No. 381], and prior to the December Hearing, the parties were able to resolve a significant number of the objections resulting in the Court's entry of an Order approving the Bid Procedures Motion [Docket No. 490] (the "<u>Bid Procedures Order</u>").

27. The Bid Procedures Order provides among other things: for a March 6, 2018 deadline for interested parties to submit final bids for Debtors' assets (excluding Apple Grove Assets), a sale auction (excluding Apple Grove Assets) scheduled for March 8, 2018; and a hearing to approve the sale of the Debtors' assets (excluding Apple Grove Assets) on March 14, 2018.

**DAK's Putative Liens on the Corpus Christi Plant**

28. Based upon the Construction Lienholder Group's review of the underlying documents, the Group believes that DAK's putative lien against M & G Resins, which includes the Corpus Christi Plant, is avoidable. Specifically, the collateral package was added through the DAK Deed of Trust in late December 2016, and the Upfront Advances were made well before the deed of trust was recorded and the Capacity Reservation Agreement lacked any reference to the Debtors granting or providing any security to DAK. Rather, the funds were advanced, on an unsecured basis, upon conditions relating to the Corpus Christi construction milestones. Only after it became apparent that the funds were advanced prior to the milestones being achieved, and after the Debtors' operating conditions began to deteriorate, did DAK attempt to improve its collateral

position and secure the previously unsecured advances. Accordingly, the December 27, 2016 recording of the DAK Deed of Trust constitutes a fraudulent transfer under Bankruptcy Code sections 548 and 544(b) and state law, including Texas state law.[6]

29. In light of the pending sale and since the Lien Challenge can provide substantial benefits to the estates in the form of clarifying that there may be numerous valuable unencumbered assets in the estates, to the extent that the Unsecured Creditors Committee does not assert a Challenge of the DAK Deed of Trust, the Construction Lienholder Group requests this Court's conferral of standing, if needed, and authority to commence the Lien Challenge on behalf of the Debtors.

30. Not only will the Lien Challenge, if successful, confer valuable benefits on the estates, but also the Lien Challenge is necessary in order to clarify as to which assets, if any, DAK has the right to credit bid in a sale of the M & G Resins assets. In order for the Debtors to move forward in these chapter 11 cases, such clarification is absolutely necessary. Therefore, it behooves this Court to allow a Lien Challenge both for clarification and to maximize the value of unencumbered assets to the estates.

---

[6] See the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Tex. Bus. & Com. Code § 24.005 provides:

> Under TUFTA, a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims: (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Janvey v. Golf Channel, Inc., 487 S.W.3d 560, 566 (Tex. 2016).

## RELIEF REQUESTED

31. The Construction Lienholder Group has every expectation that the Unsecured Creditors Committee will timely bring an action to avoid DAK's putative lien on the Corpus Christi Plant assets. By this Standing Motion, the Construction Lienholder Group seeks entry of an order (i) extending the deadline to bring a Lien Challenge until February 8, 2018, without prejudice to further extension in the event that the Challenge Deadline for the Unsecured Creditors Committee is extended, and (ii) authorizing the Construction Lienholder Group to bring and prosecute an action to avoid DAK's liens on the Corpus Christi Plant based upon a fraudulent conveyance solely in the event that the Unsecured Creditors Committee does not bring such an action.

## BASIS FOR RELIEF REQUESTED

32. It is well settled within this and other circuits that bankruptcy courts may allow third parties to pursue causes of action on behalf of the estate under appropriate circumstances. See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F. 3d 548 (3d Cir. 2003) (*en banc*); Official Comm. of Unsecured Creditors v. Barron (In re Polaroid Corp.), No. 03-56404, 2004 WL 1397582 (Bankr. D. Del. June 22, 2004); Official Comm. of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.), No. 01-11353, 2003 WL 21956410 (Bankr. D. Del. Aug. 14, 2003); Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.), 304 B.R. 214 (Bankr. W.D. Pa. 2004, aff'd 326 B.R. 532 (W.D. Pa. 2005); Liberty Mut. Ins. Co. v. Official Unsecured Creditors Comm. (In re Spaulding Composites Co.), 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997); La. World Exposition v. Fed. Ins. Co., 858 F2d 233, 247 (5th Cir. 1988); Unsecured Creditors Comm. v. Noyes (In re STN Enters.), 799 F.2d 901, 904 (2d Cir. 1985).

33. In the instant case, the Construction Lienholder Group has demonstrated that not only are the Debtors unlikely to bring the Lien Challenge against DAK, but virtue of their stipulation, they cannot. Thus, if the Lien Challenge is not brought, great value will be lost to the estates.

34. The Lien Challenge provides two valuable functions that will maximize value to the estates and their creditors. *First*, the Lien Challenge, if successful, will demonstrate that there may be significant unencumbered assets in the estates. These assets will not only inure to the benefit of secured creditors such as the Construction Lienholder Group, but also unsecured creditors. The existence of unencumbered assets makes it far more likely that the parties in this case will be able to consensually negotiate a plan of reorganization or liquidation.

35. *Second,* the Debtors contemplate a sale of the assets that presumably will allow credit bidding for the assets. It is, therefore, of critical importance that the assets on which there is a lien be determined so that the credit bidding can be fair and not chill outside bidders. This may be accomplished through a Lien Challenge.

**Validity of Claims to Avoid DAK's Deed of Trust as a Fraudulent Conveyance**

36. The rationale for the Construction Lienholder Group to pursue this motion at this time to prosecute the Lien Challenge on behalf of the Debtors' estates, if needed, is self-evident. While the Construction Lienholder Group believes that issues relating to priority of respective liens between alleged secured parties are unaffected by the Final DIP Order, which may also include challenging liens between secured parties (i.e., Inbursa, the construction lienholders, and DAK), to avoid doubt, the Challenge deadline is quickly approaching and there is no likelihood – given the Debtors' stipulation that DAK holds a valid perfected secured lien – that the Debtors will challenge DAK's

13

alleged secured position. While the theories based on avoidability are numerous, the Court not need look any further at this point than the fact that the lien was provided without advancement of new money.

37. For constructive fraudulent conveyances, for example, under TUFTA, a creditor may set aside any transfer "made without receiving a reasonable equivalent value in exchange" for the transfer and, among other reasons, the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtors were unreasonably small in relation to the business or transaction." TUFTA, § 23.005. Value and reasonable equivalence are determined as of the time of the transaction. Janvey v. Golf Channel, Inc., 487 S.W.3d at 569. Further, such value must "be determined in light of the purposes of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." Id. at 574.

38. DAK provided the Upfront Amount on an unsecured basis, and only sought to secure the amounts previously provided when the project completion was delayed, while the Debtors' financial condition continued to deteriorate. If successful, the Lien Challenge seeks to strike DAK's alleged pre-petition second lien including the DAK Deed of Trust offered as a Pre-Petition Second Lien Security Interest, so that the Pre-Petition Second Lien Obligations are unsecured. Further, the Lien Challenge seeks to recharacterize and disgorge the adequate protection liens and payments (provided in the Final DIP Order at ¶23(c)), including DAK's interest in the Roll-up, any other payment made pursuant to the DIP Loan, for example legal fees and expenses, which paid DAK on an improperly secured basis.

39. DAK's Deed of Trust improperly attempts to place the Corpus Christi Plant assets beyond the reach of creditors. By the Debtors' own admission, the

construction on the Corpus Christi Plant was ongoing since April 2013. By the time of the recording of the DAK Deed of Trust, construction contractors and materialmen were, upon information and belief, making demands for payment and filing notices of liens. DAK's race to secure its unsecured advancements contrary to the original terms is undoubtedly fraudulent.

40. Thus, the Construction Lienholder Group submits that there is a colorable claim to challenge DAK's purported second lien.

41. Again, the Construction Lienholder Group has every expectation that the Unsecured Creditors Committee will bring an action to avoid DAK's lien. If it does, the Construction Lienholder Group need not file any such action. However, in the event that the Unsecured Creditors Committee does not file such an action, someone will need to preserve the valuable rights of such action on behalf of the estate or they may revert back to creditors such as the Construction Lienholder Group to pursue under state law.

42. There is ample justification for the Court to grant the Construction Lienholder Group the authority to pursue the Lien Challenge. The Construction Lienholder Group has demonstrated colorable claims to attack the alleged secured liens held by DAK, and has filed this motion in accordance with the challenge deadline provided in the Final DIP Order. While the Construction Lienholder Group has an earlier deadline to assert its position than the Unsecured Creditors Committee, at present, the Construction Lienholder Group believes that it would be most efficient and in the estates' best interest, that the Construction Lienholder Group be vested with the authority to pursue the Lien Challenge, to the extent needed, to avoid doubt regarding their ability to pursue claims against DAK, including based on theories of fraudulent conveyance.

15
9958916/3

43. Vesting the Construction Lienholder Group with the authority to pursue the Lien Challenge is in the best interests of the Debtors' estates and is "necessary and beneficial" to the fair and efficient resolution of these bankruptcy proceedings. It is difficult to see how the Debtors can move forward unless and until it is finally determined what liens, if any, DAK has and what assets, if any, are unencumbered by such liens and to the extent applicable, available to benefit the Construction Lienholder Group and other creditors of the estates.

44. For all the above reasons, the Construction Lienholder Group respectfully requests that this Court grant it standing to pursue the Lien Challenge against DAK.

### No Separate Bridge Order Required

45. Pursuant to Local Rule 9006-2, the January 16, 2018 deadline to pursue the Lien Challenge is extended by the filing of this motion until such time as the Court acts on the motion, and the Construction Lienholder Group reserves rights to file a Complaint or otherwise pursue the Lien Challenge. It is respectfully requested that the deadline to commence the Lien Challenge be extended by seven (7) business days after the Unsecured Creditors Committee's Challenge Deadline.

### No Prior Requests

46. No prior requests for the relief sought herein has been made by the Committee to this or any other court.

### Prayer for Relief

47. This Court can and should authorize the Construction Lienholder Group to bring the Lien Challenge against DAK on behalf of the Debtors' estates, particularly to the extent that the Unsecured Creditors Committee does not.

## RESERVATION OF RIGHTS

48. The Construction Lienholder Group reserves all rights, claims and defenses, including with respect to the relative priorities of the construction lienholders' liens, and nothing herein is intended to waive any and all direct causes of action against the Debtors, Inbursa, or DAK including without limitation, to challenge priority of liens as specifically preserved in the Final DIP Order or otherwise permitted under applicable federal or state law.

49. Further, and as noted herein, this request is without prejudice to any request for further extension of the Challenge Period for the Construction Lienholder Group.

WHEREFORE, the Construction Lienholder Group the respectfully requests, to the extent necessary, that the Court (i) grant standing and authority to the Construction Lienholder Group to commence, prosecute, settle and recover amounts in connection with the Lien Challenge as to DAK and the Pre-Petition Second Lien Security Interests on behalf of the Debtors' estates; (ii) extend the deadline to commence the Lien Challenge to seven (7) business days after the Unsecured Creditors Committee's Challenge Deadline; and (iii) grant such other and further relief as the Court deems just and proper.

[The remainder of this page is intentionally left blank.]

Dated:  January 16, 2018	**MORRIS JAMES LLP**

 /s/ Eric J. Monzo
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brenna A. Dolphin (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
Telephone:  (302) 888-6800
Facsimile:   (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bdolphin@morrisjames.com

*Counsel to the Construction Lienholder Group*