# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
In re: : Chapter 11
:
M & G USA CORPORATION, *et al.*,[1] : Case No. 17-12307 (BLS)
:
Debtors. : Jointly Administered
:
: **Hearing Date:** To Be Determined
: **Objections Due:** February 5, 2018 at 4:00 p.m. EST
---------------------------------------------------------------x

## MOTION FOR EXAMINATION OF M&G MÉXICO HOLDING, S.A. DE C.V. AND M&G POLIMEROS MÉXICO, S.A. DE C.V. PURSUANT TO BANKRUPTCY RULE 2004

TO THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE:

Banco Nacional de Comercio Exterior, S.N.C., Institucion de Banca de Dessarrollo ("**Bancomext**") hereby files this motion (the "**Motion**") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2004-1 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form attached as Exhibit 1, authorizing and compelling M&G México Holding, S.A. de C.V. ("**M&G Holding**") and M&G Polímeros México, S.A. de C.V. ("**M&G Polimeros**" and together with M&G Holding, "**M&G Mexico**") to produce documents responsive to the document requests attached hereto as Attachment A (the "**Document Requests**") within 30 days after the Court enters an order granting the Motion. In support of the Motion, Bancomext respectfully states as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parenthesis): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M & G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

**PRELIMINARY STATEMENT**

Prior to the Petition Date, Bancomext loaned approximately USD$190 million to two of the Debtors' Mexican affiliates—M&G Holding and M&G Polimeros—which own and operate a PET production facility in Altamira, Mexico. Those loans were made on the condition that their proceeds only be used to fund the operating expenses and finance the exports of the Mexican companies. The relevant loan documents memorialized those restrictions.

Last year, the Mexican companies informed Bancomext that they would be ceasing production at the Altamira facility because, among other things, they lacked the liquidity to procure the raw materials necessary to continue operations. The Altamira facility discontinued production on September 5, 2017.

Now, disclosures by the Debtors in these Chapter 11 Cases raise serious concerns regarding the use of the proceeds of Bancomext's loans and the actual cause for the Mexican entities' liquidity problems. Indeed, the Debtors' disclosures have revealed that in the two years leading up to the Petition Date, M&G Holding and M&G Polimeros may have inappropriately loaned the Debtors nearly USD$550 million, presumably to fund their failing project in Corpus Christi, Texas. Shockingly, according to the Debtors' own disclosures, M&G Polimeros loaned the Debtors more than USD$350 million fourteen days *after* it shuttered the Altamira facility. Moreover, the Debtors' cash management motion highlights that there is a high likelihood that the Debtors lacked the necessary controls to segregate and account for the proceeds of Bancomext's loans in the first instance.

Based on these public disclosures, Bancomext believes that it likely has significant claims against the Debtors. A Rule 2004 exam will enable Bancomext to gain a thorough understanding of the Debtors' and their Mexican affiliates' conduct with respect to the proceeds

of its loans and the extent and nature of its claims against the Debtors and their assets. To that end, Bancomext has sought to work cooperatively with the Debtors and their Mexican affiliates to gather information through targeted document requests. The Debtors, for their part, have initially agreed to grant Bancomext access to their general data room. However, M&G Holding and M&G Polimeros have flatly refused to produce any documents.

Rule 2004 permits a broad investigation into the affairs of a debtor, its affiliates, and third party creditors to assist a party in interest, among other things, in examining transactions and assessing whether wrongdoing occurred. The requested production falls squarely within that directive. Accordingly, Bancomext respectfully requests that the Court direct M&G Holding and M&G Polimeros to produce documents responsive to the requests attached hereto as Attachment A on a rolling basis within the next month.

Bancomext understands that the Debtors have requested that the Court approve the sale of its Apple Grove and Corpus Christi Facility and the distribution of substantially all of the proceeds received from those sales to the Debtors' secured creditors. The prompt investigation of Bancomext's claims will benefit all parties by ensuring that the distribution of those proceeds is not delayed by an extended investigation into Bancomext's rights with respect to such proceeds.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2004 and 9014, and Local Rule 2004-1.

**BACKGROUND**

2. On October 24, 2017, M&G Polymers USA, LLC ("**M&G Polymers**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). M&G Polymers' chapter 11 case was preemptively filed to avoid a lawsuit by Comerica Bank in the state of Michigan which sought to enjoin M&G Polymers' use of its collateral.

3. On October 31, 2017 (the "**Petition Date**"), the following affiliated entities filed voluntary petitions for relief in the Bankruptcy Court: (1) M&G USA Corp. ("**M&G USA**"); (2) M&G Resins USA, LLC; (3) M&G Polymers USA, LLC; (4) M&G Finance Corporation; (5) M&G Waters USA, LLC; (6) Mossi & Ghisolfi International S.à.r.l. ("**M&G International**"); (7) M&G Chemicals S.A.; (8) M&G Capital S.à r.l.; (9) M&G USA Holding, LLC; (10) Chemtex International Inc.; (11) Chemtex Far East, Ltd.; and (12) Indo American Investments, Inc. (collectively with M&G Polymers, the "**Debtors**").

4. M&G Holding and M&G Polimeros are Mexican affiliates of Debtors. M&G Polimeros, a wholly-owned subsidiary of M&G Holding, is the owner and operator of a PET manufacturing facility in Altamira, Mexico (the "**Altamira Facility**"). Neither, M&G Holding nor M&G Polimeros are debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

**A. M&G Holding Revolving Credit Agreement**

5. On March 31, 2010, Bancomext, as lender, and M&G Holding, as borrower, entered that certain revolving credit agreement titled "Contrato de Apertura de Credito en Cuenta Corriente" (as amended, modified, or supplemented, the "**M&G Holding Revolving Credit Agreement**"). The obligations created pursuant to the M&G Holding Revolving Credit

Agreement are secured by an assignment of certain receivables from M&G International, which is a debtor in the Chapter 11 Cases, and guaranteed by M&G Polimeros. As of the date of this Motion, approximately USD$120 plus all accrued interest and fees is outstanding with respect to the M&G Holding Revolving Credit Agreement.

6. The M&G Holding Revolving Credit Agreement explicitly provides that the funds borrowed thereunder may only be used to finance exports. M&G Holding Revolving Credit Agreement, Clause 2.

**B. M&G Polimeros Revolving Credit Agreement**

7. On August 3, 2015, Bancomext, as lender, and M&G Polimeros, as borrower, entered into that certain revolving credit agreement titled "Contrato de Apertura de Credito en Cuenta Corriente" (as amended, modified, or supplemented, the "**M&G Polimeros Revolving Credit Agreement**" and together with the M&G Holding Revolving Credit Agreement, the "**Revolving Credit Agreements**"). The obligations created pursuant to the M&G Polimeros Revolving Credit Agreement are secured by a pledge of M&G Polimeros' inventory and an assignment of certain receivables owed by M&G USA to M&G Polimeros. As of the date of this Motion, approximately USD$70 million plus all accrued interest and fees is outstanding with respect to the M&G Polimeros Revolving Credit Agreement.

8. The M&G Polimeros Revolving Credit Agreement explicitly provides that M&G Polimeros may only use the proceeds of the loans as working capital for it and its subsidiaries and to refinance debt. M&G Polimeros Revolving Credit Agreement, Clause 3. None of the Debtors are subsidiaries of M&G Polimeros.

### C. Disclosures by the Debtors Regarding Transfers From M&G Holding and M&G Polimeros to Debtors

9. In late 2017, M&G Mexico informed Bancomext that it did not have sufficient working capital to finance its operations and was going to shutter the Altamira Facility. M&G Mexico informed Bancomext that the value of the Altamira Facility would decline every day it was shut down and that it believed relationships with its key clients would be irreparably harmed by the shut down. Despite those negative consequences, on September 5, 2017, M&G Polimeros shut down the Altamira Facility. *See Declaration of Dennis Stogsdill in Support of First Day Pleadings* (the "**Stogsdill Declaration**") [D.I. 3] ¶ 47. In his first day declaration, Mr. Stogsdill, the Debtors' CRO, stated that this shut down was necessary because M&G Polimeros lacked the necessary raw materials to continue production. *Id.*

10. The Debtors' disclosures in these Chapter 11 Cases have raised serious concerns about the cause of M&G Mexico's liquidity issues and the use of the proceeds from the Revolving Credit Agreements. Specifically, a revised exhibit to the Mr. Stogsdill's declaration revealed that in the two years leading up to the Petition Date M&G Mexico lent M&G USA nearly $550 million. *See Notice of Revised Exhibit to First Day Declaration* [D.I. 143] at Ex. 1. Although it purportedly lacked money to operate, on September 19, 2017—fourteen days after the Altamira Facility was shut down—M&G Polimeros apparently loaned M&G USA USD$354 million. *See id.*

11. The loans from M&G Holding and M&G Polimeros to M&G USA are summarized on the chart below and referred to collectively herein as the "**Intercompany Loans**."

| Borrower | Lender | Date | Amount (USD Millions) |
|---|---|---|---|
| M&G USA | M&G Holding | 12/31/16 | $124.43 |
| M&G USA | M&G Holding | 12/27/16 | $44.1 |
| M&G USA | M&G Holding | 3/31/17 | $13.91 |
| M&G USA | M&G Holding | 6/30/17 | $10.722 |
| M&G USA | M&G Polimeros | 9/19/17 | $354 |
| | | **Total** | $547.162 |

12. Mr. Stogsdill also disclosed that, as of the Petition Date, the Debtors estimated that they owe $1.27 billion in intercompany payables in the aggregate. *See* Stogsdill Decl. ¶ 35. Bancomext understands that a significant amount of those intercompany payables are owed to M&G Mexico as a result of the PET that it provided to the Debtors. Indeed, Mr. Stogsdill has declared that M&G Polymers' Apple Grove Plant derived nearly 50% of its sales from PET resin produced by the Altamira Facility. *Id.* at ¶ 47.

D. **Disclosures by the Debtors Regarding the Comingling of Funds**

13. The Debtors' disclosures have also raise concerns that M&G Mexico failed to properly segregate and account for the proceeds of the Revolving Credit Agreements in the first instance. As stated above, each of the Revolving Credit Agreements explicitly restrict the use of their proceeds to funding working capital needs, refinancing debt, and financing exports. However, based on the disclosures made by the Debtors, Bancomext believes that the proceeds of the Revolving Credit Agreements have been inappropriately, and perhaps fraudulently, used to fund the Debtors in clear contravention of the Revolving Credit Agreements.

14. As part of their first day filings, the Debtors disclosed that prior to the Petition Date, six Debtor entities,[2] M&G Holding, M&G Polimeros, and several other non-debtor entities

---

[2] The "**U.S. Cash Pooling Debtors**" as such term is defined in the Cash Management Motion include: (1) M&G USA; (2) M&G Resins USA, LLC; (3) M&G Polymers USA, LLC; (4) M&G Finance Corporation, LLC; (5) M&G USA Holding, LLC; and Chemtex International Inc.

7

managed their cash through a pooling arrangement (the "**Pooling Arrangement**"). *See Motion for Interim and Final Orders (I) Approving the Continued Use of the Debtors' Cash Management System, Bank Accounts and Business Forms, (II) Extending the Debtors' Time to Comply with Section 345(b) of the Bankruptcy Code, (III) Approving Continuation of Ordinary Course Intercompany Transactions and (IV) Granting Related Relief* [D.I. 7] (the "**Cash Management Motion**") ¶ 11. Pursuant to that Pooling Arrangement, cash held in local bank accounts of the entities that participated in the Pooling Arrangement was swept nightly into an account maintained at Comerica Bank by M&G Polimeros. *Id.* Those funds were then disbursed to fund the operations of the Debtors, apparently with few if any controls. *Id.*

15. Not surprisingly, upon hiring restructuring advisors, the U.S. Cash Pooling Debtors began modifying their cash management system to allow the Debtors to manage their cash independently of their non-Debtor affiliates by terminating the Pooling Arrangement. *Id.* at ¶ 13. The Pooling Arrangement was only terminated on October 24, 2017, when M&G Polymers filed its voluntary petition for relief. *Id.*

16. It is unclear from the Debtors' public disclosures what efforts M&G Mexico took to account for, segregate, and track the earmarked proceeds of the Revolving Loan Agreement during the period when the Debtors operated under the Pooling Arrangement.

### E. Bancomext's Attempts to Cooperatively Investigate the Use of the Proceeds of Its Loan

17. Since the Petition Date, Bancomext has attempted to work with M&G Mexico to get the information necessary to investigate the apparent misuse of the proceeds of its loans.

18. In November 2017, Morgan Lewis & Bockius LLP ("**Morgan Lewis**") sent Bancomext a letter notifying it that Morgan Lewis had been retained by M&G Mexico to advise it with respect to the Chapter 11 Cases. In that notice, Morgan Lewis advised Bancomext that it

8

intended to file proofs of claim against the relevant Debtor entities to formally protect its clients' interests. On November 22, 2017, Morgan Lewis filed its *Notice of Appearance and Demand for Service of Papers* on behalf of, among others, M&G Holding and M&G Polimeros.

19. In a letter dated January 12, 2018, counsel for Bancomext notified Morgan Lewis that it intended to investigate claims it may have against the Debtors relating to the misuse of its loan proceeds and requested that the parties meet and confer to discuss the attached Document Requests.

20. On January 17, 2018, Mr. DeSieno and Ms. Boey of Morgan Lewis and Mr. Kampfner and Mr. Colodny of White & Case LLP ("**W&C**") met and conferred regarding the Document Requests. During that conference, Mr. DeSieno indicated that his client did not intend to cooperate with respect to the Document Requests and would not voluntarily produce any documents. Mr. Kampfner requested that Mr. DeSieno ask his client to reconsider its position and asked that he confirm the next day if his client would cooperate.

21. As of the date of this Motion, W&C has not received a response from Mr. DeSeino.

22. Also, on January 12, 2018, W&C sent a letter to Debtors' counsel requesting that the Debtors produce similar documents with respect to the Bancomext loans. As of the filing of this Motion, counsel for the Debtors has agreed to provide Bancomext with access to an existing data room. Bancomext intends to review the documents in the data room as soon as possible and reserves all rights to propound additional document request to the Debtors, if necessary.

## **RELIEF REQUESTED**

23. By this motion, Bancomext respectfully requests entry of an order, pursuant to Bankruptcy Rule 2004, compelling M&G Holding and M&G Polimeros to produce documents

responsive to the document request annexed hereto as <u>Attachment A</u> within thirty (30) days after the Court enters an order granting the Motion.

24. No previous motion for relief herein has been made to this or any other court.

## **ARGUMENT**

25. Rule 2004(a) provides that "on motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Rule 2004(c) provides that the court can compel both "the attendance of an entity for examination and for the production of documents." Fed. R. Bankr. P. 2004(c). The purpose of Rule 2004 is to permit a broad investigation into the financial affairs of the debtor, and to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton, Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (internal citation omitted).

26. A Rule 2004 inquiry is "broad and unfettered" and frequently likened to "a fishing expedition." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (citations omitted); *see also In re E. W. Resort Dev. V, L.P.*, No. 10-10452 (BLS), 2014 Bankr. LEXIS 3930, at *20 (Bankr. D. Del. Sep. 12, 2014) (Shannon, J.); *In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (collecting citations); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993) (stating that a Rule 2004 examination "is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper . . . .").

27. A Rule 2004 examination is not limited to the debtor. Bankr. R. Fed. P. 2004(a) ("On motion of any party in interest, the court may order the examination of ***any*** entity.") (emphasis added). Rather, it may "cut a broad swath through the debtor's affairs, those

associated with him, and those who might have had business dealings with him." *In re Johns-Manville*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (citing *In re Mantolesky*, 14 B.R. 973, 976 (Bankr. D. Mass. 1981)). Indeed, it is well established that Rule 2004 broadly permits examination of any third party associated with the debtor. *Ionosphere Clubs, Inc.*, 156 B.R. at 432 ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."); *In re Valley Forge Plaza Assocs.*, 109 B.R. at 674 ("Third parties having knowledge of the debtor's affairs, as well as a debtor itself, are subject to examination.").

28. In deciding whether to permit Rule 2004 discovery, courts "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). The purpose of the request and its degree of intrusiveness are relevant to this determination. *See id.* at 711-12; *In re Hawley Coal Mining Corp.*, 47 B.R. 392, 394 (S.D. W. Va. 1984).

29. This court has held that a request for examination under Rule 2004 "fit[] squarely within the purpose of Rule 2004" where the moving party sought "to examine third parties for the purpose of 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Millennium Lab Holdings II, LLC*, 562 B.R. at 627 (quoting *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)).

30. Here, Bancomext seeks documents from third parties in order to examine specific transactions, potentially unearth fraud, and thereby establish claims against the Debtors in the Chapter 11 Cases. *See id; see also In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (finding that 2004 examinations are allowed for "the purpose of discovering assets and

11

unearthing fraud. . . .") (internal citations omitted). As such, Bancomext's Document Requests fit squarely within the purpose of Rule 2004.[3]

31. As detailed above, the Debtors' disclosures raise serious questions regarding the commingling and apparent misuse of the earmarked proceeds of Bancomext's Revolving Credit Agreements. Pursuant to the attached Document Requests, Bancomext seeks information necessary to investigate what happened to the proceeds of its loan and what causes of action it may have against the Debtors with respect thereto.

32. Each of the proposed Document Requests properly seeks documents relating to the relevant transactions so that Bancomext may determine whether and to what extent wrongdoing has occurred. Bancomext respectfully submits that its Discovery Requests are targeted and reasonably calculated to acquire the necessary facts it needs to investigate any claims it has against the Debtors without overburdening M&G Mexico.

## **CERTIFICATION OF CONFERENCE**

33. In accordance with Local Rule 2004-1, prior to filing this Motion, counsel to Bancomext conferred with counsel for M&G Holding and M&G Polimeros, Morgan Lewis, to arrange for the cooperative production of documents responsive to the Document Requests. During that conference, Morgan Lewis indicated that M&G Mexico would not produce any of the requested documents on a voluntary basis.

34. The Debtors' counsel has agreed to grant Bancomext access to an already established data room that may contain some documents responsive to the Document Requests.

---

[3] Bancomext submits that Bankruptcy Rule 2004 is the proper statutory device to compel the Document Requests as no adversary proceeding or contested matter has been commenced with respect to these issues.

35. Here, it is clear that certain documents responsive to the Document Requests will necessarily be held by either M&G Holding or M&G Polimeros. As such, those entities' lack of cooperation has necessitated the filing of this Motion.

36. No previous motion for the relief sought herein has been made to this or any other court.

## RESERVATION OF RIGHTS

37. Bancomext hereby reserves all rights to request, pursuant to Rule 2004 or otherwise, to seek additional documents or examination of parties upon review of the documents produced in connection with this Motion.

## NOTICE

38. Notice of this Motion will be provided pursuant to Local Rule 2004-1 to the following parties, through their counsel, if represented: (a) counsel for the Debtors, (b) counsel for M&G Holding and M&G Polimeros; (c) the Office of the United States Trustee; (d) counsel for the Official Committee of Unsecured Creditors; and (e) all parties requesting notice pursuant to Rule 2002.

## CONCLUSION

39. For the foregoing reasons, Bancomext respectfully requests that the Court (a) enter an order, in substantially the form attached hereto as Exhibit 1, directing M&G Polimeros and M&G Holding to produce all document responsive to the Document Requests with thirty (30) days; and (b) such other and further relief as the Court deems just and proper.

Dated:  January 25, 2018     **FOX ROTHSCHILD LLP**

By:  /s/ *Jeffrey M. Schlerf*
Jeffrey M. Schlerf (DE No. 3047)
Carl D. Neff (DE No. 4895)
919 North Market Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920
jschlerf@foxrothschild.com
cneff@foxrothschild.com

—and—

Roberto J. Kampfner (*pro hac vice* pending)
Aaron Colodny (*pro hac vice* pending)
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
rkampfner@whitecase.com

*Attorneys for Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Dessarrollo*