# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION BY AND BETWEEN THE DEBTORS, TRINITY INDUSTRIES LEASING COMPANY AND RIO VALLEY SWITCHING COMPANY

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached as Exhibit A (the "Proposed Order"), approving the stipulation (the "Stipulation")[2] by and between the Debtors, Trinity Industries Leasing Company ("Trinity") and Rio Valley Switching Company ("Rio" and together with Trinity and the Debtors, the "Parties"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] A copy of the Stipulation is attached to the Proposed Order as Exhibit 1.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. General Background

2. On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B. The Rejection Motions

4. On December 21, 2017, the Debtors filed the *Debtors' First Omnibus Motion for Entry of an Order Authorizing Them to Reject Certain Executory Contracts and Unexpired Leases Nunc Pro Tunc to the Rejection Date* (Docket No. 538) (the "First Rejection Motion"). By the First Rejection Motion, the Debtors sought to reject that certain *Non-Hazardous Lease and Car Storage Agreement* by and among Debtor M&G Polymers and Rio (including any

amendments and/or riders thereto, the "Rio Lease"), *nunc pro tunc* to December 21, 2017. Further, on December 28, 2017, the Debtors filed the *Debtors' Second Omnibus Rejection Motion for Entry of an Order Authorizing Them to Reject Certain Executory Contracts and Unexpired Leases Nunc Pro Tunc to the Rejection Date* (Docket No. 569) (the "Second Rejection Motion"). By the Second Rejection Motion, the Debtors sought to reject that certain *Master Railcar Lease* by and among Debtor M & G Resins USA, LLC ("M&G Resins") and Trinity (including any amendments and/or riders thereto, the "Trinity Lease" and together with the Rio Lease, the "Leases"), *nunc pro tunc* to December 28, 2017. Pursuant to the Trinity Lease, Debtor M&G Resins leased over 1,200 railcars (collectively, the "Railcars") from Trinity, many of which are stored on Rio's property pursuant to the Rio Lease.

5. After the filing of the First Rejection Motion and the Second Rejection Motion, Rio and Trinity contacted the Debtors and raised certain informal objections with respect to the rejection of the Leases, including with respect to potential administrative and rejection damage claims that they may assert against the Debtors. In order to resolve these objections, limit the claims against the Debtors' estates and prevent the costs, delays and uncertainties of litigation, the Parties agreed to the terms of the Stipulation.[3]

**C.    The Stipulation**

6. If approved, the Stipulation will substantially resolve issues related to the rejection of the Leases and will result in significant cost savings to the Debtors' estates. The principal terms of the Stipulation are as follows:[4]

---

[3]    For the avoidance of doubt, the Debtors reserve the right to dispute any objections Rio and Trinity may raise to the First Rejection Motion and Second Rejection Motion in the event that the Stipulation is not approved.

[4]    The following summary is qualified in its entirety by reference to the provisions of the Stipulation. In the event of any inconsistencies between the provisions of the Stipulation and the terms set forth herein, the terms of the Stipulation shall govern.

(a) *Rejection of Leases.* The Leases will be deemed rejected upon entry of the Proposed Order (or an order approving the Stipulation). Upon entry of the Proposed Order (or an order approving the Stipulation), the Debtors will withdraw the First Rejection Motion and the Second Rejection Motion, solely with respect to the Rio Lease and the Trinity Lease.

(b) *Allowance of Amounts Due to Rio & Waiver of Claims.* No later than 5 business days after entry of the Proposed Order (or an order approving the Stipulation), the Debtors will pay Rio $54,025 in full and final satisfaction of all claims owing under the Rio Lease. Rio agrees to waive its right to assert any other claims, including claims under section 503 of the Bankruptcy Code, against the Debtors or their estates in connection with the Rio Lease and the storage of the Railcars.

(c) *Rejection Damages.* Trinity shall retain its right to assert (i) a general unsecured rejection damages claim against the Debtors in connection with rejection of the Trinity Lease and (ii) an administrative expense claim against the Debtors for any costs incurred in obtaining the release of the Railcars from any third party (other than Rio); *provided, however* that Trinity waives the right to assert an administrative expense claim under section 503 of the Bankruptcy Code against the Debtors' estates for rent or otherwise arising from the Debtors' postpetition use of the Railcars. For the avoidance of doubt, Trinity will use its best efforts to mitigate its rejection damages claim by re-leasing the Railcars. For the further avoidance of doubt, the Debtors reserve all defenses and counterclaims with respect to any claims retained by Trinity.

(d) *Waiver of Preference Claims.* The Debtors agree to waive their right to assert any preference claims arising under section 547 of the Bankruptcy Code or applicable state law against Rio and Trinity arising under the Rio Lease and the Trinity Lease, respectively, and/or in connection with the lease and storage of the Railcars.

(e) *Return of Railcars.* The Debtors agree to release the Railcars to Trinity immediately. The Parties agree that the return of the Railcars in storage on Rio's property shall be the sole responsibility of Rio and Trinity. Except with respect to the amounts paid in subsection (b) above, the Debtors shall not be responsible for any costs associated with transferring the applicable Railcars from Rio to Trinity. Trinity agrees to pay (or have a third party pay at Trinity's direction) all costs associated therewith.

(f) *Limitation of Claims Against the Estates.* For the avoidance of doubt, except as set forth expressly herein, Rio and Trinity waive and release any claims they may have against the Debtors under section 503(b) of the Bankruptcy Code relating to any liability arising under the Rio Lease, the Trinity Lease and/or in connection with the storage and lease of the Railcars.

NAI-1503365883v3

## RELIEF REQUESTED

7. The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, in substantially the form of the Proposed Order, approving the Stipulation.

## BASIS FOR RELIEF

8. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983). Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

9. Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

10. When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the Martin Factors"):

    (a)    the probability of success in litigation;

    (b)    the likely difficulties of collection;

    (c)    the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

    (d)    the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

11. While bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation,

but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983). *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

12. The Stipulation is in the best interest of the Debtors and their estates and falls well within the lowest point in the range of reasonableness. The Debtors have articulated a valid business justification for entering into the Stipulation and paying the sums due thereunder. Among other things, the Stipulation (a) prevents significant administrative expenses from accruing against the Debtors' estates, (b) results in substantial cost savings to the Debtors' estates, which the Debtors estimate, in the case of Rio, for example, could be as much as $116,000.00 in administrative cure payments as well as over $800 per day per Railcar, were the Debtors required to continue making payments under the Leases on a postpetition basis,[5] (c) was negotiated consensually and at arm's-length between the Parties and (d) results in the consensual rejection of two leases that are no longer necessary to the Debtors' limited postpetition operations. A weighing of the Martin Factors leads to no contrary result.

13. *Probability of Success*. Absent the Debtors' entry into the Stipulation, the Debtors would be forced to litigate issues relating to (a) the timing of rejection of the Leases, including whether *nunc pro tunc* relief is appropriate, (b) whether, and to what extent, Rio and Trinity have

---

[5] The amount listed in this subsection (b) is without regard to any defenses and/or counterclaims that the Debtors could have asserted against Rio and Trinity, and in the event that the Stipulation is not approved, the Debtors reserve the right to assert any such defenses and/or counterclaims.

administrative expense claims under the Leases, including in connection with the postpetition use and storage of the Railcars and (c) whether the Debtors are liable for incidental costs related to the rejection of the Leases, such as transportation, storage, access fees and related logistic costs associated with the return of the Railcars. While the Debtors believe that they have strong defenses with respect to each of these litigable issues, there is a risk that the Court could rule against the Debtors on each of these points. In the event that the Court rendered a ruling adverse to the Debtors, their estates would potentially be forced to incur administrative expenses that have been avoided by entry into the Stipulation. This factor weighs in favor of approval of the Stipulation.

14. *Difficulties of Collection.* While the Stipulation does not call for Rio or Trinity to provide the Debtors with settlement funds, the Debtors submit that the cost savings generated by Stipulation weigh in favor of its approval. The Stipulation results in the Debtors paying approximately $54,000 to Rio, an immediate cost savings of approximately $35,000.00 based on postpetition rent due under the Rio Lease as well as the multiple charges for storage, movement and exit costs, and the waiver of Trinity's potential administrative expense claim against the estates. Notwithstanding that the Debtors do not believe that all such claims for postpetition rent under the Leases are valid, had the Debtors chosen to litigate, rather than settle, the rejection of the Leases, there is a risk that neither of these cost savings would have been possible. As such, this factor, too, weighs in favor of approval of the Stipulation.

15. *Complexity of Litigation.* As set forth above, the Debtors' entry into the Stipulation (a) resolves the issue of the timing of rejection of the Leases, (b) establishes Rio's administrative expense claim arising out of the Rio Lease and the storage and lease of the Railcars, in addition to resolving potential disputes regarding transportation costs and costs

-8-

NAI-1503365883v3

associated with the return of the Railcars and (c) results in the waiver of Trinity's administrative expense claim for rent or otherwise arising out of the postpetition use of the Railcars. Litigating each of these issues would have (a) been costly, likely outweighing Rio's stipulated administrative expense claim, (b) distracted the Debtors' already diminished workforce from the Debtors' sale efforts and (c) required the presentation of evidence (and potentially witnesses), to determine the extent of the postpetition use of the Railcars, among other matters. The Stipulation avoids a trial on these matters, a factor weighing in support of its approval.

16.  *Paramount Interests of Creditors.* Finally, the Stipulation is in the paramount interest of creditors. The Stipulation results in substantial cost savings to the Debtors' estates by reducing and eliminating potential administrative and prepetition claims that could be asserted against the Debtors for amounts due under the Leases. In addition, the Stipulation (a) achieves the consensual rejection of each of the Leases, which prevents further expenses accruing thereunder, (b) resolves disputes concerning the return of the Railcars and (c) saves the Debtors' estates the cost of prosecuting the rejection of the Leases. For these reasons, the Debtors respectfully request that the Court approve and authorize their entry into the Stipulation.

## NOTICE

17.  Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its

NAI-1503365883v3

counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; (h) Trinity; and (i) Rio. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

18. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: January 26, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ J. M. Mulvihill*

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:       ljones@pszjlaw.com
             joneill@pszjlaw.com
             jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Michael J. Cohen
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7306
Email:       sgreenberg@jonesday.com
             mcohen@jonesday.com
             scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:  (216) 586-7035
Facsimile:   (216) 579-0212
Email:       ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession