# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
|  | (Jointly Administered) |
| Debtors. | **Hearing Date: February 16. 2018 at 9:30 a.m. (eastern)** |
|  | **Objection Date: February 9, 2018 at 4:00 p.m. (eastern)** |

## MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO COMMENCE ACTIONS IN TEXAS TO DETERMINE THE RELATIVE PRIORITY OF CONSTRUCTION LIENS BETWEEN THE CONSTRUCTION LIENHOLDERS AND NONDEBTORS, BANCO INBURSA, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO INBURSA AND DAK AMERICAS LLC

Certain construction lien[2] claimants (collectively, the "Construction Lienholder Group"),[3] by and through their undersigned counsel, out of an abundance of caution, move this Court, pursuant to 11 U.S.C. 362(d), and Fed. R. Bankr. P. 4001 and 9014 and Del. Bankr. L.R. 4001-1 for entry of an order granting relief from the automatic stay, to the extent necessary, so that the Construction Lienholder Group, and any others similarly situated and so inclined, may

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M & G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M & G Chemicals, S.A. (1022), M & G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The term "construction lien" is intended to encompass all mechanic's, contractors' or materialman's liens arising under and pursuant to Texas property law.

[3] The members of the Construction Lienholder Group are (i) Apache Industrial, Services, Inc., (ii) Arc Energy Services, Inc., (iii) Axis Industrial Services, LLC, (iv) Bay Ltd, (v) CCC group, Inc., (vi) Dawkins On-Site Concrete, LLC, (vii) Fagioli, Inc., (viii) Garrett Mechanical, Inc. (ix) TCI Business Capital as assignee of Integrity Mechanical Specialists, (x) Lexicon, Inc., (xi) Lion Point Capital, (xii) MC Welding, Inc., (xiii) MEITEC, Inc., (xiv) Mirage Industrial Group, LLC, (xv) MMR Constructors, Inc., (xvi) Montcalm USA, Inc. (xvii) N&A Project Management USA, Inc., (xviii) Repcon, Inc., (xix) SimplexGrinnell, LP, (xx) Sunbelt Rentals, Inc., (xxi) TNT Crane & Rigging Inc., (xxii) WFS Construction Company LLC, and (xxiii) Wholesale Electric Supply of Houston, Inc.

commence lawsuits in a court of competent jurisdiction in the State of Texas to determine the relative priority of the liens held by the construction lienholders and two non-debtors, Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa ("Inbursa") and DAK Americas LLC ("DAK"). In support of this Motion, the Construction Lienholder Group respectfully submits the following:

## Introduction

The above-captioned debtors (the "Debtors") have stipulated that, prior to October 30, 2017 (the "Petition Date"), two of the Debtors, M & G USA Corporation and M & G Resins USA, LLC ("M & G Resins") were obligated to DAK Americas, LLC in the amount of $435 million, and M & G Resins was indebted to Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa ("Inbursa") in the amount of $436 million. Also, as of the Petition Date, M & G Resins was also liable for construction liens incurred in connection with unfinished PTA/PET plant in Corpus Christi, Texas owned by M & G Resins (the "Corpus Christi Plant").

Since the Petition Date, the Court has approved postpetition financing from Inbursa totaling $100 million. As set forth in the Debtors' motion seeking approval of the postpetition financing, the security interest to be received by Inbursa on account of the postpetition financing will come ahead of the alleged prepetition secured claim of DAK, but it will not prime any "Prior Senior Claims."

Since the Petition Date and in conjunction with the postpetition financing, this Court has also approved a process for the sale of substantially all of the Debtors' assets. This Court's approval of the sale of the Debtors' assets will not resolve the issue as to who is entitled to the proceeds from the sale. Accordingly, following the sale, there will need to be a determination as

a matter of applicable non-bankruptcy (*i.e.*, Texas) law as to the relative priority of security interests of Inbursa, DAK, and the construction liens on the Corpus Christi Plant.

Certain members of the Construction Lienholder Group intend to commence a declaratory judgment action before a court of competent jurisdiction in Texas to determine the relative priorities of Inbursa, DAK, and the construction lienholders. Such an action will not involve the Debtors; nor will the construction lienholders seek by the declaratory judgment action authority to execute or otherwise recover on account their claims against the Debtors. The declaratory judgment action will not seek to take any act to obtain possession of property of the Debtors' estates or exercise property of the estates. Instead, the declaratory judgment proceeding be an action against only Inbursa and DAK for a determination as to the relative priority of the parties' respective security interests.

The Construction Lienholders do not believe that the automatic stay is implicated by such an action by nondebtors against nondebtors. Out of an abundance of caution, the Construction Lienholder Group files this motion seeking entry of an order authorizing a construction lienholder to commence a declaratory judgement as to the relatively priority of its security interests in a court of competent jurisdiction.

Further, this Court does not have jurisdiction to adjudicate a declaratory judgment action among nondebtors that does not arise under or arise in or relate to the Debtors' bankruptcy cases.

Alternatively, if this Court determines that, despite that Section 362(a) of the Bankruptcy Code is not implicated, relief from the automatic stay is required, the Construction Lienholder Group requests that this Court find that cause exists to grant relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code. Additionally, if this Court determines that relief from the automatic stay is required, the automatic stay should be lifted pursuant to 11

3

U.S.C. § 362(d)(3) because the Corpus Christi Plant a single asset real estate, more than 90 days has passed since the Petition Date, and the debtor has not made any monthly payments in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

**Jurisdiction**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. The Debtors have testified that, in April 2013, the Debtors began construction on the Corpus Christi Plant. Upon information and belief, construction of the Corpus Christi Plant was expected to be completed in December 2015, however the construction ceased prior to October 24, 2017 at only 85% complete.

3. The claims and liens of all or substantially all of the members of the Construction Lienholder Group arose from the construction of the Corpus Christi Plant. Each of the members of the Construction Lienholder Group has perfected their construction liens against the Corpus Christi Plant by filing and recording their liens in the proper land records of Nueces County, Texas. The members of the Construction Lienholder Group have asserted over $191 million of liens on the Corpus Christi Plant. Other construction lienholders have also filed and recorded liens against the Corpus Christi Plant. As of the filing of this Motion, approximately $300 million in construction liens have been recorded against the Plant with the deadline for perfecting such liens still more than two weeks away.

4. On or about March 21, 2013, M & G Resins and Inbursa entered into a Pre-Petition First Lien Loan Agreement (the "PPFLA First Tranche"), as evidenced by that certain *Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreements, and Fixture Filing* dated March 21, 2013, under which Debtors became indebted to Inbursa, as lender, in the original amount of $250 million. The PPFLA First Tranche did not provide for future advances. On March 22, 2013, Inbursa recorded its Deed of Trust, Assignment of Rents, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing in the Nueces County, Texas land records.

5. Over 3 years later, on or about July 29, 2016, Inbursa provided additional funding of $140 million to M & G Resins (the "PPFLA Second Tranche").

6. A Fourth Amendment to the PPFLA dated as of May 4, 2017, Inbursa provided M & G Resins with additional funding of $40 million (the "PPFLA Third Tranche"). The Debtors and Inbursa have stipulated that the total amount indebted to Inbursa is $436 million, after including a September 2017 advancement of $6 million.

7. On or about May 20, 2015, the Debtors and DAK entered into a certain Corpus Christi Capacity Reservation Agreement (the "Pre-Petition Second Lien Agreement" or the "PPSLA"), as amended, and as evidenced by that certain *Subordinated Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreements, and Fixture Filing* dated December 23, 2016 pursuant to which DAK has provided funds to the Debtors in the aggregate amount of $435 million. DAK's Subordinated Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreements, and Fixture Filing was recorded in the Nueces County, Texas land records on December 27, 2016.

9983455/1

8. On October 24, 2017, M & G Polymers USA, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 30, 2017, the other Debtors commenced these chapter 11 cases before this Court (together with the chapter 11 case of M & G Polymers, the "Cases").

9. On December 13, 2017, this Court entered a final order [Docket No. 479] (the "DIP Financing Order") on the Debtor's motion for post-petition financing [Docket No. 14]. The DIP Financing Order provided that any of the financing provided therein did *not* prime any valid prior liens of construction lienholders. The DIP Financing Order also expressly did *not* determine the relative priority among the liens of construction lienholders and non-debtors, Inbursa or DAK. See DIP Financing Order at fn.5. Moreover, in the DIP Financing Order, the Debtors stipulated to the amount and validity of the Inbursa and DAK liens, thereby giving up any right to challenge such liens. See DIP Financing Order at paragraph B.

## REQUESTED RELIEF

10. The automatic stay is not implicated by the proposed declaratory judgment action among non-debtors, however, out of abundance of caution, the Construction Lienholder Group seeks the entry of an order authorizing members of the Construction Lienholder Group, and any other construction lienholders similarly situated and so inclined, to commence and prosecute an appropriate action in a court of competent jurisdiction within the State of Texas to determine the relative priority of the construction liens among the construction lienholders and non-debtors, Inbursa and DAK (the "Proposed Declaratory Judgment Action").

11. Alternatively, in the unlikely event that this Court concludes that the automatic stay is implicated, the Construction Lienholder Group seeks an order granting such relief, pursuant to U.S.C. § 362(d)(1) or (d)(3), to permit members of the Construction Lienholder

6

Group (and any other construction lienholders similarly situated), to commence and prosecute a Proposed Declaratory Judgment Action.

## BASIS FOR RELIEF REQUESTED

12. Section 362(a) provides, in relevant part, as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . .

11 U.S.C. § 362(a).

13. Where the automatic stay is implicated, parties are entitled to relief on, among other things, the following bases:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> > \* \* \* \* \* \* \* \* \*
> > (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90

7

days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
    (A)   the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
    (B)  the debtor has commenced monthly payments that—
        (i)   may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
        (ii)  are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

11 U.S.C. § 362(d)(1), (3).

    **A.**    **The Automatic Stay is Not Implicated By the Proposed Declaratory Judgment Action.**

14. The filing of the Proposed Declaratory Judgment Action would not violate the automatic stay, because a determination of the relative lien priorities solely between non-debtors will have no effect on the Debtors or their estates. The Proposed Declaratory Judgment Action will not be against any of the Debtors. Nor is the Proposed Declaratory Judgment Action an action to obtain possession or control over property of the estates. The Proposed Declaratory Judgment Action is not an act to create, perfect or enforce a lien against the Debtors or their property. Finally, the Proposed Declaratory Judgment Action is also not an action to collect, assess or recover a claim against the Debtors. Thus, the contemplated action will have no impact the Debtors or their estates. Rather, the Construction Lienholder Group seeks only to determine priority between themselves and two other non-debtors in the State of Texas before a tribunal

that has familiarity with the applicable law, can do it quickly due to a case load that is not as burdened as this Court's docket, and has a vested interest in determining the underlying issues.

15. Based upon the foregoing, the automatic stay is not implicated, however, out of an abundance of caution, the Construction Lienholder Group respectfully requests that this Court should enter an Order authorizing any members of the Construction Lienholder Group, and any other construction lienholders similarly situated and so inclined, to commence and prosecute an appropriate action in a court of competent jurisdiction within the State of Texas to determine the relative priority of the construction liens among the construction lienholders, Inbursa, and DAK.

**B. This Court Should Permit the Proposed Declaratory Judgment Action to Proceed in Texas Because This Court Does Not Have Jurisdiction to Adjudicate a Declaratory Judgment Action for Relative Priority of Claims.**

16. It is axiomatic that bankruptcy courts have finite jurisdiction. See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 169 (3rd Cir. 2004); In re John Richards Homes Bldg. Co., 2013 WL 60097548 (6th Cir. Nov. 20, 2013). There are three basis for bankruptcy jurisdiction which are set forth in Sections 1334(b) and 157(a) of Title 28 of the U.S. Code. Specifically, "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code] or arising in or related to cases under [T]itle 11." 28 U.S.C. § 1334(b). Section 157(a) provides, in turn, that a district court may refer "any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11…to the bankruptcy judges for the district."

17. Although this Court has jurisdiction with respect to claims against the estate, this Court has no jurisdiction to adjudicate the relative priority of the claims between construction lienholders, Inbursa, and DAK. The issue of the relative priority of the security interests of the construction liens vis-à-vis the other alleged security interests do not arise under Title 11.

Whether a proceeding is a core proceeding "arising under" title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked. See, e.g., Halper v. Halper, 164 F.3d at 830, 836-37 n.7. (3d Cir. 1999). The relative priorities of the security interests in the Corpus Christi Plant are not created by the Bankruptcy Code. Rather, they are creatures of applicable nonbankruptcy (*i.e.*, Texas) law. Nor does this dispute fall under the category of arising in the Debtors' bankruptcy cases. See, e.g., Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) (quoting United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999)) (Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy.").

18. Thus, a bankruptcy court may have subject matter jurisdiction over actions between non-debtors only if the court determines that the action "relate[s] to" a bankruptcy case. 28 U.S.C. §§ 1334(b) and 157(a). See In re Affirmative Ins. Holdings, Inc., 565 B.R. 566, 580 (Bankr. D. Del. 2017) (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995)) ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.") See also In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004); Federal-Mogul Global, Inc., 300 F.3d 368 (3d Cir. 2002) (reaffirming the validity of the jurisdictional test of Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), which finds "related to" jurisdiction only where a matter could conceivably have an effect on a debtor's estate).

19. Ultimately, there will be a sale of the Debtors' assets following a hearing before this Court on March 14, 2018. At that point, there will be a pool of cash. The Proposed Declaratory Judgment Action is not an action against the Debtors. Rather, it seeks determination of the relative priorities of nondebtors to the proceeds from the sale here will no effect upon the Debtors or their estates.

10

20. Section 1334(c) of Title 28 provides, in relevant part, as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).

21. Accordingly, even if this Court were to conclude that the Proposed Declaratory Judgment Action is related to the Debtors' bankruptcy case, this Court should conclude that it does not have jurisdiction[4] and therefore abstain from hearing the action, and permit it to be determined in a Texas Court because the issues and claims arise under state law and can be timely adjudicated by an appropriate Texas court with jurisdiction over the parties.

### C. Alternatively, Cause Exists to Grant Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1).

22. For the reasons set forth hereinabove, the automatic stay does not preclude construction lienholders from commencing and prosecuting a Proposed Declaratory Judgment Action, however if this Court concludes that that such an action would implicate an action under Section 362(a) of the Bankruptcy Court, then cause exists to grant relief from the automatic stay to permit construction lienholders from commencing and prosecuting such an action.

23. As a prefatory matter, the automatic stay it is not intended to be absolute, and in appropriate instances, relief from the stay may be granted. See, e.g., In re The SCO Group, Inc.,

---

[4] The Construction Lienholder Group anticipates that the Debtors (and other parties) will try to assert that, by their participation in the Debtors' bankruptcy cases, the members of the Construction Lienholder Group have consented to have this Court adjudicate the priorities of claims against the Debtors' assets. That is simply incorrect. A party's consent to jurisdiction before a bankruptcy court is limited to claims against the debtor itself, not claims against non-debtors. See, e.g., In re Exide Techs., 544 F.3d 196, 213 n. 10 (3d Cir. 2008) (citing Granfinanciera v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). The Third Circuit further stated "as a general rule, 'actions asserted by those plaintiffs who filed actions against non-debtor parties exclusively, regardless of whether they filed a proof of claim,' are presumptively non-core." Id. at 215 (citations omitted).

395 B.R. 852, 856 (Bankr. D. Del. 2007). Section 362(d)(1) provides "[o]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay --- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

24. "Cause" is not defined by the Bankruptcy Code. Consequently, a Bankruptcy Court must decide what constitutes "cause" to lift the automatic stay on a case-by-case basis. In re Rexene Products Co. 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing In re Fernstrom Storage and Van Co., 938 F.2d, 731, 735 (7th Cir. 1991)); American Airlines, Inc. v. Continental Airlines (In re Continental Airlines, Inc.), Inc., 152 B.R. 420, 424 (D. Del. 1993). The legislative history of Section 362 states that cause may be established by a single factor such as "a desire to permit an action to proceed ... in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." In re Rexene, 141 B.R. at 576 (citing H.R.Rep. No. 95-595, 95th Cong, 1st Sess., 343-44 (1977)).

25. Courts considering whether cause exists to grant relief from the automatic stay consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant. In re Continental Airlines, Inc., 152 B.R. at 424. In balancing the competing interests of the debtor and the movant, courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. In re Downey Fin. Corp., 428 B.R. 595, 609 (Bankr. D. Del. 2010); Continental Airlines, Inc., 152 B.R. at 424 (citing IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.), 938 F.2d 731, 735 (7th Cir. 1991)).

12

26. Here, if the stay applied, ample cause exists to grant the Construction Lienholder Group relief so that they might pursue actions in Texas to determine the relative priority of their construction liens and those liens claimed by Inbursa and DAK.

27. First, there will be no hardship to the Debtors in having the Proposed Declaratory Judgment Action brought in Texas since the Debtors will not be a party to the underlying action.[5] On the other hand, failure to permit the Proposed Declaratory Judgment Action to proceed in Texas - where such liens were property recorded in the Nueces County land records - would cause an extraordinary hardship to construction lienholders. Among other things, all witnesses regarding the work performed, all records relating to that work, and all asserted liens and land records are located in Texas. None of them are in Delaware. As a result, smaller lienholders with valid claims will likely be economically precluded from participating in a lien priority action in Delaware as the cost to so will simply be too much to bear. Third, the priority dispute between Inbursa, DAK and the construction lienholders will be governed by Texas property law, so the Texas adjudicating court will be more familiar with the applicable law. A Texas Court will also have a significant interest in resolving the dispute. Under the circumstances, the prejudice of not granting relief from the stay is significant whereas there is no prejudice to the Debtors.

28. The probability of success is a misnomer since there is no "success" relative to the Debtors, however the construction lienholders have more than a reasonable likelihood of success.

---

[5] Not that it is relevant to this Court's decision of whether to grant relief from the automatic stay under the Rexene test, but there would not be any hardship to either Inbursa or DAK to having the issue litigated in Texas. First, an action to determine the priority will need to be determined in some forum, and it should be irrelevant to them which forum it is brought in. However, both Inbursa and DAK made loans to a company having its business in Texas for construction of a Texas facility, on which hundreds of Texas construction companies and residents worked. Additionally, Inbursa and DAK recorded Deeds of Trust in the Nueces County Texas land records. Further, because all or substantially all of parties and the witnesses are in Texas, their costs will be minimized. Accordingly, it cannot be any greater hardship for Inbursa and DAK to respond to an action in Texas than it would be in Delaware.

13

More than $250 million of properly perfected construction liens have been asserted against the Corpus Christi Plant, some of which are removables entitled to the highest priority under Texas law.[6] Further, there is no question that all construction liens are entitled to a higher priority than DAK, who did not make their loan until long after April 2013, when construction started. Finally, construction lienholders should, at a minimum, take priority over all loans by Inbursa that were made after April 2013.

29. Based upon the foregoing and in the event that the stay is applicable, cause exists to grant relief from the automatic stay to permit construction lienholders to pursue the Proposed Declaratory Judgment Action.

### D. If this Court Determines that Section 362(a) of the Bankruptcy Code is Implicated, It Must Grant Relief Pursuant to Section 362(d)(3).

30. Unlike Section 362(d)(1), Section 362(d)(3) is not premised upon cause a finding that cause exists. Rather, the Court shall grant relief from the automatic stay if it concludes (i) a creditor has a claim secured by a single asset of real estate, and (ii) the Debtor has not, within 90 days of the order for relief or within 30 days after the Court determines that the debtor is subject to Section 362(d)(3), either (a) filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or (b) commenced monthly payments that be made from rents or other income generated before, on, or after the petition date or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and are in an amount equal to interest at the

---

[6] Also, under Texas law, construction lienholders with claims to removables are first in priority to the extent of removables even as against a prior recorded deed of trust. First Nat'l Bank in Dallas v. Whirlpool Corp., 517 S.W.2d 262, 266 (Tex. 1974). Under Texas law all construction lienholders (other than with respect to removables) have priority as of the first date of construction. See Texas Property Code §§ 53.123 and 53.124. The Debtor has previously acknowledged, under oath, that construction began in April 2013, over 3.5 years before Inbursa made a second loan to the Debtor and more than 3.5 years before DAK ever filed a Deed of Trust. See Declaration of Dennis Stogsdill in Support of First Day Motions, ¶ 9.

14

then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate. If this Court finds that the automatic stay applies to preclude construction lienholders from and commencing and prosecuting a Proposed Declaratory Judgment Action, the stay must be lifted pursuant to 11 U.S.C. § 362(d)(3).

31. First, Section 363(d)(3) of the Bankruptcy Code applies to the relief sought by this motion because the Debtors' cases are being jointly administered, not substantively consolidated. Section 101(51B) of the Bankruptcy Code defines the term "single asset real estate" as "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." It appears that the construction lienholders claims are solely as against the Debtors' property in Corpus Christi, including the Corpus Christi Plant, which, taken together, appears to be the sole asset of M & G Resins.[7]

32. Further, there is no question that members of the Construction Lienholders Group have an interest in the Corpus Christi Plant. All of the members have filed timely filed noticed to perfect their liens under Texas law. Under Texas law, filed liens are presumed to be valid, unless later invalidated. Wood v. HSBC Bank, 2016 WL 2993923, at * 6 (Tex. 2016); Slaughter v. Qualls, 162 S.W.2d 671, 676 (Tex. 1942); Roe v. Davis, 106 Tex. 537, 172 S.W. 708 (1915); Jacobson v. National Western Life Insurance Company, 403 S.W.2d 528 (Tex. Civ. App. Houston 1966, no writ).

---

[7] In the event and to the extent that M & G Resins is owner or reputed owner of any other projects or assets at the parcel of real property upon which the Corpus Christi Plant is situated, construction lienholders may have the right to assert claims upon those assets, and nothing herein is intended to waive any such rights or claims.

15

33. January 28, 2018 was the ninetieth day following M & G's filing its bankruptcy petition. The Debtors have not filed a plan of reorganization. Nor have they commenced any monthly payments to construction lienholders. And this Court has not entered an Order extending deadline within that 90-day period.

34. For the foregoing reasons, in the event and to the extent that this Court concludes that that the automatic stay applies to prevent construction lienholders from bringing an declaratory judgment action in Texas against non-debtors for a determination of priority, this Court must grant relief from the stay pursuant to 11 U.S.C. § 363(d)(3).

## CONCLUSION

35. The Construction Lienholder Group respectfully requests that the Court issue an order determining that the stay does not apply to actions to be filed in Texas to determine the priority of liens between construction lienholders, and non-debtors Inbursa and DAK, or, alternatively, that the Court issue an order granting relief from the stay to allow for the filing of such actions in Texas. The Debtors have no interested in the determination of lien priority and will suffer no prejudice as a result of pursuing such actions. Neither will DAK nor Inbursa. The construction lienholders will suffer significant prejudice if compelled to litigate their liens and claims in Delaware when all witnesses, documents and relevant property are located in Texas and when Texas law will apply.

WHEREFORE, the Construction Lienholder Group respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A: (i) confirming that the stay is not applicable or that it is modified to permit construction lienholders to commence lawsuits in a court of competent jurisdiction in Texas to determine the priority of their liens vis-à-vis Inbursa and DAK. and (ii) granting to the Construction Lienholder Group all other an further relief which

16
9983455/1

just and proper.

Dated: January 29, 2018                     **MORRIS JAMES LLP**

/s/ Jeffrey R. Waxman
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brenna A. Dolphin (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
Telephone:  (302) 888-6800
Facsimile:   (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bdolphin@morrisjames.com

*Counsel to the Construction Lienholder Group*