# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>Related Docket Nos. 173, 490, 665, 719, 843 |

## ORDER AUTHORIZING (I) THE SALE OF CERTAIN ASSETS OF M&G USA CORPORATION AND M&G POLYMERS USA, LLC FREE AND CLEAR OF ENCUMBRANCES AND LIENS; (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (III) RELATED RELIEF

This Court having considered the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 173] (the "Motion"), filed by the above-captioned debtors and debtors in

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M&G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M & G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

possession (the "Debtors") and upon the Declaration of Dennis Stogsdill in Support of First Day Pleadings, the Declaration of Neil Augustine in Support of Debtors' Sale and Bidding Procedures Motion (the "Augustine Declaration"); the Declaration of Dennis Stogsdill in Support of the Motion, evidence, proffers and arguments of counsel in connection with the Motion, and upon the *Order (I)(A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. 490] (the "Bidding Procedures Order" and Exhibit 1 thereto, the "Bidding Procedures"); and upon the *Motion of the Debtors for Entry of Orders (I) Authorizing the Debtors to Enter Into a Stalking Horse Purchase Agreement and Provide Expense Reimbursement Thereunder; (II)(A) Approving the Sale of Certain Assets of M & G Polymers USA, LLC Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III)(A) Authorizing Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 And 364; (B) Granting Liens and Superpriority Administrative Expense Claims to Stalking Horse Pursuant to 11 U.S.C. §§ 364 and 507; (C) Providing Adequate Protection; (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2; and (V) Granting Related Relief,* dated January 12, 2018 (the "Stalking Horse Motion") [Docket No. 665], filed by the Debtors seeking entry of an order (the "Sale Order") authorizing, *inter alia*, M&G Polymers USA, LLC ("M&G Polymers") to (i) sell the Purchased Assets to Indorama Ventures Holdings LP ("Indorama") free and clear of all Encumbrances and Liens, other than Permitted Exceptions

-2-

and Assumed Liabilities as expressly set forth in an asset purchase agreement dated January 19, 2018 (the "Stalking Horse Agreement") (subject to higher and better offers at the Auction); and this Court, having entered the *Order (I) Authorizing Entry Into Stalking Horse Agreement and Provide Expense Reimbursement Thereunder and (II) Granting Related Relief* [Docket No. 719] (the "Stalking Horse Order") on January 19, 2018; and Far Eastern Investment (Holding) Ltd. ("Purchaser") having submitted a timely Final Bid in accordance with the Bidding Procedures Order; and an auction (the "Auction") having been held on January 30, 2018, in accordance with the Bidding Procedures Order and Stalking Horse Order; and the Debtors having filed the *Notice of Designation of Successful Bid and Backup Bid for the Purchased Assets* on January 30, 2018, [Docket No. 843] (the "Auction Results Notice"), designating Purchaser as the Successful Bidder for the Purchased Assets pursuant to the Asset Purchase Agreement ("Agreement") entered into on January 30, 2018, by M&G Polymers and M&G USA Corporation ("M&G Corp" and, together with M&G Polymers, "Sellers") and Purchaser[2] and a hearing (the "Sale Hearing") having been held on February 1, 2018, to consider the remaining relief requested in the Motion and Stalking Horse Motion and approval of the Agreement; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon all of the proceedings had before this Court (including the testimony and other evidence proffered or adduced at the Sale Hearing); and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

-3-

**THE COURT HEREBY FINDS THAT:[3]**

    A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

    B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

    C.    The Court has jurisdiction to consider the Sale Motion and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    D.    The statutory predicates for the relief sought in the Sale Motion are (i) sections 105(a), 363(b), (f), (m) & (n), and 365 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014; and (iii) Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

    E.    Proper, timely, adequate and sufficient notice of the Motion and of the Auction and the Sale Hearing (the "Sale Notice") have been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, the Local Rules and the Bid Procedures Order, and the Sale Notice was served upon (i) all federal, state and local regulatory, taxing and recording offices that have an interest in the relief requested by the Sale Motion, including, but not limited to, all such taxing and environmental authorities or recording offices in the jurisdictions in which the Sellers have offices or other facilities or in which any of the Purchased Assets are located; (ii) all parties that the Debtors believe may have a bona fide interest in acquiring the Purchased Assets or in the Intellectual Property being

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

DMI\8391531.2
NAI-1503374685v15

licensed; (iii) all entities (or counsel therefor) known to have asserted any Encumbrance or Lien in or against the Sellers or the Purchased Assets; (iv) the United States Attorney's Office; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) all counterparties to the executory contracts and unexpired leases that the Sellers intend to assume and assign to Purchaser in conjunction with the sale of the Purchased Assets; (viii) the United States Environmental Protection Agency; (ix) all state attorney general offices in the states where the Debtors conduct business; (x) all state departments of environmental protection and all other state and local authorities exercising jurisdiction over environmental, safety or health matters where the Debtors conduct business or have conducted business; (xi) the Office of the United States Trustee for Region 3; (xii) counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"); (xiii) counsel to the administrative agent for the Debtors' post-petition secured lenders; (xiv) counsel to Comerica Bank; (xv) all parties for whom the Debtors intend to schedule secured claims or who have filed proofs of claim alleging secured status as to the Purchased Assets; (xvi) all of the Sellers' unsecured creditors; (xviii) the Department of Justice; (xix) the United Steelworkers; and (xx) all other entities set forth on the Debtors' Master Service List, which list includes all parties who have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Sale Notice constitutes good and sufficient notice of the Motion and the Sale Hearing, and no other or further notice of the Motion or the Sale Hearing or the entry of this Sale Order need be given.

F.     The Debtors have demonstrated a sufficient and compelling basis and a good business purpose and judgment for the Sellers to enter into the Agreement, sell the Purchased Assets and assume and assign the Purchased Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' and Sellers' business judgment and in the best interests of the Debtors, Sellers, their creditors and their estates.

DM1\8391531.2
NAI-1503374685v15

G.    The Debtors and their professionals have complied in all respects with the Bidding Procedures Order and Stalking Horse Order.  The Debtors have afforded interested potential buyers a full, fair and reasonable opportunity under the circumstances to make a higher and better offer to purchase the Purchased Assets, and provided potential buyers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets.

H.    The marketing and sale process relating to the Purchased Assets conducted by the Debtors, Sellers and their advisors was non-collusive, fair and reasonable and conducted in good faith and resulted in obtaining the highest and best value for the Purchased Assets for the Debtors, Sellers and their estates under the circumstances.

I.    The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Sellers pursuant to the Agreement, (i) is the highest and best offer received by the Sellers; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' and Sellers' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery and benefit for the Sellers' creditors and other interested parties than would be provided by any other practically available alternative.

J.    Purchaser is not holding itself out to the public as a continuation of the Debtors or Sellers and is not an "insider" or otherwise an "affiliate" (as such terms are defined in section 101(31) of the Bankruptcy Code) of the Debtors or Sellers and no common identity of directors or officers exists now or has ever existed between Debtors, Sellers and Purchaser.  The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and has been interpreted pursuant to judicial opinions interpreting such term, and is entitled to the full protections of sections 363(m) and (n) of the Bankruptcy Code with respect to the purchase of the Purchased Assets, including all of the Purchased Contracts, Owned Real Property, and the Plants.  The Agreement was negotiated and entered into in good faith, based upon arms' length

DMI\8391531.2
NAI-1503374685v15

bargaining, and without collusion or fraud. Neither the Debtors, Sellers nor the Purchaser engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or that would cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction contemplated by the Agreement and transfer of the Purchased Assets and Purchased Contracts to the Purchaser. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

K. The transfer of the Purchased Assets to Purchaser does not constitute a consolidation, merger, or de facto merger of the Debtors, Sellers and Purchaser, and there is no continuity of enterprise among Debtors, Sellers and Purchaser. Purchaser is not a joint employer or co-employer with Debtors or Sellers nor is it a mere continuation of the Debtors or Sellers. Except with respect to any Assumed Liabilities, Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever. Purchaser would not acquire the Purchased Assets but for the protections against any claims based upon "successor liability" theories.

L. The Debtors and Sellers have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all corporate authority necessary to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as expressly provided for in the Agreement, are required by the Debtors and Sellers to consummate such transactions; provided, however, that the consent of the DIP Lender and the Pre-Petition First Lien Lender (each as defined in the Bidding Procedures) and of Comerica Bank (as pertains to Comerica Bank, as set forth in paragraphs 13 and 15 of the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay and (4) Granting Related Relief* [Docket No. 487] (the "Polymers CC Order")) is required.

DM1\8391531.2
NAI-1503374685v15

M.     A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to sections 363(b) of the Bankruptcy Code. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Purchased Contracts is a legal, valid and effective transfer of the Purchased Assets and any Purchased Contracts.

N.     The Sellers and the Purchaser have, to the extent necessary, and subject to the terms and conditions set forth herein, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2), in connection with the sale of the Purchased Assets and the assumption and assignment of any Purchased Contracts. Adequate assurance of future performance with respect to all Purchased Contracts has been demonstrated. The assumption and assignment of the Purchased Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtors and Sellers, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors and Sellers.

O.     The Purchased Contracts are assignable notwithstanding any provisions contained therein to the contrary. The Debtors and Sellers or the Purchaser (as set forth in the Agreement) has provided for the cures and/or other payments or actions required to assume and assign the Purchased Contracts to the Purchaser.

P.     In the absence of a stay pending appeal, the Purchaser will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Agreement at any time on or after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

Q.     Except as otherwise expressly provided in the Agreement, the Purchased Assets shall be sold free and clear of all Encumbrances and Liens, with such Encumbrances and

-8-

Liens, if any, to attach to the consideration respectively to be received by the Sellers in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and Purchaser would not enter into the Agreement or consummate the transactions under the Agreement unless the Purchased Assets are transferred to Purchaser free and clear of any and all Encumbrances and Liens other than Permitted Exceptions and Assumed Liabilities. A sale of the Purchased Assets other than one free and clear of all Encumbrances and Liens would yield substantially less value for the Sellers' estates.

R.    The transfer of the Purchased Assets to Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Agreement, shall vest Purchaser with all right, title and interest of the Sellers to the Purchased Assets free and clear of any and all Encumbrances and Liens. Except as specifically provided in the Agreement or this Sale Order, the Purchaser shall not assume or become liable for any Encumbrances or Liens relating to the Purchased Assets.

S.    All persons having Encumbrances or Liens of any kind or nature whatsoever against or in any of the Debtors, Sellers or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Encumbrances or Liens against the Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets, other than with regard to Permitted Exceptions and Assumed Liabilities.

T.    The Debtors and Sellers can sell the Purchased Assets free and clear of all Encumbrances and Liens, of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Encumbrances and Liens and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Any holders of Encumbrances and Liens who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances and Liens, if any,

DMI\8391531.2
NAI-1503374685v15

attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Encumbrances and Liens, with such Encumbrances and Liens being subject to treatment as prescribed by separate order of this Court.

U. The Purchaser shall have no obligations with respect to any Liabilities, Encumbrances and Liens of the Debtors and Sellers other than Permitted Exceptions and Assumed Liabilities as expressly set forth in the Agreement.

V. The Sale of the Purchased Assets does not constitute a *sub rosa* chapter 11 plan.

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The Motion is granted in its entirety as set forth in this Order.

2. To the extent any objections and responses to the Motion have been raised, they are resolved in accordance with the terms of this Sale Order. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations and rights contained therein, is overruled and denied.

3. Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

4. The terms and conditions of the Agreement and the sale of the Purchased Assets contemplated thereby are hereby authorized and approved in all respects, pursuant to sections 105(a), 363(b), (f), (m), and (n), and 365 of the Bankruptcy Code.

5. Pursuant to sections 105(a), 363(b), (f), (m), and (n), and 365 of the Bankruptcy Code, the Debtors and Sellers are hereby authorized, directed and empowered to fully assume, perform under, consummate and implement the terms of the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, and other instruments of transfer, and to take all further

-10-

actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Sellers' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.

6. The Sellers shall be, and hereby are, authorized, empowered and directed, pursuant to sections 105, 363(b) and (f) of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser upon delivery of the consideration specified in the Agreement and completion of all other deliveries required at the Closing under the Agreement. Upon the Closing, the Purchased Assets shall vest Purchaser with all right, title and interest of the Sellers to the Purchased Assets free and clear of any and all Encumbrances and Liens (other than any Permitted Exceptions and Assumed Liabilities), including but not limited to Encumbrances or Liens arising from or under (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Debtors, Sellers, and any non-Debtor Affiliate; (iv) any welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Affiliate of the Debtors or Sellers, or any member of Debtors' or Sellers' "control group"; or any "multiemployer plan", as defined in Section 4001(a)(3) of ERISA ("Multiemployer Plan") contributed to by, or with respect to which Sellers, any Affiliate of the Debtors or Sellers, or any member of Debtors' or Sellers' "control group" has any Liability; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related Liability, including, without limitation, Liabilities that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act 1974, as amended, ("ERISA"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with

-11-

Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq., or (l) any other state or federal benefits or claims relating to any employment with the Debtors or Sellers or any of its predecessors; (vi) any environmental, health and safety laws with respect to any assets owned or operated by Debtors or Sellers or any corporate predecessor at any time prior to the Closing Date; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any violations, or other non-compliance with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto. All Encumbrances and Liens in or against the Purchased Assets shall attach to the consideration to be received by the Sellers under the Agreement, with the same force, validity, priority and effect as they now may have and subject to the same defenses and avoidability, if any, as before the Closing. Nothing in this Sale Order or the Agreement shall be held to limit any independent obligation of the Purchaser that potentially could arise after the Closing pursuant to the National Labor Relations Act, 29 U.S.C. §§ 145 et seq.

7.      Except to the extent specifically provided in the Agreement, upon the Closing, pursuant to sections 105 and 363(f) of the Bankruptcy Code, the Purchased Assets, including the Purchased Contracts, shall be transferred to Purchaser free and clear of any and all Encumbrances and Liens.

8.      If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances or Liens in or against the Purchased Assets shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or

-12-

releases of all such Encumbrances or Liens that the person or entity has with respect to the Purchased Assets, the Sellers or Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

9. This Sale Order shall be binding upon and govern the acts of all persons or entities, including, without limitation, all filing agents, recording agencies, secretaries of state, utility providers, providers of telephone and/or telecommunication services and all other persons and entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments.

10. Subject to the delivery by Purchaser of the consideration specified in the Agreement and completing all other deliveries required under the Agreement, effective as of the Closing and except as may be otherwise provided for in the Agreement, (a) the sale of the Purchased Assets by the Sellers to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Purchaser with all right, title and interest of the Sellers in and to the Purchased Assets, free and clear of all Encumbrances and Liens (other than Permitted Exceptions and Assumed Liabilities), pursuant to section 363(f) of the Bankruptcy Code; and (b) the assumption of any Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and shall irrevocably divest the Sellers of all liability or obligation with respect to all of the Assumed Liabilities.

11. All persons or entities which, presently or on or after the Closing Date, are in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

DMI\8391531.2
NAI-1503374685v15

12. The sale of the Purchased Assets to the Purchaser under the Agreement will constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions.

13. The Purchaser will not assume and is otherwise not obligated for any of the Sellers' or Debtors' Liabilities, Encumbrances or Liens other than any Permitted Exceptions and Assumed Liabilities as expressly set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, all holders of Encumbrances or Liens based upon or arising out of Liabilities retained by the Sellers are hereby enjoined from asserting or prosecuting any Liability, Encumbrances or Liens against the Purchaser or the Purchased Assets to recover on account of any Liabilities other than Permitted Exceptions and Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Encumbrance or Lien in or against any of the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances or Lien against the Purchaser or the Purchased Assets for any Liability associated with the Excluded Assets.

14. Subject to the terms of the Agreement and the Closing of the sale transaction, the sale, assumption and assignment of the Purchased Contracts is approved pursuant to sections 363 and 365 of the Bankruptcy Code.

15. At the Closing, the Sellers are hereby authorized and directed to assume and assign the Purchased Contracts as set forth in Schedule 2.1(b)(vi) to the Agreement, subject only to (a) the payment of all cures and/or other payments or actions required to assume and assign the Purchased Contracts to the Purchaser; and (b) the Purchaser's right to exclude Purchased Contracts from the definition of Purchased Contracts in accordance with the terms of the Agreement. To the extent the Purchaser excludes any Purchased Contracts from the definition of Purchased Contracts, the Debtors or Sellers shall file a revised Schedule 2.1(b)(vi) to the Agreement with the Court and provide notice thereof to the counterparty to such contract. The payment of the Cure Costs due under each Purchased Contract pursuant to section 365(b) of

-14-

the Bankruptcy Code by the Purchaser under the Agreement (a) cures all monetary defaults existing thereunder as of the assignment of the Purchased Contracts to the Purchaser in accordance with the terms of the Agreement; (b) compensates the applicable counterparties to the Purchased Contracts for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Purchased Contracts by the Sellers and the assignment of the Purchased Contracts to the Purchaser constitutes adequate assurance of future performance thereof.

16.     The Purchaser has provided adequate assurance of future performance under the Purchased Contracts and the proposed assumption and assignment of the Purchased Contracts satisfies the requirements of the Bankruptcy Code, including sections 365(b)(l) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

17.     Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Sale Order, the Purchaser shall promptly pay or cause to be paid to the parties to any Purchased Contracts the requisite Cure Costs, if any, or such lesser amount as may be agreed upon between the Sellers or Purchaser and the counter-party to an Purchased Contract, following the assumption and assignment thereof.

18.     The Purchased Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms.  Any provision in any Purchased Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Sellers is unenforceable, and all Purchased Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Cost, if any.  No sections or provisions of any Purchased Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Purchased Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise

-15-

unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Purchased Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Purchased Contract. The non-Debtor party to each Purchased Contract shall be deemed to have consented to such assignment under section 365(e)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Purchased Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof.

19.     Sellers and any other Debtors (to the extent applicable) are authorized and directed to (a) take any and all actions necessary to grant to Purchaser any and all intellectual property licenses set forth in Section 8.11 of the Agreement and pursuant to the terms thereof (the "New IP Licenses"), and (b) implement, effectuate and perform under any such New IP Licenses. Additionally, Sellers or any other Debtors (to the extent applicable), respectively, shall not (i) reject, terminate, transfer or otherwise assign any of the New IP Licenses other than pursuant to the terms of Section 8.11 of the Agreement, or (ii) knowingly take any action that would render the New IP Licenses unenforceable by Purchaser.

20.     Except as may be provided in this Sale Order, upon the assumption and assignment thereof, and except for allowed claims for Cure Costs payable by the Purchaser under a Purchased Contract, each non-debtor party to a Purchased Contract shall be forever barred and enjoined from asserting against the Debtors or Sellers, their bankruptcy estates or the Purchaser: (a) any default, monetary or non-monetary, existing as of the Closing Date; or (b) any objection to the assumption and assignment of such non-debtor party's Purchased Contracts, whether or not such non-debtor party filed a proof of claim.

21.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Sale Order.

DMI\8391531.2
NAI-1503374685v15

22.     The provisions of this Sale Order authorizing the sale of the Purchased Assets free and clear of Encumbrances and Liens, other than Permitted Exceptions and Assumed Liabilities, shall be self-executing, and neither the Debtors, Sellers nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order. However, the Debtors, Sellers and the Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors, Sellers or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order. Effective as of the Closing, the Purchaser, its successors and assigns, shall be designated and appointed the Debtors' and Sellers' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' and Sellers' names and stead, on behalf and for the benefit of the Purchaser, its successors and assigns, to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof, and from time to time to institute and prosecute in any of the Debtors' or Sellers' name, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets which the Purchaser, its successors and assigns, shall deem desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors and the Sellers.

23.     The Purchaser is not a "successor" to the Debtors or Sellers or their bankruptcy estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for, any Liability or obligation of any of the Debtors, Sellers and/or their estates, including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the Agreement.

-17-

For the avoidance of doubt, the Purchaser shall not in any way be responsible for or be considered to have any successor liability with respect to any withdrawal liability or any Liability with respect to any Multiemployer Plan contributed to by, or with respect to which Sellers, any Affiliate of the Debtors or Sellers, or any member of Debtors' or Sellers' "control group" has any Liability. Except to the extent the Purchaser assumes any Assumed Liabilities pursuant to the Agreement, neither the purchase of the Purchased Assets by the Purchaser or its Affiliates, nor the subsequent use by the Purchaser or its Affiliates of any of the Purchased Assets previously operated by the Debtors and Sellers will cause the Purchaser or any of its Affiliates to be deemed a successor in any respect to the Debtors' or the Sellers' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' or the Sellers' liability under such law, rule or regulation, or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' or the Sellers' liability under such law, rule or regulation or doctrine. Notwithstanding the foregoing, nothing herein shall preclude a creditor from prosecuting, defending, and potentially recovering on a timely and duly filed claim against the applicable Sellers' estate, but in no event against the Purchaser or the Purchased Assets.

24. Except to the extent expressly included in the Assumed Liabilities or Permitted Exceptions, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors, Sellers, all debt security holders, equity security holders, the Debtors' and Sellers' employees or former employees (including retirees), governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Liability, Encumbrance or Lien of any kind or nature whatsoever against, in or with respect to any of the Debtors, Sellers or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured,

-18-

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, Sellers, the Purchased Assets, the operation and maintenance of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liability, Encumbrance or Lien against the Purchased Assets, the Purchaser or any Affiliate of the Purchaser, successor or assign thereof and each of their respective current and former members, officers, directors, investment advisors, attorneys, employees, partners, Affiliates and representatives (each of the foregoing in its individual capacity). For the avoidance of doubt, the foregoing shall not prevent the Sellers, or their estates, successors or permitted assigns from pursuing claims, if any, against the Purchaser relating to the Purchaser's performance under the terms of the Agreement.

25. Notwithstanding anything in this Sale Order or Agreement, nothing contained in this Sale Order or the Agreement (a) releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) that any entity would be subject to as the owner or operator of the assets transferred pursuant to the Agreement after the date of entry of this Sale Order; provided, however, that the foregoing shall not limit, diminish or otherwise alter the Debtors', Sellers' or Purchaser's, as applicable, defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property; (b) shall be construed to create for any governmental unit any substantive right that does not already exist under applicable law or (c) authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law governing such transfer or assignment; provided that, notwithstanding the foregoing, nothing herein shall be construed to permit a governmental unit to assert, assess or obtain penalties, fines,

-19-

or other fees from Purchaser for violations of any such requirement that occurred prior to the Closing Date as a result of the operation of the Purchased Assets; provided, further, if any such violation continues after the Closing Date such governmental unit may seek to assert, assess or obtain penalties, fines or other fees from Purchaser for the period of time after the Closing Date that such violations occurred.

26.     Subject to the terms of the Agreement, the provisions of the Agreement may be waived, modified, amended, or supplemented by agreement of the Sellers and the Purchaser without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the Agreement and any related agreements.

27.     Except with respect to any Assumed Liabilities, and notwithstanding anything to the contrary in the Collective Bargaining Agreement (including but not limited to a "successor clause" or "successorship clause"), nothing in this Sale Order or the Agreement shall require the Purchaser to (a) continue or maintain in effect, or assume any liability in respect of the Collective Bargaining Agreement or any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors or the Sellers are a party or have any responsibility therefor including, without limitation, Retiree Benefits, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee pension plan or the termination of any such plan, and the Purchaser shall have no obligation for any Liabilities associated with the items described in this paragraph 27(a) and (b) of this Sale Order.

28.     Consummation of the Agreement and the transactions contemplated therein and thereby do not effect a *de facto* merger or consolidation of the Sellers or Debtors and the Purchaser or result in the continuation of the Debtors' or Sellers' businesses under the

-20-

Purchaser's control. The Purchaser is not the alter ego of, a successor in interest to, or a continuation of the Debtors or Sellers, nor is the Purchaser otherwise liable for the Debtors' Liabilities, Encumbrances and Liens, unless specifically provided for in the Agreement.

29. All of the Sellers' interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

30. The transactions contemplated by the Agreement have been bargained for and undertaken by the Purchaser, the Sellers and the Debtors at arms' length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. As such, the Purchaser is hereby granted and is entitled to the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to any transfer of any Purchased Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order.

31. The Backup Bidder, as set forth in the Auction Results Notice, is hereby approved and the Backup Bid is hereby approved and authorized. In accordance with and subject in all respects to paragraph 10 of the Stalking Horse Order, the Backup Bid for the Apple Grove Assets that are the subject of such Backup Bid shall remain binding on the Backup Bidder until March 1, 2018. The Debtors or the Sellers are hereby authorized and directed to hold in accordance with the Bidding Procedures the Good Faith Deposit with respect to the Barrier IP Assets (as increased by the Incremental Deposit Amount (as defined in the Bidding Procedures), if applicable) funded by the Backup Bidder, and release and deliver such Good Faith Deposit on or before March 5, 2018. In the event the Agreement is terminated pursuant to its terms and the

-21-

sale of the Purchased Assets to the Purchaser is not consummated, then the Backup Bidder will be deemed the Successful Bidder in accordance with the Bidding Procedures (but subject to paragraph 10 of the Stalking Horse Order) and, in such case, the Debtors or the Sellers shall, within one business day of the selection of the Backup Bid as the Successful Bid, file with the Court (a) the proposed sale order substantially in the form attached as Exhibit D to Schedule 1 of the Auction Results Notice for entry by the Court upon certification of counsel and (b) a notice advising (x) that the Agreement with the Purchaser has not been consummated, (y) that the Backup Bid has become the Successful Bid pursuant to this Sale Order and (z) of the Closing Dates of the Sale Transactions under the Backup Bids.[4]

32.     If the Agreement is terminated by Sellers pursuant to Section 4.4(d)(i), then Sellers' sole remedy for monetary damages against Purchaser shall be limited to 10% of the Purchase Price payable to Sellers by retention of the Good Faith Deposit or, in the event that Purchaser has been substituted for Indorama as the Lender, retention of the Good Faith Deposit less the amount of the Polymers DIP Advances and Polymers DIP Obligations (both as defined in the Polymers DIP Loan Agreement) owed by M&G Polymers under the Polymers DIP Loan Agreement and Polymers DIP Orders (to the extent applicable). The retention of all or a portion of the Good Faith Deposit as described herein shall constitute Sellers' full and complete liquidated damages and Sellers' sole and exclusive remedy for monetary damages against Purchaser or any of its affiliates or their respective partners, officers, directors and shareholders for any and all damages suffered or incurred by Sellers in connection with the Agreement or any related document, any of the transactions contemplated hereby or thereby (or the abandonment or termination thereof) or any matters forming the basis for such abandonment or termination.

33.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors and the Sellers to the extent necessary, without further order of this Court, to allow the Purchaser to deliver any notice provided for in the

---

[4] Capitalized terms used in this paragraph but not otherwise defined in this Sale Order shall have the meanings given to such terms in the Bidding Procedures.

Agreement and allow the Purchaser to take any and all actions permitted or required under the Agreement in accordance with the terms and conditions thereof. The Purchaser shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other sale-related document.

34.     Upon consummation of the sale approved by this Sale Order, and to the extent applicable, the Debtors or the Sellers shall retain originals or copies of, and preserve in accordance with their discovery obligations, all hard copy documents and data and information that constitute Purchased Assets and any other document, data or information stored on or in servers, backup devices, mobile devices, electronic storage devices, or miscellaneous IT equipment, in each case, that constitutes Purchased Assets, currently in the Debtors' or the Sellers' possession, custody, or control pertaining to pending or threatened litigation or necessary to administer these Cases.

35.     The sale approved by this Sale Order is not subject to avoidance or the imposition of an award of monetary damages pursuant to section 363(n) of the Bankruptcy Code.

36.     This Sale Order shall inure to the benefit of the Purchaser, the Debtors and the Sellers and their respective successors and assigns, including, but not limited to, any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' or Sellers' Chapter 11 cases, and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these chapter 11 cases or any other or further case involving the Debtors or Sellers, whether under chapter 7 or chapter 11 of the Bankruptcy Code. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Sale Order, including the rights granted to the Purchaser hereunder, shall remain effective and, notwithstanding such conversion of dismissal, shall remain binding on the Debtors, Sellers, their estates, successor, assigns and creditors.

DM1\8391531.2
NAI-1503374685v15

37.     Any consideration received from the Purchaser in connection with the sale transaction may not be used (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of the Pre-Petition First Lien Lender or any of the DIP Secured Parties (each as defined in the DIP Orders (as defined in the Bidding Procedures)) or its rights and remedies under any documents governing or in connection with any financing provided by the Pre-Petition First Lien Lender or any of the DIP Secured Parties to any of the Debtors prior to or after their respective Petition Dates, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, any liens granted by any of the Debtors to the Pre-Petition First Lien Lender or any of the DIP Secured Parties, (iii) for monetary, injunctive or other affirmative relief against the Pre-Petition First Lien Lender or any of the DIP Secured Parties or any of their respective collateral, or (iv) preventing, hindering or otherwise delaying the exercise by the Pre-Petition First Lien Lender or any of the DIP Secured Parties of any rights and remedies under this Order or under any documents or orders governing or in connection with financing provided by the Pre-Petition First Lien Lender or any of the DIP Secured Parties to any of the Debtors; (b) to assert, commence or prosecute any claims or causes of action whatsoever against the Pre-Petition First Lien Lender or any of the DIP Secured Parties, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code; or (c) to prosecute an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the liens granted in favor of the Pre-Petition First Lien Lender or any of the DIP Secured Parties securing the Pre-Petition First Lien Obligations or the DIP Obligations, respectively. Following the payment in full in cash of the DIP Secured Parties and the Pre-Petition First Lien Lender on account of the DIP Obligation and the Pre-Petition First Lien Obligations on a final, non-avoidable basis, the foregoing shall not restrict the use of any further consideration from the sale transaction then remaining in the Debtors' estates (if any), to reimburse professionals retained by

DM1\8391531.2
NAI-1503374685v15

the Debtors or the Committee for any fees and expenses accrued prior to the time such claims were paid in full and that remain unpaid.

38. Notwithstanding anything herein or in the Agreement to the contrary, the liens provided pursuant to the DIP Credit Documents (as defined in the Final DIP Order (as defined in the Bidding Procedures)) shall attach to any consideration to be received by M&G Corp. in respect of the New IP Licenses and any of the Purchased Assets that were assets of M&G Corp. before Closing; provided that the consideration received from the Purchaser in connection with the sale transaction shall allocate (x) at least $9.5 million and no greater than $9.9 million to M&G Corp. in respect of the New IP Licenses and any of the Purchased Assets that were assets of M&G Corp. before Closing and (y)(i)$9.6 million of the proceeds of sale of the Purchased Assets comprising the Apple Grove Facility (as defined in the Polymers CC Order) and (ii) at least $1.0 million of the proceeds of the sale of the Purchased Assets comprising property of M&G Polymers described in paragraph 5(b)(i)(y) of the Polymers CC Order, in each case of clauses (i) and (ii), to M & G Polymers in respect of the Comerica Adequate Protection Lien (as defined in the Polymers CC Order), which, for the avoidance of doubt, shall be subject to the Comerica Adequate Protection Lien.

39. All rights of the respective estates of the Sellers and the creditors holding or asserting any Encumbrance or Lien in or against the Purchased Assets with respect to the allocation of consideration received from the Purchaser in connection with the sale transaction are expressly reserved for later determination by this Court (and no distributions of any consideration shall be made without further determination by the Court, except for (a) the distribution of proceeds of purchased assets of M&G Corp. that comprise DIP Collateral in the DIP Allocation Amount (as defined below) and in accordance with the DIP Loan Documents and the DIP Orders (as such terms are defined in the Final DIP Order[5]); and (b) upon Closing, the

---

[5] *Final Order Granting Debtors' Motion to (1) Authorize Certain Debtors In Possession To Obtain Post Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (2) Grant Liens and Superpriority Administrative Expense Claims to DIP Lender Pursuant To 11 U.S.C. §§ 364 and 507; (3) Provide Adequate Protection to the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party; (4) Modify*

-25-

payment of all outstanding Obligations (as defined in the Polymers DIP Loan Agreement) due under the Polymers DIP Loan Agreement (the "Polymers DIP Payment Amount") to Indorama Netherlands B.V. (or its assignee), which Polymers DIP Payment Amount shall be wired by Purchaser or M&G Polymers directly to Indorama Netherlands B.V. (or its assignee) in connection with the Closing from the Closing Payment)) and, to the extent consideration is received by one of Sellers and is determined not to be subject to any such Encumbrances or Liens and to be allocable to the other of such Debtors, such other Debtor shall have an administrative expense claim against the recipient Debtor under section 503(b) of the Bankruptcy Code; provided that, notwithstanding the foregoing (except the payments described in the immediately preceding clauses (a) and (b)), (i) $9.6 million of the proceeds of sale of the Purchased Assets comprising the Apple Grove Facility (as defined in the Polymers CC Order) and at least $1.0 million of the proceeds of sale of the Purchased Assets comprising property of M&G Polymers described in paragraph 5(b)(i)(y) of the Polymers CC Order shall be allocated to the estate of M&G Polymers in respect of the Comerica Adequate Protection Lien (as defined in the Polymers CC Order), which, for the avoidance of doubt, shall be subject to the Comerica Adequate Protection Lien, (ii) the proceeds of the Purchased Assets shall be allocated to Inventory (as defined in the Polymers CC Order) in an amount equal to 100% of the book value of such Inventory consisting of finished goods and 50% of the book value of such Inventory consisting of raw materials, in each case, measured at Closing, and (iii) at least $9.5 million and no greater than $9.9 million of the proceeds (the allocated amount within such numerical range, the "DIP Allocation Amount") of the Purchased Assets comprising the New IP Licenses and the Purchased Assets that were assets of M&G Corp. before Closing shall be allocated to the estate of M&G Corp. and shall constitute Net Asset Sale Proceeds applied and paid in accordance with Sections 2.11(a) and 2.12(a) of the DIP Loan Agreement (as defined in the Final DIP Order); provided, further, that the Expense Reimbursement shall be held in escrow by the Debtors and

*Automatic Stay Pursuant To 11 U.S.C. §§ 361, 362, 363, 364 and 507; and (5) Granting Related Relief* [Docket No. 479] (the "Final DIP Order").

-26-

subsequently paid in accordance with the Stalking Horse Order and the Stalking Horse Agreement.

40.    Notwithstanding anything to the contrary in the Agreement, Purchaser shall only be substituted for Indorama Netherlands B.V. as DIP Lender (as defined in the Agreement) in the event that all outstanding Obligations (as defined in the Polymers DIP Loan Agreement) due to Indorama Netherlands B.V. (or its assignee) under the Polymers DIP Loan Agreement are paid in full by from Purchaser to Indorama Netherlands B.V. (or its assignee) in connection with such substitution as DIP Lender (as defined in the Agreement).

41.    Notwithstanding anything to the contrary herein, the Sale approved hereby does not include (a) the Purified Isophthalic Acid (the "PIA") that was delivered to M&G Polymers USA, LLC by Eastman Chemical Company ("Eastman") and which remains stored in rail cars, or (b) any rail cars that contain or previously contained PIA delivered by Eastman to any of the Debtors (collectively, the "Rail Cars"). The Debtors and Eastman reserve all of their respective rights with respect to the PIA and the Rail Cars.

42.    The Debtors shall retain, store and preserve and not abandon its records related to the M&G Polymers USA, LLC Hourly Pension Plan or the M&G Polymers USA, LLC Salaried Employees' Retirement Plan (the "Pension Plans") and the governing documents, actuarial documents of, and personnel files of participants in either of the Pension Plans (the "Pension Plan Documents") until the Pension Benefit Guaranty Corporation ("PBGC") has completed its investigation regarding the Pension Plans and shall make such documents available to PBGC for inspection and copying during normal business hours upon written request and reasonable written prior notice; provided that such obligations shall terminate upon Closing with respect to any Pension Plan Documents that remain at the APG Facility from and after Closing. Further, Debtors shall notify PBGC at least 30 days prior to the destruction of any Pension Plan Documents so that PBGC may have the opportunity to take possession of any necessary Pension Plan Documents in advance of destruction. In addition, after Closing, the Purchaser shall use

-27-

commercially reasonable efforts to comply with the PBGC's written requests upon reasonable prior notice to inspect or copy (during normal business hours, if applicable) any Pension Plan Documents in either of the Pension Plans and shall notify PBGC at least 30 days prior to the destruction of any Pension Plan Documents so that PBGC may have the opportunity to take possession of any necessary Pension Plan Documents in advance of destruction.

43. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 9006(c)(l). In the absence of any entity obtaining a stay pending appeal, the Debtors, Sellers and the Purchaser are free to close under the Agreement at any time. In the absence of any entity obtaining a stay pending appeal, if the Sellers and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protection of section 363(m) of the Bankruptcy Code as to all aspects of the transactions contemplated by the Agreement, regardless of whether this Sale Order or any authorization contained herein is reversed or modified on appeal, provided, however, nothing contained in this Sale Order shall require the Purchaser to Close until all conditions for Closing set forth in the Agreement have been satisfied or waived, including the condition that the Sale Order becomes a Final Order.

44. The provisions of this Sale Order are non-severable and mutually dependent.

45. The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, Sellers, and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order and the Agreement.

46. This Court shall retain exclusive jurisdiction to enforce the provisions of this Sale Order and the Agreement, and to resolve any dispute concerning this Sale Order, the Agreement, or the rights and duties of the parties thereunder or any issues relating to the

-28-

Agreement and this Sale Order, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Purchased Contracts, and all issues and disputes arising in connection with the relief authorized herein. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement the terms of the Sale Order shall control.

47.     The requirements set forth in Bankruptcy Rule 6004(a) and Local Rule 6004(a)-1 are satisfied.

48.     The Debtors, the Sellers and the Purchaser are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

Dated: February 1, 2018

Honorable Brendan L. Shannon
Chief United States Bankruptcy Judge

-29-