# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered) |

### DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING THE ASSUMPTION OF MODIFIED ADMINISTRATIVE SERVICES AGREEMENT AND MASTER SERVICES AGREEMENT WITH AETNA LIFE INSURANCE COMPANY, (II) APPROVING THE PAYMENT OF A SPECIAL ADMINISTRATIVE FEE, (III) AUTHORIZING THE ESTABLISHMENT AND FUNDING OF A RESERVE FOR EMPLOYEE HEALTHCARE CLAIMS, (IV) SUPPLEMENTING THE WAGE ORDER, (V) MODIFYING THE AUTOMATIC STAY AND (VI) GRANTING CERTAIN RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), move the Court (this "Motion"), pursuant to sections 105, 362, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached as Exhibit A (the "Proposed Order"), (i) authorizing Debtor M&G Polymers USA, LLC ("M&G Polymers") to assume the Administrative Services Agreement and Master Services Agreement (each as defined below) as modified by the terms set forth in this Motion and the Proposed Order, (ii) approving the payment of an administrative services fee to Aetna Life Insurance Company ("Aetna"), (iii) authorizing the establishment and funding of a reserve to cover employee

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

NAI-1503297848v10

healthcare claims, (iv) supplementing the Wage Order (as defined below), (v) modifying the automatic stay for the limited purposes set forth herein and (vi) granting certain related relief. In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.      General Background**

2. On October 24, 2017, Debtor M&G Polymers filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) filed on October 31, 2017 and incorporated herein by reference.

**B.      The Administrative Services Agreement, Master Services Agreement & Employee Benefits**

4. On September 1, 2002, M&G Polymers and Aetna entered into an Administrative Services Agreement, ASA-813266 (the "Administrative Services Agreement") and, thereafter, a

Master Services Agreement effective September 1, 2015, MSA-813226 (the "Master Services Agreement" and together with the Administrative Services Agreement, the "Aetna Agreements").[2] Pursuant to the Aetna Agreements, Aetna agreed to act as the network provider and third-party claims administrator for M&G Polymers' self-insured employee and retiree medical benefit plans. Under this arrangement, Aetna serves as an intermediary between medical providers and M&G Polymers by, for example, confirming employee eligibility for coverage under an applicable plan and advancing funds to healthcare providers to pay for covered medical expenses on behalf of employees. Aetna then invoices the Debtors for the funds advanced. In exchange for these services, Aetna receives an administrative services fee of approximately $25,000 per month (the "Monthly Administrative Services Fee").

5. On October 31, 2017, the Debtors filed the *Motion for an Order Authorizing the Debtors to Pay Prepetition Employee Wages, Benefits and Related Items* (Docket No. 8) (the "Wages Motion") as part of their request for first day relief. On November 1, 2017, this Court entered an order approving the Wage Motion (Docket No. 69) (the "Wages Order") and authorizing the Debtors to, among other things, pay up to $700,000 in prepetition employee healthcare claims, subject to restrictions imposed by orders approving the Debtors' postpetition financing and access to cash collateral.

6. Also on November 1, 2017, this Court entered an order authorizing the Debtors to enter into a $100 million postpetition debtor in possession credit facility (the "DIP Facility") on an interim basis (Docket No. 62). The Debtors' entry into the DIP Facility on a final basis was subsequently approved on December 1, 2017 (Docket No. 479) (the "Final DIP Order"). The DIP Facility provides the Debtors with access to funding for the administrative expenses of these

---

[2] Upon the Debtors' information and belief, the Aetna Agreements were never signed by the Debtors; however, prepetition, the parties historically operated pursuant to the terms thereof as if they had been executed.

Cases and certain of the Debtors' day to day operational expenses, including expenses related to healthcare coverage for certain current and former employees of M&G Resins USA, LLC ("M&G Resins") that also are administered by Aetna pursuant to the Aetna Agreements. The claims of M&G Resins' employees have been processed and paid by Aetna and the Debtors in the ordinary course of business during the course of these Cases.[3]

### C. The Cash Collateral Budget and Use of Funds for Healthcare Claims

7. Funding from the DIP Facility cannot be used to fund the expenses of Debtor M&G Polymers. Rather, prior to February 1, 2018, funding for that entity was governed by the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay and (4) Granting Related Relief* (Docket No. 487) (the "Final Cash Collateral Order"), which authorized M&G Polymers to use cash collateral pledged to Comerica Bank for certain limited purposes in accordance with an approved budget (the "Cash Collateral Budget").

8. On November 2, 2017, as part of the Debtors' first day relief, the Court entered an interim cash collateral order (Docket No. 91) (the "Interim Cash Collateral Order"), which authorized funding for some, but not all, of M&G Polymers' prepetition employee healthcare claims up to specific capped amounts. For example, funding was available under the Interim Cash Collateral Order for the prepetition healthcare claims of retirees and employees that continued to perform work for M&G Polymers on a postpetition basis up to a budgeted amount,

---

[3] Effective as of January 1, 2018, M&G Resins' employees transferred to a fully insured medical plan administered by United Healthcare, and thus were no longer eligible under the Aetna Agreements for claims incurred on or after January 1, 2018. Aetna will continue to administer and pay claims incurred prior to January 1, 2018 by eligible M&G Resins' employees (and related enrolled members), subject to the terms and conditions of the Aetna Agreements and receipt of timely reimbursement from M&G Resins, through the Runout Period (defined below).

but not for union and non-union employees that were not providing services on a postpetition basis. Because Aetna's claims processing systems are not designed to support the specific eligibility and financial limitations that were imposed by the Interim Cash Collateral Order, Aetna was unable to process claims in the ordinary course of business in a manner that comported with the restrictions imposed by such order. To avoid unauthorized payments, Aetna suspended the electronic processing of claims while the Debtors and Aetna resolved outstanding issues regarding claim eligibility and funding.

9. Following entry of the Interim Cash Collateral Order, the Debtors worked with Comerica and other stakeholders to revise the Cash Collateral Budget approved in the Interim Cash Collateral Order to increase the funding available to M&G Polymers. The Cash Collateral Budget approved by the Final Cash Collateral Order included additional funds to satisfy certain of M&G Polymers' expenses, including employee and retiree healthcare claims.

10. Pursuant to the Wage Order and Final Cash Collateral Order, on December 29, 2017, the Debtors wired $742,432.74 to Aetna, which represented the amount of funds Aetna already had advanced for valid claims submitted by medical providers on behalf of eligible M&G Polymers' employees and retirees (and enrolled dependents) as of December 19, 2017.[4] On January 31, 2018, the Debtors wired to Aetna an additional $3,187,087.26, which represented the amount of remaining funds available under the Cash Collateral Budget (after giving effect to budget variances) to satisfy employee and retiree healthcare claims (the funds transferred to Aetna on December 29, 2017 and January 31, 2018, collectively, the "Aetna Advanced Funds").

---

[4] Of this amount, $344,314.74 is related to prepetition claims.

### D. The Polymers DIP Facility

11. The Cash Collateral Budget expired at the end of January 2018. Therefore, in connection with the process M&G Polymers conducted for the sale of its manufacturing facility in Apple Grove, West Virginia (the "Apple Grove Plant") and certain other assets, M&G Polymers obtained access to an additional $5 million in post-petition financing (the "Polymers DIP Facility"), from Indorama Netherlands B.V., the stalking horse purchaser for the sale of the Apple Grove Plant and other assets. An order authorizing the Debtors to enter into the Polymers DIP Facility on an interim basis was entered by the Court on January 19, 2018 (Docket No. 720). On February 1, 2018, the Court entered an order (Docket No. 865) approving M&G Polymers' entry into the Polymers DIP Facility on a final basis (the "Final Polymers DIP Order").

12. The budget approved in connection with the Polymers DIP Facility (the "Polymers DIP Budget") provides additional funding for M&G Polymers' expenses during the pendency of the sale process, including, among other things, (a) $400,000 for the healthcare claims of eligible union employees (and enrolled dependents) administered by Aetna, (b) $400,000 for healthcare claims of eligible retirees (and enrolled dependents) and (c) $375,000 for the healthcare claims of M&G Polymers' eligible continuing employees (and enrolled dependents) (the amounts listed in (a)-(c) collectively, the "DIP Healthcare Funds").

### E. The Proposed Claims Processing Funding and Mechanics

13. As noted above, due to the restrictions imposed by M&G Polymers' sources of financing and the need to track and pay claims in accordance with the Cash Collateral Budget, Aetna was unable to process claims in the ordinary course and suspended electronic processing of claims in order to avoid making unauthorized payments.

14. Aetna and the Debtors have expended significant resources establishing a framework and funding mechanism to enable Aetna to continue processing claims. Resuming

processing of healthcare claims is a priority of the Debtors and other stakeholders, and the terms of the Proposed Order, which were negotiated in good faith with Aetna, will allow the Debtors to overcome significant challenges associated with funding and administering employee benefit obligations. The Debtors understand that Aetna expects to resume processing healthcare claims prior to or promptly upon entry of the Proposed Order.

15. Subject to entry of the Proposed Order, the Debtors have agreed to (a) advance available portions of the DIP Healthcare Funds in accordance with the Polymers DIP Budget as needed to fund the payment of valid healthcare claims of eligible employees and retirees (and enrolled dependents) to the extent the Aetna Advanced Funds are insufficient to pay such claims, (b) upon termination of the Aetna Agreements, transfer any remaining DIP Healthcare Funds to Aetna to establish, together with remaining Aetna Advanced Funds (if any), a six-month runout reserve to fund claims that were incurred prior to termination of the Aetna Agreements but have not yet come due or been processed as of the termination date (the "<u>Runout Reserve</u>")[5] and (c) pay Aetna promptly upon entry of the Proposed Order a one-time special administrative fee of $50,000 (the "<u>Special Administrative Fee</u>") to cover the increased administrative processing costs Aetna has incurred in connection with the manual allocation of claims among the various M&G Polymers employee populations in accordance with the Interim and Final Cash Collateral Orders, Cash Collateral Budget and Polymers DIP Budget.

---

[5] Unless otherwise agreed to by Aetna and M&G Polymers (or any successor to its estate), any remaining funds held by Aetna at the conclusion of the six-month period following termination of the Aetna Agreements (the "<u>Runout Period</u>") that are not necessary to satisfy claims received by Aetna during the Runout Period will be returned to M&G Polymers (or the successor to M&G Polymers' estate) as soon as reasonably practicable after Aetna's reconciliation of such claims upon the conclusion of the Runout Period; <u>provided</u>, however, that, unless otherwise agreed to by Aetna and M&G Polymers (or any successor to its estate), in no event will such funds be returned to M&G Polymers (or the successor to its estate) later than 60 days following the conclusion of the Runout Period.

16. In order to permit Aetna to continue providing the Debtors with employee benefit administrative and processing services while at the same time recognizing the circumstances of these Cases and the Debtors' changed needs, subject to entry of the Proposed Order, the Debtors also propose to assume the Aetna Agreements as modified by the Proposed Order.

## RELIEF REQUESTED

17. The Debtors request entry of an order, in substantially the form of the Proposed Order (a) authorizing the Debtors to assume the Administrative Services Agreement and Master Services Agreement as modified by the terms of the Proposed Order, (b) approving the payment of the Special Administrative Fee, (c) authorizing the establishment and funding of the Runout Reserve, (d) supplementing the Wage Order, (e) modifying the automatic stay for the limited purposes set forth herein and (f) granting certain related relief.

## BASIS FOR RELIEF REQUESTED

**A. Assumption of the Administrative Services Agreement and Master Services Agreement is an Appropriate Exercise of the Debtors' Business Judgment and Should Be Approved**

18. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract . . . ." 11 U.S.C. § 365(a). Courts employ a business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract. *See, e.g., In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection "will be a matter of business judgment by the bankruptcy court . . . ."). The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the executory contract will benefit the estate."

*Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.),* 872 F.2d 36, 39 (3d Cir. 1989).

19. Section 365(b), which codifies the requirements for assuming an executory contract, provides, in pertinent part, that the debtor may only assume an executory contract if it:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure [any defaults existing under the executory contract]; (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract . . . for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.
>
> 11 U.S.C. § 365(b).

While undefined by the Bankruptcy Code, adequate assurance is guided by "a practical, pragmatic construction based upon the facts and circumstances of each case." *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (quoting *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985)). While no single standard governs every case, adequate assurance "will fall considerably short of an absolute guarantee of performance." *Id*.

20. Assumption of the Administrative Services Agreement and Master Services Agreement, as modified by the terms of the Proposed Order, is an exercise of M&G Polymers' sound business judgment and in the best interests of its estate. Pursuant to the Aetna Agreements, Aetna provides M&G Polymers with healthcare claims review and processing services that are essential to M&G Polymers' fulfillment of its obligations to current and former employees under its self-insured benefit plans. Given the material modifications requested by the Debtors to the claims administration process, Aetna is unwilling to continue providing those services (as modified) or advancing funds on an unsecured basis to medical providers to cover

employee claims without the protections that assumption of the Aetna Agreements will provide. Therefore, absent assumption of the Aetna Agreements, M&G Polymers will be unable to utilize Aetna to satisfy employee healthcare claims, which would have significant negative impacts on its estate, including further employee attrition resulting in an inability to effectively complete M&G Polymers' sale process or administer its chapter 11 case. Further, if M&G Polymers is not able to continue administering its self-insured benefit plans, it may be unable to fulfill its obligations under certain of its other contracts, such as its collective bargaining agreement with the United Steelworkers Local 664L, on a go-forward basis.

21. Additionally, assuming the Aetna Agreements will not subject M&G Polymers to significant additional liabilities for an extended period of time. Notwithstanding any contrary terms of the Aetna Agreements, the Debtors and Aetna have agreed that the Aetna Agreements will terminate upon 14 days' written notice to Aetna. By assuming the Aetna Agreements for a limited duration, the Debtors are limiting the amount of fees that they will be required to pay to Aetna to administer M&G Polymers' benefit plans. Further, the majority of M&G Polymers' other obligations under the Aetna Agreements are non-monetary or are obligations M&G Polymers already has as the plan sponsor of a self-insured plan (*e.g.*, to fund the underlying claims). Accordingly, the Debtors submit that it is in the best interest of their estates and a valid exercise of their business judgment for M&G Polymers to assume the Aetna Agreements.

22. Payment of the Aetna Advanced Funds and Special Administrative Fee, upon application by Aetna of the Aetna Advanced Funds against any additional unreimbursed amounts advanced to date by Aetna under the Aetna Agreements, has and will cure any default under the Aetna Agreements and Aetna will not be entitled to any further cure on account of the assumption of the Aetna Agreements. Further, entry of the Final DIP Order, Final Cash

Collateral Order, Final Polymers DIP Order and related budgets, in addition to the payment of the Aetna Advanced Funds and establishment of the Runout Reserve, will serve as adequate assurance of the Debtors' future performance under the Aetna Agreements.

23. As further adequate assurance, the Debtors have agreed with Aetna and hereby request that the Court modify the automatic stay, to the extent applicable after assumption, to allow Aetna to exercise its rights to apply certain amounts that may be outstanding under the Aetna Agreements against funds held by Aetna, and to terminate the Aetna Agreements upon five business days' written notice to the Debtors and the Committee, without further order of the Court, should the Debtors fail to fulfill their obligations under any order approving this Motion.

24. The Debtors and Aetna have agreed that in the event Aetna exercises its right to terminate the Aetna Agreements, Aetna will discontinue processing all claims incurred after the termination date; however, Aetna will continue to process claims incurred prior to the termination date in accordance with paragraph 4(D) of the General Terms and Conditions addendum to the Administrative Services Agreement and paragraph 17 of the Master Services Agreement from remaining Aetna Advanced Funds, DIP Healthcare Funds or any other funds held by Aetna on behalf of the Debtors for a period of six months. Aetna shall have no obligation to process any claims if the Aetna Advanced Funds, DIP Healthcare Funds or any additional funds provided to Aetna by the Debtors are completely exhausted. At the conclusion of the six month runout period, any remaining Aetna Advanced Funds, DIP Healthcare Funds or subsequently transferred funds held by Aetna on behalf of the Debtors shall be returned to the Debtors.

25. As Aetna has (a) consented to (and in fact, required) the assumption of the Administrative Services Agreement and Master Services Agreement, as modified by the

Proposed Order and (b) agreed that no cure is required beyond the payment of the Aetna Advanced Funds and payment of the Special Administrative Fee, the Debtors believe that the remaining requirements of section 365 of the Bankruptcy Code with respect to the assumption of the Administrative Services Agreement and Master Services Agreement, including adequate assurance of future performance thereof, have been met.

### B. Payment of the Special Administrative Fee, Establishment of the Runout Reserve and Payment of Employee Healthcare Claims in Accordance with the Cash Collateral Budget and Polymers DIP Budget is a Valid Exercise of the Debtors' Business Judgment and Should be Approved

26. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize a debtor to sell or use its assets if such sale or use is based upon the sound business judgment of the debtor. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

27. Further, to the extent the healthcare claims of current and former employees (including retirees and dependents) were incurred prepetition, courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825

(D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *Friedman's Inc. v. Roth Staffing Cos., L.P. (In re Friedman's Inc.)*, No. 09-10161 (CSS), 2011 Bankr. LEXIS 4500, at *7 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow [the payment of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business.").

28. As described above, payment of the Aetna Advanced Funds and Special Administrative Fee, establishment of the Runout Reserve and the transfer of the DIP Healthcare Funds to Aetna in accordance with the Polymers DIP Budget to pay the healthcare claims of eligible current and former employees (including retirees and enrolled dependents) will facilitate the Debtors' ability to fulfill their prepetition and postpetition obligations with respect to their self-insured benefit plans and ensure the Debtors' continued access to Aetna's services to do so. Further, the payment of these healthcare claims is essential to M&G Polymers' ability to maintain the services of its remaining employees and effectively close the sale of the Apple Grove Plant and other assets. As such, the Debtors submit that payment of the Aetna Advanced Funds and Special Administrative Fee, establishment of the Runout Reserve and payment of healthcare claims in accordance with the Polymers DIP Budget is a sound exercise of their business judgment and essential to M&G Polymers' remaining operations.

## **REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY**

29. Bankruptcy Code section 362 provides for an automatic stay upon the filing of a bankruptcy petition. As noted above, the Proposed Order contemplates the modification of the automatic stay, to the extent applicable after assumption, to the extent necessary to permit Aetna (a) to exercise its rights to apply amounts outstanding under the Aetna Agreements against funds

held by Aetna solely to the extent necessary to pay (i) outstanding healthcare claims of the Debtors' eligible current and former employees (including retirees and enrolled dependents) and (ii) any unpaid Monthly Administrative Services Fees, and (b) to terminate or exercise default remedies under the Aetna Agreements without further order of the Court in the event the Debtors fail to comply with their obligations under any order approving the relief requested in this Motion; provided that Aetna provides the Debtors and the Committee with five business days' written notice prior to exercising such termination rights. The Debtors have agreed (subject to the Court's approval) to provide Aetna with this relief as consideration for Aetna's continued performance under the Administrative Services Agreement and Master Services Agreement, and as part of the adequate assurance of future performance provided to Aetna in connection with the assumption of the Aetna Agreements. Accordingly, the Debtors respectfully request that this Court authorize the modification of the automatic stay in accordance with the terms set forth in the Proposed Order.

## **REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY**

30. Pursuant to Bankruptcy Rule 6004(h), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is necessary and appropriate for the Debtors to fulfill their obligations to their current and former employees. The Debtors' restricted sources of funding and administrative difficulties gathering and processing healthcare claims in accordance with those restrictions have already led to delays satisfying employee healthcare claims. The Debtors and Aetna have worked extensively to

resolve these issues and believe they have identified an appropriate way to move forward. Under these circumstances, further delays will only result in harm to the Debtors' employees and, ultimately, the Debtors' estates. Accordingly, the Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the 14 day stay imposed by Bankruptcy Rules 6004(h) to the extent that each Rule applies.

## **NOTICE**

31. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (c) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (d) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (e) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (f) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; and (h) Aetna. The Debtors submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

32. No prior request for the relief sought herein has been made to this Court or any other court.

[*Remainder of Page Left Blank Intentionally*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: February 6, 2018

PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
scorririvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession