IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17- 12307 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref: Docket No. 824 |

**DEBTORS' OBJECTION TO MOTION OF
THE CONSTRUCTION LIENHOLDER GROUP FOR RELIEF FROM THE
AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO COMMENCE ACTIONS
IN TEXAS TO DETERMINE THE RELATIVE PRIORITY OF CONSTRUCTION
LIENHOLDERS AND NONDEBTORS, BANCO INBURSA, S.A., INSTITUCION
DE BANCA MULTIPLE, GRUPO FINANCIERO INBURSA AND DAK AMERICA LLC**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby object (this "Objection") to the *Motion of the Construction Lienholder Group for Relief from the Automatic Stay, to the Extent Necessary, to Commence Actions in Texas to Determine the Relative Priority of Construction Lienholders and Nondebtors, Banco Insursa, S.A., Institucion de Banca Multiple, Grupo Financiero Inbursa and Dak Americas LLC* (Docket No. 824) (the "Motion")[2] filed by certain construction lien claimants (the "Construction Lienholder Group"). In support of this Objection, the Debtors respectfully state as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] All capitalized terms not defined in this Objection shall have the meaning ascribed to such terms in the Motion.

NAI-1503431022v3

## PRELIMINARY STATEMENT

1. There is nothing to be gained for any party by permitting the Construction Lienholder Group to commence a declaratory judgment action in Texas state court to determine the relative priority of liens on the Corpus Christi Plant (the "Proposed Declaratory Judgment Action"). To the contrary, significant time, funds and other resources will be lost if such an action is permitted to proceed. The Motion is yet another attempt by the Construction Lienholder Group to increase their negotiating leverage by filing premature and unnecessary pleadings that force the Debtors to divert their attention from the task at hand—maximizing sale proceeds.

2. As the Court is well aware, the Debtors are conducting a sale process for the Corpus Christi Plant—a process that could very well render the Proposed Declaratory Judgment Action moot. In just over one month, the Debtors, the Construction Lienholder Group and all parties in interest will know whether the proceeds generated by the sale of the Corpus Christi Plant will be sufficient to satisfy the claims secured by liens against such property. If the automatic stay is lifted to allow the Proposed Declaratory Judgment Action to go forward now,[3] the Debtors, Banco Insursa, S.A., Institucion de Banca Multiple, Grupo Financiero Inbursa ("Inbursa"), DAK Americas LLC ("DAK") and holders of mechanics' and/or materialmen's liens filed against the Corpus Christi Plant (collectively, the "Lienholders") will spend the next month preparing for and participating in the initial stages of state court litigation that may ultimately prove to be unnecessary, rather than working together to pave the way for a successful sale and, ultimately, the distribution of sale proceeds to creditors.[4]

---

[3] Despite the Construction Lienholder Group's assertions to the contrary, the automatic stay must be lifted before the Proposed Declaratory Judgment Action can go forward, as explained below.

[4] The Debtors note that they have agreed to provide the Construction Lienholder Group and its expert with access to the Corpus Christi Plant for two full days to review and evaluate potential removables.

3. Even if sale proceeds prove to be insufficient to satisfy the claims of parties that have asserted liens against the Corpus Christi Plant and it becomes necessary to litigate the relative priorities of the claims of the Lienholders, Inbursa and DAK, the Proposed Declaratory Judgment Action will be ineffective in resolving all relevant disputes. As described below, under Texas law, for a declaratory judgment to be binding and determinative, all parties with an interest in the judgment must be party to the proceeding. Thus, any declaratory proceeding that seeks to fix the relative priority of liens on the Corpus Christi Plant as between Inbursa, DAK and the Lienholders must include not only the members of the Construction Lienholder Group, but *all* Lienholders, as well as the Debtors. Any Lienholder that is not party to the Proposed Declaratory Judgment Action will not be bound by any finding rendered therein, putting the estates at risk of being forced to choose between conflicting judgments.

4. Contrary to the Construction Lienholder Group's assertions that the Proposed Declaratory Judgment Action will have "no impact" on the Debtors or their estates, the Debtors would be forced to be significantly involved in the proceeding either as a Lienholder,[5] the owner of the Corpus Christi Plant or a source of information and witnesses relevant to the determination of relative priority on liens asserted against the facility. As such, the automatic stay is implicated by the commencement of the Proposed Declaratory Judgment Action. The Construction Lienholder Group's assertions to the contrary ignore the facts of these Cases and applicable law.

5. Further, the Construction Lienholder Group has failed to demonstrate cause to lift the automatic stay. As described more fully below, a weighing of the relevant factors

---

Although this exercise may itself prove unnecessary if sufficient cash is made available through any sale to satisfy the claims of the Construction Lienholder Group's constituents, the Debtors are hopeful that efforts such as these will encourage Lienholders to work with the Debtors to resolve their claims.

[5] Debtor Chemtex International Inc. ("Chemtex") has asserted a lien against the Corpus Christi Plant for work it performed as general contractor at the site.

demonstrates that the Debtors would be severely prejudiced by being forced to expend resources participating in a proceeding that may ultimately prove to be unnecessary, ineffectual and have negative implications on the sale process.  Conversely, the Construction Lienholder Group would not be prejudiced by the stay remaining in place since its ability to assert priority over the liens of Inbursa and DAK, if and when necessary, is preserved.  Commencing the Proposed Declaratory Judgment Action now would not permit relative priority to be resolved more quickly (and likely would have the opposite effect) due to the need to join all Lienholders.

6. By the Motion, the Construction Lienholder Group is yet again seeking to impose its own preferred course of action on the Debtors and these Cases rather than working cooperatively to address and fix the amount of lien claims, thereby increasing the chances of a successful sale and providing the quickest avenue for the Construction Lienholder Group's constituents to receive payment on account of their claims.  When viewed against this background, the Proposed Declaratory Judgment Action is nothing more than an attempt to improve negotiating leverage by imposing the specter of litigation outside the Debtors' chosen forum.  Litigating the relative priority of liens at this time, before the parties know what the sale proceeds will be, is wholly unnecessary and a waste of judicial and estate resources.  For all of these reasons, and those that follow, this Court should decline to lift the automatic stay to permit the Construction Lienholder Group to bring the Proposed Declaratory Judgment Action and deny the Motion.

**OBJECTION**

A. **The Proposed Declaratory Judgement Action Is Premature**

7. The Construction Lienholder Group's stated purpose for seeking to commence the Proposed Declaratory Judgment Action is to determine the relative priorities of the claims securing the liens of Inbursa, DAK and the Lienholders that have been (or will be) asserted

against the Corpus Christi Plant. According to the Construction Lienholder Group, the relief it is seeking is *necessary* because following the conclusion of the sale of the Corpus Christi Plant, "there will need to be a determination as a matter of applicable non-bankruptcy (*i.e*., Texas) law as to the relative priority of security interests of Inbursa, DAK and the construction liens on the Corpus Christi Plant." *See* Motion, at Intro. But it is not clear at this time that relative priority of liens ever will need to be determined. Conspicuously absent from the Motion is the acknowledgement that the relief sought by the Construction Lienholder Group may be moot at the conclusion of the Debtors' sale process.[6]

8. The sale of the Corpus Christi Plant may very well generate proceeds sufficient to satisfy claims securing the valid and perfected liens of Inbursa, DAK and the Lienholders in full. Under these circumstances, determining such parties' relative priorities will be irrelevant, and the resources and expenses incurred litigating the Proposed Declaratory Judgment Action up to that point will have been expended for no reason.

9. As the Construction Lienholder Group is well aware (since it filed a motion seeking standing to pursue similar relief)[7], on March 1, 2018, the Court is scheduled to hear the *Motion of the Official Committee of Unsecured Creditors to Recharacterize, Equitably Subordinate, and Avoid Liens Securing the Claims of DAK Americas LLC* (Docket No. 876) (the "Subordination Motion"). If the Court grants the relief requested in the Subordination Motion, DAK's liens against the Corpus Christi Plant will be avoided, its claims equitably subordinated to the claims of general unsecured creditors and there will be no need to determine

---

[6] The deadline to submit final bids for, among other assets, the Corpus Christi Plant is March 6, 2018. The Debtors will thereafter conduct an auction, if necessary, on March 8, 2018 for the sale of such assets.

[7] *See Motion of the Construction Lienholder Group for Entry of an Order (I) Granting Leave, Standing and Authority to Commence, Prosecute, Settle and Recover Certain Causes of Action Against DAK Americas LLC on Behalf of Debtors' Estates to Challenge and Recharacterize Alleged Liens and Related Payments and (II) to Extend Time to Take Such Action Pursuant to Local Bankruptcy Rule 9006-2* (Docket No. 684) (the "Lienholder Recharacterization Motion").

relative priority of liens with respect to DAK. If the Court denies the relief sought in the Subordination Motion, it may still be unnecessary to decide the relative priorities between Inbursa, DAK and the Lienholders, depending on the outcome of the sale process. Accordingly, the pendency of the Subordination Motion alone underscores the premature nature of the Proposed Declaratory Judgment Action.

10. Finally, even if sale proceeds ultimately prove to be insufficient to satisfy the claims of Inbursa, DAK and all Lienholders, as the Court has noted, parties will benefit from knowing exactly what is at stake.[8] The parties' analysis of the costs and benefits of litigating relative priority will be substantially informed by knowing the range of their potential recoveries. Commencing the Proposed Declaratory Judgment Action now, before the parties have all the facts, will result in parties (including the Debtors) incurring significant costs and expenses in a vacuum when events may later determine that such costs need not be expended at all.

### B. The Proposed Declaratory Judgment Action Will Not Fully Resolve Relative Lien Priority

11. Throughout the Motion, the Construction Lienholder Group attempts to characterize the Proposed Declaratory Judgment as a simple state court proceeding that will quickly and efficiently resolve issues of lien priority and "have no impact [on] the Debtors or their estates." Motion, at ¶ 14. The reality of what the Construction Lienholder Group has proposed is quite different.

12. As an initial matter, the Debtors note that any assertion that the Proposed Declaratory Judgment Action will have "no impact" on their estates is disingenuous at best. The determination of relative lien priorities will involve issues of fact that are solely within the

---

[8] Tr. of Hr'g, *In re M & G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Jan. 18, 2018) at 13:12-18 ("If we're litigating over hundred-cent dollars, then go to war. If we're litigating over, you know, three cents and stock, then both the claimant and the debtor will make a decision about whether or not we pay lawyers and everybody else to litigate this kind of thing.") (Hon. Shannon, J.).

Debtors' purview, and litigating this issue will undoubtedly require the Debtors to produce documents, witnesses and otherwise participate in discovery at a time when their limited remaining resources must be deployed in aid of furthering the sale process.

13. Further, given their interest in the Corpus Christi Plant, the Debtors would be a necessary party to the Proposed Declaratory Judgment Action. Under applicable Texas law, "[a] declaration does not prejudice the rights of a person not a party to the proceeding" and when declaratory relief is sought, "all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem. Code Ann. § 37.006. Thus, at a minimum, in addition to DAK and Inbursa, the Debtors and all Lienholders must be joined as parties to the Proposed Declaratory Judgment Action.[9]

14. Although the Construction Lienholder Group represents various Lienholders, it does not speak for all Lienholders and cannot guarantee that it would be able to join all Lienholders to the Proposed Declaratory Judgment Action. In fact, the Construction Lienholder Group does not appear to contemplate doing so. *See* Motion, at Intro. (noting that the Motion was filed to permit members of the Construction Lienholder Group "and any others similarly situated and so inclined" to commence a declaratory judgment action).

15. Because a declaration does not prejudice the rights of a person not party to the proceeding, all Lienholders (and the Debtors) must participate in the Proposed Declaratory Judgment Action for that decision to be binding. Any Lienholder not party to the Proposed Declaratory Judgment Action will not be bound by any determination made in that proceeding. Absent joinder of all necessary parties, the Debtors, Inbursa and DAK may be forced to re-litigate relative lien priorities again in a separate proceeding, which would not only be inefficient

---

[9] It is likely that other parties in interest, such as the Official Committee of Unsecured Creditors, would also need to participate in the Proposed Declaratory Judgment Action.

and wasteful, but may potentially lead to conflicting judgments. Therefore, as currently contemplated, the Proposed Declaratory Judgment Action will not achieve a final resolution of issues regarding lien priority.[10]

16. Even if the Construction Lienholder Group is able to join all Lienholders and other necessary parties to the Proposed Declaratory Judgment Action, doing so will be a lengthy process. Any declaratory judgment that a Texas state court could issue likely will be issued several months to years after sale proceeds are received and available for creditors. Commencing the Proposed Declaratory Judgment Action will create confusion and uncertainty around the sale process and delay the Debtors' ability to timely distribute sale proceeds. Members of the Construction Lienholder Group would be better served by attempting to work with the Debtors and other parties in interest to resolve disputed lien claims and work toward a successful sale process rather forcing the Debtors to expend estate resources responding to yet another attempt to obtain leverage through improper means. To the extent relative lien priority must be litigated, it will be done most efficiently and appropriately before this Court, where related issues are already pending.

**C.   This Court Has Jurisdiction to Determine Relative Lien Priorities**

17. Ignoring the plain language of applicable statutes and case law, the Construction Lienholder Group suggests that this Court lacks jurisdiction to adjudicate the priority of liens asserted against the Debtors' property. *See* Motion, at Intro, ¶¶ 16-19. Bankruptcy courts in this district derive their subject matter jurisdiction from 28 U.S.C. § 1334 and the *Amended Standing*

---

[10] It is uncertain whether a Texas state court would even issue a declaratory judgment under these circumstances, where the validity of Lienholder claims are not full determined, the validity of DAK's liens have been challenged, sale proceeds are unknown and not all parties with an interest in the property are party to the action. *See Blythe v. City of Graham*, 303 S.W.2d 881, 883 (Tex. Civ. App.-Fort Worth 1957, no writ.) ("a trial court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding") (citation omitted).

*Order of Reference* dated February 29, 2012, which refers cases "under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for this district" pursuant to 28 U.S.C. § 157(a).

18. The Construction Lienholder Group suggests that because the Proposed Declaratory Judgment Action is (a) not an action against the Debtors, (b) purportedly does not affect the Debtors or their estates and (c) can be litigated independent of the Debtors or these Cases, the controversy to be litigated in the Proposed Declaratory Judgment Action does not "arise" under title 11. *See id*. at ¶¶ 17-19. However, the plain language of 28 U.S.C. § 157(b) demonstrates otherwise.

19. Section 157(b) of title 28 enumerates several types of "core proceedings," that *arise under* title 11 and *arise in* cases under title 11, including "determinations of the validity, extent, or *priority* of liens." 28 U.S.C. § 157(b)(2)(K) (emphasis added). The United States Supreme Court has recognized that the list of core proceedings set forth in 28 U.S.C. § 157(b) "arise in" a bankruptcy case or under title 11. *Stern v. Marshall*, 564 U.S. 462, 476 (2011) ("Under our reading of [28 U.S.C. § 157(b)], core proceedings are those that arise in a bankruptcy case or under title 11. The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters.").

20. Following *Stern*, the *TSAWD Holdings* court found that it had jurisdiction to adjudicate a dispute between creditors as to the extent and priority of their liens. *TSA Stores, Inc. v. M.J. Soffe, LLC (In re TSAWD Holdings, Inc.)*, 565 B.R. 292, 297 (Bankr. D. Del. 2017) ("It is well-settled that proceedings 'arising in' bankruptcy include those requiring determinations as to the validity, extent or priority of liens on property of the estate . . . [a] plain reading of section 157(b) therefore provides the statutory authority for the [bankruptcy court] to hear the instant

adversary proceeding as a core proceeding because the parties seek a determination of the extent and priority of [claimants'] liens on the [d]ebtors' inventory."). Accordingly, it is clear that the issue upon which the Proposed Declaratory Judgment Action seeks a determination, the *priority of lien claims* asserted against the Debtors' property—the Corpus Christi Plant—is a core proceeding that can be adjudicated by this Court at the appropriate time.[11]

21. Moreover, the Construction Lienholder Group's apparent request that the Court abstain from hearing any dispute related to relative lien priority with respect to DAK, Inbursa and the Lienholders does not relate to any live controversy before the Court and, consequently, should be disregarded for purposes of deciding the Motion. *See* Motion, at ¶¶ 20-21. As set forth above, this Court has core jurisdiction to determine the relative priority of liens in the Debtors' property; therefore, mandatory abstention does not apply. *See* 28 U.S.C. 1334(c)(2) (mandatory abstention only applies to matters "related to a case under title 11 but not arising under title 11 or arising in a case under title 11. . . "). This Court is familiar with the facts and circumstances of these Cases, and more specifically, the potential dispute between Inbursa, DAK and the Lienholders regarding the priority of their respective liens. Additionally, matters related to the validity of liens on the Corpus Christi Plant are already pending before this Court. *See e.g.*, the Subordination Motion. As such, this Court is better equipped than a Texas state court to expeditiously and efficiently determine the single issue raised in the Proposed Declaratory Judgment Action, if such an action ultimately proves necessary. The Debtors reserve all of their

---

[11] Although not addressed in the Motion, the Court also has authority to enter a final judgment to resolve relative lien priority. A bankruptcy court can issue final judgments "if the action at issue stems from the bankruptcy itself or would necessarily be resolved *in the claims allowance process*." *Stern*, 564 U.S. at 499 (emphasis added). It is clear that the resolution of relative priority of the lien claims asserted by Inbursa, DAK and the Lienholders would necessarily be resolved in connection with the claims allowance process. Accordingly, this Court has both core jurisdiction to determine the priority of lien claims asserted against the Corpus Christi Plant, and the ability to enter a final order with respect thereto. *See In re TSAWD Holdings, Inc.*, 565 B.R. at 297.

rights to respond to the Construction Lienholder Group's arguments regarding abstention at that time.

> **D. The Construction Lienholder Group Has Failed to Carry Its Burden of Demonstrating that "Cause" Exists to Lift the Automatic Stay**

22. The Construction Lienholder Group argues that the automatic stay does not apply to the Proposed Declaratory Judgment Action, but that if it did, cause exists to lift the stay pursuant to section 362(d)(1) of the Bankruptcy Code, or in the alternative, pursuant to section 362(d)(3) because the Corpus Christi Plant is single asset real estate. The Construction Lienholder Group has once again misapplied and misstated the law.

> 1. <u>The Proposed Declaratory Judgment Action Is Stayed by Section 362 of the Bankruptcy Code</u>

23. The Construction Lienholder Group asserts that because the Proposed Declaratory Judgment Action seeks to establish lien priorities between non-debtors, it "will have no effect on the Debtors or their estates" and, therefore, the automatic stay does not apply. As noted above, this assertion is simply untrue.

24. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011) (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). It is a basic bankruptcy principle that Congress intended for the automatic stay to apply broadly. *See In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998) ("The legislative history to section 362 and our jurisprudence leave no doubt that the scope of the automatic stay is broad."). For example, the automatic stay applies "to actions other than those to obtain property of the estate" and to "actions against the debtor that *are not necessarily brought to recover a claim.*" *See Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1035-36 (3d Cir. 1991). Moreover, the Proposed Declaratory Judgment Action is exactly the type of

proceeding the automatic stay is designed to protect against. *See e.g., Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) ("the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.").

25. If allowed to proceed, the Proposed Declaratory Judgment Action will have a significant impact on the Debtors and their estates as the Debtors will be required to participate in the proceeding in several capacities. As owner of the Corpus Christi Plant, Debtor M&G Resins USA, LLC ("M&G Resins") has an interest in the adjudication of the priority of liens filed against their property and, as described above, is, therefore, a necessary party in the Proposed Declaratory Judgment Action.[12] Further, the Construction Lienholder Group continues to assert that so-called "removables" have the highest priority liens. *See* Motion, at ¶28, n.6. However, prior to determining the priority accorded to a Lienholder with a potential removable claim, a court must determine whether that Lienholder is entitled to claim a removable in the first instance, which will involve the court making a determination with respect to property of the estate. To the extent that the Proposed Declaratory Judgment Action will make any determination regarding removables, the Debtors must be a party to such action. Accordingly, the Debtors submit that the automatic stay applies to prevent the Construction Lienholder Group from proceeding with the Proposed Declaratory Judgment Action without relief from this Court.

---

[12] Similarly, Debtor Chemtex holds a lien against the Corpus Christi Plant for work it performed as general contractor at the site. As a Lienholder, Chemtex must be party to the Proposed Declaratory Judgment Action in order for any ruling with respect to priority to be binding.

### 2. The Construction Lienholder Group Has Failed to Demonstrate that Cause Exists to Lift the Automatic Stay

26. To the extent it applies, the Construction Lienholder Group argues that cause exists to lift the automatic stay because (a) there will be no hardship to the Debtors if the Proposed Declaratory Judgment Action is brought in Texas since the Debtors will not be named as parties thereto, (b) all Lienholders are located in Texas and (c) the dispute will be governed by Texas state law. *See* Motion, ¶ 27. However, the Construction Lienholder Group severely underestimates (or ignores) the hardship to the Debtors should this Court permit the Proposed Declaratory Judgment Action to proceed.

27. Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause." *See* 11 U.S.C. § 362(d)(1). The statute does not define what constitutes sufficient "cause." However, "courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant' when determining whether there is sufficient cause to grant relief from the automatic stay." *In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007) (quoting *Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993)). In determining whether "cause" to lift the stay exists, courts in the Third Circuit consider "the totality of the circumstances in each particular case." *Aleris*, 456 B.R. 35, 47 (quoting *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997)). "[T]o establish cause, the party seeking relief from the stay must show that [the] balance of hardships from not obtaining relief tips significantly in [its] favor." *Id.* (citation and quotation marks omitted).

28. To determine the balance of the hardships, courts in this jurisdiction look to three factors (sometimes referred to as the "*Rexene* factors"): (a) "whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay;" (b) "whether the

hardship to the non-bankrupt party by the maintenance of the stay *considerably outweighs* the hardship to the debtor if the stay is lifted;" and (c) "whether it is probable that the creditor will prevail on the merits of its case against the debtor." *Aleris*, 456 B.R. at 47-48 (emphasis added) (citing, *inter alia*, *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576-577 (Bankr. D. Del. 1992)); *see also In re Nortel Networks Corp.*, 445 B.R. 370, 375 (Bankr. D. Del. 2011) (applying *Rexene* factors); *In re Samson Res. Corp.*, 559 B.R. 360, 370 (Bankr. D. Del. 2016) (same). The weight of the *Rexene* factors tip heavily in favor of leaving the automatic stay in place and against permitting commencement of the Proposed Declaratory Judgment Action.

29. *First*, the commencement of the Proposed Declaratory Judgment Action would significantly prejudice the Debtors and their estates. As noted above, despite the Construction Lienholder Group's assertions to the contrary, the Debtors will be required to participate in the proceeding in their capacity as a Lienholder and property owner. Further, resolution of the Proposed Declaratory Judgment Action centers on the date of commencement of work at the Corpus Christi Plant. *See* Section 53.124 of the Texas Property Code § 53.124 ("the time of inception of a mechanic's lien is the commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used."). M&G Resins, as the owner of the Corpus Christi Plant, and Chemtex, as one of the general contractors that provided services at the Corpus Christi Plant, will be called upon to provide documents and other evidence regarding this central issue. As such, the Proposed Declaratory Judgment Action necessarily implicates the participation of the Debtors and their employees, who will undoubtedly be called upon to provide evidentiary support in the form of documents and testimony in any action seeking a determination as to the relative priority of liens

asserted against the Corpus Christi Plant.  Requiring the Debtors and their already diminished workforce to respond to document requests and participate in litigation would cause a significant distraction to the Debtors and their chapter 11 efforts.

30. Further, the Debtors anticipate that it could take months to join all Lienholders to the Proposed Declaratory Judgment Action, and several more months for a Texas state court to render a final and non-appealable decision, which would cause undue delays to the Debtors' ability to make distributions to creditors, including members of the Construction Lienholder Group.  Any delays, including those described herein, could harm the sale process overall.

31. By contrast, the Construction Lienholder Group would suffer no prejudice (and certainly not a hardship that "considerably outweighs" the hardship to the Debtors) if the Court declines to lift the automatic stay at this time.  The rights of Lienholders have been preserved with respect to sale proceeds.  If and when it becomes necessary to litigate issues of lien priority, the Construction Lienholder Group will have the opportunity to do so and it will not be prejudiced by not having already commenced the Proposed Declaratory Judgment Action.

32. *Finally*, by the Construction Lienholder Group's own admission, the final factor, the probability of "success," is not applicable here.  For these reasons, the weight of the *Rexene* factors weigh against lifting the automatic stay in favor of allowing commencement of the Proposed Declaratory Judgment Action.

       3.      <u>Section 362(d)(3) Does Not Apply to the Debtors or These Cases</u>

33. In what can only be viewed as a last ditch effort to convince the Court that the matter is out of its hands, the Construction Lienholder Group asserts that relief from the automatic stay to allow the Proposed Declaratory Judgment Action to proceed is mandatory pursuant to section 362(d)(3) of the Bankruptcy Code because the Lienholders have claims "solely as against the Debtors' property in Corpus Christi, including the Corpus Christi Plant,

which, taken together, appears to be the sole asset of M & G Resins." *See* Motion, at ¶ 31.  Thus, according to the Construction Lienholder Group, the Lienholders are entitled to relief applicable to creditors in a single asset real estate case.

34. Section 362(d)(3) of the Bankruptcy Code specifies circumstances where the automatic stay may be lifted against single asset real estate. *See* 11 U.S.C. § 362(d)(3).  Section 101(51B) of the defines "single asset real estate" as:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 151(51B).  It is clear that the Corpus Christi Plant is not single asset real estate.

35. "The phrase 'single-asset real estate' was intended in the statute to encompass an apartment building, office building, or strip mall shopping center 'owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate.'" *In re Syed*, 238 B.R. 133, 140 (Bankr. N.D. Ill. 1999) (quoting *In re Philmont Dev. Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995) ("The terms single asset case, or single asset real estate case, are well-known and often used colloquialisms which essentially refer to real estate entities attempting to cling to ownership of real property in a depressed market . . . *rather than businesses involving manufacturing, sales or services*.") (emphasis added).  In situations where the property or project is producing no income, single asset real estate "includes property formerly used and intended to be used in the future as income producing property." *Syed*, 238 B.R. at 140; *In re Kara Homes, Inc.*, 363 B.R. 399, 406 (Bankr. D.N.J. 2007) ("it is palpably clear that a "single asset real estate" case is one in which the debtor performs functions intrinsic

to owning and developing the real estate and not one where the debtor generates income from other activities not incidental thereto.").

36.     The Corpus Christi Plant is still under construction and is generating no income at this time.  However, when completed, the Corpus Christi Plant will be a manufacturing facility, principally engaged in the production of PTA/PET resins.  The ultimate owner and operator of the plant will generate revenues not from the property, but from the sale of PET resin and/or other products manufactured at the plant.  Accordingly, the Corpus Christi Plant is not single asset real estate within the meaning of section 101(51B) of the Bankruptcy Code, and section 362(d)(3) is wholly inapplicable.

## CONCLUSION

37.     The Debtors are approximately one month away from conducting an auction for the sale of the Corpus Christi Plant and concluding their sale process.  It is possible that the sale will generate proceeds sufficient to satisfy all valid, perfected and undisputed lien claims in full, thereby mooting the relief requested in the Proposed Declaration Judgment Action and making the Motion premature at this time.  In the event that a proceeding to determine the relative priorities of liens on the Debtors' property becomes necessary, no party will be prejudiced by the failure to commence the Proposed Declaratory Judgment Action now.  On the other hand, the Debtors would be severely prejudiced by being forced to participate in the Texas state court proceeding at this critical juncture in these Cases.  As such, the Construction Lienholder Group has failed to demonstrate that cause exists to lift the stay.  Accordingly, for all the reasons set forth herein, the Court should deny the relief requested in the Motion and sustain this Objection.

WHEREFORE, the Debtors respectfully request that the Court enter an order denying the relief requested in the Motion and grant such other and further relief as may be appropriate.

Dated: February 9, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Michael J. Cohen
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
mcohen@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession