# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | Re: Docket No. 824 |
| | : | |

## OBJECTION OF DAK AMERICAS LLC TO MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR RELIEF FROM THE AUTOMATIC STAY

DAK Americas LLC and all affiliates related thereto ("**DAK Americas**"), by and through its undersigned counsel, hereby submits this objection (the "**Objection**") to the *Motion of the Construction Lienholder Group* (the "**Motion**")[2] *for Relief from the Automatic Stay, to the Extent Necessary, to Commence Actions in Texas to Determine the Relative Priority of Construction Liens Between the Construction Lienholders and Nondebtors, Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa* ("**Inbursa**") *and DAK Americas LLC*, and respectfully represents as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Docket No. 824. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion.

**PRELIMINARY STATEMENT**

1. The automatic stay is one of the fundamental protections afforded to debtors under the Bankruptcy Code. *See Midlantic Nat'l Bank v. New Jersey Dep't of Ent's. Prot.*, 474 U.S. 494, 503 (1986). The automatic stay provisions operate primarily to "stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [his] creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (citation omitted) (alteration in original).

2. The Construction Lienholder Group, an *ad hoc* group of thirteen construction claimants with alleged mechanics' and materialmen's liens (each, an "**M&M Lien**") on the Corpus Christi Plant (as defined below), seeks relief from the automatic stay so that certain members of the Construction Lienholder Group, "and any others similarly situated and so inclined," may file an undetermined number of state-court lawsuits to determine the relative priority of the liens held by DAK Americas, Inbursa, and construction lienholders. Accordingly, this is not a precautionary request for relief from the automatic stay to resolve a two-party dispute among non-debtors. Rather, this is a request to permit any party alleging a lien on the Corpus Christi Plant, whether valid or not, to file state-court lawsuits. To date approximately fifty parties have filed notices of perfection of M&M Liens and the Debtors' schedules of assets and liabilities show that potentially over ninety parties may assert M&M Liens. If the Motion is granted, there is potential for dozens upon dozens of lawsuits to hijack the Debtors' ability to effectively administer these chapter 11 cases. Requiring the Debtors to dedicate their limited resources to multiple state court litigations in the midst of their sale process, while, at the same time, subjecting DAK Americas to countless lawsuits in state court

WEIL:\96441615\8\13405.0158

and before this Court (as lienholders may seek to litigate a proof of claim before this Court) are exactly the scenarios the automatic stay is intended to prevent.

3. To be clear, DAK Americas has no problem defending the validity and priority of its secured liens against a challenge by any party or challenging the validity and priority of any alleged M&M Liens. But, the Texas state court is not the appropriate forum for such action.[3] If such litigation is required, the only forum that can ensure an orderly and timely process in light of the projected course of these chapter 11 cases, and also protect the interests of all key stakeholders, is this Court. All parties in interest to such litigation have already submitted themselves to the jurisdiction of this Court and these issues can and should be resolved in these Chapter 11 cases.

4. Finally, and perhaps most importantly, the relief requested by the Motion is unquestionably premature. At this time, no party knows what the outcome of the sale will be and whether (a) there will be sufficient proceeds to satisfy all secured claims, thus mooting the basis for the Motion, or (b) recoveries to creditors after a sale will be insufficient to justify the cost of the multiplicity of state court lawsuits contemplated by the Motion. At a minimum, this uncertainty demonstrates that the Court should allow the sale process to continue uninterrupted and give the parties an understanding of what there is to fight over before granting the relief requested in the Motion.

5. For all of these reasons, the Motion should be denied.

---

[3] Texas state courts can only issue a binding declaratory judgment when "all persons who have or claim any interest that would be affected by the declaration" are made parties to the suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006. As noted above, there are potentially more than ninety parties who would have a claim affected by the declaratory relief requested.

## BACKGROUND

6. Prior to the commencement of these chapter 11 cases (the "**Chapter 11 Cases**"), Debtor M&G Resins USA, LLC ("**M&G Resins**") borrowed approximately $436 million (as amended, the "**U.S. Inbursa Facility**") from Inbursa to construct a vertically integrated PTA/PET plant in Corpus Christi, Texas (the "**Corpus Christi Plant**"). M&G Resins' obligations under the U.S. Inbursa Facility are guaranteed by M&G Polymers USA, LLC ("**M&G Polymers**") and secured by a first priority lien on, among other things, the Corpus Christi Plant.

7. The other primary source of funding for the construction of the Corpus Christi Plant was the Corpus Christi Capacity Reservation Agreement (as amended, the "**Capacity Reservation Agreement**"), dated May 20, 2015, by and among, M&G USA Corporation ("**M&G USA**"), M&G Resins, and DAK Americas, pursuant to which DAK Americas secured future production capacity at the Corpus Christi Plant for approximately $435 million. If the Corpus Christi Plant did not become operational and the Debtors were unable to fulfill their contractual obligations under the Capacity Reservation Agreement, then the Debtors are obligated to reimburse DAK Americas the $435 million upfront payment and additional damages. The Debtors' contractual obligations under the Capacity Reservation Agreement are guaranteed by M&G Chemicals S.A. and secured by, among other things, liens on the Corpus Christi Plant and M&G USA's 100% equity interest in M&G Resins. DAK Americas' perfected security interests are subordinate to Inbursa's first lien, as evidenced by that certain Subordinated Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreements, and Fixture Filing, dated December 23, 2016, among DAK Americas and Inbursa.

8. On October 24, 2017, M&G Polymers filed a voluntary case under chapter 11 of the Bankruptcy Code. On October 30, 2017, each of the remaining Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

9. On December 11, 2017, the Court entered its *Order (I) Establishing Lien Identification Procedures and (II) Granting Related R*elief (Docket No. 457) (the "**Lien Identification Procedures Order**"), establishing procedures for asserting M&M Liens on the Corpus Christi Plant, approving the form of the Statement of Lien Form, approving the form and manner of the Notice of the Mechanic's and Materialmen's Lien Bar Date of February 15, 2018, and granting related relief. To date, approximately fifty parties have filed on the docket in the Chapter 11 Cases notices of perfection of an M&M Lien.

10. On December 13, 2017, the Court entered the *Order Denying Motion of the Construction Lienholder Group for Appointment of an Official Committee of Construction Lienholders* (Docket No. 481).

11. On January 25, 2018, the Debtors filed their amended *Schedules of Assets and Liabilities* and *Statement of Financial Affairs* (collectively, the "**Schedules and Statements**") of M&G Resins (Docket No. 782). The Schedules and Statements identify over ninety parties with contingent, disputed M&M Liens totaling over $400 million in the aggregate.

12. On January 29, 2018, the Construction Lienholder Group filed the Motion. The Motion provides that "certain" unidentified members of the Construction Lienholder Group intend to commence a lawsuit in Texas state court to determine the priority of their liens and requests authority to lift the automatic stay so that "*any claimholder* asserting a mechanics' lien, a contractor's lien, a materialman's, or any lien otherwise encompassing a 'construction lien' under and pursuant to Texas property law may commence and prosecute an action for a

5

declaratory judgment in a court of competent jurisdiction within the State of Texas to determine the relative priority of its construction lien relative to the asserted security interests of Inbursa and DAK [Americas] on the Corpus Christi Plant without need for any further order of this Court." *See* Motion at p. 3; Proposed Order (emphasis added).

## ARGUMENT

### A. The Automatic Stay Is Clearly Implicated by the Relief Requested in the Motion

13. Contrary to the Construction Lienholder Group's assertion, the automatic stay protects more than just the Debtor; it applies with equal force to protect property of the estate. The automatic stay is one of the fundamental protections afforded to a debtor's estate under the Bankruptcy Code. *See, e.g.*, *Midlantic Nat'l Bank*, 474 U.S. at 503 ("The automatic stay provision of the Bankruptcy Code . . . has been described as one of the fundamental debtor protections provided by the bankruptcy laws.") (internal quotations omitted). Its broad protections extend to all matters that may affect the debtor or the property of the debtor's estate. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 369 (1988).

14. Indeed, the automatic stay exists "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991). It does this by providing the debtor with a "breathing spell" after the commencement of a chapter 11 case. *See, e.g.*, *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Borman*, 946 F.2d at 1036; *see also Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract…debtor's attention from its primary goal of reorganizing") (internal quotations omitted).

15. Despite the Construction Lienholder Group's summary arguments to the contrary, there is no question that the automatic stay is directly implicated by the Construction

6

Lienholder Group's request for any party asserting a lien on the Corpus Christi Plant to have the unfettered right to file state-court actions (at any time) to determine the validity, extent, and priority of their alleged liens. Indeed, filing potentially an unknown number of lawsuits that directly affect the Debtors' bankruptcy estates without this Court's approval undoubtedly violates fundamental protections afforded to the Debtors and creditors under several provisions of section 362 of the Bankruptcy Code.

16. Section 362(a) of the Bankruptcy Code states that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

11 U.S.C. § 362(a)(1), (a)(2)–(a)(6). The relief requested in the Motion, without Court approval, would violate each of these provisions of section 362.

17. Allowing alleged lienholders to file state-court actions interferes with, and affects, the orderly rehabilitation of the Debtors. Contrary to the Motion's characterization of the issue, the relief requested by the Construction Lienholder Group is not limited in scope. For example, the Construction Lienholder Group represents the interests of only thirteen alleged

7

statutory lienholders. The Debtors, however, listed over ninety potential statutory lienholders who may assert a lien against the Corpus Christi Plant. Thus, in reality, the scope of the relief requested by the Construction Lienholder Group eviscerates the rights of parties in interest to object to any proof of claim asserted by statutory lienholders in this Court, and requires the Debtors, Inbursa, and DAK Americas to subject themselves to an unknown number of state-court suits that could result in multiple inconsistent decisions regarding the relative priorities of three major constituencies in the Chapter 11 Cases. This does not even consider that some lienholders may elect not to file a state-court action and may instead ask this Court to determine such issues. These are exactly the type of issues and scenarios that the automatic stay is intended to prevent.

      **B.    The Court has Jurisdiction to Determine Priority Disputes**

      18.    In addition to the direct implication of the automatic stay, there is also no question that this Court has jurisdiction to adjudicate the priority of secured claims in these Chapter 11 Cases. Under 28 U.S.C. § 1334(b), district courts have original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), a district court may refer all such cases and proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The District of Delaware has issued an Amended Standing Order of Reference, dated February 29, 2012, referring all bankruptcy cases to the bankruptcy courts.

      19.    Pursuant to 28 U.S.C. § 157(b), "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11…and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). The category of proceedings "arising in" bankruptcy include, among others, matters concerning the administration of the estate, *determinations of the validity, extent, or priority of liens*, and other proceedings that affect the liquidation of the assets of the estate. 28 U.S.C. § 157(b)(2)

(emphasis added); *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006). Arising in claims are claims that, "by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case." *Id.* at 218; *TSA Stores, Inc. v. M J Soffe, LLC (In re TSAWD Holdings, Inc.)*, 565 B.R. 292, 297 (Bankr. D. Del. 2017) (finding the bankruptcy court had jurisdiction to determine state-law lien issue between two non-debtor parties).

20. A bankruptcy court has subject matter jurisdiction over litigation between non-debtor third parties when "the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled in part by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995); *see also Arrow Oil & Gas, Inc. v. J. Aron & Co. (In re Semcrude L.P.)*, 864 F.3d 280, 289 (3d Cir. 2017). The proceeding "need not necessarily be against the debtor or against the debtor's property." *Pacor*, 743 F.2d at 994. An action is related to bankruptcy if the outcome "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*; *see also, e.g.*, *In re Semcrude L.P.*, 864 F.3d at 289 (finding the bankruptcy court had jurisdiction over non-debtor parties state-law based lien validity and priority dispute).

21. Here, this Court has arising in jurisdiction over the lien priority dispute between DAK Americas, Inbursa, and the Construction Lienholder Group. Notably, the issue the Construction Lienholder Group seeks resolution of involves the validity and priority of alleged liens on property of the Debtors' estate, which falls squarely under "arising in" jurisdiction. *In re TSAWD Holdings, Inc.*, 565 B.R. at 297 (stating that it is well settled that bankruptcy courts have jurisdiction over matters involving the validity, extent, or priority of liens on property of the estate).

22. "Related to" jurisdiction also exists over any lien priority disputes between DAK Americas, Inbursa, and the Construction Lienholder Group. Resolution of any such disputes will directly affect the timing and ability of the Debtors to administer these Chapter 11 Cases on its projected timeline or to propose and confirm a viable chapter 11 plan. Granting the Motion will force the Debtors to expend a significant amount of estate resources monitoring and litigating in Texas state courts, while, at the same time, attempting to conduct an auction for the Corpus Christi Plant, and then potentially formulating a chapter 11 plan with distributions for creditors dependent on the outcome of state-court litigations and even potential litigation of claims before this Court. The impact on the Debtors' estates is self-evident.

23. Finally, in accordance with the Lien Identification Procedures Order, all lienholders seeking recovery from the Debtors' estates, including members of the Construction Lienholder Group, have already submitted themselves to this Court's jurisdiction through, among other things, the filing of a notice of perfection of claim and are represented by counsel. Given the application of the automatic stay, the jurisdiction of this Court to hear and determine lien priority disputes, and the submission of parties in interest to this Court's jurisdiction, the litigation contemplated by the Motion should proceed before this Court.

### C. Mandatory Abstention Does Not Apply to the Construction Lienholder Group's Claims

24. The Construction Lienholder Group's Motion also incorrectly asserts that mandatory abstention applies to its claims. Under 28 U.S.C. § 1334(c)(2), a district court (or bankruptcy court) must abstain from determining a proceeding if: "(1) the motion to abstain is timely; (2) the action is based upon a state law claim or cause of action; (3) an action has been commenced in state court; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal

court absent bankruptcy; and (6) the matter is non-core." See 28 U.S.C. § 1334(c)(2); *Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l)*, 320 B.R. 552, 556 (Bankr. D. Del. 2005). Mandatory abstention only applies if every requirement of section 1334(c)(2) is met.

25. Here, the Construction Lienholder Group cannot meet four of the six requirements for mandatory abstention. As a threshold matter, the Construction Lienholder Group failed to timely file a motion to abstain. In addition, the Construction Lienholder Group points to no action regarding lien priority that has been commenced in state court. In the place of these mandatory elements, the Construction Lienholder Group has substituted a single sentence stating that mandatory abstention applies because "the issues and claims arise under state law and can be timely adjudicated by an appropriate Texas court with jurisdiction over the parties." *See* Motion ¶ 21. This is clearly insufficient to establish that mandatory abstention is appropriate.

### D. The Fundamental Protections Afforded by the Automatic Stay May Only Be Lifted in Extraordinary Circumstances—Which Are Not Present

26. The Construction Lienholder Group provides no credible legal basis to lift the automatic stay. Pursuant to section 362(d)(1), this Court may lift the protections of the automatic stay if "cause" exists. *See* 11 U.S.C. § 362(d)(1); *In re Downey Fin. Corp.*, 428 B.R. 595, 608–09 (Bankr. D. Del. 2010). The Bankruptcy Code does not define "cause." Courts in this district generally apply a three-pronged balancing test to determine whether "cause" exists: "(1) Whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *In re Downey Fin. Corp.*, 428 B.R. at 609; *see also In re SCO Grp.,*

WEIL:\96441615\8\13405.0158

*Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007); *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

27. The party seeking to lift or modify the automatic stay bears the burden to show cause why the stay should be lifted. *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990)); *see also In re Aleris Int'l., Inc.*, 456 B.R. 35, 46–47 (Bankr. D. Del. 2011). Failure to satisfy this burden "requires denial of the requested relief." *In re RNI Wind Down Corp.*, 348 B.R. at 299.

28. Courts have also considered other factors, including the degree of interference with the debtor's bankruptcy case and whether permitting the litigation to proceed would prejudice the interests of other creditors. *See, e.g.*, *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009). "Even slight interference with the administration [of the debtor's estates] may be enough to preclude relief in the absence of a commensurate benefit." *In re W.R. Grace & Co.*, No. 01-01139-JFK, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007) (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)) (denying relief from stay); *see also In re DBSI, Inc.*, 407 B.R. at 167 ("Courts also place emphasis on whether lifting the automatic stay will impeded [sic] the orderly administration of the debtor's estate."). The Construction Lienholder Group has failed to satisfy their burden.

29. If the Court grants the relief requested in the Motion, the Debtors, DAK Americas, and Inbursa will likely become inundated with individual state-court actions, further prejudicing key parties in interest and needlessly distracting the Debtors from their important sale process and reorganization efforts. *See In re DBSI, Inc.*, 407 B.R. at 167 ("[B]y lifting the stay, I may encourage a race to the courthouse by parties seeking similar orders, which will cause

WEIL:\96441615\8\13405.0158

undue hardship and expense to the estate."). In addition, at a minimum, the Debtors will be forced to produce discovery and fact witnesses in the individual state-court actions. As a result, the Debtors will be faced at this critical juncture in the bankruptcy with the extreme burden of litigating simultaneous actions in different forums, even if not formally named as a party to the suits.

30. As noted above, the Debtors' ability to administrate the Chapter 11 Cases depends, in part, on the orderly adjudication of any priority disputes among Inbursa, DAK Americas, and holders of valid, perfected M&M Liens. If the disputes were to be tried in one or more state courts, they would be subject to the Texas Rules of Civil Procedure. Under the Texas Rules of Civil Procedure, all civil trials require the implementation of a discovery control plan. *See* Tex. R. Civ. P. 190.1. Under the standard discovery control plan for civil trials, parties have a discovery period of not less than "nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery." By comparison, this Court has the ability to expedite matters so that proceedings will not unduly delay the administration of a Debtors' case. The Construction Lienholder Group has provided no evidence that its lien priority dispute can be timely adjudicated in state court.

31. In addition, leaving the automatic stay in place would cause no prejudice to the Construction Lienholder Group, and would instead prevent an uncontrollable rash of potentially dozens upon dozens of lawsuits being filed at any time by any party simply alleging a lien (whether valid or simply in an attempt to exert leverage). This Court is more than capable of adjudicating potential litigation concerning the respective priorities of different lienholders applying Texas law, as it did in the *SemCrude* bankruptcy cases.

13

32.     The final factor courts consider when determining whether to grant stay relief is whether the moving party has demonstrated a likelihood of success on the merits in the underlying action. There is no evidence that any lienholder would be successful against DAK Americas or Inbursa, or that any M&M lienholder who would commence a state court action even holds a valid perfected M&M Lien. In fact, the relief requested by the Construction Lienholder Group is for the automatic stay to be lifted for any lienholder who simply alleges a lien on the Corpus Christi assets, thereby avoiding any showing of a likelihood of success on the merits. Accordingly, the balance of the factors weighs against finding that cause exists to lift the automatic stay.

### E.     M&G Resins Is Not a Single Asset Real Estate Debtor

33.     Finally, the Construction Lienholder Group's argument that M&G Resins is a single asset real estate debtor as a basis to justify stay relief is meritless. The Bankruptcy Reform Act of 1994 provided for special, restrictive treatment of "single asset real estate [as defined in] Bankruptcy Code Section 101(51B) . . . by placing single asset real estate cases on an expedited reorganization track through the enactment of Bankruptcy Code section 363(d)(3)." *Kara Homes Inc. v. Nat'l City Bank (In re Kara Homes, Inc.)*, 363 B.R. 399, 403–04 (Bankr. D.N.J. 2007) (citing *In re Kkemko, Inc.*, 181 B.R. 47, 48–51 (Bankr. S.D. Ohio 1995)).

34.     As revised, section 101(51B) of the Bankruptcy Code defines "single asset real estate" as

> real property constituting a single property or project other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental

11 U.S.C. § 101(51B). Courts have noted that a "single asset real estate" project is one "owned by an entity whose sole purpose was to operate that real estate with monies generated by the real

14

estate." *In re Philmont Dev. Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995). A "single asset real estate" case is one in which the debtor "performs functions intrinsic to owning and developing the real estate and not one where the debtor generates income from other activities not incidental thereto." *In re Kara Homes, Inc.*, 363 B.R. at 406.

35. The Debtors and every other major creditor constituency (aside from the Construction Lienholder Group) recognize that M&G Resins is not a single asset real estate debtor. Unlike a hotel or condominium, the Debtors' sole purpose is not the operation of real estate. Rather, the Debtors operate a PET/PTA manufacturing plant, which would generate income primarily from the sale of its products. In fact, the Construction Lienholder Group only raises this argument now to justify the extreme relief requested in the Motion, even though it never hinted at such an argument while seeking appointment of an official committee of lienholders or while filing any of its objections to certain motion filed by the Debtors. Regardless, to treat each of the Debtors as an isolated entity ignores the interrelationships between entities, including the Debtors' shared management, employees, administrative services, and many other services and benefits provided by the Debtors in a consolidated manner. *See* Declaration of Dennis Stogstill in Support of First Day Pleadings (Docket No. 3), at ¶¶ 13–38. Accordingly, there is no basis to lift the automatic stay or to treat M&G Resins as a single asset real estate case.

## **CONCLUSION**

36. For the reasons set forth herein, DAK Americas respectfully requests that the Motion be denied, and the Court grant any such other relief as is just and proper under the circumstances.

15

WEIL:\96441615\8\13405.0158

Dated: February 9, 2018
       Wilmington, Delaware

*/s/ Curtis S. Miller*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
1201 North Market Street, 16th Floor
Wilmington, DE 19899
Telephone: (302) 658-9200
Facsimile: (302) 425-4673

and-

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez
Christopher M. Lopez
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

*Counsel for DAK Americas LLC*