# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M&G USA CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>**Ref. D.I. 770**<br>**Hearing Date/Time:** Feb. 16, 2018 at 9:30 a.m.<br>**Objections Due:** Feb. 12, 2018 at 4:00 p.m.<br>**(extended by agreement)** |

## OBJECTION OF M&G MEXICO
## TO BANCOMEXT'S MOTION FOR EXAMINATION
## PURSUANT TO BANKRUPTCY RULE 2004

M&G México Holding, S.A. de C.V. ("M&G Holding") and M&G Polímeros México, S.A. de C.V. ("M&G Polimeros," and, together with M&G Holding, "M&G Mexico"), by and through their undersigned counsel, hereby object to Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Desarrollo's ("Bancomext") Motion for Examination Pursuant to Bankruptcy Rule 2004 [Docket No. 770] (the "Motion") and respectfully state as follows:

## INTRODUCTION

1. The Motion is a twofold misuse of Rule 2004 and should be denied. To the extent the Motion seeks documents supporting Bancomext's potential claims against the Debtors, Rule 2004 may be the right vehicle, but M&G Mexico is the wrong respondent. To the extent the Motion seeks documents supporting Bancomext's potential claims against M&G Mexico, M&G may be the right respondent, but Rule 2004 is the wrong vehicle for several reasons.

2. M&G Mexico is deeply involved in restructuring negotiations with its creditors in Mexico. In furtherance of those negotiations, M&G Mexico and its bank creditors, including

Bancomext, have entered into a standstill agreement, which (a) requires M&G Mexico to produce substantial documents concerning its past and present finances, and (b) prohibits the creditors from pursuing any kind of legal action against M&G Mexico. M&G Mexico is complying with its disclosure obligations under that agreement, but Bancomext now wants broader discovery than it bargained for. If Bancomext is dissatisfied with the standstill agreement that it signed, which is governed by Mexican law and includes a submission to the jurisdiction of the Mexican courts, Bancomext can and should pursue that matter in the Mexican courts. It is well settled that Rule 2004 may not be used to circumvent limitations on discovery in proceedings pending in other venues. If Bancomext has potential claims against the Debtors, it can and should direct any discovery requests concerning the Debtors' assets or activities to the Debtors. If Bancomext has been inefficient on that front, that is no reason to burden M&G Mexico, which neither controls the Debtors nor keeps their records.[1]

## FACTUAL BACKGROUND[2]

3. Bancomext is a Mexican bank that made loans (the "<u>Bancomext Loans</u>") to M&G Mexico, a Mexican borrower, under documents governed by Mexican law. The Bancomext Loans are the subject of ongoing debt restructuring discussions and agreements in Mexico regarding a prospective reorganization under Mexican law. For months, Bancomext has been a party to these Mexican debt restructuring discussions, and Bancomext has requested and obtained much information from M&G Mexico in this process, including detailed historical financials and forecasts.

---

[1] M&G Mexico understands that Bancomext has sought some information from the Debtors informally, as Bancomext had been doing with M&G Mexico before the filing of the Motion. Bancomext has admitted it has gained access to a data room that the Debtors have made available to Bancomext, which may contain responsive documents; it is not clear whether Bancomext has reviewed any of these materials.

[2] Capitalized terms not defined herein have the meanings given in the Motion.

4. M&G Mexico are two of four direct or indirect subsidiaries of the Debtors that operate in Mexico (the other two being M&Ghisolfi de México S.A. de C.V. and Servicios Tamaulipas S.A. de C.V.; collectively with M&G Mexico, the "Mexican Subsidiaries"). All of the Mexican Subsidiaries are in financial distress and have been engaged in these restructuring negotiations with Bancomext and their other major creditors, chiefly a syndicate of Mexican lenders (collectively, the "Mexican Lenders").

5. As part of these negotiations, the Mexican Subsidiaries and the Mexican Lenders entered into a standstill agreement, dated October 30, 2017 (as amended on December 4, 2017 and December 27, 2017, the "Standstill Agreement"). (A copy of the Standstill Agreement, with Amendments, is attached hereto as Exhibit A.) The Standstill Agreement provides, among other things, as follows:

> A. Standstill. The creditors agree that, as of the date of the Standstill Agreement and until its Termination (as such term is defined in section F of Clause Second of this Standstill, the "Standstill Period"), they shall abstain, with the exception (i) of the exercise (initiation or continuation) of the actions and measures that result necessary or convenient to maintain all of the rights, either contractual or by law, with regards to the Loans, as well as avoiding the preclusion, expiration or prescription of its rights, and (ii) of actions, demands, and/or complaints of a criminal nature, from:
>
> (I) initiating or continuing **any legal action, of civil or mercantile nature**, regarding the Loans, against the M&G Companies, with respect to any Loan;
>
> (II) filing a lawsuit or initiate civil or mercantile procedures for the collection or the entirety or parts of the Loan or destined to seize assets of the M&G Companies;
>
> (III) initiating or continuing any bankruptcy process or similar procedures of any of the M&G Companies in Mexico or any other jurisdiction, and
>
> (IV) exercising, initiating or continuing any action or legal procedure of civil or mercantile nature for the attachment of any asset granted as guaranty under any Loan.

Standstill Agreement at 5-6 (First Clause).[3]

6. The Standstill Agreement will remain in effect, unless further extended, until June 18, 2018. Standstill Agreement, Second Amendment, at 5-6 (Second Clause).

7. The Standstill Agreement is governed by Mexican law and includes the parties' irrevocable submission to the jurisdiction of the Mexican courts in any disputes arising therefrom. Standstill Agreement at 12 (Seventh Clause).

8. The Standstill Agreement also provides a mechanism by which the Mexican Lenders may request, and the Mexican Entities will provide, substantial information to the creditors relevant to M&G Mexico's restructuring process:

> **Fifth.** <u>Information</u>. By means of this agreement, each of the M&G Entities agree to grant the Creditors and, if applicable, Advisors (for the benefit and use of Creditors), any financial, legal and operational information that in the opinion of Advisors is convenient or necessary for the evaluation of financial, economic, legal and tax situation or of any nature related with the business of M&G Entities, or the verification of compliance of the obligations of M&G Entities, as the case may be, derived from the Standstill, as long as such information is reasonable and consistent with similar restructuring processes. Such information will be granted by M&G Entities to Creditors and, if it's the case, to Advisors (for the benefit and use of Creditors), as soon as possible by any means, but no later than 5 (five) business days following from the request of Creditors....

Standstill Agreement at 12 (Fifth Clause).

9. In addition, in the first Amendment to the Standstill Agreement, M&G Mexico further agreed to provide weekly reports regarding its financials, its inventory, and updates regarding the implementation of the Mexican Entities' restructuring. Standstill Agreement, First Amendment, at 3-4 (Section 2.2).

---

[3] A certified translation of the Standstill Agreement is being prepared and will be filed in advance of the hearing on the Motion.

10. On January 25, 2018, Bancomext filed the Motion, the stated objective of which is to "examine specific transactions, potentially unearth fraud, and thereby establish claims against the Debtors in the Chapter 11 Cases." Motion ¶ 30. Bancomext asserts that the information it seeks in the Motion is "necessary to investigate the apparent misuse of the proceeds of its loans . . . [and] what causes of action it may have against the Debtors with respect thereto." *Id.* ¶¶ 17, 31.

11. The Motion seeks to compel production of the following categories of documents (collectively, the "Requests"):

> 1. All Documents relating to the M&G Polimeros Revolving Credit Agreement and the M&G Holding Revolving Credit Agreement, including, but not limited to, the decision to enter into each agreement, the purpose of each agreement, and the use of the proceeds of the issued loans under each agreement;
>
> 2. All Documents relating to any draw requests issued pursuant to the Credit Agreements;
>
> 3. All Documents relating to any decision to repay or not repay the Credit Agreements;
>
> 4. All Documents relating to any transfers between M&G Mexico and the Debtors from October 31, 2010 to the Petition Date;
>
> 5. All Documents regarding the use of proceeds of the Credit Agreements by the Debtors or M&G Mexico;
>
> 6. All Documents relating to the NAFTA Pooling Arrangement, including all money deposited and withdrawn by the Debtors or M&G Mexico;
>
> 7. All Documents relating to any efforts and controls to segregate money deposited in the NAFTA Pooling Arrangement;
>
> 8. All Documents relating to the creation of the new cash management system prior to the Petition Date;
>
> 9. All Documents relating to efforts to track and segregate proceeds of the Credit Agreements by the Debtors or any of their Affiliates;

10. All Documents relating to intercompany payables owed by M&G Mexico to the Debtors;

11. All Documents relating to all intercompany loans between M&G USA Corporation and M&G Mexico;

12. All Documents relating to the closure of the Altamira plant in September 2017; and

13. All Documents relating to a loan, dated as of September 19, 2017 from M&G Polimeros to M&G USA Corporation.

*See* Motion, Attachment 1 at 7-8.

12. As noted above, Bancomext has been granted access to the Debtors' data room, which "may contain some documents responsive to" Bancomext's Requests. *Id.* ¶ 34. It is unclear whether Bancomext has reviewed any of those documents. It is also unclear why Bancomext has not sought formal discovery from the Debtors.

## **ARGUMENT**

13. Rule 2004 provides that "[t]he examination of an entity under this rule…may relate only to the acts, conduct, or property or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate…" Fed. R. Bankr. P. 2004. The best source for such information about the items set forth in this rule would plainly be the Debtors themselves. While case law does enable the use of Rule 2004 to take discovery of entities other than the Debtors, a party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks. *In re SunEdison, Inc.*, 572 B.R. 482, 489–90 (Bankr. S.D.N.Y. 2017). That is, the proposed examination must be "necessary to establish the claim of the party seeking the examination, or ... denial of such request would cause the examiner undue hardship or injustice." *In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) (citation omitted).

14. The decision to grant or deny a Rule 2004 motion "lies within the sound discretion of the Bankruptcy Court." *SunEdison,* 572 B.R. at 489. In assessing a Rule 2004 request, the Court must balance the competing interests of the parties, weighing the relevance and necessity of the information sought against the burden on the respondent. *Id.* at 489-490; *AOG Entm't*, 558 B.R. at 109.

### A. Bancomext Cannot Show Good Cause for Discovery Against M&G Mexico.

#### 1. Certain of the Requests are unrelated to this bankruptcy case.

15. Bancomext has failed to sustain its burden in showing that the Motion is necessary to establish its claims against the Debtors, or that the failure to obtain the documents demanded would cause Bancomext undue hardship or injustice.

16. Bancomext alleges that the Motion seeks information to "potentially unearth fraud, and thereby establish claims against the Debtors in the Chapter 11 Cases," Motion, ¶ 30, and that its Requests are "targeted and reasonably calculated to acquire the necessary facts it needs to investigate any claims it has against the Debtors," *id.*, ¶ 32.

17. Several of the Requests have virtually nothing to do with Bancomext's potential claims against the Debtors; rather, they plainly seek evidence to support Bancomext's potential claims against M&G Mexico. Requests numbers 1, 2 and 3 relate solely to M&G Mexico's entry into, draws under, and repayment of, the Mexican Loans, and do not refer in any way to the Debtors:

> 1. All Documents relating to the M&G Polimeros Revolving Credit Agreement and the M&G Holding Revolving Credit Agreement, including, but not limited to, the decision to enter into each agreement, the purpose of each agreement, and the use of the proceeds of the issued loans under each agreement;
>
> 2. All Documents relating to any draw requests issued [by M&G Mexico] pursuant to the Credit Agreements; [and]

7

>   3. All Documents relating to any decision [by M&G Mexico] to repay or not repay the Credit Agreements . . . .

Motion, Attachment A at 7. Request number 5 seeks, in part, "Documents regarding the use of proceeds of the [Bancomext Loans] by … M&G Polimeros, or M&G Holding." *Id.* at 7. Request number 12, "All Documents related to the reasons for shuttering the [Mexican] Altamira facility on September 5, 2017," is plainly irrelevant to any claim against the Debtors. *Id.* at 8.

18. Each of these Requests should be directed to the Mexican Subsidiaries in connection with the Mexican law-governed restructuring process, as they relate only to Bancomext's potential claims in Mexico and are not remotely "necessary" to the establishment of claims against the Debtors, as required by Rule 2004. *See, e.g., SunEdison*, 562 B.R. at 251 ("the party seeking Rule 2004 discovery must show a need or undue hardship relating to the bankruptcy case in which the information is sought, not in some other, foreign proceeding"); *In re J & R Trucking, Inc.*, 431 B.R. 818, 823 (Bankr. N.D. Ind. 2010) (The movant's "real purpose is to identify another entity movants might be able to collect from …. [The movants cannot] turn . . . a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors. Movants have other tools and other fora which they can use to investigate their rights against third parties …. They should use them and not Rule 2004.").

19. Balancing the relevance and necessity of the information sought against the burden on the respondent, it is clear that there is no good cause to increase the disclosure burdens that M&G Mexico has already agreed to in the Standstill Agreement with the Requests discussed in this section, as they are not even relevant to Bancomext's potential claims against the Debtors. *See, e.g., AOG Entm't*, 558 B.R. at 109.

20. One of the *SunEdison* decisions cited above is especially instructive. There, as here, a creditor sought discovery under Rule 2004 allegedly to protect its interest in the proceeds of an asset sale. The respondent was the debtors, not the foreign nondebtor affiliate, and the seller was a foreign nondebtor affiliate, not the debtors; but there, as here, the creditor based the motion on the triangular connection among itself and the debtor and the foreign nondebtor affiliate. *See SunEdison*, 562 B.R. at 251. The court noted that the "cause [that the movant] is required to demonstrate must relate to these cases," and that, "[a]lthough many of the requests are ostensibly relevant to the subject matter of the Debtors' cases, the primary focus of the [motion] is the need for information to use in the [foreign] insolvency proceeding." *Id.* The court accordingly found cause to be lacking and rejected nearly all of the creditor's document requests. *Id.* at 252. There, as here, the mere existence of a relationship between the debtor and a foreign nondebtor affiliate does not create a sufficient basis for a creditor's Rule 2004 discovery targeted at that foreign nondebtor affiliate.

### 2. The Motion Violates the Standstill Agreement and the Pending Proceeding Rule.

21. The Standstill Agreement weighs strongly against Bancomext's ability to show good cause to assert any discovery demands against M&G Mexico. Bancomext is a key lender to M&G Mexico with significant leverage over the Mexican Subsidiaries, and Bancomext was central in the negotiation of the Standstill Agreement in Mexico (now amended twice and extended to June 18, 2018). If Bancomext is unhappy with the terms or pace of the Mexican restructuring process for the Mexican Subsidiaries, Bancomext is free to pursue the matter with the other parties to the Standstill Agreement or in the Mexican courts, whose jurisdiction Bancomext has expressly acknowledged. The Motion seems more an effort to pressure M&G

Mexico than an effort to pursue the Debtors. The Motion breaches the letter and spirit of the Standstill Agreement.

22. As noted above, the Mexican Subsidiaries, including M&G Mexico, and their creditors, including Bancomext, are engaged in restructuring negotiations, and in furtherance thereof have entered into the Standstill Agreement. The Standstill Agreement prohibits the signatory creditors, including Bancomext, from commencing any legal action with respect to the Bancomext Loans or any legal procedures for the collection on the Bancomext Loans or any bankruptcy process or any attachment procedure, "in Mexico or any other jurisdiction." *See* Standstill Agreement at 5-6 (First Clause). There is no carveout for discovery demands, which is consistent with the fact that the Standstill Agreement requires the Mexican Subsidiaries, among other things, to disclose relevant documents. *Id.* at 12 (Fifth Clause).

23. All of the Requests are directly or indirectly based on the Bancomext Loans. *See* Motion, Attachment at 7-8. Accordingly, whether considered independently or as evidence against good cause or undue burden, the fact that the Motion violates the movant's contractual obligations should be sufficient grounds to deny the Motion. *See In re Duratech Indus., Inc.,* 241 B.R. 291, 296 (Bankr. E.D.N.Y.), *aff'd,* 241 B.R. 283 (E.D.N.Y. 1999) ("The case law is replete with holdings that resort to Rule 2004 cannot include discovery conducted in bad faith ….").

24. Moreover, the Motion violates the pending proceeding rule, by which courts have held that Rule 2004 examinations should not be used as a tactic to circumvent the typically narrower discovery rules that apply in a pending dispute in another venue between the movant and the respondent. *See, e.g., In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) (Rule 2004 examination was not appropriate "to circumvent limitations on discovery" in pending

10

securities fraud action, in light of the "distinction between the broad . . . nature of the Rule 2004 exam and the more restrictive nature of discovery under [the Federal Rules of Civil Procedure]") (citations omitted); *In re Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (where arbitration was pending in foreign country, parties were limited to disclosure procedures applicable in those proceedings, since "courts rarely permit Rule 2004 to be used for discovery in connection with pending [] contested matters"); *In re MF Global Inc.*, No. 11-02790 MG, 2013 WL 74580, at *2 (Bankr. S.D.N.Y. Jan. 8, 2013) (Rule 2004 motion denied, given pending state court action).

25. M&G Mexico and Bancomext are not yet parties to a pending civil action or insolvency proceeding in Mexico, such that Bancomext has <u>no</u> right to demand discovery from M&G Mexico under Mexican law (other than as M&G is contractually required to provide pursuant to the Standstill Agreement). M&G Mexico and Bancomext are, however, parties to a substantial restructuring negotiation that will likely result in the Mexican Subsidiaries commencing an insolvency proceeding (i.e., a *concurso mercantil*) in a Mexican court under Mexican law in the near future. Out of court or in court, the parties are clearly operating under Mexican law. Bancomext should not be permitted to use Rule 2004 to evade the rules that govern discovery under applicable Mexican law. *See In re Duratech Indus., Inc.*, 241 B.R. 291, 299 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999) (denying Rule 2004 motion as nothing more than a "smoke screen" to facilitate the violation of an injunction and a means of "fighting the litigation wars on [] two fronts at the same time."); *In re Cont'l Forge Co., Inc.*, 73 B.R. 1005, 1006 (Bankr. W.D. Pa. 1987) (rejecting Rule 2004 motion in which it appeared likely that the movant's purpose was "solely to gain a competitive advantage").

26. For the foregoing reasons, the Motion should be denied as an improper attempt to evade the Standstill Agreement and applicable Mexican law. *See id.*

### B. Any Requests Concerning the Debtors Should Be Directed to the Debtors.

27. A few of the Requests are essentially focused on the Debtors' potential access to, receipt of, and use of "the proceeds of the [Bancomext Loans]," whether through the "NAFTA Pooling Arrangement" or the "new cash management system prior to the Petition Date" or alleged "intercompany loans." *See* Motion, Attachment A at 7-8. Not only were the Debtors themselves parties to such pooling arrangement and cash management system and loans (if any), several of the Requests specifically ask M&G Mexico to provide documents concerning actions potentially taken "by the Debtors." *See id.* (Requests 5, 6 9). M&G Mexico, as subsidiaries of the Debtors, do not control the Debtors or maintain their records.

28. No "undue hardship or injustice" will result from denying the Motion as to the Requests discussed in this section because M&G Mexico, to the extent it has information on these topics, is not the only or even the best available source of that information. *See AOG Entm't,* 558 B.R. at 109. In short, Bancomext can and should look to the Debtors for information regarding the Debtors' finances. *See Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."). Even if M&G Mexico were to produce what documents it has concerning the Debtors' activities, there is a real possibility that the documents would be incomplete, incorrect or otherwise misleading, resulting in inefficiencies and increased burdens all around. *See In re GHR Energy Corp.*, 33 B.R. 451, 455 (Bankr. D. Mass. 1983) ("While it is true, in some instances, that creditors may possess information relative to the debtor's business and conduct which the debtors do not possess, this would be the exception.").

29. For the foregoing reasons, the Motion should be denied for lack of good cause.

## CONCLUSION

Each of Bancomext's Requests is either (i) an attempt to gather information irrelevant to any claim against the Debtors, in contravention of Rule 2004, the Standstill Agreement, and applicable Mexican law, or (ii) an attempt to burden M&G Mexico with discovery obligations that should be imposed on the Debtors, if anyone. Accordingly, M&G Mexico respectfully requests that the Court deny the Motion.

Dated: February 12, 2018

**BLANK ROME LLP**

*/s/ Michael D. DeBaecke*
Michael D. DeBaecke (No. 3186)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: 302.425.6400
Facsimile: 302.428.5107
debaecke@blankrome.com

-and-

**MORGAN, LEWIS & BOCKIUS LLP**

Timothy B. DeSieno (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
101 Park Avenue
New York, New York 10178
Telephone: 212.309.6000
Facsimile: 212.309.6001
timothy.desieno@morganlewis.com
joshua.dorchak@morganlewis.com

*Attorneys for M&G Polímeros México S.A. de C.V.
and M&G México Holding, S.A. de C.V.*