**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>**Ref: Docket No. 173, 490, 537, 596, 665, 864** |

**DEBTORS' REPLY TO OBJECTION OF BRICKSTREET MUTUAL INSURANCE COMPANY TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACT**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this reply (this "Reply") to the objection [Docket No. 596] (the "Objection") of BrickStreet Mutual Insurance Company ("BrickStreet") to the Debtors' motion [Docket No. 665] (the "Motion") to sell the Apple Grove Assets (as defined below). In support of this Reply, the Debtors respectfully represent as follows:

## BACKGROUND

1. On October 24, 2017, M&G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors continue in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

Code. On November 13, 2017, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in these Cases.

2. On December 21, 2017, the Debtors filed the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 537] (the "Contract Notice"). The Contract Notice listed the Workers Compensation and Employers Liability Insurance Policy issued by BrickStreet Mutual Insurance Company in favor of M&G Polymers USA, LLC (the "Insurance Contract") as having a Cure Cost (as defined in the Contract Notice) of $0.00. A true and correct copy of the Insurance Contract is attached hereto as Exhibit A.

3. On February 1, 2018, the Court entered the *Order Authorizing (I) the Sale of Certain Assets of M&G USA Corporation and M&G Polymers USA, LLC Free and Clear of Encumbrances and Liens; (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Related Relief* [Docket No. 864] ("Apple Grove Sale Order"). In the Apple Grove Sale Order, the Court authorized the sale (the "Apple Grove Sale") of certain assets to Far Eastern Investment (Holding) Ltd. ("Far Eastern"). The Debtors' rights under the Insurance Contract (the "Insurance Contract Rights") are among the assets that Far Eastern seeks to acquire in the Apple Grove Sale. The Insurance Contract provides certain insurance coverage for a one-year period ending July 1, 2018.

4. On January 3, 2018, BrickStreet filed the Objection, contesting the Debtors' ability to transfer the Debtors' Insurance Contract Rights. BrickStreet does not object to either (a) the Cure Cost for the Insurance Contract as set forth in the Contract Notice or (b) Far Eastern's adequate assurance of future performance. Rather, BrickStreet argues that the Debtors may not transfer the Insurance Contract Rights because the Insurance Contract is not an

executory contract. *See* Objection ¶¶ 6-7 ("The Insurance Contract is no longer executory, therefore, because no material performance remains to be performed by the Debtors on the Insurance Contract. BrickStreet objects to any proposed assumption and assignment of the Insurance Contract because it no longer is executory and therefore cannot be assumed and assigned.") (citations omitted).

5. Prior to the hearing on the Apple Grove Sale, the Debtors and BrickStreet agreed to continue the Objection to a later hearing. Nevertheless, because the Debtors and BrickStreet have been unable to come to a consensual resolution, the Debtors must file this Reply to BrickStreet's Objection.

## REPLY

### A. The Insurance Contract Is Executory and May Be Assumed and Assigned Under Section 365 of the Bankruptcy Code

6. BrickStreet's sole objection to the Debtors' transfer of the Insurance Contract Rights is that the Insurance Contract is not an executory contract, and thus may not be assumed and assigned under section 365 of the Bankruptcy Code. BrickStreet, however, is incorrect—the Insurance Contract is executory, and thus may be assumed and assigned.

7. In the Third Circuit, courts apply the "Countryman" test in determining whether a contract is executory. *See In re LG Philips Displays USA, Inc.*, No. 06-10245 (BLS), 2006 WL 1748671, at *3 (Bankr. D. Del. June 21, 2006) (Shannon, J.). Under the Countryman test, a contract is executory if both parties had material unperformed obligations as of the petition date. *See id.*; *see also In re Exide Techs.*, 378 B.R. 762, 766 (Bankr. D. Del. 2007) (Carey, J.) ("The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed.").

8. Courts have previously held that a contract is executory if the contract parties continue to have material contingent obligations, such as indemnification obligations. *See In re Broadstripe, LLC*, 402 B.R. 646, 655 (Bankr. D. Del. 2009) (Sontchi, J.) (contract was executory when debtor had continuing obligations to (a) maintain confidentiality of contract, (b) indemnify counterparty and (c) abide by counterparty's bylaws); *In re Safety-Kleen Corp.*, 410 B.R. 164, 167-68 (Bankr. D. Del. 2009) (Walsh, J.) (contract was executory when debtor had contingent indemnification obligations); *In re Preston*, 53 B.R. 589, 591-92 (Bankr. M.D. Tenn. 1985) (same).

9. Here, both parties had material unperformed obligations, including contingent payment obligations, under the Insurance Contract on the Petition Date. Such obligations include the following:

(a) BrickStreet's material unperformed obligations include:

(i) Certain payment and defense obligations, such as the obligation (a) to pay amounts for which the Debtors are liable that are covered under the Insurance Contract and (b) to defend claims or proceedings asserted against the Debtors for damages payable under the Insurance Contract (Insurance Contract, p. 17, Part One, §§ B, C, D; p. 18-19, Part Two, §§ B, D, E); and

(ii) Certain additional continuing duties, such as continuing duties to beneficiaries of the Insurance Contract (Insurance Contract, p. 18, Part One, § H(3)).

(b) The Debtors' material unperformed obligations include:

(i) Certain payment and reimbursement obligations, including the obligation to reimburse BrickStreet for any payments in excess of the benefits regularly provided by the applicable workers compensation law, including those required by, among other things, (a) the Debtors' serious and willful misconduct or (b) the Debtors' knowing employment of an employee in violation of law (Insurance Contract, p. 18, Part One, § F);

(ii) Certain disclosure and notification obligations, such as the obligation (a) to notify BrickStreet of any work beginning in certain states and (b) to

notify BrickStreet of any "change in ownership" (Insurance Contract, p. 20, Part Three, §§ A(4), B; p. 28);

(iii) Certain obligations in respect of records, including the obligation (a) to maintain and provide certain records to BrickStreet and (b) to allow BrickStreet to inspect certain records in connection with an applicable audit (Insurance Contract, p. 21, Part Five, §§ F, G; p. 33; p. 36, § G);

(iv) The obligation to allow BrickStreet to inspect applicable workplace premises (Insurance Contract, p. 22, Part Six, § A; p. 36, § A);

(v) With respect to the Debtors' rights against third parties that are liable for any injury covered by the Insurance Contract, the obligation (a) to protect such rights for BrickStreet's benefit and (b) to assist BrickStreet in enforcing such rights (Insurance Contract, p. 18, Part One, § G; p. 20, Part Two, § H);

(vi) Certain other continuing duties, including the obligation (a) to comply with all terms under the Insurance Contract, (b) to provide for immediate medical and other services required by workers' compensation laws and (c) to provide BrickStreet with applicable information for injured parties (Insurance Contract, p. 20, Part Two, § I; p. 20-21, Part Four).[2]

10. The foregoing obligations, including the parties' contingent payment obligations, demonstrate that the Insurance Contract is executory. *See Broadstripe*, 402 B.R. at 655 (contract was executory based on debtor's contingent indemnification obligation); *Safety-Kleen Corp.*, 410 B.R. at 167-68 (same); *Preston*, 53 B.R. at 591-92 (same). As a result, the Debtors may assume and assign the Insurance Contract under section 365 of the Bankruptcy Code.

11. The Debtors are unaware of any legal basis to deny the proposed assumption and assignment of the Insurance Contract to Far Eastern. For example, BrickStreet has cited no "applicable law" that excuses BrickStreet from accepting performance from, or rendering performance to, an entity other than the Debtors. *See* 11 U.S.C. § 365(c)(1). Accordingly, the

[2] The cases cited by BrickStreet are distinguishable and thus do not compel the conclusion that the Insurance Contract is non-executory. *See In re Surfside Resort and Suites, Inc.*, 344 B.R. 179, 186-87 (Bankr. M.D. Fla. 2006) (court held insurance policy was non-executory based only on fact that debtor had already paid premium; court did not consider other obligations possibly owed by debtor under insurance policy); *In re Firearms Import and Export Corp.*, 131 B.R. 1009, 1014 (Bankr. S.D. Fla. 1991) (court held insurance policy was non-executory because, among other things, insurance policy provided coverage solely for prepetition period).

Debtors respectfully submit that the Insurance Contract is an executory contract that the Debtors may assume and assign to Far Eastern under section 365 of the Bankruptcy Code in connection with the Apple Grove Sale.

### B. The Debtors May Sell Their Insurance Contract Rights Under Section 363(b) of the Bankruptcy Code Regardless of Whether the Insurance Contract Is Executory

12. Even if, however, the Insurance Contract is not executory, the Debtors may still sell their Insurance Contract Rights to Far Eastern under section 363 of the Bankruptcy Code.

13. As previously explained by this Court:

> Under the Bankruptcy Code, if a contract is not executory, a debtor may assign, delegate, or transfer rights and/or obligations under section 363 of the Bankruptcy Code, provided that the criteria of that section are satisfied. If a contract is executory, the debtor must also comply with section 365 of the Bankruptcy Code, which provides special rules governing the transfer of rights and obligations under a contract.

*In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87, 93 (Bankr. D. Del. 2009) (Sontchi, J.). Accordingly, even if the Insurance Contract is non-executory, the Debtors are still able to sell their Insurance Contract Rights under section 363. *See id.* at 94 ("The Court reads [the Third Circuit's] *Folger Adam* [decision] to stand for the [following proposition]: that section 363 of the Bankruptcy Code permits a debtor to transfer its rights and obligations under a non-executory contract . . . .") (citing *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252 (3d Cir. 2000).

14. Given that the Debtors have already demonstrated that the Apple Grove Sale satisfies section 363(b) of the Bankruptcy Code,[3] the Debtors respectfully submit that they are

[3] *See* Apple Grove Sale Order ¶¶ E, F, G, H, I, M (finding, among other things that (a) there was adequate notice of the Apple Grove Sale; (b) there is a good business purpose for the Apple Grove Sale; (c) the Apple Grove Sale marketing process was conducted in good faith; and (d) Far Eastern's offer to buy the assets in the Apple Grove Sale is fair, reasonable and in the best interests of the Debtors' estates).

free to sell their Insurance Contract Rights in connection with that sale. For these reasons, the Court should overrule BrickStreet's Objection.[4]

### C. BrickStreet May Still Enforce the Applicable Provisions of the Insurance Contract

15. It bears emphasis that BrickStreet is not without redress after the Debtors' transfer of their Insurance Contract Rights. As an initial matter, it is worth noting that BrickStreet expressly agreed that its obligations under the Insurance Contract would not be affected by the Debtors' bankruptcy. *See* Insurance Contract, p. 18, Part One, § H(2) ("[The Debtors'] default or the bankruptcy or insolvency of [the Debtors] or [their] estate will not relieve [BrickStreet] of [its] duties under this insurance after an injury occurs."); p. 20, Part Two, § I ("The Bankruptcy or insolvency of [the Debtors or their] estate will not relieve [BrickStreet] of its obligations under this Part."). Thus, this Court should not allow BrickStreet to use the Debtors' bankruptcy as a means to free itself from its ongoing obligations under the Insurance Contract.

16. Further, after the Apple Grove Sale is consummated, BrickStreet is free to enforce any applicable provisions of the Insurance Contract. For example, the Insurance Contract contemplates assignment to a successor in connection with a "change in ownership" and appears to provide BrickStreet with certain rights following such a change in ownership. *See* Insurance Contract, p. 28 (setting forth certain BrickStreet rights in event of "change in ownership"). Accordingly, any claim by BrickStreet that it is without redress is incorrect—after consummation of the Apple Grove Sale, BrickStreet is free to enforce, in its discretion, any continuing, applicable Insurance Contract provisions.

---

[4] The Debtors also believe that none of the Insurance Contract's provisions prevent the Debtors from selling their Insurance Contract Rights under section 363. *E.g.*, *Am. Home*, 402 B.R. at 101-03 (holding that, under section 363(f)(5), debtor could sell non-executory contract rights to buyer, notwithstanding anti-assignment provision; alternatively holding that such provision was unenforceable under section 363(*l*)).

## CONCLUSION

17. For the reasons set forth herein, Debtors respectfully request that the Court overrule the Objection and approve the sale of the Insurance Contract Rights in connection with the Apple Grove Sale.

Dated: February 16, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession