# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 17-12307 (BLS) |
| M & G USA CORPORATION, *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hearing Date: Feb. 22, 2018 at 11:00 a.m. (ET) |
| | ) | Re: Docket Nos. 824, 936, 938, 939, 941, and 942 |

## OMNIBUS REPLY IN SUPPORT OF MOTION OF THE CONSTRUCTION LIENHOLDER GROUP FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO COMMENCE ACTIONS IN TEXAS TO DETERMINE THE RELATIVE PRIORITY OF CONSTRUCTION LIENS BETWEEN THE CONSTRUCTION LIENHOLDERS AND NONDEBTORS, BANCO INBURSA, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO INBURSA AND DAK AMERICAS LLC

Certain construction lien[2] claimants (collectively, the "<u>Construction Lienholder Group</u>"),[3] by and through their undersigned counsel, file this omnibus reply to support their motion (the "<u>Motion</u>") for an order granting relief from the automatic stay, to the extent necessary, so that the Construction Lienholder Group, and any others similarly situated and so inclined, may

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M & G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M & G Chemicals, S.A. (1022), M & G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] The term "construction lien" is intended to encompass all mechanics', contractors' or materialman's liens arising under and pursuant to Texas property law.

[3] The members of the Construction Lienholder Group are (i) Apache Industrial, Services, Inc., (ii) Arc Energy Services, Inc., (iii) Axis Industrial Services, LLC, (iv) Bay Ltd, (v) CCC group, Inc., (vi) Dawkins On-Site Concrete, LLC, (vii) Fagioli, Inc., (viii) Garrett Mechanical, Inc. (ix) TCI Business Capital as assignee of Integrity Mechanical Specialists, (x) Lexicon, Inc., (xi) Lion Point Capital, (xii) MC Welding, Inc., (xiii) MEITEC, Inc., (xiv) Mirage Industrial Group, LLC, (xv) MMR Constructors, Inc., (xvi) Montcalm USA, Inc. (xvii) N&A Project Management USA, Inc., (xviii) Repcon, Inc., (xix) SimplexGrinnell, LP, (xx) Sunbelt Rentals, Inc., (xxi) TNT Crane & Rigging Inc., (xxii) WFS Construction Company LLC, and (xxiii) Wholesale Electric Supply of Houston, Inc.

commence lawsuits in a court of competent jurisdiction in the State of Texas to determine the relative priority of the liens held by the construction lienholders and two non-debtors, Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa ("Inbursa"), and DAK Americas LLC ("DAK"), and in support of the Motion, the Construction Lienholder Group respectfully submits the following:

### Background

The Construction Lienholders Group received five objections to the Motion from the following parties: (i) the Debtors [Docket No. 936]; (ii) Banco Nacional de Comercio Exterior, S.N.C., Institucion de Banca de Dessarrollo ("Bancomex") [Docket No. 938]; (iii) DAK [Docket No. 939]; (iv) Inbursa [Docket No. 941]; and (v) the Official Committee of Unsecured Creditors [Docket No. 942] (collectively, the "Responses"). None of the Responses refute the arguments contained in the Motion.

**A. The Automatic Stay is Not Implicated by the Proposed Declaratory Judgment Action.**

1. Despite the myriad of arguments raised in the Responses, nothing therein refutes the simple fact that the automatic stay is not implicated. It is axiomatic that the automatic stay only applies to debtors and does not prevent litigation against non-debtors.[4] Here, the Debtors (and others) are seeking to extend the automatic stay to DAK and Inbursa, in order to effectively immunize them from an action to determine the priority of their liens before a court of competent jurisdiction.

2. Nor are the parties able to square the circle necessary to make the Proposed Declaratory Judgment Action an action against the Debtors or its assets. DAK, in particular,

---

[4] The Construction Lienholder Group is familiar with numerous instances where courts in this district and elsewhere have temporarily extended the automatic stay to include officers and directors, particularly where those officers and directors have rights to indemnification. That is not the situation here.

relies upon an ipse dixit recitation that the Proposed Declaratory Judgment Action violates Section 362(a)(1), (3) –(6) of the Bankruptcy Code. Such arguments fail a basic reading of the statute.

3. First, Section 362(a)(1) prevents actions against the debtor. The Debtors will not be a party to the Proposed Declaratory Judgment Action, so that provision is inapplicable. Second, the Proposed Declaratory Judgment Action is not to obtain possession or control over property of the estate, so Section 362(a)(3) does not apply. Third, the Proposed Declaratory Judgment Action is not an act to create, perfect, or enforce any lien against property of the estate. The liens were already created and perfected; the Proposed Declaratory Judgment Action is solely for a determination as to whose security interest is senior in priority. Accordingly, Sections 362(a)(4) and (5) are inapplicable. Finally, the Proposed Declaratory Judgment Action is not an act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title, so Section 362(a)(6) does not apply.

4. DAK also asserts that allowing construction lienholders to file a state court action against non-debtors "interferes with, and affects the orderly rehabilitation of the Debtors." First, there will no rehabilitation of the Debtors. The Debtors are sticks from which nothing will grow. The best that the Debtors (or any other party in interest) may hope is that the sale process results in sufficient funds to pay all secured creditors in full, leaving something for unsecured creditors. The Proposed Declaratory Judgment Action has absolutely nothing to do with the sale process, other than determining the parties who will receive the proceeds from that sale.

5. In their response, the Debtors state, without any basis, that one of the Debtors, M&G Resins USA, LLC ("M&G Resins") has an interest in a declaratory judgment solely by virtue of its ownership of the property at Corpus Christi. It does not. The Debtors have an

interest in the underlying property, and that interest is transient. Once the sale of the Corpus Christi Plant has been consummated, the only interest that the Debtors will have is to remit payments from the proceeds to the creditors in accordance with the appropriate priority.

6. Nor is it availing for the Debtors to rely upon Chemtex' construction lien to assert that it has an interest. Upon information and belief, to the extent that Chemtex has a claim, it is premised entirely upon, subsumed by, and duplicative of, the claims of other construction lienholders. Accordingly, if Chemtex received payment on account of its claim against M&G Resins, Chemtex would be responsible to pay the claims of the underlying construction lienholders.

7. Both the Debtors and DAK rely upon Tex. Civ. Prac. & Rem. Code Ann. § 37.006 as a basis to argue that the automatic stay is implicated. The Construction Lienholder Group finds it interesting that DAK quoted Section 37.006 of the Tex. Civ. Prac. & Rem. Code as a basis for the proposition that "Texas state courts can only issue a binding declaratory judgment when 'all persons who have or claim any interest that would be affected by the declaration' are made parties to the suit." DAK's quote is not the entirety of the relevant provision, and omits a relevant portion, necessary for the Court's analysis. In its entirety, Section 37.006 provides "When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding."

8. It is a cardinal principle of statutory construction that courts "must give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000). Accordingly, in order to read the statute, this Court must read the statute to provide that all persons who have or claim any interest that would be affected by the declaration must be made

4

parties where possible, however, where a party such as Chemtex may be determined to have an interest but is not a party, then the matter may go forward, but that party is not prejudiced.

9. Finally, multiple Responses note that the Debtors may be forced to be involved in the Proposed Declaratory Judgment Action as a source of information and witnesses relevant to the determination of relative priority on liens asserted against the facility. The automatic stay does not prohibit discovery pertaining to claims against a non-debtor, "even if the discovery requires a response from the debtor, and even if the information discovered could later be used against the debtor." See, e.g., In re Richard B. Vance & Co., 289 B.R. 692 (C.D. Ill. 2003). See also Kenoyer v. Cardinale (In re Kenoyer), 489 B.R. 103 (Bankr. N.D. Cal. 2013) ("it does not violate the automatic stay for a debtor to be compelled to testify in a proceeding against a non-debtor when the debtor has been severed from the proceeding and the purpose of eliciting the testimony is to prosecute a claim against the non-debtor."); Seiko Epson Corp. v Nu-Kote International, Inc., 190 F.3d 1360, 1364 (Fed. Cir. 1999) (It is well established that the automatic stay does not extend to a debtor's nonbankrupt co-defendants "even if they are in a similar legal or factual nexus with the debtor.").

**B. Neither the Motion Nor the Proposed Declaratory Judgment Action is Premature.**

10. Substantially all of the Reponses state that a declaratory judgment action is premature because the Debtors are in the process of trying to sell the Corpus Christi Plant. It is hardly a surprise that the Debtors and other parties would argue that the Motion is premature. The Construction Lienholder Group waited until ninety days after the Petition Date before filing the Motion, which it believes is an appropriate breathing space to permit the Debtors to go through their sale process, and address the other issues in these cases. A hearing to consider the approval of the sale is currently scheduled for March 14, 2018. The deadline for responding

5

parties in a declaratory judgment action is the first Monday following 20 days after service of process. Accordingly, even if this Court were to grant the Motion on February 22, and construction lienholders were to commence an action against DAK and Inbursa the next day, their answer or otherwise responsive pleadings would not be due until March 19, 2018 (i.e., after the sale is approved).

11. There will either be a sale of the Corpus Christi Plant (and other assets) which will result in sufficient funds to satisfy all of the claims of Inbursa, DAK, and the construction liens, or there will not. If the resulting sale is adequate to satisfy the secured claims, then the issue of priority will be moot, and the action will be dismissed. If the proceeds are not sufficient to satisfy all of the claims, then the action in Texas won't be moot, and it should go forward. Similarly if, as the Construction Lienholder Group expects, the Committee prevails on its action against DAK, the action will be moot as against DAK, and DAK will be dismissed from the underlying action once this Court's Order is final.

12. On the other hand, assuming that the sale does not generate sufficient funds, there will a live issue with respect to who the party entitled to the proceeds, in which case the proceeds will need to be held until there is an adjudication. While that determination is pending, the estate will be liable for interest on account of such claim. Accordingly, having the Proposed Declaratory Judgment Action commenced sooner, rather than later, is in everyone's interest.

13. Similarly, the fact that there is a pending action against DAK brought by the Committee is irrelevant. The Construction Lienholder Group has reviewed the Committee's motion, and if, as the Construction Lienholder Group expects, DAK's claim is subordinated or recharacterized then DAK will be dismissed from the Texas action.

14. Delaying the action merely delays the inevitable – at the expense of the Debtors' creditors. Absent sufficient funds from the sale to pay in full all of the secured claims of Inbursa, DAK, and the construction lienholders, the Debtors will have to place the sale proceeds in escrow.

        **C.**      **The Motion Was Not Filed for Leverage, but as a Means for the Adjudication of Legitimate Issues.**

15. It is not without irony that the Debtors stated (and three times, no less!) that the Construction Lienholders Group filed the Motion as "leverage." After failing to pay hundreds of millions of valid obligations to their mechanics and materialmen, the Debtors have run these cases for the benefit of Inbursa.

16. Among other things, the Debtors have sought to deny otherwise valid claims, and they have been and are seeking to delay payment on account of such claims. Solely by way example, the Debtors sought to establish a separate bar date requiring that holders of construction liens fill out a form that included, among other things, answers to legal questions. Had the claimant failed to timely return the Debtors' form, the Debtors proposed procedure would have denied otherwise valid claims, even where the claimant had timely filed and otherwise complied with the Texas requirements to perfect security interests.

17. Were that not enough, the Debtors filed under penalty of perjury their official schedules that listed that every single claim for a construction lien as disputed and contingent. When asked at the 341 meeting about the basis for listing each construction lien claim as disputed and contingent, the Debtors' representative stated "Because they're still in the process

of settling them, so they actually are . . . all contingent and disputed. We're in the process of negotiating and settling them."[5]

18. By contrast, the Construction Lienholders Group waited ninety days from the Petition Date to file the Motion so that the issue of the relative priority of security interests can be adjudicated in an appropriate court that is familiar with the underlying law and within geographic proximity to all of the relevant evidence, including witnesses.

### D. There is Cause for Relief from the Automatic Stay.

19. None of the Responses have provided any legal or factual basis for this Court to conclude that the automatic stay is implicated by the Proposed Declaratory Judgment Action. In the event that this Court concludes that the automatic stay is implicated by a potential suit among non-debtors, the Construction Lienholders have sufficiently demonstrated cause to lift the automatic stay, meeting the three Rexene factors. See Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D.Del. 1992).

20. First, the Debtors will not suffer any prejudice if the stay is lifted. The Debtors will not need be involved. Their ownership of the property does not mean that they have an interest in the relative priority of claims; the results will simply determine the parties to whom checks from the proceeds will have to be issued. That having been said, if the Debtors and Committee want to participate in an action in which they have no pecuniary interest, it is hard to envision that the Debtors and Committee will not seek to intervene. At that point, the Texas court in which the matter is being adjudicated can determine whether either has a recognizable interest in the action.

---

[5] Notably, the Debtors' representative testified that, prior to reviewing and signing the schedules, he did not look at a single contract or invoice related to the claims of any member of the Construction Lienholder Group.

21. On the other hand, not permitting the issues under Texas law to be litigated in Texas will cause hardship significant to construction lienholders. Even putting aside for a moment the extended delay that each will suffer from delay in adjudication of this issue, requiring that construction lienholders litigate the issue of relative priority in Delaware (if this Court even has jurisdiction to adjudicate a matter involving non-debtors) will cause hardship to construction lienholders. All or substantially all of the construction lienholders have witnesses and other evidentiary support with respect to the underlying issues. Given that the Debtors will not be a party <u>and</u> that the sale will likely be approved prior to either of the non-debtors needing to file an answer or a responsive pleading, there will not be any prejudice to the Debtors.

22. The balance of the hardships favors the Construction Lienholders because the construction of the project is governed by Texas law and a court based in Texas is overwhelmingly the most appropriate forum. The construction liens run with the land consistent with the construction liens filed in the Nueces County, Texas property records.

### E. The Corpus Christi Plant is a Single Asset Real Estate.

23. A number of the Responses argued that the M&G Plant is not a single asset real estate. In support of their Responses, various parties parse through cases which are neither analogous nor binding on this Court, as well as legislative history to persuade this court what the phrase "single asset real estate" was intended to mean. It is axiomatic that where a resolution of a question of federal law turns on a statute, the court must look first to the statutory language, and "so long as the statutory scheme is coherent and consistent, there is generally no need for the Court to look beyond the language of the statute." <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 240-41 (1989). <u>See</u> <u>also</u> <u>Toibb v. Radloff</u>, 501 U.S. 157, 162 (1991); <u>In re Armstrong World Indus., Inc.</u>, 432 F.3d 507, 512 (3d Cir. 2005). Accordingly, if the Court concludes that

the term "single asset real estate" is unambiguous, the Court need not reflect upon what Congress intended.

24. The Bankruptcy Code defines "single asset real estate" as "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B). The Corpus Christi plant squarely meets the definition of single asset real estate.

25. These cases are not substantively consolidated. M&G Resins, owns the one asset in Corpus Christi. The real estate is not residential real property. Further, M&G Resins has no income,[6] but to the extent that it does, all of that income is being generated by the Corpus Christi Plant. In fact, other than maintaining the Corpus Christi Plant (which has been shuttered since before the Petition Date), there is no business being conducted at the Plant.

WHEREFORE, the Construction Lienholder Group respectfully requests that this Court enter an order overruling the objections and (i) confirming that the stay is not applicable or that it is modified to permit construction lienholders to commence lawsuits in a court of competent jurisdiction in Texas to determine the priority of their liens relative to those of Inbursa and DAK and (ii) granting to the Construction Lienholder Group all other and further relief which is just

---

[6] In their response, the Debtors admit that the "Corpus Christi Plant is under construction and is generating no income at this time." Debtors' Response, ¶ 36. The Debtors continue that, "when completed, the corpse Christi Plant will be a manufacturing facility principally engaged in the production of PTA/PET resin." Id. That is likely true, but of course, at that point, the Corpus Christi Plant won't be M&G Resin's plant.

10
10018807/1

and proper.

Dated: February 19, 2018    **MORRIS JAMES LLP**

/s/ Jeffrey R. Waxman
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brenna A. Dolphin (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bdolphin@morrisjames.com

*Counsel to the Construction Lienholder Group*