# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17- 12307 (BLS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF
## AN ORDER EXTENDING THEIR EXCLUSIVE FILING PERIODS
## TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move the Court (the "Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), extending (i) the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period"), by 120 days, from February 21, 2018,[2] through and including June 21, 2018 and (ii) the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") through and including August 21, 2018, or 60 days after the expiration of the Exclusive Filing Period, as extended. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Pursuant to Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the filing of this Motion prior to the current deadline serves to extend automatically the current deadline until such time as the Court rules on this Motion. *See* Del. Bankr. L.R. 9006-2.

## PRELIMINARY STATEMENT

1. Since filing their chapter 11 cases, the Debtors have made significant progress toward their goal for these cases—maximizing the value of their assets for the benefit of their stakeholders—while at the same time undertaking various measures to stabilize their remaining operations and minimize costs to their estates. At the onset of these cases, there was great uncertainty surrounding the Debtors' ability to access funds necessary to successfully market and sell their facility in Apple Grove, West Virginia (the "<u>Apple Grove Plant</u>"). However, approximately four months later, after obtaining access to approximately $13.5 million of cash collateral from Comerica Bank and $5 million in bridge financing (the "<u>Polymers DIP Facility</u>"), the Debtors are on the cusp of closing a sale of, among other things, the Apple Grove Plant and related intellectual property (together, the "<u>Apple Grove Assets</u>") for $33.5 million to Far Eastern Holdings, Ltd. ("<u>Far Eastern</u>"). The sale to Far Eastern (when it closes) will generate significant proceeds for Debtor M & G Polymers USA, LLC's creditors, preserve employee jobs and address other significant liabilities. Having run a robust sale process for the Apple Grove Assets, the Debtors' efforts (and those of their advisors) are currently focused on obtaining the highest or best bid for the Corpus Christi Assets and the IP Assets (each as defined below), among other assets.

2. Proposing a chapter 11 plan prior to the expiration of the Exclusive Periods—and thus prior to completion of the sale processes—would be problematic, if not impossible. Any chapter 11 plan that the Debtors might propose and any distributions that would be made thereunder is dependent on, among other things, the outcome of the Debtors' sale processes, including, most critically, the sale of the Corpus Christi Assets. Until that sale process is concluded, the Debtors are unable to predict with any certainty creditors' level of

recoveries, making the drafting of any disclosure statement and proposing any chapter 11 plan at this time premature, cost-inefficient and impractical.

3. While some preliminary discussions have occurred, and likely will continue to occur, upon completion of the sale processes, the Debtors anticipate engaging their major economic stakeholders, including the Committee (as defined below), in meaningful discussions and negotiations regarding the conclusion of these chapter 11 cases. To allow the Exclusive Periods to lapse and permit parties to file competing plans at this time (which as noted above would likely be missing key pieces of critical information) would unnecessarily increase administrative expenses and cause delays at a time when the Debtors should be focusing their efforts on completing a sale of their U.S. assets. For the reasons set forth herein, cause exists to extend the Exclusive Periods, and accordingly, the Debtors respectfully request that the Court grant the Motion.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

A. **General Background**

5. On October 24, 2017 (the "Polymers Petition Date"), Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and

are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration") filed on October 31, 2017 and incorporated herein by reference.

### B. Efforts to Stabilize the Debtors' Operations

7. Since commencing these Cases, the Debtors—with the assistance of their advisors—have devoted a significant amount of time and effort into ensuring a smooth transition into chapter 11, stabilizing their remaining operations and fulfilling their administrative and operational obligations in these Cases. Among other things, the Debtors have sought and obtained Court approval:

(a) authorizing the Debtors to pay the prepetition claims of certain shippers and warehousemen (Docket No. 70);

(b) authorizing the Debtors to pay the prepetition claims of their critical vendors (Docket No. 71);

(c) authorizing the Debtors to pay prepetition employee wage claims, business expenses, benefits and certain deductions and withholdings (Docket No. 69);

(d) authorizing the Debtors to maintain their insurance programs in the ordinary course of business (Docket No. 63);

(e) authorizing the Debtors to pay certain prepetition taxes (Docket No. 64);

(f) establishing procedures for determining adequate assurance for the continued provision of utility services (Docket No. 66);

(g) authorizing the Debtors to maintain their cash management system (Docket No. 68);

(h) retaining various estate professionals (Docket Nos. 298, 299, 300, 307 & 309);

(i) securing a $100 million debtor in possession financing facility (the "DIP Facility") (Docket No. 479) and the consensual use of approximately $13.5 million in cash collateral for M&G Polymers (Docket No. 487), including by reaching a settlement with the Committee that avoided a trial on the Debtors' ability to obtain such financing and use of cash collateral; and

(j) securing the Polymers DIP Facility (Docket No. 865).

Such relief has proved essential to the maintenance of the Debtors' remaining operations and in securing the support of the Debtors' key stakeholders—namely lenders, vendors, suppliers, employees and other parties in interest—over the course of these Cases.

### C. The Sale Processes

8. The Debtors filed these Cases with the stated goal of commencing a sale process for their U.S. assets. To that end, soon after filing these Cases, the Debtors worked constructively with their stakeholders to establish bidding and auction procedures for the sale of substantially all of their U.S. assets.[3] On December 14, 2017, the Court entered an order (the "Bidding Procedures Order")[4] establishing, among other things, certain bidding and auction procedures and related deadlines and authorizing (a) an expedited sale process for the sale of the

---

[3] *See Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (Docket No. 173).

[4] *See Order (I) (A) Approving Bidding Procedures For the Sale Of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption And Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* (Docket No. 490).

Apple Grove Assets and (b) an extended sale process for the sale of, among other assets, (i) the Debtors' vertically integrated PTA/PET plant in Corpus Christi, Texas and related assets (collectively, the "Corpus Christi Plant"), (ii) the Debtors' desalination equipment and boilers situated at or in the vicinity of the Corpus Christi Plant (the "Desalination Assets" and together with the Corpus Christi Plant and its related assets, the "Corpus Christi Assets") and (iii) the Debtors' intellectual property assets (the "IP Assets").

9. Recognizing the need to quickly commence a sale of the Apple Grove Assets given budgetary and operational constraints, on January 12, 2018, the Debtors filed a motion (the "Stalking Horse Motion")[5] seeking Court approval to enter into a stalking horse agreement with Indorama Ventures Public Company Limited ("IVL") for the sale of certain of the Apple Grove Assets for $10 million and the Polymers DIP Facility. Subsequent to filing the Stalking Horse Motion, the Debtors' robust marketing efforts yielded additional bids for the purchase of some or all of the Apple Grove Assets. At an auction held on January 30, 2018, the Debtors designated a $33.5 million bid submitted by Far Eastern as the winning bidder for certain of the Apple Grove Assets, and on February 1, 2018, the Court approved the sale of the Apple Grove Assets to Far Eastern.[6]

10. In addition to the sale of the Apple Grove Assets, the Debtors are currently in the process of marketing the Corpus Christi Assets and certain IP Assets. The final bid

---

[5] *See Motion to Authorize/Motion of the Debtors for Entry of Orders (I) Authorizing the Debtors to Enter Into a Stalking Horse Purchase Agreement and Provide Reimbursement Thereunder; (II)(A) Approving the Sale of Certain Assets of M&G Polymers USA, LLC Free and Clear of Liens, Claims and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III)(A) Authorizing Post-Petition Financing Pursuant to 11 U.S.C. Sections 105, 362, 363 and 364; (B) Granting Liens and Superpriority Administrative Expense Claim to Stalking Horse Pursuant to 11 U.S.C. Sections 364 and 507; (C) Providing Adequate Protections; (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and Local Rule 40001-2; and (V) Granting Related Relief* (Docket No. 665).

[6] *See Order Authorizing (I) The Sale of Certain Assets of M&G USA Corporation and M&G Polymers USA, LLC Free and Clear of Encumbrances and Liens; (II) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Related Relief* (Docket No. 864).

deadline for these assets is March 6, 2018, and an auction currently is scheduled for March 8, 2018.

### D. Mechanic's Lienholder Claims and Settlement Procedures

11. As this Court is aware, in early 2013 the Debtors began construction on the Corpus Christi Plant. In connection therewith, the Debtors engaged certain contractors, subcontractors and other third parties to provide services, materials and labor to construct the Corpus Christi Plant. Given the Debtors' financial condition prior to the Petition Date and other unanticipated delays and disputes that arose in connection with construction of the Corpus Christi Plant, certain contractors, subcontractors and third parties (collectively, the "Mechanic's Lienholders") have asserted claims against the Debtors for allegedly unpaid labor and materials, by filing mechanics' and materialmen's liens under Chapter 53 of the Texas Property Code and the Texas Constitution (the "Mechanic's Liens"). In order to determine with certainty the entire universe of Mechanic's Liens that may be asserted against the Corpus Christi Plant and permit certain bidders to submit credit bids for the Corpus Christi Assets, the Debtors proposed and obtained Court approval to require Mechanic's Lienholders to either submit a statement of lien form and/or record their Mechanic's Lien in the property records for Nueces County, Texas, by February 15, 2018.[7]

12. In further aid of the sale process and in an effort to reduce the amount of overstated or disputed Mechanic's Lien claims asserted against the Debtors' estates, the Debtors proposed and obtained Court approval to establish cost-effective and efficient settlement procedures to streamline the process by which the Debtors obtain Court approval to enter into

---

[7] *See Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief* (Docket No. 457).

favorable settlements with Mechanic's Lienholders (the "Settlement Procedures Order").[8] The Debtors anticipate that the Settlement Procedures Order will permit them to expeditiously enter into and consummate settlements with certain types of Mechanic's Lienholders without the administrative burden associated with filing a motion pursuant to Bankruptcy Rule 9019, while at the same time providing relevant stakeholders with notice of any such settlements and the opportunity to object.

### E. Cost Saving Efforts

13. In connection with their sale processes, the Debtors have been working with their advisors to reduce administrative expenses and generate other cost savings through the rejection of unexpired leases and executory contracts. Specifically, the Debtors identified certain of their contracts and leases that were (a) unmarketable and thus unlikely to be assumed and assigned as part of the Debtors' sale process, (b) accruing administrative expenses without an accompanying benefit to the Debtors' estates and/or (c) no longer necessary to the Debtors' limited, ongoing operations. As a result, the Debtors have sought and obtained Court authorization to reject: (a) Debtor Chemtex International, Inc.'s office lease in Wilmington, North Carolina (*see* Docket No. 294); (b) certain executory contracts, including (i) certain transportation, railcar and related agreements for the transportation of the Debtors' goods and products, (ii) consulting and business development agreements for suspended projects and (iii) certain intercompany service agreements with non-Debtor affiliates (*see* Docket Nos. 641, 708, 867 and 868); and (c) the Debtors' office lease in Houston, Texas (*see* Docket No. 837).

14. In addition to the rejection of the contracts and leases described above, the Debtors also have entered into certain stipulations resulting in the settlement of claims and

---

[8] *See Order Establishing Lienholder Claim Settlement Procedures* (Docket No. 721).

counterclaims without the need for potentially protracted and costly litigation. These stipulations and settlements include, among others: (a) a stipulation between the Debtors and Eastman Kodak Company ("Kodak") (*see* Docket No. 696) whereby Debtors obtained over $2 million and a release from Kodak, a result achieved without having to litigate Kodak's setoff counterclaims and other defenses arising under a supply agreement between the parties, (b) a stipulation with Universal Resins Company ("URC") (Docket No. 709) that resolved URC's motion to lift the automatic stay to effectuate URC's setoff against amounts that URC owed to the Debtors and (c) a stipulation between the Debtors, Rio Valley Switching Company ("Rio") and Trinity Railcar Company ("Trinity") which resolved Rio and Trinity's objections to the Debtors' motion seeking to reject Rio's and Trinity's leases without the need for litigation, and through which the Debtors saved their estates a substantial amount in potential administrative expenses (Docket No. 968).

### F. Compliance with Due Diligence and Investigations

15. The Debtors and their advisors have spent a significant amount of time and effort facilitating key parties' diligence and discovery requests in connection with the DIP Facility, the Bidding Procedures Order and the sale processes described above. In addition to complying with formal and informal document requests, the Debtors have established virtual data-rooms which house thousands of documents and other information concerning the Debtors' prepetition affairs and the construction of the Corpus Christi Plant. Further, the Debtors have spent time complying with requests for documents and information and demands for depositions made by governmental agencies and parties in interest pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules") and Rule 30(b)(6) Federal Rules of Civil Procedure.

NAI-1503370589v5

G. **Compliance with Ongoing Reporting and Other Obligations**

16. Finally, the Debtors and their advisors have spent considerable time and effort complying with their ongoing chapter 11 reporting requirements in these Cases. Among other things, the Debtors filed their first Bankruptcy Rule 2015.3 Report (*see* Docket No. 734), their schedules of assets and liabilities and their statements of financial affairs (*see* Docket Nos. 778-790) and two monthly operating reports (*see* Docket Nos. 570 & 841). Further, the Debtors have prepared for and attended two section 341 meetings. In addition, at this time, Debtors are in the process of obtaining Court approval to establish certain bar dates for the filing of proofs of claim that arose or were deemed to have arisen prior to the Polymers Petition Date, or the Petition Date, as applicable.[9]

**RELIEF REQUESTED**

17. By this Motion, the Debtors request the entry of an order, pursuant to section 1121(d) of the Bankruptcy Code, extending the Exclusive Filing Period by 120 days, through and including June 21, 2018 and extending the Exclusive Solicitation Period by 60 days, through and including August 21, 2018. The Debtors also request that such extensions be without prejudice to their rights to request further extensions or to seek other appropriate relief.

**BASIS FOR RELIEF**

18. Under section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a chapter 11 plan in the first 120 days following the commencement of a chapter 11 case. If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code provides a debtor with 60 additional days following the expiration of the

---

[9] *See Debtors' Motion for an Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* (Docket No. 931).

exclusive filing period (or 180 days following the commencement of the case) to solicit acceptances of a plan.

19. Section 1121(d) of the Bankruptcy Code provides a debtor with a mechanism to extend these exclusive periods, stating that "[o]n request of a party in interest made . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). The ultimate decision to extend a debtor's exclusive periods rests within the discretion of the bankruptcy court. *See First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965-66 (D. Del. 1986) (finding the authority to extend debtor's exclusivity within the discretion of the bankruptcy court).

20. While the Bankruptcy Code does not define "cause," courts rely on various factors to determine whether cause exists to extend a debtor's exclusive period. These factors include:

(a) the size and complexity of the case;

(b) the existence of good faith progress;

(c) the necessity of sufficient time to negotiate and prepare adequate information;

(d) whether creditors are prejudiced by the extension;

(e) whether the debtor is paying its debts as they become due;

(f) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(g) whether the debtor has made progress negotiating with creditors;

(h) the length of time a case has been pending;

(i) whether the debtor is seeking an extension to pressure creditors; and

-11-

(j) whether or not unresolved contingencies exist.

*In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409-10 (E.D.N.Y. 1989) (listing certain of the above factors); *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (same); *In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); *In re Southwest Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987) (same); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (same).

21. Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods. *See In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (four factors relevant in determining whether cause exists to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1000-01 (Bankr. E.D. Mo. 1992) (four factors demonstrated that bondholders' committee failed to show cause to terminate debtors' exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon a showing of certain of the factors listed above). In fact, the mere complexity and size of a chapter 11 case alone may warrant extension of the exclusive periods in order to permit a debtor meaningful opportunity to formulate a chapter 11 plan. *See, e.g., In re Texaco, Inc.*, 76 B.R. 322, 325 (Bankr. S.D.N.Y. 1987) (holding that "cause" existed to grant debtor's first request to extend exclusivity based on size and complexity of case alone).

22. Based on a weighing of the relevant factors, there is more than sufficient cause to approve the extension of the Exclusive Periods requested by the Debtors:

- <u>These Cases Are Large and Complex</u>. As set forth in the First Day Declaration, the Debtors filed these Cases to address nearly $1.7 billion in secured and unsecured debt obligations. As a result of the global nature of the Debtors' operations—spanning from Brazil to Mexico to the United States and to Europe—the Debtors' creditors are located in various

locations across the globe, adding a layer of complexity to these Cases. Moreover, although the Debtors have significant operations in the United States, they also employ a number of key executives and employees in Luxembourg and Italy. In addition, a significant portion of these Cases centers around the sale of the Corpus Christi Plant and the resolution of secured claims related thereto. Taking into consideration these variables, it is apparent that transitioning an enterprise of the Debtors' size, reach and magnitude requires significant time and effort. For these reasons alone, cause exists to extend the Exclusive Periods.

- Continued Payment of Operating Expenses. Since filing these Cases, the Debtors believe that they have continued to pay substantially all of their postpetition, undisputed expenses and invoices in the ordinary course of business or as otherwise provided by order of the Court.

- Additional Time Is Necessary. Under the Bidding Procedures Order, final bids for the purchase of the Corpus Christi Assets and other assets are due on March 6, 2018, and an auction for such assets currently is scheduled for March 8, 2018. The result of the auction and the selection of a purchaser of the Corpus Christi Assets and the other assets will provide critical information necessary for the formulation of any chapter 11 plan.

- These Cases Are Approximately Four Months Old. The requested extension of the Exclusive Periods is the first such request made in these Cases and comes approximately four months after the Polymers Petition Date. As discussed above, during this time, the Debtors have expended substantial resources on the Court-approved sale processes, complying with the requirements of the Bankruptcy Code and the Bankruptcy Rules, administering their estates and undertaking other cost saving measures for the benefit of their stakeholders.

- The Debtors Have Demonstrated Reasonable Prospects of Filing a Plan. The Debtors have undertaken cost saving measures and other efforts to stabilize their ongoing operations in these Cases. Those efforts notwithstanding, proposing a chapter 11 plan prior to conclusion of the Debtors' sale processes would be difficult, if not impossible. While the Debtors recently obtained Court approval to sell the Apple Grove Assets, it is sale of the Corpus Christi Assets that will largely inform the formulation of any chapter 11 plan that may be proposed in these Cases. As such, the Debtors submit that the necessary conditions for proposing a chapter 11 plan may come to pass, but that such plan process must await the conclusion of the sale processes.

- An Extension Will Not Pressure Creditors. The Debtors are not seeking an extension of the Exclusive Periods to pressure or prejudice any of their stakeholders. Rather, the Debtors are seeking an extension of the

Exclusive Periods to preserve the progress made to date. The Debtors' efforts in this respect will benefit, not prejudice, their creditors.

23. As this list demonstrates, the relevant factors support the Debtors' requested extension of the Exclusive Periods. Extending the Exclusive Filing Period by 120 days and extending the Exclusive Solicitation Period by 60 days will ensure that the Debtors are able to capitalize on the progress they have made to date in these Cases. Further, the requested extension is well within the range of similar relief granted by courts in this district under similar circumstances. *See, e.g., In re CST Industries Holdings Inc.*, No. 17-11292 (BLS) (Bankr. D. Del. Oct. 23, 2017) (Docket No. 673) (granting a 120-day extension); *In re Aquion Energy, Inc.*, No. 17-10500 (KJC) (Bankr. D. Del. Jul. 17, 2017) (Docket No. 277) (same); *In re Lily Robotics, Inc.*, No. 17-10426 (KJC) (Bankr. D. Del. Jul. 11, 2017) (Docket No. 390) (same); *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (Bankr. D. Del. Jan. 30, 2017) (Docket No. 717) (same); *In re Horsehead Holding Corp.*, No. 1610287 (CSS) (Bankr. D. Del. Jul. 11, 2016) (Docket No. 1273) (granting a 150-day extension); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (CSS) (Bankr. D. Del. Dec. 16, 2015) (Docket No. 614) (granting a 120-day extension); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Aug. 26, 2015) (Docket No. 915) (same); *In re Deb Stores Holding LLC*, No. 14-12676 (KG) (Bankr. D. Del. Mar. 16, 2015) (Docket No. 1304) (same).

## RESERVATION OF RIGHTS

24. The Debtors reserve their rights to request an additional extension of the Exclusive Filing Period and the Exclusive Solicitation Period.

## NOTICE

25. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Committee and its counsel, Milbank, Tweed, Hadley

& McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton LLP; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

26. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: February 20, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:       ljones@pszjlaw.com
             joneill@pszjlaw.com
             jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:   (212) 326-3939
Facsimile:   (212) 755-7306
Email:       sgreenberg@jonesday.com
             scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:   (216) 586-7035
Facsimile:   (216) 579-0212
Email:       ceblack@jonesday.com

Proposed Co-Counsel for the Debtors and Debtors in Possession

NAI-1503370589v5