**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17- 12307 (BLS) |
| Debtors. | : | (Jointly Administered) |

**Hearing Date: March 14, 2018 at 10:00 a.m. (ET)**
**Obj. Deadline: March 7, 2018 at 4:00 p.m. (ET)**

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION BY AND BETWEEN THE DEBTORS, SOUTHEASTERN CONTAINER CORPORATION AND COCA-COLA BOTTLERS' SALES & SERVICES COMPANY LLC**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), approving the stipulation (the "Stipulation")[2] by and between the Debtors, Southeastern Container Corporation ("SEC") and Coca-Cola Bottlers' Sales & Services Company LLC ("CCBSS" and together with SEC and the Debtors, the "Parties"). In support of this Motion, the Debtors respectfully represent as follows:

---

1 The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

2 A copy of the Stipulation is attached to the Proposed Order as Exhibit 1.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. General Background

2. On October 24, 2017 ("Polymers Petition Date"), Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B. The Outstanding Amount

4. Prior to the Polymers' Petition Date, M&G Polymers and CCBSS, acting as procurement agent for certain third parties, including SEC, entered into the *Supply Agreement for PET Resin (PET)* effective January 1, 2014, as subsequently modified by the *Modification Agreement for PET Resin* effective January 1, 2017 (together with any additional modifications

or amendments thereto, the "Supply Agreement"). The Supply Agreement is governed by (and incorporates by reference) the *Master Terms and Conditions* effective October 1, 2009 between Mossi & Ghisofli International S.A. and Certain Authorized Bottlers of The Coca-Cola Company (the "Master Terms and Conditions"). Among other things, the Supply Agreement, together with the Master Terms and Conditions, provides for certain pricing adjustments related to SEC's purchase of PET resin from M&G Polymers. Pursuant to the Supply Agreement, M&G Polymers delivered PET resin to SEC and, as of the Polymers' Petition Date, invoices in the aggregate amount of $5,056,814.81 (the "Outstanding Amount") remained unpaid.

5. After the Polymers Petition Date, M&G Polymers sought payment of the Outstanding Amount from SEC. In response, SEC asserted, among other things, the right to setoff the Outstanding Amount against (a) prepetition amounts that SEC alleges that the Debtors owe on account of pricing adjustments provided for under the Supply Agreement and (b) prepetition and postpetition recoupment damages that SEC alleges were incurred as a result of M&G Polymers halting production of PET resin at its Apple Grove facility and the cessation of deliveries of PET resin to SEC (subparagraphs (a) and (b), together, the "Setoff Claims"). M&G Polymers disputed the Setoff Claims and has raised certain defenses and counterclaims related thereto. In order to resolve all disputes related to the Supply Agreement and the Setoff Claims and to prevent the costs, delays and uncertainties of litigation, the Parties agreed to the terms of the Stipulation.[3]

### C. The Stipulation

6. If approved, the Stipulation will resolve all issues related to the Parties' dispute concerning the Supply Agreement and the Setoff Claims against the Outstanding Amount, and

[3] For the avoidance of doubt, the Debtors reserve the right to dispute any claims, objections, defenses, or counterclaims SEC and CCBSS may raise in the event that the Stipulation is not approved.

will result in the M&G Polymers' estate receiving $3.7 million in cash without further delay or the incurrence of additional collection costs. The principal terms of the Stipulation are as follows:[4]

(a) *Modification of the Automatic Stay.* Notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code, the automatic stay will be modified solely to the extent necessary to permit SEC to effectuate a setoff in the amount of $1,356,814.81 against the Outstanding Amount.

(b) *Consideration.* No later than five (5) business days after the Proposed Order (or an order entered by the Court approving the Stipulation) has become a final, non-appealable order, SEC shall transfer $3,700,000.00 (without further setoff, recoupment, other deduction or reduction of any kind or for any reason) via wire transfer to the Comerica Collection Account, being the account ending in *452, pursuant to instructions provided to SEC by counsel to M&G Polymers prior to the date hereof.

(c) *Debtors' Waiver of Claims.* The Debtors waive and release any and all claims, causes of action, rights and demands whatsoever, known and unknown, liquidated or contingent, which they may have against SEC or CCBSS (in either its individual or agency capacity) related to the Supply Agreement (regardless of whether such claims arise under state, federal, bankruptcy, common law, or other applicable law or equity), specifically including any claims related to amounts owed for product sold under the Supply Agreement or pricing adjustments provided for in the Supply Agreement. This waiver and release shall apply to all claims that the Debtors could assert against any party to the Supply Agreement related to pricing adjustments provided to, or setoff prepetition by, SEC or CCBSS (in either its individual or agency capacity). Notwithstanding any language in the Stipulation to the contrary, this waiver and release shall not serve to waive or release any party to the Supply Agreement, other than SEC or CCBSS, from amounts owed by such party for unpaid invoices issued to that party for goods sold by the Debtors. This waiver and release of claims shall be binding upon the Debtors and their estates (including any subsequently appointed trustee), as well as any party who could assert a claim related to amounts owed by SEC or CCBSS to the Debtors under the Supply Agreement (*e.g.,* Comerica Bank or any party asserting a security interest in accounts receivables of the Debtors).

(d) *SEC and CCBSS' Waiver of Claims.* SEC and CCBSS (solely on its own behalf and as agent for SEC) waive and release any and all claims, causes of action, rights and demands whatsoever, known and unknown, liquidated or contingent, related to the Supply Agreement they may have against the Debtors (regardless of

[4] The following summary is qualified in its entirety by reference to the provisions of the Stipulation. In the event of any inconsistencies between the provisions of the Stipulation and the terms set forth herein, the terms of the Stipulation shall govern.

whether such claims arise under state, federal, bankruptcy, common law, or other applicable law or equity), specifically including any claims related to amounts owed for product sold under the Supply Agreement or pricing adjustments provided for in the Supply Agreement.

## RELIEF REQUESTED

7. The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, in substantially the form of the Proposed Order, approving the Stipulation.

## BASIS FOR RELIEF

8. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983). Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

9. Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re*

*Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

10. When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "Martin Factors"):

(a) the probability of success in litigation;

(b) the likely difficulties of collection;

(c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(d) the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

11. While bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor

in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983). *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

12. The Stipulation will result in the prompt transfer of substantial cash funds to M&G Polymers and the resolution and waiver of potential claims against the Debtors, and is, therefore, in the best interest of the Debtors and their estates and well above the lowest point in the range of reasonableness. Among other things, the Stipulation (a) provides M&G Polymers with $3,700,000 within five business days after the Proposed Order (or an order entered by the Court approving the Stipulation) becomes a final, non-appealable order,[5] (b) resolves the Setoff Claims and provides for a waiver of any additional claims against the Debtors and (c) was negotiated consensually and at arm's-length between the Parties. The foregoing demonstrates that the Debtors have a valid business justification for entering into the Stipulation. A weighing of the Martin Factors leads to no contrary result.

---

[5] The amount listed in this subsection (a) is without regard to any defenses and/or counterclaims that the Debtors could have asserted against SEC and CCBSS with respect to the Outstanding Amount, and in the event that the Stipulation is not approved, the Debtors reserve the right to assert any such defenses and/or counterclaims.

13. *Probability of Success.* Absent the Debtors' entry into the Stipulation, the Debtors would have been forced to litigate issues relating to the amounts owed under the Supply Agreement, including the amount and validity of the Setoff Claims. While the Debtors believe that they have strong defenses with respect to SEC's ability to assert the Setoff Claims, there is a risk that the Court could rule against the Debtors on each of these points. In the event that the Court rendered a ruling adverse to the Debtors, the amount SEC owed to M&G Polymers could have been reduced significantly when compared to the consideration received under the Stipulation. This factor weighs in favor of approval of the Stipulation.

14. *Difficulties of Collection.* The Stipulation results in SEC transferring M&G Polymers $3,700,000 in full and final satisfaction of amounts owed under the Supply Agreement within five business days after the Proposed Order (or an order entered by the Court approving the Stipulation) becomes a final, non-appealable order, without litigating the claims and counterclaims asserted by the Parties under the Supply Agreement. Litigating the claims and counterclaims asserted by the Parties under the Supply Agreement would have been costly and burdensome, and payment, if any, could have been severely delayed pending resolution of any such dispute by the Court. Given M&G Polymers' limited resources, the Debtors submit that this factor, too, weighs in favor of approval of the Stipulation.

15. *Complexity of Litigation.* As set forth above, the Debtors' entry into the Stipulation resolves (a) the amounts owed under the Supply Agreement, (b) the amount, validity and applicability of the Setoff Claims and (c) any defenses and counterclaims that the Debtors could have raised under the Supply Agreement and bankruptcy law. Litigating each of these issues would have (a) been costly, (b) distracted the Debtors' already diminished workforce from the Debtors' sale efforts and (c) required the presentation of evidence (and potentially expert

witnesses), in support of the counterclaims and defenses raised by the Debtors. The Stipulation avoids a trial on these matters, a factor weighing in support of its approval.

16. *Paramount Interests of Creditors.* Finally, the Stipulation is in the paramount interest of creditors. The Stipulation (a) achieves the consensual resolution of the claims and counterclaims asserted by the Parties under the Supply Agreement, (b) results in M&G Polymers prompt receipt of $3,700,000 and (c) saves the Debtors' estates the cost of litigating the Parties' disagreement under the Supply Agreement, which will result in more proceeds for distribution to all stakeholders. Importantly, Comerica Bank, the creditor with a security interest in M&G Polymers' accounts receivable, has consented to the Debtors' entry into the Stipulation.

17. As set forth above, entry into the Stipulation is a sound exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates. For these reasons, the Debtors respectfully request that the Court approve and authorize their entry into the Stipulation.

## NOTICE

18. Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant

to Bankruptcy Rule 2002 at the time of noticing; and (h) SEC and CCBSS. The Debtors submit that no other or further notice need be provided.

**NO PRIOR REQUEST**

19. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: February 21, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Michael J. Cohen
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
mcohen@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession