IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## MOTION OF DEBTOR MOSSI & GHISOLFI INTERNATIONAL S.À R.L. FOR AN ORDER AUTHORIZING THE PAYMENT OF AMOUNTS OWING TO CERTAIN EMPLOYEES AND RELATED ANCILLARY COSTS

Debtor Mossi & Ghisolfi International S.à r.l. ("M&G International"), one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), moves the Court (this "Motion"), pursuant to sections 363 and 503(c) of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order, in substantially the form attached as Exhibit A (the "Proposed Order"), authorizing and approving the payment of (a) the following compensation amounts set forth in prepetition employment contracts between M&G International and certain of M&G International's employees: (i) a special bonus (the "Special Bonus") designed to reimburse applicable employees for certain travel expenses and (ii) a social security payment (the "Social Security Payment" and, with the Special Bonus, the "Employee Amounts") designed to compensate applicable employees for the difference between social security schemes in Italy and Luxembourg and (b) related Ancillary Costs (as defined below). In support of this Motion, M&G International: (i) incorporates the statements contained in the

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

declaration of Marco Zanussi, attached hereto as <u>Exhibit B</u> (the "<u>Zanussi Declaration</u>"); and (ii) further respectfully represents as follows:

## PRELIMINARY STATEMENT

1. In preparing to file these Cases,[2] the Debtors conducted a review of their obligations to employees to understand how a bankruptcy filing could impact the Debtors' ability to continue satisfying such obligations. In connection with this review, the Debtors became concerned that certain obligations owed to insiders (specifically, a Special Bonus and a Social Security Payment included in certain prepetition employee agreements) could potentially be viewed as impermissible bonus payments that are prohibited under the Bankruptcy Code. As a result, in the Debtors' First-Day Employee Motion, the Debtors flagged these provisions as potential "bonuses," and stated that the Debtors would not make bonus payments to insiders without further Court approval.

2. Upon further review of these obligations, the Debtors have determined that these payments are not impermissible bonuses. Rather, as set forth more fully below, these amounts represent contractual compensation designed to incentivize applicable employees to relocate to Luxembourg and/or become employed by a Luxembourg company. The Debtors thus believe that they may pay such amounts under sections 363 and 503(c)(3) of the Bankruptcy Code. Out of an abundance of caution, however, Debtor M&G International has filed this Motion seeking authority to pay such amounts.[3]

---

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to such terms elsewhere in this Motion.

[3] Prior to the filing of this Motion, the Debtors discussed the relief requested herein with the Committee. The Committee does not oppose the relief sought by Debtor M&G International in this Motion.

NAI-1503488789v1

3.  In terms of amounts, Debtor M&G International seeks authority to make the following payments:[4]

- Approximately $93,800 in outstanding Social Security Payments that are attributable to the prepetition period, subject to the Employee Cap (as defined in the First-Day Employee Motion);

- Approximately $96,950 in outstanding Employee Amounts that are attributable to the postpetition period;[5]

- Approximately $60,000 in Ancillary Costs (such as payroll taxes and other ancillary costs) that are related to the outstanding prepetition and postpetition Employee Amounts;[6]

- All Employee Amounts and related Ancillary Costs that will come due in the future in the ordinary course, which Debtor M&G International estimates to be approximately $400,000 during the remainder of 2018.[7]

**JURISDICTION AND VENUE**

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4] The U.S. dollar amounts herein were converted from euro amounts based on an exchange rate of 1.2. The U.S. dollar amounts herein are for illustrative purposes only, as M&G International's payment of any Special Bonus, Social Security Payment and Ancillary Costs will be made in euros.

[5] This amount is comprised of (a) $36,000 in postpetition Special Bonus amounts and (b) $60,950 in postpetition Social Security Payment amounts.

[6] This amount is an estimation. The actual amount could be higher.

[7] This amount excludes related Ancillary Costs, which Debtor M&G International estimates as approximately 30% of the amounts due to the applicable employees.

## BACKGROUND

**A. General Background**

5. On October 24, 2017, Debtor M&G Polymers USA, LLC ("<u>M&G Polymers</u>") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "<u>Petition Date</u>"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "<u>Cases</u>"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. An Official Committee of Unsecured Creditors (the "<u>Committee</u>") was appointed in these Cases on November 13, 2017 [Docket No. 146]. Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the Declaration of Dennis Stogsdill in Support of First Day Pleadings [Docket No. 3] filed on October 31, 2017 and incorporated herein by reference.

**B. Facts Relevant to this Motion**

**1. The Special Bonus and Social Security Payment**

7. M&G International employs 14 employees, 11 of which are employed by M&G International's Luxembourg office (the "<u>Luxembourg Employees</u>"). When M&G International's Luxembourg office hired the Luxembourg Employees, many of the Luxembourg Employees did not live in Luxembourg, and were not otherwise employed at that time by a Luxembourg entity. Thus, in order to incentivize these employees to relocate to the Luxembourg office and/or become employed by a Luxembourg entity, M&G International agreed to provide such employees with various forms of additional contractual compensation.

NAI-1503488789v1

8.      One form of this contractual compensation is the Special Bonus, which is included in employment contracts for six Luxembourg Employees.[8] In spite of its name, the Special Bonus is not, in fact, a bonus. Instead, the Special Bonus was designed to reimburse the Luxembourg Employees for the expenses they incur throughout the year in the course of traveling between Luxembourg and their home country. The amount of the Special Bonus is €15,000 per year for five of the applicable employees and these payments have been historically paid in the ordinary course of business.[9] M&G International does not accrue these amounts on its books and records on an ongoing basis, and these amounts are paid to each applicable employee once per year.

9.      On or around November 27, 2017, postpetition, the Special Bonus became due and payable to three Luxembourg Employees as per the specific terms of their employment contracts. M&G International made this payment to one non-insider, but has withheld payment for two "insiders," as such term is defined in the Bankruptcy Code. M&G International has calculated that, with respect to these two insiders, the Special Bonus amount currently owed, but unpaid, is approximately $36,000.[10]

10.     Another form of this contractual compensation is the Social Security Payment. The Social Security Payment was designed to incentivize six Luxembourg Employees that formerly worked in Italy (the "Italian Employees") to relocate to Luxembourg and/or become

---

[8]     The employment contracts that include the Special Bonus are governed by Luxembourg law.

[9]     One Luxembourg Employee is entitled to a Special Bonus of only €6,000 per year.

[10]    M&G International does not believe that any of these amounts are attributable to the prepetition period because (a) the Special Bonus is not accrued on M&G International's books and records on an ongoing basis and (b) the Special Bonus is due and payable only once per year.

NAI-1503488789v1

-5-

employed by a Luxembourg company.[11] More specifically, the Social Security Payment was designed to compensate the six Italian Employees for the differences in the social security schemes in Italy and Luxembourg. The Social Security Payment is comprised of the following three different components:

- <u>INPS Payment</u> – When the Italian Employees were located in Italy, M&G International was required to pay a certain amount to the Italian public social security agency. When the Italian Employees relocated to Luxembourg, M&G International's corresponding social security payment decreased (because Luxembourg regulations require companies to make smaller social security contributions). Given that M&G International is now making smaller social security contributions on behalf of the Italian Employees, it is anticipated that the Italian Employees will receive smaller social security payouts when they ultimately retire. Accordingly, to make up for the Italian Employees' potential loss, M&G International pays to each Italian Employee the difference between (a) the social security payment M&G International *would have made* if the employee were still employed in Italy and (b) the social security payment that M&G International *actually will make* under Luxembourg regulations.

- <u>Previndai Payment</u> – When the Italian Employees were located in Italy, M&G International was required to make payments to a private pension scheme for the benefit of the Italian Employees. When the Italian Employees relocated to Luxembourg, M&G International was no longer required to make these payments. To make up for the Italian Employees' lost pension payments, M&G International makes this private pension scheme payment directly to the applicable Italian Employee.

- <u>FASI Payment</u> – When the Italian Employees were located in Italy, M&G International was required to make payments to a private agency (FASI) to provide private medical insurance to the Italian Employees. When the Italian Employees relocated to Luxembourg, M&G International was no longer required to make these payments. To make up for the Italian Employees' lost private medical insurance, M&G International pays these amounts directly to the applicable Italian Employee.

---

[11] Five of the Italian Employees are also entitled to receive the Special Bonus, described above. The employment contracts that include the Social Security Payment are also governed by Luxembourg law.

11. The Social Security Payment has historically been paid in the ordinary course of business every quarter based on the amounts attributable to the applicable three-month period. On or around October 27, 2017, the quarterly Social Security Payment became due and payable to the six Italian Employees (the "October 2017 Social Security Payment"). M&G International has not yet made this payment to any of these employees. M&G International has calculated that the October 2017 Social Security Payment amount currently owed, but unpaid, is approximately $66,750.[12] In addition, on or around January 27, 2018, approximately $88,000[13] in Social Security Payments came due to the six Italian Employees (the "January 2018 Social Security Payment"), approximately $77,000 of which will be due to insiders.[14] M&G International estimates that approximately $295,000 in Social Security Payments will come due during the remainder of 2018 and the beginning of 2019 (excluding the $88,000 January 2018 Social Security Payment).

---

[12] The amount of the October 2017 Social Security Payment was calculated based on (a) the amount that M&G International *would have paid* for July, August and September 2017, had the Italian Employees been located in Italy and (b) the amount that M&G International *actually will pay* for July, August and September 2017, given that the Italian Employees are located in Luxembourg. The entirety of the October 2017 Social Security Payment is attributable to the prepetition period. M&G International intends to pay all Social Security Payment amounts that are attributable to the prepetition period consistent with the Employee Cap (as defined in the First-Day Employee Motion (as defined below)).

[13] The amount of the January 2018 Social Security Payment was calculated based on (a) the amount that M&G International *would have paid* for October, November and December 2017, had the Italian Employees been located in Italy and (b) the amount that M&G International *actually will pay* for October, November and December 2017, given that the Italian Employees are located in Luxembourg. M&G International has calculated that approximately $27,050 of this amount is attributable to the prepetition period. This prepetition amount is based off of the portion of the January 2018 Social Security Payment that is attributable to October 2017. As noted above, M&G International intends to pay all Social Security Payment amounts that are attributable to the prepetition period consistent with the Employee Cap (as defined in the First-Day Employee Motion).

[14] Out of an abundance of caution, M&G International has not yet paid the approximately $11,000 portion of the January 2018 Social Security Payment owed to non-insiders.

12. If M&G International were to pay the currently owed, but unpaid, amounts for the Special Bonus and the Social Security Payment, M&G International would also be required to pay additional amounts for payroll taxes and other ancillary costs (the "Ancillary Costs"), which M&G International estimates as approximately 30% of the amounts due to the applicable employees.[15]

### 2. The Debtors' First-Day Employee Motion

13. In the Debtors' "first-day" motion requesting authority to pay certain prepetition employee amounts (the "First-Day Employee Motion"),[16] the Debtors highlighted the Special Bonus and the Social Security Payment as potential "bonuses," and stated that the Debtors would not make bonus payments to "insiders" (as defined in the Bankruptcy Code) without further Court approval. *See* First-Day Employee Motion ¶¶ 36-37. In addition, the order granting the First-Day Employee Motion (the "Employee Order")[17] provided that "nothing in [the Employee Order] authorizes the Debtors to make any bonus payments to any 'insider,' as such term is defined in the Bankruptcy Code, on a postpetition basis." *See* Employee Order ¶ 14.

14. Upon further review of the Special Bonus and the Social Security Payment, the Debtors have determined that (a) these amounts are not "bonuses" and (b) these amounts may be

---

[15] Debtor M&G International will make payments with respect to the Special Bonus, Social Security Payment and any Ancillary Costs from M&G International's cash-on-hand and not from amounts funded pursuant to the Debtors' DIP Loan Agreement (as defined in the *Final Order Granting Debtors' Motion to (1) Authorize Certain Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (2) Grant Liens and Superpriority Administrative Expense Claims to DIP Lender Pursuant to 11 U.S.C. §§ 364 and 507; (3) Provide Adequate Protection to the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party; (4) Modify Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507; and (5) Granting Related Relief* [Docket No. 479]).

[16] *See Motion for an Order Authorizing the Debtors to Pay Prepetition Employee Wages, Benefits and Related Items* [Docket No. 8].

[17] *See Order Authorizing the Debtors to Pay Prepetition Employee Wages, Benefits and Related Items* [Docket No. 69].

NAI-1503488789v1

paid consistent with the Bankruptcy Code. As set forth above, these amounts represent contractual compensation designed to incentivize applicable employees to relocate to Luxembourg and/or become employed by a Luxembourg entity. Out of an abundance of caution, however, Debtor M&G International requests authority to make these payments from this Court under sections 363 and 503(c) of the Bankruptcy Code.

## RELIEF REQUESTED

15. M&G International requests entry of an order, in substantially the form of the Proposed Order, authorizing the payment of (a) the Special Bonus and Social Security Payments and (b) the related Ancillary Costs.

## BASIS FOR RELIEF REQUESTED

### A. Payment of the Employee Amounts Is Not Prohibited by Section 503(c)(1) of the Bankruptcy Code

16. Under section 503(c)(1) of the Bankruptcy Code, a debtor is generally prevented from making a payment to an insider if the purpose of such payment is to "induc[e] [the insider] to remain with the debtor's business." 11 U.S.C. § 503(c)(1). As an initial matter, section 503(c)(1) of the Bankruptcy Code does not prohibit payment of the Employee Amounts. This is because, although certain of the Employee Amounts will be paid to insiders, the Employee Amounts were not designed to induce such insiders to remain with M&G International.

17. As noted above and in the Zanussi Declaration, the Employee Amounts were included in applicable employee contracts (which were entered into well before the Petition Date[18]) for the purpose of incentivizing applicable employees to relocate to Luxembourg and/or

---

[18] The majority of the applicable employee contracts were entered into in or around 2013.

become employed by a Luxembourg entity. More specifically: (a) the purpose of the Special Bonus is to reimburse the Luxembourg Employees for the expenses they incur throughout the year in the course of traveling between Luxembourg and their home country and (b) the purpose of the Social Security Payment is to compensate the Italian Employees for the differences in the social security schemes in Italy and Luxembourg. The fact that payment of the Employee Amounts may have *some* retentive effect does not subject payment of such amounts to section 503(c)(1). *See In re Global Home Prods., LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (fact that "all compensation has a retention element d[id] not reduce the Court's conviction" that the debtors' primary goal in approving the incentive plans was "to create value by motivating performance"); *see also In re Dana Corp.*, 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006) ("[B]ecause a plan has some retentive effect does not mean that the plan, overall, is retentive rather than incentivizing in nature.").

18. As a result, section 503(c)(1) does not prevent M&G International from paying the Employee Amounts to applicable employees.

**B.  Payment of the Employee Amounts Should Be Authorized Under Section 363(c)(1) of the Bankruptcy Code**

19. This Court should authorize payment of the Employee Amounts under section 363(c)(1) of the Bankruptcy Code. Under section 363(c)(1) of the Bankruptcy Code, a debtor-in-possession may "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

20. "In determining whether a transaction is in the ordinary course of business [pursuant to section 363(c)(1) of the Bankruptcy Code], the Third Circuit has adopted the two-

part horizontal and vertical dimension test." *In re Sportsman's Warehouse, Inc.*, No. 09-10990 (CSS), 2013 WL 492554, at *9 (Bankr. D. Del. Feb. 7, 2013). Under the "horizontal" test, the question is whether, "from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *In re Roth Am., Inc.*, 975 F.2d 949, 953 (3d Cir. 1992). Under the "vertical" test, the inquiry is whether "the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.* (internal quotation marks and brackets omitted).

21. Here, M&G International believes that payment of the Employee Amounts falls squarely within M&G International's "ordinary course" use of property. Specifically, M&G International believes that most other companies, including companies within the Debtors' industry, routinely enter into employment agreements that provide employees and management with additional compensation and expense reimbursements, including compensation designed to incentivize such employees and management to relocate to another location and/or subject themselves to different employment regulations. As a result, M&G International believes that a reasonable creditor, at the time of extending credit, should have expected M&G International to make these types of payments in the future. Accordingly, M&G International believes that it may pay the Employee Amounts under section 363(c)(1) of the Bankruptcy Code.

### C. Payment of the Employee Amounts Should Be Authorized Under Section 503(c)(3)

22. If the Court determines that payment of the Employee Amounts is not within M&G International's ordinary course of business, the Court should nevertheless authorize payment of such amounts under section 503(c)(3) of the Bankruptcy Code. Generally, section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3).[19] The majority of courts have found that this standard is no different from the business judgment standard under section 363(b) of the Bankruptcy Code. *See In re Global Home Prods.*, 369 B.R. at 783-87; *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. D. Del. 2012) (collecting cases); 4 COLLIER ON BANKRUPTCY ¶ 503.17[4] (Henry J. Sommer & Alan N. Resnick eds. 16th ed. rev. 2012).

23. Courts frequently consult a multi-factor test in considering whether an employee compensation plan is justified by the facts and circumstances of a particular case. For instance, the court in *In re Global Home Products, LLC* examined the following factors:

- whether the plan was calculated to achieve the desired performance;
- whether the costs of the plan were reasonable in the context of the debtor's assets;
- whether the plan was consistent with industry standards;

---

[19] Section 503(c)(3) of the Bankruptcy Code provides as follows:
> [there shall neither be allowed, nor paid – ] (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3).

- whether the debtor engaged in due diligence related to the need for the plan, investigated which key employees needed to be incentivized and what types of plans were generally available in the debtor's particular industry; and
- whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

*See In re Global Home Prods.*, 369 B.R. at 786. M&G International's payment of the Employee Amounts should be approved under this standard as a sound exercise of business judgment.

24. *First*, there is a reasonable relationship between the Employee Amounts and the results to be obtained. As noted above, the Employee Amounts were designed to incentivize certain employees to relocate to Luxembourg and/or become employed by a Luxembourg company. More specifically, (a) the purpose of the Special Bonus is to reimburse applicable employees for the expenses incurred in the course of traveling between Luxembourg and their home country and (b) the purpose of the Social Security Payment is to compensate applicable employees for the differences in the social security schemes in Italy and Luxembourg. Accordingly, there is a reasonable relationship between the Employee Amounts and the results to be obtained.

25. *Second*, the costs of payment of the currently outstanding Employee Amounts (approximately $191,000) and the Employee Amounts that are estimated to come due in the remainder of 2018 (approximately $400,000) are minimal compared with the value of the Debtors' assets.

26. *Third*, the scope of the Employee Amounts is fair and reasonable and does not discriminate unfairly among employees. During the prepetition period, when negotiating

employment agreements with various employees, M&G International evaluated the circumstances of each employee in determining whether it was appropriate to include the Special Bonus and/or Social Security Payment in such employee's compensation package. In this manner, M&G International only provided the Special Bonus or Social Security Payment to the employees that required appropriate incentives to relocate to Luxembourg and/or become employed by a Luxembourg company.

27. Accordingly, M&G International respectfully submits that payment of the Employee Amounts is justified by the facts and circumstances of these Cases, is a sound exercise of business judgment and is in the best interests of the Debtors, their estates, creditors and all other stakeholders.[20]

## NOTICE

22. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (c) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (d) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (e) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (f) the Official

---

[20] For these same reasons, M&G International respectfully submits that payment of the Employee Amounts may be approved under section 363(b)(1) of the Bankruptcy Code, to the extent applicable. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the [bankruptcy] court would defer to the trustee's [or debtor-in-possession's] judgment so long as there is a legitimate business justification.") (citation omitted); *Computer Sales Int'l, Inc. v. Fed. Mogul Global (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("[I]n the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction.") (citations omitted).

Committee of Unsecured Creditors and its counsel, Milbank, Tweed, Hadley & McCloy LLP; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing. Debtor M&G International submits that no other or further notice need be provided.

## NO PRIOR REQUEST

19. No prior request for the relief sought herein has been made to this Court or any other court other than in the First-Day Employee Motion.

WHEREFORE, M&G International respectfully requests that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: March 2, 2018
PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
scorririvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession