## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| M&G USA CORPORATION, *et al.*, | ) | Case No. 17-12307 (BLS) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Ref. ECF Nos. 874, 1096** |
|  | ) |  |
|  | ) | **Hearing Date: Mar. 14, 2018, at 10:00 A.M.** |

**REPLY IN FURTHER SUPPORT OF THE MOTION TO RECHARACTERIZE, EQUITABLY SUBORDINATE, AND AVOID THE LIENS SECURING THE CLAIMS OF DAK AMERICAS LLC**

**PLEADING FILED UNDER SEAL PURSUANT TO**
***ORDER APPROVING STIPULATION AND PROTECTIVE ORDER***
**[ENTERED DECEMBER 5, 2017] [ECF NO. 350]**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 5

I.    THE CONTEXT OF THE TRANSACTION CONFIRMS THE PARTIES'
      INTENT TO ENTER INTO AN EQUITY RELATIONSHIP. ........................................ 5

II.   THE *AUTOSTYLE* FACTORS WEIGH OVERWHELMINGLY IN FAVOR OF
      RECHARACTERIZATION. ............................................................................. 10

      A.    Name of the Instruments ...................................................................... 11

      B.    Absence of Fixed Maturity Date, Schedule of Payments or Interest Rate ........... 15

      C.    Source of Repayment ........................................................................... 17

      D.    Inadequacy of Capital .......................................................................... 18

      E.    Inability to Obtain Third Party Financing on Similar Terms ............................ 19

      F.    Use of Funds to Acquire Capital Assets .................................................... 20

      G.    Existence of a Lien and Subordination Agreement ...................................... 21

      H.    Identity of Interest Between Creditor and Shareholder .................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*,
  473 B.R. 525 (Bankr. D. Del. 2012) ............................................................19, 21, 24

*Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*,
  432 F.3d 448 (3d Cir. 2006) ...........................................................................5, 6, 13

*Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re*
  *Dornier Aviation (N. Am.), Inc.*,
  453 F.3d 225 (4th Cir. 2006) ......................................................................................13

*In re Mount Olive Hosp., LLC*,
  2014 Bankr. LEXIS 2206 (Bankr. D.N.J. May 16, 2014) .................................16, 24

*Joseph v. Feit (In re Liberty Brands, LLC)*,
  Case No. 09-50956 [ECF No. 226] (D. Del. Sep. 25, 2014) ...................................15

*Joseph v. Feit (In re Liberty Brands, LLC)*,
  2014 Bankr. LEXIS 4095 (D. Del. Sep. 25, 2014) .................................................15

*Miller v. Dow (In re Lexington Oil and Gas Ltd.)*,
  423 B.R. 353 (Bankr. E.D. Okla. 2010)...................................................................16

*Official Comm. of Unsecured Creditors v. Fairchild Dornier GmbH (In re*
  *Dornier Aviation (N. Am.) Inc.)*,
  2005 Bankr. LEXIS 561 (E.D. Va. Feb. 8, 2005)...................................................18

*Riley v. Tencara LLC (In re Wolverine, Proctor & Schwartz LLC)*,
  447 B.R. 1 (Bankr. D. Mass 2011) .........................................................................17

*Sensenig v. Comm'r, No. 16254-11*,
  2017 Tax Ct. Memo LEXIS 1 (T.C. Jan. 3, 2017)............................................23, 24

*Slappey Drive Indus. Park v. United States*,
  561 F.2d 572 (5th Cir. 1977) ..................................................................................18

*Spencer v. Smith*,
  201 F. 647 (8th Cir. 1912) ......................................................................................23

*Warren v. King*,
  108 U.S. 389 (1883)................................................................................................23

STATUTES

11 U.S.C. 548(a)(1)(B) .................................................................................................23

U.C.C. Article 8 ..................................................................................................................21

The Official Committee of Unsecured Creditors respectfully submits this reply[1] in further support of the Motion of the Official Committee of Unsecured Creditors to Recharacterize, Equitably Subordinate, and Avoid the Liens Securing the Claims of DAK Americas LLC.[2]

## PRELIMINARY STATEMENT

1.       DAK's opposition to the Motion is an exercise in revisionist history.  According to DAK, M&G set out to build a plastic resins manufacturing plant in Corpus Christi, Texas, and DAK simply purchased a portion of the plant's product, giving rise to a run-of-the-mill commercial relationship.  Based on this oversimplification, DAK seeks to persuade the Court that its claims against M&G in this bankruptcy are effectively beyond the reach of the well-established doctrine of recharacterization and the Third Circuit precedent applying it.  As such, DAK turns a blind eye to the multitude of factors weighing in favor of recharacterization.

2.       The central flaw in DAK's reductionist version of events, however, is that it completely ignores the context in which DAK and M&G entered into their relationship and the economic realities of their transaction.  When that context is restored, there is little room for doubt: DAK was not a mere purchaser of product, but was instead a significant contributor of

---

[1]     In its March 8, 2018, request to exceed page limits with respect to its opposition, DAK noted that the Committee had not asked for similar authority with respect to its opening motion papers.  The Committee did not interpret the page limit provisions in the Local Rules or the Chambers Procedures as governing motions, and therefore did not believe that its challenge (which, by agreement of the parties, was to be pursued by motion) was subject to those provisions.  Out of an abundance of caution, however, to the extent necessary, the Committee seeks approval to file this reply in excess of 20 pages, which it believes is necessary and appropriate given the length of DAK's opposition.

[2]     Capitalized terms that are not defined herein have the meanings given to them in the Motion.  Unless otherwise stated, citations to "Ex. __" shall refer to the exhibits attached to the *Declaration of Alexander B. Lees in Support of the Reply in Further Support of the Motion of the Official Committee of Unsecured Creditors to Recharacterize, Equitably Subordinate, and Avoid the Liens Securing the Claims of DAK Americas LLC* ("Lees Reply Declaration").  Citations to "Lopez Decl. Ex. __" shall refer to exhibits attached to the *Declaration of Chris López in Support of the Opposition* [ECF No. 1098] and "Lees Decl. Ex. __" shall refer to exhibits attached to the *Declaration of Alexander B. Lees in Support of the Reply in Support of the Motion* [ECF No. 875].

key technology and substantial amounts of capital to a greenfield construction project, with no meaningful expectation of return of its investment unless and until that project was completed and performing.

3.    The evidence will show that from the moment M&G announced its plan to construct the vertically integrated PTA/PET Corpus Christi Plant in 2011, ████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████   DAK's involvement would also give it the opportunity to execute on its expansion plans in North America, including by leveraging technology it had recently purchased, and by ensuring a supply of product to a recently-acquired plant in nearby Mississippi.  DAK was not just buying product; it was investing strategically, directly alongside M&G, with the same motives and the same expectations of earning a return.

4.    ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████ with DAK initially contributing $350 million to fund construction, and agreeing to purchase 40% of the plant's PET and 28% of the PTA output.

5.      This capital contribution was repeatedly described by Mr. Ghisolfi as ██████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

6.      The economic substance of the transaction confirms that ██████████

████████████████████████████████████████████    It is undisputed that DAK was

always expected to earn a return on its investment in the *exact same way as M&G*: namely,

taking product from the plant and selling it in the market at a premium. ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[3]      ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

7.     In addition, the uncontroverted evidence will show that ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████

8.     DAK's principal response to this avalanche of evidence is that DAK could not have been an equity investor because ███████████████████████████████████████ █████████████████████████████████████████████████. Yet this is precisely the kind of form-above-substance approach that the Third Circuit has flatly rejected. If the characterization of the arrangement in the governing documents was the sole source for determining the nature of the transaction, there would be no purpose whatsoever to the doctrine of recharacterization.

9.     Similarly unavailing is DAK's argument that it could not have been an equity investor because it was granted a lien. This argument, too, ignores critical context—namely, that the lien was granted not at the outset of DAK's investment (which is the time period the recharacterization analysis must focus on), but nearly *four years* after the fact. At the very most, the grant of the lien indicates that, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████ With the granting of the lien, the best DAK could hope for was to convert its partial interest into complete ownership. Even on that theory, however, the lien does not save DAK's claims from recharacterization: ███████████████████████████████████████ime and

did not receive value from DAK remotely close to the $435 million it transferred when it granted the lien—i.e., the lien was an avoidable fraudulent transfer.

10.     In short, while DAK accuses the Committee of "mechanistically" applying the recharacterization factors, it is in fact DAK that deliberately ignores the totality of the circumstances and seeks to focus the Court solely on the mere characterizations contained in the documents. But when all of the circumstances are taken into consideration, and substance is elevated over form, DAK's portrayal of itself as a mere contractual counterparty does not withstand scrutiny, and the recharacterization analysis leads to the conclusion that DAK should be treated as an equity investor.[4]

## ARGUMENT

## I.    THE CONTEXT OF THE TRANSACTION CONFIRMS THE PARTIES' INTENT TO ENTER INTO AN EQUITY RELATIONSHIP.

11.     If there is any common ground in this case, it is this: the parties agree that under Third Circuit law, "[n]o mechanistic scorecard suffices" for the recharacterization analysis. *Cohen v. KB Mezzanine Fund II, LP, (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 456 (3d Cir. 2006). Yet while DAK pays lip service to this instruction in its opposition, it fails to follow through. DAK instead searches for "magic bullets" that it believes, isolated from context, can resolve—even dispense with—the recharacterization analysis altogether. It ███████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████

---

[4]    The Committee originally brought not only a recharacterization challenge, but also challenges (expressly pleaded in the alternative) based on theories of preferential transfer and equitable subordination. The Committee is confident in its recharacterization challenge, and also mindful of the limited time granted to the parties to try the issues, given the extenuating circumstances of these cases. Accordingly, in order to conserve the parties' and Court's time, and to ensure that due weight is given to the most important of the Committee's claims, the Committee has elected to proceed on its recharacterization theory only, as further specified in its prayer for relief below. *See infra*, Conclusion.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

12.     This is not how the analysis is supposed to work.  The recharacterization doctrine is designed "to ensure 'that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done.'"  *In re SubMicron Sys. Corp.*, 432 F.3d at 454 (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)).  Thus, the overarching inquiry in recharacterization cases is not whether the parties actually entered into a shareholder agreement or declared one party to be the owner of a business—if that were determinative, there would be no need for a recharacterization doctrine at all, and every case would be an easy one.  Instead, the inquiry is "whether the parties called an instrument one thing when in fact they intended it as something else."  *Id*. at 456.

13.     When the analysis is performed correctly, it is clear that DAK was functioning as an equity investor in what was essentially a start-up business. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[5]     Excerpts of the deposition testimony of Mr. Ghisolfi on February 28, 2018 and March 1, 2018 are attached as Exhibit 2 to the Lees Reply Declaration.

█████████████████████████████████████████████████████

████

14. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

15. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

16. ████████████████████████████████████████████
████████████████  ████████████████████████████████
████████████████████████████████████████████████



17. ████████████████████████████████

████████████████████████████████████

18. ████████████████████████████████████

███████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ █████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

19.   ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████ M.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

20.   ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████ ███████████████



22.      DAK's opposition largely ignores these economic realities surrounding the

Corpus Christi project, its financing, and DAK's efforts and reasons to participate in the project.

As described below, when the *AutoStyle* factors are placed in the context of this narrative, rather

than the oversimplified story DAK's opposition presents, DAK's alleged claims must be

recharacterized.

**II.      THE *AUTOSTYLE* FACTORS WEIGH OVERWHELMINGLY IN FAVOR OF
         RECHARACTERIZATION.**

23.      The factors typically analyzed by the Third Circuit in evaluating

recharacterization claims support a finding that DAK's contributions were an equity investment.

## A.      Name of the Instruments

24.      As discussed in the Committee's Motion, ███████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████

25.      At the same time, the agreements between DAK and M&G contain many economic terms typical of an equity relationship. ████████████████████
███████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████. ████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████

26.      ███████████████████████████████████████████
███████████████████████████████ M&G consistently referred to DAK as making an equity contribution. █████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████
███████████████████████████.

27.     Additional evidence abounds that the DAK contribution was considered by M&G and others to be an equity investment:

- 

28.     DAK, too, agreed on multiple occasions that its contributions should be treated as equity.



29.     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████     Further, DAK and its affiliates' own public

statements concerning its "investment" in M&G Resins, and how that investment aligned with its

overarching strategy to expand its market position, further show that DAK itself used

terminology more applicable to an equity investor.     ████████████████████

30.     Largely ignoring the repeated instances in which both M&G and DAK described

DAK's investment as equity, DAK argues that the "name of the instruments" factor weighs

against recharacterization because, in some of the agreements, DAK was essentially a purchaser

of product and M&G was described as an "owner" of the plant.  Opp. ¶¶ 72-73.  This, however,

is precisely the "mechanistic" approach that the Third Circuit eschews.  *In re SubMicron Sys.*

*Corp.*, 432 F.3d at 454.  And courts have rejected the notion that recharacterization is

inapplicable to "transactions involving inventory."  *Fairchild Dornier GmbH v. Official Comm.*

*of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 234 (4th Cir.

2006).  To hold otherwise "would simply invite equity investors to structure their capital

contributions as 'sales of inventory' thereby undermining the purposes of recharacterization."

*Id.*  Evidence that a transaction involving the sale of inventory was, as here, viewed as a "market

investment" supports recharacterization; it does not undercut it.  *See, e.g., id.*; *Official Comm. of*

*Unsecured Creditors v. Fairchild Dornier GmbH (In re Dornier Aviation (N. Am.) Inc.)*, 2005

2005 Bankr. LEXIS 561, at *15 (Bankr. E.D. Va. Feb. 8, 2005).

31.     DAK's assertion that it is merely a purchaser that acquired a contractual right and, therefore, must have a debt claim also defies the underlying principles and practice of project finance. ████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████

32.     Likewise, the fact that M&G undertook to retain ownership and control of the Corpus Christi project does not preclude DAK from being considered an equity investor. ███

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

These provisions do not mean that no other party could be an equity contributor. ████

████████████████████████████████████████████

███████████████████████████

33.     Nor is it compelling for DAK to assert that it must be a "lender" because ████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ is not the *sine qua non* of equity

ownership. The economic substance of the DAK and M&G relationship was equivalent to that of a general partnership: M&G was effectively the general partner, primarily in charge of operations, and DAK was a limited partner, entitled to receive the upside of its equity investment with few operational responsibilities.

**B.    Absence of Fixed Maturity Date, Schedule of Payments or Interest Rate**

34.    It is undisputed that neither the CRA nor Umbrella Agreement contained a fixed date for maturity, a repayment schedule, or provisions requiring the payment of interest in all events. ████████████████████████████████████████████████████

████████    And M&G's November 2013 Global Offering confirmed to investors that "the DAK contribution [was] not interest-bearing" and was non-redeemable. Lees Decl. Ex. C at 252.

35.    DAK argues that this factor is "irrelevant" because the CRA is a "sale and purchase contract" and not a "traditional loan document," citing *Joseph v. Feit (In re Liberty Brands), LLC*, 2005 Bankr. LEXIS 561 4095 (D. Del. Sep. 25, 2014). Opp. ¶ 93. The *Liberty Brands* case, however, involved a standard purchase order in which a customer had made a one-time advance payment to purchase goods from a manufacturer. *In re Liberty Brands*, Case No. 09-50956 (D. Del. Sep. 25, 2014) [ECF No. 226], at ¶¶ 37, 39-40 (attached as Ex. 9). That one-time payment was entirely unlike the contribution at issue here, where DAK made ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

36.    ██████████████████████████████████████████████

████████████████████████████████████████████████████



is consistent with the conclusion that DAK was not acting as a true lender to M&G. *See Miller v. Dow (In re Lexington Oil and Gas Ltd.)*, 423 B.R. 353 (Bankr. E.D. Okla. 2010) (explaining that true lenders "are prudent"—the "I's are dotted, t's are crossed" and "money is advanced [] only after everything appears to be in order.").

37. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████ *In re Mount Olive Hosp., LLC*, Case No. 12-32781/JHW, 2014 Bankr. LEXIS 2206, at *34 (Bankr. D.N.J. May 16, 2014) (absence of interest rate indicates that an investor "is more interested in seeing the value of its investment grow rather than receiving periodic payments"). ███████████

████████████████████████████████████████

---

6 ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████ The Committee vigorously disputes that DAK would be entitled to any rejection damages if this challenge succeeds, and reserves all right to contest any damages claim asserted by DAK.

### C. Source of Repayment

38.     From the outset of their agreement, the parties expected that ██████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████ The only way either DAK or M&G would earn that return was if the construction project was completed and M&G Resins became a successful business.

39.     DAK's assertion that its source of repayment was "not tied to the profitability of the Corpus Christi Plant," Opp. ¶ 82, is wrong. ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████ *see also* *Riley v. Tencara, LLC (In re Wolverine, Proctor & Schwartz, LLC)*, 447 B.R. 1, 39 (Bankr. D. Mass. 2011) (where "[n]either party wanted the business to fail and both [] expressed some optimism about achieving profitability through the reduction in manufacturing costs," this fact weighed in favor of recharacterization).

40.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████  This type of arrangement—where

DAK expected to share the upside with M&G— bears all the hallmarks of a joint equity

investment in a start-up.  *Slappey Drive Indus. Park v. United States*, 561 F.2d 572, 581 (5th Cir.

1977) ("A person ordinarily would not advance funds likely to be repaid only if the venture is

successful without demanding the potential enhanced return associated with an equity

investment.") (internal citations omitted); *In re Dornier Aviation (N. Am.) Inc.*, 2005 2005

Bankr. LEXIS 561, at *56 ("[T]he hope of payment out of future profits is exactly what

characterizes an equity investor.").[7]

### D.     Inadequacy of Capital

41.     Given the backdrop of M&G Resins' project financing capital structure, the Court

must determine whether the capitalization of M&G Resins would have made economic sense and

been consistent with industry practice if DAK's upfront contributions were treated as debt

instead of equity.  The evidence will show that it would not.

42.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████  Thus, if DAK's contribution

---

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

was *not* considered equity, the capital structure for the Corpus Christi project would have included only a 17% equity cushion, consisting solely of the $200 million contributed by M&G.

43. 

### E. Inability to Obtain Third Party Financing on Similar Terms

44. DAK argues that ███████████████████████████████████████ ███████████████████████████████████████ Opp. ¶ 91. This argument misconstrues the legal standard, however, and has been expressly rejected by courts in this District. "The proper question is not whether a third party denied [the debtor] funding. . . . [T]he proper question is whether a reasonable outside creditor would have made a loan to the debtor *on similar terms.*" *Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 579 (Bankr. D. Del. 2012) (finding that a creditor "misconstrue[d]" the recharacterization analysis in asserting the debtor failed to allege that any third parties had denied funding to the debtor) (emphasis added).

45.     When properly applied, this factor supports recharacterization. ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████

    | ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

    | ████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████

    • ████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████

    | ████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

**F.      Use of Funds to Acquire Capital Assets**

46.     There is no dispute that DAK's contribution was used to acquire M&G Resins'

most critical capital asset—the Corpus Christi Plant. █████████████████████

████████████████████████████████████████████████████████████████

██  For all of the reasons advanced above, DAK's position is removed from the reality and

economic substance of the parties' arrangement—including that DAK was helping to fund a new construction project, from which it would earn a share of the upside along with M&G.

### G.     Existence of a Lien and Subordination Agreement

47.     Contrary to what DAK suggests in its opposition, the fact that DAK obtained a second-priority lien in December 2016 does not weigh in favor of finding that DAK's contributions constituted debt.  Recharacterization analyses must focus on the parties' intent from the *outset* of the transaction.  *In re Autobacs Strauss, Inc.*, 473 B.R. at 572.  When DAK first entered into the Umbrella Agreement with M&G in 2013, it was granted only a pledge of M&G Resins' equity interests. ████████████████████████████████████ ███████████████████████████████ Moreover, as detailed in the Motion, DAK's security interest was never perfected, and is avoidable in these cases under section 544(a) of the Bankruptcy Code.  *See* Motion ¶¶ 128-131.  DAK's failure to ensure its security interest was properly perfected and enforceable in bankruptcy further evidences that DAK was not acting as a true lender.[8]

48.     DAK's second-priority lien was not granted until almost four years after the Umbrella Agreement was signed, and more than a year-and-a-half after the CRA was signed.  At the time of the grant, ███████████████████████████████████████To the extent the grant of a lien imbued DAK's investment with debt characteristics, this happened well after the *outset* of the transaction, and is not probative of the parties' intent at the relevant time.

---

[8]     DAK incorrectly argues that its security interest was properly perfected through possession by its security agent. Opp. ¶ 136.  But because the M&G Resins LLC Agreement failed to expressly state that it was a security under Article 8 of the Uniform Commercial Code, however, perfection by possession is insufficient.  DAK's opposition does not grapple with this fact.

49.     In any event, even though the Umbrella Agreement ██████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ ████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████





50.     Finally, by contending that it must be treated as a creditor because of its after-the-fact lien, DAK effectively asserts that it had the rights of an equity investor if the Corpus Christi Plant were successful (the expected case from the outset), but would have the rights of a secured lender if it were not.  DAK cannot have it both ways: the law is clear that a capital contributor cannot have both equity rights and a lien to protect its investment.  *See Warren v. King*, 108 U.S. 389, 399 (1883) (an equity holder "cannot be both creditor and debtor, by virtue of his ownership of stock."); *see also Spencer v. Smith*, 201 F. 647, 654 (8th Cir. 1912) ("It is . . . well settled that a contract between a corporation and a stockholder by which the latter is to receive . . . any part of his stock before all corporate debts are paid is contrary to public policy, and void.").

51.     Further, to the extent DAK is effectively taking the position that its equity position "converted" to debt when the downside scenario materialized and the lien was granted, this would render the lien an avoidable fraudulent transfer.  *See, e.g.,* 11 U.S.C. 548(a)(1)(B).

█████████████████████████████████████████████████████████████████

███████████████████████████████████████  And there is no evidence that M&G Resins received reasonably equivalent value in exchange for the grant of a $435 million lien securing a newly-converted debt position.  The grant of the lien, even in DAK's view of the world, does not support its opposition to the Motion.

**H.      Identity of Interest Between Creditor and Shareholder**

52.     DAK also contends that the fact that it is not a shareholder of the Debtors is dispositive, and claims that the recharacterization doctrine is not applicable to contributions made by non-insiders.  Opp. ¶ 68.  This is incorrect.  To the contrary, the absence of archetypal equity rights is not fatal to a recharacterization claim, and courts have found purported loans by non-insiders or non-shareholders to be equity.  *See, e.g., Sensenig v. Comm'r, No. 16254-11*, 2017 Tax Ct. Memo LEXIS 1 (T.C. Jan 3, 2017) (finding a purported loan from a non-insider to

be an equity contribution); *In re Mount Olive Hosp., LLC*, 2014 Bankr. LEXIS 2206 (Bankr.

D.N.J. May 16, 2014) (granting recharacterization of purported loans by non-insider "lenders").

53.  ██████████████████████████████████████████████████

████████████████████████████████████████ merely sets up a strawman.

The Committee has never contended that DAK's investment in the Corpus Christi Plant literally

created a *formal* joint venture, documented as such.  The thrust of the Committee's argument is

that the DAK and M&G relationship was economically equivalent to a joint venture or a

partnership—in other words, exactly the kind of *disguised* equity relationship that the

recharacterization doctrine is intended to root out.  *In re Autobacs Strauss, Inc.*, 473 B.R. at 572

(Bankr. D. Del. 2012).

54.  If DAK were correct that parties could avoid recharacterization altogether simply

by declining to execute a formal joint venture, partnership, or shareholder agreement, there

would be no purpose to the doctrine at all.  Parties could easily disguise their equity

arrangements and hide behind mere formalities.  This, however, would contravene the Third

Circuit's mandate and prevent substantial justice from being done.

## CONCLUSION

For the reasons advanced herein and in the Motion, and as the Committee will

demonstrate further at the hearing, DAK is not entitled to be treated as a secured creditor in these

cases or to credit bid for the Debtors' assets.  The Committee therefore respectfully requests

entry of an order:

A.  Recharacterizing DAK's secured claims as an equity interest in M&G Resins,

disregarding any purported liens granted in respect of such equity interest, and denying DAK the

right to credit bid for the Debtors' assets; and

B.      Granting any further relief the Court deems just and proper.


Dated: March 12, 2018          **COLE SCHOTZ P.C.**
       Wilmington, DE

                               By: */s/ David R. Hust*
                               J. Kate Stickles (No. 2917)
                               David R. Hurst (No. 3743)
                               500 Delaware Avenue, Suite 1410
                               Wilmington, Delaware 19801
                               Telephone: (302) 652-3131
                               Facsimile: (302) 652-3117
                               kstickles@coleschotz.com
                               dhurst@coleschotz.com

                               - and -

                               **MILBANK, TWEED, HADLEY &
                               McCLOY LLP**
                               Dennis F. Dunne
                               Abhilash M. Raval
                               Alan J. Stone (No. 2677)
                               Lauren C. Doyle
                               Alexander B. Lees
                               28 Liberty Street
                               New York, New York 10005-1413
                               Telephone: (212) 530-5000
                               Facsimile: (212) 530-5219
                               ddunne@milbank.com
                               araval@milbank.com
                               astone@milbank.com
                               ldoyle@milbank.com
                               alees@milbank.com

                               *Counsel to Official Committee of Unsecured
                               Creditors of M & G USA Corporation, et al.*