# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>                        Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>Jointly Administered<br><br>**Related to Docket Nos. 173, 490, and 1061** |

## SINOPEC'S PRELIMINARY OBJECTION TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' REMAINING ASSETS

Sinopec Engineering Group America, LLC ("**SEGA**") and Sinopec Engineering (Group) Co., Ltd. ("**SEG**" and with SEGA, "**Sinopec**"), by and through their undersigned counsel, hereby preliminarily object to the Debtors' motion for entry of an order approving the sale of certain of the Debtors' assets free and clear of liens, claims, interests, and encumbrances [D.I. 173] (the "**Sale Motion**").[2] In support of this Objection, Sinopec states as follows:

## PRELIMINARY STATEMENT

SEGA holds valid lien claims in an amount of at least $52,377,568.72, plus attorneys' fees, costs, and interest payable under applicable law, against M&G Resins USA, LLC, which it

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments, Inc. (9208). The Debtors' notice address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] *See Motion For Sale of Property Free and Clear of Liens under Section 363(f)(FEE) Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 173]

timely asserted under applicable Texas statues, the Texas Constitution, the Bankruptcy Code, and orders of this Court (the "**Sinopec Liens**"). The Sinopec Liens extend to each lot of land and the building, fixtures, or improvements on that land for which SEGA provided labor, materials (including specially fabricated materials not yet delivered) for construction of or improvement to a building.[3] As stated in its Affidavits of Lien, that real property in which Sinopec has a lien is commonly known as 7001 Joe Fulton International Trade Corridor, Corpus Christi, Texas 78409, which real property is more fully described in the SEGA's Affidavit of Liens and which has improvements on it of the Jumbo Plant and a desalination plant (collectively, the "**Property**").

The Sinopec Lien is a Senior Prior Lien under the terms of the DIP Loan[4] and is senior to some or all of the Senior Pre-Petition First Lien Obligations. As such, SEGA must be paid in full for the Debtors to convey any part of the Property subject to the Sinopec Lien or for any junior creditors to be paid from the proceeds of the Property. The Debtors' proposed Sale Order, attached as Exhibit B to the Sale Motion (the "**Proposed Sale Order**"), however, contemplates that SEGA will not be paid in full. Instead, the Proposed Sale Order provides that junior creditors will be paid as allegedly contemplated by the Final DIP Order, while an amount less than what would be required to pay SEGA in full to discharge the Sinopec Liens has been proposed to be reserved (the Debtors have also recently filed a motion [D.I. 1075] seeking to establish a reserve for less than the amount due and owing to Sinopec (the "**Reserve Motion**")).[5]

---

[3]     *See* TEX. PROP. CODE §§53.021-023.

[4]     The "Final DIP Order" is D.I. 479 and it has attached to it as Annex A a Super-Priority Senior Secured Debtor-In-Possession Term Loan Agreement, which is the "DIP Loan."

[5]     Sinopec recognizes that if certain other conditions are met, a fully funded reserve (which the Reserve Motion does not propose) for all amounts due and owing to Sinopec, including attorneys' fees, might provide sufficient adequate protection; however, as the Reserve Motion does not so provide, and since, as explained below, the Debtors have yet to disclose any details of a sale, the Purchase Agreement, or the proposed form of Sale Order acceptable to a bidder, Sinopec lodges this objection and reserves its rights with respect to the Reserve Motion.

As presently contemplated, the Proposed Sale Order provides that the proceeds of the Sale will be paid as authorized by Paragraph 13 of the Final DIP Order. *See* Proposed Sale Order, ¶ 26. Paragraph 13 of the Final DIP Order makes reference to the stipulation at paragraph B(vii) in the Final DIP Order and then imposes additional provisions to payment of proceeds from any sale.[6] As an initial matter, none of the stipulations in the Final DIP Order are intended to determine the relative priorities of any lien claim compared to the Sinopec Lien. *See* Final DIP Order at 5 n.5. Moreover, the DIP Credit Agreement contemplates that the Senior Pre-Petition First Lien Obligations are junior in whole or in part to the Senior Prior Liens. *See* DIP Credit Agreement at 53 (noting that the Liens granted in the Final DIP Order have priority over all liens except Senior Prior Liens and "any portion of the Pre-Petition First Lien Security Interests that had priority over the Senior Prior Liens as of the Petition Date, solely to the extent of such portion . . ."). Paragraph 13 of the DIP Order also reflects that some or all of the Senior Prior Liens are senior in priority to some or all of the Senior Pre-Petition First Lien Obligations because certain of the sale proceeds payment provisions are subject to a final, unappealable court determination that the amount of the Senior Pre-Petition First Lien Obligations is in excess of a specified amount. And the Court, in its order dated February 27, 2018 [D.I. 1047] (the "<u>Adjournment Order</u>"), has adjourned to the same date as the Sale Hearing the *Motion of the Construction Lienholder Group for Relief from the Automatic Stay, to the Extent Necessary, to Commence Actions in Texas to Determine the Relative Priority of Construction Liens Between the Construction Liendholders and Nondebtors, Banco Inbursa, S.A., Institutión de Banca*

---

[6] And the stipulation in paragraph (B)(vii) regarding 363 sale payment provisions reflects only an acknowledgement that as between the DIP Agent, the DIP Lender, the Pre-Petition First Lien Lender, the Pre-Petition Second Lien Secured Party, and the debtors, those parties have agreed to apply proceeds of any cash sale in a way that permits proceeds to be paid to the lien holders that are junior to Sinopec without Sinopec being paid in full. Sinopec did not stipulate to this payment priority and the record of these cases reflects that the Court did not intend to establish the payment waterfall at the time of the hearing on the Final DIP Order, but instead reserved its power to do so at any sale hearing.

*Múltiple, Grupo Financiero Inbursa and DAK Americas LLC* [D.I. 824] (the "<u>Lift Stay Motion</u>"), which seeks to lift the stay to determine the priorities of the various lien claimants.

Thus, there has been no determination as to the priority of the Senior Prior Liens and the Senior Pre-Petition First Lien Obligations. To the extent the Sinopec Liens are senior to some or all of the liens, including with respect to "removables," those liens are senior in priority to all other liens and must be paid first and in full. Additionally, to the extent that there is a judicial determination that any portion of the Senior Prior Liens are junior to any portion of Senior Pre-Petition First Lien Obligations, then any carve-out amounts contemplated by the Final DIP Order should be carved out of the amounts paid to satisfy the Senior Pre-Petition First Lien Obligations, if any, and not out of amounts to be paid or reserved on account of the Sinopec Liens, as Sinopec has not consented to any carve-outs. Sinopec objects to the Sale Motion should it result in the conveyance of the Property or payment to junior lienholders or administrative creditors from the proceeds of the Property prior to satisfaction in full of the Sinopec Liens.

As more fully described below, Sinopec's objection is grounded in the inadequate notice and due process issues that arise as a result of the requirement imposed that it lodge objections prior to the disclosure of the proposed final Sale Order, the Purchase Agreement, or any other relevant provisions of the sale contemplated by the Sale Motion. Additionally, the Debtors have not yet established that they will satisfy section 363(f) of the Bankruptcy Code. Even if they do satisfy those provisions, to obtain approval of the Sale Motion, Sinopec must either be paid in full at the closing of any sale, an adequate amount must be reserved (including an amount for attorneys' fees, costs, and interest payable under applicable law), a bond must be posted under Texas law, or the purchaser must take the Property subject to the Sinopec Liens. As a result,

there is no basis to approve releases and injunctions against Sinopec to protect junior lien holders or the purchaser until such time as the Sinopec Liens are satisfied and paid in full. And finally, since there is likely to be a regulatory waiting period for the sale of the Property, there is inadequate cause to justify the waiver of the 14 day stay required by Bankruptcy Rules.[7]

## BACKGROUND

1. Sinopec entered into contracts (collectively the "**Contracts**") related to the construction of a chemical plant by M&G Resins USA LLC in Corpus Christi, Texas (the "**Jumbo Plant**"). As noted in the Contract Objections, the Contracts form an integrated suite of contracts under which Sinopec (i) provided offshore procurement, mainly providing goods from outside the USA prior to the commencement of these cases, including from the People's Republic of China, and (ii) subcontracted to certain Debtors and affiliated parties offshore procurement, onshore construction, transportation and design work, and overall project management services at the Jumbo Plant. Sinopec has not been paid in full for the materials it has provided to the Debtors for use at the Jumbo Plant.

2. SEGA filed an Affidavit for Mechanic's Lien and Affidavit For Mechanic's Lien #2 in the official Real Property Records in Nueces County, Texas. The Recorder of Deeds recorded these two instruments on November 6, 2017, assigning them document numbers 2017046312 and 2017046781, respectively.

3. On November 16, 2017, the Debtors filed the Sale Motion, which included Bidding Procedures for the Sale of the Debtors' assets and for assumption and rejection of executory contracts as part of the proposed sale.

---

[7] Sinopec has also separately objected to the proposed assumption of contracts between SEGA and certain of the Debtors and does not restate those objections in this Objection, but incorporates those arguments by this reference. *See Sinopec's Cure Objection* [D.I. 609] and *Sinopec's Objection to the Debtors' Second Supplemental Notice of Possible Assumption and Assignment of Executory Contracts* [D.I. 872] (collectively, the "**Contract Objections**").

4. On November 17, 2017, Sinopec filed a *Notice of Perfection of Mechanic's Liens under 11 U.S.C. § 546(b)(2) of Sinopec Engineering Group America, LLC* [D.I. 192]. This Notice reflects two unpaid claims Sinopec has under the Contracts for claims for the performance of labor and furnished materials used to improve the Jumbo Plant totaling $52,377,568.72. As part of these lien claims, Sinopec seeks all amounts to which it is entitled, including attorneys' fees, costs, interest and all other amounts.

5. The Court approved the Bidding Procedures by entry of an order on December 14, 2017.[8] The Bidding Procedures Order required the Debtors to file "Assumption and Assignment Notices," which the Debtors did and to which Sinopec has objected in the Contract Objections.

6. On motion by the Debtors, the Court has also entered an *Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief* [D.I. 457] and an *Order Establishing Lienholder Claim Settlement Procedures* [D.I. 721] (collectively, the "**Lien Procedures Orders**"). The Court also entered an *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [D.I. 1053] (the "**Bar Date Order**"). Under the Bar Date Order, the general bar date is April 5, 2018 (after the scheduled hearing on the Sale Motion) and the order further provides that any entity that has submitted a notice under section 546(b) of the Bankruptcy Code or recorded a lien in the Nueces County real property records in accordance with the Lien Procedures Orders need not file a proof of claim. *See* Bar Date Order at ¶9(g). As such, Sinopec is deemed to have filed a proof of claim in these cases.

7. The Construction Lienholders Group filed its Lift Stay Motion on January 29, 2018, seeking to commence declaratory actions in a court of competent jurisdiction in the State

---

[8] D.I. 490.

of Texas to determine the relative priority of the liens held by the construction lienholders and non-debtors, Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa, and DAK Americas LLC. After hearing argument on the Lift Stay Motion on February 22, 2018, the Court gave the Construction Lienholders Group a choice: the motion would be denied outright or, alternatively, further argument on the motion would be adjourned until the date of the Sale Hearing. On February 27, 2018, the Court issued the Adjournment Order, which adjourned the Lift Stay Motion until the same day as the Sale Hearing.

8. The Debtors have not yet sold the assets subject to the Sinopec Liens, including the Jumbo Plant or the desalination plant, do not have a "stalking horse bidder" for the Jumbo Plant or the desalination plant, and have proposed modifications to the Bidding Procedures to provide that the auction will occur on March 19, 2018 and the sale hearing will be on March 23, 2018.

**ARGUMENT**

**A. The Debtors Have Not Provided Adequate Disclosure of the Sale.**

9. In the Sale Motion, the Debtors note that any bidders must submit a modified form of Sale Order. *See* Sale Motion at ¶ 10. While the bid deadline was March 6, 2018, the Debtors have not disclosed any forms of sale order submitted by any bidder and due process dictates that, absent provision of a proposed form of sale order with adequate time for Sinopec to review such order, the Court not enter such order until Sinopec (and other parties) will have the time to review such order.

10. Similarly, the Proposed Sale Order proposes findings that (i) the Debtors have made "sufficient, complete, and adequate" disclosures concerning the Purchase Agreement and the Sale Transaction and (ii) a "reasonable opportunity to object or be heard regarding the relief

requested in the Sale Transaction has been afforded to all parties and entities . . ..." Proposed Sale Order at Finding E and F. On the current record, the Court cannot make these findings and, absent the Debtors making such disclosures and providing a "reasonable opportunity" to Sinopec to review and object to the Sale Transaction once proposed, Sinopec objects to the Court making them.

11. These due process complaints are not irrelevant or minor but instead go to the very core of rights in a bankruptcy case because, absent payment in full or provisions of adequate protection, any sale free and clear of the Sinopec Liens will constitute an unlawful taking of Sinopec's property without just compensation, which of course is not permissible. *See generally United States v. Sec. Indus. Bank*, 459 U.S. 70, 77–78, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982) (noting in *dicta* that a bankruptcy court's complete destruction of state law property rights, even if of insubstantial value, would merit protection under the Fifth Amendment's Takings Clause); *see*, *e.g.*, *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S. Ct. 854, 79 L. Ed. 1593 (1935); *cf., Wright v. Vinton Branch of Mountain Tr. Bank of Roanoke, Va.*, 300 U.S. 440, 57 S. Ct. 556, 81 L. Ed. 736 (1937).

**B. The Debtors Have Not Provided a Basis for Sale of the Assets Under 363(f).**

12. Under section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of any entity's interest in the property <u>only if</u> (1) nonbankruptcy law permits it; (2) the holder of the interest consents; (3) the interest is a lien and the price at which property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest. *See* 11 U.S.C. § 363(f)(1)-(5). The Debtors have not and cannot satisfy this provision absent Sinopec's consent or an action that results in significant cash

proceeds. Indeed, in their Sale Motion, the Debtors merely state that they anticipate "a Sale Transaction will satisfy one of the five requirements set forth under 363(f) either because the proceeds are sufficient to cover such liens or interests, the effected parties consent or some other basis under 363(f) exists." Sale Motion at ¶ 37; *see also* Local Rule 7007-2(b)(ii) ("The party filing the opening brief shall not reserve material for the reply brief that should have been included in a full and fair opening brief.").[9]

13. As to the substance, none of the components of 363(f) have been satisfied with respect to Sinopec:

- Nonbankruptcy law does not permit a sale free and clear of the Sinopec Liens, as Texas law has a specific provision on the discharge of a mechanic's lien, none of which apply here (unless a bond is posted). *See* TEX. PROP. CODE § 53.157.[10] Of

---

[9] The Debtors knew about the Sinopec Lien when they filed the Sale Motion because the Sinopec Liens were filed in the Nueces County Recorder's Office on November 6, eleven days before the Sale Motion was filed, and the Debtors' first day Declaration specifically referenced outstanding mechanic's liens. As such, Debtors could have more fully briefed the 363(f) issues in their Sale Motion. Having elected not to do so, they cannot include any arguments (or have other supporters of the Sale Motion who are not movants) file such arguments in a reply brief under Local Rule 7007-2(b)(ii).

[10] Sec. 53.157. DISCHARGE OF LIEN. A mechanic's lien or affidavit claiming a mechanic's lien filed under Section 53.052 may be discharged of record by:

 (1) recording a lien release signed by the claimant under Section 53.152;

 (2) failing to institute suit to foreclose the lien in the county in which the property is located within the period prescribed by Section 53.158, 53.175, or 53.208;

 (3) recording the original or certified copy of a final judgment or decree of a court of competent jurisdiction providing for the discharge;

 (4) filing the bond and notice in compliance with Subchapter H;

 (5) filing the bond in compliance with Subchapter I; or

 (6) recording a certified copy of the order removing the lien under Section 53.160 and a certificate from the clerk of the court that states that no bond or deposit as described by Section 53.161 was filed by the claimant within 30 days after the date the order was entered.

course, if the Sinopec Lien were to be satisfied or paid in full, then the Sinopec Liens could be released. *Id*. at § 53.152.

- Sinopec has not yet consented to the Sale Motion.

- According to the Debtors' stipulation in the Final DIP Order and the estimates in the Reserve Motion, the aggregate value of all liens on the Property is about $1.3 billion, consisting of $350.3 million of Senior Prior Liens, and $436 million of pre-petition liens owed to Inbursa, about $100 million in liens granted under the DIP Loan, and $435 million of liens allegedly held by DAK. It is not yet clear whether the auction will yield proceeds sufficient to satisfy the aggregate value of these liens.

- There is no *bona fide* dispute regarding the Sinopec Liens. Indeed, having filed a notice of lien claim in November 2017, over 4 months ago, the Debtors have raised no dispute to the Sinopec Liens, *bona fide* or otherwise. And the Debtors cannot do so now. The Third Circuit instructs that any such dispute must be an objective legal dispute and not "fanciful" or "disingenuous." *See In re Revel AC, Inc.*, 802 F.3d 558, 574–75 (3d Cir. 2015). Importantly, Sinopec has satisfied its obligation to file a proof of claim and thus its claim is deemed allowed for the purposes of the hearing on the Sale Motion. Similarly, Texas law provides limited grounds for objecting to the validity or enforceability of the claim or lien. *See* TEX. PROP. CODE § 53.160. In short, the Sinopec Liens are not subject to a *bona fide* dispute.

- The Debtors cannot demonstrate that Sinopec could be compelled to take less than payment in full in satisfaction of its claims. There is no theoretical possibility that

outside of bankruptcy the Debtors or a court could compel Sinopec to take less than its full claim (and as explained below, to do so without payment, the Debtors would have to post a bond equal to 150% of the amount of the Sinopec Lien). *In re PW, LLC*, 391 B.R. 25, 45 (B.A.P. 9th Cir. 2008) (holding that debtors "must demonstrate how satisfaction of the lien 'could be compelled.'") (citation omitted); *see also In re Haskell, L.P.*, 321 B.R. 1, 8–9 (Bankr. D. Mass. 2005) (rejecting the argument that debtors need only show that it is theoretically possible to compel a party under § 363(f)(5)); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002) (holding 363(f)(5) applied where, if the debtors tendered full payment in cash to the interest holder and it refused, the debtors could compel the interest holder to accept that payment in satisfaction of its right to withhold and stop delivery under U.C.C. § 2–702(1)).

14. Having failed to satisfy the requirements of section 363(f) of the Bankruptcy Code, the Debtors cannot sell the Property or any buildings or improvements on that Property free and clear of the Sinopec Liens, and any order entered permitting such sale should provide that the purchaser may only acquire the Property subject to the Sinopec Liens.

**C. Unless Sinopec is Paid in Full (Including All of its Attorneys' Fees and Interest), the Sale Should Not be Free and Clear, Junior Creditors Should Not be Paid Ahead of Sinopec, and the Releases and Injunctions Should Not Apply to Sinopec.**

15. As indicated above, Sinopec is entitled to be paid in full prior to a free and clear conveyance.[11] Of similar import, if the sale is for an amount less than the aggregate of the various lien claims or if a credit bid is made such that the value of the assets is insufficient to

---

[11] The *Objection of Bancomext to the Sale of the Debtors' Corpus Christi Assets, Desalination Assets, and Other Assets* [D.I. 1115] does not change the analysis set forth in this Preliminary Objection since the Sinopec Liens attach to the Property under Texas law, whoever owns it, and paying the Sinopec Liens from the proceeds of any sale does not infringe on any dubious constructive trust rights Bancomext may have.

satisfy all liens, then Sinopec has a first priority lien claim under the "removables" doctrine. *See Amegy Bank Nat'l Assoc. v. Brazos M&E, Ltd. (In re Bigler LP)*, 458 B.R. 345 (Bankr. S.D. Tex. 2011). As noted in the *Bigler* decision, where a mechanic or materialman timely files a valid affidavit of lien under Texas law, as SEGA has done here, then the related lien is "superior to a prior recorded deed of trust lien if the materials furnished can be removed without material injury to (i) the land, (ii) the preexisting improvement, or (iii) the materials themselves." *Id*. at 378 (citations omitted). Sinopec has provided over 300 items of material for use in the Jumbo Plant in addition to a number of specially manufactured modules, many of which constitute removables. The nature and extent of the removable property and the amount of any removables claim, which are senior to the Senior Pre-Petition First Lien, has not yet been decided, and the Construction Lienholders Group has raised this issue in its Lift Stay Motion. As the Court noted at the conclusion of the hearing on February 22, 2018 regarding, among other items, the Lift Stay Motion, "one of the basic propositions of a bankruptcy proceeding is determining what it is that we're going to fight over. And good lawyers do not fight over principle; they fight over money in a bankruptcy court, and the question is whether or not there will be money to fight over," *see* Transcript of February 22, 2018 Hearing at pp. 90:21-91:1, which indicates that many relevant issues here are not yet ripe (and may not be litigated here).

16. Texas law does contain a provision that permits the posting of a bond to indemnify against the Sinopec Lien if the Debtors elect litigate rather than pay the Sinopec Liens off at closing. *See* TEX. PROP. CODE § 53.171. This bond must meet certain technical requirements, including describing the property on which the lien is claimed, referring to the lien in a manner sufficient to identify it, be in an amount that is 1-1/2 times the amount of the liens (this would be a bond in the amount of $78,566,353.08 plus amounts for attorneys' fees, costs,

and interest), payable to Sinopec, properly executed, and conditioned substantially on the requirement that the principal and sureties will pay Sinopec the amount it would have been entitled to recover if their claims had been proved to be valid and enforceable liens on the property. *Id*. §53.172. As noted above, if such a bond were to be posted, then the Sinopec Liens could be discharged and the Property conveyed free and clear of the Sinopec Liens. *Id*. § 53.157(4). But absent this bond being posted (or payment in full to Sinopec), the other discharge provisions of the Texas statute cannot be fulfilled and the Property may not be sold free and clear of the Sinopec Liens. Such a bond would be especially warranted where a junior lien holder submits a credit bid and Sinopec is not paid in full at the closing. Any such acquisition by a credit bidding junior lienholder should be subject to the Sinopec Liens, as those liens will not be discharged absent posting a bond.

17. The Debtor has proposed in the Reserve Motion to set aside the principal amount of the Sinopec Liens to permit it to transfer the Property free of the Sinopec Liens. While Sinopec likely will file an objection to the Lien Reserves Motion, Sinopec is entitled to adequate protection of its interest under section 363(e) if the Court does permit the sale free and clear of its interest. If the Court permits proceeds of the sale to be paid to lienholders junior to Sinopec, then the normal adequate protection afforded in a sale under section 363, namely permitting all liens to attach in the same order, priority, and validity, to the proceeds of the sale, will not be available. *See, e.g., In re Taylor-Wharton Int'l, LLC*, No. 09-14089 (BLS), 2010 WL 2906763, at *5 (Bankr. D. Del. June 8, 2010). Decretal paragraph 7 of the Proposed Sale Order provides that the proceeds of the Sale Transaction shall be applied as set forth in the Sale Order and "thereafter ***all remaining*** Encumbrances shall attach to the proceeds of the Sale Transaction." (emphasis added). In other words, the Debtors propose to pay out lower priority putative lien

creditors first, then set aside what's left for the benefit of the remaining lienholders and provide no protection if those proceeds are insufficient to satisfy those remaining Encumbrances. The Bankruptcy Code does not permit this.

18.     As such, the lack of adequate protection to Sinopec in the Proposed Sale Order renders it wholly flawed and makes the provisions that impose injunctions and releases especially inappropriate. Sinopec must be entitled to retain its rights against junior parties (including purchasers) that receive the benefit of its collateral.[12] Additionally, Sinopec's rights under section 507(b) of the Bankruptcy Code should be included in the proposed Sale Order and, should the Court approve any releases or injunctions, they should not apply to Sinopec's exercise of its section 507(b) rights (including, but not limited to, subordinating any claim the Debtors seek to assert as an administrative claim under decretal paragraph 33 of the Proposed Sale Order related to any allocation issues, noting that the allocation issue is not relevant to the Sinopec Lien as it attaches to the Property and the building and improvements on the Property).

### D. There is No Cause to Waive the 14 Day Stay Under Applicable Bankruptcy Rules.

19.     In decretal paragraph 40 of the Proposed Sale Order, the Debtors propose that provisions of Bankruptcy Rules 6004(h), 6006(d), and 7062 that provide a 14 day stay of an order like the Proposed Sale Order be waived. Additionally, the Proposed Sale Order contemplates that the Court will make a finding that "cause exists" to lift the stay as contemplated by Bankruptcy Rules 4001(a) and 6004(h) but in that finding acknowledges that the Purchase Agreement will not be consummated until five days after "all necessary and

---

[12]     The proposed Sale Order contains numerous provisions that result in releases or injunctions in favor of the purchaser and the Assets that are inappropriate. *See* Proposed Sale Order, Finding P (assets may be sold free and clear of any mechanic's liens on the assets); Finding V (Purchaser has no obligation for Encumbrances); Finding W (finding that the Sale Transaction is valid under 363(f)); Decretal Paragraphs 11, 18, (injunctions), 15, 16, and 30 (releases). Additionally in decretal paragraphs 9 and 12 of the Proposed Sale Order, the Debtors are authorized to file a release of the Sinopec Lien in the Texas Real Property records, notwithstanding the provision of Texas law regarding the factual predicate to such a discharge, which likely will not be satisfied here.

regulatory approvals are completed." *See* Proposed Sale Order at Finding M. This could be much longer than 14 days considering the various regulatory approvals that, upon information and belief, will be required. The only justification for this requested relief in the Sale Motion is that it is "necessary and appropriate to maximize the value of the Debtors' estates for the benefit of their economic stakeholders." Sale Motion at 43.

20. The purpose of the 14 day stay period is to ensure an objecting party has sufficient time to request a stay pending appeal before the order can be implemented. This 14 day period is especially appropriate when an objection has been filed and overruled because absent such a stay, the objecting party loses its appellate rights. *See* 11 U.S.C. § 363(m); *see also Fox Sports Net West 2, LLC v. Los Angeles Dodges LLC (In re Los Angeles Dodgers LLC)*, 465 B.R. 18, 36 (D. Del. 2011). In light of probable delay to closing the sale due to the regulatory waiting periods likely to apply, the Debtors cannot show a compelling business justification that would justify waiver of the regular stay period. *In re PSINet Inc.*, 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001). At a minimum, the Court should not fully eliminate the stay period, but should grant a courtesy stay of sufficient length to grant Sinopec, should it ultimately be aggrieved by any order approving the Sale Motion, time to seek a stay pending appeal from a higher court due to the Third Circuit's recently pronounced "sliding scale approach" applied to stays pending appeal in sale situations. *See e.g., In re Revel AC, Inc.*, 802 F.3d at 567–71.

## **RESERVATION OF RIGHTS**

In addition to the issues raised in this Objection, Sinopec reserves its right to further object to the Sale by supplemental filings or orally at any hearing on the Sale Motion, to pursue its Contract Objections and object to the assumption or assignment of the Contracts, to supplement this Objection or the Contract Objections, or to submit additional evidence in support

of this or any supplemental objection or the Contract Objections.  Sinopec also reserves the right to join in any arguments made by any other objector.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, Sinopec respectfully requests that the Court (a) sustain this Preliminary Objection and deny the Sale Motion and (b) grant such other and further relief as the Court deems just and proper.

Dated: March 12, 2018
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

By:   */s/ R. Craig Martin*
      R. Craig Martin (DE 5032)
      1201 North Market Street, Suite 2100
      Wilmington, DE  19801
      Telephone:  (302) 468-5700
      Facsimile:  (302) 394-2341
      Email:  craig.martin@dlapiper.com

*Attorneys for Sinopec Engineering Group America, LLC, and Sinopec Engineering (Group) Co., Ltd.*

# CERTIFICATE OF SERVICE

I, R. Craig Martin, hereby certify that on the 12th day of March 2018, I caused a copy of the foregoing *Objection to the Sale of Substantially All of Debtors' Remaining Assets* to be served on the parties listed below via first class mail or hand delivery on local counsel, and all parties registered for service via CM/ECF.

VIA HAND DELIVERY
Laura Davis Jones, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801

VIA HAND DELIVERY
J. Kate Stickles, Esq.
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

VIA HAND DELIVERY
Pauline K. Morgan, Esq.
Young Conaway Stargatt & Taylor LLP
1000 King Street
Wilmington, DE 19801

VIA HAND DELIVERY
Curtis S. Miller, Esq.
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
Wilmington, DE 19801

VIA HAND DELIVERY
Hannah Mufson McCollum, Esq.
Office of the U.S. Trustee
844 King Street, Suite 2207
Lockbox $35
Wilmington, DE 19801

VIA FIRST CLASS MAIL
Scott J. Greenberg, Esq.
Jones Day
250 Vesey Street
New York, NY 10281

VIA FIRST CLASS MAIL
Carl E. Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114

VIA FIRST CLASS MAIL
Dennis F. Dunne, Esq.
Milbank Tweed Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005

VIA FIRST CLASS MAIL
Michael V. Blumenthal, Esq.
Thompson & Knight LLP
900 Third Avenue, 20th Floor
New York, NY 10122

VIA FIRST CLASS MAIL
Lisa M. Schweitzer, Esq.
Cleary Gottleib Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

| | |
|---|---|
| VIA FIRST CLASS MAIL<br>M&G Corporation<br>Attn: Dennis Stogsdill<br>450 Gears Road, Suite 240<br>Houston, TX 77067 | VIA FIRST CLASS MAIL<br>Alfredo R. Perez, Esq.<br>Weil Gotshal & Manges LLP<br>700 Louisiana, Suite 1700<br>Houston, TX 77002 |

*/s/ R. Craig Martin*
R. Craig Martin (DE 5032)
