# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: April 5, 2018 at 4:00 p.m. (ET)**<br>**Hearing Date: April 25, 2018 at 11:00 a.m. (ET)** |

## SUMMARY OF FIRST INTERIM APPLICATION OF JONES DAY
## FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
## AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS
## FOR THE PERIOD FROM OCTOBER 31, 2017 THROUGH JANUARY 31, 2018

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | The above-captioned Debtors |
| Period for which compensation and reimbursement are sought: | October 31, 2017 through January 31, 2018 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $6,279,660.00 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $56,952.50 |
| Petition Date: | October 30, 2017[2] |
| Date of Order Approving Retention: | November 30, 2017, *nunc pro tunc* to October 30, 2017 |
| Total Compensation Approved by Interim Order to Date: | N/A |

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] On October 24, 2017, Debtor M & G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. All other Debtors commenced their chapter 11 cases on October 30, 2017.

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | N/A |
| Total Allowed Compensation Paid to Date: | N/A |
| Total Allowed Expenses Paid to Date: | N/A |
| Blended Hourly Rate in this Application for All Attorneys: | $715.98 |
| Blended Hourly Rate in this Application for All Timekeepers: | $704.27 |
| Compensation Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $5,053,258.00 |
| Expenses Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $54,499.31 |
| Number of Professionals Included in this Application: | 79 |
| Number of Professionals Billing Fewer Than 15 Hours: | 17 |

This is a(n): ____ monthly    __X__ interim    ___ final application

The total time expended for fee application preparation is approximately 119.50 hours and the corresponding compensation requested is approximately $62,687.50.

Prior Applications Filed:

| Date / Docket | Month Covered | Fees | Expenses |
|---|---|---|---|
| December 5, 2017 (Docket No. 362) "First Monthly Fee Application" | October 31, 2017 – November 30, 2017 | $1,575,370.00[1] | $10,310.08[2] |
| January 10, 2018 (Docket No. 647) "Second Monthly Fee Application" | December 1, 2017 – December 31, 2017 | $1,692,827.00 | $25,239.68 |
| February 13, 2018 (Docket No. 957) "Third Monthly Fee Application" | January 1, 2018 – January 31, 2018 | $1,798,473.00 | $22,655.74 |
| March 8, 2018 (Docket No. 1109) "Fourth Monthly Fee Application" | February 1, 2018 – February 28, 2018 | $1,534,792.00 | $25,750.04 |

---

[1]    Subsequent to filing the First Monthly Fee Application, at the request of the Office of the United States Trustee (the "U.S. Trustee"), Jones Day agreed to defer seeking approval of $16,765.00 if fees included in the First Monthly Fee Application until the filing of this interim application to allow Jones Day to further review such fees and provide the U.S. Trustee with additional information to conduct diligence with respect thereto. Prior to filing this interim application, Jones Day agreed to a voluntary reduction of $8,715.00 in these fees and provided the U.S. Trustee with additional detail concerning the remaining $8,050.00 in deferred fees, which is reflected in Exhibit A in bold.

[2]    Subsequent to filing the First Monthly Fee Application, Jones Day agreed to the voluntary reduction of $40.00 in expenses for reimbursement sought in the First Monthly Fee Application at the request of the U.S. Trustee. In addition, Jones Day agreed to defer seeking approval of $3,666.19 in expenses for reimbursement until the filing of this interim application to allow Jones Day to further review such expenses and provide the U.S. Trustee with additional information to conduct diligence with respect thereto. Prior to filing this interim application, Jones Day agreed to an additional voluntary reduction of $1,213.00 and provided the U.S. Trustee with additional detail concerning the remaining deferred expenses. This additional detail is shown in bold in Exhibit A hereto.

| Name | Title/Group/Bar Year | Billing Rate 2017 | Billing Rate 2018 | Hours Billed | Total Fees |
|------|----------------------|-------------------|-------------------|--------------|------------|
| | | | | First Interim | |
| *PARTNERS* | | | | | |
| B P Barragate** | Partner/Banking & Finance/1996 | $1,050.00 | | 0.40 | $420.00 |
| C E Black | Partner/Business Restructuring & Reorganization/1998 | $950.00 | $1,000.00 | 613.00 | $592,210.00 |
| V S Chang | Partner/Employee Benefits & Executive Compensation/2003 | $850.00 | $925.00 | 129.50 | $112,370.00 |
| M J Cohen | Partner/Business Restructuring & Reorganization/2002 | $950.00 | $1,025.00 | 674.50 | $661,992.50 |
| R H Da Silva Ashley | Partner/Banking & Finance/2006 | $875.00 | $925.00 | 340.30 | $302,497.50 |
| M F Eaton** | Partner/Employee Benefits & Executive Compensation/2006 | $850.00 | | 4.80 | $4,080.00 |
| P L Eschbach-Hall | Partner/Employee Benefits & Executive Compensation/1999 | $800.00 | $875.00 | 17.60 | $14,665.00 |
| R S Faxon | Partner/Business & Tort Litigation/1992 | $875.00 | $925.00 | 173.40 | $151,790.00 |
| L L Fraedrich** | Partner/Government Regulation/1995 | $975.00 | $1,025.00 | 2.00 | $1,950.00 |
| S J Greenberg | Partner/Business Restructuring & Reorganization/2002 | $1,025.00 | $1,200.00 | 172.00 | $178,400.00 |
| T A Hamilton | Partner/Government Regulation/1993 | $825.00 | $875.00 | 26.20 | $22,480.00 |
| W A Herzberger | Partner/Real Estate/1987 | $825.00 | $875.00 | 10.40 | $8,910.00 |
| K P Holewinski | Partner/Government Regulation/1987 | $950.00 | $1,000.00 | 55.40 | $52,630.00 |
| M A Huang** | Partner/Mergers & Acquisitions/2005 | $800.00 | $900.00 | 3.00 | $2,400.00 |
| J A Kane** | Partner/Mergers & Acquisitions/1991 | $1,000.00 | | 1.00 | $1,000.00 |
| E Kaplan** | Partner/Employee Benefits & Executive Compensation/2003 | $800.00 | | 0.40 | $320.00 |
| J Kastin | Partner/Labor & Employment/2002 | $925.00 | $975.00 | 44.70 | $42,262.50 |
| M H Knight** | Partner/Antitrust & Competition Law/1991 | | $1,025.00 | 4.30 | $4,407.50 |
| C E Laduzinski | Partner/Tax/2001 | $1,000.00 | $1,050.00 | 22.40 | $22,400.00 |
| H Lennox** | Partner/Business Restructuring & Reorganization/1992 | $1,100.00 | | 0.30 | $330.00 |
| H A Liou | Partner/Intellectual Property/2008 | | $800.00 | 224.40 | $179,520.00 |
| D J Merrett | Partner/Business Restructuring & Reorganziation/2007 | $700.00 | $750.00 | 544.00 | $389,995.00 |
| E Miller** | Partner/Employee Benefits & Executive Compensation/1981 | $1,075.00 | | 3.60 | $3,870.00 |
| E A Oberle-Robertson | Partner/Mergers & Acquisitions/1988 | $1,075.00 | $1,100.00 | 5.80 | $6,235.00 |
| S J Parrinello** | Partner/Tax/2007 | $900.00 | $950.00 | 1.00 | $900.00 |
| R A Profusek | Partner/Mergers & Acquisitions/1975 | $1,300.00 | $1,400.00 | 24.70 | $32,540.00 |
| D Rimkunas | Partner/Tax/2004 | $925.00 | $975.00 | 30.20 | $29,245.00 |
| A Riva | Partner/Labor & Employment/1984 | $900.00 | $1,050.00 | 12.00 | $10,800.00 |
| J Sottile, IV | Partner/Business & Tort Litigation/1985 | $1,000.00 | $1,050.00 | 63.90 | $65,010.00 |
| F Squerzoni | Partner/Banking & Finance/1998 | $825.00 | $850.00 | 66.00 | $55,275.00 |
| J D Symons | Partner/Mergers & Acquisitions/1997 | $1,050.00 | $1,100.00 | 86.80 | $93,800.00 |
| R C Thomas | Partner/Antitrust & Competition Law/2000 | $925.00 | $975.00 | 129.80 | $123,640.00 |
| | **Total Partners** | | | **3,487.80** | **$3,168,345.00** |
| *OF COUNSEL* | | | | | |
| L Allevi** | Of Counsel/Labor & Employment/2006 | $650.00 | | 3.00 | $1,950.00 |
| A Cantarelli | Of Counsel/Banking & Finance/2006 | $650.00 | $675.00 | 17.50 | $11,375.00 |
| F F Cao** | Of Counsel/Tax/1990 | $950.00 | | 1.80 | $1,710.00 |
| L M Cirando** | Of Counsel/Insurance Recovery/1993 | $900.00 | | 3.40 | $3,060.00 |
| G V Mezzapesa | Of Counsel/Antitrust & Competition Law/2001 | $650.00 | $675.00 | 31.20 | $20,280.00 |
| C Sheng | Of Counsel/Mergers & Acquisitions/2002 | $900.00 | $925.00 | 12.90 | $11,690.00 |
| B Witherall** | Of Counsel/Private Equity/2008 | $725.00 | | 3.10 | $2,247.50 |
| | **Total Of Counsel** | | | **72.90** | **$52,312.50** |

| Name | Title/Group/Bar Year | Billing Rate | Billing Rate | Hours Billed | Total Fees |
|------|----------------------|-------------|-------------|-------------|-----------|
| **COUNSEL** | | | | | |
| M Wach** | Counsel/Real Estate/1994 | $675.00 | $700.00 | 4.80 | $3,240.00 |
| | **Total Counsel** | | | **4.80** | **$3,240.00** |
| **ASSOCIATE** | | | | | |
| A M Bailes | Associate/New Lawyers Group/2017 | $375.00 | $375.00 | 80.20 | $30,075.00 |
| D Barav-Johnson | Associate/Business Restructuring & Reorganization/2014 | $450.00 | $500.00 | 20.90 | $9,750.00 |
| C A Bell | Associate/Business & Tort Litigation/2010 | | $550.00 | 6.70 | $3,685.00 |
| A M Bomberger | Associate/Mergers & Acquisitions/2009 | $550.00 | $800.00 | 241.80 | $165,390.00 |
| B J Broadwater | Associate/Business & Tort Litigation/2008 | $800.00 | $850.00 | 62.90 | $50,750.00 |
| K M Brockmeyer | Associate/Antitrust & Competition Law/2011 | $650.00 | $725.00 | 107.80 | $73,842.50 |
| J R Browning, Jr. | Associate/Business & Tort Litigation/2013 | $425.00 | | 5.70 | $2,422.50 |
| L M Buonome | Associate/Business Restructuring & Reorganization/2009 | $750.00 | | 88.40 | $66,300.00 |
| S L Corr-Irvine | Associate/Business Restructuring & Reorganization/2009 | $775.00 | $850.00 | 713.10 | $568,672.50 |
| C S Dodrill** | Associate/Business & Tort Litigation/2008 | $475.00 | | 3.10 | $1,472.50 |
| R A Doringo** | Associate/Business & Tort Litigation/2013 | $425.00 | | 1.60 | $680.00 |
| D A Einik | Associate/Government Regulation/2010 | $700.00 | | 13.20 | $9,240.00 |
| J V Feldman | Associate/Mergers & Acquisitions/2016 | $450.00 | $500.00 | 202.40 | $95,670.00 |
| F Ferrari | Associate/Mergers & Acquisitions/2016 | $425.00 | $425.00 | 12.90 | $5,482.50 |
| G E Feuer | Associate/Mergers & Acquisitions/2016 | $325.00 | $400.00 | 72.10 | $26,200.00 |
| L B Gates | Associate/Business & Tort Litigation/1988 | $700.00 | $725.00 | 289.30 | $204,500.00 |
| G L Ghaul | Associate/Business Restructuring & Reorganization/2013 | $575.00 | $675.00 | 392.00 | $236,500.00 |
| V T Harris | Associate/Intellectual Property/2016 | $400.00 | $450.00 | 68.60 | $29,045.00 |
| J M Hayes | Associate/Energy/2012 | $450.00 | $500.00 | 29.20 | $14,380.00 |
| D P Hido | Associate/Government Regulation/2014 | $400.00 | | 37.00 | $14,800.00 |
| B S Jacobs | Associate/Tax/2012 | $575.00 | $675.00 | 66.70 | $40,642.50 |
| D Karamanos | Associate/Mergers & Acquisitions/2010 | $725.00 | | 8.90 | $6,452.50 |
| I M Karoll** | Associate/Business & Tort Litigation/2009 | $525.00 | | 3.40 | $1,785.00 |
| Y G Katz** | Associate/Labor & Employment/2014 | $400.00 | | 4.60 | $1,840.00 |
| M P Koslen | Associate/Business & Tort Litigation/2016 | $350.00 | $400.00 | 177.80 | $66,305.00 |
| R T Latta | Associate/Intellectual Property/2011 | $650.00 | $700.00 | 66.00 | $45,765.00 |
| H A Liou | Associate/Intellectual Property/2008 | $700.00 | | 292.70 | $204,890.00 |
| R Q Liu | Associate/Labor & Employment/2015 | $450.00 | $475.00 | 18.20 | $8,342.50 |
| J W Magruder | Associate/Antitrust & Competition Law/2014 | | $550.00 | 51.90 | $28,545.00 |
| K N Mancini | Associate/Banking & Finance/2016 | $450.00 | $500.00 | 254.10 | $117,885.00 |
| C E Mendelsohn** | Associate/Business & Tort Litigation/2009 | $525.00 | | 4.00 | $2,100.00 |
| S J Miller | Associate/Employee Benefits & Executive Compensation/2015 | $450.00 | $525.00 | 36.30 | $17,895.00 |
| N J Morin | Associate/Business Restructuring & Reorganization/2013 | $575.00 | $650.00 | 526.30 | $313,812.50 |
| N P Nasrallah | Associate/New Lawyers Group/2016 | $375.00 | | 16.60 | $6,225.00 |
| S A Patel | Associate/Banking & Finance/2008 | $800.00 | | 28.50 | $22,800.00 |
| S L Rafferty | Associate/New Lawyers Group/2017 | | $475.00 | 18.50 | $8,787.50 |
| L L Refinetti-Timmons | Associate/Intellectual Property/2014 | | $525.00 | 5.20 | $2,730.00 |
| T Reynolds** | Associate/Business Restructuring & Reorganization/2012 | $450.00 | | 2.90 | $1,305.00 |
| P Saba | Associate/Business Restructuring & Reorganization/2015 | $475.00 | $550.00 | 451.90 | $220,675.00 |
| W J Schumacher | Associate/Business Restructuring & Reorganization/2015 | $475.00 | | 20.40 | $9,690.00 |
| P M Seamens | Associate/New Lawyers Group/2017 | | $425.00 | 19.40 | $8,245.00 |
| Z Shafruddin | Associate/Global Disputes/2013 | | $500.00 | 5.80 | $2,900.00 |
| B W Stuart | Associate/Business & Tort Litigation/2013 | $425.00 | $475.00 | 132.70 | $59,092.50 |
| K N Tobitsch** | Associate/Cybersecurity Privacy & Data Protection/2012 | $625.00 | | 2.80 | $1,750.00 |
| M M Toohey | Associate/Business & Tort Litigation/2016 | $350.00 | | 12.10 | $4,235.00 |
| J H Walsh** | Associate/Business & Tort Litigation/2016 | $350.00 | | 0.80 | $280.00 |
| O Vastola | Associate/Mergers & Acquisitions/2013 | | $475.00 | 41.00 | $19,475.00 |
| C Wittmann-Todd | Associate/Business Restructuring & Reorganization/2015 | $475.00 | | 47.40 | $22,515.00 |
| K Xian | Associate/Antitrust & Competition Law/2014 | | $575.00 | 18.90 | $10,867.50 |
| O S Zeltner | Associate/Business Restructuring & Reorganization/2012 | $500.00 | $550.00 | 213.20 | $111,380.00 |
| | **Total Associate** | | | **4,997.90** | **$2,978,070.00** |
| **STAFF ATTORNEY** | | | | | |
| L C Fischer | Staff Attorney/Business Restructuring & Reorganization/1996 | $475.00 | | 7.00 | $3,325.00 |
| | **Total Staff Attorney** | | | **7.00** | **$3,325.00** |

| Name | Title/Group/Bar Year | Billing Rate | Billing Rate | Hours Billed | Total Fees |
|------|---------------------|-------------|-------------|-------------|-----------|
| **LAW CLERK** | | | | | |
| U Ali | Law Clerk/New Lawyers Group/2017 | $425.00 | | 5.40 | $2,295.00 |
| M B De Vita | Law Clerk/New Lawyers Group/-- | $475.00 | | 7.50 | $3,562.50 |
| A M Hemendinger | Law Clerk/New Lawyers Group/-- | $475.00 | $475.00 | 144.10 | $68,447.50 |
| S H Jones | Law Clerk/New Lawyers Group/-- | | $475.00 | 5.20 | $2,470.00 |
| S W Magnusson** | Law Clerk/New Lawyers Group/-- | $475.00 | | 3.40 | $1,615.00 |
| S A Nelson | Law Clerk/New Lawyers Group/2017 | $475.00 | $475.00 | 27.90 | $13,252.50 |
| F Siddiqui | Law Clerk/New Lawyers Group/2017 | $475.00 | $475.00 | 86.10 | $40,897.50 |
| A K Tso | Law Clerk/New Lawyers Group/2017 | $450.00 | | 5.20 | $2,340.00 |
| **Total Law Clerk** | | | | **284.80** | **$134,880.00** |
| **PARALEGAL** | | | | | |
| M T Barrios | Paralegal/Capital Markets/-- | $250.00 | $275.00 | 50.30 | $12,910.00 |
| S Bryan** | Paralegal/Banking & Finance/-- | $350.00 | $375.00 | 0.50 | $175.00 |
| P M Kral | Paralegal/Business & Tort Litigation/-- | $275.00 | $300.00 | 11.90 | $3,272.50 |
| M M Melvin | Paralegal/Business Restructuring & Reorganization/-- | $325.00 | $350.00 | 49.80 | $16,297.50 |
| **Total Paralegal** | | | | **112.50** | **$32,655.00** |
| **STAFF / LEGAL SUPPORT** | | | | | |
| S A Kaiser | Legal Support/Practice Support Project Manager/-- | $250.00 | $275.00 | 129.20 | $33,970.00 |
| M A Gilligan** | Staff/IP Research Manager/-- | $250.00 | $250.00 | 0.30 | $75.00 |
| **Total Staff / Legal Support** | | | | **129.50** | **$34,045.00** |
| | | | **Total Hours/Fees:** | **9,097.20** | **$6,406,872.50** |
| | | | **Less: 50% Non-Working Travel** | 0.00 | (**$73,535.00**) |
| | | | **Less: UST Holdback** | 0.00 | (**$8,715.00**) |
| | | | **\*\*Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts** | (64.30) | (44,962.50) |
| | | | **Grand Total:** | **9,032.90** | **$6,279,660.00** |

## SUMMARY OF COMPENSATION REQUESTED BY CATEGORY FOR THE INTERIM COMPENSATION PERIOD
### October 31, 2017 - January 31, 2018

| Matter | First Interim | |
|---|---|---|
| | Hours | Fees |
| Case Administration | 245.10 | $175,232.50 |
| Creditor Inquiries | 11.20 | $8,562.50 |
| Plan of Reorganization/Disclosure Statement | 6.60 | $3,892.50 |
| Use, Sale, Lease of Assets | 3,233.70 | $2,364,965.00 |
| Cash Collateral/DIP Financing/Other Financing | 1,350.70 | $956,005.00 |
| Claims Administration | 498.30 | $366,092.50 |
| Court Hearings | 213.90 | $170,337.50 |
| Professional Retention/Fee Issues | 176.60 | $121,447.50 |
| Fee Application Preparation | 119.50 | $62,687.50 |
| Nonworking Travel | 181.20 | $147,070.00 |
| General Corporate/Real Estate | 413.00 | $307,050.00 |
| Schedules/SOFA/U.S. Trustee Reports | 167.40 | $117,050.00 |
| Employee Matters | 373.70 | $285,480.00 |
| Tax Advice | 59.40 | $46,932.50 |
| Litigation/Adversary Proceedings | 1,376.80 | $818,127.50 |
| Automatic Stay/Adequate Protection | 203.30 | $123,552.50 |
| Executory Contracts/Unexpired Leases | 297.70 | $184,490.00 |
| Meetings | 169.10 | $147,897.50 |
| Writedown | 346.40 | $192,943.75 |
| **SUBTOTAL:** | **9,443.60** | **$6,599,816.25** |
| Less: 50% Non-Working Travel | 0.00 | ($73,535.00) |
| Less: Voluntary Write-Downs | (346.40) | ($192,943.75) |
| Less: UST Holdback | 0.00 | ($8,715.00) |
| Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts | (64.30) | ($44,962.50) |
| **TOTAL:** | **9,032.90** | **$6,279,660.00** |

**SUMMARY OF EXPENSES REQUESTED BY CATEGORY FOR THE
INTERIM COMPENSATION PERIOD**
October 31, 2017 - January 31, 2018

| Category | Charge |
|---|---:|
| Certified Document Charges | $6.41 |
| Conference Charges | $2,842.46 |
| Courier Services | $29.72 |
| Court Costs | $249.00 |
| Court Reporter Fees | $6,410.04 |
| CT Corporation Fees | $2,622.04 |
| Document Reproduction Charges | $2,416.70 |
| Document Storage/Retrieval | $84.49 |
| Federal Express Charges | $17.87 |
| Filing Fees and Related | $3,223.48 |
| Hosting Charges | $377.34 |
| Miscellaneous Expenses | $91.61 |
| Postage Charges | $9.10 |
| Printing Charges | $1,408.35 |
| Research Fees | $353.13 |
| Travel - Air Fare | $14,736.85 |
| Travel - Food and Beverage Expenses | $2,460.60 |
| Travel - Hotel Charges | $9,278.95 |
| Travel - Other Costs | $758.96 |
| Travel - Taxi Charges | $4,933.55 |
| Travel - Train Fare | $5,879.00 |
| United Parcel Service Charges | $15.85 |
| Less: UST Reduction | ($40.00) |
| Less: UST Holdback | ($1,213.00) |
| **Total** | **$56,952.50** |

## BLENDED RATE OF PROFESSIONALS – TOTAL

| Category of Timekeeper | Billed Comparable Non-Bankruptcy Invoices[1] Issued in 2017[2] | Billed This Compensation Period[3] |
|---|---|---|
| Partner | $832.15 | $908.41 |
| Of Counsel | $745.93 | $717.59 |
| Counsel | $677.47 | $675.00 |
| Associate | $455.13 | $595.86 |
| Staff Attorney | $367.94 | $475.00 |
| Law Clerk | $388.43 | $473.60 |
| Paralegal | $248.35 | $290.27 |
| Staff/Legal Support | $275.01 | $262.90 |
| **Total:** | **$582.23** | **$704.27** |

---

[1] Pursuant to ¶ C.3.a.i.b of the Guidelines, "Comparable Non-Bankruptcy Invoices Issued in 2017" provides the blended hourly rate for the aggregate of "[a]ll timekeepers in each of [Jones Day's] domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the [Compensation Period]." During the Compensation Period, the Jones Day offices billing at least 10% of the hours to the bankruptcy case were the New York and Cleveland offices.

[2] Jones Day calculated the average hourly rate for Comparable Non-Bankruptcy Invoices Issued in 2017 by dividing the total dollar amount billed by each class of timekeepers during the applicable period by the total amount of hours billed by such timekeepers during the Compensation Period (excluding all data from timekeepers practicing primarily in a bankruptcy group or section).

[3] Jones Day calculated the average hourly rate for timekeepers who billed the Debtors by dividing the total dollar amount billed by each class of timekeepers by the total number of hours billed by such timekeepers during the Compensation Period. The blended hourly rates do not take into account adjustments made by Jones Day, including: (i) the 50% write-off of non-working travel; (ii) voluntary reductions requested by the U.S. Trustee in connection with the First Monthly Fee Application; and (iii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Interim Fee Application.

# INFORMATION REGARDING PRIOR INTERIM FEE APPLICATIONS

## SUMMARY OF PRIOR INTERIM FEE APPLICATIONS

| Date Filed & Docket No. | Period Covered | Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Date(s) of Orders on Interim Compensation or Reimbursement of Expenses |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

## CUMULATIVE FEE AND EXPENSE TOTALS SINCE CASE INCEPTION

| Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Fees and Expenses Disallowed or Withdrawn | |
|---|---|---|---|---|---|---|---|---|---|
| Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: April 5, 2018 at 4:00 p.m. (ET)**<br>**Hearing Date: April 25, 2018 at 11:00 a.m. (ET)** |

## FIRST INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM OCTOBER 31, 2017 THROUGH JANUARY 31, 2018

Jones Day, counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), makes its first interim fee application (this "Interim Fee Application") for allowance of compensation of $6,279,660.00 and reimbursement of expenses of $56,952.50 for the period from October 31, 2017 through January 31, 2018 (the "Compensation Period"), in accordance with the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket No. 308) (the "Interim Compensation Order"). In support of this Interim Fee Application, Jones Day respectfully represents as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.  On October 24, 2017 (the "Polymers Petition Date"), Debtor M & G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146).  Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

## Jones Day's Retention

4.  On November 10, 2017, the Debtors filed the *Application for an Order Authorizing Them to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc as of the Petition Date* (Docket No. 138) (the "Retention Application"), by which the Debtors sought to retain and employ Jones Day as their counsel in these Cases.  On November 30, 2017, this Court entered the *Order Authorizing the Debtors to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc*

*as of the Petition Date* (Docket No. 300) (the "<u>Retention Order</u>"), authorizing the retention of Jones Day as the Debtors' counsel.

## **The Interim Compensation Order**

5.  On November 10, 2017, the Debtors filed the *Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 141) (the "<u>Interim Compensation Procedures Motion</u>"), which sought to establish procedures for the compensation and reimbursement of professionals whose retentions are approved by the Court pursuant to sections 327 or 1103 of the Bankruptcy Code on a monthly basis and on terms comparable to the procedures established in other large chapter 11 cases.  On December 1, 2017, this Court entered the Interim Compensation Order, which approved the relief sought in the Interim Compensation Procedures Motion and authorized the implementation of the interim compensation procedures contemplated therein.

6.  In relevant part, the Interim Compensation Order provides that "commencing with the period ending January 31, 2018, at each three-month intervals . . .each of the [p]rofessionals will file with the Court . . . an application pursuant to section 331 of the Bankruptcy Code for interim Court approval and allowance of the compensation and reimbursement of expenses sought by the [p]rofessional" in its monthly fee applications.  Interim Comp. Order., ¶ 2(f).  The Interim Compensation Order further provides that interim fee applications "must be filed on or before the 45th day after the end of the [i]nterim [f]ee [p]eriod . . . for which the application seeks allowance of fees and reimbursement of expenses" and that interim fee applications "must identify the [m]onthly [f]ee [a]pplications that are the subject of the request and any information requested by the Court and the Local Rules."  *Id.*

**The Monthly Fee Applications**

7. On December 5, 2017, Jones Day filed its First Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from October 31, 2017 through November 30, 2017 (Docket No. 362) (the "First Monthly Fee Application"). A reflected in the *Certification of No Objection (No Order Required) Regarding First Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from October 31, 2017 through November 30, 2017* (Docket No. 558), subsequent to filing the First Monthly Fee Application, Jones Day agreed to the voluntary reduction of $40.00 in expenses for reimbursement sought in the First Monthly Fee Application, at the request of the Office of the United States Trustee (the "U.S. Trustee"). In addition, in connection with the First Monthly Fee Application, Jones Day agreed to defer seeking approval of (a) $16,765.00 in fees for services rendered and (b) $3,666.19 in expenses for reimbursement until the filing of this Interim Fee Application (the "Deferred Fees and Expenses") to permit Jones Day to further review the Deferred Fees and Expenses and provide the U.S. Trustee with additional information in order to conduct further diligence with respect thereto. After further review, Jones Day has agreed to further voluntary reductions of the Deferred Fees and Expenses of (a) $8,715.00 in fees and (b) $1,213.00 in expenses.[2]

8. On January 10, 2018, Jones Day filed its *Second Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from December 1, 2017 through December 31, 2017* (Docket No. 647) (the "Second Monthly Fee Application"). No objections were received with respect to the Second Monthly Fee Application. On February 13, 2018, Jones Day filed its *Third Monthly Application for*

---

[2] Prior to filing this Interim Fee Application, Jones Day provided the U.S. Trustee with supplemental documentation concerning the remaining Deferred Fees in expenses, representing (a) $8,050.00 in fees and (b) $2,453.19 in expenses. This additional information is marked in bold in Exhibit A hereto.

*Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from January 1, 2018 through January 31, 2018* (Docket No. 957) (the "<u>Third Monthly Fee Application</u>" and together with the First Monthly Fee Application and the Second Monthly Fee Application, the "<u>Monthly Fee Applications</u>"). No objections were received with respect to the Third Monthly Fee Application.[3]

### JONES DAY'S APPLICATION FOR <u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>

#### <u>Compensation Paid and Its Sources</u>

9.      Jones Day has received no payment for services rendered in any capacity in connection with the matters covered in this Interim Fee Application, nor has it received any promises for payment for matters covered by this Interim Fee Application, from any source other than from the Debtors. There is no agreement or understanding between Jones Day and any other person other than partners of Jones Day for the sharing of compensation to be received from the services rendered in these Cases.

10.      As of the Petition Date, Jones Day held $56,294.31 as the balance of its prepetition Retainer (as defined in the Retention Application). By this Interim Fee Application, Jones Day respectfully requests that the Court authorize Jones Day to apply the balance of the Retainer in the amount of $56,294.31 to the fees sought for approval in this Interim Fee Application.

---

[3]      On March 8, 2018, Jones Day filed its *Fourth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from February 1, 2018 through February 28, 2018* (Docket No. 1109) (the "<u>Fourth Monthly Fee Application</u>"). The Fourth Monthly Fee Application relates to fees and expenses incurred outside the Compensation Period and, therefore, Jones Day does not seek allowance of compensation and reimbursement of expenses with respect to the Fourth Monthly Fee Application in this Interim Fee Application.

## Itemization of Services
## Rendered and Disbursements Incurred

11.     Attached hereto as <u>Exhibit A</u> are the time records of Jones Day, which provide a daily summary of the time spent by each Jones Day attorney[4] and paraprofessional[5] during the Compensation Period by project category.  The blended hourly billing rate of attorneys for all services provided during the Compensation Period is $715.98.[6]  The blended hourly billing rate of paraprofessionals for all services provided during the Compensation Period is $275.62.[7]

12.     Attached hereto as <u>Exhibit B</u> is a detailed itemization of expenses for which Jones Day seeks reimbursement.  Jones Day maintains the following policies with respect to Expenses:

(a)     No amortization of the cost of any investment, equipment or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased from or contracted with a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)     Photocopying by Jones Day was charged at 10 cents per page.  To the extent practicable, Jones Day utilized less expensive outside copying services.

---

[4]     Attorneys include partners, of counsel, counsel, associates, staff attorneys, and law clerks, as applicable, rendering services to the Debtors during the Compensation Period.

[5]     Paraprofessionals include paralegals, legal support personnel, project assistants and staff members, as applicable, rendering services to the Debtors during the Compensation Period.

[6]     The blended hourly billing rate of $715.98 for attorneys is derived by dividing the total fees for attorneys of $6,340,172.50 by the total hours of 8,855.20 for those same attorneys, not taking into account (i) the 50% write-off of non-working travel; (ii) voluntary reductions requested by the U.S. Trustee in connection with the First Monthly Fee Application; and (iii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Interim Fee Application.

[7]     The blended hourly billing rate of $275.62 for paraprofessionals is derived by dividing the total fees for paraprofessionals of $66,700.00 by the total hours of 242.00 for those same paraprofessionals, not taking into account (i) the 50% write-off of non-working travel; (ii) voluntary reductions requested by the U.S. Trustee in connection with the First Monthly Fee Application; and (iii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Interim Fee Application.

(c)     Meals charged to the Debtors either were associated with (i) out-of-town travel; (ii) meetings at Jones Day with the Debtors and other professionals; or (iii) attorneys working late on matters concerning the Debtors.

(d)     Charges for airline and train travel include the cost of each airline or train ticket used in connection with the provision of services to the Debtors.

(e)     Jones Day does not charge clients for smartphone charges, remote email access charges and related costs.

(f)     The time pressures associated with the services rendered by Jones Day frequently require Jones Day's professionals and paraprofessionals to devote substantial amounts of time during the evenings and on weekends. To the extent that Jones Day has charged the Debtors for secretarial and other staff overtime expenses, such expenses were directly associated with such after-hours work and were necessary given the circumstances of these Cases. Jones Day does not consider these to be part of its ongoing overhead expenses because they are special incremental expenses arising from the specific services being provided to the Debtors.

13.     Jones Day believes that the time entries set forth in Exhibit A attached hereto are in compliance with the requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### Total Fees and Expenses
### Sought for the Compensation Period

14.     By this Application, Jones Day requests that the Court approve the allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by Jones Day during the Compensation Period. The total fees and reimbursement of expense are summarized in the following chart:

| | |
|---|---|
| Total Fees | $6,279,660.00 |
| Total Disbursements | $56,952.50 |
| **TOTAL** | **$6,336,612.50** |

## **Compensation by Project Category**

15.     The following is a summary of activities performed by Jones Day professionals and paraprofessionals during the Compensation Period, organized by billing category.[8]

***Case Administration* —245.10 hours — $175,232.50[9]**

16.     During the Compensation Period, Jones Day professionals provided the following case administrative activities, among others:

(a)     Finalizing certain "first day" pleadings and proposed orders approving such pleadings to assist in completing a smooth transition into chapter 11;

(b)     communicating electronically and telephonically, both internally and with members of the Debtors' advisors, to (i) coordinate closely all activities in these Cases, (ii) provide updates regarding the progress made in these Cases and (iii) plan for future activities; and

(c)     maintaining case management tools for the effective and efficient administration of these Cases, including (i) a detailed work in process report that tracks the progress of all pleadings necessary to, or related to, the administration of these Cases and (ii) a calendar to monitor filing and related litigation deadlines.

***Creditor Inquiries* — 11.20 hours — $8,562.50**

17.     During the Compensation Period, Jones Day professionals devoted time to responding to inquiries from various creditor constituencies, including responding to phone calls and correspondence inquiring as to (a) the overall status of these Cases, (b) the time and status of the sale process (described below), (c) the ability to be considered a critical vendor and (d) the effect of the chapter 11 filings on certain employee benefits.

---

[8]     The summary set forth below is qualified in its entirety by reference to the time and services detail attached hereto as Exhibit A.

[9]     The hours and fee totals listed by project category in this Interim Fee Application do not take into account adjustments made by Jones Day, including:  (i) voluntary reductions requested by the U.S. Trustee in connection with the First Monthly Fee Application; and (ii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Interim Fee Application.

***Plan of Reorganization/Disclosure Statement*** — 6.60 hours — $3,892.50

18.     During the Compensation Period, Jones Day professionals (a) researched and analyzed potential wind-down strategies for exiting these Cases and (b) began drafting a motion to extend plan exclusivity, which was filed with this Court on February 21, 2018 (Docket No. 1008).

***Use, Sale, Lease of Assets*** — 3,233.70 hours — $2,364,965.00

19.     From the outset of these Cases, Jones Day professionals have devoted substantial time and effort towards running multiple sales processes in order to accomplish the Debtors' stated goal of selling substantially all of their assets.  These efforts included, among other things:

(a)     finalizing and filing a motion to establish procedures for sale of the substantially all of the Debtors' assets (Docket No. 173) (the "Bidding Procedures Motion"), which was approved by order of the Court on December 14, 2017 (Docket No. 490) (the "Bidding Procedures Order"), and preparing and negotiating related documents, including form proposed sale orders, purchase agreements and sale notices;

(b)     with respect to the sale of the Debtors' manufacturing facility in Apple Grove, West Virginia (the "Apple Grove Plant" and the sale of such plant, the "Apple Grove Sale"):

(i)     negotiating a stalking horse purchase agreement, and filing a fully-consensual motion to approve such arrangement (Docket No. 665) (the "Stalking Horse Motion"), which motion was subsequently granted by order of the Court (Docket No. 720);

(ii)     coordinating with the Debtors, their financial advisors and their investment bankers to address potential bidder inquiries and other issues attendant to the Apple Grove Sale;

(iii)     analyzing various bids for the purchase of certain of the Apple Grove Assets, including reviewing, drafting and negotiating asset purchase agreements with multiple potential purchasers of the Apple Grove Plant and related intellectual property assets (the "Apple Grove Assets");

(iv) preparing for and conducting the auction for the Apple Grove Assets held at Jones Day's offices on January 30, 2018 (the "Auction"), which Auction resulted in the Debtors designating a $33.5 million bid for certain of the Apple Grove Assets as the winning bidder (a bid that was more than three times the stalking horse bid and which conferred substantial benefits for M&G Polymers' estate, including relieving the estate of potential environmental liabilities and preserving certain employee jobs);

(v) preparing for the hearing on the approval of the Apple Grove Sale, which was ultimately approved by order of the Court shortly after the Compensation Period on February 1, 2018 (Docket No. 864);

(c) with respect to the sale of the Debtors' partially constructed PTA/PET plant in Corpus Christi, Texas (the "Corpus Christi Plant" and the sale of such plant, the "Corpus Christi Sale"):

(i) advising the Debtors, their financial advisors and their investment bankers with respect to the marketing of the Corpus Christi Plant;

(ii) coordinating with the Debtors, their financial advisors and their investment bankers to (1) address potential bidder inquiries, (2) formulate responses to due diligence requests and (3) address inquiries from regulatory agencies, including providing such regulatory agencies with documents and other information concerning the potential Corpus Christi Sale;

(iii) beginning the process of analyzing various non-binding bids for the purchase of the Corpus Christi Plant and related assets, including reviewing, drafting and negotiating asset purchase agreements submitted by certain parties in interest; and

(d) researching and preparing numerous analyses concerning the sale of the Debtors' intellectual property assets and drafting and negotiating licenses, services agreements and other documentation related to the transfer of such assets.

20. Finally, during the Compensation Period, Jones Day professionals advised the Debtors with respect to the sale of Debtor Chemtex International Inc.'s ("Chemtex") interests in certain of its subsidiaries in India and China. These efforts culminated in Jones Day professionals drafting and negotiating a stock purchase agreement with respect to such sale, and

shortly after the Compensation Period, drafting a motion seeking approval of such sale (Docket No. 1018).

***Cash Collateral/DIP Financing/Other Financing*** — **1,350.70 hours** — **$956,005.00**

21.     During the Compensation Period, Jones Day professionals devoted significant time and effort to securing the postpetition financing and use of cash collateral necessary to permit the Debtors to fund the sale processes described herein, maintain certain limited operations during the pendency of the sale processes and administer these Cases.  To that end, Jones Day professionals obtained interim Court approval on November 2, 2017 of (a) a $100 million debtor in possession financing facility (the "<u>DIP Facility</u>") (Docket No. 62) (the "<u>Interim DIP Order</u>"), which provided certain Debtors with funding to administer these Cases and fund certain of the Debtors' day-to-day operational expenses and (b) the consensual use of cash collateral pledged to Comerica Bank (Docket No. 91) (the "<u>Interim Cash Collateral Order</u>") for the purpose of funding certain of M&G Polymers' expenses (the "<u>Cash Collateral Financing</u>").  Following entry of the Interim DIP Order and the Interim Cash Collateral Order, Jones Day advised the Debtors with respect to complying with the budgets approved in connection with the Interim Cash Collateral Order and the Interim DIP Order.

22.     Upon the appointment of the Committee, Jones Day professionals engaged in numerous discussions and meetings with Committee professionals concerning the DIP Facility and the Cash Collateral Financing.  When the Committee filed an objection (Docket No. 399) (the "<u>Committee Financing Objection</u>") to final approval of the DIP Facility and the Cash Collateral Order (Docket No. 398), Jones Day professionals spent a significant amount of timing researching, drafting a reply to (Docket No. 441), and preparing for a hearing on, the Committee Financing Objection, and authorization to enter into the DIP Facility and the Cash Collateral Financing on a final basis.

23.     Further, through and during the scheduled final hearing on the DIP Facility and the Cash Collateral Financing (such hearing, the "Financing Hearing"), Jones Day professionals negotiated with advisors to the Committee, Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa ("Inbursa") and the DIP Lender (as defined in the Interim DIP Order), Comerica, an ad hoc group of construction lienholders (the "Construction Lienholder Group") and other creditor constituencies regarding resolution of such parties' objections to the DIP Facility and the Cash Collateral Financing.  Jones Day's efforts resulted in the resolution of the Committee's objections to the DIP Facility and the Cash Collateral Financing.

24.     However, because certain objections asserted by the Construction Lienholder Group to the DIP Facility remained unresolved as of the Financing Hearing, Jones Day professionals prosecuted approval of the DIP Facility at the Financing Hearing. On December 13, 2017, this Court entered a final order authorizing the Debtors to enter into the DIP Facility (Docket No. 479) (the "Final DIP Order") and on December 14, 2017, this Court entered a final order authorizing the Cash Collateral Financing arrangement (Docket No. 487) (the "Final Cash Collateral Order").

25.     Subsequent to this Court's entry of the Final DIP Order and the Final Cash Collateral Order, and because M&G Polymers had only been able to obtain funding through the end of January, on January 12, 2018, Jones Day professionals filed a motion (Docket No. 665) on behalf of the Debtors seeking approval to enter into, among other things, a $5 million postpetition financing facility (the "Polymers DIP Facility") with Indorama Netherlands B.V. An order authorizing the Debtors to enter into the Polymers DIP Facility on an interim basis was

entered by the Court on January 19, 2018 (Docket No. 720) and a final order was entered on February 1, 2018 (Docket No. 865).

26.      In addition to obtaining approval of the Polymers DIP Facility, during the Compensation Period, Jones Day professionals spent time ensuring compliance with the DIP Facility and the terms of the Final Cash Collateral Order, including by, among other things, working with the Debtors to obtain the deliverables required under such financing facilities and ensuring compliance with milestones prescribed thereunder.

***Claims Administration — 498.30 hours — $366,092.50***

27.      Jones Day professionals have devoted substantial time to (a) researching case-law and secondary sources related to, and analyzing, potential environmental law issues, (b) researching and analyzing issues related to the lien claims asserted by the holders of mechanics' and materialmen's liens asserted against the Corpus Christi Plant (the "Construction Liens" and the holders of such liens, the "Construction Lienholders"), including by participating in conference calls and other meetings with the Debtors' financial advisors and Texas counsel and (c) advising the Debtors with respect to the Construction Lien Claims.

28.      Further, during the Compensation Period, Jones Day professionals assisted the Debtors in their efforts to determine with certainty the entire universe of Construction Liens that may be asserted against the Corpus Christi Plant and permit certain bidders to submit credit bids for the Corpus Christi Plant.  To that end, Jones Day professionals prepared and filed a motion (Docket No. 214) (the "Lien Identification Motion") on behalf of the Debtors seeking authorization to require Construction Lienholders to either submit a statement of lien form and/or record their Construction Liens in the property records for Nueces County, Texas, by February 15, 2018.  Because certain Construction Lienholders, including the Construction Lienholder Group, objected to the Lien Identification Motion, Jones Day filed a reply in further

support of the Lien Identification Motion (Docket No. 385) and ultimately prosecuted the Lien Identification Motion at a hearing before the Court on December 11, 2017, which resulted in entry of an order approving the Lien Identification Motion (Docket No. 457) (the "Lien Identification Order") on that same date.

29.     Following entry of the Lien Identification Order, Jones Day filed a motion (Docket No. 568) (the "Settlement Procedures Motion") on behalf of the Debtors seeking Court approval to establish cost-effective and efficient settlement procedures to streamline the process by which the Debtors could obtain Court approval of settlements with Construction Lienholders. Subsequent to filing the Settlement Procedures Motion, Jones Day negotiated the consensual resolution of certain objections raised to such motion, and ultimately prosecuted the Settlement Procedures Motion at a hearing before this Court on January 18, 2018.  The Court entered an order approving the Settlement Procedures Motion on January 19, 2018 (Docket No. 721) (the "Settlement Procedures Order").  Pursuant to the terms of the Settlement Procedures Order, during the Compensation Period, Jones Day participated in and advised the Debtors on negotiations concerning potential settlements with certain Construction Lienholders.

30.     Finally, during the Compensation Period, Jones Day began preparing a motion to establish certain bar dates for the filing of proofs of claim that arose or were deemed to have arisen prior to the Polymers Petition Date, or the Petition Date, as applicable, including engaging with key creditor constituencies with respect to the timing and establishment of the bar dates.  Jones Day filed a motion seeking to establish such bar date on February 8, 2018 (Docket No. 931), which was approved by the Court on February 27, 2018 (Docket No. 1053).

***Court Hearings* — 213.90 hours — $170,337.50**

31.     During the Compensation Period, Jones Day professionals prepared for and, attended and participated in numerous hearings before this Court, including, among others,

(a) the first day hearing held on November 1, 2017, (b) the second day hearing held on December 1, 2017, (c) the Financing Hearing held on December 11 and 12, 2017, (d) the hearing on January 18, 2018 regarding, among other matters, the Settlement Procedures Motion and (e) the hearing on approval of the Stalking Horse Motion and the Polymers' DIP Facility (on an interim basis) held on January 19, 2018.

***Professional Retention/Fee Issues* — 176.60 hours — $121,447.50**

        32.     During the Compensation Period, Jones Day professionals devoted time advising the Debtors regarding, and reviewing, researching, drafting and coordinating the filing of, applications to retain the Debtors' professionals, including (a) Prime Clerk LLC (Docket No. 135) (b) Jones Day (Docket No. 138), (c) Alvarez & Marsal North America, LLC (Docket No. 140), (d) Rothschild Inc. and Rothschild S.p.A. (Docket No. 184) and (e) Crain Caton & James, P.C. (Docket No. 215) (collectively, the "Retention Application").  Once filed, Jones Day professionals further devoted time to reviewing and responding to comments received from the U.S. Trustee and the Committee regarding the Retention Applications.

        33.     In addition, Jones Day professionals devoted time to advising the Debtors regarding, and drafting and filing, (a) a motion to authorize the retention of certain professionals utilized in the ordinary course of business (Docket No. 136), (b) reviewing, and in some instances drafting, declarations to retain such ordinary course professionals and (c) a motion (Docket No. 141) to establish interim compensation and reimbursement procedures in these Cases.

***Fee Application Preparation* — 119.50 hours — $62,687.50**

        34.     During the Compensation Period, Jones Day professionals and paraprofessionals devoted time to (a) reviewing monthly invoices to ensure compliance with the UST Fee Guidelines (as defined below) and the Interim Compensation Order, (b) drafting and

filing the Monthly Fee Applications and (c) reviewing the monthly fee applications of the Debtors' advisors.

***Nonworking Travel*** — **181.20 hours** — **$147,070.00**

35.     During the Compensation Period, Jones Day professionals devoted time traveling to and from Delaware for (a) the hearings described herein and (b) meetings in Delaware, including the Committee's formation meeting and the section 341 meetings.  In addition, certain Jones Day professionals traveled to New York for important meetings with key stakeholders and parties in interest in these Cases regarding, among other matters, the sale processes, updating the Committee's professionals regarding the status of these Cases upon the Committee's formation and for the Auction.  The total amount of the non-working travel was $147,070.00, which was then discounted by 50% to $73,535.00.

***General Corporate/Real Estate*** — **413.00 hours** — **$307,050.00**

36.     During the Compensation Period, Jones Day professionals analyzed and advised on, (a) issues relating to the Debtors' insurance policies, (b) issues relating to the payment of certain prepetition claims, as approved by the Court, including shipper, critical vendor claims, tax claims and claims arising under certain supply agreements, (c) an intercompany services agreement between Debtor Mossi & Ghisolfi International S.à r.l. ("MGI") and M & G Finanziaria S.p.A., (d) issues pertaining to the Debtors' bank accounts and cash management system, including through obtaining four interim cash management orders (Docket Nos. 68, 310, 586 & 869) and (e) the negotiation and drafting of a stipulation between the Debtors and Eastman Kodak Company ("Kodak") (Docket No. 696) whereby the Debtors obtained over $2 million and a release from Kodak, a result which conferred further benefits on the estate.

***Schedules/SOFA/U.S. Trustee Reports* — 167.40 hours — $117,050.00**

37.     During the Compensation Period, Jones Day professionals drafted a motion (Docket No. 137) (the "Extension Motion") seeking to extend the deadline by which the Debtors were required to file their Schedules and Statement of Financial Affairs (the "Schedules") and their Bankruptcy Rule 2015.3 Report (the "2015.3 Report").  Subsequent to filing the Extension Motion, an objection was filed to such motion by the Construction Lienholder Group (Docket No. 257).  Thereafter, Jones Day drafted a reply in further support of the Extension Motion (Docket No. 265), and prosecuted the Extension Motion at a hearing before the Court on December 1, 2017.  On that same date, the Court entered an order granting the Extension Motion (Docket No. 319).

38.     In addition, Jones Day professionals researched and drafted a motion (Docket No. 857) to redact certain information relating to the employees of Luxembourg Debtors MGI, M&G Chemicals S.A. and M&G Capital S.à r.l. (the "Luxembourg Debtors").  Finally, during the Compensation Period, Jones Day professionals reviewed, analyzed and assisted the Debtors and their financial advisors in preparing the Debtors' Schedules (Docket Nos. 778 – 790), 2015.3 Report (Docket No. 734) and monthly operating reports (Docket Nos. 168, 570 & 841).

***Employee Matters* — 373.70 hours — $285,480.00**

39.     During the Compensation Period, Jones Day professionals (a) assisted the Debtors, along with the Debtors' other advisors, in developing their key employee retention plan (the "KERP") and key executive incentive plan ("KEIP"); (b) drafted a motion seeking approval of the KERP and KEIP (Docket No. 509) (the "KERP & KEIP Motion") and a declaration in support thereof; (c) engaged in negotiations with various parties in interest, including the U.S. Trustee and the Committee, in order to achieve a consensual resolution of the KERP & KEIP

Motion, which resulted in approval of such motion by order of this Court (Docket No. 629) on January 5, 2018 (the "KERP & KEIP Order"); and (d) advised the Debtors regarding the implementation of the KERP & KEIP and compliance with the KERP & KEIP Order.

40. In addition, during the Compensation Period, Jones Day professionals analyzed and researched issued pertaining to the provision of healthcare benefits for employees of M&G Polymers, which efforts culminated in negotiations with M&G Polymers' third party administrator, Aetna Life Insurance Company ("Aetna"), and ultimately a motion (Docket No. 910) (the "Aetna Motion") seeking Court approval to assume an administrative services agreement with Aetna. On February 20, 2018, this Court entered an order approving the Aetna Motion.

41. Finally, during the Compensation Period, Jones Day professionals advised the Debtors with respect to (a) issues relating to healthcare coverage and other benefits, (b) inquiries regarding, and certain employee communications concerning, the continued provisions of healthcare and benefits coverage, (c) engaging the USW regarding the provision of benefits for certain of the Debtors' employees and (d) various miscellaneous employment matters arising out of the provision of employee benefits to four different employee populations (i.e., employees of Chemtex, MGI, M&G Resins USA, LLC and M&G Polymers).

*Tax Advice* — **59.40 hours** — **$46,932.50**

42. During the Compensation Period, Jones Day professionals provided advice regarding tax compliance, tax planning, tax priority and other tax matters relevant to the administration of these Cases and the sale processes described above, including with respect to planning for the sale processes described above.

***Litigation/Adversary Proceedings*** — **1,376.80 hours** — **$818,127.50**

43. During the Compensation Period, Jones Day professionals devoted significant time to, among other things:

(a) responding to both formal and informal document requests from the Committee, Inbursa, DAK Americas, LLC ("DAK"), the Construction Lienholder Group, certain of the Debtors' affiliates in Brasil and Mexico, certain governmental regulatory agencies and other creditor constituencies in connection with the DIP Facility, the Cash Collateral Financing, the Bidding Procedures Order and the sale processes described above, among other matters in these Cases;

(b) conducting research related to, and drafting and entering into a consent order concerning, the production of certain documents subject to European privacy laws; and

(c) preparing for, prosecuting, defending and attending depositions of key witnesses in these Cases on matters concerning the DIP Facility, the Bidding Procedures Order and the Committee's challenge litigation against DAK (Docket No. 955).

***Automatic Stay/Adequate Protection*** — **203.30 hours** — **$123,552.50**

44. During the Compensation Period, Jones Day professionals (a) researched and analyzed issues pertaining to the automatic stay, (b) reviewed requests for adequate assurance from certain of the Debtors' utility providers, and negotiated and drafted adequate assurance letter agreements with such utility providers, (c) began researching case-law concerning Universal Resins Company ("URC") motion for relief from the automatic stay to effectuate a setoff of certain claims, and ultimately negotiated and drafted a stipulation (Docket No. 709) with URC that resolved its motion to lift the automatic stay, (d) researched, analyzed and drafted an objection to WFS Construction Service LLC's (Docket No. 549) motion for relief from the automatic stay to continue arbitration and (e) began researching issues concerning, and analyzing, the Construction Lienholder Group's motion (Docket No. 824) for relief from the automatic stay to commence a declaratory judgment action in Texas state court.

***Executory Contracts/Unexpired Leases*** — **297.70 hours** — **$184,490.00**

45.     During the Compensation Period, Jones Day professionals worked with the Debtors and their financial advisor to reduce administrative expenses and generate other cost savings through the rejection of unexpired leases and executory contracts.  Specifically, Jones Day advised the Debtors with respect to the rejection of certain of their executory contracts and unexpired leases, and drafted motions to reject, and obtained Court approval to reject: (a) Chemtex's office lease in Wilmington, North Carolina (see Docket No. 294); (b) certain executory contracts, including (i) certain transportation, railcar and related agreements for the transportation of the Debtors' goods and products, (ii) consulting and business development agreements for suspended projects and (iii) certain intercompany service agreements with non-Debtor affiliates (see Docket Nos. 641, 708, 867 and 868); and (c) the Debtors' office lease in Houston, Texas (see Docket No. 837).

46.     Further, Jones Day professionals prepared a notice (Docket No. 537) (the "Assumption Notice") of executory contracts and unexpired leases for possible assumption and assignment in connection with the sale of the Debtors' assets, and subsequent to the filing of the Assumption Notice, coordinated with the Debtors and their financial advisors with respect to certain revisions to the Assumption Notice (Docket Nos. 565 & 775) and resolving formal and informal objections related to the cure amounts listed thereon.

47.     Finally, during the Compensation Period, Jones Day professionals negotiated and drafted a stipulation between the Debtors, Rio Valley Switching Company ("Rio") and Trinity Railcar Company ("Trinity") which resolved Rio and Trinity's objections to the Debtors' motion seeking to reject Rio's and Trinity's leases without the need for litigation, and through which the Debtors saved their estates a substantial amount in potential administrative expenses (Docket No. 968).

*Meetings* — 169.10 hours — $147,897.50

48.     During the Compensation Period, Jones Day professionals devoted time to keeping the Debtors and key creditor constituencies updated with respect to the sale process and these Cases generally, by, among other things, preparing for, hosting and attending meetings. These meetings included (a) internal meetings, meetings with the Debtors, and meetings with other professionals in these Cases regarding overall case strategy and specific issues arising in these Cases, (b) two section 341 meetings and (c) upon the Committee's formation, a hands on meeting with the Committee's professionals to update such professionals on the status of these Cases. Further, Jones Day professionals prepared for, attended and participated in the Debtors' board meetings and drafted board minutes and resolutions related thereto.

## Billing Adjustments

49.     During the Compensation Period, Jones Day made $73,535.00 in adjustments due to a 50% discount for time spent on nonworking travel.[10]  In addition, Jones Day wrote off an additional $192,943.75 in fees and $5,012.58 in disbursements incurred during the Compensation Period prior to filing the Monthly Fee Applications.

50.     As noted above, subsequent to filing the First Monthly Fee Application, in response to requests of the U.S. Trustee, Jones Day agreed to a reduction of $8,715.00 in fees and $1,253.00 in expenses sought in the First Monthly Fee Application.  Further, in connection with the preparation of this Interim Fee Application, Jones Day implemented a further voluntary reduction of $44,962.50 in fees to account for timekeepers that billed de minimis amounts of time to the Debtors during the Compensation Period.

---

[10]     To the extent possible, Jones Day professionals work while traveling.

## APPENDIX B GUIDELINES

51.     Pursuant to the *Appendix B Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorney in Larger Chapter 11 Cases* (the "<u>UST Guidelines</u>"), Jones Day responds to the following questions with respect to this Application:[11]

(a)     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

      (i)     No.

(b)     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application higher by 10% or more, did you discuss the reasons for the variation with the client?

      (i)     N/A

(c)     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

      (i)     No.

(d)     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?

      (i)     Yes, Jones Day expended 106.1 hours and $53,001.50 reviewing the Monthly Fee Applications to remove any confidential or privileged information and to ensure compliance with the Interim Compensation Order and the UST Guidelines.

(e)     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

      (i)     *See* ¶ 50(d)(i).

(f)     If the fee application includes any rate increases since retention in this case:

---

[11]     In further compliance with the Appendix B Guidelines, Jones Day attaches hereto its Budgets for the Compensation Period as <u>Exhibits C-1</u> through <u>C-3</u>, its Staffing Plans for the Compensation Period as <u>Exhibits D-1</u> through <u>D-3</u> and a Summary of Compensation Requested by Project Category as <u>Exhibit E</u>.

        (A)      Did your client review and approve those rate increases in advance?

                (1)     Yes.

        (B)      Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

                (1)     Yes.

## REQUESTED COMPENSATION SHOULD BE ALLOWED

52.     Section 330(a)(1) of the Bankruptcy Code provides that the Court may

award a professional person employed under section 327 and 1103 of the Bankruptcy Code:

        (A)      reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

        (B)      reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A) further provides the following standards for the

Court's review of a fee application:

        In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

        (A)      the time spent on such services;

        (B)      the rates charged for such services;

        (C)      whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

        (D)      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

<table>
<tr><td>(E)</td><td>with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and</td></tr>
<tr><td>(F)</td><td>whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.</td></tr>
</table>

11 U.S.C. § 330(a)(3)(A).

53.     Jones Day respectfully submits that it has satisfied the requirements of section 330 of the Bankruptcy Code for the allowance of compensation and reimbursement of expenses sought herein.  The services described above were necessary to the administration of these Cases and were beneficial to the Debtors and parties in interest.  Jones Day's services were often performed in a minimum amount of time and commensurate with the complexity of the matters facing the Debtors.  Further, the compensation sought by Jones Day is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy.

## CONCLUSION

54.     Jones Day attorneys and paraprofessionals expended a total of 9,032.90 hours in connection with their representation of the Debtors during the Compensation Period. Employing Jones Day's normal hourly rates for work of this character, the reasonable value of the services rendered by Jones Day for the Debtors during the Compensation Period, after taking into account the billing adjustments discussed above, is $6,279,660.00.  During the Compensation Period, Jones Day also incurred expenses of $56,952.50.[12]  Pursuant to the Interim Compensation Order, by this Application Jones Day seeks the allowance of fees and expenses incurred during the Compensation Period in the sum of $6,336,612.50.

---

[12]     This figure was calculated after taking into account Jones Day's voluntary write-down of expenses of $5,012.58 prior to filing Monthly Fee Applications and the $1,253.00 in reductions it agreed to following the filing of the First Monthly Fee Application.

55.     Jones Day respectfully submits that the amount requested in this Interim Fee Application is fair and reasonable and satisfies the requirements of section 330 of the Bankruptcy Code.  Moreover, Jones Day has reviewed the requirements of Local Rule 2016-2 and the Interim Compensation Order and believes that this Interim Fee Application complies with such Local Rule and Order.

## NOTICE

56.     Jones Day will serve this Interim Fee Application in accordance with the Interim Compensation Order and the Local Rules.  Pursuant to the Interim Compensation Order, objections to this Interim Fee Application, if any, must be in writing and filed with the Court and served upon Jones Day so as to be received no later than April 5, 2018 (the "Objection Deadline").

## NO PRIOR REQUEST

57.     No prior request for the relief sought in this Application has been made to this or any other court.

Dated: March 15, 2018
        Wilmington, Delaware

/s/ *Scott J. Greenberg*
JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
Email:         sgreenberg@jonesday.com
               scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:     (216) 586-7035
Facsimile:     (216) 579-0212
Email:         ceblack@jonesday.com

Counsel for the Debtors and Debtors in Possession

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered) |

## CERTIFICATION OF SCOTT J. GREENBERG

Scott J. Greenberg, under penalty of perjury, certifies as follows:

1.       I am a partner with the law firm of Jones Day and have been admitted to appear before this Court. I make this certification in accordance with Local Rule 2016-2 regarding the contents of applications for compensation and expenses. I have read the Interim Fee Application and am familiar with the work performed on behalf of the Debtors by the attorneys and paraprofessionals of Jones Day.

2.       The facts set forth in the foregoing Interim Fee Application are true and correct to my knowledge, information and belief. I have reviewed Local Rule 2016-2 and the Interim Compensation Order and submit that the Interim Fee Application substantially complies with such Local Rule and the Interim Compensation Order.

Dated: March 15, 2018                 */s/ Scott J. Greenberg*
                                                    Scott J. Greenberg

---

[1]       The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.