# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>Jointly Administered<br><br>Related to D.I. 1075<br><br>Hearing Date: March 23, 2018 at 9:30 a.m. |

**BANCOMEXT'S OBJECTION TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER ESTABLISHING A LIENHOLDER
CLAIMS RESERVE AND GRANTING RELATED RELIEF**

TO THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE:

Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Desarrollo ("**Bancomext**") hereby files this Objection (the "**Reserve Objection**") in response to the *Debtors' Motion for Entry of an Order Establishing a Lienholder Claims Reserve and Granting Related Relief* [D.I. 1075] (the "**Reserve Motion**"). In support of the Objection, Bancomext respectfully states:

## PRELIMINARY STATEMENT

The reserve of sale proceeds the Debtors seek to establish pursuant to the Reserve Motion is inadequate. For the same reasons the Debtors seek to establish the Lienholder Claims Reserve for the benefit of certain putative mechanics' and materialmen's lienholders (the "**Lienholders**"), the Court should require a separate reserve for the maximum principal amount of Bancomext's

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M&G USA Corporation (3449), M & G Resins USA, LLC (3236), M&G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M & G Waters USA, LLC (2195), Mossi & Ghisolfi International, S.à r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

loans wrongfully diverted to the Debtors——$190 million. Alternatively, Bancomext should be included as a beneficiary of the reserve.

Bancomext's interests in the Assets[2] proposed to be sold arise as a result of a wrongful scheme perpetrated by the Debtors and two of their wholly owned and controlled non-debtor affiliates, M&G Mexico Holding, S.A. de C.V. ("**M&G Holding**") and M&G Polimeros Mexico, S.A. de C.V. ("**M&G Polimeros**," and, together with M&G Holding, the "**Mexican Entities**"). Under the Debtors' control, the Mexican Entities borrowed $190 million from Bancomext subject to narrow use restrictions. The Debtors then diverted those funds for their own purposes, including, Bancomext has alleged, to build the Corpus Christi Assets and Desalination Assets. As a result, Bancomext claims to be the beneficiary of a constructive trust to the extent of its wrongfully diverted funds and their proceeds, including the Corpus Christi Assets, the Desalination Assets and other Assets, which are now in the hands of the Debtors.

On March 9, 2018, Bancomext filed its *Complaint for Fraudulent Misrepresentation, Avoidance of Fraudulent Transfers, and Imposition of a Constructive Trust* [D.I. 1089] (the "**Complaint**") to vindicate its rights against the Debtors and their properties. And, for the reasons stated in the *Objection of Bancomext to the Sale of the Debtors' Corpus Christi Assets, Desalination Assets, and Other Assets* [D.I. 1115] (the "**Sale Objection**"), the only way to preserve Bancomext's rights in the Assets in the event of a sale is to hold adequate sale proceeds in escrow pending resolution of the Complaint. Bancomext requests that the Court deny the

---

[2] As used herein, the terms "**Assets**," "**Corpus Christ Assets**," and "**Desalination Assets**" have the meanings ascribed to such terms in the Court's *Order (i)(a) Approving Bidding Procedures for the Sale of Certain of the Debtors' Assets, (b) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (c) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (d) Approving Assumption and Assignment Procedures and (e) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (ii) Granting Related Relief* [D.I. 490] (the "**Bid Procedures Order**").

Reserve Motion to the extent that Bancomext is not afforded equivalent protections with respect to the sale proceeds as the Debtors propose to afford the Lienholders.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. Bancomext's Reserve Objection is based upon the allegations contained in the Complaint. On those allegations, Bancomext asserts claims against the Debtors for fraudulent misrepresentation, aiding and abetting fraud, conspiracy, actual fraudulent transfer, constructive fraudulent transfer, and conversion. Under the circumstances alleged in the Complaint, Bancomext seeks relief in the form of, among other things, a constructive trust in the Debtors' Assets, including the Corpus Christi Assets and the Desalination Assets, in the amount of up to $190 million.

3. Though Bancomext has not yet had the benefit of formal discovery, its allegations are well supported by the record in these Chapter 11 Cases and Bancomext's own records. Bancomext believes that it will prevail on the claims alleged in the Complaint and establish that it is the beneficiary of a constructive trust in the Assets identified.

4. On March 2, 2018, the Debtors filed the Reserve Motion, requesting approval of a reserve to protect the interests of Lienholders whose claims (the "**Lienholder Claims**") are in bona fide dispute. For the benefit of such Lienholders, The Debtors propose to establish a reserve in the amount of $350,149,728.43—an amount that the Debtors estimate represents the "maximum potential liability to the Debtors' estates arising from the Lienholder Claims."

3

Reserve Mot., ¶ 25. The Debtors also note that the reserve they seek is "potentially overstated" and that the amount sought provides a "substantial potential cushion." *Id*. at ¶ 33.

5. On March 9, 2018, in an effort to ensure that Bancomext would not be prejudiced in its efforts to recover on its claims, Bancomext filed the Sale Objection. By the Sale Objection, Bancomext requested that the Court condition the sale of the Debtors' Assets pursuant to their sale motion [D.I. 173] on bidding by cash or cash equivalent backstop (as opposed to credit bid) and the retention of sale proceeds in escrow subject to Bancomext's interests pending determination thereof. Bancomext incorporates herein by this reference the supplemental background contained in paragraphs 5 through 27 of the Sale Objection.

6. Through its Complaint, Bancomext will prosecute its claims and rights against the Debtors and their property, just as the Lienholders will prosecute their claims and rights though appropriate proceedings. Bancomext objects to the Reserve Motion to the extent it affords protections to the rights of the Lienholders not also extended to Bancomext.

## **ARGUMENT**

7. The Reserve Motion constitutes a concession by the Debtors that the proceeds of assets in which third parties claim rights—even if disputed—must be reserved and set aside pending determination of those rights. Bancomext's claims to the Assets proposed to be sold should be afforded the same protection.

8. As Bancomext has detailed in the Complaint and in the Sale Objection, even without the benefit of discovery, available evidence persuasively demonstrates that the Debtors orchestrated a scheme whereby the Mexican Entities' credit from Bancomext would be exploited. Hundreds of millions of dollars in transfers from the Mexican Entities to the Debtors coupled with the Mexican Entities' apparent inability to repay any of Bancomext's $190 million

of loans strongly suggests that Bancomext's loan proceeds were wrongfully diverted. Through prosecution of the Complaint, Bancomext expects to demonstrate that it is the beneficiary of a constructive trust on the Debtors' assets in the amount of up to $190 million. Assets held in constructive trust are not property of the estate, and therefore any sale of Assets over which Bancomext claims a constructive trust cannot go forward without a reserve established in the amount of Bancomext's claim on the assets to be sold.

9. Where the Debtors show that Bancomext's claims are in bona fide dispute, Bancomext must have adequate protection in the form of a reserve to ensure Bancomext will be able to recover in the event it prevails in its claims asserted in the Complaint. Section 363(f)(4) of the Bankruptcy Code provides that a debtor in possession may sell an asset free and clear of a third party's interest if "such interest is in bona fide dispute." 11 U.S.C. § 363(f)(4). Section 363(e) provides, in relevant part, that "on request of an entity that has an interest in property . . . proposed to be . . . sold . . . by the trustee, the court . . . shall prohibit or condition such . . . sale . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Adequate protection under section 363(e) is mandatory. *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 592 (Bankr. D. Ariz. 2009). "If adequate protection cannot be provided, [the proposed] sale must be prohibited." *Id.* (citing 3 Collier on Bankruptcy P 363.05[2] (15th ed. rev. 2007)).

10. By the Reserve Motion, the Debtors seek to uphold their duties under the Code by providing adequate protection to a select group of creditors—the Lienholders—whose claims are in bona fide dispute. While Bancomext appreciates the Debtors' efforts to move forward with the sale by creating a reserve, the Debtors' proposed reserve is insufficient to the extent it does not account also for Bancomext's similarly situated claims.

11. That the Lienholders Claims are in bona fide dispute is clear from the Reserve Motion. The Debtors insist that "substantial defenses may exist to all of the largest Lienholder Claims asserted in these Chapter 11 Cases," and that "[i]f successful, these defenses would make available significant amounts reserved on account of such Lienholder Claims." Reserve Mot., ¶ 33. Despite this, the Debtors have recognized their duty to set aside an amount that "incorporates ample cushion" to satisfy all such claims. *Id.* Similarly, the fact that the Debtors' will presumably defend against Bancomext's Claims does not alleviate the necessity of establishing a reserve on account of those claims.

12. The amount of the reserve established to provide Bancomext with adequate protection should be the full amount of Bancomext's Claims. Just as the proposed "Lienholder Claims Reserve has not been reduced to reflect any other potential defenses or counterclaims [besides eliminating duplicate claims] that the Debtors may possess with respect to any Lienholder or Lienholder Claims," Reserve Mot. at ¶ 25, neither should the amount of the reserve established to account for Bancomext's Claims. Whether Bancomext ultimately succeeds in proving all or substantially all of its loan procced were wrongfully diverted to the Debtors is a matter that will be determined by the Court in due course. For the reasons set forth in the Sale Objection, what is clear now is that, to provide adequate protection to Bancomext and move forward with the sale, the Debtors must establish a reserve must in an amount no less than the amount sufficient to satisfy Bancomext's asserted claims. To the extent the Debtors are unwilling to establish a separate reserve for Bancomext's claims, at the very least, Bancomext should be afforded rights in the Lienholder Claims Reserve in the same amount and priority relative to the Lienholders as Bancomext's rights in the Assets.

13. Finally, creating a reserve for Bancomext's claims like the Lienholder Claims Reserve "is reasonable, conservative and will not unfairly prejudice the Debtors' creditors." *See* Reserve Mot., ¶ 25. In fact, creating the reserve is appropriate to provide "potential bidders with the clearest available guidance regarding the maximum aggregate scope" of liabilities due to Bancomext's Claims. *See id.* at ¶ 10. For the same reasons as the Lienholder Claims Reserve may be justified by these circumstances, and for the reasons stated in the Sale Objection, Bancomext requests that the Court require the Debtors to (i) establish a reserve of not less than $190 million in Bancomext's favor or (ii) give Bancomext rights in the Lienholder Claims Reserve in the same amount and priority relative to the Lienholders as Bancomext's rights in the Assets.

## CONCLUSION

14. For all of the foregoing reasons, Bancomext requests that the Court (a) deny the Reserve Motion to the extent that (i) a corresponding reserve is not established for Bancomext's claims in the amount of $190 million, or (ii) Bancomext is not afforded rights in the Lienholder Claims Reserve in the same amount and priority relative to the Lienholders as Bancomext's rights in the Assets; and (b) grant such other and further relief as the Court deems just and proper.

Dated: March 16, 2018                               FOX ROTHSCHILD LLP


By: /s/ *Jeffrey M. Schlerf*
    Jeffrey M. Schlerf (DE No. 3047)
    919 North Market Street, Suite 300
    Wilmington, DE 19801
    Telephone:   (302) 654-7444
    Facsimile:    (302) 656-8920
    jschlerf@foxrothschild.com

—and—

Roberto J. Kampfner (pro hac vice pending)
Aaron Colodny (pro hac vice pending)
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329
rkampfner@whitecase.com

*Attorneys for Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Desarrollo*