# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>Jointly Administered<br><br>**Related to Docket Nos. 1075** |

## SINOPEC'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING A LIENHOLDER CLAIMS RESERVE AND GRANTING RELATED RELIEF

Sinopec Engineering Group America, LLC ("**SEGA**") and Sinopec Engineering (Group) Co., Ltd. ("**SEG**" and with SEGA, "**Sinopec**"), by and through their undersigned counsel, hereby object to the *Debtors' Motion for Entry of an Order Establishing a Lienholder Claims Reserve and Granting Related Relief* [D.I. 1075] (the "**Reserve Motion**"). In support of this Objection, Sinopec states as follows:

## PRELIMINARY STATEMENT

SEGA holds valid lien claims in an amount of at least $52,377,568.72, plus attorneys' fees, costs, and interest payable under applicable law, against M&G Resins USA, LLC, which it timely asserted under applicable Texas statues, the Texas Constitution, the Bankruptcy Code, and orders of this Court (the "**Sinopec Liens**"). The Sinopec Liens extend to each lot of land and the building, fixtures, or improvements on that land for which SEGA provided labor and materials (including specially fabricated materials not yet delivered) for construction of or

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à.r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à.r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments, Inc. (9208). The Debtors' notice address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

improvement to a building.[2] As stated in its Affidavits of Lien, that real property in which Sinopec has a lien is commonly known as 7001 Joe Fulton International Trade Corridor, Corpus Christi, Texas 78409, which real property is more fully described in SEGA's Affidavit of Liens and which has improvements on it of the Jumbo Plant and a desalination plant (collectively, the "**Property**").

The Debtors have proposed to sell the Property free and clear of the Sinopec Liens (and Sinopec has objected to the Sale Motion).[3] The Debtors argue in the Reserve Motion that the Final DIP Order contemplated that the procedures for any sale would provide for an appropriate reserve to satisfy the Senior Prior Liens. *See* Reserve Motion at 4. The Reserve Motion is not designed to ensure the Senior Prior Liens are paid in full from the collateral that secures the liens under applicable non-bankruptcy law, but instead is designed to "provide potential bidders with the clearest available guidance regarding the maximum aggregate scope of Lienholder Claim liabilities . . .." *Id*. at 6. The Debtors contend that they have established the reserve by eliminating duplicate claims and excluding amounts for attorneys' fees, costs, and interest from the proposed reserve, contending that these items are not permitted under applicable state law or the Bankruptcy Code. The Debtors are incorrect and have failed to refer the Court to numerous Texas statutes that entitle Sinopec to attorneys' fees, costs, and interest. Additionally, the Debtors have included allegedly duplicate claims in the reserve amount for SEGA, which amounts should be reserved separately.

While Sinopec appreciates that establishment of a lien reserve may facilitate bidding, as noted in the Sinopec Sale Objection, as a secured lender, Sinopec is entitled to be paid in

---

[2]     *See* TEX. PROP. CODE §§53.021-023.

[3]     On March 12, 2018, Sinopec filed its *Preliminary Objection to the Sale of Substantially All of The Debtors' Remaining Assets* [D.I. 1141], which preliminary objection is incorporated by this reference.

accordance with the Bankruptcy Code and established priorities. Thus, the Sale Motion, combined with the Final DIP Order, proposes to pay junior lienholders prior to and ahead of the Sinopec Liens. And if the proposed reserve ultimately proves insufficient to pay the Sinopec Liens in full – and the order approving it contains no mechanism to ensure that if the reserve is insufficient there is a means to protect Sinopec's lien rights – the Reserve Motion is flawed and cannot be approved.

The Debtors have proposed a reserve based on case law that applies to general unsecured claims instead of analyzing this situation based on the laws that apply to secured creditors (and when they do look to applicable law, 11 U.S.C. § 506(b), they misapply it, arguing that Sinopec is not entitled to attorneys' fees, costs, and interests). The sections of the Bankruptcy Code that are relevant to the Sinopec Liens are sections 361, 363, 506(b), and 507(b), and rather than applying these sections, Debtors seek instead to skirt them.

Sinopec therefore objects to the Reserve Motion and requests that any order approving it provide for (1) an additional reserve amount for attorneys' fees, costs, and interest and (2) appropriate provisions granting Sinopec their adequate protection rights as proposed below.

## BACKGROUND

1. Sinopec entered into contracts (collectively the "**Contracts**") related to the construction of a chemical plant by M&G Resins USA LLC in Corpus Christi, Texas (the "**Jumbo Plant**"). As noted in the Contract Objections, the Contracts form an integrated suite of contracts under which Sinopec (i) provided offshore procurement, mainly providing goods from outside the USA prior to the commencement of these cases, including from the People's Republic of China, and (ii) subcontracted to certain Debtors and affiliated parties offshore procurement, onshore construction, transportation and design work, and overall project

management services at the Jumbo Plant. Sinopec has not been paid in full for the materials it has provided to the Debtors for use at the Jumbo Plant.

2. SEGA filed an Affidavit for Mechanic's Lien and Affidavit For Mechanic's Lien #2 in the official Real Property Records in Nueces County, Texas. The Recorder of Deeds recorded these two instruments on November 6, 2017, assigning them document numbers 2017046312 and 2017046781, respectively.

3. On November 16, 2017, the Debtors filed the Sale Motion, which included Bidding Procedures for the Sale of the Debtors' assets and for assumption and rejection of executory contracts as part of the proposed sale.

4. On November 17, 2017, Sinopec filed a *Notice of Perfection of Mechanic's Liens under 11 U.S.C. § 546(b)(2) of Sinopec Engineering Group America, LLC* [D.I. 192]. This Notice reflects two unpaid claims Sinopec has under the Contracts for claims for the performance of labor and furnished materials used to improve the Jumbo Plant totaling $52,377,568.72. As part of these lien claims, Sinopec seeks all amounts to which it is entitled, including attorneys' fees, costs, interest and all other amounts.

5. The Court approved the Bidding Procedures by entry of an order on December 14, 2017.[4] The Bidding Procedures Order required the Debtors to file "Assumption and Assignment Notices," which the Debtors did and to which Sinopec has objected in the Contract Objections.[5]

6. On motion by the Debtors, the Court has also entered an *Order (I) Establishing Lien Identification Procedures and (II) Granting Related Relief* [D.I. 457] and an *Order*

---

[4] D.I. 490.

[5] Sinopec has separately objected to the proposed assumption of contracts between SEGA and certain of the Debtors and does not restate those objections in this Objection, but incorporates those arguments by this reference. *See Sinopec's Cure Objection* [D.I. 609] and *Sinopec's Objection to the Debtors' Second Supplemental Notice of Possible Assumption and Assignment of Executory Contracts* [D.I. 872] (collectively, the "**Contract Objections**").

*Establishing Lienholder Claim Settlement Procedures* [D.I. 721] (collectively, the "**Lien Procedures Orders**"). The Court also entered an *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [D.I. 1053] (the "**Bar Date Order**"). Under the Bar Date Order, the general bar date is April 5, 2018 (after the scheduled hearing on the Sale Motion). The Bar Date Order further provides that any entity that has submitted a notice under section 546(b) of the Bankruptcy Code or recorded a lien in the Nueces County real property records in accordance with the Lien Procedures Orders need not file a proof of claim. *See* Bar Date Order at ¶9(g). As such, Sinopec is deemed to have filed a proof of claim in these cases.

7. On March 2, 2018, Debtors filed the Reserve Motion seeking entry of an order approving the establishment of a reserve in the approximate amount of $350 million, which will be reserved from the proceeds of the sale of certain of the Debtors' assets. The proposal is that the reserve will be the sole asset available to satisfy the claims of certain holders of mechanics' and materialmen's liens.

8. In the Reserve Motion, Debtors indicate that approximately 229 Lienholder Claims, in the aggregate amount of over $800 million, have been asserted against the Debtors' estates by way of the filing of Lien Affidavits, Section 546 Notices, and Statements of Lien Form, in accordance with the Lien Identification Procedures Order. *See* Reserve Motion at 6-7. The Reserve Motion purportedly provides a reserve for Lienholder Claims that the Debtors deemed were not duplicative and does not provide a reserve for any liquidated or unliquidated amounts on account of attorneys' fees or applicable interest. The Debtors apparently excluded certain Lienholder Claims when calculating the appropriate amount to reserve for Lienholder Claims based on their belief that they were duplicative in that they were "asserted by the same

Lienholder or one or more other Lienholders with whom the subject Lienholder contracted, directly or indirectly." Reserve Motion at ¶ 11. The hearing on the Reserve Motion is scheduled for the same day as the hearing on the Sale Motion, the hearing on the Creditors' Committee's motion to challenge DAK's lien, and the adjourned hearing on the Construction Lienholder Group's motion to lift stay.

## ARGUMENT

**A. As a Secured Creditor, Sinopec is entitled to Adequate Protection on account of the Sinopec Liens.**

9. The legal authority on which the Debtors rely to justify the relief they have requested in the Reserve Motion is section 502(c)(1) of the Bankruptcy Code, which states that for purposes of allowance under the Bankruptcy Code, a contingent or unliquidated claim shall be estimated if fixing it or liquidating it would unduly delay administration of the Debtors' estates. 11 U.S.C. § 502(c)(1). The Debtors cite several cases in the Reserve Motion supposedly supporting their approach, but none address establishing a reserve for the purpose of capping distributions to allowed senior secured claims so that junior secured claims can be paid in full. Indeed, the Debtors readily admit in their motion that the purpose of the reserve is not to estimate contingent claims but instead to cap amounts payable to fixed claims. Section 502(c)(1) therefore does not apply as there is no contingency as to liability. *See, e.g., Matter of Ford*, 967 F.2d 1047, 1052 (5th Cir. 1992) (contingency as to amount owed is not a contingency for purposes of section 502(c); instead that section address contingent as to liability and where liability is known and only amount is in dispute, lower priority creditors would await distributions until litigation over priority to the creditor at issue is resolved and estimation is not available for claim disallowance). In determining the value at which to estimate a claim, the bankruptcy court "is bound by the legal rules that may govern the ultimate value of the claim."

*Bittner v. Borne Chems. Co., Inc.* 691 F.3d 134, 135 (3d Cir. 1982). In this district, courts have refused to estimate claims when the estimation motion is designed to establish a reserve that will lower the amount of the claim payable rather than address undue delay that would arise from waiting for the contingent event to occur that will set the claim amount. *See RNI Winddown Corp.*, 309 B.R. 174, 191 (Bankr. D. Del. 2007) ("The purpose of section 502(c) is to prevent the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim. ***It is not a mechanism for reducing the amount of the Debtors' liability***.") (emphasis added).

10. The fact that section 502(c) has not been used as proposed by the Debtors to eliminate a lien holder's rights with respect to a known claim amount is not surprising since the Bankruptcy Code protects secured creditors' rights. The use of section 502(c), as proposed by the Debtors, would violate Sinopec's substantive due process rights not to have its property taken without just compensation.[6] Indeed, the proper analysis in this situation is to provide Sinopec with adequate protection of its interest in the property that is being conveyed (thus the Property itself and the proceeds thereof) if that conveyance occurs without satisfying the Sinopec Liens.

11. Section 363(e) of the Bankruptcy Code provides that the Court is obligated to provide Sinopec with adequate protection of its interest in the Property by prohibiting the use, sale, or lease as is necessary to provide adequate protection. *See* 11 U.S.C. § 363(e). While Sinopec has previously demanded adequate protection of its interest, it does so again in the context of the Reserve Motion. Adequate protection is governed by section 361 of the Bankruptcy Code and requires cash payments, a replacement lien, or the indubitable equivalent of the interest as a result of the decrease in value of the property in which Sinopec has an

---

[6] *See* Sinopec Sale Objection at 8 (citing case law in which the Supreme Court has held that violating secured creditors' rights under state law without compensation, even if de minimus, is not permissible).

interest. *See* 11 U.S.C. § 361. As noted in the Sale Objection, the traditional adequate protection provided in a sale context, providing that the liens attach to proceeds of a sale in the same order and priority as they attached to the asset sold, will fail in this situation as Sinopec understands that the Debtors intend to distribute proceeds of the sale to creditors junior to Sinopec (or let creditors junior to Sinopec credit bid) and propose to establish the reserve be the sole source of payment of the Sinopec Liens, providing no solution if the proposed reserve ultimately is insufficient. The law provides the solution: Sinopec should be granted a superpriority administrative claim under section 507(b) if the reserve proves insufficient and either any order authorizing Sinopec's collateral to be paid to junior creditors should provide for the return of those funds if the proposed reserve proves insufficient or the Court could look to Texas law and require that a bond in the amount of 150% of the Sinopec Liens be provided (or that the reserve be increased to such amount) as a means of providing the indubitable equivalent of the Sinopec Liens. Additionally, any order approving the reserve should clarify that Sinopec retains its rights to file any additional claims of any appropriate priority.

12. Absent requiring this relief in accordance with sections 361, 363(e), and 507(b), the Reserve Motion should be denied as should the Sale Motion.

**B. Sinopec is entitled to attorneys' fees and interest on account of the Sinopec Liens.**

13. In advocating for the proposed reserve, the Debtors suggest that Sinopec is not entitled to attorneys' fees and interest with respect to the Sinopec Lien claims. In so doing, they cite to several cases but fail to cite to a relevant case that holds in a similar situation that holders of statutory and constitutional liens under the Texas Property Code's mechanic lien law and the Texas Constitution are entitled to attorneys' fees and interest. *See Amegy Bank Nat'l Assoc. v.*

*Brazos M&E, Ltd. (In re Bigler LP)*, 458 B.R. 345 (Bankr. S.D. Tex. 2011). Additionally, there are a number of statutes that provide for the same in Texas:

- TEX. PROP. CODE § 53.156 provides that in any proceeding to foreclose a lien or to enforce a claim against a bond issued under the Texas Property Code the court shall award costs and reasonable attorney's fees.

- Section 38.001 of the Texas Civil Practice and Remedies Code also provides that a lien claimant can recover attorneys' fees against an owner with whom that contractor originally contracted. *See also First Nat'l Bank of Graham v. Sledge*, 653 S.W.2d 283 (Tex. 1983) (recognizing principle that contractor in direct contract with owner is entitled to attorneys' fees); *West v. Triple B Services, LLP*, 264 S.W.3d 440, 450-51 (affirming attorney fee award for owner's breach of contract with contractor) (Tex. App.—Houston [14th Dist.] 2008, no pet.).

- Chapter 28 of the Texas Property Code, the Prompt Payment Act, requires prompt payment to contractors and subcontractors who contract with an owner of real property and applies in parallel and harmony with the mechanics' lien law in Chapter 53 of the Texas Property Code. TEX. PROP. CODE § 28.007. TEX. PROP. CODE § 28.004 provides that 1 ½ percent interest per month (18% per annum) accrues on overdue payments due to contractors. *Zorrilla v. Aypco Const. II, LLC*, 469 S.W.3d 143, 158 (Tex. 2015); *RAJ Partners, Ltd. v. Darco Construction Corp.*, 217 S.W.3d 638, 646-47 (Tex. App.—Amarillo 2006, no pet.); *Gordon v. Leasman*, 365 S.W.3d 109, 118 (Tex. App.—Hous. [1st Dist.] 2011, no pet.). No separate pleading is required to recover the 18 percent prejudgment interest and a general prayer for relief is sufficient to entitle the unpaid contractor the interest

specified in the Prompt Payment Act. *See Talley Constr. Co. v. Rodriguez*, 2006 WL 908180 (Tex. App. – Houston [1st Dist.] April 6, 2006, no pet.). Moreover, under the Prompt Payment Act, when a party must bring suit to enforce the obligations it imposes, it is entitled to costs and reasonable attorneys' fees in an amount considered to be equitable and just. TEX. PROP. CODE § 28.005.

- TEX. PROP. CODE § 53.160(b)(5) provides that in a suit to challenge any lien, all funds related to the noticed claim must be deposited in the registry of the Court and an affidavit must be provided saying, among other things, that the owner has no further liability as a result of those funds being on deposit.

14. In short, multiple provisions of Texas law provide for attorneys' fees and interest, none of which the Debtors referred to in the Reserve Motion when they incorrectly argued that Texas law does not entitle Sinopec to them. The Debtors' argument that there is an "outright prohibition on claims for attorneys' fees under applicable Texas law" is baffling. *See* Reserve Motion at 18. Texas law provides for attorneys' fees and interest and bankruptcy courts in Texas have granted attorneys' fees in recognition of those state law rights under section 363 when a plan is sold and a lender credit bids for that asset. *See In re Bigler*, 458 B.R. at 386-88 (awarding attorneys' fees to Texas mechanic's lienholders). The Debtors' argument on this point is wrong, and Sinopec is entitled to payment of all its attorneys' fees, costs, and expenses.

15. Because these Texas statutes provide for them, Sinopec is also entitled to them as a matter of federal Bankruptcy law. *See* 11 U.S.C. § 506(b) (providing that when the value of a secured creditor's collateral exceeds its claim, then it is entitled to interest on such claims, and to the extent permitted under State statute, attorneys' fees). While Texas law entitles Sinopec to interest on its claim, even if it did not, Sinopec would be entitled to interest independently under

section 506(b) from the "equity cushion." The language in section 506(b) of the Bankruptcy Code regarding whether the right is "provided for under the agreement or such State statute" modifies "reasonable fees, costs, or charges" not "interest on such claim" and interest therefore also accrues and must be paid from those collateral proceeds to the extent the value of the Property exceeds the value of Sinopec Liens. *See U.S. v. Ron Pair Entps., Inc.* 489 U.S. 235, 241-42 (1989) (stating that section 506(b) permits post-petition interest for over-secured claims, without regard to whether the lien is nonconsensual or consensual, adding that under section 506(b) of the Bankruptcy Code, "[r]ecovery of postpetition interest is unqualified.").

16. Thus, the proposed reserve amount on account of the Sinopec Liens should be increased to provide for payment of attorneys' fees, costs, charges, and interest. Based on Texas law, the reserve on account of the Sinopec Liens should be $78,566,353.05. If the Debtors do not increase the reserves to this amount (and provide Sinopec with the rights required as set out in paragraph 11 above), the Reserve Motion and Sale Motion should be denied.

**C. Sinopec Liens do not include amounts for any other subcontractor and the proposed reserve should be adjusted accordingly.**

17. The Debtors proposed reserve amounts include $52,377,668.70 on account of SEGA, which is the amount set forth in the section 546(b) notice SEGA filed with respect to the Sinopec Liens. The Debtors have included within this amount $600,366.69 on account of Wholesale Electric Supply Company of Houston, Inc., Rabalais Constructors, LLC, and CBS Rental and Supply (as sub-contractors of Italveco S.R.L. and Mand Imballaggi SRL, allegedly sub-contractors of SEGA). SEGA is not aware of any contractual relationship with these parties and submits that the amounts for them should be reserved for separate from the amounts reserved for Sinopec.

## RESERVATION OF RIGHTS

In addition to the issues raised in this Objection, Sinopec reserves its right to further object to the Sale and the relief requested by the Reserve Motion by supplemental filings or orally at any hearing on the Sale Motion, to pursue its Contract Objections and object to the assumption or assignment of the Contracts, to supplement this Objection or the Contract Objections, or to submit additional evidence in support of this or any supplemental objection or the Contract Objections. Sinopec also reserves the right to join in any arguments made by any other objector.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, Sinopec respectfully requests that the Court (a) sustain this Objection and deny the Reserve Motion and (b) grant such other and further relief as the Court deems just and proper.

Dated: March 16, 2018
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ R. Craig Martin*
R. Craig Martin (DE 5032)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@dlapiper.com

*Attorneys for Sinopec Engineering Group America, LLC, and Sinopec Engineering (Group) Co., Ltd.*

# CERTIFICATE OF SERVICE

I, R. Craig Martin, hereby certify that on the 16th day of March 2018, I caused a copy of the foregoing *Objection to the Debtors' Motion for Entry of an Order Establishing a Lienholder Claims Reserve and Granting Related Relief* to be served on the parties listed below via first class mail or hand delivery on local counsel, and all parties registered for service via CM/ECF.

| | |
|---|---|
| VIA HAND DELIVERY<br>Laura Davis Jones, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>919 N. Market Street, 17th Floor<br>Wilmington, DE 19801 | VIA FIRST CLASS MAIL<br>Scott J. Greenberg, Esq.<br>Jones Day<br>250 Vesey Street<br>New York, NY 10281 |
| VIA HAND DELIVERY<br>J. Kate Stickles, Esq.<br>Cole Schotz P.C.<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801 | VIA FIRST CLASS MAIL<br>Carl E. Black, Esq.<br>Jones Day<br>901 Lakeside Avenue<br>Cleveland, OH 44114 |
| VIA HAND DELIVERY<br>Pauline K. Morgan, Esq.<br>Young Conaway Stargatt & Taylor LLP<br>1000 King Street<br>Wilmington, DE 19801 | VIA FIRST CLASS MAIL<br>Dennis F. Dunne, Esq.<br>Milbank Tweed Hadley & McCloy LLP<br>28 Liberty Street<br>New York, NY 10005 |
| VIA HAND DELIVERY<br>Curtis S. Miller, Esq.<br>Morris Nichols Arsht & Tunnell LLP<br>1201 North Market Street, 16th Floor<br>Wilmington, DE 19801 | VIA FIRST CLASS MAIL<br>Michael V. Blumenthal, Esq.<br>Thompson & Knight LLP<br>900 Third Avenue, 20th Floor<br>New York, NY 10122 |
| VIA HAND DELIVERY<br>Hannah Mufson McCollum, Esq.<br>Office of the U.S. Trustee<br>844 King Street, Suite 2207<br>Lockbox $35<br>Wilmington, DE 19801 | VIA FIRST CLASS MAIL<br>Lisa M. Schweitzer, Esq.<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006 |

| | |
|---|---|
| VIA FIRST CLASS MAIL<br>M&G Corporation<br>Attn: Dennis Stogsdill<br>450 Gears Road, Suite 240<br>Houston, TX 77067 | VIA FIRST CLASS MAIL<br>Alfredo R. Perez, Esq.<br>Weil Gotshal & Manges LLP<br>700 Louisiana, Suite 1700<br>Houston, TX 77002 |

>     */s/ R. Craig Martin*
>     R. Craig Martin (DE 5032)