# IN UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>Related Docket No. 1244 |

## INTERIM ORDER (I) AUTHORIZING CERTAIN DEBTORS TO INCUR POSTPETITION SECURED SUPERPRIORITY INDEBTEDNESS PURSUANT TO SECTIONS 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3), AND 364(d); (II) MODIFYING THE AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF

THIS MATTER having come before this Court on the motion dated March 22, 2018 (the "Motion")[2] of M&G USA Corporation ("M&G USA"), a Delaware corporation, and certain of its affiliated debtors and debtors in possession (collectively, with M&G USA, the "Debtors") seeking, among other things, entry of an interim order (the "Interim Order") and a Final Order (as defined below):

(i) authorizing the Obligors, pursuant to sections 105, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of this Court (the "Local Rules"), from the date of entry of the Interim Order through and including the

---

[1] The debtors (collectively, the "Debtors") are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Resins USA, LLC (3236), M & G Waters USA LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Motion, the New DIP Loan Agreement (as defined herein) or the New DIP Term Sheet (as defined herein), as applicable.

date of the Final Hearing (as defined below) to obtain post-petition loans and advances from Corpus Christi Polymers LLC (the "Lender"), consisting of a debtor-in-possession facility (the "New DIP Facility") in an aggregate principal amount not to exceed $57.6 million at any time outstanding pursuant to the terms and conditions contained in the New DIP Documents (as defined below) and as set forth herein;

(ii)     authorizing and directing the Obligors (as defined in the New DIP Term Sheet (as defined below)) to enter into that certain (a) *Term Sheet With Respect to Proposed Debtor-in-Possession Financing* (the "New DIP Term Sheet") and (b) *Debtor-in-Possession Credit and Security Agreement* ("New DIP Loan Agreement"), by and between the Obligors, and the Lender (with the New DIP Term Sheet in the form annexed as Exhibit 1 hereto, and with the New DIP Loan Agreement to be entered into in accordance with the provisions of the New DIP Term Sheet) and all other related agreements, documents, notes, certificates, and instruments executed, New DIP Term Sheet and/or New DIP Loan Agreement, as applicable, delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented in accordance with the terms of this Interim Order and in effect from time to time, together with the New DIP Term Sheet and the New DIP Loan Agreement, the "New DIP Documents"), and to incur the New DIP Obligations;

(iii)     authorizing and directing the Obligors to perform such acts as may be reasonably necessary or desirable in order to give effect to the provisions of the New DIP Documents on an interim basis;

(iv)     authorizing and directing the use of the proceeds of the New DIP Facility on an interim basis in a manner consistent with the terms and conditions of the New DIP Documents, including for the Lender to fund to the Obligors the Advances, provided that the Obligors shall use the proceeds of the Advances only for the purpose of funding the Obligors' post-petition operations, professional fees and expenses and other items, all strictly in accordance with the allowed disbursements line item(s) set forth in the Budget, a copy of which is annexed hereto as Exhibit 2;

NAI-1503561208v1
DOCS_DE:218665.1

(v)     providing, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, that all New DIP Obligations owing to the Lender under the New DIP Loan Agreement shall be accorded administrative expense status having priority over any and all administrative expenses of, and unsecured claims, against the Obligors other than the Superpriority Claims (as defined in the Existing Final DIP Order), the Pre-Petition First Lien Lender Adequate Protection Claims (as defined in the Existing Final DIP Order) and the Pre-Petition Second Lien Secured Party Adequate Protection Claims (as defined in the Existing Final DIP Order), now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, except as otherwise provided herein or in the New DIP Loan Agreement;

(vi)     granting to the Lender, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, perfected security interests in and liens on (collectively, the "New DIP Liens") all of the Obligors' property that comprises DIP Collateral (as defined in the Existing Final DIP Order[3]), including Avoidance Proceeds (as defined in the Existing Final DIP Order) (collectively, the "New DIP Collateral"), which security interests and liens shall be:

    a.  subject and junior to the following:  (i) the Pre-Petition First Lien Security Interests (as defined in the Existing Final DIP Order); (ii) the Senior Prior Liens (as defined in the Existing Final DIP Order); (iii) the DIP Liens (as defined in the Existing Final DIP Order); (iv) Pre-Petition First Lien Lender Adequate Protection Liens (as defined in the Existing Final DIP Order); (v) the Pre-Petition Second Lien Security Interests (as defined in the Existing Final DIP Order); (vi) the Pre-Petition Second Lien Secured Party Adequate Protection Liens (as defined in the Existing Final DIP Order); (vii) the Macquarie Liens (as defined in the Existing Final DIP Order); and (viii) any properly perfected, non-avoidable, first-priority, security interests or other liens on the New DIP Collateral existing on the Petition Date, all to the extent such liens are valid and enforceable (the liens

---

[3] The "Existing Final DIP Order" shall mean the *Final Order Granting Debtors' Motion to (1) Authorize Certain Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (2) Grant Liens and Superpriority Administrative Expense Claims to DIP Lender Pursuant to 11 U.S.C. §§ 364 and 507; (3) Provide Adequate Protection to the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party; (4) Modify Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507; and (5) Granting Related Relief* [Docket No. 479].

NAI-1503561208v1
DOCS_DE:218665.1

described in each of the foregoing clauses (a)(i) through (a)(viii), collectively, the "Permitted Liens"); and

b.  priming and senior to all other Liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other Person whatsoever (excluding, for the avoidance of doubt, the Permitted Liens), provided, however, that the New DIP Collateral shall not include and the New DIP Liens shall not extend or attach to or in any other way impair or release any rights of the UCC with respect to its pending challenge to the claims asserted by DAK (as defined in the New DIP Term Sheet).

(vii)    authorizing and directing the Obligors to pay, without further order of this Court, the principal, interest and other New DIP Obligations payable to the Lender under the New DIP Documents as they become due, subject to subordination to the DIP Obligations (as defined in the Existing Final DIP Order) and the Pre-Petition First Lien Obligations (as defined in the Existing Final DIP Order), all as and to the extent provided in the New DIP Documents, on an interim basis;

(viii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the New DIP Loan Agreement and this Interim Order;

(ix)    scheduling a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

(x)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order,

all as described more fully in the Motion and in each case, subject to the terms and conditions set forth in this Interim Order; and the Court having considered the Motion and the following declarations:   the First Day Declaration, the CEC DIP Declaration, *Declaration of Dennis Stogsdill in Support of Debtors' Motions for Entry of Orders Approving (I) the Sale of Certain Assets of the Debtors and (II) the New DIP Facility* [Docket No. 1251] (the "Stogsdill Declaration") and the *Declaration of Jonathan Brownstein in Support of Debtors' Motions for*

-4-

*Entry of Orders Approving (I) the Sale of Certain Assets of the Debtors and (II) the New DIP Facility* [Docket No. 1250] (the "Brownstein Declaration" and, together with the First Day Declaration, the CEC DIP Declaration and the Stogsdill Declaration, the "Declarations"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein on an interim basis being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the interim relief sought in the Motion being necessary and in the best interests of the Debtors, their estates and all parties in interest; and the Court having reviewed the Motion and having heard the statements in support of the interim relief requested therein at a hearing before the Court (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the interim relief granted herein; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interest of Debtors, their creditors, and their estates and is essential for closing of the sale of the Purchased Assets; and it further appearing that the Debtors are unable to secure unsecured credit on similar or more favorable terms; and upon all the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor:

**Based upon the record established at the Interim Hearing, the Court hereby makes the following findings of fact and conclusions of law:**

(A)  Petition Date.  On October 24, 2017 (the "Polymers Petition Date"), Debtor M&G Polymers filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court, and thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors

NAI-1503561208v1
DOCS_DE:218665.1

filed voluntary petitions under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage and operate their businesses and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

(B)     <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2). Venue for this case and for the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

(C)     <u>Notice</u>. The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the Motion been provided by the Obligors to the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), the Official Committee of Unsecured Creditors, the Pre-Petition First Lien Lender (as defined in the Existing Final DIP Order), the DIP Lender (as defined in the Existing Final DIP Order), the DIP Agent (as defined in the Existing Final DIP Order), the Pre-Petition Second Lien Secured Party (as defined in the Existing Final DIP Order) and all parties requesting notice pursuant to Fed. R. Bankr. P. 2002 in the Chapter 11 Cases. The Obligors submit that under the circumstances such notice of the Interim Hearing and the interim relief requested in the Motion is due and sufficient notice and complies with sections 102(1) and 364(c) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Court.

(D)     <u>Need for Postpetition Financing</u>. The Obligors have demonstrated their immediate need to obtain postpetition financing pursuant to section 364 of the Bankruptcy Code. In the absence of the financing provided by the Lender under the New DIP Documents, the

NAI-1503561208v1
DOCS_DE:218665.1

Obligors will be unable to close the sale of the Purchased Assets to the Purchaser or continue operating in chapter 11 through Closing (as defined in the APA) to their detriment and the detriment of all of the other Debtors, their respective estates and creditors, and other parties in interest. An immediate need exists for the Obligors to obtain funds from the New DIP Facility in order to consummate the sale of the Purchased Assets and preserve and maximize the value of their estates. The Obligors do not have sufficient working capital and other financing available to operate their businesses, maintain their estates' property, and administer the Chapter 11 Cases in the absence of additional post-petition financing.

(E)     <u>Immediate Irreparable Damage or Loss Will Result if Immediate Financing Is Not Obtained</u>. There will be immediate and irreparable loss or damage to the Debtors' estates if immediate financing is not obtained. Without the requested financing, the Obligors will be unable, among other things, to fund ongoing and essential working capital needs and obligations through consummation of the sale of the Purchased Assets. The Obligors must obtain the proposed New DIP Facility to meet their obligations through consummation of the sale of the Purchased Assets and to effectuate an orderly continuation of their operations in chapter 11 pending the sale of the Purchased Assets. It is in the best interests of the Debtors' estates for the Obligors to be allowed to enter into the New DIP Facility contemplated by the New DIP Documents on an immediate interim basis.

(F)     <u>No Credit Available on More Favorable Terms</u>. Given, among other things, the Debtors' current financial condition and available assets, the Obligors are unable to obtain adequate, unsecured financing from any lender on substantially similar terms or terms more favorable than those provided by the Lender in the New DIP Documents and within the time required to avoid immediate and irreparable harm to the Debtors. The Obligors have been

unable to obtain (a) unsecured credit allowable solely as an administrative expense pursuant to sections 364(b) and 503(b) of the Bankruptcy Code; (b) credit solely having priority over all other administrative expenses specified in sections 503(b) and 507(a) and (b) of the Bankruptcy Code; and (c) credit secured by a lien junior to the liens being primed by the New DIP Liens.

(G)   The Prior Liens.   The Obligors and the Lender each stipulate and acknowledge that, subject to any applicable challenge rights of any party set forth in the Existing Final DIP Order with respect to the Pre-Petition Second Lien Security Interests and the Pre-Petition Second Lien Secured Party Adequate Protection Liens: (i) the following prior liens and security interests (collectively, the "Prior Liens") with respect to certain of the New DIP Collateral exist or, in respect of clause (h), may exist as of today's date:  (a) the Pre-Petition First Lien Security Interests; (b) the Senior Prior Liens; (c) the DIP Liens; (d) Pre-Petition First Lien Lender Adequate Protection Liens; (e) the Pre-Petition Second Lien Security Interests; (f) the Pre-Petition Second Lien Secured Party Adequate Protection Liens; (g) the Macquarie Liens; and (h) any properly perfected, non-avoidable, first-priority, security interests or other liens on the New DIP Collateral existing on the Petition Date; (ii) the Prior Liens and the secured obligations related to such liens (collectively, the "Prior Obligations") were incurred and/or granted in connection with, *inter alia* (a) entry into the Pre-Petition First Lien Loan Documents (as defined in the Existing Final DIP Order); (b) entry of the Existing Final DIP Order; (c) entry into the Pre-Petition Second Lien Documents; and/or (d) other transactions that occurred prior to the filing of the Chapter 11 Cases; and (iii) the Prior Obligations relating to (a) the Pre-Petition First Lien Security Interests; (b) the DIP Liens; (c) Pre-Petition First Lien Lender Adequate Protection Liens; (d) the Pre-Petition Second Lien Security Interests; and (e) the Pre-Petition Second Lien Secured Party Adequate Protection Liens constitute valid obligations of certain of the Debtors and are secured by valid, properly perfected and unavoidable liens and security interests as described in the Existing Final DIP Order (the "Prior Pledged Collateral").  The Pre-Petition

NAI-1503561208v1
DOCS_DE:218665.1

First Lien Lender, the DIP Lender, the DIP Agent and the Pre-Petition Second Lien Secured Party do not object to the relief requested in the Motion, or the entry of this Interim Order.

(H) Section 506(c) Waiver. As a further condition of the New DIP Documents and any obligation of the Lender to make credit extensions pursuant to the New DIP Documents, upon entry of the Final Order, the Obligors and their estates shall be deemed to have waived any claim to surcharge the New DIP Collateral under section 506(c) of the Bankruptcy Code.

(I) Use of Proceeds of the New DIP Facility. Proceeds of the New DIP Facility on an interim basis shall be used strictly in accordance with the allowed disbursements line item(s) set forth in the Budget, subject to expressly permitted variances (as set forth in the New DIP Documents).

(J) Extension of Financing. The Lender has indicated a willingness to provide financing to the Obligors in accordance with the New DIP Documents and subject to (i) the entry of this Interim Order and the Final Order; and (ii) findings by this Court that such financing is essential to preserving the value of the Obligors' estates, that the Lender is a good faith lender, and that the Lender's claims, superpriority claims, security interests, and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the New DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

(K) Business Judgment; Good Faith of the Lender. The terms and conditions of the New DIP Facility and the New DIP Documents, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Obligors' exercise of prudent business judgment consistent with their fiduciary duties, and are

NAI-1503561208v1
DOCS_DE:218665.1

supported by reasonably equivalent value and consideration. The Obligors chose the Lender as a postpetition lender in good faith, without collusion, and after obtaining the advice of experienced counsel and other professionals. The Obligors and the Lender proposed and negotiated the terms of the New DIP Documents in good faith, at arm's length and without collusion. The Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and the Lender's claims, superpriority status, security interests and liens and other protections arising from or granted pursuant to this Order and the New DIP Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

(L)     Entry of Interim Order.  For the reasons stated above, the Obligors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**Based upon the foregoing findings and conclusions, and upon the Motion and the record made before this Court at the Interim Hearing, and with the consent of the Obligors and the Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor, it is hereby found, ordered, adjudged and decreed that:**

1.     Motion Granted.  The Motion is hereby granted on an interim basis, solely to the extent set forth herein.

2.     Objections Overruled.  All objections to the entry of this Interim Order to the extent not withdrawn or resolved, are hereby overruled.

3.     New DIP Documents.  The Obligors are hereby expressly and immediately authorized, empowered and directed to execute and deliver the New DIP Documents and to perform the New DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the New DIP Documents, and to execute and deliver all instruments, certificates, notes, agreements and documents which may be required or necessary for the performance by

NAI-1503561208v1
DOCS_DE:218665.1

the Obligors under the New DIP Facility and the creation and perfection of the New DIP Liens described in and provided for by this Interim Order and the New DIP Documents; in connection therewith, the Obligors are expressly and immediately authorized and empowered to incur any such New DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the New DIP Documents. The Obligors are hereby authorized and directed to do and perform all acts, pay the principal, interest and other New DIP Obligations required by the New DIP Documents and all other documents comprising the New DIP Facility as such become due under the terms of such documents, including, without limitation, other fees and charges as provided for in the New DIP Documents. Upon execution and delivery, the New DIP Documents shall represent valid and binding obligations of the Obligors, enforceable against the Obligors in accordance with their terms.

4.       <u>Authorization to Borrow on an Interim Basis</u>. In order to enable the Obligors to continue to operate in chapter 11 through the closing of the sale of the Purchased Assets, during the period from the date of this Interim Order through the date of entry of a Final Order (the "<u>Interim Period</u>") and subject to the terms and conditions of this Interim Order, the New DIP Documents, documents comprising the New DIP Facility, and the Budget, the Obligors are hereby authorized under the New DIP Facility to borrow up to a total amount of $15.0 million on an interim basis. Upon any draw under the New DIP Facility, the Obligors shall deposit the proceeds of the New DIP Facility into a segregated deposit account furnished by a depositary bank that is (a) acceptable to the Lender and (b) party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement (such account, the "<u>New DIP Cash Collateral Account</u>").

5.       <u>Application of the New DIP Proceeds</u>. The Obligors shall (a) use the proceeds of Advances only for the purpose of funding post-petition operations of the Obligors, professional

NAI-1503561208v1
DOCS_DE:218665.1

fees and expenses, and other items all strictly in accordance with the allowed disbursements line item(s) set forth in the Budget (subject to expressly permitted variances (as set forth in the New DIP Documents)) and (b) not use any proceeds of Advances for (i) any purpose adverse to or otherwise against the rights, remedies or interests of the Pre-Petition First Lien Lender, the DIP Agent, the DIP Lender, Banibu II Holdings, Inc. ("Banibu") or the Lender or (ii) any investigation or prosecution of any claim or challenge against the Pre-Petition First Lien Lender, the DIP Agent, the DIP Lender, Banibu or the Lender.

6.      Conditions Precedent.  The Lender shall have no obligation to make any loan or Advance under the New DIP Documents during the Interim Period unless each of the conditions precedent set forth in the New DIP Documents have been satisfied in full or waived in accordance with the New DIP Documents.

7.      Post-Petition New DIP Liens.  Effective immediately upon the entry of this Interim Order, the Lender is hereby granted the New DIP Liens in and upon the New DIP Collateral pursuant to sections 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, provided, however, that the New DIP Collateral shall not include and the New DIP Liens shall not extend or attach to or in any other way impair or release any rights of the UCC with respect to its pending challenge to the claims asserted by DAK (as defined in the New DIP Term Sheet). The New DIP Liens constitute valid and perfected Liens on and security interests in the New DIP Collateral, subject only and junior to the Permitted Liens, and shall be prior and senior to all other Liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other Person whatsoever, including without limitation the Prior Liens (other than the Permitted Liens).  For the avoidance of doubt, the New DIP Liens shall not attach to the Avoidance Proceeds until entry of the Final Order.

NAI-1503561208v1
DOCS_DE:218665.1

8.     Survival of Liens.  Unless otherwise agreed in writing by Lender in its sole discretion, the New DIP Liens, lien priority, administrative priorities and other rights and remedies granted to the Lender pursuant to the New DIP Documents, this Interim Order and the other loan documents shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of indebtedness by any of the Debtors (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by any dismissal or conversion of the Chapter 11 Cases, or by any other act or omission whatsoever.  Without limitation, notwithstanding any such order, financing, extension, incurrence, dismissal, conversion, act or omission:

        (a)     no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or in any other proceedings related thereto, and no priority claims, are or will be prior to or on a parity with any claim of the Lender against the Obligors in respect of any New DIP Obligation, except as set forth in the New DIP Documents and/or this Interim Order;

        (b)     the New DIP Liens in favor of the Lender set forth herein and in the other loan documents shall continue to be valid and perfected without the necessity that the Lender file or record financing statements, mortgages or otherwise perfect its New DIP Liens under applicable non-bankruptcy law.

9.     Superiority and Junior Administrative Claim Status.

        (a)     Allowed Claims.  The New DIP Obligations shall constitute, and the Lender shall have, in accordance with Section 364(c)(1) of the Bankruptcy Code, an administrative expense claim (the "New DIP Administrative Claim") that is (i) senior to any and all administrative expenses, other than the Superpriority Claims (as defined in the Existing Final DIP Order), the Pre-Petition First Lien Lender Adequate Protection Claims (as defined in the Existing Final DIP Order) and the Pre-Petition Second Lien Secured Party Adequate Protection Claims (as defined in the Existing Final DIP Order), of and unsecured claims against the Obligors now existing or hereafter arising, of any kind or nature whatsoever, including, without

NAI-1503561208v1
DOCS_DE:218665.1

limitation, all administrative expenses of the kind specified in, or arising or ordered under, sections 105, 326, 328, 503(b), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code and (ii) junior to the Superpriority Claims (as defined in the Existing Final DIP Order), the Pre-Petition First Lien Lender Adequate Protection Claims (as defined in the Existing Final DIP Order) and the Pre-Petition Second Lien Secured Party Adequate Protection Claims (as defined in the Existing Final DIP Order). The New DIP Administrative Claim shall be secured by liens on the New DIP Collateral pursuant to section 364 of the Bankruptcy Code as provided herein. For the avoidance of doubt, the New DIP Administrative Claim shall have recourse against the Avoidance Proceeds (as defined in the Existing Final DIP Order) only to the extent that the Superpriority Claims (as defined in the Existing Final DIP Order) would have had recourse against such Avoidance Proceeds pursuant to Paragraph 4(b) of the Existing Final DIP Order.

10. <u>Post-Petition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priorities of the New DIP Liens upon the New DIP Collateral, without the necessity of filing or recording any financing statement, assignment, mortgage, deed of trust, trademark security agreement, copyright security agreement, patent security agreement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the New DIP Liens or to entitle the Lender to the priorities granted herein and in the DIP Loan Agreement; <u>provided</u>, <u>however</u>, that the Obligors shall, upon the request of the Lender, execute such instruments, assignments, mortgages, deeds of trust, trademark security agreements, copyright security agreements, patent security agreements or other documents as the Lender reasonably requests and shall take such other action as may be required to perfect or to continue the perfection of the

NAI-1503561208v1
DOCS_DE:218665.1

Lender's New DIP Liens upon the New DIP Collateral pursuant to the terms of the New DIP Documents.

11.     <u>Carve-Out and Reserves</u>.

(a)     *Carve-Out*. Notwithstanding anything to the contrary herein, in the New DIP Loan Agreement or any other order of the Court to the contrary, the rights and claims of the Lender, including the New DIP Liens (and all liens junior or senior to the New DIP Liens, except for the Macquarie Liens), shall be subject and subordinate in all respects to the payment of the Carve-Out from the Carve-Out Reserves (each as defined below). Following the occurrence and during the continuance of an Event of Default or default under this Interim Order (each, a "<u>Carve-Out Trigger Event</u>"), and delivery of notice thereof (the "<u>Carve-Out Trigger Notice</u>")[4] (which may be by email) to the Borrower, the Official Committee of Unsecured Creditors (the "<u>UCC</u>") and the United States Trustee (the date of a delivery of such notice, the "<u>Carve-Out Trigger Date</u>"), the Borrower shall be entitled to use remaining availability (if any) under the New DIP Facility for the following purposes only and without duplication (the sum of (i) through (iii) below, the "<u>Carve-Out</u>"): (i) (a) the amount of accrued and unpaid professional fees and expenses incurred by persons or firms retained by the Obligors or the UCC for services rendered by such professionals for the period beginning on April 1, 2018 through and including the Carve-Out Trigger Date that is subsequently allowed by Court order, and strictly in accordance with the Budget (plus amounts for expressly permitted variances (as set forth in the New DIP Documents)) (the "<u>Professional Compensation</u>") and (b) the amount of Professional Compensation for the period beginning from and after the Carve-Out Trigger Date, which amount shall not exceed (1) $2,000,000 in aggregate with respect to the Obligors' professionals

---

[4] Upon maturity of the New DIP Obligations, the Lender shall be deemed to have delivered a Carve-Out Trigger Notice unless all amounts included in the Carve-Out have otherwise been paid or escrowed.

NAI-1503561208v1
DOCS_DE:218665.1

and (2) $515,000 in aggregate with respect to the UCC's professionals; (ii) all reasonable fees and expenses in an aggregate amount not to exceed $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) all statutory fees required to be paid by Borrower to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a).

(b)     *Creation and Funding of Carve-Out Reserves.*   The Borrower shall be authorized to establish a separate deposit account for the amounts set forth in clauses (i) through (ii) in paragraph 11(a) above (collectively, the "<u>Carve-Out Reserve</u>").   Upon the occurrence of the Carve-Out Trigger Date, the Borrower shall be authorized to transfer cash from the DIP Cash Collateral Account and/or to borrow under the New DIP Facility in an aggregate amount equal to the amount sufficient to fully fund the Carve-Out Reserve into a segregated deposit account not in the control of the Lender or the DIP Lender (as defined in the Existing Final DIP Order). Once funded in accordance with this paragraph 11(b), the Carve-Out Reserve may only (subject to the provisions of paragraph 11(a)) be used to pay those obligations for which the Carve-Out Reserve was established.   For the avoidance of doubt, all Carve-Out amounts funded pursuant to this paragraph shall be deemed a New DIP Obligation.   For the further avoidance of doubt, the actual amount available to fund (or which has been actually been funded into) the Carve-Out Reserve shall not affect or reduce the amount of the Carve-Out.

(c)     *Post-Termination Payments from the Carve-Out Reserve.*   The Carve-Out Reserve and the proceeds on deposit in respect thereof shall be available only to satisfy obligations to which the Carve-Out expressly relates, except that the Lender shall retain liens and security interests, which shall be a super-priority lien (superior to other liens), in any remaining amounts left in the Carve-Out Reserve (the "<u>Unused Carve-Out Amounts</u>") following satisfaction in full of all obligations to which the Carve-Out expressly relates, and shall receive

NAI-1503561208v1
DOCS_DE:218665.1

distributions, on demand, on account of any unpaid New DIP Obligations from such Unused Carve-Out Amounts after distributions to satisfy obligations senior to the New DIP Obligations.

12.     <u>Protections As Provided In The Existing Final DIP Order</u>.  Except as expressly provided herein, nothing herein limits any rights or protections provided to the Pre-Petition First Lien Lender, the DIP Lender, the DIP Agent or the Pre-Petition Second Lien Secured Party (as such terms are defined in the Existing Final DIP Order) pursuant to the Existing Final DIP Order, including without limitation (a) the Debtors' waiver of (i) the provisions of Section 506(c) of the Bankruptcy Code, and (ii) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code, and (b) the Debtors' granting of the Pre-Petition First Lien Lender Adequate Protection Claims and the Pre-Petition Second Lien Secured Party Adequate Protection Claims. All rights or protections afforded to the Pre-Petition First Lien Lender, the DIP Lender, the DIP Agent and the Pre-Petition Second Lien Secured Party (as such terms are defined in the Existing Final DIP Order) pursuant to the Existing Final DIP Order are hereby reaffirmed.

13.     <u>Reservation of Rights and Bar of Challenges and Claims</u>.  The Debtors' acknowledgements and stipulations with respect to the applicable Prior Obligations and the Prior Liens, as set forth above, shall be and hereby are binding upon the Debtors in all circumstances upon entry of this Interim Order.

14.     <u>Rights and Remedies Upon Event of Default</u>.  As described in the Subordination Agreement (as defined in the New DIP Term Sheet) and the subordination provisions in the New DIP Documents, after indefeasible payment in full in cash of all DIP Obligations (as defined in the Existing Final DIP Order) and Pre-Petition First Lien Obligations (as defined in the Existing Final DIP Order), any automatic stay otherwise applicable to the Lender is hereby modified so that after the occurrence of any Event of Default (as defined in the New DIP Documents) and at

NAI-1503561208v1
DOCS_DE:218665.1

any time thereafter, upon five (5) business days' prior written notice given by email or facsimile of such occurrence, in each case, given to counsel for the Borrower, the Official Committee of Unsecured Creditors, the United States Trustee, the DIP Lender (as defined in the Existing Final DIP Order) and the Pre-Petition First Lien Lender (as defined in the Existing Final DIP Order) (collectively, the "Notice Parties"), the Lender shall be entitled to exercise all rights and remedies in accordance with the New DIP Documents and this Interim Order, as applicable. Following the giving of written notice by the Lender of the occurrence of an Event of Default, the Notice Parties shall be entitled to an emergency hearing before this Court. If the right of the Lender to exercise its remedies is not contested or otherwise stayed or enjoined by this Court, after notice and hearing, the automatic stay as to the Lender shall automatically terminate at the end of such notice period. Subject to the provisions of this paragraph, upon the occurrence of an Event of Default, the Lender is authorized to exercise its remedies and proceed under or pursuant to the New DIP Documents and this Interim Order. Nothing included herein shall prejudice, impair, or otherwise affect the Lender's rights to seek any other or supplemental relief in respect of the Borrower nor the Lender's rights, as provided in the New DIP Documents, to suspend or terminate the making of any further Advances under the New DIP Documents.

15. <u>Costs and Expenses</u>. (a) All reasonable and documented out-of-pocket expenses (including, without limitation, reasonable and documented fees, disbursements and other charges of outside counsel and financial advisors) of the Lender or any of its members, solely in connection with the New DIP Facility or any of the lending transactions contemplated hereby/thereby, whether accrued on, prior to or after the Closing Date (as defined in the New DIP Term Sheet), shall be payable by the Obligors (jointly and severally) on the DIP Termination Date (as defined in the New DIP Term Sheet), whether or not the Closing Date occurs, and (b) all reasonable and documented out-of-pocket expenses (including, without

NAI-1503561208v1
DOCS_DE:218665.1

limitation, fees, disbursements and other charges of outside counsel and financial advisors) of the Lenders or any of its members for enforcement costs and documentary taxes associated with the New DIP Facility and the transactions contemplated hereby/thereby will be payable by the Obligors (jointly and severally), provided that counsel of record for the Obligors, counsel of record for the Official Committee of Unsecured Creditors and the U.S. Trustee shall have the ability to challenge the reasonableness of any portion of invoiced costs and expenses (the "Costs and Expenses" and, any such challenged amounts the "Disputed Costs and Expense") for a period of ten (10) business days (the "Review Period") after receipt of invoices therefor (which invoices may be redacted or summarized for protection of an applicable privilege or the work product doctrine) by, prior to the end of such Review Period, notifying the Lender of the objection in writing (to be followed by the filing with the Court of a motion or other pleading requesting a determination of allowance or disallowance of the Disputed Costs and Expenses) setting forth the specific basis for each objection to the Disputed Costs and Expenses. The Obligors' obligations under this paragraph shall survive the termination of the New DIP Loan Agreement and this Interim Order. The amounts payable pursuant to this paragraph 15 shall be payable on the DIP Termination Date.

16.    To the extent that the closing of the Section 363 Sale (as defined in the Bid Support Term Sheet) occurs at any time prior to the Stated Maturity Date (as defined in the Bid Support Term Sheet) the Purchaser shall deposit the Residual Wind-Down Amount (as defined in the Bid Support Term Sheet) into an escrow account governed by the Residual Wind-Down Escrow Agreement (as defined in the APA).

17.    Prohibited Use of Advance Proceeds.  The proceeds of the Advances may not be used for any purpose prohibited by paragraph 14 of the Existing Final DIP Order.

18.    Termination Date; Effect of Closing.  Immediately upon the delivery of a notice of the occurrence and continuation of an Event of Default (as defined in the New DIP Documents) by the Lender to the Obligors, (i) all New DIP Obligations shall be immediately due

NAI-1503561208v1
DOCS_DE:218665.1

and (ii) the Lender's obligations under the New DIP Documents to fund additional Advances shall cease. Upon Closing, the New DIP Obligations, all Costs and Expenses, and the Pre-Petition Second Lien Obligations (as defined in the Existing Final DIP Order) shall be deemed indefeasibly satisfied in full and the DIP Liens shall be deemed released and of no further force and effect.

19.    <u>Vacating the Automatic Stay</u>. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Obligors to grant the New DIP Liens and the New DIP Administrative Claim, and to perform such acts as the Lender may reasonably request to assure the perfection and priority of the New DIP Liens; and (b) the implementation of the terms of this Interim Order and the New DIP Documents, in each case, to the extent consistent with the terms of this Interim Order.

20.    <u>Government Acceptance</u>. Upon approval of this Interim Order by the Court, the Obligors may make filings with and give notices to all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the New DIP Documents. All federal, state and local governmental agencies, authorities and instrumentalities may accept this Interim Order as evidence of the transactions consummated hereby.

21.    <u>Right to Credit Bid</u>. Except in connection with the transactions contemplated by the APA (as defined in the New DIP Term Sheet), the Lender shall have the right to credit bid the Lender's claims and New DIP Obligations under the New DIP Loan Agreement and this Interim Order actually outstanding during the Interim Period, and such right to credit bid shall not be subject to any challenge or objection; <u>provided</u> that the Lender shall indefeasibly satisfy in full in cash the Pre-Petition First Lien Obligations, the DIP Obligations (as defined in the Existing Final DIP Order) before the exercise of such credit bid right, and the obligations under

NAI-1503561208v1
DOCS_DE:218665.1

the Macquarie Credit Agreement (the "Macquarie Obligations") (as applicable) before or in connection with any such credit bid on the DIP Collateral or the collateral securing the Macquarie Obligations (as applicable).

22.  Protections of 364(e). If any provision of this Interim Order is hereafter modified, vacated, or stayed by subsequent order of this Court or any other court for any reason, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code.

23.  Binding Effect. Except as otherwise provided in this Interim Order, the terms and provisions of this Interim Order shall, immediately upon entry of this Interim Order by this Court, become valid and binding upon the Debtors, the Lender, all other creditors of the Debtors, the Official Committee of Unsecured Creditors, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors' estates in the Chapter 11 Cases or in any subsequent chapter 7 cases.

24.  No Waiver. The failure of the Lender to seek relief or otherwise exercise its rights and remedies under the New DIP Documents, the New DIP Facility or this Interim Order, as applicable, shall not constitute a waiver of any of the Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Lender to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; or (ii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a plan; or

NAI-1503561208v1
DOCS_DE:218665.1

(iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Lender.

25. <u>No Third Party Rights</u>. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity security holders, or any direct, indirect, or incidental beneficiary.

26. <u>Waiver of Marshaling</u>. Subject to entry of the Final Order, recourse to the New DIP Collateral or other security for the New DIP Obligations will not at any time be required, and the Obligors hereby waive any right of marshaling the Obligors may have; <u>provided</u>, <u>however</u>, that Lender shall first exhaust recoveries from New DIP Collateral other than Avoidance Proceeds.

27. <u>Survival of Interim Order</u>. The terms of this Interim Order and any actions taken pursuant hereto, shall survive the entry of any order which may be entered: (a) confirming any plan in the Obligors' Chapter 11 Cases; (b) dismissing the Obligors' Chapter 11 Cases; (c) converting the Obligors' Chapter 11 Cases to any other chapter under the Bankruptcy Code; (d) withdrawing of the reference of the Obligors' Chapter 11 Cases from the Bankruptcy Court; and (e) providing for abstention from handling or retaining of jurisdiction of the Obligors' Chapter 11 Cases in the Bankruptcy Court. The terms and provisions of this Interim Order as well as the protections granted pursuant to this Interim Order and the New DIP Documents, shall continue in full force and effect notwithstanding the entry of such order, and such protections shall maintain their priority as provided by this Interim Order until all the obligations of the Obligors to the Lender pursuant to the New DIP Documents are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the New DIP Facility which survive such discharge by their terms). The New DIP Obligations shall

NAI-1503561208v1
DOCS_DE:218665.1

not be discharged by the entry of any order confirming a chapter 11 plan in the Obligors' Chapter 11 Cases until all the obligations of the Obligors to the Lender pursuant to the New DIP Documents are indefeasibly paid in full, the Obligors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtors shall not propose or support any plan with respect to the Obligors that is not conditioned upon the payment in full in cash of all of the New DIP Obligations on or prior to the effective date of such plan.

28.    <u>New DIP Documents Provisions; Inconsistency</u>.    The failure specifically to include any particular provision(s) of the New DIP Documents in this Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Obligors and the Lender that the New DIP Documents and any related documents (and the Obligors' execution of such documents) are authorized in their entirety with such amendments thereto as may be made by the parties in accordance with this Interim Order and the New DIP Documents; <u>provided, however</u>, that to the extent any provisions of the New DIP Documents are in conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

29.    <u>Amendment</u>. The Obligors and the Lender may amend, modify, supplement, or waive any provision of the New DIP Facility, subject to the following conditions: (i) the amendment, modification, or waiver must not constitute a material change to the terms of the New DIP Documents; and (ii) copies of the amendment, modification, or waiver must be served upon counsel for the Official Committee of Unsecured Creditors, counsel to the Pre-Petition First Lien Lender and the DIP Lender, and the U.S. Trustee three (3) business days prior to its effectiveness; (iii) if objected to prior to its effectiveness, must be approved by the Bankruptcy Court; and (iv) any amendment, modification or waiver shall not be adverse to the rights or interests of the Pre-Petition First Lien Lender or the DIP Secured Parties (each, as defined in the

NAI-1503561208v1
DOCS_DE:218665.1

Existing Final DIP Order) and the rights and obligations under the Pre-Petition First Lien Documents or the DIP Loan Documents (each, as defined in the Existing Final DIP Order), respectively, without the prior written consent of the Pre-Petition First Lien Lender or the DIP Secured Parties, as applicable. Any amendment, modification, or waiver that constitutes a material change, to be effective, must be approved by the Bankruptcy Court. For purposes hereof, a "material change" shall mean a change to the New DIP Documents that operates to shorten the term of the New DIP Facility or the maturity of the New DIP Obligations, to increase the aggregate amount of the commitments of the Lender under the New DIP Facility, to increase the rate of interest other than as currently provided in or contemplated by the New DIP Documents, to add specific Events of Default, to enlarge the nature and extent of remedies available to the Lender following the occurrence of an Event of Default, or any notice, consent, or right granted to the DIP Agent, the DIP Lender, the Pre-Petition First Lien Lender (each, as defined in the Existing Final DIP Order) or the Official Committee of Unsecured Creditors (including, but not limited to, rights of subordination granted to the DIP Lender and the Pre-Petition First Lien Lender pursuant to the subordination provisions of the New DIP Documents and the Subordination Agreement) hereunder, in each case, as in effect on the date of entry of this Interim Order. Without limiting the foregoing, no amendment of the New DIP Documents that postpones or extends any date or deadline therein or herein (including, without limitation, the expiration of the term of the New DIP Facility), nor any waiver of an Event of Default, shall constitute a "material change" and any such amendment may be effectuated by the Obligors and the Lender without the need for further approval of the Court. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by the Obligors and the Lender and approved by the Bankruptcy Court.

30. <u>Inbursa DIP Amendment</u>. That certain Second Amendment to the DIP Loan Agreement (as defined in the Existing Final DIP Order) substantially in the form attached to the *Notice of Filing of (I) Second Amendment to DIP Loan Agreement; (II) Revised New DIP*

-24-

*Documents; and (III) Revised Sale Documents* [Docket No. 1277, Ex. A] is hereby approved in its entirety. Notwithstanding anything to the contrary, all obligations of the New DIP Lender under the New DIP Documents are subject to the terms of subordination included in the New DIP Documents, and any subordination agreement embodying such terms, among the New DIP Lender, the Obligors, the DIP Lender (as defined in the Existing Final DIP Order), the Pre-Petition First Lien Lender (as defined in the Existing Final DIP Order) and the DIP Agent (as defined in the Existing Final DIP Order). For the avoidance of doubt, the obligations of the DIP Lender to fund the "Carve-Out" (as defined in the Existing Final DIP Order) as set forth in paragraph 12 of the Existing Final DIP Order shall be amended and superseded in their entirety by the obligations of the DIP Lender to fund the "Carve-Out" (as defined in the DIP Loan Agreement as modified by the Second Amendment to the DIP Loan Agreement) as set forth in the DIP Loan Agreement as modified by the Second Amendment to the DIP Loan Agreement.

31.     <u>Bid Support Term Sheet</u>. Nothing in this Interim Order, the New DIP Documents or the Budget shall impair or alter (i) the terms set forth in that certain Bid Support Term Sheet referenced in and appended to the *Stipulation Regarding Settlement and Agreement With Respect to Sale of Corpus Christi Assets and Related Matters* (in the event of and upon the Court's approval thereof) or (ii) the UCC's existing challenge to the claims asserted by DAK Americas, LLC or affiliates. Notwithstanding anything to the contrary in this Interim Order, the New DIP Documents, or the DIP Budget, payment of the UCC's professional fees shall be in accordance with the terms of the Bid Support Term Sheet.

32.     <u>Enforceability</u>.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Rule 9014, and shall take effect and be fully enforceable immediately upon execution hereof.

-25-

33.     **Waiver of Right to Modify.** This Interim Order shall not be modified, amended or extended without the prior written consent of the Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the Lender.

34.     **No Unauthorized Disposition of New DIP Collateral.** The Obligors shall not sell, use or dispose of the New DIP Collateral except as approved by the Lender in accordance with the New DIP Documents.

35.     **Waiver of Stay; Effectiveness.** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order, and the terms of this Interim Order shall be fully effective immediately upon entry.

36.     **Exclusive Jurisdiction.** This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the New DIP Documents and this Interim Order in all respects; **provided**, **however**, that in the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

37.     **Final Hearing.** The Obligors shall, on or before March 29, 2018 serve by U.S. mail copies of the notice of entry of this Interim Order, together with a copy of this Interim Order and proposed Final Order to counsel for the U.S. Trustee, the Official Committee of Unsecured Creditors and all parties requesting notice pursuant to Fed. R. Bankr. P. 2002 in the Chapter 11 Cases.

38.     The notice of entry of this Interim Order shall state that any party in interest objecting to the New DIP Facility or the terms of the Final Order shall file written objections

NAI-1503561208v1
DOCS_DE:218665.1

DOCS_DE:218665.1

with the United States Bankruptcy Court Clerk for the District of Delaware no later than April 11, 2018 which objections shall be served so that they are received by no later than 4:00 p.m. prevailing Eastern time, on such date by counsel for the Obligors and the Lender.

39.     The Final Hearing to consider the Motion and entry of the Final Order shall be held on April 17, 2018 at 11 a.m. before the Honorable Judge Brendan L. Shannon, United States Bankruptcy Judge.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, the Final Hearing may be cancelled, and a separate Final Order may be presented by the Obligors and entered by this Court.

Dated: March 28 , 2018

The Honorable Brendan L. Shannon
Chief United States Bankruptcy Judge

NAI-1503561208v1
DOCS_DE:218665.1