# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br>(Jointly Administered)<br><br>Hearing Date: April 25, 2018 at 11:00 a.m.<br>(prevailing Eastern Time)<br>Objection Deadline: April 17, 2018 at 4:00 p.m.<br>(prevailing Eastern Time) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING M&G RESINS USA, LLC TO ENTER INTO TRANSITION SERVICES AGREEMENT WITH THE PURCHASER OF M&G POLIMEROS BRASIL S.A. PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move the Court pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order substantially in the form attached hereto as Exhibit A, authorizing M&G Resins USA, LLC ("M&G Resins") to enter into a transition services agreement (the "Brazil TSA") with NK 016 Empreendimentos e Participações S.A. ("M&G Brazil Purchaser" and, together with the M&G Brazil Seller (as defined below), the "M&G Brazil Sale Parties"). In support of this Motion, the Debtors submit the declaration of Dennis

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

Stogsdill attached hereto as <u>Exhibit B</u> (the "<u>Stogsdill Declaration</u>") and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. General Background

2. On October 24, 2017, M&G Polymers filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "<u>Petition Date</u>"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "<u>Cases</u>"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On November 13, 2017, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "<u>Committee</u>") in these Cases. Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3), filed on October 31, 2017 and incorporated herein by reference.

### B. The Sale of M&G Brazil

4. The Debtors comprise a portion of the chemicals division of the largest privately owned chemical company in Italy—Mossi & Ghisolfi S.p.A. (together with its direct and indirect subsidiaries and the Debtors, the "<u>M&G Group</u>"). The M&G Group—specifically its chemicals

division of which the Debtors are a part—is one of the largest producers of polyethylene terephthalate ("PET") resin for packaging applications in the world. Stogsdill Decl. ¶ 6.

5. Non-Debtor affiliate M&G Chemicals Brazil S.A. ("M&G Brazil Seller") indirectly owns 100% of the equity interests in M&G Polimeros Brasil S.A. ("M&G Brazil"), which is a non-Debtor affiliate that owns the PET plant located near the Suape port in northeastern Brazil. Id. ¶ 7.

6. On March 16, 2018, the M&G Brazil Seller entered into a stock purchase agreement with the M&G Brazil Purchaser, a wholly owned subsidiary of global chemical producer Indorama Ventures Public Company Limited (such transaction, the "M&G Brazil Sale"). Id. ¶ 8.

7. The M&G Brazil Sale is subject to regulatory approvals and is anticipated to close in the second quarter of 2018. Id.

**C.    The Brazil TSA**

8. In the ordinary course of business, M&G Resins and certain of its affiliates historically provided, and continue to provide, to members of the M&G Group engaged in the PET business, including the M&G Brazil Seller, an array of information technology ("IT") services, which includes IT infrastructure, access to enterprise resource planning software furnished by the Italian subsidiary of global software company SAP SE ("SAP"), access to other software, and user support (such services, the "IT Services"). Stogsdill Decl. ¶ 9.

9. M&G Resins' provision of the IT Services to M&G Brazil Seller is continuing in the ordinary course, but will be funded by a $700,000 service fee deposit to be paid by the M&G Brazil Seller on or before March 31, 2018 (the "Seller Deposit"). Id. ¶ 10.

10. In the context of the M&G Brazil Sale, the M&G Brazil Sale Parties sought a solution for the continued provision of IT Services and related services to the M&G Brazil Purchaser for a limited period of time after the closing. Id. ¶ 11.

11. During the course of the negotiations of the M&G Brazil Sale, M&G Resins commenced discussions with the M&G Sale Parties regarding the scope and cost of various transition services that would be provided to the M&G Brazil Purchaser, culminating in the Brazil TSA, the delivery of which is a condition to the closing of the M&G Brazil Sale. Id. ¶ 12-13.

12. The key terms of the Brazil TSA, attached hereto as <u>Exhibit C</u>, are as follows:

| **Parties** | M&G Resins and the M&G Brazil Purchaser |
|---|---|
| **Transition Period** | From the later of (i) April 1, 2018 and (ii) entry of order approving the Brazil TSA (as applicable, the "<u>Start Date</u>") through the earlier of (x) June 30, 2018 and (y) such date as (i) M&G Resins and each affiliate providing the Services for any reason liquidate, cease to be able to provide the Services, or otherwise cease to exist or (ii) the Court enters an order dismissing the Case of M&G Resins and such affiliates or converting the Case of M&G Resins and each of its affiliates providing Services to a case under chapter 7 of the Bankruptcy Code (the "<u>Transition Period</u>") |
| **Consideration** | $700,000 services deposit fee payable to M&G Resins (the "<u>Purchaser Deposit</u>") (in addition to the $700,000 Seller Deposit) |

-4-

DOCS_DE:218808.1 54032/001

| Transition Services | - The IT Services |
|---|---|
| | - Site-to-site wide area network connectivity between the Suape plant and the M&G data center in Milan, Italy |
| | - Carve out of the relevant existing IT systems in order to establish standalone, integrated IT systems for the M&G Brazil Sale Parties |
| | - Integration of central IT systems with local applications and services currently used at the Suape plant |
| | - Transfer of the necessary and transferable historical data generated prior to the closing of the M&G Brazil Sale as well as all data accumulated between such closing and the transition of the M&G Brazil's IT systems to a standalone IT system (the "Cut-Over") |
| | - Provision of SAP development and quality environments based on the standalone clone system and reasonably necessary support and assistance |
| | - Provision of technical details of all required software licenses to operate and manage the standalone integrated IT and the number and type of each license. M&G Resins shall endeavor its best efforts to assist and introduce such third-party license providers to the M&G Brazil Purchaser and to assign the existing licenses to the M&G Brazil Purchaser, as applicable and to the extent possible |
| | - If requested, introduce the M&G Brazil Purchaser to applicable third-party vendors to enable the M&G Brazil Purchaser to acquire any new software licenses, services and/or hardware |
| | - Transfer of e-mails and e-mail forwarding |
| | - Reasonable access to information and personnel who are knowledgeable about the IT systems used to support the M&G Brazil business to facilitate knowledge transfer to the M&G Brazil Purchaser regarding such IT systems for 1 calendar month following the Cut-Over |
| | - Provision of a list of proposed critical changes required to get the IT system/process/applications operational and under the M&G Brazil Purchaser's control, subject to M&G Resins making any required change/update that |

DOCS_DE:218808.1 54032/001

|   |   |
|---|---|
|   | still depends on the current IT systems operated being run by M&G Resins, with M&G Resins to endeavour to use best efforts to comply which changes/updates in a reasonable timely manner<br><br>• Support of the M&G Brazil Purchaser's use acceptance testing. M&G Resins shall propose test cases and test data to perform the user acceptance testing on the basis of agreed test cases and execution plane. If user acceptance testing is completed after the Transition Period, M&G Resins shall assist the M&G Brazil Purchaser to perform such testing for 1 week during the Cut-Over<br><br>• M&G Resins will provide regular status updates to the M&G Brazil Purchaser with respect to carve-out activities and other IT Services<br><br>(collectively, the "<u>Transition Services</u>") |
| **Termination** | • Automatically at the end of the Transition Period<br><br>• By mutual agreement<br><br>• By the non-breaching party, following material breach of the Brazil TSA<br><br>• By M&G Brazil Purchaser, upon provision of 30 days' notice<br><br>• By M&G Resins, with respect to any or all of the Transition Services, if (i) such Transition Service is provided by or through an affiliate of M&G Resins and such affiliate liquidates, ceases to be able to provide such service to M&G Resins or an applicable affiliate, or otherwise ceases to exist, (ii) the Court enters an order dismissing the Cases or converting the Cases to a case under chapter 7 with respect to the affiliate of M&G Resins providing such Transition Service; (iii) the Seller Deposit has not been received on or prior to March 31, 2018; or the Purchaser Deposit has not been received within two business days of the Start Date |

## RELIEF REQUESTED

13. By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Rules 2002 and 9014 of the Bankruptcy Rules and Rules 2002-1 and 9006-1 of the Local Rules, the Debtors request that the Court enter an Order substantially in the form attached as <u>Exhibit A</u> authorizing M&G Resins to enter into the Brazil TSA.

## BASIS FOR RELIEF

### A. Entry into the Brazil TSA is Warranted Under Section 363 of the Bankruptcy Code

14. Section 363 of the Bankruptcy Code provides that the debtor may, "after a notice and a hearing . . . use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. In turn, section 105(a) of the Bankruptcy Code provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

15. It is well established that the use of estate property outside the ordinary course of business under section 363(b)(1) is entrusted to the sound business judgment of a debtor. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the [bankruptcy] court would defer to the trustee's [or debtor-in-possession's] judgment so long as there is a legitimate business justification.") (citation omitted); *Computer Sales Int'l, Inc. v. Fed. Mogul Global (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("[I]n the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction.") (citations omitted).

16. Moreover, once a debtor articulates a valid business justification for the proposed use of estate property, the bankruptcy court should give great weight to that judgment.

-7-

*See In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that a debtor in possession "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation") (citations and quotation marks omitted).

### B. The Debtors Have Demonstrated Sound Business Justification for Entry into the Brazil TSA

17. As set forth above and in the Stogsdill Declaration, the Debtors have demonstrated a sound business justification for entry into the Brazil TSA. Although the Debtors and non-Debtor affiliates within the M&G Group have historically operated as an integrated business on the basis of unified IT systems, the Debtors and M&G Brazil are now undergoing comprehensive sale processes in which potential purchasers will require a degree of certainty with respect to IT systems and Transition Services.

18. The Brazil TSA serves to facilitate the continuation of the IT systems of M&G Brazil in exchange for meaningful compensation of up to $700,000 to M&G Resins for services that were previously provided in the ordinary course of business. As set forth in the Stogsdill Declaration, M&G Resins negotiated the terms of the Brazil TSA in good faith and with the objective of maximizing the estate's compensation for providing the Transition Services thereunder. Stogsdill Decl. ¶ 14-15. The consideration of up to $700,000 provided to M&G Resins by the M&G Brazil Purchaser for the Transition Services (in addition to the Seller Deposit of $700,000) is reasonable in light of the scope and duration of the Brazil TSA. *Id.*

19. Further, courts in this and other districts regularly authorize debtors to enter into transition services agreements pursuant to section 363 of Bankruptcy Code. *See In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. Sept. 28, 2017) (authorizing debtors to enter into

and perform under a transition services agreement); *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Oct. 16, 2016) (authorizing debtor's entry into a transition services agreement in connection with a sale); *In re Boston Generating, LLC*, No. 10-14419 (SCC) (Bankr. S.D.N.Y. Nov. 24, 2010) (same); *In re Tallygenicom, L.P.*, No. 09-10266 (CSS) (Bankr. D. Del. Mar. 16, 2009) (same).

20. Accordingly, the Debtors submit that M&G Resins' entry into the Brazil TSA is warranted pursuant to section 363 of the Bankruptcy Code as a sound exercise of the Debtors' business judgment.

## REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY

21. Pursuant to Bankruptcy Rule 6004(h), the Debtors seek a waiver of any stay of the effectiveness of an Order approving the relief sought in this Motion. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is necessary and appropriate to maximize the value of the Debtors' estates for the benefit of their economic stakeholders. Accordingly, the Debtors submit that ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h), to the extent that such Rule applies.

## NOTICE

22. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) those Official Committee of Unsecured Creditors; (c) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (d) Magnate S.à r.l. and its counsel, Kirkland & Ellis LLP and Klehr Harrison Harvey Branzburg LLP; (e) DAK Americas LLC and its counsel,

Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP; (f) Trimont Real Estate Advisors, LLC and its counsel, Thompson & Knight LLP, (g) Control Empresarial de Capitales, S.A. De C.V., and Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP and Young Conaway Stargatt & Taylor, LLP; (h) Macquarie Investments US Inc. and its counsel, Sidley Austin LLP and Ashby & Geddes, P.A., (i) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C.; (j) the M&G Brazil Purchaser; (k) the M&G Brazil Seller; and (l) all persons and entities that have filed a request for service of filings in these Cases pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

23. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court an order substantially in the form attached hereto as <u>Exhibit A</u> and grant such other and further relief to the Debtors as the Court may be appropriate.

Dated: April 3, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Michael J. Cohen
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
mcohen@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

*Co-Counsel for the Debtors and Debtors in Possession*