# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17- 12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) SETTLEMENT AGREEMENT BY AND BETWEEN MOSSI & GHISOLFI INTERNATIONAL S.Á.R.L., M&G POLIMEROS BRASIL, S.A., M&G CHEMICALS, S.A., M&G POLIMEROS MEXICO, S.A. DE C.V. AND ALOKE EMPREENDIMENTOS E PARTICIPAÇÕES LTDA. AND (II) RELATED LETTER AGREEMENT BY AND BETWEEN MOSSI & GHISOLFI INTERNATIONAL S.Á.R.L., M&G CHEMICALS, S.A. AND M&G POLIMEROS BRASIL, S.A.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), approving (i) the settlement agreement (the "Settlement Agreement")[2] by and between (a) Mossi & Ghisolfi International S.à r.l.("M&G International S.à r.l" or "M&G International"), (b) M&G Polimeros Brasil, S.A. ("M&G Brasil"), (c) M&G Chemicals, S.A. ("M&G Chemicals"), (d) M&G Polimeros Mexico, S.A. de C.V. ("M&G Mexico" and together with M&G International and M&G Chemicals, the "Other Obligors") and

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] A copy of the Settlement Agreement is attached to the Proposed Order as Exhibit 1.

(e) Aloke Empreendimentos e Participações Ltda. ("NewCo" and together with the Other Obligors and M&G Brasil, the "Parties") and (ii) a related side letter agreement, in substantially the form attached to the Proposed Order as Exhibit 2 (the "Letter Agreement"), by and between M&G International, M&G Chemicals and M&G Brasil.  In support of this Motion, the Debtors submit the *Declaration of Marco Ghisolfi in Support of the Debtors' Motion for Entry of an Order Approving (I) Settlement Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Polimeros Brasil, S.A., M&G Chemicals, S.A., M&G Polimeros Mexico, S.A. de C.V. and Aloke Empreendimentos e Participações Ltda. and (II) Related Letter Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Chemicals, S.A. and M&G Polimeros Brasil, S.A.*, attached hereto as Exhibit B (the "Ghisolfi Declaration"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.	This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.	General Background

2.	On October 24, 2017, Debtor M&G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B.     The Inbursa Loan Agreement[3]

4.     On March 8, 2016, Debtor M&G International, as obligor, and Debtor M&G Chemicals and non-Debtor affiliates M&G Brasil and M&G Mexico, as joint obligors and guarantors, entered into that certain loan agreement (as amended, the "Inbursa Loan Agreement" and together with any ancillary documents related thereto, the "Inbursa Loan Documents") with Banco Inbursa, S.A., Institución de Banca Múltiple, Grupo Financiero Inbursa ("Inbursa"). *See* Ghisolfi Decl., ¶ 6. The principal amount due under the Inbursa Loan Agreement is $120 million, plus applicable fees and interest. *See id.* The obligations due under the Inbursa Loan Agreement are secured by a lien on M&G Brasil's PET plant in Suape, Brazil (the "Suape Plant"). *See id.*

### C.     The M&G International Payables and the Brasil Payables

5.     In the course of intercompany dealings between M&G International and M&G Brasil, (a) M&G Brasil holds an intercompany claim in the aggregate amount of approximately $5 million against M&G International (the "M&G International Payables") and (b) M&G International holds an intercompany claim in the aggregate amount of approximately

---

[3] For the avoidance of doubt, the Debtors reserve the right to dispute any claims, objections, defenses, or counterclaims that Inbursa (as defined below), M&G Brasil, M&G Mexico and/or NewCo may raise in the event that the Settlement Agreement is not approved.

$52 million against M&G Brasil (the "Brasil Payables"). *See* Ghisolfi Decl., ¶ 7. The M&G International Payables are comprised of (a) obligations due under that certain PTA Supply Agreement executed on August 9, 2007 (as subsequently amended) in the aggregate amount of approximately $5,321,169.60[4] and (b) $38,666.67 in interest due under an intercompany credit facility executed on August 29, 2017 between M&G Brasil and M&G International (the "Intercompany Credit Facility").[5] *See id.* The M&G Brasil Payables are comprised of the following:

  (a) approximately $460,000 in undocumented debt notes arising out of Chemtex do Brasil Ltda. borrowing personnel employed by M&G Polimeri Italia S.p.A. to provide services in connection with construction of the Suape Plant;[6]

  (b) approximately $3.1 million in merger fees due in connection with the merger of M&G Brasil into M&G Poliester S.A. on July 25, 2007, as evidenced by a certain *Addendum Letter*, dated April 2, 2012, sent from M&G Finanziaria S.r.l. ("Finanziaria") to M&G Resinas Participações Ltda., and assigned to M&G International on September 30, 2013 (together with the assignment letter, the "Addendum Letter");[7]

  (c) approximately $9.8 million in interest due in connection with two intercompany loans formalized between M&G Resinas Participações Ltda. (referred to as "MGLOBAL Participações LTDA" prior to May 28, 2008) and M&G International through (i) exchange agreement executed on March 31, 2013 and financial transaction record no. TA590574 and (ii) exchange agreement

---

[4] A copy of the PTA Supply Agreement (including any amendments thereto) is attached to the Ghisolfi Declaration as Exhibit 1.

[5] A copy of the Intercompany Credit Facility is attached to the Ghisolfi Declaration as Exhibit 2.

[6] Prior to the Petition Date, Chemtex do Brasil Ltd. was merged into M&G Resinas Participações Ltda., itself which was subsequently merged into M&G Brasil in 2017, at which time the debt notes became M&G Brasil's obligations. In connection with an intercompany restructuring in 2010, M&G Polimeri Italia S.p.A. assigned its rights to such debt notes to M&G International.

[7] A copy of the Addendum Letter is attached to the Ghisolfi Declaration as Exhibit 3.

executed on March 31, 2013 and financial transaction record no. TA590578;[8]

(d) approximately $30.6 million due under a certain PET Sale and Purchase Agreement dated August 9, 2007 for unpaid sales commissions due under article 9 of such agreement;[9] and

(e) approximately $7.9 million due under a Technical Services Contract dated January 2, 2009 between M&G Brasil and Finanziaria,[10] which governed Finanziaria's implementation of, and M&G Brasil's use of, an informative integrated technology system commonly referred to as the SAP System, and which was assigned from Finanziaria to M&G International by letter agreement dated November 28, 2014 (the "Assignment Letter").[11]

*See* Ghisolfi Decl., ¶ 7.

**D. The Restructuring of M&G Brasil**

6. In connection with the restructuring of M&G Brasil, M&G Brasil has entered into a series of complex agreements and transactions. *See* Ghisolfi Decl., ¶ 8. On April 4, 2018, Inbursa and M&G Brasil entered into a release and assignment agreement (the "Release and Assignment Agreement"), which, in relevant part, provides that the $120 million due under the Inbursa Loan Agreement will be divided as follows: (a) M&G Brasil will become solely responsible for $30 million and (b) the Other Obligors will remain jointly and severally responsible for the remaining $90 million (the "Inbursa Loan Restructuring"). *See id.* Contemporaneously therewith, M&G Brasil, Magnate S.à r.l. ("Magnate"), and Banco Inbursa de Investimentos S.A. entered into a restructuring support agreement with Inbursa (the "RSA").

---

[8] These two intercompany loans were originally disbursed in 2007 and were used mainly for working capital financing at the beginning of Suape Plant operations. They were subsequently assigned from M&G Polimeri Italia S.p.A. to M&G International's predecessor on December 17, 2009. *See* Ghisolfi Declaration, ¶ 7(c).

[9] A copy of the PET Sale and Purchase Agreement is attached to the Ghisolfi Declaration as Exhibit 4.

[10] A copy of the Technical Services Contract is attached to the Ghisolfi Declaration as Exhibit 5.

[11] A copy of the Assignment Letter is attached to the Ghisolfi Declaration as Exhibit 6.

Pursuant to the RSA, M&G Brasil has agreed to purchase all of Inbursa's rights and other obligations—as amended under the Release and Assignment Agreement—under the Inbursa Loan Agreement (the "Inbursa Loan Purchase").  *See id.*

7.  Upon consummation of the Inbursa Loan Restructuring and the Inbursa Loan Purchase, and subject to certain conditions, (a) M&G Brasil's $30 million in obligations under the Inbursa Loan Agreement will be extinguished and (b) the Other Obligors will be responsible, jointly and severally, for (i) an outstanding principal amount of $90 million due under the Inbursa Loan Agreement and (ii) accrued but unpaid interest and fees, pursuant to the provisions of the Inbursa Loan Agreement, as amended by the RSA (the "Remaining Loan Obligations"). *See* Ghisolfi Decl., ¶ 9.  Finally, upon consummation of all of these transactions, M&G Brasil will spin-off certain of its assets and liabilities to NewCo (the "Spin-Off").  Pursuant to the Spin-Off, M&G Brasil will transfer to NewCo, among other things, all of its rights in, and obligations under, the Inbursa Loan Documents, the Release and Assignment Agreement, the RSA, the Brasil Payables and the M&G International Payables.[12]  *See id.*

### E. The Settlement Agreement

8.  Upon consummating each of the transactions contemplated by the Spin-Off, the Parties have proposed to enter into the Settlement Agreement.  In short, the Settlement Agreement contemplates the full release of the Other Obligors' obligations under the Inbursa Loan Agreement (*i.e.*, a $90 million obligation plus applicable fees and interest) and

---

[12]  As a result of the Spin-Off, (a) NewCo shall be M&G Brasil's successor-in-interest with respect to, *inter alia*, M&G Brasil's rights and obligations under the Inbursa Loan Documents, the Release and Assignment Agreement and the RSA, (b) the Remaining Loan Obligations shall be owed by the Other Obligors to NewCo, (c) the M&G International Payables shall be owed by M&G International to NewCo and (d) NewCo shall be M&G Brasil's successor-in-interest with respect to M&G Brasil's obligations to pay the Brasil Payables. *See id.* M&G International understands that the transactions contemplated by the Spin-Off also anticipate that Magnate will provide M&G Brasil with interim financing, subject to certain conditions.

M&G International's obligation to pay the M&G International Payables (*i.e.*, an approximately $5 million obligation) in exchange for the full release of M&G Brasil from its obligation to pay the Brasil Payables (*i.e.,* an approximately $52 million obligation). The principal terms of the Settlement Agreement are as follows:[13]

    (a) ***Satisfaction in Full of Remaining Loan Obligations and M&G International Payables***.

        (i) Subject to the terms and conditions contained in the Settlement Agreement and for good and valuable consideration, including the satisfaction of the Brasil Payables pursuant to section 2 of the Settlement Agreement, upon the Effective Time (as defined below), the Remaining Loan Obligations and all Inbursa Loan Documents (including for the avoidance of doubt the Promissory Notes issued by the corresponding Other Obligors) shall, in each case, automatically and irrevocably be terminated, cancelled and of no further force and effect, and the Remaining Loan Obligations shall be deemed to be satisfied and repaid in full. No later than the Business Day following the Effective Time, NewCo shall return (*restituir*), or cause to be returned, to the Other Obligors, the original of the Promissory Notes (*Pagarés*, as defined in the Inbursa Loan Agreement) currently documenting the Remaining Loan Obligations to the corresponding address for such applicable Other Obligors. *Settlement Agreement*, § 1(a).

        (ii) As a consequence of the foregoing, upon the Effective Time, all liens or other security interests granted under the Inbursa Loan Documents (including liens or other security interests securing the repayment of the Remaining Loan Obligations) shall be automatically terminated and released. In accordance with section 5 of the Settlement Agreement, each of the Parties, upon receipt of a request from any other Party, shall sign, or cause to be signed, all further documents, do, or cause to be done, all further acts, and provide all assurances as may reasonably be necessary or desirable to terminate any Inbursa Loan Documents or any security documents, security interests or liens relating to the Inbursa Loan Documents. *Id.* at § 1(b).

        (iii) Subject to the terms and conditions contained in the Settlement Agreement and for good and valuable consideration, including the satisfaction of the Brasil Payables pursuant to section 2 of the Settlement Agreement, upon the Effective Time, the M&G International Payables, and any underlying contracts or other unwritten agreements giving rise to the

---

[13] The following summary is qualified in its entirety by reference to the provisions of the Settlement Agreement. In the event of any inconsistencies between the provisions of the Settlement Agreement and the terms set forth herein, the terms of the Settlement Agreement shall govern.

M&G International Payables (such contracts and unwritten agreements, collectively, the "M&G International Payables Documents"), shall, in each case, automatically and irrevocably be terminated, cancelled and of no further force and effect, and the M&G International Payables shall be deemed to be satisfied and paid in full. *Id.* at § 1(c).

(b) ***Satisfaction in Full of the Brasil Payables.***

    (i) Subject to the terms and conditions contained in the Settlement Agreement and for good and valuable consideration, including the satisfaction of the Remaining Loan Obligations and the M&G International Payables pursuant to section 1 of the Settlement Agreement, upon the Effective Time, the Brasil Payables, and any underlying contracts or other unwritten agreements giving rise to the Brasil Payables (such contracts and unwritten agreements, collectively, the "Brasil Payables Documents"), shall, in each case, automatically and irrevocably be terminated, cancelled and of no further force and effect, and the Brasil Payables shall be deemed to be satisfied and paid in full. *Id.* at § 2(a).

    (ii) After giving effect to section 1 (herein section (a)) and section 2(a) (herein section (b)(i)) of the Settlement Agreement, each Party covenants and agrees, effective as of the date that the Settlement Agreement is approved by this Court, that there shall be no additional indebtedness or payables owing to, or to be owing from, one Party to another Party in respect of the Inbursa Loan Documents, the M&G International Payables Documents or the Brasil Payables Documents. *Id.* at § 2(b).

    (iii) Sections 1 (herein section (a)) and 2 (herein section (b)) of the Settlement Agreement are interdependent and are only valid and of full force and effect one with the other. *Id.* at § 2(c).

(c) ***Mutual Release***. Effective upon the Effective Time, each of the Parties irrevocably and unconditionally releases, discharges and forever acquits each other Party, its respective officers, directors, agents and employees and their respective affiliates, successors and assigns from all obligations to such other Parties (and their respective successors and assigns) and from any and all claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions, whether in law or in equity, that such Parties have, or that their successors and assigns hereafter can or may have against the other Parties, their respective officers, directors, agent or employees and their respective affiliates, successors and assigns, including, without limitation, any claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions in connection with (i) the Inbursa Loan Documents, (ii) the Brasil Payables Documents, (iii) the M&G International Payables Documents and (iv) the Remaining Loan Obligations; *provided* that, notwithstanding anything to the contrary in the Settlement Agreement, in no event shall any Party release any other Party from

any claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions arising from the fraud or willful misconduct on the part of such other Party. *Id.* at § 4.

(d) **_Effectiveness_**. Notwithstanding anything to the contrary in the Settlement Agreement, no Party thereto will be obligated under or bound by any terms of the Settlement Agreement unless and until the entry into and performance under the Settlement Agreement by M&G International and M&G Chemicals is approved and authorized by this Court. *Id.* at § 6(a).

(e) **_Effective Time_**. As used in the Settlement Agreement, the "Effective Time" means the time upon which (i) the Purchase Conditions Precedent (as defined in the Settlement Agreement) have been satisfied and the transactions contemplated by the Release and Assignment Agreement, the RSA and the Spin-Off have been consummated and (ii) the transactions of M&G International and M&G Chemicals contemplated under the Settlement Agreement have been duly authorized and approved by this Court. *Id.*

### F. The Letter Agreement

9. Subsequent to the finalization of the Settlement Agreement and in connection with M&G International's alleged obligations arising out of the M&G International Payables, and certain amounts that M&G Chemicals allegedly owes M&G Brasil, M&G Brasil filed (a) proof of claim number 805 against M&G International in the amount of $37,797,593.10 for receivables generated from price adjustments for PTA purchases under the PTA Supply Agreement,[14] (b) proof of claim number 816 against M&G International in the amount of $38,666.67 for unpaid interest under the Intercompany Credit Facility, (c) proof of claim number 817 against M&G International in the amount of $182,000,000.00 and (d) proof of claim number 806 against M&G Chemicals in the amount of $182,000,000.00 (collectively, the "M&G Brasil Claims"). M&G Brasil informed M&G International and M&G Chemicals that it filed the M&G Brasil Claims out of an abundance of caution and in order to preserve their rights in the event that the

---

[14] As set forth above, in connection with negotiating the Settlement Agreement, the Parties determined that M&G International owes the net amount of $5,321,169.60 under the PTA Supply Agreement.

Parties failed to execute the Settlement Agreement and/or in the event that the Settlement Agreement is not approved by the Court.

10. By the Letter Agreement, M&G International, M&G Chemicals and M&G Brasil have agreed that, upon entry of the Proposed Order (or any order approving the Settlement Agreement) becoming a final and non-appealable order, M&G Brasil will agree to withdraw the M&G Brasil Claims, with prejudice. *See* Letter Agreement.

## RELIEF REQUESTED

11. The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, in substantially the form of the Proposed Order, approving the Settlement Agreement and an agreement in substantially the form of the Letter Agreement.

## BASIS FOR RELIEF

12. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983). Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

13. Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

14. When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "<u>Martin Factors</u>"):

    (a)    the probability of success in litigation;

    (b)    the likely difficulties of collection;

    (c)    the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

    (d)    the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it

clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

15. While bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

16. As set forth in greater detail below, the Debtors believe that the weight of the Martin Factors favors approval of the Settlement Agreement and the Letter Agreement. As such, the Debtors respectfully submit that the Settlement Agreement and the Letter Agreement fall well above the lowest point in the range of reasonableness and should be approved by this Court.

17. *Probability of Success.* Under the Settlement Agreement, Debtor M&G International proposes to release an intercompany claim in the aggregate amount of

approximately $52 million (*i.e.*, the Brasil Payables) to resolve its obligation to pay $120 million (plus interest and fees) due under the Inbursa Loan Documents and an intercompany claim in the aggregate amount of approximately $5 million (*i.e.*, the M&G International Payables).[15] *See* Ghisolfi Decl., ¶ 10. Absent M&G International's and M&G Chemicals' entry into the Settlement Agreement, M&G International would be forced to litigate complex issues relating to the validity of, and the amounts due under, the Inbursa Loan Agreement, the M&G International Payables Documents and the Brasil Payables Documents.[16] *See id.*

18. While M&G International and M&G Chemicals believe that they have strong defenses with respect to any claims that might be asserted against them by M&G Brasil (including claims resolved under the Settlement Agreement and the Letter Agreement), they also recognize that should a court rule against them on these points, M&G Brasil could be entitled to a substantial allowed unsecured claim against their estates. *See* Ghisolfi Decl., ¶ 11. The Settlement Agreement and the Letter Agreement eliminate this risk. Accordingly, this factor weighs in favor of approval of the Settlement Agreement and the Letter Agreement.

19. *Difficulties of Collection.* If the Court does not approve the Settlement Agreement, Debtor M&G International will be forced to pursue the recovery of the Brasil

---

[15] As set forth above, the Letter Agreement results in M&G Brasil withdrawing, with prejudice, the M&G Brasil Claims.

[16] For example, pursuant to two separate letter agreements between M&G International and M&G Brasil dated July 5, 2012 and October 1, 2012, respectively (together, the "Brasil Payables Letter Agreements"), the parties agreed to suspend "any payment and/or request of payment over sales commission due and becoming due" with respect to approximately $30 million of the Brasil Payables. *See* Ghisolfi Decl., Ex. 7-A & Ex. 7-B. Under the Brasil Payables Letter Agreement, the parties further agreed that the relevant Brasil Payables would "be interest free" and would "have an indefinite due date in respect of [their] payment." *Id.* M&G Brasil has asserted that the result of the Brasil Payables Letter Agreements, therefore, was that "the payment of the outstanding receivable [would be] considered suspended and future commission [would] be accrued and the relevant payment suspended until a new communication [was] formalized and agreed," and as of the filing of this Motion, no such communication has been formalized or agreed to by M&G Brasil. Additionally, M&G Brasil asserts that approximately $9 million of such Brasil Payables concern unpaid interest that has been previously forgiven and/or capitalized. *See* Ghisolfi Decl., ¶ 10, fn. 13.

Payables.  In order to collect the Brasil Payables, M&G International would likely be required to commence proceedings in Brazil.  Such a process would undoubtedly be expensive and time consuming.  Among other things, M&G International anticipates that M&G Brasil would vigorously contest an effort to collect the Brasil Payables and understands that M&G Brasil would assert significant counterclaims that would need to be resolved in connection with any such dispute.[17]  *See* Ghisolfi Decl., ¶ 12.  Moreover, M&G International understands that if it were to pursue collection of these intercompany payables in Brazil, M&G Brasil may be forced to commence formal insolvency proceedings (referred to as a "*Recuperacao Judicial*")—the result of which could be recharacterization of the Brasil Payables under Brazilian law as equity contributions from an affiliate.  *See id.*  Finally, M&G International has also been informed that M&G Brasil requires additional bridge financing to sustain its going concern operations pending the Spin-Off.  *See id.*  According to M&G Brasil, such financing—which itself is also necessary to stave off the commencement of a *Recuperacao Judicial*—is unavailable in the absence of the Settlement Agreement and the Court's approval thereof.  *See id.*  As a result, this factor weighs in favor of approval of the Settlement Agreement and the Letter Agreement.

20. *Complexity of Litigation.*  As set forth above, Debtors M&G International's and M&G Chemicals' entry into the Settlement Agreement resolves the validity of, and amounts owed under, (a) the Inbursa Loan Agreement, (b) the Brasil Payables Documents and (c) the M&G International Payables Documents (including the withdrawal of the M&G Brasil Claims through the Letter Agreement).  Litigating each of these complex issues would (a) be costly, (b) require interpretation of the Brasil Payables Documents and the M&G International Payables

---

[17]  M&G Brasil has asserted that such counterclaims stem from certain corporate actions allegedly taken by M&G International and certain other Debtors that M&G Brasil alleges caused damage to their Brazilian businesses.  *See* Ghisolfi Decl., ¶ 12, fn. 14.

Documents and (c) require the presentation of evidence on issues relating to the underlying claims resolved by the Settlement Agreement, including potentially expert witness testimony on, among other matters, the law governing the Inbursa Loan Agreement (*i.e.*, Mexican law), the Brasil Payables Documents (*i.e.* Brazilian, Luxembourg and Italian law) and the M&G International Payables Documents (*i.e.*, Luxembourg law).  *See* Ghisolfi Decl., ¶ 10, fn. 13.  The Settlement Agreement avoids complicated and costly litigation on these matters.  Thus, this factor weighs heavily in support of approval of the Settlement Agreement and the Letter Agreement.

21. *Paramount Interests of Creditors.*  Finally, the Settlement Agreement is in the paramount interest of Debtor M&G International's creditors.  The Settlement Agreement (a) achieves the consensual resolution of over $125 million in claims against M&G International's estate in exchange for the release of a heavily disputed $52 million right to payment and (b) saves Debtors M&G International's and M&G Chemicals' estates the cost of litigating issues related to the Inbursa Loan Agreement, the Brasil Payables and the M&G International Payables.  Further, the Letter Agreement formalizes the withdrawal of the M&G Brasil Claims—asserted in an amount in excess of $300 million—with prejudice.

22. For these reasons, entry into the Settlement Agreement and the Letter Agreement is a sound exercise of Debtors M&G International's and M&G Chemicals' business judgment, is in best interests of their creditors and their estates and falls well above the lowest point in the range of reasonableness.  Accordingly, the Debtors respectfully request that the Court approve and authorize Debtors M&G International's and M&G Chemicals' entry into the Settlement Agreement, and M&G International's and M&G Chemical's entry into the Letter Agreement.

**NOTICE**

23. Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; (h) M&G Brasil; and (i) M&G Mexico. The Debtors submit that no other or further notice need be provided.

**NO PRIOR REQUEST**

24. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

| | |
|---|---|
| Dated: April 20, 2018 | PACHULSKI STANG ZIEHL & JONES LLP |
| | /s/ Joseph M. Mulvihill |
| | Laura Davis Jones (DE Bar No. 2436) |
| | James E. O'Neill (DE Bar No. 4042) |
| | Joseph M. Mulvihill (DE Bar No. 6061) |
| | 919 N. Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899-8705 (Courier 19801) |
| | Telephone: (302) 652-4100 |
| | Facsimile: (302) 652-4400 |
| | Email: ljones@pszjlaw.com |
| | joneill@pszjlaw.com |
| | jmulvihill@pszjlaw.com |
| | |
| | and |
| | |
| | JONES DAY |
| | Scott J. Greenberg |
| | Michael J. Cohen |
| | Stacey L. Corr-Irvine |
| | 250 Vesey Street |
| | New York, NY 10281 |
| | Telephone: (212) 326-3939 |
| | Facsimile: (212) 755-7306 |
| | Email: sgreenberg@jonesday.com |
| | mcohen@jonesday.com |
| | scorrirvine@jonesday.com |
| | |
| | and |
| | |
| | Carl E. Black |
| | 901 Lakeside Avenue |
| | Cleveland, OH 44114 |
| | Telephone: (216) 586-7035 |
| | Facsimile: (216) 579-0212 |
| | Email: ceblack@jonesday.com |
| | |
| | Co-Counsel for the Debtors and Debtors in Possession |