# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref: Docket Nos. 1387 and 1456 |

## DEBTORS' REPLY TO
## PRELIMINARY OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) SETTLEMENT AGREEMENT BY AND BETWEEN MOSSI & GHISOLFI INTERNATIONAL S.A.R.L., M&G POLIMEROS BRASIL, S.A., M&G CHEMICALS S.A., M&G POLIMEROS MEXICO, S.A. DE C.V. AND ALOKE EMPREENDIMENTOS E PARTICIPACOES LTDA. AND (II) RELATED LETTER AGREEMENT

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby reply (this "Reply") to the Official Committee of Unsecured Creditors' (the "Committee") preliminary objection (Docket No. 1456) (the "Objection") to the *Debtors' Motion for Entry of an Order Approving (I) Settlement Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Polimeros Brasil, S.A., M&G Chemicals, S.A., M&G Polimeros Mexico, S.A. de C.V. and Aloke Empreendimentos e Participações Ltda. and (II) Related Letter Agreement by and between Mossi & Ghisolfi International S.Á.R.L. and M&G Polimeros Brasil, S.A.* (Docket

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

No. 1387) (the "Motion").[2] In support of this Reply, the Debtors submit (i) the Supplemental Ghisolfi Declaration[3] and (ii) the Goebel Declaration,[4] and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. By the Motion, Debtors M&G International and M&G Chemicals (together, the "Settling Debtors") seek approval of the Settlement Agreement which (a) eliminates an undisputed unsecured claim of over $120 million against two debtors (including M&G International, who is a principal obligor thereunder); (b) eliminates additional disputed claims of $364 million;[5] (c) offsets an additional $5.3 million owing by M&G International to M&G Brasil; (d) releases $52 million in claims that M&G International has against M&G Brasil, claims that have potentially unsurmountable obstacles, either because they have been capitalized, represent aging collectibles that have remained uncollected for tax reasons and/or for which payment and interest has been suspended for years;[6] and (e) avoids the cost and expense

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

[3] The "Supplemental Ghisolfi Declaration" is the *Supplemental Declaration of Marco Ghisolfi in Support of the Debtors' Motion for Entry of an Order Approving (I) Settlement Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Polimeros Brasil, S.A., M&G Chemicals, S.A., M&G Polimeros Mexico, S.A. de C.V. and Aloke Empreendimentos e Participações Ltda. and (II) Related Letter Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Chemicals, S.A. and M&G Polimeros Brasil, S.A.*, attached hereto as Exhibit A.

[4] The "Goebel Declaration" is the *Declaration of Marianne Goebel in Support of the Debtors' Motion for Entry of an Order Approving (I) Settlement Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Polimeros Brasil, S.A., M&G Chemicals, S.A., M&G Polimeros Mexico, S.A. de C.V. and Aloke Empreendimentos e Participações Ltda. and (II) Related Letter Agreement by and between Mossi & Ghisolfi International S.Á.R.L., M&G Chemicals, S.A. and M&G Polimeros Brasil, S.A.*, attached hereto as Exhibit B.

[5] The $364 million represents claims of $182 million filed against M&G International and M&G Chemicals by M&G Brasil (referred to in the Objection as the "Brasil POCs"). Upon approval of the Settlement Agreement, approximately $37 million in additional claims will also be withdrawn (referred to in the Objection as the "Additional POCs"). While the Additional POCs are already covered by the Settlement Agreement, and the Brasil POCs are duplicative, such claims would need to be resolved through the claims objection process or otherwise if not resolved pursuant to the Settlement Agreement.

[6] Under the Settlement Agreement, M&G Chemicals is *only* releasing claims, and obtaining a release, concerning the Inbursa Loan Agreement.

associated with litigating disputes that would implicate the laws of at least three countries (Italy, Luxembourg and Brazil).

2.       The directors of each of the Settling Debtors' boards properly discharged their fiduciary duties in evaluating the settlement and determining that it was in the best interests of the Settling Debtors and their estates. The directors were given a thorough written presentation that explained and evaluated the claims being released under the settlement and the benefits to be obtained should the settlement be approved. The relevant board minutes reflect that the directors—including two independent board members of M&G Chemicals—evaluated the proposed settlement with care prior to voting unanimously in favor thereof. The Committee's suggestion that the directors failed to properly evaluate the settlement is baseless.

3.       The Committee also asserts that the Settlement Agreement should not be approved because M&G International and M&G Chemicals failed to disclose in the Motion certain "gentlemen's agreements" that are outside the scope of the Settlement Agreement. The Committee ignores that these agreements will only *benefit* the Settling Debtors if they materialize, strengthening the case for approval of the Settlement Agreement. Indeed, one such benefit materialized after the directors' approval of the settlement, and through it, M&G International will obtain a release of $17 million in claims that Banco do Brazil has against it as guarantor under a certain credit agreement with M&G Brasil. *See* Suppl. Ghisolfi Decl., ¶ 10.

4.       Further, while the Committee highlights the releases contained in the Settlement Agreement as being overly broad, the Settling Debtors have proposed amendments to address those concerns and clarify that (a) no Debtor is releasing any claim against another Debtor;

(b) no Debtor is releasing a claim against its directors and/or officers; and (c) no Debtor is releasing any claim that it has against Magnate S.à r.l.

5. M&G Chemicals, M&G International, M&G Brasil and their respective advisors have made every effort to provide the Committee with all the documents that it has requested and answer any of its questions concerning the Settlement Agreement and certain ancillary transactions referenced therein. The Committee nonetheless focuses much of the Objection on benefits that an ancillary transaction provides to a preferred equity holder of M&G Chemicals Brazil S.A., a non-debtor affiliate of M&G Chemicals and the parent of M&G Brasil (a non-debtor affiliate of M&G Chemicals), rather than on the benefits that the Settlement Agreement brings to the Settling Debtors. However, none of the Debtors are parties to that ancillary transaction and the scope of any ancillary agreement is not before the Court. The Committee's objection must be overruled.

**REPLY**

**A.     The Settling Debtors and M&G Brasil Have Agreed to Clarify the Releases**

6. The Committee objects to the Motion on the basis that the releases contained in the Settlement Agreement are overly broad. *See* Obj., ¶¶ 18-20. Specifically, the Committee suggests that the release provision in the Settlement Agreement can be read to release (a) all claims between M&G International and M&G Chemicals, (b) all claims that M&G Chemicals has against Magnate, including an alleged $56 million claim arising from dividends that Magnate received as a preferred equity holder of M&G Chemicals Brazil S.A. and (c) all claims that M&G International and M&G Chemicals have against their directors, including Mr. Marco Ghisolfi.

7. While the Settling Debtors never intended for the releases in the Settlement Agreement to be construed so broadly, in order to address the Committee's concerns, the Settling

Debtors intend to amend the Settlement Agreement to clarify the scope of such releases,[7] consistent with the provisions in the Proposed Order (as amended).[8]  Specifically, the Settling Debtors have added the following provision to the Proposed Order:

> For the avoidance of doubt, nothing in the Settlement Agreement shall release any claims or causes of action that (a) any Debtor has against another Debtor, (b) any Debtor has against any director or officer of any Debtor, (c) any Debtor has against Magnate S.à r.l. or (d) any claims or causes of action that Magnate S.à r.l. has against any Debtor.

The inclusion of this provision in the Proposed Order, together with the anticipated modification of the release language in the Settlement Agreement, should alleviate any concerns that the Committee has regarding the scope of the releases.[9]

### B. M&G International and M&G Chemicals Properly Evaluated the Settlement Agreement

8. The core of the Committee's objection to the Motion is that M&G International and M&G Chemicals have failed to present evidence sufficient to demonstrate that they properly evaluated the Settlement Agreement, including the probability of success in collecting on certain of the intercompany claims released in the Settlement Agreement and the claims released against them in exchange.  *See*, *e.g.*, Obj., ¶ 14.  The Committee argues that the Settling Debtors are

---

[7] The Settling Debtors also note that the release provision in the Settlement Agreement expressly excludes the release of any claim arising from fraud or willful misconduct.

[8] An amended Proposed Order, together with a redline to the version filed with the Motion, is being filed contemporaneously herewith.

[9] In addition, the Settling Debtors have agreed with Banco Nacional de Comercio Exterior, S.N.C., Institucion de Banca de Dessarrollo to amend the Proposed Order as follows:

> Notwithstanding anything to the contrary in the Settlement Agreement or in any document or agreement related thereto, the settlement being approved by this Order shall not affect, alter, modify or release any intercompany claims that M&G Mexico may have against any of the Debtors in the above-captioned cases, including M&G International or M&G Chemicals.

releasing claims that would be paid in full (*i.e.*, the Brasil Payables ($52 million in claims))[10] in exchange for $285.2 million in prepetition claims against them (*i.e.* the MGI Payables, the Inbursa Obligation, the Brasil POCs and the Additional POCs) that will be paid "pennies on the dollar." *Id.* at ¶ 15. Each of the arguments advanced by the Committee reflects a fundamental misunderstanding of the claims at issue.

9. The Committee's assertion that M&G Brasil "seeks to offer the purported contribution claims against M&G International, M&G Chemicals, and M&G Polimeros Mexico . . . as consideration" (Obj., ¶ 16) in the Settlement Agreement is wrong. Indeed, the Committee has it backwards: M&G International, not M&G Brasil, is the principal obligor under the Inbursa Loan Agreement—an at least $120 million obligation (not a $60 million obligation as the Committee suggests). As set forth in more detail in the Motion (*see* ¶¶6-7), the obligations owing under the Inbursa Loan Agreement are being bifurcated. Thereafter, M&G Brasil is purchasing Inbursa's rights thereunder and forgiving its own obligations (as bifurcated). In connection with M&G Brasil spinning-off certain assets and liabilities to NewCo, and as part of the Settlement Agreement (if approved), NewCo is then forgiving the Settling Debtors obligations thereunder. The Committee's assertion that the Settling Debtors are relying on the release of a contribution claim to justify the Settlement Agreement is thus mistaken.[11]

10. Moreover, the Committee's assumption that M&G International will succeed in collecting on the Brasil Payables ignores the array of problems that it would have to surmount. While the Settling Debtors sought to avoid highlighting the shortcomings of M&G

---

[10] Further, even if the Settling Debtors were able to obtain a judgment on a hypothetical claim that they have against M&G Brasil outside of Brazil, the Settling Debtors may be forced to pursue the enforcement of any such judgment in Brazil.

[11] More to the point, the Settling Debtors note that Inbursa has a claim against M&G International for amounts owed under the Inbursa Loan Agreement, which amounts are, in fact, scheduled as undisputed and liquidated in M&G International's schedules and statements of financial affairs. *See* Docket No. 784.

International's claims against M&G Brasil in the Motion, and subsequently informed the Committee of those shortcomings, given the allegations made by the Committee in the Objection, it is apparently now necessary to draw out those deficiencies.

11. *First*, approximately $31 million of the Brasil Payables are likely uncollectible. *See* Suppl. Ghisolfi Decl., ¶ 7. Pursuant to two separate letter agreements between M&G International and M&G Brasil dated July 5, 2012 and October 1, 2012, respectively (together, the "Brasil Payables Letter Agreements"),[12] the parties agreed to suspend "any payment and/or request of payment over sales commission due and becoming due" with respect to approximately $30 million of the Brasil Payables. *See id*. Under the Brasil Payables Letter Agreement, the parties further agreed that the relevant Brasil Payables would "be interest free" and would "have an indefinite due date in respect of [their] payment." *Id.* As such, under the Brasil Payables Letter Agreements, "the payment of the outstanding receivable [would be] considered suspended and future commission [would] be accrued and the relevant payment suspended until a new communication [was] formalized and agreed." *Id.* As of the date hereof, no such communication has been formalized or agreed to by M&G Brasil. *Id.*

12. *Second*, certain of the Brasil Payables—approximately $460,000 in undocumented debt notes and $9.8 million in interest due in connection with two intercompany loans—were intended to be capitalized, but due to the potential for adverse tax consequences, such amounts were instead carried on M&G International's books pending an agreement achieving favorable tax treatment, a change in tax laws or subsequent agreement of the parties regarding payment. *See* Suppl. Ghisolfi Decl., ¶ 8. *Third*, the remaining $12 million of the

---

[12] The Brasil Payables Letter Agreements are attached to the Ghisolfi Declaration (attached to the Motion as Exhibit B) as Exhibits 7-A and 7-B.

Brasil Payables—comprised of approximately $7.9 million owed in connection with the Assignment Letter (which became obligations as early as January 2009) and approximately $3.1 million in merger fees due under the Addendum Letter (which became obligations as early as July 2007)—constitute aged payables that were not capitalized or paid due to the potential for adverse tax consequences. *Id*.[13] Payment of these amounts was suspended indefinitely pending an agreement on how to minimize tax leakage that could impose liabilities of anywhere from 15% to 40%. *Id*.

13. When viewed against this backdrop, there is no question that the collectability of the Brasil Payables is highly questionable, before the counterclaims being asserted by M&G Brasil are even considered. As a result, the release of the Brasil Payables in connection with eliminating $125 million of undisputed claims against M&G International is clearly a reasonable exercise of the Debtors' business judgment. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) (holding that, in evaluating a settlement, "the court should defer to a trustee's judgment so long as there is a legitimate business justification for his action." (quoting *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996)).

14. In evaluating the Settlement Agreement, this Court "is not supposed to have a 'mini-trial' on the merits," as the Committee would have this Court do. *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005). Instead, this Court may approve the Settlement Agreement if it concludes that the settlement is above the lowest point in the range of reasonableness. *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be

---

[13] Copies of the Addendum Letter and the Assignment Letter are attached to the Ghisolfi Declaration as <u>Exhibit 3</u> and <u>Exhibit 6</u>, respectively.

convinced that the settlement is the best comprise . . . [it] must only conclude that the comprise or settlement . . . [is] above the lowest point in the range of reasonableness.") (internal quotations and citations omitted). The Settlement Agreement easily satisfies this standard. For these reasons, the Settlement Agreement should be approved and the Committee's objection overruled.

### C. The Settlement Agreement Is in the Paramount Interest of M&G International's and M&G Chemicals' Creditors

15. While the Committee acknowledges that M&G Brasil—as part of the Letter Agreement—has agreed to withdraw (a) two $182 million claims filed against M&G Chemicals and M&G International (*i.e.*, the Brasil POCs) and (b) two claims aggregating approximately $37.8 million filed against M&G International (*i.e.*, the Additional POCs), the Committee asserts that the Settlement Agreement is not in the paramount interest of the Debtors' creditors because it fails to release *all* claims that M&G Brasil has filed against each of the other Debtors. In advancing this argument, the Committee ignores the economic realities of the transaction. The only Debtors that are party to the Settlement Agreement are M&G Chemicals and M&G International. Why M&G Brasil would agree to withdraw *all* claims that it has asserted against all of the Debtors when the remaining Debtors are providing no consideration in return, and indeed are not even party to the Settlement Agreement in the first instance, is a mystery to the Settling Debtors.[14] This argument should be disregarded by the Court.

---

[14] The Committee also makes much of the fact that the Settling Debtors have provided no evidence that the proofs of claims filed by M&G Brasil are valid. *See* Obj., ¶ 17. However, the Committee ignores the obvious benefit of obtaining the withdrawal of these claims without the need and cost attendant of litigating such claims to conclusion before this Court in the claims allowance process. In any event, the withdrawal of such claims will decrease the amount of general unsecured claims that have been asserted against the Settling Debtors' estates, to the benefit of the Committee's constituents.

### D. The "Gentlemen Agreements" Are Extraneous to the Settlement Agreement

16. The Committee also argues that the Settlement Agreement should not be approved because, in the Motion, the Settling Debtors failed to disclosed a number of "gentlemen's agreements" that are referenced in a board presentation considered by M&G Chemicals' and M&G International's directors in connection with ratifying the Settlement Agreement. *See* Obj., ¶¶ 6;22. Specifically these "gentlemen's agreements" include (a) a promise by Magnate that it will cause M&G Brasil to pay a certain $4.5 million fee to M&G International;[15] (b) a promise by Magnate to make its best efforts to cause Banco do Brazil to release an approximately $17 million guarantee claim against M&G International in connection with a settlement agreement between Magnate and Banco do Brazil; and (c) the assumption and forgiveness by Magnate (under certain circumstances) of certain clients' receivables which are secured by cash deposits made by such clients to M&G International. *See* Suppl. Ghisolfi Decl., ¶ [9].

17. While these "gentlemen's agreements" are beneficial to M&G International if they materialize, the Settling Debtors determined not to disclose and rely upon them in support of the relief requested in the Motion because it was uncertain whether they could be obtained. Further, since they are not part of the Settlement Agreement, they likely are not enforceable. *See* Suppl. Ghisolfi Decl., ¶ 10. In any event, each of these agreements is beneficial to M&G International if achieved and favors approval, not denial, of the Settlement Agreement.

---

[15] The $4.5 million relates to corporate oversight, accounting and treasury, human resources and information technology services M&G International provided to M&G Brasil (the "MGI Services") that M&G International believes that M&G Brazil agreed to pay. While M&G Brasil has paid approximately $850,000 to date on account of the MGI Services, MGI International believes that M&G Brasil still owes M&G International $3.65 million (*i.e.*, the difference between the $4.5 million referenced above and the $850,000 already paid) in connection with the provision of the MGI Services. *See* Suppl. Ghisolfi Decl., ¶ 9.

### E. The Boards of Directors of M&G Chemicals and M&G International Properly Discharged their Duties in Approving the Settlement Agreement

18. Finally, in the Objection, the Committee argues that the directors of M&G International and M&G Chemicals failed to properly inform themselves when approving the Settlement Agreement. *See* Obj., ¶ 5; 21. The Committee insinuates that there is something improper about the settlement because there is "overlap" with the boards of the other Debtors in these cases and M&G Brasil (*Id.* at ¶ 17) creating "potential conflicts of interest," including that "two of M&G Chemicals' four independent board members also are board members of M&G Chemicals Brazil S.A." (*id.* at ¶ 7).

19. In raising these arguments, the Committee appears to be relying upon Delaware law. *See* Obj., ¶ 21. However, because M&G International and M&G Chemicals are domiciled and incorporated in Luxembourg, it is Luxembourg, and not Delaware, law that applies. Under Luxembourg law, a director does not need to recuse himself from voting on a transaction unless he is conflicted as a matter of Luxembourg law. *See* Goebel Decl., ¶ 7. A director is conflicted for the purposes of Luxembourg law when his personal interests act to the detriment of the interests of the company to which he is a director. *Id.* at ¶¶ 8-9. In this respect, the interests a director has in a given transaction must be sufficiently material in order to have such an impact. Where a person is a director of two companies, the interest is defined as a functional interest (itself which does not create a conflict), unless the director would have a personal financial interest in the transaction, by obtaining, for example, a bonus if a specific transaction succeeds. *Id.* at ¶ 10. The Committee has not alleged that any director had a financial stake in the outcome of this transaction, and indeed, the Settling Debtors are not aware of any such financial interest.

20. M&G Chemicals has nine board members. M&G International, for its part, currently has three board members. While the Committee is correct in that two of M&G

Chemicals' four independent board members are also board members of M&G Chemicals Brazil S.A., the other two independent board members voted in favor of M&G Chemicals' entry into the Settlement Agreement, and the board as a whole voted unanimously in favor thereof. Similarly, M&G International's board of directors also voted unanimously in favor of entry into the Settlement Agreement.

21. Most importantly, however, the directors of each of the Settling Debtors properly discharged their fiduciary duties in evaluating the settlement and determining that it was in the best interests of the Settling Debtors and their estates, because, among other things, they considered thoroughly written presentation that explained and evaluated the claims being released under the settlement and the benefits to be obtained should the agreement be approved. *See* Suppl. Ghisolfi Decl., ¶ 9. The relevant board minutes further reflect that the directors—including independent board members at M&G Chemicals—evaluated the proposed settlement with care prior to voting unanimously in favor thereof. For these reasons, the Committee's claim that the Settling Debtors' directors failed to properly inform themselves of the Settlement Agreement must fail.

## **CONCLUSION**

22. For the reasons set forth herein, the Settling Debtors respectfully request that the Court overrule the Objection and grant the relief requested in the Motion.

Dated: May 14, 2018

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Joseph M. Mulvihill
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: sgreenberg@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7035
Facsimile: (216) 579-0212
Email: ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession