# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>Jointly Administered<br><br>**Related to Docket No. 1387** |

## PRELIMINARY OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) SETTLEMENT AGREEMENT BY AND BETWEEN MOSSI & GHISOLFI INTERNATIONAL S.A.R.L., M&G POLIMEROS BRASIL, S.A., M&G CHEMICALS, S.A., M&G POLIMEROS MEXICO, S.A. DE C.V. AND ALOKE EMPREENDIMENTOS E PARTICIPAÇÕES LTDA. AND (II) RELATED LETTER AGREEMENT

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors in possession (the "Debtors") respectfully submits this preliminary objection (the "Preliminary Objection") to the *Debtors' Motion for Entry of an Order Approving (i) Settlement Agreement by and between Mossi & Ghisolfi International S.à.r.l., M&G Polimeros Brasil, S.A., M&G Chemicals, S.A., M&G Polimeros Mexico, S.A. de C.V. and Aloke Empreendimentos E Participações Ltda. and (ii) Related Letter Agreement By And Between Mossi & Ghisofi International S.à.r.l., M&G Chemicals, S.A. and M&G Polimeros Brasil, S.A.* (the "Motion").[2] In support of its Preliminary Objection, the Committee respectfully states as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms that are not defined herein have the meanings given to them in the Motion.

15831308v8

## PRELIMINARY STATEMENT

1. The Committee files this Preliminary Objection out of an abundance of caution. The Committee is working with the Debtors to obtain information necessary to properly evaluate the settlement proposed in the Motion and to revise the grossly overbroad release proposed by the Debtors in the Settlement Agreement. The Committee is scheduled to depose Mr. Marco Ghisolfi, M&G Chemicals S.A. and M&G International S.à.r.l. on Tuesday May 15, 2018. In addition, the Committee is scheduled to depose Mr. Frederic Franklin Brace, a director at Debtor M&G Chemicals and non-Debtor M&G Brasil, on Wednesday May 16, 2018. The Committee reserves the right to supplement this Preliminary Objection as more information becomes available.

2. The Motion seeks approval of the Settlement Agreement and the Letter Agreement (together, the "Settlement") which, together, provide for the release by M&G International of $52 million owed to it by M&G Brasil (a purportedly solvent entity) (the "Brasil Payable").[3]

3. In exchange for releasing approximately $52 million in claims held by M&G International against a purportedly solvent entity, M&G Brasil will: (i) setoff its pre-petition claim for $5.4 million against M&G International (the "M&G Payable") against the Brasil Payable; (ii) release potential (and unfiled) contribution claims against M&G International and M&G Chemicals purportedly arising from M&G Brasil's purchase of the $120 million Inbursa Loan (a loan secured by M&G Brasil's assets) (the "Inbursa Obligation"); (iii) release duplicate Claim Nos. 806 and 817, each in the amount of $182 million, filed by M&G Brasil

---

[3] Pursuant to the mutual release proposed in the Settlement Agreement, M&G Chemicals had agreed to release claims against Magnate, M&G Brasil's preferred equity holder, for dividends it received aggregating in excess of $56 million (the "Magnate Claims") and its directors, including Marco Ghisolfi and Magnate's representatives (the "D&O Claims"). The Committee is working with the Debtors to formulate language that makes it clear that such claims are not being released.

against M&G Chemicals and M&G International (the "Brasil POCs");[4] and (iv) release Claim Nos. 805 and 816, in the aggregate amount of approximately $37.8 million, filed by M&G Brasil against M&G International (the "Additional POCs").

4. The Motion fails to detail that the proposed settlement is directly related to the sale of M&G Brasil and the "Brasil Restructuring". Indeed, on information and belief, M&G Brasil intends to satisfy all of its debts (other than the Brasil Payable) from the proceeds of the sale and distribute the residual value to Magnate as M&G Brasil's preferred equity holder. The Committee understands that the residual value which will flow to Magnate is between ██ ██████████████.

5. Moreover, the Motion provides no basis for the Court or parties in interest to evaluate the consideration being exchanged under the Settlement. Indeed, it is not clear that such an evaluation was undertaken by the Debtors and their various boards of directors. For instance, the Motion provides no basis to evaluate the Brasil Payable being released. The Motion also provides no basis for the Court or parties in interest to evaluate the merit of the Brasil POCs and the Additional POCs, which the Committee believes have significant infirmities. Instead of providing the necessary basis for the Court's evaluation, the Motion instead relies on conclusory statements that there is a risk of litigation.

6. In addition to providing no basis for analysis of the proposed transactions disclosed in the Motion, the Motion simply fails to disclose other material aspects of the proposed Settlement. In particular, the Motion fails to disclose several "Gentlemen's Agreements" between the parties that are detailed in the presentation to the boards of M&G Chemicals and M&G International as part of the "Commercial Evaluation of the Proposal".

---

[4] Duplicate claims were filed by M&G Brasil against each of the other Debtors; however, such duplicate claims are not being released in this Settlement.

These Gentlemen's Agreements detail millions of dollars in additional cash flowing between Magnate, M&G International and M&G Brasil and provide requirements that Magnate settle claims with Banco do Brazil that releases approximately $17 million in guarantee claims against M&G International. Because these material aspects of the Settlement have not been described (or even disclosed), the Committee submits that the Motion should not (and cannot) be approved without providing additional notice to parties in interest of all transactions proposed to be effectuated under or in connection with the Settlement.

7. Finally, the Motion fails to explain what analyses the members of the boards of directors of M&G International and M&G Chemicals undertook in considering the impact (and potential harm) to the other Debtors of a settlement with M&G Brasil that releases claims against M&G International and M&G Chemicals but permits such claims to remain against the other Debtors. Because M&G Chemicals and M&G International share directors with the other Debtors, thereby creating potential conflicts of interest, the Settlement must be subject to careful—and heightened—scrutiny. Moreover, the Committee's concerns regarding conflicts of interest are exacerbated by the fact that two of M&G Chemicals' four independent board members also are board members of M&G Chemicals Brasil S.A., which is the selling entity in the Brasil sale transaction.

8. The Committee's professionals were not involved in the Debtors' analysis of, or determination to enter into, the proposed Settlement Agreement, nor was the Committee's consent requested prior to filing the Motion. Rather, the Committee has spent the last three weeks attempting to analyze and understand the Debtors' determination to enter into a Settlement Agreement which, on its face, may not be in the best interests of creditors.

15831308v8

9.  In sum, the Debtors have not carried their burden of demonstrating that entering into the Settlement Agreement constitutes a proper exercise of their business judgment, and, accordingly, the Court should deny the relief sought in the Motion.

**OBJECTION**

10. While settlements are generally favored in the bankruptcy context, "the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006). When considering a proposed settlement, a court "must determine if the compromise is fair, reasonable, and in the interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (stating that compromises in reorganization cases must be "fair and equitable"). The court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Martin v. Myers (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

11. To determine whether a settlement is fair and equitable, courts in the Third Circuit use the so-called "Martin test," considering the following: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity, expense, inconvenience and delay involved in litigating the matter; and (4) the paramount interest of creditors. Id. "While a court generally gives deference to the Debtors' business judgment in deciding whether to settle a matter, the Debtors have the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.), 336 B.R. 87, 93 (Bankr. D. Del 2005).

12. Here, the Debtors have failed to satisfy their burden of demonstrating that the Settlement Agreement is fair and equitable or that it is in the best interests of their estates because they have failed to provide analyses or evidence to support the "probability of success" prong or the "paramount interest of creditors" prong of the Martin Test.

A. **The Probability of Success**

13. As analysis of the probability of success in litigation, the Debtors state that "While M&G International and M&G Chemicals believe that they have strong defenses with respect to any claims that might be asserted against them by M&G Brasil (including claims resolved under the Settlement Agreement and the Letter Agreement), they also recognize that should a court rule against them on these points, M&G Brasil could be entitled to a substantial allowed unsecured claim against their estates." Motion ¶ 18. This hardly amounts to an analysis of the "probability of success" of any of M&G Brasil's claims.

14. The Debtors have provided no analysis or evidence to show (i) that the Inbursa Loan will not be satisfied by the liquidation of the collateral securing the loan; (ii) that the Brasil POCs or Additional POCs are valid claims; and (iii) that the Brasil Payable is not collectible. Moreover, even assuming the claims are worth what the Debtors' say they are worth, they have provided no evidence or analysis showing that the Debtors' receive fair consideration when trading prepetition claims worth pennies on the dollar for whole dollar claims worth substantially more.

15. Further, when touting the fact that, if successful, "M&G Brasil could be entitled to a substantial allowed unsecured claim against their estates," the Debtors ignore several fundamental issues. While facially the Debtors propose to release the approximately $52 million Brasil Payable for the release of approximately $285.2 million in pre-petition claims against

15831308v8

them (*i.e.*, the M&G Payable ($5.4 million), the contribution towards the Inbursa Obligation ($60 million), the Brasil POCs ($182 million) and the Additional POCs ($37.8 million)), they ignore crucial differences in these claims. Even assuming the validity and mutuality of all of the outstanding intercompany claims between M&G International and M&G Brasil, which would allow them to set off such claims against each other under section 553 of the Bankruptcy Code, the Brasil Payable will remain outstanding at approximately $46.6 million. As M&G Brasil is a purportedly solvent, non-Debtor entity, such claim would be payable in whole dollars, while the Inbursa Obligation, the Brasil POCs and the Additional POCs would be payable, if at all, at pennies on the dollar.[5]

16. Moreover, through its acquisition of the Inbursa Obligations, M&G Brasil is forgiving its own obligations as a guarantor of the Inbursa Obligations and releasing liens on its collateral (the Suape Plant), thereby facilitating the Brasil Restructuring. M&G Brasil then seeks to offer the purported contribution claims against M&G International, M&G Chemicals, and M&G Polimeros Mexico arising out of this transaction as consideration for the Settlement. However, M&G Brasil has not filed claims against M&G International and M&G Chemicals on account of their purported contribution obligations, and there is no analysis to show that such late-filed claims would be allowed.

**B.    Paramount Interest of Creditors**

17. Finally, the Committee, which represents the interests of *all* unsecured creditors in these cases, cannot but question whether the withdrawal of the (no matter how frivolous) $182 million proofs of claim against two Debtors, while retaining the same claims against every other Debtor, serves the "paramount interest of creditors." Again, the Committee

---

[5] More than $3 billion in general unsecured claims have been filed against the Debtors' estates. The current cash pool available for distribution is estimated to be approximately $50 million, indicating a potential recovery (before claims reconciliation) of approximately 1.7 cents on the dollar.

(and the Court) lacks sufficient evidence to make this determination and it appears that no such analysis was completed by M&G Chemicals and M&G International or their boards of directors—which contain overlap with the boards of the other Debtors in these cases and M&G Brasil.

C. **The Overly Broad Release**

18. Additional evidence of the Debtors' failure to properly analyze the terms of the proposed settlement and the fact that the Settlement Agreement does not constitute a valid exercise of the Debtors' business judgement is the proposed extraordinarily broad general release. Even though the Debtors have agreed to revise the language of this general release to bring it into the realm of reasonableness, the mere fact that they were willing to agree to its current terms underscores the lack of diligence expended on the proposed settlement.

19. Specifically, section 4 of the Settlement Agreement currently provides as follows:

> Effective upon the Effective Time, *each of the Parties* hereby irrevocably and unconditionally releases, discharges and forever acquits *each other Party*, its respective officers, directors, agents and employees and their respective affiliates, successors and assigns from all obligations to such other Parties (and their respective successors and assigns) and from any and all claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions, whether in law or in equity, that such Parties have, or that their successors and assigns hereafter can or may have against the other Parties, their respective officers, directors, agent or employees and their respective affiliates, successors and assigns, *including, without limitation*, any claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions in connection with (a) the Inbursa Loan Documents, (b) the Applicable Payables Documents, (c) the MGI Payables Documents and (d) Remaining Loan Obligations; provided that, notwithstanding anything to the contrary herein, in no event shall any Party release any other Party from any claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions arising from the fraud or willful misconduct on the part of such other Party (emphasis added).

20. There are several glaring problems with this release: (i) the release is not limited to the matters being settled in the Settlement Agreement, but instead, only lists such matters after the words "including, without limitation," while covering "any and all claims, demands, debts, accounts, accounts payable, accounts receivable, contracts, liabilities, actions and causes of actions" whatsoever; (ii) as the release is among all "Parties," and not between the two settling sides, it results in one Debtor, M&G International, releasing another Debtor, M&G Chemicals, and *vice versa*, which is entirely inappropriate; and (iii) the release is not limited to the settling parties, but also releases claims by and against each of the Parties' "respective affiliates, successors and assigns" and their "respective officers, directors, agents and employees" which arguably includes a release of Magnate, who received at least $56 million in dividends, and a release of directors and officers. Especially in cases such as these, where there are allegations of fraud and mismanagement, any release must be narrowly tailored and must specifically identify the parties and the acts being released. It remains to be seen what changes the Debtors will be willing to make to this provision, but it clearly cannot be approved in its current form.

21. It thus appears that the Debtors' willingness to seek approval of the Settlement Agreement evidences a failure on the part of their management to properly inform themselves and act in the best interests of the Debtors' estates. See Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (stating that directors "have a duty to inform themselves, prior to making a business decision of all material information reasonably available to them. Having become so informed, they must *then* act with the requisite care in the discharge of their duties.") (emphasis in original); Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360 (Del. 1993) (stating that "directors are charged with an unyielding fiduciary duty to protect the interests of the corporation

15831308v8

and to act in the best interests of its shareholders"). In contrast, the Committee wishes to properly exercise its fiduciary duties, and requires sufficient opportunity (and access to information) to properly assess the terms of the proposed settlement.

### D. The Gentlemen's Agreements

22. The Motion fails to disclose the side agreements, referred to as "Gentlemen's Agreements," that the parties have entered into in connection with and to support the Settlement. The boards of M&G Chemicals and M&G International held a meeting to approve the settlement with M&G Brasil on or about March 29, 2018. At that meeting, the boards were given a power point presentation titled "TPG/MGI-MGC Settlement"[6] that, among other things, detailed the commercial justification for the Settlement proposed with M&G Brasil. In the section titled "Commercial Evaluation of the Proposal"[7] the presentation provides details on three Gentlemen's Agreements as follows:

 i. Magnate will ensure that M&G Polimeros Brazil pays a $4.5 million fee to M&G International;

 ii. Magnate, in its settlement with Banco do Brazil, will make its best efforts to ensure that M&G International is released of its approximately $17 million guarantee; and

 iii. After the sale of M&G Brasil, Magnate will retain certain receivables secured by cash deposits held by M&G International and, under certain undisclosed circumstances, assume those cash deposits and forgive those claims against M&G International.

23. None of these agreements, which are material support for the Settlement, are disclosed or analyzed in the Motion.

---

[6] The Committee understands that Magnate, M&G Brasil's preferred equity holder, is an investment vehicle for TPG.

[7] The vast majority of the board presentation is redacted. There is no way for the Committee to know what other information was provided to the boards or who in fact prepared the board presentation.

15831308v8

## CONCLUSION

Based on all of the foregoing, the Committee respectfully requests that the Court (i) deny the relief sought in the Motion and (ii) grant such other relief to the Committee as is just and proper.

Dated: Wilmington, Delaware
May 11, 2018

**COLE SCHOTZ P.C.**

*/s/ David R. Hurst*
J. Kate Stickles (No. 2917)
David R. Hurst (No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
kstickles@coleschotz.com
dhurst@coleschotz.com

-and-

Daniel F. X. Geoghan
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: 212.752.8000
Facsimile: 212.752.8393
dgeoghan@coleschotz.com

*Co-Counsel to Official Committee of Unsecured Creditors of M & G USA Corporation, et al.*

15831308v8