IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17- 12307 (BLS)<br><br>(Jointly Administered) |

Objection Deadline: June 19, 2018 at 4:00 p.m. (ET)
Hearing Date: June 26, 2018 at 11:00 a.m. (ET)

## DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION BY AND BETWEEN M&G POLYMERS USA, LLC AND UNITED STEELWORKERS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105, 363 and 1114 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), approving the Stipulation (the "Stipulation")[2] by and between M & G Polymers USA, LLC ("M&G Polymers") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO CLC in its capacity as the representative of certain retirees of M&G Polymers pursuant to section 1114 of the Bankruptcy Code (the "USW" and together with M&G Polymers, the "Parties"). In support of this Motion, the Debtors submit the *Declaration of Dennis Stogsdill in Support of the Debtors' Motion for Entry of an Order Approving Stipulation By and Between*

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] A copy of the Stipulation is attached to the Proposed Order as Exhibit 1.

*M & G Polymers USA, LLC and United Steel Workers* (the "Stogsdill Declaration"), attached hereto as Exhibit B and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. By the Motion, Debtor M&G Polymers seeks this Court's approval to enter into the Stipulation which, among other things, (a) consensually resolves a dispute with the USW concerning the timing of the termination of "Retiree Benefits" (as that term is defined in section 1114 of the Bankruptcy Code) provided to approximately 364 former employees and/or their eligible spouses and dependents (collectively, the "Retirees") and (b) dismisses, with prejudice, an over ten year old class action brought against M&G Polymers by certain of the Retirees (the "Tackett Litigation").[3] Under the Stipulation, the Parties will terminate the Retiree Benefits as of June 1, 2018. In exchange, M&G Polymers has agreed with the USW (on behalf of the Retirees and the class in the Tackett Litigation) that the USW shall have an approximately $44 million allowed unsecured claim against M&G Polymers' estate.

2. In addition to avoiding potentially contentious section 1114 litigation, the Stipulation clears the path for M&G Polymers to propose a confirmable chapter 11 plan. Specifically, the Stipulation allows M&G Polymers to satisfy its 1114 obligations to Retirees within the budget limitations imposed by its postpetition financing sources, thereby resolving a potential roadblock to confirmation of any plan that M&G Polymers proposes. For these reasons and those that follow, the Stipulation is in the best interests of M&G Polymers' creditors and estate, and should be approved by the Court.

---

[3] *See Tackett v. M&G Polymers USA, LLC*, No. 2:07-cv-126 (S.D. Ohio), *on remand from Tackett v. M & G Polymers USA, LLC*, 811 F.3d 204 (6th Cir. 2016).

NAI-1503672279v6
DOCS_DE:219810.1 54032/001

## JURISDICTION AND VENUE

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. General Background

4. On October 24, 2017 (the "Polymers Petition Date"), Debtor M&G Polymers filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B. The Retiree Benefits

6. M&G Polymers currently provides various "Retiree Benefits" as that term is defined in section 1114(a) of the Bankruptcy Code to the Retirees. Specifically, M&G Polymers provides Retiree Benefits pursuant to (a) a collective bargaining agreement (the "CBA") dated November 6, 2014 with the USW on behalf of the USW Local Union No. 644L (the "Local Union") and (b) a Pension, Insurance and Service Award Agreement ("P&I Agreement") dated

-3-
NAI-1503672279v6
DOCS_DE:219810.1 54032/001

November 6, 2000. The Retirees affected by the relief requested in this Motion are represented by the USW for the purposes of section 1114 of the Bankruptcy Code.[4] *See* Stogsdill Decl., ¶ 4.

7. As of the Polymers' Petition Date, the projected cost to M&G Polymers of providing Retiree Benefits to the Retirees is approximately $200,000 per month. *See* Stogsdill Decl., ¶ 5.

### C. The Apple Grove Sale and Funding for M&G Polymers

8. On November 2, 2017, as part of the Debtors' first day relief, this Court entered an interim cash collateral order (Docket No. 91) (the "Interim Cash Collateral Order"),[5] authorizing the consensual use of cash collateral pledged to Comerica Bank ("Comerica") for the limited purpose of funding some, but not all, of M&G Polymers' expenses. In relevant part, the Interim Cash Collateral Order authorized M&G Polymers to utilize Comerica's cash collateral to satisfy the Retiree Benefits up to a cap of $650,000. *See* Interim Cash Collateral Order, Ex. A.

9. Following entry of the Interim Cash Collateral Order, the Debtors obtained certain concessions from Comerica that resulted in the availability of additional funding for certain of M&G Polymers' expenses. Those concessions were reflected in a budget (the "Cash Collateral Budget") approved in connection with the final cash collateral order (Docket No. 487) (the "Final Cash Collateral Order").[6] Among other things, the Cash Collateral Budget authorized M&G Polymers to utilize an additional $200,000 of Comerica's cash collateral to satisfy certain eligible

---

[4] There are approximately ten additional retirees and dependents who are not represented by the USW for the purposes of section 1114. For the avoidance of doubt, to the extent that M&G Polymers provides any "retiree benefits" to these unrepresented retirees, M&G Polymers does not seek to terminate or otherwise modify the provision of such retiree benefits at this time. M&G Polymers reserves the right to seek to modify or terminate such retiree benefits (to the extent that any are provided) at a later date.

[5] *See Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay and (4) Granting Related Relief.*

[6] *See Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay and (4) Granting Related Relief.*

Retiree Benefits up to a total postpetition cap of $850,000.[7] See Final Cash Collateral Order, Ex. A & Ex. B. The Cash Collateral Budget expired on January 31, 2018. *Id.* at Ex. B.

10. On December 14, 2017, this Court entered an order (Docket No. 490) (the "Bidding Procedures Order") establishing, among other things, certain bidding and auction procedures and related deadlines and authorizing a sale process for the sale of (a) the Debtors' facility in Apple Grove, West Virginia (the "Apple Grove Plant") and related intellectual property (together, the "Apple Grove Assets") and (b) among other assets, (i) the Debtors' vertically integrated PTA/PET plant in Corpus Christi, Texas and related assets (collectively, the "Corpus Christi Plant"), (ii) the Debtors' desalination equipment and boilers situated at or in the vicinity of the Corpus Christi Plant (the "Desalination Assets" and together with the Corpus Christi Plant and its related assets, the "Corpus Christi Assets") and (iii) the Debtors' intellectual property assets (the "IP Assets").

11. On January 12, 2018, M&G Polymers filed a motion seeking Court approval to (a) enter into a stalking horse agreement with Indorama Ventures Public Company Limited for the sale of certain of the Apple Grove Assets for $10 million and (b) obtain access to $5 million in postpetition financing (the "Polymers DIP Facility") from Indorama Netherlands B.V.[8] An

---

[7] In addition to the Final Cash Collateral Order, the Court entered a final order (Docket No. 479) authorizing the Debtors to enter into a $100 million postpetition debtor in possession credit facility (the "CEC DIP Facility"). While the CEC DIP Facility generally provided the Debtors with funding to administer these Cases and certain of their day-to-day operational expenses, the Debtors were restricted from using the CEC DIP Facility to fund any of M&G Polymers' expenses.

[8] See *Motion to Authorize/Motion of the Debtors for Entry of Orders (I) Authorizing the Debtors to Enter Into a Stalking Horse Purchase Agreement and Provide Reimbursement Thereunder; (II)(A) Approving the Sale of Certain Assets of M&G Polymers USA, LLC Free and Clear of Liens, Claims and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III)(A) Authorizing Post-Petition Financing Pursuant to 11 U.S.C. Sections 105, 362, 363 and 364; (B) Granting Liens and Superpriority Administrative Expense Claim to Stalking Horse Pursuant to 11 U.S.C. Sections 364 and 507; (C) Providing Adequate Protections; (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and Local Rule 40001-2; and (V) Granting Related Relief* (Docket No. 665).

order authorizing the Debtors to enter into the Polymers DIP Facility on an interim basis was entered by the Court on January 19, 2018.[9]

12. At an auction held on January 30, 2018, the Debtors designated a $33.5 million bid submitted by Far Eastern Investment (Holding) Ltd. ("Far Eastern") as the winning bidder of the Apple Grove Assets.[10] On February 1, 2018, the Court approved the sale of the Apple Grove Assets to Far Eastern.[11] In addition to approving the sale of the Apple Grove Assets to Far Eastern, the Court entered an order (Docket No. 865) (the "Final Polymers DIP Order")[12] approving M&G Polymers' entry into the Polymers DIP Facility on a final basis.

13. Following the expiration of the Cash Collateral Budget, and in conjunction with entry of the Final Polymers DIP Order and a budget approved therewith (the "Polymers DIP Budget"), M&G Polymers obtained additional funding for certain of its expenses pending conclusion of its sale process. Among other things, the Polymers DIP Budget included an additional $200,000 per month to fund the Retiree Benefits. With the closing of the sale of the Apple Grove Assets to Far Eastern on March 1, 2018, the Polymers DIP Facility expired. *See* Final Polymers DIP Order, Ex. 2.

14. Subsequent to the closing of the sale of the Apple Grove Assets, the Debtors obtained the consent of Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero

---

[9] *See Interim Order (I) Authorizing Debtor M & G Polymers USA, LLC to Incur Postpetition Secured Superpriority Indebtedness Pursuant to Sections 105(a), 362, 364(c)(1), 364(c)(2), 363(c)(3), and 364(d); (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief* (Docket No. 720).

[10] Far Eastern did not assume any obligations to fund Retiree Benefits as part of the sale of the Apple Grove Assets.

[11] *See Order Authorizing (I) The Sale of Certain Assets of M&G USA Corporation and M&G Polymers USA, LLC Free and Clear of Encumbrances and Liens; (II) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Related Relief* (Docket No. 864).

[12] *See Final Order (I) Authorizing Debtor M & G Polymers USA, LLC to Incur Postpetition Secured Superpriority Indebtedness Pursuant to Sections 105(a), 362, 364(c)(1), 364(c)(2), 363(c)(3), and 364(d); (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief.*

Inbursa ("Inbursa") to use $200,000 of cash collateral pledged to Inbursa from the proceeds of the sale of the Apple Grove Assets to fund the Retiree Benefits through March 31, 2018 (Docket No. 1150) (the "Inbursa Cash Collateral Stipulation").[13] Currently, Aetna, the administrator of M&G Polymers' employee healthcare plans, holds certain funds that can be used to satisfy the healthcare claims of Retirees and other former employees of M&G Polymers incurred through May 31, 2018 as they become due.

### D. The Tackett Litigation

15. In 2007, certain Retirees filed a class action lawsuit (the "Tackett Class") against M&G Polymers in United States District Court for the Southern District of Ohio alleging violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3) and breach of fiduciary duty, and requested injunctive relief and the restoration of allegedly impaired benefits. *See Tackett v. M & G Polymers USA, LLC*, 523 F. Supp. 2d 684 (S.D. Ohio 2007). Among other things, the Tackett Class asserted that certain Retirees are entitled to lifetime post-retirement health and other benefits from M&G Polymers, but that M&G Polymers instead required those Retirees to pay for their benefits in breach of LMRA, ERISA and M&G Polymers' fiduciary duties to such members. *See id.* at 686.[14]

16. The Tackett Litigation has been pending for over a decade and has included multiple appeals to the Sixth Circuit and an appeal to the U.S. Supreme Court. Currently, the Tackett Litigation is pending in the Southern District of Ohio, on remand as a result of a 2016 Sixth Circuit decision. *See Tackett v. M & G Polymers USA, LLC*, 811 F.3d 204 (6th Cir. 2016).

---

[13] *See Order Approving Stipulation Regarding Amendment to Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay and (4) Granting Related Relief.*

[14] For the purposes of section 1114 of the Bankruptcy Code, the USW is authorized to settle the Tackett Litigation on behalf of the Tackett Class.

In addition to resolving a dispute with the USW regarding the timing of the termination of Retiree Benefits, by the Stipulation, the Tackett Class has agreed to dismiss the Tackett Litigation with prejudice.

### E. The Stipulation

17. The Stipulation (a) consensually resolves issues concerning the timing of the termination of Retiree Benefits and avoids litigation under section 1114 of the Bankruptcy Code, (b) results in the dismissal of the Tackett Litigation and (c) establishes, with certainty, the allowed amount of the USW's general unsecured claim against M&G Polymers. The principal terms of the Stipulation are as follows:[15]

(a) *Effective Date*. The "Effective Date" is the date that the Court approves the Stipulation. Stipulation, ¶ 5.

(b) *Retiree Benefits*. The Retiree Benefits of all Retirees were terminated effective June 1, 2018. Retiree Benefits claims incurred through May 31, 2018 will be paid in the ordinary course of plan administration. *Id.* at ¶ 3.

(c) *Allowed General Unsecured Claim*. The USW shall have an allowed general unsecured claim in the total aggregate amount of $44,034,000 (the "Allowed Claim"), comprised of (i) a $22.3 million general unsecured claim for the benefit of members of the Tackett Class; (ii) a $13 million general unsecured claim for the benefit of Retirees that are not members of the Tackett Class; (iii) a $934,000 general unsecured claim for out of pocket damages incurred by Retirees who are members of the Tackett Class; and (iv) a $7.8 million general unsecured claim for costs and fees incurred by the Tackett Class. *Id.* at ¶ 2.

(d) *Full and Final Satisfaction*. The Allowed Claim shall be in full and final satisfaction of all M&G Polymers' obligations to the Retirees pursuant to section 1114 of the Bankruptcy Code and the USW agrees as the authorized representative for the Retirees to release M&G Polymers from, and waive, any other claims it or the Retirees may have against M&G Polymers or any of the Debtors arising under section 1114 of the Bankruptcy Code, the CBA or the P&I Agreement (including the employee benefit plans established under that agreement). The Parties shall agree on the means of distributing the proceeds of

---

[15] The following summary is qualified in its entirety by reference to the provisions of the Stipulation. In the event of any inconsistencies between the provisions of the Stipulation and the terms set forth herein, the terms of the Stipulation shall govern.

any recovery on account of the Allowed Claim prior to payment of any such proceeds. *Id.*

(e) ***Dismissal of Tackett Litigation.*** Within seven business days of the Effective Date, counsel to the Tackett Class shall take all reasonable and necessary steps to dismiss the Tackett Litigation, with prejudice. *Id.* at ¶ 4.

(f) ***Effectiveness.*** The Stipulation will be binding on the Parties from the date of its execution, but is expressly subject to and contingent upon entry of an order by this Court approving the Stipulation. If the Court does not approve the Stipulation, the Stipulation will be null and void, and will be of no force and effect. *Id.* at ¶ 5.

## RELIEF REQUESTED

18. The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and sections 105, 363 and 1114 of the Bankruptcy Code, in substantially the form of the Proposed Order, approving the Stipulation.

## BASIS FOR RELIEF

### A. The Stipulation Should Be Approved Pursuant to Bankruptcy Rule 9019

19. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Cont'l Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983). Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

NAI-1503672279v6
DOCS_DE:219810.1 54032/001

20. Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

21. When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "Martin Factors"): (a) the probability of success in litigation; (b) the likely difficulties of collection; (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Ent. Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Comm. v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

NAI-1503672279v6
DOCS_DE:219810.1 54032/001

22. While bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Co-Op., Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Transp. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

23. The proposed Stipulation satisfies the Martin Factors and falls well above the lowest point in the range of reasonableness. Absent the Stipulation, the Debtors would be forced to initiate formal section 1114 litigation prior to terminating the Retiree Benefits. Such a process would be time consuming and expensive. While the Debtors believe that they would ultimately prevail in any section 1114 litigation, no specific outcome is guaranteed. *See, e.g., Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of Am.*, 791 F.2d 1074, 1088 (3d Cir. 1986) (construing the word "necessary" in the context of permissible modifications as found in sections 1113 and 1114 to mean "essential" while also requiring the modification to be fair and equitable to all parties). To avoid litigation, M&G Polymers has consensually reached a resolution achieving the end goal of any such litigation: termination of the Retiree Benefits.

NAI-1503672279v6
DOCS_DE:219810.1 54032/001

24. Further, if the Debtors were forced to litigate issues concerning the Retiree Benefits (and ultimately do not prevail in any such litigation), it is not certain whether a plan of liquidation (to the extent one is proposed) could be confirmed. Among other things, M&G Polymers lacks unencumbered cash with which to fund the Retiree Benefits indefinitely, potentially rendering any plan unconfirmable. *See* 11 U.S.C. § 1129(a)(13) (providing that courts may only confirm a plan if it "provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title . . . for the duration of the period the debtor has obligated itself to provide such benefits").

25. Moreover, the Stipulation dismisses, with prejudice, the Tackett Litigation—a class action that is over ten years old—and any claims that the Retirees and/or the USW may have with respect to the termination of Retiree Benefits. Dismissing the Tackett Litigation and obtaining a release in connection with any Retiree Benefit claims in exchange for an allowed general unsecured claim in the amount of approximately $44 million against M&G Polymers' estate is reasonable and a valid exercise of M&G Polymers' business judgment.

26. Finally, the Stipulation is in the best interest of all creditors, including the Retirees. While the Retirees obtain an approximately $44 million allowed unsecured claim, M&G Polymers' remaining creditors are better off because, among other things, the Stipulation saves the estate litigation costs, administrative expenses of approximately $200,000 per month and increases the likelihood that M&G Polymers will be able to confirm a chapter 11 plan (to the extent that it proposes one). For these reasons, the Stipulation is well within the lowest point in the range of reasonableness and should be approved by this Court.

-12-

NAI-1503672279v6
DOCS_DE:219810.1 54032/001

### B. M&G Polymers Is Authorized to Consensually Modify the Retiree Benefits pursuant to the Stipulation under Section 1114 of the Bankruptcy Code

27. The Stipulation should also be approved pursuant to section 1114(e)(1)(B) of the Bankruptcy Code, which provides that "the trustee and the authorized representative of the recipients of [retiree] benefits may agree to modification of such payments[.]" When modifying retiree benefits by agreement, the procedural requirements of subsections (f), (g) and (h) of section 1114 do not apply. *See Argeras v. GF Corp.*, 140 B.R. 884, 886 (N.D. Ohio 1992) (when the "debtor in possession and the authorized representative of recipients of retiree benefits agree to modification of [] payments, subsections (g) and (h) of § 1114 do not apply . . . [and the] bankruptcy court is not required to make any findings before [] modification can be implemented") (emphasis omitted).

28. As set forth above, the USW is the authorized representative of the Retirees for the purposes of section 1114 of the Bankruptcy Code. Further, the USW is authorized to settle the Tackett Litigation on behalf of the Tackett Class. As the authorized representative of the Retirees, section 1114 permits the USW and M&G Polymers to consensually agree to terminate the Retiree Benefits. Courts in this district and other districts have granted similar relief. *See, e.g., In re TK Holdings*, No. 17-11375 (BLS) (Docket No. 1879) (Bankr. Del. Feb. 1, 2018) (approving Bankruptcy Rule 9019 motion seeking court approval to terminate retiree benefits and release certain related claims under section 1114 of the Bankruptcy Code); *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 4589331, at *16 (Bankr. S.D.N.Y. Dec. 26, 2007) (granting a consensual termination of retiree benefits as agreed upon pursuant to section 1114(e)(1)(B) of the Bankruptcy Code); *Hourly Employees/Retirees of Debtor v. Erie Forge & Steel, Inc.*, No. 03-233 ERIE, 2004 WL 385023, at *5 (W.D. Pa. Feb. 2, 2004), *aff'd sub nom, In re Erie Forge & Steel, Inc.*, 418 F.3d 270 (3d Cir. 2005) (holding that "a Chapter 11 debtor can

NAI-1503672279v6
DOCS_DE:219810.1 54032/001

modify its payment of insurance benefits to retired employees . . . [when] the debtor and the beneficiaries' authorized representative [] agree to a modification of the retiree benefits"). For this additional reason, the Stipulation should be approved by the Court.

## NOTICE

29. Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; (h) USW; and (i) the Retirees. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

30. No prior request for the relief sought herein has been made to this Court or any other court.

-14-
NAI-1503672279v6
DOCS_DE:219810.1 54032/001

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: June 5, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
joneill@pszjlaw.com
jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  sgreenberg@jonesday.com
scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:  (216) 586-7035
Facsimile:  (216) 579-0212
Email:  ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession

NAI-1503672279v6
DOCS_DE:219810.1 54032/001