# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## MOTION OF DEBTORS M&G CAPITAL S.À R.L., M&G CHEMICALS S.A. AND MOSSI & GHISOLFI INTERNATIONAL S.À R.L. FOR AN ORDER DISMISSING THEIR CHAPTER 11 CASES AND GRANTING RELATED RELIEF

M&G Capital S.à r.l. ("M&G Capital"), M&G Chemicals S.A. ("M&G Chemicals") and Mossi & Ghisolfi International S.à r.l. ("MGI" and, collectively with M&G Capital and M&G Chemicals, the "Luxembourg Debtors"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, move the Court (this "Motion"), pursuant to sections 305(a), 349 and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), dismissing the chapter 11 cases of the Luxembourg Debtors and granting related relief.

In support of this Motion, the Luxembourg Debtors submit the *Declaration of Marco Ghisolfi in Support of the Motion of Debtors M&G Capital S.à r.l., M&G Chemicals S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* (the "Ghisolfi Declaration"), attached hereto as Exhibit B, and the *Declaration of Marianne Goebel in Support of the Motion of Debtors M&G Capital S.à r.l., M&G Chemicals*

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

*S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* (the "Goebel Declaration"), attached hereto as Exhibit C, and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.     Unlike their domestic co-debtors, the Luxembourg Debtors are foreign entities, organized under Luxembourg law, whose employees, operations and primary assets are all located in Luxembourg. Ghisolfi Decl., at ¶ 6. Most of the Luxembourg Debtors' creditors also are located in Luxembourg or elsewhere within the European Union. Id. The Luxembourg Debtors initially filed their chapter 11 cases with the hope that asset sales consummated during these proceedings would yield sufficient proceeds to provide a path to a confirmable chapter 11 plan for the Luxembourg Debtors while minimizing the risk of a Luxembourg insolvency proceeding (either initiated by creditors or by one or more of the Luxembourg Debtors pursuant to a statutory obligation imposed by Luxembourg law). Id. at ¶ 7. Because MGI, through its contracts with third-party vendors, coordinated the provision of critical information technology and other services to the other Debtors, MGI's chapter 11 filing also supported the Debtors' efforts to maximize the value realized through asset sales by ensuring that such services would not be interrupted during the marketing process. Id. Subsequent to the entry of the Corpus Christi Sale Order, the Luxembourg Debtors considered their options with respect to their chapter 11 cases and ultimately concluded that, given progress being made in ongoing negotiations with the Luxembourg Debtors' primary creditor constituencies and the increasing risk of a Luxembourg insolvency proceeding, their estates and creditors would be better served if the Luxembourg Debtors' chapter 11 cases were dismissed. Id.

2. Based on ongoing discussions with various creditors, the Luxembourg Debtors believe that dismissal of their chapter 11 cases would streamline negotiations and may facilitate a consensual resolution of the prepetition claims asserted against Luxembourg Debtors' estates. Ghisolfi Decl., at ¶ 8. The Luxembourg Debtors believe that, if successful, such an out-of-court resolution likely would enable Luxembourg creditors to recover at least as much as they would receive under a chapter 11 plan, and would increase the likelihood that MGI will be able to recover additional amounts from its non-debtor affiliates, thereby enhancing the recoveries of Luxembourg creditors. Id. Even if efforts to consensually resolve claims against the Luxembourg Debtors ultimately fail, however, the Luxembourg Debtors believe that commencing a bankruptcy proceeding in Luxembourg, if necessary, would provide no worse recoveries to creditors of MGI than such creditors would receive in chapter 11.[2] Id.

3. Dismissing the Luxembourg Debtors' chapter 11 cases also would enable the Luxembourg Debtors and their creditors to avoid a costly and protracted jurisdictional dispute that is likely to arise if an insolvency proceeding is commenced in Luxembourg. As Luxembourg entities with substantially all of their employees, operations and assets located in Luxembourg, the Luxembourg Debtors are subject to Luxembourg insolvency law. Goebel Decl., at ¶ 6. Luxembourg counsel believes that European Union regulations providing for the recognition of foreign proceedings among European Union member states would not apply to United States proceedings such as the Luxembourg Debtors' chapter 11 cases. Id. at ¶ 7. Although the Luxembourg Debtors would argue, where appropriate, that the automatic stay is effective extraterritorially and that the orders of this Court, including any confirmation orders, should be interpreted as binding in Luxembourg (as elsewhere), Luxembourg counsel is not

---

[2] Given the aggregate amount of claims asserted against the estates of M&G Capital and M&G Chemicals, and these entities' limited assets, it may not be possible for them to ultimately avoid a Luxembourg insolvency filing.

aware of any situation where a Luxembourg court has granted recognition to orders from a bankruptcy proceeding in the United States. Id.

4. Such non-recognition could significantly complicate, if not derail, the Luxembourg Debtors' efforts to resolve these cases and would deprive the Luxembourg Debtors and their creditors of the finality a confirmed chapter 11 plan is designed to provide. That is, Luxembourg law permits any unpaid creditor of the Luxembourg Debtors to pursue a course of action that ends with the commencement of an involuntary insolvency proceeding against the relevant Luxembourg Debtor if certain requirements are met. Goebel Decl., at ¶ 8. In addition, Luxembourg law imposes an affirmative duty on the Luxembourg Debtors to commence Luxembourg insolvency proceedings when certain statutory conditions (related to the non-payment of debts and the impairment of the debtor's creditworthiness) exist. Id. If the Luxembourg Debtors are forced into Luxembourg bankruptcy proceedings, either by a creditor or by an obligation to file arising under Luxembourg law, a trustee would be appointed and take immediate control of all decision-making authority for the Luxembourg Debtors. Id.

5. These risks are not remote. In recent months, for example, certain Luxembourg creditors have obtained orders of payment from Luxembourg courts commanding the Luxembourg Debtors to pay certain, albeit relatively small, prepetition claims notwithstanding both the automatic stay and the restrictions imposed upon the Luxembourg Debtors by the Bankruptcy Code. Ghisolfi Decl., at ¶ 9. Certain other Luxembourg creditors have commenced or threatened further judicial proceedings before Luxembourg courts in an effort to collect on prepetition claims. Id. Although the Luxembourg Debtors have been successful in keeping the majority of their creditors at bay, due in part to those creditors who do recognize the applicability of the automatic stay, the demands and pressure from Luxembourg creditors are increasing. Id.

6.     As a result, the Luxembourg Debtors' ability to pursue and successfully consummate a chapter 11 plan appears to be growing increasingly vulnerable to disruption, if not cessation, due to a Luxembourg insolvency proceeding. Ghisolfi Decl., at ¶ 9. While chapter 15 of the Bankruptcy Code provides a framework for managing concurrent domestic and foreign bankruptcy proceedings, it is unclear, given the historical lack of recognition in Luxembourg of proceedings outside of the European Union, how or whether the Luxembourg Debtors' chapter 11 cases could be coordinated with Luxembourg bankruptcy proceedings. Attempting to manage concurrent proceedings without mutual recognition would, at a minimum, substantially delay and complicate efforts to bring the Luxembourg Debtors' chapter 11 cases to a close.

7.     Thus, the Luxembourg Debtors request dismissal of their chapter 11 cases because they believe that dismissal is in the best interests of their estates and creditors. Specifically, the Luxembourg Debtors believe that, among other things, dismissal would: (a) avoid likely complex, costly and time-consuming jurisdictional disputes; (b) enable the Luxembourg Debtors and their creditors to achieve finality that likely cannot be obtained under a chapter 11 plan; and (c) potentially provide a path for superior recoveries for creditors of MGI than can be obtained under a chapter 11 plan.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

*General Background*

9.     On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on

October 30, 2017 (the "Petition Date"), each of the other Debtors, including the Luxembourg Debtors, commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Chapter 11 Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Chapter 11 Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

***The Luxembourg Debtors***

11. Each of the Luxembourg Debtors is headquartered in Luxembourg, operates in Luxembourg and is organized under Luxembourg law. Ghisolfi Decl., at ¶ 6. MGI holds 100% of the equity in Debtors M&G USA Holding, LLC ("M&G USA Holding") and M&G USA Corporation ("M&G USA"). First Day Decl., at Ex. A. M&G USA, in turn, is the direct or indirect parent of each of the other Debtors organized in the United States. Id. MGI is a wholly-owned direct subsidiary of M&G Chemicals. Id. M&G Capital holds approximately 18.2% of M&G Chemicals' equity, with the remainder owned by two foreign non-debtor entities within the M&G corporate group and non-affiliate Magnate S.à r.l. Id. Other than MGI's equity interests in M&G USA Holding and M&G USA (which as a result of the sale process discussed above have been demonstrated to have <u>de minimis</u> value), substantially all of the

Luxembourg Debtors' material assets are located in Luxembourg. Id. Substantially all of the Luxembourg Debtors' employees are located in Luxembourg or Italy. Id.

***The Asset Sales***

12.     On February 1, 2018, the Court entered the *Order Authorizing (I) the Sale of Certain Assets of M&G USA Corporation and M&G Polymers USA, LLC Free and Clear of Encumbrances and Liens; (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Related Relief* (Docket No. 864) (the "Apple Grove Sale Order"), authorizing the sale of certain assets, including, but not limited to, facilities located in Apple Grove, West Virginia and Sharon Center, Ohio, by Debtors M&G USA and M&G Polymers, as sellers, and Indorama Ventures Holdings LP U.S., as purchaser, pursuant to an asset purchase agreement, dated as of January 30, 2018, by and among such parties (the "Apple Grove Sale"). MGI received approximately $250,000 for certain intellectual property sold in connection with the Apple Grove Sale.

13.     On March 29, 2018, the Court entered the *Order (I) Approving the Sale of Certain Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Granting Related Relief* (Docket No. 1300) (the "Corpus Christi Sale Order"), authorizing the sale of certain assets, including, but not limited to, the uncompleted purified terephthalic acid/polyethylene terephthalate resin production plant, and a related desalination facility, both located in Corpus Christi, Texas, and certain intellectual property of MGI, by Debtors M&G Resins USA, LLC, M&G Polymers, M&G Waters USA, LLC, M&G USA, Chemtex International Inc. and MGI, as sellers, and Corpus Christi Polymers LLC, as purchaser, pursuant to an asset purchase agreement, dated as of March 28, 2018, by and among such parties (the "Corpus Christi Sale" and, together with the Apple Grove Sale,

the "Asset Sales"). Although the purchase agreement for the Corpus Christi Sale contemplated a potential sale of intellectual property by MGI, such transaction did not come to fruition, and MGI ultimately did not execute the purchase agreement.

## RELIEF REQUESTED

14.     The Luxembourg Debtors request entry of an order, substantially in the form of the Proposed Order, dismissing the Luxembourg Debtors' chapter 11 cases pursuant to sections 305(a), 349 and 1112(b) of the Bankruptcy Code, and granting certain related relief.

## BASIS FOR RELIEF

***Dismissal of the Luxembourg Debtors' Chapter 11 Cases
Is Appropriate under Section 305(a) of the Bankruptcy Code.***

15.     Dismissal of the Luxembourg Debtors' chapter 11 cases is warranted under section 305(a) of the Bankruptcy Code, which provides, in relevant part, that "[t]he court, after notice and a hearing, may dismiss a case under [the Bankruptcy Code] … at any time if … the interests of creditors and the debtor would be better served by such dismissal[.]"[3] 11 U.S.C. § 305(a)(1). Although courts generally characterize dismissal under section 305(a) as "extraordinary relief," this Court has stated that "[w]hether to dismiss a case … pursuant to section 305 is committed to the discretion of the bankruptcy court, and is determined based upon the totality of the circumstances." In re Northshore Mainland Servs., Inc., 537 B.R. 192, 203 (Bankr. D. Del. 2015) (citations and quotation marks omitted); see also In re Mylotte, David & Fitzpatrick, No. 07-14109, 2007 WL 3027352, at *5 (Bankr. E.D. Pa. Oct. 11, 2007) (same); In re Compañía de Alimentos Fargo, S.A., 376 B.R. 427, 433 (Bankr. S.D.N.Y. 2007) ("The decision to abstain [under section 305(a) of the Bankruptcy Code], either by suspension or

---

[3]       Although section 305 of the Bankruptcy Code is titled "Abstention," the language of section 305(a) refers to the relief available under such provision as "dismissal" or "suspension" of a bankruptcy case. For purposes of this Motion, the Luxembourg Debtors will refer to the relief requested under section 305(a) as "dismissal."

dismissal, is committed to the Court's discretion.") (citations omitted).  Courts in this District

have further stated that "[g]ranting an abstention motion pursuant to § 305(a)(1) requires more

than a simple balancing of harm to the debtor and creditors; rather, the interests of both the

debtor and its creditors must be served by granting the requested relief." Northshore,

537 B.R. at 203 (quoting In re AMC Inv'rs., LLC, 406 B.R. 478, 488 (Bankr. D. Del. 2009)).

16.    In Northshore, the court articulated the following "non-exclusive" factors

employed by courts within the Third Circuit "to gauge the overall best interests of the debtor and

creditors" when applying section 305(a)(1) of the Bankruptcy Code:  (a) "the economy and

efficiency of administration;" (b) "whether another forum is available to protect the interests of

both parties or there is already a pending proceeding in state court;" (c) "whether federal

proceedings are necessary to reach a just and equitable solution;" (d) "whether there is an

alternative means of achieving an equitable distribution of assets;" (e) "whether the debtor and

creditors are able to work out a less expensive out-of-court arrangement which better serves all

interests in the case;" (f) "whether a non-federal insolvency has proceeded so far in those

proceedings that it would be costly and time consuming to start afresh with the federal

bankruptcy process;" and (g) "the purpose for which bankruptcy jurisdiction has been sought."

Northshore, 537 B.R. at 203-04 (citing, inter alia, AMC, 406 B.R. at 488).  Although courts

generally consider all of these factors to the extent applicable, "they are not given equal weight

in each case, nor should the Court conduct a strict balancing." AMC, 406 B.R. at 488

(citation omitted); see also In re Monitor Single Lift I, Ltd., 381 B.R. 455, 465

(Bankr. S.D.N.Y. 2008) ("While all factors are considered, not all are given equal weight in

every case.").

17.     The <u>Northshore</u> court further recognized that, although courts have stated (based on legislative history) that section 305(a)(1) of the Bankruptcy Code "was designed to be utilized where, for example, a few recalcitrant creditors attempted to interfere with an out-of-court restructuring that had the support of a significant percentage of the debtor's creditors" (i.e., by commencing involuntary bankruptcy proceedings), the scope of section 305(a) is not limited such circumstances.  <u>Northshore</u>, 537 B.R. at 203 (citations omitted); <u>see also</u> <u>Monitor</u>, 381 B.R. at 463 ("[N]owhere in the text of § 305(a)(1) or in its legislative history did Congress specifically limit the basis for a § 305(a)(1) motion to involuntary cases commenced by creditors to gain leverage in out-of-court negotiations.  The legislative history's reference to this fact-pattern only as an 'example' of a basis for abstaining under § 305(a)(1) validates this broader view of § 305(a)(1)'s application.") (citation omitted).  Rather, the <u>Northshore</u> court stated that "[t]here is also no question that abstention [under section 305(a) of the Bankruptcy Code] may be proper where, as here, the debtor is an entity formed under the laws of, or doing business in, a foreign country." <u>Northshore</u>, 537 B.R. at 203 (quoting <u>In re Stillwater Asset Backed Offshore Fund Ltd.</u>, 485 B.R. 498, 509 (Bankr. S.D.N.Y. 2013)); <u>see also</u> <u>In re Bd. of Dirs. of Multicanal S.A.</u>, 314 B.R. 486, 521 (Bankr. S.D.N.Y. 2004) (dismissing involuntary chapter 11 proceeding under prior version of section 305(a) of the Bankruptcy Code in deference to pending Argentine proceedings; stating that "U.S. courts have acknowledged that foreign courts have an interest in presiding over the insolvency proceedings of their own domestic business entities to promote the systematic distribution of a debtor's assets") (citation omitted).

18.     Dismissing the Luxembourg Debtors' chapter 11 cases pursuant to section 305(a) of the Bankruptcy Code is warranted because the Luxembourg Debtors' estates and creditors would be better served by dismissal than continuing their bankruptcy cases before this Court.

For the reasons set forth below, the Luxembourg Debtors believe that dismissal would: (a) avoid likely costly and protracted jurisdictional disputes; (b) enable the Luxembourg Debtors and their creditors to achieve finality that may not be obtainable under a chapter 11 plan; and (c) provide a path for potentially more favorable recoveries for creditors of MGI than can be obtained under a chapter 11 plan.

19.     *Economy and Efficiency of Administration; Whether a Non-Federal Insolvency Has Proceeded So Far That It Would Be Costly and Time-Consuming to Start Afresh with the Federal Bankruptcy Process; and Whether the Debtor and Creditors Are Able to Work Out a Less Expensive Out-of-Court Arrangement which Better Serves All Interests in the Case.* Dismissal of their chapter 11 cases provides the Luxembourg Debtors the best opportunity to resolve the claims against their estates in an efficient and cost-effective manner. The Luxembourg Debtors believe that dismissal would streamline their ongoing negotiations with creditors and enable the parties to focus on issues specific to the Luxembourg Debtors. Ghisolfi Decl., at ¶ 10. Based on the current status of negotiations, the Luxembourg Debtors are hopeful that many, if not all, of the claims against their estates can be resolved in the near term, on an out-of-court basis. Id. While a favorable outcome of post-dismissal negotiations cannot be assured, and further proceedings in Luxembourg may become necessary, the Luxembourg Debtors believe that the dismissal of their chapter 11 cases would increase the likelihood of reaching out-of-court settlements with their creditors in the near term, and that such consensual resolutions would be more economical and efficient for all parties than seeking confirmation of one or more chapter 11 plans that likely would not be recognized in Luxembourg. Id.

20.     Even if further court proceedings cannot be avoided, however, the Luxembourg Debtors believe that commencing Luxembourg bankruptcy proceedings, without the

jurisdictional complications parallel proceedings likely would present, would best serve the interests of economy and administrative efficiency because a Luxembourg proceeding would offer the Luxembourg Debtors finality. Ghisolfi Decl., at ¶ 11. Because the Luxembourg Debtors have no significant assets, facilities or personnel in the United States, and the Luxembourg Debtors are prepared to avail themselves of Luxembourg bankruptcy law if necessary, considerations of economy and efficiency militate against continuing the Luxembourg Debtors' cases in this Court, especially given that any chapter 11 plan process for the Luxembourg Debtors may be disrupted at any time by a parallel Luxembourg filing. Id. Moreover, to the extent an out-of-court resolution can be achieved, the Luxembourg Debtors and their creditors would be spared the administrative and professional costs associated with pursuing a chapter 11 plan, as well as the costs of a Luxembourg proceeding.

21. Thus, while there are no parallel insolvency proceedings pending at this time, Luxembourg bankruptcy proceedings, if necessary, would be more efficient and economical than continuing the Luxembourg Debtors' chapter 11 cases (whether in the absence of, or parallel to, Luxembourg bankruptcy proceedings), because only Luxembourg proceedings can provide the Luxembourg Debtors and their creditors finality from the perspective of Luxembourg law. Bankruptcy courts have dismissed parallel plenary United States proceedings under similar circumstances. See, e.g., Multicanal, 314 B.R. at 521 (where Argentine debtor commenced insolvency proceedings in Argentina and sought recognition of such foreign proceeding in the bankruptcy court under former section 304 of the Bankruptcy Code, granting debtor's motion to dismiss subsequent involuntary chapter 11 petition filed by certain creditors; stating that "[a] single primary proceeding ... minimizes the time, expense and administrative burdens of managing full cases in multiple jurisdictions.... A U.S. Chapter 11 proceeding to run

concurrently with the existing [Argentine proceeding] … would hinder rather than advance an equitable distribution in this case. Multicanal's expert witness on Argentine law explained that a concurrent U.S. case would be deemed to conflict with, rather than complement the [Argentine proceeding], and that it would receive no recognition in Multicanal's home country under Argentine insolvency law to the extent it purported to administer assets in Argentina.") (internal citation omitted).

22.  *Availability of Another Forum to Protect the Parties' Interests; Necessity of Federal Proceedings to Reach a Just and Equitable Solution; and Availability of an Alternative Means of Achieving an Equitable Distribution of Assets.* The Luxembourg Debtors believe that, if the Court dismisses the Luxembourg Debtors' chapter 11 cases and out-of-court negotiations with creditors prove unsuccessful, the interests of both the Luxembourg Debtors and their creditors will be adequately protected under Luxembourg law. Because the Luxembourg Debtors are incorporated, and maintain their principal offices, in Luxembourg, each Luxembourg Debtor is subject to the jurisdiction of the Luxembourg courts and Luxembourg's Code of Commerce, which governs insolvency proceedings. Goebel Decl., at ¶ 6. A majority of the Luxembourg Debtors' creditors are located in Luxembourg, or elsewhere in the European Union, and also are subject to the Luxembourg court's jurisdiction. Id.

23.  Under the Code of Commerce, Luxembourg insolvency proceedings are broadly similar to United States bankruptcy proceedings. For example, the Code of Commerce provides for both involuntary bankruptcy filings by creditors and filings initiated by the debtor itself; court approval is required for asset sales, settlements with creditors and other pre-plan transactions involving the debtor's assets; creditors assert claims against the debtor through an orderly process requiring documentation of claims and providing for court resolution of claims disputes; and

distributions are made to creditors pursuant to a distribution plan that must conform with a statutory claim priority scheme and be approved by the court. Goebel Decl., at ¶ 9.

24.     The Code of Commerce also differs from the Bankruptcy Code in several notable respects, including (but not limited to) the following:

- *First*, the Code of Commerce imposes an affirmative duty on corporate debtors to commence bankruptcy proceedings in Luxembourg no later than one month following the satisfaction of certain statutory conditions related to the debtor's non-payment of debts and the impairment of the debtor's creditworthiness. Goebel Decl., at ¶ 10. Failure to comply with this statutory requirement can subject the debtor's directors to personal liability. Id.

- *Second*, the Code of Commerce also does not provide for debtor-in-possession management of a corporate debtor during a Luxembourg bankruptcy case. Rather, in all corporate bankruptcies, the court appoints (a) a *curateur*, or trustee, who controls the debtor's assets, and exercises all decisionmaking powers of the debtor during the bankruptcy proceeding, subject to court approval, and (b) a *juge commissaire*, or commissioner, who is another judge of the same court charged with assisting in administering the bankruptcy case. Id. The trustee, and not the debtor, prepares a *reddition des comptes*, or distribution plan, and submits such plan to the court for approval. Id.

- *Third*, the Luxembourg claims submission process is streamlined. Under the Code of Commerce, creditors are required to submit claims within 20 days of notice that the Luxembourg court has entered a judgment of bankruptcy against a corporate debtor, although the commissioner, in his or her discretion, may extend this bar date, e.g., for foreign creditors. Id.

- *Fourth*, with respect to distributions to creditors under a bankruptcy plan, the Code of Commerce provides for relatively fewer priority classifications than the Bankruptcy Code. Id. Under the Code of Commerce and the Luxembourg Civil Code, certain types of claims are classified as "privileged," including claims secured by an interest in a particular asset (e.g., claims arising from a mortgage on real property), tax claims and social security claims. Id. Employment compensation and employee severance claims also are entitled to special treatment under the Code of Commerce and the Luxembourg Labor Code. Id. Under article L.125-1 of Luxembourg's Labor Code and the conditions stated therein, such claims have super-privileged status, subject to a cap of approximately 14,389€ per employee, which amount is guaranteed by a governmental fund to ensure payment even where estate assets are insufficient to pay such claims. Id. Employee claims in excess of the cap can benefit from a privileged ranking under article 545 of the Code of Commerce whereby such privileged amount is not guaranteed by the government in the event insufficient assets are available for distribution on account of (ordinary) privileged claims. Id.

Although an employee asserting a claim for employee compensation or severance must satisfy certain criteria under Luxembourg law to obtain privileged or super-privileged status, and such matters may be litigated during an insolvency proceeding, unlike the Bankruptcy Code, the Code of Commerce makes no *per se* distinction between insider and non-insider employee claims for purposes of distributions under Luxembourg's priority scheme.[4] Id.

- *Fifth*, following the trustee's submission of a distribution plan to the court, both the debtor and its creditors have an opportunity to submit comments or objections to the court. Id. In practice, however, the parties seldom comment on distribution plans, and Luxembourg courts generally accept such plans as proposed. Id.

25. Although no parallel Luxembourg proceedings are pending against the Luxembourg Debtors at this time, in evaluating motions to dismiss or suspend bankruptcy cases under section 305(a) of the Bankruptcy Code in deference to foreign insolvency proceedings and analyzing considerations of comity, courts have stated that the movant need not establish that the foreign jurisdiction's bankruptcy laws are perfectly analogous to the Bankruptcy Code, but rather that the relevant inquiry is whether the relevant foreign bankruptcy system is "fair and regular," is "not repugnant" to American notions of justice and otherwise does not contravene United States public policy. See, e.g., Northshore, 537 B.R. at 208 (dismissing chapter 11 cases under section 305(a) of the Bankruptcy Code in deference to pending Bahamian proceedings; stating that "[a]lthough there are clear differences between the Bahamian insolvency proceedings and the United States' chapter 11 process, there has been no evidence that the Bahamian laws contravene the public policy of the United States"); Fargo, 376 B.R. at 437 (granting foreign debtor's motion to dismiss involuntary chapter 11 case under section 305(a) of the Bankruptcy Code in deference to pending Argentine proceeding; stating that, although under Argentine law, the automatic stay does not apply to secured creditors, and there is no equitable subordination or

---

[4] In contrast, section 503(c)(2) of the Bankruptcy Code provides, with respect to severance claims, that "there shall neither be allowed, nor paid ... a severance payment to an insider of the debtor, unless ... (A) the payment is part of a program that is generally applicable to all full-time employees; and (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made[.]" 11 U.S.C. § 503(c)(2).

broad right to discovery akin to Bankruptcy Rule 2004, "[a] foreign bankruptcy system need not, however, 'mirror' United States law for comity to be granted, so long as foreign law is substantially similar and not repugnant to United States law…. Although the Petitioners have identified differences with United States law, they have failed to show that these differences are at odds with our own *fundamental* notions of fairness or treat them unfairly.") (internal citations omitted) (emphasis in original); In re Axona Int'l Credit & Commerce Ltd., 88 B.R. 597, 611 (Bankr. S.D.N.Y. 1988) (granting debtor's motion to suspend chapter 7 case under prior version of section 305(a) of the Bankruptcy Code in deference to pending Hong Kong proceeding; stating that "[w]hether or not Hong Kong law is identical to American law, Hong Kong law is not repugnant to our ideas of justice, and is inherently fair and regular") (citation omitted). Because it appears increasingly likely that a Luxembourg proceeding will be commenced against one or more of the Luxembourg Debtors regardless of whether this Motion is granted or denied, the Luxembourg Debtors submit that it is appropriate for the Court to consider the foregoing principles in analyzing the adequacy of Luxembourg law for purposes of dismissal under section 305(a) of the Bankruptcy Code.

26.    The Luxembourg Code of Commerce provides an adequate framework for the resolution of claims against the Luxembourg Debtors should further proceedings become necessary following the dismissal of the Luxembourg Debtors' chapter 11 cases and out-of-court negotiations with the Luxembourg Debtors' creditors. As discussed above, Luxembourg law, among other things:  (a) enables both debtors and creditors to initiate bankruptcy proceedings; (b) prevents the dissipation of the debtor's assets during bankruptcy proceedings by placing all assets under the control of the trustee, and requiring both trustee and court approval of material transactions involving debtor assets; (c) provides for an orderly claims submission process and

the resolution of claims disputes before the court; and (d) requires court approval of a distribution plan that must be proposed by the trustee in conformity with statutory requirements governing creditor classifications and Luxembourg's statutory priority scheme. Goebel Decl., at ¶ 9. Thus, although the Code of Commerce differs from the Bankruptcy Code in several notable respects, discussed above, the Code of Commerce nevertheless provides a "fair and regular" system for the resolution of claims against the Luxembourg Debtors and the distribution of their assets that is not "repugnant" to United States law. For these same reasons, the Luxembourg Debtors believe that Luxembourg's bankruptcy system (x) constitutes "another forum [that] is available to protect the interests" of the Luxembourg Debtors and their creditors," (y) provides "an alternative means of achieving an equitable distribution of assets" and (z) makes federal proceedings unnecessary "to reach a just and equitable solution." See Northshore, 537 B.R. at 203-04. In addition, based on their preliminary analysis of potential creditor distributions under the Code of Commerce and various potential chapter 11 plan alternatives, the Luxembourg Debtors believe that MGI's creditors likely would obtain no worse recoveries in a Luxembourg bankruptcy proceeding than in chapter 11. Ghisolfi Decl., at ¶ 8.

27.     *The Purpose for Which Bankruptcy Jurisdiction Has Been Sought.* The Luxembourg Debtors commenced their chapter 11 cases with the hope that the Asset Sales would yield sufficient proceeds to provide a path to a confirmable chapter 11 plan for the Luxembourg Debtors and avoid a Luxembourg insolvency filing. Ghisolfi Decl., at ¶ 7. In addition, because MGI, through its relationships with third-party vendors, coordinates the provision of critical information technology services to the other Debtors, MGI entered chapter 11, in part, to ensure that these essential services would not be interrupted, on account of creditor actions or otherwise, during the Debtors' marketing and sale process. Id. Now that the

Asset Sales are complete, however, and it is clear that the proceeds of the sale are insufficient to provide full recoveries to any party other than secured creditors, the Luxembourg Debtors believe that they and their creditors would be better served by dismissal – and, if necessary, further proceedings in Luxembourg – for all of the reasons set forth above.

***Cause Exists to Dismiss the Luxembourg Debtors'***
***Chapter 11 Cases under Section 1112(b) of the Bankruptcy Code.***

28.     Although the Luxembourg Debtors believe that dismissal under section 305(a)(1) is warranted for the reasons set forth above (and, accordingly, that no further showing is necessary for the Court to dismiss the Luxembourg Debtors' cases), section 1112(b) of the Bankruptcy Code provides an additional, independent basis for dismissal of the Luxembourg Debtors' chapter 11 cases.  Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment ... of a trustee or examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1) (emphasis added).  The party seeking dismissal bears the burden to establish the requisite "cause."  In re Riverbend Cmty., LLC, No. 11-11771, 2012 WL 1030340, at *3 (Bankr. D. Del. Mar. 23, 2012).  In addition, "[t]he determination of cause under § 1112(b) is subject to judicial discretion under the circumstances of each case."  In re Am. Capital Equip., LLC, 688 F.3d 145, 161 (3d Cir. 2012) (quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984)).

29.     According to the Third Circuit, "[s]ection 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'"

<u>Am. Capital Equip.</u>, 688 F.3d at 161 (quoting 11 U.S.C. § 1112(b)). Once "cause" is established under section 1112(b) of the Bankruptcy Code (and assuming that the Court declines to appoint a trustee or examiner), the Court *must* dismiss or convert the case unless (a) "the court finds and specifically identifies unusual circumstances establishing that … dismissing the case is not in the best interests of creditors and the estate;" (b) "there is reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of [the Bankruptcy Code], or if such sections do not apply, within a reasonable period of time;" and (c) an objecting party establishes certain other enumerated statutory requirements.[5]  11 U.S.C. § 1112(b)(2); <u>see also</u> <u>In re Scarborough–St. James Corp.</u>, No. 15-10625, 2015 WL 5672628, at *2 (Bankr. D. Del. Sept. 24, 2015) (except where these "limited circumstances" are present, "[o]nce the Court finds that 'cause' exists, dismissal or conversion is necessary"); <u>Riverbend Cmty.</u>, 2012 WL 1030340, at *3 ("Section 1112(b) is clear that the Court must dismiss or convert Debtor's case if Movants establish 'cause,' which is defined in Section 1112(b)(4).  The only 'but' to the mandatory conversion or dismissal is if a debtor can prove the existence of 'unusual circumstances specifically identified by the court' showing that dismissal or conversion is not in the best interests of the creditors and the estate.") (internal citation omitted).

30.     Although the Bankruptcy Code does not define the phrase "unusual circumstances," many courts have stated, in the context of section 1112(b)(2), that they "involve conditions that are not common in most chapter 11 cases."  <u>In re Korn</u>, 523 B.R. 453, 468

---

[5]     Specifically, a party opposing a motion to dismiss under section 1112(b) of the Bankruptcy Code also must establish that "the grounds for converting or dismissing a case include an act or omission of the debtor other than under paragraph (4)(A) [providing that cause for dismissal includes 'substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation']—(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."  11 U.S.C. § 1112(b)(2)(B).

(Bankr. E.D. Pa. 2014) (citations omitted); see also Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC), 553 B.R. 162, 176 (B.A.P. 1st Cir. 2016) (same).

31.     Section 1112(b)(4) of the Bankruptcy Code lists several examples of factors supporting a finding that "cause" exists within the meaning of section 1112(b)(1), including where there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" or "failure to … confirm a plan, within the time fixed by [the Bankruptcy Code] or by order of the court." 11 U.S.C. § 1112(b)(4)(A), (J). "As provided in the plain language of the Code, courts have held that if one of the grounds for dismissal or conversion is § 1112(b)(4)(A) (substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation), the § 1112(b) inquiry ends; the case must be converted or dismissed." Korn, 523 B.R. at 465 n.28 (collecting cases).

32.     This list of examples constituting "cause" for dismissal or conversion set forth in section 1112(b)(4) of the Bankruptcy Code is non-exclusive, however, and "cause" also may be found under circumstances not specifically addressed in that provision. See Am. Capital Equip., 688 F.3d at 161 ("Section 1112(b) provides a non-exhaustive list of grounds for finding 'cause' to convert or dismiss.") (citing In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999)); Scarborough-St. James, 2015 WL 5672628, at *2 ("'Cause' is a flexible standard, and the examples listed in subsection (b)(4) are not exhaustive.") (citing In re Inwood Heights Hous. Dev. Fund Corp., No. 11-13322, 2011 WL 3793324, at *6 (Bankr. S.D.N.Y. Aug. 25, 2011)); Korn, 523 B.R. at 464-65 ("The examples [of 'cause' set forth in section 1112(b)(4)] are illustrative and not exhaustive.") (citations omitted); In re PM Cross, LLC, 494 B.R. 607, 617 (Bankr. D.N.H. 2013) (section 1112(b)(4)'s list of factors constituting "cause" is "not exclusive,"

and "the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases") (quoting In re Gonic Realty Tr., 909 F.2d 624, 626 (1st Cir. 1990)).

33.     According to the Third Circuit, in addition to the factors specifically enumerated in section 1112(b)(4) of the Bankruptcy Code, "[a] court may also find cause [under section 1112(b)] where there is not 'a reasonable possibility of a successful reorganization within a reasonable period of time.'" Am. Capital Equip., 688 F.3d at 162 (quoting First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 572 (3d Cir. 1991)); see also Anderson v. Commonwealth Renewable Energy, Inc. (In re Commonwealth Renewable Energy, Inc.), 550 B.R. 279, 283 (Bankr. W.D. Pa. 2016) (same).  The Third Circuit also has stated that, even though the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") modified the list of examples set forth in section 1112(b)(4) constituting "cause" for dismissal or conversion – including by replacing the phrase "inability to effectuate a plan" with "inability to effectuate substantial consummation of a confirmed plan" – post-BAPCPA, "the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause are not exhaustive." Id. at 162 n.10 (citing DCNC N.C. I, L.L.C. v. Wachovia Bank, N.A., No. 09-3775, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009)) (quotation marks omitted).

34.     Cause exists to dismiss the Luxembourg Debtors' chapter 11 cases because the Luxembourg Debtors' ability to successfully effectuate a plan is highly questionable given the increasing risk of a Luxembourg insolvency proceeding.  Moreover, even if the Luxembourg Debtors were to obtain confirmation of one or more chapter 11 plans, the ability of the Luxembourg Debtors to effectuate any such plan in their home country appears doubtful. Goebel Decl., at ¶ 7. According to Luxembourg counsel, the Luxembourg courts likely would not recognize or give effect to a confirmed chapter 11 plan or a confirmation order.  Id.

35.     If necessary, the Luxembourg Debtors would vigorously argue (to the extent a good faith legal basis exists to do so) that any confirmation order entered, and any chapter 11 plan approved, by this Court should be entitled to recognition and deference in Luxembourg. Without such recognition in Luxembourg, however, even with one or more confirmed chapter 11 plans, it would be difficult, if not impossible, for the Luxembourg Debtors to: (a) disburse the funds necessary to consummate a chapter 11 plan from Luxembourg without exposing themselves to liability; or (b) prevent dissatisfied local Luxembourg creditors from obtaining and seeking to enforce local judgments, including by (i) engaging a bailiff to seize the Luxembourg Debtors' assets, (ii) seeking a freeze of the applicable Luxembourg Debtor's bank accounts or (iii) taking other actions that would necessitate the commencement of bankruptcy proceedings in Luxembourg. Goebel Decl., at ¶ 7. Moreover, unless the Luxembourg Debtors are deemed substantively consolidated with the other Debtors (or with each other) for purposes of plan voting and distributions (which may or may not be practicable in these cases), it is uncertain whether M&G Capital and M&G Chemicals can meet all of the requirements for plan confirmation under chapter 11 of the Bankruptcy Code in the first instance. Under these circumstances, the Luxembourg Debtors believe that ample cause exists for dismissal under section 1112(b) of the Bankruptcy Code.

## REQUEST FOR APPROVAL OF EXCULPATION

36. As part of the Proposed Order, the Luxembourg Debtors request that any order granting the relief requested herein contain the following limited exculpation provision:

> From and after the entry of this Order, the Debtors and any of their respective directors, officers, employees, attorneys, consultants and advisors shall neither have nor incur any liability to any person for any act taken or omitted, or to be taken, in connection with the dismissal of the Luxembourg Debtors' chapter 11 cases including, but not limited to, seeking and effectuating the dismissal of the Luxembourg Debtors' chapter 11 cases, including (but not limited to), the formation, preparation, dissemination, approval, implementation or consummation of the Motion and this Order; provided, however, that the foregoing provision shall not affect the liability of any person that otherwise would result from any such act or omission to the extent that the act or omission is determined in a final order of a court of competent jurisdiction to have constituted willful misconduct, gross negligence or violation of law.

37. The Luxembourg Debtors submit that such an exculpation provision is appropriate because it relates only to post-petition conduct related to the dismissal of the Luxembourg Debtors' chapter 11 cases and does not eliminate liability for willful misconduct, gross negligence or violations of law. Courts have approved similar exculpation provisions in connection with the dismissal of chapter 11 cases. See, e.g., In re Intervention Energy Holdings, LLC, No. 16-11247 (Bankr. D. Del. Nov. 21, 2016) (granting secured creditor's motion to dismiss chapter 11 case and exculpating secured creditor and related parties with respect to postpetition actions, subject to exceptions for gross negligence, fraud or willful misconduct); In re Old HB, Inc. (f/k/a Hostess Brands, Inc.), No. 12-22052 (Bankr. S.D.N.Y. Nov. 30, 2015) (exculpating debtors, creditors' committee and related parties in connection with conduct related to dismissal of chapter 11 cases and winddown of debtors, subject to exceptions for willful misconduct, gross negligence or violation of law); In re LTV Steel Co., No. 00-43866 (Bankr. N.D. Ohio. Aug. 31, 2012) (same).

NAI-1503752466v9

## REQUEST FOR SURVIVAL OF CERTAIN ORDERS

38.     For the avoidance of doubt, the Luxembourg Debtors also request that any order granting the relief requested in this Motion provide that, notwithstanding anything to the contrary in section 349(b) of the Bankruptcy Code, the following orders shall remain in full force and effect and survive the dismissal of the Luxembourg Debtors' chapter 11 cases:  (a) the Corpus Christi Sale Order; (b) the *Order Approving (I) Settlement Agreement Between Mossi & Ghisolfi International S.á r.l., M&G Polimeros Brasil, S.A., M&G Chemicals, S.A., M&G Polimeros Mexico, S.A. de C.V. and Aloke Empreendimentos e Participações Ltda. and (II) Related Letter Agreement By and Between Mossi & Ghisolfi International S.á r.l. and M&G Polimeros Brasil, S.A.* (Docket No. 1493) (the "Brazil Settlement Order"); and (c) any order granting the relief requested in the *Debtors' Motion for Entry of an Order Approving Settlement Agreement By and Between M&G Finanziaria S.p.A., M&G Polimeri S.p.A., M&G Chemicals S.A., Magnate S.á r.l., Mossi & Ghisolfi International S.á r.l. and Chemtex International Inc.* (Docket No. 1489) (any such order, an "Italy Settlement Order").

39.     Section 349(b)(3) of the Bankruptcy Code provides that "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title … revests property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3).  Although the Luxembourg Debtors believe that this provision, and the other provisions of section 349(b) of the Bankruptcy Code, should not modify, reverse or otherwise limit the scope, applicability or enforceability of the Corpus Christi Sale Order, the Brazil Settlement Order or any Italy Settlement Order, or any of the transactions effected pursuant thereto, the Luxembourg Debtors request that any order granting the relief requested in this Motion nevertheless include the proposed survival provision for the avoidance of doubt.

## NOTICE

40. Notice of this Motion shall be given to: (a) the Office of the United States trustee for the District of Delaware (the "U.S. Trustee"); (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; and (h) all other parties listed on the master service matrix maintained by the claims and noticing agent in these chapter 11 cases. The Luxembourg Debtors submit that such notice complies with Bankruptcy Rules 1017 and 2002, and Local Bankruptcy Rule 1017-2, and that no other or further notice need be provided.

## NO PRIOR REQUEST

41. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Luxembourg Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: June 5, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:         ljones@pszjlaw.com
               joneill@pszjlaw.com
               jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Michael J. Cohen
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
Email:         sgreenberg@jonesday.com
               mcohen@jonesday.com
               scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:     (216) 586-7035
Facsimile:     (216) 579-0212
Email:         ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession