# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THEM TO EMPLOY AND RETAIN GREENHILL & CO., LLC AS CO-FINANCIAL ADVISOR AND CO-INVESTMENT BANKER TO THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2018; (II) APPROVING THE TERMS OF THE ENGAGEMENT LETTER; (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby apply to the Court (this "Application"), pursuant to sections 327(a) and 328(a) of title 11

of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2(h) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), for the entry of an order, in substantially the form

attached as Exhibit A (the "Proposed Order") (i) authorizing them to employ and retain

Greenhill & Co., LLC ("Greenhill") as their co-financial advisor and co-investment banker *nunc*

*pro tunc* to April 1, 2018 in accordance with the terms and conditions set forth in that certain

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in the Cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

engagement letter between Greenhill and the Debtors, dated as of April 1, 2018 (the "Engagement Letter");[2] (ii) approving the terms of the Engagement Letter, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth therein; (iii) waiving certain information requirements of Local Rule 2016-2; and (iv) granting related relief.  In support of this Application, the Debtors submit the Declaration of Neil A. Augustine, Vice Chairman and Co-Head of North American Financing Advisory & Restructuring at Greenhill, attached hereto as Exhibit B (the "Augustine Declaration"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 13, 2017, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").  Additional information regarding the

---

[2]      A copy of the Engagement Letter is attached as Exhibit 1 to the Proposed Order.  Prior to any hearing on the Application, the Debtors will file a fully executed version of the Engagement Letter.

Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3), filed on October 31, 2017 and incorporated herein by reference.

## RETENTION OF ROTHSCHILD AND AUGUSTINE

3.　　In June 2016, the Debtors retained Rothschild Inc. and Rothschild S.p.A. (together "Rothschild") to advise them as financial adviser and investment banker.  At that time, Mr. Augustine was employed by Rothschild and was leading Rothschild's engagement as financial advisor and investment banker to the Debtors.  On December 1, 2017, the Bankruptcy Court entered an order on authorizing the Debtors to engage and retain Rothschild pursuant to an engagement letter executed with Rothschild (Docket No. 307) (the "Rothschild Retention Order").

4.　　On January 30, 2018, Rothschild filed a declaration which disclosed that it anticipated that, as of March 15, 2018 (the "Departure Date"), Mr. Augustine would no longer be employed by Rothschild.[3]  In the Antinelli Declaration, Rothschild further disclosed that it anticipated that the Debtors would continue to employ Mr. Augustine as an advisor in these Cases, either on an individual basis or as an employee of a different investment banking firm. The Antinelli Declaration also disclosed that, of the fees payable by the Debtors to Rothschild under the Rothschild Retention Order, Rothschild Inc. would be allocated 80% of such fees (the "Rothschild Inc. Share") and Rothschild S.p.A. would be allocated 20% of such fees.

---

[3]　　*See Declaration of Stephen Antinelli in Support of Debtors' Application for Entry of an Order (I) Authorizing Them to Employ and Retain Rothschild Inc. and Rothschild S.P.A. as Financial Advisors and Investment Bankers to the Debtors Effective Nunc Pro Tunc to the Petition Date; (II) Approving the Terms of the Engagement Letter; (III) Waiving Certain Time-Keeping Requirements; and (IV) Granting Related Relief* (Docket No. 845) (the "Antinelli Declaration").

Finally, the Antinelli Declaration disclosed that Mr. Augustine would be entitled to 30% of the Rothschild Inc. Share (net of unreimbursed expenses, if any) earned after January 1, 2018 and paid by the Debtors pursuant to the Rothschild Retention Order (the "Augustine Share").[4]

5.       Subsequent to the Departure Date, the Debtors and Greenhill entered into the Engagement Letter.  Accordingly, the Debtors now seek to retain Greenhill as their co-financial advisor and co-investment banker, pursuant to the terms set forth in the Engagement Letter.

## GREENHILL'S QUALIFICATIONS

6.       Greenhill, a leading independent investment bank, has provided financial advice and investment banking services to numerous major corporate entities and investors across the United States and internationally.  Greenhill is qualified and has significant experience as both a financial advisor and investment banker.  Moreover, the firm has substantial expertise and experience advising financially distressed business entities in connection with financial and strategic advice on significant domestic and cross-border mergers and acquisitions, restructurings, financings, capital raisings and other strategic transactions to a diverse client base, including corporations, partnerships, institutions and governments globally.

7.       Greenhill and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases, and Greenhill has an excellent reputation in providing high quality financial advisory and investment banking services to debtors in such engagements. Greenhill's restructuring professionals have extensive experience in advising debtors and other

---

[4]       The Antinelli Declaration made clear that in no event would the aggregate fees payable by the Debtors (a)  to Rothschild under the Rothschild Retention Order and (b) to Augustine or his new employer (subject to Court approval), with respect to the Augustine Share, exceed the fees payable to Rothschild as already approved under the Rothschild Retention Order.

constituents in chapter 11 cases and have served as financial advisors to numerous debtors and creditors in restructurings involving, among others, Cenveo, Inc., Energy Future Holdings, Fairway Group Holdings, American Roads LLC; AMR Corporation; Quebecor World, Inc.; Hawker Beechcraft, Inc.; General Growth Properties, Inc.; Lyondell Chemical Company; Chrysler, LLC; BearingPoint, Inc.; Constar International Inc.; Delphi Corp.; Refco Inc.; Bethlehem Steel Corp.; Eclipse Aviation Corp.; and U.S. Shipping Partners L.P.

8.     Mr. Augustine, as co-leader of the Rothschild team until the Departure Date, developed significant relevant experience and expertise regarding the Debtors' businesses that (a) make Greenhill a natural selection to continue as the Debtors' co-financial advisor and co-investment banker and (b) will assist Greenhill in providing effective and efficient services to the Debtors in these Cases.  Among other things, Greenhill and the Debtors will benefit from the substantial amount of knowledge that Mr. Augustine gained while employed by Rothschild concerning the Debtors, their businesses and their financial affairs, especially with respect to the sale of the Debtors' manufacturing plant in Corpus Christi, Texas and related assets (the "Sale"). The Debtors believe that the retention of Greenhill will, among other things, assist the Debtors in closing the Sale, which remains subject to regulatory and government review.

9.     Should the Court approve the Debtors' retention of Greenhill as co-financial advisor and co-investment banker, Greenhill will continue, without interruption, to perform services for the Debtors as described herein.  Importantly, the Debtors' retention of Greenhill will allow for the Debtors to continue to benefit from Mr. Augustine's expertise and knowledge of the intricacies of the Debtors, their business operations and the closing of the Sale without any increase in fees payable by the Debtors.

## GREENHILL'S SERVICES

10.     Effective as of April 1, 2018, the Debtors and Greenhill have entered into the Engagement Letter, which governs the relationship between them, subject to Court approval. The Engagement Letter is consistent with the Rothschild engagement letter, which was previously approved by the Court, as modified by the "Bid Support Term Sheet" annexed to the Court-approved *Stipulation Regarding Settlement and Agreement with Respect to Sale of Corpus Christi Assets and Related Matters* (Docket No. 1299-1) and has now been agreed to by Greenhill.  The terms and conditions of the Engagement Letter reflect the efforts that will be required of Greenhill in this engagement and are consistent with the provision of services contemplated by the engagement letter between the Debtors and Rothschild as approved by the Rothschild Retention Order and as disclosed in the Antinelli Declaration.  Under the Engagement Letter, in consideration for the compensation contemplated thereby, Greenhill has agreed to provide the following services (the "Services"):[5]

a.     identify and/or initiate potential Transactions (as defined in the Engagement Letter);

b.     review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

c.     review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical Debtors and industry trends;

d.     evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

---

[5]     The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used but otherwise not defined in these summaries of shall have the meanings ascribed to such terms in the Engagement Letter.

e.    assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

f.    determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

g.    advise the Debtors on the risks and benefits of considering a any potential Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

h.    review and analyze any proposals the Debtors receive from third parties in connection with a Transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

i.    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in or claimants against the Debtors and/or their respective representatives in connection with any potential Transaction;

j.    assist the Debtors in identifying, approaching and negotiating with financing sources for any proposed New Capital Raise (as defined in the Engagement Letter);

k.    in connection with a Company M&A Transaction (as defined in the Engagement Letter) and as requested by the Debtors:

    (i)    assist the Debtors in identifying possible counterparties for a potential Company M&A Transaction;

    (ii)   assist the Debtors in the development and implementation of a marketing plan and assist the Debtors in their preparation of an information memorandum describing the Debtors for use with potential counterparties to a Company M&A Transaction;

    (iii)  assist the Debtors in their assessment of the financial aspects of a Company M&A Transaction;

    (iv)   assist the Debtors in structuring a Company M&A Transaction;

    (v)    participate on the Debtors' behalf in negotiations concerning the financial aspects of a Company M&A Transaction;

l.    advise the Debtors with respect to, and attend, meetings of the Debtors' Boards of Directors, creditor groups, official constituencies and other interested parties, as necessary;

m.  if requested by the Debtors, participate in hearings before the Court and provide relevant testimony with respect to the matters described in the Engagement Letter and issues arising in connection with any proposed plan; and

n.  render such other financial advisory and investment banking services as may be agreed upon by Greenhill and the Debtors.

11.  To the extent that the Debtors request Greenhill to perform additional services not contemplated by the Engagement Letter, such services and the fees for such services will be mutually agreed upon by Greenhill and the Debtors, in writing, in advance and subject to Court approval.

12.  The Services being provided to the Debtors are necessary to assist the Debtors in maximizing the value of their estates. The resources, capabilities and experience of Greenhill in advising the Debtors are important to the Debtors' liquidation efforts. As discussed above, the retention of Mr. Augustine and Greenhill fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals (including Rothschild), including with respect to the closing of the Sale.

## PROFESSIONAL COMPENSATION

13.  As described above, the general fee and expense structure for the financial advisory and investment banking services to be provided to the Debtors has previously been disclosed to, and approved by, this Court as part of the Rothschild Retention Order, as modified by the Bid Support Term Sheet. As more fully described in the Antinelli Declaration and the Engagement Letter, subject to Court approval, the Debtors have agreed with Greenhill and Rothschild on an arrangement for allocation of the advisory fees payable to such professionals (such allocation, together with the amount and nature of the fees as described herein, the "Fee and Expense Structure"), wherein Rothschild Inc. will receive 70% of the Rothschild Inc. Share

and Greenhill will receive the Augustine Share, effective as of April 1, 2018.  More specifically,

the Fee and Expense Structure is comprised of the following:

a.　An advisory fee of $200,000 per month (the "Monthly Fee"), which shall be payable by the Debtors in advance of the first day of each month.

b.　A fee (the "Completion Fee") of $5.0 million, payable upon the closing of (i) a Company Restructuring Transaction (as defined in the Engagement Letter) or (ii) a Company Credit Bid Transaction (as defined in the Engagement Letter).

c.　Upon the closing of a Company M&A Transaction (other than a Company Credit Bid Transaction), a fee (the "Company M&A Transaction Fee") equal to the greater of (i) the Completion Fee and (ii) a fee calculated as follows:

(Dollars In Millions)

| Aggregate Consideration | M&A Fee Percentage |
| --- | --- |
| US$200.0 and below | 1.50% |
| 300 | 1.25 |
| 400 | 1.00 |
| 500 | 0.90 |
| 600 | 0.85 |
| 700 | 0.95 |
| 800 | 0.90 |
| 900 | 0.85 |
| 1,000 | 1.30 |
| 2,000 and above | 1.20 |

d.　A "New Capital Fee" equal to 1.00% of the face amount of any debtor-in-possession financing raised after April 1, 2018 (a "New Capital Raise"), including, without limitation, any financing that is incremental to the postpetition financing facilities approved pursuant to the *Final Order Granting Debtors' Motion to (1) Authorize Certain Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (2) Grant Liens and Superpriority Administrative Expense Claims to DIP Lender Pursuant to 11 U.S.C. §§ 364 and 507 ; (3) Provide Adequate Protection to the Pre-Petition First Lien Lender and the Pre-Petition Second Lien Secured Party; (4) Modify Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 5 07; and (5) Granting Related Relief*, payable upon the earlier of (i) the closing of the transaction by which the new capital is committed and (ii) the receipt by the Debtors of any new capital.  Notwithstanding the foregoing, the New Capital Fee shall be reduced by 50% (the "New Capital Fee Reduction") solely with respect to any portion of new capital raised from any Existing Creditor (as defined in the Engagement Letter) of the Debtors.

14.     Furthermore, notwithstanding the foregoing, consistent with the Bid Support Term Sheet, Greenhill has agreed (i) to waive the Monthly Fee for April 2018 and onward, (ii) that the aggregate amount earned and payable to Greenhill and Rothschild from and after April 1, 2018 for any Completion Fee, Company M&A Transaction Fee, and New Capital Fee will be fixed at $9,000,000, and (iii) to waive any and all other fees that may otherwise be payable pursuant to the Engagement Letter.

15.     Greenhill has not shared and will not agree to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code and as specifically described above with respect to the division of fees between Rothschild and Greenhill under the Fees and Expense Structure.

16.     The Fee and Expense Structure is the result of prior arm's-length negotiations between the Debtors, Rothschild and Mr. Augustine, and is consistent with the framework and fee and expense structure previously disclosed in the Antinelli Declaration.  Importantly, the Fee and Expense Structure will not increase the fees payable by the Debtors to any party, because the fees payable to Greenhill (*i.e.*, the Augustine Share) are simply a percentage of the fees that were previously approved in connection with the Debtors' retention of Rothschild.  The Fee and Expense Structure demonstrates the scope and mandate that Greenhill has undertaken and expects to undertake in these Cases as co-financial advisor and co-investment banker, and it also accounts for the potential for an unfavorable outcome resulting from factors outside of Greenhill's control.

17.     The Debtors agreed to the Fee and Expense Structure because it is reasonable and appropriate in light of market conditions and because the Debtors require the services that Greenhill has agreed to provide under the Engagement Letter.  More to the point, the Debtors

believe that they require the knowledge and expertise that Mr. Augustine gained while employed by Rothschild, especially with respect to the closing of the Sale. The Debtors and Greenhill believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Greenhill for comparable engagements, both in and out of bankruptcy proceedings.

18. The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Greenhill's normal and customary billing practice for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these Cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Greenhill and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors. As noted above, the Fee and Expense Structure is consistent with the framework approved by the Court in the Rothschild Retention Order and as disclosed in the Antinelli Declaration.

19. Greenhill's strategic and financial expertise, as well as its significant capital markets knowledge, financial skills, restructuring capabilities and mergers and acquisitions expertise—some or all of which may be required by the Debtors during the terms of Greenhill's engagement—were important factors in determining to engage Greenhill under the Fee and Expense Structure. Additionally, the ultimate benefit to the Debtors cannot be measured by reference to the mere number of hours to be expended by Greenhill's professionals in the performance of the Services, but rather should be considered in the context of the continued retention of Mr. Augustine. Mr. Augustine's valuable institutional knowledge of the Debtors' businesses and financial affairs obtained as a result of providing services to the Debtors while

employed by Rothschild places Greenhill in a uniquely well-qualified position to perform such Services and assist the Debtors in liquidating their assets for the benefit of all stakeholders.

20.     Accordingly, the Debtors believe that the Bankruptcy Court should approve Greenhill's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Greenhill's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

## **INDEMNIFICATION**

21.     Indemnification provisions were previously negotiated by the Debtors and Rothschild at arm's length and in good faith, and have now been agreed to by Greenhill and the Debtors.  The Debtors have agreed to indemnify Greenhill from and against certain losses arising out of its engagement by the Debtors in connection with these Cases, other than claims resulting from the gross negligence, willful misconduct or fraud of Greenhill, pursuant to the indemnification provisions set forth in Section 7 of, and Exhibit A to, the Engagement Letter (the "Indemnification Provisions").[6]

22.     The Debtors submit that the Indemnification Provisions are:  (a) standard and customary for financial advisory and investment banking engagements; (b) substantially similar to Greenhill's standard indemnification arrangements both inside and outside of chapter 11 engagements; (c) substantially similar to the indemnification provisions previously approved as part of the Rothschild Retention Order; and (d) consistent with the qualifications and limitations on indemnification provisions that are standard and customary in this district and other jurisdictions.  The Debtors respectfully submit that the Indemnification Provisions, as may be

---

[6]     To the extent that the description in this Application of the Indemnification Provisions is inconsistent with Exhibit A to the Engagement Letter, the terms of Exhibit A to the Engagement Letter shall control.

modified by the Proposed Order, are reasonable and in the best interests of the Debtors, their estates and creditors. Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Provisions.

## NO DUPLICATION OF SERVICES

23. By this Application, the Debtors request that the Bankruptcy Court authorize the retention of Greenhill to serve as co-financial advisor and co-investment banker, together with Rothschild, to the Debtors. Greenhill will work side by side with Rothschild to ensure that value and stakeholder recoveries are maximized given the facts and circumstances of the case. Greenhill's services will complement the services that Rothschild has provided and is expected to continue to provide. Greenhill and Rothschild will coordinate the services they are providing to the Debtors to minimize any duplication of services and any potential burden on the Debtors and their other stakeholders and their respective advisors during the pendency of these Cases. The Debtors intend for Greenhill's services to complement, and not duplicate, the services to be rendered by any other professional retained in these Cases. Greenhill understands that the Debtors have retained and may retain additional professionals during the term of the engagement. Greenhill has worked and will continue to work cooperatively, as requested by the Debtors, with other professionals retained by the Debtors to integrate any respective work conducted by the professionals on behalf of the Debtors.

## RECORD-KEEPING REQUIREMENTS

24. It is not the general practice of investment banking firms, including Greenhill, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because Greenhill does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors request pursuant to Local Rule 2016-2(h) that Greenhill be excused

from compliance with the requirements under Local Rule 2016-2(d).  Instead, Greenhill proposes to maintain records of services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour (.5) increments) and the identity of the individuals who provided those services.  Greenhill will include such records in its fee applications.

25.     Greenhill will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Greenhill's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

26.     Bankruptcy courts in this and other jurisdictions have approved similar waivers to the one requested in this Application.  *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (Docket No. 247) (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (Docket No. 630) (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (Docket No. 119) (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (Docket No.337) (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (Docket No. 875) (MFW) (Bankr. D. Del. Mar. 29, 2016).

### DISINTERESTEDNESS

27.     To the best of the Debtors' knowledge, information and belief as of the date hereof, Greenhill (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as required under section 327(a) of the Bankruptcy Code and, as set forth in further detail in the Augustine Declaration; (b) does not hold or represent an interest materially adverse to Debtors' estates; and (c) has no connection to the Debtors, their creditors, shareholders or other parties in interest, except as disclosed in the Augustine Declaration and <u>Schedule 2</u> attached thereto.

28.     The Debtors' knowledge, information and belief regarding Greenhill's disinterestedness as set forth in this Application are based on, and made in reliance upon, the Augustine Declaration.  As set forth in further detail in the Augustine Declaration, Greenhill has certain connections with creditors, equity security holders and other parties in interest in these Cases.  All of these matters, however, are unrelated to these Cases, except with respect to the Debtors' engagement of Rothschild.  The Debtors and Greenhill do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Cases.

29.     To the extent that Greenhill discovers any additional facts bearing in a material respect on its disinterestedness during the period of Greenhill's retention in connection with these Cases, Greenhill will supplement the Augustine Declaration, as required by Bankruptcy Rule 2014(a).

## **RELIEF REQUESTED**

30.     The Debtors request entry of an order, substantially in the form of the Proposed Order, (a) authorizing them to employ and retain Greenhill as their co-financial advisor and co-investment banker *nunc pro tunc* to April 1, 2018 in accordance with the terms and conditions set forth in the Engagement Letter; (b) approving the terms of the Engagement Letter, including the Fee and Expense Structure and the Indemnification Provisions; (c) waiving certain information requirements of Local Rule 2016-2; and (d) granting related relief.

A. **The Debtors Should Be Permitted to Employ and Retain Greenhill on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code**

31.     The Debtors seek approval of Greenhill's retention and compensation structure pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the Debtors, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Debtors in carrying out [their] duties under this title.

11 U.S.C. § 327(a).

32.     Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

33.     Section 328(a) of the Bankruptcy Code provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Thus, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment banking firms, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

34. Further, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on *a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (amendment emphasized). The foregoing provision makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as pursuant to the Fee and Expense Structure, subject to Bankruptcy Court approval.

35. As discussed above and as set forth in the Augustine Declaration, Greenhill satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Along with the importance of the closing of the Sale, the complexity of these Cases and Mr. Augustine's extensive knowledge as to the Debtors' businesses and their affairs, the Debtors, Rothschild and Greenhill have agreed to these terms and believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based consistent with the standards set forth in section 328(a) of the Bankruptcy Code. Most importantly, the proposed Fee and Expense Structure will not increase the fees payable by the Debtors to any party, because the fees payable

to Greenhill (*i.e.*, the Augustine Share) are simply a percentage of the fees that were previously approved in connection with the Debtors' retention of Rothschild.

36.     Similar Fee and Expense Structures have been approved and implemented by courts in this and other districts in other large chapter 11 cases. *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (Docket No. 247) (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (Docket No. 630) (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (Docket No. 119) (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (Docket No. 337) (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc*., No. 16-10527 (Docket No. 875) (MFW) (Bankr. D. Del. Mar. 29, 2016); *In re Alpha Natural Res., Inc.*, No. 15- 33896 (Docket No. 469) (KRH) (Bankr. E.D. Va. Sept. 17, 2015); *In re Allen Sys. Grp., Inc.*, No. 15-10332 (Docket No. 141) (KJC) (Bankr. D. Del. Mar. 19, 2015); *In re Energy Future Holdings Corp.*, No. 14-10979 (Docket No. 3283) (CSS) (Bankr. D. Del. Jan 13, 2015); *In re NII Holdings, Inc.*, No. 14-12611 (Docket No. 140) (SCC) (Bankr. S.D.N.Y. Oct. 22, 2014); *In re Geokinetics Inc.*, No. 13-10472 (Docket No. 174) (KJC) (Bankr. D. Del. Apr. 2, 2013); *In re LCI Holding Co., Inc.*, No. 12-13319 (Docket No. 156) (KG) (Bankr. D. Del. Jan. 10, 2013).

**B.     *Nunc Pro Tunc* Relief is Warranted**

37.     The Debtors believe that the employment of Greenhill effective *nunc pro tunc* to April 1, 2018 is warranted under the circumstances of these Cases so that Greenhill may be compensated for its services prior to entry of an order approving Greenhill's retention.  Further, the Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment because Greenhill has provided since that date, and will continue to provide, valuable services to the Debtors' estates.

38. Courts in this and other Districts routinely approve *nunc pro tunc* employment similar to that requested herein. *See*, *e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (Docket No. 247) (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (Docket No. 630) (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (Docket No. 119) (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (Docket No. 337) (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (Docket No. 875) (MFW) (Bankr. D. Del. Mar. 29, 2016).

**C. The Retention of Greenhill Is Critical to the Debtors' Chapter 11 Efforts.**

39. The Debtors submit that the retention of Greenhill is in the best interest of all parties in interest in these Cases. Greenhill is a preeminent financial advisory and investment banking firm that, as a result of its employment of Mr. Augustine, is intimately familiar with the Debtors' businesses and these Cases. Denial of the relief requested herein will deprive the Debtors of the assistance of a uniquely qualified financial and investment banking advisor and would be disadvantageous to the Debtors and all parties in interest, especially with respect to the closing of the Sale.

40. Moreover, the retention of Greenhill will not increase the fees payable by the Debtors to any party because Greenhill will earn a percentage of the fees previously approved in connection with the Debtors' retention of Rothschild. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Greenhill in these Cases on the terms described herein and in the Engagement Letter.

**NOTICE**

41. Notice of this Application shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service, the Securities and

Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (c) Magnate S.à r.l. and its counsel, Kirkland & Ellis LLP and Klehr Harrison Harvey Branzburg LLP; (d) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP; (e) Trimont Real Estate Advisors, LLC and its counsel, Thompson & Knight LLP, (f) Control Empresarial de Capitales, S.A. De C.V., and Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa and its counsel, Cleary Gottlieb Steen & Hamilton LLP and Young Conaway Stargatt & Taylor, LLP; (g) Macquarie Investments US Inc. and its counsel, Sidley Austin LLP and Ashby & Geddes, P.A., (h) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C; and (i) all persons and entities that have filed a request for service of filings in these Cases pursuant to Bankruptcy Rule 2002 at the time of noticing. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

42. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Respectfully submitted,

Dated:  June 7, 2018

_____
Dennis Stogsdill
Chief Restructuring Officer