## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| | Chapter 11 |
| In re: | Case No. 17-12307 (BLS) |
| M & G USA CORPORATION, *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Objection Deadline: July 5, 2018 at 4:00 p.m. (ET)** |
| | **Hearing Date: To be determined** |

## SUMMARY OF SECOND INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM FEBRUARY 1, 2018 THROUGH APRIL 30, 2018

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | The above-captioned Debtors |
| Period for which compensation and reimbursement are sought: | February 1, 2018 through April 30, 2018 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $5,433,358.75 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $109,833.59 |
| Petition Date: | October 30, 2017[2] |
| Date of Order Approving Retention: | November 30, 2017, *nunc pro tunc* to October 31, 2017 |
| Total Compensation Approved by Interim Order to Date: | $6,279,660.00 |

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] On October 24, 2017, Debtor M & G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. All other Debtors commenced their chapter 11 cases on October 30, 2017.

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $56,952.50 |
| Total Allowed Compensation Paid to Date: | $6,279,660.00 |
| Total Allowed Expenses Paid to Date: | $56,952.50 |
| Blended Hourly Rate in this Application for All Attorneys: | $728.88 |
| Blended Hourly Rate in this Application for All Timekeepers: | $723.42 |
| Compensation Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $4,355,289.00 |
| Expenses Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $109,833.59 |
| Number of Professionals Included in this Application: | 63 |
| Number of Professionals Billing Fewer Than 15 Hours: | 20 |

This is a(n): ____ monthly     _X_ interim    ___ final application

The total time expended for fee application preparation is approximately 212.80 hours and the corresponding compensation requested is approximately $137,360.00.

Prior Applications Filed:

| Date / Docket | Month Covered | Fees | Expenses |
|---|---|---|---|
| December 5, 2017 (Docket No. 362) "First Monthly Fee Application" | October 31, 2017 – November 30, 2017 | $1,575,370.00[1] | $10,310.08[2] |
| January 10, 2018 (Docket No. 647) "Second Monthly Fee Application" | December 1, 2017 – December 31, 2017 | $1,692,827.00 | $25,239.68 |
| February 13, 2018 (Docket No. 957) "Third Monthly Fee Application" | January 1, 2018 – January 31, 2018 | $1,798,473.00 | $22,655.74 |
| March 8, 2018 (Docket No. 1109) "Fourth Monthly Fee Application" | February 1, 2018 – February 28, 2018 | $1,534,792.00 | $25,750.04 |
| March 15, 2018 [Docket No. 1170] "First Interim Fee Application" | October 31, 2017 – January 31, 2018 | $6,279,660.00 | $56,952.50 |
| April 12, 2018 [Docket No. 1367] "Fifth Monthly Fee Application" | March 1, 2018 – March 31, 2018 | $2,082,525.00 | $40,531.41 |
| May 11, 2018 [Docket No. 1455] "Sixth Monthly Fee Application" | April 1, 2018 – April 30, 2018 | $737,972.00 | $43,552.14 |
| June 12, 2018 [Docket No. 1558] "Seventh Monthly Fee Application" | May 1, 2018 – May 31, 2018 | | |

---

[1]     Subsequent to filing the First Monthly Fee Application, at the request of the Office of the United States Trustee (the "U.S. Trustee"), Jones Day agreed to a voluntary reduction of $8,715.00 in connection with the fees sought therein.

[2]     Subsequent to filing the First Monthly Fee Application, at the request of the U.S. Trustee, Jones Day agreed to the voluntary reduction of $1,253.00 in expenses for reimbursement sought therein.

**SUMMARY OF HOURS AND FEES BY PROFESSIONAL**

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|---|---|---|---|---|
| | | 2018 | Second Interim | |
| *PARTNER* | | | | |
| C E Black | Partner/Business Restructuring & Reorganization/1998 | $1,000.00 | 481.70 | $481,700.00 |
| V S Chang | Partner/Employee Benefits & Executive Compensation/2003 | $925.00 | 82.50 | $76,312.50 |
| M J Cohen | Partner/Business Restructuring & Reorganization/2002 | $1,025.00 | 457.20 | $468,630.00 |
| R H Da Silva Ashley | Partner/Banking, Finance & Securities/2006 | $925.00 | 105.20 | $97,310.00 |
| P L Eschbach-Hall | Partner/Employee Benefits & Executive Compensation/1999 | $875.00 | 13.00 | $11,375.00 |
| R S Faxon | Partner/Business & Tort Litigation/1992 | $925.00 | 11.50 | $10,637.50 |
| S J Greenberg | Partner/Business Restructuring & Reorganization/2002 | $1,200.00 | 18.00 | $21,600.00 |
| T A Hamilton | Partner/Government Regulation/1993 | $875.00 | 12.20 | $10,675.00 |
| W A Herzberger | Partner/Real Estate/1987 | $875.00 | 11.30 | $9,887.50 |
| M A Huang | Partner/Mergers & Acquisitions/2005 | $900.00 | 11.50 | $10,350.00 |
| J Kastin | Partner/Labor & Employment/2002 | $975.00 | 25.00 | $24,375.00 |
| C E Laduzinski** | Partner/Tax/2001 | $1,050.00 | 1.90 | $1,995.00 |
| H A Liou | Partner/Intellectual Property/2008 | $800.00 | 602.70 | $482,160.00 |
| D J Merrett | Partner/Business Restructuring & Reorganziation/2007 | $750.00 | 483.80 | $362,850.00 |
| R A Profusek | Partner/Mergers & Acquisitions/1975 | $1,400.00 | 15.00 | $21,000.00 |
| D Rimkunas | Partner/Tax/2004 | $975.00 | 70.40 | $68,640.00 |
| J Sottile, IV | Partner/Business & Tort Litigation/1985 | $1,050.00 | 102.50 | $107,625.00 |
| F Squerzoni | Partner/Banking, Finance & Securities/1998 | $850.00 | 70.60 | $60,010.00 |
| T K Stratford | Partner/Business & Tort Litigation/1998 | $850.00 | 39.40 | $33,490.00 |
| J D Symons | Partner/Mergers & Acquisitions/1997 | $1,100.00 | 78.30 | $86,130.00 |
| R C Thomas | Partner/Antitrust & Competition Law/2000 | $975.00 | 170.30 | $166,042.50 |
| | **Total Partner** | | **2,864.00** | **$2,612,795.00** |
| *OF COUNSEL* | | | | |
| A Cantarelli | Of Counsel/Banking, Finance & Securities/2006 | $675.00 | 10.50 | $7,087.50 |
| L M Cirando | Of Counsel/Insurance Recovery/1993 | $925.00 | 16.40 | $15,170.00 |
| G Larrea | Of Counsel/Cybersecurity, Privacy & Data Protection/2002 | $725.00 | 7.80 | $5,655.00 |
| C Sheng** | Of Counsel/Mergers & Acquisitions/2002 | $925.00 | 4.60 | $4,255.00 |
| | **Total Of Counsel** | | **39.30** | **$32,167.50** |

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|------|----------------------|-------------|-------------|-----------|
| | *ASSOCIATE* | | | |
| A M Bailes | Associate/New Lawyers Group/2017 | $375.00 | 26.40 | $9,900.00 |
| L Baldisserra | Associate/Labor & Employment/2011 | $500.00 | 5.30 | $2,650.00 |
| A M Bomberger | Associate/Mergers & Acquisitions/2009 | $800.00 | 227.90 | $182,320.00 |
| B J Broadwater | Associate/Business & Tort Litigation/2008 | $850.00 | 54.10 | $45,985.00 |
| K M Brockmeyer | Associate/Antitrust & Competition Law/2011 | $725.00 | 161.00 | $116,725.00 |
| S L Corr-Irvine | Associate/Business Restructuring & Reorganization/2009 | $850.00 | 425.00 | $361,250.00 |
| K Donaldson | Associate/Banking, Finance & Securities/2007 | $900.00 | 146.70 | $132,030.00 |
| J V Feldman | Associate/Mergers & Acquisitions/2016 | $500.00 | 209.80 | $104,900.00 |
| G E Feuer** | Associate/Mergers & Acquisitions/2016 | $400.00 | 4.70 | $1,880.00 |
| L B Gates | Associate/Business & Tort Litigation/1988 | $725.00 | 128.60 | $93,235.00 |
| G L Ghaul | Associate/Business Restructuring & Reorganization/2013 | $675.00 | 232.80 | $157,140.00 |
| V T Harris | Associate/Intellectual Property/2016 | $450.00 | 84.50 | $38,025.00 |
| J M Hayes | Associate/Energy/2012 | $500.00 | 18.70 | $9,350.00 |
| B S Jacobs | Associate/Tax/2012 | $675.00 | 120.70 | $81,472.50 |
| Y G Katz | Associate/Labor & Employment/2014 | $450.00 | 7.10 | $3,195.00 |
| M P Koslen | Associate/Business & Tort Litigation/2016 | $400.00 | 199.20 | $79,680.00 |
| R T Latta | Associate/Intellectual Property/2011 | $700.00 | 138.10 | $96,670.00 |
| R Li | Associate/New Lawyers Group/-- | $400.00 | 8.60 | $3,440.00 |
| R Q Liu | Associate/Labor & Employment/2015 | $475.00 | 9.90 | $4,702.50 |
| S W Magnusson | Associate/New Lawyers Group/2018 | $475.00 | 8.30 | $3,942.50 |
| J W Magruder | Associate/Antitrust & Competition Law/2014 | $550.00 | 18.70 | $10,285.00 |
| K N Mancini | Associate/Banking, Finance & Securities/2016 | $500.00 | 180.30 | $90,150.00 |
| S M McDaniel** | Associate/Labor & Employment/2014 | $550.00 | 3.50 | $1,925.00 |
| S J Miller | Associate/Employee Benefits & Executive Compensation/2015 | $525.00 | 48.70 | $25,567.50 |
| N J Morin | Associate/Business Restructuring & Reorganization/2013 | $650.00 | 390.70 | $253,955.00 |
| P Saba | Associate/Business Restructuring & Reorganization/2015 | $550.00 | 543.10 | $298,705.00 |
| B M Santisteban | Associate/Mergers & Acquisitions/2014 | $600.00 | 310.50 | $186,300.00 |
| J R Sims | Associate/Business Restructuring & Reorganization/2016 | $500.00 | 18.00 | $9,000.00 |
| B W Stuart | Associate/Business & Tort Litigation/2013 | $475.00 | 60.60 | $28,785.00 |
| J L Tran | Associate/Intellectual Property/2015 | $525.00 | 60.20 | $31,605.00 |
| O Vastola | Associate/Mergers & Acquisitions/2013 | $475.00 | 119.00 | $56,525.00 |
| E R Vitale | Associate/New Lawyers Group/2017 | $375.00 | 6.30 | $2,362.50 |
| K Xian | Associate/Antitrust & Competition Law/2014 | $575.00 | 70.20 | $40,365.00 |
| A J Yonash | Associate/Real Estate/2013 | $425.00 | 30.30 | $12,877.50 |
| O S Zeltner | Associate/Business Restructuring & Reorganization/2012 | $550.00 | 56.40 | $31,020.00 |
| | **Total Associate** | | **4,133.90** | **$2,607,920.00** |

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|------|---------------------|--------------|--------------|------------|
| *LAW CLERK* | | | | |
| A M Hemendinger | Law Clerk/New Lawyers Group/-- | $475.00 | 175.20 | $83,220.00 |
| A B Leiser-Mitchell** | Law Clerk/New Lawyers Group/--2017 | $475.00 | 1.10 | $522.50 |
| S A Nelson | Law Clerk/New Lawyers Group/2017 | $475.00 | 103.50 | $49,162.50 |
| A Santana | Law Clerk/New Lawyers Group/2017 | $475.00 | 51.20 | $24,320.00 |
| F Siddiqui | Law Clerk/New Lawyers Group/2017 | $475.00 | 155.90 | $74,052.50 |
| | **Total Law Clerk** | | **486.90** | **$231,277.50** |
| *PARALEGAL* | | | | |
| M T Barrios | Paralegal/Banking, Finance & Securities/-- | $275.00 | 49.20 | $13,530.00 |
| M M Melvin** | Paralegal/Business Restructuring & Reorganization/-- | $350.00 | 0.50 | $175.00 |
| | **Total Paralegal** | | **49.70** | **$13,705.00** |
| *PROJECT ASSISTANT* | | | | |
| Z G Aldridge | Project Assistant/Antitrust & Competition Law/-- | $275.00 | 11.00 | $3,025.00 |
| | **Total Project Assistant** | | **11.00** | **$3,025.00** |
| *LEGAL SUPPORT* | | | | |
| S A Kaiser | Legal Support/Practice Support Project Manager/-- | $275.00 | 30.90 | $8,497.50 |
| | **Total Staff / Legal Support** | | **30.90** | **$8,497.50** |
| | **Total Hours/Fees:** | | **7,615.70** | **$5,509,387.50** |
| | **Less: 50% Non-Working Travel** | | 0.00 | ($65,276.25) |
| | **Less: UST Holdback** | | | |
| | **\*\*Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts** | | (16.30) | ($10,752.50) |
| | **Grand Total:** | | **7,599.40** | **$5,433,358.75** |

# COMPENSATION BY PROJECT CATEGORY

# SUMMARY OF COMPENSATION REQUESTED BY CATEGORY FOR THE
## INTERIM COMPENSATION PERIOD
### February 1, 2018 - April 30, 2018

| Matter | Second Interim | |
|---|---|---|
| | Hours | Fees |
| Case Administration | 36.50 | $26,622.50 |
| Plan of Reorganization/Disclosure Statement | 169.20 | $104,897.50 |
| Use, Sale, Lease of Assets | 3,965.40 | $2,920,555.00 |
| Cash Collateral/DIP Financing/Other Financing | 565.30 | $422,285.00 |
| Claims Administration | 628.80 | $456,285.00 |
| Court Hearings | 70.80 | $63,767.50 |
| Professional Retention/Fee Issues | 23.60 | $19,860.00 |
| Fee Application Preparation | 212.80 | $137,360.00 |
| Nonworking Travel | 175.30 | $130,552.50 |
| General Corporate/Real Estate | 240.00 | $167,985.00 |
| Schedules/SOFA/U.S. Trustee Reports | 40.80 | $26,075.00 |
| Employee Matters | 243.90 | $189,677.50 |
| Tax Advice | 39.60 | $29,647.50 |
| Litigation/Adversary Proceedings | 913.30 | $600,265.00 |
| Automatic Stay/Adequate Protection | 90.70 | $63,292.50 |
| Executory Contracts/Unexpired Leases | 128.10 | $86,242.50 |
| Meetings | 71.60 | $64,017.50 |
| **SUBTOTAL:** | **7,615.70** | **$5,509,387.50** |
| Less: 50% Non-Working Travel | 0.00 | ($65,276.25) |
| Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts | (16.30) | ($10,752.50) |
| **TOTAL:** | **7,599.40** | **$5,433,358.75** |

**EXPENSE SUMMARY**

# SUMMARY OF EXPENSES REQUESTED BY CATEGORY FOR THE INTERIM COMPENSATION PERIOD
## February 1, 2018 - April 30, 2018

| Category | Second Interim |
|---|---:|
| Certified Document Charges | $235.52 |
| Computerized Research Services | $115.30 |
| Conference Charges | $4,198.03 |
| Courier Services | $635.17 |
| Court Costs | $0.00 |
| Court Reporter Fees | $19,473.67 |
| DHL Charges | $18.13 |
| Document Reproduction Charges | $5,004.00 |
| Document Storage/Retrieval | $145.67 |
| General Communication Charges | $36.93 |
| Local Transportation | $10.00 |
| Long Distance | $63.68 |
| Postage Charges | $12.90 |
| Printing Charges | $236.72 |
| Research Fees | $1,243.58 |
| Travel - Air Fare | $22,479.92 |
| Travel - Food and Beverage Expenses | $25,634.87 |
| Travel - Hotel Charges | $16,760.22 |
| Travel - Other Costs | $604.00 |
| Travel - Taxi Charges | $7,898.79 |
| Travel - Train Fare | $4,810.00 |
| United Parcel Service Charges | $216.49 |
| **Total** | **$109,833.59** |

## BLENDED RATE OF PROFESSIONALS – TOTAL

| Category of Timekeeper | Billed Comparable Non-Bankruptcy Invoices[1] Issued in 2017[2] | Billed This Compensation Period[3] |
|---|---|---|
| Partner | $823.45 | $912.29 |
| Of Counsel | $741.61 | $818.51 |
| Associate | $454.44 | $630.86 |
| Law Clerk | $388.30 | $475.00 |
| Paralegal | $248.34 | $275.75 |
| Project Assistant | $206.11 | $275.00 |
| Legal Support | $246.58 | $275.00 |
| **Total:** | **$578.15** | **$723.42** |

---

[1] Pursuant to ¶ C.3.a.i.b of the Guidelines, "Comparable Non-Bankruptcy Invoices Issued in 2017" provides the blended hourly rate for the aggregate of "[a]ll timekeepers in each of [Jones Day's] domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the [Compensation Period]."  During the Compensation Period, the Jones Day offices billing at least 10% of the hours to the bankruptcy case were the New York, Cleveland and Houston offices.

[2] Jones Day calculated the average hourly rate for Comparable Non-Bankruptcy Invoices Issued in 2017 by dividing the total dollar amount billed by each class of timekeepers during the applicable period by the total amount of hours billed by such timekeepers during the Compensation Period (excluding all data from timekeepers practicing primarily in a bankruptcy group or section).

[3] Jones Day calculated the average hourly rate for timekeepers who billed the Debtors by dividing the total dollar amount billed by each class of timekeepers by the total number of hours billed by such timekeepers during the Compensation Period.  The blended hourly rates do not take into account adjustments made by Jones Day, including:  (i) the 50% write-off of non-working travel and (ii) voluntary reductions implemented by Jones Day in connection with the preparation of this Second Interim Fee Application.

# INFORMATION REGARDING PRIOR INTERIM FEE APPLICATIONS

## SUMMARY OF PRIOR INTERIM FEE APPLICATIONS

| Date Filed & Docket No. | Period Covered | Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Date(s) of Orders on Interim Compensation or Reimbursement of Expenses |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | |
| 3/15/2018 [1170] | 10/31/2017 – 1/31/2018 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $0.00 | $0.00 | 4/23/2018 [1393] |

## CUMULATIVE FEE AND EXPENSE TOTALS SINCE CASE INCEPTION

| Fees and Expenses Requested[1] | | Fees and Expenses Allowed[2] | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Fees and Expenses Disallowed or Withdrawn[3] | |
|---|---|---|---|---|---|---|---|---|---|
| Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| $11,713,018.75 | $166,786.09 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $0.00 | $0.00 | $53,677.50 | $1,253.00 |

---

[1] These amounts include the total fees and expenses requested in the First Interim Fee Application and this Second Interim Fee Application and does not include the fees and expenses requested in the Seventh Monthly Fee Application.

[2] This amount reflects the amount approved by the First Interim Fee Order for the First Interim Fee Application and does not reflect amounts requested or paid pursuant to Monthly Fee Applications filed during the Compensation Period.

[3] These amounts reflect voluntary reductions taken by Jones Day prior to the filing of the First Interim Fee Application.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>Objection Deadline: July 5, 2018 at 4:00 p.m. (ET)<br>Hearing Date:  To be determined |

## SECOND INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM FEBRUARY 1, 2018 THROUGH APRIL 30, 2018

Jones Day, counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), makes its second interim fee application (this "Second Interim Fee Application") for allowance of compensation of $5,433,358.75 and reimbursement of expenses of $109,833.59 for the period from February 1, 2018 through April 30, 2018 (the "Compensation Period"), in accordance with the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket No. 308) (the "Interim Compensation Order").  In support of this Second Interim Fee Application, Jones Day respectfully represents as follows:

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On October 24, 2017 (the "Polymers Petition Date"), Debtor M & G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146).  Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

## Jones Day's Retention

4.      On November 10, 2017, the Debtors filed the *Application for an Order Authorizing Them to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc as of the Petition Date* (Docket No. 138) (the "Retention Application"), by which the Debtors sought to retain and employ Jones Day as their counsel in these Cases.  On November 30, 2017, this Court entered the *Order Authorizing the Debtors to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc*

*as of the Petition Date* (Docket No. 300) (the "Retention Order"), authorizing the retention of

Jones Day as the Debtors' counsel.

**The Interim Compensation Order**

5.       On November 10, 2017, the Debtors filed the *Motion for an Order*

*Establishing Procedures for Interim Compensation and Reimbursement of Expenses for*

*Professionals* (Docket No. 141) (the "Interim Compensation Procedures Motion"), which sought

to establish procedures for the compensation and reimbursement of professionals whose

retentions are approved by the Court pursuant to sections 327 or 1103 of the Bankruptcy Code on

a monthly basis and on terms comparable to the procedures established in other large chapter 11

cases.  On December 1, 2017, this Court entered the Interim Compensation Order, which

approved the relief sought in the Interim Compensation Procedures Motion and authorized the

implementation of the interim compensation procedures contemplated therein.

6.       In relevant part, the Interim Compensation Order provides that

"commencing with the period ending January 31, 2018, at each three-month intervals . . .each of

the [p]rofessionals will file with the Court . . . an application pursuant to section 331 of the

Bankruptcy Code for interim Court approval and allowance of the compensation and

reimbursement of expenses sought by the [p]rofessional" in its monthly fee applications.  Interim

Comp. Order., ¶ 2(f).  The Interim Compensation Order further provides that interim fee

applications "must be filed on or before the 45th day after the end of the [i]nterim [f]ee

[p]eriod . . . for which the application seeks allowance of fees and reimbursement of expenses"

and that interim fee applications "must identify the [m]onthly [f]ee [a]pplications that are the

subject of the request and any information requested by the Court and the Local Rules."  *Id.*

7.       On March 15, 2018, Jones Day filed its *First Interim Application for*

*Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as*

*Counsel to the Debtors for the Period from October 31, 2017 through January 31, 2018* (Docket No. 1170) (the "First Interim Fee Application"). By the First Interim Fee Application, Jones Day sought interim approval of compensation for services rendered in the amount of $6,279,660.00 and reimbursement of actual and necessary expenses in the amount of $56,952.50. On April 23, 2018, the Court approved the First Interim Fee Application. *See Omnibus Order Approving First Interim/Quarterly Fee Applications of Professionals* (Docket No. 1393) (the "First Omnibus Fee Order").

### The Monthly Fee Applications

8.       On March 8, 2018, Jones Day filed its *Fourth Monthly Application of Jones Day for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Debtors for the Period From February 1, 2018 Through February 28, 2018* (Docket No. 1109) (the "Fourth Monthly Fee Application"). No objections were received with respect to the Fourth Monthly Fee Application. On April 12, 2018, Jones Day filed its *Fifth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from March 1, 2018 through March 31, 2018* (Docket No. 1367) (the "Fifth Monthly Fee Application"). No objections were received with respect to the Fifth Monthly Fee Application. On May 11, 2018, Jones Day filed its *Sixth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from April 1, 2018 through April 30, 2018* (Docket No. 1455) (the "Sixth Monthly Fee Application" and together with the Fourth Monthly Fee Application and the Fifth Monthly Fee Application, the "Monthly Fee Applications"). No objections were received with respect to the Sixth Monthly Fee Application.[2]

---

[2]       On June 12, 2018, Jones Day filed the Seventh Monthly Fee Application, which relates to fees and expenses incurred outside the Compensation Period and, therefore, Jones Day does not seek allowance of

## JONES DAY'S APPLICATION FOR
## COMPENSATION AND REIMBURSEMENT OF EXPENSES

### Compensation Paid and Its Sources

9.      Jones Day has received no payment for services rendered in any capacity in connection with the matters covered in this Second Interim Fee Application, nor has it received any promises for payment for matters covered by this Second Interim Fee Application, from any source other than from the Debtors.  There is no agreement or understanding between Jones Day and any other person other than partners of Jones Day for the sharing of compensation to be received from the services rendered in these Cases.

### Itemization of Services
### Rendered and Disbursements Incurred

10.      Attached hereto as Exhibit A are the time records of Jones Day, which provide a daily summary of the time spent by each Jones Day attorney[3] and paraprofessional[4] during the Compensation Period by project category.  The blended hourly billing rate of attorneys for all services provided during the Compensation Period is $728.88.[5]  The blended hourly billing rate of paraprofessionals for all services provided during the Compensation Period is $275.41.[6]

---

compensation and reimbursement of expenses with respect to the Seventh Monthly Fee Application in this Interim Fee Application.  The objection deadline for the Seventh Monthly Fee Application is July 3, 2018.

[3]      Attorneys include partners, of counsel, counsel, associates, staff attorneys, and law clerks, as applicable, rendering services to the Debtors during the Compensation Period.

[4]      Paraprofessionals include paralegals, legal support personnel, project assistants and staff members, as applicable, rendering services to the Debtors during the Compensation Period.

[5]      The blended hourly billing rate of $728.88 for attorneys is derived by dividing the total fees for attorneys of $5,484,160.00 by the total hours of 7,524.10 for those same attorneys, not taking into account (i) the 50% write-off of non-working travel and (ii) voluntary reductions implemented by Jones Day in connection with the preparation of this Second Interim Fee Application.

[6]      The blended hourly billing rate of $275.41 for paraprofessionals is derived by dividing the total fees for paraprofessionals of $25,227.50 by the total hours of 91.60 for those same paraprofessionals, not taking into account (i) the 50% write-off of non-working travel and (ii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Second Interim Fee Application.

11.     Attached hereto as <u>Exhibit B</u> is a detailed itemization of expenses for which Jones Day seeks reimbursement.  Jones Day maintains the following policies with respect to Expenses:

    (a)    No amortization of the cost of any investment, equipment or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased from or contracted with a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

    (b)    Photocopying by Jones Day was charged at 10 cents per page.  To the extent practicable, Jones Day utilized less expensive outside copying services.

    (c)    Meals charged to the Debtors either were associated with (i) out-of-town travel; (ii) meetings at Jones Day with the Debtors and other professionals; or (iii) attorneys working late on matters concerning the Debtors.

    (d)    Charges for airline and train travel include the cost of each airline or train ticket used in connection with the provision of services to the Debtors.

    (e)    Jones Day does not charge clients for smartphone charges, remote email access charges and related costs.

    (f)    The time pressures associated with the services rendered by Jones Day frequently require Jones Day's professionals and paraprofessionals to devote substantial amounts of time during the evenings and on weekends. To the extent that Jones Day has charged the Debtors for secretarial and other staff overtime expenses, such expenses were directly associated with such after-hours work and were necessary given the circumstances of these Cases.  Jones Day does not consider these to be part of its ongoing overhead expenses because they are special incremental expenses arising from the specific services being provided to the Debtors.

12.     Jones Day believes that the time entries set forth in <u>Exhibit A</u> attached hereto are in compliance with the requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

## Total Fees and Expenses
## Sought for the Compensation Period

13.     By this Application, Jones Day requests that the Court approve the

allowance of compensation for professional services rendered and the reimbursement of actual

and necessary expenses incurred by Jones Day during the Compensation Period.  The total fees

and reimbursement of expense are summarized in the following chart:

| | |
|---|---|
| Total Fees | $5,433,358.75 |
| Total Disbursements | $109,833.59 |
| **TOTAL** | $5,543,192.34 |

## Compensation by Project Category

14.     The following is a summary of activities performed by Jones Day

professionals and paraprofessionals during the Compensation Period, organized by billing

category.[7]

### *Case Administration — 36.50 hours — $26,622.50* [8]

15.     During the Compensation Period, Jones Day professionals devoted time

to:

(a)     communicating electronically and telephonically, both internally and with
members of the Debtors' advisors, to (i) coordinate closely all activities in
these Cases, (ii) provide updates regarding the progress made in these
Cases and (iii) plan for future activities; and

(b)     maintaining case management tools for the effective and efficient
administration of these Cases, including (i) a detailed work in process
report that tracks the progress of all pleadings necessary to, or related to,
the administration of these Cases and (ii) a calendar to monitor filing and
related litigation deadlines.

---

[7]     The summary set forth below is qualified in its entirety by reference to the time and services detail
attached hereto as Exhibit A.

[8]     The hours and fee totals listed by project category in this Second Interim Fee Application do not
take into account voluntary reductions implemented by Jones Day in connection with the preparation of this Second
Interim Fee Application.

***Plan of Reorganization/Disclosure Statement* — 169.20 hours — $104,897.50**

16.     During the Compensation Period, Jones Day professionals (a) researched

and analyzed potential strategies for exiting these Cases; (b) began drafting a plan of liquidation

for the Debtors, and a related disclosure statement; (c) engaged in telephonic discussions with

counsel to the Committee regarding the proposed structure of the plan of liquidation; and

(d) prepared the Debtors' first motion seeking an extension of the plan exclusivity period, which

was filed on February 21, 2018 (Docket No. 1008) and was granted by the Court on March 12,

2018 (Docket No. 1135).

***Use, Sale, Lease of Assets* — 3,965.40 hours — $2,920,555.00**

17.     As discussed in the First Interim Fee Application, upon commencing these

Cases, Jones Day professionals devoted substantial time and effort towards running multiple

sales processes in order to accomplish the Debtors' stated goal of selling substantially all of their

assets.  These efforts continued during this Compensation Period, and included, among other

things:

>   (a)     with respect to the sale of the Debtors' manufacturing facility in Apple
>           Grove, West Virginia (the "<u>Apple Grove Plant</u>" and the sale of such plant,
>           the "<u>Apple Grove Sale</u>"):
>
>       (i)      drafting trademark and patent assignment agreements;
>
>       (ii)     communicating with specialists regarding antitrust and other
>                regulatory issues with respect to the Apple Grove Sale;
>
>       (iii)    taking the steps necessary to close the Apple Grove Sale;
>
>   (b)     with respect to the sale of the Debtors' partially constructed PTA/PET
>           plant in Corpus Christi, Texas (the "<u>Corpus Christi Plant</u>" and the sale of
>           such plant, the "<u>Corpus Christi Sale</u>"):
>
>       (i)      advising the Debtors, their financial advisors and their investment
>                bankers with respect to the marketing of the Corpus Christi Plant;
>
>       (ii)     coordinating with the Debtors, their financial advisors and their
>                investment bankers to (1) address potential bidder inquiries,

(2) formulate responses to due diligence requests and (3) address inquiries from regulatory agencies, including providing such regulatory agencies with documents and other information concerning the Corpus Christi Sale;

(iii)     continuing the process of analyzing various non-binding bids for the purchase of the Corpus Christi Plant and related assets, including reviewing, drafting and negotiating asset purchase agreements submitted by certain parties in interest for the Corpus Christi Plant, the related desalination assets and related intellectual property assets (collectively, the "Corpus Christi Assets");

(iv)     negotiating and pursuing a dual-track auction path to foster a competitive bidding environment, including reaching an agreement with, among other parties, the Committee to permit a consortium of bidders—Corpus Christi Polymers LLC ("CCP")—to submit a bid for the Corpus Christi Assets, which the Debtors subsequently designated as a qualifying bid, while also working with another bidder—Banibu II Holdings, Inc. ("Banibu")—in an effort to qualify their bid for the auction;

(v)     engaging in around the clock negotiations with the Committee, CCP, Banibu and other parties in interest concerning their bids for the Corpus Christi Assets in the lead up to the auction, and subsequent to such negotiations, conducting the auction which led to the designation of CCP's bid as the winning bidder with a deal value in excess of $1 billion;

(vi)     researching, analyzing and addressing certain intellectual property issues related to the Corpus Christi Sale, including the drafting of an intellectual property license agreement, which was approved as part of the Corpus Christi Sale;

(vii)     researching and drafting a reply to (Docket No. 1247) objections to the Corpus Christi Sale, including resolving both formal and informal objections asserted by: (1) Committee, (2) M&G Polimeros Mexico S.A. de C.V. ("M&G Mexico") (Docket No. 1213), (3) the holders of mechanics' and materialmen's liens on the Corpus Christi Plant (Docket Nos. 1113, 1114, 1117, 1122, 1123, 1124, 1141 & 1238) and (4) Macquarie Investments US Inc. (Docket No. 1198);

(viii)     negotiating with counsel to the Committee, counsel to Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa ("Inbursa") and Control Empresarial de Capitales, S.A. de C.V. ("CEC") and counsel to CCP, among other parties, to resolve the Committee's objection to the designation of CCP's bid as a

qualifying bid at the auction, which culminated in the parties' entry into the *Bid Support Term Sheet*, which was approved by the Court on March 29, 2018 (Docket No. 1299) and which avoided litigation in connection with the Committee's objection to the Corpus Christi Sale;

(ix)     responding to, and preparing for a contested hearing on the objection filed by Banco Nacional de Comercio Exterior, S.N.C., Institucion de Banca de Dessarrollo ("Bancomext") (Docket Nos. 1115 & 1233) to the Corpus Christi Sale;

(x)      preparing for the hearing on the Corpus Christi Sale on March 23, March 27 and March 28, which was approved by the Court on March 29, 2018 (Docket No. 1300) (the "Corpus Christi Sale Order") over the objection of Bancomext;

(xi)     researching and drafting a motion seeking approval of a transition services agreement (Docket No. 1332) in connection with the Corpus Christi Sale, which was approved by the Court on April 19, 2018 (Docket No. 1383); and

(xii)    following approval of the Corpus Christi Sale, commencing the process of closing the sale, including engaging with, preparing and providing information and presentations to, regulatory authorities, and meeting with such regulatory authorities in connection with such authority's antitrust review;

18.     During the prior compensation period, Jones Day professionals also advised the Debtors with respect to the sale of Debtor Chemtex International Inc.'s ("Chemtex") interests in certain of its subsidiaries in India and China (the "Chemtex Sale"). These efforts culminated in Jones Day professionals drafting and negotiating a stock purchase agreement with respect to such sale and drafting a motion seeking approval of such sale (Docket No. 1018), which was approved by the Court on March 12, 2018 (Docket No. 1137). Following approval of the Chemtex Sale, Jones Day professionals took the steps necessary to close the Chemtex Sale, including through the negotiation of, and drafting of, a number of stipulations (Docket No. 1415) executed as part of such sale.

***Cash Collateral/DIP Financing/Other Financing* — 565.30 hours — $422,285.00**

19.     During the Compensation Period, Jones Day professionals devoted time and effort to ensuring that the Debtors complied with the terms of (a) their $100 million debtor in possession financing facility with CEC (the "CEC DIP Facility"), which was approved by the Court on a final basis on December 13, 2017 (Docket No. 479) (the "Final CEC DIP Order"); (b) their cash collateral arrangement with Comerica Bank (the "Cash Collateral Financing"), which was approved by the Court on a final basis on December 14, 2017 (Docket No. 487) (the "Final Cash Collateral Order"); and (c) following expiration of the Cash Collateral Financing, the $5 million postpetition financing facility (the "Polymers DIP Facility") with Indorama Netherlands B.V., which was approved by the Court on a final basis on February 1, 2018 (Docket No. 865).

20.     In connection with the Corpus Christi Sale, Jones Day professionals devoted significant time and effort to negotiating a new postpetition financing facility to fund the Debtors' limited remaining operations and close the Corpus Christi Sale following the expiration of the CEC DIP Facility on March 31, 2018.  To that end, Jones Day professionals negotiated the Debtors' entry into an approximately $57 million financing facility with the purchaser of the Corpus Christi Assets, CCP (the "CCP DIP Facility").  Jones Day professionals additionally drafted a motion seeking approval of the CCP DIP Facility (Docket No. 1244), which was approved on an interim basis on March 28, 2018 (Docket No. 1292) and subsequently on a final basis on April 12, 2018 (Docket No. 1366) (the "Final CCP DIP Order").  Jones Day professionals further assisted the Debtors in closing on the CCP DIP Facility, following entry of the Final CCP DIP Order.  Contemporaneously with the negotiation of the CCP DIP Facility, Jones Day professionals negotiated and drafted an amendment to the CEC DIP Facility (Docket No. 1277).

*Claims Administration — 628.80 hours — $456,285.00*

21.     During the Compensation Period, Jones Day professionals devoted substantial time to (a) researching and analyzing potential environmental law issues, (b) researching and analyzing issues related to the lien claims asserted by the holders of mechanics' and materialmen's liens asserted against the Corpus Christi Plant (the "Construction Lien Claims" and the holders of such liens, the "Construction Lienholders"), including by participating in conference calls and other meetings with the Debtors' financial advisors and Texas counsel and (c) advising the Debtors with respect to the Construction Lien Claims.

22.     Specifically, during the Compensation Period, Jones Day professionals— together with the Debtors' financial advisors— undertook an analysis of all Construction Lien Claims in an effort to establish a reserve for such claims in connection with the Corpus Christi Sale.  To that end, Jones Day professionals drafted a motion to authorize the Debtors to establish a Construction Lienholders Claims reserve (Docket No. 1075) (the "Reserve Motion").  The Reserve Motion garnered a number of objections (Docket Nos. 1160, 1168, 1183, 1184, 1185, 1190, 1195, 1197, 1199, 1200, 1201 & 1202), which Jones Day attorneys devoted substantial time to addressing, including through the researching and drafting of a reply to such objections (Docket No. 1127).  Ultimately, Jones Day professionals reached an agreement with the objectors to the Reserve Motion, which prevented a contested hearing on that motion.

23.     Further, during the Compensation Period, Jones Day professionals researched and drafted a settlement motion requesting approval of the settlement agreement (the "Brazilian Settlement") between M&G International S.a.r.l. ("M&G International"), M&G Chemicals, S.A. ("M&G Chemicals"), M&G Mexico, M&G Polimeros Brasil, S.A. ("M&G Brasil") and ALOKE EMPREENDIMENTOS E PARTICIPAÇÕES LTDA. (Docket No. 1387) (the "Brazilian Settlement Motion").  The Brazilian Settlement consensually resolved in excess

of $125 million in claims against M&G International in exchange for the release of approximately $52 million in intercompany claims that M&G International had against M&G Brasil of questionable collectability.  Jones Day professionals additionally negotiated the execution of a side letter agreement related to the Brazilian Settlement through which M&G Brasil agreed withdraw in excess of $450 million in claims asserted against M&G International, M&G Capital S.a.r.l. and M&G Chemicals (the "Luxembourg Debtors").[9]  Jones Day professionals further began researching and drafting a motion seeking approval of a settlement agreement (the "Italian Settlement Agreement") between M&G Finanziaria S.p.A., M&G Polimeri S.p.A., M&G Chemicals, M&G International, Magnate S.a.r.l. and Chemtex, which was filed after the Compensation Period on May 18, 2018 (Docket No. 1489) (the "Italian Settlement Motion").[10]

24.     Jones Day professionals also drafted and negotiated a stipulation between the Pension Benefit Guaranty Corporation (the "PBGC") and the Debtors (Docket No. 1071) permitting the PBGC to file one consolidated proof of claim in the Debtors' main case rather than multiple proofs of claims against each Debtor.

25.     Finally, during the Compensation Period, Jones Day finalized a motion to establish, among other things, a general bar date for the filing of claims that arose prepetition against the Debtors, which was filed on February 8, 2018 (Docket No. 931), and approved by the Court on February 27, 2018 (Docket No. 1053).  Jones Day attorneys further drafted a motion seeking to establish an administrative claims bar date with respect to certain administrative

---

[9]     After the Compensation Period, the Committee objected to the Brazilian Settlement Motion (Docket No. 1457).  To that end, Jones Day professionals prepared for depositions noticed by the Committee and facilitated document requests propounded by the Committee.  Jones Day professionals ultimately resolved the Committee's objections and negotiated an amendment to the Brazilian Settlement, which this Court approved on May 22, 2018 (Docket No. 1493).

[10]     To the extent that one becomes necessary, a hearing on the Italian Settlement Motion is currently scheduled for June 26, 2018.

claims that arose or accrued on or before May 1, 2018 (Docket No. 1351), which was approved by the Court on April 26, 2018 (Docket No. 1410).

***Court Hearings*** — **70.80 hours — $63,767.50**

26. During the Compensation Period, Jones Day professionals prepared for, attended and participated in numerous hearings before this Court, including, among others, (a) the Apple Grove sale hearing held on February 1, 2018; (b) the hearing on the litigation initiated by the Committee seeking to avoid and/or recharacterize DAK America LLC's ("DAK") liens held on March 14; and (c) the Corpus Christi Sale hearing held on March 23, 27 and 28, 2018.

***Professional Retention/Fee Issues*** — **23.60 hours — $19,860.00**

27. During the Compensation Period, Jones Day professionals devoted time to advising the Debtors on fee issues that arose in connection with the continued retention of the Debtors' professionals, including in connection with the retention of certain professionals retained by the Debtors in the ordinary course of business.

***Fee Application Preparation*** — **212.80 hours — $137,360.00**

28. During the Compensation Period, Jones Day professionals and paraprofessionals devoted time to (a) reviewing monthly invoices to ensure compliance with the UST Fee Guidelines (as defined below) and the Interim Compensation Order; (b) drafting and filing the Monthly Fee Applications and the First Interim Fee Application; and (c) reviewing the monthly fee applications of the Debtors' other advisors.

***Nonworking Travel*** — **175.30 hours — $65,276.25**

29. During the Compensation Period, Jones Day professionals devoted time traveling to and from (a) Delaware for the hearings described in the "Court Hearings" section above; (b) meetings in New York, including a meeting with the Committee and DAK on

February 19, 2018; (c) the auction in New York for the Corpus Christi Sale, including for negotiations in connection with the sale and for depositions scheduled in connection with such sale; and (d) Dallas for depositions scheduled in connection with the Committee's challenge litigation against DAK. The total amount of the non-working travel was $130,552.50, which was then discounted by 50% to $65,276.25.

***General Corporate/Real Estate* — 240.00 hours — $167,985.00**

30. During the Compensation Period, Jones Day professionals analyzed and advised on, (a) issues relating to the Debtors' insurance policies; (b) the negotiation and drafting of a stipulation between Banco do Brasil S.A., New York Branch ("Banco do Brasil") and M&G Resins USA, LLC regarding resolution of Banco do Brasil's claim against the Debtors, which was filed after the Compensation Period; (c) issues pertaining to the Debtors' bank accounts and cash management system, including through obtaining three interim cash management orders during the Compensation Period (Docket Nos. 869, 1214 & 1392); (d) issues relating to a number of services agreements and related agreements between the Debtors and their non-debtor affiliates in Italy; and (e) issues pertaining to the collection of the Debtors' accounts receivable.

31. Further, Jones Day professionals negotiated and drafted a stipulation (Docket No. 1134) between the Debtors and Southeastern Container Corporation ("SCC") and Coca-Cola Bottlers' Sales & Services Company LLC ("Coca-Cola"). Under that stipulation, the parties agreed to a setoff of certain amounts that Debtor M&G Polymers owed SCC and Coca-Cola against certain amounts that SCC and Coca-Cola owed M&G Polymers, which resulted in immediate payment to M&G Polymers on over $3 million in accounts receivable.

***Schedules/SOFA/U.S. Trustee Reports* — 40.80 hours — $26,075.00**

32. During the Compensation Period, Jones Day professionals spent time researching and drafting a reply (Docket No. 1118) to an objection (Docket No. 914) filed by the

U.S. Trustee to the Debtors' motion to redact certain employee information from the Luxembourg Debtors' schedules of assets and liabilities and statements of financial affairs. In addition, Jones Day professionals considered and analyzed potential amendments to the schedules of assets and liabilities and statements of financial affairs.

***Employee Matters — 243.90 hours — $189,677.50***

33.     During the Compensation Period, Jones Day professionals analyzed and researched issues pertaining to the provision of healthcare benefits for employees of M&G Polymers and engaged in negotiations with M&G Polymers' third party administrator, Aetna Life Insurance Company ("Aetna"). Following those negotiations, Jones Day professionals drafted a motion (Docket No. 910) (the "Aetna Motion") seeking Court approval to assume an administrative services agreement with Aetna. On February 20, 2018, the Court entered an order approving the Aetna Motion (Docket No. 1000).

34.     In addition, during the Compensation Period, Jones Day professionals advised the Debtors with respect to (a) issues relating to healthcare coverage and other benefits, (b) employee communications concerning healthcare and benefits coverage and (c) various miscellaneous employment matters arising out of the provision of employee benefits to four different employee populations (i.e., employees of Chemtex, M&G International, M&G Resins USA, LLC and M&G Polymers), including a motion (Docket No. 1076) to authorize payment of amounts owing to certain employees of M&G International, which was granted by the Court on March 22, 2018 (Docket No. 1241). Jones Day professionals further entered into discussions with, and facilitated document requests propounded by, the PBGC.

35.     Finally, during the Compensation Period, Jones Day professionals began to negotiate a stipulation (the "1114 Stipulation") with the United Steelworkers ("USW")—the authorized representative of certain former employees of M&G Polymers—regarding the

consensual resolution of, among other things, (a) a dispute with the USW concerning the timing of the termination of "retiree benefits" and (b) prepetition litigation brought by certain of the retirees against M&G Polymers concerning alleged violations of labor laws. A motion, which was drafted after the Compensation Period, seeking approval of the 1114 Stipulation was filed on June 5, 2018 (Docket No. 1536).[11]

***Tax Advice — 39.60 hours — $29,647.50***

36.     During the Compensation Period, Jones Day professionals conducted research in connection with certain property tax and tax abatement issues. Further, Jones Day professionals provided advice regarding tax compliance, tax planning and other tax matters relevant to the administration of these Cases and the sale processes described above.

***Litigation/Adversary Proceedings — 913.30 hours — $600,265.00***

37.     During the Compensation Period, Jones Day professionals devoted significant time to, among other things:

(a)     responding to both formal and informal document requests from the Committee, Inbursa, DAK, the Construction Lienholder Group, certain of the Debtors' affiliates in Brazil and Mexico, certain governmental regulatory agencies and other creditor constituencies in connection with, among other matters, the sale processes described above;

(b)     conducting research related to, and drafting and entering into a consent order concerning, the production of certain documents subject to European privacy laws; and

(c)     preparing for, defending and attending depositions of key witnesses in these Cases on matters concerning the Committee's challenge litigation against DAK (Docket No. 955) (the "Challenge Litigation").

38.     Further, during the Compensation Period, Jones Day professionals continued to defend against, and prepare documents for, the adversary proceeding (Case No. 18-50007) brought by M&G Brasil against M&G Polymers and Comerica Bank (the "M&G Brasil

---

[11]     To the extent that one is necessary, a hearing will be held on that motion on June 26, 2018.

Litigation").  Through the M&G Brasil Litigation, M&G Brasil is seeking to impose a constructive trust over certain of M&G Polymers' inventory and accounts receivables that are currently held by Comerica Bank as cash collateral.  Jones Day professionals assisted the Debtors in filing joinders to (a) Comerica Bank's motion to dismiss (Case No. 18-50007, Docket No. 19) the M&G Brasil Litigation and (b) Comerica Bank's reply (Case No. 18-50007, Docket No. 23) in further support thereof.  A hearing was held on the motion to dismiss the M&G Brasil Litigation on May 24, 2018.

39.     Finally, during the Compensation Period, Jones Day professionals defended against, and prepared for, the adversary proceeding brought by Bancomext (Case No. 18-50302) (the "Bancomext Adversary Proceeding") against certain of the Debtors.  Specifically, Jones Day professionals analyzed an amended complaint filed by Bancomext in the Bancomext Adversary Proceeding (Case No. 18-50302, Docket No. 6), and subsequent to the filing of such amended complaint, researched and drafted a motion to dismiss that amended complaint (Case No. 18-50302, Docket No. 8).  Jones Day professionals also advised the Debtors regarding an appeal filed by Bancomext to the Corpus Christi Sale Order (Docket No. 1380).

***Automatic Stay/Adequate Protection* — 90.70 hours — $63,292.50**

40.     During the Compensation Period, Jones Day professionals (a) researched and analyzed issues pertaining to the automatic stay; (b) advised the Debtors with respect to certain issues with their utility providers, including in connection with agreements reached with such utility providers in connection with their requests for adequate assurance; (d) resolved WFS Construction Service LLC's (Docket No. 549) motion for relief from the automatic stay through a settlement which deferred arbitration until the closing of Corpus Christi Sale (Docket No. 1328); and (e) researched and drafted an objection (Docket No. 936) to the Construction Lienholder Group's motion (Docket No. 824) for relief from the automatic stay to commence a

declaratory judgment action in Texas state court to determine the relative priority of liens asserted against the Corpus Christi Plant.

***Executory Contracts/Unexpired Leases* — 128.10 hours — $86,242.50**

41.     During the Compensation Period, Jones Day professionals (a) advised the Debtors with respect to the assumption and rejection of certain executory contracts and unexpired leases, including an analysis of the Debtors' executory contracts and unexpired leases; (b) conducted research and developed legal analyses regarding issues with the rejection of certain intellectual property licenses; and (c) researched and drafted a reply to an objection filed by Brickstreet Mutual Insurance Company to the assumption and assignment of a certain insurance contract (Docket No. 990), which objection was overruled by the Court (Docket No. 1037) on February 26, 2018.

***Meetings* — 71.60 hours — $64,017.50**

42.     During the Compensation Period, Jones Day professionals devoted time to (a) attending internal meetings, meetings with the Debtors, and meetings with other professionals in these Cases regarding overall case strategy and specific issues arising in these Cases; (b) attending meetings with certain of the Debtors' key creditor constituencies, including the Committee, regarding the overall strategy for these Cases; and (b) preparing for, attending and participating in the Debtors' board meetings.

<u>**Billing Adjustments**</u>

43.     During the Compensation Period, Jones Day made $65,276.25 in adjustments due to a 50% discount for time spent on nonworking travel.[12]  In addition, Jones Day

---

[12]     To the extent possible, Jones Day professionals work while traveling.

wrote off an additional $349,980.00 in fees and $10,924.71 in disbursements incurred during the Compensation Period prior to filing the Monthly Fee Applications.

44.     In connection with the preparation of this Second Interim Fee Application, Jones Day implemented a voluntary reduction of $10,752.50 in fees to account for timekeepers that billed de minimis amounts of time to the Debtors during the Compensation Period.

## APPENDIX B GUIDELINES

45.     Pursuant to the *Appendix B Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorney in Larger Chapter 11 Cases* (the "UST Guidelines"), Jones Day responds to the following questions with respect to this Application:[13]

(a)     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

(i)     No.

(b)     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application higher by 10% or more, did you discuss the reasons for the variation with the client?

(i)     N/A

(c)     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

(i)     No.

(d)     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?

(i)     Yes, Jones Day expended 106.1 hours and $53,001.50 reviewing the Monthly Fee Applications to remove any confidential or

---

[13]     In further compliance with the Appendix B Guidelines, Jones Day attaches hereto its Budgets for the Compensation Period as Exhibits C-1 through C-3, its Staffing Plans for the Compensation Period as Exhibits D-1 through D-3 and a Summary of Compensation Requested by Project Category as Exhibit E.

privileged information and to ensure compliance with the Interim
Compensation Order and the UST Guidelines.

(e)     Does this fee application include time or fees for reviewing time records to
redact any privileged or other confidential information?  If so, please
quantify by hours and fees.

(i)     *See* ¶ 50(d)(i).

(f)     If the fee application includes any rate increases since retention in this
case:

(A)     Did your client review and approve those rate increases in
advance?

(1)     Yes.

(B)     Did your client agree when retaining the law firm to accept all
future rate increases?  If not, did you inform your client that they
need not agree to modified rates or terms in order to have you
continue the representation, consistent with ABA Formal Ethics
Opinion 11-458?

(1)     N/A

## REQUESTED COMPENSATION SHOULD BE ALLOWED

46.     Section 330(a)(1) of the Bankruptcy Code provides that the Court may

award a professional person employed under section 327 and 1103 of the Bankruptcy Code:

(A)     reasonable compensation for actual, necessary services
rendered by the trustee, examiner, ombudsman,
professional person, or attorney and by any
paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A) further provides the following standards for the

Court's review of a fee application:

In determining the amount of reasonable compensation to be
awarded to an examiner, trustee under chapter 11, or professional
person the court shall consider the nature, the extent, and the value
of such services, taking into account all relevant factors,
including—

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration
        of, or beneficial at the time the service was rendered toward
        the completion of, a case under this title;

(D)     whether the services were performed within a reasonable
        amount of time commensurate with the complexity,
        importance, and nature of the problem, issue, or task
        addressed;

(E)     with respect to a professional person, whether the person is
        board certified or otherwise has demonstrated skill and
        experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the
        customary compensation charged by comparably skilled
        practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

47.     Jones Day respectfully submits that it has satisfied the requirements of

section 330 of the Bankruptcy Code for the allowance of compensation and reimbursement of

expenses sought herein.  The services described above were necessary to the administration of

these Cases and were beneficial to the Debtors and parties in interest.  Jones Day's services were

often performed in a minimum amount of time and commensurate with the complexity of the

matters facing the Debtors.  Further, the compensation sought by Jones Day is reasonable

because it is based on the customary compensation charged by comparably skilled practitioners

outside of bankruptcy.

## CONCLUSION

48.     Jones Day attorneys and paraprofessionals expended a total of 8,269.00

hours in connection with their representation of the Debtors during the Compensation Period.

Employing Jones Day's normal hourly rates for work of this character, the reasonable value of

the services rendered by Jones Day for the Debtors during the Compensation Period, after taking into account the billing adjustments discussed above, is $5,433,358.75. During the Compensation Period, Jones Day also incurred expenses of $109,833.59.[14] Pursuant to the Interim Compensation Order, by this Application Jones Day seeks the allowance of fees and expenses incurred during the Compensation Period in the sum of $5,543,192.34.

49. Jones Day respectfully submits that the amount requested in this Second Interim Fee Application is fair and reasonable and satisfies the requirements of section 330 of the Bankruptcy Code. Moreover, Jones Day has reviewed the requirements of Local Rule 2016-2 and the Interim Compensation Order and believes that this Second Interim Fee Application complies with such Local Rule and Order.

## NOTICE

50. Jones Day will serve this Second Interim Fee Application in accordance with the Interim Compensation Order and the Local Rules. Pursuant to the Interim Compensation Order, objections to this Second Interim Fee Application, if any, must be in writing and filed with the Court and served upon Jones Day so as to be received no later than July 5, 2018 (the "Objection Deadline").

---

[14] This figure was calculated after taking into account Jones Day's voluntary write-down of expenses of $10,924.71 prior to filing Monthly Fee Applications.

## NO PRIOR REQUEST

51.     No prior request for the relief sought in this Application has been made to this or any other court.

Dated: June 14, 2018
       Wilmington, Delaware

    /s/ *Carl E. Black*
JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306
Email:       sgreenberg@jonesday.com
          scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:    (216) 586-7035
Facsimile:    (216) 579-0212
Email:       ceblack@jonesday.com

Counsel for the Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 17-12307 (BLS) |
| M & G USA CORPORATION, *et al.*,[1] | (Jointly Administered) |
| Debtors. | |

## CERTIFICATION OF CARL E. BLACK

Carl E. Black, under penalty of perjury, certifies as follows:

1.      I am a partner with the law firm of Jones Day and have been admitted to appear before this Court. I make this certification in accordance with Local Rule 2016-2 regarding the contents of applications for compensation and expenses. I have read the Second Interim Fee Application and am familiar with the work performed on behalf of the Debtors by the attorneys and paraprofessionals of Jones Day.

2.      The facts set forth in the foregoing Second Interim Fee Application are true and correct to my knowledge, information and belief. I have reviewed Local Rule 2016-2 and the Interim Compensation Order and submit that the Second Interim Fee Application substantially complies with such Local Rule and the Interim Compensation Order.

Dated: June 14, 2018

   /s/ *Carl E. Black*
   Carl E. Black

---

[1]      The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.