IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered) |

### DECLARATION OF FRANZ FAYOT IN SUPPORT OF BANCOMEXT'S OBJECTION TO MOTION OF DEBTORS M&G CAPITAL S.À R.L., M&G CHEMICALS S.A. AND MOSSI & GHISOLFI INTERNATIONAL S.À R.L. FOR AN ORDER DISMISSING THEIR CHAPTER 11 CASES AND GRANTING RELATED RELIEF

I, Franz Fayot declare and state under penalty of perjury pursuant to the laws of the United States as follows:

#### QUALIFICATIONS AND BACKGROUND

1.  I am a lawyer ("Avocat à la Cour") qualified to practice law in the courts of Luxembourg. I qualified in 1997. I am a partner of the firm FischFayot which is located at 36, Avenue de la Gare in L-1610 Luxembourg. FischFayot, specializes in insolvency, restructuring and financial regulatory work.

2.  I am a lecturer ("chargé de cours associé") at the University of Luxembourg, where I lecture on insolvencies in the financial sector.

3.  From 2013 to 2016, I was a member of a committee on credit activities of the haut

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow, in parentheses): M&G USA Corporation (3449), M&G Resins USA, LLC (3236), M&G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International, S.à r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à r.l. (7812), M&G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these Chapter 11 Cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

comité de la place financière, a high level committee of the Ministry of Finance of Luxembourg considering financial sector reform. I chaired the sub-committee on insolvency law and creditors rights.

4. I am also a member of the Luxembourg Parliament, and have been since November 2013, where I sit on the finance and budget committee, the judicial committee, the institutions and constitutional reform committee and the cultural affairs committee. I chair the economy committee. I was the MP in charge of presenting and reporting ("**rapporteur**") on the Luxembourg budget law for the year 2015. From 2014-2016, I was also the rapporteur and chair of a sub-committee on the reform of company law, which resulted in the law of 10 August 2016 modernizing company law. I am currently the rapporteur and chair of the sub-committee of the judicial committee on the reform of insolvency law (bill of law 6539), which, when enacted, will result in a substantial reform of Luxembourg's insolvency legislation.

5. Prior to forming my partnership with Laurent Fisch in 2015, I was a partner for 12 years with a large independent Luxembourg law firm, Elvinger Hoss & Prussen, practicing in commercial and financial sector law.

6. My full curriculum vitae, including my publications, are set out in Appendix 1 to this Report.

7. On 2 July 2018, I was engaged by White & Case LLP for the sole purposes of preparing this declaration.

8. Except where specifically noted, all statements in this declaration are based on (i) my personal knowledge; (ii) my review of relevant documents, including the motion of Mossi & Ghisolfi International S.à r.l., M&G Chemicals S.A., and M&G Capital S.à r.l. (together, the "**Luxembourg Debtors**") to dismiss their respective Chapter 11 Cases [D.I. 1537] (including the

attached declarations of Marco Ghisolfi and Marianne Goebel), each Luxembourg Debtor's 31 October 2017 petition for relief under chapter 11 of the Bankruptcy Code, and each Luxembourg Debtor's most recent schedules of assets and liabilities filed in the chapter 11 cases [D.I. 743, 745, and 784]; and (iii) my opinion based on experience and research.

## SUMMARY OF OPINION

9. I was engaged by White & Case LLP to provide an expert opinion on Luxembourg insolvency law with respect to the circumstances under which and to what extent a Luxembourg court would recognise and enforce orders entered by a U.S. bankruptcy court. As set forth in greater detail in the declaration below, my opinion on this question can be broken into three parts. In brief, it is my opinion that:

   a. A Luxembourg court would recognise and accept the validity of orders entered by a U.S. bankruptcy court, including orders confirming a chapter 11 plan, without the need for formal judicial recognition, if such orders comply with the requirements of regularity imposed by Luxembourg law;

   b. A Luxembourg court would be unlikely to permit concurrent proceedings in Luxembourg that conflict with a properly commenced chapter 11 proceeding. However, a Luxembourg court could, in the interest of sound administration, open a bankruptcy or controlled management proceeding in relation to such same debtors, pragmatically acknowledge the existence of chapter 11 orders, and work to coordinate the approaches between the U.S. and Luxembourg insolvency administrations; and

   c. Many of the opinions concerning Luxembourg law expressed by Marianne

Goebel in her declaration are incorrect and unsupported.

## DISCUSSION

I. **Luxembourg courts generally recognise and enforce valid, regular orders entered by foreign, non-EU courts in insolvency proceedings, such as those entered by a U.S. bankruptcy court.**

10. It is my opinion that orders entered in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") would be enforceable in Luxembourg because the chapter 11 process would be recognised by a Luxembourg court as a regular "insolvency procedure." Such recognition would extend to a plan of reorganization approved by the Bankruptcy Court. That the chapter 11 process would be recognised in a Luxembourg court as a regular insolvency proceeding is supported by the circumstance that Chapter 11 orders have been recognised in other EU jurisdictions, such as Germany[2] and the UK.[3]

11. In relation to foreign, non-EU judgments in bankruptcy proceedings and orders made thereunder, Luxembourg case law has traditionally adhered to the principle of universality of the effects of bankruptcy, even if rendered by a foreign court.[4] The principle of universality implies that regular bankruptcy proceedings pronounced abroad are effective in Luxembourg with regard to the disposition of the debtor's property and the winding up of its affairs, even without formal Luxembourg court recognition.[5]

12. In furtherance of the principle of universality of bankruptcy, Luxembourg courts

---

[2] Oberlandesgericht Frankfurt judgment of 2007 and Federal Supreme Court, 2009; quoted in "European Update", Christof Schiller, American Bankruptcy Institute, ABI Journal, June 2016; on www.anchor.eu

[3] https://globalrestructuringreview.com/article/1035579/uk-court-recognises-english-debtor%E2%80%99s-chapter-11-case: "The English-registered creative production arm of Core Media Group, 19 Entertainment Limited, had its US Chapter 11 filing recognised as a foreign main proceeding by the UK High Court on 29 April, obtaining protection from creditors on both sides of the Atlantic. . . . He further notes that recognition was granted in this case on the basis that 19 Entertainment's centre of main interests (COMI) was actually found to be outside of the UK, rebutting a presumption that COMI is in the jurisdiction of its registered office."

[4] Luxembourg District Court, 12 November 2004, n°88224 et 88243 du rôle, BIJ n°07/2005, p.126

[5] Wiwinius J-C., Le droit international privé au Grand-Duché de Luxembourg, 3ᵉ éd., Editions Paul Bauler, p.389, n°1858

4

have consistently held that "the declarative bankruptcy judgment, pronounced by a foreign court, has the authority of a precedent, concerning the capacity and the assets of the bankrupt party in Luxembourg, and has the same effects as in the foreign country, even before any enforcement order."[6]

13. This conclusion was reached in a judgment by the Luxembourg District Court on 12 November 2004 rendered in relation to a Luxembourg company having transferred its registered office and central administration to Italy.[7] There, the company sought to have the Italian bankruptcy judgment enforced in Luxembourg. The Luxembourg court held that "the request to make the Italian bankruptcy judgment enforceable in Luxembourg is redundant (in view of the principle of universality of the effects of a bankruptcy opened by a foreign court) and must be refused."[8] The Luxembourg court therefore implicitly recognised the jurisdiction of the Italian court to open the primary insolvency proceeding.

14. Without any enforcement order, the Luxembourg Debtors would be entitled to validly carry out simple conservatory acts in Luxembourg with respect to their assets, including, for instance, pursuing the recovery of claims or intervening in a proceeding concerning the Luxembourg Debtors.[9] An additional step would be required to "enforce" an order of a U.S. Bankruptcy Court, "enforcement" having a narrow meaning in this context of obtaining the assistance of public authority to compel the Luxembourg Debtors to perform in accordance with

---

[6] Kinsch P., La faillite en droit international privé luxembourgeois, Pasicrisie 1995, n°25, p.140 footnote 109: this wording is regularly used by Luxembourg courts since the ruling of the Court of appeals of 13.12.1932, published in Pasicrisie 13, 356. Kinsch references another 6 similar matters up until 1992.

[7] Luxembourg District Court, 12.11.2004, nos 88224 and 88243, B.I.J. 2005, p.126.

[8] That case was not governed by the rules of the EU Insolvency Regulation because it was prior to such regulation entering into effect.

[9] Court of Appeals Luxembourg, 13 Dec. 1932, préc. – District Court. Luxembourg, 31 janv. 1992, n° 48/92. – District Court Luxembourg, 13 June 1997, préc.). in Weitzel A., Ravarani G., Weitzel L., Fasc. 3 Luxembourg (Grand-Duché) – Conflit de lois et de juridictions en droit luxembourgeois, 25 September 2017, JurisClasseur, n°101

the court order with respect to their assets located in Luxembourg.[10] In that situation, the party seeking to enforce the order would have to get an exequatur from a Luxembourg Court. An exequatur is a decision by which a court makes an arbitral award of foreign judgment enforceable in the national territory.

15. I am unaware of any Luxembourg law directly on point suggesting that judicial enforcement (exequatur) of a U.S. Bankruptcy Court order, including an order confirming a plan of reorganization, would be difficult or impossible to obtain. I am aware of one Luxembourg company having been subjected to chapter 11 proceedings, which is Luxembourg Residential Properties Loan Finance S.A.R.L. (Case No. 09-10108 (JMP) Bankr. S.D.N.Y.). It is my understanding that Luxembourg Residential Properties Loan Finance S.A.R.L.'s chapter 11 case was jointly administered in connection with the Lehman Brothers Holdings Inc. chapter 11 proceedings. This company was placed into a chapter 11 proceeding by voluntary petition and was included in the Lehman debtors confirmed chapter 11 plan. Pursuant to that plan, the company was later dissolved and put into voluntary liquidation in Luxembourg. As far as I am aware, Luxembourg Residential Properties Loan Finance S.A.R.L never attempted to have the order confirming its plan recognised in Luxembourg.

II. **Were the Luxembourg Debtors to become the subject of a Luxembourg insolvency proceeding, a Luxembourg court could take a pragmatic approach and manage a Luxembourg insolvency in parallel with a chapter 11 proceeding.**

16. In my opinion, Luxembourg courts would avoid a situation where there would be competing insolvency proceedings in multiple jurisdictions, and the Luxembourg court would not permit the initiation of another bankruptcy if a regularly opened chapter 11 procedure exists in relation to the same debtors in the Bankruptcy Court. In considering the question, Luxembourg

---

[10] P. Kinsch, op. Cit. n°26, p.141

6

courts would likely examine whether the court opening the insolvency proceedings had proper jurisdiction[11]. It is my opinion that a Luxembourg court would consider (i) the voluntary decision of Luxembourg Debtors to submit to the jurisdiction of a U.S. bankruptcy court, (ii) the fact that the Chapter 11 Cases were opened first and create a situation in law and fact which a Luxembourg court cannot ignore without harming the sound administration of the insolvency and the interest of the creditors, and (iii) that the substance of the Luxembourg Debtors in Luxembourg was, as I understand it, very limited.

17. Based on existing case law[12] and assuming a Luxembourg court found that a U.S. bankruptcy court was an appropriate jurisdiction for an insolvency proceeding, it is my opinion that a Luxembourg court would likely refuse in principle to permit concurrent proceedings in Luxembourg.

18. Further, a Luxembourg court would only permit parallel or controlled management proceedings in Luxembourg in order to further the sound administration of bankruptcy or insolvency cases. As a result, even if parallel proceedings were allowed, a Luxembourg court could recognise the Chapter 11 Cases and work to coordinate the approaches between the U.S. and Luxembourg insolvency administrations. There are certain precedents for this approach:

   a. In 1991, the Luxembourg district court overseeing the liquidation of Bank of Credit and Commerce International ("**BCCI**") recognised the appointment of separate liquidators for BCCI's London and Abu Dhabi branches based on practical considerations to further the sound administration of the liquidation of BCCI. The Luxembourg district court noted that it could (and would)

---

[11] One example of a case where a Luxembourg court refused recognition of a Belgian insolvency procedure based on lacking jurisdiction is in Luxembourg District Court, 13.7.1984, P.29, Somm. 123, quoted by P. Kinsch, op. cit., n°21.

[12] Luxembourg District Court, 12.11.2004, B.I.J. 2005, p.126.

coordinate its universal jurisdiction with the rights of local liquidators to take judicial and administrative measures against BCCI's local branches.[13]

    b. Luxembourg courts recognised the effects of insolvency proceedings opened on the basis of Swiss law in the case of Kaupthing Bank Luxembourg SA, Swiss Branch. There, notwithstanding a suspension of payments proceedings started in Luxembourg on 9 October 2008, FINMA, the Swiss regulator of the financial sector, decided to subject the Swiss branch of Kaupthing Bank, a Luxembourg legal entity, to local insolvency (faillite) proceedings and, by decision of 29 October 2008, placed Kaupthing into liquidation in Switzerland. The effects of this decision were explicitly recognised by the Luxembourg court, and were referenced in the Kaupthing Bank's final restructuring plan. That final restructuring plan was submitted to the creditors on 5 March 2009 and adopted on 5 June 2009.

19. These examples show that Luxembourg principal proceedings may co-exist, in specific circumstances, with local secondary proceedings in a foreign court.[14]

### III. Reservations Regarding Ms. Goebels' Declaration

20. I have a number of reservations concerning the opinions expressed in Ms. Goebel's declaration. I refer to the paragraph numbers and quote where appropriate:

21. First, in paragraph 6, Ms. Goebel writes that "[b]ecause the Luxembourg Debtors are incorporated, and maintain their principal offices, in Luxembourg, each Luxembourg Debtor is subject to the jurisdiction of the Luxembourg courts and Luxembourg's Code of Commerce,

---

[13] Luxembourg District Court, 3.1.1992.
[14] P. Kinsch, op. Cit. n°22, p.138.

which governs insolvency proceedings. I understand that a majority of the Luxembourg Debtors' creditors are located in Luxembourg, or elsewhere in the European Union, and, as such, also are subject to the Luxembourg court's jurisdiction."

22. My first reservation with respect to this contention is that the place of incorporation of an entity is not determinative of the jurisdiction of the court entitled to open insolvency proceedings in respect of a Luxembourg company. Rather, the actual principal establishment or "real seat" of a company will determine whether Luxembourg courts will have jurisdiction over the Luxembourg Debtors. Determining the "real seat" of a company is a fact intensive inquiry that hinges in particular on where the strategic decisions affecting a company actually take place. Based on the Motion and declarations presented by Ms. Goebel and Mr. Ghisolfi, I understand the "real seat" of the Luxembourg Debtors is likely subject to dispute. Accordingly, it is not clear that a Luxembourg court would permit insolvency proceedings with respect to the Luxembourg Debtors.

23. My second reservation with respect to Ms. Goebel's contention is that the place where creditors are located is not relevant to determine the jurisdiction of the Luxembourg bankruptcy court. The principle of universality would mean that, on the one hand, creditors worldwide would be subject to the Luxembourg court's jurisdiction and, on the other, creditors in Luxembourg would be subject to the orders of a foreign bankruptcy court of competent jurisdiction.

24. Second, in paragraph 7, Ms. Goebel expresses a firm view that she does not believe that a chapter 11 order or confirmed plan would be recognised and implemented in Luxembourg. For reasons already touched upon, I believe that this view is incorrect. Luxembourg courts have traditionally accepted the results of "regularly" opened foreign

insolvency proceedings and would, in my experience, refrain from opening competing concurrent proceedings. Ms. Goebel's position likely would only prevail if a Luxembourg court were to conclude that the chapter 11 orders were issued by a court which did not have proper jurisdiction. Here, in light of the Luxembourg debtors' voluntary submission to the U.S. Bankruptcy Court's jurisdiction, it is unlikely that a Luxembourg court would conclude that the U.S. Bankruptcy Court lacked proper jurisdiction.

25. Also, as stated above, I do not believe that a Luxembourg court would interfere with orders of a U.S. Bankruptcy Court by opening or conducting competing parallel proceedings in Luxembourg. Luxembourg courts have adopted pragmatic solutions in the past (such as in the BCCI and Kaupthing cases discussed in paragraph 18 above). Additionally, I believe that practical considerations, such as the principle that creditors must do at least as well under a reorganization as they would in a liquidation (known as the "no worse off" principle in the European Union), would be of utmost importance to a Luxembourg court's decision to permit or conduct an insolvency proceeding (including any proceeding in parallel to chapter 11 proceedings).

26. Third, in paragraph 9, Ms. Goebel states that "[u]nder the Luxembourg Code of Commerce, Luxembourg insolvency proceedings are broadly similar to United States bankruptcy proceedings." Ms. Goebel then goes on to enumerate certain features of the Luxembourg faillite (liquidation) procedure.

27. My first reservation on this paragraph is that such opinion presumes expertise in U.S. bankruptcy law. I understand that there are a number of different possible procedures under U.S. bankruptcy law which have different features. Comparing those with the Luxembourg faillite procedure alone, as I understand Ms. Goebel does, casts doubt upon her analysis.

28. For instance, Ms. Goebel fails to mention the "gestion contrôlée" ("**controlled management**") procedure under Luxembourg law, which, based on my limited understanding of U.S. bankruptcy law, has more common features with the chapter 11 procedure than that of the "faillite" (liquidation). When granted, controlled management allows for the debtor to remain in control of its business (subject to the oversight of an administrator) and attempt to reorganize or orderly liquidate its assets for the benefit of its creditors. Importantly, controlled management may only be granted to a debtor operating in good faith. Similar to chapter 11, controlled management results in a suspension of enforcement proceedings (stay) for creditors.[15] This stay would prevent any creditors from involuntarily placing the debtor in faillite. Additionally, if a creditor were to involuntarily attempt to commence an insolvency procedure, a debtor could request that the court refuse the creditor's request by applying for a gestion contrôlée.

29. In addition, the judicial practice in Luxembourg differs from chapter 11. I understand that chapter 11 procedures offer considerable flexibility to stakeholders and to the Bankruptcy court in designing and implementing debtor reorganizations. That is not the case in Luxembourg, where insolvency procedures are inflexible and allow for very limited possibilities to perform a business reorganization or restructuring. These limitations explains why many Luxembourg companies shift their center of main interest to jurisdictions where business restructurings can be performed more effectively, more rapidly and more securely, such as the U.K. with its "scheme of arrangement" procedure or "pre-pack arrangements." This is also the major reason behind the reform proposed under bill of law 6539, which inter alia, introduces extensive reorganization possibilities. Bill of law 6539 is expected to be enacted in early 2019.

30. Fourth, in paragraph 10, Ms. Goebel lists a number of areas where she states that

---

[15] Article 3 de l'Arrêté Grand-Ducal du 24 mai 1935

11

"the Luxembourg Code of Commerce also differs from the Bankruptcy Code in several notable respects." Again, Ms. Goebels only seems to discuss the faillite (liquidation) procedure, while it would make more sense in my view to compare the gestion contrôlée (controlled management) procedure with chapter 11 of the U.S. Bankruptcy Code.

31. Another reservation I have with respect to Ms. Goebel's testimony is with respect to the second bullet point of paragraph 10, where Ms. Goebel states that "the Code of Commerce also does not provide for debtor-in-possession management of a corporate debtor during a Luxembourg bankruptcy case." As discussed above, while it is true that in a faillite (liquidation), the debtor is stripped of its management powers over the assets of the company, that is not the case under a controlled management proceeding. It is surprising to me that Ms. Goebel neglects to mention this procedure in her declaration.

32. With respect to the third bullet point of paragraph 10, Ms. Goebels is incorrect in stating that Luxembourg insolvency proceedings have a shorter bar date than in chapter 11. In fact, there are no actual bar dates for claim submissions in Luxembourg. The dates requiring creditors to submit claims are indicative only.

33. Finally, and perhaps most importantly, in paragraph 11 of Ms. Goebel's declaration she concludes that "the Luxembourg Code of Commerce provides a fair and regular system for the resolution of claims against a debtor and, in general, adequately protects the rights of debtors and creditors." To the contrary, it is widely accepted in Luxembourg that our country's insolvency laws are outdated and in need of serious reform. Luxembourg insolvency law is considered to be unfriendly to entrepreneurs because it does not provide for a second chance: personal liabilities of business people survive the closure of insolvency proceedings and hamper entrepreneurial endeavors. Luxembourg insolvency laws are also unfair to creditors, in

particular unsecured creditors, who have no say in the administration of insolvency proceedings, with the relative exception of the controlled management procedure, which is rarely applied. I therefore disagree with the overall conclusion of Ms. Goebel set forth in paragraph 11.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed 13 July 2018

Franz Fayot