# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>Jointly Administered<br><br>**Related to ECF No. 1537**<br><br>**Document Filed Under Seal pursuant to Del. Bankr. L.R. 9018-1(e) and *Order Approving Stipulation and Protective Order* [ECF No. 350]** |

## OBJECTION OF THE OFFICIAL COMMITTEE OF
## UNSECURED CREDITORS TO THE MOTION TO DISMISS
## THE LUXEMBOURG DEBTORS' CHAPTER 11 CASES

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT. ............................................................................................... 1

ARGUMENT……………………………………….………………………………………..7

I.     THE LUXEMBOURG DEBTORS ARE BARRED FROM SEEKING
       DISMISSAL OF THEIR CASES. ...................................................................................... 7

       A.     Dismissal would contravene the Court-approved settlement that facilitated
              the Corpus Christi sale ........................................................................................ 7

       B.     Judicial estoppel bars the requested relief ......................................................... 11

       C.     Equitable estoppel bars the requested relief........................................................ 14

       D.     The doctrine of laches bars the requested relief…………………………………15

II.    THE LUXEMBOURG DEBTORS SHOULD NOT BE AWARDED THE
       EXTRAORDINARY RELIEF OF DISMISSAL UNDER SECTION 305...................... 16

       A.     Section 305 is not a proper basis for dismissal in these cases .............................. 16

       B.     The Luxembourg Debtors have not satisfied their burden of proof under
              section 305. .......................................................................................................... 19

              1.     The Debtors have not presented concrete evidence that dismissal
                     will benefit all parties in interest.............................................................. 19

              2.     Dismissal would be harmful to unsecured creditors and to the
                     remaining Debtors..................................................................................... 22

III.   THE LUXEMBOURG DEBTORS' CASES SHOULD NOT BE DISMISSED
       UNDER SECTION 1112............................................................................................... 25

       A.     The Luxembourg Debtors have not shown "cause" to dismiss their cases........... 25

       B.     Dismissal is barred under section 1112(b)(2) ...................................................... 27

CONCLUSION……………………………………………………………………………..29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aerovias Nacionales de Colombia S.A. Avianca*,
    303 B.R. 1 (Bankr. S.D.N.Y. 2003) ...................................................................16

*In re Barsky*,
    85 B.R. 550 (C.D. Cal. 1988) .........................................................................15

*In re Colonial Ford, Inc.*,
    24 B.R. 1014 (Bankr. D. Utah 1982) .............................................................18

*In re Danehy Dev. Corp.*,
    27 B.R. 727 (Bankr. S.D. Fla. 1983) ..............................................................18

*Delgrosso v. Spang & Co.*,
    903 F.2d 234 (3d Cir. 1990) ...........................................................................11

*In re Duratech Indus., Inc.*,
    241 B.R. 291 (Bankr. E.D.N.Y. 1999) ...........................................................18

*In re Energy Future Holdings Corp.*,
    561 B.R. 630 (Bankr. D. Del. 2016) ...............................................................15

*Farmer v. First Va. Bank of Fairfax Cty., Va.*,
    22 B.R. 488 (E.D. Va. 1982) ..........................................................................24

*Fleck v. KDI Sylvan Pools, Inc.*,
    981 F.2d 107 (3d Cir. 1992) ...........................................................................12

*In re G-N Partners*,
    48 B.R. 459 (Bankr. D. Minn. 1985) ..............................................................17

*In re Kingbrook Dev. Corp.*,
    261 B.R. 378 (Bankr. W.D.N.Y. 2001) ..........................................................25

*In re Korn*,
    523 B.R. 453 (Bankr. E.D. Pa. 2014) .............................................................25

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
    337 F.3d 314 (3d Cir. 2003) ......................................................................11, 14

*In re Lill*,
    116 B.R. 543 (Bankr. N.D. Ohio 1990) ..........................................................14

*In re Manchester Heights Assocs.*,
140 B.R. 521 (Bankr. W.D. Mo. 1992) .......................................................................20

*In re Morton*,
43 B.R. 215 (Bankr. E.D.N.Y. 1984) .........................................................................15

*Murray v. Silberstein*,
882 F.2d 61 (3d Cir. 1989) ........................................................................................12

*In re Mylotte, David & Fitzpatrick*,
2007 WL 3027352 (Bankr. E.D. Pa. Oct. 11, 2007) ...............................................17

*Matter of Nina Merch. Corp.*,
5 B.R. 743 (Bankr. S.D.N.Y. 1980) ..........................................................................16

*In re Northshore Mainland Servs., Inc.*,
537 B.R. 192 (Bankr. D. Del. 2015) ....................................................................18, 19

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988) ..................................................................................14, 15

*In re Orbit Petroleum, Inc.*,
395 B.R. 145 (Bankr. D.N.M. 2008) .........................................................................27

*In re Paterno*,
511 B.R. 62 (Bankr. M.D.N.C. 2014) ........................................................................28

*In re Pine Lake Vill. Apartment Co.*,
16 B.R. 750 (Bankr. S.D.N.Y. 1982) ....................................................................16, 17

*In re Ransom*,
191 B.R. 720 (Bankr. N.D. Ill. 1995) ........................................................................26

*Rosen v. Hotel & Rest. Employees & Bartenders Union of Phila., Bucks,*
*Montgomery & Del. Ctys., Pa.*, 637 F.2d 592 (3d Cir. 1981) ..................................14

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
401 F.3d 123 (3d Cir. 2005) ......................................................................................15

*In re Spade*,
255 B.R. 329 (D. Colo. 2000) ...............................................................................19, 20

*In re Surtronics, Inc.*,
2014 WL 2581159 (Bankr. E.D.N.C. June 9, 2014) ...........................................17, 22

*In re Taylor Agency, Inc.*,
281 B.R. 354 (Bankr. S.D. Ala. 2001) ..................................................................16, 19

**Statutes**

11 U.S.C. § 305.................................................................................................. *passim*

11 U.S.C. § 363...........................................................................................3, 7, 12

11 U.S.C. § 1112............................................................................................... *passim*

**Other Authorities**

S. Rep. No. 95-989, at 35-36 (1978)..................................................................17

The Official Committee of Unsecured Creditors of M & G USA Corporation, *et al.* (the "Committee") hereby objects to the *Motion of Debtors M&G Capital S.A R.L., M&G Chemicals S.A. and Mossi & Ghisolfi International S.A R.L. for an Order Dismissing their Chapter 11 Cases and Granting Related Relief* [ECF No. 1537] (the "Motion"), and in support of its objection, respectfully states as follows.

## PRELIMINARY STATEMENT

1. The Motion is an extraordinary request for extraordinary relief under the most ordinary of circumstances. Nearly eight months ago, all of the Debtors, including the Luxembourg Debtors, made the decision to file voluntary bankruptcy petitions in the United States, take advantage of the rights and privileges of chapter 11, and stave off insolvency proceedings in Luxembourg. Since then, all of the Debtors reaped the benefits of the Bankruptcy Code and obtained the Court's approval for a sale of their Corpus Christi plant and related assets, subject to the terms of a heavily negotiated settlement with the Committee concerning the disposition of the proceeds under a chapter 11 plan. The Luxembourg Debtors in particular benefited from a panoply of other bankruptcy rights as well, including the automatic stay, Rule 9019, and setoff rights, among others, and extracted favorable deals for themselves. *See* Lees Ex. C ███████████████████████████████████████████████████████ ██████████████████████████████████████████.[2]

2. Now, after having taken full advantage of the privileges of bankruptcy for the better part of a year, and amassing an expected $40 million in unencumbered cash, the Luxembourg Debtors make the remarkable request to have their own voluntary cases dismissed

---

[2] Documents attached as exhibits to the Declaration of Alexander B. Lees ("Lees Declaration") are cited herein as "Lees Ex. [#]."

so they can take the cash and run.  Their conceded aim is to allow Marco Ghisolfi—the chairman and CEO of M&G Chemicals, and ███████████████████████████████████████ ███████████████████—to negotiate an out-of-court restructuring, free of the constraints of the Bankruptcy Code and the oversight of this Court, the United States Trustee, and the Committee, and thus without independent checks to ensure that the outcome is free of self-dealing.  The evidence shows that the Luxembourg Debtors have ████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████.

       3.      Mr. Ghisolfi, meanwhile, readily admits that the way to avoid the equivalent of a chapter 7 liquidation in Luxembourg is to obtain the consent of 100% of the Luxembourg Debtors' creditors out of court.  The Motion leaves unanswered, however, the question of why such an out-of-court process would be better for all creditors than a U.S. proceeding—and why the Luxembourg Debtors cannot obtain the same negotiated outcome in the context of the chapter 11 cases that they chose to initiate.  Dismissal of the Luxembourg Debtors' cases would appear only to benefit Mr. Ghisolfi (████████████████████████████ █████████████████████ and the Luxembourg Debtors' directors).  It would remove from the reach of creditors the valuable litigation claims belonging to the Luxembourg estates—including claims against the very management team that oversaw the disastrous Corpus Christi construction process and drove the Debtors into bankruptcy in the first place.  And as Mr. Ghisolfi pursues an out-of-court frolic, without oversight of ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ *See* Lees Ex. C ████████████████ ████████████████.

4.	The Court should not condone the Luxembourg Debtors' effort to manipulate the bankruptcy process.  *First*, the Luxembourg Debtors are estopped from seeking dismissal of their cases because doing so would contravene the Court-approved settlement that permitted the Corpus Christi asset sale to proceed.  The settlement requires *all* of the Debtors to contribute their unencumbered assets to a "GUC Pool," and to assign their causes of action to a Litigation Trust, in each case for the benefit of all unsecured creditors.  It likewise contemplates that *all* of the Debtors and the Committee will agree on a mutually acceptable chapter 11 plan. The terms of the settlement contain no exclusions or exceptions for the Luxembourg Debtors. Yet if the Motion is granted, the Luxembourg Debtors will have no further obligation to contribute their assets to the GUC Pool or Litigation Trust, and no chapter 11 plan for those entities—let alone one that is mutually acceptable to the Debtors and the Committee—will be possible.  Unsecured creditors will thus be deprived of the key benefits of the bargain embodied in the Court-approved settlement, and they will have no remedy to compensate them for this loss.

5.	Under established principles of estoppel and laches, the Luxembourg Debtors cannot make promises to and extract concessions from the Committee in the context of a settlement, persuade the Court to grant relief under section 363 of the Bankruptcy Code on the express basis of their contractual commitments, and then, having reaped the benefits of the settlement, ask the Court months later for relief that would free them from the responsibilities of that same agreement.  The Court should be especially concerned as the evidence shows that ███

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

- 3 -

████████████████████████████████████████████████████████. The

Luxembourg Debtors cannot play fast and loose with the judicial process in this way.

6.    *Second*, the Luxembourg Debtors have not established a sufficient basis

for dismissal.  Their reliance on section 305 of the Bankruptcy Code is misplaced: that provision,

entitled "abstention," is intended to be invoked at the outset of a case to determine whether a

bankruptcy court should defer to another process, such as a nearly unanimous out-of-court

restructuring on the verge of consummation, or a pending proceeding in another jurisdiction that

is better equipped to handle the issues.  The Motion cites no authority, and the Committee is

aware of none, standing for the remarkable proposition that section 305 can be invoked where a

debtor *voluntarily* files for bankruptcy, spends eight months affirmatively obtaining substantive

relief from a bankruptcy court, and then subsequently asks to have its *own case* dismissed

because it would rather pursue another course.

7.    Moreover, the Luxembourg Debtors have not carried their burden of

proving that dismissal would be in the best interests of the Luxembourg Debtors and *all* of their

creditors (which include the other Debtors).  They rely on the statements of Mr. Ghisolfi that he

"believe[s]" dismissal will enhance efficiency by allowing the Luxembourg Debtors to

reorganize out of court, and that he is "hopeful" that the Luxembourg Debtors can reach a

consensual resolution with creditors.  ECF No. 1537-2 ¶ 10 ("<u>Ghisolfi Decl.</u>").  But hope is no

substitute for proof.  The Luxembourg Debtors have come forward with █████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████.  *See* Lees Ex. C ██████████████████████████

███████.  The Motion is also conspicuously devoid of any mention of how the Luxembourg

Debtors intend to compensate the other Debtors as administrative expense creditors, how the Luxembourg Debtors' fair share of such expenses is to be paid if dismissal is granted, or how to address the Debtors' intercompany claims.

8.      *Third*, the Debtors have failed to show "cause" for dismissal, as required by section 1112 of the Bankruptcy Code.  On one hand, they rely on the speculations of Luxembourg counsel that the Debtors may find it "difficult" to enforce a chapter 11 plan in Luxembourg, and yet post-filing of their Motion, suggest that they may ultimately put forward a fully consensual plan for approval to a Luxembourg Court.  On the other hand, they also admit

███████████████████████████████████████████████████████

████████████████████████████████. *See* Lees Ex. C ███████████████████

█████████. This is insufficient to demonstrate an actual *inability* to consummate a plan.  And the credibility of the Luxembourg Debtors' argument is critically undermined by the fact that they ██████████████████████████████████████████████████

██████████████████████████████████████ *See* Lees Ex. C

███████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████. The disingenuousness of such a position is glaring.  The Luxembourg Debtors' newly developed *preference* for a different method of reorganization does not constitute "cause" for dismissal.

9.      Rather, it is a cause for great concern.  The Luxembourg Debtors seek to remove the administration of their assets (including their expected $40 million in unencumbered

cash) from the oversight of this Court and an independent fiduciary, such as the Committee, dedicated to promoting the interests of all unsecured creditors. This raises the significant concern that the Luxembourg Debtors' principals—most notably Mr. Ghisolfi, who is self-interested in the outcome of the Luxembourg Debtors' restructuring on account of ███ ████████████████████████████—will not be motivated to advocate for the best interests of all stakeholders in post-dismissal negotiations with creditors. Indeed, dismissal of the cases without an examination into ██████████████████████████████████ the claims that the other estates may have against the Luxembourg Debtors for their share of the costs of these cases, would harm not just the prepetition creditors of the Luxembourg Debtors, but also the other Debtors and their creditors. And the fact that the Motion was filed by common counsel for all of the estates raises serious questions regarding who, if anyone, is looking out for the interests of the U.S. Debtors as distinct from those of the Luxembourg Debtors, and whether the Motion is evidence of an unavoidable conflict. It is concerning that the U.S. Debtors, who owe fiduciary duties to their estates, have not taken any action to challenge the Motion.

10.     For these reasons, the Court should continue exercising its jurisdiction over these estates, as it has done for the past eight months. The Luxembourg Debtors should be encouraged to try to strike fair and appropriate deals with creditors, as they claim to want to do; but they should continue to be subject to the oversight of the Court. The Motion is a textbook example of insider-dealing, inasmuch as Mr. Ghisolfi is aiming both to insulate himself and his fellow directors and officers from liability, while also ensuring that he maintains complete control over the resolution of ██████████████████████████. The Motion should be denied.

<u>**ARGUMENT**</u>

**I.** **THE LUXEMBOURG DEBTORS ARE BARRED FROM SEEKING DISMISSAL OF THEIR CASES.**

    **A.** **Dismissal would contravene the Court-approved settlement that facilitated the Corpus Christi sale.**

        11.    From the beginning of these cases, the Debtors have made clear that their primary goal in bankruptcy was to sell their assets, including the Corpus Christi plant, by taking advantage of one of the key benefits of chapter 11: the ability to sell free and clear of all interests under section 363 of the Bankruptcy Code. *See Declaration of Dennis Stogsdill in Support of First Day Pleadings* [ECF No. 3] ¶ 2 ("<u>Stogsdill Decl.</u>") ("The relief requested in the First Day Pleadings is necessary to . . . allow [the Debtors] to sustain their current operations in chapter 11 while they pursue a sale of certain of their U.S. assets."). The Debtors, however, were unable to obtain post-petition financing that would allow them to operate beyond March 2018, and thus faced the prospect of complete collapse, and a value-destructive liquidation, if they did not obtain approval for a sale by that time. *See, e.g.*, ECF No. 1244 ¶ 12 (financing motion); ECF No. 479 (financing order).

        12.    Because the Corpus Christi assets were alleged to be fully encumbered by the liens of Banco Inbursa, S.A. ("<u>Inbursa</u>") and DAK Americas LLC ("<u>DAK</u>"), thus raising the possibility that the entirety of the sale proceeds would be payable to those parties, the Committee undertook a highly expedited and extensive investigation into the validity and priority of those asserted liens. Based on what it uncovered in that investigation, the Committee commenced a challenge to DAK's secured claim in advance of the auction. *See* ECF No. 874 (challenge motion).

        13.    As the auction neared, the Committee engaged in lengthy discussions with the Debtors, DAK, Inbursa, and potential buyers of the Corpus Christi assets, concerning the

terms of the sale, the distribution of proceeds, and other key issues relating to the transaction. Those discussions culminated in a complex settlement embodied in the *Stipulation Regarding Settlement and Agreement with Respect to Sale of Corpus Christi Assets and Related Matters* [ECF No. 1299-1] and a Bid Support Term Sheet that was incorporated therein (the "Committee Settlement"). The Committee agreed to support the sale of the Corpus Christi assets to a consortium of buyers that includes DAK, and further agreed not to pursue its objection to DAK's secured claims, pending the closing of the sale. In exchange for these concessions, the other parties agreed to the creation of a "GUC Pool" to fund distributions to unsecured creditors, and a Litigation Trust that would pursue the Debtors' causes of action for the benefit of unsecured creditors. *See* Bid Support Term Sheet at 1-2, 5. The Committee and the Debtors further agreed that they would work toward a mutually acceptable chapter 11 plan (referred to as an "Acceptable Chapter 11 Plan" in the Bid Support Term Sheet), with the Committee having reasonable consent rights. *See id.*

14. The Committee Settlement resolved major impediments and objections to the transaction and made a successful sale of the Corpus Christi assets possible, thus allowing the Debtors to achieve their primary bankruptcy goal and avoid what would have effectively been a foreclosure sale to Inbursa. The Debtors expressly moved for, and were granted, Court approval to enter into the Committee Settlement; in doing so, the Debtors represented to the Court that the agreement was "to facilitate the consummation" of the sale transaction. *See* Committee Settlement ¶ F. Each of the Debtors further represented that it would "comply with its obligations under the Bid Support Term Sheet, including, without limitation to work in good faith to draft and execute all appropriate definitive documentation to implement the transactions contemplated by the Bid Support Term Sheet on the terms and conditions specified therein."

Committee Settlement ¶ 2.  On the basis of these representations and agreements, on March 29, 2018, the Court entered the *Order Approving Stipulation Regarding Settlement and Agreement with Respect to Sale of Corpus Christi Assets and Related Matters* [ECF No. 1299] (the "Approval Order"), and authorized the sale transaction.

15.     The Luxembourg Debtors' current request to have their chapter 11 cases dismissed is squarely at odds with the representations and commitments they made to the Court and the Committee in obtaining approval of the Corpus Christi sale.  If the Motion is granted, the Luxembourg Debtors will no longer be part of these chapter 11 proceedings, and therefore no longer part of the transactions contemplated by the Committee Settlement.  The terms of the settlement, however, are expressly binding on and apply to *all* Debtors—including the Luxembourg Debtors.  *See, e.g.*, Committee Settlement at 1 n.1 (identifying all Debtors); Approval Order at 1 n.1 (same).

16.     There are no exclusions or distinctions in the Committee Settlement that would carve out the Luxembourg Debtors from any of the provisions thereof; nor is there any term allowing the Luxembourg Debtors to be excluded from the "Acceptable Chapter 11 Plan." To the contrary, the inclusion of *all* Debtors was clearly contemplated by the Committee Settlement, and essential to the economic terms of the deal: the settlement provides that the GUC Pool is to include not only $50 million contributed by the purchaser upon closing of the Corpus Christi sale, but also any unencumbered assets that may be "available for distribution to holders of general unsecured claims in accordance with the priorities of the Bankruptcy Code."  Bid Support Term Sheet at 1-2.  The Luxembourg Debtors began these cases with $2.6 million in cash, but now project that they will have nearly $40 million in cash upon consummation of the

restructuring proceedings for their Italian affiliates.[3] ███████████████████ *see* Lees

Ex. C ███████████████████ but if the Luxembourg Debtors extricate themselves

from the chapter 11 process, those assets will not become part of the GUC Pool as the parties'

agreement expressly requires.

17.     In addition, the Debtors agreed that the Litigation Trust "shall include all

claims and causes of action of the Debtors and their estates," including claims under chapter 5 of

the Bankruptcy Code, unless such claims are explicitly waived.  Bid Support Term Sheet at 5.

The Bid Support Term Sheet further prohibits the Debtors from bringing or settling any claims

that are to be part of the Litigation Trust without the reasonable consent of the Committee.  *Id.* at

6.  If dismissal were granted, the Luxembourg Debtors would withhold their causes of action

from the Litigation Trust, and even extinguish any claims that would exist under chapter 5 of the

Bankruptcy Code.  Further, the Motion makes clear that the Luxembourg Debtors seek dismissal

so that they can pursue compromises with creditors either out of court or in another forum,

without the consent of the Committee, which is prohibited by the settlement.

18.     Finally, dismissal of the Luxembourg Debtors' cases would make it

impossible for the Debtors to comply with their obligations regarding the filing of an Acceptable

Chapter 11 Plan.  The Bid Support Term Sheet provides that "*any* determination with respect to

allocation of the GUC Pool and/or the respective entitlements of the holders of allowed general

unsecured creditors of the Debtors' estates . . . shall be *reasonably acceptable* to the

Committee."  Bid Support Term Sheet 7 (emphasis added).  The Committee, in its reasonable

---

[3]     *See* ECF No. 570 (Monthly Operating Report for period November 1, 2017 through November 30, 2017) (showing beginning cash balance of approximately $2.6 million); ECF No. 1640 (Monthly Operating Report for period May 1, 2018 through May 31, 2018) (showing recent cash balance of approximately $24.4 million); ECF No. 1493 (Brazil settlement approval order) (providing for no less than an additional $15.7 million to come into the Luxembourg Debtor estates); *see also* Lees Ex. C ███████████████████████████

judgment, does not agree to move forward with a plan that excludes the Luxembourg Debtors and all of their property, ███████████████████████████████████████ ██████ and the litigation claims that could be brought on their behalf. Nor does the Committee believe, in its reasonable judgment, that its constituency will benefit from excluding the Luxembourg Debtors from the chapter 11 process so that Mr. Ghisolfi can negotiate a resolution without the oversight of this Court or the Committee, and potentially grant unwarranted preferential treatment to select creditors and engage in self-dealing, including eliminating estate claims and causes of action against himself and others, and guaranteeing big payouts to himself and the other members of his global management team.

**B.      Judicial estoppel bars the requested relief.**

19.     The Luxembourg Debtors are judicially estopped from seeking dismissal of their chapter 11 cases and relieving themselves of obligations they undertook for the express purpose of persuading this Court to authorize the Corpus Christi asset sale. "The basic principle of judicial estoppel is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (internal quotation marks and citation omitted). A party is judicially estopped where (1) it asserts a position inconsistent with one it previously asserted to the Court; (2) it changed its position with the intent "to play fast and loose" with the Court; and (3) judicial estoppel is tailored to address the harm identified. *Id*. The doctrine is an equitable one, and the Court has considerable discretion to apply it where a party's inconsistent behavior would result in a miscarriage of justice. *See Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990).

20.     The elements of judicial estoppel are present here.  *All* of the Debtors, including the Luxembourg Debtors, voluntarily filed for bankruptcy protection in the United States for the stated purpose of accomplishing a section 363 sale and to "maximize the value of their chapter 11 estates."  Stogsdill Decl. at 3.  And *all* of the Debtors, including the Luxembourg Debtors, became parties to the Committee Settlement and agreed before the Court that they would be bound by its terms—expressly in order to obtain the Court's approval of the Corpus Christi sale.  By seeking dismissal of their chapter 11 cases, the Luxembourg Debtors are now attempting to renege on the representations they made, and obligations they undertook, not only to the Committee, but also *to the Court*, gutting a settlement that was an essential predicate of the Court's order approving the sale.

21.     Judicial estoppel is "particularly appropriate" where, as here, a party obtains a court-granted benefit from its original position, and then takes an inconsistent position in later proceedings.  *Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir. 1989).  The Third Circuit's decision in *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107 (3d Cir. 1992) is instructive.  There, a creditor sought relief from the automatic stay to pursue a tort claim against the debtor, and represented to the bankruptcy court that any recovery would be limited to the proceeds of the debtor's insurance policy.  The bankruptcy court lifted the stay expressly on the basis of this representation.  When the creditor later sought to recover in excess of the insurance proceeds, the Third Circuit held that judicial estoppel applied, and barred the creditor from collecting on the entirety of its judgment in violation of its previous representation.  *Id.* at 121-22.  So too here, the Luxembourg Debtors should be prohibited from violating the commitments they made in convincing this Court to grant relief.

22.



23.  Denying the Motion is the only possible remedy for the harm caused by the Luxembourg Debtors' inconsistent positions.  If dismissal is granted and the Luxembourg Debtors can extricate themselves from the Committee Settlement, unsecured creditors will have no way to make up for the value denied to them: there are no "do-overs" with respect to the Corpus Christi asset sale at this stage.  The Committee cannot pursue its objections to the consortium bid or DAK's secured claims now.  If dismissal is denied, by contrast, the Luxembourg Debtors would be required to remain in the cases, honor their obligations under the

Committee Settlement, and fulfill the bargain that made the sale of the Corpus Christi assets possible.  *See Krystal Cadillac-Oldsmobile*, 337 F.3d at 325 (lesser sanctions are not adequate where they would "reward . . . duplicitous conduct" or allow a party to "profit[] from its omission").

C.    **Equitable estoppel bars the requested relief.**

24.    Similarly, the Luxembourg Debtors are equitably estopped from seeking dismissal of their cases.  While judicial estoppel is designed to protect the integrity of the judicial process, equitable estoppel ensures fairness between parties and corrects inequities resulting from a party's detrimental reliance on its adversary's conduct or representations.  *See, e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418 (3d Cir. 1988).  The doctrine of equitable estoppel applies where (1) a representation of fact was made to a party, (2) upon which it had a right to rely and did so rely, and (3) the denial of the represented fact by the party making the representation would result in injury to the relying party.  *In re Lill*, 116 B.R. 543, 546 (Bankr. N.D. Ohio 1990); *see also Rosen v. Hotel & Rest. Employees & Bartenders Union of Phila., Bucks, Montgomery & Del. Ctys., Pa.*, 637 F.2d 592, 597 (3d Cir. 1981).

25.    ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████    The Committee reasonably relied upon the Luxembourg Debtors' representations in agreeing to participate in the settlement and making significant concessions, including agreeing to support the Corpus Christi sale and forgo its challenge to DAK's secured claims.  Allowing the Luxembourg Debtors to walk away from the Court-approved deal now would cause injury to

- 14 -

all unsecured creditors by denying them the benefit of the bargain, and leaving them with no recourse to rectify this harm. *See Oneida Motor Freight, Inc.*, 848 F.2d at 418 (equitable estoppel applied where creditors and bankruptcy court relied upon representations in a disclosure statement and subsequently entered into stipulations and issued orders delineating creditors' rights based on such reliance).

**D.** **The doctrine of laches bars the requested relief.**

26. This Court has further discretion to deny the Motion as untimely based on the equitable doctrine of laches. *See In re Energy Future Holdings Corp.*, 561 B.R. 630, 645 (Bankr. D. Del. 2016). A claim is barred by laches where there has been (1) unreasonable or inexcusable delay and (2) consequent prejudice to the party against whom the claim is asserted. *See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005).

27. ████████████████████████████████
████████████████████████████████████████ But instead of seeking dismissal earlier, they reaped the benefits of bankruptcy and engaged in extensive negotiations with the Committee and other parties in interest concerning the Corpus Christi asset sale, which is embodied in the Committee Settlement. Now, after causing the Committee to change its position in these cases by making concessions under the Committee Settlement, it is too late for the Luxembourg Debtors to seek dismissal and renege on their commitments. *See, e.g.*, *In re Barsky*, 85 B.R. 550, 554-55 (C.D. Cal. 1988); *see also In re Morton*, 43 B.R. 215, 220 (Bankr. E.D.N.Y. 1984) (laches generally applies where information upon which movant based its request for relief was available shortly after the petition date, but movant waited months to seek relief).

## II. THE LUXEMBOURG DEBTORS SHOULD NOT BE AWARDED THE EXTRAORDINARY RELIEF OF DISMISSAL UNDER SECTION 305.

### A. Section 305 is not a proper basis for dismissal in these cases.

28. The Luxembourg Debtors primarily seek dismissal under section 305 of the Bankruptcy Code, apparently in an effort to avoid having to show "cause" under section 1112. Their reliance on section 305 is misplaced.

29. Dismissal under section 305 is "only proper in extraordinary circumstances." *In re Taylor Agency, Inc.*, 281 B.R. 354, 359 (Bankr. S.D. Ala. 2001); *see In re Aerovias Nacionales de Colombia S.A. Avianca*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003) (abstention under section 305(a)(1) is a form of "extraordinary relief"). Courts are reluctant to grant dismissal under section 305 because such relief—unlike dismissal under section 1112—is not reviewable on appeal. 11 U.S.C. § 305(c); *Matter of Nina Merch. Corp.*, 5 B.R. 743 (Bankr. S.D.N.Y. 1980). "There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the courts such broad powers to refuse jurisdiction over a case. This risk is compounded by the finality and non-appealability of an order entered under this section." *In re Pine Lake Vill. Apartment Co.*, 16 B.R. 750, 754 (Bankr. S.D.N.Y. 1982) (internal quotation marks and citation omitted). Thus, as one court explained, "this section should be used sparingly and not as a substitute for a motion to dismiss under Code [section] 1112(b), where one of the nine enumerated grounds must be established before a Chapter 11 case may be dismissed." *Id.*

30. In seeking extraordinary and non-reviewable relief under section 305, the Luxembourg Debtors take the brazen position that a debtor can choose to file a voluntary bankruptcy petition, remain in bankruptcy and affirmatively obtain relief from a court for eight months, and then move to dismiss its *own* case because it would prefer to try an alternative mechanism for reorganization, free of judicial oversight. This extreme assertion is not supported

by the Bankruptcy Code or the case law. To the contrary, section 305 requires a showing that "the interests of creditors and the debtor would be better served" by dismissal. 11 U.S.C. § 305(a)(1). "It defies credulity to say that the debtor's interest would be better served by a dismissal when the debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start." *In re Pine Lake Vill.*, 16 B.R. at 753. "Obviously by the voluntary act of filing the bankruptcy case, the debtor ha[s] indicated that it thought it was in its best interest to be in a bankruptcy case and it would be an unusual case to dismiss a [voluntary] bankruptcy case under § 305 . . . ." *In re G-N Partners*, 48 B.R. 459, 461 (Bankr. D. Minn. 1985). Courts have thus recognized that debtors cannot dismiss their own cases under section 305 after voluntarily "taking advantage of the benefits of bankruptcy," especially where dismissal would deprive creditors of rights afforded under the Bankruptcy Code. *In re Surtronics, Inc.*, 2014 WL 2581159, at *3-4 (Bankr. E.D.N.C. June 9, 2014).

      31.    That section 305 cannot be invoked here is confirmed by its legislative history and by the limited circumstances in which it has been applied. Section 305, entitled "abstention," permits a court to decline jurisdiction over a bankruptcy case where, for example, "an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the results of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment." S. Rep. No. 95-989, at 35-36 (1978); *accord, e.g.*, *In re Mylotte, David & Fitzpatrick*, 2007 WL 3027352, at *5 (Bankr. E.D. Pa. Oct. 11, 2007) (discussing legislative history).

      32.    While dismissal under section 305 is not limited to involuntary petitions, it has very narrow applicability to voluntary cases, such as where the bankruptcy filing was abusive, a pending out-of-court workout was likely to succeed, or a pending proceeding in

another jurisdiction required deference. *See, e.g.*, *In re Duratech Indus., Inc.*, 241 B.R. 291, 300 (Bankr. E.D.N.Y. 1999) (abstaining where bankruptcy court could take no meaningful action pending conclusion of litigation in district court); *In re Danehy Dev. Corp.*, 27 B.R. 727, 728 (Bankr. S.D. Fla. 1983) (dismissing where the primary purpose of the case was to block the ex-wife of debtor's president in her effort to collect alimony); *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1023 (Bankr. D. Utah 1982) (abstaining where existing out-of-court workout was comprehensive and "designed to end, not perpetuate, the creditor-company relations"). The purpose of section 305, in other words, is to let the Court refuse jurisdiction where a case is not commenced to achieve a legitimate bankruptcy goal, or the petition is intended to thwart an alternate and more beneficial restructuring process that is already underway. The Motion falls far afield of this legislative purpose.

33. The Luxembourg Debtors cite no authority—nor is the Committee aware of any—holding that a debtor can seek dismissal of its own voluntary case under section 305, after eight months of enjoying the benefits of chapter 11. Instead, they rely heavily on *In re Northshore Mainland Services, Inc.*, 537 B.R. 192, 203 (Bankr. D. Del. 2015), for the proposition that dismissal under section 305 is proper where the debtor is an entity formed under the laws of a foreign country. But *Northshore* does not support the Luxembourg Debtors' request for extraordinary relief. In that case, *creditors* brought a motion to dismiss the voluntary petitions and the debtors vigorously contested it.

34. In any event, *Northshore* is distinguishable. The court granted dismissal based on a series of particularized facts that are not present here, including that the government of the Bahamas had a "deep and important economic interest" in the future of the construction project that was the central focus of the case; that the Bahamian Supreme Court had appointed

provisional liquidators with limited powers to preserve the debtors' assets while promoting a plan of compromise among all stakeholders; and that insolvency proceedings were already underway in the Bahamian Supreme Court.  *Id*. at 205-06.  In addition, less than one month had lapsed between the petition date and the filing of the motion to dismiss.  *Id*. at 197.  In this case, by contrast, there is no foreign governmental interest to account for and no pending foreign proceeding to which this Court owes any deference.  Nor are these cases in their infancy.  It makes vastly more sense for this Court, which has overseen the Luxembourg Debtors' estates for eight months, to continue exercising its jurisdiction through the end of the chapter 11 process.

**B.**     **The Luxembourg Debtors have not satisfied their burden of proof under section 305.**

*1.*     *The Debtors have not presented concrete evidence that dismissal will benefit all parties in interest.*

35.     Even if section 305 could be invoked in these circumstances, the Luxembourg Debtors have not met their burden of proof.  The party seeking dismissal bears a heavy burden and must present the court with concrete evidence that dismissal is in the best interests of the debtor and all creditors.  *See In re Taylor Agency, Inc.*, 281 B.R. 354, 359 (Bankr. S.D. Ala. 2001); *see also In re Spade*, 255 B.R. 329, 332 (D. Colo. 2000) ("[I]t is clear that specific findings, beyond a conclusory assertion that 'the interests of the debtor and petitioning creditors will be better served,' are required before a court may abdicate its duty to exercise jurisdiction over an otherwise proper case under § 305.").

36.     The Luxembourg Debtors have not argued that the traditional bases for dismissal under section 305 are present here.  ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████ Such conjecture does

not amount to the concrete evidence that is required. *In re Spade*, 255 B.R. at 332 (section 305

dismissal must be supported by "specific findings, beyond a conclusory assertion" that dismissal

is in the best interests of the debtor and creditors); *see also In re Manchester Heights Assocs.*,

140 B.R. 521, 523 (Bankr. W.D. Mo. 1992) (where "no evidence was presented to convince [the]

court that abstention is in the best interest of the creditors," and the "record is devoid of any

indication that abstention would benefit the creditors as a whole, the statute does not authorize

abstention under § 305").

      37.    The Motion is not supported by any analysis or other persuasive, non-

speculative evidence that creditors—█████████████████████████████████

█████████████████████████████████—will fare better if dismissal is

granted. Conspicuously absent, for example, is a comparison of expected creditor recoveries in a

dismissal scenario versus a non-dismissal scenario. ███████████████████████

███████████████████████████████████████████████

███ Perhaps most significantly, the movants fail to explain what can be accomplished in an out-

of-court negotiation with creditors that could not be accomplished in a court proceeding. ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████ ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

38.    ████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████    ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

39.    ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████

     2.       *Dismissal would be harmful to unsecured creditors and to the remaining Debtors.*

     40.     The Luxembourg Debtors have not satisfied their burden of proof because they cannot: the circumstances of these cases confirm that dismissal will not be in the best interests of anybody other than the Luxembourg Debtors' principals.  In conducting the best-interests analysis under section 305, a court should consider "whether there would be a loss of rights granted in the case."  *See In re Surtronics*, 2014 WL 2581159, at *3 (internal quotation marks and citation omitted).  As discussed above, unsecured creditors were granted significant benefits under the Committee Settlement by the Luxembourg Debtors, which will be severely undermined if dismissal is granted.  *See supra* Part I.

     41.     Dismissal also will permit the Luxembourg Debtors to walk away from the chapter 11 process without paying their fair share of the costs.  █████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

42.    A significant portion of historical administrative costs in these cases was incurred for the benefit of the Luxembourg Debtors.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████

43.    The Luxembourg Debtors directly benefited from sharing common professionals with the other Debtors, who prepared bankruptcy schedules and statements of financial affairs for all Debtors, conducted the auction and sought approval of the Corpus Christi sale, and prepared and filed numerous other pleadings that redounded to the benefit of the Luxembourg Debtors.  To date, the expenses incurred in connection with these activities (including the costs incurred by the Committee's and Inbursa's professionals) have been borne almost entirely by the U.S. Debtors, who had to finance these expenditures through the costly DIP financing.  ████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

- 23 -

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

44.    Finally, dismissal is appropriate under section 305 only if it will "not impair the interests of *any of the parties involved*."  *Farmer v. First Va. Bank of Fairfax Cty., Va.*, 22 B.R. 488, 491 (E.D. Va. 1982) (emphasis added).  ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████  Among other things, it appears that:

■    ████████████████████████████████████████████
     ████████████████████████████████████████████
     █████████████████████████████████████
     █████████████████████████████████████
     ██████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████████████████
     ██████████████████████████████████
     ████████████

■    ██████████████████████████████████████████
     ████████████████████████████████████████████
     ██████████████████████████████████

■    ████████████████████████████████████████████
     ██████████████████████████████████████████
     █████████████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████████████████
     █████████████████████████████████████████████
     ████████████████████████

■    ████████████████████████████████████████████
     ██████████████████████████████████████████
     ████████████████████████████████████
     ███████████████████

- 24 -

█ ██████████████████████████████
█████████████████████████████
█████████████████████

## III. THE LUXEMBOURG DEBTORS' CASES SHOULD NOT BE DISMISSED UNDER SECTION 1112.

### A. The Luxembourg Debtors have not shown "cause" to dismiss their cases.

45.     A chapter 11 debtor does not enjoy an absolute right to dismissal of its bankruptcy case under section 1112 of the Bankruptcy Code either.  *See, e.g.*, *In re Kingbrook Dev. Corp.*, 261 B.R. 378 (Bankr. W.D.N.Y. 2001).  Instead, after notice and hearing, a bankruptcy court has authority to dismiss or convert a chapter 11 case for good cause, which the movant bears the burden of proving.  11 U.S.C. § 1112(b)(4); *In re Korn*, 523 B.R. 453 (Bankr. E.D. Pa. 2014).  "The court's determination regarding the existence of cause under § 1112(b)(1) is a factual inquiry in which the court may exercise its discretion."  *Korn*, 523 B.R. at 465.

46.     Section 1112(b)(4) of the Bankruptcy Code sets out a list of examples of what may constitute cause for dismissal.  Although the Luxembourg Debtors are not clear as to which example they rely upon, they appear to contend that cause exists under subparagraph (M), which refers to situations in which a debtor faces an "inability to effectuate substantial consummation of a confirmed plan."  11 U.S.C. § 1112(b)(4)(M).

47.     The Luxembourg Debtors have not actually demonstrated an "inability" to effectuate substantial consummation of a confirmed chapter 11 plan—they have not even tried. They do not contend, or put forward any evidence to demonstrate, that it would be impossible for them to effectuate a plan.  Nor could they plausibly make such a claim in light of the Committee Settlement, which commits the Luxembourg Debtors to work with the Committee toward an Acceptable Chapter 11 Plan.  It defies logic to suggest that the Luxembourg Debtors, represented by sophisticated counsel in the United States and Luxembourg, would have made such an

agreement if they believed consummation of a chapter 11 plan could never be achieved. ████

████████████████████████████████████████████████████████████

████████████████████████████████████

48.   ██████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

49.     The Luxembourg Debtors have shown, at most, that there exists a speculative difficulty in reorganizing under chapter 11 that they have been fully cognizant of since the beginning of these cases and since the Committee Settlement was effectuated.  This does not satisfy their burden of proof.  *See In re Ransom*, 191 B.R. 720, 723 (Bankr. N.D. Ill. 1995) (movant failed to meet its burden of proof that debtor had an inability to effectuate a plan of reorganization where such argument was "purely speculative," and where it was "not unreasonable" to expect that a plan could be effectuated).  Nor have the movants made any showing that their proposed remedy—consensual arrangements among creditors—would be impossible to achieve under chapter 11.

50.     Moreover, a fatal flaw in the movants' position is the fact that they voluntarily selected the United States as their venue for reorganizing, ██████████████████

████████████████████████████████████and then voluntarily signed the Committee Settlement.  Nothing has changed in the past eight months concerning Luxembourg insolvency

law or the deference a chapter 11 plan might be given in that country.  It is therefore

disingenuous for the Luxembourg Debtors to argue now, at this late hour, that there is suddenly

cause for dismissal.  The Luxembourg Debtors' position appears to be that there has been cause

for dismissal since day one, but that they nonetheless were permitted to sit and wait for nearly a

year, enjoy a multitude of chapter 11 protections and benefits, and then obtain dismissal once

chapter 11 no longer suited their preferences.  This cannot be.

       **B.**       **Dismissal is barred under section 1112(b)(2).**

       51.       Even if cause had been demonstrated, section 1112(b)(2) prohibits

dismissal.  Under that section, dismissal may not be granted where (i) there are "unusual

circumstances" establishing that dismissal "is not in the best interests of creditors and the estate";

(ii) "there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period

of time"; (iii) the grounds for cause do not include those set forth in section 1112(b)(4)(A);

(iv) there is a reasonable justification for any act or omission of the debtor giving rise to cause;

and (v) such act or omission can be "cured within a reasonable period of time."  11 U.S.C.

§ 1112(b)(2); *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008).  These

conditions are satisfied.

       52.       As shown above, there are unusual circumstances in this case: it is

extremely rare for a debtor to commence a voluntary case, reap the benefits of chapter 11 for the

better part of a year, and then seek dismissal of its own case so that it can keep all of the upsides

of bankruptcy for itself while paying none of the costs.  Further, allowing the Luxembourg

Debtors to obtain dismissal would be contrary to the best interests of the estates or creditors, for

all of the reasons discussed above.  *See supra* Part II.B.2.

       53.       The Luxembourg Debtors have not relied upon section 1112(b)(4)(A)—

which refers to situations in which there is "substantial or continuing loss to or diminution of the

estate and the absence of a reasonable likelihood of rehabilitation."  Nor could they.  To establish

cause under that section, the movant first must show that the debtor has suffered or is continuing

to experience negative cash flow or declining asset value.  *See In re Paterno*, 511 B.R. 62, 66-67

(Bankr. M.D.N.C. 2014); 7 Collier on Bankruptcy ¶ 1112.04[6][a] (16th ed.).  The movant next

must establish that there exists any reasonable likelihood that the debtor, or another party, will be

able to stem the debtor's losses and place the debtor back on solid financial ground.  *See*

*Paterno*, 511 B.R. at 68-69; 7 Collier on Bankruptcy ¶ 1112.04[6][a].  The Luxembourg Debtors

have not offered any evidence on either of these two prongs.

       54.    There is ample basis to conclude that if dismissal is denied, the Debtors,

including the Luxembourg Debtors, can obtain confirmation of a plan within a reasonable time

period.  The Committee Settlement has resolved most of the obstacles that the Debtors'

reorganization had faced, which made it possible for the Debtors to commit to work with the

Committee on the Acceptable Chapter 11 Plan.  By contrast, if dismissal is granted, the

Committee Settlement will be severely undermined, and it will be impossible for the Debtors and

the Committee to reach agreement on an Acceptable Chapter 11 Plan.  ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████.

## CONCLUSION

For the reasons discussed above, the Committee respectfully requests that the

Court (i) deny the Motion, and (ii) grant the Committee such other and further relief as the Court

deems appropriate.

Dated: July 13, 2018                    **COLE SCHOTZ P.C.**
       Wilmington, DE

By: /s/ *J. Kate Stickles*
J. Kate Stickles (DE Bar No. 2917)
David R. Hurst (DE Bar No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
kstickles@coleschotz.com
dhurst@coleschotz.com

- and -

**MILBANK, TWEED, HADLEY & McCLOY LLP**

Dennis F. Dunne (admitted *pro hac vice*)
Abhilash M. Raval (admitted *pro hac vice*)
Alan J. Stone (DE Bar No. 2677)
Lauren C. Doyle (admitted *pro hac vice*)
Alexander B. Lees (admitted *pro hac vice*)
28 Liberty Street
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
ddunne@milbank.com
araval@milbank.com
astone@milbank.com
ldoyle@milbank.com
alees@milbank.com

*Counsel to Official Committee of Unsecured Creditors*