# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| Debtors. | : | (Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF MARIANNE GOEBEL IN SUPPORT OF THE MOTION OF DEBTORS M&G CAPITAL S.À R.L., M&G CHEMICALS S.A. AND MOSSI & GHISOLFI INTERNATIONAL S.À R.L. FOR AN ORDER DISMISSING THEIR CHAPTER 11 CASES AND GRANTING RELATED RELIEF

I, Marianne Goebel, declare as follows:

1. I am an attorney admitted to practice law in Luxembourg. I, together with members of my firm, Duro & Goebel Avocats ("Duro & Goebel"), with offices at 3, rue de la Chapelle – B.P. 758, L-2017 Luxembourg, act as Luxembourg counsel to M&G Capital S.à r.l. ("M&G Capital"), M&G Chemicals S.A. ("M&G Chemicals") and Mossi & Ghisolfi International S.à r.l. ("MGI" and, collectively with M&G Capital and M&G Chemicals, the "Luxembourg Debtors").

2. I submit this Supplemental Declaration in further support of the *Motion of Debtors M&G Capital S.à r.l., M&G Chemicals S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* (the "Motion").[2]

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

3.      Except where specifically noted, all statements in this Declaration are based on: (a) my personal knowledge; (b) information supplied to me by my staff that I believe in good faith to be reliable; (c) my review of relevant documents; and/or (d) my opinion based upon my experience.  If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, information, review of documents and/or opinion.

## Background

4.      I have been a registered member of the Luxembourg Bar since 1990.  I joined Duro & Goebel as a partner in 1997.  I graduated from the University of Strasbourg (France) and the "College d'Europe" in Bruges (Belgium).  Prior to joining Duro & Goebel, I was a legal researcher at "College de Bruges" and former legal counsel at the European Commission. In addition, I was a civil servant to the Luxembourg Parliament in 1995 and 1996, where I mainly focused on matters of law concerning the European Union.

## Provisions of Luxembourg Law Relevant to the Motion

5.      In my original declaration dated June 5, 2018, I opined on a number of provisions of Luxembourg law (collectively, the "Luxembourg Provisions") that are relevant to the relief requested in the Motion.  The Luxembourg Provisions include, *inter alia*, the following, which I attach to this declaration as provided below:

  (a) (i) Article 100-2 of the law of August 10, 1915, on commercial companies, as amended, (ii) Articles 437, 440, 444, 463, 466, 470, 471, 492, 496, 497, 500, 528, 533, 545, 561 and 574, n 4 of the Code of Commerce and (iii) Article L.125-1, paragraph (1) of the Labour Code, certified translations of which are attached hereto as Exhibit 1; and

  (b) Article 442 of the Code of Commerce, a certified translation of which is attached hereto as Exhibit 2.

## Waiver of Claims

6. In the objection to the Motion filed by Banco Nacional de Comerico Exterior, S.N.C., Institución de Banca de Desarrollo ("Bancomext"), Bancomext alleges that Duro & Goebel will be eligible for immediate payment on account of certain prepetition claims that Duro & Goebel has against the Luxembourg Debtors if the Motion is granted. While Duro & Goebel has not asserted any prepetition claim against any of the Debtors in the chapter 11 cases, I believe that Bancomext is referring to the scheduled legal fees earned prepetition in the amount of $4,164.38 against M&G Chemicals and $3,647.67 against MGI (together, the "Claims"). Duro & Goebel hereby waives all rights to receive any payment on account of the Claims.

## Responses and Comments to Mr. Fayot's Declaration

7. I respond to and comment on certain arguments of Luxembourg law raised by Mr. Fayot in his declaration filed in support of Bancomext's objection to the Motion.

8. In paragraph 11 of his declaration, Mr. Fayot states that "Luxembourg case law has traditionally adhered to the principle of universality of the effects of bankruptcy, even if rendered by a foreign court" and that "regular bankruptcy proceedings pronounced abroad are effective in Luxembourg . . ." None of the cases to which Mr. Fayot refers involved debtors whose registered office, central administration and principal place of business was in Luxembourg.

9. In addition to the principle of universality, Luxembourg courts adhere to the principle of unity with respect to international bankruptcies. As set forth in chapter 1, section A, paragraph 6 of the article by Patrick Kinsch, referred to in Mr. Fayot's declaration:[3]

---

[3] *See* Kinsch P., La faillite en droit international prive luxembourgeois, Pasicrisie 1995. Mr. Fayot references this article in sections I and II of his declaration. My colleague, Nicola Di Giovanni, prepared the

The rule of the unity of the international bankruptcy, which is an integral part of the guiding principles that the Luxembourg jurisdiction adopts, has an immediate corollary. As there can be only one bankruptcy proceeding for a given debtor, only one court is internationally competent: the court of the principal place of business of the debtor.

In order to establish this ground of international jurisdiction in bankruptcy matters—which is in principle unique—the Courts could make reference to a text that regulates this issue, at least partially: article 440 of the Code of Commerce. The initial version of this article dictated that any debtor had to admit that he had ceased payments "to the clerk of the Court of its domicile" and specified that the admission of the bankruptcy of an unlimited company (*société en nom collectif*) had to be made to the clerk of the Court "in whose district the office of the principal place of business of the company is situated." Article 440 of the Code of Commerce was held to be applicable to the international competence of the Courts as well as to their internal competence; in addition, it was held to be applicable to capital companies (*sociétés de capitaux*) as well as to unlimited companies (*sociétés en nom collectif*) and other similar companies (*sociétés de personnes*). The present text of this article, resulting from the law dated July 21, 1992, specifies that "any business undertaking and any commercial company that ceases making payments must declare it within one month to the District Court sitting in commercial matters of the place where his domicile or its registered office is located."

The rule of the competence of the Court where the domicile or the registered office of the debtor applies to the bankruptcy that is declared at the request of a creditor, ex officio or upon the admission of the debtor. It is an order public rule: the Court will decline ex officio its competence to declare, even in case of admission, the bankruptcy of a company that does not have its principal place of business in Luxembourg, in the district of the Court.

10. Article 440 of the Luxembourg Code of Commerce (a translated copy of which is attached hereto as Exhibit 1) provides that "[a]ny business undertaking and any commercial company that ceases making payments must declare it within one month to the District Court sitting in commercial matters of the place where its domicile or its registered office is located."

---

translation of this article set forth herein, which is written in French. The relevant provisions of the original article, in French, are attached hereto as Exhibit 3.

If the conditions of Article 440 are met, under the principle of unity, the relevant Luxembourg court is the only competent court for an international bankruptcy proceeding. In such circumstances, it is my opinion that it would be difficult to enforce the orders of a U.S. bankruptcy court in Luxembourg as the Luxembourg courts would likely conclude that only the Luxembourg courts are competent to make such orders under the principle of unity.

11. In paragraph 15 of his declaration, Mr. Fayot states that he is "unaware of any Luxembourg law directly on point suggesting that judicial enforcement (*exequatur*) of a U.S. bankruptcy court order, including an order confirming a plan or reorganization, would be difficult or impossible to obtain." Notably, Mr. Fayot does not cite any case in which a Luxembourg court enforced the order of a U.S. bankruptcy court and nowhere does he address the principle of unity I discuss above. The case Mr. Fayot refers to in paragraph 15 of his declaration did not involve any proceedings in Luxembourg to enforce an order of a U.S. bankruptcy court.

12. In paragraph 17 of his declaration, Mr. Fayot opines that "assuming a Luxembourg court found that a U.S. bankruptcy court was an appropriate jurisdiction for an insolvency proceeding, it is my opinion that a Luxembourg court would likely refuse in principle to permit concurrent proceedings in Luxembourg." The "existing case law" to which Mr. Fayot refers (*see*, *e.g.*, fn. 12 of his declaration) was a decision in which the Luxembourg court concluded that it was not the competent court for the bankruptcy proceeding because the company at issue had transferred its registered office and central administration to Italy. The Luxembourg court did not consider any question concerning concurrent proceedings. Instead, its decision supports my conclusion that, under the principle of unity, only one court is competent to act in international bankruptcy proceedings (other than in matters governed by EU regulations).

13. In paragraph 18 of his declaration, Mr. Fayot opines that "even if parallel proceedings were allowed, a Luxembourg court could recognize the Chapter 11 Cases and work to coordinate the approaches between the U.S. and Luxembourg insolvency administration." But the precedents on which Mr. Fayot relies are based on provisions of Luxembourg law that apply only to banks, not other commercial companies. Those provisions, which permit a certain flexibility in approach, have no application to the Luxembourg Debtors.

14. In paragraph 22 of his declaration, Mr. Fayot criticizes my supposed position that "the place of incorporation" of an entity is determinative of the jurisdiction of a Luxembourg court with respect to insolvency proceedings. My June 5 declaration says nothing of the kind. Instead, I stated that "[b]ecause the Luxembourg Debtors are incorporated, *and maintain their principal office*, in Luxembourg, each Luxembourg Debtor is subject to the jurisdiction of the Luxembourg courts and Luxembourg's Code of Commerce, which governs insolvency proceedings." Under Article 440 of the Luxembourg Code of Commerce, insolvency jurisdiction is proper where a company has its domicile or registered office. The Court of Appeal in Luxembourg has held that "it is presumed that the central administration of a company is in the place where its statutory registered offices are."[4] That presumption can be overcome if in fact the central administration of the company is elsewhere looking to such factors as "the location where the meeting of the shareholders and the Board of Directors are held, where the accounting books are updated: in a few words, the place where activities of the company are conducted."[5]

---

[4] Court of Appeal Luxembourg, 21 Dec. 2011, *Global Energy Trading S.A.*, Case No. 37940, p.2. A translation of this case is attached hereto as <u>Exhibit 4</u>.

[5] *Id.*

15. In the *Global Energy* case, the Luxembourg Court of Appeal held that the Luxembourg court was "competent to declare the bankruptcy" based on the company's arguments that:

> it rented office spaces in Luxembourg and that its registered office is situated at that address; that the meetings of the shareholders have been held in Luxembourg, many of these meetings having been held before a Notary; that the company holds two bank accounts in Luxembourg; that its accounting books and records, which include the Swiss figures of the branch, are in Luxembourg; that Luxembourg is the place where the statutory auditor of the company performs its assignment and issues its report; that the company has a Luxembourg VAT identification number and files its income statements in Luxembourg; that the consequence is that the center of the administration of the company is located in Luxembourg and the Luxembourg Courts are the only ones having jurisdiction to declare the bankruptcy.[6]

16. In paragraph 22 of his declaration, Mr. Fayot states that "it is not clear that a Luxembourg court would permit insolvency proceedings with respect to the Luxembourg Debtors" because he "understand[s] that the 'real seat' of the Luxembourg Debtors is likely subject to dispute." Mr. Fayot provides no factual basis for this understanding. In my opinion, the facts relied upon by the court in *Global Energy* strongly support the conclusion that the central place of administration of the Luxembourg Debtors is in Luxembourg as each of those facts is true of the Luxembourg Debtors.

17. Finally, in paragraph 28 of his declaration, Mr. Fayot notes that I fail to mention the controlled management procedure (*gestion controlee*) under Luxembourg law. This procedure is rarely used in Luxembourg. It is available only on application by the debtor and requires a showing, satisfactory to the Luxembourg court, that the controlled management

---

[6] *Id.*

procedure will lead to a better result by reorganization or realization of assets than a bankruptcy procedure, under Luxembourg law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 17, 2018

*/s/ Marianne Goebel*
Marianne Goebel
Duro & Goebel Avocats