# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| Debtors. | : | (Jointly Administered) |
| | : | **Filed Under Seal Pursuant to Docket No. 350 and 350-1, ¶ 11; and Del. Bankr. L.R. 9018-1(e)** |

## REPLY OF DEBTORS M&G CAPITAL S.À R.L., M&G CHEMICALS S.A. AND MOSSI & GHISOLFI INTERNATIONAL S.À R.L. IN SUPPORT OF MOTION FOR AN ORDER DISMISSING THEIR CHAPTER 11 CASES AND GRANTING RELATED RELIEF

Debtors M&G Capital S.à r.l. ("M&G Capital"), M&G Chemicals S.A. ("M&G Chemicals") and Mossi & Ghisolfi International S.à r.l. ("MGI" and, collectively with M&G Capital and M&G Chemicals, the "Luxembourg Debtors") hereby submit this reply (this "Reply") in response to objections to, and in further support of, the *Motion of Debtors M&G Capital S.à r.l., M&G Chemicals S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* (Docket No. 1537) (the "Motion").[2] The Luxembourg Debtors incorporate by reference into this Reply

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(i) the *Supplemental Declaration of Marianne Goebel in Support of the Motion of Debtors M&G Capital S.à r.l., M&G Chemicals S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* and (ii) the *Declaration of Oliver S. Zeltner in Support of the Motion of Debtors M&G Capital S.à r.l., M&G Chemicals S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* (the "Zeltner Declaration"),[3] each filed contemporaneously herewith. In support of this Reply, the Luxembourg Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Luxembourg Debtors filed the Motion in a proactive effort to mitigate the costs and complications of a likely Luxembourg insolvency filing in the near term, recognizing that the pendency of parallel plenary insolvency cases on two continents would negatively affect their estates and creditors both procedurally and economically. The Luxembourg Debtors are organized in Luxembourg, headquartered in Luxembourg, maintain most of their operations and employees in Luxembourg and do business mainly with counterparties based in Luxembourg or elsewhere in the European Union. Notwithstanding the Objecting Parties' contentions to the contrary, it cannot reasonably be disputed that the Luxembourg Debtors are subject to Luxembourg law. And under Luxembourg law, a single intransigent Luxembourg creditor not believing itself bound by the automatic stay can hale one or more of the Luxembourg Debtors into Luxembourg court, at any time, by commencing parallel insolvency proceedings. The Luxembourg Debtors have monitored and attempted to

---

[3]     Documents attached as exhibits to the Zeltner Declaration are cited herein as "Zeltner Ex. [#]."

manage this risk during the pendency of these chapter 11 cases through direct and ongoing communications with Luxembourg creditors. After months of forestalling local creditors, however, the likelihood of a Luxembourg insolvency filing is now high, and increasing by the day.

2. Bancomext and the Committee prefer to do nothing in response to this potentially complex and value-destructive problem. Presumably, they are eyeing the Luxembourg Debtors' unencumbered cash reserves and hoping for the substantive consolidation of their estates with those of the other Debtors. But the Luxembourg Debtors' estates have not been substantively consolidated with the other Debtors, no party has yet requested substantive consolidation and there can be no assurance at this time that the Court would confirm a plan providing for such consolidation. The Luxembourg Debtors, meanwhile, as debtors in possession, are duty-bound to protect their estates from unnecessary diminution. The Motion seeks to do just that by requesting dismissal that would enable the Luxembourg Debtors to avoid the burdens parallel proceedings would create, including substantial uncertainty as to whether the orders of this Court would be recognized in Luxembourg.

3. In service of their arguments, Bancomext and the Committee attempt to manufacture adversity between the Luxembourg Debtors and their United States counterparts (and between their respective creditor constituencies) where none exists. As described in the Motion and further detailed in Marco Ghisolfi's deposition testimony, the Luxembourg Debtors commenced their chapter 11 cases – despite their reservations regarding potential Luxembourg insolvency proceedings – to aid, not subvert, the United States Debtors and their creditors. The United States Debtors themselves recognized that it would have been challenging, if not impossible, to realize full value for the Debtors' Corpus Christi and Apple Grove assets without

the seamless continuation of technology and management services the Luxembourg Debtors provided to the entire corporate group. Accordingly, the United States Debtors supported the Luxembourg Debtors' decision to commence their chapter 11 cases. Having considered the merits of filing the Motion, the directors of the United States Debtors also supported the Luxembourg Debtors' request to dismiss their chapter 11 cases, given the likelihood of a near term Luxembourg insolvency filing and the burdens parallel proceedings would present.

4. The Luxembourg Debtors reasonably believe, and their evidence shows, that dismissal is in the best interests of their estates and creditors, as section 305(a) of the Bankruptcy Code requires, because the prosecution of parallel plenary proceedings in Luxembourg would benefit no one (other than perhaps certain Luxembourg creditors who have taken no part in these chapter 11 cases), particularly if a trustee is appointed by the Luxembourg court to take control of the Luxembourg Debtors' assets and decisionmaking functions. Under these circumstances, "cause" also exists to dismiss the Luxembourg Debtors' chapter 11 cases under section 1112(b) of the Bankruptcy Code, for the reasons set forth below and in the Motion.

5. The Luxembourg Debtors received objections to the Motion (collectively, the "Objections") filed by: (a) Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Desarrollo ("Bancomext") (Docket No. 1673) (the "Bancomext Objection"); (b) the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee" and, together with Bancomext, the "Objecting Parties") (Docket No. 1675)

(the "Committee Objection"); and (c) Danny Loy King (Docket No. 1595) (the "King Objection").[4]

## REPLY

I. **The Luxembourg Debtors Are Not Barred From Seeking Dismissal of Their Cases**

A. **Dismissal Will Not Contravene the Bid Support Term Sheet**

6.        Contradicting its own record before this Court, the Committee misinterprets the Bid Support Term Sheet, which intentionally incorporated sufficient flexibility to accommodate situations such as the relief requested in the Motion.  Nothing in the Bid Support Term Sheet prohibits dismissal of the Luxembourg Debtors or otherwise predetermines the outcome of any of the chapter 11 cases.  Certainly, the parties contemplated that the Committee and the Debtors would work in good faith to agree upon a mutually acceptable chapter 11 plan if Corpus Christi Polymers LLC ("CCP") is the ultimate purchaser of the Corpus Christi plant.  Bid Support Term Sheet, at n.3.[5]  That provision, however, does not constrain the Committee and Debtors to include every Debtor in any such acceptable plan under all circumstances, or to consolidate the estates of any Debtors included in any such plan.  See id. Moreover, to the extent the Debtors and the Committee were unable to come to terms on a

---

        [4]        The King Objection appears to be based on a misapprehension of the Motion.  In it, Mr. King expresses concern regarding a dismissal of the Debtors' chapter 11 cases generally (which the Motion does not request), and states that if the Motion is granted, "it would create an obscene hardship on retirees and workers to process and collect claims from a different country with a different language and different laws and legal terms." King Obj., at 1.  Based on supporting materials filed with the King Objection, it appears that Mr. King is a participant in the M & G Polymers USA, LLC Hourly Pension Plan, and that he has filed a proof of claim solely against Debtor M & G Polymers USA, LLC ("M&G Polymers").  Mr. King's concerns regarding the difficulty of participating in a Luxembourg insolvency proceeding are unfounded, because the Motion only seeks dismissal of the Luxembourg Debtors' chapter 11 cases, not the cases of M&G Polymers or the other United States Debtors. Accordingly, this Reply does not further address the King Objection.

        [5]        The Bid Support Term Sheet is annexed to the *Stipulation Regarding Settlement and Agreement With Respect to Sale of Corpus Christi Assets and Related Matters*, a copy of which is attached as Exhibit A to the *Order Approving Stipulation Regarding Settlement and Agreement With Respect to Sale of Corpus Christi Assets and Related Matters* (Docket No. 1299).

mutually acceptable plan, either party is expressly authorized to seek any appropriate relief from this Court. Id.

7.      In the absence of a mutually acceptable chapter 11 plan or further order of the Court, no litigation trust would be created under the Bid Support Term Sheet to receive claims and causes of action of any of the Debtors, and CCP's $50 million contribution and other eligible unencumbered assets will not be deposited into a segregated pool of assets for distribution to holders of allowed general unsecured claims. See Bid Support Term Sheet, at 2, 5. Indeed, the Bid Support Term Sheet's provision contemplating the transfer of unencumbered assets into the "GUC Pool" is expressly limited solely "to the extent [such] assets are available for distribution" to such claimants. Id. at 2. Because the Bid Support Term Sheet intentionally forecloses no possibilities with respect to the structure of any potential chapter 11 plan, pursuant to which any GUC Pool or litigation trust would be created, dismissal of the Luxembourg Debtors' chapter 11 cases does not contravene, and is entirely consistent with, the provisions of the settlement.

8.      Even if the relief requested in the Motion would contravene the Bid Support Term Sheet, which for all of the reasons set forth above it would not, the parties discussed in open court at the sale hearing that any of the Debtors may be relieved of their obligations thereunder to the extent that they conflict with their fiduciary duties. See Zeltner Ex. A (3/28/18 Hr'g Tr. at 20:13-21:15) (statements by counsel to the Committee that the Bid Support Term Sheet incorporates the concept of a Court supervised "fiduciary out"); id. at 36:1-10 (statements by counsel to the Debtors agreeing that the Bid Support Term Sheet does not "handcuff[] the exercise of their fiduciary obligations"). Because the relief requested in the Motion is itself premised upon, among other things, the real potential that an affirmative

statutory duty would arise for the Luxembourg Debtors to commence parallel insolvency proceedings in Luxembourg, the parties' intentions and representations to the Court clearly contemplated that the Debtors would be relieved of any conflicting obligations under the Bid Support Term Sheet. See Motion, at ¶¶ 4, 24.

**B.    The Luxembourg Debtors Are Not Estopped From Seeking the Requested Relief**

9.      Both of the Committee's estoppel arguments fall flat because they each presuppose the existence of inconsistent representations by the Luxembourg Debtors that do not exist. The Luxembourg Debtors have not taken conflicting positions with respect to the Motion and Bid Support Term Sheet because, for the reasons described above, the provisions of each are consistent. Moreover, the Committee should not now be permitted to allege any deception on the part of the Luxembourg Debtors when its own extensive commentary to the Court at the sale hearing demonstrated (and communicated) a clear understanding of the scope and limitations of the Bid Support Term Sheet.

10.     In particular, counsel to the Committee explained at the sale hearing that it entered into the Bid Support Term Sheet because "it's a pathway, a possible pathway . . . for recoveries to unsecured creditors." Zeltner Ex. A (3/28/18 Hr'g Tr. at 18:4-6). At that time, the Committee was apparently in no doubt that the purpose of the Bid Support Term Sheet is solely to "diagram out [] terms of how things will [proceed] and that's what [it] does. That's all it does." Id. at 18:8-10. Counsel to the Committee even emphasized "the fundamental point" of the Bid Support Term Sheet that all "outs" are expressly "built in." Id. at 19:24-20:5. "If the debtors think they need to go a different way because we can't get to an agreement, they're able to come to you, as am I. And every other party's rights are wholly reserved." Id. at 20:5-8. The Committee's statements to the Court leave no doubt as to the clear understanding among the

parties that the Bid Support Term Sheet was never intended to predetermine the conclusion of these chapter 11 cases for any or all Debtors.

11. The Debtors have never taken any position that contradicts with the Committee's statements to the Court at the sale hearing regarding the limitations of the Bid Support Term Sheet. Accordingly, no inconsistent statements occurred, and no basis exists for any judicial estoppel argument. Equally, the Committee's equitable estoppel arguments fail because its statements to the Court make clear both that (a) the Luxembourg Debtors are not now denying a prior representation of fact and (b) the Committee did not rely upon and had no right to rely upon any such representation. E.g., Philip Servs. Corp. v. Luntz (In re Philip Servs. (Delaware), Inc., 267 B.R. 62, 67 (Bankr. D. Del. 2001) (no basis exists for equitable estoppel argument where there was no prior inconsistent representation and, even if there had been, the alleging party clearly did not rely on it). As such, the Committee's own statements provide further proof, if any were necessary, that its claims of contradictory representations and justifiable reliance thereon are unfounded.

## C. The Requested Relief Has Been Timely Sought

12. Complaints by the Committee and Bancomext that the Luxembourg Debtors have been planning dismissal of their chapter 11 cases since their outset misstate Mr. Ghisolfi's testimony. See Committee Obj., at ¶ 27; Bancomext Obj., at ¶ 41. In fact, Mr. Ghisolfi was clear that the Luxembourg Debtors' ███████████████████ to seek dismissal of their chapter 11 cases occurred ███████████████ Zeltner Ex. B (7/12/18 Ghisolfi Dep. at 219:8-11). Prior to that time, the Luxembourg Debtors were aware that the need to exit their chapter 11 cases potentially could arise to avoid a parallel Luxembourg insolvency proceeding if they ███████████████████████████████ ████████ Id. at 220:22-24. The Committee and Bancomext attempt to characterize the

Luxembourg Debtors' awareness and preparation for this possibility as an affirmative plan to exit chapter 11. Committee Obj., at ¶ 27; Bancomext Obj., at ¶ 41. But Mr. Ghisolfi was clear that

██████████████████████████████████████████████████████

█████████████████████████ Zeltner Ex. B (7/12/18 Ghisolfi Dep. at 226:11-14).

The Committee's laches argument arising from these allegations is equally unfounded. <u>See</u> Committee Obj., at ¶¶ 26-27. Plainly, the Luxembourg Debtors' awareness and diligent preparation for the possibility that they ultimately may need to seek relief cannot constitute an unreasonable and inexcusable delay in seeking such relief before the contingency arises.

## II. The Court Has Authority and Discretion to Dismiss the Luxembourg Debtors' Cases under Section 305(a) of the Bankruptcy Code

13. The Court has authority and considerable discretion under section 305(a) of the Bankruptcy Code to dismiss the Luxembourg Debtors' chapter 11 cases if, as the Luxembourg Debtors submit, dismissal would better serve the interests of the Luxembourg Debtors and their creditors. <u>See In re Efron</u>, 535 B.R. 505, 510 (Bankr. D.P.R. 2014) ("In general, § 305 grants significant discretion to the bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction over a case filed under title 11 even when jurisdiction is otherwise appropriate.") (citations omitted), <u>aff'd</u>, 529 B.R. 396 (B.A.P. 1st Cir. 2015). Nevertheless, Bancomext and the Committee seek to convince the Court that its hands are tied – and that the Court should not even reach the substantive merits of the Luxembourg Debtors' argument under section 305(a) of the Bankruptcy Code – because, in their views: (a) a debtor may not seek to dismiss a case it voluntarily commenced (Bancomext Obj., at ¶ 33; Committee Obj., at ¶ 30); (b) a motion to dismiss under section 305(a) may only be considered at the outset of a bankruptcy case (Committee Obj., at ¶¶ 6, 33); (c) dismissal under section 305(a) is appropriate only where a parallel proceeding is pending (Bancomext Obj., at ¶¶ 33, 66-67); and

(d) section 305(a) may be invoked only in circumstances where the filing party lacked a legitimate bankruptcy purpose or intended to interfere with an existing restructuring process (Committee Obj., at ¶ 32). These purported limitations on section 305(a) of the Bankruptcy Code, however, are found nowhere in the Bankruptcy Code or controlling caselaw.

14. The plain language of the statute itself shows that the Court's ability to dismiss the Luxembourg Debtors' chapter 11 cases in its discretion is not subject to any of the *per se* limitations proposed by Bancomext and the Committee. The relevant portion of section 305(a) of the Bankruptcy Code provides, in its entirety, that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, *at any time* if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a)(1) (emphasis added). The phrase "at any time" in the statute could not be clearer, and Congress's decision to include that phrase flatly contradicts the Committee's assertion that section 305(a) of the Bankruptcy Code "is intended to be invoked at the outset of a case[.]" Committee Obj., at ¶ 6.

15. The statute also imposes neither limitations on who may file a motion under section 305(a) of the Bankruptcy Code, nor preconditions on a party's ability to seek dismissal (e.g., that a parallel proceeding must be pending) – and neither Bancomext nor the Committee cite any controlling authority to the contrary. The Committee Objection cites three bankruptcy court cases from outside of the Third Circuit for the proposition that "debtors cannot dismiss their own cases under section 305 after voluntarily taking advantage of the benefits of bankruptcy . . . ." Committee Obj., at ¶ 30 (citing Hartigan v. Pine Lake Vill. Apt. Co. (In re Pine Lake Vill. Apt. Co.), 16 B.R. 750, 753 (Bankr. S.D.N.Y. 1982); In re G-N Partners, 48 B.R. 459, 461 (Bankr. D. Minn. 1985); In re Surtronics, Inc., No. 13-05672, 2014 WL 2581159, at

**3-4 (Bankr. E.D.N.C. June 9, 2014)).  The Committee's broad conclusion cannot fairly be drawn from these cases, however, because both Pine Lake and G-N Partners involved motions to dismiss that were filed by creditors and *opposed* by voluntary debtors.  None of the three cases cited by the Committee involved international debtors or potential foreign insolvency proceedings.  Nor is it inconsistent, as Bancomext suggests (see Bancomext Obj., at ¶ 38), for the Luxembourg Debtors to request the survival of the Corpus Christi Sale Order, the Brazil Settlement Order and the Italy Settlement Order following dismissal, because either (a) the United States Debtors are parties to certain of the transactions approved thereby and will necessarily rely on the continuing enforceability of those orders as the United States Debtors' cases continue or (b) parties have transferred assets in reliance on those orders.

16.     Moreover, although section 305(a) of the Bankruptcy Code is frequently invoked in involuntary bankruptcy cases, nothing in the Bankruptcy Code or applicable caselaw limits its scope to the involuntary context.  Rather, courts have long held that "[s]ection 305(a)(1) applies in any case, voluntary or involuntary."  Efron, 535 B.R. at 510 (citing In re Colonial Ford, Inc., 24 B.R. 1014, 1020 (Bankr. D. Utah 1982)).  In addition, as set forth in the Motion, neither the statute nor its legislative history precludes the Court from applying section 305(a) of the Bankruptcy Code in the Luxembourg Debtors' chapter 11 cases simply because these cases present different facts than the example, cited in the statute's legislative history, of circumstances under which dismissal may be appropriate.  See In re Monitor Single Lift I, Ltd., 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008) ("[N]owhere in the text of § 305(a)(1) or in its legislative history did Congress specifically limit the basis for a § 305(a)(1) motion to involuntary cases commenced by creditors to gain leverage in out-of-court negotiations.  The legislative history's reference to this fact pattern only as an 'example' of a basis for abstaining under § 305(a)(1) validates this broader

view of § 305(a)(1)'s application.") (citation omitted); <u>In re Northshore Mainland Servs., Inc.</u>, 537 B.R. 192, 203 (Bankr. D. Del. 2015) ("[t]here is also no question that abstention [under section 305(a) of the Bankruptcy Code] may be proper where, as here, the debtor is an entity formed under the laws of, or doing business in, a foreign country.") (quoting <u>In re Stillwater Asset Backed Offshore Fund Ltd.</u>, 485 B.R. 498, 509 (Bankr. S.D.N.Y. 2013)). Accordingly, the Objecting Parties' arguments that the court may not exercise its discretion to dismiss the Luxembourg Debtors' chapter 11 cases must fail.

**III.     Dismissal Is in the Best Interests of the Luxembourg Debtors and Their Creditors**

17.     As set forth in the Motion, dismissal is in the best interests of the Luxembourg Debtors because: (a) with each passing day, the likelihood increases that a Luxembourg creditor will commence Luxembourg insolvency proceedings against one or more of the Luxembourg Debtors; (b) in the most likely scenario, a trustee would take control of the Luxembourg Debtors' assets and decisionmaking functions in a Luxembourg proceeding; (c) conducting parallel plenary insolvency proceedings in Luxembourg and the United States would be unnecessarily costly and complex, especially given that it is uncertain at best whether a Luxembourg court would recognize and give effect to orders entered in these chapter 11 cases; and (d) the mere threat of a Luxembourg insolvency filing has ground plan negotiations to a halt, with no immediate prospect of significant progress. <u>See</u> Motion, at ¶¶ 3-7, 20, 34-35. The Luxembourg Debtors also believe that, on balance, dismissal would better serve their creditors – most of whom are located in Luxembourg or elsewhere in the European Union – by eliminating the costs and administrative burdens of simultaneously seeking recoveries on their claims in concurrent plenary insolvency proceedings on two continents. <u>See id.</u> at ¶ 1, 20, 22-23.

**A.    The Court's "Best Interests" Analysis
under Section 305(a) of the Bankruptcy Code
Should Focus on the Luxembourg Debtors and Their Creditors**

18.    The Objecting Parties raise a number of arguments in an attempt to show that their interests, and the interests of United States creditors in general, would not be served in a dismissal scenario. Bancomext asserts, without any citation to authority (binding or otherwise), that because the Debtors are "intertwined," the interests of the United States debtors and their creditors must be considered. See, e.g., Bancomext Obj., at ¶ 50. Conspicuously absent from the Objections, however, is any discussion of the Luxembourg and other European creditors' interests. This omission is particularly glaring because the vast majority of the Luxembourg Debtors' trade creditors and other debt holders are located in Luxembourg or elsewhere in the European Union.

19.    Bancomext also implies that the Luxembourg Debtors essentially should be substantively consolidated with the other Debtors for purposes of evaluating the parties' best interests under section 305(a) of the Bankruptcy Code. Bancomext Obj., at ¶ 51. Bancomext cites no authority, and the Luxembourg Debtors are aware of none, supporting this proposition. Although these chapter 11 cases are jointly administered, no party has requested their substantive consolidation. As Bancomext undoubtedly knows, joint administration and substantive consolidation are very different mechanisms. See Burtch v. Ganz (In re Mushroom Transp. Co.), 366 B.R. 414, 418 n.4 (Bankr. E.D. Pa. 2007) ("Joint administration ... is quite different from substantive consolidation. The former is merely an administrative convenience so that a party need not file identical pleadings in five different bankruptcy cases. The latter combines the assets and liabilities of the different bankruptcy cases into one case.") (citations omitted). In the absence of substantive consolidation, and any authority suggesting that the Court should consider the interests of parties other than the Luxembourg Debtors and their creditors in evaluating the

Luxembourg Debtors' request for dismissal under section 305(a) of the Bankruptcy Code, the Luxembourg Debtors submit that the interests of the United States Debtors and their creditors are not relevant to the Court's determination of whether the Luxembourg Debtors and their creditors would be better served by dismissal and, to the extent the interests of the United States Debtors and their creditors are considered at all, such interests should be secondary.

**B.    Restructuring under Luxembourg Law Would Not Unfairly Prejudice Creditors of the Luxembourg Debtors**

20.    The Objecting Parties imagine a bleak scenario if the Luxembourg Debtors' chapter 11 cases are dismissed, where the Luxembourg Debtors, under Mr. Ghisolfi's control, would have free rein to funnel all of the companies' assets to insiders and preferred creditors. See Bancomext Obj., at ¶ 40, 57; Committee Obj., at ¶ 2. These allegations lack credibility and are out of step with reality. In the likely event that a Luxembourg insolvency proceeding follows dismissal of the Luxembourg Debtors' chapter 11 cases, claims against the Luxembourg Debtors would be paid in accordance with the priority scheme established under Luxembourg law – and a court-appointed trustee, not the Luxembourg Debtors' directors and officers, likely would control the Luxembourg Debtors' assets and decisionmaking.

21.    Moreover, even if a Luxembourg insolvency filing does not immediately occur upon dismissal, and the Luxembourg Debtors attempt to negotiate settlements with their creditors out of court, they most likely would seek to satisfy the claims of small trade creditors, reach settlements with larger creditors and pay employment claims – including Marco Ghisolfi's severance claim – consistent with the requirements of Luxembourg law. Contrary to the insinuations by the Objecting Parties, if the Luxembourg Debtors' desire to pay severance in accordance with Luxembourg law was the driver behind the Motion, the Motion could have been filed months ago. Furthermore, dismissal would not somehow relieve the Luxembourg Debtors'

directors of their fiduciary duties under Luxembourg law, nor would the prospect of a Luxembourg insolvency proceeding unfairly injure the Luxembourg Debtors' creditors. After all, creditors who conducted business with the Luxembourg Debtors prior to the Petition Date had actual or constructive notice that the Luxembourg Debtors are organized under Luxembourg law, and have their headquarters and main operations in Luxembourg. Notwithstanding the protestations of certain non-European litigation claimants (e.g., Bancomext), it is neither surprising nor unfair that the Luxembourg Debtors would address their debts under Luxembourg law following dismissal of their chapter 11 cases, whether in court or out of court.

**C.  Uncertainty Regarding Precisely How the Luxembourg Debtors' Restructuring Would Unfold Following Dismissal Does Not Preclude Dismissal**

22.    The Objecting Parties assert that the Court should not grant the Motion because the Luxembourg Debtors (1) cannot predict with certainty what will occur upon dismissal (e.g., whether a Luxembourg insolvency proceeding would immediately be commenced) and (2) have not precisely quantified and compared potential creditor recoveries under dismissal and non-dismissal scenarios. See Bancomext Obj., at 3; ¶ 78; Committee Obj., at ¶¶ 7, 36-37. Neither Bancomext nor the Committee cites any authority suggesting that the Court is precluded from dismissing the Luxembourg Debtors' chapter 11 cases simply because alternatives exist regarding the ways in which a post-dismissal restructuring may occur. Section 305(a) of the Bankruptcy Code itself imposes no such requirement, and for good reason. Requiring a party seeking dismissal to predict potential creditor recoveries in every possible post-dismissal scenario defies logic, and would be unreasonable here given that – as Bancomext recognizes – the Luxembourg Debtors "simply don't know" whether and when creditors will commence one or more Luxembourg insolvency proceedings against the Luxembourg Debtors, among other things. Bancomext Obj., at 3.

23.     Despite these inherent uncertainties – and contrary to Bancomext's selective quotation of Mr. Ghisolfi's deposition transcript (see Bancomext Obj., at ¶ 78) – the Luxembourg Debtors analyzed information provided by their financial advisor, Alvarez & Marsal North America, LLC, and conducted a high-level preliminary quantitative analysis concluding, among other things, that general unsecured creditors of the United States Debtors would receive greater recoveries in a dismissal scenario than under a chapter 11 plan in which all of the Debtors are substantively consolidated.



Zeltner Ex. B (7/12/18 Ghisolfi Dep. at 193:5-194:6).

24.     Moreover, no quantitative analysis is necessary to recognize that, in a non-dismissal scenario, the commencement of parallel Luxembourg proceedings would unnecessarily deplete the Luxembourg Debtors' estates, and introduce jurisdictional and administrative complications that would either be eliminated or minimized if the Luxembourg Debtors are not forced to participate in concurrent Luxembourg and United States proceedings, as likely will occur if the Motion is not granted.

**IV.    Cause Exists for Dismissal under Section 1112(b) of
the Bankruptcy Code because the Luxembourg Debtors Are
Unable to Effectuate a Chapter 11 Plan and Reorganize within a
Reasonable Period of Time in the Shadow of a Luxembourg Insolvency Filing**

        25.    The Objecting Parties' contentions regarding section 1112(b) of the

Bankruptcy Code also are seriously flawed.  As they attempt to do with section 305(a), the

Committee and Bancomext advance an exceedingly narrow and inaccurate construction of

section 1112(b) of the Bankruptcy Code – one that ignores key portions of the statutory text.

See Committee Obj., at ¶ 46; Bancomext Obj., at ¶ 81.  For example, the Committee asserts that

the Luxembourg Debtors cannot demonstrate an "inability to effectuate substantial

consummation of a confirmed plan" because they have not proposed a plan.  See Committee

Obj., at ¶ 47 (citing 11 U.S.C. § 1112(b)(4)(M)).  This is a classic "straw man" argument that

cannot be credited.

        26.    The Motion does not argue that section 1112(b)(4)(M) of the Bankruptcy

Code is satisfied.  Rather, in the Motion, the Luxembourg Debtors argue – based on the statutory

language and Third Circuit precedent – that (a) the list of facts demonstrating that "cause" exists

for dismissal set forth in section 1112(b)(4) of the Bankruptcy Code is not exhaustive and

(b) cause exists to dismiss the Luxembourg Debtors' chapter 11 cases because, given the

challenges presented by the likelihood of parallel Luxembourg proceedings being commenced in

the near term, (i) there is no "reasonable possibility" that the Luxembourg Debtors can

successfully reorganize in chapter 11 "within a reasonable period of time" and (ii) the

Luxembourg Debtors are unable to "effectuate a plan" under present circumstances.  See Motion,

at ¶ 33.

        27.    As many courts – including the Third Circuit – have determined,

Congress's use of the phrase "the term 'cause' includes . . ." in section 1112(b)(4) of the

Bankruptcy Code establishes that "cause" for dismissal is not limited to the examples set forth in that section. See, e.g., In re Am. Capital Equip., LLC, 688 F.3d 145, 161 (3d Cir. 2012) ("Section 1112(b) provides a non-exhaustive list of grounds for finding 'cause' to convert or dismiss.") (citing In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999)); In re Republic, LLC, No. 18-50631, 2018 WL 3203869, at *4 (Bankr. D. Conn. June 26, 2018) (stating that "it has been established since the adoption of § 1112 that Congress used the word 'includes' purposefully and that the grounds listed in the statute are non-exclusive. The statute reflects Congress' determination that a case should not be permitted to linger in Chapter 11 when there are grounds for conversion [or dismissal].") (quoting In re Ameribuild Constr. Mgmt., Inc., 399 B.R. 129, 131-32 (Bankr. S.D.N.Y. 2009)) (alteration in original). Thus, in American Capital Equipment, the Third Circuit held that, in addition to the statutorily enumerated examples, "[a] court may also find cause [under section 1112(b) of the Bankruptcy Code] where there is not 'a reasonable possibility of a successful reorganization within a reasonable period of time.'" Am. Capital Equip., 688 F.3d at 162 (quoting First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 572 (3d Cir. 1991)). The Third Circuit further stated that "the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause are not exhaustive." Id. at 162 n.10 (citing DCNC N.C. I, L.L.C. v. Wachovia Bank, N.A., No. 09-3775, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009)).

28.     The Committee's assertion that dismissal of the Luxembourg Debtors' chapter 11 cases is precluded by section 1112(b)(2) of the Bankruptcy Code also must fail. That section provides that a chapter 11 case may not be dismissed or converted if:

> (1) 'unusual circumstances' exist; (2) conversion or dismissal 'is not in the best interests of creditors and the estate;' (3) there is a reasonable likelihood of confirmation of a plan within any time period mandated by the Code or, otherwise within a reasonable

time; (4) the grounds for dismissal for 'cause' do not include those
set forth in § 1112(b)(4)(A) [i.e., "substantial or continuing loss to
or diminution of the estate and the absence of a reasonable
likelihood of rehabilitation"]; (5) there is a reasonable justification
for the act or omission of the debtor; and (6) the act or omission
may be cured within a reasonable period of time.

In re Korn, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014). As set forth in the Motion and elsewhere

herein, (a) dismissal is in the best interests of both the Luxembourg Debtors and their creditors

and (b) there is not a reasonable likelihood that the Luxembourg Debtors can confirm a plan

within a reasonable period of time, because, absent dismissal, the Luxembourg Debtors face the

likelihood of a concurrent Luxembourg insolvency filing that, at a minimum, would complicate –

and easily could derail – any efforts to consummate a chapter 11 plan and pay claims asserted in

these bankruptcy proceedings. These problems are not merely speculative; rather, the

uncertainties regarding the timing and nature of a potential Luxembourg insolvency filing have

created an impasse in plan negotiations affecting all of the Debtors. As the Third Circuit and

other courts have stated, "[i]f the debtor has no viable prospect of confirming a plan, then there is

'no point in expending estate assets on administrative expenses, or delaying creditors in the

exercise of their nonbankruptcy legal rights.'" Anderson v. Commonwealth Renewable Energy,

Inc. (In re Commonwealth Renewable Energy, Inc.), 550 B.R. 279, 283 (Bankr. W.D. Pa. 2016)

(quoting Brown, 951 F.2d at 572).

       29.     The Luxembourg Debtors have presented competent evidence

(i.e., the declarations of Marco Ghisolfi and Marianne Goebel) supporting their view that "cause"

exists under section 1112(b) of the Bankruptcy Code to dismiss their chapter 11 cases.

The Committee, on the other hand, has cited no evidence to support its argument that dismissal is

prohibited under section 1112(b)(2) of the Bankruptcy Code. "Once cause is found [under

section 1112(b) of the Bankruptcy Code], the burden shifts to the opposing party to demonstrate

'unusual circumstances' that establish conversion or dismissal is not in the best interests of the creditors and the estate . . . If there are no such unusual circumstances present, then the bankruptcy court must choose between dismissal or conversion . . . ." Efron, 529 B.R. at 411. The Committee has not attempted to meet their burden. Accordingly, its argument must be rejected.

## V. The Objecting Parties' Remaining Arguments Lack Merit

### A. There Is No Basis to Require the Luxembourg Debtors to Pay Additional Administrative Expenses as a Condition of Dismissal

30.     The Committee asserts that the Motion should not be granted because the proposed order does not require the Luxembourg Debtors to pay an allocated share of administrative costs as a condition of dismissal. See Committee Obj., at ¶¶ 41-43. Sections 305(a) and 1112(b) of the Bankruptcy Code say nothing about the payment of administrative expenses, however, and the Committee cites no statute, rule or case conditioning dismissal on the continued payment of such expenses.

31.     Plainly, no allocation is required with respect to the Luxembourg Debtors' postpetition creditors who, just like their prepetition counterparts, will have recourse against the Luxembourg Debtors following dismissal. See 11 U.S.C. § 349 (providing that dismissal of a case, among other things, revests property of the estate in the entity in which it was previously vested); 11 U.S.C. § 362(c)(2)(B) (providing for termination of the automatic stay with respect to acts against property when it is no longer property of the estate and, with respect to other prohibited acts, among other things, when the case is dismissed).

32.     With respect to the aggregated costs of actually administering the Debtors' chapter 11 cases, the Committee argues that a "significant portion" of them "was incurred for the benefit of the Luxembourg Debtors." Committee Obj., at ¶ 42. Mr. Ghisolfi, however, testified

that 

.[6]  See, e.g., Zeltner Ex. B (7/12/18 Ghisolfi Dep.

at 81:16-82:2) █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████).

33.     The benefits that the Committee alleges the Luxembourg Debtors have

received from the chapter 11 process include the approval of settlements under "the liberal

standard of Bankruptcy Rule 9019" and the preparation of schedules of assets and liabilities and

statements of financial affairs.  Committee Obj., at ¶¶ 42-43.  The Committee ignores, however,

that none of these procedures would have been necessary outside of chapter 11, so the

Luxembourg Debtors received no benefit from participating in these chapter 11 cases as a result

of them.  Because there is no requirement that aggregate administrative costs be allocated among

affiliated debtors upon dismissal of certain of their cases, and the Luxembourg Debtors have

participated in these chapter 11 cases largely for the benefit of the United States Debtors' estates,

---

[6]     As the overwhelming focus of these chapter 11 cases has been the sale of the United States
Debtors' assets, the United States Debtors also do not agree that a "significant portion" of the aggregated costs of
administering the Debtors' estates "was incurred for the benefit of the Luxembourg Debtors" and to the extent there
are such costs that have been incurred solely for the benefit of the Luxembourg Debtors, the United States Debtors
believe that they would be *de minimis* as compared to the aggregate administrative costs.  To the extent that the
Luxembourg Debtors' chapter 11 cases are dismissed and the United States Debtors determine that any amounts,
administrative or otherwise, are owed to the United States Debtors by the Luxembourg Debtors, the United States
Debtors reserve the right to pursue such claims against the Luxembourg Debtors.

receiving minimal benefits themselves, no further allocation of administrative expenses to the Luxembourg Debtors' estates is necessary or warranted.

**B.     The Requested Exculpation Is Narrowly Tailored and Should Be Approved**

34.     Bancomext asserts that the Court should not approve the exculpation requested by the Luxembourg Debtors because it is too broad, and such provisions may only be approved where a dismissal order effectively concludes the bankruptcy cases. See Bancomext Obj., at ¶ 85-87. Bancomext cites no authority whatsoever for the proposition that the Court may not grant an exculpation in the first instance because some Debtors will continue their cases before this Court. The exculpation also is far from excessively broad; rather, it is narrowly tailored to apply solely to actions or omissions "in connection with the dismissal of the Luxembourg Debtors' chapter 11 cases." Motion, Ex. A (Proposed Order), at ¶ 4. It does not cover, for example, actions or omissions relating to the United States Debtors, or even the Luxembourg Debtors' chapter 11 cases generally, and it carves out willful misconduct, gross negligence and any violations of law. Moreover, the exculpation does not purport to cut off any claims that creditors or the United States Debtors' estates may have against the Luxembourg Debtors for administrative claims. The Luxembourg Debtors submit that, given these limitations, the proposed exculpation is narrowly tailored and should be approved.

## CONCLUSION

35.     For the reasons set forth above and in the Motion, the Luxembourg Debtors respectfully submit that the Objections should be overruled and the Motion should be approved.

Dated: July 17, 2018

PACHULSKI STANG ZIEHL & JONES LLP

/s/    Joseph M. Mulvihill
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:        ljones@pszjlaw.com
                 joneill@pszjlaw.com
                 jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306
Email:           sgreenberg@jonesday.com
                    scorririvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:    (216) 586-7035
Facsimile:    (216) 579-0212
Email:           ceblack@jonesday.com

Co-Counsel for Debtors
and Debtors in Possession