## Exhibit A

1      UNITED STATES BANKRUPTCY COURT

        DISTRICT OF DELAWARE

2

             . Chapter 11

3 IN RE:         .

             . Case No. 17-12307 (BLS)

4 M&G USA CORPORATION, *et al.*, .

5             . Courtroom No. 1

             . 824 North Market Street

6             . Wilmington, Delaware 19801

7             .

        Debtors.  . March 28, 2018

8 . . . . . . . . . . . . . . . . 10:30 A.M.

9         TRANSCRIPT OF HEARING

     BEFORE THE HONORABLE BRENDAN L. SHANNON

10       UNITED STATES BANKRUPTCY JUDGE

11 APPEARANCES:

12 For the Debtors:    Laura Davis Jones, Esquire

           James O'Neill, Esquire

13           Joseph Mulvihill, Esquire

14           PACHULSKI STANG ZIEHL & JONES LLP

           919 N. Market Street, 17th Floor

15           P.O. Box 8705

           Wilmington, Delaware 19801

16

17

18 Audio Operator:    DANA MOORE

19 Transcription Company: Reliable

           1007 N. Orange Street

20           Wilmington, Delaware 19801

           (302)654-8080

21           Email: gmatthews@reliable-co.com

22

23 Proceedings recorded by electronic sound recording,

 transcript produced by transcription service.

24

25

```
 1  APPEARANCES (Continued):

 2  For the Debtors:          Scott Greenberg, Esquire
                              Stacey Corr-Irvine, Esquire
 3                            Michael Cohen, Esquire
                              James Sottile, IV, Esquire
 4                            JONES DAY
                              250 Vesey Street
 5                            New York, New York 10281

 6                            - and -

 7                            Carl Black, Esquire
                              901 Lakeside Avenue
 8                            Cleveland, Ohio 44114

 9  For U.S. Trustee:         Hannah McCollum, Esquire
                              UNITED STATES DEPARTMENT OF JUSTICE
10                            OFFICE OF THE U.S. TRUSTEE
                              844 King Street, Suite 2207
11                            Lockbox 35
                              Wilmington, Delaware 199801
12
    For the Committee:        Abhilash Raval, Esquire
13                            Alexander Lees, Esquire
                              Lauren Doyle, Esquire
14                            MILBANK TWEED HADLEY & MCCLOY LLP
                              28 Liberty Street
15                            New York, New York 10005-1413

16  For Banco Inbursa:        Lisa Schweitzer, Esquire
                              Jane VanLare, Esquire
17                            CLEARY GOTTLIEB STEEN & HAMILTON LLP
                              1 Liberty Plaza
18                            New York, New York 10006

19  For the Construction      Eric Monzo, Esquire
    Lienholder Group:         Jeffrey Waxman, Esquire
20                            MORRIS JAMES LLP
                              500 Delaware Avenue, Suite 1500
21                            Wilmington, Delaware 19801

22  For Alpek:                Alfredo Perez, Esquire
                              WEIL GOTSHAL & MANGES LLP
23                            700 Louisiana, Suite 1700
                              Houston, Texas 77002-2784

24

25
```

```
 1  APPEARANCES (Continued):

 2  For Sinopec
    Engineering Group:          R. Craig Martin, Esquire
 3                              DLA PIPER LLP (US)
                                1201 N. Market Street, Suite 2100
 4                              Wilmington, Delaware 19801

 5  For Bancomext:              Roberto Kampfner, Esquire
                                WHITE & CASE LLP
 6                              555 South Flower Street, Suite 2700
                                Los Angeles, California 90071
 7
    For M&G Mexico:             Matthew Ziegler, Esquire
 8                              MORGAN LEWIS & BOCKIUS LLP
                                101 Park Avenue
 9                              New York, New York 10178

10  For Comerica Bank:          Jeffrey Wisler, Esquire
                                CONNOLLY GALLAGHER, LLP
11                              1000 West Street, Suite 1400
                                Wilmington, Delaware 19801
12

13  TELEPHONIC APPEARANCES:

14  For Magnate S.a.r.l.,       Marc Kieselstein, Esquire
    and M&G Polimeros           KIRKLAND & ELLIS LLP
15  Brasil S.A.:                300 North LaSalle
                                Chicago, Illinois 60654
16

17

18

19

20

21

22

23

24

25
```

1   for the estate and the Banibu bid.   The bidders support this

2   because we're not up here objecting.   Inbursa supports this

3   because as part of this transaction we're not objecting to

4   the backup bid.   And we support it because it's a pathway, a

5   possible pathway, let's say, for recoveries to unsecured

6   creditors.

7            But what we can't do is just say there's a number

8   out there and not have its diagram out in terms of how things

9   will perceive and that's what this does.   That's all this

10  does.

11           Your Honor, I think there's been some concerns by

12  the U.S. Trustee and by other parties that this gives us too

13  much control over the process.   I refer you to the first

14  page, Your Honor, of this bid term sheet and the two

15  footnotes that show up in redlines.

16           The first footnote, in essence, says if there's

17  any dispute over the application of any of the terms and

18  conditions in this term sheet, the parties would agree to

19  work in good faith to resolve those disputes.   If that

20  (indiscernible) diligent effort those disputes cannot be

21  consensually resolved and any of the parties can seek any

22  sort of appropriate relief or remedy from this court.   I

23  think that's a right that the debtors would have had anyway.

24  But we're putting it in here expressly.

25           THE COURT:   Okay.

1          MR. RAVAL:  You've got footnote three, which says

2   that an acceptable Chapter 11 plan is a Chapter 11 plan

3   that's mutually acceptable to the committee and the debtors

4   and that we're going to work in good faith to agree upon an

5   acceptable Chapter 11 plan.

6          Again, after diligent efforts if we can't get to

7   an agreement they or we or both of us can come to you and

8   seek any appropriate relief or remedies from the court.  So,

9   the point of this, Your Honor, and the purpose of this term

10  sheet is really embedded in these two footnotes, which is

11  let's work together.

12         Both sides are getting limited budgets from the

13  bidders.  In my case, UCC advisor fees if they're not

14  budgeted for would come out of the recoveries, the $50

15  million-dollar pot, which is a very significant issue, not

16  something that we want to do and certainly that's a

17  discussion we'd have to have with the committee before we

18  ever did that.

19         But out point is, is that through consent and

20  working together on a pathway that's going to minimize that

21  risk.  It minimizes the litigiousness, at least among the

22  committee, the debtors, and the bidders, and hopefully it

23  allows for a more expeditious resolution of these cases.

24         That's really the fundamental point of the term

25  sheet in the stipulation, Your Honor.  And, again, as I said,

1  the other point is really that we couldn't have blindly

2  agreed to agreeing to the transaction without having some

3  piece of paper that says this is the pathway that these

4  parties will pursue.

5          And their outs expressly built in now.  If the

6  debtors think they need to go a different way because we

7  can't get to an agreement, they're able to come to you, as am

8  I.  And every other party's rights are wholly reserved.

9          THE COURT:  Do you regard these as effectively

10 fiduciary outs or is there a fiduciary out?  I did get the

11 blackline version just a few minutes before the hearing, so I

12 skimmed it as quickly as I could.

13         MR. RAVAL:  Yeah, I would say that it's --

14         THE COURT:  Because an RSA which is or a PSA or

15 whatever this is typically has some form of fiduciary out for

16 the debtor.

17         MR. RAVAL:  Right.  So, Your Honor, I would say

18 that it's a fiduciary duty out but it's one that requires a

19 hearing before you or an in-chamber's conference to have a

20 third party adjudicated to determine whether or not it's

21 appropriate in the context of this case.

22         And the reason I say that, Your Honor, is that if

23 this is a plan term sheet and it said that at the plan

24 confirmation the asset gets sold to CCP, then it's okay to

25 have a fiduciary out there, because not only would my deal

1  blow up, but that deal would blow up.

2          Here, this deal is happening today.  And so, to

3  say you have a standard fiduciary duty out that you see in an

4  RSA and a PSA would get us into -- causes us concern because

5  we're not really sure, frankly, who's monitoring that, what

6  if that's a fiduciary out or not.  Maybe there's going to be

7  issues.  We say it's not -- you're inappropriately exercising

8  that out.

9          So, to curtail that, we would say we come to you.

10  And then may assert, pursuant to these footnotes, that they

11  need to get out of this because of fiduciary duty.  But what

12  we'd like is Your Honor to be supervising that, rather than

13  just having the standard out you see in PSA's where if the

14  board determines that it's good faith, and it's a fiduciary

15  duty issue they can walk away.

16          THE COURT:  I understand.

17          MR. RAVAL:  And that's, Your Honor, only because

18  of the specific structure here where the sale is happening

19  today, this happens a few months after.

20          Your Honor, I'm going to turn it over to Mr. Lees

21  unless you have questions for me.

22          THE COURT:  No, I don't.  Not right now.  Thank

23  you, though.

24          Mr. Lees.

25          MR. LEES:  Good morning, Your Honor, Alex Lees of

1   there's been mention of fiduciary duties. The debtors do not

2   believe this document handcuffs the exercise of their

3   fiduciary obligations.

4            The debtors will continue to act in what they

5   believe is in the best interest of the estate. To the extent

6   that that razors a conflict with the debtors' obligation with

7   the UCC or obligations under this stipulation, then we would

8   go forward, try to work out a resolution with the committee.

9   To the extent we can't, then we'll be back in front of the

10   court.

11            But I just wanted to be clear that this is in no

12   way, shape or form the debtors advocating those

13   responsibilities.

14            THE COURT: Okay.

15            MR. BLACK: And, Your Honor, with that, I would

16   turn the podium over to Mr. Sottile. Thank you.

17            THE COURT: Sure thing. Counsel, good morning.

18            MR. SOTTILE: Good morning, Your Honor. Jim

19   Sottile of Jones Day for the debtors.

20            We joint the committee's arguments. I think the

21   committee effectively laid out the key reasons why Bancomext

22   objection must be overruled.

23            They certainly haven't established they have an

24   interest in property that it's entitled to adequate

25   protection. They haven't even attempted to do so.