# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING DEED OF SETTLEMENT BETWEEN M&G CAPITAL INVESTMENTS S.À R.L., MOSSI & GHISOLFI INTERNATIONAL S.À R.L. AND SCULPTOR INVESTMENTS IV S.À R.L.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), approving the *Deed of Settlement*, dated August 9, 2018 (as amended, the "Settlement Agreement")[2] between (i) M&G Capital Investments S.à r.l. ("M&G Investments"), (ii) Debtor Mossi & Ghisolfi International S.à r.l. ("M&G International") and (iii) Sculptor Investments IV S.à r.l. (in its capacity as sole bondholder of the MGI Bonds (as defined below) the "MGI Bondholder" and together with M&G International and M&G Investments, the "Parties"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] A copy of the Settlement Agreement is attached to the Proposed Order as Exhibit 1.

NAI-1504218843v6

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

### A. General Background

2.  On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B. The MGI Bonds[3]

4.  On March 23, 2016, M&G International, as issuer, the MGI Bondholder and The Law Debenture Trust Corporation p.l.c., in its capacity as security trustee (the "MGI Security Trustee") and bond trustee (the "MGI Bond Trustee" and together with the MGI

---

[3] For the avoidance of doubt, the Debtors reserve the right to dispute any claims, objections, defenses, or counterclaims that any party may raise in the event that the Settlement Agreement is not approved.

Security Trustee, the "Trustees"), among others, entered into a trust deed (the "MGI Trust Deed") under which M&G International issued $72.5 million floating rate guaranteed secured bonds due 2019 (the "MGI Bonds," together with the MGI Trust Deed and all other guarantee, security and financing documents related thereto, the "MGI Finance Documents").  The MGI Bonds are guaranteed by non-debtors M&G Finanziaria S.p.A. ("M&G Finanziaria"), M&G Mexico Holding S.A. de C.V. and M&G Polimeros Mexico S.A. de C.V. and Debtor M & G Polymers.  As of the date of this Motion, M&G International owes the MGI Bondholder an aggregate amount of $72.5 million, plus applicable interest, fees, costs and other amounts due under the MGI Bonds.[4]

### C. The M&G Finanziaria Proceedings and Fibras Brasil Acquisition

5.　On October 13, 2017, M&G Finanziaria commenced proceedings (the "M&G Finanziaria Proceedings") before the Court of Alessandria, Italy (the "Italian Court") pursuant to the terms of article 161, section 6, of Italian Royal Decree No. 267, dated March 16, 1942 (the "Italian Bankruptcy Law").  M&G International has been informed that the M&G Finanziaria Proceedings were closed on April 24, 2018, and further that M&G Finanziaria is now preparing to file with the Italian Court (a) its plan proposal (*accordo di ristrutturazione*) pursuant to article 182-bis of the Italian Bankruptcy Law, which contemplates, among other things, the settlement in respect of the MGC Bonds under the MGC Bonds Settlement Agreement and certain set-offs and debt forgiveness between M&G Finanziaria and the Debtors' non-debtor

---

[4]　In addition to the MGI Bonds, on March 23, 2016, Debtor M&G Capital S.à r.l. ("M&G Capital"), as issuer, and Sculptor Investments IV S.à r.l., as initial bondholder (in such capacity, the "MGC Bondholder"), among others, entered into a trust deed, pursuant to which M&G Capital issued $37.5 million floating rate guaranteed secured bonds due 2023 (the "MGC Bonds").  The MGC Bonds are guaranteed by, among others, M&G Finanziaria.  While the MGC Bonds are not being settled pursuant to the Settlement Agreement, the MGC Bonds are currently the subject of a settlement deed executed on August 9, 2018 between, among others, the MGC Bondholder and M&G Finanziaria (the "MGC Bonds Settlement Agreement").  M&G Capital is not a party to the MGC Bonds Settlement Agreement, but it will be a beneficiary of the release of liability related to the MGC Bonds under that agreement.

affiliate M&G Fibras e Resinas Ltda. ("Fibras e Resinas") or (b) a request for the certification (*omologa*) of, among other things, the MGC Bonds Settlement Agreement pursuant to article 182 bis of the Italian Bankruptcy Law (the proceedings under sub-paragraphs (a) and (b) above, collectively, the "Italian Turnaround Proceedings").

6. M&G International further understands that its non-debtor affiliates, M&G Fibras Participações Ltda. and M&G Fibras Holding S.A. (the "Fibras Sellers"), intend to sell all of their shares in each of Fibras e Resinas and M&G Fibras Brasil S.A. ("Fibras Brasil") to Indorama Ventures Public Company Limited (or one of its affiliates) (the "Fibras Purchaser" and such sale, the "Fibras Acquisition") in accordance with a non-binding offer submitted to the Fibras Sellers by the Fibras Purchaser on April 16, 2018 (the "Offer Letter").  The parties intend for the Fibras Acquisition to be completed in two stages—the first being the acquisition of Fibras Brasil (the "Fibras Brasil Acquisition") and the second being the acquisition of Fibras e Resinas (the "Fibras e Resinas Acquisition").  The MGC Bondholder has consent rights over the Fibras Brasil Acquisition, and the Fibras Brasil Acquisition is subject to, among other things, the implementation of the settlement of the MGC Bonds in accordance with the MGC Bonds Settlement Agreement under the Italian Turnaround Proceedings.

7. Under the Offer Letter, the Fibras Purchaser has proposed to, among other things, allocate BRL 95,000,000 of the BRL 100,000,000 total purchase price towards the Fibras Brasil Acquisition, to be further allocated as follows:  (a) BRL 1 to the value of the shares in Fibras Brasil; (b) BRL 4,497,000 to discharge the existing debt of Fibras Brasil owed to third party banks; (c) BRL 29,370,000 to discharge all of the existing intercompany debt of Fibras Brasil owed to M&G Finanziaria; and (d) BRL 61,133,000 to discharge all of the existing intercompany debt of Fibras Brasil owed to M&G International.  Utilizing the foreign exchange rate of BRL to

USD as of May 2018, and assuming that no adjustments to the purchase price are made at the closing of the Fibras Brasil Acquisition, M&G International understands that it will receive approximately $15,707,000 as the result of such sale (the "M&G International Received Amount"). Pursuant to the Settlement Agreement, M&G International has agreed (subject to this Court's approval) to pay the Trustees and the MGI Bondholder (collectively, the "MGI Secured Creditors") $8 million to be funded from the M&G International Received Amount.

### D. The Settlement Agreement

8. Absent the closing of the Fibras Brasil Acquisition, M&G International anticipates that it would receive little, if any, recovery on account of the intercompany debt owed to it by Fibras Brasil, which M&G International understands lacks the funds to pay those intercompany debts. The Settlement Agreement permits the full recovery of that intercompany debt while providing that a portion of such recovery will be used to fund a settlement with the MGI Bondholder, whose consent (in its capacity at the MGC Bondholder) is necessary for the Fibras Brasil Acquisition to go forward. As a result, the Settlement Agreement is contingent upon the closing of the Fibras Brasil Acquisition (the date upon which such acquisition closes, the "Fibras Brasil Acquisition Completion Date"). In particular, the Settlement Agreement contemplates the closing of the Fibras Brasil Acquisition within seven months of the date of the Settlement Agreement (any further extensions of which are subject to the MGI Bondholder's discretion, acting reasonably) (the "Long-stop Date"), and provides that, subject to certain conditions, M&G International will pay the MGI Secured Creditors $8 million, to be funded entirely from the M&G International Received Amount. In exchange, the MGI Secured Creditors have agreed to (a) on and after the Payment Date (as defined below), among other things, release M&G Finanziaria, M&G Capital, M&G Investments, M&G Polymers and

Mossi & Ghisolfi S.p.A. (collectively, the "MGI Released Parties") and M&G International[5] from all present and future obligations and liabilities under or in connection with the MGI Finance Documents and (b) a release of all assets of each of the MGI Released Parties that are subject to any MGI Security (as defined in the Settlement Agreement) (the "MGI Released Assets").[6] The principal terms of the Settlement Agreement are as follows:[7]

(a) **Payment**. M&G International undertakes to make a payment to the MGI Secured Creditors by no later than three business days after the Effective Date (as defined below) for an amount equal to $8 million (the "Payment" and the date on which the Payment is made, the "Payment Date"). *See* Settlement Agreement, § 3.

---

[5] The release in favor of M&G International is effective as of the "MGI Suspension End Date", which is defined as:

> the earliest of (i) the date on which the MGI Secured Creditors have exhausted their rights under the MGI Finance Documents against [M&G Mexico Holding S.A. de C.V. and M&G Polimeros Mexico S.A. de C.V. (the "Relevant MGI Obligors")]; (ii) the date on which all assets of the Relevant MGI Obligors have been disposed of and the proceeds thereof (where available) have been finally and irrevocably distributed to its creditors (and such distribution is not capable of successful challenge in any manner whatsoever); (iii) the date on which a final settlement has been signed by or on behalf of the Relevant MGI Obligors with the MGI Secured Creditors (and such settlement is not capable of successful challenge); (iv) the date on which the competent court under a final and non-appealable court order dismisses the claims of the MGI Secured Creditors against the Relevant MGI Obligors; and (v) the date on which the MGI Secured Creditors decide to discontinue all action against each of the Relevant MGI Obligors, provided that the MGI Suspension End Date may occur if one of the circumstances in respect of each of the Relevant MGI Obligors even though these are not the same for each Relevant MGI Obligor.

Settlement Agreement, § 1.1.

[6] Because the Settlement Agreement will not become effective until, among other things, the Fibras Brasil Acquisition closes, this Court approves M&G International's entry into the Settlement Agreement and M&G International makes the Payment (as defined below), the Settlement Agreement contemplates a standstill from the MGI Secured Creditors in favor of the MGI Released Parties (except for M&G Polymers) (the "Standstill Parties"), from the date of the Settlement Agreement through the Suspension End Date (as defined in the Settlement Agreement) (the "Suspension Period").

[7] The following summary is qualified in its entirety by reference to the provisions of the Settlement Agreement. In the event of any inconsistencies between the provisions of the Settlement Agreement and the terms set forth herein, the terms of the Settlement Agreement shall govern. All capitalized terms in the following summary that are not otherwise defined herein shall have the meanings given to such terms in the Settlement Agreement.

(b)   ***Releases***.  Effective on and from the Payment Date:

  (i)   each of the MGI Secured Creditors (in the case of the MGI Bondholder, only to the extent it is able to do so by itself under applicable law and the terms of the MGI Finance Documents) unconditionally and irrevocably:

  (A)   consents to release and releases the MGI Released Assets from all Security Interests created under or evidenced by the MGI Security Documents (including, without limitation, the shares from any pledge created under the MGI Security Documents) and reassigns and retransfers to the MGI Released Parties all right, interest and title of the MGI Secured Creditors in and to the MGI Released Assets;

  (B)   releases each of the MGI Released Parties from all present and future obligations and liabilities (both actual and contingent) under or in connection with the MGI Finance Documents; and

  (ii)  the MGI Security Trustee unconditionally and irrevocably:

  (A)   undertakes as soon as practicably possible to return to each MGI Released Party which has granted a pledge or other Security Interest over its shares in one or more of the MGI Released Parties, all of the certificates representing such shares and which were delivered to it on or about the date of the relevant MGI Security Document; and

  (B)   authorizes and instructs each MGI Released Party (including, without limitation, each MGI Released Party whose shares are the subject of any pledge or other Security Interest created under the MGI Security Documents) and each member of its board of directors or managers to register the release of which pledge or other Security Interest in each relevant register (including, without limitation, its share register, shareholders' ledger or register of members) and on each of the certificate(s) representing such shares (in each case, as applicable).  *See id.* at § 4

(c)   ***Standstill Parties***.  During the Suspension Period (and, in the case of a Trustee, the Suspension Period will start on and including its Accession Date), no MGI Secured Creditor will take (and, where already commenced, it will cease to take) any Enforcement Action against any Standstill Party or, in the case of an MGI Bondholder, issue any instruction to a Trustee to commence an Enforcement Action against a Standstill Party.  *See id.* at § 5.

(d)   ***Standstill – M&G International***.  During the MGI Suspension Period, no MGI Secured Creditor will take (and, where already commenced, it will cease to take) any MGI Enforcement Action against M&G International or, in the case of the MGI Bondholder, issue any instruction to the MGI Bond Trustee or the MGI

        Security Trustee to commence an MGI Enforcement Action against M&G International.  *See id.* at § 6.

(e)     *Release – M&G International*.  On the MGI Suspension End Date, each of the MGI Secured Creditors will release M&G International from all present and future obligations and liabilities (both actual and contingent) under or in connection with the MGI Finance Documents.  *See id.* at § 7.

(f)     *Continuation*.

    (i)     Except as provided in Clauses 4 (*Release – General*) and 7 (*Release – M&G International*) of the Settlement Agreement (as reflected in subsection (b) and (e) above, respectively), the MGI Finance Documents remain in full force and effect.

    (ii)     Nothing contained the Settlement Agreement will be construed as a release, waiver or amendment of any provision of any MGI Finance Document other than as expressly provided in Clauses 4 (*Release – General*) and 7 (*Release – M&G International*) of the Settlement Agreement (as reflected in subsection (b) and (e) above, respectively).

    (iii)     Subject to subsection (iv) below, the Settlement Agreement and its provisions do not waive any potential rights of the MGI Secured Creditors to take legal action against the directors, officer, and statutory auditors of M&G Finanziaria and its subsidiaries as to, among others, the compensation for damages which the MGI Secured Creditors may allege they have suffered as a consequence of the directors, officers and statutory auditors of M&G Finanziaria and its subsidiaries' alleged behaviors in relation to all facts occurred so far, including facts and agreements mentioned in the Settlement Agreement ("Legal Action").  In particular, subject as set out below in subsection (iv), the Settlement Agreement does not govern any potential rights of the MGI Secured Creditors vis-à-vis the directors, officers and statutory auditors of M&G Finanziaria and its subsidiaries and under no circumstances the directors, officers and statutory auditors of M&G Finanziaria and its subsidiaries can invoke or use the Settlement Agreement in the context of a Legal Action.

    (iv)     On the later of the Payment Date and the date on which the MGC Secured Creditors receive an amount equal to at least $3 million from M&G Finanziaria in compliance with the MGC Bonds Settlement Agreement, each of the MGI Secured Creditors waives any rights or potential rights to take Legal Action (including, but not limited to, rights vis-à-vis the directors, officers and statutory auditors of M&G Finanziaria and its Subsidiaries).  *See id.* at § 8.

(g) *Conditions Precedent and the Effective Date*.

    (i) Clauses 1 (*Definitions and Interpretations*), 2 (*Conditions Precedent*), 5 (*Standstill Parties*), 10 (*Termination*) and 12 (*Contracts (Rights of Third Parties) Act*) to 14 (*Governing Law*) (inclusive) of the Settlement Agreement shall take effect from the date thereof, provided that, as at such date each of the Parties has executed and delivered the Settlement Agreement and provided further that the Settlement Agreement shall not be binding on M&G International prior to approval of this Court.

    (ii) Except to the extent set forth in subsection (i) above, the remaining clauses of the Settlement Agreement shall only become effective on the date (the "Effective Date") on which the MGI Bondholder confirms in writing (including by way of e-mail) that the following conditions precedent (subsections (A) through (C) below, the "Conditions Precedent") have been satisfied to the satisfaction of the MGI Bondholder (acting reasonably):

        (A) the accession to the Settlement Agreement by each Trustee in accordance with Clause 11 (*Accession of the Trustees*) by no later than the Long-stop Date;

        (B) the occurrence of the Fibras Brasil Acquisition Completion Date by no later than the Long-stop Date; and

        (C) approval of the Settlement Agreement by this Court by no later than the date falling one business day before the Long-stop Date.

*See id.* at § 2.

## RELIEF REQUESTED

9.     The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, in substantially the form of the Proposed Order, approving M&G International's entry into the Settlement Agreement.

## BASIS FOR RELIEF

10.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983). Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

11. Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

12. When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "Martin Factors"):

    (a)    the probability of success in litigation;

    (b)    the likely difficulties of collection;

    (c)    the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

    (d)    the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

13.  While bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

14. As set forth in greater detail below, the weight of the Martin Factors favors approval of the Settlement Agreement. Among other things, upon the closing of the Fibras Brasil Acquisition, the Settlement Agreement will result in (a) the full release of in excess of $72 million in claims that the MGI Bondholder has against M&G International, as issuer (and M&G Polymers, as a guarantor) in exchange for the Payment (*i.e.*, $8 million) and (b) M&G International's estate receiving and retaining approximately $7.5 million that it would not otherwise have received absent the closing of the Fibras Brasil Acquisition. For these reasons, M&G International believes that its entry into the Settlement Agreement is a valid exercise of its business judgment. As such, the Debtors respectfully submit that the Settlement Agreement falls well above the lowest point in the range of reasonableness and should be approved by this Court.

15. *Probability of Success*. Absent M&G International's entry into the Settlement Agreement, M&G International and M&G Polymers likely would litigate a variety of issues concerning the MGI Bonds, including the guarantee by M&G Polymers. The outcome of any such litigation is uncertain and could result in adverse rulings with respect to M&G International and M&G Polymers. Most importantly, litigating such claims would not result in the consent of the MGI Bondholder to the Fibras Brasil Acquisition and would thus deprive M&G International of recovering the MGI International Received Amount, which will be used to make the Payment and increase recoveries for M&G International's other creditors. Because the Settlement Agreement settles disputes concerning the MGI Bonds without the need for litigation while also securing the required consent of the MGI Bondholder to the Fibras Brasil Acquisition, this factor favors approval of the Settlement Agreement.

16. *Difficulties of Collection*. While the Settlement Agreement does not call for the MGI Bondholder to make any payment to M&G International, to the extent this factor is

applicable, M&G International submits that it is satisfied because the Settlement Agreement permits M&G International to collect on its outstanding receivable owing from Fibras Brasil to it, which it does not believe would be possible absent the Settlement Agreement and the consent of the MGI Bondholder to the Fibras Brasil Acquisition.  Among other things, M&G International understands that Fibras Brasil lacks the funds with which to pay intercompany debts that it owes M&G International absent the Fibras Brasil Acquisition.  The Settlement Agreement thus facilitates the payment of these intercompany debts to M&G International for the benefit of its creditors.  This factor weighs in favor of approval of the Settlement Agreement.

17. *Complexity of Litigation.*  The Settlement Agreement resolves potential litigation relating to both the MGI Bonds and the intercompany receivable owing from Fibras Brasil to M&G International.  With respect to the former, disputes regarding the MGI Bonds would involve application of English law and U.S. bankruptcy law and the potential for claims and cross-claims between the other guarantors of the MGI Bonds, which include an Italian non-debtor entity (*i.e.*, M&G Finanziaria) and two Mexican non-debtor entities (*i.e.*, M&G Mexico Holding S.A. de C.V. and M&G Polimeros Mexico S.A. de C.V.).  With respect to the latter, collecting the intercompany receivable owing from Fibras Brasil to M&G International would involve pursuing claims against a Brazilian company, with a highly uncertain outcome as to whether any funds would be available to collect.  This factor weighs in favor of approval of the Settlement Agreement.

18. *Paramount Interests of Creditors.*  Finally, the Settlement Agreement is in the paramount interest of M&G International's and M&G Polymers' creditors.  With respect to M&G International, the Settlement Agreement (a) resolves, and obtains a full release with

respect to at least $72.5 million in claims that the MGI Bondholder has against M&G International, as issuer and M&G Polymers, as a guarantor, in exchange for the Payment (*i.e.*, $8 million) and (b) results in M&G International's estate receiving and retaining a net amount of approximately $7.5 million that it would not otherwise have received absent the MGI Bondholder's consent to the Fibras Brasil Acquisition. The Settlement Agreement also furthers M&G International's goal of reaching agreements with its Luxembourg creditors in order to avoid the commencement of a Luxembourg insolvency proceeding by reaching resolution with one of its largest creditors and bringing additional money (*i.e.*, the M&G International Received Amount) into its estate for the benefit of its creditors. With respect to M&G Polymers, the Settlement Agreement provides a release of its obligations as a guarantor of the MGI Bonds at no cost. Accordingly, the Settlement Agreement is in the paramount interests of both Debtors' creditors.

19. For these reasons, M&G International's entry into the Settlement Agreement is a sound exercise of M&G International's business judgment, is in best interests of its creditors and its estates and falls well above the lowest point in the range of reasonableness. Accordingly, the Debtors respectfully request that the Court approve and authorize M&G International to enter into the Settlement Agreement.

## NOTICE

20. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (c) DAK and its counsel, Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP; (d) Banco

Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa,Control Empresarial de Capitales, S.A. de C.V. and their counsel, Cleary Gottlieb Steen & Hamilton LLP and Young Conaway Stargatt & Taylor, LLP; (e) Macquarie Investments US Inc. and its counsel, Sidley Austin LLP and Ashby & Geddes, P.A.; (f) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C.; (g) Corpus Christi Polymers, LLC and its counsel, Weil, Gotshal & Manges LLP, Lowenstein Sandler LLP and Duane Morris; (h) all persons and entities that have filed a request for service of filings in these Cases pursuant to Bankruptcy Rule 2002 at the time of noticing; (i) the MGI Bondholder and its counsel, Linklaters LLP and Pepper Hamilton LLP; (j) the Trustees and their counsel, Dentons LLP; and (k) M&G Investments. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

21.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: August 23, 2018

PACHULSKI STANG ZIEHL & JONES LLP

 /s/ Joseph M. Mulvihill
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:	(302) 652-4100
Facsimile:	(302) 652-4400
Email:	ljones@pszjlaw.com
	joneill@pszjlaw.com
	jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:	(212) 326-3939
Facsimile:	(212) 755-7306
Email:	sgreenberg@jonesday.com
	scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:	(216) 586-7035
Facsimile:	(216) 579-0212
Email:	ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession