# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17- 12307 (BLS) |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION BETWEEN DEBTORS AND CREDITORS' COMMITTEE REGARDING SETTLEMENT AND AGREEMENT WITH RESPECT TO MOTION TO DISMISS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby move the Court (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached

hereto as Exhibit A (the "Proposed Order"),[2] approving the *Stipulation Between the Debtors and*

*the Creditors Committee Regarding Settlement and Agreement with Respect to Motion to*

*Dismiss* (the "Stipulation")[3] between (i) Debtors Mossi & Ghisolfi International S.à r.l. ("MGI"),

M&G Chemicals S.A. ("M&G Chemicals") and M&G Capital S.à r.l. ("M&G Capital" and,

collectively with MGI and M&G Chemicals, the "Luxembourg Debtors"), (ii) the official

committee of unsecured creditors appointed in the above captioned chapter 11 cases

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2]     A copy of the Proposed Order was filed with the Court on August 20, 2018 as Exhibit 1 to the *Notice of Filing of (I) Revised Proposed Form of Order Regarding Luxembourg Debtors' Motion to Dismiss and (II) Proposed Order Granting Stipulation Regarding Related Resolution with Bancomext* (Docket No. 1777) (the "Stipulation Notice").

[3]     A copy of the Stipulation is attached to the Proposed Order as Exhibit 1.  A copy of the Stipulation was also filed with the Court on August 20, 2018 as Exhibit A to Exhibit 1 of the Stipulation Notice.

(the "Committee") and (iii) the remaining nine Debtors other than the Luxembourg Debtors (the "U.S. Debtors" and together with the Committee and the Luxembourg Debtors, the "Parties").  In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Almost four months have passed since the Court entered its orders approving the sale of the Corpus Christi assets and the related stipulation among the Debtors, the Committee and the purchaser and its constituent entities, including the Bid Support Term Sheet attached as Annex A thereto (the "Bid Support Term Sheet").  By this point, the Debtors and the Committee hoped to have confirmed a liquidating chapter 11 plan for the Debtors' estates.  For the reasons described below, that has not yet come to pass.  Nevertheless, after several months of hard-fought negotiations and often-contentious litigation over the Luxembourg Debtors' motion to dismiss their chapter 11 cases (Docket No. 1537) (the "Motion to Dismiss"), the Debtors and the Committee have reached a resolution of the Motion to Dismiss that they believe will provide a path toward the prompt confirmation of a liquidating plan supported by both parties. The purpose of this motion is to obtain the Court's approval of that resolution.[4]

2.      Following the sale, and in accordance with the Bid Support Term Sheet, the Debtors and the Committee engaged in good faith negotiations regarding the terms of a plan that

---

[4]      The Debtors and the Committee originally intended to submit this resolution of the Motion to Dismiss to the Court for approval under certification of counsel because all objections to the Motion to Dismiss have been resolved.  To that end, the Debtors communicated their intended approach to the office of the United States Trustee and, on August 20, 2018, filed a notice of revised proposed form of order with respect to the Motion to Dismiss (Docket No. 1777) (the "Revised Proposed Order") that incorporated and approved the terms of the Stipulation.

Since the filing of the Revised Proposed Order, NN Investment Partners B.V., NN Insurance Belgium N.V. and Delta Lloyd Levensverzekering N.V. (collectively, "Delta Lloyd") – a party that did not object to the Motion to Dismiss – filed an objection (Docket No. 1787) on procedural grounds to submission of the Revised Proposed Order on certification of counsel.  The Debtors dispute Delta Lloyd's position and, with the support of the Committee, will strongly resist any efforts by any party to relitigate the merits of the Motion to Dismiss through this Motion.  Instead of engaging in further litigation over procedural matters, however, the Debtors and the Committee determined that the filing of this Motion is the most effective way to avoid further unnecessary delays in these chapter 11 cases and, as such, in the best interests of the Debtors' estates.

would be mutually acceptable to both parties. Negotiations stalled, however, on the issue of whether the Luxembourg Debtors would be included under any such plan. The Luxembourg Debtors took the position that they could not be included in a plan and should be dismissed from the chapter 11 cases because there is a material risk that parallel insolvency proceedings will be commenced and uncertainty over whether any chapter 11 plan would be enforceable in Luxembourg. The Committee disagreed, arguing that the Luxembourg Debtors should not be dismissed from these chapter 11 cases absent a broader benefit to the Debtors' estates, among other things. Ultimately, the Luxembourg Debtors sought the Court's intervention by filing the Motion to Dismiss, and the Committee subsequently filed its objection (Docket No. 1675) (the "<u>Committee Objection</u>").

3. Following months of discovery, related disputes and negotiations and the commencement of a trial on the merits, the Debtors and the Committee negotiated and ultimately agreed to the settlement memorialized by the Stipulation. The Stipulation allows for the eventual dismissal of the Luxembourg Debtors' chapter 11 cases, subject to certain conditions that directly resolve certain of the Committee's objections to the Motion to Dismiss, including by requiring the Luxembourg Debtors to contribute value to the U.S. Debtors' estates (in the form of $6 million in cash, subject to partial refunding depending on, among other things, the extent to which the Luxembourg Debtors facilitate the reduction of approximately $800 million in nondebtor intercompany claims against the U.S. Debtors' estates) for the benefit of the U.S. Debtors' creditors. Moreover, the Stipulation—together with a separate settlement with the only other objector to the Motion to Dismiss that is not the subject of this Motion—brings this contentious litigation to a close and paves the way for the U.S. Debtors to file and confirm a chapter 11 plan.

4.     Viewed in this light, there can be no doubt that the Stipulation is in the best interests of the Debtors' creditors and their estates, and further that the Stipulation falls well above the lowest point in the range of reasonableness.  For these reasons, the Stipulation should be approved by the Court.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.     General Background

6.     On October 24, 2017, Debtor M&G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     The Committee was appointed in these Cases on November 13, 2017 (Docket No. 146).  Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

### B.     The Corpus Christi Sale

8.     On December 14, 2017, the Court entered an order establishing, among other things, certain bidding and auction procedures and related deadlines, and authorizing a sale

process for the sale of, among other assets, (i) the Debtors' vertically integrated PTA/PET plant in Corpus Christi, Texas and related equipment (collectively, the "Corpus Christi Plant"); (ii) the Debtors' desalination equipment and boilers situated at or in the vicinity of the Corpus Christi Plant (the "Desalination Assets"); and (iii) certain related intellectual property rights (together with the Desalination Assets and the Corpus Christi Plant, the "Corpus Christi Assets").[5]

9.     Following a robust, months' long marketing process, the Debtors held an auction for the sale of the Corpus Christi Assets on March 19 and 20, 2018. At the conclusion of the auction, the Debtors designated the bid submitted by Corpus Christi Polymers, LLC ("CCP") as the winning bidder of the Corpus Christi Assets, with an estimated value in excess of $1 billion. On March 29, 2018, this Court entered an order authorizing the sale of the Corpus Christi Assets to CCP (the "Sale") pursuant to the terms of that certain *Asset Purchase Agreement*, among M & G Resins USA, LLC, M&G Polymers, M&G Waters USA, LLC, M & G USA Corporation, Chemtex International Inc., MGI and CCP, dated March 28, 2018 (the "CCP APA").[6]

10.     At the same time that they were negotiating the Sale, the Debtors were also negotiating a resolution of the Committee's objection to the Sale. Ultimately, the Debtors entered into the Bid Support Term Sheet with, among other parties, the Committee and CCP, which, in relevant part, (i) resolved the Committee's objection to the Sale; and (ii) resulted in CCP agreeing to fund $50 million into an escrow (the "GUC Pool") simultaneously with the closing of the Sale to be used solely to (a) make distributions to allowed general unsecured

---

[5]     *See Order (I) (A) Approving Bidding Procedures For the Sale Of Certain of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption And Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* (Docket No. 490).

[6]     *See Order (I) Approving the Sale of Certain Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; and (III) Granting Related Relief* (Docket No. 1300) (the "Sale Order").

claims pursuant to a chapter 11 plan of liquidation, (b) pay certain priority unsecured and administrative claims and (c) fund and administer a Litigation Trust (as defined in the Bid Support Term Sheet). The Bid Support Term Sheet further provides that the Debtors and the Committee will work in good faith to agree upon the terms of an Acceptable Chapter 11 Plan (as defined in the Bid Support Term Sheet). The Bid Support Term Sheet was approved by the Court pursuant to a stipulation submitted by the parties on March 29, 2018. *See* Docket No. 1299-1.

### C. The Brazil Fiber Sale

11. MGI understands that its non-debtor affiliates M&G Fibras Participações Ltda. and M&G Fibras Holding S.A. (the "Fibras Sellers") intend to sell all of their shares in each of Fibras e Resinas and M&G Fibras Brasil S.A. ("Fibras Brasil") to Indorama Ventures Public Company Limited (or one of its affiliates) (the "Fibras Purchaser" and such sale, the "Brazil Fiber Sale") in accordance with a non-binding offer (the "Offer Letter") submitted to the Fibras Sellers by the Fibras Purchaser on April 16, 2018. In relevant part, under the Offer Letter, the Fibras Purchaser has proposed to allocate BRL 61,133,000 of the BRL 100,000,000 total Brazil Fiber Sale purchase price towards discharging all of the existing intercompany debt that Fibras Brasil owes MGI. Utilizing the foreign exchange rate of BRL to USD as of May 2018, and assuming that no adjustments to the purchase price are made at the closing of the Brazil Fiber Sale, MGI understands that it will receive approximately $15,707,000 as the result of such sale. As further detailed below, the Stipulation contemplates that, in the event that the Brazil Fiber Sale does not close, MGI will be entitled to a refund of up to $2 million of the $6 million that it proposes to pay to the U.S. Debtors under the Stipulation.

### D. The Mexican Intercompany Claims

12.     Prior to the bar date established by the Court in these Cases for filing claims that arose or were deemed to have arisen before the Polymers Petition Date or the Petition Date (as applicable),[7] the Debtors' non-debtor Mexican affiliates M&Ghisolfi de Mexico, S.A. de C.V., M & G Mexico Holding, S.A. de C.V., M&G Polimeros Mexico, S.A. de C.V. and Servicos Tamaulipas S.A. de C.V. (the "Mexican Subsidiaries") filed a number claims against the Debtors' estates in the aggregate liquidated amount of $800,048,527.39 (the "Mexican Intercompany Claims").  The Mexican Intercompany Claims largely relate to intercompany debts that the Debtors owe the Mexican Subsidiaries.  As further detailed below, the Stipulation contemplates that MGI will be entitled to a refund of up to $3 million (of the $6 million proposed to be paid by it to the U.S. Debtors) based on the extent of the reduction of the Mexican Intercompany Claims, subject to Court approval.

### E. The Motion to Dismiss Litigation

13.     On June 5, 2018, the Luxembourg Debtors filed the Motion to Dismiss, seeking, among other things, the dismissal of the Luxembourg Debtors' Cases (the "Luxembourg Cases").  On July 13, 2018, the Committee filed the Committee Objection.  By the Committee Objection, the Committee argued, among other things, that (i) dismissal of the Luxembourg Cases would contravene the terms of the Bid Support Term Sheet, (ii) the Luxembourg Debtors failed to demonstrate that dismissal would benefit all creditors, including the U.S. Debtors' creditors and (iii) the Luxembourg Debtors did not satisfy their burden of proof with respect to showing cause under section 1112 of the Bankruptcy Code.[8]

---

[7]     *See Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* (Docket No. 1053).

[8]     For the avoidance of doubt, the Debtors dispute each of the arguments raised by the Committee and any other party in connection with the Motion to Dismiss, and in the event that this Stipulation is not approved,

14.     The Court held a hearing on the Motion to Dismiss on July 18 and 19, 2018, which was thereafter continued to August 2, 2018.  At first day of the hearing, the Court heard witness testimony concerning, among other things:  (a) the decision of the Luxembourg Debtors to file the Luxembourg Cases and remain in these Cases until the filing of the Motion to Dismiss; and (b) issues of Luxembourg law, including comity, whether, and when, the Luxembourg Debtors were required to file insolvency proceedings in Luxembourg as a matter of Luxembourg law and the potential for cross jurisdictional disputes in the event that parallel insolvency proceedings were commenced in Luxembourg.  On the following day, and prior to the conclusion of witness testimony, the Debtors and the Committee announced a settlement in principle that resolved the Committee Objection.  Following the announcement of the settlement in principle on July 19, the Committee filed a notice (Docket No. 1706) which attached the *Settlement Term Sheet* as Exhibit 1 thereto (the "Term Sheet"), and which forms the basis of the Stipulation.[9]  The Debtors subsequently filed the Stipulation with the Court on August 20, 2018.[10]

### F.     The Stipulation

15.     Absent the Debtors' entry into the Stipulation, the Debtors and the Committee would be forced to continue contentious, complex and protracted litigation concerning the

---

all of the rights and defenses of the Debtors and the Committee with respect to the Motion to Dismiss and the Committee Objection remain expressly reserved.

[9]     In addition to the Committee Objection, Banco Nacional de Comercio Exterior, S.N.C. Institución de Banca de Desarrollo ("Bancomext") filed an objection to the Motion to Dismiss (Docket No. 1673) (the "Bancomext Objection").  Although the Stipulation does not resolve the Bancomext Objection, the Debtors, the Committee and Bancomext have reached a separate settlement (the "Bancomext Settlement") resolving the Bancomext Objection, together with Bancomext's appeal of the Sale Order and a related adversary proceeding filed by Bancomext against certain of the Debtors.  On August 2, 2018, the Debtors filed a copy of the term sheet for the Bancomext Settlement (*see* Docket No. 1738, Ex. 1), and on August 20, 2018, the Debtors filed a copy of the related stipulation and order (*see* Docket No. 1777, Ex. 2), which the Debtors intend to submit to the Court for entry upon approval of Bancomext's credit committee.

[10]     *See* Stipulation Notice, Ex. A to Ex. 1.

dismissal of the Luxembourg Cases.  Instead, the Stipulation (i) resolves that litigation,

(ii) provides for a mutual release of claims between the Luxembourg Debtors and

the U.S. Debtors (subject to the exceptions contained in the Stipulation) and (iii) results in the

consensual dismissal of the Luxembourg Cases, subject to Court approval, effective

(the "Dismissal Effective Date") on the earlier of (i) the occurrence of the effective date

(the "Plan Effective Date") of a chapter 11 plan of liquidation for the U.S. Debtors consistent

with the Bid Support Term Sheet (a "U.S. Plan") and (ii) the date upon which a final and

non-appealable order is entered approving a resolution of the Mexican Intercompany Claims.

In exchange, MGI has agreed to make payments to the U.S. Debtors in the total aggregate

amount of $6 million, subject to potential refund, in whole or in part, upon the occurrence of

certain events described below, including a refund of up to $3 million based upon the extent of

any reduction of the Mexican Intercompany Claims.

16.     Pursuant to the Stipulation, the Committee has also agreed to support, subject to

certain consent rights and other conditions:  (i) a settlement of the Mexican Intercompany

Claims; (ii) a settlement of claims of Och-Ziff Capital Management Group LLP and its affiliates

(collectively, "Och-Ziff") against the Luxembourg Debtors; (iii) the Luxembourg Debtors'

satisfaction of up to $300,000 in prepetition claims asserted by creditors in Luxembourg against

their estates; (iv) the Luxembourg Debtors' retention of their cash in Luxembourg; and (v) the

Committee's support for extension of the Debtors' exclusive period to file a chapter 11 plan and

solicit acceptances thereon.  Most importantly, the Stipulation resolves disputes with the

Committee concerning the inclusion of the Luxembourg Debtors in any Acceptable Chapter 11

Plan (as defined in the Bid Support Term Sheet) and the Committee's contention that the

Luxembourg Debtors should contribute toward the administrative cost of maintaining the

Debtors' Cases and paves the way for the filing of a U.S. Plan in the coming weeks.

17.     The principal terms of Stipulation are as follows:[11]

(a)     ***Dismissal of the Luxembourg Cases***.  The Committee shall support dismissal of the Luxembourg Cases consistent with the terms of the Stipulation.  Dismissal of the Luxembourg Cases shall be effective as of the Dismissal Effective Date.

(b)     ***MGI Payments***.  MGI shall make the following payments (together, the "MGI Payments"):  (i) $4 million (the "First Installment Payment") within five business days following entry of the Approval Order; and (ii) a further $2 million (the "Second Installment Payment") within 21 calendar days following entry of the Approval Order.  The MGI Payments shall be (i) deposited into an escrow account (the "Escrow Account") with an escrow agent approved by the Committee (the "Escrow Agent") and subject to an escrow agreement in the form and substance reasonably acceptable to the Committee (the "Escrow Agreement"); and (ii) upon the Plan Effective Date or as soon thereafter as the Approval Order is in full force and effect and is unstayed, transferred to the GUC Pool to be used only in accordance with the U.S. Plan for the benefit of creditors of the U.S. Debtors.  *Id.* at ¶ 3.

(c)     ***Successful Appeal of the Approval Order***.  In the event of a successful appeal of the Approval Order on a final and non-appealable basis or the termination of the CCP APA (either such occurrence, a "Termination Event"):  (i) the MGI Payments, if and to the extent paid, shall be returned to MGI within five business days following the occurrence of such Termination Event; (ii) the Stipulation and the Term Sheet shall be null and void; and (iii) all rights of the Parties shall be restored to the *status quo ante*.  The Escrow Agreement, the U.S. Plan and any documents establishing the Litigation Trust shall provide for the return to MGI of any MGI Payments held in the Escrow Account or the GUC Pool, as applicable, within five business days of the occurrence of a Termination Event. The U.S. Plan shall further require the GUC Pool or Litigation Trust (as applicable) to maintain reserves sufficient to repay all MGI Payments transferred to the GUC Pool for so long as any appeal of the Approval Order remains pending.  *Id.* at ¶ 4.

(d)     ***The Brazil Fiber Sale***.  MGI shall be entitled to receive a refund of the full amount of the Second Installment Payment (to the extent such Second Installment Payment has not been repaid or reduced pursuant to paragraph 4 or 6 of the Stipulation (reflected as subparagraphs (c) and (e) herein, respectively)) if the Brazil Fiber Sale becomes incapable of closing (a "Brazil Fiber Sale

---

[11]     The following summary is qualified in its entirety by reference to the provisions of the Stipulation. In the event of any inconsistencies between the provisions of the Stipulation and the terms set forth herein, the terms of the Stipulation shall govern.

Termination"). Upon the Luxembourg Debtors' notification to the U.S. Debtors and the Committee or the Litigation Trust, as applicable, of the occurrence of a Brazil Fiber Sale Termination, the full amount of the Second Installment Payment shall, within five business days of such date, be refunded to MGI from the Escrow Account or the GUC Pool, as applicable, and the Escrow Agreement, U.S. Plan, and any documents establishing the Litigation Trust shall provide for such refund. *Id.* at ¶ 5.

(e) ***Resolution of Mexican Intercompany Claims***. Without prejudice to MGI's rights under the paragraphs 4 and 5 of the Stipulations (reflected as subparagraphs (c) and (d) herein, respectively), MGI shall be entitled to receive (to the extent such MGI Payments have not been repaid or reduced pursuant to paragraphs 4 or 5) up to $3 million in reduction or refund of the MGI Payments in connection with a resolution of the Mexican Intercompany Claims (a "Mexican Claim Settlement") if, within 90 days of the Court's entry of the Approval Order, the Court enters one or more orders (collectively, the "Mexican Claim Settlement Orders") reducing the Mexican Intercompany Claims as follows:

   (i) $1,500,000 of the Second Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $300,000,000, in the aggregate;

   (ii) a further $500,000 of the Second Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $400,000,000, in the aggregate;

   (iii) $500,000 of the First Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $500,000,000; and

   (iv) a further $500,000 of the First Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $600,000,000.

   If and to the extent MGI becomes entitled to a refund of the MGI Payments on account of a Mexican Claim Settlement, the applicable amount shall, within five business days of such date, be refunded to MGI from the Escrow Account or the GUC Pool, as applicable, and the Escrow Agreement, the U.S. Plan, and any documents establishing the Litigation Trust shall provide for such refund. *Id.* at ¶ 6.

(f) ***Committee Support of Mexican Settlement***. The Committee shall support approval of the Mexican Claim Settlement; *provided*, that any Mexican Claim Settlement that does not provide for the complete disallowance and expungement of the Mexican Intercompany Claims shall be in form and substance reasonably acceptable to the Committee; *provided* further that the Committee shall not object to the proposed allowed amount of the Mexican Intercompany Claims if the

Mexican Claim Settlement provides for a reduction by at least $600,000,000 in the aggregate amount of such claims (*i.e.*, allowed claims in the aggregate amount of no more than $198,316,711.89). The Committee agrees that such cancellation or reduction may include the offset of claims and/or the transfer of equity interests in the Mexican Subsidiaries held by the U.S. Debtors, which equity interests the Debtors believe in good faith do not have material value, to a creditor trust established by the Mexican Subsidiaries for the benefit of their creditors, for no additional consideration. *Id.* at ¶ 7.

(g) ***Committee Support of Och-Ziff Settlement***. The Committee shall support approval of any settlement of claims of Och-Ziff against the Luxembourg Debtors and their affiliates provided that such settlement provides for the release of all of Och-Ziff's claims against the U.S. Debtors and otherwise does not adversely impact any of the U.S. Debtors in any material respect. *Id.* at ¶ 8.[12]

(h) ***Committee Support of Luxembourg Debtors' Prepetition Claim Payment Motion***. The Committee will support approval of the Luxembourg Debtors' expenditure of up to $300,000 in cash, in the aggregate, to satisfy claims of the Luxembourg Debtors' prepetition creditors pursuant to a motion and order in form and substance reasonably acceptable to the Committee.[13] *Id.* at ¶ 9.

(i) ***Luxembourg Debtors' Retention of Cash in Luxembourg***. The Committee will support approval of the relief requested in the *Debtors' Motion for Entry of an Order (I) Waiving the Requirements of Section 345(b) of the Bankruptcy Code with Respect to Foreign Bank Accounts and (II) Granting Related Relief* (Docket No. 1539) (the "Section 345 Motion") and will otherwise support the Luxembourg Debtors' authority to retain their cash in Luxembourg. *Id.* at ¶ 10.

(j) ***Causes of Action***. Conditional upon receipt into the Escrow Account of the full amount of the First Installment Payment, the Committee shall not (unless a Termination Event occurs) assert or attempt to assert any cause of action that is property of the estate of any Luxembourg Debtor (collectively, the "Causes of Action"). The Causes of Action shall remain property of the respective Luxembourg Debtors' estates pending dismissal of the Luxembourg Cases and thereupon shall revert to the applicable Luxembourg Debtors together with all other property of their estates. *Id.* at ¶ 11.

(k) ***Mutual Releases***. Effective as of the later of the Plan Effective Date and the date upon which all MGI Payments have been deposited into the Escrow Account (subject to reduction or refunding pursuant to paragraphs 5 and 6 of the

---

[12] On August 23, 2018, the Debtors filed their *Motion for Entry of an Order Approving Deed of Settlement between M&G Capital Investments S.à r.l., Mossi & Ghisolfi International S.à r.l. and Sculptor Investments IV S.à r.l.* (Docket No. 1785) (the "Och-Ziff Settlement Motion").

[13] On August 16, 2018, the Luxembourg Debtors filed their *Motion for Entry of an Order Authorizing Payment of Certain Prepetition Claims of Foreign Creditors* (Docket No. 1766) (the "Luxembourg Prepayment Motion"), which is in a form acceptable to the Committee.

Stipulation (reflected as subparagraphs (d) and (e) herein, respectively)), in consideration for the obligations under the Stipulation, to the fullest extent permitted by law: (i) each of the U.S. Debtors, on behalf of itself, its estate and its successors, assigns and any and all entities who may purport to claim by, through, for or because of it, shall forever release, waive and discharge all claims (as defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that such U.S. Debtor may have against any of the Luxembourg Debtors (and their successors and any person retained in the Cases pursuant to section 327, 363, or 1103 of the Bankruptcy Code), whether disputed or undisputed, at law or in equity or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal or other law; and (ii) each of the Luxembourg Debtors, on behalf of itself, its estate and its successors, assigns and any and all entities who may purport to claim by, through, for or because of it, shall forever release, waive and discharge all claims (as defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that such Luxembourg Debtor may have against any of the U.S. Debtors (and their successors and any person retained in the Chapter 11 Cases pursuant to section 327, 363, or 1103 of the Bankruptcy Code), whether disputed or undisputed, at law or in equity or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal or other law. For the avoidance of doubt, nothing in the foregoing shall (or shall be deemed to) release, waive, impair or otherwise affect any right or recourse the U.S. Debtors may have to proceeds, reimbursement, or similar recoveries under any insurance policy of any of the parties or their affiliates. *Id.* at ¶ 12.

(l) ***Allocation of Costs***.  The Luxembourg Debtors shall be solely responsible for the fees and expenses of their professionals incurred in connection with the Motion to Dismiss and any future requests for relief solely benefitting one or more of the Luxembourg Debtors.  The fees and expenses incurred by professionals in connection with future requests for relief directly benefitting both the Luxembourg Debtors and the U.S. Debtors shall be allocated between the estates of the Luxembourg Debtors, on the one hand, and the U.S. Debtors, on the other hand:  (i) based upon the relative face amounts of the claims being resolved by such request for relief; (ii) if no claims are being resolved by such request for relief, by agreement among the Luxembourg Debtors, the U.S. Debtors and the Committee; or (iii) by order of the Bankruptcy Court.  Subject to the effectiveness of the releases provided for in paragraph 12 of the Stipulation (reflected as subparagraph (k) herein), none of the Luxembourg Debtors shall be liable for the fees and expenses of the Committee, the Litigation Trust or their respective professionals, which shall continue to be paid by the U.S. Debtors or the Litigation Trust. *Id.* at ¶ 13.

(m) ***The U.S. Plan***.  The U.S. Debtors shall file the U.S. Plan within five business days of the entry of the Approval Order or such later date as may reasonably be agreed upon by the Committee.  The Parties shall work together in good faith to obtain confirmation of the U.S. Plan as soon as reasonably practicable thereafter.  The Committee shall support extensions:  (i) through and including August 20, 2018 of the period during which the Debtors have the exclusive right to file a chapter 11 plan; and (ii) through and including October 19, 2018 of the period during which the Debtors have the exclusive right to solicit acceptances thereof (together, the "Exclusive Periods").  Any further extensions of the Exclusive Period shall be solely with the Committee's consent, which consent shall not be unreasonably withheld.[14]  No creditor of any Luxembourg Debtor shall be entitled to any recovery under the U.S. Plan on account of such creditor's claim against such Luxembourg Debtor.  Subject to entry of the Approval Order, the Committee agrees not to take the position that the U.S. Plan is not an Acceptable Chapter 11 Plan within the meaning of the Bid Support Term Sheet on the basis that the Luxembourg Debtors are not included in the U.S. Plan.  Upon entry of the Approval Order, the Committee shall neither (i) file a chapter 11 plan with respect to the Luxembourg Debtors nor (ii) seek to include the Luxembourg Debtors in the U.S. Plan, notwithstanding any expiration of the Exclusive Periods.  *Id.* at ¶¶ 14-15.

(n) ***Further Cooperation***.  The Luxembourg Debtors will cooperate prior to and after dismissal of the Luxembourg Cases with the Committee and the Litigation Trust pursuant to the terms of an agreement with the U.S. Debtors and/or the Litigation Trust to provide services, personnel and information at cost to the U.S. Debtors or the Litigation Trust and facilitate the transactions contemplated by the U.S. Plan.  The U.S. Debtors or the Litigation Trust, as applicable, shall be liable for all costs arising from the provision of such services, personnel and information.  *Id.* at ¶ 16.

## RELIEF REQUESTED

18.     The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and

sections 105 and 363 of the Bankruptcy Code, in substantially the form of the Proposed Order,

approving the Debtors' entry into the Stipulation.

---

[14]     On August 20, 2018, the Debtors filed their *Amended Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* (Docket No. 1776) (the "Second Amended Plan Exclusivity Motion"), seeking to extend the exclusive plan filing period to September 5, 2018 and the exclusive solicitation period to November 4, 2018.  The Committee has consented to the extensions sought in the Second Amended Plan Exclusivity Motion.

**BASIS FOR RELIEF**

19.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement."  Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983).  Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

20.     Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate."  *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996).  "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court."  *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

21.     When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "Martin Factors"):

(a)     the probability of success in litigation;

(b)     the likely difficulties of collection;

(c)     the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(d)     the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

22.     Although bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del.

2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

23.     As set forth in greater detail below, the weight of the Martin Factors favors approval of the Stipulation.  The Stipulation resolves the Committee's objection to the Motion to Dismiss.  Such resolution permits the U.S. Debtors to file a U.S. Plan, which was previously stalled by the Debtors' dispute with the Committee concerning the inclusion of the Luxembourg Debtors in any chapter 11 plan proposed in these Cases.  Further, the Stipulation results in (a) MGI paying the U.S. Debtors an aggregate amount of $6 million for the benefit of the U.S. Debtors' creditors (subject to the reductions described above) and (b) a mutual release of claims between the U.S. Debtors and the Luxembourg Debtors.  Finally, under the Stipulation, the Committee has agreed to support of a number of motions—including the Och-Ziff Settlement Motion, the Luxembourg Prepayment Motion, the Section 345 Motion and the Second Amended Plan Exclusivity Motion—without the prospect of litigation with the Committee.  For these reasons, the Debtors believe that their entry into the Stipulation is a valid exercise of their business judgment and respectfully submit that the Stipulation falls well above the lowest point in the range of reasonableness and should be approved by this Court.

24.     *Probability of Success*.  Absent the Debtors' entry into the Settlement Agreement, there is no guarantee that the Luxembourg Debtors could have obtained approval of the Motion to Dismiss.  As the Court is well aware following two days of witness testimony and numerous pleadings filed in support of, and against, the Motion to Dismiss, the motion was strongly opposed by the Committee and Bancomext, each of whom raised complex jurisdictional issues,

novel legal issues under sections 305 and 1112 of the Bankruptcy Code and intricate issues of Luxembourg law. The Stipulation avoids the continuation of litigation (subject to Court approval of the Stipulation and the Bancomext Settlement) and the further depletion of estate resources prosecuting the Motion to Dismiss, all while conferring a meaningful benefit on the U.S. Debtors' creditors in the form of the MGI Payment and minimizing the possibility of parallel insolvency proceedings for the Luxembourg Debtors in the United States and Luxembourg.

25.     Further, the Stipulation resolves a dispute with the Committee concerning the form of an Acceptable Chapter 11 Plan and will result in the filing of a U.S. Plan in the near term without the inclusion of the Luxembourg Debtors. The filing of such a U.S. Plan would not have been possible absent the agreement of the Committee obtained under the Stipulation.

26.     Finally, pursuant to and in accordance with the Stipulation, the Committee has agreed to support the Och-Ziff Settlement Motion, the Luxembourg Prepayment Motion, the Section 345 Motion and the Second Amended Plan Exclusivity Motion. The elimination of litigation risk with the Committee with respect to these matters increases the probability of their approval and conserves estate resources. In particular, the support of the Second Amended Plan Exclusivity Motion increases the likelihood that the Exclusive Periods will not lapse prior to the filing of, and solicitation on, a U.S. Plan. Accordingly, this factor favors approval of the Stipulation.

27.     *Difficulties of Collection.* The Stipulation results in MGI paying the U.S. Debtors the MGI Payment (*i.e.*, $6 million, subject to the reductions described above) for the benefit of the U.S. Debtors' creditors. Absent entry into the Stipulation, it is unlikely that such payment would have been forthcoming. In the event that the Luxembourg Debtors commence insolvency

proceedings in Luxembourg, the U.S. Debtors believe that they would obtain little to no recovery on account of their intercompany claims in Luxembourg.  The Stipulation avoids the costs of seeking enforcement of the U.S. Debtors' claims in Luxembourg, a factor weighing in favor of approval of the Stipulation.

28.    *Complexity of Litigation*.  The Stipulation resolves contentious litigation concerning the dismissal of the Luxembourg Cases.  This litigation was particularly complex, given that it raised novel issues of law under sections 305 and 1112 of the Bankruptcy Code and required application of, and an understanding of, Luxembourg law.  Indeed, among the issues raised in the prosecution of the Motion to Dismiss were (a) the proper forum of any insolvency proceeding for the Luxembourg Debtors, (b) whether a Luxembourg court would enforce orders of this Court affecting the Luxembourg Debtors and their creditors, and (c) whether the Luxembourg Debtors could forestall the filing an involuntary insolvency proceeding in Luxembourg and the effects of that proceeding moving forward in tandem with these Cases. The Stipulation avoids the continuation of such litigation, conferring a meaningful cost savings to the Debtors' estates.

29.    In addition, the Stipulation resolves a potentially contentious, complex and high stakes dispute with the Committee concerning the meaning of an Acceptable Chapter 11 Plan under the Bid Support Term Sheet, and whether such a plan would require the inclusion of the Luxembourg Debtors.  Resolution of that dispute is important, given that the Bid Support Term Sheet resolved the Committee's objection to the Sale, itself which no doubt was a factor in the entry of the Sale Order.  Although the Debtors believe that they would have had meritorious arguments in connection with such a dispute, litigating that dispute to conclusion could have

risked unraveling the Sale and the substantial progress made in these Cases. This factor thus weighs heavily in favor of approval of the Stipulation.

30. *Paramount Interests of Creditors.* Finally, the Stipulation is in the paramount interest of the Debtors' creditors. With respect to the Luxembourg Debtors, the Debtors believe that dismissal of the Luxembourg Cases will provide greater certainty and finality to the Luxembourg Debtors and their creditors, particularly in light of the Luxembourg Debtors' concerns that a Luxembourg court may not enforce a chapter 11 plan approved by this Court. Further, the Stipulation results in the Committee's support for the Luxembourg Prepayment Motion, which, if approved, will provide certain of the Luxembourg Debtors' prepetition creditors with a recovery of $300,000 in the aggregate. Moreover, the Stipulation decreases the likelihood of litigation in connection with the Och-Ziff Settlement Motion, thereby potentially saving the Luxembourg Debtors' estates the cost of obtaining approval of a beneficial settlement. Finally, the Stipulation permits the Luxembourg Debtors to retain their cash in Luxembourg.

31. With respect to the U.S. Debtors, the Stipulation confers a meaningful benefit to the U.S. Debtors' creditors in the form of a $6 million payment that MGI will make solely for their benefit. Moreover, the Stipulation paves the way for the filing of a U.S. Plan and brings these Cases one step closer to ultimate resolution. Finally, the Stipulation contemplates a mutual release of claims between the Luxembourg Debtors and the U.S. Debtors, thereby potentially increasing the recoveries of the U.S. Debtors' creditors pursuant to a U.S. Plan. Accordingly, the Stipulation is in the paramount interests of the Debtors' creditors.

32. For these reasons, the Debtors' entry into the Stipulation is a sound exercise of their business judgment, is in best interests of their creditors and their estates and falls well

above the lowest point in the range of reasonableness. Accordingly, the Debtors respectfully request that the Court approve and authorize their entry into the Stipulation.

## NOTICE

33. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (c) DAK and its counsel, Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP; (d) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa,Control Empresarial de Capitales, S.A. de C.V. and their counsel, Cleary Gottlieb Steen & Hamilton LLP and Young Conaway Stargatt & Taylor, LLP; (e) Macquarie Investments US Inc. and its counsel, Sidley Austin LLP and Ashby & Geddes, P.A.; (f) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C.; (g) Corpus Christi Polymers, LLC and its counsel, Weil, Gotshal & Manges LLP, Lowenstein Sandler LLP and Duane Morris; and (h) all persons and entities that have filed a request for service of filings in these Cases pursuant to Bankruptcy Rule 2002 at the time of noticing. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

34. No prior request for the relief sought herein has been made to this Court or any other court, except for the Stipulation Notice.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: August 24, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:         ljones@pszjlaw.com
               joneill@pszjlaw.com
               jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
Email:         sgreenberg@jonesday.com
               scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:     (216) 586-7035
Facsimile:     (216) 579-0212
Email:         ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession