**EXHIBIT A**

**(PROPOSED ORDER)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | : | |
| Debtors. | : | Case No. 17-12307 (BLS) |
| | : | (Jointly Administered) |
| | : | |
| | : | |

## ORDER (I) APPROVING (A) DISMISSAL OF CHAPTER 11 CASES OF M&G CAPITAL S.À R.L., M&G CHEMICALS S.A. AND MOSSI & GHISOLFI INTERNATIONAL S.À R.L. AND (B) RELATED STIPULATION AMONG DEBTORS AND CREDITORS' COMMITTEE AND (II) GRANTING RELATED RELIEF

This Court has considered (I) the *Motion of Debtors M&G Capital S.à r.l.,*

*M&G Chemicals S.A. and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their*

*Chapter 11 Cases and Granting Related Relief* (Docket No. 1537) (the "Motion to Dismiss");[2]

the *Objection of Bancomext to Motion of Debtors M&G Capital S.à r.l., M&G Chemicals S.A.*

*and Mossi & Ghisolfi International S.à r.l. for an Order Dismissing Their Chapter 11 Cases and*

*Granting Related* (Docket No. 1673) (the "Bancomext Objection") filed by Banco Nacional de

Comercio Exterior, S.N.C. Institución de Banca de Desarrollo ("Bancomext"); the *Objection of*

*the Official Committee of Unsecured Creditors to the Motion to Dismiss the Luxembourg*

*Debtors Chapter 11 Cases* (Docket No. 1675) (the "Committee Objection") filed by the official

committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"); the

*Reply of Debtors M&G Capital S.à r.l., M&G Chemicals S.A. and Mossi & Ghisolfi*

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

*International S.à r.l. for an Order Dismissing their Chapter 11 Cases and Granting Related* (Docket No. 1690); and (II) the *Debtors' Motion for Entry of an Order Approving Stipulation Between Debtors and Creditors' Committee Regarding Settlement and Agreement With Respect to Motion to Dismiss* (the "9019 Motion" and, together with the Motion to Dismiss, the "Motions") and the statements of counsel and the evidence adduced with respect to the Motions at the hearings held before this Court (the "Hearing").  This Court has been advised that: (i) the Debtors and the Committee have resolved the Committee Objection to the Motion to Dismiss pursuant to the terms of the *Stipulation Between Debtors and Creditors' Committee Regarding Settlement and Agreement with Respect to Motion to Dismiss*, a copy of which is attached hereto as Exhibit A (the "Committee Settlement Agreement"); and (ii) Bancomext has agreed to withdraw the Bancomext Objection pursuant to and in accordance with a settlement among the Debtors, the Committee and Bancomext (the "Bancomext Settlement"), the terms of which are described in the Mediation Term Sheet dated August 2, 2018 (Docket No. 1738). This Court has found that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motions and the Hearing was sufficient under the circumstances, (v) cause exists to dismiss the Luxembourg Debtors' chapter 11 cases, (vi) the terms of the Committee Settlement Agreement provide the Luxembourg Debtors with fair value for the obligations they will incur thereunder (which obligations shall not be subject to avoidance under the Bankruptcy Code or any similar provisions of law), (vii) the terms of the Committee Settlement Agreement are fair and reasonable and each Debtor's entry into the Committee Settlement Agreement is a reasonable exercise of such Debtor's business judgment, and (viii) subject to, and in accordance with the

terms of the Committee Settlement, the dismissal of the Luxembourg Debtors' chapter 11 cases is in the best interests of the Luxembourg Debtors' estates and creditors. After due deliberation, this Court has determined that the legal and factual bases set forth in the Motions, the exhibits thereto and at the Hearing establish good and sufficient cause for the relief granted herein;

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.       The 9019 Motion is GRANTED, as set forth herein.

2.       The Committee Settlement Agreement is approved in all respects and binding on the parties thereto, whether or not any provision thereof is restated herein, and the Debtors and the Committee are authorized to enter into the Committee Settlement Agreement and to act in accordance with the terms set forth therein.

3.       The Motion to Dismiss is GRANTED, as set forth herein; the Committee Objection is RESOLVED pursuant to and in accordance with the Committee Settlement Agreement, and the Bancomext Objection is WITHDRAWN pursuant to and in accordance with the Bancomext Settlement.

4.       The chapter 11 cases of M&G Capital S.à r.l. (Case No. 17-12317 (BLS)), M&G Chemicals S.A. (Case No. 17-12316 (BLS)) and Mossi & Ghisolfi International S.à r.l. (Case No. 17-12315 (BLS)) (collectively, the "Luxembourg Cases") are hereby dismissed effective as of the earlier of (a) the date upon which a final and non-appealable order is entered approving a resolution of the Mexican Intercompany Claims (as defined in the Committee Settlement Agreement); and (b) the occurrence of the effective date of the U.S. Debtors' Plan. In each case, such dismissal is without prejudice to the Luxembourg Debtors' rights to file future cases under chapters 7 or 11 of the Bankruptcy Code.

5.       No later than two business days following the effectiveness of dismissal of the Luxembourg Cases, the Luxembourg Debtors shall file a notice of dismissal of the Luxembourg

Debtors' chapter 11 cases (the "Dismissal Notice") on the docket of the above-captioned chapter 11 cases and serve the Dismissal Notice on: (a) the U.S. Trustee; (b) the Committee and its counsel, Milbank, Tweed, Hadley & McCloy LLP; (c) any federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware or order of the Court; (d) Magnate S.á r.l. and its counsel, Kirkland & Ellis LLP; (e) DAK Americas LLC and its counsel, Weil, Gotshal & Manges LLP; (f) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa, the DIP Lender and its counsel, Cleary Gottlieb Steen & Hamilton LLP; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; and (h) all other parties listed on the master service matrix maintained by the claims and noticing agent in these chapter 11 cases.

6. From and after the entry of this Order, and subject to the terms of the Committee Settlement Agreement, the Debtors and any of their respective directors, officers, employees, attorneys, consultants and advisors shall neither have nor incur any liability to any person for any act taken or omitted, or to be taken, in connection with the dismissal of the Luxembourg Debtors' chapter 11 cases including, but not limited to, seeking and effectuating the dismissal of the Luxembourg Debtors' chapter 11 cases, including (but not limited to), the formation, preparation, dissemination, approval, implementation or consummation of the Motion to Dismiss and this Order; provided, however, that the foregoing provision shall not affect the liability of any person that otherwise would result from any such act or omission to the extent that the act or omission is determined in a final order of a court of competent jurisdiction to have constituted willful misconduct, gross negligence or violation of law.

7.       To the extent of any conflict between this Order and the Committee Settlement Agreement, the terms of the Committee Settlement Agreement shall control.

8.       Notwithstanding anything in section 349(b) of the Bankruptcy Code to the contrary, each of:  (a) the Corpus Christi Sale Order; (b) the Brazil Settlement Order; (c) the *Order Approving Settlement Agreement By and Between M&G Finanziaria S.p.A., M&G Polimeri S.p.A., M&G Chemicals S.A., Magnate S.à r.l., Mossi & Ghisolfi S.à r.l. and Chemtex International Inc.* (Docket No. 1593); (d) the *Order Approving Stipulation Regarding Settlement and Agreement with Respect to Sale of Corpus Christi Assets and Related Matters* (Docket No. 1299); and (e) the *Final Order (I) Authorizing Certain Debtors to Incur Postpetition Secured Superpriority Indebtedness Pursuant to Sections 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d); (II) Modifying the Automatic Stay; and (III) Granting Related Relief* (Docket No. 1366) (collectively, the "Prior Orders") shall remain in full force and effect, including as to MGI, and the provisions of such orders shall survive the dismissal of the Luxembourg Debtors' chapter 11 cases.

9.       This Order shall be effective immediately upon its entry.

10.       This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order and the Prior Orders.


Dated: _____               _____
        Wilmington, Delaware                         The Honorable Brendan L. Shannon
                                                     United States Bankruptcy Court Judge

# EXHIBIT A

**EXHIBIT 1**

**STIPULATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**STIPULATION BETWEEN DEBTORS AND**
**CREDITORS' COMMITTEE REGARDING SETTLEMENT**
**AND AGREEMENT WITH RESPECT TO MOTION TO DISMISS**

Mossi & Ghisolfi International S.à r.l. ("MGI"), M&G Chemicals S.A. ("M&G

Chemicals") and M&G Capital S.à r.l. ("M&G Capital" and, collectively with MGI and M&G

Chemicals, the "Luxembourg Debtors"), as three of the 12 debtors (collectively, the "Debtors")

in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), the remaining nine Debtors

other than the Luxembourg Debtors (the "U.S. Debtors") and the official committee of unsecured

creditors appointed in the Chapter 11 Cases (the "Committee" and, together with the

Luxembourg Debtors and the U.S. Debtors, the "Parties"), hereby enter into this stipulation

(this "Stipulation") and agree as follows:

**RECITALS**

A.     WHEREAS, on October 24, 2017 (the "Petition Date"), Debtor M&G Polymers

USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of title 11 of

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

the United States (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

B.      WHEREAS, on October 30, 2017, each of the other Debtors filed voluntary chapter 11 petitions under chapter 11 of the Bankruptcy Code before the Bankruptcy Court;

C.      WHEREAS, the Chapter 11 Cases include case number 17-12315, filed by MGI, case number 17-12316, filed by M&G Chemicals, and case number 17-12317, filed by M&G Capital (collectively, the "Luxembourg Cases");

D.      WHEREAS,  the Chapter 11 Cases other than the Luxembourg Cases are referred to herein as the "U.S. Cases;"

E.      WHEREAS, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure;

F.      WHEREAS, the Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409;

G.      WHEREAS, on March 29, 2018, the Bankruptcy Court entered an order (Docket No. 1299) approving a stipulation and term sheet attached as Annex A thereto (such term sheet, the "Bid Support Term Sheet") among the Debtors and the Committee, among other parties, reflecting the terms of such parties' settlement and agreement with respect to the sale of the Debtors' Corpus Christi plant and related assets to Corpus Christi Polymers LLC (the "Sale"), pursuant to the terms of that certain Asset Purchase Agreement dated as of March 28, 2018 (the "CCP APA");

H.     WHEREAS, the Bid Support Term Sheet contemplates the establishment of an escrow account (the "GUC Pool") simultaneously with the closing of the Sale, the proceeds of which are to be used solely (a) to pay or make distributions on account of certain claims (as more fully described in the Bid Support Term Sheet) and (b) to fund, and for the administration of, the Litigation Trust (as defined therein);

I.     WHEREAS, on April 16, 2018, Indorama Ventures Public Company Limited (the "Fibras Purchaser") submitted to M&G Fibras Participações Ltda. and M&G Fibras Holding S.A. (together, the "Fibras Sellers") a non-binding offer for the sale by the Fibras Sellers to the Fibras Purchaser of the Fibras Sellers' shares in each of M&G Fibras e Resinas Ltda. and M&G Fibras Brasil S.A. (the "Brazil Fiber Sale");

J.     WHEREAS, on June 5, 2018, the Luxembourg Debtors filed a motion (Docket No. 1537) (the "Motion to Dismiss") seeking dismissal of the Luxembourg Cases;

K.     WHEREAS, the Committee filed an objection to the Motion to Dismiss (Docket No. 1675) (the "Committee Objection");

L.     WHEREAS, a hearing on the Motion to Dismiss was held before the Bankruptcy Court on July 18, 2018 and July 19, 2018 and was thereafter continued to August 2, 2018;

M.     WHEREAS, M&Ghisolfi de Mexico, S.A. de C.V., M & G Mexico Holding, S.A. de C.V., M&G Polimeros Mexico, S.A. de C.V. and Servicos Tamaulipas SA de CV. (collectively, the "Mexican Subsidiaries"), each of which is a nondebtor affiliate of the Debtors, filed intercompany claims in the U.S. Cases in the aggregate liquidated amount of $800,414,627.89,[2] as identified on Annex A hereto (collectively, the "Mexican Intercompany Claims");

---

[2]     This amount includes $55,515,900.90 reflected in proof of claim number 832 ("Claim 832"), which shall be treated as Mexican Intercompany Claims regardless of whether Claim 832 (or any rights to recoveries

N.     WHEREAS, after good faith, arm's-length negotiations, the Parties agreed to resolve the Motion to Dismiss and the Committee Objection according to the terms set forth herein (the "Settlement");

O.     WHEREAS, on July 19, 2018, the Committee filed under a notice of service (Docket No. 1706) a Settlement Term Sheet (the "Term Sheet") setting forth the essential terms of the Settlement;

**NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:**

## STIPULATION

1.     <u>Conflict with Term Sheet</u>.  To the extent of any conflict between the terms of the Term Sheet and this Stipulation, this Stipulation shall govern.

2.     <u>Dismissal of the Luxembourg Cases</u>.  The Committee shall support dismissal of the Luxembourg Cases consistent with the terms of this Stipulation.  Dismissal of the Luxembourg Cases shall be effective as of the earlier of:  (a) the date upon which a final and non-appealable order is entered approving a resolution of the Mexican Intercompany Claims; and (b) the occurrence of the effective date (the "Plan Effective Date") of a chapter 11 plan of liquidation for the U.S. Debtors consistent with the Bid Support Term Sheet (a "U.S. Plan").  The Bankruptcy Court's order approving the Debtors' entry into this Stipulation (the "Approval Order") shall include findings that the Luxembourg Debtors have received fair value for the obligations incurred thereunder.

3.     <u>MGI Payments</u>.  MGI shall make the following payments (together, the "MGI Payments"):  (a) $4,000,000 (the "First Installment Payment") within five business days

---

associated therewith) are held by the Mexican Subsidiaries or Banco Nacional de Comercio Exterior, S.N.C. Institución de Banca de Desarrollo.

following entry of the Approval Order; and (b) a further $2,000,000 (the "Second Installment Payment") within 21 calendar days following entry of the Approval Order. The MGI Payments shall be (x) deposited into an escrow account (the "Escrow Account") with an escrow agent approved by the Committee (the "Escrow Agent") and subject to an escrow agreement in form and substance reasonably acceptable to the Committee (the "Escrow Agreement"); and (y) upon the Plan Effective Date or as soon thereafter as the Approval Order is in full force and effect and is unstayed, transferred to the GUC Pool to be used only in accordance with the U.S. Plan for the benefit of creditors of the U.S. Debtors.

4.     Successful Appeal of Approval Order. In the event of a successful appeal of the Approval Order on a final and non-appealable basis or the termination of the CCP APA (either such occurrence, a "Termination Event"): (a) the MGI Payments, if and to the extent paid, shall be returned to MGI within five business days following the occurrence of such Termination Event; (b) this Stipulation and the Term Sheet shall be null and void; and (c) all rights of the Parties shall be restored to the *status quo ante*. The Escrow Agreement, the U.S. Plan and any documents establishing the Litigation Trust shall provide for the return to MGI of any MGI Payments held in the Escrow Account or the GUC Pool, as applicable, within five business days of the occurrence of a Termination Event. The U.S. Plan shall further require the GUC Pool or Litigation Trust (as applicable) to maintain reserves sufficient to repay all MGI Payments transferred to the GUC Pool for so long as any appeal of the Approval Order remains pending.

5.     Brazil Fiber Sale. MGI shall be entitled to receive a refund of the full amount of the Second Installment Payment (to the extent such Second Installment Payment has not been repaid or reduced pursuant to paragraph 4 or 6) if the Brazil Fiber Sale becomes incapable of closing (a "Brazil Fiber Sale Termination"). Upon the Luxembourg Debtors' notification to the

U.S. Debtors and the Committee or the Litigation Trust, as applicable, of the occurrence of a

Brazil Fiber Sale Termination, the full amount of the Second Installment Payment shall, within

five business days of such date, be refunded to MGI from the Escrow Account or the GUC Pool,

as applicable, and the Escrow Agreement, U.S. Plan, and any documents establishing the

Litigation Trust shall provide for such refund.

6. <u>Resolution of Mexican Intercompany Claims</u>. Without prejudice to MGI's rights

under the foregoing paragraphs 4 and 5, MGI shall be entitled to receive (to the extent such MGI

Payments have not been repaid or reduced pursuant to paragraphs 4 or 5) up to $3,000,000 in

reduction or refund of the MGI Payments in connection with a resolution of the Mexican

Intercompany Claims (a "<u>Mexican Claim Settlement</u>") if, within 90 days of the Bankruptcy

Court's entry of the Approval Order, the Bankruptcy Court enters one or more orders

(collectively, the "<u>Mexican Claim Settlement Orders</u>") reducing the Mexican Intercompany

Claims as follows:

> (a) $1,500,000 of the Second Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $300,000,000, in the aggregate;
>
> (b) A further $500,000 of the Second Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $400,000,000, in the aggregate;
>
> (c) $500,000 of the First Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $500,000,000; and
>
> (d) A further $500,000 of the First Installment Payment if the Mexican Settlement Orders reduce the Mexican Intercompany Claims by at least $600,000,000.

If and to the extent MGI becomes entitled to a refund of the MGI Payments on account of a

Mexican Claim Settlement, the applicable amount shall, within five business days of such date,

be refunded to MGI from the Escrow Account or the GUC Pool, as applicable, and the Escrow

Agreement, U.S. Plan, and any documents establishing the Litigation Trust shall provide for such refund.

7.      <u>Committee Support of Mexican Settlement</u>.  The Committee shall support approval of the Mexican Claim Settlement; <u>provided</u>, that any Mexican Claim Settlement that does not provide for the complete disallowance and expungement of the Mexican Intercompany Claims shall be in form and substance reasonably acceptable to the Committee; <u>provided</u> <u>further</u> that the Committee shall not object to the proposed allowed amount of the Mexican Intercompany Claims if the Mexican Claim Settlement provides for a reduction by at least $600,000,000 in the aggregate amount of such claims (<u>i.e.</u>, allowed claims in the aggregate amount of no more than $200,414,627.89).  The Committee agrees that such cancellation or reduction may include the offset of claims and/or the transfer of equity interests in the Mexican Subsidiaries held by the U.S. Debtors, which equity interests the Debtors believe in good faith do not have material value, to a creditor trust established by the Mexican Subsidiaries for the benefit of their creditors, for no additional consideration.

8.      <u>Committee Support of Och-Ziff Settlement</u>.  The Committee shall support approval of any settlement of claims of Och-Ziff Capital Management Group LLP and its affiliates (collectively, "<u>Och-Ziff</u>") against the Luxembourg Debtors and their affiliates provided that such settlement provides for the release of all of Och-Ziff's claims against the U.S. Debtors and otherwise does not adversely impact any of the U.S. Debtors in any material respect.

9.      <u>Committee Support of Luxembourg Debtors' Prepetition Claim Payment Motion</u>. The Committee will support approval of the Luxembourg Debtors' expenditure of up to $300,000 in cash, in the aggregate, to satisfy claims of the Luxembourg Debtors' prepetition

creditors pursuant to a motion and order in form and substance reasonably acceptable to the Committee.

10.     <u>Luxembourg Debtors' Retention of Cash in Luxembourg</u>.  The Committee will support approval of the relief requested in the *Debtors' Motion for Entry of an Order (I) Waiving the Requirements of Section 345(b) of the Bankruptcy Code with Respect to Foreign Bank Accounts and (II) Granting Related Relief* (Docket No. 1539) and will otherwise support the Luxembourg Debtors' authority to retain their cash in Luxembourg.

11.     <u>Causes of Action</u>.  Conditional upon receipt into the Escrow Account of the full amount of the First Installment Payment, the Committee shall not (unless a Termination Event occurs) assert or attempt to assert any cause of action that is property of the estate of any Luxembourg Debtor (collectively, the "<u>Causes of Action</u>").  The Causes of Action shall remain property of the respective Luxembourg Debtors' estates pending dismissal of the Luxembourg Cases and thereupon shall revert to the applicable Luxembourg Debtors together with all other property of their estates.

12.     <u>Mutual Releases</u>.  Effective as of the later of the Plan Effective Date and the date upon which all MGI Payments have been deposited into the Escrow Account (subject to reduction or refunding pursuant to paragraphs 5 and 6 hereof), in consideration for the obligations under this Stipulation, to the fullest extent permitted by law:  (a) each of the U.S. Debtors, on behalf of itself, its estate and its successors, assigns and any and all entities who may purport to claim by, through, for or because of it, shall forever release, waive and discharge all claims (as defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that such U.S. Debtor may have against any of the Luxembourg Debtors (and their successors and any person retained in the Chapter 11 Cases pursuant to section 327, 363, or 1103

of the Bankruptcy Code), whether disputed or undisputed, at law or in equity or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal or other law; and (b) each of the Luxembourg Debtors, on behalf of itself, its estate and its successors, assigns and any and all entities who may purport to claim by, through, for or because of it, shall forever release, waive and discharge all claims (as defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that such Luxembourg Debtor may have against any of the U.S. Debtors (and their successors and any person retained in the Chapter 11 Cases pursuant to section 327, 363, or 1103 of the Bankruptcy Code), whether disputed or undisputed, at law or in equity or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal or other law.  For the avoidance of doubt, nothing in the foregoing shall (or shall be deemed to) release, waive, impair or otherwise affect any right or recourse the U.S. Debtors may have to proceeds, reimbursement, or similar recoveries under any insurance policy of any of the parties or their affiliates.

   13. <u>Allocation of Costs</u>.  The Luxembourg Debtors shall be solely responsible for the fees and expenses of their professionals incurred in connection with the Motion to Dismiss and any future requests for relief solely benefitting one or more of the Luxembourg Debtors. The fees and expenses incurred by professionals in connection with future requests for relief directly benefitting both the Luxembourg Debtors and the U.S. Debtors shall be allocated between the estates of the Luxembourg Debtors, on the one hand, and the U.S. Debtors, on the other hand:  (a) based upon the relative face amounts of the claims being resolved by such

request for relief; (b) if no claims are being resolved by such request for relief, by agreement among the Luxembourg Debtors, the U.S. Debtors and the Committee; or (c) by order of the Bankruptcy Court.  Subject to the effectiveness of the releases provided for in paragraph 12 hereof, none of the Luxembourg Debtors shall be liable for the fees and expenses of the Committee, the Litigation Trust or their respective professionals, which shall continue to be paid by the U.S. Debtors or the Litigation Trust.

14.     <u>The U.S. Plan</u>.  The U.S. Debtors shall file the U.S. Plan within five business days of the entry of the Approval Order or such later date as may reasonably be agreed upon by the Committee.  The Parties shall work together in good faith to obtain confirmation of the U.S. Plan as soon as reasonably practicable thereafter.  The Committee shall support extensions:  (a) through and including August 20, 2018 of the period during which the Debtors have the exclusive right to file a chapter 11 plan; and (b) through and including October 19, 2018 of the period during which the Debtors have the exclusive right to solicit acceptances thereof (together, the "<u>Exclusive Periods</u>").  Any further extensions of the Exclusive Period shall be solely with the Committee's consent, which consent shall not be unreasonably withheld.

15.     No creditor of any Luxembourg Debtor shall be entitled to any recovery under the U.S. Plan on account of such creditor's claim against such Luxembourg Debtor.  Subject to entry of the Approval Order, the Committee agrees not to take the position that the U.S. Plan is not an "Acceptable Chapter 11 Plan" within the meaning of the Bid Support Term Sheet on the basis that the Luxembourg Debtors are not included in the U.S. Plan.  Upon entry of the Approval Order, the Committee shall neither (a) file a chapter 11 plan with respect to the Luxembourg Debtors nor (b) seek to include the Luxembourg Debtors in the U.S. Plan, notwithstanding any expiration of the Exclusive Periods.

16.     Further Cooperation.  The Luxembourg Debtors will cooperate prior to and after dismissal of the Luxembourg Cases with the Committee and the Litigation Trust pursuant to the terms of an agreement with the U.S. Debtors and/or the Litigation Trust to provide services, personnel and information at cost to the U.S. Debtors or the Litigation Trust, as applicable, as reasonably necessary and appropriate to administer the Litigation Trust and facilitate the transactions contemplated by the U.S. Plan.  The U.S. Debtors or the Litigation Trust, as applicable, shall be liable for all costs arising from the provision of such services, personnel and information.

17.     Binding Effect.  This Stipulation will be binding on the Parties from the date of its execution, but is expressly subject to and contingent upon entry of the Approval Order.  If the Bankruptcy Court does not enter the Approval Order, this Stipulation will be null and void, and will be of no force and effect.

18.     Authority.  The undersigned each represent and warrant that the undersigned is fully authorized and empowered to enter into this Stipulation on behalf of, and to bind, each Party as applicable (in the case of the Luxembourg Debtors, subject to the Bankruptcy Court's approval) and that each such Party has full knowledge of, is authorized to enter into, and has consented to this Stipulation.  All representations, warranties, inducements and/or statements of intention made by the Parties are embodied in this Stipulation, and no Party relied upon, will be bound by, or will be liable for any alleged representation, warranty, inducement or statement of intention that is not expressly set forth in this Stipulation.

19.     Amendments.  No modification, amendment or waiver of any of the terms or provisions of this Stipulation will bind any Party unless such modification, amendment or waiver is in writing, has been executed by a duly authorized representative of the Party against whom

such modification, amendment or waiver is sought to be enforced, and if material, has been approved by the Bankruptcy Court.

20. <u>Severability</u>. If any part of this Stipulation is held to be unenforceable by any court of competent jurisdiction, the unenforceable provision will be deemed amended to the least extent possible to render it enforceable and the remainder of this Stipulation will remain in full force and effect.

21. <u>Governing Law</u>. This Stipulation will be governed by and construed in accordance with the Bankruptcy Code and the laws of the State of New York without regard to the conflict of laws principles thereof. The Bankruptcy Court will retain exclusive jurisdiction over any and all disputes and matters arising out of or otherwise relating to this Stipulation, the Approval Order and the Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to the Stipulation or the Approval Order.

22. <u>No Adverse Inference</u>. The Parties acknowledge that this Stipulation is the joint work product of both Parties and that, accordingly, in the event of ambiguities in this Stipulation, no inferences will be drawn against any Party on the basis of authorship of this Stipulation.

23. <u>Counterparts</u>. This Stipulation may be executed in one or more counterparts and by facsimile or electronic copy, all of which will be considered effective as an original signature.

24. <u>No Admissions</u>. Except with respect to the enforcement of the terms of this Stipulation, nothing herein and no action taken by any of the Parties hereto shall be construed as an admission or concession with respect to the merits of any claim or causes of action.

IN WITNESS WHEREOF and in agreement herewith, by and through the undersigned, the Parties have executed and delivered this Stipulation as of the date first set forth below.

Dated:  August 24, 2018

COLE SCHOTZ P.C.

_/s/ J. Kate Stickles_
J. Kate Stickles (No. 2917)
David R. Hurst (No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:     (302) 652-3131
Facsimile:      (302) 652-3117
Email: kstickles@coleschotz.com
          dhurst@coleschotz.com

-and-

MILBANK, TWEED,
HADLEY & McCLOY LLP
Dennis F. Dunne (admitted pro hac vice)
Abhilash M. Raval (admitted pro hac vice)
Lauren C. Doyle (admitted pro hac vice)
28 Liberty Street
New York, New York 10005
Telephone:     (212) 530-5000
Facsimile:      (212) 530-5219
Email: ddunne@milbank.com
          araval@milbank.com
          ldoyle@milbank.com

_Counsel for the Official
Committee of Unsecured Creditors_

M & G USA CORPORATION

_____
Name: Dennis Stogsdill
Title: CRO


M & G RESINS USA, LLC

_____
Name: Dennis Stogsdill
Title: CRO


M & G POLYMERS USA, LLC

_____
Name: Dennis Stogsdill
Title: CRO


M & G FINANCE CORPORATION

_____
Name: Dennis Stogsdill
Title: CRO


M&G WATERS USA, LLC

_____
Name: Dennis Stogsdill
Title: CRO


M & G USA HOLDING, LLC

_____
Name: Dennis Stogsdill
Title: CRO


INDO AMERICAN INVESTMENTS, INC.

_____
Name: Dennis Stogsdill
Title: CRO

CHEMTEX FAR EAST, LTD.

_____

Name:  Dennis Stogsdill
Title:  CRO

CHEMTEX INTERNATIONAL INC.

_(signature)_

Name: PEDRO S. LOSH

Title: DIRECTOR.

MOSSI & GHISOLFI
INTERNATIONAL S.À R.L.

_____

Name:
Title:

Evert Jan van der Slobe
Manager

MOSSI & GHISOLFI
INTERNATIONAL S.À R.L.

Name: Fredrick John Fournier
Title: DIRECTOR

M&G CHEMICALS S.A.

_____

Name: MARCO GHISOLFI

Title: DIRECTOR

M&G CHEMICALS S.A.

Name: Frederic Brace
Title: Director

**M&G CAPITAL S.À R.L.**

_____
Name:
Title:

_Evert Jan van der Slobe_
_Director_

# **ANNEX A**

# SCHEDULE OF MEXICAN INTERCOMPANY CLAIMS

| CLAIM NO. | CREDITOR NAME | DEBTOR NAME | CLAIM AMOUNT |
|---|---|---|---|
| 781 | M&G Polimeros Mexico, S.A. de C.V. | Chemtex International Inc. | $137,000,656.28 |
| 784 | Servicios Tamaulipas, S.A. de C.V. | M & G USA Corporation | $2,097,916.00 |
| 808 | M&G Polimeros Mexico, S.A. de C.V. | M & G USA Holding, LLC | $369.34 |
| 810 | M&Ghisolfi de Mexico S.A. de C.V. | M & G USA Corporation | $29,938,705.06 |
| 823 | M&G Polimeros Mexico, S.A. de C.V. | M & G Resins USA, LLC | $3,521,210.15 |
| 824 | M&G Polimeros Mexico, S.A. de C.V. | M & G Finance Corporation | $9,991,487.47 |
| 830 | M&G Polimeros Mexico, S.A. de C.V. | M & G USA Corporation | $360,887,981.69 |
| 832 | M&G Polimeros Mexico, S.A. de C.V. | M & G Polymers USA LLC | $55,515,900.90 |
| 840 | M&G Mexico Holding, S.A. de C.V. | M & G USA Corporation | $201,460,401.00 |
| **Total** | | | **$800,414,627.89** |