# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> M & G USA CORPORATION, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 17-12307 (BLS) <br><br> (Jointly Administered) <br><br> Re: D.I. No. 1766 <br><br> Hearing Date: September 13, 2018 at 10:00 a.m. (ET) <br> Obj. Deadline: September 7, 2018 at 4:00 p.m. (ET) <br> (Extended by Agreement With the Movants) |

**OBJECTION TO MOTION OF THE LUXEMBOURG DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING PAYMENT OF CERTAIN PREPETITION CLAIMS OF <u>FOREIGN CREDITORS</u>**

NN Investment Partners B.V. ("<u>NNIP</u>"), NN Insurance Belgium N.V. and Delta Lloyd Levensverzekering N.V. (collectively, the "<u>DL Lenders</u>" and together with NNIP, the "<u>Objectors</u>"), submit this objection (the "<u>Objection</u>") to the <u>Motion of the Luxembourg Debtors for Entry of an Order Authorizing Payment of Certain Prepetition Claims of Foreign Creditors</u> filed on August 16, 2018 [Docket No. 1766] (the "<u>Motion</u>")[2] and state as follows:

1. The Objectors are creditors of two of the Lux Debtors, Mossi & Ghisolfi International S.a.r.l. ("<u>MGI</u>") and M&G Chemicals S.A. ("<u>MGC</u>"). Specifically, the DL Lenders made loans (the "<u>Loans</u>") to MGI in the aggregate principal amount of €70,000,000.00, secured

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

by pledges of MGI's 100% equity interests in two of the US Debtors, M&G USA Corp. and M&G USA Holdings, LLC. Additionally, NNIP is owed management fees as agent under the loan agreement between MGI and the DL Lenders. All of the foregoing obligations were guaranteed by MGC. The Objectors timely filed proofs of claim in the chapter 11 cases of MGI and MGC with respect to the foregoing claims.

2. Pursuant to the Motion, the Lux Debtors seek authority to pay up to $300,000.00 of their estates' funds to satisfy prepetition claims of certain non-insider Luxembourg trade creditors of the Lux Debtors. The Lux Debtors argue that absent such payments, these trade creditors may take actions in Luxembourg that could cause the Lux Debtors to be declared bankrupt in Luxembourg, or trigger an obligation for the Lux Debtors to commence insolvency proceedings in Luxembourg. In support of the Motion, the Lux Debtors rely on sections 105(a), 363(b)(1) and 1107(a) of the Bankruptcy Code and upon the "doctrine of necessity."

3. Under well-settled law in this Circuit, the payment of prepetition claims outside of a confirmed chapter 11 plan is not simply governed by a deferential "business judgment" or "best interest of the estate" standard. Rather, such authority is granted under the doctrine of necessity only in narrow circumstances, where such payment is necessary to the continued operation of the debtor's business in bankruptcy and to realize the goal of a successful chapter 11 reorganization. See In re Lehigh & New England R. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Just For Feet, Inc., 242 B.R. 825-26 (D. Del. 1999); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (rejecting a "best interests of the estate" standard for payment of prepetition obligations in favor of the doctrine of necessity, pursuant to which "the debtor must show that payment is essential to the continued operation of the business"). This doctrine is normally applied to the payment of "critical vendors" early in a chapter 11 case, in order to foster

a successful reorganization by incentivizing trade vendors to continue to provide goods and services essential to the debtor's continued operation during the chapter 11 case.  See, e.g., Just For Feet, 242 B.R. at 821.

4. Here, in contrast, the Lux Debtors have pending the Motion to Dismiss their chapter 11 cases and a motion to approve a settlement with the Committee which, among other things, resolves the Committee's objection to the Motion to Dismiss.  The Lux Debtors are not proceeding towards a successful chapter 11 reorganization, the goal the doctrine of necessity was intended to promote.  Nor do the Lux Debtors have an ongoing business that must be protected.  Upon information and belief, they are holding companies, with no or minimal employees or operations.  Instead, based upon their own motions to this Court, they are seeking dismissal from the chapter 11 process as quickly as possible.  Compare Lehigh & New England R. Co., 657 F.2d at 581-82 (concluding that the doctrine of necessity could not apply in the circumstances of that case, since the debtor was no longer in operation).  Further, given that the Lux Debtors are seeking dismissal and are not seeking to continue in chapter 11 to reorganize, the possibility of commencement of insolvency proceedings in Luxembourg exists whether or not the Motion is granted, and does not justify the payment of particular creditors under the necessity of payment doctrine.

5. The Lux Debtors do not point to a single case that has approved payment of prepetition claims in this circumstance, where the Lux Debtors are not pursuing a reorganization in chapter 11, but rather are seeking a structured dismissal.  The analysis of the Supreme Court in Czyzewski v. Jevic Holding Corp., __ U.S. __, 137 S. Ct. 973 (2017) is instructive.  In Jevic, the Court refused to approve a structured dismissal which provided for payments to creditors circumventing the Bankruptcy Code priority rules.  Contrasting interim distributions, such as

3

critical vendor payments, that are designed to enable a successful chapter 11 reorganization for the benefit of all creditors, the Court observed:

> By way of contrast, in a structured dismissal like the one ordered below, the priority-violating distribution is attached to a final disposition; it does not preserve the debtor as a going concern; it does not make the disfavored creditors better off; it does not promote the possibility of a confirmable plan; it does not help to restore the status quo ante; and it does not protect reliance interests. In short, we cannot find in the violation of ordinary priority rules that occurred here any significant offsetting bankruptcy-related justification.

Id., 137 S. Ct. at 985-86.

6. Here, the payment of certain trade creditors prior to dismissal amounts to a final disposition, as the funds will be spent with no mechanism for a "true up" payment to other creditors of the Lux Debtors. There is no going concern to be preserved. Rather, the Lux Debtors are holding companies, and the operating assets of their U.S. subsidiaries have been or are being sold. The Lux Debtors have not demonstrated how such payments make disfavored creditors (such as the Objectors) better off, instead of merely depleting the limited pool of assets available to pay their claims.

7. Given the posture of this case, such payments do not promote the possibility of a confirmable plan for the Lux Debtors. They do not restore the status quo ante, but rather provide preferential treatment to certain creditors in a way that is antithetical both to the Bankruptcy Code policy of equal treatment as well as to Luxembourg law which, absent a specific priority, requires *pari passu* treatment of creditor claims. See Article 2093 of the Luxembourg Civil Code;[3] see also Articles 445 and 446 of the Luxembourg Commercial Code; Article 1167 of the Luxembourg Civil Code (voiding certain transfers to creditors made during a period of

---

[3] Article 2093 provides, in English translation, that "[t]he debtor's assets are the joint collateral of his creditors, the price of which shall be distributed among them in proportion of their claims, unless there are, between the creditors, legitimate grounds for preferential payment."

4

suspension of payments). Moreover, the fact that a trade creditor has obtained a judgment or order of payment does not give rise to a priority in payment over other creditors under Luxembourg law. See Justice de Paix, 8 Juillet 1981, No. Rep. Fiscal 939/81 ("The conditional payment order constitutes an order for payment and will not be equivalent to an executable judgment, unless it is made enforceable by the Juge du paix.").

8. Lastly, such payments do not protect any reliance interests created during the chapter 11 case. By the Lux Debtors' own admission, the creditors to be paid have either taken or threatened to take actions which disregard the Chapter 11 cases and the automatic stay. Thus, the relief sought in the Motion rewards creditors that have ignored the automatic stay, while depleting assets that would otherwise be available to pay claims of creditors, such as the Objectors, that have respected the chapter 11 process.[4]

9. The Objectors therefore object to the relief sought in the Motion, and reserve all of their rights and claims both in respect of these chapter 11 cases and under the laws of Luxembourg or any other relevant jurisdiction.[5]

---

[4] If the Lux Debtors' chapter 11 cases are not promptly dismissed, the Objectors intend to seek relief from the automatic stay to accelerate the Loans in order to preserve their rights and remedies under applicable law.

[5] If the Court is nevertheless inclined to grant the Motion, the Objectors submit that it is appropriate that the reports referenced in paragraph 2 of the Proposed Order should be simultaneously provided to the Objectors, given that they are among the largest creditors of the Lux Debtors.

5

WHEREFORE, the Objectors request that the Court deny approval of the Motion.

Dated: September 7, 2018
      Wilmington, Delaware

Respectfully submitted,

CROSS & SIMON, LLC

*/s/ Joseph Grey*
Joseph Grey (ID No. 2358)
1105 North Market Street
Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
jgrey@crosslaw.com

-and-

STROOCK & STROOCK & LAVAN LLP
Mark A. Speiser (admitted *pro hac vice*)
Harold A. Olsen (admitted *pro hac vice*)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006
mspeiser@stroock.com
holsen@stroock.com

*COUNSEL TO THE OBJECTORS*

NY 77281369v6