IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | x | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| M&G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | Related D.I. Nos. 1537 & 1789 |
| | : | |
| | : | |
| | x | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
BANCO MERCANTIL DEL NORTE, SOCIEDAD ANÓNIMA,
INSTITUTIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE
TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION
BETWEENDEBTORS AND CREDITORS' COMMITTEE REGARDING
SETTLEMENT AND AGREEMENT WITH RESPECT TO MOTION TO DISMISS**

Banco Mercantil Del Norte, Sociedad Anónima, Institutión de Banca Múltiple, Grupo Financiero Banorte ("Banorte"), as a creditor and party in interest in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby files this limited objection and reservation of rights (the "Objection") with respect to the *Debtors' Motion for Entry of an Order Approving Stipulation Between the Debtors and Creditors' Committee Regarding Settlement and Agreement with Respect to Motion to Dismiss* [D.I. 1789] (the "Settlement Motion").[2] In support of its Objection, Banorte, by its undersigned counsel, respectfully states as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449); M & G Resins USA, LLC (3236); M & G Polymers USA, LLC (7593); M & G Finance Corporation (4230); M&G Waters USA, LLC (2195); Mossi & Ghisolfi International S.à r.l. (1270); M&G Chemicals S.A. (N/A); M&G Capital S.à r.l. (7812); M & G USA Holding, LLC (3451); Chemtex International Inc. (7695); Chemtex Far East, Ltd. (2062); and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Settlement Motion.

**Preliminary Statement**

The Debtors' motion to dismiss the Luxembourg Debtors' chapter 11 cases sought limited relief and essentially preserved the rights of the U.S. Debtors estates *vis a vis* the Luxembourg Debtors. The relief now sought goes considerably further. Most notably, the Committee Stipulation provides for mutual releases between the U.S. Debtors and the Luxembourg Debtors, which would preclude any recoveries between them following the dismissal.

These releases have the potential to affect the rights or recoveries of creditors of the U.S. Debtors in a number of ways, including by preventing the Debtors or a litigation trust from pursuing causes of action or other claims that may exist against the Luxembourg Debtors and by foreclosing any further recovery from the Luxembourg Debtors as necessary to compensate the U.S. Debtors for the expenses incurred for the benefit of the Luxembourg Debtors during the bankruptcy. The Settlement Motion provides little if any specific information to allow parties in interest to assess whether the consideration given by the Luxembourg Debtors in exchange for the releases and dismissal ($3-6 million dollars and reciprocal releases) is sufficient to justify this additional relief.

Furthermore, two days prior to the objection deadline for the Settlement Motion, the U.S. Debtors filed a plan of liquidation and accompanying disclosure statement. Given the potential ramifications of the releases, the fact that they were not incorporated into the Debtors' original motion to dismiss and their potential interaction with the Plan, the proposed releases should be evaluated in conjunction with the Plan not separately. Now that a Plan is on file and a path to confirmation has been laid out, there is no reason that consideration of the releases cannot occur in connection with confirmation of the filed Plan, especially given that the effectiveness of the releases is already tied to the Plan effective date. Accordingly, Banorte requests that the Court

deny or adjourn the Settlement Motion to confirmation in order to preserve the rights of parties in interest to consider and challenge the proposed settlement in connection with confirmation of the Plan.

**Background**

1. Banorte is the lender under that certain Contrato de Apertura de Crédito en Cuenta Corriente, pursuant to which Banorte provided non-debtor M&G Polímeros México, Sociedad Anónima de Capital Variable ("M&G Mexico") with a secured revolving line of credit of up to $80,000,000 (as amended, amended and restated or otherwise modified from time to time, the "Revolving Credit Facility"). The Revolving Credit Facility was guaranteed by Mossi & Ghisolfi International S.a.r.l. ("MGI"), one of the Luxembourg Debtors, and M&G Polymers USA, LLC ("M&G Polymers"), one of the U.S. Debtors. Banorte timely filed proofs of claim in the chapter 11 case of each of MGI and M&G Polymers in the amount of $80,423,665.84.

2. On June 5, 2018, the Debtors filed the *Motion of Debtors M&G Capital S.a r.l., M&G Chemicals S.A. and Mossi & Ghisolfi International S.a r.l. for an Order Dismissing Their Chapter 11 Cases and Granting Related Relief* [Docket No. 1537] (the "Motion to Dismiss"). The Motion to Dismiss sought only (i) dismissal of the Luxembourg Debtors' chapter 11 cases, (ii) limited exculpation in connection with the dismissal motion, and (iii) the survival of certain orders under section 349(b) of the Bankruptcy Code.

3. The Official Committee of Unsecured Creditors (the "Committee") objected to the Motion to Dismiss. Subsequently, on July 19, 2018, the Committee filed a *Notice of Filing of Settlement Term Sheet* [Docket No. 1706] ("Term Sheet Notice"), attaching a term sheet described as setting forth a proposal (the "Committee Settlement") made by the Luxembourg Debtors to the Committee "(a) to resolve claims between the Lux Debtors, on the one hand, and the other Debtors

. . . and the Committee, on the other hand, and (b) to resolve the Committee's objection to the Lux Debtors' [Motion to Dismiss]." Term Sheet Notice at 1. The Term Sheet Notice did not suggest the process through which the parties would seek approval of the terms of the settlement.

4. Separately, Banco Nacional de Comercio Exterior S.N.C., Institucion de Banca de Desarollo ("Bancomext") objected to the Motion to Dismiss. On August 2, 2018, the Debtors filed a *Notice of Filing of Mediation Term Sheet and Request for Adjournment of Related Hearings* [D.I. 1738] attaching a term sheet for a proposed settlement (the "Bancomext Settlement") between the Debtors, the Committee and Bancomext resolving Bancomext's objection to the Motion to Dismiss in addition to a pending adversary proceeding and an appeal of the Debtor's sale of certain of their assets. The Bancomext Settlement was approved by the Court on August 28, 2018 [D.I. 1798].

5. On August 20, 2018, the Debtors filed the Notice of Filing of (I) Revised Proposed Form of Order Regarding Luxembourg Debtors' Motion to Dismiss and (II) Proposed Order Granting Stipulation Regarding Related Resolution with Bancomext filed by the Debtors on August 20, 2018 [D.I. 1777]. After the filing of an objection arguing that approval of the stipulation documenting the Committee Settlement (the "Committee Stipulation") needed to be sought by motion [D.I. 1787], the Debtors filed the Settlement Motion.

6. In the Settlement Motion, the Debtors seek entry of an order approving dismissal of the Luxembourg Debtors' cases and approval of the Committee Settlement on the terms set forth in the Committee Stipulation. The terms of the Committee Stipulation include:

- Dismissal of the Luxembourg Debtors' Chapter 11 Cases upon the earlier of (i) an order approving resolution of intercompany claims asserted by the Debtors' Mexican subsidiaries (including M&G Mexico) (the "Mexican Subsidiaries")[3] and (ii) the effective date of a plan of liquidation.

---

[3] Banorte reserves its rights with respect to any settlement or other resolution of the intercompany claims asserted by the Mexican Subsidiaries.

{00024099. } 4

- A contribution to the U.S. Debtors' estate by the Luxembourg Debtors of cash ranging from $3 million to $6 million, the amount of which depends on the completion of a transaction with the Debtors' Brazilian subsidiaries and the extent of the reduction in the amount of the intercompany claims asserted by the Mexican Subsidiaries.

- The Committee's commitment to support, under certain circumstances, a plan of liquidation, a settlement with the Mexican Subsidiaries and certain other forms of relief both related to the Luxembourg Debtors' dismissal and otherwise.

- A renunciation by the Committee of its rights to seek to assert causes of action of the Luxembourg Debtors.

- Mutual releases between the U.S. Debtors and the Luxembourg Debtors with respect to any and all claims, including intercompany claims and causes of action, which would become effective upon the latter of the effective date of a plan of liquidation and the deposit of funds by the Luxembourg Debtors into an escrow account.

- Allocation of costs between the Luxembourg Debtors and the U.S. Debtors as to professional fees associated with the Motion to Dismiss and future professional fees.

7. On September 5, 2018, the U.S. Debtors and the Committee filed their *Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* [D.I. 1813] (the "Plan") and a related disclosure statement. The Plan contemplates, among other things, substantive consolidation of the U.S. Debtors' estates and creation of a litigation trust, into which certain funds (including the contribution by the Luxembourg Debtors in connection the Committee Settlement), causes of action and equity interests will be placed for the benefit of unsecured creditors.

**Objection**

8. Settlements under Fed.R.Bankr.P. 9019 are subject to the sound discretion of the Court. *Key3Media Group, Inc., v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). Further, the role of the bankruptcy court in reviewing a 9019 motion is to determine whether "the compromise is fair, reasonable and in best interests of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008).

9. In order to make this determination, courts utilize the Third Circuit's analysis in *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Under *Martin*, courts should

consider the following factors in deciding whether a settlement is in the best interest of the estate: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id*. The Debtors carry the burden of persuading the Court that the settlement falls within the reasonable range of settlement possibilities. *In re Roqumore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983))

10. The Debtors have not provided in the Settlement Motion sufficient details regarding what claims exist or may exist against the Luxembourg Debtors, nor have they detailed claims that the Luxembourg Debtors may have against the U.S. Debtors. The Luxembourg Debtors and the U.S. Debtors have the same counsel, meaning the terms of the releases and other relief were essentially negotiated by one party with itself. While the Committee has ultimately consented to the relief, there has been no meaningful disclosure to other parties in interest or the Court regarding the reasonableness of that aspect of the settlement. As such, it is impossible to determine whether the consideration the U.S. Debtors are receiving in return for the releases and their support of the dismissal is in the best interests of creditors or meets the minimum threshold of reasonableness required under the Rule 9019.

11. The release of the Luxembourg Debtors potentially impacts creditors of the U.S. Debtors adversely in a number of ways. First, the releases deprive the litigation trust proposed in the Plan of a potentially valuable asset. Under the Plan (and the Committee's original settlement with the Debtors), the litigation trust is assigned the U.S. Debtors' causes of action. If causes of action against the Luxembourg Debtors are released, they cannot be pursued for the benefit of unsecured creditors.

12. Second, the Committee Settlement fixes the allocation between the U.S. Debtors and the Luxembourg Debtors of the costs of administration of the bankruptcy going forward. However, it is not clear from the Settlement Motion whether the Luxembourg Debtors have paid or are paying their fair share of the costs of the bankruptcy to date. The releases will ensure that no additional amounts can be allocated to the Luxembourg Debtors, even if it is later determined that certain expenses were incurred primarily or in part for their benefit.

13. The Debtors assert that the releases benefit the U.S. Debtors for a number of reasons, including (1) by providing a recovery on intercompany amounts owing by the Luxembourg Debtors to the U.S. Debtors, which may be difficult to recovery in a Luxembourg insolvency proceeding, and (2) by "potentially increasing recoveries of the U.S. Debtors' creditors pursuant to a U.S. Plan." *See* Settlement Motion ¶ 27, 31. However, the Debtors have provided insufficient information to assess whether these claimed benefits exist and there has been no disclosure of the value of the claims and the types of causes of action that the U.S. Debtors are giving up by granting the releases. Moreover, the Luxembourg Debtor and the U.S. Debtors are represented by the same counsel. As such, it is natural to wonder whether the claims have been appropriately scrutinized on both sets of Debtors' behalf.

14. At this point, there is insufficient information available to parties in interest to understand the ramifications of the releases, especially given that pendency of the Plan. The releases are not effective until the effective date of the Plan. Accordingly, there is no reason that they need to be approved now, outside the context of Plan confirmation. Parties in interest should be given a full and fair opportunity to understand the pending claims between the Luxembourg Debtors and the U.S. Debtors and whether the compromise reached is appropriate in the context of the proposed resolution of the U.S. Debtors' cases.

15. To the extent approval of the Committee Settlement is meant to be preclusive of further objections to the releases and other non-Committee terms of the settlement, it should not be approved outside of the context of Plan confirmation.

**Reservation of Rights**

16. To the extent the Debtors intend to consummate the Committee Settlement through the Plan, and thereby afford parties an interest an opportunity to object to the terms of the settlement that bind the U.S. Debtors, including the releases, Banorte reserves its right to object to the Plan, including the right to be heard and present evidence on all matters in connection with the Plan.

[*Signature page follows on next page*]

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that the Court deny the Settlement Motion or adjourn consideration of the Settlement Motion until the Plan confirmation hearing and grant such other and further relief as the Court otherwise deems necessary or appropriate.

Dated: September 7, 2018
Wilmington, Delaware

THE ROSNER LAW GROUP LLC

*/s/ Scott J. Leonhardt*
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 319-6301
leonhardt@teamrosner.com
gibson@teamrosner.com

- and -

BAKER BOTTS LLP
Emanuel C. Grillo
Christopher Newcomb
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-2562
emanuel.grillo@bakerbotts.com
chris.newcomb@bakerbotts.com

*Counsel for Banco Mercantil Del Norte, Sociedad Anónima, Institutión de Banca Múltiple, Grupo Financiero Banorte*