**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17- 12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Ref: Docket No. 568, 654, 655 |

**DEBTORS' CONSOLIDATED REPLY IN SUPPORT OF (I) MOTION FOR
ENTRY OF AN ORDER APPROVING STIPULATION BETWEEN DEBTORS AND
CREDITORS' COMMITTEE REGARDING SETTLEMENT AND AGREEMENT
WITH RESPECT TO MOTION TO DISMISS AND (II) MOTION OF THE
LUXEMBOURG DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
PAYMENT OF CERTAIN PREPETITION CLAIMS OF FOREIGN CREDITORS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby reply (this "Reply") in support of the (I) *Debtors' Motion for Entry of an Order Approving Stipulation Between Debtors and Creditors' Committee Regarding Settlement and Agreement with Respect to Motion to Dismiss* (Docket No. 1789) (the "9019 Motion") and (II) *Motion of the Luxembourg Debtors for Entry of an Order Authorizing Payment of Certain Prepetition Claims of Foreign Creditors* (Docket No. 1766) (the "Lux Claims Motion" and, together with the 9019 Motion, the "Motions").[2] In support of this Reply, the Debtors incorporate the Declaration of Dennis Stogsdill attached as Exhibit A hereto (the "Stogsdill Declaration") and respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the 9019 Motion and the Lux Claims Motion, as applicable.

## PRELIMINARY STATEMENT

1. The Stipulation among the Committee, the Luxembourg Debtors and the U.S. Debtors brings to a close approximately five months' of negotiation and litigation regarding the future of these Chapter 11 Cases and the impasse between the Debtors and the Committee over which Debtors would be included in a chapter 11 plan that would be acceptable to the Committee under the Bid Support Term Sheet.

2. The Luxembourg Debtors have been clear that their primary goal in seeking dismissal from the Chapter 11 Cases is to regain necessary flexibility to negotiate with their creditors with the expectation of achieving a consensual resolution of claims against them and staving off a potential parallel insolvency proceeding in Luxembourg. For example, at the hearing on the Motion to Dismiss, Mr. Ghisolfi, the CEO of Luxembourg Debtor MGI, testified that dismissal would benefit all creditors of the Luxembourg Debtors because:

> it will maximize the likelihood that we can complete the plan that we have started. That, basically, is a plan which we have proven capable of implementing which is increasing the cash, reducing the liability.… That process would be interrupted if there is a concurrent bankruptcy in Luxembourg. If we don't get dismissed the likelihood that there is going to be a concurrent bankruptcy in Luxembourg is very, very high in my personal opinion. That plan is going to be stopped.… So, that is why a dismissal is necessary in order to avoid what I've been trying to avoid from the very beginning which is a bankruptcy in Luxembourg.

Tr. of 7/8/18 Hr'g at 53:20-54:15.

3. Discovery regarding the Motion to Dismiss commenced even before the Luxembourg Debtors filed the motion. The Committee and Bancomext objected to the Motion to Dismiss, and litigation continued for weeks of briefing; document production and related disputes; fact and expert witness depositions; and, ultimately, hearings that began on July 18, 2018. On the second day of hearings regarding the Motion to Dismiss, the Luxembourg Debtors

and Committee announced that they had finally achieved a settlement of the terms upon which the Luxembourg Debtors could be dismissed from these Chapter 11 Cases.

4. Pursuant to the Stipulation, which reflects this settlement, the Luxembourg Creditors will make significant contributions to the estates of the U.S. Debtors, including, among other things, $6 million in MGI Payments, subject to partial refunding if the Luxembourg Debtors' executives are able to further boost value to the U.S. Debtors' estates by reducing the $1.8 billion pool of unsecured claims asserted against the U.S. Debtors by up to one third through a settlement of the Mexican Intercompany Claims.[3] In exchange for these contributions, the Luxembourg Debtors' Chapter 11 Cases will be dismissed, with the Court's approval, and there will be a mutual release of claims between the Luxembourg Debtors and the U.S. Debtors' estates.

5. Pursuant to the Stipulation, dismissal will not be immediately effective, however. Rather, the Luxembourg Debtors' Chapter 11 Cases will be dismissed on the earlier of (a) the date upon which a final and non-appealable order is entered approving a resolution of the Mexican Intercompany Claims against the U.S. Debtors' estates; and (b) the occurrence of the effective date of a chapter 11 plan of liquidation for the U.S. Debtors consistent with the Bid Support Term Sheet.

6. On September 5, 2018, the U.S. Debtors filed the *Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 1812) (the "Plan") and related *Disclosure Statement for Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 1813). The Plan relies upon approval of the Stipulation and is automatically withdrawn if

---

[3] *See* Stogsdill Decl., at ¶ 7 (stating that the pool of unsecured claims asserted against the U.S. Debtors including the Mexican Intercompany Claims is approximately $1.8 billion).

such approval is not obtained.  *See* Plan, at § VII.D ("If the Bankruptcy Court … denies entry of the Dismissal Order, this Plan shall be deemed immediately withdrawn.").

7. The settlement embodied in the Stipulation was hard-fought among the Debtors and the Committee and is in the best interests of creditors of the Luxembourg Debtors and the U.S. Debtors.  Accordingly, the Court should approve the 9019 Motion.  The Lux Claims Motion is derivative of and necessitated by the terms of the Stipulation to mitigate the effect of the anticipated delay in the effectiveness of dismissal of the Luxembourg Debtors' Chapter 11 Cases and to preserve a key benefit of the requested relief for the benefit of the Luxembourg Debtors' creditors.  Accordingly, the Court should grant the Motions.

**REPLY**

**A.      The 9019 Motion Should Be Granted Because the Settlement Embodied in the Stipulation Satisfies the Applicable Standard**

8. NN Investment Partners B.V., NN Insurance Belgium N.V. and Delta Lloyd Levensverzekering N.V. (collectively, "Delta Lloyd") precipitated the filing of the 9019 Motion by objecting to the submission upon certification of counsel of the order resolving the Motion to Dismiss.  *See* Docket No. 1787.  Following communications with counsel to the Debtors regarding the terms and approval of the Stipulation, however, Delta Lloyd elected not to object to the 9019 Motion, filing instead a short reservation of rights.[4]  In addition to the Delta Lloyd ROR, a limited objection was filed by Banco Mercantil Del Norte, Sociedad Anónima,

---

[4] The *Response and Reservation of Rights Regarding Debtors' Motion for Entry of an Order Approving Stipulation Between Debtors and Creditors' Committee Regarding Settlement and Agreement With Respect to Motion to Dismiss* (Docket No. 1828) (the "Delta Lloyd ROR").

-4-

Institutión de Banca Múltiple, Grupo Financiero Banorte ("Banorte").[5] Neither of these parties participated in the litigation over the relief requested in the Motion to Dismiss.

9. Banorte's suggestion that approval of the mutual releases between the Luxembourg Debtors and the U.S. Debtors' estates provided for under the Stipulation (the "Releases") should await confirmation of the Plan puts the cart firmly before the horse. *See* Banorte Objection, at ¶¶ 14-15. The Releases are an integral component of the settlement embodied in the Stipulation. Pursuant to the Stipulation, the Luxembourg Debtors have agreed to contribute the significant value described above to the U.S. Debtors' estates. Absent approval of the Releases, the Luxembourg Debtors will not make these contributions to the estates of the U.S. Debtors. Stogsdill Decl., at ¶ 5. These contributions are also a condition to the Plan being acceptable to the Committee under the terms of the Bid Support Term Sheet. Accordingly, approval of the Releases cannot await confirmation of the Plan because, without the Releases, there is no deal. And because the Plan is deemed automatically withdrawn if the Court denies approval of the Stipulation as presented, if there is no deal, there will be no Plan to confirm.

10. In any event, the argument that the Releases are in any way inappropriate based upon the relief sought in the Motion to Dismiss mischaracterizes their purpose and effect. *See* Banorte Limited Objection at 2. In its objection to the Motion to Dismiss, the Committee argued that the Luxembourg Debtors should be required to pay a share of the administrative costs of the Chapter 11 Cases as a condition to their dismissal from the Chapter 11 Cases. *See, e.g.,* Committee Objection, at ¶¶ 40-44. For their part, the Luxembourg Debtors could not reasonably be expected to, and did not, agree to make any contribution to the U.S. Debtors' estates in

---

[5] The *Limited Objection and Reservation of Rights of Banco Mercantil Del Norte, Sociedad Anónima, Institutión de Banca Múltiple, Grupo Financiero Banorte to Debtors' Motion for Entry of an Order Approving Stipulation Between Debtors and Creditors' Committee Regarding Settlement and Agreement With Respect to Motion to Dismiss* (Docket No. 1831) (the "Banorte Limited Objection").

resolution of the Committee's objection without the assurance of a mutual release of claims between the parties.

11. The potential value of the claims that are subject to the Releases, together with the amount of administrative costs that conceivably could be allocated to the Luxembourg Debtors in connection with the Chapter 11 Cases, among various other considerations, factored into the Luxembourg Debtors', U.S. Debtors' and Committee's evaluation of reasonable settlement ranges and the unanimous decisions of the boards of each of the Luxembourg Debtors and U.S. Debtors (in addition to the Committee) to approve the Stipulation. *See* Stogsdill Decl., at ¶ 6. Parties in interest were at liberty to make their own determinations regarding these considerations with reference to: (a) the Debtors' respective schedules of assets and liabilities (the "Schedules"), which accurately reflect, to the best of the Debtors' knowledge and belief, the intercompany liabilities between the Luxembourg Debtors and the U.S. Debtors that are subject to the Releases;[6] and (b) the fee applications filed in these Chapter 11 Cases, which exceed $43.5 million for fees incurred by the Debtors' and Committee's professionals as of July 31, 2018.[7]

12. Because the Stipulation is the result of extensive arms'-length negotiation and litigation and otherwise satisfies the Martin factors for the reasons set forth herein and in the 9019 Motion, the Debtors submit that it comfortably exceeds the lowest point in the range of

---

[6] *See* Stogsdill Decl., at ¶ 7.

[7] *See* Stogsdill Decl., at ¶ 8. The assessment and unanimous approval of the terms of the Stipulation by the directors of the Luxembourg Debtors, the U.S. Debtors and the Committee further negates Banorte's allegation that negotiations among the participating parties were anything other than at arms' length. *See* Banorte Limited Objection, at ¶ 13.

reasonableness from the perspective of the respective creditors of the Luxembourg Debtors and U.S. Debtors and should be approved.[8]

### B. The Relief Requested in the Lux Claims Motion is Justified

13. By the Lux Claims Motion, the Luxembourg Debtors seek authority to expend less than two percent of their available cash[9] during the window prior to dismissal of their Chapter 11 Cases to protect against the possibility that an insolvency proceeding will be commenced in Luxembourg depriving creditors of the Luxembourg Debtors of the opportunity to achieve a consensual resolution of their claims. This relief is necessary because, as discussed above, the terms of the Stipulation resolving the Motion to Dismiss provide that dismissal of the Luxembourg Debtors' Chapter 11 Cases will not be immediately effective.

14. The Luxembourg Debtors have made use of the delays in obtaining approval of the Stipulation to begin negotiations with the holders of the Mexican Intercompany Claims. As a result, they are optimistic that they can achieve a settlement of the Mexican Intercompany Claims favorable to the U.S. Debtors' estates in the near term. Stogsdill Decl., at ¶ 9. Nevertheless, the limited relief requested in the Lux Claims Motion is necessary to the Luxembourg Debtors and beneficial to their creditors because it will allow them to mitigate the risk that a minor creditor will thwart their efforts to avoid a parallel insolvency proceeding in Luxembourg pending dismissal of their cases. *Id.*

15. Although Delta Lloyd elected not to object either to the Motion to Dismiss or, following consultation with the Debtors, the 9019 Motion that seeks approval of the Stipulation

---

[8] The Debtors note that both Banorte and Delta Lloyd purport to reserve their rights in the event that the 9019 Motion is approved. *See* Banorte Limited Objection, at ¶ 16; Delta Lloyd ROR, at ¶ 4. Although the Debtors have no objection to parties in interest seeking to assert any rights they may possess (subject to the applicable Debtors' corresponding right to object to any such request for relief), no such reservation of rights may limit the scope of the Stipulation upon its approval.

[9] As of the hearing on the Motion to Dismiss, Luxembourg Debtor MGI had approximately $20 million in cash, *See* Tr. of 7/8/18 Hr'g at 43:21-23.

resolving the Motion to Dismiss, it nevertheless objects[10] to approval of the Lux Claims Motion, which is contemplated by the terms of the Stipulation and necessitated by the delay in effectiveness of dismissal of the Luxembourg Debtors' cases.

16. Contrary to Delta Lloyd's argument, bankruptcy courts are not prohibited from authorizing the payment of prepetition claims under section 105(a) of the Bankruptcy Code and the doctrine of necessity where the debtor is not pursuing a reorganization. *See* Delta Lloyd Objection, at 3-4. In these Chapter 11 Cases, for example, the Court previously authorized the payment of several types of prepetition claim notwithstanding that the applicable Debtors do not expect to reorganize. *See* First Day Declaration, at ¶ 59 (justifying the payment of prepetition claims on the basis that it was necessary to maximize recoveries for creditors, to the Debtors' remaining operations and to avoid immediate and irreparable harm to the Debtors' estates and creditors); *see also In re LCI Holding Co., Inc.*, No. 12-13319(KG), 2013 WL 1101111, at *2 (Bankr. D. Del. Mar. 15, 2013) (holding that the doctrine of necessity can be applicable in a liquidating case where the proposed payments serve to preserve the estate).

17. In fact, courts routinely authorize the payment of prepetition claims, in cases, such as these Chapter 11 Cases, where there is little or no prospect of reorganizing the debtor's operations and where the primary interest is in preserving and maximizing the debtor's assets for the benefit of creditors. *See, e.g., In re American Apparel, LLC*, No. 16-12551 (Docket No. 67) (BLS) (Bankr. D. Del. Nov. 15, 2016) (authorizing Debtors' to pay prepetition claims to shippers because "a debtor-in-possession has a duty to protect and preserve its value" even if the debtor ultimately seeks to sell or liquidate its business); *In re Coldwater Creek Inc.*, No. 14-10867 (Docket No. 78) (BLS) (Bankr. D. Del. Apr. 14, 2014) (allowing for payment of prepetition

---

[10] *See Objection to Motion of the Luxembourg Debtors for Entry of an Order Authorizing Payment of Certain Prepetition Claims of Foreign Creditors* (Docket No. 1827) (the "<u>Delta Lloyd Objection</u>" and, collectively with the Delta Lloyd ROR and Banorte Limited Objection, the "<u>Responses</u>").

claims to shippers in order for the Debtors to efficiently liquidate their business and preserve value for creditors).

18. Delta Lloyd's invocation of *Jevic* in support of its arguments is misplaced because the Stipulation does not contemplate any priority-skipping distributions upon final disposition of the Luxembourg Debtors' Chapter 11 Cases like those proposed in *Jevic*. *See* Delta Lloyd Objection, at ¶¶ 5-8. To the contrary, the Luxembourg Debtors are merely seeking authority to satisfy certain prepetition claims during the pendency of their ongoing Chapter 11 Cases to protect the interests of all of their creditors, and are doing so precisely because there will have been no final disposition of their cases.

19. Further, Delta Lloyd's argument that the Luxembourg Debtors have not demonstrated how the payments contemplated by the Lux Claims Motion will benefit so-called disfavored creditors like Delta Lloyd is belied by the record in these cases. The relief sought by the Lux Claims Motion is a necessary corollary of the resolution of the Motion to Dismiss, providing the Luxembourg Debtors with a small reserve of cash to use to avoid the filing of a concurrent bankruptcy in Luxembourg pending dismissal of their Chapter 11 Cases, which, as Mr. Ghisolfi testified, benefits all creditors of the Luxembourg Debtors. *See* Tr. of 7/8/18 Hr'g at 53:20-54:15. The Luxembourg Debtors have already achieved consensual settlements of claims with some of their most significant creditors. *See, e.g.,* Docket Nos. 1785, 1489, 1387. Providing the Luxembourg Debtors with the minimum flexibility necessary to prevent commencement of a Luxembourg insolvency proceeding pending dismissal of their Chapter 11 Cases will enhance recoveries to all creditors by (a) preserving these settlements that could otherwise be jeopardized upon appointment of a Luxembourg trustee and (b) avoiding the costs of duplicate proceedings. Stogsdill Decl., at ¶ 9. Accordingly, payment of the Prepetition Lux

Claims will benefit all creditors of the Luxembourg Debtors and help to preserve the value of their estates.

# CONCLUSION

For the reasons set forth herein, the Debtors respectfully request that the Court grant the Motions and overrule the Responses to the extent inconsistent therewith.

Dated: September 10, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
 joneill@pszjlaw.com
 jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  sgreenberg@jonesday.com
 scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:  (216) 586-7035
Facsimile:  (216) 579-0212
Email:  ceblack@jonesday.com

and

Daniel J. Merrett
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Telephone:  (404) 581-8476
Facsimile:  (404) 581-9330
Email:  dmerrett@jonesday.com

*Co-Counsel for the Debtors
and Debtors in Possession*