# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| | Chapter 11 |
| In re: | Case No. 17-12307 (BLS) |
| M & G USA CORPORATION, *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Objection Deadline: October 5, 2018 at 4:00 p.m. (ET)** |
| | **Hearing Date: To be determined** |

## SUMMARY OF THIRD INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM MAY 1, 2018 THROUGH JULY 31, 2018

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | The above-captioned Debtors |
| Period for which compensation and reimbursement are sought: | May 1, 2018 through July 31, 2018 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $2,786,085.00 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $52,456.65 |
| Petition Date: | October 30, 2017[2] |
| Date of Order Approving Retention: | November 30, 2017, *nunc pro tunc* to October 31, 2017 |
| Total Compensation Approved by Interim Order to Date: | $11,713,018.75 |

---

[1]       The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2]       On October 24, 2017, Debtor M & G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  All other Debtors commenced their chapter 11 cases on October 30, 2017.

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $166,786.09 |
| Total Allowed Compensation Paid to Date: | $11,713,018.75 |
| Total Allowed Expenses Paid to Date: | $166,786.09 |
| Blended Hourly Rate in this Application for All Attorneys: | $692.99 |
| Blended Hourly Rate in this Application for All Timekeepers: | $686.98 |
| Compensation Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $1,916,451.50 |
| Expenses Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $52,456.65 |
| Number of Professionals Included in this Application: | 54 |
| Number of Professionals Billing Fewer Than 15 Hours: | 20 |

This is a(n): ____ monthly    _X_ interim    ___ final application

The total time expended for fee application preparation is approximately 106.20 hours and the corresponding compensation requested is approximately $66,775.00.

Prior Applications Filed:

| Date / Docket | Month Covered | Fees | Expenses |
|---|---|---|---|
| December 5, 2017<br>(Docket No. 362)<br>"First Monthly Fee Application" | October 31, 2017 – November 30, 2017 | $1,575,370.00[1] | $10,310.08[2] |
| January 10, 2018<br>(Docket No. 647)<br>"Second Monthly Fee Application" | December 1, 2017 – December 31, 2017 | $1,692,827.00 | $25,239.68 |
| February 13, 2018<br>(Docket No. 957)<br>"Third Monthly Fee Application" | January 1, 2018 – January 31, 2018 | $1,798,473.00 | $22,655.74 |
| March 8, 2018<br>(Docket No. 1109)<br>"Fourth Monthly Fee Application" | February 1, 2018 – February 28, 2018 | $1,534,792.00 | $25,750.04 |
| March 15, 2018<br>[Docket No. 1170]<br>"First Interim Fee Application" | October 31, 2017 – January 31, 2018 | $6,279,660.00 | $56,952.50 |
| April 12, 2018<br>[Docket No. 1367]<br>"Fifth Monthly Fee Application" | March 1, 2018 – March 31, 2018 | $2,082,525.00 | $40,531.41 |
| May 11, 2018<br>[Docket No. 1455]<br>"Sixth Monthly Fee Application" | April 1, 2018 – April 30, 2018 | $737,972.00 | $43,552.14 |
| June 12, 2018<br>[Docket No. 1558]<br>"Seventh Monthly Fee Application" | May 1, 2018 – May 31, 2018 | $825,024.00 | $29,439.15 |
| June 14, 2018<br>[Docket No. 1571]<br>"Second Interim Fee Application" | February 1, 2017 – April 30, 2018 | $5,433,358.75 | $109,833.59 |
| July 13, 2018<br>[Docket No. 1684]<br>"Eighth Monthly Fee Application" | June 1, 2018 – June 30, 2018 | $742,780.00 | $7,162.36 |
| August 14, 2018<br>[Docket No. 1761]<br>"Ninth Monthly Fee Application" | July 1, 2018 – July 31, 2018 | $674,430.00 | $15,855.14 |
| September 14, 2019<br>[Docket No. 1867]<br>"Tenth Monthly Fee Application" | August 1, 2018 – August 31, 2018 | $556,998.00 | $6,699.49 |

---

[1]     Subsequent to filing the First Monthly Fee Application, at the request of the Office of the United States Trustee (the "U.S. Trustee"), Jones Day agreed to a voluntary reduction of $8,715.00 in connection with the fees sought therein.

[2]     Subsequent to filing the First Monthly Fee Application, at the request of the U.S. Trustee, Jones Day agreed to the voluntary reduction of $1,253.00 in expenses for reimbursement sought therein.

**SUMMARY OF HOURS AND FEES BY PROFESSIONAL**

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|------|---------------------|:---:|:---:|:---:|
| | | 2018 | Third | Interim |
| *PARTNER* | | | | |
| C E Black | Partner/Business Restructuring & Reorganization/1998 | $1,000.00 | 343.50 | $343,500.00 |
| V S Chang | Partner/Employee Benefits & Executive Compensation/2003 | $925.00 | 56.60 | $52,355.00 |
| M J Cohen | Partner/Business Restructuring & Reorganization/2002 | $1,025.00 | 5.60 | $5,740.00 |
| L L Fraedrich | Partner/Government Regulation/1995 | $1,025.00 | 22.30 | $22,857.50 |
| T A Hamilton** | Partner/Government Regulation/1993 | $875.00 | 0.60 | $525.00 |
| C E Laduzinski | Partner/Tax/2001 | $1,050.00 | 16.40 | $17,220.00 |
| H A Liou | Partner/Intellectual Property/2008 | $800.00 | 69.30 | $55,440.00 |
| D J Merrett | Partner/Business Restructuring & Reorganziation/2007 | $750.00 | 503.40 | $377,550.00 |
| D Rimkunas | Partner/Tax/2004 | $975.00 | 33.90 | $33,052.50 |
| J Sottile, IV | Partner/Business & Tort Litigation/1985 | $1,050.00 | 185.70 | $194,985.00 |
| F Squerzoni | Partner/Banking, Finance & Securities/1998 | $850.00 | 24.30 | $20,655.00 |
| R C Thomas | Partner/Antitrust & Competition Law/2000 | $975.00 | 184.00 | $179,400.00 |
| | **Total Partner** | | **1,445.60** | **$1,303,280.00** |
| *OF COUNSEL* | | | | |
| L M Cirando | Of Counsel/Insurance Recovery/1997 | $925.00 | 31.60 | $29,230.00 |
| | **Total Of Counsel** | | **34.90** | **$31,870.00** |

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|---|---|---|---|---|
| *ASSOCIATE* | | | | |
| A M Bailes | Associate/New Lawyers Group/2017 | $375.00 | 69.60 | $26,100.00 |
| A M Bomberger** | Associate/Mergers & Acquisitions/2009 | $800.00 | 3.40 | $2,720.00 |
| S M Bostrom | Associate/New Lawyers Group/2017 | $375.00 | 35.90 | $13,462.50 |
| B J Broadwater | Associate/Business & Tort Litigation/2008 | $850.00 | 15.30 | $13,005.00 |
| K M Brockmeyer | Associate/Antitrust & Competition Law/2011 | $725.00 | 268.20 | $194,445.00 |
| S L Corr-Irvine | Associate/Business Restructuring & Reorganization/2009 | $850.00 | 241.60 | $205,360.00 |
| K M Davis | Associate/New Lawyers Group/2016 | $475.00 | 51.40 | $24,415.00 |
| A M Doyle | Associate/New Lawyers Group/2017 | $450.00 | 16.50 | $7,425.00 |
| J V Feldman | Associate/Mergers & Acquisitions/2016 | $500.00 | 5.60 | $2,800.00 |
| L B Gates | Associate/Business & Tort Litigation/1988 | $725.00 | 85.90 | $62,277.50 |
| G L Ghaul** | Associate/Business Restructuring & Reorganization/2013 | $675.00 | 1.60 | $1,080.00 |
| M A Harper | Associate/New Lawyers Group/2017 | $425.00 | 6.00 | $2,550.00 |
| A M Hemendinger | Associate/NewLawyers Group/Pending | $475.00 | 22.80 | $10,830.00 |
| B S Jacobs | Associate/Tax/2012 | $675.00 | 14.40 | $9,720.00 |
| C D Kaniecki | Associate/Government Regulation/2009 | $775.00 | 10.20 | $7,905.00 |
| M P Koslen | Associate/Business & Tort Litigation/2016 | $400.00 | 125.70 | $50,280.00 |
| K N Mancini | Associate/Banking, Finance & Securities/2016 | $500.00 | 12.70 | $6,350.00 |
| N J Morin | Associate/Business Restructuring & Reorganization/2013 | $650.00 | 12.40 | $8,060.00 |
| S A Nelson | Associate/New Lawyers Group/2018 | $475.00 | 51.70 | $24,557.50 |
| R M Rochford | Associate/New Lawyers Group/2017 | $375.00 | 46.00 | $17,250.00 |
| K A Rubin | Associate/Tax/2013 | $675.00 | 15.30 | $10,327.50 |
| P Saba | Associate/Business Restructuring & Reorganization/2015 | $550.00 | 485.90 | $267,245.00 |
| B M Santisteban** | Associate/Mergers & Acquisitions/2014 | $600.00 | 1.70 | $1,020.00 |
| D Smith | Associate/New Lawyers Group/2017 | $475.00 | 141.50 | $67,212.50 |
| O Vastola | Associate/Mergers & Acquisitions/2013 | $475.00 | 83.80 | $39,805.00 |
| K Xian | Associate/Antitrust & Competition Law/2014 | $575.00 | 297.00 | $170,775.00 |
| O S Zeltner | Associate/Business Restructuring & Reorganization/2012 | $550.00 | 163.80 | $90,090.00 |
| | **Total Associate** | | **2,295.10** | **$1,341,437.50** |
| *LAW CLERK* | | | | |
| F Ceccon** | Law Clerk/New Lawyers Group/-- | $375.00 | 5.00 | $1,875.00 |
| M Farina | Law Clerk/New Lawyers Group/2017 | $300.00 | 18.00 | $5,400.00 |
| A M Hemendinger | Law Clerk/New Lawyers Group/-- | $475.00 | 106.60 | $50,635.00 |
| S A Nelson | Law Clerk/New Lawyers Group/2017 | $475.00 | 25.80 | $12,255.00 |
| F Siddiqui | Law Clerk/New Lawyers Group/2017 | $475.00 | 92.10 | $43,747.50 |
| | **Total Law Clerk** | | **247.50** | **$113,912.50** |
| *SUMMER ASSOCIATE* | | | | |
| A A Garcia** | Summer Associate/Summer Associate/-- | $475.00 | 11.70 | $5,557.50 |
| | **Total Summer Associate** | | **11.70** | **$5,557.50** |

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|---|---|---|---|---|
| **PARALEGAL** | | | | |
| M T Barrios | Paralegal/Banking, Finance & Securities/-- | $275.00 | 27.40 | $7,535.00 |
| J E Callaway | Paralega/Government Regulation/-- | $375.00 | 12.40 | $4,650.00 |
| M M Melvin** | Paralegal/Business Restructuring & Reorganization/-- | $350.00 | 2.40 | $840.00 |
| T E Solomon | Paralegal/Business & Tort Litigation/-- | $350.00 | 12.00 | $4,200.00 |
| | Total Paralegal | | **54.20** | **$17,225.00** |
| **PROJECT ASSISTANT** | | | | |
| Z G Aldridge | Project Assistant/Antitrust & Competition Law/-- | $275.00 | 8.00 | $2,200.00 |
| | Total Project Assistant | | **8.00** | **$2,200.00** |
| **LEGAL SUPPORT** | | | | |
| J D Gatchalian** | Legal Support/Practice Support Project Specialist/-- | $225.00 | 2.00 | $450.00 |
| | Total Legal Support | | **2.00** | **$450.00** |
| | | Total: | 4,099.00 | $2,815,932.50 |
| | | Less: 50% Nonworking Travel | 0.00 | ($13,140.00) |
| | | **Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts | (31.70) | ($16,707.50) |
| | | Grand Total: | 4,067.30 | $2,786,085.00 |

## COMPENSATION BY PROJECT CATEGORY

| Matter | Hours | Fees |
|---|---|---|
| Case Administration | 84.90 | $68,365.00 |
| Plan of Reorganization/Disclosure Statement | 832.50 | $575,495.00 |
| Use, Sale, Lease of Assets | 1,221.00 | $821,070.00 |
| Cash Collateral/DIP Financing/Other Financing | 65.10 | $44,440.00 |
| Claims Administration | 356.70 | $266,252.50 |
| Court Hearings | 39.90 | $37,090.00 |
| Professional Retention/Fee Issues | 46.50 | $30,595.00 |
| Fee Application Preparation | 106.20 | $66,775.00 |
| Nonworking Travel | 27.60 | $26,280.00 |
| General Corporate/Real Estate | 180.60 | $137,785.00 |
| Schedules/SOFA/U.S. Trustee Reports | 3.40 | $2,670.00 |
| Employee Matters | 124.60 | $90,140.00 |
| Tax Advice | 54.50 | $39,787.50 |
| Litigation/Adversary Proceedings | 884.70 | $560,995.00 |
| Automatic Stay/Adequate Protection | 2.10 | $1,495.00 |
| Executory Contracts/Unexpired Leases | 30.50 | $16,755.00 |
| Meetings | 38.20 | $29,942.50 |
| **SUBTOTAL:** | 4,445.20 | $2,992,620.00 |
| Less: 50% Non-Working Travel | 0.00 | ($13,140.00) |
| Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts | (31.70) | ($16,707.50) |
| **TOTAL:** | **4,067.30** | **$2,786,085.00** |

## EXPENSE SUMMARY

| Category | Third Interim |
|---|---|
| Certified Document Charges | $146.04 |
| Conference Charges | $1,589.07 |
| Courier Services | $232.55 |
| Court Reporter Fees | $35,491.27 |
| DHL Charges | $59.55 |
| Document Reproduction Charges | $4,692.60 |
| Document Storage/Retrieval | $977.18 |
| Federal Express Charges | $13.63 |
| General Communication Charges | $123.38 |
| Hosting Charges | $176.03 |
| Travel - Air Fare | $464.10 |
| Travel - Food and Beverage Expenses | $1,230.84 |
| Travel - Hotel Charges | $3,124.50 |
| Travel - Other Costs | $110.00 |
| Travel - Taxi Charges | $1,282.18 |
| Travel - Train Fare | $2,659.75 |
| United Parcel Service Charges | $83.98 |
| **Total** | **$52,456.65** |

## BLENDED RATE OF PROFESSIONALS – TOTAL

| Category of Timekeeper | Billed Comparable Non-Bankruptcy Invoices[1] Issued in 2017[2] | Billed This Compensation Period[3] |
|---|---|---|
| Partner | $815.78 | $901.55 |
| Of Counsel | $750.52 | $913.18 |
| Associate | $462.70 | $584.48 |
| Law Clerk | $389.47 | $460.25 |
| Summer Associate | $368.48 | $475.00 |
| Paralegal | $254.83 | $317.80 |
| Project Assistant | $214.59 | $275.00 |
| Legal Support | $289.57 | $225.00 |
| **Total:** | **$587.07** | **$686.98** |

---

[1]     Pursuant to ¶ C.3.a.i.b of the Guidelines, "Comparable Non-Bankruptcy Invoices Issued in 2017" provides the blended hourly rate for the aggregate of "[a]ll timekeepers in each of [Jones Day's] domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the [Compensation Period]."  During the Compensation Period, the Jones Day offices billing at least 10% of the hours to the bankruptcy case were the Washington, New York, Cleveland and Atlanta offices.

[2]     Jones Day calculated the average hourly rate for Comparable Non-Bankruptcy Invoices Issued in 2017 by dividing the total dollar amount billed by each class of timekeepers during the applicable period by the total amount of hours billed by such timekeepers during the Compensation Period (excluding all data from timekeepers practicing primarily in a bankruptcy group or section).

[3]     Jones Day calculated the average hourly rate for timekeepers who billed the Debtors by dividing the total dollar amount billed by each class of timekeepers by the total number of hours billed by such timekeepers during the Compensation Period.  The blended hourly rates do not take into account adjustments made by Jones Day, including:  (i) the 50% write-off of non-working travel and (ii) voluntary reductions implemented by Jones Day in connection with the preparation of this Third Interim Fee Application.

# INFORMATION REGARDING PRIOR INTERIM FEE APPLICATIONS

## SUMMARY OF PRIOR INTERIM FEE APPLICATIONS

| Date Filed & Docket No. | Period Covered | Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Date(s) of Orders on Interim Compensation or Reimbursement of Expenses |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | |
| 3/15/2018 [1170] | 10/31/2017 – 1/31/2018 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $0.00 | $0.00 | 4/23/2018 [1393] |
| 6/14/2018 [1571] | 2/1/2018 – 4/30/2018 | $5,433,358.75 | $109,833.59 | $5,433,358.75 | $109,833.59 | $5,433,358.75 | $109,833.59 | $0.00 | $0.00 | 7/23/2018 [1719] |

## CUMULATIVE FEE AND EXPENSE TOTALS SINCE CASE INCEPTION

| Fees and Expenses Requested[1] | | Fees and Expenses Allowed[2] | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Fees and Expenses Disallowed or Withdrawn[3] | |
|---|---|---|---|---|---|---|---|---|---|
| Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| $14,504,661.25 | $219,242.74 | $11,713,018.75 | $166,786.09 | $11,713,018.75 | $166,786.09 | $0.00 | $0.00 | $64,519.00 | $1,253.00 |

---

[1]    These amounts include the total fees and expenses requested in the First Interim Fee Application, the Second Interim Fee Application and this Third Interim Fee Application and does not include the fees and expenses requested in the Tenth Monthly Fee Application.

[2]    This amount reflects the amount approved by the First Interim Fee Order and the Second Interim Fee Order and does not reflect amounts requested or paid pursuant to Monthly Fee Applications filed during the Compensation Period.

[3]    These amounts reflect voluntary reductions taken by Jones Day prior to the filing of the First Interim Fee Application and Second Interim Fee Application.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>Objection Deadline: October 5, 2018 at 4:00 p.m. (ET)<br>Hearing Date: To be determined |

## THIRD INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM MAY 1, 2018 THROUGH JULY 31, 2018

Jones Day, counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), makes its third interim fee application (this "Third Interim Fee Application") for allowance of compensation of $2,786,085.00 and reimbursement of expenses of $52,456.65 for the period from May 1, 2018 through July 31, 2018 (the "Compensation Period"), in accordance with the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket No. 308) (the "Interim Compensation Order").  In support of this Third Interim Fee Application, Jones Day respectfully represents as follows:

---

[1]      The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On October 24, 2017 (the "Polymers Petition Date"), Debtor M & G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146).  Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

4.      On September 5, 2018, all of the Debtors other than Mossi & Ghisolfi International S.à r.l. ("MGI"), M&G Chemicals S.A. ("MGC") and M&G Capital S.à r.l. (together with MGI and MGC, the "Luxembourg Debtors") filed the *Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 1812) (as it may be modified, amended or supplemented, the "Plan") and related *Disclosure Statement for Joint Plan of Liquidation of*

*the U.S. Debtors and Debtors in Possession* (Docket No. 1813) (as it may be modified, amended or supplemented, the "Disclosure Statement").

## Jones Day's Retention

5.    On November 10, 2017, the Debtors filed the *Application for an Order Authorizing Them to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc as of the Petition Date* (Docket No. 138) (the "Retention Application"), by which the Debtors sought to retain and employ Jones Day as their counsel in these Cases.  On November 30, 2017, the Court entered the *Order Authorizing the Debtors to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc as of the Petition Date* (Docket No. 300) (the "Retention Order"), authorizing the retention of Jones Day as the Debtors' counsel.

## The Interim Compensation Order

6.    On November 10, 2017, the Debtors filed the *Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 141) (the "Interim Compensation Procedures Motion"), which sought to establish procedures for the compensation and reimbursement of professionals whose retentions are approved by the Court pursuant to sections 327 or 1103 of the Bankruptcy Code on a monthly basis and on terms comparable to the procedures established in other large chapter 11 cases.  On December 1, 2017, this Court entered the Interim Compensation Order, which approved the relief sought in the Interim Compensation Procedures Motion and authorized the implementation of the interim compensation procedures contemplated therein.

7.    In relevant part, the Interim Compensation Order provides that "commencing with the period ending January 31, 2018, at each three-month intervals . . . each of the [p]rofessionals will file with the Court . . . an application pursuant to section 331 of the Bankruptcy Code for interim Court approval and allowance of the compensation and

reimbursement of expenses sought by the [p]rofessional" in its monthly fee applications.  Interim

Comp. Order, ¶ 2(f).  The Interim Compensation Order further provides that interim fee

applications "must be filed on or before the 45th day after the end of the [i]nterim [f]ee

[p]eriod . . . for which the application seeks allowance of fees and reimbursement of expenses"

and that interim fee applications "must identify the [m]onthly [f]ee [a]pplications that are the

subject of the request and any information requested by the Court and the Local Rules."  *Id.*

8.      On March 15, 2018, Jones Day filed its *First Interim Application for*

*Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as*

*Counsel to the Debtors for the Period from October 31, 2017 through January 31, 2018* (Docket

No. 1170) (the "First Interim Fee Application").  By the First Interim Fee Application, Jones Day

sought interim approval of compensation for services rendered in the amount of $6,279,660.00

and reimbursement of actual and necessary expenses in the amount of $56,952.50.  On April 23,

2018, the Court approved the First Interim Fee Application.  *See Omnibus Order Approving First*

*Interim/Quarterly Fee Applications of Professionals* (Docket No. 1393).

9.      On June 14, 2018, Jones Day filed its *Second Interim Application for*

*Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as*

*Counsel to the Debtors for the Period from February 1, 2018 through April 30, 2018* (Docket

No. 1571).  By the Second Interim Fee Application, Jones Day sought interim approval of

compensation for services rendered in the amount of $5,433,358.75 and reimbursement of actual

and necessary expenses in the amount of $109,833.59.  On July 23, 2018, the Court approved the

Second Interim Fee Application.  *See Omnibus Order Approving First Interim/Quarterly Fee*

*Applications of Professionals* (Docket No. 1393).

<u>**The Monthly Fee Applications**</u>

10.    On June 12, 2018, Jones Day filed its *Seventh Monthly Application of Jones Day for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Debtors for the Period from May 1, 2018 through May 31, 2018* (Docket No. 1558) (the "<u>Seventh Monthly Fee Application</u>").  No objections were received with respect to the Seventh Monthly Fee Application.  On July 13, 2018, Jones Day filed its *Eighth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from June 1, 2018 through June 30, 2018* (Docket No. 1684) (the "<u>Eighth Monthly Fee Application</u>").  No objections were received with respect to the Eighth Monthly Fee Application.  On August 14, 2018 Jones Day filed its *Ninth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from July 1, 2018 through July 31, 2018* (Docket No. 1761) (the "<u>Ninth Monthly Fee Application</u>" and together with the Seventh Monthly Fee Application and the Eighth Monthly Fee Application, the "<u>Monthly Fee Applications</u>").  No objections were received with respect to the Ninth Monthly Fee Application.[2]

**JONES DAY'S APPLICATION FOR**
<u>**COMPENSATION AND REIMBURSEMENT OF EXPENSES**</u>

<u>**Compensation Paid and Its Sources**</u>

11.    Jones Day has received no payment for services rendered in any capacity in connection with the matters covered in this Third Interim Fee Application, nor has it received any promises for payment for matters covered by this Third Interim Fee Application, from any source other than from the Debtors.  There is no agreement or understanding between Jones Day

---

[2]    On September 14, 2018, Jones Day filed the Tenth Monthly Fee Application, which relates to fees and expenses incurred outside the Compensation Period.  By this Third Interim Fee Application, Jones Day does not seek allowance of compensation and reimbursement of expenses sought in the Tenth Monthly Fee Application.  The objection deadline for the Tenth Monthly Fee Application is October 5, 2018.

and any other person other than partners of Jones Day for the sharing of compensation to be received from the services rendered in these Cases.

**Itemization of Services**
**Rendered and Disbursements Incurred**

12.     Attached hereto as <u>Exhibit A</u> are the time records of Jones Day, which provide a daily summary of the time spent by each Jones Day attorney[3] and paraprofessional[4] during the Compensation Period by project category.  The blended hourly billing rate of attorneys for all services provided during the Compensation Period is $692.99.[5]  The blended hourly billing rate of paraprofessionals for all services provided during the Compensation Period is $309.58.[6]

13.     Attached hereto as <u>Exhibit B</u> is a detailed itemization of expenses for which Jones Day seeks reimbursement.  Jones Day maintains the following policies with respect to expenses:

(a)     No amortization of the cost of any investment, equipment or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased from or contracted with a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

---

[3]     Attorneys include partners, of counsel, counsel, associates, staff attorneys, summer associates and law clerks, as applicable, rendering services to the Debtors during the Compensation Period.

[4]     Paraprofessionals include paralegals, legal support personnel, project assistants and staff members, as applicable, rendering services to the Debtors during the Compensation Period.

[5]     The blended hourly billing rate of $692.99 for attorneys is derived by dividing the total fees for attorneys of $2,796,057.50 by the total hours of 4,034.80 for those same attorneys, not taking into account (i) the 50% write-off of non-working travel and (ii) voluntary reductions implemented by Jones Day in connection with the preparation of this Third Interim Fee Application.

[6]     The blended hourly billing rate of $309.58 for paraprofessionals is derived by dividing the total fees for paraprofessionals of $19,875.00 by the total hours of 64.20 for those same paraprofessionals, not taking into account (i) the 50% write-off of non-working travel and (ii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Third Interim Fee Application.

(b)     Photocopying by Jones Day was charged at 10 cents per page. To the extent practicable, Jones Day utilized less expensive outside copying services.

(c)     Meals charged to the Debtors either were associated with (i) out-of-town travel; (ii) meetings at Jones Day with the Debtors and other professionals; or (iii) attorneys working late on matters concerning the Debtors.

(d)     Charges for airline and train travel include the cost of each airline or train ticket used in connection with the provision of services to the Debtors.

(e)     Jones Day does not charge clients for smartphone charges, remote email access charges and related costs.

(f)     The time pressures associated with the services rendered by Jones Day frequently require Jones Day's professionals and paraprofessionals to devote substantial amounts of time during the evenings and on weekends. To the extent that Jones Day has charged the Debtors for secretarial and other staff overtime expenses, such expenses were directly associated with such after-hours work and were necessary given the circumstances of these Cases. Jones Day does not consider these to be part of its ongoing overhead expenses because they are special incremental expenses arising from the specific services being provided to the Debtors.[7]

14.     Jones Day believes that the time entries set forth in <u>Exhibit A</u> attached hereto are in compliance with the requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

**Total Fees and Expenses**
**<u>Sought for the Compensation Period</u>**

15.     By this Application, Jones Day requests that the Court approve the allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by Jones Day during the Compensation Period. The total fees and reimbursement of expenses are summarized in the following chart:

---

[7]     For the avoidance of doubt, Jones Day is not seeking reimbursement for any secretarial or other staff overtime in this Third Interim Fee Application.

| Total Fees | $2,786,085.00 |
| Total Disbursements | $52,456.65 |
| **TOTAL** | **$2,838,541.65** |

## Compensation by Project Category

16.     The following is a summary of activities performed by Jones Day professionals and paraprofessionals during the Compensation Period, organized by billing category.[8]

***Case Administration — 84.90 hours — $68,365.00***

17.     During the Compensation Period, Jones Day professionals devoted time to:

(a)     communicating electronically and telephonically, both internally and with the Debtors' other advisors, to (i) coordinate closely all activities in these Cases, (ii) provide updates regarding the progress made in these Cases and (iii) plan for future activities; and

(b)     maintaining case management tools for the effective and efficient administration of these Cases, including (i) a detailed work in process report that tracks the progress of all pleadings necessary to, or related to, the administration of these Cases and (ii) a calendar to monitor filing and related litigation deadlines.

***Plan of Reorganization/Disclosure Statement — 832.50 hours — $575,495.00***

18.     During the Compensation Period, Jones Day professionals spent a significant amount of time researching, preparing, drafting and analyzing issues with respect to the Plan.  Jones Day professionals also researched, prepared and drafted, in conjunction with the Debtors' other advisors, the Disclosure Statement and a solicitation procedures motion (Docket No. 1814) in respect thereof.  As part of that process, Jones Day professionals engaged in telephonic discussions and negotiations with counsel to the Committee and other stakeholders

---

[8]     The summary set forth below is qualified in its entirety by reference to the time and services detail attached hereto as <u>Exhibit A</u>.  The hours and fee totals listed by project category in this Third Interim Fee Application do not take into account voluntary reductions implemented by Jones Day in connection with the preparation of this Third Interim Fee Application.

regarding the proposed structure and terms of the Plan, and with the Debtors' management and their other advisors regarding the terms of the Plan and related documents.

19.     Following a dispute with the Committee with respect to the proposed exclusion of the Luxembourg Debtors from the Plan, Jones Day professionals began researching and analyzing potential exit strategies for the Luxembourg Debtors.  Ultimately, Jones Day professionals researched, drafted and filed a motion seeking dismissal of the Luxembourg Debtors' Cases (Docket No. 1537) (the "Dismissal Motion"), including preparing declarations in support thereof.

20.     The Committee and Banco Nacional de Comercio Exterior S.N.C., Institucion de Banca de Desarollo ("Bancomext") opposed the dismissal of the Luxembourg Debtors' Cases, and filed objections to the Dismissal Motion (Docket Nos. 1674 and 1681) (collectively, the "Dismissal Objections").  As such, in addition to the litigation and discovery tasks performed by Jones Day professionals in respect of the Dismissal Motion (further detailed below), Jones Day professionals:  (a) comprehensively analyzed and researched issues raised in the Dismissal Objections, including research related to the standards for dismissal under sections 305 and 1112 of the Bankruptcy Code and estoppel and related equitable defenses raised in the Dismissal Objections; (b) consulted with Luxembourg counsel on issues of foreign and Luxembourg law in connection with the Dismissal Motion and Dismissal Objections; (c) prepared and filed a response (Docket No. 1693) to the Dismissal Objections and two declarations in support of such response; (d) engaged in negotiations with both the Committee and Bancomext concerning the resolution of the Dismissal Objections; and (e) prepared for the hearing on the Dismissal Motion, including by preparing various analyses and other documents in connection with such hearing.

21.     On the second day of the hearing on the Dismissal Motion, the Debtors announced the terms of a settlement in principal with the Committee resolving its objection to the Dismissal Motion.  Prior to, and following the announcement of that settlement in principle, Jones Day professionals negotiated, reviewed and analyzed the *Settlement Term Sheet* (Docket No. 1706-1), which embodied the terms of the settlement announced in Court.[9]

22.     Finally, during the Compensation Period, Jones Day professionals prepared the *Debtors' Second Motion for Entry of an Order Extending Their Exclusive Filing Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof*, which was filed on June 20, 2018 (Docket No. 1601).[10]

***Use, Sale, Lease of Assets* — 1,221.00 hours — $821,070.00**

23.     As discussed in the First and Second Interim Fee Applications, upon commencing these Cases, Jones Day professionals devoted significant time and effort to running multiple sales processes for the sale of substantially all of the U.S. Debtors' assets, including the Debtors' partially constructed PTA/PET manufacturing facility in Corpus Christi, Texas (the "Corpus Christi Plant" and together which certain related assets, equipment and boilers situated at or in the vicinity of the Corpus Christi Plant, the "Corpus Christi Assets").  While the Debtors obtained approval of the sale of the Corpus Christi Assets (*see* Docket No. 1300) prior to the Compensation Period, Jones Day professionals spent a substantial amount of time and effort during the Compensation Period:

---

[9]     After the Compensation Period, Jones Day professionals finalized a stipulation with the Committee formalizing the terms of the Settlement Term Sheet, and on August 24, 2018, filed a Bankruptcy Rule 9019 motion seeking approval of such stipulation (Docket No. 1789), which was approved by the Court on September 13, 2018.

[10]     An amended motion to extend the exclusive plan filing period was filed outside of the Compensation Period on August 20, 2018.  *See Debtors' Amended Second Motion for Entry of an Order Extending Their Exclusive Filing Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* (Docket No. 1776).

(a)     engaging in discussions with Corpus Christi Polymers, LLC ("CCP"), the purchaser of the Corpus Christi Assets, regarding the closing of the sale of the Corpus Christi Assets to CCP (the "Corpus Christi Sale"), including preliminary preparations in respect of such closing;

(b)     preparing patent renewals and analyzing related intellectual property issues in connection with the Corpus Christi Sale;

(c)     preparing documents and related filings for review by certain governmental agencies in connection with the closing of the Corpus Christi Sale;

(d)     preparing documents and related materials, and attending depositions and related hearings before certain government agencies in connection with the closing of Corpus Christi Sale; and

(e)     researching certain foreign trade obligations and issues arising under the asset purchase agreement executed by the Debtors and CCP in connection with the Corpus Christi Sale.

***Cash Collateral/DIP Financing/Other Financing*** — **65.10 hours** — **$44,440.00**

24.     During the Compensation Period, Jones Day professionals devoted time and effort to, among other things, advising the Debtors with respect to compliance with the Debtors' approximately $57.3 million postpetition financing facility with CCP (the "CCP DIP Facility").  Further, Jones Day professionals advised the Debtors with respect to the extension of the CCP DIP Facility, and engaged in contingency planning with respect thereto.

On July 30, 2018, the Debtors filed the *Notice of Election of Extension of Postpetition Financing Facility and Related Budget* (Docket No. 1730), which notified parties in interests of the extension of the maturity of the CCP DIP Facility for two consecutive 30-day periods, with the first 30-day period commencing on August 3, 2018.

***Claims Administration*** — **356.70 hours** — **$266,252.50**

25.     As described in the Second Interim Fee Application, during the prior compensation period, Jones Day professionals devoted time to researching and reviewing the terms of a settlement agreement (the "Brazilian Settlement") between MGI, MGC,

M&G Polimeros Mexico, S.A. de C.V. ("M&G Mexico"), M&G Polimeros Brasil, S.A. ("M&G Brasil") and ALOKE EMPREENDIMENTOS E PARTICIPAÇÕES LTDA.[11]  During the Compensation Period, Jones Day professionals prosecuted the motion seeking approval of the Brazilian Settlement, including by (a) analyzing and researching the issues raised in the Committee's objection to the Brazilian Settlement (Docket No. 1457); (b) preparing for depositions noticed by the Committee; (c) facilitating document requests propounded by the Committee; and (d) drafting and filing a reply to the Committee's objection to the Brazilian Settlement (Docket No. 1463).  Jones Day professionals ultimately negotiated a resolution of the Committee's objection and to that end, drafted an amended and restated Brazilian Settlement agreement, which the Court approved on May 22, 2018 (Docket No. 1493).

26.     Further, during the Compensation Period, Jones Day professionals continued researching and drafting a motion (Docket No. 1489) (the "Italian Settlement Motion") seeking approval of a settlement agreement (the "Italian Settlement Agreement") between M&G Finanziaria S.p.A., M&G Polimeri S.p.A., MGC, MGI, Magnate S.à r.l and Chemtex International Inc. ("Chemtex").  The Debtors filed the Italian Settlement Motion on May 18, 2018, and after Jones Day professionals negotiated certain revisions to the Italian Settlement Agreement to resolve informal objections to the Italian Settlement Motion, the Italian Settlement Motion was approved by the  Court on June 20, 2018 (Docket No. 1593).

27.     In addition, Jones Day professionals analyzed and researched issues related to a motion (Docket No. 1555) (the "Substantial Contribution Motion") filed by the ad

---

[11]     As described in the Second Interim Fee Application, the Brazilian Settlement consensually resolved in excess of $125 million in claims against MGI in exchange for the release of approximately $52 million in intercompany claims that MGI had against M&G Brasil of questionable collectability.  Relatedly, Jones Day professionals negotiated the execution of a side letter agreement related to the Brazilian Settlement through which M&G Brasil and certain of its affiliates agreed to withdraw approximately $1 billion in claims asserted against the Luxembourg Debtors.

hoc group of holders of mechanics' and materialmen's liens asserted against the Corpus Christi Plant requesting entry of an order granting such ad hoc group a $1,166,297.08 substantial contribution claim in these Cases.[12]

28.     Finally, during the Compensation Period, Jones Day professionals devoted time to negotiating a stipulation with Air Products and Chemicals ("APC") with respect to the rejection of a certain *Air Rights Lease Agreement* and an *Amended and Restated Nitrogen Agreement* (Docket No. 1649), whereby the parties agreed to the rejection of such agreements *nunc pro tunc* to March 1, 2018.

***Court Hearings — 39.90 hours — $37,090.00***

29.     During the Compensation Period, Jones Day professionals prepared for, attended and participated in numerous hearings before the Court, including, among others, (a) the hearing on the Brazilian Settlement Motion held on May 17, 2018; (b) the hearing on the motion to dismiss certain claims brought by M&G Brasil against M&G Polymers and Comerica Bank held on May 24, 2018; (c) a telephonic hearing regarding a discovery and scheduling dispute the Dismissal Motion held on June 18, 2018; and (d) the hearing on Dismissal Motion held on July 18 and 19, 2018.

***Professional Retention/Fee Issues — 46.50 hours — $30,595.00***

30.     During the Compensation Period, Jones Day professionals devoted time to advising the Debtors on fee issues that arose in connection with the continued retention of the Debtors' professionals, including in connection with the retention of certain professionals retained by the Debtors in the ordinary course of business. In addition, Jones Day professionals drafted and filed an application to retain Greenhill & Co., LLC as the Debtors' co-financial

---

[12]     As of the filing of this Third Interim Fee Application, the Substantial Contribution Motion has not been noticed for hearing.

advisor and co-investment banker *nunc pro tunc* to April 1, 2018 (Docket No. 1545). Such application was approved by the Court on June 21, 2018 (Docket No. 1603).

***Fee Application Preparation* — 106.20 hours — $66,775.00**

31. During the Compensation Period, Jones Day professionals and paraprofessionals devoted time to (a) reviewing monthly invoices to ensure compliance with the UST Fee Guidelines (as defined below) and the Interim Compensation Order; (b) drafting and filing the Monthly Fee Applications and the Second Interim Fee Application; and (c) reviewing the monthly fee applications of the Debtors' other advisors.

***Nonworking Travel* — 27.60 hours — $26,280.00**

32. During the Compensation Period, Jones Day professionals devoted time traveling to and from (a) Delaware for the hearings described in the "Court Hearings" section above and the Bancomext mediation described in "Litigation/Adversary Proceedings" below; and (b) New York for depositions in connection with the Brazil Settlement. The total amount of the non-working travel was $26,280.00, which was then discounted by 50% to $13,140.00.

***General Corporate/Real Estate* — 180.60 hours — $137,785.00**

33. During the Compensation Period, Jones Day professionals analyzed and advised on, issues relating to (a) the Debtors' insurance policies; (b) the Debtors' bank accounts and cash management system, (c) the operations at MGI's branch in Italy, including reviewing a number of services agreements and related agreements between the Debtors and their non-debtor affiliates in Italy; and (d) the collection of certain of the Debtors' account receivables. Jones Day Professionals also assisted the Debtors in obtaining a seventh interim cash management order (Docket No. 1498) and a final cash management order (Docket No. 1609).

34. In addition, Jones Day professionals researched, drafted and filed (a) a motion (Docket No. 1539) (the "Section 345 Motion") seeking a waiver of section 345(b) of the

Bankruptcy Code solely with respect to the Luxembourg Debtors' foreign bank accounts; (b) a motion (Docket No. 1766) (the "Luxembourg Debtors Payment Motion") seeking Court approval to pay up to $300,000 to certain prepetition creditors of the Luxembourg Debtors; and (c) a stipulation (the "Banco do Brasil Stipulation") between Banco do Brasil S.A., New York Branch ("Banco do Brasil") and M & G Resins USA, LLC ("M&G Resins"), under which the Debtors consented to Banco do Brasil drawing down on a collateral account held by Banco do Brasil holding approximately $5 million in the Debtors' receivables pledged to Banco do Brasil. The Banco do Brasil Stipulation further provides for a release of claims against the Debtors, and deems Banco do Brasil to have an approximately $30 million allowed deficiency claim against M&G Resins and MGC. The Banco do Brasil Stipulation was approved by the Court on May 31, 2018 (Docket No. 1525).

***Schedules/SOFA/U.S. Trustee Reports* — 3.40 hours — $2,670.00**

35. During the Compensation Period, Jones Day professionals continued to analyze the need for potential amendments to the schedules of assets and liabilities and statements of financial affairs. In addition, Jones Day professionals filed three monthly operating reports (*see* Docket Nos. 1521, 1640, 1729).

***Employee Matters* — 124.60 hours — $90,140.00**

36. During the Compensation Period, Jones Day professionals (a) advised the Debtors with respect to (i) issues relating to healthcare coverage and related benefits, (ii) litigation issues related to the Debtors' employees and (iii) certain employee communications concerning healthcare and benefits coverage; (b) researched and analyzed reporting requirements with respect to the winding-down of the Debtors' employee benefits plans, including research and analysis concerning severance and related issues; and (c) engaged in negotiations with the Pension Benefit Guaranty Corporation (the "PBGC") in connection with the transfer of M&G

Polymers' pension plans to the PBGC and responded to document requests related thereto propounded by the PBGC.

37.     Finally, during the Compensation Period, Jones Day professionals negotiated and drafted a stipulation (the "1114 Stipulation") with the United Steel Workers (the "USW")—the authorized representative of certain former employees of M&G Polymers— regarding the consensual resolution of, among other things, (a) a dispute with the USW concerning the timing of the termination of "retiree benefits" and (b) prepetition litigation brought by certain of the retirees against M&G Polymers concerning alleged violations of labor laws. A motion seeking approval of the 1114 Stipulation was filed on June 5, 2018 (Docket No. 1536), and approved by the Court on June 21, 2918 (Docket No. 1602).

***Tax Advice — 54.50 hours — $39,787.50***

38.     During the Compensation Period, Jones Day professionals conducted research in connection with certain property tax and state tax law issues. Further, Jones Day professionals provided advice regarding tax compliance, tax planning and other tax matters relevant to the administration of these Cases and the closing of the sale processes described above.

***Litigation/Adversary Proceedings — 884.70 hours — $560,995.00***

39.     As described in the Second Interim Fee Application, on March 7, 2018, Bancomext brought an adversary proceeding (*see* Adv. Pro. No. 18-50302) (the "Bancomext Adversary Proceeding") against certain of the Debtors. Continuing their work from previous compensation periods, during the Compensation Period, Jones Day professionals (a) engaged in discussions with counsel to the Committee and counsel to Bancomext regarding a number of briefing and related scheduling stipulations; (b) reviewed, researched and analyzed specific issues related to Bancomext's objection (Adv. Pro. No. 18-50302, Docket No. 20) to the motions

to dismiss the Bancomext Adversary Proceeding filed by the Debtors and the Committee (Adv. Pro. No. 18-50302, Docket Nos. 7 and 11, respectively); and (c) researched and drafted a reply (Adv. Pro. No. 18-50302, Docket No. 25) to Bancomext's objection to the motion to dismiss the Bancomext Adversary Proceeding.

40.     In addition to their work in connection with the Bancomext Adversary Proceeding, Jones Day professionals spent time defending against Bancomext's appeal of the order of the Court approving the sale of the Corpus Christi Assets (Docket No. 1300) (such appeal, the "Bancomext Appeal").  Specifically, in connection with the Bancomext Appeal, Jones Day professionals:  (a) negotiated and drafted a joint letter to the District Court proposing a briefing schedule with counsel to Bancomext and the Committee; (b) engaged in preliminary mediation discussions with counsel to Bancomext and counsel to the Committee, and ultimately, the mediator presiding over the Bancomext Appeal; (c) researched and drafted a mediation statement in the Bancomext Appeal; (d) prepared for, and participated in, a day of mediation in connection with the Bancomext Appeal; and (e) negotiated and drafted a term sheet resolving the Bancomext Appeal and the Bancomext Adversary Proceeding, which was filed after the Compensation Period on August 2, 2018 (Docket No. 1738-1).[13]

41.     Further, during the Compensation Period, Jones Day professionals spent significant time and effort engaging in litigation and discovery related to the Dismissal Motion on an expedited timeline.  Specifically, Jones Day Professionals:  (a) responded to a series of extensive formal and informal document requests propounded by the Committee and Bancomext, which involved reviewing over 11,000 documents in less than three weeks; (b) attended

---

[13]     On September 6, 2018, Bancomext filed notices voluntarily dismissing, with prejudice, the Bancomext Appeal (Civ. Pro. No. 18-00546-LPS, Docket No. 38) and the Bancomext Adversary Proceeding (Adv. Pro. No. 18-50302, Docket No. 36).  Both the Bancomext Appeal and Bancomext Adversary Proceeding have been closed.

numerous meet and confers with respect to certain discovery and scheduling issues related to the same; (c) analyzed certain legal issues arising in connection with the same; and (d) prepared for, prosecuted, and defended several depositions.

42.     Finally, during the Compensation Period, Jones Day professionals spent time:  (a) participating in an adversary proceeding commenced by M&G Brasil against Comerica Bank and M&G Polymers (Adv. Pro. No. 18-50007), including by reviewing pleadings filed by Comerica Bank and M&G Brasil, filing joinders to certain pleadings filed by Comerica Bank and attending and participating in a hearing on the motion to dismiss such litigation; and (b) reviewing, analyzing and responding to a third party subpoena propounded on Chemtex in connection with certain patent-infringement litigation.

***Automatic Stay/Adequate Protection* — 2.10 hours — $1,495.00**

43.     During the Compensation Period, Jones Day professionals (a) drafted letters reminding certain creditors of the Luxembourg Debtors of the presence of the automatic stay with respect to certain demands made by such creditors; and (b) communicated with creditors regarding the return of certain equipment.

***Executory Contracts/Unexpired Leases* — 30.50 hours — $16,755.00**

44.     During the Compensation Period, Jones Day professionals (a) advised the Debtors regarding the assumption and rejection of certain executory contracts and unexpired leases; (b) conducted research and developed legal analyses regarding issues concerning the rejection of certain executory contracts and related damages asserted by the counterparties to such contracts; and (c) drafted and filed the *Debtors' Fifth Omnibus Motion for Entry of an Order Authorizing Them to Reject Certain Executory Contracts and Unexpired Leases Nunc Pro Tunc to the Rejection Date* (Docket No. 1647), which was approved by the Court on July 23, 2018 (Docket No. 1718).

*Meetings* — 38.20 hours — $29,942.50

45.     During the Compensation Period, Jones Day professionals devoted time to (a) attending internal meetings, meetings with the Debtors, and meetings with other professionals in these Cases regarding overall case strategy and specific issues arising in these Cases; and (b) preparing for, attending and participating in the Debtors' board meetings.

## Billing Adjustments

46.     During the Compensation Period, Jones Day made $13,140.00 in adjustments due to a 50% discount for time spent on nonworking travel.[14]  In addition, Jones Day wrote off an additional $176,687.50 in fees and $3,957.43 in disbursements incurred during the Compensation Period prior to filing the Monthly Fee Applications.

47.     In connection with the preparation of this Third Interim Fee Application, Jones Day implemented a voluntary reduction of $16,707.50 in fees to write off fees incurred by Summer Associates and to account for timekeepers that billed *de minimis* amounts of time to the Debtors during the Compensation Period.

## APPENDIX B GUIDELINES

48.     Pursuant to the *Appendix B Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorney in Larger Chapter 11 Cases* (the "UST Guidelines"), Jones Day responds to the following questions with respect to this Application:[15]

(a)     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

---

[14]     To the extent possible, Jones Day professionals work while traveling.

[15]     In further compliance with the Appendix B Guidelines, Jones Day attaches hereto its Budgets for the Compensation Period as Exhibits C-1 through C-3, its Staffing Plans for the Compensation Period as Exhibits D-1 through D-3 and a Summary of Compensation Requested by Project Category as Exhibit E.

(i)     No.

(b)     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application higher by 10% or more, did you discuss the reasons for the variation with the client?

(i)     N/A

(c)     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

(i)     No.

(d)     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?

(i)     Yes, Jones Day expended 106.2 hours and incurred $66,775.00 reviewing the Monthly Fee Applications to remove any confidential or privileged information and to ensure compliance with the Interim Compensation Order and the UST Guidelines.

(e)     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

(i)     *See* ¶ 48(d)(i).

(f)     If the fee application includes any rate increases since retention in this case:

(A)     Did your client review and approve those rate increases in advance?

(1)     Yes.

(B)     Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

(1)     N/A

## REQUESTED COMPENSATION SHOULD BE ALLOWED

49.     Section 330(a)(1) of the Bankruptcy Code provides that the Court may

award a professional person employed under section 327 and 1103 of the Bankruptcy Code:

(A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A) further provides the following standards for the

Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

50.     Jones Day respectfully submits that it has satisfied the requirements of

section 330 of the Bankruptcy Code for the allowance of compensation and reimbursement of

expenses sought herein.  The services described above were necessary to the administration of

these Cases and were beneficial to the Debtors and parties in interest.  Jones Day's services were

often performed in a minimum amount of time and commensurate with the complexity of the matters facing the Debtors.  Further, the compensation sought by Jones Day is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy.

## CONCLUSION

51.     Jones Day attorneys and paraprofessionals expended a total of 4,099 hours in connection with their representation of the Debtors during the Compensation Period. Employing Jones Day's normal hourly rates for work of this character, the reasonable value of the services rendered by Jones Day for the Debtors during the Compensation Period, after taking into account the billing adjustments discussed above, is $2,786,085.00.  During the Compensation Period, Jones Day also incurred expenses of $52,456.65.[16]  Pursuant to the Interim Compensation Order, by this Application Jones Day seeks the allowance of fees and expenses incurred during the Compensation Period in the sum of $2,838,541.65.

52.     Jones Day respectfully submits that the amount requested in this Third Interim Fee Application is fair and reasonable and satisfies the requirements of section 330 of the Bankruptcy Code.  Moreover, Jones Day has reviewed the requirements of Local Rule 2016-2 and the Interim Compensation Order and believes that this Third Interim Fee Application complies with such Local Rule and Order.

## NOTICE

53.     Jones Day will serve this Third Interim Fee Application in accordance with the Interim Compensation Order and the Local Rules.  Pursuant to the Interim Compensation Order, objections to this Third Interim Fee Application, if any, must be in writing

---

[16]     This figure was calculated after taking into account Jones Day's voluntary write-down of expenses of $3,957.43 prior to filing Monthly Fee Applications.

and filed with the Court and served upon Jones Day so as to be received no later than October 5, 2018 (the "Objection Deadline").

## <u>NO PRIOR REQUEST</u>

54.     No prior request for the relief sought in this Application has been made to

this or any other court.

Dated: September 14, 2018
      Wilmington, Delaware

/s/ *Carl E. Black*

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:   (212) 326-3939
Facsimile:   (212) 755-7306
Email:        sgreenberg@jonesday.com
               scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:   (216) 586-7035
Facsimile:   (216) 579-0212
Email:        ceblack@jonesday.com

Counsel for the Debtors and Debtors in Possession

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

M & G USA CORPORATION, *et al.*,[1]

Debtors.

Chapter 11

Case No. 17-12307 (BLS)

(Jointly Administered)

## CERTIFICATION OF CARL E. BLACK

Carl E. Black, under penalty of perjury, certifies as follows:

1.      I am a partner with the law firm of Jones Day and have been admitted to appear before this Court.  I make this certification in accordance with Local Rule 2016-2 regarding the contents of applications for compensation and expenses.  I have read the Third Interim Fee Application and am familiar with the work performed on behalf of the Debtors by the attorneys and paraprofessionals of Jones Day.

2.      The facts set forth in the foregoing Third Interim Fee Application are true and correct to my knowledge, information and belief.  I have reviewed Local Rule 2016-2 and the Interim Compensation Order and submit that the Third Interim Fee Application substantially complies with such Local Rule and the Interim Compensation Order.

Dated:  September 14, 2018

　　_/s/ Carl E. Black_　
Carl E. Black

---

[1]      The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.