# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN M & G POLYMERS USA, LLC AND MOSSI&GHISOLFI FINANZIARIA S.P.A.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move the Court (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Proposed Order"), approving the settlement agreement (the "Settlement Agreement")[2] by and between Mossi&Ghisolfi Finanziaria S.p.A. ("MGF") and M &G Polymers USA, LLC ("Polymers" and together with MGF, the "Parties"). In support of this Motion, the Debtors submit the *Declaration of Dennis Stogsdill in Support of the Debtors' Motion for Entry of an Order Approving Settlement Agreement between M & G Polymers USA, LLC and Mossi&Ghisolfi Finanziaria S.p.A.*, attached hereto as Exhibit B (the "Stogsdill Declaration"), and respectfully represent as follows:

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] A copy of the Settlement Agreement is attached to the Proposed Order as Exhibit 1.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. General Background

2. On October 24, 2017, Debtor M&G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146). Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

4. On September 5, 2018, all of the Debtors other than Debtors Mossi & Ghisolfi International S.à r.l. ("MGI"), M&G Chemicals S.A. ("MGC") and M&G Capital S.à r.l. (together with MGI and MGC, the "Luxembourg Debtors") filed the *Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 1812) (as it may be modified, amended or supplemented, the "Plan") and related *Disclosure Statement for Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 1813). On September 13, 2018,

-2-

the Court entered an order approving the dismissal of the Luxembourg Debtors' Cases (Docket No. 1859), pursuant to a stipulation with the Committee (Docket No. 1859-1) (the "Dismissal Stipulation"), effective on the earlier of (a) the effective date of the Plan and (b) the date upon which a final and non-appealable order is entered approving a resolution of certain intercompany claims (the "Mexican Intercompany Claims") asserted by the Debtors' non-debtor affiliates in Mexico.

### B. The Intercompany Transactions[3]

5. MGF is the ultimate parent company of Polymers and each of the remaining Debtors. Prior to the Petition Date, MGF engaged in intercompany transactions with Polymers and its affiliates in the ordinary course of business (the "Intercompany Transaction"). In relevant part, the Intercompany Transactions that are subject to the Settlement Agreement are comprised of the following:

(a) a 2014 trade receivable in the amount of $2,727,181.44, issued by MGF in favor of Polymers, which trade receivable is related to a credit note from MGF for a 2013 contract service agreement (the "Polymers Receivable");

(b) an October 2017 trade payable invoice in the amount of $72,488.16, owed by Polymers to MGF, which trade payable is related to Polymers' reimbursement of salaries and expenses of expatriate employees of MGF (the "Polymers Payable");

(c) a $122,974.95 intercompany payable owing from Debtor M & G Resins USA, LLC ("Resins") to MGF arising from (i) salaries and expenses of expatriate employees of MGF providing services to Resins and (ii) fees and expenses associated with guarantees provided by MGF on behalf of Resins (the "Resins Payable"); and

(d) a $57,929.20 intercompany payable owing from Debtor M&G Waters USA, LLC ("Waters") to MGF arising from (i) salaries and expenses of expatriate employees of MGF providing services to Waters and (ii) fees and expenses associated with guarantees provided MGF on behalf of Waters (the "Waters Payable").

---

[3] For the avoidance of doubt, in the event that the Settlement Agreement is not approved, the Debtors reserve all rights to assert any claims and/or defenses against MGF or any other party with respect to any claims proposed to be settled thereunder.

-3-

### C. The MGF Proceedings

6. On October 13, 2017, MGF commenced proceedings (the "MGF Proceedings") before the Court of Alessandria, Italy (the "Italian Court") pursuant to the terms of article 161, section 6, of Italian Royal Decree No. 267, dated March 16, 1942 (the "Italian Bankruptcy Law"). Polymers understands that the MGF Proceedings were closed on April 24, 2018, and further that MGF is now preparing to restructure its indebtedness—including with respect to certain intercompany payables and receivables proposed to be settled pursuant to the Settlement Agreement—by agreements with its creditors as part of a restructuring plan (*accordo di ristrutturazione*) (the "Arrangement of Creditors"). Polymers further understands that any such restructuring plan must be ratified (*omologa*) by the Italian Court under section 182-bis of the Italian Bankruptcy Law by means of judicial measure, also temporarily effective ("Court Approval").

### D. The Fibras Brasil Acquisition

7. Polymers understands that its non-debtor affiliates, M&G Fibras Participações Ltda. and M&G Fibras Holding S.A. (the "Fibras Sellers"), intend to sell all of their shares in each of Fibras e Resinas and M&G Fibras Brasil S.A. ("Fibras Brasil") to Indorama Ventures Public Company Limited (or one of its affiliates) (the "Fibras Purchaser" and such sale, the "Fibras Acquisition") in accordance with a non-binding offer submitted to the Fibras Sellers by the Fibras Purchaser on April 16, 2018 (the "Offer Letter").

8. Under the Offer Letter, the Fibras Purchaser has proposed to, among other things, allocate BRL 61,133,000 to discharge all of the existing intercompany debt of Fibras Brasil owed to Debtor MGI. Utilizing the foreign exchange rate of BRL to USD as of May 2018, and assuming that no adjustments to the purchase price are made at the closing of the Fibras Acquisition, Polymers understands that MGI will receive approximately $15,707,000 as the

-4-

result of such sale.  Polymers understands that MGF obtaining approval of its proposed Arrangement of Creditors is a condition precedent to the closing of the Fibras Acquisition.

9. Both confirmation of MGF's proposed Arrangement of Creditors and the closing of the Fibras Acqusition are of significance to the Debtors.  First, under the Dismissal Stipulation, MGI is entitled to a refund of $2 million of the $6 million consideration paid by MGI to the U.S. Debtors[4] thereunder in the event that the Fibras Acquisition becomes incapable of closing.[5]  Second, upon the closing of the Fibras Acquisition, it is anticipated that MGI will receive $15,707,000 on account of intercompany claims owed to it by Fibras Brasil, amounts that MGI will use to fund a settlement with, among other parties, Sculptor Investments IV S.à r.l. concerning certain $72.5 million floating rate guaranteed secured bonds issued by MGI (the "MGI Bonds") pursuant to which Polymers is a guarantor.[6]  Finally, in the event that MGF does not confirm an Arrangement of Creditors, Polymers understands that MGF may be forced into a liquidation in Italy, and if such an event were to occur, Polymers believes that it would receive little to no recovery on account of its claims against MGF.  *See* Stogsdill Decl., ¶ 5.

### E. The Settlement Agreement

10. Under the Settlement Agreement, the Parties propose to setoff the Polymers Payable against the Polymers Receivable.  Upon effectuating such setoff, Polymers will have a claim against MGF in the amount of $2,654,693.28 (the "Polymers Claim").  In furtherance of

---

[4] The "U.S. Debtors" refer to all Debtors other than the Luxembourg Debtors.

[5] The Dismissal Stipulation provides that MGI shall be entitled to a refund of up to $3 million based on the extent of any reduction of the Mexican Intercompany Claims, inclusive of any reductions resulting from the inability of the Fibras Acquisition to close.

[6] *See Deed of Settlement Between M&G Capital S.à r.l., Mossi & Ghisolfi International S.à r.l. and Sculptor Investments IV S.à r.l.* (Docket No. 1844-1) (the "Och-Ziff Settlement").  Under the Och-Ziff Settlement, MGI has agreed to pay Sculptor Investments IV S.à r.l. ("Och-Ziff"), in its capacity as sole bondholder of the MGI Bonds, $8 million to be funded solely from the amounts proposed to be paid to MGI upon the closing of the Fibras Acquisition.  In exchange, Och-Ziff has agreed to release, among other parties, Polymers from its obligations as a guarantor of the MGI Bonds.  The closing of the Fibras Acquisition is a condition precedent to the Och-Ziff Settlement.

MGF's efforts to obtain approval of a viable Arrangement of Creditors, Polymers has further agreed (subject to the Court's approval) to accept cash payment on account of only 10% of the Polymers Claim (*i.e.*, a release of 90% of the amount of the Polymers Claims), subject to certain adjustments described below (the "Polymers Release").

11. In exchange for these considerations, MGF has agreed to release each of Polymers, Resins and Waters from all present and future obligations and liabilities under or in connection with the Polymers Payable, the Polymers Receivable, the Resins Payable and the Waters Payable (collectively, the "Payables and Receivables"). In turn, Polymers proposes to release MGF from all present and future obligations and liabilities under or in connection with the Payables and Receivables except with respect to the Polymers Claim and any claims or causes of action related to the Payables and Receivables arising from fraud or willful misconduct on the part of MGF or its representatives.

12. Based upon the information regarding MGF's financial condition that is available to Polymers, Polymers does not expect that it would be able to recover in excess of 10% from MGF on account of the Polymers Claim. Therefore, Polymers believes the Polymers Release is in the best interests of, and is beneficial to, the U.S. Debtors' estates because it increases the likelihood that the Italian Court will confirm MGF's proposed Arrangement of Creditors. *See* Stogsdill Decl., ¶ 4. If MGF confirms its Arrangement of Creditors, MGI will receive an approximately $15.7 million payment in connection with the closing of the Fibras Acquisition. MGI's receipt of these amounts, in turn, (a) increases the consideration that the U.S. Debtors will retain under the Dismissal Stipulation, subject to any reduction resulting from resolution of the Mexican Intercompany Claims and (b) will be used to fund the Och-Ziff Settlement, which effectuates a release in favor of Polymers. *See id.* at ¶ 5.

13. The principal terms of the Settlement Agreement are as follows:[7]

(a) ***Setoff of Polymers Payable and Polymers Receivable.*** On the Effective Date (as defined below), the Polymers Payable shall be setoff against the Polymers Receivable and Polymers shall have a resulting claim in the amount of $2,654,693.28 against MGF (*i.e.*, the Polymers Claim). Settlement Agreement, § 1.

(b) ***Limitation on Recovery.***

(i) In connection with the Arrangement of Creditors, Polymers hereby agrees that it will accept cash payment of 10% (ten percent) of the Polymers Claim and will waive the residual 90% (ninety percent) of the Polymers Claim; *provided*, that if any general unsecured (*i.e.*, non-priority) creditor of MGF with an individual claim in excess of €200,000.00 receives a recovery (by percentage) greater than 10% (ten percent) on account of its claim against MGF, Polymers' payment shall be increased (and the waiver of the residual percentage of the Polymers Claim decreased) by the amount required to increase Polymers' recovery by the same percentage. For the avoidance of doubt, claims against MGF held by (1) taxing authorities and (2) current or former employees of MGF (to the extent such claims arise from such employee's employment by MGF) shall constitute priority claims for purposes of this clause (*i.e.*, section 2(a) of the Settlement Agreement).

(ii) Clause (i) (*i.e.*, section 2(a) of the Settlement Agreement) shall not be applicable (1) to any payment or other recovery received by a creditor of MGF on account of its claim against MGF to the extent such recovery is received from a source other than MGF or (2) to the extent there is a judicial determination by a court of competent jurisdiction in Italy requiring MGF to pay any creditors in excess of 10% (ten percent) of its claim.

(iii) Subject to clause (i) (*i.e.*, section 2(a) in the Settlement Agreement), Polymers hereby agrees to be listed as a subordinated creditor for purposes of the Arrangement with Creditors.

*Id*. at § 2.

(c) ***Releases.***

(i) As consideration for Polymers' agreement to accept a reduced recovery on account of the Polymers Claim, immediately after the setoff in section 2 of

---

[7] The following summary is qualified in its entirety by reference to the provisions of the Settlement Agreement. In the event of any inconsistencies between the provisions of the Settlement Agreement and the terms set forth herein, the terms of the Settlement Agreement shall govern.

the Settlement Agreement becomes effective, MGF unconditionally and irrevocably releases Polymers, Resins and Waters from all present and future obligations and liabilities (both actual and contingent) under or in connection with the Payables and Receivables.

  (ii) Immediately after the setoff in section 2 of the Settlement Agreement becomes effective, Polymers unconditionally and irrevocably releases MGF from all present and future obligations and liabilities (both actual and contingent) under or in connection with the Payables and Receivables except (1) with respect to payments provided for in section 2 of the Settlement Agreement (*i.e.*, ¶ 9(b) hereof) and (2) any claims or causes of action related to the Payables and Receivables arising from fraud or willful misconduct on the part of MGF or its representatives.

*Id.* at § 4.

(d) ***Conditions Precedent.***

  (i) The Settlement Agreement shall become effective (the "Effective Date") as of the first date when each of the following conditions have been satisfied:

    (A) Each of the counterparts of the Settlement Agreement have been duly executed by each of the Parties;

    (B) Entry into and performance under the Settlement Agreement by Polymers, Resins and Waters is approved and authorized by the Bankruptcy Court in these Cases; and

    (C) Court Approval shall have been obtained.

  (ii) If (1) the Effective Date has not occurred on or prior to March 31, 2019, (2) the Bankruptcy Court denies approval of a motion seeking approval of the Settlement Agreement or (3) the proposed Arrangement with Creditors is inadmissible and/or the proposed Arrangement with Creditors is not approved by the applicable class of creditors or the competent Italian Court, the Settlement Agreement and its terms shall be null and void and of no further force and effect.

  (iii) The Parties hereto acknowledge and agree that (1) they are entering into this Agreement as a settlement of claims, (2) as a result, the terms (including the agreements, representations and acknowledgments) hereof shall be deemed made as part of settlement negotiations, and (3) as such, if the settlement contemplated herein is not consummated or is unwound, nothing contained herein shall be construed as, or asserted by one Party against another Party hereto as, an admission with respect to any claim, liability or fact, or as evidence of any estoppel against another Party hereto.

*Id.* at § 6.

## RELIEF REQUESTED

14. The Debtors request entry of an order, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, in substantially the form of the Proposed Order, approving the Settlement Agreement.

## BASIS FOR RELIEF

15. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that a transaction involving property of the estate should generally be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983). Moreover, section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

16. Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996). "The authority to approve a compromise [or] settlement is within the sound discretion of the bankruptcy court." *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. Jul. 10, 2008) (quoting *Key3media Group, Inc. v. Pulver.Com, Inc. (In re Key3media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("In exercising this discretion,

the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.")).

17. When determining whether a settlement is fair and reasonable under Bankruptcy Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the "Martin Factors"):

    (a) the probability of success in litigation;

    (b) the likely difficulties of collection;

    (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

    (d) the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (in applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on several factors, including the probability of success in the litigation, the complexity of the litigation, the attendant expense and delay, and the interests of the creditors); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the lowest level in the range of reasonableness).

18. While bankruptcy courts are directed to determine whether settlements are in the "best interests of the estate," *In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989), the bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir.

1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Indeed, the bankruptcy court is not to decide the numerous questions of law or fact raised in the litigation, but rather should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[I]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise . . . [it] must only conclude that the compromise or settlement . . . be above the lowest point in the range of reasonableness.") (internal quotation and citations omitted).

19. As set forth in greater detail below, the Debtors believe that the weight of the Martin Factors favors approval of the Settlement Agreement. The Settlement Agreement increases the probability of MGF confirming its proposed Arrangement of Creditors before the Italian Court, a critical component of MGI receiving an approximately $15.7 million payment upon the closing of the Fibras Acquisition, the U.S. Debtors retaining $2 million under the Dismissal Stipulation, Polymers obtaining a release under the Och-Ziff Settlement and Polymers receiving any recovery on account of the Polymers Receivable (as setoff under the Settlement Agreement). Further, the Settlement Agreement provides Resins and Waters with a release on account of the Resins Payable and the Waters Payable, respectively, for no additional consideration, and effects a mutual release of claims between Polymers and MGF (subject to the conditions in the Settlement Agreement). Finally, the Settlement Agreement is the result of arms'-length negotiations between the Parties. *See* Stogsdill Decl., ¶ 4. As such, the Debtors respectfully submit that the Settlement Agreement falls well above the lowest point in the range of reasonableness and should be approved by this Court.

20. *Probability of Success.* While Polymers believes (and MGF does not contest) the merits and validity of the Polymers Payable, it understands that MGF lacks the funds with which to satisfy the full amount of such claims. Absent execution of the Settlement Agreement and specifically, the Polymers Release, it is likely that Polymers would receive no recovery from MGF on account of the Polymers Payable. Further, the Settlement Agreement provides Resins and Waters with a release of approximately $120,000 in claims (and a setoff of approximately $60,000 in claims with respect to Polymers) that Resins and Waters owed MGF for no additional consideration on their part. Therefore, this factor weighs in favor of approval of the Settlement Agreement.

21. *Difficulties of Collection.* The Debtors believe that it would be difficult, if not impossible, to collect the full amount of the Polymers Receivable in the MGF Proceeding. Among other things, Polymers believes that MGF lacks the funds with which to satisfy such claims. Indeed, MGF is in the process of proposing an Arrangement of Creditors before the Italian Court, and Polymers understands that if it does not accept a 10% recovery on account of the Polymers Payable, MGF will be forced into a liquidation.[8] In a liquidation scenario, Polymers understands that it would receive no recovery on account of such claim.

22. On the other hand, if Polymers accepts a 10% recovery on its claims against MGF (*i.e.*, the Polymers Release), there is a greater likelihood that MGF confirms its Arrangement of Creditors, MGI recovers approximately $15.7 million in connection with the Fibras Acquisition, the U.S. Debtors retain an additional $2 million under the Dismissal Stipulation and Polymers obtains a release of its obligations as guarantor pursuant to the MGI Bonds under the Och-Ziff Settlement. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

---

[8] In the event that other creditors of MGF with claims in excess of €200,000 do recover in excess of 10% on account of their claims, Polymers will recover a commensurate percentage recovery on account of the Polymers Claim.

23. *Complexity of Litigation.* Even if MGF had the funds with which to satisfy in excess of 10% of the Polymers Claim, Polymers would be forced to pursue collection in Italy as part of the MGF Proceeding on issues likely governed by Italian law, a variable which mitigates against expending valuable estate resources in pursuit of such recovery. Moreover, as part of the Settlement Agreement, Polymers, Waters and Resins are obtaining a release related to the Polymers Payable, Resins Payable and Waters Payable. While each of these Debtors believes that they may have certain defenses with respect to such claims, the Settlement Agreement prevents the risk of an adverse ruling in respect thereof.

24. *Paramount Interests of Creditors.* Finally, the Settlement Agreement is in the paramount interests of all creditors. The Settlement Agreement releases Polymers, Resins and Waters from approximately $180,000 in claims (including the setoff of claims between Polymers and MGF) without the need for litigation, thereby saving the estates the administrative cost of litigating such claims. Further, the Settlement Agreement effectuates a consensual setoff without the need for litigation.

25. Most importantly, however, the Settlement Agreement is in the paramount interest of the Debtors' creditors because, absent Polymers' entry thereto, MGF may be forced into a liquidation in Italy. If MGF is forced into such a liquidation, Polymers understands that it will receive little to no recovery on its claims and the Fibras Acquisition will become incapable of closing. In such a scenario, Polymers would not recover the approximately $200,000 it is contemplated to recover under the Settlement Agreement, MGI will not recover the $15.7 million earmarked for it as part of the Fibras Acquisition, Polymers would not obtain release of guarantee obligations it has in connection with the MGI Bonds and the U.S. Debtors

will be forced to refund $2 million to MGI (to the extent not already refunded in connection with the reduction of the Mexican Intercompany Claims).

26. For these reasons, entry into the Settlement Agreement is a sound exercise of the Debtors business judgment, is in best interests of their creditors and their estates and falls well above the lowest point in the range of reasonableness. Accordingly, the Debtors respectfully request that the Court approve and authorize their entry into the Settlement Agreement.

## NOTICE

27. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or order of the Court; (c) DAK and its counsel, Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP; (d) Banco Inbursa S.A., Institución De Banca Multiple, Grupo Financiero Inbursa,Control Empresarial de Capitales, S.A. de C.V. and their counsel, Cleary Gottlieb Steen & Hamilton LLP and Young Conaway Stargatt & Taylor, LLP; (e) Macquarie Investments US Inc. and its counsel, Sidley Austin LLP and Ashby & Geddes, P.A.; (f) the Committee and its counsel Milbank, Tweed, Hadley & McCoy LLP and Cole Schotz P.C.; (g) Corpus Christi Polymers, LLC and its counsel, Weil, Gotshal & Manges LLP, Lowenstein Sandler LLP and Duane Morris; (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; and (i) MGF. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

28. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

| | |
|---|---|
| Dated: September 19, 2018 | PACHULSKI STANG ZIEHL & JONES LLP |

*/s/ Joseph M. Mulvihill*_____
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:	(302) 652-4100
Facsimile:	(302) 652-4400
Email:	ljones@pszjlaw.com
	joneill@pszjlaw.com
	jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:	(212) 326-3939
Facsimile:	(212) 755-7306
Email:	sgreenberg@jonesday.com
	scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:	(216) 586-7035
Facsimile:	(216) 579-0212
Email:	ceblack@jonesday.com

Co-Counsel for the Debtors and Debtors in Possession