# EXHIBIT A

```
 1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2
                                         .    Chapter 11
 3   IN RE:                              .
                                         .    Case No. 17-12307 (BLS)
 4   M&G USA CORPORATION, et al.,        .
                                         .
 5                                       .
                                         .    Courtroom No. 1
 6                                       .    824 North Market Street
                                         .    Wilmington, Delaware 19801
 7                                       .
                           Debtors.      .    March 27, 2018
 8   . . . . . . . . . . . . . . . . .        3:30 P.M.

 9                        TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE BRENDAN L. SHANNON
10                 UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:         Laura Davis Jones, Esquire
                              James O'Neill, Esquire
13                            Joseph Mulvihill, Esquire
                              PACHULSKI STANG ZIEHL & JONES LLP
14                            919 N. Market Street, 17th Floor
                              P.O. Box 8705
15                            Wilmington, Delaware 19801

16

17

18   Audio Operator:          DANA MOORE

19   Transcription Company:   Reliable
                              1007 N. Orange Street
20                            Wilmington, Delaware 19801
                              (302)654-8080
21                            Email: gmatthews@reliable-co.com

22

23   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.

24

25
```

1 the agreements sit together.

2         THE COURT: Okay.

3         MS. SCHWEITZER: Just as a last point -- and I

4 know the debtors have proffered their different evidence,

5 but, obviously, they are being asked for good faith findings

6 both for the primary bidder and the backup bidder. And I

7 think we all rest, as you see, on the same arm's length, good

8 faith, heavily negotiated outcomes here. So I just flag that

9 so it's part of the record findings here.

10         THE COURT: Very good.

11         MS. SCHWEITZER: Thank you, Your Honor.

12         THE COURT: Mr. Waxman?

13         MR. WAXMAN: Good afternoon, Your Honor; may I

14 please the court, Jeff Waxman of Morris James on behalf of

15 the construction lienholder group.

16         First, Your Honor, I would just like to start off

17 by saying this was a long process and I commend the debtors

18 and the other parties through what was, in fact, at times

19 torturous negotiations by many of the parties before Your

20 Honor.

21         Your Honor, we are here today with two separate

22 agreements, depending on who is at closing, and I would just

23 like to briefly outline a few of the issues.

24         As you've heard, with respect to Inbursa there is

25 a reserve of approximately 316.4 million. That's arrived at

1  starting with the 350 million in the reserve and backing out
2  Chemtex which leaves approximately 263 million; so there's a
3  cushion there.  With respect to the consortium you back out
4  Chemtex, WFS and Blanchard and its subs, and the total amount
5  of the remaining claim is 228.  They are taking subject to
6  Blanchard and its subs and subject to WFS.
7          THE COURT:  Okay.
8          MR. WAXMAN:  And I'll get to one issue for
9  clarification solely with respect to the DAK order for those
10 two, but I want to address a couple of the other issues.
11         The construction lienholder group understands the
12 debtors have tentatively entered into 15 proposed settlements
13 totaling approximately $38.9 million dollars of construction
14 liens and under those settlements the construction
15 lienholders will receive approximately $26.9 million dollars.
16         The construction lienholder group, as part of the
17 overall agreement, have agreed that the debtors have said
18 that they will, within five business days or such additional
19 time as it takes for them to get everything executed and
20 filed, file a motion for approval of those settlements.
21 Those settlements will result in an additional cushioning of
22 about $12 million dollars which provides further protection
23 to the remaining lienholders.
24         We will be seeking, today, confirmation on the
25 record that the debtors will file and confirmation from DAK,

1  Inbursa, Macquarie and the committee that they're not going
2  to oppose them so that the construction lienholders have some
3  comfort that this is not going to be a holdup in making sure
4  that there's the negotiated protection that they're seeking
5  rather than seeking a larger amount as they might, otherwise,
6  be entitled.
7  　　　　　As I said, there are a number of different
8  provisions.  One is literally one page and the other is five
9  pages; very drawn out.  I want to flag a couple of the other
10 issues.
11 　　　　　In the effect that the consortium is the
12 successful bidder and is able to close all the construction
13 lienholders will be entitled to interest at a rate of 7
14 percent per annum on account of their allowed claims plus
15 reasonable legal fees and expenses.  I did have a
16 conversation with debtors' counsel beforehand and I want to
17 confirm what I told him my understanding is.  The people that
18 settled are not going to be entitled to that, to the
19 interest, legal fees and expenses; that's for the remaining
20 pool.  Also, to the extent that there is legal fees, expenses
21 and interest, that's not going to create an additional amount
22 over the reserve.  Whatever it is, it is.
23 　　　　　THE COURT:  Okay.
24 　　　　　MR. WAXMAN:  There is going to be an order which
25 goes along with the reserve motion.  This is not going to

1  change the substantive terms of the agreement, but there will
2  be additional provisions in how the money gets drawn.  For
3  example, the current thought after discussions, and it's
4  subject to further discussions with the construction
5  lienholders which includes Sinopec, Fluor, Cital, AC
6  Plastiques, and Babkok (phonetic), and others who are not
7  members of the group, but who have certainly caucused with
8  the construction lienholder group to be efficient.
9           The anticipation is that not all the payments will
10 be made in full.  There would be a certain amount of holdback
11 to ensure that in case there is insufficient money to pay all
12 the claims in full or not to pay all the interest, and legal
13 fees and expenses so there would be a small pool available so
14 the last man standing doesn't get the short end of the stick.
15          Also, there would be a reserve for what I'm
16 calling a reserve monitor which would be somebody selected by
17 the construction lienholder group subject to a cap and that
18 would be after consultation with Fluor, and Sinopec and the
19 other parties; the other construction lienholder parties.
20          THE COURT:  Okay.
21          MR. WAXMAN:  Their role would not be to take any
22 action so much as to monitor --
23          THE COURT:  To keep an eye on it.
24          MR. WAXMAN:  Right. To make sure that the right
25 amounts are getting paid, the right amounts are coming out.

1   And just to make sure because with respect to Inbursa's
2   settlement in particular there's a ceiling and a floor.  And
3   if they're above the floor, but below the ceiling they can
4   make requests to withdraw.  So somebody needs to be there
5   just to make sure, but, again, it's subject to a cap which,
6   again, is subject to the reserve.
7           Additionally, and this is not wholly unrelated,
8   there are two pending motions that are outstanding by the
9   construction lienholder group.  One is the automatic stay
10  motion that I know Your Honor is already familiar with, and
11  the other is the standing motion that was filed with respect
12  to DAK, that was filed before the challenge period ended.
13  Both are going to be withdrawn without prejudice and the only
14  reason they're without prejudice is in the event that neither
15  the consortium nor Inbursa closes because we have deals with
16  both of them.  If they don't close, obviously, then we have
17  to come back and revisit both of those issues, but I don't
18  anticipate that that will be the case.  At least I think
19  everybody in the courtroom hopes that that's not the case.
20          THE COURT:  Okay.
21          MR. WAXMAN:  The construction -- the reserve
22  motion also -- just too importantly point out there will be
23  certain reservations of rights which I don't believe will
24  effect anyone other than some of the underlying parties.  And
25  just to give the court and to make a record to give a little

1  more specificity, there are certain levels in the chart level
2  one, level two, level three, etc., those are without
3  prejudice.  There is no finding by the court with respect to
4  that because the chart will be attached as an exhibit.
5         THE COURT:  Okay.  I understand.
6         MR. WAXMAN:  Also, there may be disputes between
7  contractors or subcontractors and the people under them with
8  respect to payments that were made.  Whatever is due is due;
9  nobody is going to get paid twice on account of their claim,
10 but reserving the right for what I would just call those
11 inter-construction lienholder claims.
12        Let me just make sure -- I believe that is it,
13 Your Honor, other than to say we will work with the parties
14 to get an order that is agreeable to everyone with respect to
15 how the money gets drawn out and includes, as an exhibit, the
16 respective agreements that were made between the parties.
17 And, obviously, reserving rights, again, in case the
18 unfortunate event neither one of them closes.
19        THE COURT:  All right.  I understand.
20        MR. WAXMAN:  Thank you, Your Honor.
21        THE COURT:  Anyone else wish to be heard in
22 support of the debtors' request?
23        MR. PEREZ:  Good morning, Your Honor; Alfredo
24 Perez.
25        I'll be very brief.  As the court knows I

1  represent DAK Americas.  Actually, it's DAK's parent, Alpek,
2  who is the party.  Mr. Phil Gross represents Indorama.  Mr.
3  Joel Walker represents FNEC.
4        THE COURT:  Okay.
5        MR. PEREZ:  Your Honor, we're very happy to be
6  here.  It's been -- this has been a very long process
7  probably for the last 10 days; I've been home like 12 hours.
8  But other than that it's been great.
9        (Laughter)
10       MR. PEREZ:  So we would very much like for the
11 court to approve the motion.
12       THE COURT:  Okay.
13       MR. WAXMAN:  Your Honor, among my notes I skipped
14 one part.  Again, for the record, Jeff Waxman of Morris
15 James.
16       Paragraph 8 of the DAK order has certain language
17 that I meant to highlight and just put on the record.  This
18 is after speaking with Mr. Perez about it.
19       Paragraph 8 deals with claims that pass-through.
20 They're the excluded construction lienholders that are being
21 taken subject to.  At the end of the paragraph is language,
22 and this is the exact language,
23       "Including the purchaser's rights here under and
24       under the purchase agreement."
25       One of the excluded construction lienholders

1   doesn't exactly know what that means.  I think for the issue
2   of simplicity I think it's just easier to say that there's no
3   intention by DAK or anybody else to bootstrap and give
4   greater rights then what the debtor had.  That's simply a
5   reservation of whatever rights the debtors had that are
6   passing onto DAK.
7         THE COURT:  All right.
8         MR. WAXMAN:  And if Mr. Perez disagrees he can
9   certainly say so.
10        THE COURT:  Okay.  Mr. Martin?
11        MR. MARTIN:  Hello, Your Honor.
12        I join everyone in saying it's been a long strange
13  trip with snow storms and blizzards, but I think we're all
14  happy to be here.
15        I just want to make a few points because we, on
16  behalf of Sinopec, did file a certain amount of pleadings
17  some of which are relevant today and some of which are not.
18  Specifically the assumption of contracts, both bids have
19  lists attached of contracts that are being assumed and
20  assigned.  Our contracts are not on those lists presently and
21  so our issues with respect to contracts and cure amounts that
22  we raised in those pleadings have fallen by the wayside;
23  however, both of those bids preserve the right in foreclosing
24  for there to be adjustments.  So I simply want to reserve my
25  rights that should we learn that our contracts are being

shifted over that we would reserve our rights to address those issues.

THE COURT: Of course.

MR. MARTIN: Similarly, as Mr. Waxman mentioned, we have had detailed negotiations over the reserve amounts with the consortium bid and we intend to, in the next several days, address those issues in a reserve motion. So we will work with the group on that as well.

The one thing that has arisen today that is new was the bid support term sheet. I think the first time many people in the room saw it, including myself, was this morning shortly before the hearing. And I was glad to hear committee counsel say that that bid support term sheet is not something that the court is approving today specifically because in Paragraph 5 there's some language regarding shifting back and forth of who owns potential claims against Sinopec, and who would prosecute them and who will pay for them.

And as you heard Mr. Waxman say, that the lien reserve has an agreement in it with the consortium bid that attorneys' fees would be paid. So, obviously, my client reserves the right to increase its claim based on how the parties in the room decide to treat my client. And we certainly reserve all of our rights under the contracts including the right to seek arbitration of any such dispute should it be raised against my client in the future.

1              So, I wanted to specifically raise those
2    reservation of rights.  I know Your Honor frequently says
3    everyone's rights are reserved, but this is a significant
4    issue and one that I only learned about recently.  So, I
5    specifically wanted to stand to speak on it; however, with
6    respect to the actual sale of assets and the transfer free
7    and clear of liens we did agree to significant language and
8    the debtor was very kind in how they drafted our comments in
9    the consortium bid that the free and clear language is
10   subject to the reserve being funded.  That is peppered
11   throughout the consortium's backup bid -- sorry, the
12   consortium bid.
13             With respect to the backup bid we didn't have time
14   to get that same language in place, but when I looked at
15   their APA in order to close they have to fund the various
16   reserves that were mentioned.  I spoke with counsel for the
17   backup bid and I think they have no opposition to me stating
18   that the free and clear nature of any backup bid would be
19   subject to the reserve being funded as we've agreed to under
20   the procedures.  So, I just wanted to make certain I think we
21   hope that we don't get to the backup bid, but if we do and
22   we're back in front of the court the reserved funding under
23   that order, even though it doesn't have all of the same
24   carve-outs that the consortium bid does, the intent, as I
25   understand it, is the same.

1          THE COURT: So noted.

2          MR. MARTIN: Thank you, Your Honor.

3          THE COURT: Yes, sir.

4          MR. PEREZ: Just one or two comments to clean up a
5     couple of things that I may have said.

6          First with respect to enforceability and things
7     like that, we are asking Your Honor to execute the
8     stipulation today because that would make this agreement
9     binding amongst the parties, the consortium, the debtors and
10    the creditors committee.

11         What I meant to say is that we are -- this term
12    sheet doesn't effectuate any of these transactions today.
13    So, they may come before you for a separate motion or they
14    may come before you through a plan process and all the usual
15    requirements of the Bankruptcy Code will either be met or not
16    met at that point in time.

17         Secondly with respect to the claims that are being
18    transferred, if I understood the concern correctly, this
19    litigation trust that transfers or would transfer the Sinopec
20    claims if they are any. I'm not taking the view right now
21    that there are or are not to the purchaser and the purchaser
22    would simply prosecute those if it thought necessary or
23    appropriate. And any net recovery would be shared 50/50.

24         It doesn't -- it's really, again, an agreement
25    between the creditors committee and the purchaser, the

1  bidders.  I don't view it as impacting the rights of Sinopec)
2  and that certainly was not the intent.
3              THE COURT:  Okay.  All right, does anyone else
4  wish to be heard in support?
5         (No verbal response)
6              THE COURT:  Okay.  Here's what I'd like to do.
7  I'd like to take just a five-minute break and then we'll
8  reconvene.  I'll hear opposition to the sale.  And I would
9  just advise the parties, I have until 5:00 -- I can go until
10 5:30 this evening with you all.  If we can get done, great;
11 if we can't, then we'll roll until 10:30 tomorrow morning.
12             Stand in recess, five minutes.
13         (Recess at 4:35 p.m.)
14         (Proceedings resume at 4:42 p.m.)
15             THE COURT:  Please be seated.
16             All right, I think I've heard from all parties
17 that are in support of the proposed sale transaction and the
18 debtors have put on their case in chief.
19             I would hear from any party in opposition to the
20 sale transaction.  Counsel.
21             MR. KAMPFNER:  Your Honor, Roberto Kampfner from
22 White & Case for Bancomext.  Let me just start by saying it's
23 very lonely in this room right now for me, but --
24             THE COURT:  I feel your pain, but I've noted in
25 other cases at least they're sitting with you.  I've actually