October 1, 2018

To: The Honorable Brendon L. Shannon
C/O Office of the Clerk of the Bankruptcy Court
824 N. Market Street, 3rd Floor
Wilmington, DE 19801

From: Danny Loy King
Claim No. 555 against M & G Polymers USA, LLC
Case No. 17-12268

RE: M & G USA Corporation, et al.,
Chapter 11, Case No. 17-12307 (BLS)
Notice of Hearing to consider Approval of Disclosure Statement
for Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession.
Notice Date: September 5, 2018
Response and Objection to the Approval of the Disclosure Statement
for the Joint Plan of Liquidation.

Dear Honorable Judge Shannon:

I, Danny Loy King, object to the Disclosure Statement and the "Plan", filed 09/05/18, and request that the Chapter 11 cases be moved to Chapter 7 and a payment plan be created for the claimants.

The following are but a few of my reasons for objecting:

1. In order to proceed with the Chapter 11 cases, there must be a level of trust in the Debtors' Disclosure Statement and Plan. Good corporate governance dictates the inclusion of financial transparency: current and accurate financial information. An example would be - How much money is in the reserved escrow account for the General Unsecured claimants? In a cursory reading of the Plan, I found $220 million. But in subsequent readings I found that the deposits into that account could be as little as $50 million. The money put into the escrow account for the Holders of an unsecured claim is not evident. In addition, when you add the $70 million for the Bancomext debt agreement, the General Unsecured fund becomes not fixed for distribution and tax purposes by creating an inequitable and unfair process for pro rata allocation. If the Plan's success turns on uncertain and speculative litigation, it is not feasible, because success is only possible, not reasonably likely. Global Conglomerates are commonplace today but they still ethically require good corporate governance through financial transparency. The strategy of financial concealment through financial "Complexity" is not appropriate in this day and age. But, transparency of this plan is not complex, it is actually simple:

    - How much money is in the escrow account for the General Unsecured Claims as of the filing date of 09/05/18?
    - This information needs to be in the Plan. This is an example of how the trust has been broken. Even if a corporation inserts into the plan the words like "this plan has not been audited" (refer to page 5 of the Plan) or "cannot and do not confirm all statements" (refer to page 65 to 66 of the Plan), the Debtors still have a fiduciary duty to provide current and accurate information.
    - What has been presented is a glossing of the truth with no verifiable substance, thereby making this Disclosure Statement and Plan "Not Feasible".

2. The major point is the involvement of Marco Ghisolfi's in any of the 3 proposed Corporate Purchasers of the Corpus Christi Plant and the formation of Corpus Christi Polymers LLC. Would there be profiteering on the Chapter 11 Bankruptcy settlements to enable financing for other ventures?

3. The Plan is not presented in good faith:

   i. The General Unsecured Claims class, the class housing the pension annuities for multiple M&G Corporations, would be under the control of the Litigation Trust and the Litigation Trustee, and would be liable for all fees and expenses, the hiring of any assistance, taxes due on interest accrued and any other taxes, contingent liabilities of the Trust and to maintain the value of the assets of the Trust and Administration expenses, all without limitation (refer to page 37 to 38 of the Plan).

   The 2.4% to 5% payout for the General Unsecured Claims, which includes the pension annuities, is a real tragedy, but by having no limitation on collecting the above expenses by the Litigation Trustee, a pensioner could be billed $10,000 or more just to cover the Trust expenses. This would be devastating. This would be profiteering from the retirees versus paying the retirees what they are due. This would make the Plan "Not Feasible".

   ii. The Litigation Trust should ethically and in good faith contain financial controls that provide transparency. The Litigation Trustee has little to no oversight and may setup multiple accounts and sub-accounts; including, multiple Trusts and sub-Trusts, which may have a separate legal existence (refer to page 36 of the Plan). The Litigation Trustee "to the extent reasonably necessary can conduct trade or business" to protect Trust Assets (refer to page 36 of the Plan), and do so without oversight. Therefore, there is an incentive to "retain" the Trust Assets as long as possible, and the Plan states payments will take a "long time". Also, there is reference to issuance of new Equity Interests for the Litigation Trust (refer to page 39 of the Plan). The appointment of the Litigation Trustee should be Independent and not chosen by the Debtors (refer to page 39 of the Plan). Page 36 to 42 of the Plan should be rewritten giving credence to transparency and oversight.

Recommendation: I recommend that the Chapter 11 cases be moved to Chapter 7 due to unreliable financial reporting and unprofessional conduct. Examples of mismanagement include but are not limited to risky investments and loans, inability to complete major projects on time and on budget, changing major projects in mid-stream resulting in multiple Chapter 11, lack of trust in the Debtors, lack of Good Faith in business practices, and risk to U.S. taxpayers and workers. I do not want to misuse the Court's time with excessive reviewing of the Disclosure Statement and Plan; a process that can be lengthy and costly. Chapter 7 Liquidation and a single Payment Plan will be sufficient.

Date: 10/1/18

Danny Loy King