**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  | : |  |
| --- | --- | --- |
| In re: | : | Chapter 11 |
|  | : |  |
| M & G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : |  |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE** that on the date hereof, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Third Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession* (as may be amended, modified and/or supplemented, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the following documents that are exhibits to the Plan (as may be modified, amended, or supplemented from time to time, collectively, the "Plan Supplement"):

- Annex A:  Initial Litigation Trustee;

- Annex B:  Litigation Trust Agreement;

- Annex C:  Nonexclusive Schedule of Retained Litigation Trust Causes of Action;

- Annex D:  Schedule of Executory Contracts and Unexpired Leases to Be Assumed and Assigned to the Litigation Trust; and

- Annex E:  revised Corpus Christi Mechanics' Lien Schedule.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights, with the consent of the applicable parties to the extent required under the Plan, to amend, modify, or

---

[1]      The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208).  The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2]      Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

supplement the Plan and the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan. To the extent material amendments or modifications are made to the Plan or Plan Supplement, the Debtors will file a blackline with the Court.

PLEASE TAKE FURTHER NOTICE that the forms of the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Court pursuant to the order confirming the Plan.

PLEASE TAKE FURTHER NOTICE that the hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before the Honorable Brendan L. Shannon, United States Bankruptcy Court, 824 North Market Street, Wilmington, Delaware, 19801, on **December 17, 2018, at 11:00 a.m., prevailing Eastern Time**.

PLEASE TAKE FURTHER NOTICE that the Confirmation Hearing may be adjourned or continued from time to time without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on parties requesting service pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

PLEASE TAKE FURTHER NOTICE that the Plan, the Plan Supplement and other documents and materials filed in these chapter 11 cases may be obtained at no charge from the Debtors' noticing agent, Prime Clerk LLC, by: (i) accessing the Debtors' document website at https://cases.primeclerk.com/mgusa; or (ii) writing to M&G USA Corporation *et al.* Ballot Processing, c/o Prime Clerk LLC, 830 3rd Avenue, 3rd Floor, New York, NY 10022. Parties may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at https://www.ecf.deb.uscourts.gov.

Dated: December 11, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Joseph M. Mulvihill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Joseph M. Mulvihill (DE Bar No. 6061)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:          ljones@pszjlaw.com
                joneill@pszjlaw.com
                jmulvihill@pszjlaw.com

and

JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
Email:          sgreenberg@jonesday.com
                scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:     (216) 586-7035
Facsimile:     (216) 579-0212
Email:          ceblack@jonesday.com

and

Daniel J. Merrett
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-3053
Telephone:     (404) 581-8476
Facsimile:     (404) 581-8330
Email:          dmerrett@jonesday.com

Co-Counsel for the Debtors and Debtors in
Possession

## <u>ANNEX A</u>

## Initial Litigation Trustee

**INITIAL LITIGATION TRUSTEE**

Alan D. Halperin and Ankura Trust Company, LLC, as co-trustees

# ANNEX B

**Litigation Trust Agreement**

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (this "<u>Agreement</u>") is made this [_]<sup>th</sup> day of [_____], 2018 by and among (i) the Debtors in the jointly administered chapter 11 cases (the "<u>Cases</u>") pending in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") under Case Number 17-12307, (ii) Alan D. Halperin and Ankura Trust Company, LLC, as the co-trustees (together with any successor trustee, collectively the "<u>Litigation Trustees</u>"), and (iii) the official committee of unsecured creditors appointed in the Cases pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>"). Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the [*Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*] (as it may be further modified, supplemented and amended, the "<u>Plan</u>").

## RECITALS

A.      On [_____], 2018, the Bankruptcy Court entered an order confirming the Plan.

B.      The Litigation Trust (as defined below) is established pursuant to the Plan as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business except, to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and the Plan;

C.      The Litigation Trust is established for the purpose of, at the direction of the Litigation Trust Oversight Committee as set forth herein, liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries; and

D.      The Litigation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes pursuant to sections 671-677 of the Internal Revenue Code of 1986, as amended, with the Beneficiaries treated as the grantors and owners of the Litigation Trust.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Plan, the Debtors, the Litigation Trustees, and the Creditors' Committee agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01.  <u>Definitions</u>.

"<u>Allowed</u>" means (a) any Claim (or a portion thereof) against a Debtor as to which no action to dispute, deny, or otherwise limit recovery with respect thereto, or alter the priority

thereof (including a claim objection), has been timely commenced within the applicable period of limitation fixed by the Plan or applicable law, or, if an action to dispute, deny, equitably subordinate, or otherwise limit recovery with respect thereto, or alter priority thereof, has been timely commenced, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter or (b) any Claim against a Debtor or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Claim (x) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment, or counterclaim of any kind and (y) that is not otherwise disputed.

"Bankruptcy Code" means Title 11 of the United States Code, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

"Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

"Beneficiary" means all holders, following the Effective Date, of Allowed and unpaid Litigation Trust Claims, irrespective of whether such Litigation Trust Claims become Allowed Claims before or after the Effective Date.

"Bid Support Term Sheet" means the bid support term sheet annexed to the *Stipulation Regarding Settlement and Agreement with Respect to Sale of Corpus Christi Assets and Related Matters* (Docket No. 1299-1), approved by the Bankruptcy Court on March 29, 2018, as amended on October 18, 2018 and approved by the Bankruptcy Court on October 19, 2018 (Docket No. 1991).

"Business Day" means any day other than a Saturday, Sunday, or a "legal holiday," (as defined in Bankruptcy Rule 9006(a)).

"Cash" means the lawful currency of the United States and equivalents thereof.

"Claim" means a claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

"Claims and Noticing Agent" means Prime Clerk LLC, the claims and noticing agent retained by the Debtors pursuant to the (i) *Order Authorizing Retention and Appointment of Prime Clerk LLC As Claims and Noticing Agent Nunc Pro Tunc to the Petition Date* [Docket No. 65].

"Claims Register" means the official register of Claims maintained by the Claims and Noticing Agent in the Cases.

"<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court entered the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"<u>Debtors</u>" means M & G USA Corporation; M & G Resins USA, LLC; M & G Polymers USA, LLC; M & G Finance Corporation; M&G Waters USA, LLC; M & G USA Holding, LLC; Chemtex International Inc.; Chemtex Far East, Ltd.; and Indo American Investments, Inc.

"<u>Disputed Claim</u>" means a Litigation Trust Claim: (a) that is neither an Allowed Claim nor a disallowed Claim; (b) that is listed as disputed, contingent or unliquidated in the Schedules or that is otherwise subject to an objection; or (c) for which a Proof of Claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent (i) the Debtors have, or any party in interest entitled to do so has, interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order or (ii) that such Proof of Claim has been asserted in an amount that is greater than the undisputed, non-contingent and liquidated amount of such Claim in the Schedules, if any.

"<u>Disputed Claims Reserve</u>" means the reserve fund(s) created pursuant to Section V.D.1 of the Plan.

"<u>Distribution</u>" means a distribution of property to a Beneficiary pursuant to this Agreement.

"<u>Distribution Date</u>" means any date on which Distributions are made in accordance with Section 5.01 hereof.

"<u>Effective Date</u>" means a day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date in Section VII.B of the Plan have been met or waived in accordance with the provisions of that section.

"<u>Exchange Act</u>" means the Securities and Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

"<u>Final Order</u>" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a vacatur, new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a vacatur, new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the vacatur, new trial, reargument or rehearing shall have been denied or resulted in no

modification of such order; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule or other analogous rule or procedure, may be filed relating to such order, shall not cause an order not to be a Final Order.

"<u>Investment Company Act</u>" means the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder.

"<u>Litigation Trust</u>" means the trust created pursuant to this Agreement and Section III.C of the Plan to, among other things, hold the Litigation Trust Assets and make distributions pursuant to the Plan.

"<u>Litigation Trust Assets</u>" means (a) the Unsecured Claims Pool; (b) the Remaining Assets; (c) the Litigation Trust Causes of Action (including any Privilege Rights); (d) the New Equity Interests; and (e) any Corpus Christi Causes of Action transferred to the Litigation Trust pursuant to Section III.H.2 of the Plan.

"<u>Litigation Trust Causes of Action</u>" means all Causes of Action of the Debtors and their Estates other than the Excluded Causes of Action, and including, without limitation: (a) Avoidance Actions; (b) any claims and proceeds of claims against Magnate S.à r.l., its managers and/or affiliates; (c) any claim against auditors and any professionals utilized by the Debtors and/or the Estates at any time (other than the Professionals retained by the Debtors in the Chapter 11 Cases); (d) the Litigation Trust's entitlements with respect to any recovery against Sinopec, as provided for in Section III.H.2 of the Plan; and (e) all Privilege Rights.

"<u>Litigation Trust Claims</u>" means the Claims that, upon Allowance, may be subject to Distributions from the Litigation Trust Assets pursuant to the Plan, including, Allowed and unpaid Unsecured Claims Pool Administrative Claims, Unsecured Claims Pool Priority Claims, Other Secured Claims (solely to the extent they relate to Remaining Assets transferred to the Litigation Trust), and General Unsecured Claims.

"<u>Litigation Trust Oversight Committee</u>" means the committee appointed pursuant to Section III.C.3 of the Plan to oversee the activities of the Litigation Trust and the Litigation Trustees.

"<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"<u>Petition Date</u>" means: (a) with respect to M&G Polymers USA, LLC, October 24, 2017; and (b) with respect to the other Debtors, October 30, 2017.

"<u>Schedules</u>" means collectively, the (a) schedules of assets and liabilities and (b) statements of financial affairs, as each may be amended and supplemented from time to time, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

"<u>Securities Act</u>" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"Third Party Disbursing Agent" means an entity engaged by the Debtors in their capacity as Disbursing Agent or engaged by the Litigation Trustees to act as a Disbursing Agent pursuant to Section III.C. of the Plan.

"Trust Accounts" means the bank accounts to be held in the name of the Litigation Trustees that are created pursuant to Section III.C of the Plan.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended, and the rules and regulations promulgated thereunder.

## ARTICLE II

## ESTABLISHMENT OF THE LITIGATION TRUST

Section 2.01.   Establishment of the Litigation Trust.   Pursuant to the Plan, the Debtors, the Litigation Trustees, and the Creditors' Committee hereby establish the Litigation Trust on behalf of the Beneficiaries effective as of the Effective Date of the Plan.   The sole purpose of the Litigation Trust is the liquidation and distribution of the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.   The Litigation Trust shall engage in activities only as reasonably necessary to, and consistent with, its liquidating purpose.

Section 2.02.   Transfer and Title to Assets.   The Litigation Trustees shall hold the Litigation Trust Assets in the Litigation Trust for the benefit of the Beneficiaries, subject to the terms of the Plan and this Agreement.   For all federal income tax purposes, all parties (including the Debtors, the Litigation Trustees, and the Beneficiaries) shall treat the transfer of (a) the Litigation Trust Assets allocable to the holders of the Allowed Litigation Trust Claims as of the Effective Date as a transfer to such holders of their proportionate interests in the Litigation Trust Assets followed by a transfer by such holders of such interests in the Litigation Trust Assets to the Litigation Trust in exchange for beneficial interests in the Litigation Trust, and (b) the Litigation Trust Assets allocable to the Disputed Claims as a transfer to the Disputed Claims Reserve.   Accordingly, the holders of Allowed Litigation Trust Claims as of the Effective Date shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets.   The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

Section 2.03.   Funding the Litigation Trust.   Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors shall transfer the Litigation Trust Assets to the Litigation Trust, and all such assets shall vest in the Litigation Trust on such date, to be administered by the Litigation Trustees in accordance with the Plan and this Agreement.   Except as set forth in Section III.J of the Plan, the Litigation Trust Assets shall be transferred to the Litigation Trust free and clear of all Liens.

Section 2.04.  <u>Valuation of Assets</u>.  As soon as practicable after the Effective Date, the Litigation Trustees shall make a good-faith valuation of the Litigation Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Litigation Trustees and the Beneficiaries) for all federal income tax purposes.

Section 2.05.  <u>Rights of Debtors</u>.  The Debtors shall have no claim to, right, or interest in, whether direct, residual, contingent or otherwise, the Litigation Trust Assets once such assets have been transferred to the Litigation Trust.  In no event shall any part of the Litigation Trust Assets revert to or be distributed to any of the Debtors.

Section 2.06.  <u>Books and Records; Authorization</u>.  The Litigation Trustees shall maintain books and records relating to the assets and income of the Litigation Trust, the payment of expenses and liabilities of, and claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be reasonably necessary to enable him or her to make full and proper accounting in respect thereof, and to comply with applicable provisions of law. Members of the Litigation Trust Oversight Committee shall have the right, upon not less than thirty (30) days' prior written (with email being sufficient) notice delivered to the Litigation Trustees, to inspect such books and records during normal business hours reasonably acceptable to the Litigation Trustees, subject to entering into a confidentiality agreement satisfactory in form and substance to the Litigation Trustees.  Except as provided in <u>Section 8.01</u> hereof, nothing in this Agreement requires the Litigation Trustees to file any accounting or seek approval of any court with respect to (i) the administration of the Litigation Trust, or (ii) as a condition for making any payment or distribution out of the Litigation Trust Assets.

ARTICLE III

LITIGATION TRUSTEES

Section 3.01.  <u>Appointment</u>.  Pursuant to the Plan, Alan D. Halperin and Ankura Trust Company, LLC have been designated to serve as the initial Litigation Trustees, and they hereby accept such appointment and agree to serve in such capacity as of the Effective Date. The Litigation Trustees shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).

Section 3.02.  <u>Generally</u>.  The Litigation Trustees' powers are exercisable solely in a manner consistent with, and in furtherance of, the purpose of the Litigation Trust and not otherwise.  The Litigation Trustees shall have authority to bind the Litigation Trust, and for all purposes of this Agreement shall be acting as Litigation Trustees, and not in his or her individual capacity.

Section 3.03.  <u>Scope of Authority</u>.  Subject to the oversight and direction of the Litigation Trust Oversight Committee and the provisions of the Plan and this Agreement, the Litigation Trustees shall hold the authority to:

(a)     perform all actions and execute all agreements, instruments and other documents necessary to implement the Plan as it pertains to the Litigation Trust, the Litigation Trust Assets and Litigation Trust Claims;

(b)     establish, maintain and administer the Trust Accounts and the Disputed Claims Reserves and any other appropriate reserves in the name of the Litigation Trust (which may be done by book entry) on account of the fees, costs and expenses associated with the investigation and prosecution of the Litigation Trusts Causes of Action, Disputed Claims, and costs associated with the administration of the Litigation Trust, including, without limitation, the costs associated with making Distributions and such other matters as the Litigation Trustee deems reasonably necessary or appropriate;

(c)     accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle and protect, and/or distribute, as applicable, the Litigation Trust Assets (directly or through his or her professionals or a Third Party Disbursing Agent);

(d)     review, reconcile, settle or object to all Litigation Trust Claims that are Disputed Claims as of the Effective Date without any further notice to or action, order or approval by the Bankruptcy Court;

(e)     calculate and make Distributions of the proceeds of the Litigation Trust Assets to the Holders of Allowed Litigation Trust Claims (directly or through his or her professionals or a Third Party Disbursing Agent);

(f)     pursue, investigate, institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any and all Causes of Action transferred to the Litigation Trust in any court or other tribunal without any further order of the Bankruptcy Court in accordance with the Litigation Trust Agreement and the Bid Support Term Sheet;

(g)     without limiting the generality of the rights and powers set forth in this <u>Section</u> and subject to all applicable rules, regulations, procedures, defenses and objections, to take discovery in connection with the investigation and prosecution of the Causes of Action transferred to the Litigation Trust, whether through depositions, oral examinations, document requests, interrogatories and/or other discovery devices provided for under applicable law, and to exercise any and all investigatory powers provided for under Rule 2004 of the Bankruptcy Rules to the extent authorized to do so by order of the Bankruptcy Court or other court of competent jurisdiction;

(h)     retain, compensate and employ professionals to represent the Litigation Trust;

(i)     file appropriate Tax returns and other reports on behalf of the Litigation Trust and pay Taxes or other obligations owed by the Litigation Trust;

(j)     file, to the extent reasonably feasible, and provided that necessary and reliable information to do so is made reasonably available to the Litigation Trustees, appropriate Tax returns on behalf of each Debtor and pay Taxes or other obligations arising in connection therewith provided that for the avoidance of doubt the Litigation Trustees may

absolutely and unconditionally rely, and shall be protected in acting upon and executing, any such Tax return and any related certificate, statement, instrument, opinion, report, or other paper or document prepared by accounting, financial and legal advisors and other professionals retained for such purpose, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof;

(k)     cause the Plan Administrator to enter into, the Dissolution Transactions to the extent reasonably feasible;

(l)     take such actions as are necessary or appropriate to close or dismiss all of the Cases;

(m)     utilize the Litigation Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs deemed necessary or advisable by the Litigation Trustees, including, without limitation, to insure the acts and omissions of the Litigation Trustees, and if appropriate, the Litigation Trust Oversight Committee;

(n)     make any and all necessary filings in accordance with applicable law, statute, or regulation;

(o)     in reliance upon the Claims Register maintained in the Cases (which the Litigation Trustees shall have the absolute right to rely on as accurate), maintain appropriate books and records, including a register evidencing the beneficial interest in the Litigation Trust held by each of the Beneficiaries;

(p)     dissolve the Litigation Trust in accordance with the terms of the Litigation Trust Agreement; and

(q)     exercise such other powers as may be vested in or assumed by the Litigation Trust or the Litigation Trustees pursuant to the Plan, Bankruptcy Court order, or as may be necessary, proper, and appropriate to carry out the provisions of the Plan.

Notwithstanding anything to the contrary set forth above, or provided herein or elsewhere, neither the Litigation Trust nor the Litigation Trustees shall have any obligation whatsoever to take any action, or perform any filing, with respect to any of the Debtors' retirement or benefits plans.

Section 3.04.   <u>Limitations</u>.

(a)     The Litigation Trustees shall not be, and is not, authorized to engage in any trade or business with respect to the Litigation Trust Assets, and shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  All actions taken by the Litigation Trustees shall be consistent with the expeditious but orderly liquidation of the Litigation Trust Assets as is required by applicable law and consistent with the treatment of the Litigation Trust as a liquidating trust under Treasury Regulation section 301.7701-4(d).

(b)     In all circumstances, the Litigation Trustees shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall consult with the Litigation Trust Oversight Committee as the same is provided for pursuant to the terms of this Agreement.

(c)     Except as otherwise provided herein or in the Plan, the Litigation Trust Oversight Committee may from time to time, by unanimous vote, restrict the Litigation Trustees from taking or initiating certain actions determined by the Litigation Trust Oversight Committee to be contrary to the best interests of the Litigation Trust or the Beneficiaries, provided that the Litigation Trustees may make a motion to the Bankruptcy Court to resolve any such dispute.

(d)     The Litigation Trustees shall liquidate and convert to Cash the Litigation Trust Assets in an expeditious but orderly manner, make timely distributions, and not unduly prolong the duration of the Litigation Trust.

(e)     The Litigation Trustees may not seek to have the Bankruptcy Court expand its role beyond that set forth in the Plan and this Agreement, unless they have the unanimous consent of the Oversight Committee and the expansion is necessary to satisfy a need of the Litigation Trust.

Section 3.05.   <u>Discretion</u>.   Subject to (a) Section 6.01 of this Agreement, (b) consultation with, and the reasonable oversight of, the Litigation Trust Oversight Committee, and (c) express provisions of this Agreement and the Plan, the Litigation Trustees shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or causes of action, as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Litigation Trust.  The Litigation Trustees may incur any reasonable and necessary expenses in liquidating and converting the Litigation Trust Assets to Cash.  Neither the Litigation Trustees nor his or her successors or assigns shall fund, or be obligated to fund (whether directly or indirectly), the costs of pursuing any claim.  No person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Litigation Trustees in connection with the protection, conservation, or disposition of the Litigation Trust Assets.

Section 3.06.   <u>Prosecution of Litigation Trust Causes of Action</u>.   After the Effective Date, only the Litigation Trustees shall have authority to maintain, prosecute, settle, dismiss, abandon, or otherwise dispose of the Litigation Trust Causes of Action.  The Litigation Trustees may enter into and consummate settlements and compromises of the Litigation Trust Causes of Action without notice to, or approval by, the Bankruptcy Court.  On the Effective Date, and without having to obtain any further order of the Bankruptcy Court, the Litigation Trustees shall be deemed to have intervened as plaintiff, movant or additional party, as appropriate, in any Litigation Trust Cause of Action, irrespective of whether any such Litigation Trust Cause of Action was commenced as an adversary proceeding, contested matter, or motion or other action, and whether filed by a Debtor, the Creditors' Committee or any other estate representative before the Effective Date.

Section 3.07.   <u>Retention of Professionals</u>.  The Litigation Trustees may retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Cases) to assist in their duties as Litigation Trustees (including the prosecution of the Litigation Trust Causes of Action) on such terms as the Litigation Trustees deem appropriate (including, without limitation, on a fee or a contingency basis) without Bankruptcy Court approval.  The Litigation Trustees may, with the consent and oversight of the Litigation Trust Oversight Committee, delegate the performance of services and the fulfillment of responsibilities under this Agreement to other persons reasonably acceptable to the Litigation Trust Oversight Committee.  Such persons shall be entitled to be compensated and reimbursed for out-of-pocket disbursements in the same manner as the Litigation Trustees.

Section 3.08.   <u>Other Activities</u>.  The entities serving as the Litigation Trustees, other than in their capacity as such, shall be entitled to perform services for and be employed by third parties.

Section 3.09.   <u>Liability of Litigation Trustees and Their Agents</u>.   Except as otherwise specifically provided herein, neither the Litigation Trustees, nor the employees, professionals, agents, and representatives of the Litigation Trust or the Litigation Trustees (all of the foregoing, the "<u>Covered Persons</u>"), shall be held personally liable for any claim asserted against any of them or the Litigation Trust.  Without limiting the generality of the foregoing, none of the Covered Persons shall be liable with respect to any action taken or omitted to be taken in furtherance of their responsibilities hereunder, except to the extent that their conduct is determined by a Final Order to be due to their own fraud, gross negligence, or willful misconduct.  All Persons dealing with the Litigation Trustees shall look only to the Litigation Trust Assets to satisfy any liability incurred by him or her in carrying out the terms of this Agreement, the Plan or Confirmation Order, and, subject to the preceding sentence, none of the Covered Persons shall have any personal obligation to satisfy any such liability.   Nothing contained in this Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Litigation Trustees of any of the liabilities, obligations or duties of the Debtors or Beneficiaries and shall not be deemed to be or contain a covenant or agreement by the Litigation Trustees to assume or accept any such liability, obligation or duty.

Section 3.10.   <u>Non-Liability for Acts of Others</u>.  Except as expressly provided in this Agreement, the Plan or the Confirmation Order, neither the Litigation Trust nor the Litigation Trustees shall assume any of the liabilities, obligations or duties of the Debtors or the Beneficiaries.  The Litigation Trustees may accept and rely upon any accounting made by or on behalf of the Debtors and any statement or representation made by the Debtors or its agents and professionals as to the assets comprising the Litigation Trust Assets or the Disputed Claims Reserve or as to any other fact bearing upon the creation of the Litigation Trust, so long as it has a good faith basis to do so.  Any successor Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor Litigation Trustee or its agents as to the assets comprising the Litigation Trust Assets, the Disputed Claims Reserves or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so.  The Litigation Trustees shall not be liable for having accepted and relied in good faith

upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. The Litigation Trustees or successor Litigation Trustees shall not be liable for any act or omission of any predecessor Litigation Trustees, nor have a duty to enforce any claims against any predecessor Litigation Trustees on account of any such act or omission. The Litigation Trustees or the Members of the Litigation Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance upon the advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Litigation Trustees nor the Members of the Litigation Trust Oversight Committee shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustees or the Members and/or their designees, unless such determination is based on fraud, willful misconduct, or gross negligence.

Section 3.11. <u>Reliance by Litigation Trustees</u>. The Litigation Trustees may absolutely and unconditionally rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties. The Litigation Trustees may absolutely and unconditionally presume that any other parties purporting to give any notice of instructions in writing has been duly authorized to do so, and may rely on such notice. The Litigation Trustees may consult with legal counsel, financial or accounting advisors, and other professionals to be selected by him or her and may rely, in good-faith, on the advice thereof, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof.

Section 3.12. <u>Parties Dealing With the Litigation Trustees</u>. In the absence of actual knowledge to the contrary, any person dealing with the Litigation Trust or the Litigation Trustees shall be entitled to rely on the authority of the Litigation Trustees or any of the Litigation Trustees' agents to act in connection with the Litigation Trust Assets. There is no obligation on any Person dealing with the Litigation Trustees to inquire into the validity, expediency or propriety of any transaction by the Litigation Trustees or any agent of the Litigation Trustees.

Section 3.13. <u>Compensation of the Litigation Trustees and Other Employees</u>. The Litigation Trustees and the Litigation Trust's employees shall be entitled to receive reasonable compensation approved by the Litigation Trust Oversight Committee and paid by the Litigation Trust with the Litigation Trust Assets. A Litigation Trustee may pay his or her compensation and other costs and expenses of the Litigation Trust before approving or making any Distributions to the Beneficiaries. Costs and expenses of the Litigation Trust shall include, but shall not be limited to, (i) fees and expenses incurred in connection with the prosecution and settlement of any Disputed Claims and Litigation Trust Causes of Action and (ii) actual reasonable out-of-pocket fees and expenses of the Litigation Trustees and his or her retained

professionals.[1]  A Litigation Trustee shall deliver his or her invoices or fee statements to the Litigation Trust Oversight Committee.  Any professionals retained by the Litigation Trustees pursuant to this Agreement shall deliver their invoices or fee statements to the Litigation Trustees for approval before payment from the Litigation Trust Assets shall be allowed.  The Litigation Trustees and Litigation Trust Oversight Committee, as applicable, shall have ten (10) days from the delivery of any invoice or fee statement to give notice (with email being sufficient) of an objection to the fee statement to the professional seeking compensation or reimbursement (including the Litigation Trustees).  In the event no objections are timely raised, the Litigation Trustees may pay the fees and expenses (including the Litigation Trustees' fees and expenses), or that portion of the fee, that is not subject to an objection.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made may be submitted to the Bankruptcy Court for resolution.  A Litigation Trustee may be compensated for work performed prior to the Effective Date of the Plan and creation of this Litigation Trust in connection with the preparation of the Litigation Trust and for the effective date and implementation of the Litigation Trust.

Section 3.14.  <u>Exculpation; Indemnification</u>.  All of the Covered Persons shall be, and hereby are, exculpated by all Persons, including the Beneficiaries and any other holders of Allowed Claims, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions to act that are determined by a Final Order to have arisen out of fraud, gross negligence, or willful misconduct.  No Person shall have, or be permitted to pursue, any claim or cause of action against any of the Covered Persons for making payments in accordance with this Agreement or the Plan, or for implementing any other provision of the Plan.  To the fullest extent permitted by applicable law, the Litigation Trust shall: (i) indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in connection with any actions or inactions in their capacity as such, except for actions or inactions involving fraud, willful misconduct, or gross negligence and (ii) the Covered Persons shall be entitled to obtain advances from the Litigation Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions.  Any action taken, or omitted to be taken, with the express approval of the Bankruptcy Court or the Litigation Trust Oversight Committee will conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct, <u>provided</u>, <u>however</u>, that the Litigation Trustees shall not be obligated to comply with a direction of the Litigation Trust Oversight Committee, whether or not express, which would result in a change of the distribution or any other material provisions of the Plan.  The foregoing exculpation and indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified and shall inure to the benefit of the Covered Persons' heirs and assigns.

---

[1] Initial budget and compensation to be acceptable to Creditors' Committee.

Section 3.15. <u>Termination</u>.  The duties, responsibilities and powers of the Litigation Trustees shall terminate on the date the Litigation Trust is dissolved pursuant to <u>Article IX</u> of this Agreement, under applicable law, or by an order of the Bankruptcy Court; <u>provided</u>, <u>that</u> Sections 3.11 and 3.12 above shall survive such termination and dissolution.

Section 3.16. <u>Resignation</u>.  The Litigation Trustees may resign by giving not less than ninety (90) days prior written notice (with email being sufficient) to the Litigation Trust Oversight Committee.

Section 3.17. <u>Removal</u>.  A Litigation Trustee may be removed upon the unanimous vote of the Litigation Trust Oversight Committee with or without cause.  Any removal of a Litigation Trustee shall become effective on such date as may be specified by the Litigation Trust Oversight Committee.  In the event of the removal of a Litigation Trustee without cause, such Litigation Trustee shall be entitled to immediate payment of all compensation earned by such Litigation Trustee through and including the effective date of such removal.

Section 3.18. <u>No Bond</u>.  The Litigation Trustees shall not be required to post any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court and, in the event the Litigation Trustees are so otherwise ordered, all reasonable costs and expenses of procuring any such bond or surety shall be borne by the Litigation Trust.


ARTICLE IV

<u>BENEFICIARIES</u>

Section 4.01. <u>Rights of Beneficiaries</u>.  Each Beneficiary shall take and hold its beneficial interest in the Litigation Trust subject to all of the terms and provisions of this Agreement, the Confirmation Order, and the Plan.  A Beneficiary shall have no title or right to, or possession, management, or control of, the Litigation Trust Assets except as expressly provided herein.  The interest of a Beneficiary in the Litigation Trust is in all respects personal property, and the death, insolvency, or incapacity of an individual Beneficiary shall not terminate or affect the validity of this Agreement.  No surviving spouse, heir, or devisee of any deceased Beneficiary shall have any right of dower, homestead, inheritance, partition, or any other right, statutory or otherwise, in the Litigation Trust Assets, and their sole interest shall be the rights and benefits given to the Beneficiaries under this Agreement.

Section 4.02. <u>Limit on Transfers</u>.  The interests of the Beneficiaries in the Litigation Trust shall be uncertificated, and are reflected only on the records of the Litigation Trust maintained by the Litigation Trustees.  Such interests are not negotiable and not transferable except (a) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Beneficiary) or (b) by operation of law.  The Litigation Trustees shall not be required to record any transfer which, in the Litigation Trustees' sole discretion, may be construed to create any uncertainty or ambiguity as to the identity of the holder of the interest in

the Litigation Trust. Until a transfer is, in fact, recorded on the books and records maintained by the Litigation Trustees for the purpose of identifying Beneficiaries, the Litigation Trustees, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications as though he or she has no notice of any such transfer, and in so doing the Litigation Trustees shall be fully protected and incur no liability to any purported transferee or any other Person. Neither the Litigation Trust nor the Litigation Trustees shall incur any liability from relying on the Claims Register (or information regarding reserves) to determine the interests of the Beneficiaries in the Litigation Trust and the size of the Disputed Claims Reserve.

Section 4.03. <u>Identification of Beneficiaries</u>. In order to determine the actual names, addresses, and tax identification numbers of the Beneficiaries, the Litigation Trustees shall be entitled to conclusively rely on the names, addresses, and tax identification numbers set forth in the Schedules or filed proofs of claim. Each Beneficiary shall furnish, in writing, its name, address, and tax identification number as assigned by the IRS and completed IRS Form W-9 or, if applicable, IRS Form W-8 to the Litigation Trustees within ninety (90) days of a written request from the Litigation Trustees. The Litigation Trustees shall make two (2) such requests. Failure of a Beneficiary to respond to the Trustee's second request for such tax information within 90 days of the second request shall result in the Beneficiary forfeiting their Litigation Trust interest and rights to any Distribution, and such forfeited amounts shall revest in the Litigation Trust and be distributed to the remaining Beneficiaries on the next Distribution Date.

Section 4.04. <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to an Allowed Litigation Trust Claim, the Litigation Trustees shall be entitled, in their sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Litigation Trustees shall (i) make no payment or distribution with respect to the Allowed Litigation Trust Claims represented by the claims or demands involved, or any part thereof, and (ii) refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Litigation Trustees shall not be or become liable to any party for his or her refusal to comply with any of such conflicting claims or demands. The Litigation Trustees shall be entitled to refuse to comply with conflicting claims or demands until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (b) the conflict has been resolved by a written agreement among all of such parties and the Litigation Trustees, which agreement shall include a complete release of the Litigation Trust and the Litigation Trustees with respect to the subject matter of the dispute.

ARTICLE V

<u>DISTRIBUTIONS</u>

Section 5.01. <u>Payment of Distribution Amounts</u>. The Litigation Trustees shall make Distributions to the Beneficiaries in their discretion but in consultation with the Litigation Trust Oversight Committee of all Cash on hand except such amounts (i) that would have been

distributable to the holders of Disputed Claims if such Disputed Claims had been Allowed prior to the time of such Distribution, (ii) that are reasonably necessary to meet contingent liabilities of the Litigation Trust and to maintain or enhance the value of the Litigation Trust Assets, (iii) that are necessary to pay expenses of the Litigation Trust (including, but not limited to, any taxes imposed on the Litigation Trust in respect of its assets and the reasonable out-of-pocket fees and expenses of the Litigation Trustees and the Litigation Trust Oversight Committee members), and (iv) that are necessary to satisfy other liabilities incurred by the Litigation Trust in accordance with the Plan or this Agreement. For the avoidance of doubt, no Distribution shall be made on account of any Claim if it or any portion of it is a Disputed Claim. Each Distribution by the Litigation Trustees to the Beneficiaries shall be consistent with the terms set forth in the Plan, any order of the Bankruptcy Court, and this Agreement. Notwithstanding anything to the contrary contain herein, the Litigation Trustees will not be required to make any Distributions to Beneficiaries if such Distribution will be less than $25.00 in value.

Section 5.02.    Administration of Distributions.

(a)    Manner of Payment. At the option of the Litigation Trustees, any Cash payment to be made hereunder may be made by a check or wire transfer in U.S. dollars.

(b)    No Interest on Claims. Interest shall not accrue on the Beneficiaries' Litigation Trust Claims in respect of the period from the Petition Date to the date a final Distribution is made on their respective Litigation Trust Claims.

(c)    Allocation of Plan Distributions between Principal and Interest. To the extent that any Allowed Litigation Trust Claim entitled to a Distribution hereunder consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

(d)    No Fractional Payments. Whenever a payment of a fraction of a dollar would otherwise be called for, the actual payment may reflect a rounding down to the nearest whole dollar.

(e)    Unclaimed Distributions. The Litigation Trustees are not obligated to make any effort to determine the correct address of any of the Beneficiaries. In the event any Distribution to any Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the Litigation Trustees is notified in writing of such Beneficiary's then-current address, at which time the Distribution shall be made to such Beneficiary without interest, provided, however, that if a Beneficiary fails to claim an undeliverable Distribution in writing within six months after such Distribution is returned as undeliverable such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and the Litigation Trust Claims of the Beneficiaries that may have been entitled to such Distribution shall be discharged and forever barred. In the event any check sent to a Beneficiary in respect of a Distribution to such Beneficiary has not been cashed within six months of the date of the respective Distribution, such check shall be cancelled and no additional

Distribution shall be made to such Beneficiary, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and the Litigation Trust Claims of the Beneficiaries that may have been entitled to such Distribution shall be discharged and forever barred from receiving Distributions under this Agreement. After such date, all undeliverable Distributions shall revert to the Litigation Trust and shall be redistributed in accordance with this Agreement.

(f)     Compliance with Laws. Any and all Distributions hereunder shall be made in compliance with applicable laws, including but not limited to, applicable federal and state securities laws.

(g)     Abandonment. With the approval of the Litigation Trust Oversight Committee, the Litigation Trustees may abandon, in any commercially reasonable manner (including abandonment or donation to a charitable organization of their choice), any asset that cannot be sold or distributed in a commercially reasonable manner, that the Litigation Trustees reasonably conclude has inconsequential value to the Litigation Trust or the Beneficiaries, or that is insufficient to render a further practicable Distribution.

Section 5.03.  Periodic Evaluation. The Litigation Trustees shall report to the Litigation Trust Oversight Committee from time to time, but in no event less than once per year, concerning the status of each claim or cause of action held by the Litigation Trust and consult with the Litigation Trust Oversight Committee concerning the litigation strategy with respect to each such claim or cause of action.

Section 5.04.  Priority of Distribution of Litigation Trust Assets. Any Litigation Trust Assets available for Distribution shall be applied (a) first, to pay or reimburse, as applicable, the reasonable, documented out-of-pocket fees, costs, expenses and liabilities of the Litigation Trust and the Litigation Trustees, and the reasonable, documented out-of-pocket expenses of the Litigation Trust Oversight Committee members and (b) second, to distributions to Beneficiaries in accordance with the Plan and this Agreement.

Section 5.05.  Location for Distributions; Notice of Change of Address. Distributions to the Beneficiaries shall be made by the Litigation Trustees to the Beneficiaries as of the Effective Date at the addresses contained in the Claims Register, which shall list the Beneficiaries address as set forth on their proofs of claim or if no proof of claim is filed, the address listed for the Beneficiaries as listed on the Schedules, or as listed in any other notice filed with the Bankruptcy Court. The Litigation Trustees are not obligated to make any effort to determine the correct address of any Beneficiary. As soon as practicable following the Effective Date, the Debtors shall deliver to the Litigation Trustees the Claims Register, which shall reflect (i) the address of each Beneficiary and (ii) the respective Allowed Litigation Trust Claim amount and schedule and/or claim numbers of each of the Beneficiaries (or if not yet allowed, the Litigation Trust Claim number and amount of each of the Beneficiaries). The Litigation Trustees shall have the absolute right to rely on such Claims Register as complete and accurate, and neither the Litigation Trustees nor the Litigation Trust shall incur any liability by relying on the information provided by the Debtors for purposes of notices and distributions under this Agreement.

Section 5.06.  <u>Payments Limited to Litigation Trust Assets</u>.  All Distributions to be made by the Litigation Trustees to or for the benefit of any Beneficiary on behalf of the Litigation Trust shall be made only from the Litigation Trust Assets.

ARTICLE VI

LITIGATION TRUST OVERSIGHT COMMITTEE

Section 6.01.  <u>Litigation Trust Oversight Committee</u>.  The Litigation Trust Oversight Committee shall be bound by the terms of this Agreement.  The Litigation Trust Oversight Committee shall at all times be comprised of no fewer than [_____] members and the initial members of the Litigation Trust Oversight Committee shall be [_____].  The Litigation Trust Oversight Committee shall (i) have the authority and responsibility to oversee and review the activities of the Litigation Trustees; (ii) have the authority to remove the Litigation Trustees for any reason, in accordance with section 3.15 of this Agreement; and (iii) appoint the Plan Administrator.  The Litigation Trustees shall consult with, and provide information to, the Litigation Trust Oversight Committee upon request.  Notwithstanding anything in this Article VI, the Litigation Trust Oversight Committee shall not take any action which will cause the Litigation Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

Section 6.02.  <u>Manner of Acting</u>.

(a)  A majority of the total number of members of the Litigation Trust Oversight Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Oversight Committee.  The affirmative vote of a majority of the members of the Litigation Trust Oversight Committee present at a meeting at which a quorum is present shall be the act of the Litigation Trust Oversight Committee, except as otherwise required by law or as provided in this Agreement.  Any or all of the members of the Litigation Trust Oversight Committee may participate in a regular or special meeting by, or conduct the meeting, with the Litigation Trustees or otherwise, through the use of, telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Litigation Trust Oversight Committee (and the Litigation Trustees) participating in a meeting by this means is deemed to be present in person at the meeting.  The Litigation Trust Oversight Committee may also act or vote by email communication.

(b)  Any member of the Litigation Trust Oversight Committee who is present at a meeting of the Litigation Trust Oversight Committee when action is taken is deemed to have assented to the action taken unless: (i) such member of the Litigation Trust Oversight Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding the meeting or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written or email

notice of his/her dissent or abstention from the action taken to the Litigation Trust Oversight Committee before its adjournment.

Section 6.03.  <u>Litigation Trust Oversight Committee's Action Without a Meeting</u>. Any action required or permitted to be taken by the Litigation Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents describing the action taken, signed by the members of the Litigation Trust Oversight Committee, and filed with the minutes or proceedings of the Litigation Trust Oversight Committee; <u>provided</u>, <u>however</u>, if the foregoing is impracticable under the circumstances, such action required or permitted to be taken by the Litigation Trust Oversight Committee at a meeting may be taken after reasonable advance negative notice. Negative notice shall have been given when the members of the Litigation Trust Oversight Committee (except to the extent it has been previously determined that a particular member has a conflict of interest with respect to the particular vote) receive a memorandum, email, or phone call from either of the Litigation Trustees informing them of the proposed action or inaction and requesting that the member contact either of the Litigation Trustees by a specified time, which shall be as far in advance as reasonably practicable, if the member does <u>not</u> support the action and if the Trustees do not receive a response or objection from the member by the specified time, that member shall be deemed to have voted in favor of the action.

Section 6.04.  <u>Tenure, Removal, and Replacement of the Members of the Litigation Trust Oversight Committee</u>.  The authority of the members of the Litigation Trust Oversight Committee will be effective as of the Effective Date, and will remain and continue in full force and effect until the Litigation Trust is dissolved in accordance with <u>Section 9.01</u> hereof.  The service of the members of the Litigation Trust Oversight Committee will be subject to the following terms and conditions:

(a)    The members of the Litigation Trust Oversight Committee will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below;

(b)    A member of the Litigation Trust Oversight Committee may resign at any time by providing a written notice (with email being sufficient) of resignation to the remaining members of the Litigation Trust Oversight Committee.  Such resignation will be effective when a successor is appointed as provided herein;

(c)    Any member of the Litigation Trust Oversight Committee may be removed by the majority vote of the other members of the Litigation Trust Oversight Committee, and in the event of a vacancy (whether by removal, death, or resignation), a new member shall be appointed by the unanimous vote of the remaining members of the Litigation Trust Oversight Committee.  The appointment of a successor member of the Litigation Trust Oversight Committee will be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which will include the name, address, and telephone number of the successor member of the Litigation Trust Oversight Committee;

(d)     Immediately upon appointment of a successor member of the Litigation Trust Oversight Committee, all rights, powers, duties, authority, and privileges of the predecessor member of the Litigation Trust Oversight Committee hereunder shall be vested in, and be undertaken by, the successor member of the Litigation Trust Oversight Committee without any further act, and the successor member of the Litigation Trust Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Litigation Trust Oversight Committee.

Section 6.05.   Out-of-Pocket Expenses.   Each member of the Litigation Trust Oversight Committee shall serve without compensation but shall be entitled to reimbursement by the Litigation Trust for actual out-of-pocket expenses incurred in his/her capacity as a member of the Litigation Trust Oversight Committee.

Section 6.06.   Liability of Oversight Committee Members.   Except as otherwise specifically provided herein, the members of the Litigation Trust Oversight Committee shall not be held personally liable for any claim asserted against any such member, the Litigation Trust, or any of the Covered Persons.   Without limiting the generality of the foregoing, the members of the Litigation Trust Oversight Committee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken is determined by a Final Order to be due to their own respective intentional breach of this Agreement, fraud, gross negligence, or willful misconduct

Section 6.07.   Exculpation; Indemnification.   The members of the Litigation Trust Oversight Committee shall be, and hereby are, exculpated by all Persons, including the Beneficiaries and other parties in interest in the Debtors' chapter 11 cases, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or applicable law, except for actions or omissions to act that are determined by a Final Order to be due to their own respective intentional breach of this Agreement, fraud, gross negligence, or willful misconduct. No Person shall be permitted to pursue any claim or cause of action against the members of the Litigation Trust Oversight Committee for making or authorizing payments in accordance with this Agreement and the Plan or for implementing the provisions of the Plan.   To the fullest extent permitted by applicable law, the Litigation Trust shall: (i) indemnify, defend, and hold harmless the members of the Litigation Trust Oversight Committee from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that they may incur or to which they may become subject in connection with their actions or inactions in their capacities as such, except for actions or inactions involving fraud, willful misconduct, or gross negligence; and (ii) the members of the Litigation Trust Oversight Committee shall be entitled to obtain advances from the Litigation Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions, except for actions or inactions involving fraud, willful misconduct, or gross negligence.   Any action taken or omitted to be taken with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, gross negligence, or willful

misconduct. The foregoing indemnity shall survive the termination of such the Litigation Trust Oversight Committee members from the capacity for which they are indemnified.

Section 6.08. <u>Recusal</u>. A Litigation Trust Oversight Committee member shall be recused from the Litigation Trust Oversight Committee's deliberations and votes on any matters as to which such member has a conflicting interest. If a Litigation Trust Oversight Committee member does not recuse itself from any such matter, that member may be recused from such matter by the unanimous vote of the remaining members of the Litigation Trust Oversight Committee that are not recused from the matter. In such event, such recused member of the Litigation Trust Oversight Committee can challenge such decision of the non-recused members with the Bankruptcy Court, as applicable, and the Bankruptcy Court shall have jurisdiction to adjudicate such matter.

## ARTICLE VII

## SUCCESSOR LITIGATION TRUSTEES

Section 7.01. <u>Acceptance of Appointment by Successor Litigation Trustee</u>. In the event a Litigation Trustee dies, is terminated, or resigns for any reason prior to the dissolution of the Litigation Trust, the Litigation Trust Oversight Committee shall promptly designate a successor trustee by an acknowledged written instrument delivered to the successor Litigation Trustee. In the event both Litigation Trustees are no longer in place, and the Litigation Trust Oversight Committee fails to timely appoint a successor Litigation Trustee, the Bankruptcy Court shall do so. Any successor Litigation Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Litigation Trust records and with the Bankruptcy Court. Thereupon, such successor Litigation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of his predecessor in the Litigation Trust with like effect as if originally named herein; <u>provided</u>, <u>however</u>, that a removed or resigning Litigation Trustee shall, nevertheless, when reasonably requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee all the rights, powers, and trusts of such predecessor Litigation Trustee(s).

## ARTICLE VIII

## REPORTING AND TAX MATTERS

Section 8.01. <u>Tax and Other Reports</u>.

(a) The Litigation Trustees shall not less than annually, and no later than the time required by applicable law (taking into account any permitted extensions), send to each Beneficiary, a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit, and shall instruct such Beneficiary to report such items on their

federal income tax returns. As soon as practicable after the end of the relevant report preparation period, the Litigation Trustees shall cause any information reported pursuant to this <u>Section 8.01(a)</u> to be mailed to the Beneficiaries. The Litigation Trustees may maintain an internet-based website (with access granted to the Beneficiaries) containing all reports the Litigation Trustees is required to deliver to such Beneficiaries under this Article VIII and identifying the name and address for correspondence with the Litigation Trustees.

(b)     It is intended that the interests of the Beneficiaries in the Litigation Trust shall not constitute "securities." To the extent the interests in the Litigation Trust are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.

(c)     <u>United States Federal Income Tax</u>. <u>Grantor Trust Status</u>. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Litigation Trustees of a private letter ruling if the Litigation Trustees requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustees), the Litigation Trustees shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(d)     <u>Allocations of Litigation Trust Taxable Income</u>. Subject to the provisions of <u>Section 8.01(a)</u> hereof, allocations of Litigation Trust taxable income among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value) to the holders of the Litigation Trust interests (treating all Disputed Claims as if they were Allowed Litigation Trust Claims), in each case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust. Taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Litigation Trust Assets.

(e)     <u>Disputed Claims Reserve</u>.

(i)     Subject to definitive guidance to the contrary from the Internal Revenue Service, or a court of competent jurisdiction (including the receipt by the Litigation Trustees of a private letter ruling if the Litigation Trustees requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustees), the Litigation Trustees shall (a) timely elect to treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (b) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All parties (including the Litigation Trustees and the Beneficiaries) shall report for tax purposes consistent with the foregoing.

(ii)     The Litigation Trustees shall be responsible for payments, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets, including the Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Litigation Trustees as a result of the resolutions of such Disputed Claims.

(f)     <u>Compliance</u>; <u>Expedited Determination of Taxes</u>.  The Litigation Trustees shall comply with any withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority in connection with the Plan and all instruments issued in connection therewith and Distributions thereunder, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements.  All amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to the respective Beneficiaries for all purposes of this Agreement.  The Litigation Trustees shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as he or she in his or her sole discretion deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  The Litigation Trustees may refuse to make a distribution to any Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered in accordance with <u>Section 4.03</u> hereof; <u>provided</u>, <u>however</u>, that upon the Beneficiary's delivery of such information in accordance with but subject to <u>Section 4.03</u> hereof, the Litigation Trustees shall make such distribution to which the Beneficiary is entitled, without any interest and income thereon. The Litigation Trustees may request an expedited determination of taxes of the Litigation Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

(g)     <u>Bankruptcy Court Reporting</u>.  Following the Effective Date, the Litigation Trustees, on behalf of the Litigation Trust, shall File with the Bankruptcy Court, no later than 45 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of this Plan.

## ARTICLE IX

## DISSOLUTION OF LITIGATION TRUST

Section 9.01.  <u>Dissolution of Litigation Trust</u>.  The Litigation Trust shall be dissolved, in accordance with <u>Section 9.02</u> hereof, no later than the third anniversary of the Effective Date, unless the Bankruptcy Court, upon motion by the Litigation Trustees, Litigation Trust Oversight Committee, or any party in interest, within the three-month period prior to the

third anniversary (or at least three months prior to the end of any extension period), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.

Section 9.02. <u>Dissolution Events</u>. The Litigation Trustees shall be discharged, the Litigation Trust shall be dissolved, and the Allowed Litigation Trust Claims shall be cancelled at such time as (a) the Litigation Trustees and the Litigation Trust Oversight Committee determine that the administration of the Litigation Trust is not likely to yield sufficient additional proceeds to justify further pursuit of the Litigation Trust Causes of Action, and (b) all Distributions required to be made by the Litigation Trustees under the Plan and this Agreement have been made. If at any time the Litigation Trustees determine, in reliance upon such professionals as the Litigation Trustees may retain, that the expense of administering the Litigation Trust is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustees may reserve any amounts necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code that is unrelated to the Debtors, the Litigation Trust, and any insider of the Litigation Trust, and (iii) dissolve the Litigation Trust.

Section 9.03. <u>Post-Dissolution</u>. Upon distribution of all the Litigation Trust Assets, the Litigation Trustees shall retain the books, records and files that shall have been created by the Litigation Trustees for a period of six months and thereafter may in their sole discretion, destroy all of such records and documents as the Litigation Trustees deems appropriate (unless such records and documents are necessary to fulfill any of the Litigation Trustees' residual obligations, if any pursuant to this Agreement). The Litigation Trustees may allocate and reserve (or pre-pay) sufficient funds to cover the costs of storage and destruction of such records. The Litigation Trustee's may seek and obtain Bankruptcy Court approval to destroy records at or about the time of dissolution.

ARTICLE X

AMENDMENT AND WAIVER

Section 10.01. <u>Amendment</u>; <u>Waiver</u>. The Litigation Trustees, with the prior approval of a majority of the members of the Litigation Trust Oversight Committee, may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; <u>provided</u>, that such amendments, supplements or waivers shall not adversely affect the Distributions to any of the Beneficiaries or adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) comply with any requirements in connection with the U.S. Federal income tax status of the Litigation Trust as a "liquidating trust"; (iii) comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the

Securities Act, the Exchange Act, the Trust Indenture Act, or the Investment Company Act; and (iv) make the Litigation Trust a reporting entity and, in such event, to comply with or seek relief from any requirements in connection with satisfying the registration or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act, or the Investment Company Act. Any substantive provision of this Agreement may be amended or waived by the Litigation Trustees, subject to the prior approval of a majority of the members of the Litigation Trust Oversight Committee, with the approval of the Bankruptcy Court (upon notice and an opportunity for a hearing); provided, however, that no change may be made to this Agreement that would (a) adversely affect (i) the Distributions to any of the Beneficiaries or (ii) the U.S. Federal income tax status of the Litigation Trust as a "liquidating trust" or (b) expand, add to, or modify the original stated purpose of the Litigation Trust (as described in the Plan and Section 2.01 of this Agreement). Notwithstanding this Section 10.01, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

# ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01. <u>Intention of Parties to Establish Grantor Trust</u>. This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust with respect to the Beneficiaries.

Section 11.02. <u>Preservation of Privilege</u>. In connection with the Litigation Trust Causes of Action, any applicable privilege or immunity of the Debtors, including, but not limited to, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), and all defenses, claims, counterclaims, and rights of setoff or recoupment shall vest in the Litigation Trust and may be asserted by the Litigation Trustees. Nothing in this Section 11.02 nor any action taken by the Debtors in connection with this Agreement shall be (or shall be deemed to be) a waiver of any privilege or immunity of the Debtors, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral). Notwithstanding the Debtors' providing any privileged information to the Litigation Trustees, the Litigation Trust, or any party or person associated with the Litigation Trust, such privileged information shall remain privileged.

Section 11.03. <u>Cooperation and Supply of Information and Documentation</u>. The Debtors shall promptly supply all reasonable information, books, records, and documentation to the Litigation Trustees as may be required to promptly, diligently, and effectively evaluate, file, prosecute, and settle the Litigation Trust Causes of Action and Disputed Claims, or as may be necessary or required to prepare and file any Tax Returns. All costs arising from the provision of services, personnel and/or information to the Litigation Trust shall be payable by the Debtors or

the Litigation Trust, as applicable, in accordance with the terms of an agreement with the Debtors and/or Litigation Trust, as the case may be.

Section 11.04. <u>Prevailing Party</u>. If the Litigation Trust is the prevailing party in a dispute with a third party regarding the provisions of this Agreement or the enforcement thereof, the Litigation Trust shall be entitled to collect any and all costs, expenses, and fees, including attorneys' fees, from the nonprevailing party incurred in connection with such dispute or enforcement action.

Section 11.05. <u>Laws as to Construction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction. In the event of any conflict between the terms of this Agreement and the Plan or Confirmation Order, the Plan shall control.

Section 11.06. <u>Severability</u>. If any provision of this Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 11.07. <u>Notices</u>. Any notice or other communication hereunder shall be in writing (with email being sufficient to the extent consistent with this Agreement) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box, or transmitted by telex, facsimile or other telegraphic means, or sent by nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at such address as set forth below or such other address as may be provided to the other parties in writing. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) on the date of the transmission confirmation, or (d) three business days after service by first class mail.

If to the Litigation Trustees, then to:

[insert address]

Email: [_____]

If to Members of the Litigation Trust Oversight Committee, then to each of:

[                    ]
[                    ]
[                    ]
[                    ]


[                    ]
[                    ]
[                    ]
[                    ]


[                    ]
[                    ]
[                    ]
[                    ]

If to the Luxembourg Affiliates, then to:

[                    ]
[                    ]
[                    ]
[                    ]

with copies to:

[                    ]
[                    ]
[                    ]
[                    ]

Section 11.08. <u>Notices if to a Beneficiary</u>.  Any notice or other communication hereunder shall be in writing (with email being sufficient to the extent consistent with this Agreement) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth in the case of a Beneficiary, on such Beneficiary's proof of claim or if no proof of claim is filed, the address listed on the Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and the Litigation Trust or such other means reasonably calculated to apprise the Beneficiary.

Section 11.09. <u>Headings</u>.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

Section 11.10. <u>Plan</u>.  The terms of this Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order.  Accordingly, in the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan and the Confirmation Order, on the other hand, the provisions of the Plan and the Confirmation Order, as applicable, shall govern and control.

Section 11.11. <u>Entire Agreement</u>.  This Agreement and the Exhibits and the Annexes attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

Section 11.12. <u>Actions Taken on Other Than Business Day</u>.  In the event that any payment or act hereunder or under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 11.13. <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.  The use in this Agreement of the word "include" or "including," when following any general statement, term or matter, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not no limiting language (such as "without limitation" or "but not limited to" or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that fall within the broadest possible scope of such general statement, term or matter.

Section 11.14. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as the date of the first above written.

On behalf of each of the Debtors other than Chemtex International Inc.

By: _____
      Name:
      Title:

Chemtex International Inc.

By: _____
      Name:
      Title:

[_____], Litigation Trustees

By: _____
      Name:

**[Creditors' Committee signature block]**

## <u>ANNEX C</u>

**Nonexclusive Schedule of Retained Litigation Trust Causes of Action**

# NON-EXCLUSIVE SCHEDULE OF RETAINED LITIGATION TRUST CAUSES OF ACTION [1]

This non-exclusive schedule represents a list of causes of action to be transferred to and retained by the Litigation Trust in connection with the Plan. The Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement this schedule at any time in accordance with the Plan.

Subject to Article IX of the Plan (and the terms applicable to the Released Parties referenced therein) and except as expressly provided in any contract, instrument, release, or other written agreement entered into or delivered in connection with the Plan, the Litigation Trust shall have the sole right to enforce and/or prosecute any claims, demands, rights and Causes of Action that any Debtor or Estate may hold against any Entity, other than any claims or Causes of Action released pursuant to any prior order of the Bankruptcy Court or the terms of the Plan. The Litigation Trust may pursue or not pursue such claims, demands, rights, or Causes of Action, as it may deem appropriate in its discretion.

All rights to commence and pursue, as appropriate, any and all Litigation Trust Causes of Action, whether arising before or after the Petition Date, and the Litigation Trust's rights to commence, prosecute, or settle such Litigation Trust Causes of Action shall be preserved for the sole benefit of the Litigation Trust, notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the Litigation Trust Causes of Action shall not include any Corpus Christi Causes of Action except as expressly set forth in paragraph 16 below with respect to the defensive use of certain Corpus Christi Causes of Action.

No Entity may rely on the absence of a specific reference, in the Plan, this exhibit, any other Plan Supplement document, the Disclosure Statement, or any other settlement agreement entered into in connection with the Plan, to any Litigation Trust Cause of Action as any indication that the Litigation Trust shall or will not pursue any and all available Litigation Trust Causes of Action.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Third Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession*, filed contemporaneously herewith. (as it may be amended or modified, the "Plan").

**Certain Categories of Litigation Trust Causes of Action**

The categories of Litigation Trust Causes of Action listed below are indicative, but are in no way exclusive:

1. Claims for breach of fiduciary duty and/or other duties against the Debtors' directors and officers, including, without limitation, claims based upon: (i) mismanagement of the construction of the Corpus Christi Plant; (ii) cost overruns or delays in connection with the construction of the Corpus Christi Plant; (iii) improper intercompany transfers; (iv) management decisions that damaged one Debtor for the benefit of another Debtor; (v) approval of improper dividends to shareholders; and (vi) other mismanagement of Debtors' assets or business operations.

2. Claims under any applicable insurance policies, including, without limitation, claims under director and officer liability insurance policies.

3. Avoidance Actions, except as set forth in Section III.H.2. of the Plan, including, without limitation, Causes of Action based on transactions between or among the Debtors, between or among one or more Debtors and one or more of any Debtor's corporate affiliates, or between or among one or more Debtors and one or more of any Debtor's shareholders or other corporate insiders, and any transactions with third parties.

4. Claims and proceeds of claims against Magnate S.à r.l., its managers and/or affiliates.

5. Claims against auditors and/or any professionals utilized by the Debtors and/or the Estates at any time (other than certain professionals retained by the Debtors in the Chapter 11 Cases, as detailed in the Bid Support Term Sheet).

6. The Litigation Trust's entitlements with respect to any recovery against Sinopec, as provided for in Section .III.H.2 of the Plan

7. Causes of Action based on or relating to any Privilege Rights.

8. Causes of Action against Mossi & Ghisolfi International S.à r.l., M&G Chemicals S.A. and/or M&G Capital S.à r.l. not released pursuant to the Dismissal Order or Dismissal Stipulation.

9. Causes of Action to which the Debtors are party, including, but not limited to, Causes of Action relating to the adversary proceeding captioned *Aloke Empreendimentos e Participações Ltda v. M&G Polymers USA, LLC and Comerica Bank*, No. 18-50007 (BLS) (Bankr. D. Del. Jan. 16, 2018).

10. Causes of Action in connection with asserting or exercising rights of setoff, counterclaim, or recoupment.

11. Causes of Action in connection with asserting or exercising claims on contracts or for breaches of duties imposed by law or in equity.

12. Causes of Action in connection with Executory Contracts or Unexpired Leases.

13. Causes of Action in connection with asserting or exercising the right to object to Claims (and Proofs of Claim) or Interests, but excluding Claims that are allowed pursuant to the Plan.

14. Causes of Action in connection with asserting or exercising any and all claims and rights pursuant to sections 105 or 362 of the Bankruptcy Code.

15. Causes of Action in connection with asserting or exercising claims or defenses, including, without limitation, fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

NAI-1505553526v20

16. Any Corpus Christi Cause of Action solely to the extent such Corpus Christi Cause of Action is asserted as a defense to any General Unsecured Claim held by the holder of a Corpus Christi Mechanics' Lien Claim, other than, to the extent applicable, any objection on the basis of section 502(d) of the Bankruptcy Code on account of claims under section 544, 547 or 548 of the Bankruptcy Code.

17. Causes of Action in connection with asserting or exercising any and all claims and rights with respect to all forms of the Debtors' intellectual property.

18. Causes of Action in connection with asserting or exercising claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after any Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

19. Any and all defenses related to any of the foregoing.

NAI-1505553526v20

## ANNEX D

**Schedule of Executory Contracts and Unexpired Leases
to Be Assumed and Assigned to the Litigation Trust**

**SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
TO BE ASSUMED AND ASSIGNED TO THE LITIGATION TRUST**


All rights of the Debtors under any insurance policies under which they are the insured parties and all related insurance agreements other than Purchaser Assigned Insurance Policies.

# ANNEX E

**Revised Corpus Christi Mechanics' Lien Schedule**

**CORPUS CHRISTI MECHANICS' LIEN SCHEDULE\***

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Ahern Rentals | | | | | 2017052363 | $15,049.22 | | | | | $15,049.22 | |
| 2 | Fluor Enterprises, Inc. | | | | | 2017046799 | $213,468.54 | 313 | $5,198,819.71 gross (including under Chemtex) | | | $213,468.54 | |
| 3 | | Mundy Maintenance & Service LLC | | | | | 2017050862 | $485,282.89 | 913 | $485,282.29 | | | $485,282.89 | |
| 4 | | OTSL (US) | | | | | 2017047530 | $142,738.54 | | | 319 | $142,738.54 | $142,738.54 | |
| 5 | Sinopec Engineering Group America, LLC | | | | | 2017046312 | $49,813,112.20 | 192 | $52,377,568.70 | | | $52,377,568.70 | |
| 6 | Sinopec Engineering Group America, LLC | | | | | 2017046781 | $2,564,456.52 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 7 | Chemtex International Inc. | | | | | 2018001887 | $238,750,375.34 | | | | | $0.00 | Intercompany Claim |
| 8 | | AC Plastiques | | | | 20170239321 | $27,249.83 | 800 965 | $27,279.83 $27,279.83 | | | $27,249.83 | |
| 9 | | | Accurate Welding & Inspection | | | 2017049709 | $3,889,878.56 | 1022 | $3,889,878.56 | 308 | $3,889,878.56 | $2,485,001.69 | Reserve amount discounted for applicable subcontractor reserves |
| 10 | | | | Ahern Rentals | | 2017053558 | $161,343.48 | | | | | $161,343.48 | |
| 11 | | | | Apache Industrial Painting, Inc. | | 2017019441 | $320,375.50 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 12 | | | | Apache Industrial Painting, Inc. | | 2017035206 | $1,071,206.16 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 13 | | | | Apache Industrial Painting, Inc. | | 2017046809 | $1,079,797.56 | 178 | $1,079,797.56 under Accurate Welding and Inspection ($1,815,441.41 gross) | | | $1,079,797.56 | |
| 14 | | | | IWS Gas and Supply of Texas, Ltd. | | 2017019733 | $129,122.75 | 985 | $129,122.75 | | | $129,122.75 | |
| 15 | | | | IWS Gas and Supply of Texas, Ltd. | | 2017035429 | $34,613.08 | 985 | $34,613.08 | | | $34,613.08 | |
| 16 | | | Apache Industrial Services | | | 2017030707 | $79,771.69 | 178 | $474,112.03 under Chemtex ($1,815,441.41 gross) | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 17 | | | Apache Industrial Services | | | 2017035218 | $82,131.63 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 18 | | | Apache Industrial Services | | | 2017043118 | $169,963.90 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 19 | | | Apache Industrial Services | | | 2017046808 | $474,112.03 | | | | | $474,112.03 | |
| 20 | | | Axis Industrial Services | | | 2017047825 | $550,412.50 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

\* Capitalized terms have the meanings given to them in the Third Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession, as it may be further modified, supplemented or amended.

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | | Axis Industrial Services | | | | 2017052991 | $572,110.53 | 547 | $572,110.53 | | | $572,110.53 | |
| 22 | | Babcock & Wilcox SPIG, Inc., fka SPIG USA, Inc. | | | | 2018003545 | $246,010.47 | | | | | $246,010.47 | |
| 23 | | Bergen Pipe Supports, Inc. | | | | 2017019743 | $416,623.77 | 694 | $304,701.86 | | | $304,701.86 | |
| 24 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2017040243 | $19,395,794.12 | 169 | $21,459,596.06 under Chemtex ($23,552,118.31 gross) | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 25 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2017044094 | $90,487.07 | 982 | $21,429,666.22 | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 26 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2017045722 | $1,495,304.72 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 27 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2017047480 | $448,080.31 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 28 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2017053054 | $19,975.22 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 29 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2018004133 | $34,405.02 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 30 | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | | 2018007000 | $21,429,666.22 | | | | | $21,423,187.36 | Reserve amount discounted for applicable subcontractor reserves. $5,895,368.83 of total amount claimed is asserted on account of work allegedly performed on the desalination plant owned by M&G Waters. |
| 31 | | | Ahern Rentals | | | 2017052423 | $6,478.86 | | | | | $6,478.86 | |
| 32 | | Blanchard Contractors, Inc. | | | | 2017025217 | $8,118,762.29 | 439 | $8,118,762.29 | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 33 | | | Apache Industrial Painting, Inc. | | | 2017019442 | $10,200.31 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 34 | | | Apache Industrial Painting, Inc. | | | 2017035216 | $30,083.17 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 35 | | | Apache Industrial Painting, Inc. | | | 2017046810 | $30,989.77 | 178 | $30,989.77 under Blanchard ($1,815,441.41 gross) | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 36 | | | BlueLine Rental, LLC | | | 2017015484 | $350,567.75 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 37 | | | Capital Pumping, LP | | | 2017019358 | $8,689.45 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 38 | | | Gajeske, Inc. | | | 2017019472 | $115,052.74 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 39 | | | Gatz Rock Yard, LLC | | | 2017009815 | $4,797.40 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | | | HD Supply Construction Supply, Ltd., d/b/a HD Supply White Cap Construction Supply | | | 2017005363 | $32,308.98 | | | 169, 184 | $32,308.95 | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 41 | | | Herc Rentals Inc. | | | 2017008965 | $259,319.04 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 42 | | | Holt/Cat | | | 2017019059 | $103,058.78 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 43 | | | J&G Sales, Inc. | | | 2017008111 | $49,658.30 | | | 316 | $32,116.30 perfected / $17,452.00 unsecured | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 44 | | | PPC Supply, LLC | | | 2017015391 | $20,181.16 | | | 155 | $20,181.19 | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 45 | | | Ram Tool | | | 2017013818 | $14,012.06 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 46 | | | RJB Trucking Inc. | | | 2017005981 | $85,858.60 | | | 293 | $38,700.70 | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 47 | | | Scott-Macon | | | 2017019365 | $115,723.00 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 48 | | | Skyline Steel, LLC | | | 2017039084 | $255,366.79 | 828 | $255,366.79 | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 49 | | | Texas First Rentals | | | 2017018685 | $307,077.81 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 50 | | | United Rentals | | | 2017024836 | $67,811.50 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 51 | | Butting Canada, Ltd. | | | | 2017036376 | $1,173,643.64 | | | | | $1,173,643.64 | |
| 52 | | Capital Precast | | | | 2017035220 | $16,420.00 | 543 | $23,156.00 | | | $16,420.00 | |
| 53 | | Capital Precast | | | | 2017039141 | $10,736.00 | | | | | $10,736.00 | |
| 54 | | CCC Group, Inc. | | | | 2017014674 | $596,872.02 | 980 | $596,872.02 | 206, 237 | $596,872.02 | $596,872.02 | $402,290.00 of total amount claimed is asserted on account of work allegedly performed on the desalination plant owned by M&G Waters. |
| 55 | | CCC Group, Inc. | | | | 2018004538 | $596,872.02 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 56 | | Century Elevators | | | | 2017042019 | $61,440.16 | | | 324 332 | $46,310.78 $114,099.76 | $61,440.16 | |
| 57 | | Cinco J., dba Johnson Oil Company | | | | 2017050211 | $32,312.56 | | | 287 | $33,312.56 | $32,312.56 | |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 58 | | Cital US, LLC | | | | | | | | 322 | $1,059,941.52 | $1,059,941.52 | |
| 59 | | Clark Constructors, L.L.C. | | | | 2018006969 | $345,193.73 | | | 326, 329 | $345,193.73 | $345,193.73 | |
| 60 | | CNP Vents d/b/a Texas Steel | | | | | | | | | | $0.00 | No lien filed. |
| 61 | | | Service Steel Warehouse Co. | | | 2017005681 | $46,590.40 | 530 | $46,590.40 | | | $46,590.40 | |
| 62 | | Commercial Metals Company d/b/a CMC Construction Company | | | | 2017047015 | $79,775.00 | | | 335 | $311,591.19 | $79,775.00 | |
| 63 | | Competentia US | | | | 2017044349 | $737,988.85 | 977 | $737,988.85 | 338, 344 | $737,988.85 + interest and attorney fees | $737,988.85 | |
| 64 | | Competentia US | | | | 2017044350 | $326,107.85 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 65 | | Consolidated Electrical Distributors | | | | 2017051655 | $6,175.21 | 836 | $6,175.21 | 305 | $76,776.06 + $7,768.22 monthly rental + $2,412.34 fees | $6,175.21 | |
| 66 | | D&C Fence Company | | | | 2017043076 | $76,776.06 | | | | | $76,776.06 | |
| 67 | | Dallas Fastner, Inc. | | | | 2017033182 | $174,404.95 | 855 | $174,404.95 | 347 | $174,404.95 + interest & atty fees | $174,404.95 | |
| 68 | | Dawkins On-Site Concrete, LLC | | | | 2017012434 | $4,592,824.65 | | | | | $4,592,824.65 | |
| 69 | | Doggett Equipment Services, Ltd. | | | | 20170438468 | $132,962.38 | 675 | $132,962.38 | 321, 323 | $136,777.06 + atty fees | $107,447.38 | Reserve amount discounted for applicable subcontractor reserves |
| 70 | | | JMElectric Company | | | 2017046169 | $25,515.00 | | | 99, 100, 141 | $25,515.00 | $25,515.00 | |
| 71 | | Eaton Corporation | | | | 2017014592 | $2,379,348.93 | | | 294, 295, 296 | $6,083,139.54 | $6,083,139.54 | |
| 72 | | Eaton Corporation | | | | 2017022703 | ($126,473.82) | | | | | $0.00 | Partial release of lien; applicable reserve accounted for by adjacent reserve for lienholder |
| 73 | | Eaton Corporation | | | | 2017019702 | $2,767,851.62 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 74 | | Eaton Corporation | | | | 2017025193 | $113,206.74 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 75 | | Eaton Corporation | | | | 2017024941 | $1,163,807.40 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 76 | | Eaton Corporation | | | | 2017033053 | $114,826.70 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 77 | | Eaton Corporation | | | | 2017033055 | $315,871.83 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 78 | | Eaton Corporation | | | | 2017033054 | $413,220.93 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 79 | | Eaton Corporation | | | | 2017033052 | $370,235.13 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 80 | | Eaton Corporation | | | | 2017040464 | $91,846.00 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 81 | | Engineered Construction Specialists | | | | 2017047809 | $27,838.75 | 644 | $27,838.75 | 91 | $27,838.75 (secured) $1,953.45 (unsecured) $29,792.20 total | $27,838.75 | |
| 82 | | Fagioli Inc. | | | | 2017014713 | $12,553,288.28 | 263 | $12,553,288.28 | 349 | $15,455,692.33 with attorney fees and interest | $11,983,214.88 | Reserve amount discounted for applicable subcontractor reserves |
| 83 | | Fagioli Inc. | | | | 2017019779 | $13,047,277.82 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 84 | | Fagioli Inc. | | | | 2017020266 | $14,494,490.08 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 85 | | Fagioli Inc. | | | | 2017025180 | $14,633,578.41 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 86 | | Fagioli Inc. | | | | 2017031083 | $13,928,475.55 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 87 | | Fagioli Inc. | | | | 2017037485 | $11,627,349.75 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 88 | | Fagioli Inc. | | | | 2017039288 | $11,739,647.35 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 89 | | Fagioli Inc. | | | | 2017041615 | $12,553,288.28 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 90 | | | Ahern Rentals | | | 2017052364 | $8,463.62 | | | | | $0.00 | |
| 91 | | | Mirage Industrial Group | | | 2017014670 | $10,476.25 | | | | | $0.00 | |
| 92 | | | Mirage Industrial Group | | | 2017019708 | $5,882.51 | | | | | $0.00 | |
| 93 | | | Momentum Rental & Sales | | | 2017018818 | $106,450.75 | | | 360 | $59,648.78 (not secured) | $75,007.40 | |
| 94 | | | RPS Composites | | | 2017030042 | $15,497.20 | | | | | $0.00 | |
| 95 | | | TNT Crane & Rigging, Inc. | | | 2017014628 | $413,495.58 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 96 | | | TNT Crane & Rigging, Inc. | | | 2017043011 | $426,088.40 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 97 | | | TNT Crane & Rigging, Inc. | | | 2017047627 | $495,066.28 | 182 | $610,583.00 | | | $495,066.00 | |
| 98 | | Fluor Enterprises, Inc. | | | | 2017049363 | $4,984,351.17 | 313 | $5,198,819.71 gross (including as Level 1 Contractor) | | | $4,984,351.17 | |
| 99 | | G.P. Transport | | | | 2017029147 | $145,994.46 | 352 | $145,994.46 | | | $145,994.46 | |
| 100 | | Garrett Mechanical, Inc. | | | | 2017030155 | $583,369.00 | 179 | $583,369.00 | | | $583,369.00 | |
| 101 | | GMAN Construction, LLC | | | | | | | | | | $0.00 | No lien filed |
| 102 | | | Ahern Rentals | | | 2017005509 | $35,794.91 | | | | | $35,794.91 | |
| 103 | | | Commercial Metals Company d/b/a CMC Construction Company | | | 2017001204 | $128,053.27 | | | | | $128,053.27 | |
| 104 | | Howell Crane & Rigging, Inc. | | | | 2017042936 | $154,272.50 | | | | | $154,272.50 | |
| 105 | | IMS/TCI | | | | 2016052162 | $52,943,351.12 | 521 | $52,943,351.12 | | | $34,120,099.24 | Reserve amount discounted for applicable subcontractor reserves |
| 106 | | IMS/TCI | | | | 2016053642 | $52,943,351.12 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 107 | | | AC Plastiques | | | 2017001317 | $142,529.15 | 397 965 | $112,529.15 $112,529.15 | | | $112,529.15 | |
| 108 | | | Ahern Rentals, Inc. | | | 2017003067 | $139,205.49 | | | | | $139,205.49 | |
| 109 | | | Arc Energy Services | | | 2016052174 | $1,866,305.68 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 110 | | | Arc Energy Services | | | 2017009787 | $3,689,686.97 | 283, 852 | $3,689,686.98 | | | $3,689,686.97 | |
| 111 | | | Berry Contracting, L.P. d/b/a Bay, Ltd. | | | 2017039899 | $2,092,522.25 | 169 | $2,092,522.25 under IMS/TCI ($23,552,118.31 gross) | | | $2,092,522.25 | |
| 112 | | | BEN Holdings dba Express Metal Work | | | 2016042851 | $389,217.25 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 113 | | | BEN Holdings dba Express Metal Work | | | 2016044288 | $1,725,386.81 | 880 | $1,725,386.81 | | | $1,725,386.81 | |
| 114 | | | Welco Steel | | | 2016042896 | $991,169.56 | | | | | $937,544.34 | Reserve amount discounted for applicable subcontractor reserves |
| 115 | | | | United Rentals | | 2017001291 | $53,625.22 | | | | | $53,625.22 | |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 116 | | | Century Elevators, Inc. | | | 2017008596 | $42,851.18 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 117 | | | Century Elevators, Inc. | | | 2017009460 | $42,851.18 | | | | | $42,851.18 | |
| 118 | | | Herc Rentals | | | 2017008966 | $99,810.95 | | | | | $99,810.95 | |
| 119 | | | Hoisting Wire Rope and Sliding | | | 2016050308 | $115,918.89 | 589 | $115,918.89 | | | $115,918.89 | |
| 120 | | | MC Welding & Fabricating Inc. | | | 2017008398 | $84,169.00 | | | | | $84,169.00 | |
| 121 | | | MSI Supply Inc. | | | 2017000379 | $121,153.63 | | | | | $121,153.63 | |
| 122 | | | Orbital Insulation Corp. | | | 2017042922 | $7,944,822.90 | 795 | $9,404,313.03 gross (including under Chemtex) | | | $7,944,822.90 | |
| 123 | | | Orbital Insulation Corp. | | | 2017043188 | $7,944,822.90 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 124 | | | Penn Tool Sales & Service, Inc. | | | 2016052165 | $979,432.81 | | | | | $979,432.81 | |
| 125 | | | Red-D-Arc Inc | | | 2017001208 | $367,961.76 | | | | | $367,961.76 | |
| 126 | | | Red-D-Arc Inc | | | 2017009833 | $118,854.89 | | | | | $118,854.89 | |
| 127 | | | Satterfield & Pontikes Construction, Inc. | | | 2016052355 | $34,600.00 | | | | | $34,600.00 | |
| 128 | | | Sunbelt Rentals, Inc. | | | 2017030231 | $145,107.94 | | | | | $145,107.94 | |
| 129 | | | United Rentals | | | 2017010051 | $18,067.70 | | | | | $18,067.70 | |
| 130 | | Italveco S.R.L. | | | | 2018004830 | $385,397.32 | 954 | $385,397.32 | | | $359,749.88 | Reserve amount discounted for applicable subcontractor reserves |
| 131 | | | Wholesale Electric Supply Company of Houston, Inc. | | | 2017052092 | $25,647.44 | | | | | $25,647.44 | |
| 132 | Jacobs Field Services North America Inc. | | | | | 2018007164 | $156,767.41 | 978 | $156,767.41 | 117 | $156,767.41 | $156,767.41 | |
| 133 | | Lemartec | | | | 2017017223 | $3,437,321.41 | 897 | $5,440,484.77 | | | $1,294,836.64 | Reserve amount discounted for applicable subcontractor reserves |
| 134 | | Lemartec | | | | 2017020233 | $4,994,523.43 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 135 | | Lemartec | | | | 2017024581 | $5,067,496.25 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 136 | | Lemartec | | | | 2017030329 | $5,620,752.81 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 137 | | | Apache Industrial Painting, Inc. | | | 2017025317 | $79,972.09 | | | | | $79,972.09 | |
| 138 | | | Apache Industrial Painting, Inc. | | | 2017035207 | $130,582.05 | 178 | $180,582.05 under Lemartec ($1,815,441.41 gross) | | | $130,582.05 | |
| 139 | | | Atlantic Doors & Hardware, Inc. | | | 2017019250 | $121,916.00 | 281 | $121,916.00 | | | $121,916.00 | |
| 140 | | | Carter Douglas Company LLC | | | | | | | | | $0.00 | No lien filed |
| 141 | | | | Custom Home Designs, Inc. | | 2017010062 | $144,921.15 | | | | | $144,921.15 | |
| 142 | | | | Custom Home Designs, Inc. | | 2017015300 | $1,576.00 | | | | | $1,576.00 | |
| 143 | | | | Custom Home Designs, Inc. | | 2017015301 | $117,966.60 | | | | | $117,966.60 | |
| 144 | | | | Custom Home Designs, Inc. | | 2017030453 | $12,000.00 | | | | | $12,000.00 | |
| 145 | | | | Custom Home Designs, Inc. | | 2017030454 | $3,060.00 | | | | | $3,060.00 | |
| 146 | | | | Custom Home Designs, Inc. | | 2017030455 | $55,652.50 | | | | | $55,652.50 | |
| 147 | | | | Custom Home Designs, Inc. | | 2017030456 | $84,600.00 | | | | | $84,600.00 | |
| 148 | | | | Custom Home Designs, Inc. | | 2017030457 | $119,065.00 | | | | | $113,369.14 | Reserve amount discounted for applicable subcontractor reserves |
| 149 | | | | | Action Gypsum Supply | 2017014542 | $5,695.86 | | | | | $5,695.86 | |
| 150 | | | | LDE Energy Services, LLC | | 2017010050 | $197,110.97 | | | | | $56,885.87 | Reserve amount discounted for applicable subcontractor reserves |
| 151 | | | | | Commercial Metals Company d/b/a CMC Construction Company | 2017029952 | $83,959.14 | | | | | $83,959.14 | |
| 152 | | | | | Commercial Metals Company d/b/a CMC Construction Company | 2017052071 | $29,706.90 | | | | | $29,706.90 | |
| 153 | | | | | Commercial Metals Company d/b/a CMC Construction Company | 2018006866 | $26,559.06 | | | | | $26,559.06 | |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 154 | | | Evans Interiors, Inc. | | | 2017021194 | $19,400.00 | | | | | $19,400.00 | |
| 155 | | | Ferguson Enterprises | | | 2017019548 | $12,994.78 | | | 307 | $11,938.73 | $12,994.78 | |
| 156 | | | LDE Energy Services, LLC | | | | | | | | | $0.00 | No lien filed |
| 157 | | | | Ahern Rentals | | 2017013375 | $6,676.86 | | | | | $6,676.86 | |
| 158 | | | Mechanical Innovation | | | 2017026037 | $2,293,351.00 | 465 | $2,592,446.09 | | | $1,336,414.03 | Reserve amount discounted for applicable subcontractor reserves |
| 159 | | | Mechanical Innovation | | | 2017026036 | $236,115.09 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 160 | | | | Ahern Rentals | | 2017025264 | $46,226.37 | | | | | $46,226.37 | |
| 161 | | | | Duct-Mex | | | | 466 | $632,761.96 | | | $632,761.96 | |
| 162 | | | | MBA Construction | | 2017026044 | $169,240.00 | 515 | $169,240.00 | | | $169,240.00 | |
| 163 | | | | Mechanical Reps Inc. | | 2017025077 | $407,803.73 | | | | | $407,803.73 | |
| 164 | | | Texas First Rentals LLC | | | 2017025017 | $32,840.96 | | | | | $32,840.96 | |
| 165 | | | TNT Crane & Rigging, Inc | | | 2017014633 | $115,517.08 | | | | | $115,517.08 | |
| 166 | | | Trane | | | 2017021667 | $297,350.00 | | | | | $297,350.00 | |
| 167 | | Lexicon, Inc. | | | | 2017009960 | $5,657,433.63 | 172, 882 | $13,536,697.34 | | | $13,536,697.34 | $84,400.45 of total amount claimed is asserted on account of work allegedly performed on the desalination plant owned by M&G Waters. |
| 168 | | Lexicon, Inc. | | | | 2017009961 | $5,494,941.56 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 169 | | Lexicon, Inc. | | | | 2017016269 | $6,701,813.20 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 170 | | Lexicon, Inc. | | | | 2017016270 | $4,941,915.92 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 171 | | Lexicon, Inc. | | | | 2017019159 | $7,943,683.80 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 172 | | Lexicon, Inc. | | | | 2017019154 | $4,965,560.28 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 173 | | Lexicon, Inc. | | | | 2017025127 | $8,661,399.84 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 174 | | Lexicon, Inc. | | | | 2017025124 | $4,801,710.78 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 175 | | Lexicon, Inc. | | | | 2017029355 | $8,734,986.56 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 176 | | Lexicon, Inc. | | | | 2018004540 | $8,734,986.56 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 177 | Lord Construction Services, LLC | | | | | | | | | | | $0.00 | No lien filed |
| 178 | | | Mirage Industrial Group | | | 2017014668 | $15,520.00 | | | | | $15,520.00 | |
| 179 | Lord Electric | | | | | | | | | | | $0.00 | No lien filed |
| 180 | | | Graybar Electric Company, Inc. | | | 2017000948 | $51,414.27 | | | | | $51,414.27 | |
| 181 | Mand Imballaggi SRL | | | | | | | | | | | $0.00 | No lien filed |
| 182 | | | CBS Rental and Supply | | | 2017039402 | $48,972.40 | | | | | $48,972.40 | |
| 183 | | | CBS Rental and Supply | | | 2017043322 | $37,816.84 | | | | | $37,816.84 | |
| 184 | | | Rabalais Constructors, LLC | | | 2017038828 | $183,484.07 | | | 300 | $487,930.01 | $487,930.01 | |
| 185 | | MEITEC INC | | | | 2017041573 | $1,253,852.53 | 505, 973 | $1,492,108.30 | | | $1,492,108.30 | An unliquidated portion of the total amount claimed is asserted on account of work allegedly performed on the desalination plant owned by M&G Waters. |
| 186 | | MEITEC INC | | | | 2017046924 | $1,492,108.30 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 187 | | MEITEC INC | | | | 2018006997 | $1,492,108.30 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 188 | | Mirage Industrial Group | | | | 2017014669 | $1,409,651.01 | 540, 981 | $5,015,113.53 | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 189 | | Mirage Industrial Group | | | | 2017019707 | $1,236,936.65 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 190 | | Mirage Industrial Group | | | | 2017024979 | $848,002.41 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 191 | | Mirage Industrial Group | | | | 2017028977 | $228,175.71 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 192 | | Mirage Industrial Group | | | | 2018007199 | $5,015,113.43 | | | | | $5,015,113.43 | $409,730.29 of total amount claimed is asserted on account of work allegedly performed on the desalination plant owned by M&G Waters. |
| 193 | | MMR Constructors, Inc. | | | | 2017043464 | $15,779,013.39 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 194 | | MMR Constructors, Inc. | | | | 2018000959 | $16,277,379.56 | 979 | $16,277,379.56 | | | $14,992,814.16 | Reserve amount discounted for applicable subcontractor reserves |
| 195 | | | Ahern Rentals | | | 2017052420 | $78,936.69 | | | | | $78,936.69 | |
| 196 | | | Apache Industrial Painting, Inc. | | | 2017035303 | $365,492.38 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 197 | | | Apache Industrial Painting, Inc. | | | 2017046807 | ($265,532.38) | 178 | $99,960.00 under MMR ($1,815,441.41 gross) | | | $99,960.00 | Partial release of lien |
| 198 | | | Graybar Electric Company, Inc. | | | 2017047835 | $145,108.28 | | | | | $145,108.28 | |
| 199 | | | Montcalm USA, Inc. dba Adler Scaffolding | | | 2017049633 | $419,445.28 | 499 | $2,131,622.33 gross (including under Chemtex) | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 200 | | | Montcalm USA, Inc. dba Adler Scaffolding | | | 2017052037 | $960,560.43 | | | | | $960,560.43 | |
| 201 | | Montcalm USA, Inc. dba Adler North America | | | | 2017041115 | $201,876.35 | 476, 499 | $2,131,622.33 gross (including under MMR Constructors) | | | $1,171,061.90 | |
| 202 | | Montcalm USA, Inc. dba Adler North America | | | | 2017048791 | $1,133,113.97 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 203 | | Montcalm USA, Inc. dba Adler North America | | | | 2017050999 | $1,171,061.90 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 204 | | | MSI Supply, Inc. | | | 2017029823 | $20,854.48 | 180 | $20,854.48 | | | $20,854.48 | |
| 205 | | N&A Project Management USA, Inc. | | | | 2017041158 | $10,000.00 | 477 | $417,070.19 | | | $417,070.19 | |
| 206 | | N&A Project Management USA, Inc. | | | | 2017041114 | $38,814.72 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 207 | | N&A Project Management USA, Inc. | | | | 2017049348 | $232,070.19 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 208 | | N&A Project Management USA, Inc. | | | | 2017049349 | $185,000.00 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 209 | | Orbital Insulation Corp. | | | | 2017042922 | $2,609,490.13 | 795 | $9,404,313.03 gross (including under IMS) | | | $2,593,285.41 | Reserve amount discounted for applicable subcontractor reserves |
| 210 | | Orbital Insulation Corp. | | | | 2017043188 | $2,609,490.13 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 211 | | | Ahern Rentals | | | 2017052455 | $16,204.72 | | | | | $16,204.72 | |
| 212 | | Palacios Marine & Industrial Coatings, Inc. | | | | 2017016003 | $941,970.20 | | | | | $941,970.20 | |
| 213 | | Pipeline Construction and Maintenance | | | | 2017051739 | $133,739.00 | 921 | $133,739.00 | 306 | $133,739.00 | $133,739.00 | |
| 214 | | Piping Technology & Products, Inc. | | | | 2017013824 | $23,457.76 | 975 | $23,457.76 | 241, 313, 315 | $23,457.76 | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 215 | | Piping Technology & Products, Inc. | | | | 2017013837 | $23,457.76 | | | | | $23,457.76 | |
| 216 | | Repcon, Inc. | | | | 2017046592 | $261,593.34 | 181 | $261,593.34 | | | $261,593.34 | |
| 217 | | SafeRack LLC | | | | 2017014645 | $121,607.88 | | | | | $121,607.88 | |
| 218 | | Stream Construction Co. | | | | 2017042697 | $19,063.00 | 700 | $27,120.30 | | | $27,120.30 | |
| 219 | | Stream Construction Co. | | | | 2017054157 | $19,063.00 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 220 | | Stream Construction Co. | | | | 2017054156 | $8,109.30 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 221 | | Sunbelt Rentals | | | | 2017046000 | $1,417,356.28 | 912 | $5,300,116.33 gross (including Sunbelt Rentals dba Empire Scaffold, LLC) | | | $5,300,116.33 | |
| 222 | | Sunbelt Rentals dba Empire Scaffold, LLC | | | | 2018001772 | $1,352,147.26 | 912 | $5,300,116.33 gross (including Sunbelt Rentals) | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 223 | | Sunbelt Rentals dba Empire Scaffold, LLC | | | | 2018001771 | $2,530,612.79 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 224 | | Thyssenkrupp Elevator Corporation | | | | 2018000796 | $41,040.00 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 225 | | Thyssenkrupp Elevator Corporation | | | | 2018004280 | $227,240.00 | | | | | $227,240.00 | |
| 226 | | Tolunay-Wong Engineers, Inc. | | | | 2017025431 | $237,935.00 | 919 | $237,935.00 | 128, 289 | $237,935.00 | $237,935.00 | |
| 227 | | Trinity Steel Works, LLC | | | | | | | | | | $0.00 | No lien filed |
| 228 | | | Ahern Rentals | | | 2017011552 | $13,265.89 | | | | | $13,265.89 | |
| 229 | | TSGC, Inc., d/b/a Industrial Fabricators of Corpus Christi | | | | 2017014470 | $335,814.39 | 733 | $298,815.90 | | | $335,814.39 | |
| 230 | | Tyco SimplexGrinnell | | | | 2017026884 | $2,211,685.20 | 926 | $3,260,797.58 | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| Debtors' Ref. | Level 1 Contractor | Level 2 Contractor | Level 3 Contractor | Level 4 Contractor | Level 5 Contractor | Recording No. | Recorded Amount | 546 Notice Docket No. | 546 Notice Amount | Lien Identification Statement No. | Lien Identification Statement Amount | Reserve Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 231 | | Tyco SimplexGrinnell | | | | 2018001885 | $3,260,797.58 | | | | | $3,260,797.58 | |
| 232 | | U.S. Bellows, Inc. | | | | 2017013839 | $790,132.10 | 904 | $790,132.10 | 249, 284, 285 | $790,132.10 | $790,132.10 | |
| 233 | | U.S. Bellows, Inc. | | | | 2017013822 | $790,132.10 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 234 | | W.T. Byler Co. | | | | 2017047721 | $300,000.00 | 183 | $300,000.00 | | | $300,000.00 | |
| 235 | | WFS Construction Company, LLC | | | | 2016043463 | $2,773,324.07 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 236 | | WFS Construction Company, LLC | | | | 2016043461 | $12,053,732.00 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 237 | | WFS Construction Company, LLC | | | | 20106052196 | $3,151,423.51 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 238 | | WFS Construction Company, LLC | | | | 2016052195 | $7,236,122.00 | | | | | $0.00 | Corpus Christi Mechanics' Lien Assumed Claim |
| 239 | | Wholesale Electric Supply Company of Houston, Inc. | | | | 2017028729 | $2,838,287.59 | 496 | $4,107,049.22 | 325 | $4,320,444.94 | $4,320,444.94 | |
| 240 | | Wholesale Electric Supply Company of Houston, Inc. | | | | 2017045368 | $3,518,000.81 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |
| 241 | | Wholesale Electric Supply Company of Houston, Inc. | | | | 2017052093 | $3,518,000.81 | | | | | $0.00 | Applicable reserve accounted for by adjacent reserve for lienholder |

| | |
|---|---|
| SUM OF RESERVE AMOUNTS: | $230,420,660.58 |
| ADDITIONAL AGREED RESERVE AMOUNT: | $34,579,339.42 |
| GRAND TOTAL RESERVE: | $265,000,000.00 |