## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| M&G USA CORPORATION, *et al.*,[1] | : | Case No. 17-12307 (BLS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND ORDER CONFIRMING THIRD AMENDED PLAN
## OF LIQUIDATION OF THE DEBTORS AND DEBTORS IN POSSESSION

The above-captioned debtors and debtors and debtors in possession (collectively,

the "Debtors"), having:

    i.       proposed the *Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, dated September 5, 2018 (Docket No. 1813), as modified by (a) the *First Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, dated October 31, 2018 (Docket No. 2019) (as modified, supplemented and amended, the "Plan"), (b) the *Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, dated November 6, 2018 (Docket No. 2049) (the "Second Amended Plan") and (c) the *Third Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession*, dated December 11, 2018 (Docket No. 2115) (the "Third Amended Plan"),[2] a copy of which is attached hereto as Exhibit A, excluding certain exhibits; and

    ii.      filed the *Disclosure Statement for Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, dated September 5, 2018 (Docket No. 1813), as modified by (a) the *Disclosure Statement for Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, dated October 31, 2018 (Docket No. 2020) and (b) the *Disclosure Statement for Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, dated November 6, 2018 (Docket No. 2050) (the "Disclosure Statement");

    iii.     filed the *Notice of Filing of Plan Supplement* (Docket No. 2117);

---

[1]    The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these Cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2]    All capitalized terms used but not defined herein have the meanings given to them in the Plan.

iv.  filed the *Debtors' (I) Memorandum of Law in Support of Confirmation of Third Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession and (II) Consolidated Reply to Certain Objections to Confirmation of Third Amended Joint Plan of Liquidation*, dated December 12, 2018 (Docket No. 2121) (the "Confirmation Brief");

v.  filed the *Declaration of Brian Corio in Support of Confirmation of the Third Amended Plan of Liquidation of the Debtors and Debtors in Possession*, dated December 12, 2018 (Docket No. 2122) (the "Corio Declaration"); and

vi.  filed the *Declaration of Craig E. Johnson of Prime Clerk, LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, filed by Prime Clerk, LLC (the "Voting Agent"), dated December 11, 2018 (Docket No. 2114) (the "Voting Declaration");

vii.  filed the *Supplemental Declaration of Craig E. Johnson of Prime Clerk, LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, filed by the Voting Agent, dated December 15, 2018 (Docket No. 2143) (the "Supplemental Voting Declaration");

viii.  timely and properly:

(a)  solicited acceptances and rejections on the Plan and served Solicitation Packages (as defined below) to Holders of Claims and Interests entitled to vote on the Plan;

(b)  provided due and proper notice of the Confirmation Hearing, the Confirmation Objection Deadline and the Voting Deadline (each as defined below) to Holders of Claims against, and Interests in, the Debtors and other parties in interest, in each case, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") and the Disclosure Statement Order (as defined below), as evidenced by the Affidavits of Service, filed by the Voting Agent on November 14, 2018 (Docket No. 2065), November 20, 2018 (Docket No. 2075), November 27, 2018 (Docket No. 2080), December 5, 2018 (Docket No. 2096) (collectively, the "Solicitation Affidavits");

(c)  caused the publication of the notice of the Confirmation Hearing in the national edition of *USA Today*, the *Houston Chronicle* and the *Corpus Christi Caller Times* on November 15, 2018, as set forth in the *Certificate of Publication* of Stanislav Kesler, filed on November 19, 2018 (Docket No. 2071) (the "Publication Affidavit");

ix.     received *The Port of Corpus Christi Authority's Response to the Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 2100) (the "Plan Response").

The United States Bankruptcy Court for the District of Delaware (the "Court") having:

i.      entered the *Order (I) Approving Disclosure Statement; (II) Approving Form and Manner of Service of Notice Thereof; (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Chapter 11 Plan of Liquidation; and (IV) Scheduling Hearing on Confirmation of Plan of Liquidation* (Docket No. 2047) (the "Disclosure Statement Order"), which, among other things, (a) approved the Disclosure Statement pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (b) established December 17, 2018 as the date for the commencement of the hearing to consider confirmation ("Confirmation") of the Plan (the "Confirmation Hearing"); (c) approved the form and manner of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); (d) established certain procedures for soliciting and tabulating votes with respect to the Plan; (e) established December 6, 2016 at 5:00 p.m. as the deadline to cast votes on the Plan (as extended by the Debtors in consultation with the Creditors' Committee in accordance with the Solicitation Procedures (as defined in the Disclosure Statement Order) with respect to Holders of Claims in Classes 3 and 4, the "Voting Deadline"); and (f) established December 7, 2018 at 5:00 p.m. as the deadline to file objections to confirmation of the Plan (the "Confirmation Objection Deadline");

ii.     found that the Confirmation Hearing Notice provided the opportunity for any party in interest to object to confirmation of the Plan and was otherwise adequate and appropriate under the circumstances and that no further notice is required;

iii.    found that the modifications to the Second Amended Plan, as reflected in the Third Amended Plan, reflect settlements with the Holders of affected Claims, constitute immaterial modifications and/or do not adversely affect the treatment of any Claims or Interests, and thus that the Debtors are not required to resolicit votes on the Plan;

iv.     familiarity with the Plan and other relevant factors affecting the Chapter 11 Cases;

v.      familiarity with, and having taken judicial notice of, the entire record of the Chapter 11 Cases;

vi.     considered the Confirmation Brief and the Plan Response;

vii.    commenced the Confirmation Hearing on December 17, 2018;

viii.   considered the entire record of the Confirmation Hearing, including, but not limited to:

> (a)    the trial testimony of each of the witnesses called at the Confirmation Hearing;
>
> (a)    the Corio Declaration, the Voting Declaration and the Supplemental Voting Declaration;
>
> (b)    the exhibits admitted into evidence at the Confirmation Hearing;
>
> (c)    the arguments of counsel presented at the Confirmation Hearing; and
>
> (d)    the Plan Response.

ix.    been advised that, notwithstanding the Plan Response, the Port of Corpus Christi Authority does not object to confirmation of the Plan;

x.    overruled any and all objections to confirmation of the Plan to the extent not consensually resolved or withdrawn;

xi.    found the legal and factual bases set forth in the pleadings, documents, testimony and evidence filed or adduced in support of confirmation of the Plan and presented at the Confirmation Hearing to establish just cause for the relief granted herein; and

**NOW, THEREFORE**, it appearing to this Court that the Confirmation Hearing Notice and notice of the Plan and all modifications thereto and the transactions contemplated thereby have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby and that any party in interest so affected has had the opportunity to object to Confirmation; and, after due deliberation and based upon the record described above, it appearing to this Court that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing, as well as the representations made by the Debtors and their counsel on the record of the Confirmation Hearing, establish just cause for the relief granted herein; this Court hereby makes and issues the following findings of fact, conclusions of law and order:

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT**:

A.      Findings of Fact and Conclusions of Law.  The findings of fact and conclusions of

law set forth herein and on the record at the Confirmation Hearing constitute this Court's findings

of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of

fact constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

B.      Venue and Jurisdiction.  Venue in this Court was proper as of the Petition Date

pursuant to 28 U.S.C. §§ 1408 and 1409 and remains proper during the Chapter 11 Cases.

This Court has subject matter jurisdiction over this matter and the Chapter 11 Cases pursuant to

28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies

with the applicable provisions of the Bankruptcy Code and whether Confirmation should be

approved.

C.      Eligibility for Relief.  The Debtors were and continue to be entities eligible for

relief under section 109 of the Bankruptcy Code.

D.      Commencement and Administration of these Chapter 11 Cases.  On October 24,

2017 (the "Polymers Petition Date"), M&G Polymers USA, LLC filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code, and thereafter, each of the other Debtors

commenced chapter 11 cases before this Court on October 30, 2017 (together with the Polymers

Petition Date, the "Petition Date").  No trustee or examiner has been appointed in these

Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  In accordance with certain

orders of this Court, these Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

E.       Appointment of Statutory Committee. On November 13, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee"), pursuant to sections 1102(a) and (b) of the Bankruptcy Code, appointed an official committee of unsecured creditors (the "Creditors' Committee") to represent the interests of all unsecured creditors in the Chapter 11 Cases (Docket No. 146). The Creditors' Committee consists of the following seven members: (1) Industrial and Commercial Bank of China Limited; (2) UniCredit S.p.A.; (3) Banca Monte dei Paschi di Siena S.p.A.; (4) Pepsi-Cola Advertising and Marketing, Inc.; (5) Amcor Group GmbH; (6) the United Steelworkers; and (7) Pension Benefit Guaranty Corporation.

F.       Judicial Notice. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of this Court or its duly appointed agent, including, but not limited to, all pleadings and other documents on file in the Chapter 11 Cases, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the Chapter 11 Cases.

G.       Solicitation and Notice. The Plan, Disclosure Statement, Disclosure Statement Order, notice of the Confirmation Hearing and an appropriate ballot (collectively, the "Ballots") for voting on the Plan or a notice of non-voting status (in substantially the forms approved pursuant to the Disclosure Statement Order) and additional materials detailed in the Disclosure Statement Order (collectively, the "Solicitation Packages") were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order. The solicitation of votes on the Plan complied with the Solicitation Procedures (as defined in the Disclosure Statement Order), was appropriate and

satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith and in compliance with sections 1125, 1126 and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations. As evidenced by the Solicitation Affidavits and the Publication Affidavit, all parties required to be given notice of the Confirmation Hearing (including the Voting Deadline and Confirmation Objection Deadline) have been provided due, proper, timely and adequate notice and have had an opportunity to appear and be heard with respect thereto. Accordingly, no other or further notice was required.

      H.    <u>Voting.</u> As evidenced by the Voting Declaration and the Supplemental Voting Declaration, votes on the Plan were solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. As set forth in the Voting Declaration, as supplemented by the Supplemental Voting Declaration, the voting results on the Plan are as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | Secured Pre-Petition First Lien Claims | 1 | $423,800,000.00 | 1 | 100% | $423,800,000.00 | 100% |
| 3 | Pre-Petition Second Lien Claims | 1 | $463,638,000.00 | 1 | 100% | $463,638,000.00 | 100% |
| 4 | Corpus Christi Mechanics' Lien Reserve Claims | 41 | $229,854,845.07 | 41 | 100% | $229,854,845.07 | 100% |
| 8 | General Unsecured Claims | 185 | $890,710,751.61 | 161 | 87.03% | $774,729,232.03 | 86.98% |

      I.    <u>Burden of Proof.</u> The Debtors have the burden of proving all applicable elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. The Debtors have met that evidentiary burden. Each witness who testified on behalf of the Debtors at or in connection with the

Confirmation Hearing, if any, was credible, reliable and qualified to testify as to the topics
addressed in his or her testimony.

      J.      <u>Plan Supplement.</u>  On December 11, 2018, the Debtors filed the Plan Supplement
with the Court.  The filing and notice of the Plan Supplement was proper and in accordance with
the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and no other or further notice of
the materials in the Plan Supplement was or shall be required.

      K.      <u>Plan Modifications.</u>  Subsequent to filing the Second Amended Plan, the Debtors
made certain modifications thereto (the "<u>Modifications</u>"), which are reflected in the Third
Amended Plan, a copy of which is attached hereto as <u>Exhibit A</u>.  The Modifications reflect
settlements with the Holders of affected Claims, constitute immaterial modifications and/or do
not adversely affect the treatment of any Claims or Interests.  Pursuant to section 1127(b) of the
Bankruptcy Code and Bankruptcy Rule 3019, the Modifications do not require additional
disclosure under section 1125 of the Bankruptcy Code or the resolicitation of acceptances or
rejections of the Plan under section 1126 of the Bankruptcy Code, nor do they require that
Holders of Claims against the Debtors be afforded further opportunity to change previously cast
acceptances or rejections of the Plan.  The filing of the Third Amended Plan on December 11,
2018 and the disclosure of the Modifications on the record at the Confirmation Hearing,
constitute due and sufficient notice thereof under the circumstances of the Chapter 11 Cases.
Accordingly, the Plan is properly before this Court, and all votes cast with respect to the Second
Amended Plan, as any such vote may have been superseded by the Holder of any Claim prior to
the applicable Voting Deadline, shall be binding and shall apply with respect to the Third
Amended Plan.

L.     Bankruptcy Rule 3016. The Plan is dated and identifies the Debtors as the plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

M.     Good Faith Solicitation and Section 1125(e) of the Bankruptcy Code. The Debtors solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order. Based on the record before this Court in the Chapter 11 Cases, including, but not limited to, the evidence and testimony proffered, adduced or presented at the Confirmation Hearing, the Debtors and their representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules in connection with all of their respective activities relating to the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation and release provisions set forth in Section IX.B and C of the Plan.

## COMPLIANCE WITH THE REQUIREMENTS
## OF SECTION 1129 OF THE BANKRUPTCY CODE

N.     The evidentiary record of the Confirmation Hearing supports the findings of fact and conclusions of law set forth in the following paragraphs.

O.     Section 1129(a)(1) of the Bankruptcy Code. The Plan complies with each applicable provisions of the Bankruptcy Code. In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as follows:

      1.     Section 1122 of the Bankruptcy Code. In accordance with section 1122(a) of the Bankruptcy Code, Section II.B of the Plan classifies each Claim against and Interest in each of the Debtors into a Class containing only substantially similar Claims asserted against or Interests in the Debtors;

2. <u>Section 1123(a)(1) of the Bankruptcy Code.</u> In accordance with section 1123(a)(1) of the Bankruptcy Code, Section II.B of the Plan properly designates all Classes of Claims and Interests;

3. <u>Section 1123(a)(2) of the Bankruptcy Code.</u> In accordance with section 1123(a)(2) of the Bankruptcy Code, Section II.B of the Plan properly specifies which Classes are Unimpaired under the Plan;

4. <u>Section 1123(a)(3) of the Bankruptcy Code.</u> In accordance with section 1123(a)(3) of the Bankruptcy Code, Sections II.C.2, II.C.3, II.C.4, II.C.8, II.C.9 and II.C.10 of the Plan properly specifies the treatment of Impaired Classes of Claims and Interests;

5. <u>Section 1123(a)(4) of the Bankruptcy Code.</u> In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides for equal treatment within each Class;

6. <u>Section 1123(a)(5) of the Bankruptcy Code.</u> In accordance with section 1123(a)(5) of the Bankruptcy Code, Section III of the Plan and the documents in the Plan Supplement provide adequate means for the implementation of the Plan;

7. <u>Section 1123(a)(6) of the Bankruptcy Code.</u> In accordance with section 1123(a)(6) of the Bankruptcy Code, the Plan does not issue nonvoting equity securities;

8. <u>Section 1123(a)(7) of the Bankruptcy Code.</u> In accordance with section 1123(a)(7) of the Bankruptcy Code, Section III.C of the Plan contains provisions that are consistent with the interests of Holders of Claims against, and Interests in the Debtors, and public policy with the respect to the discharge of the Debtors' directors and officers on the Effective Date; and

9. <u>Section 1123(b) of the Bankruptcy Code.</u> In accordance with section 1123(b)(1) of the Bankruptcy Code: (i) Section II.B of the Plan provides for the impairment or unimpairment of Classes of Claims; (ii) Section IV.A of the Plan contains provisions governing the assumption or rejection of certain Executory Contracts or Unexpired Leases; (iii) Section III.C.1 of the Plan provides for the creation of the Litigation Trust to resolve all Disputed Claims and make distributions to certain Holders of Allowed Claims; (iv) Section III.C.10 of the Plan provides for the settlement or adjustment of any Claim or Interest belonging to the Debtors; and (v) Sections IX.B and IX.C of the Plan contain certain release and exculpation provisions that are consistent with applicable provisions of the Bankruptcy Code.

P.      <u>Section 1129(a)(2) of the Bankruptcy Code.</u>  The Debtors, as proponents of the

Plan, have complied with all applicable provisions of the Bankruptcy Code as required by

section 1129(a)(2), including sections 1125 and 1126.  Specifically:

> 1.      Votes to accept or reject the Plan were solicited by the Debtors and their
> agents in good faith after the Court approved the Disclosure Statement
> pursuant to section 1125(a) of the Bankruptcy Code and entered the
> Disclosure Statement Order.
>
> 2.      The Debtors and their agents have solicited and tabulated the votes on the
> Plan and have participated in the activities described in section 1125 of the
> Bankruptcy Code fairly and in good faith within the meaning of
> section 1125(e) of the Bankruptcy Code, and in a manner consistent with
> the applicable provisions of the Disclosure Statement Order,
> the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules,
> the Local Rules and all other applicable rules, laws and regulations, and
> are entitled to the protections afforded by section 1125(e) of the
> Bankruptcy Code and the exculpation and release provisions set forth in
> Sections IX.B and IX.C of the Plan.
>
> 3.      Pursuant to section 1126 of the Bankruptcy Code, the Debtors solicited
> votes on the Plan only from Holders of Claims in Impaired Classes of
> Claims that will receive or retain property under the Plan (*i.e.*, Classes 2,
> 3, 4 and 8).

Q.      <u>Section 1129(a)(3) of the Bankruptcy Code.</u>  The Plan has been proposed in good

faith and not by any means forbidden by law.  The Chapter 11 Cases were filed with the

purposes of maximizing distributions to Holders of Claims entitled to a distribution under the

Plan, winding down the Debtors' estates and distributing the Debtors' remaining assets in

accordance with the priority scheme set forth in the Bankruptcy Code and not by any means

forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes

of the Bankruptcy Code.  Further, the Plan is the result of extensive good faith, arm's-length

negotiations between the Debtors and certain of their principal stakeholders, including the

Creditors' Committee, the Pre-Petition First Lien Lender and CEC, the Purchaser, Comerica,

Macquarie and the Holders of certain Corpus Christi Mechanics' Lien Reserve Claims, and

reflects substantial input from these parties, among others. The Plan therefore is fair and reasonable and in the best interest of all creditors. In so finding, this Court has considered the totality of the circumstances in these Chapter 11 Cases. Moreover, as described in greater detail below, the Plan's exculpation, release and injunction provisions have been negotiated in good faith, are consensual and voluntary and are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code and applicable law in this Circuit. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

R.    Section 1129(a)(4) of the Bankruptcy Code. No payment for services or costs and expenses incurred in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be made by a Debtor other than payments that have been authorized by order of this Court. Pursuant to the Court's *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket No. 308), this Court has authorized and approved, on an interim basis, the payment of certain fees and expenses of the Professionals retained in the Chapter 11 Cases. All such fees and expenses, as well as all other accrued fees and expenses of the Professionals through the Effective Date, remain subject to final review of the Court. In addition, Section X.2 of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation of any Fee Claims for periods ending on or before the Effective Date pursuant to the Bankruptcy Code or the Plan.

S.    Section 1129(a)(5) of the Bankruptcy Code. Section 1129(a)(5) has been satisfied because, on the Effective Date, the Debtors' directors and officers will be discharged, and therefore, no insider will be employed following the Effective Date. In addition, the Litigation Trustee will be appointed as the successor to and representative of the Debtors' Estates.

T.     Section 1129(a)(6) of the Bankruptcy Code. Section 1129(a)(6) of the Bankruptcy Code is not applicable. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

U.     Section 1129(a)(7) of the Bankruptcy Code. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. As set forth in the Corio Declaration, the Liquidation Analysis attached as Exhibit D to the Disclosure Statement and the other evidence proffered or adduced at the Confirmation Hearing, each Holder of an Impaired Claim either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Debtors have demonstrated that the Plan is in the best interests of their creditors.

V.     Section 1129(a)(8) of the Bankruptcy Code. Classes 1 (Priority Claims), 5 (Comerica Claims), 6 (Secured Macquarie Claims), 7 (Other Secured Claims) and 11 (Interests in Subsidiary Debtors) are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 2 (Secured Pre-Petition First Lien Claims), 3 (Pre-Petition Second Lien Claims), 4 (Corpus Christi Mechanics' Lien Reserve Claims) and 8 (General Unsecured Claims) are Impaired by the Plan and have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code, as established by the Voting Declaration and the Supplemental Voting Declaration. Classes 9 (Debtors Intercompany Claims) and 10 (Interests in Senior Debtors) will not receive or retain any property on account of their Claims or Interests under the Plan and such Holders are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Nevertheless, as more fully explained below, the Plan is confirmable because it does not discriminate unfairly and is fair and equitable

with respect to such non-accepting Classes of Claims and Interests and thus satisfies section 1129(b)(1) of the Bankruptcy Code.

W.      Section 1129(a)(9) of the Bankruptcy Code. The Plan provides treatment for Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and DIP Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

X.      Section 1129(a)(10) of the Bankruptcy Code. Section 1129(a)(10) of the Bankruptcy Code has been satisfied because at least one of the Impaired Classes has voted to accept the Plan. See Supplemental Voting Declaration at Ex. A.

Y.      Section 1129(a)(11) of the Bankruptcy Code. The Disclosure Statement, the Corio Declaration and the evidence proffered or adduced at the Confirmation Hearing: (1) are persuasive and credible, are made in good faith and utilize reasonable and appropriate methodologies and assumptions; (2) have not been controverted by other evidence; and (3) establish that (i) the conditions precedent to the Effective Date are reasonably likely to be satisfied, (ii) the Debtors' various reserves, including the Professional Fee Reserve, Completion Fee Reserve, Corpus Christi Mechanics' Lien Reserve, Disputed Claims Reserve and proceeds of the Litigation Trust Assets provide sufficient funds to administer and consummate the Plan and to close the Chapter 11 Cases and (iii) the Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.

Z.      Section 1129(a)(12) of the Bankruptcy Code. Section II.A.1.b of the Plan provides that on or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the applicable Debtors in Cash equal to the amount of such Administrative Claims. Fees payable pursuant to 28 U.S.C. § 1930 for each Estate after the Effective Date will be paid from the Litigation Trust by the Litigation Trustee until the closing of

the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

AA.    Section 1129(a)(13) of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan because the Court has not established the level of any retiree benefits pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code at any time prior to entry of this Order other than, to the extent applicable, those retiree benefits that were terminated as of June 1, 2018 pursuant to the *Order Approving Stipulation By and Between M&G Polymers USA, LLC and United Steelworkers* (Docket No. 1602).

BB.    Section 1129(a)(14), (15) and (16) of the Bankruptcy Code. Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code are inapplicable to the Chapter 11 Cases because the Debtors owe no domestic support obligations, are not individuals and are not nonprofit corporations.

CC.    Section 1129(b) of the Bankruptcy Code. Notwithstanding that Classes 9 and 10 are deemed to have rejected the Plan for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code because (1) based upon the record before this Court and the treatment provided to such Claims and Interests, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Interests and (2) the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except section 1129(a)(8) of the Bankruptcy Code. The evidence in support of Confirmation of the Plan proffered or adduced by the Debtors at or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Interests and the requirements for confirmation of the Plan under section 1129(b) of the Bankruptcy Code: (1) is reasonable,

persuasive, credible, and accurate; (2) utilizes reasonable and appropriate methodologies and assumptions; and (3) has not been controverted by any other credible evidence.

DD.     Section 1129(c) of the Bankruptcy Code.  The Plan is the only plan that has been filed in the Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

EE.     Section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended (the "Securities Act").  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.     Section 1129(e) of the Bankruptcy Code.  None of these Chapter 11 Cases are small business cases within the meaning of the Bankruptcy Code.  Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

GG.     Satisfaction of Confirmation Requirements.  Based upon the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors satisfy all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## FINDINGS REGARDING IMPLEMENTATION OF THE PLAN

HH.     Implementing Documents.  All documents and agreements necessary to implement the Plan, including, but not limited to, those contained in the Plan Supplement, and all other relevant and necessary documents, are essential elements of the Plan and have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors and shall, upon completion of documentation and execution, be valid, binding and enforceable documents and agreements not in conflict with any federal, state or local law.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided

sufficient and adequate notice of such documents and agreements. The Debtors or Litigation Trustee, as applicable, are authorized, without any further notice to, or action, order or approval of, this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating to the Plan and to perform their obligations under such agreements, documents, instruments and certificates.

II.    Substantive Consolidation. The Plan provides for the substantive consolidation of the Debtors' Estates on the Effective Date. Substantive consolidation of the Debtors' Estates is justified in these Chapter 11 Cases because, as set forth in paragraphs 16-20 of the Corio Declaration, the Debtors have demonstrated that prepetition, they operated their businesses as an integrated enterprise to such an extent that many of their major creditor constituencies treated the Debtors as one legal entity and/or that, postpetition, the assets and liabilities of their Estates are so intertwined that, in light of the transactions contemplated in the Corpus Christi Asset Purchase Agreement and proposed in the Plan, separating them would be prohibitive and harmful to all of the Debtors' creditors.

JJ.    Treatment of Executory Contracts and Unexpired Leases. Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Section IV of the Plan provides that all Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for any Executory Contract or Unexpired Lease (1) identified on Exhibit D to the Plan as an Executory Contract or Unexpired Lease designated for assumption and assignment to the Litigation Trust, (2) that is the subject of a separate motion or notice to assume or reject Filed by a Debtor and pending as of the Confirmation Hearing or (3) that previously expired or terminated pursuant to its own terms.

Further, consistent with sections 365 and 1123 of the Bankruptcy Code, Section IV of the Plan

provides that unless otherwise assumed by the Debtors and assigned to the Litigation Trust,

any Executory Contract or Unexpired Lease that remains, as of the Effective Date, the subject of

a pending notice of proposed or potential assumption and assignment issued in connection with

any Sale shall be deemed rejected as of such date to the extent not assumed and assigned to the

applicable purchaser in connection with such Sale.  The Debtors' determinations regarding the

assumption and assignment or rejection of Executory Contracts and Unexpired Leases are based

on and within the sound business judgment of the Debtors, are necessary to the implementation

of the Plan and are in the best interests of the Debtors, their estates, Holders of Claims and other

parties in interest in these Chapter 11 Cases.

     KK.   <u>Jurisdiction With Respect to Release, Exculpation and Injunction Provisions.</u>
This Court has jurisdiction under sections 157 and 1334(a) and (b) of title 28 of the United States

Code to approve the releases, exculpations and injunctions set forth in Section IX of the Plan.

Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the

releases and exculpations set forth in Section IX of the Plan.

     LL.   <u>Releases, Exculpation and Injunction.</u>  Based on the record before this Court,

including, but not limited to, the evidence proffered, adduced, and/or presented at the

Confirmation Hearing, which is reasonable, persuasive and credible, the release, exculpation and

injunction provisions set forth in the Plan:  (1) are fair, equitable and reasonable; (2) are in the

best interests of the Debtors, their Estates and the parties in interest; (3) are an integral element

of the settlements and transactions incorporated into the Plan; (4) are supported by valuable

consideration; (5) do not relieve any party of liability arising out of an act or omission

constituting willful misconduct (including, but not limited to, fraud) or gross negligence; and

(6) with respect to the third-party releases contemplated by Section IX.C of the Plan, shall only be binding on Holders that (i) voted in favor of the Plan or are Unimpaired by and conclusively presumed to accept the Plan or (ii) either (a) abstained from voting, (b) voted to reject the Plan or (c) are deemed to reject the Plan and did not opt out of the voluntary release contained in Section IX.C.2. Accordingly, this Court finds that: (1) the release of potential Claims belonging to the Debtors pursuant to the Plan are part of a fair and a valid exercise of the Debtors' business judgment; (2) the third-party releases contemplated by Section IX.C.2 of the Plan are fair, reasonable and appropriate under the circumstances of the Chapter 11 Cases and (3) the release, exculpation and injunction provisions set forth in the Plan were proposed in good faith, are fair and appropriate under the circumstances, are appropriately tailored, are intended to promote finality and prevent parties from attempting to circumvent the Plan's terms and are consistent with the Bankruptcy Code and applicable law in light of the substantial contribution to the Chapter 11 Cases and the Plan of all Released Parties and, therefore, valid and binding. The third-party releases were extensively disclosed in the Disclosure Statement and the Ballots and therefore consented to by all parties who voted in favor of the Plan or did not opt out of providing such releases.

MM.    <u>Retention of Jurisdiction.</u>  Subject to Section X of the Plan, this Court may properly retain jurisdiction over any matter arising under the Bankruptcy Code, or arising in, or related to, the Chapter 11 Cases or the Plan, after Confirmation thereof and after the Effective Date, and any other matter or proceeding that is within this Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.  The Court shall retain jurisdiction over each of the matters set forth in Section X of the Plan from and after the Effective Date to the fullest legally permissible extent.

NN.   <u>Satisfaction of Conditions to Confirmation.</u>  Each of the conditions precedent to Confirmation set forth in Section VII.A of the Plan has been satisfied or waived in accordance with the provisions of the Plan.

OO.   <u>Plan Objections.</u>  All parties have had a full and fair opportunity to raise and litigate any objections to confirmation of the Plan, and any such objections have been fully considered by this Court.

PP.   <u>Waiver of Stay.</u>  Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

**A.    Confirmation of Plan**

1.      The Plan, attached hereto as <u>Exhibit A,</u> including all exhibits thereto, the Plan Supplement (as revised, in the case of the Litigation Trust Agreement attached hereto as <u>Exhibit B</u>) and any related document (whether or not specifically approved or referred to herein) are CONFIRMED in their entirety in each and every respect, pursuant to section 1129 of the Bankruptcy Code, whether or not attached hereto.  The terms of the Plan, the Plan Supplement and the exhibits thereto are incorporated herein by reference and are an integral part of this Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

2.      As set forth in the record at the Confirmation Hearing, all informal objections to confirmation of the Plan have been consensually resolved and are hereby deemed withdrawn. Any objections or responses to Confirmation of the Plan and any reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order or (b) are not cured by the relief granted herein are hereby OVERRULED in their entirety and on

their merits, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.

3.      The Effective Date of the Plan shall occur on the date when the conditions set forth in Section VII.B of the Plan have been satisfied or, if applicable, have been waived by the Debtors, with the consent of the Creditors' Committee, without notice, leave or order of this Court or any formal action other than proceeding to confirm or consummate the Plan; provided that the condition that the Closing Date shall have occurred shall only be waived with the consent of the Purchaser, Macquarie, Inbursa, CEC and the Construction Lienholder Group, and in no event shall the obligations of the Purchaser set forth in the Plan and herein (including any payment or funding obligations) be effective until the Closing Date occurs; provided further that in no event shall the Purchaser's obligation to fund (i) the Corpus Christi Mechanics' Lien Reserve upon occurrence of the Closing Date in accordance with Section 3.3(j) of the Corpus Christi Asset Purchase Agreement or (ii) the Macquarie Payment upon occurrence of the Closing Date in accordance with Section 3.3(c) of the Corpus Christi Asset Purchase Agreement be waived; provided further that, if the Creditors' Committee has not appointed the initial members of the Litigation Trust Oversight Committee by such time as the other conditions to the Effective Date set forth in Section VII.B thereof have been satisfied or, if applicable, waived, then the appointment of the Litigation Trust Oversight Committee shall be deemed waived as a condition to the occurrence of the Effective Date, and the Creditors' Committee shall not be dissolved and shall continue to exist until such time as the initial members of the Litigation Trust Oversight Committee have been appointed and solely for such purpose.

**B.    Effects of Confirmation**

4.      Subject to the provisions of Section IX of the Plan and Bankruptcy Rule 3020(e), in accordance with section 1141(a) of the Bankruptcy Code and notwithstanding any applicable

law to the contrary, upon the occurrence of the Effective Date, the terms of the Plan and this

Order shall be binding upon, and inure to the benefit of: (i) the Debtors; (ii) the Litigation Trust;

(iii) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests

are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected

or are deemed to have accepted or rejected the Plan); (iv) any other person giving, acquiring or

receiving property under the Plan; (v) any and all non-Debtor parties to Executory Contracts or

Unexpired Leases with any of the Debtors; and (vi) the respective heirs, executors,

administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys,

beneficiaries, guardians, successors or assigns, if any, of any of the foregoing. All settlements,

compromises, releases, waivers, discharges, exculpations and injunctions set forth in the Plan

shall be, and hereby are, effective and binding on all individuals, firms, corporations,

partnerships, limited liability companies, joint ventures, associations, trusts, unincorporated

organizations or other entities (each individually, a "Person") who may have had standing to

assert any settled, released, discharged, exculpated or enjoined causes of action, and no other

Person or entity shall possess such standing to assert such causes of action after the Effective

Date.

**C.    Plan Classification Controlling**

5.    The terms of the Plan shall govern the classification of Claims and Interests for

purposes of Distributions thereunder. The classifications set forth on the Ballots tendered to or

returned by Holders of Claims in connection with voting on the Plan: (i) were set forth thereon

solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in

no event shall be deemed to modify or otherwise affect, the actual classification of Claims and

Interests under the Plan for Distribution purposes; (iii) may not be relied upon by any Holder of a

Claim or Interest as representing the actual classification of such Claim or Interest under the Plan

for Distribution purposes; and (iv) shall not be binding on the Debtors except for voting purposes.

### D.    Substantive Consolidation of the Debtors

6.    The substantive consolidation of the Debtors' Estates into a single consolidated Estate for all purposes related to the Plan, including for purposes of implementing the Plan, for purposes of voting, for assessing whether the standards for Confirmation have been met, for calculating and making Distributions under the Plan and for filing post-Confirmation reports and paying quarterly fees to the U.S. Trustee, as set forth in Section III.G of the Plan, is hereby approved.  On the Effective Date:  (i) all assets and liabilities of the Debtors (that are not transferred to the Purchaser on the Closing Date or otherwise required to be transferred to the Purchaser pursuant to the Corpus Christi Asset Purchase Agreement) shall be deemed merged; (ii) all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated, and all guarantees executed by multiple Debtors of the obligations of any other Entity shall be deemed consolidated into a single obligation, so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the Debtors; (iii) each and every Claim filed or to be filed in the Chapter 11 Cases of any Debtor shall be deemed filed against all Debtors and shall be deemed one Claim against and a single obligation of the Debtors; and (iv) Intercompany Claims between Debtors shall be eliminated and extinguished.

7.    The substantive consolidation of the Debtors' Estates approved herein shall not affect:  (i) the legal and corporate structures of the Debtors; (ii) the vesting of their assets (to the extent not transferred to the Purchaser on the Closing Date or otherwise required to be transferred to the Purchaser pursuant to the Corpus Christi Asset Purchase Agreement) in the Litigation Trust; (iii) the right to Distributions from any insurance policies or proceeds of such

policies (other than the Purchaser Assigned Insurance Policies); (iv) any Liens granted or arising

at any time prior to the Effective Date or the priority of those Liens; or (v) the rights of the

Debtors or the Litigation Trustee to contest setoff or recoupment rights alleged by creditors on

the grounds of lack of mutuality under section 553 of the Bankruptcy Code and other applicable

law.

**E.      Approval of Settlements**

8.      Approval of Bancomext Settlement.  To the extent not previously approved

pursuant to the Bancomext Settlement Order, the Bancomext Settlement reflected in

Section IX.G of the Plan is hereby approved in its entirety pursuant to section 1123 of the

Bankruptcy Code and Bankruptcy Rule 9019.  To the extent of any conflict between the terms of

the Bancomext Term Sheet, the Bancomext Stipulation and the Plan, the Plan shall govern.

9.      Approval of Settlement with Certain Holders of Class 4 Claims.  The settlement

of the informal objections raised by certain Class 4 Claims to confirmation of the Plan, as

reflected by and incorporated into the Third Amended Plan, is hereby approved in its entirety

pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

10.     Comprehensive Settlement of Claims and Controversies.  Pursuant to

section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the

Distributions and other benefits provided under the Plan, the provisions of the Plan, including the

releases set forth in Section IX.C, constitute a good-faith compromise and settlement of all

Claims, disputes and controversies relating to the rights that a Holder of a Claim may have

against any Debtor or with respect to any Distribution to be made pursuant to the Plan on

account of any such Claim.

11.     The entry of this Order shall constitute the approval, upon the Effective Date, of

the compromises and settlements of such Claims, disputes or controversies, and the Court's

determination that such compromises and settlements are in the best interests of the Debtors, their Estates, creditors and all other parties in interests. Unless otherwise provided in the Plan or in this Order, if the Effective Date does not occur, the settlements shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

**F.   Recourse Solely to Litigation Trust Assets**

12.     All Claims against the Debtors are deemed satisfied, waived and released as to the Debtors in exchange for the treatment of such Claims under the Plan, and, except as otherwise set forth in the Plan or other Final Orders of the Court, Holders of Allowed Claims against any Debtor will have recourse solely to the assets of the Litigation Trust for the payment of their Allowed Claims in accordance with the terms of the Plan and the Litigation Trust Agreement, provided that no Holder of a Pre-Petition First Lien Claim, Pre-Petition Second Lien Claim, Corpus Christi Mechanics' Lien Claim or Macquarie Claim shall have any recourse to, or interest in, the Litigation Trust Assets on account of such Claim (except as set forth in Section III.B.2 of the Plan with respect to Holders of Corpus Christi Mechanics' Lien Reserve Claims that are not Allowed, in whole or in part, solely on the basis that any lien alleged to secure such Claim is not valid).

13.     All Allowed Corpus Christi Mechanics' Lien Reserve Claims shall be payable solely from the Corpus Christi Mechanics' Lien Reserve. For the avoidance of doubt, in the event that the Corpus Christi Mechanics' Lien Reserve is insufficient to satisfy in full all Allowed Corpus Christi Mechanics' Lien Reserve Claims, Holders of such Allowed Claims shall not have recourse to the Litigation Trust Assets on account of any portion of such Claims. If any Corpus Christi Mechanics' Lien Reserve Claim is not Allowed, in whole or in part, solely on the basis that any lien alleged to secure such Claim is not valid, then, upon approval of the Court, such Claim or portion of such Claim may be reclassified as a General Unsecured Claim. Except

as provided above with respect to any unsatisfied amounts in Allowed Corpus Christi Mechanics' Lien Reserve Claims, nothing in the Plan or this Order shall preclude Holders of Corpus Christi Mechanics' Lien Reserve Claims from also asserting, by the applicable Bar Date, General Unsecured Claims for unsecured liabilities other than those asserted in an Allowed Corpus Christi Mechanics' Lien Reserve Claim, including, without limitation, Claims for damages incurred as a result of the rejection of any Executory Contract or Unexpired Lease. Notwithstanding Section III.H.2 of the Plan, the Litigation Trust may assert any Corpus Christi Causes of Action solely as a defense to any such General Unsecured Claim, other than, to the extent applicable, any objection on the basis of section 502(d) of the Bankruptcy Code on account of claims under section 544, 547 or 548 of the Bankruptcy Code.  For the avoidance of doubt, nothing in the Plan or anything herein shall affect or impair any Holder of a Corpus Christi Mechanics' Lien Reserve Claim from also asserting an Administrative Claim for liabilities other than those asserted in an Allowed Corpus Christi Mechanics' Lien Reserve Claim.

14.    For the avoidance of doubt:  (i) except as expressly provided in Section IX of the Plan, nothing in the Plan or this Order shall prohibit or enjoin any Holder of a Corpus Christi Mechanics' Lien Claim from asserting rights to payment against Entities other than the Debtors, the Litigation Trust or any Released Party (other than the Purchaser solely with respect to any Corpus Christi Mechanics' Lien Assumed Claim), including guarantee rights against nondebtor affiliates of the Debtors; and (ii) nothing herein shall limit or impair the right of (1) the Construction Lienholder Group to assert a Substantial Contribution Claim or (2) the Debtors, the Litigation Trust or any other party in interest to object to any such Substantial Contribution Claim on any and all available grounds.

### G.     Plan Implementation

15.     In accordance with section 1142 of the Bankruptcy Code and section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state, country or subdivision thereof (collectively, the "Liquidation Effectuation Statutes"), without further action by this Court or the stockholders, members, managers, partners or directors of the Debtors, the Debtors, the Creditors' Committee, the Litigation Trustee and/or the Plan Administrator, as applicable, are authorized to:  (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby, including, without limitation, those transactions identified in Section III of the Plan; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, including without limitation, those contracts, instruments, releases, agreements and documents identified in Sections III and IX of the Plan.

16.     To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders, managers, members, partners or directors of any of the Debtors, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Liquidation Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, members, managers, partners or stockholders of the Debtors.

17.     Each federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

**H.    Corporate Existence and Vesting of Assets**

18.    Except as otherwise provided in the Plan, on the Effective Date, the Senior

Debtors will issue the New Equity Interests to the Litigation Trust.  Consistent with Section III.B

of the Plan, each of the Debtors will be subject to one or more Dissolution Transactions on or

after the Effective Date, at the discretion of the Plan Administrator and in accordance with the

Litigation Trust Agreement.  Each Debtor will continue to exist after the transfer of the property

of their Estates to the Litigation Trust until dissolved by the Plan Administrator, pursuant to a

Dissolution Transaction.

**I.    Plan Distributions**

19.    On and after the Effective Date, Distributions on account of Allowed Claims and

the resolution and treatment of Disputed Claims shall be effectuated pursuant to Sections II and

V of the Plan.  Notwithstanding anything to the contrary in the Plan, the Distribution Record

Date shall be 5:00 p.m. (prevailing Eastern Time) on the date of this Order, and after such date

and time, the transfer registers for Claims shall be closed and such registers shall be promptly

furnished to the Litigation Trustee.  Other than as set forth in the Litigation Trust Agreement, the

Disbursing Agent shall have no obligation to recognize the transfer or sale of any Claim that

occurs after such time on the Distribution Record Date and shall be entitled to recognize and

make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. on the

Distribution Record Date.

20.    Except as otherwise provided in an order of the Court, the transferees of Claims

that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing

Eastern Time) on the Distribution Record Date shall be treated as the Holders of such Claims for

all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to

such transfer has not expired by the Distribution Record Date.

**J.    Estimation of Certain Claims for Purposes of Distributions**

21.    The estimation of Claims set forth in Section II.C.4.b of the Plan is hereby approved.  In accordance with Section II.C.4.b of the Plan, the following Claims shall be estimated in the amount of $0.00 for the purposes of making Distributions thereunder:  (i) any Corpus Christi Mechanics' Lien Claim other than a Corpus Christi Mechanics' Lien Reserve Claim and (ii) any Corpus Christi Mechanics' Lien Reserve Claim assigned a Reserve Amount of $0.00 on the Corpus Christi Mechanics' Lien Schedule.

**K.    Approval of Releases and Exculpations of Released Parties**

22.    The definition of "Exculpated Parties" in the Plan shall be revised as follows: "'Exculpated Parties' means 'collectively and individually, (a) the Debtors; (b) the Creditors' Committee; (c) the members of the Creditors' Committee; and (d) all Professionals (solely in their respective capacities as such), including, for the avoidance of doubt and without limitation, the Chief Restructuring Officer.'"  The release and exculpation provisions as set forth in Sections IX.B and IX.C of the Plan are otherwise approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date without further order or action of this Court, any of the parties to such releases or any other party.

**L.    Injunctions**

23.    As set forth in Section IX.D of the Plan and paragraph 14 of this Order, on the Effective Date, all Persons shall be permanently enjoined from commencing or prosecuting, whether directly, derivatively or otherwise, any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, liabilities, rights of contribution or rights of indemnification released pursuant to the Plan, including pursuant to the releases in Section IX of the Plan.

24.    Notwithstanding any provision of the Plan, the Disclosure Statement or this Order to the contrary, including but not limited to the exculpations, releases and injunctions set forth in Section IX of the Plan, neither the Plan, the Disclosure Statement nor the Confirmation Order will (i) release, discharge or exculpate the Released Parties, the Exculpated Parties (other than, in each case, the Debtors), the Representatives of any of the foregoing or any other party with respect to "controlled group liability" owed to the Pension Plans or PBGC under ERISA or the Internal Revenue Code; (ii) release, discharge or exculpate the Released Parties, the Exculpated Parties (other than, in each case, the Debtors), the Representatives of any of the foregoing or any other party for fiduciary breach related to the Pension Plans; or (iii) enjoin or prevent the Pension Plans or PBGC from collecting any such liability from a liable person.

## M.    Release of Liens

25.    As set forth in Section III.J of the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, without further order or action on the part of this Court, the release and discharge of all liens on the property of any Debtors' Estates are approved in all respects, are incorporated herein in their entirety and are so ordered. Consistent with the Corpus Christi Sale Order, any lien against and right, title and interest in any of the Corpus Christi Assets of any Holder of a Corpus Christi Mechanics' Lien Reserve Claim shall attach to, and be enforceable solely against, the Corpus Christi Mechanics' Lien Reserve.

26.    Pre-Petition First Lien Lender and DIP Agent/DIP Lender Claims.[3] For the avoidance of doubt, nothing in the Plan or this Order shall be deemed to amend, modify, impair or limit the rights (including, without limitation, the liens, security interests or superpriority claims) of the Pre-Petition First Lien Lender, the DIP Agent and/or CEC, or in respect of the Pre-

---

[3]    Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them in the CEC Final DIP Order.

Petition First Lien Obligations, the DIP Obligations or the liens, security interests, or superpriority claims of the Pre-Petition First Lien Lender or CEC, pursuant to (i) the Corpus Christi Sale Order, (ii) the DIP Loan Documents, (iii) the Cash Collateral Orders (as defined in the Asset Purchase Agreement by and between Banibu and certain of the Debtors (the "Banibu APA") (Docket No. 1277-13)), including as amended pursuant to Docket No. 1150, (iv) the Polymers DIP Orders (as defined in the Banibu APA) and (v) the Subordination Agreement (the term sheet for which was filed as Docket No. 1277-6 and amended pursuant to Docket No. 2006) unless and until the Closing Date has occurred, at which point upon receipt by CEC of cash in the amount equal to the DIP Payment and receipt by the Pre-Petition First Lien Lender of cash in an amount equal to the First Lien Payment, any such liens, security interests, and superpriority claims of CEC and the Pre-Petition First Lien Lender shall be deemed satisfied in full and/or released.  Moreover, nothing in the Plan or this Order shall be deemed to amend, modify, impair, limit  or expand the approval of Banibu as a Back-Up Bidder or the approval of the Banibu APA as a Backup Bid pursuant to the Corpus Christi Sale Order, in the event the closing of the sale pursuant to the Corpus Christi Asset Purchase Agreement does not occur.

27.    Nothing in the Plan or this Order shall be deemed a determination that Corpus Christi Mechanics' Lien Reserve Claims in Class 4 under the Plan are, or are not, Secured Claims.

**N.    Preservation and Transfer of Causes of Action**

28.    Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee will retain and may enforce any Litigation Trust Causes of Action (including Privilege Rights) that any Estate may hold against any Entity to the extent not released under Section IX.C hereof or otherwise, including the

Avoidance Actions.  The Litigation Trustee may pursue the Litigation Trust Causes of Action, as appropriate, in accordance with the best interests of the Litigation Trust Beneficiaries. A nonexclusive schedule of currently retained actions and claims that constitute Litigation Trust Causes of Action is attached as <u>Exhibit C</u> to the Plan.  In accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Litigation Trust Cause of Action on <u>Exhibit C</u> to the Plan shall not been deemed an admission, denial or waiver of any claims, demands, rights or causes of action that any Debtor or Estate may hold against any Entity.

29.    The Corpus Christi Causes of Action shall be transferred to the Purchaser as of the Closing Date in accordance with the Plan.  If the Purchaser or the Holder of a Corpus Christi Mechanics' Lien Reserve Claim has not commenced litigation or arbitration with respect to any Corpus Christi Cause of Action or otherwise resolved such Corpus Christi Cause of Action in the Purchaser's sole discretion within 270 days after the Closing Date, then (i) any Corpus Christi Mechanics' Lien Reserve Claim that is either (x) the subject of such Corpus Christi Cause of Action or (y) otherwise unresolved by such date shall be deemed Allowed as a Corpus Christi Mechanics' Lien Reserve Claim in the applicable Reserve Amount as of such date with recourse solely to the Corpus Christi Mechanics' Lien Reserve (the "<u>Lienholder Deemed Allowance</u>") and (ii) other than as set forth in Section III.B.2 of the Plan, the Litigation Trust shall not assert any Cause of Action against the Holder of such Allowed Corpus Christi Mechanics' Lien Reserve Claim arising from such Claim, including, without limitation, any Avoidance Actions.  For the avoidance of doubt, the resolution of any Corpus Christi Cause of Action, whether by settlement, litigation or arbitration commenced during the 270 days after the Closing Date, by the Purchaser or the Holder of a Corpus Christi Mechanics' Lien Reserve Claim in accordance with Section III.H.2 of the Plan shall be binding upon the Litigation Trust.

30.     The Purchaser shall (subject to the following sentence and in consultation with the Litigation Trustee) prosecute any Corpus Christi Causes of Action against Sinopec and fund such prosecution; provided, however, that any net recovery (in excess of professional fees incurred in connection with such prosecution) on Corpus Christi Causes of Action against Sinopec in excess of any final, unwaived, Allowed Corpus Christi Mechanics' Lien Claims held by Sinopec shall be allocated 50% to the Litigation Trust and 50% to the Purchaser.  If the Purchaser does not commence litigation with respect to, or otherwise resolve, any Corpus Christi Cause of Action against Sinopec within 270 days of the Closing Date, any Corpus Christi Mechanics' Lien Reserve Claim asserted by Sinopec shall be deemed Allowed as a Corpus Christi Mechanics' Lien Reserve Claim in the Reserve Amount as of such date with recourse solely to the Corpus Christi Mechanics' Lien Reserve.

31.     To the extent the relevant contract(s) with any Holder of a Corpus Christi Mechanics' Lien Claim contemplate, permit or require arbitration, such Holder shall retain the right to demand arbitration, and the Purchaser agrees to be bound by such arbitration clauses and will not oppose or object to arbitration on grounds other than those that could have been asserted by the Debtors.  For example, the Purchaser will not argue that an arbitration panel lacks jurisdiction because the Purchaser was not an original counterparty to the contract between the Holder of such Corpus Christi Mechanics' Lien Claim and the Debtors.  In furtherance of this provision, a Holder of a Corpus Christi Mechanics' Lien Claim may name the Purchaser as a respondent to arbitration in lieu of the Debtors, without need to name any of the Debtors or their non-debtor affiliates as a Respondent.  Any arbitral award that may be issued under this paragraph with respect to a Corpus Christi Mechanics' Lien Reserve Claim shall be payable

solely from the Corpus Christi Mechanics' Lien Reserve.  Nothing in this paragraph shall affect the rights of any Holder of a Corpus Christi Mechanics' Lien Assumed Claim.

32.    Except pursuant to Section III.H.2 of the Plan (and Section VI.C of the Plan with respect to Corpus Christi Mechanics' Lien Reserve Claims assigned Reserve Amounts of $0.00), the identification of any Reserve Amount with respect to any Corpus Christi Mechanics' Lien Reserve Claim on the Corpus Christi Mechanics' Lien Schedule shall not (i) indicate that such Claim is entitled to be Allowed in any amount (or at all) or (ii) cap the amount in which such Claim may be Allowed, provided that such Claims to the extent Allowed shall be satisfied solely from the Corpus Christi Mechanics' Lien Reserve, which the Purchaser shall be required to fund solely in accordance with Section 3.3(j) of the Corpus Christi Asset Purchase Agreement. Notwithstanding the foregoing, the Lienholder Deemed Allowance shall be without prejudice to the right of any Holder of a Corpus Christi Mechanics' Lien Reserve Claim to assert additional liquidated claims against the Corpus Christi Mechanics' Lien Reserve for prepetition interest, attorneys' fees and expenses (collectively, the "Liquidated Prepetition Interest and Fee Amounts"), subject to the right of the Purchaser to object to any such Liquidated Prepetition Interest and Fee Amounts on any and all available grounds, provided that any such Holder must provide the Purchaser with written notice of such Liquidated Prepetition Interest and Fee Amounts by no later than 240 days after the Closing.  Any Holder of a Corpus Christi Mechanics' Lien Reserve Claim that does not provide the Purchaser with written notice of any Liquidated Prepetition Interest and Fee Amounts by such date shall:  (i) be deemed to have consented to the Reserve Amount assigned to such Holder's Corpus Christi Mechanics' Lien Reserve Claim for purposes of the Lienholder Deemed Allowance and (ii) not be entitled to any additional or further recovery beyond such Reserve Amount from the Corpus Christi Mechanics'

Lien Reserve or otherwise on account of the Lienholder Deemed Allowance. The foregoing shall be without prejudice to any right of Holders of Corpus Christi Mechanics' Lien Reserve Claims to postpetition interest, attorneys' fees and expenses that may be established pursuant to the Corpus Christi Mechanics' Lien Reserve Procedures.

33.    For the avoidance of doubt (and notwithstanding (i) the Claims Objection Bar Date, or (ii) the authority granted to the Litigation Trust or Litigation Trustee under the Plan, in this Order, or in the Litigation Trust Agreement), with respect to Corpus Christi Mechanics' Lien Claims, from and after the Closing Date through the date that is 270 days after the Closing Date (or with respect to Corpus Christi Claims other than Corpus Christi Mechanics' Lien Claims, from and after the Effective Date through the date that is 180 days after the Effective Date), the Purchaser shall have the sole authority (i) to File, withdraw or litigate objections to such Corpus Christi Mechanics' Lien Claims or other Corpus Christi Claims; (ii) to settle or compromise any Corpus Christi Mechanics' Lien Claims or other Corpus Christi Claims without any further notice to or action, order or approval by the Court (provided that the Purchaser shall provide the Litigation Trust with notice of any settled or compromised Corpus Christi Mechanics' Lien Claim or other Corpus Christi Claim and shall consult with the Litigation Trust with respect to the prosecution of any Corpus Christi Causes of Action against Sinopec in accordance with the Bid Support Term Sheet and Section III.H.2 of the Plan); and (iii) to the extent necessary, direct the Claims and Noticing Agent to adjust the claims register to reflect any such resolutions without any further notice to or action, order or approval by the Bankruptcy Court. Furthermore, notwithstanding the allowance of Claims pursuant to the Plan's definition of "Allowed" to the extent that no objection to the allowance thereof has been interposed by the Claims Objection Bar Date, no Corpus Christi Mechanics' Lien Claims shall be deemed Allowed prior to the date

that is 270 days after the Closing Date other than (i) pursuant to the procedures set forth in

Section III.H.2. to the Plan or (ii) to the extent Allowed by a Final Order of the Bankruptcy

Court (whether pursuant to a settlement stipulation or otherwise) or otherwise settled or agreed to

as Allowed by Purchaser.

       34.     Until further order of the Court, the Purchaser shall not remove any money from

the Corpus Christi Mechanics' Lien Reserve other than to pay any Corpus Christi Mechanics'

Lien Reserve Claims to the extent settled, resolved and/or otherwise Allowed at an amount

(inclusive of all interest, fees and expenses) less than or equal to the Reserve Amount of such

Corpus Christi Mechanics' Lien Reserve Claim as set forth on Exhibit E to the Plan; provided

further that, to the extent a particular settlement agreement or Court order allowing any Corpus

Christi Mechanics' Lien Reserve Claims settles or resolves more than one Corpus Christi

Mechanics' Lien Reserve Claims and/or the Corpus Christi Mechanics' Lien Reserve Claims of

Holders of lower level Claims, the Reserve Amounts of all such Corpus Christi Mechanics' Lien

Reserve Claims being settled shall be aggregated and, to the extent that the total settlement is at

an amount (inclusive of all interest, fees and expenses) less than or equal to the aggregate

Reserve Amounts for such Corpus Christi Mechanics' Lien Reserve Claims then being resolved

or settled, such aggregate amounts shall be paid in full from the Corpus Christi Mechanics' Lien

Reserve to the applicable Holder of such Corpus Christi Mechanics' Lien Reserve Claim or

Claims.

**O.      Cancellation and Surrender of Instruments, Securities and Other Documentation**

       35.     Except as provided in (i) any contract, instrument or other agreement or document

entered into or delivered in connection with the Plan, including the Litigation Trust Agreement,

(ii) any of the asset sales effectuated during the pendency of the Chapter 11 Cases or

(iii) Section II.C.11 of the Plan with respect to the reinstatement of the Interests in the Subsidiary

Debtors, on the Effective Date and concurrently with the Distributions made pursuant to Section II of the Plan, all notes, instruments, certificates and other documents evidencing Claims or Interests shall be deemed cancelled and surrendered and of no further force and effect against the Debtors or the Litigation Trust, without any further action on the part of any Debtor or the Litigation Trust.

## P.    Approval of Litigation Trust and Appointment of Litigation Trustee and Litigation Oversight Committee

36.    The formation of the Litigation Trust pursuant to Section III.C of the Plan and the Litigation Trust Agreement and its provisions are approved without further order of the Court. On the Effective Date, the Litigation Trustee and the Litigation Trust Oversight Committee shall be appointed in accordance with the Plan and the Litigation Trust Agreement without further order of the Court.

37.    On or prior to the Effective Date, the Litigation Trust shall be established in accordance with the Litigation Trust Agreement for the purpose of liquidating the Litigation Trust Assets, resolving all Disputed Claims, making all distributions to Holders of Allowed Claims entitled to receive a Distribution of Litigation Trust Assets in accordance with the terms of the Plan and the Litigation Trust Agreement.  Subject to and to the extent set forth in the Plan, this Order, the Litigation Trust Agreement or any other order of the Court in connection herewith, the Litigation Trust shall be empowered to:  (i) perform all actions and execute all agreements, instruments and other documents necessary to implement the Plan; (ii) establish, maintain and administer the Trust Accounts, which shall be segregated to the extent appropriate in accordance with this Plan; (iii) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle and protect, as applicable, the Litigation Trust Assets (directly or through its professionals or a Third Party Disbursing Agent), in accordance

with this Plan; (iv) review, reconcile, settle or object to all Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in this Plan; (v) calculate and make Distributions of the proceeds of the Litigation Trust Assets to the Holders of Allowed Claims; (vi) pursue the Litigation Trust Causes of Action transferred to the Litigation Trust; (vii) retain, compensate and employ professionals to represent the Litigation Trust; (viii) file appropriate Tax returns and other reports on behalf of the Litigation Trust and pay Taxes or other obligations owed by the Litigation Trust; (ix) file, to the extent reasonably feasible and subject to the Litigation Trust Agreement, appropriate Tax returns on behalf of each Debtor and pay Taxes or other obligations arising in connection therewith; (x) exercise such other powers as may be vested in the Litigation Trust under the Litigation Trust Agreement and this Plan, or as are deemed by the Litigation Trustee to be necessary and proper to implement the provisions of this Plan and the Litigation Trust Agreement; (xi) take such actions as are necessary or appropriate to close or dismiss all of the Chapter 11 Cases; and (xii) dissolve the Litigation Trust in accordance with the terms of the Litigation Trust Agreement.

38.       The obligations of the Luxembourg Debtors (as defined in the Dismissal Order) to cooperate with the Litigation Trust pursuant to paragraph 16 of the Dismissal Stipulation and the Dismissal Order are hereby reaffirmed.

39.       Neither the Litigation Trust nor the Litigation Trustee shall have any obligation whatsoever to take any action, or perform any filing, with respect to any of the Debtors' retirement or benefits plans except that the Litigation Trustee shall, to the extent reasonably feasible, cause M&G Polymers to take such actions as are necessary or appropriate to terminate the M&G Polymers USA, LLC Retiree Health Plan (the "Medical Plan"). For the avoidance of doubt, sections 3.09 to 3.12 of the Litigation Trust Agreement, shall apply to the Litigation

Trustee's actions with respect to the termination of the Medical Plan. The Debtors' qualified defined contribution retirement plans, including the M&G Resins USA, LLC 401(k) Plan, the M&G Polymers USA, LLC Savings Plan for Bargaining Unit Employees and the M&G Polymers USA, LLC Savings Plan for the M&G Polymers USA, LLC Savings Plan for Salaried Employees(collectively, the "401(k) Plans") shall not be assumed  by the Litigation Trust. Accordingly, as of the Effective Date, the nondebtor directed trustee under the trust agreement with respect to each of such 401(k) Plans (the "401(k) Trustee") shall be authorized to make a finding of abandonment with respect to the plan under 29 CFR § 2578.1 and terminate the plan in accordance with applicable law.  In support of such a finding by the 401(k) Trustee, it is hereby determined that the plan sponsor with respect to each 401(k) plan:  (i) is liquidating under title 11 of the United States Code, (ii) is unable to maintain the plan, (iii) does not object to any finding by the 401(k) Trustee that the plan has been abandoned within the meaning of 29 CFR § 2578.1, and (iv) does not object to the termination of the plan by the 401(k) Trustee.

**Q.    Exemption From Taxation**

40.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any debt, security or other interest contemplated by the Plan, or the making or delivery of any instrument or transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

**R.    Executory Contracts and Unexpired Leases**

41.    The provisions in Section IV of the Plan governing the assumption and rejection of Executory Contract and Unexpired Lease are approved in all respects, are incorporated herein in their entirety and are so ordered.  Pursuant to Section IV of the Plan, on the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of this Court shall be deemed

rejected as of the Effective Date in accordance with the provisions and requirements of
sections 365 and 1123 of the Bankruptcy Code, except for any Executory Contract or Unexpired
Lease (i) identified on <u>Exhibit D</u> to the Plan as an Executory Contract or Unexpired Lease
designated for assumption and assignment to the Litigation Trust, (ii) that is the subject of a
separate motion or notice to assume or reject Filed by a Debtor and pending as of the
Confirmation Hearing or (iii) that previously expired or terminated pursuant to its own terms.
Unless otherwise assumed by the Debtors and assigned to the Litigation Trust, any Executory
Contract or Unexpired Lease that remains, as of the Effective Date, the subject of a pending
notice of proposed or potential assumption and assignment issued in connection with any Sale
shall be deemed rejected as of such date to the extent not assumed and assigned to the applicable
purchaser in connection with such Sale.

     42.     For the avoidance of doubt, and notwithstanding anything to the contrary in the
Plan or this Order, all Purchased Contracts (as defined in the Corpus Christi Asset Purchase
Agreement) set forth on Schedule 2.1(b)(vii) (as such schedule may be modified by Purchaser
pursuant to the terms of the Corpus Christi Asset Purchase Agreement) to the Corpus Christi
Asset Purchase Agreement shall be assumed and assigned to the Purchaser as of the Closing (as
defined in the Corpus Christi Asset Purchase Agreement) pursuant to the Corpus Christi Sale
Order.  For the further avoidance of doubt, to the extent any Executory Contract or Unexpired
Lease remains, as of the Effective Date, the subject of a disputed Cure Claim and such Executory
Contract or Unexpired Lease with a disputed Cure Claim is listed as a Purchased Contract (as
defined in the Corpus Christi Asset Purchase Agreement) as set forth on Schedule 2.1(b)(vii) to
the Corpus Christi Asset Purchase Agreement (as such schedule may be modified by Purchaser
pursuant to the terms of the Corpus Christi Asset Purchase Agreement), such Executory Contract or

Unexpired Lease will not be deemed assumed or rejected unless and until the disputed Cure

Claim is resolved or determined by Final Order, at which point Purchaser shall have the right to

either (i) pay the Cure Claim (or, to the extent such holder of the Cure Claim is also the holder of

a Corpus Christi Mechanics' Lien Reserve Claim, have such Cure Claim paid from the Corpus

Christi Mechanics' Lien Reserve in accordance with the Corpus Christi Mechanics' Lien Reserve

Procedures) and have the contract thereby deemed assumed and assigned to the Purchaser, or

(ii) delete such Executory Contract or Unexpired Lease from the list of Purchased Contracts set

forth on Schedule 2.1(b)(vii) to the Corpus Christi Asset Purchase Agreement pursuant to the

terms of the Corpus Christi Asset Purchase Agreement and have such contract thereby deemed

an Excluded Asset (as defined in the Corpus Christi Asset Purchase Agreement) and deemed

rejected.

      43.    Except as otherwise previously approved by an order of this Court, entry of this

Order shall constitute an order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code,

approving the assumptions and assignments and the rejections of such Executory Contracts and

Unexpired Leases as set forth in the preceding paragraphs 38 and 39.  Unless otherwise indicated

herein, in the Corpus Christi Asset Purchase Agreement, Corpus Christi Sale Order, or in the

Plan, assumptions and assignments and rejections of Executory Contracts and Unexpired Leases

pursuant to the Plan shall be effective as the Effective Date.  Each Executory Contract or

Unexpired Lease assumed pursuant to the Plan or by order of this Court (including the Corpus

Christi Sale Order) and not assigned to a third party on or before the Effective Date (or in the

case of the Purchaser, not assigned to the Purchaser (whether prior to or following the Effective

Date) in accordance with the terms of the Corpus Christi Asset Purchase Agreement or Corpus

Christi Sale Order) shall vest in and be fully enforceable by the Litigation Trust in accordance

with its terms, except as such terms may have been modified by the provisions of the Plan or any

order of this Court authorizing its assumption pursuant to section 365 of the Bankruptcy Code;

provided that if an assignment is pending as of the Effective Date, the Litigation Trustee (or in

the case of Purchased Contracts (as defined in the Corpus Christi Asset Purchase Agreement),

the Purchaser) shall be authorized to take any and all actions necessary to implement such

assignment.

44.     To the maximum extent permitted by law, to the extent any provision (including,

without limitation, any "change of control" provision) in any Executory Contract or Unexpired

Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is

breached or deemed breached by, the assumption of such Executory Contract or Unexpired

Lease, then such provision shall be deemed modified such that the assumption and assignment

contemplated by the Plan shall not entitle the counterparty thereto to terminate such Executory

Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto,

except for asserting and pursuing a Cure Claim.  Notwithstanding anything to the contrary in the

Plan, the Debtors reserve the right, with the consent of the Creditors' Committee, to alter, amend,

modify or supplement Exhibit D to the Plan in their discretion prior to the Effective Date on no

less than three days' notice to any counterparty to an Executory Contract or Unexpired Lease

affected thereby.

45.     Cure of Defaults for Executory Contracts and Unexpired Leases Assumed by the

Litigation Trust.  With respect to any Executory Contract or Unexpired Lease assumed by the

Litigation Trust, any Cure Claim shall be satisfied, pursuant to section 365(b)(1) of the

Bankruptcy Code, by payment of the Allowed amount of such Cure Claim in Cash on the

Effective Date from the Litigation Trust Assets, subject to the limitations described below and in

the Plan, or on such other terms as the parties to any particular Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the Allowed amount of any Cure Claim, (ii) the ability of the Litigation Trust or another assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, no payment on account of the Cure Claim shall be made until such dispute is resolved by a Final Order of this Court. Any counterparty to an Executory Contract or Unexpired Lease that failed to object timely to the proposed assumption and assignment or Cure Claim in respect of its Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and assignment and/or Cure Claim.

46.    Payment of the Allowed Cure Claim upon the assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under such Executory Contract or Unexpired Lease occurring at any time prior to the effective date of the assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned and with respect to which the Allowed Cure Claim has been paid shall be deemed disallowed and expunged without further notice, action, order or approval of the Court.

47.    Bar Date for Rejection Claims. Unless otherwise provided by order of this Court, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be Filed with the Claims and Noticing Agent within 30 days of the entry of an order of this Court (including this Order, as

applicable) approving such rejection.  **Unless otherwise expressly allowed by order of this Court, any Proofs of Claim arising from the rejection of any of the Debtors' Executory Contracts and Unexpired Leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, the Litigation Trust or the property of any of the foregoing, without the need for any objection by the Debtors or the Litigation Trust or further notice to or action, order, or approval of this Court**.  All Allowed Claims arising from the rejection of any of the Debtors' Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Section II of the Plan (provided that, for the avoidance of doubt and in accordance with Section III.B.2 of the Plan and paragraph 13 of this Order, any such General Unsecured Claim may only assert liabilities other than those asserted in an Allowed Corpus Christi Mechanics' Lien Reserve Claim).  The Litigation Trust's right to object to, settle, compromise or otherwise resolve any Claim Filed on account of a rejected Executory Contract or Unexpired Lease are hereby preserved.

48.    <u>Contracts and Leases Entered Into After the Petition Date</u>.  Contracts and leases entered into or assumed by a Debtor after the Petition Date that are not assigned to a third party in connection with any Sale or to the Litigation Trust shall be considered repudiated by the applicable Debtor.  Any counterparties to such contracts, if they believe that such repudiation constitutes a breach of such contract or lease, must file a Claim within 30 days of the Effective Date in accordance with the Plan or have their rights forever waived and released.

**S.    Insurance Policies**

49.    Pursuant to Section IV.E of the Plan, all rights of the Debtors under any insurance policies (other than Purchaser Assigned Insurance Policies) under which they are the insured parties and all related insurance agreements (other than Purchaser Assigned Insurance Policies)

shall automatically become vested in the Litigation Trust as of the Effective Date without

necessity for further approvals or orders of the Court.  To the extent that any such insurance

policies or related insurance agreements are deemed executory contracts, then, unless such

policies have been rejected pursuant to an order of the Court (including this Order) or such

policies (or related agreements) are Purchaser Assigned Insurance Policies, notwithstanding

anything to the contrary in the Plan (including Exhibit D thereto), the Plan constitutes a motion

to assume and assign to the Litigation Trust, permit to "ride through" or ratify such insurance

policies or insurance agreements (other than Purchaser Assigned Insurance Policies, which, for

the avoidance of doubt, shall be assumed and assigned to the Purchaser as of the Closing (as

defined in the Corpus Christi Asset Purchase Agreement)).

     50.     Subject to the occurrence of the Effective Date, the entry of this Order constitutes

both approval of such assumption and assignment pursuant to section 365 of the Bankruptcy

Code and a finding by this Court that such assumption and assignment is in the best interests of

the Estates.  Unless otherwise determined by this Court pursuant to a Final Order or agreed upon

by the parties prior to the Effective Date, no payments shall be required to cure any defaults

existing as of the date of this Order with respect to any insurance policy or insurance agreement

assumed and assigned to the Litigation Trust or the Purchaser (with respect to Purchaser

Assigned Insurance Policies) pursuant to Section IV.E of the Plan.  Each applicable insurance

company is prohibited and enjoined from denying, refusing, altering or delaying coverage on any

basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan,

including the treatment or means of liquidation set out within the Plan for any insured Claims or

Causes of Action.  Nothing in the Plan or this Order shall impair the rights of the Litigation Trust

or the Purchaser (with respect to Purchaser Assigned Insurance Policies) with respect to (or

affect the coverage under) any insurance policy that provides liability coverage for officers, directors, and other fiduciaries of the Debtors and their affiliates.

**T.    Claims Bar Dates**

51.    <u>Administrative Claims Final Bar Date.</u>  Unless previously Filed or as otherwise governed by any Bar Date Order or another order of the Court, requests for payment of Administrative Claims (other than Fee Claims) arising after May 1, 2018 must be Filed and served on the Notice Parties, pursuant to the procedures specified herein no later than 30 days after the Effective Date (the "<u>Administrative Claims Final Bar Date</u>").  Holders of Administrative Claims entitled to priority under section 503(b)(9) of the Bankruptcy Code that have asserted such Claims as part of a Proof of Claim Filed in accordance with the General Bar Date Order and/or the Administrative Claims Interim Bar Date Order shall not be required to file additional requests for payment of Administrative Claims with the Court to maintain their assertion of such Administrative Claims, and the General Bar Date shall continue to apply to such Claims.  **<u>Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Litigation Trust or their respective property, and such Administrative Claims shall be discharged as of the Effective Date</u>**.  Objections to requests for payment of postpetition Administrative Claims (other than Fee Claims) must be filed and served on the Notice Parties and the requesting party no later than the date that is 60 days after the Administrative Claims Final Bar Date.  Nothing in this Order or Section II.A.1.e of the Plan shall waive, extend or lengthen any applicable Bar Date for the Holder of any such Claim, even if such Claim is an Administrative Claim.

52.    <u>Professional Compensation.</u>  Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must file and serve on the Notice Parties, the Litigation Trustee and such other Entities as are designated by the Bankruptcy Rules, the Fee Order, this Order or any other order of this Court, an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; <u>provided</u>, <u>however</u>, that any Professional whose compensation or reimbursement of expenses is authorized pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Court review or approval.

53.    Objections to any Fee Claim must be filed and served on the Notice Parties, the Litigation Trustee and the requesting party no later than 90 days after the Effective Date or such other period of limitation as may be specifically fixed by a Final Order for objecting to such Fee Claim.  Allowed Fee Claims shall be satisfied from the Professional Fee Reserve or the Completion Fee Reserve, to the extent applicable.  For the avoidance of doubt, and regardless of the amounts remaining in the Professional Fee Reserve, Allowed Fee Claims of any of the Debtor Professionals or Creditors' Committee Professionals shall be entitled to be satisfied from the Professional Fee Reserve only in accordance with and to the extent of the amounts budgeted for such respective Debtor Professionals or Creditors' Committee Professionals pursuant to the CCP Budget plus applicable carryforward and carryback amounts, as set forth in the Bid Support Term Sheet and Corpus Christi Asset Purchase Agreement, <u>provided</u>, <u>however</u>, that Allowed Fee Claims in excess of any applicable reserves, solely with respect to Creditors' Committee Professionals, shall be satisfied from the Litigation Trust.

U.    **Statutory Fees Payable Pursuant to 28 U.S.C. § 1930**

54.    On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the applicable Debtors in Cash equal to the amount of such Administrative Claims.  Fees payable pursuant to 28 U.S.C. § 1930 for each Estate after the Effective Date will be paid from the Litigation Trust by the Litigation Trustee until the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

V.    **Governing Law**

55.    Except to the extent that (i) the Bankruptcy Code or other federal law is applicable or (ii) an exhibit or schedule to the Plan or Disclosure Statement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit, schedule or agreement), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

W.    **Miscellaneous Provisions**

56.    <u>Plan Modifications</u>.  Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors are authorized, with the consent of the Creditors' Committee, to alter, amend or modify the Plan before the Effective Date, provided that no such alteration, amendment or modification shall be materially adverse to the Pre-Petition First Lien Lender, CEC, the Purchaser, the Bidders, Macquarie, Comerica or Holders of Corpus Christi Mechanics' Lien Claims without such party's consent.  Prior to the Effective Date, the Debtors, with the consent of the Creditors' Committee, are authorized to make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.  Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan,

as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of such Claim; provided, however, that any Holders of Claims who were deemed to accept the Plan because such Claims were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment, modification or supplement, such Claims continue to be Unimpaired and such amendment, modification or supplement does not materially and adversely change the treatment of such Claims.

57.    Dissolution of Creditors' Committee.  Except as otherwise provided in the Plan or this Order (including, without limitation, paragraph 3 hereof), on the Effective Date:  (i) the Creditors' Committee shall be dissolved; (ii) the current and former members of the Creditors' Committee and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with these Chapter 11 Cases; and (iii) the Professionals retained by the Creditors' Committee will not be entitled to assert any Fee Claims for any services rendered or expenses incurred after the Effective Date in their capacity as Professionals for the Creditors' Committee, except to the extent necessary to: (a) prepare, file and, if necessary, litigate final applications for compensation; (b) object to final fee applications filed by other Professionals.

58.    Discharge of Debtor Professionals.  Effective as of the Effective Date, the Debtor Professionals, with the exception of Prime Clerk LLC, shall be discharged from all duties, responsibilities and obligations in their respective capacities as Professionals of the Debtors' Estates.

59.   <u>References to Plan Provisions</u>.  The failure to specifically include or reference

particular sections or provisions of the Plan or any related agreement in this Order shall not

diminish or impair the effectiveness of such sections or provisions, it being the intent of this

Court that the Plan be confirmed and such related agreements be approved in their entirety.

60.   <u>Plan-Related Documents</u>.  Any document related to the Plan that refers to a plan

of liquidation of the Debtors other than the Plan confirmed by this Order shall be, and hereby is,

deemed to be modified such that the reference to a plan of liquidation of the Debtors in such

document shall mean the Plan confirmed by this Order, as appropriate.

61.   <u>Inconsistencies Among Plan Documents</u>.  Without intending to modify any prior

order of this Court (or any agreement, instrument or document addressed by any prior order), in

the event of any inconsistency among the Plan, the Disclosure Statement or any exhibit or

schedule to the Disclosure Statement, the provisions of the Plan shall govern.  In the event of any

inconsistency among the Plan and any document or agreement filed in the Plan Supplement, such

document or agreement shall control; <u>provided</u>, <u>however</u>, that in the event of an inconsistency

between the Plan and Litigation Trust Agreement, the Plan shall control.  In the event of any

inconsistency among the Plan or any document or agreement filed in the Plan Supplement and

this Order, this Order shall control.

62.   <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Entity named

or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor,

administrator, successor or assign of such Entity.

63.   <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Order and the

occurrence of the Effective Date, this Court shall retain such jurisdiction over the Chapter 11

Cases after the Effective Date to the fullest legally permissible extent, including jurisdiction over

those matters and issues described in Section X of the Plan.  In the event that the Court abstains

from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any

matter, including matters set forth in Section X of the Plan, the provisions of Section X shall

have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any

other court having jurisdiction with respect to such matter.

## X.    Objections

64.    Resolution of Informal Objection of UniCredit Factoring SpA.  UniCredit

Factoring SpA ("UniCredit Factoring") has filed proof of claim number 747 against

M&G Chemicals S.A. and proof of claim 748 against M&G Resins (together, the "UniCredit

POCs") based on a June 25, 2016 Factoring Agreement and related Guaranty, identified in the

UniCredit POCs.  Under the Factoring Agreement, UniCredit Factoring acquired certain invoices

reflecting amounts certain third parties owe to M&G Resins, which amounts third parties have

refused to pay due to the pendency of these Chapter 11 Cases.  Notwithstanding anything to the

contrary in the Plan or this Order, no provision of the Plan or this Order shall affect any right,

title or ownership UniCredit Factoring may have in the invoices identified in the UniCredit POCs

or otherwise acquired from any of the Debtors.  Moreover, no provision of the Bankruptcy Code

or Plan, including, but not limited to (i) 11 U.S.C. § 362 and (ii) any provision of Section IX of

the Plan shall prohibit UniCredit Factoring from seeking to collect payment of any amounts due

on account of such invoices from any party other than a Released Party.  To the extent any

provision of section 362 of the Bankruptcy Code or any injunction or release in the Plan were to

be construed to restrict Unicredit's pursuit of payment of amounts due on account of such

invoices from any Entity other than a Released Party, which UniCredit Factoring would dispute,

those provisions are hereby modified or lifted to permit UniCredit Factoring to pursue such

payment.

**Y.    Substantial Consummation**

65.    On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127 of the Bankruptcy Code.

**Z.    Waiver of Stay**

66.    Notwithstanding Bankruptcy Rules 3020(e) and 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) shall be waived and this Order shall be effective immediately and enforceable upon entry.  The Debtors are authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Order and upon, or concurrently with, the satisfaction or waiver of the conditions to the Effective Date set forth in the Plan.

**AA.    Final Order**

67.    This Order is a Final Order.  It shall take effect immediately upon entry, its provisions shall be self-executing and the period in which an appeal must be Filed shall commence immediately upon the entry hereof.

**BB.    Reversal**

68.    If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order, the Plan and all related documents or any amendments or modifications thereto.

**CC.    Notice of Confirmation of the Plan**

69.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or the

Litigation Trustee are directed to serve a notice of the entry of this Order and the establishment

of bar dates for certain Claims hereunder, substantially in the form of Exhibit C attached hereto

and incorporated herein by reference (the "Confirmation Notice"), on all parties that received the

Confirmation Hearing Notice, no later than 20 Business Days after entry of this Order; provided,

however, that the Debtors or the Litigation Trustee shall not be required to serve the

Confirmation Notice on any person or entity where (i) a notice of the commencement of these

Chapter 11 Cases, (ii) the meeting of creditors pursuant to section 341 of the Bankruptcy Code,

(iii) the notice of bar dates for filing proofs of claim established in these Chapter 11 Cases or

(iv) the Solicitation Packages was returned to the Debtors as undeliverable and no forwarding

address was provided, unless the Debtors have been informed in writing by such person or entity

of that person's or entity's new address.  In the event that the Effective Date is more than

20 business days following entry of this Order, the Debtors are authorized to file and serve a

separate notice of the Effective Date in accordance with the provisions of this paragraph no later

than 20 business days after the Effective Date containing provisions substantially similar as those

reflected in the Confirmation Notice, as applicable.  As soon as practicable after the entry of this

Order, the Debtors shall make copies of this Order and the Confirmation Notice (and if

necessary, a notice of the Effective Date) available on Prime Clerk's website at

https://cases.primeclerk.com/mgusa.  Service of the Confirmation Notice described in the

preceding paragraph in the time and manner set forth therein shall constitute due, adequate and

sufficient notice and no other or further notice shall be necessary.

Dated: Wilmington, Delaware

 12 / 1 7 , 2018

HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE