# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**M & G USA CORPORATION**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered)<br><br>Objection Deadline: January 7, 2019 at 4:00 p.m. (ET)<br>Hearing Date: January 16, 2019 at 10:00 a.m. (ET) |

## SUMMARY OF FOURTH INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM AUGUST 1, 2018 THROUGH OCTOBER 31, 2018

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | The above-captioned Debtors |
| Period for which compensation and reimbursement are sought: | August 1, 2018 through October 31, 2018 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $1,960,200.00 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $25,369.40[2] |
| Petition Date: | October 30, 2017[3] |
| Date of Order Approving Retention: | November 30, 2017, *nunc pro tunc* to October 31, 2017 |

---

[1] The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

[2] At the request of the U.S. Trustee, Jones Day has agreed to write off an additional $179.60 in expenses from the amount requested in the Eleventh Monthly Fee Application.

[3] On October 24, 2017, Debtor M & G Polymers USA, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. All other Debtors commenced their chapter 11 cases on October 30, 2017.

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $14,499,103.75 |
| Total Expenses Approved by Interim Order to Date: | $219,242.74 |
| Total Allowed Compensation Paid to Date: | $14,499,103.75 |
| Total Allowed Expenses Paid to Date: | $219,242.74 |
| Blended Hourly Rate in this Application for All Attorneys: | $720.59 |
| Blended Hourly Rate in this Application for All Timekeepers: | $717.26 |
| Compensation Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $1,578,452.00 |
| Expenses Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $25,369.40 |
| Number of Professionals Included in this Application: | 35 |
| Number of Professionals Billing Fewer Than 15 Hours: | 11 |

This is a(n): ___ monthly    _X_ interim  ___ final application

The total time expended for fee application preparation is approximately 110.90 hours and the corresponding compensation requested is approximately $70,640.00.

Prior Applications Filed:

| Date / Docket | Month Covered | Fees | Expenses |
|---|---|---|---|
| December 5, 2017 (Docket No. 362) "First Monthly Fee Application" | October 31, 2017 – November 30, 2017 | $1,575,370.00[1] | $10,310.08[2] |
| January 10, 2018 (Docket No. 647) "Second Monthly Fee Application" | December 1, 2017 – December 31, 2017 | $1,692,827.00 | $25,239.68 |
| February 13, 2018 (Docket No. 957) "Third Monthly Fee Application" | January 1, 2018 – January 31, 2018 | $1,798,473.00 | $22,655.74 |
| March 8, 2018 (Docket No. 1109) "Fourth Monthly Fee Application" | February 1, 2018 – February 28, 2018 | $1,534,792.00 | $25,750.04 |
| March 15, 2018 [Docket No. 1170] "First Interim Fee Application" | October 31, 2017 – January 31, 2018 | $6,279,660.00 | $56,952.50 |
| April 12, 2018 [Docket No. 1367] "Fifth Monthly Fee Application" | March 1, 2018 – March 31, 2018 | $2,082,525.00 | $40,531.41 |
| May 11, 2018 [Docket No. 1455] "Sixth Monthly Fee Application" | April 1, 2018 – April 30, 2018 | $737,972.00 | $43,552.14 |
| June 12, 2018 [Docket No. 1558] "Seventh Monthly Fee Application" | May 1, 2018 – May 31, 2018 | $825,024.00 | $29,439.15 |
| June 14, 2018 [Docket No. 1571] "Second Interim Fee Application" | February 1, 2017 – April 30, 2018 | $5,433,358.75 | $109,833.59 |
| July 13, 2018 [Docket No. 1684] "Eighth Monthly Fee Application" | June 1, 2018 – June 30, 2018 | $742,780.00 | $7,162.36 |
| August 14, 2018 [Docket No. 1761] "Ninth Monthly Fee Application" | July 1, 2018 – July 31, 2018 | $674,430.00 | $15,855.14 |
| September 14, 2018 [Docket No. 1867] Tenth Monthly Fee Application | August 1, 2018 – August 31, 2018 | $566,998.00 | $6,699.49 |
| September 14, 2018 [Docket No. 1870] Third Interim Fee Application | May 1, 2018 – July 31, 2018 | $2,786,085.00 | $52,456.85 |

---

[1]      Subsequent to filing the First Monthly Fee Application, at the request of the Office of the United States Trustee (the "U.S. Trustee"), Jones Day agreed to a voluntary reduction of $8,715.00 in connection with the fees sought therein.

[2]      Subsequent to filing the First Monthly Fee Application, at the request of the U.S. Trustee, Jones Day agreed to the voluntary reduction of $1,253.00 in expenses for reimbursement sought therein.

| Date / Docket | Month Covered | Fees | Expenses |
|---|---|---|---|
| October 11, 2018 [Docket No. 1979] Eleventh Monthly Fee Application | September 1, 2018 – September 30, 2018 | $519,322.00 | $15,835.90[3] |
| November 12, 2018 [Docket No. 2062] Twelfth Monthly Fee Application | October 1, 2018 – October 31, 2018 | $502,132.00 | $3,011.61 |
| December 5, 2018 [Docket No. 2098] Thirteenth Monthly Fee Application | November 1, 2018 – November 30, 2018 | $306,902.00 | $5,814.82 |

---

[3]    Subsequent to filing the Eleventh Monthly Fee Application, at the request of the U.S. Trustee, Jones Day agreed to the voluntary reduction of $179.60 in expenses for reimbursement sought therein.

| Name | Title/Group/Bar Year | Billing Rate 2018 | Hours Billed Fourth Interim | Total Fees Fourth Interim |
|---|---|---|---|---|
| **PARTNER** | | | | |
| C E Black | Partner/Business Restructuring & Reorganization/1998 | $1,000.00 | 300.70 | $300,700.00 |
| V S Chang | Partner/Employee Benefits & Executive Compensation/2003 | $925.00 | 13.20 | $12,210.00 |
| M J Cohen | Partner/Business Restructuring & Reorganization/2002 | $1,025.00 | 17.00 | $17,425.00 |
| G S Irwin** | Partner/Business & Tort Litigation/1996 | $975.00 | 2.60 | $2,535.00 |
| C E Laduzinski | Partner/Tax/2001 | $1,050.00 | 10.50 | $11,025.00 |
| P D Laun** | Partner/Insurance Recovery/1992 | $900.00 | 3.80 | $3,420.00 |
| H A Liou | Partner/Intellectual Property/2008 | $800.00 | 25.90 | $20,720.00 |
| D J Merrett | Partner/Business Restructuring & Reorganziation/2007 | $750.00 | 646.70 | $485,025.00 |
| C A Ridgway | Partner/Tax/1988 | $1,050.00 | 5.50 | $5,775.00 |
| T K Stratford | Partner/Business & Tort Litigation/1998 | $850.00 | 6.70 | $5,695.00 |
| R C Thomas | Partner/Antitrust & Competition Law/2000 | $975.00 | 113.40 | $110,565.00 |
| | **Total Partner** | | **1,146.00** | **$975,095.00** |
| **OF COUNSEL** | | | | |
| L M Cirando | Of Counsel/Insurance Recovery/1997 | $925.00 | 34.60 | $32,005.00 |
| R W Hamilton | Of Counsel/Business Restructuring and Reorganization/1984 | $900.00 | 17.00 | $15,300.00 |
| | **Total Of Counsel** | | **51.60** | **$47,305.00** |

| Name | Title/Group/Bar Year | Billing Rate | Hours Billed | Total Fees |
|---|---|---|---|---|
| **ASSOCIATE** | | | | |
| A M Bomberger | Associate/Mergers & Acquisitions/2009 | $800.00 | 15.20 | $12,160.00 |
| K M Brockmeyer | Associate/Antitrust & Competition Law/2011 | $725.00 | 98.50 | $71,412.50 |
| S L Corr-Irvine | Associate/Business Restructuring & Reorganization/2009 | $850.00 | 264.80 | $225,080.00 |
| K Donaldson | Associate/Banking, Finance & Securities/2007 | $900.00 | 49.80 | $44,820.00 |
| J V Feldman | Associate/Mergers & Aquisitions/2016 | $525.00 | 18.90 | $9,922.50 |
| A M Hemendinger | Associate/New Lawyers Group/Pending | $475.00 | 74.10 | $35,197.50 |
| B S Jacobs | Associate/Tax/2012 | $675.00 | 24.60 | $16,605.00 |
| M P Koslen | Associate/Business & Tort Litigation/2016 | $400.00 | 45.50 | $18,200.00 |
| R T Latta** | Associate/Intellectual Property/2011 | $700.00 | 4.20 | $2,940.00 |
| K N Mancini | Associate/Banking, Finance & Securities/2017 | $500.00 | 41.70 | $20,850.00 |
| M E Moreno | Associate/Health Care & Life Sciences/2016 | $425.00 | 9.70 | $4,122.50 |
| K A Rubin | Associate/Tax/2016 | $675.00 | 12.40 | $8,370.00 |
| S D Ruebensaal** | Associate/Real Estate/2016 | $400.00 | 3.60 | $1,440.00 |
| P Saba | Associate/Business Restructuring & Reorganization/2015 | $550.00 | 482.60 | $265,430.00 |
| B M Santisteban | Associate/Mergers & Acquisitions/2014 | $600.00 | 48.30 | $28,980.00 |
| F Siddiqui | Associate/Business Restructuring & Reorganization/2018 | $475.00 | 15.80 | $7,505.00 |
| D Smith | Associate/New Lawyers Group/2017 | $475.00 | 71.40 | $33,915.00 |
| K Xian | Associate/Antitrust & Competition Law/2014 | $675.00 | 220.40 | $126,730.00 |
| O S Zeltner** | Associate/Business Restructuring & Reorganization/2012 | $550.00 | 4.60 | $2,530.00 |
| | **Total Associate** | | 1,506.10 | $936,210.00 |
| **LAW CLERK** | | | | |
| F Siddiqui | Law Clerk/New Lawyers Group/2017 | $475.00 | 21.30 | $10,117.50 |
| N R Wallce | Law Clerk/New Lawyers Group/-- | $475.00 | 20.80 | $9,880.00 |
| | **Total Law Clerk** | | 42.10 | $19,997.50 |
| **PARALEGAL** | | | | |
| M T Barrios | Paralegal/Banking, Finance & Securities/-- | $275.00 | 20.70 | $5,692.50 |
| | **Total Paralegal** | | 20.70 | $5,692.50 |
| | Sub Total: | | 2,766.50 | $1,984,300.00 |
| | **Less: 50% Nonworking Travel** | | $0.00 | ($11,235.00) |
| | **Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts** | | (18.80) | ($12,865.00) |
| | **Grand Total:** | | 2,747.70 | $1,960,200.00 |

## SUMMARY OF COMPENSATION REQUESTED BY CATEGORY FOR
## THE INTERIM COMPENSATION PERIOD
### August 1, 2018 - October 31, 2018

| Matter | Fourth Interim | |
|---|---|---|
| | Hours | Fees |
| Case Administration | 20.10 | $14,455.00 |
| Creditor Inquiries | 2.50 | $2,500.00 |
| Plan of Reorganization/Disclosure Statement | 697.70 | $493,887.50 |
| Use, Sale, Lease of Assets | 836.70 | $611,035.00 |
| Cash Collateral/DIP Financing/Other Financing | 269.90 | $187,250.00 |
| Claims Administration | 493.80 | $348,375.00 |
| Court Hearings | 11.80 | $9,320.00 |
| Professional Retention/Fee Issues | 25.40 | $20,527.50 |
| Fee Application Preparation | 110.90 | $70,640.00 |
| Nonworking Travel | 26.30 | $22,470.00 |
| General Corporate/Real Estate | 96.90 | $82,052.50 |
| Schedules/SOFA/U.S. Trustee Reports | 1.80 | $1,350.00 |
| Employee Matters | 10.50 | $9,210.00 |
| Tax Advice | 30.80 | $24,820.00 |
| Litigation/Adversary Proceedings | 93.90 | $53,547.50 |
| Automatic Stay/Adequate Protection | 19.00 | $16,150.00 |
| Meetings | 18.50 | $16,710.00 |
| **SUBTOTAL:** | 2,766.50 | $1,984,300.00 |
| Less: 50% Non-Working Travel | 0.00 | ($11,235.00) |
| Less: Voluntary Reductions for Timekeepers Billing De Minimis Amounts | (18.80) | ($12,865.00) |
| **TOTAL:** | **2,747.70** | **$1,960,200.00** |

SUMMARY OF EXPENSES REQUESTED BY CATEGORY FOR
THE INTERIM COMPENSATION PERIOD
August 1, 2018 - October 31, 2018

| Category | Fourth Interim |
|---|---|
| Computerized Research Services | $73.10 |
| Conference Charges | $1,096.79 |
| Court Reporter Fees | $11,585.21 |
| Document Reproduction Charges | $224.00 |
| Document Storage/Retrieval | $338.61 |
| Research Fees | $10.00 |
| Travel - Air Fare | $4,570.20 |
| Travel - Food and Beverage Expenses | $1,595.17 |
| Travel - Hotel Charges | $2,887.08 |
| Travel - Other Costs | $127.00 |
| Travel - Taxi Charges | $2,355.91 |
| Travel - Train Fare | $653.00 |
| United Parcel Service Charges | $30.93 |
| Less Voluntary Reduction | ($177.60) |
| **Total** | **$25,369.40** |

## BLENDED RATE OF PROFESSIONALS – TOTAL

| Category of Timekeeper | Billed Comparable Non-Bankruptcy Invoices[1] Issued in 2017[2] | Billed This Compensation Period[3] |
|---|---|---|
| Partner | $815.78 | $850.87 |
| Of Counsel | $750.51 | $916.76 |
| Associate | $462.71 | $621.61 |
| Law Clerk | $389.44 | $475.00 |
| Paralegal | $254.85 | $275.00 |
| **Total:** | **$593.42** | **$717.26** |

---

[1]     Pursuant to ¶ C.3.a.i.b of the Guidelines, "Comparable Non-Bankruptcy Invoices Issued in 2017" provides the blended hourly rate for the aggregate of "[a]ll timekeepers in each of [Jones Day's] domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the [Compensation Period]." During the Compensation Period, the Jones Day offices billing at least 10% of the hours to the bankruptcy case were the Washington, New York, Cleveland and Atlanta offices.

[2]     Jones Day calculated the average hourly rate for Comparable Non-Bankruptcy Invoices Issued in 2017 by dividing the total dollar amount billed by each class of timekeepers during the applicable period by the total amount of hours billed by such timekeepers during the Compensation Period (excluding all data from timekeepers practicing primarily in a bankruptcy group or section).

[3]     Jones Day calculated the average hourly rate for timekeepers who billed the Debtors by dividing the total dollar amount billed by each class of timekeepers by the total number of hours billed by such timekeepers during the Compensation Period. The blended hourly rates do not take into account adjustments made by Jones Day, including: (i) the 50% write-off of non-working travel and (ii) voluntary reductions implemented by Jones Day in connection with the preparation of this Fourth Interim Fee Application.

# INFORMATION REGARDING PRIOR INTERIM FEE APPLICATIONS

## SUMMARY OF PRIOR INTERIM FEE APPLICATIONS

| Date Filed & Docket No. | Period Covered | Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Date(s) of Orders on Interim Compensation or Reimbursement of Expenses |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | |
| 3/15/2018 [1170] | 10/31/2017 – 1/31/2018 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $6,279,660.00 | $56,952.50 | $0.00 | $0.00 | 4/23/2018 [1393] |
| 6/14/2018 [1571] | 2/1/2018 – 4/30/2018 | $5,433,358.75 | $109,833.59 | $5,433,358.75 | $109,833.59 | $5,433,358.75 | $109,833.59 | $0.00 | $0.00 | 7/23/2018 [1719] |
| 9/14/2018 [1870] | 5/1/2018 – 7/31/2018 | $2,786,085.00 | $52,456.65 | $2,786,085.00 | $52,456.65 | $2,786,085.00 | $52,456.65 | $0.00 | $0.00 | 11/01/2018 [2028] |

## CUMULATIVE FEE AND EXPENSE TOTALS SINCE CASE INCEPTION

| Fees and Expenses Requested[1] | | Fees and Expenses Allowed[2] | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Fees and Expenses Disallowed or Withdrawn[3] | |
|---|---|---|---|---|---|---|---|---|---|
| Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| $16,459,303.75 | $244,789.74 | $14,499,103.75 | $219,242.74 | $13,291,470.75 | $192,155.49 | $0.00 | $0.00 | $81,226.50 | $1,430.60 |

1       These amounts include the total fees and expenses requested in the First Interim Fee Application, the Second Interim Fee Application, the Third Interim Fee Application and this Fourth Interim Fee Application and does not include the fees and expenses requested in the Thirteenth Monthly Fee Application.

2       This amount reflects the amount approved by the First Interim Fee Order, the Second Interim Fee Order and the Third Interim Fee Order and does not reflect amounts requested or paid pursuant to Monthly Fee Applications filed during the Compensation Period.

3       These amounts reflect voluntary reductions taken by Jones Day prior to the filing of the First Interim Fee Application, the Second Interim Fee Application and the Third Interim Fee Application. At the request of the U.S. Trustee, Jones Day agreed to reduce the amount of expenses requested in the Eleventh Monthly Fee Application by $179.60.

NAI-1505637438v1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*,[1] | Case No. 17-12307 (BLS) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: January 7, 2019 at 4:00 p.m. (ET) |
| | Hearing Date: January 16, 2019 at 10 a.m. (ET) |

## FOURTH INTERIM APPLICATION OF JONES DAY FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM AUGUST 1, 2018 THROUGH OCTOBER 31, 2018

Jones Day, counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"), makes its fourth interim fee application (this "Fourth Interim Fee Application") for allowance of compensation of $1,960,200.00 and reimbursement of expenses of $25,369.40 for the period from August 1, 2018 through October 31, 2018 (the "Compensation Period"), in accordance with the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket No. 308) (the "Interim Compensation Order"). In support of this Fourth Interim Fee Application, Jones Day respectfully represents as follows:

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On October 24, 2017 (the "Polymers Petition Date"), Debtor M & G Polymers USA, LLC ("M&G Polymers") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, thereafter, on October 30, 2017 (the "Petition Date"), each of the other Debtors commenced chapter 11 cases before this Court (together with the chapter 11 case of M&G Polymers, the "Cases").  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      An Official Committee of Unsecured Creditors (the "Committee") was appointed in these Cases on November 13, 2017 (Docket No. 146).  Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure and financial condition, is set forth in the *Declaration of Dennis Stogsdill in Support of First Day Pleadings* (Docket No. 3) (the "First Day Declaration"), filed on October 31, 2017 and incorporated herein by reference.

4.      On November 6, 2018, the Court entered an order (Docket No. 2047) approving the *Disclosure Statement for Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession* (Docket No. 2050) (as it may be modified, amended or supplemented, the "Disclosure Statement") and authorizing the Debtors to solicit votes on the *Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*

(Docket No. 2049) (as it may be modified, amended or supplemented, the "Plan").  A hearing on confirmation of the Plan is scheduled for December 17, 2018.

### Jones Day's Retention

5.     On November 10, 2017, the Debtors filed the *Application for an Order Authorizing Them to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc as of the Petition Date* (Docket No. 138) (the "Retention Application"), by which the Debtors sought to retain and employ Jones Day as their counsel in these Cases.  On November 30, 2017, the Court entered the *Order Authorizing the Debtors to Retain and Employ Jones Day as Counsel, Nunc Pro Tunc as of the Petition Date* (Docket No. 300) (the "Retention Order"), authorizing the retention of Jones Day as the Debtors' counsel.

### The Interim Compensation Order

6.     On November 10, 2017, the Debtors filed the *Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 141) (the "Interim Compensation Procedures Motion"), which sought to establish procedures for the compensation and reimbursement of professionals whose retentions are approved by the Court pursuant to sections 327 or 1103 of the Bankruptcy Code on a monthly basis and on terms comparable to the procedures established in other large chapter 11 cases.  On December 1, 2017, this Court entered the Interim Compensation Order, which approved the relief sought in the Interim Compensation Procedures Motion and authorized the implementation of the interim compensation procedures contemplated therein.

7.     In relevant part, the Interim Compensation Order provides that "commencing with the period ending January 31, 2018, at each three-month intervals . . . each of the [p]rofessionals will file with the Court . . . an application pursuant to section 331 of the Bankruptcy Code for interim Court approval and allowance of the compensation and

reimbursement of expenses sought by the [p]rofessional" in its monthly fee applications. Interim Comp. Order, ¶ 2(f). The Interim Compensation Order further provides that interim fee applications "must be filed on or before the 45th day after the end of the [i]nterim [f]ee [p]eriod . . . for which the application seeks allowance of fees and reimbursement of expenses" and that interim fee applications "must identify the [m]onthly [f]ee [a]pplications that are the subject of the request and any information requested by the Court and the Local Rules." *Id.*

8. On March 15, 2018, Jones Day filed its *First Interim Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Debtors for the Period from October 31, 2017 through January 31, 2018* (Docket No. 1170) (the "First Interim Fee Application"). By the First Interim Fee Application, Jones Day sought interim approval of compensation for services rendered in the amount of $6,279,660.00 and reimbursement of actual and necessary expenses in the amount of $56,952.50. On April 23, 2018, the Court approved the First Interim Fee Application. *See Omnibus Order Approving First Interim/Quarterly Fee Applications of Professionals* (Docket No. 1393).

9. On June 14, 2018, Jones Day filed its *Second Interim Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Debtors for the Period from February 1, 2018 through April 30, 2018* (Docket No. 1571) (the "Second Interim Fee Application"). By the Second Interim Fee Application, Jones Day sought interim approval of compensation for services rendered in the amount of $5,433,358.75 and reimbursement of actual and necessary expenses in the amount of $109,833.59. On July 23, 2018, the Court approved the Second Interim Fee Application. *See Omnibus Order Approving First Interim/Quarterly Fee Applications of Professionals* (Docket No. 1393).

10.     On September 14, 2018, Jones Day filed its *Third Interim Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Debtors for the Period from May 1, 2018 through July 31, 2018* (Docket No. 1870) (the "Third Interim Fee Application"). By the Third Interim Fee Application, Jones Day sought interim approval of compensation for services rendered in the amount of $2,786,085.00 and reimbursement of actual and necessary expenses in the amount of $52,456.65. On November 1, 2018, the Court approved the Third Interim Fee Application. *See Omnibus Order Approving Third Interim/Quarterly Fee Applications of Professionals* (Docket No. 2028).

### The Monthly Fee Applications

11.     On September 14, 2018, Jones Day filed its *Tenth Monthly Application of Jones Day for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Debtors for the Period from August 1, 2018 through August 31, 2018* (Docket No. 1867) (the "Tenth Monthly Fee Application"). No objections were received with respect to the Tenth Monthly Fee Application; however, the U.S. Trustee informally requested that Jones Day make certain adjustments to the expenses sought therein, to which Jones Day agreed. On October 11, 2018, Jones Day filed its *Eleventh Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from September 1, 2018 through September 30, 2018* (Docket No. 1979) (the "Eleventh Monthly Fee Application"). No objections were received with respect to the Eleventh Monthly Fee Application. On November 12, 2018 Jones Day filed its *Twelfth Monthly Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Period from October 1, 2018 through October 31, 2018* (Docket No. 2062) (the "Twelfth Monthly Fee Application" and together with the Tenth Monthly Fee Application and the

Eleventh Monthly Fee Application, the "Monthly Fee Applications"). No objections were received with respect to the Twelfth Monthly Fee Application.[2]

## JONES DAY'S APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

### Compensation Paid and Its Sources

12.      Jones Day has received no payment for services rendered in any capacity in connection with the matters covered in this Fourth Interim Fee Application, nor has it received any promises for payment for matters covered by this Fourth Interim Fee Application, from any source other than from the Debtors. There is no agreement or understanding between Jones Day and any other person other than partners of Jones Day for the sharing of compensation to be received from the services rendered in these Cases.

### Itemization of Services Rendered and Disbursements Incurred

13.      Attached hereto as Exhibit A are the time records of Jones Day, which provide a daily summary of the time spent by each Jones Day attorney[3] and paraprofessional[4] during the Compensation Period by project category. The blended hourly billing rate of attorneys for all services provided during the Compensation Period is $720.59.[5] The blended

---

[2]      On December 5, 2018, Jones Day filed its Thirteenth Monthly Fee Application (Docket No. 2098), which relates to fees and expenses incurred outside the Compensation Period in November 2018. By this Fourth Interim Fee Application, Jones Day does not seek allowance of compensation and reimbursement of expenses sought in the Thirteenth Monthly Fee Application. The objection deadline for the Thirteenth Monthly Fee Application is December 26, 2018.

[3]      Attorneys include partners, of counsel, counsel, associates, staff attorneys, summer associates and law clerks, as applicable, rendering services to the Debtors during the Compensation Period.

[4]      Paraprofessionals include paralegals, legal support personnel, project assistants and staff members, as applicable, rendering services to the Debtors during the Compensation Period.

[5]      The blended hourly billing rate of $720.59 for attorneys is derived by dividing the total fees for attorneys of $1,978,607.50 by the total hours of 2,745.80 for those same attorneys, not taking into account (i) the 50% write-off of non-working travel and (ii) voluntary reductions implemented by Jones Day in connection with the preparation of this Fourth Interim Fee Application.

hourly billing rate of paraprofessionals for all services provided during the Compensation Period is $275.00.[6]

14.  Attached hereto as <u>Exhibit B</u> is a detailed itemization of expenses for which Jones Day seeks reimbursement. Jones Day maintains the following policies with respect to expenses:

(a)  No amortization of the cost of any investment, equipment or capital outlay is included in the expenses. In addition, for those items or services that Jones Day purchased from or contracted with a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)  Photocopying by Jones Day was charged at 10 cents per page. To the extent practicable, Jones Day utilized less expensive outside copying services.

(c)  Meals charged to the Debtors either were associated with (i) out-of-town travel; (ii) meetings at Jones Day with the Debtors and other professionals; or (iii) attorneys working late on matters concerning the Debtors.

(d)  Charges for airline and train travel include the cost of each airline or train ticket used in connection with the provision of services to the Debtors.

(e)  Jones Day does not charge clients for smartphone charges, remote email access charges and related costs.

(f)  The time pressures associated with the services rendered by Jones Day frequently require Jones Day's professionals and paraprofessionals to devote substantial amounts of time during the evenings and on weekends. To the extent that Jones Day has charged the Debtors for secretarial and other staff overtime expenses, such expenses were directly associated with such after-hours work and were necessary given the circumstances of these Cases. Jones Day does not consider these to be part of its ongoing overhead expenses because they are special incremental expenses arising from the specific services being provided to the Debtors.[7]

---

[6]  The blended hourly billing rate of $275.00 for paraprofessionals is derived by dividing the total fees for paraprofessionals of $5,692.50 by the total hours of 20.70 for those same paraprofessionals, not taking into account (i) the 50% write-off of non-working travel and (ii) additional voluntary reductions implemented by Jones Day in connection with the preparation of this Fourth Interim Fee Application.

[7]  For the avoidance of doubt, Jones Day is not seeking reimbursement for any secretarial or other staff overtime in this Fourth Interim Fee Application.

15. Jones Day believes that the time entries set forth in <u>Exhibit A</u> attached hereto are in compliance with the requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

**Total Fees and Expenses**
**Sought for the Compensation Period**

16. By this Application, Jones Day requests that the Court approve the allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by Jones Day during the Compensation Period. The total fees and reimbursement of expenses are summarized in the following chart:

| Total Fees | $1,960,200.00 |
|---|---|
| Total Disbursements | $25,369.40 |
| **TOTAL** | **$1,985,569.40** |

**Compensation by Project Category**

17. The following is a summary of activities performed by Jones Day professionals and paraprofessionals during the Compensation Period, organized by billing category.[8]

***Case Administration — 20.10 hours — $14,455.00***

18. During the Compensation Period, Jones Day professionals devoted time to:

(a) communicating electronically and telephonically, both internally and with the Debtors' other advisors, to (i) coordinate closely all activities in these Cases, (ii) provide updates regarding the progress made in these Cases and (iii) plan for future activities; and

---

[8] The summary set forth below is qualified in its entirety by reference to the time and services detail attached hereto as <u>Exhibit A</u>. The hours and fee totals listed by project category in this Fourth Interim Fee Application do not take into account voluntary reductions implemented by Jones Day in connection with the preparation of this Fourth Interim Fee Application.

(b)     maintaining case management tools for the effective and efficient administration of these Cases, including (i) a detailed work in process report that tracks the progress of all pleadings necessary to, or related to, the administration of these Cases and (ii) a calendar to monitor filing and related litigation deadlines.

***Creditor Inquiries — 2.50 hours — $2,500.00***

19.     During the Compensation Period, Jones Day professionals devoted time to responding to inquiries from certain creditors regarding notices they received and the status of these Cases.

***Plan of Reorganization/Disclosure Statement — 697.70 hours — $493,887.50***

20.     During the Compensation Period, Jones Day professionals spent a significant amount of time researching, preparing, drafting and analyzing issues with respect to: (a) an initial version of the Plan (Docket No. 1812) (the "Initial Plan"), filed on September 5, 2018; (b) an initial version of the Disclosure Statement (Docket No. 1813) (the "Initial Disclosure Statement") and the liquidation analysis filed contemporaneously therewith, each filed on September 5, 2018; and (c) a solicitation procedures motion (Docket No. 1814) (the "Solicitation Motion") in respect thereof, including various notices and ballots related thereto. As part of that process, Jones Day professionals coordinated closely with the Debtors' other advisors and engaged in numerous telephonic and email discussions and negotiations with counsel to the Committee and other stakeholders regarding the proposed structure and terms of the Plan.

21.     Following the filing of the Initial Plan and Initial Disclosure Statement, certain holders of mechanics' and materialmen's lien claims against the Debtors' partially constructed, PTA/PET plant in Corpus Christi, Texas (the "Corpus Christi Plant") filed objections to approval of the Initial Disclosure Statement (collectively, the "Disclosure Statement Objections" and the parties filing such objections, the "Objectors"). In an effort to

resolve the Disclosure Statement Objections and informal comments to the Initial Disclosure Statement and Initial Plan raised by other parties in interest, Jones Day professionals analyzed and negotiated certain revisions and amendments with the Objectors and other parties in interest concerning their comments to the Initial Disclosure Statement and Initial Plan. These efforts culminated in the filing of the first amended version of the Plan (Docket No. 2019) (the "First Amended Plan") and first amended version of the Disclosure Statement (Docket No. 2020) (the "First Amended Disclosure Statement").

22. Notwithstanding these amendments, however, certain of the objections raised by the Objectors remained. As a result, Jones Day professionals extensively researched, analyzed and drafted a response to the Disclosure Statement Objections, and on October 31, 2018, filed reply in further support of approval of the Disclosure Statement (Docket No. 2017). Jones Day professionals additionally negotiated the resolution of certain informal objections raised to the Solicitation Motion.

23. Subsequent to the Compensation Period, on November 5, 2018, a hearing was held on approval of the First Amended Disclosure Statement. The Court approved the First Amended Disclosure Statement on the record at that hearing, subject to certain revisions and amendments announced on the record. After the Court entered the Disclosure Statement Order on November 6, 2018, Jones Day professionals finalized and filed the solicitation version of the Disclosure Statement reflecting the amendments to the First Amended Disclosure Statement announced at the hearing and coordinated closely with the Debtors' other advisors to solicit acceptances on the Plan.

24. As discussed in the Third Interim Fee Application, in the prior compensation period, Jones Day professionals negotiated a resolution of the Committee's

objection to the Debtors' motion (Docket No. 1537) (the "Dismissal Motion") seeking the dismissal of three of the Debtors' Luxembourg affiliates (the "Luxembourg Affiliates") who were formerly debtors in these Cases, on the terms set forth in the *Settlement Term Sheet* (Docket No. 1706-1). During the Compensation Period, Jones Day professionals continued to negotiate and finalize the terms of the Settlement Term Sheet with the Committee, which resulted in the filing of a stipulation between the Debtors and the Committee (Docket No. 1777) (the "Dismissal Stipulation").

25.     Subsequent to the filing of the Dismissal Stipulation, which the Debtors had filed under certification of counsel with a proposed form of order granting the relief sought in the Dismissal Motion (subject to the Dismissal Stipulation), certain creditors of the Luxembourg Affiliates filed objections to the approval of the Dismissal Stipulation under certification of counsel. In light of these objections, Jones Day professionals researched and drafted a motion pursuant to Bankruptcy Rule 9019 seeking approval of the Dismissal Stipulation (Docket No. 1789) (the "9019 Dismissal Approval Motion"). The same parties that objected to entry of the Dismissal Stipulation filed objections to the 9019 Dismissal Approval Motion and to a related motion (Docket No. 1766) (the "Pre-Payment Motion") seeking authority to permit the Luxembourg Affiliates to make payments up to $300,000 to certain of their prepetition creditors while they remained in these Cases. In response to these objections, Jones Day professionals researched and drafted a reply thereto (Docket No. 1835). Jones Day professionals subsequently prosecuted the 9019 Dismissal Approval Motion at a hearing before the Court on September 13, 2018, and the Court entered orders approving both the Dismissal Stipulation (Docket No. 1859) and the Pre-Payment Motion (Docket No. 1858).

26.    Finally, during the Compensation Period, Jones Day professionals drafted an amended motion (Docket No. 1776) to extend the exclusive plan filing period, which was filed on August 20, 2018.

***Use, Sale, Lease of Assets — 836.70 hours — $611,035.00***

27.    As discussed in the First, Second and Third Interim Fee Applications, upon commencing these Cases, Jones Day professionals devoted significant time and effort to running multiple sales processes for the sale of substantially all of the U.S. Debtors' assets, including the Corpus Christi Plant (together which certain related assets, equipment and boilers situated at or in the vicinity of the Corpus Christi Plant, the "Corpus Christi Assets").  While the Debtors obtained approval for the sale of the Corpus Christi Assets (*see* Docket No. 1300) pursuant to that certain *Asset Purchase Agreement* between CCP and certain of the Debtors (Docket No. 1300-1) (the "CCP APA") prior to the Compensation Period, Jones Day professionals spent a substantial amount of time and effort during the Compensation Period:

    (a)    engaging in discussions with Corpus Christi Polymers, LLC ("CCP"), the purchaser of the Corpus Christi Assets, the Debtors' management and the Debtors' other advisors regarding the closing of the sale of the Corpus Christi Assets to CCP (the "Corpus Christi Sale"), including preliminary preparations in respect of such closing;

    (b)    preparing various documents, agreements and related materials in connection with the anticipated closing of the Corpus Christi Sale;

    (c)    analyzing and addressing licensing and related intellectual property issues in connection with the Corpus Christi Sale;

    (d)    strategizing, internally, with the Debtors and their other advisors and CCP and its advisors, regarding obtaining regulatory approval of the Corpus Christi Sale and analyzing certain issues related thereto;

    (e)    preparing documents and related materials for review by certain government agencies in connection with obtaining regulatory approval of the Corpus Christi Sale; and

(f)     attending depositions and related hearings before certain government agencies in connection with the closing of Corpus Christi Sale.

28.     In addition, during the Compensation Period, Jones Day professionals conducted various analyses concerning the closing of the Corpus Christi Sale, including contingency planning related to both the extension or termination of the CCP APA, and pivoting to a transaction with the backup bidder for the Corpus Christi Assets in the event that the CCP APA were terminated. Ultimately, Jones Day professionals negotiated and drafted amendments to (a) the CCP APA which, among other things, extended the termination date thereunder, (b) the settlement reached between the Debtors, the Committee and CCP (Docket No. 1299-1) (the "Bid Support Term Sheet") and (c) certain escrow agreements contemplated under the CCP APA. These amendments were reflected in the *Certification of Counsel Regarding Stipulation Regarding (I) Extension of Postpetition Financing Facility to Provide Additional Financing Thereunder and (II) Related Amendments* (Docket No. 1990) (the "Extension Stipulation"), which the Court approved on October 19, 2018 (Docket No. 1991) (the "Extension Stipulation Order").

***Cash Collateral/DIP Financing/Other Financing* — 269.90 hours — $187,250.00**

29.     During the Compensation Period, Jones Day professionals devoted time and effort to, among other things, advising the Debtors with respect to compliance with (a) the Debtors' approximately $57.3 million postpetition financing facility with CCP (the "CCP DIP Facility") and (b) the Debtors' $100 million postpetition financing facility with Control Empresarial de Capitales, S.A. de C.V. ("CEC" and such financing facility, the "CEC DIP Facility"). Specifically, Jones Day professionals researched and analyzed potential extensions of both the CCP DIP Facility and the CEC DIP Facility, including contingency planning related thereto.

30.    With the CCP DIP Facility expiring in early October 2018, Jones Day professionals ultimately negotiated and drafted documents extending the CEC DIP Facility on an emergency basis.  To that end, Jones Day professionals researched and drafted an emergency motion seeking approval to amend the CEC DIP Facility to permit an additional draw thereunder in the amount of approximately $2 million (Docket No. 1908) (the "Emergency CEC DIP Motion").  On October 3, 2018, the Court entered an order (Docket No. 1918) approving the Emergency CEC DIP Motion.

31.    Because the CEC DIP Facility, as amended, expired in mid-October 2018, Jones Day professionals further negotiated and drafted documents extending the CCP DIP Facility and certain related documents, while at the same time exploring strategic alternatives. Ultimately, the Debtors entered into an extension of the CCP DIP Facility on the terms set forth in the Extension Stipulation, as approved by the Extension Order.

*Claims Administration* — **493.80 hours** — **$348,375.00**

32.    During the Compensation Period, Jones Day professionals commenced, in conjunction with the Debtors' financial advisors and management, the process of reconciling administrative, priority, secured and unsecured claims asserted against the Debtors' estates. Throughout that process (which remains ongoing subsequent to this Compensation Period), Jones Day professionals engaged in numerous teleconferences and other communications with both the Debtors' financial advisors and management.  Further, Jones Day professionals conducted research and various analyses and advised the Debtors with respect to the bases for objections to claims under the Bankruptcy Code.

33.    Ultimately, Jones Day professionals prepared two omnibus objections to claims, each of which were filed on September 10, 2018.  The first omnibus objection (Docket No. 1838) addressed certain duplicate and amended and superseded claims, while the second

omnibus objection (Docket No. 1839) sought to reclassify certain misclassified administrative claims. Following the filing of the first and second omnibus objections, certain parties filed responses thereto. In light of these responses, Jones Day professionals negotiated certain resolutions of the issues raised in such responses, including a stipulation with D&C Fence (Docket No. 1971-1) which was approved by the Court on October 9, 2018.

34.     In addition to the claims reconciliation process, during the Compensation Period, Jones Day professionals negotiated a resolution of certain claims asserted against the Debtors' Luxembourg affiliate Mossi & Ghisolfi International S.a r.l. ("MGI") who, as discussed above, was previously a debtor in these Cases, by Sculptor Investments IV S.a r.l. (the "MGI Bondholder") in respect of $72.5 million floating rate guaranteed secured bonds due 2019 (the "MGI Bonds") issued by MGI. In relevant part, the settlement with the MGI Bondholder (the "MGI Settlement") released all claims related to the MGI Bonds, including a release of a guaranty of the MGI Bonds by M&G Polymers, in exchange for $8 million payable by MGI, subject to the occurrence of certain conditions. Jones Day professionals researched and drafted a motion (Docket No. 1785) seeking approval of the MGI Settlement, which was approved by the Court on September 11, 2018 (Docket No. 1844).

35.     Moreover, during the Compensation Period, Jones Day professionals negotiated a resolution (the "MGF Settlement") of claims between M&G Polymers and its non-debtor affiliate in Italy Mossi&Ghisolfi Finanziaria S.p.A. ("MGF"). In relevant part, the MGF Settlement effectuated a setoff of claims between MGF and M&G Polymers, resulting in an approximately $2 million claim owing to M&G Polymers by MGF. In connection with MGF's restructuring in Italy, M&G Polymers further agreed to limit its recovery on account of its setoff claim against MGF, subject to certain conditions, in exchange for a release of certain payables

that Debtors M&G Waters USA, LLC and M & G Resins USA, LLC owed MGF. Jones Day professionals researched and drafted a motion (Docket No. 1881) seeking approval of the MGF Settlement, which was approved by the Court on October 9, 2018 (Docket No. 1969).

36.     Finally, during the Compensation period, Jones Day professionals negotiated a resolution of in excess of $800 million in claims asserted against the Debtors by certain of their affiliates in Mexico (the "Mexican Affiliates" and the claims asserted by the Mexican Affiliates, the "Mexican Intercompany Claims"). Among other things, the settlement (the "Mexican Settlement") effected the release of in excess of $600 million of the Mexican Intercompany Claims in exchange for the final allowance of $200 million of the Mexican Intercompany Claims against the Debtors' estates as general unsecured claims, a full release of claims between the parties (subject to certain restrictions) and the contribution of the Debtors' equity interests in the Mexican Affiliates to a trust for the benefit of the Mexican Affiliates' creditors. In connection with the negotiation of the Mexican Settlement, Jones Day professionals researched issues related to such settlement and drafted a motion seeking approval of the same (Docket No. 1994), which was filed on October 19, 2018. The Court approved the Mexican Settlement following the Compensation Period on November 5, 2018 (Docket No. 2042).

***Court Hearings* — 11.80 hours — $9,320.00**

37.     During the Compensation Period, Jones Day professionals prepared for, attended and participated in hearings before the Court, including, (a) the hearing on the Dismissal Stipulation and the Prepayment Motion on September 13, 2018; and (b) the telephonic hearing on the Emergency DIP Motion on October 3, 2018.

***Professional Retention/Fee Issues* — 25.40 hours — $20,527.50**

38.     During the Compensation Period, Jones Day professionals devoted time to advising the Debtors on fee issues that arose in connection with the continued retention of the

Debtors' professionals, including in connection with the retention of certain professionals retained by the Debtors in the ordinary course of business. In addition, Jones Day professionals addressed and analyzed certain professional fee issues related to the dismissal of the Luxembourg Affiliates from these Cases.

***Fee Application Preparation — 110.90 hours — $70,640.00***

39.     During the Compensation Period, Jones Day professionals and paraprofessionals devoted time to (a) reviewing monthly invoices to ensure compliance with the UST Fee Guidelines (as defined below) and the Interim Compensation Order; (b) drafting and filing the Monthly Fee Applications and the Third Interim Fee Application; and (c) reviewing the monthly fee applications of the Debtors' other advisors.

***Nonworking Travel — 26.30 hours — $22,470.00***

40.     During the Compensation Period, Jones Day professionals devoted time traveling to and from (a) Delaware for the hearings described in the "Court Hearings" section above; and (b) New York for meetings with certain creditors. The total amount of the non-working travel was $22,470.00, which was then discounted by 50% to $11,235.00.

***General Corporate/Real Estate — 96.90 hours — $82,052.50***

41.     During the Compensation Period, Jones Day professionals analyzed and advised on issues relating to: (a) the renewal and extension of the Debtors' insurance policies, including communicating with a number of insurance providers and drafting letters and extension documents related to the same; (b) the Debtors' bank accounts and cash management system; (c) certain customs duties and related issues, including by researching and drafting a memorandum analyzing such liabilities and issues pertaining to the Debtors' customs' bonds; (d) the transfer of certain records following confirmation of the Plan; and (e) the Debtors' business licenses.

***Schedules/SOFA/U.S. Trustee Reports* — 1.80 hours — $1,350.00**

42.     During the Compensation Period, Jones Day professionals reviewed, revised and coordinated the filing of amended schedules for Debtor Chemtex International Inc. (Docket No. 1764).

***Employee Matters* — 10.50 hours — $9,210.00**

43.     During the Compensation Period, Jones Day professionals:  (a) advised the Debtors with respect to (i) issues relating to healthcare coverage and related benefits and (ii) certain employee communications concerning healthcare and benefits coverage; (b) researched and analyzed reporting requirements with respect to the winding-down of the Debtors' employee benefits plans, including research and analysis concerning severance and related issues; and (c) communicated with the Pension Benefit Guaranty Corporation (the "PBGC") in connection with the transfer of M&G Polymers' pension plans to the PBGC.

***Tax Advice* — 30.80 hours — $24,820.00**

44.     During the Compensation Period, Jones Day professionals conducted research in connection with certain property tax and state tax law issues.  Further, Jones Day professionals provided advice regarding tax compliance, tax planning and other tax matters relevant to the administration of these Cases, the closing of the sale processes described above and the effects of the potential confirmation of the Plan.

***Litigation/Adversary Proceedings* — 93.90 hours — $53,547.50**

45.     As described in the Second and Third Interim Fee Applications, prior to the Compensation Period, Banco Nacional de Comercio Exterior S.N.C., Institucion de Banca de Desarollo ("Bancomext") brought an adversary proceeding (*see* Adv. Pro. No. 18-50302) against certain of the Debtors (the "Bancomext Adversary Proceeding").  In addition, Bancomext appealed the order (Docket No. 1300) approving the sale of the Corpus Christi Assets to CCP

NAI-1505637438v1

(the "Bancomext Appeal").  Jones Day professionals engaged in mediation concerning the Bancomext Adversary Proceeding and Bancomext Appeal prior to this Compensation Period, and as a result of that mediation, negotiated and drafted a term sheet resolving both the Bancomext Appeal and Bancomext Adversary Proceeding, which was filed with the Court on August 2, 2018 (Docket No. 1738-1).  As contemplated in the mediation term sheet, following its filing, Jones Day professionals drafted a stipulation seeking the allowance of certain claims asserted by Bancomext (Docket No. 1797), which was approved by the Court on August 28, 2018 (Docket No. 1798).[9]

46.     Further, during the Compensation Period, Jones Day professionals (a) researched and drafted an answer to the complaint filed by the Debtors' Brazilian affiliate M&G Polimeros Brasil S.A. ("M&G Brasil") against Comerica Bank and M&G Polymers (Adv. Pro. No. 18-50007) (the "M&G Brasil Adversary Proceeding"); (b) negotiated certain extension stipulations and related scheduling orders in the M&G Brasil Adversary Proceeding; and (c) prepared responses to certain discovery requests propounded by creditor Pepsi-Cola Advertising and Marketing, Inc. (Docket No. 2001) in response to the Debtors' objection to certain of its claims, including engaging in a meet and confer with opposing counsel.

47.     Finally, during the Compensation Period, Jones Day professionals researched and drafted a motion (Docket No. 1882) (the "Removal Extension Motion"), seeking an extension of the period during which the Debtors are authorized to remove actions to this Court.  The Court entered an order (Docket No. 1968) approving the Removal Extension Motion on October 9, 2018.

---

[9]     On September 6, 2018, Bancomext filed notices voluntarily dismissing, with prejudice, the Bancomext Appeal (Civ. Pro. No. 18-00546-LPS, Docket No. 38) and the Bancomext Adversary Proceeding (Adv. Pro. No. 18-50302, Docket No. 36).  Both the Bancomext Appeal and Bancomext Adversary Proceeding have been closed.

*Automatic Stay/Adequate Protection* — **19.00 hours** — **$16,150.00**

48.     During the Compensation Period, Jones Day professionals (a) drafted letters reminding certain creditors of the Luxembourg Affiliates of the presence of the automatic stay with respect to certain demands made by such creditors while the Luxembourg Affiliates were debtors in these Cases; and (b) analyzed, addressed and negotiated a resolution of a motion (Docket No. 1754) filed by a creditor seeking to lift the automatic stay to proceed with personal injury litigation, solely against the Debtors' insurance policy, which the Court approved by order (Docket No. 1791) on August 27, 2018.

*Meetings* — **18.80 hours** — **$16,710.00**

49.     During the Compensation Period, Jones Day professionals devoted time to (a) attending internal meetings, meetings with the Debtors, and meetings with other professionals in these Cases regarding overall case strategy and specific issues arising in these Cases; and (b) preparing for, attending and participating in the Debtors' board meetings.

### Billing Adjustments

50.     During the Compensation Period, Jones Day made $11,235.00 in adjustments due to a 50% discount for time spent on nonworking travel.[10]  In addition, Jones Day wrote off an additional $87,203.75 in fees and $3,566.76[11] in disbursements incurred during the Compensation Period prior to filing the Monthly Fee Applications.

51.     In connection with the preparation of this Fourth Interim Fee Application, Jones Day implemented a voluntary reduction of $12,865.00 in fees to write off fees to account

---

[10]     To the extent possible, Jones Day professionals work while traveling.

[11]     At the request of the U.S. Trustee, Jones Day agreed to write off an additional $179.60 following the filing of the Eleventh Monthly Application, which is included in this calculation.

for timekeepers that billed *de minimis* amounts of time to the Debtors during the Compensation Period.

## APPENDIX B GUIDELINES

52.     Pursuant to the *Appendix B Guidelines for Reviewing Application for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorney in Larger Chapter 11 Cases* (the "UST Guidelines"), Jones Day responds to the following questions with respect to this Application:[12]

(a)     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

(i)     No.

(b)     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application higher by 10% or more, did you discuss the reasons for the variation with the client?

(i)     N/A

(c)     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

(i)     No.

(d)     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?

(i)     Yes, Jones Day expended 106.2 hours and incurred $66,775.00 reviewing the Monthly Fee Applications to remove any confidential or privileged information and to ensure compliance with the Interim Compensation Order and the UST Guidelines.

(e)     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

---

[12]     In further compliance with the Appendix B Guidelines, Jones Day attaches hereto its Budgets for the Compensation Period as Exhibits C-1 through C-3, its Staffing Plans for the Compensation Period as Exhibits D-1 through D-3 and a Summary of Compensation Requested by Project Category as Exhibit E.

        (i)     *See* ¶ [52](d)(i).

   (f)     If the fee application includes any rate increases since retention in this case:

        (A)    Did your client review and approve those rate increases in advance?

             (1)   N/A

        (B)    Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

             (1)   N/A

## REQUESTED COMPENSATION SHOULD BE ALLOWED

   53.     Section 330(a)(1) of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 and 1103 of the Bankruptcy Code:

   (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

   (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

   (A)    the time spent on such services;

   (B)    the rates charged for such services;

   (C)    whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

54.     Jones Day respectfully submits that it has satisfied the requirements of section 330 of the Bankruptcy Code for the allowance of compensation and reimbursement of expenses sought herein. The services described above were necessary to the administration of these Cases and were beneficial to the Debtors and parties in interest. Jones Day's services were often performed in a minimum amount of time and commensurate with the complexity of the matters facing the Debtors. Further, the compensation sought by Jones Day is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy.

## CONCLUSION

55.     Jones Day attorneys and paraprofessionals expended a total of 2,766.50 hours in connection with their representation of the Debtors during the Compensation Period. Employing Jones Day's normal hourly rates for work of this character, the reasonable value of the services rendered by Jones Day for the Debtors during the Compensation Period, after taking into account the billing adjustments discussed above, is $1,960,200.00. During the

Compensation Period, Jones Day also incurred expenses of $25,369.40.[13] Pursuant to the Interim Compensation Order, by this Application Jones Day seeks the allowance of fees and expenses incurred during the Compensation Period in the sum of $1,985,747.40.

56.     Jones Day respectfully submits that the amount requested in this Fourth Interim Fee Application is fair and reasonable and satisfies the requirements of section 330 of the Bankruptcy Code. Moreover, Jones Day has reviewed the requirements of Local Rule 2016-2 and the Interim Compensation Order and believes that this Fourth Interim Fee Application complies with such Local Rule and Order.

## NOTICE

57.     Jones Day will serve this Fourth Interim Fee Application in accordance with the Interim Compensation Order and the Local Rules. Pursuant to the Interim Compensation Order, objections to this Fourth Interim Fee Application, if any, must be in writing and filed with the Court and served upon Jones Day so as to be received no later than January 7, 2019 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

---

[13]     This figure was calculated after taking into account Jones Day's voluntary write-down of expenses of $3,566.76 prior to filing Monthly Fee Applications. The amount includes an additional agreed upon write-off in the amount of $179.60 following the filing of the Eleventh Monthly Fee Application.

## NO PRIOR REQUEST

58.     No prior request for the relief sought in this Application has been made to

this or any other court.

Dated: December 17, 2018
        Wilmington, Delaware

/s/ Carl E. Black
JONES DAY
Scott J. Greenberg
Stacey L. Corr-Irvine
250 Vesey Street
New York, NY 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306
Email:         sgreenberg@jonesday.com
               scorrirvine@jonesday.com

and

Carl E. Black
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:     (216) 586-7035
Facsimile:     (216) 579-0212
Email:         ceblack@jonesday.com

Counsel for the Debtors and Debtors in
Possession

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>M & G USA CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12307 (BLS)<br><br>(Jointly Administered) |

## CERTIFICATION OF CARL E. BLACK

Carl E. Black, under penalty of perjury, certifies as follows:

1.   I am a partner with the law firm of Jones Day and have been admitted to appear before this Court. I make this certification in accordance with Local Rule 2016-2 regarding the contents of applications for compensation and expenses. I have read the Fourth Interim Fee Application and am familiar with the work performed on behalf of the Debtors by the attorneys and paraprofessionals of Jones Day.

2.   The facts set forth in the foregoing Fourth Interim Fee Application are true and correct to my knowledge, information and belief. I have reviewed Local Rule 2016-2 and the Interim Compensation Order and submit that the Fourth Interim Fee Application substantially complies with such Local Rule and the Interim Compensation Order.

Dated: December 17, 2018

        /s/ Carl E. Black
        Carl E. Black

---

[1]  The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.